## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| ROW VAUGHN WELLS, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF TYRE DEANDRE NICHOLS, DECEASED, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) ) | CASE NO. 2:23-CV-02224 JURY DEMAND |
| THE CITY OF MEMPHIS, A MUNICIPALITY; CHIEF CERELYN DAVIS, IN HER OFFICIAL CAPACITY; EMMITT MARTIN III, IN HIS INDIVIDUAL CAPACITY; DEMETRIUS HALEY, IN HIS INDIVIDUAL CAPACITY; JUSTIN SMITH, IN HIS INDIVIDUAL CAPACITY; DESMOND MILLS, JR. IN HIS INDIVIDUAL CAPACITY; TADARRIUS BEAN, IN HIS INDIVIDUAL CAPACITY; PRESTON HEMPHILL, IN HIS INDIVIDUAL CAPACITY; ROBERT LONG, IN HIS INDIVIDUAL CAPACITY; JAMICHAEL SANDRIDGE, IN HIS INDIVIDUAL CAPACITY; MICHELLE WHITAKER, IN HER INDIVIDUAL CAPACITY; DEWAYNE SMITH, IN HIS INDIVIDUAL CAPACITY AND AS AGENT OF THE CITY OF MEMPHIS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

---

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF THE CITY OF MEMPHIS, CHIEF CERELYN DAVIS IN HER OFFICIAL CAPACITY, AND DEWAYNE SMITH AS AN AGENT OF THE CITY

---

1

4871-5406-3471

Defendants the City of Memphis ("the City"), Chief Cerelyn Davis in her Official

Capacity ("Chief Davis"), and Dewayne Smith as Agent of the City of Memphis ("Lt. Smith")

(collectively, "the City Defendants"), submit this Memorandum in Support of their Motion to

Dismiss Plaintiff Row Vaughn Wells's ("Plaintiff") Complaint for Damages under Rule 12(b)(6)

of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be

granted.

## I.    <u>INTRODUCTION</u>

This case arises from a tragic encounter between Plaintiff's son, Tyre Nichols

("Nichols"), and five rogue police officers that resulted in Nichols's death.  Nichols's life was

cut short by the actions of these rogue officers, and the City in no way condones, ratifies, or

approves of those actions.

The primary question that this suit presents, however, is whether the City should be

civilly liable for Mr. Nichols's death under 42 U.S.C. § 1983.  Although this situation is tragic,

the answer is no. It is well settled that § 1983 does not impose liability on the City under a

*respondeat superior* theory for its employees' misconduct.  Instead, the law requires that

Plaintiff must show that any constitutional harms are directly attributable to the City itself based

on its customs, practices, or policies.  Plaintiff, as Administratrix of the Estate of Nichols, failed

to sufficiently plead facts to establish liability under *Monell v. Department of Social Services of*

*the City of New York*, 436 U.S. 658 (1978).

Plaintiff further failed to sufficiently state her individual claims, which are barred by the

Tennessee Governmental Tort Liability Act.

The Court should dismiss the claims against the City and, respectfully, turn its full

attention to those individuals who are entirely responsible for the death of Mr. Nichols—

Defendants Emmitt Martin III ("Martin"), Demetrius Haley ("Haley"), Justin Smith ("J. Smith"),

2

Desmond Mills, Jr. ("Mills"), and Tadarrius Bean ("Bean") (collectively, "Defendant Officers").

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Allegations Regarding the Scorpion Unit

Plaintiff alleges that in November 2021 Chief Davis—acting under pressure and facing growing crime rates—formed a special anti-crime policing unit called the Street Crimes Operation to Restore Peace in Our Neighborhoods ("Scorpion") Unit.[1]  (Compl., ¶¶ 72–73, 76.) Plaintiff without factual basis describes the Scorpion Unit as employing an aggressive style of policing in which officers subjected Memphians to pretextual, unconstitutional traffic stops and searches to find illegal guns and drugs and to address violent crimes.  (Id., ¶¶ 78, 87, 90.) Further, Plaintiff claims that the Scorpion Unit targeted young Black men and operated as a gang unit with "inexperienced, untrained, and unsupervised police officers."  (Id., ¶¶ 92, 95.)  Plaintiff asserts that Scorpion officers drove unmarked cars and wore black hoodies and masks rather than traditional police attire.  (Id., ¶ 101.)

Plaintiff claims that there are multiple examples of other community members who experienced unlawful Scorpion encounters.  (Id., ¶ 105.) Plaintiff does not allege when or how the City was on notice of each of these alleged encounters prior to the incident with Nichols.

Instead, Plaintiff asserts that the City was on notice of violent, pretextual stops after a December 2022 Public Safety Committee meeting held by the Memphis City Council in which local activists complained of pretextual traffic stops, and that Chief Davis and the City Council

---

[1] Plaintiff alleges that Chief Davis and Assistant Chief Shawn Jones worked for the Atlanta Police Department prior to their tenure in Memphis.  Plaintiff claims that in 2006 (seventeen years ago) Chief Davis was a member of Atlanta's controversial and disbanded RED DOG unit, which Plaintiff alleges was a suppression unit similar to the Scorpion unit. (Id., ¶¶ 50-68.)  Plaintiff's inclusion of the allegations regarding the RED DOG injects irrelevant and scandalous material into this suit. It strains the bounds of plausibility to suggest that the City adopted the unlawful policies and practices of a former unit of the Atlanta Police Department that was disbanded twelve years ago simply by hiring a former officer of that unit. Accordingly, the City separately moves to strike all allegations related to the Atlanta RED DOG unit.

turned a blind eye and allowed the Scorpion Unit to continue to violate Fourth Amendment rights. (*Id.*, ¶¶ 106–09.) Notably, Plaintiff admits that during this meeting, activists discussed police encounters that occurred years before the formation of the Scorpion Unit and prior to Chief Davis's hiring. (*See id.*, ¶ 107, n. 3.)

Plaintiff asserts that Chief Davis, acting as the final policymaker for the City, appointed inexperienced officers with past disciplinary issues to the Scorpion Unit, though the examples Plaintiff used could not have possibly put the City on notice of clearly unconstitutional conduct. (*Id.*, ¶ 116). Plaintiff claims that the Defendant Officers involved in stopping Mr. Nichols had previous disciplinary issues, such as rough handling of equipment and failing to fill out appropriate forms (all of which MPD documented and apparently disciplined). (*Id.*) Plaintiff also claims the City relaxed standards for its officer recruits, failed to adopt policies or specialized training for its officers, and allowed the Scorpion Unit to patrol Memphis without proper supervision. (*See id.*, ¶¶ 117–138.)

### B.    The Incident Giving Rise to the Lawsuit

Plaintiff states that around 8:00 p.m. on the evening of January 7, 2023, Nichols left Shelby Farms Park to return to his home. (Compl., ¶146.) At the same time, Plaintiff alleges that Defendant Officers Martin, Haley, and Hemphill, were on patrol in unmarked cars. (*Id.*, ¶147.) According to Plaintiff, around 8:20 p.m. the Officers spotted Nichols driving and called into MPD Dispatch to run his license plate number. (*Id.*, ¶151.) Dispatch reported that there were no outstanding warrants. (*Id.*) Even so, Officers Martin, Haley, and Hemphill allegedly boxed in Nichols with their patrol cars as he was attempting to make a left turn. (*Id.*, ¶¶ 155–57.)

Plaintiff alleges that, without any type of reasonable suspicion or probable cause, Officers Martin and Haley then opened Mr. Nichols's car door and forcefully pulled him out of the car while pushing him down, assaulting him, and shouting at him. (*Id.*, ¶¶ 165–67.) Plaintiff

charges that Officer Hemphill then sprinted out of his car with his gun drawn, escalating the

situation further. (*Id.*, ¶ 171.)  Mr. Nichols allegedly questioned why he was being stopped and

attempted to de-escalate the situation to "no avail." (*Id.*, ¶ 179.)  Plaintiff asserts that the officers

then sprayed pepper spray in Nichols's face at close range. (*Id.*, ¶ 183.)  Nichols was able to

momentarily free himself at which time he began to run away from the officers. (*Id.*, ¶ 187.)

Plaintiff claims Officer Hemphill deployed his taser as Nichols ran from the officers, and

the other officers began a foot chase. (*Id.*, ¶¶ 191, 193.)  Officers Martin and Haley apprehended

Nichols, and Plaintiff claims they shoved him to the ground and pulled his hands behind his

back, at which point he was restrained, unarmed, unresistant, and compliant. (*Id.*, ¶¶ 201–02.)

Plaintiff claims that Defendant Officers J. Smith, Mills, and Bean then arrived on the scene and

began to beat Nichols. (*Id.*, ¶ 204.)  Plaintiff alleges that for around "seven minutes straight, the

five Scorpion officers punched, kicked, pepper sprayed, and struck Tyre with a baton." (*Id.*, ¶

208.)

Plaintiff claims that more officers arrived on the scene but expressed no concern for "the

bloodied, dazed, handcuffed man left alone and barely moving in the street." (*Id.*, ¶ 224.)

Plaintiff contends that the officers on the scene joked around and acted with indifference to

Nichols's condition; and Officer Haley went so far as to take a photo of Mr. Nichols after he was

beaten and then circulated the photo. (*Id.*, ¶¶ 227, 232–33.)

Plaintiff alleges that Lt. Smith, who was a supervisor of the Scorpion Unit, arrived late to

the scene. (*Id.*, ¶ 255.)  Once there, Lt. Smith walked to Nichols's home address where Nichols

lived with Plaintiff. (*Id.*, ¶ 263.)  Lt. Smith allegedly told Plaintiff that Nichols was under arrest

for driving while intoxicated and that Nichols was being treated in the neighborhood by

paramedics. (*Id.*, ¶¶ 264–71.)  Plaintiff alleges that, though Lt. Smith knew that Mr. Nichols was

in critical condition, he withheld that information from her and misled her about the events that

allegedly transpired.  (*See id.*)

Plaintiff states that around 8:40 p.m., three Memphis Fire Department EMTs Robert Long, JaMichael Sandridge, and Michelle Whitaker, arrived on the scene but failed to render necessary aid to Mr. Nichols.  (*See id.*, ¶¶ 244–46.)  At around 8:55 p.m., Nichols was transported to St. Francis Hospital, where he died three days later.  (*Id.*, ¶¶ 254, 289.)

What is noticeably missing from Plaintiff's Complaint, however, are several widely known and indisputable facts that are relevant to Plaintiff's claims, and of which the Court may take judicial notice without converting this Motion to Dismiss into a motion for summary judgment. *See, e.g. Greene v. Brown & Williamson Tobacco Corp.*, 72 F. Supp. 2d 882, 890 (W.D. Tenn. 1999) ("Judicial notice of generally known facts is appropriate when deciding a motion to dismiss for failure to state a claim.") (citing Fed. R. Evid. 201(f) ("Judicial notice may be taken at any stage of the proceeding")). "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Civ. P. 201.  *See also Roane Cnty., Tennessee v. Jacobs Eng'g Grp., Inc.*, No. 3:19-CV-206-TAV-HBG, 2020 WL 2025613, at *3 (E.D. Tenn. Apr. 27, 2020) (finding that the Court may take judicial notice of public records and records of governmental bodies available on the internet without converting a motion to dismiss to a motion for summary judgment).

The facts that Plaintiff omitted on which the Court may take judicial notice include the fact that just thirteen days after the incident giving rise to this Complaint, MPD terminated the employment of all five Defendant Officers.[2]  Shortly thereafter, on January 26, 2023, the five

---

[2] https://www.memphistn.gov/news/statement-regarding-mpd-internal-investigation-and-findings/  (last visited June 27, 2023).

Defendant Officers were charged with second-degree murder, aggravated assault, aggravated

kidnapping, official misconduct and official oppression.[3] And on the following day, January 28,

2023, MPD disbanded the Scorpion Unit.[4]

      **C.**     **Plaintiff's Allegations Against the City**

     Based on these events, Plaintiff brings claims against several Defendants including the

City, Chief Davis in her Official Capacity, and Lt. Smith as an agent of the City. Specifically,

Plaintiff brings § 1983 *Monell* claims against the City and Chief Davis for allegedly (1) adopting

an official policy of disregarding and violating Memphians' constitutional rights; (2) promoting a

custom of tolerance for the use of excessive force and unreasonable searches and seizures in

violation of the Fourth Amendment; (3) failing to train officers in the Scorpion Unit; and (4)

failing to supervise officers in the Scorpion Unit. Plaintiff also sues Lt. Smith individually[5] and

as an agent of the City for allegedly intentionally and negligently inflicting emotional distress on

her after he allegedly falsely communicated with her regarding the encounter with the Defendant

Officers and Mr. Nichols's physical condition.

**III.**    <u>**LAW AND ARGUMENT**</u>

     **A.**     **Legal Standard**

     Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must take all

well-pleaded allegations in the complaint as true and construe those allegations in a light most

favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). "To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[3] *See* Indictment, attached as <u>Exhibit A.</u>
[4] *See* Public Statement, attached as <u>Exhibit B.</u>
[5] The City of Memphis does not represent Lt. Smith in his individual capacity, and this Motion does not address claims against Lt. Smith in his individual capacity.

4871-5406-3471

(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal

conclusions can provide the framework of a complaint, they must be supported by factual

allegations. When there are well-pleaded factual allegations, a court should assume their veracity

and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed me

accusation." *Iqbal*, 556 U.S. at 678. While a complaint need not present detailed factual

allegations, to be cognizable it must provide more than "labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 545. The

factual allegations in the complaint "must be enough to raise a right to relief above the

speculative level." *Twombly*, 550 U.S. at 555 (citing authorities). In other words, "claims set

forth in a complaint must be plausible, rather than conceivable." *Id.* at 570.

A complaint must have a factual foundation, and the mere possibility "that a plaintiff

might later establish some set of undisclosed facts to support recovery" is insufficient to survive

a 12(b)(6) challenge. *Twombly*, 550 U.S. at 561 (internal quotation marks omitted). If the

plaintiff does not "nudge[] [her] claims across the line from conceivable to plausible, [her]

complaint must be dismissed." *Id.*

The *Twombly* plausibility standard consists of a "two-pronged approach." *Iqbal*, 556

U.S. at 679. Under the first prong, the Court identifies allegations that, "because they are no

more than conclusions, are not entitled to the assumption of truth." *Id.* The second prong

requires that "when there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"In the context of [§] 1983 municipal liability, district courts in the Sixth Circuit have

interpreted *Iqbal*'s standards strictly." *See, e.g.*, *Epperson v. City of Humboldt, Tenn.*, 140 F.

Supp. 3d 676, 685 (W. D. Tenn. 2015) (quoting *Hutchison v. Metro. Gov't of Nashville &*

*Davidson Cty.*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010)).

### B.    ARGUMENT

**1.    Plaintiff's official capacity claim against Chief Davis and her claim against Lt. Smith as an agent of the City should be dismissed because both claims are redundant with the claims against the City.**

The Court should dismiss Plaintiff's claim against Chief Davis "in her official capacity" and her claim against Lt. Smith "as an agent of the City" because such claims are nothing more than the claims made against the City itself.  Because the City is also named as a defendant in this lawsuit, the "official capacity" claim against Chief Davis and the claim against Lt. Smith "as an agent of the City" are redundant and should be dismissed.

A suit against a government official in his or her official capacity is "'only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell*, 436 U.S. at 690, n. 55).  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id*. at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)). When, as here, the entity is a named defendant, official capacity claims against police officers acting as agents of the entity are "redundant" and "superfluous." *Foster v. Michigan*, 573 Fed. Appx. 377, 390 (6th Cir. 2014).

Here, Plaintiff sued Chief Davis in her official capacity as the Chief of Police of the MPD and Lt. Smith as an agent of the City. (*See* Compl., ECF No. 1, PageID 1.) Plaintiff also sued the City. (*Id.*) Accordingly, Plaintiff's claims against Chief Davis in her official capacity and Lt. Smith as an agent of the City should be construed as claims against the City and, thus, dismissed with prejudice.

**2.    Plaintiff fails to plead sufficient facts to sustain her § 1983 claims against the City.**

Plaintiff's *Monell* claims against the City should be dismissed because she failed to plead

sufficient facts to sustain those claims. To prevail on a claim against a municipality under §1983, a plaintiff must establish both: (1) the deprivation of a constitutional right; and (2) the municipality's responsibility for that violation. *Doe v. Claiborne Cnty., Tenn. By and Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 505–506 (6th Cir. 1996).

It is well-settled that "a municipality cannot be held liable under § 1983 on a *respondeat superior* basis." *Mhoon v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, No. 3:16-cv-01751, 2016 WL 6250379, at *6 (M.D. Tenn. Oct. 26, 2016) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 432–33 (6th Cir. 2005)). Rather, municipal liability under § 1983 arises "when execution of a government's policy or custom ... inflicts the injury of a constitutional violation." *David v. City of Bellevue, Ohio*, 706 F. App'x 847, 850 (6th Cir. 2017) (quoting *Monell*, 436 U.S. at 694). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479–480 (1986)) (emphasis in original).

The Sixth Circuit recognizes four avenues by which a plaintiff can prove the existence of a municipality's illegal policy or custom: "1) the municipality's legislative enactments or official agency policies; 2) actions taken by officials with final decision-making authority; 3) a policy of inadequate training or supervision; or 4) a custom of tolerance or acquiescence of federal rights violations." *Thomas*, 398 F.3d at 429 (citations omitted).

Here, Plaintiff attempts to bring *Monell* claims alleging that the City adopted an official policy of disregard for citizen's constitutional rights, promoted a custom of tolerance for constitutional violations, and failed to train and supervise officers in the specialized units like the Scorpion Unit. As explained below, all of these claims fail as a matter of law.

10

         **a)**      **Plaintiff fails to state a claim that the City had an unlawful official policy condoning the rogue Officer Defendants' conduct.**

Plaintiff fails to point to an official policy authorizing the conduct alleged in the Complaint, because no official policy could plausibly exist. "[I]n *Monell* and subsequent cases, [the court has] required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) (citations omitted). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Id.* at 403-404. "To prevail on this theory under *Monell*, Plaintiff must identify "formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Sanders v. City of Memphis, Tennessee*, No. 221CV02585MSNCGC, 2022 WL 4665867, at *4 (W.D. Tenn. Sept. 30, 2022) (citation omitted).

Plaintiff "must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* at 404. In other words, "a plaintiff must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citation and internal quotation marks omitted).

Here, Plaintiff fails to plausibly identify any specific policy of the City, written or otherwise, that authorized the Officer Defendants to act in the reprehensible and outrageous

manner alleged in the Complaint.[6] Plaintiff did not point to any "formal rules of understandings" which establish that the City instructed its officers to employ the behavior alleged under these same—or any—circumstances "consistently and over time." *See Sanders*, No. 221CV02585MSNCGC at *4.

Instead, Plaintiff baldly asserts that Chief Davis "encouraged and authorized" the Scorpion Unit to "disregard and violate the Constitutional and Fourth Amendment rights of Memphis citizens . . . " (Compl., ¶¶ 300, 301.) Plaintiff did not point to a specific policy or facts which would show that the City encouraged or authorized any police officer to behave in such a manner—let alone the manner described in the Complaint. (*See id.*, ¶¶ 204-208.) Plaintiff implausibly alleges that the City, through its Chief of Police, maintained an official policy of authorizing officers to attack, assault, and use excessive force against a compliant individual, but Plaintiff fails to identify the specific policy that required its officers to act with impunity and in total disregard of established constitutional law. Such a policy does not exist.

Instead, Plaintiff's Complaint illustrates that Officer Defendants were not acting pursuant to any policy—official or otherwise— but rather that ***the Officer Defendants acted outside their duties as sworn police officers*** in brutally beating Mr. Nichols.

Simply put, it defies logic to presume that any police department or police chief would implement an *official policy* of authorizing its officers to unlawfully arrest and detain, assault, and use excessive force against a compliant individual. *See, e.g., Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d at 508 ("[Plaintiff] does not claim that the School Board had a custom of affirmatively condoning sexual abuse. **Clearly, no municipality**

---

[6] *Compare with* Complaint at ¶¶ 86-107, *Schaffer v. Chauvin*, No. 0:20-cv-01577-SRN-TNL (D. Minn. July 15, 2020). In *Schaffer*, which was filed by the same attorneys of record in this case and related to the death of George Floyd, the "official policy claim" was based on Minneapolis Police Department Policy 5-311, which authorized the use of neck restraints against individuals. Here, no such official policy of MPD is challenged.

**could have such a policy**.") Thus, Plaintiff fails to plausibly identify any official policy of the

City that gave rise to the alleged injuries, and the policy-based *Monell* claim must be dismissed.

### b)      Plaintiff fails to state a claim for an unlawful custom of tolerance under *Monell.*

Like the official policy allegations, Plaintiff fails to show how the City maintained a

custom of permitting the constitutional violations alleged in the Complaint. "[A] custom-of-

tolerance claim requires a showing that there was a pattern of inadequately investigating similar

claims." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).  A "custom" for purposes of

*Monell* liability must "be so permanent and well settled as to constitute a custom or usage with

the force of law." *Monell*, 436 U.S. at 691 (internal quotation marks and citation omitted); *see*

*also Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993), *cert. denied*, 510 U.S. 826

(1993). In turn, the notion of "law" must include "[d]eeply embedded traditional ways of

carrying out state policy." *Nashville, Chattanooga & St. Louis Ry. Co. v. Browning*, 310 U.S.

362, 369 (1940). It must reflect a course of action deliberately chosen from among various

alternatives. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985).  In short, a "custom" is a

"legal institution" not memorialized by written law.  *Feliciano*, 988 F.2d at 655.

Plaintiff alleges that the City "maintained a custom of tolerance for SCORPION Officers'

unreasonable search and seizure of individuals, use of excessive force, and the violation of the

Fourth Amendment prior to the violation of Tyre Nichols' constitutional rights and death."

(Compl., ¶ 314). Plaintiff further alleges that the custom "was so permanent, well-settled,

widespread, and commonly accepted within the Memphis Police Department as to constitute and

carry with it the force of law." (Compl., ¶ 315)

To support this claim, Plaintiff pleads allegations related to other alleged altercations

with the Scorpion Unit, (*Id.*, ¶ 105), but fails to plead if or when the City or Chief Davis was put

on notice of the specific incidents. Instead, Plaintiff alleges that "additional instances" were

13

brought to the attention of City leaders on December 6, 2022 by virtue of comments made during a City Council meeting, one month before Mr. Nichols' encounter, with no details as to these "additional instances" except for the fact that these "additional instances" **pre-dated** the formation of the Scorpion Unit. (*See id.*, ¶ 106, fn. 3). Notably, these "additional instances" also pre-date Chief Davis's tenure as Chief of Police. (*See id.*, ¶ 70). As such, Plaintiff's allegations are insufficient to show a **permanent and wide-spread custom** of tolerance or a pattern of inadequate investigation **similar claims** against the Scorpion Unit.

Plaintiff further asserts that despite the purported warning of incidents that pre-dated the formation of the Scorpion Unit, (*See id.*, ¶ 106, fn. 3), "the City of Memphis and Chief Davis did nothing to address the **SCORPION Unit's** tactics and practices and turned a blind eye." (*Id.*, ¶ 109). To state a municipal liability claim under an "custom of tolerance or "inaction" theory, Plaintiff must establish: (1) the existence of a **clear and persistent pattern** of misconduct by the **Scorpion Unit**; (2) **notice or constructive notice** on the part of the City of that misconduct; (3) the City's tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction; and (4) that the City's custom was the "moving force" or direct causal link in Mr. Nichols' constitutional deprivation. *See Sanders*, No. 221CV02585MSNCGC at *3 (citations and quotations omitted).

Plaintiff fails to allege a clear and persistent pattern of misconduct as to the Scorpion Unit or notice thereof on the City or Chief Davis. Plaintiff did not and cannot plead sufficient facts illustrating a "tacit approval of unconstitutional conduct" such that the City's alleged deliberate indifference in its alleged failure to act can be said to amount to an official policy of inaction. As Paragraph 105 illustrates, the only alleged Scorpion Unit encounter that was allegedly reported to internal affairs occurred a mere three days before the Scorpion Unit's encounter with Mr. Nichols—a far cry from illustrating a clear and persistent pattern of

14

inadequately investigating claims of misconduct as to the Scorpion Unit. *See Sanders*, No. 221CV02585MSNCGC at *3.

The allegation of purported warnings of police misconduct on December 6, 2022 fares no better (Compl., ¶¶ 106-109) as these alleged incidents pre-date the formation of the Scorpion Unit and are, therefore, insufficient to establish notice or constructive notice of a clear and persistent pattern of inadequately investigation claims of misconduct ***as to the Scorpion Unit***.

Accordingly, Plaintiff failed to sufficiently plead facts to support a claim for custom of tolerance *Monell* claim against the City Defendants.

### c)    Plaintiff fails to sufficiently plead a failure to train claim.

Plaintiff fails to sufficiently plead that MPD's training program was inadequate.  In fact, Plaintiff fails to make any specific allegations regarding the MPD's training program at all other than baseless conclusions that the City did not train its officers in Fourth Amendment-related issues.  (*See* Compl., ¶ 134). Instead, Plaintiff focuses on how she believes the Defendant Officers committed other violations and that MPD implemented lax hiring standards.  These allegations do not give rise to a failure to train claim under *Monell*.

It is well settled that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). To establish municipal liability on this basis, a plaintiff must show "'(1) the training program was inadequate to the task the officer must perform, (2) the inadequacy is a result of the municipality's deliberate indifference, and (3) the inadequacy is closely related to or actually caused the plaintiff's injury.'" *Epperson*, 140 F. Supp. 3d at 684 (citation and quotations omitted).  "Deliberate indifference requires a showing of 'prior instances of unconstitutional conduct demonstrating that the municipality has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *Id.*

15

(quoting *Bonner–Turner v. City of Ecorse*, 627 Fed. Appx. 400, 414, 2015 WL 5332465, at *13

(6th Cir. 2015).

Without providing any specific details, Plaintiff concludes that the City failed to train its

officers on subject matters that are so basic and fundamental, even the Complaint characterizes

them as those "constitutional bounds of their police duties." (Compl., ¶ 328.)  Plaintiff baldly

states that the City failed to offer specialized training on *Terry* stops; reasonable suspicion;

probable cause; traffic stops; foot pursuits; the Fourth Amendment; and the use of force, batons,

tasers, pepper spray, and deadly force.  Plaintiff ultimately concludes that the City was

deliberately indifferent to the need to train its officers and that Mr. Nichols's death was a "highly

predictable consequence" of the City's failure to train.  (*Id.*, ¶¶ 339, 344.)

This is not enough to establish a failure to train claim. A recent case from this Court is

instructive. In *Boddy v. City of Memphis, Tennessee*, the Sixth Circuit rejected similar conclusory

allegations.  No. 22-5259, 2022 WL 12258977, at *3 (6th Cir. 2022).  There, the Court described

the complaint as "filled with conclusory assertions that the City does not train or supervise its

police officers and sanctions a wide variety of illegal police practices, ranging from the use of

excessive force to the failure to discharge officers who have repeatedly used excessive force."

*Id.*  The court concluded that the complaint was "bereft, however, of any factual allegations that

could plausibly support these sweeping assertions. [Plaintiff] does not allege a single fact related

to the training the City provides its police officers, any prior incidents involving ***comparable***

uses of force by [the officers involved], or anything else that would plausibly suggest that the

City maintained a policy or custom that contributed to the alleged deprivations of [Plaintiff's]

constitutional rights."  *Id.* (emphasis added); *see also Sweat v. Butler*, 90 F. Supp. 3d 773, 782–

83 (W.D. Tenn. 2015) (granting motion to dismiss on failure to train allegations where the

plaintiff focused on the officer's prior work history, alleged misconduct, and a failure to

16

discipline given that "the allegations [did] not make a failure to train claim plausible because none of them concern[ed] training practices or a lack thereof.")  So too here.

Significantly, Plaintiff also fails to connect how any level of training could prevent five rogue officers from punching, kicking and striking with a baton an individual for seven straight minutes, as alleged in the Complaint.  The only plausible inference one can make from Plaintiff's allegations is that the Officer Defendants were acting *outside the bounds of their training* as MPD officers.  No amount of training or policies could have prevented five rogue officers from acting in this manner—outside the scope of their employment and in contravention of Mr. Nichols's rights in such a manner as Plaintiff alleges.

For these reasons, Plaintiff's failure-to-train claim must be dismissed.

>    **d)    Plaintiff fails to sufficiently plead a failure to supervise claim.**

Plaintiff's failure to supervise claim fares no better. The legal standards for a claim of inadequate supervision and one of inadequate training are essentially the same.  *Okolo v. Metro. Gov. of Nashville*, 892 F. Supp. 2d 931, 943 (M.D. Tenn. 2012).  Again, Plaintiff broadly concludes that MPD failed to sufficiently supervise the Scorpion Unit.

To state a municipal liability claim under an "inaction" theory, such as failure to supervise, Plaintiff must establish: (1) the existence of a clear and persistent pattern of misconduct by the MPD officers; (2) notice or constructive notice on the part of the City of that misconduct; (3) the City's tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction; and (4) that the City's custom was the "moving force" or direct causal link in plaintiff's  constitutional deprivation.  *See Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d at 508.  To establish deliberate indifference, Plaintiff must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice

that the [supervision] in this particular area was deficient and likely to cause injury." *Miller v. Sanilac County*, 606 F.3d 240, 255 (6th Cir. 2010).

As an initial matter, Plaintiff's claim that MPD maintained a widespread practice of failing to supervise members of the Scorpion Unit is undercut by the fact that Plaintiff acknowledges that Lt. Smith, a supervisor of the Scorpion Unit, arrived on the scene on the night of the incident.  (*See* Compl., ¶ 255.) Even assuming *arguendo* that Lt. Smith's supervision was insufficient on that day, that one instance is not enough to establish the "existence of a clear and persistent pattern of misconduct by the [supervisors]." *See Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d at 508.

For the failure to supervise claim, Plaintiff offers only conclusory statements that the City failed to supervise officers in specialized units.  (*Id.*, ¶¶ 350–76.)  Further, Plaintiff alleges no comparable incidents that would have put the City on notice of a failure to supervise.  Plaintiff's conclusory allegations that MPD failed to provide supervision do not meet the threshold plausibility standard and should be dismissed.

> **3.** **Plaintiff's state law claims against the City for intentional infliction of emotional distress and fraudulent misrepresentation should be dismissed under Tennessee's Governmental Tort Liability Act.**

Plaintiff's intentional tort claims are barred by Tennessee's Governmental Tort Liability Act ("the GTLA")**.** "State law claims against governmental entities and their employees are governed by the GTLA." *Epperson*, 140 F. Supp. 3d at 689 (citing Tenn. Code Ann. § 29-20-101). The GTLA waives common law sovereign immunity and permits litigants to sue municipalities for injuries sounding in negligence. *Partee v. City of Memphis*, 449 F. App'x 444, 447 (6th Cir. 2011) (citing Tenn. Code Ann. § 29–20–205). However, "statutes which waive immunity of the governmental entity from suit are to be construed strictly in favor of the sovereign." *Siler v. Scott*, 591 S.W.3d 84, 104 (Tenn. Ct. App. 2019) (quoting *Hughes v. Metro.*

18

*Gov't of Nashville & Davidson Cty.*, 340 S.W.3d 352, 368–69 (Tenn. 2011)). All claims for damages brought under the GTLA must strictly comply with the GTLA. *Limbaugh v. Coffee Medical Ctr.*, 59 S.W.3d 73, 82 (Tenn. 2001).

The GTLA contains a list of specific exceptions for which municipalities such as the City retain immunity. *See* Tenn. Code Ann. § 29-20 205(1)- (10). One is the "intentional tort exception," which bars claims for injuries arising out of "[f]alse imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, **deceit**, interference with contract rights, **infliction of mental anguish**, invasion of right of privacy, or **civil rights**." Tenn. Code Ann. § 29-20-205(2) (emphasis added); *Limbaugh*, 59 S.W.3d at 81. The reference to "civil rights" has been interpreted to include claims arising under § 1983. *Partee*, 449 F. App'x 444, 448 (citing *Johnson v. City of Memphis*, 617 F.3d 864, 872 (6th Cir. 2010)).

Another exception is the "misrepresentation exception," which bars claims for injuries arising out of "[m]isrepresentation by an employee whether or not such is negligent or intentional." Tenn. Code Ann. § 29-20-205(6); *Justice v. Anderson County*, 955 S.W.2d 613 (Tenn. Ct. App. 1997); *Barnes v. Bradley County Mem. Hosp.*, 161 Fed. App'x 555 (6th. Cir. 2006).

> a)    **Plaintiff's claim against the City for intentional infliction of emotional distress is barred under § 29-20-205(2) of the GTLA.**

Plaintiff's intentional infliction of emotional distress claim against the City is expressly barred by the "infliction of mental anguish" category of the intentional tort exception under Tenn. Code Ann. § 29-20-205(2). Plaintiff alleges that Defendant Lt. Smith acted "with the intent to deceive, lie to, and manipulate" Plaintiff, and that he "intentionally lied to and withheld information" from Plaintiff on January 7, 2023. (Compl., ¶¶ 835, 837.) The City retains immunity from all such claims under the GTLA. *See* Tenn. Code Ann. § 29-20-205(2);

19

*Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 853 (E.D. Tenn. 2011*); Stapp v. Wall*, No. 3:08-cv-0101, 2008 WL 11510613, at *7 (M.D. Tenn. Oct. 6, 2008) ("[T]he reference to 'infliction of mental anguish' in the GTLA applies . . . to intentional infliction of emotional distress [claims].") (citing *Sallee v. Barrett*, 171 S.W.3d 822 (Tenn. 2005)).

Additionally, Plaintiff's intentional infliction of emotional distress claim against the City is barred by the "deceit" category of the intentional tort exception. *See* Tenn. Code Ann. § 29-20-205(2) ("Immunity from suit of all governmental entities is removed … except if the injury arises out of … *deceit* …".). Thus, Plaintiff's intentional infliction of emotional distress claim against the City must be dismissed.

**b)    Plaintiff's claim of fraudulent misrepresentation is also barred by the GTLA.**

The Court should dismiss Plaintiff's fraudulent misrepresentation claim against the City because it is barred under the "misrepresentation exception" in § 29-20-205(6) of the GTLA.

Here, Plaintiff's Complaint alleges that Lt. Smith knowingly made false representations to Plaintiff on January 7, 2023 regarding the condition of her son.  (*See* Compl, ¶¶ 859-870).  Under the GTLA, however the City is immune from claims for injuries arising from "misrepresentation by an employee whether or not such is negligent or intentional." Tenn. Code Ann. § 29–20–205(6). Since it is alleged that Lt. Smith was acting as an agent of the City when he allegedly made the fraudulent misrepresentations, the City is immune from any such fraudulent misrepresentations under Tenn. Code Ann. § 29–20–205(6).

**c)    Plaintiff's negligent infliction of emotional distress claim is a fraudulent misrepresentation claim framed as a claim for negligent infliction of emotional distress.**

The Court should dismiss Plaintiff's claim for negligent infliction of emotional distress because it is essentially a claim for fraudulent misrepresentation disguised as a claim for negligent infliction of emotional distress. Plaintiff's negligent infliction of emotional distress

20

claim against Lt. Smith as an agent of the City of Memphis is based on the same alleged

misrepresentations and lies to Ms. Wells on January 7, 2023 that gave rise to her fraudulent

misrepresentation claim. (Compl., ¶¶ 255-282, 849.) As such, it is barred by the

misrepresentation exception contained in Tenn. Code Ann. § 29-20-205(6).

Plaintiff cannot circumvent the immunity provided by the GTLA immunity by couching

her misrepresentation claim as one of negligent infliction of emotional distress. To support a

claim for negligent infliction of emotional distress, Plaintiff must adequately allege that

"**defendant's negligence** 'caused a serious or severe emotional injury,'" *Brown v. Regions

Bank*, No. 2:19-CV-2356-JPM-TMP, 2019 WL 13297196, at *4 (W.D. Tenn. Nov. 14, 2019),

not that defendant's ***negligent misrepresentation*** caused her injury. This is so because the City

is immune from claims for injuries arising from "misrepresentation by an employee ***whether or

not such is negligent or intentional***." Tenn. Code Ann. § 29–20–205(6) (emphasis added).

Accordingly, Plaintiff's negligent infliction of emotional distress claim must be dismissed.

## CONCLUSION

For these reasons, the City respectfully requests this Court to grant its Motion to Dismiss

in its entirety.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.**

*s/ Bruce McMullen*
Bruce McMullen (#18126)
Jennie Vee Silk (#35319)
Freeman B. Foster (#23265)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 526-2000
bmcmullen@bakerdonelson.com
jsilk@bakerdonelson.com
ffoster@bakerdonelson.com

21

4871-5406-3471

*Attorneys for Defendant City of Memphis,*
*Chief Cerelyn Davis in her Official*
*Capacity, and Dewayne Smith as Agent of*
*the City of Memphis*

## CERTIFICATE OF SERVICE

I, Bruce McMullen, hereby certify that on July 7, 2023, I electronically filed the foregoing

with the clerk of the court by using the CM/ECF system, and that upon filing, such system will

serve a copy of the foregoing upon all counsel of record in this action.

*s/ Bruce McMullen*
Bruce McMullen

4871-5406-3471