IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| ROW VAUGHN WELLS, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF TYRE DEANDRE NICHOLS, DECEASED, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) ) | CASE NO. 2:23-CV-02224 JURY DEMAND |
| THE CITY OF MEMPHIS, A MUNICIPALITY; CHIEF CERELYN DAVIS, IN HER OFFICIAL CAPACITY; EMMITT MARTIN III, IN HIS INDIVIDUAL CAPACITY; DEMETRIUS HALEY, IN HIS INDIVIDUAL CAPACITY; JUSTIN SMITH, IN HIS INDIVIDUAL CAPACITY; DESMOND MILL, JR. IN HIS INDIVIDUAL CAPACITY; TADARRIUS BEAN, IN HIS INDIVIDUAL CAPACITY; PRESTON HEMPHILL, IN HIS INDIVIDUAL CAPACITY; ROBERT LONG, IN HIS INDIVIDUAL CAPACITY; JAMICHAEL SANDRIDGE, IN HIS INDIVIDUAL CAPACITY; MICHELLE WHITAKER, IN HER INDIVIDUAL CAPACITY; DEWAYNE SMITH, IN HIS INDIVIDUAL CAPACITY AND AS AGENT OF THE CITY OF MEMPHIS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO STRIKE ALLEGATIONS FROM COMPLAINT**

Defendants the City of Memphis ("the City"), Chief Cerelyn Davis in her Official

Capacity ("Chief Davis"), and Dewayne Smith as Agent of the City of Memphis ("Lt. Smith")

(collectively, "the City Defendants"), submit this Memorandum in Support of their Motion to

1

Strike Allegations From Plaintiff Row Vaughn Wells' ("Plaintiff") Complaint (ECF. No. 1) under Rule 12(f) of the Federal Rules of Civil Procedure.

The City Defendants respectfully request this Court enter an Order striking all allegations related to the RED DOG Unit in Paragraphs 3 and 4 of the unenumerated Preliminary Statement, Paragraphs 50 through 68, Paragraphs 78 through 79, Paragraph 82, Paragraphs 87 through 89, and Paragraph 94 (collectively "Offending Portions") of the Complaint under Rule 12(f) of the Federal Rules of Civil Procedure, as they are "immaterial, impertinent, or scandalous" statements that are unduly prejudicial to the City Defendants and have no bearing on or relevance to Plaintiff's alleged claims against the City.

## I. BACKGROUND AND THE OFFENDING PORTIONS

On April 19, 2023, Plaintiff, individually and as Administratrix Ad Litem of the Estate of Tyre Deandre Nichols ("Nichols"), filed this Complaint (ECF No. 1) alleging 42 U.S.C. § 1983 and state law claims against the City Defendants, six Memphis Police Department ("MPD") officers ("Officer Defendants") in their individual capacity, three Memphis Fire Department Emergency Medical Technician's in their individual capacity, and Lt. Smith in both his individual capacity and as an agent of the City of Memphis.

Plaintiff alleges that on January 7, 2023, Officer Defendants, as members of MPD's Scorpion Unit, stopped Nichols without any reasonable, articulable suspicion. (Compl., ¶ 44.) Plaintiff alleges that Officer Defendants then unlawfully detained Mr. Nichols and brutally beat him. (*Id.*, ¶¶ 45, 46.) Plaintiff further alleges that "numerous other government employees from the Memphis Police Department, the Memphis Fire Department, and the Shelby County Sheriff stood by apathetically as Tyre laid bloodied and battered on the street." (*Id.*, ¶ 48.) Plaintiff pleads that Mr. Nichols ultimately died from his injuries as a direct result of the policies and

2

4895-9180-5807

practices or the City of Memphis which were the moving force behind the Officer Defendants unconstitutional "stop, assault, and use of force." (*Id.*) The claims against the City Defendants are based on Plaintiff's allegation that the City and Chief Davis authorized the Officer Defendant's conduct through an official policy, a custom of tolerance, a failure to train, and a failure to supervise. (*See* Compl.)

In support of Plaintiff's allegations against the City and Chief Davis, Plaintiff pleads allegations pertaining to Chief Davis and Assistant Chief of Police Shawn Jones' (who is not a party-defendant) involvement with a disbanded Atlanta-based police unit called the RED DOG Unit from 2006 to 2009—more than fourteen years ago. (*See* Compl., Offending Portions.) Plaintiff alleges that Chief Davis and Assistant Chief Jones' history with the Atlanta Police Department and their involvement with the RED DOG Unit should have given the City pause before hiring them. (*See id.*, ¶¶ 52, 53.) Further, Plaintiff alleges that the Scorpion Unit was designed and operated in a similar manner as the RED DOG Unit. (*See id.* ¶¶ 78, 79, 94.)

The Offending Portions in the Complaint include:

- references to the RED DOG Unit in unenumerated Preliminary Statement Paragraphs three (3) and four (4) (ECF No. 1, PageID 2-3);
- the entire statements in Paragraphs 50 through 68 (*Id.* at PageID 13-15);
- references to the RED DOG Unit in Paragraphs 78 and 79 (*Id.* at PageID 16);
- Paragraph 82 (*Id.*);
- Paragraphs 87 through 89 (*Id.* at PageID 17); and
- Paragraph 94 (*Id.* at PageID 94).

The above cited material contains allegations that are "immaterial, impertinent, or scandalous" and should be stricken as a result. Along with having no bearing on the City's

3

alleged liability in this case, the allegations are unduly prejudicial. Accordingly, in the interest of justice and focused adjudication, the Court should strike all Offending Portions of the Complaint.

## II.     LAW AND ARGUMENT

### A.     Legal Standard

Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  A court may strike portions of the pleading acting on its own initiative or "on a motion made by a party . . . before responding to the pleading." *Id.*  "The function of the motion [to strike] is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with them early in the case." *Operating Engineers Loc. 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045 (6th Cir. 2015).

 Courts are given considerable discretion in deciding whether to strike portions of pleadings under Rule 12(f).  *Penman v. Correct Care Sols.*, No. 5:18-CV-58-TBR, 2018 WL 6241621, at *1 (W.D. Ky. Nov. 28, 2018) (citations omitted).  Although motions to strike are generally disfavored, the court's discretion is often appropriate "since in many instances a motion to strike redundant, impertinent, immaterial, or scandalous matter is designed to eliminate allegations from the pleadings that might cause prejudice at some later point in the litigation." *Hill v. Herbert Roofing & Insulation, Inc.*, No. 13-CV-11228, 2014 WL 234217, at *1 (E.D. Mich. Jan. 22, 2014) (quoting § 1380 Motion to Strike—In General, 5C Fed. Prac. & Proc. Civ. § 1380 (3d ed.)).  A motion to strike should be granted where the pleading contains immaterial allegations that have no bearing on the subject matter of the litigation. *McKinney v. Bayer Corp.*, No. 10–CV–224, 2010 WL 2756915, at *1 (N.D. Ohio July 12, 2010).

For purposes of Rule 12(f), an "immaterial matter" is "that which has no bearing on the subject matter of the litigation." *Id.* (citations omitted). An "impertinent matter" is "any

4

allegation not responsive or relevant to the issues involved in the action and which could not be put in issue or be given in evidence between the parties." *Brashier v. Manorhouse Mgmt., Inc.*, No. 3:20-CV-294-CLC-HBG, 2020 WL 12846638, at *1 (E.D. Tenn. Sept. 18, 2020) (quotations and citations omitted).

"Scandalous" allegations are those that "unnecessarily reflect[] on the moral character of an individual or state[] anything in repulsive language that detracts from the dignity of the court.'" *L & L Gold Associates, Inc. v. Am. Cash for Gold, LLC*, No. 09-10801, 2009 WL 1658108, at *1 (E.D. Mich. June 10, 2009) (quoting *Cobell v. Norton*, 224 F.R.D. 1, 5 (D.D.C. 2004)). "Scandalous allegations that improperly cast a derogatory light on a party will be stricken, especially if they are immaterial or irrelevant, or 'may cause the objecting party prejudice.'" *Brashier*, 2020 WL 12846638, at *1 (quoting *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992)).

Section 1983 creates a federal cause of action against state or local officials who deprive a person of a federal right while acting under the color of state law. 42 U.S.C. § 1983. To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.*

To establish a municipality's illegal policy or custom, a plaintiff may look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

**B.  The Court should strike all allegations related to the RED DOG unit as immaterial to Plaintiff's Complaint.**

Plaintiff supports her claims against the City by pleading allegations related to the Atlanta-based RED DOG Unit's alleged practices and constitutional violations, none of which establishes that *the City of Memphis* was the moving force or a direct causal link in Mr. Nichols' alleged constitutional deprivation. Under no variation of municipal liability would the allegations regarding the RED DOG Unit allegations from over fourteen years ago be material to the City's alleged liability in this case. For example, the Complaint alleges:

> 52. Chief Davis' history with the Atlanta Police Department and her time working on the RED DOG (Run Every Drug Dealer Out of Georgia) Unit should have been a red flag for the City of Memphis prior to hiring Davis as Chief.
>
> 53. Assistant Chief Jones' history with the Atlanta Police Department and his time working on the RED DOG Unit should have been a red flag for the City of Memphis prior to hiring Jones as Assistant Chief.

Compl., ¶¶ 52-53.)

Any alleged past wrongs of the RED DOG Unit are irrelevant to the City's alleged liability in this case and only serve to prejudice the City. The alleged constitutional violations of the RED DOG Unit do not relate to the MPD unit at issue here—the Scorpion Unit. These are two different police units that were established to serve two different municipalities— and their existence was separated by decades of time. As such, any reference to the RED DOG Unit is immaterial and should be stricken. *See, e.g.*, *McKinney*, No. 10-CV-224 at *2 (granting a motion to strike and finding "Plaintiff's allegations regarding [Defendant's] other products and past settlements have no apparent relation to the claims asserted in this case, particularly since none of the allegations in Paragraph 56 relate to the . . . Products *at issue here*.) Further, the City cannot be held liable under *Monell* based on the alleged constitutional violations of an old and

6

disbanded police unit established in a completely different jurisdiction because these allegations do not support the allegations of deliberate conduct on the part of the City.

Plaintiff pleads allegations regarding the alleged process and procedures of the Atlanta-based RED DOG Unit in an attempt to liken its alleged customs to that of the City's Scorpion Unit. For example, the Complaint alleges:

> 57. The RED DOG Unit was comprised of over 30 officers working on larger teams of 4-7 officers whose mission was to engulf high-crime areas.
>
> 58. The RED DOG Unit became infamous for their practices of "jumping out" to ambush Atlanta citizens and aggressively harass them and strip search them in public.
>
> 59. Functioning like a gang, the RED DOG Unit also regularly presented false information to obtain warrants and that they cut corners to make more time for lucrative side jobs providing additional security to businesses, often while on duty, and receiving cash payments.

(Compl., ¶¶ 57-59.)

These paragraphs are clearly irrelevant and immaterial, and they do not advance Plaintiff's case. Even if the exact same conduct was alleged by the City of Memphis, the City's alleged liability in this case cannot turn on the alleged similarities between the Scorpion Unit and Atlanta's RED DOG Unit.

Moreover, the Offending Portions confuse the issues in this case. The allegations related to Atlanta's 2006 RED DOG Unit are confusing as to (1) whether the *City of Memphis* maintained an official policy as to the *Scorpion Unit*, (2) whether the *City of Memphis* maintained a custom of tolerance as to the *Scorpion Unit*, (3) whether the *City of Memphis* failed to supervise the *Scorpion Unit*, or (4) whether the *City of Memphis* failed to train the *Scorpion Unit*. These allegations only serve to confuse the trier of fact, and thus prejudice the City. *See Daniels v. United Parcel Serv., Inc.*, No. 02 C 9068, 2004 WL 574666, at *2 (N.D. Ill. Mar. 22, 2004) (citing *Cumis Ins. Soc'y, Inc. v. Peters*, 983 F. Supp. 787, 798 (N.D.Ill.1997)) (The Court

7

may exercise its Rule 12(f) power when "the challenged allegation has the effect of confusing the issues …").

As such, these allegations should be stricken.

**C.     The allegations related to the RED DOG unit are scandalous and highly prejudicial to the City Defendants.**

Along with being immaterial and impertinent, the Offending Portions are also scandalous. (*See* Compl., ECF No. 1, PageID 2) ("History would repeat itself as Davis and Jones reverted back to their RED DOG days in Atlanta.")). For example, the Complaint alleges:

> 60. In ***2006***, just months into Chief Davis' time as a Commander in the RED DOG Unit, three narcotics officers shot and killed a 92-year-old woman in a drug raid gone wrong.
>
> 61. According to prosecutors of those narcotics officers, their "routine violations of the Fourth Amendment led to the death of an innocent citizen."

(*Id.*, ¶¶ 60-61.)

These allegations[1] are nothing more than attempt to inflame public opinion against Chief Davis and the MPD. They have no bearing on the City or Chief Davis's alleged liability in a case nearly fifteen years later in a different jurisdiction, especially where the City can only be held liable for its own deliberate actions. These allegations disparage Chief Davis for her alleged actions with a different police department over fourteen years before she assumed the role of Chief of Police of the MPD. *See Brashier*, 2020 WL 12846638, at *1 ("Scandalous allegations that improperly cast a derogatory light on a party will be stricken, especially if they are immaterial or irrelevant, or 'may cause the objecting party prejudice.'").

---

[1] Chief Davis was never Commander of the RED DOG Unit. She was the Major over Special Operations, and the RED DOG Unit was just one division of many in Special Operations. The RED DOG Unit was about fifteen years old when she took the post, and she held the post for only a few months. Asst. Chief Shawn Jones was never involved with Special Operations or the RED DOG Unit.

8

## CONCLUSION

Plaintiff's inclusion of the allegations related to the RED DOG Unit are nothing more than an attempt to bolster the threadbare claims of *Monell* liability against the City Defendants. Instead of supporting her *Monell* claims with relevant, pertinent, and current facts pertaining to MPD, Plaintiff attempts to stretch back in time almost fifteen years to raise allegations about a unit in another city's police department to support her claims. This is an extreme reach, and these allegations cannot plausibly support *Monell* liability on the part of MPD.

Accordingly, the Court should strike the prejudicial Offending Portions.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**

*s/ Bruce McMullen*
Bruce McMullen (#18126)
Jennie Vee Silk (#35319)
Freeman B. Foster (#23265)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 526-2000
bmcmullen@bakerdonelson.com
jsilk@bakerdonelson.com
ffoster@bakerdonelson.com

*Attorneys for Defendant City of Memphis, Chief Cerelyn Davis in her Official Capacity, and Dewayne Smith as Agent of the City of Memphis*

## CERTIFICATE OF SERVICE

I, Bruce McMullen, hereby certify that on July 7, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, and that upon filing, such system will serve a copy of the foregoing upon all counsel of record in this action.

<u>*s/ Bruce McMullen*</u>
Bruce McMullen

4895-9180-5807