**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

|  |  |  |
|---|---|---|
| ROW VAUGHN WELLS, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF TYRE DEANDRE NICHOLS, DECEASED, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | CASE NO. 2:23-CV-02224 JURY DEMAND |
| THE CITY OF MEMPHIS, A MUNICIPALITY; CHIEF CERELYN DAVIS, IN HER OFFICIAL CAPACITY; EMMITT MARTIN III, IN HIS INDIVIDUAL CAPACITY; DEMETRIUS HALEY, IN HIS INDIVIDUAL CAPACITY; JUSTIN SMITH, IN HIS INDIVIDUAL CAPACITY; DESMOND MILLS, JR. IN HIS INDIVIDUAL CAPACITY; TADARRIUS BEAN, IN HIS INDIVIDUAL CAPACITY; PRESTON HEMPHILL, IN HIS INDIVIDUAL CAPACITY; ROBERT LONG, IN HIS INDIVIDUAL CAPACITY; JAMICHAEL SANDRIDGE, IN HIS INDIVIDUAL CAPACITY; MICHELLE WHITAKER, IN HER INDIVIDUAL CAPACITY; DEWAYNE SMITH, IN HIS INDIVIDUAL CAPACITY AND AS AGENT OF THE CITY OF MEMPHIS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**REPLY IN SUPPORT OF MOTION TO DISMISS OF THE CITY OF MEMPHIS, CHIEF CERELYN DAVIS IN HER OFFICIAL CAPACITY, AND DEWAYNE SMITH AS AN AGENT OF THE CITY**

1

Defendants the City of Memphis ("the City"), Chief Cerelyn Davis in her Official Capacity ("Chief Davis"), and Dewayne Smith as Agent of the City of Memphis ("Lt. Smith")[1] (collectively, "the City Defendants"), submit this Reply in Support of their Motion to Dismiss (ECF No. 81.)

## I.   <u>INTRODUCTION</u>

The City supports the Plaintiff in Plaintiff's action against Defendants Emmitt Martin III ("Martin"), Demetrius Haley ("Haley"), Justin Smith ("J. Smith"), Desmond Mills, Jr. ("Mills"), and Tadarrius Bean ("Bean") (collectively, "Defendant Officers"), who are undeniably the parties responsible for Tyre Nichols's ("Mr. Nichols") death.

Plaintiff, however, also filed *Monell* claims against the City. Plaintiff's allegations against the City in support of those *Monell* claims are wholly insufficient to state a claim under Rule 8. Plaintiff's *Monell* claims depend on several implausible and conclusory allegations such as: "Chief Davis instructed SCORPION Officers to focus on an all-out strategy of seizing property from Memphis citizens in complete disregard of the United States Constitution and the Fourth Amendment" (Compl., ECF No. 1, ¶ 81); "Chief Davis instructed the SCORPION Unit and advocated to stop citizens and deprive them of their property unconstitutionally…." (*id.*, ¶ 82); and Chief Davis and other supervisors encouraged officers "to engage in searches and seizures when there was no basis to do so in violation of the Fourth Amendment." (*Id.*, ¶ 88.)

These implausible and conclusory leaps are a bridge too far. Not only is it not plausible that Chief Davis ***instructed her officers to intentionally and willfully violate the constitutional rights of Memphis citizens***, it is even less plausible that Chief Davis did so when—if the Court accepts Plaintiff's allegations as true—Chief Davis had firsthand knowledge of the ramifications of such constitutional violations through her past experiences in Atlanta. This is not plausible.

---

[1] The City does not represent or respond on behalf of Lt. Smith in his individual capacity.

The Court need not accept as true that Chief Davis intentionally ***created a copy of a failed unit that was disbanded because of constitutional violations,***[2] nor must it accept as true the implausible, conclusory assertions ***that Chief Davis's policy was to deprive citizens of their constitutional rights***.  With these implausible allegations, Plaintiff's Complaint strains—and fails— to support the *Monell* claims against the City.

For these reasons and the additional reasons below, Plaintiff's causes of action against the City should be dismissed.

## II.    PLAINTIFF FAILED TO REHABILITATE THE *MONELL* CLAIMS AGAINST THE CITY

Plausibility is the lens through which the Court should evaluate—and dispense of—Plaintiff's allegations supporting the *Monell* claims. This Court recently recognized that premise and stated: "[i]f a court, relying on its judicial experience and common sense, determines that the claim is not plausible, the case may be dismissed at the pleading stage." *Griham v. City of Memphis, Tennessee*, No. 2:21-CV-02506-MSN, 2022 WL 989175, at *1 (W.D. Tenn. Mar. 31, 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009))."'[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

"The complaint will be found plausible on its face only when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556). "While a complaint need not include detailed factual allegations, a plaintiff's "[t]hreadbare recitals of the

---

[2] Moreover, it stretches the bounds of relevance and materiality to allege that a former unit of a police department in another city— ***that has not been in existence for at least twelve years***— has any relevance to this lawsuit. The City has moved to strike the allegations regarding the RED DOG unit in its Motion to Strike (ECF No. 82), and the City incorporates the arguments in the briefing thereto herein.

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556) (emphasis added)). "'[T]he factual allegations need not be overly detailed, but nor can they merely recite the elements of a cause of action and make a 'the-defendant-did-it' allegation.'" *Id.* (quoting *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 759 (6th Cir. 2020) (emphasis added)).

Plaintiff's allegations supporting the *Monell* claims are either implausible on their face and/or "mere conclusory statements," neither of which suffice to state a claim upon which relief can be granted.

A.    **Plaintiff's Response Failed to Rehabilitate the Claim for Unlawful Custom of Tolerance under *Monell*.**

Plaintiff asks this Court to accept as true a litany of implausible allegations in support of the custom of tolerance claim, which include, but are not limited to, that "Chief Davis instructed SCORPION Officers to focus on an all-out strategy of seizing property from Memphis citizens in complete disregard of the United States Constitution and the Fourth Amendment." (Compl., ECF No. 1, ¶ 81); "Chief Davis instructed the SCORPION Unit and advocated to stop citizens and deprive them of their property unconstitutionally…." (*id.*, ¶ 82); and Chief Davis and supervisors encouraged officers "to engage in searches and seizures when there was no basis to do so in violation of the Fourth Amendment."  (*Id.*, ¶ 88.)

Plaintiff concludes that the City maintained "a custom of tolerance for SCORPION Officers' unreasonable search and seizure of individuals, use of excessive force,[3] and—more

---

[3] Plaintiff mistakenly asserts that the City has no written policy on the use of force in its 15-Chapter Policy and Procedures manual found at https://memphispolice.org/wp-content/uploads/2023/06/2023_MPD_POLICY_AND_PROCEDURES_FULL_6-27-2023.pdf. (Response, ECF No. 94, PageID 810, n. 4.) Not so. *See* Chapter II, Section 8: Response to Resistance, which is an entire chapter dedicated the use of force.

generally—the violation of the Fourth Amendment." (Response, ECF No. 94, PageID 810 (citing Compl., ECF No. 1, ¶ 314).)

These "allegations" and "mere conclusory statements," as this Court noted, "do not suffice" to state a sufficient claim against the City. *Griham*, 2022 WL 989175, at *1.

Moreover, Plaintiff's custom of tolerance *Monell* claim depends on the implausible allegation that Chief Davis "first designed, ordered, and endorsed [these unconstitutional] policies for SCORPION officers;" and because she designed, ordered, and endorsed these practices, the City obviously had notice of the unconstitutional polices, or so the argument goes. (ECF No. 94, PageID 809.) But this implausible, circular pleading is not enough to sustain a custom of tolerance claim in the Sixth Circuit.

It is well settled that "a 'custom' can give rise to municipal liability when the 'practice is so widespread as to have the force of law.'" *Id.* at *2 (citing *North v. Cuyahoga Cnty.*, 754 F. App'x 380, 386 (6th Cir. 2018)). However, Plaintiff's conclusory and implausible allegations do not support Plaintiff's theory that MPD had a widespread custom of constitutional deprivations.

This Court's ruling in *Griham* is directly on point. In *Griham*, the Court dismissed the plaintiff's custom of tolerance claims against the City based on the conclusory allegations that the City sanctioned eleven customs that triggered liability under *Monell* including:

(1) Using unreasonable and excessive force to carry out detentions and/or arrests.

(2) Arbitrarily using arrests when they are not necessary or permitted by law.

(3) Ignoring the serious need for training and supervision of its Officers regarding its policies and procedures when conducting detentions and/or arrests.

(4) Failing to adequately supervise and/or observe its Officers.

(5) Failing to adequately train Officers regarding the availability of alternative means other than the use of arrests, force, or excessive force without probable cause.

(6) Failing to discharge Officers who have shown a pattern or practice of falsely arresting citizens.

5

(7) Failing to exclude Officers who have shown a pattern or practice of misbehavior and using excessive force from taking part in the execution of warrants.

(8) Failing to adequately screen Officers who have shown a pattern or practice of using excessive force before hiring said officer.

(9) Failing to inform future employer of Officers who have shown a pattern or practice of using excessive force when future employer has inquired;

(10) Failing to discharge Officers who have shown a pattern or practice of using excessive force; and

(11) Adopting a practice whereby Officers who are unfit for peace Officer duties, as shown by prior actions in the line of duty, are allowed to retain their positions.

*Griham*, 2022 WL 989175 at *4.

This Court found that the plaintiffs' allegations in (1), (2), and (11) lacked sufficient facts to show the City had a "fixed plan of action" that manifested as a practice with "the force of law." *Id.* (citations omitted). *See also Birgs v. City of Memphis,* 686 F. Supp. 2d 776, 780 (W.D. Tenn. 2010) (dismissing complaint under Rule 12(b)(6) because it "contain[ed] no facts that could plausibly lead one to believe that the City deliberately ignored a history of abuse by officers in the Memphis Police Department.")).

Here, just as in *Griham*, Plaintiff's allegations lack sufficient factual basis to establish that the City had a fixed plan of action that manifested as a practice with the force of law.

Not only are Plaintiff's custom of tolerance allegations implausible and unsupported by factual allegations, but they are also deficient because they do not allege how or when the City was on notice of these alleged unlawful activities. To demonstrate that a municipality follows a "custom of tolerance" or inaction toward constitutional harm, the Sixth Circuit "require[s] plaintiffs to show (1) a 'clear and persistent pattern' of misconduct, (2) **notice or constructive notice on the part of the municipality**, (3) the defendant's tacit approval of the misconduct, and (4) a direct causal link to the violations." *Nouri v. Cnty. of Oakland*, 615 F. App'x 291, 296 (6th

6

Cir. 2015) (emphasis added). *See also Sanders v. City of Memphis, Tennessee*, No. 221CV02585MSNCGC, 2022 WL 4665867, at *5 (W.D. Tenn. Sept. 30, 2022).

Here, even if Plaintiff sufficiently and plausibly pled that the City had a fixed plan of unconstitutional action that manifested with the force of law regarding the SCORPION Unit—which she did not— Plaintiff failed to sufficiently plead that the City had any notice of those alleged constitutional deprivations. [4] While true that Plaintiff presented nine individuals who *eventually* complained about improper conduct by SCORPION offices, Plaintiff does not allege that any of those individuals complained of that conduct *before the incident giving rise to the lawsuit.* For example, the lawsuit filed by Monterrious Harris referenced in Paragraph 105(a)(vi) of the Complaint, was filed on February 7, 2023—*a month after the incident giving rise to this lawsuit*. *See Harris v. City of Memphis, et. al.*, Case No. 2:23-cv-02058 (W.D. Tenn. Feb. 7, 2023).

Regarding Cornell Walker (Compl., ¶ 105(b)), Plaintiff alleges that Mr. Walker called MPD to complain about his January 3, 2023 encounter with SCORPION, but he does not allege *when* Mr. Walker called to complain. Plaintiff's allegations regarding Maurice Chalmers-Stokes, Sebastian Johnson, Kendrick Johnson Ray, Davitus Collier, Damecio Wilbourn, Romello Hendrix, and Johnny Graham (Compl., ¶ 105(c)-(f)), similarly omit the critical fact of when (*or if*) any of those aggrieved persons notified MPD or the City of their alleged unconstitutional encounters with SCORPION officers prior to the incident giving rise to the lawsuit. If those

---

[4] Plaintiff's reference to the U.S. Department of Justice's recently announced "Pattern or Practice Investigation of the City of Memphis and the Memphis Police Department" does not move the needle for Plaintiff. Not only did Plaintiff not plead the DOJ investigation in the Complaint, Plaintiff could not plead it in support of the notice element because that announcement was made on July 27, 2023, approximately seven months after the incident giving rise to this lawsuit.

4867-2252-4795

persons did, in fact, give notice to MPD of their encounters prior to the incident giving rise to the lawsuit, Plaintiff certainly could have provided those dates in the Response; but Plaintiff did not.

Seemingly conceding that actual notice was never received, Plaintiff asserts that **"surely Defendants *were* aware of *all* these incidents,"** (Response, ECF No. 94, PageID 811 (italicized emphasis in original)).  Plaintiff then asks the Court *to infer that the City had notice* of these incidents prior to the incident giving rise to the lawsuit.  (*Id.* at PageID 814.) Plaintiff cites no authority to support this request for such an inference at the motion to dismiss stage.[5]  Instead, Plaintiff points to *Jackson v. City of Cleveland*, where, contrary to Plaintiff's assertion, the district court **did not infer** that the City of Cleveland must have been aware of the custom of tolerance of constitutional violations. In *Jackson*, the district court **relied on ten pages of plaintiff's allegations that contained specific reports and documentation from 1966, 1973, 1974, and 1975,** to sustain plaintiff's custom of tolerance claim and to deny the motion to dismiss. *Jackson v. City of Cleveland*, 622 F. Supp. 3d 636, 639 (N.D. Ohio 2022) (emphasis added). In this case, Plaintiff did not plead any such prior reports or notice.

---

[5] Plaintiff cites to several cases that do not stand for this proposition.  (*See* Response, ECF No. 94, PageID 814-15, and n. 4.) *Alkire v. Irving*, 330 F.3d 802 (6th Cir. 2003) involved a motion for summary judgment, and the court did not evaluate the sufficiency of the pleadings. *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241 (6th Cir. 1989) was an appeal of a judgment following a bench trial, and the court did not evaluate the complaint for sufficiency.  The remaining cases cited by Plaintiff in Note 4 are not Sixth Circuit cases, nor do they stand for the proposition that notice need not be specifically pleaded. For example, in *Fields v. King*, 576 F.Supp.3d 392, 410 (S.D. WV 2021), the plaintiff pled several incidents of complaints lodged and lawsuits filed regarding the defendant officer that put the sheriff and the commission on notice of his conduct. In *Tirado v. City of Minneapolis*, 521 F.Supp.3d 833, 841-843 (D. Minn. 2021), the plaintiff alleged how and when the City of Minneapolis became aware of the specific incidents through broad reporting by news outlets, the City's own social media monitoring efforts, and direct outreach by media. In *Est. of Osuna v. Cnty. of Stanislaus*, 392 F. Supp. 3d 1162, 1173 (E.D. Cal. 2019), plaintiffs pointed to numerous prior cases in which defendants were either found liable or agreed to pay a substantial monetary sum to resolve excessive use of force claims brought against them. In *Barnes v. City of El Paso*, 2023 WL 4097075 at *8 (W.D. TX, June 12, 2023), the plaintiff alleged that the police department received approximately "259–349 complaints of excessive force" in 2014.

The law in this Circuit is clear that a plaintiff must allege notice on the part of the municipality to sustain a claim of custom of inaction towards constitutional violations. *See Nouri*, 615 Fed. Appx. at 296. Plaintiff failed to do so, and the custom of tolerance claims must be dismissed.

**B.       Plaintiff Failed to Plausibly Plead an "Official Policy Claim."**

Plaintiff concedes that Complaint does not describe an actual, stated official policy of the Memphis Police Department ("MPD") authorizing the conduct giving rise to this lawsuit. (*See* Response, ECF No. 94, PageID 802-804.) Instead, Plaintiff asserts that the "official policy" was, in fact, Chief Davis's "actions and decisions" as "the City's final decisionmaker" that became the official policy on which Plaintiff bases the official policy claim. *Id.*

Plaintiff's reliance on *Pembaur v. City of Cincinnati* in support of the official policy claim is off base. (*Id.* at PageID 802.) In *Pembaur*, the issue involved *a specific instruction* given by the County Prosecutor to two Deputy Sheriffs to commit a specific unconstitutional act, which was to forcibly enter petitioner's clinic to "go in and get [the witnesses who failed to appear for the grand jury]" without a warrant. *Pembaur*, 475 U.S. 469, 473 (1986).

Here, Plaintiff does not allege that Chief Davis's creation of SCORPION was itself, an unconstitutional act. Instead, Plaintiff baldly—and generally—asserts that Chief Davis instructed the officers in her command to routinely and regularly violate the constitution. Plaintiff does not present one fact to support that conclusory allegation. Such baseless and unsupported allegations are unlike the explicit unconstitutional mandate given by the County Prosecutor in *Pembaur* to commit the specific unconstitutional act of entering the premises without a warrant. Plaintiff's allegations regarding Chief Davis's directives are nothing more than *"mere conclusory statements" unsupported by any factual allegations at all.*

None of the cases cited by Plaintiff in support of her official policy claim are persuasive.

Plaintiff cites to a line of cases where the plaintiff alleged ***a specific act*** on the part of the policymaker that deprived the plaintiff of his or her civil rights as summarized below:

- The Sheriff beat and tasered an inmate after a verbal altercation; and after the assault, the Sheriff placed the inmate in an isolated, padded holding cell that had no running water or facilities of any kind for four days. *Wright v. Fentress Cnty., Tennessee*, 313 F. Supp. 3d 886, 887-88 (M.D. Tenn. 2018).

- The Chief of Police enforced an unconstitutional criminal statute by arresting the publisher and editor of a newspaper that published unflattering news articles about the police department. *Cooper v. Dillon*, 403 F.3d 1208, 1223 (11th Cir. 2005);

- The Chief of Police personally participated in an allegedly unlawful raid of the plaintiff's home. *Greer v. City of Highland Park*, 2016 WL 4206008, at *2 (E.D. Mich. Aug. 10, 2016);

- The Chief of Police allegedly approved video surveillance in the women's locker room. *Gillespie v. City of Battle Creek*, 100 F.Supp.3d 623, 630 (W.D. Mich. 2015);

- The Sheriff allegedly struck plaintiff and ordered the arrest of 100 people at an underage drinking party, *Holloran v. Duncan*, 92 F.Supp.3d 774, 786 (W.D. Tenn. 2015);

- The Sheriff terminated plaintiff's employment allegedly in retaliation for supporting his opponent, *Arredondo v. Flores*, 2006 WL 2459460, at *3 (S.D. Tex. Aug. 22, 2006).

Here, unlike the cases cited above, Plaintiff does not allege any plausible specific act on the part of Chief Davis that could give rise to *Monell* liability under this "specific act" theory.

The other two cases cited by Plaintiff in support of the official policy claim are unavailing. In *Boykins v. Trinity, Inc.*, 2021 WL 2156196 (E.D. Mich. May 27, 2021), the plaintiff specifically alleged that:

1) [Detroit Public Schools Community District] "denie[s] access to an open school upon arrival and require[s] ... children [with special needs] to wait and remain on [their] school bus" until "DPSCD [is] ready to receive [them]," and that 2) DPSCD transports special-needs students in standard school busses rather than in accordance with their specific needs. (Am. Compl. ¶¶ 40, 91).

*Id.* at *3. The district court found that the plaintiff sufficiently alleged that the school district had official policies requiring that special-needs students be transported in busses that did not

conform with their individual needs and remain on board until a teacher could escort them to class. *Id.*

Plaintiff's reliance on *Hernden v. Chippewa Valley Schools* is similarly unavailing. In *Hernden*, the district court found that the plaintiff plausibly alleged claims under the First Amendment pursuant to 42 U.S.C. § 1983 against school board members and the school district for their alleged acts of retaliation. The plaintiff, a police officer who had complained about the school district's COVID policies, specifically alleged that a schoolboard member emailed her supervisor challenging plaintiff's conduct as unbecoming a police officer. The plaintiff also alleged that the school board president emailed the DOJ with a complaint about the plaintiff's behavior, telling the DOJ that its assistance would be appreciated by "our board," speaking in the first-person plural voice, signing the email as the Board's president, and sharing the email with the Board after he sent it. *Hernden v. Chippewa Valley Sch.*, No. 22-CV-12313, 2023 WL 4140819, at *2, *4 (E.D. Mich. June 22, 2023). The district court found it plausible that the email at issue reflected a collective decision of the Board, which was sufficient to sustain a claim against the school district at the pleadings stage. *Id.* at *4.

Unlike in *Boykins*, where the school district clearly had policies regarding the transportation of children with special needs, and in *Hernden*, where the school board clearly ratified an email to the DOJ maligning the plaintiff, here Plaintiff cannot point to any plausible official policy of MPD that supports the official policy claim.

Plaintiff attempts to "back into" an official policy claim by first noting that Mr. Nichols was tragically killed by the Defendant Officers, and then asserting that the Defendant Officers ***must have*** been acting under an official policy of MPD. (*See* Compl., ECF No. 1, ¶ 305 ("Tyre Nichols' injuries and death were a direct, foreseeable, and proximate result of Chief Davis' authorization to SCORPION Officers to disregard and violate the Constitutional and Fourth

11

Amendment rights of Memphis citizens.")). This type of "the-defendant-did-it" allegation cannot support Plaintiff's official policy claim. *See Griham*, 2022 WL 989175, at *1.

Plaintiff's official policy claim should be dismissed.

**C.    Plaintiff's Failure-to-Train and Failure-to-Supervise claims are not sufficiently pleaded.**

      **1.    The failure-to-train claim fails under both the "pattern" theory and the "single violation" theory.**

            **a)    Plaintiff failed to allege prior instances of unconstitutional conduct demonstrating that the City ignored a history of abuse and was clearly on notice that the training in any particular area was deficient and likely to cause injury.**

The Complaint fails to state a failure-to-train claim under the "pattern" theory because Plaintiff failed to sufficiently plead that the City was on notice that the training was deficient. Plaintiff points to eleven specific areas in which Plaintiff asserts that the City failed to train SCORPION Officers: Terry stops; reasonable articulable suspicion; probable cause; traffic stops; foot pursuits; the Fourth Amendment; the use of force; the use of batons; the use of tasers; the use of pepper spray; and the use of deadly force. (Compl, ¶ 135.) But simply naming areas where Plaintiff believes training was insufficient will not suffice. "[P]laintiff must 'show <u>prior instances of unconstitutional conduct demonstrating that the [City] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury</u>,'" *i.e.* "deliberate indifference." *Griham*, 2022 WL 989175, at *2 (quoting *Fisher v. Hardin*, 398 F.3d 837, 849 (6th Cir. 2005) (emphasis added).

Plaintiff failed to do so. Here again Plaintiff relies on the allegations of the nine individuals listed in Paragraph 105 of the Complaint in support of the failure-to-train claim. But as previously noted, Plaintiff ***failed to plead that Defendants had any notice of any of those alleged instances <u>prior to</u> the incident giving rise to the lawsuit***. Accordingly, Plaintiff's failure-to-train claim must be dismissed.

**b)    Plaintiff failed to sufficiently plead a failure-to-train claim under the "single violation" theory.**

Because Plaintiff has not sufficiently identified any other constitutional violations to support the "pattern" theory of failure-to-train, Plaintiff must sufficiently and plausibly plead that the single violation (Mr. Nichols's death) was caused by MPD's inadequate training of SCORPION for the tasks performed; the inadequacy was the result of the City's deliberate indifference; and the inadequacy was closely related to or actually caused the injury." *See Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)) (emphasis added).

For the "single violation" theory, the issue is whether, **"**in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in a violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989) (emphasis added). Plaintiff can only establish " 'deliberate indifference' to the rights of its inhabitants," by showing " 'a deliberate choice to follow a course of action [that] is made from among various alternatives' by city policymakers." *Id.* at 389 (quoting *Pembaur*, 475 U.S. at 483–84).

While "a single violation, 'accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability.' " *Bonner-Turner v. City of Ecorse*, 627 F. App'x 400, 414 (6th Cir. 2015), "mere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to make out deliberate indifference." *Harvey v. Campbell Cnty.*, 453 F. App'x 557, 563 (6th Cir. 2011) (emphasis added).

4867-2252-4795

A "single violation" claim "is available only '**in a narrow range of circumstances**,' where a federal rights violation 'may be a highly predictable consequence of a failure to equip [employees] with specific tools to handle recurring situations.'" *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 323 (6th Cir. 2023) (quoting *Board of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997) (emphasis added). *See also City of Canton,* 489 U.S. at 390–91 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."). "Virtually every § 1983 plaintiff 'will be able to point to something the city 'could have done' to prevent" the harm giving rise to his or her claim.'" *Humphrey v. Friar*, No. 217CV02741SHLDKV, 2018 WL 8807154, at *9 (W.D. Tenn. Sept. 28, 2018), *judgment entered*, No. 217CV02741SHLDKV, 2018 WL 8807151 (W.D. Tenn. Oct. 29, 2018), and *aff'd in part, rev'd in part and remanded*, 792 F. App'x 395 (6th Cir. 2020) (quoting *City of Canton*, 489 U.S. at 392). However, that will not support a "single violation" claim.

In *Humphrey*, this Court dismissed the plaintiff's "single violation" failure-to-train claim, in part, because refraining from the conduct giving rise to that claim—i.e., a police officer sexually abusing minor children—"is so obvious that even if [Millington] were silent about such conduct, it would not give rise to a constitutional violation on Millington's part." *Id.* at *15 (citing *Campbell v. Anderson Cnty.*, 695 F. Supp. 2d 764, 774 (E.D. Tenn. 2010)).

Here, just as in *Humphrey*, refraining from the conduct giving rise to the claim—i.e., brutally beating a detainee to death—is so obvious that even if the City was silent about such conduct (which, of course it is not[6]), it does not give rise to a constitutional violation.

---

[6] As noted in Note 5 supra, MPD has policies on the use of force and response to resistance. The Court may also take judicial notice of the City's website dedicated to promoting MPD's policy of restrictive use of force. https://reimagine.memphistn.gov/, last visited Aug. 23, 2023.

14

The only plausible reading of the Complaint is that the conduct by the Defendant Officers with respect to Mr. Nichols as pled by Plaintiff was intentional, criminal conduct that **no amount of training could have prevented**, including that the five Defendant Officers "brutally beat Tyre Nichols" (Compl., ¶ 204), … took turns punching and kicking Tyre in his face and midsection (*id.*, ¶ 205); … and that for approximately seven minutes straight Defendant Officers punched, kicked pepper sprayed, and struck Tyre with a baton." (*Id.*, ¶ 208.)

For these reasons, Plaintiff's failure-to-train claim fails under both the "pattern" and "single violation" theories.

**2.      Plaintiff fails to sufficiently plead a failure to supervise claim.**

Plaintiff's failure to supervise claim fares no better. The Sixth Circuit has "called this failure-to-supervise theory a 'rare' 'specimen' that sits somewhere between the claim that a municipality had a policy of failing to train its employees and the claim that it had a policy of acquiescing in their misconduct." *Lopez v. Foerster*, No. 20-2258, 2022 WL 910575, at *7 (6th Cir. Mar. 29, 2022) (quoting *Mize v. Tedford*, 375 F. App'x 497, 500 (6th Cir. 2010)).

Furthermore, the Sixth Circuit has held that "infer[ring] a municipal-wide policy based solely on one instance of potential misconduct" would turn "the municipal liability standard into a simple *respondeat superior* standard," a result precluded by Supreme Court. *Thomas v. City of Chattanooga,* 398 F.3d 426, 432–33 (6th Cir. 2005) (citing *Bryan Cnty.,* 520 U.S. at 409, 117 S.Ct. 1382; *Monell,* 436 U.S. at 694, 98 S.Ct. 2018).

Thus, the allegation of one instance of faulty supervision, without more, is insufficient to state a plausible claim that inadequate supervision "can justifiably be said to represent city policy." *Sweat v. Butler*, 90 F. Supp. 3d 773, 782–83 (W.D. Tenn. 2015) (citation omitted). *See also Minick v. Metro. Gov't of Nashville,* No. 3:12–CV–0524, 2014 WL 3817116, at *2 (M.D. Tenn. Aug. 4, 2014) ("In numerous cases, courts ... have found that boilerplate allegations

15

premised on a single incident of alleged police brutality—*i.e.,* the incident that caused the plaintiff's injury—are insufficient to state a municipal liability claim, thereby justifying dismissal under Rule 12(b)(6).").

Here, Plaintiff's failure-to-supervise claim turns on the deliberate-indifference element. That element asks whether the alleged constitutional violation "was a 'known or obvious consequence'" of the inadequate supervision of the employee who committed the violation. *Gambrel*, 25 F.4th at 408 (quoting *Connick*, 563 U.S. at 61).

To survive the Motion to Dismiss under Plaintiff's "pattern" violation theory, Plaintiff must show a pattern of similar constitutional violations to the one that the Plaintiff alleges in the case at hand, and that the City was on notice of those violations. *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). If a municipality's decisionmakers lack notice that their supervision has led to constitutional violations in the past, it is difficult to establish that they should have known of the risk. *Lopez*, 2022 WL 910575, at *7.

For all the same reasons Plaintiff failed to sufficiently plead a failure-to-train claim under the pattern theory, Plaintiff similarly fails to plead a failure-to-supervise claim under the pattern theory. Plaintiff did not provide one instance where the City had notice of the alleged constitutional violations of the SCORPION Unit ***prior to the incident giving rise to this lawsuit***.

Turning to Plaintiff's "single violation" theory, that claim, too, must fail. Plaintiff can only establish the critical "deliberate indifference" element under the "single violation" theory "if it should have been obvious to the municipality that the lack of supervision would lead to the constitutional violation." *Lopez*, 2022 WL 910575, at *7. *See also Canton*, 489 U.S. at 390.

The issue is whether, **"**<u>in light of the duties assigned to specific officers or employees</u>[,] the need for more or different training is <u>so obvious</u>, and the inadequacy <u>so likely to result in a violation of constitutional rights</u>, that the policymakers of the city can reasonably be said to have

16

been deliberately indifferent to the need." *Canton*, 489 U.S. at 390 (emphasis added).

Plaintiff's allegations fail to establish that it was ***so obvious*** to MPD that the lack of supervision of the SCORPION officers that evening would ultimately lead to the beating death of Mr. Nichols by the Defendant Officers. Plaintiff acknowledges that at least five officers were present during the beating of Mr. Nichols, and none of them attempted to diffuse the situation. (*See, e.g.*, Compl., ECF No. 1, ¶ 221.) It is, therefore, ***not an obvious conclusion*** that the addition of one more officer (even a supervisor) at the scene that night would have had any effect on the Defendant Officers' conduct or the ultimate, tragic outcome.

This is supported by the fact that the Defendant Officers were filming the entire incident on their body worn cameras. ("When Tyre fell to the ground, he was lifted back up so that officers could continue to tee-off with more punches, strikes, kicks, and chemical sprays—<u>all of this with full knowledge that their body-worn cameras were recording every second</u>." (Compl. at PageID 4) (emphasis added).)

If the Defendant Officers' knowledge that their actions were being filmed did not give them pause, it is not likely—***certainly not obvious***—that a supervisor's presence on the scene would have done so.

In short, Plaintiff seeks to hold the City responsible for the egregious criminal and tortious acts of the five Officer Defendants, which amounts to the application of "the very strict *respondeat superior* liability rejected by the Supreme Court in *Monell* and its progeny." *Griham*, 2022 WL 989175, at *6 (quotations and citations omitted). Accordingly, the Court should dismiss Plaintiff's failure-to-supervise claim.

> **3.** **Plaintiff's negligent hiring/promoting claims are insufficient under the law.**

To prevail on a claim of inadequate hiring/screening, Plaintiff must show that adequate scrutiny of the officers' background would have led a reasonable policymaker to conclude that

the plainly obvious consequence of hiring those officers would be the deprivation of a constitutional right. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 411, 117 S.Ct. 1382 (1997). Plaintiff did not do so. The only "red flags" alleged by Plaintiff prior to their hiring was that Defendant Martin was arrested on at least one occasion before joining MPD (Compl., ¶ 116(a)(i)); and that Defendant Haley "<u>was accused</u> of viciously beating an inmate while he was employed as a Shelby County Correctional Officer." (Compl., ¶ 116(b)(i)). But there are no allegations that this accusation was true.

These threadbare allegations would not have led a reasonable policymaker to conclude that the plainly obvious consequence of hiring those officers would be the deprivation of a constitutional right.

The same is true of Plaintiff's allegations regarding the Defendant Officers' selection to the SCORPION Unit, which included failing to fill out response to resistance forms, damaging equipment, and failing physical fitness exams. (Compl., ¶ 116.) None of those allegations plausibly could have led the City to conclude that ***the plainly obvious consequence of placing the Defendant Officers on the SCORPION Unit would ultimately result in the deprivation of a constitutional right***.

> **D.** **Plaintiff abandoned the official capacity claims against Chief Davis and Lt. Smith by failing to substantively address the City's arguments.**

Plaintiff did not address City Defendants' argument that Plaintiff's claims against Chief Davis and Lt. Smith are redundant and superfluous, but instead summarily stated that "Chief Davis was properly named in the lawsuit in her official capacity." (ECF No. 94, PageID 827.)

Thus, Plaintiff abandoned the "official capacity claims" by failing to address them in the Response brief. *See, e.g. Doe v. Bredesen*, 507 F.3d 998, 1007 (6th Cir. 2007) ("[Plaintiff] abandoned those claims by failing to raise them in his brief opposing the government's motion to dismiss the complaint"); *Kines v. Ford Motor Co.*, No. 119CV01054JDBJAY, 2020 WL

5550396, at *5, n. 6 (W.D. Tenn. Sept. 16, 2020) (concluding that plaintiffs abandoned a claim by not addressing it in their response to defendants' dispositive motion).

Accordingly, the official capacity claims against Chief Davis and Lt. Smith as an Agent of the City should be dismissed.

To the extent that Plaintiff seeks leave to amend the Complaint to assert claims against Chief Davis individually (ECF No. 94, PageID 827) without filing a motion under Rule 15, the City asks the Court to deny that procedurally improper request. "[A] request for leave to amend, almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is not a motion to amend." *Pulte Homes, Inc. v. Laborers' Int'l Union of N. Am.*, 648 F.3d 295, 305 (6th Cir. 2011). *See also Begala v. PNC Bank*, 214 F.3d 776, 784 (6th Cir. 2000) (finding that an amendment request in a brief opposing a Rule 12 motion does not constitute a proper motion).

**E.    Plaintiff's negligent infliction of emotional distress claim is barred by Tennessee's Governmental Tort Liability Act ("GTLA").**

Plaintiff's negligent infliction of emotional distress ("NIED") claim is barred by the GTLA no matter what Plaintiff calls the claim. First, Plaintiff does not plead facts to support negligence in the Complaint. There are no allegations that Lt. Smith was negligent, but rather that he was intentionally misleading.

Furthermore, Plaintiff's framing of the NIED claim in the Response does not rehabilitate the claim, and, in fact, further illustrates that what Plaintiff pleaded was indeed a fraudulent misrepresentation claim couched as an NIED claim. Plaintiff states:

> Lt. Smith did not participate in the beating of Tyre, but following the incident walked the 100 yards to Tyre's home. Dkt 1, ¶ 263. **Fully aware of Tyre's condition** nearby, Lt. Smith told Plaintiff that that her son was intoxicated and was being arrested for a DUI. *Id.* at ¶¶ 261-265. When Plaintiff asked Lt. Smith for information on her son, **Smith lied to her** by stating that Tyre would be going to jail after receiving medical care and he could be picked up there. *Id.* at ¶ 272. **Lt. Smith knew that Tyre Nichols would not be transported to jail because he was**

**nearly dead.** *Id.* at ¶ 281.

(Response, ECF No. 91, PageID 858 (emphasis added)).

Plaintiff's allegations are one of fraudulent misrepresentation. Plaintiff alleges that Lt. Smith made a <u>materially false representation</u> as to Mr. Nichols' condition that <u>he knew was false</u> when he made it because he was "fully aware" of Mr. Nichols' condition and "knew that Tyre Nichols would not be transported to jail because he was nearly dead." (Response, ECF No. 91, PageID 858.) Further, Plaintiff must have reasonably relied on the false misrepresentation because according to the Complaint, it resulted in damages in the form of emotional distress. (*See* Compl., ECF No. 1, ¶¶ 851, 852.)

Even if the NIED claim is not considered to be a claim for fraudulent misrepresentation, it is clearly a claim of deceit, which is specifically listed as an intentional tort for which the City retains immunity. *See* Tenn. Code Ann. § 29-20-205(2) (the "intentional tort exception," which bars claims for injuries arising out of "[f]alse imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, **deceit**, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights").

Based on the allegations in Plaintiff's Complaint and Response to the City's Motion to Dismiss, Lt. Smith "lied" with "knowledge" that his statement was allegedly false when he made it. Indeed, the act of lying about a material fact of the nature Plaintiff alleges is itself not a negligent act but an intentional tort (i.e., **deceit**) for which immunity is not removed under the GTLA.

Moreover, the GTLA provides immunity to the City from claims for injuries arising from "misrepresentation by an employee **whether or not such is negligent or intentional**." Tenn. Code Ann. § 29–20–205(6) (emphasis added). *See, e.g.*, *Holder v. Shelby Cnty.*, No. W2014-

20

01910-COA-R3CV, 2015 WL 1828015, at *4 (Tenn. Ct. App. Apr. 21, 2015) (finding that governmental immunity was not removed when the plaintiff characterized the defendant deputy's actions as negligence, but specifically alleged that the deputy intentionally falsified a log book); *Carero-Tate v. City of Knoxville*, No. 3:03-CV-214, 2005 WL 8162572, at *4 (E.D. Tenn. Apr. 5, 2005) (citing Tenn. Code Ann. 29 -20-205(6) and explaining that immunity is still provided to the governmental authority notwithstanding the claim of employee negligence if the issue was a negligent or intentional misrepresentation).

Plaintiff cannot circumvent the immunity provided by the GTLA by couching a misrepresentation claim as one of NIED. Allowing Plaintiff's claim to proceed under the guise of NIED would render the immunity the GTLA affords municipalities for intentional torts and misrepresentations by its employees meaningless. As such, the Court should dismiss Plaintiff's NIED claim.

F. **Plaintiff also abandoned the state law claims against the City for intentional infliction of emotional distress and fraudulent misrepresentation.**

Plaintiff also abandoned the state law claims for intentional infliction of emotional distress and fraudulent misrepresentation against the City (and Lt. Smith as an Agent for the City) by failing to address them in the Response to Motion to Dismiss. (*See* generally, Response.)

## CONCLUSION

For these reasons, the City respectfully requests this Court to grant its Motion to Dismiss in its entirety.

4867-2252-4795

Respectfully submitted,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.**

*s/ Bruce McMullen*

Bruce McMullen (#18126)
Jennie Vee Silk (#35319)
Freeman B. Foster (#23265)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 526-2000
bmcmullen@bakerdonelson.com
jsilk@bakerdonelson.com
ffoster@bakerdonelson.com

*Attorneys for Defendant City of Memphis,
Chief Cerelyn Davis in her Official Capacity*

## CERTIFICATE OF SERVICE

I, Bruce McMullen, hereby certify that on August 25, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, and that upon filing, such system will serve a copy of the foregoing upon all counsel of record in this action.

*s/ Bruce McMullen*
Bruce McMullen

4867-2252-4795