IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| ROW VAUGHN WELLS, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF TYRE DEANDRE NICHOLS, DECEASED, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 2:23-CV-02224 JURY DEMAND |
| THE CITY OF MEMPHIS, A MUNICIPALITY; CHIEF CERELYN DAVIS, IN HER OFFICIAL CAPACITY; EMMITT MARTIN III, IN HIS INDIVIDUAL CAPACITY; DEMETRIUS HALEY, IN HIS INDIVIDUAL CAPACITY; JUSTIN SMITH, IN HIS INDIVIDUAL CAPACITY; DESMOND MILLS, JR. IN HIS INDIVIDUAL CAPACITY; TADARRIUS BEAN, IN HIS INDIVIDUAL CAPACITY; PRESTON HEMPHILL, IN HIS INDIVIDUAL CAPACITY; ROBERT LONG, IN HIS INDIVIDUAL CAPACITY; JAMICHAEL SANDRIDGE, IN HIS INDIVIDUAL CAPACITY; MICHELLE WHITAKER, IN HER INDIVIDUAL CAPACITY; DEWAYNE SMITH, IN HIS INDIVIDUAL CAPACITY AND AS AGENT OF THE CITY OF MEMPHIS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**REPLY IN SUPPORT OF MOTION TO STRIKE ALLEGATIONS IN THE COMPLAINT**

1

Defendants the City of Memphis ("the City") and Chief Cerelyn Davis in her Official Capacity ("Chief Davis") submit this Reply in Support of their Motion to Strike Allegations from Plaintiff's Complaint for Damages. (ECF No. 81.)

I. **The RED DOG Allegations are Immaterial to the Deliberate Indifference Element of *Monell* Liability**

Plaintiff's allegations regarding Atlanta Police Department's now-disbanded "Run Every Drug Dealer Out of Georgia" unit ("RED DOG") do not support any of the claims against the City. They are, therefore, immaterial, and should be stricken. *See Llewellyn-Jones v. Metro Prop. Grp.*, LLC, 22 F. Supp. 3d 760, 777 (E.D. Mich. 2014) (striking specific allegations as immaterial and noting that none of the "claim[s] for relief depend on the [those] allegations...").

Plaintiff includes the RED DOG allegations in an attempt to bolster Plaintiff's *Monell* claims against the City. Plaintiff explains:

> The passages concerning the [Atlanta Police Department] and RED DOG are both material and relevant because they serve to achieve a better understanding of Plaintiff's case….Simply put, <u>they make it more likely that the City and Chief Davis were aware and able to predict the consequences of their policies, practices, and failures; therefore making it more likely they were deliberately indifferent</u>."

(Response to Mot. to Strike, ECF No. 93, PageID 790-91.)

But that it is not how deliberate indifference works in *Monell* claims. For example, to establish *Monell* liability under Plaintiff's "custom of tolerance" claim, deliberate indifference is not, as Plaintiff asserts, whether the City and Chief Davis were aware of and able to predict the consequences of SCORPION because of Chief Davis's prior experience with the RED DOG unit. (ECF No. 93, PageID 791-92). The City's "deliberate indifference" can only be established by pleading and proving the City's tacit approval of <u>a clear and persistent patter of unconstitutional conduct by the City's employees</u>—and, of which the City had notice—such that the City's failure to act in response can be said to amount to an official policy of inaction.  *See*

*Wallace v. Coffee Cnty., Tennessee*, 852 F. App'x 871, 876 (6th Cir. 2021). In other words, the relevant inquiry for deliberate indifference is whether the City was **deliberately indifferent to the City's employees' unlawful actions and conduct**—and **it is not whether the City was deliberately indifferent to the conduct of Chief Davis's former employer's employees**.

The same analysis applies to Plaintiff's failure-to-train and failure-to-supervise claims. Plaintiff cannot establish the City's deliberate indifference by alleging that the City and Chief Davis knew about the prior transgressions of Atlanta's RED DOG Unit.  For failure-to-train/failure to supervise claims under *Monell*, the "[P]laintiff must 'show prior instances of unconstitutional conduct demonstrating that the [City] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury," *Griham v. City of Memphis, Tennessee*, No. 2:21-CV-02506-MSN, 2022 WL 989175, at *2 (W.D. Tenn. Mar. 31, 2022).  To be clear, Plaintiff must show a history of abuse **by the Memphis Police Department** to establish these claims, **not a history of abuse by the Atlanta Police Department**. *See id.* at *6.

Because Plaintiff's claims are not supported by the allegations related to RED DOG, they are, therefore, immaterial and should be stricken.

**II.     The RED DOG Unit Allegations Should Be Stricken Because They Confuse the Issues.**

Plaintiff conflates the patterns and practices of Atlanta's RED DOG Unit with MPD's SCORPION unit through the RED DOG allegations in the Complaint. This conflation leads to confusion, and the RED DOG allegations should be stricken for that reason, as well. *See, e.g.*, *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 512 (S.D.N.Y. 2013) (striking allegations as "unnecessary and inappropriate statements prejudicial to Defendants in that as a pleading, the [complaint] may be reviewed by the jury at the trial of this matter").

A review of some of the RED DOG allegations illustrates this confusion. Plaintiff alleges the following regarding RED DOG Unit:

> 63. RED DOG officers' testimony established that <u>they were encouraged by supervisors to engage in searches and seizures when there was no basis to do so in violation of the Fourth Amendment</u>.
>
> 64. RED DOG officer testimony established that <u>officers were encouraged by supervisors to omit written reports</u> if they engaged in searches but found no drugs or weapons <u>to maintain a stronger "hit" rate</u> on their stops.
>
> 65. RED DOG officers were "told to get the job done, <u>by whatever means" necessary</u>.

(Compl., ¶¶ 63-65 (emphasis added).)[1]

Plaintiff then leaps to the following accusations against Chief Davis and SCORPION, which are essentially the same as the allegations regarding the RED DOG Unit:

> 81. Chief Davis instructed SCORPION Officers to focus on an <u>all-out strategy of seizing property</u> from Memphis citizens <u>in complete disregard of the United States Constitution and the Fourth Amendment</u>.
>
> 82. Much like the RED DOG Unit's mandates <u>to stop crime at any cost</u>, Chief Davis instructed the SCORPION Unit and advocated <u>to stop citizens and deprive them of their property unconstitutionally</u>: "Take the car...Even if the case gets dropped in court."
> …
> 88. Much like the RED DOG Unit, SCORPION Unit officers were encouraged by the Chief of Police and supervisors t<u>o engage in searches and seizures when there was no basis to do so in violation of the Fourth Amendment</u>.
>
> 89. Much like the RED DOG Unit, SCORPION Unit officers were encouraged by the Chief of Police and supervisors <u>to omit written reports</u> if they engaged in searches but found no drugs or weapons <u>to maintain a stronger "hit" rate</u> on their stops.

(Compl., ¶¶ 81-82, 88-89 (emphasis added).)

---

[1] Notably, Plaintiff does not allege that Chief Davis was the person encouraging the RED DOG officers to engage in unconstitutional searches and seizures, or that it was Chief Davis who encouraged RED DOG officers to omit written reports.

With the RED DOG allegations, Plaintiff seeks to impute the conduct of the RED DOG unit onto the SCORPION unit and ultimately onto Chief Davis, with no basis for doing so. [2] This will be confusing to the jury, and the Court should strike the RED DOG allegations for that additional reason.

### III.     The Red Dog Unit Allegations Are Scandalous and Highly Prejudicial.

Contrary to Plaintiff's assertion, the RED DOG Unit material is extremely scandalous and should be stricken. *See Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 511 (S.D.N.Y. 2013) ("Scandalous allegations ... will often be stricken from the pleadings in order to purge the court's files and protect the subject of the allegations.") (citations omitted).

Plaintiff contends that the Court may only strike allegations where the allegations relate to an individual's personal life.  (Response, ECF No. 93, PageID 794.) Not so. *See, e.g.*, *Schlosser v. Univ. of Tennessee*, No. 3:12-CV-534, 2014 WL 5325350, at *4 (E.D. Tenn. Oct. 20, 2014) (striking an allegation that constituted an attempt to create a scandal around Coach Summitt where none existed, and one which was wholly irrelevant to the Plaintiffs' claims.) In fact, under Rule 12(f) "scandalous" refers to ***any allegation*** that **unnecessarily reflects on moral character of an individual**. *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760 (E.D. Mich. 2014); *see also McKinney v. Bayer Corp.*, No. 10-CV-224, 2010 WL 2756915, at *1 (N.D. Ohio July 12, 2010) (citing *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F.Supp.2d 955, 965 (C.D. Cal. 2000) ("'Scandalous' includes allegations that cast a cruelly derogatory light on a party or other person.")).

Plaintiff's allegations regarding the RED DOG unit most certainly reflect negatively on

---

[2] The SCORPION Unit predated Chief Davis. It was formerly known as the Criminal Apprehension Team ("CAT Team"), which has existed in MPD since 2006.  The CAT Team was simply rebranded under Chief Davis.

5

4861-6553-6890

Chief Davis's moral character and cast her in a cruelly derogatory light. Plaintiff alleges:

> Like its Atlanta-predecessor in the RED DOG Unit, the SCORPION Unit would instill the same tactics as dictated by the two individuals intimately familiar with both: Chief Davis and Assistant Chief Jones. (Compl., ¶ 94);
>
> Much like the RED DOG Unit's mandates to stop crime at any cost, Chief Davis instructed the SCORPION Unit and advocated to stop citizens and deprive them of their property unconstitutionally… (Compl., ¶ 82);
>
> Much like the RED DOG Unit, SCORPION Unit officers were encouraged by the Chief of Police and supervisors to engage in searches and seizures when there was no basis to do so in violation of the Fourth Amendment. (Compl., ¶ 88);

These allegations impugn Chief Davis's integrity as a human being, a police officer, and as the head of a police department. And without Chief Davis's tenuous connection to RED DOG, Plaintiff would have literally no basis for making such scandalous allegations against Chief Davis.

Moreover, the prejudicial nature of the RED DOG allegations outweighs any potential relevance especially in this highly publicized litigation. *See, e.g.*, *Brashier v. Manorhouse Mgmt., Inc.*, No. 3:20-CV-294-CLC-HBG, 2020 WL 12846638, at *2 (E.D. Tenn. Sept. 18, 2020) ("Scandalous allegations that improperly cast a derogatory light on a party will be stricken, especially if they are immaterial or irrelevant, or 'may cause the objecting party prejudice.'") (quoting *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992)).

IV. **CONCLUSION**

Accordingly, the City respectfully asks the Court to exercise its discretion and strike all allegations related to the RED DOG Unit in the Complaint (ECF No. 1): Paragraphs 3 and 4 of the unenumerated Preliminary Statement, Paragraphs 50 through 68, Paragraphs 78 through 79, Paragraph 82, Paragraphs 87 through 89, and Paragraph 94.

4861-6553-6890

**Respectfully submitted,**

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**

*s/ Bruce McMullen*
Bruce McMullen (#18126)
Jennie Vee Silk (#35319)
Freeman B. Foster (#23265)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 526-2000
bmcmullen@bakerdonelson.com
jsilk@bakerdonelson.com
ffoster@bakerdonelson.com

*Attorneys for Defendant City of Memphis, Chief Cerelyn Davis in her Official Capacity, and Dewayne Smith as Agent of the City of Memphis*

## CERTIFICATE OF SERVICE

I, Bruce McMullen, hereby certify that on August 25, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, and that upon filing, such system will serve a copy of the foregoing upon all counsel of record in this action.

*s/ Bruce McMullen*

4861-6553-6890