# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| ROWVAUGHN WELLS, Individually and as Administratrix Ad Litem of the Estate of Tyre Deandre Nichols, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2:23-cv-02224-MSN-atc |
| CITY OF MEMPHIS, a municipality, CHIEF CERELYN DAVIS in her official capacity, EMITT MARTIN III in his individual capacity, DEMETRIUS HALEY in his individual capacity, JUSTIN SMITH in his individual capacity, DESMOND MILLS, JR. in his individual capacity, TADARRIUS BEAN in his individual capacity, PRESTON HEMPHILL in his individual capacity, ROBERT LONG in his individual capacity, JAMICHAEL SANDRIDGE in his individual capacity, MICHELLE WHITAKER in her individual capacity, and DEWAYNE SMITH in his individual capacity and as an agent of the City of Memphis, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER DENYING DEFENDANTS' MOTION
## TO STRIKE ALLEGATIONS FROM COMPLAINT

Before the Court by Order of Reference[1] is the Motion to Strike Allegations from Complaint, filed by Defendants the City of Memphis, Chief Cerelyn Davis in her Official Capacity, and Dewayne Smith as Agent of the City of Memphis (the "City Defendants"), filed on

---

[1] On July 10, 2023, District Judge Mark S. Norris referred the Motion to the undersigned "for determination or for proposed findings and recommendation, as appropriate." (ECF No. 84.)

July 7, 2023.  (ECF No. 82.)  Plaintiff RowVaughn Wells, individually and as administratrix ad litem for the estate of Tyre Deandre Nichols, filed her response on August 11, 2023.  (ECF No. 93.)  With leave of Court, the City Defendants filed a reply on August 25, 2023.  (ECF No. 102.)  For the following reasons, the Motion is DENIED.

## BACKGROUND

This case involves the death of 29-year-old Memphis resident Tyre Nichols, Wells's son.  According to the complaint, on January 7, 2023, Nichols was stopped in his car by members of the Memphis Police Department's ("MPD") Street Crimes Operation to Restore Peace In Our Neighborhoods, or SCORPION, unit.  (ECF No. 1, at 2.)[2]  Wells alleges that two SCORPION unit officers baselessly stopped Nichols's car, forcefully dragged him into the roadway, violently apprehended him, and then escalated the situation.  (*Id.* at 2–3.)  After Nichols fled the scene toward the nearby home where he lived with his parents, five SCORPION unit officers descended upon him, repeatedly punching, kicking, and pepper-spraying him.  (*Id.* at 4.)  A badly injured Nichols was eventually transported to the hospital, where he died on January 10th.  (*Id.*)

Wells alleges that the actions that resulted in Nichols's death were set in motion more than a year earlier with the hiring of Davis as Memphis's chief of police and Shawn Jones as its assistant chief of police.  (*Id.* at 2.)  The complaint asserts that both Davis and Jones had formerly been employed by

> the Atlanta Police Department where they played prominent roles in the RED DOG[3] unit: a police unit that was eventually disbanded due to numerous

---

[2] The pagination of the complaint begins on its second page, and thus its page numbers are off by one from those applied by the Electronic Case Files ("ECF") system, which applies numbers to each page of all filings.  The references herein are to the ECF page numbers.

[3] According to the complaint, "RED DOG" is an acronym for "Run Every Drug Dealer Out of Georgia."  (*Id.* at 13.)

>   allegations of violations of the Fourth Amendment to the United States
>   Constitution, including—but not limited to—illegal searches and seizures and
>   excessive force.

(*Id.* at 2.) According to Wells, in late 2021, Davis and Jones created the SCORPION unit at the MPD, which was identical to Atlanta's RED DOG unit. (*Id.* at 2–3.) Wells alleges that the SCORPION unit "predictably implemented the same unconstitutional mandates, policies, and customs thereby breeding its own insidious and institutionalized corruption that left a multitude of constitutional violations in its wake." (*Id.* at 3.)

The complaint refers to the RED DOG unit twenty-five times. Those references detail, among other things, Davis and Jones's involvement with the RED DOG unit, incidents the unit's members were involved in, and the unit's overhaul before ultimately being disbanded in 2011 after an incident at an LGBTQ bar led to the filing of a federal civil rights lawsuit.[4] The Motion seeks to strike each of those references as "contain[ing] allegations that are 'immaterial, impertinent, or scandalous.'" (ECF No. 82-1, at 3.) According to the City Defendants, "[a]long with having no bearing on the City's alleged liability in this case, the allegations are unduly prejudicial." (*Id.*)

## STANDARD OF REVIEW

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[5] Fed. R. Civ. P. 12(f). Rule 12(f) "[m]otions to

---

[4] The RED DOG unit is referenced in the following paragraphs of the complaint: the third and fourth paragraphs of the Preliminary Statement (ECF No. 1, at 2–3); paragraphs 50–68 (*id.* at 13–15); paragraphs 78 and 79 (*id.* at 16); paragraph 82 (*id.*); paragraphs 87–89 (*id.* at 17); and paragraph 94 (*id.* at 18).

[5] The Sixth Circuit has not addressed the "precise issue" of whether a motion to strike is a pretrial matter within this Court's jurisdiction to determine under 28 U.S.C. § 636(b)(1)(A) or instead is a motion that requires entry of proposed findings of fact and recommendations under section 636(b)(1)(B). *See Berry v. Citi Credit Bureau*, No. 2:18-cv-02654-SHL-dkv, 2020 WL

3

strike are viewed with disfavor and are not frequently granted." *Operating Eng'rs Loc. 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (citing *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)). "The reason for that is simple: such motions, more often than not, are simply 'time wasters' that tie the court and the parties up in 'purely cosmetic' matters that, if anything, stand in the way of addressing the underlying allegations on the merits." *Ciccio v. SmileDirectClub, LLC*, No. 3:19-CV-00845, 2020 WL 2850146, at *15 (M.D. Tenn. June 2, 2020) (quoting *Neal v. City of Detroit*, No. 17-13170, 2018 WL 1399252, at *1 (E.D. Mich. Mar. 19, 2018)).

Ultimately, "motion[s] to strike should be granted only when the pleading to be stricken has no possible relation to the controversy." *Hill v. Accordia Life & Annuity Co.*, No. 2:21-cv-02241-SHM-tmp, 2021 WL 5435250, at *2 (W.D. Tenn. Nov. 19, 2021) (quoting *Mapp v. Bd. of Ed. of the City of Chattanooga, Tenn.*, 319 F.2d 571, 576 (6th Cir. 1963)); *see also Nat'l Bankers Tr. Corp.*, 2012 WL 12909869, at *2 (finding that motions to strike should only be granted "'when required for the purposes of justice' and when 'the pleading . . . has no possible relation to the controversy'" (quoting *Anderson v. United States*, 39 F. App'x 132, 135 (6th Cir. 2002)));

---

4596774, at *3 (W.D. Tenn. Aug. 11, 2020) (citing *Herrerra v. Mich. Dep't of Corr.*, No. 5:10-CV-11215, 2011 WL 3862426, at *3 n.1 (E.D. Mich. July 22, 2011)). Typically, "[i]f a motion to strike involves a non-dispos[i]tive issue, such as striking portions of a complaint, courts have concluded that it is a non-dispositive one," falling within section 636(b)(1)(A). *Id.* (citing *MCC Mgmt. of Naples, Inc. v. Arnold & Porter, LLP*, No. 2:07-cv-387-FtM-29SPC, 2008 WL 4642835, at *1 (M.D. Fla. Oct. 20, 2008) ("The Motion to Strike was not itself dispositive of any claim, as it only sought to strike certain paragraphs of the Second Amended Complaint. . . . [T]herefore the magistrate judge properly resolved the motion by order."); *Nat'l Bankers Tr. Corp. v. Peak Logistics, LLC*, No. 2:12-cv-02268-STA-tmp, 2012 WL 12909869, at *2 n.1 (W.D. Tenn. June 1, 2012) (reasoning "a Motion to Strike paragraphs 41 and 42 of the Complaint, which deal solely with the non-dispositive, evidentiary issue of insurance coverage," was a non-dispositive motion)). Here, the Motion seeks to strike factual portions of the complaint, not the entire complaint or any cause of action within it. As such, the Motion is non-dispositive, permitting this Court to issue a determinative order, rather than a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(A).

*Scott v. Regions Bank*, No. 2:08-CV-296, 2010 WL 908790, at *3 (E.D. Tenn. Mar. 12, 2010) ("Generally, motions to strike are denied unless 'the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more parties in the action.'" (quoting 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1382 (3d ed. 2004))); *United States ex rel. Day v. UT Med. Grp., Inc.*, No. 2:12-cv-02139-JPM-dkv, 2013 WL 12149635, at *2 (W.D. Tenn. Aug. 2, 2013) ("To grant a Rule 12(f) motion, a court must also find that the moving party will be prejudiced by the inclusion of the disputed language.") (collecting cases).[6]

"The decision to grant or deny a motion to strike is within the discretion of the district court." *Tirone v. Am. Lebanese Syrian Associated Charities, Inc.*, No. 2:20-cv-02807-SHM-atc, 2021 WL 1206413, at *8 (W.D. Tenn. Mar. 30, 2021) (citing *Seay v. Tenn. Valley Auth.*, 339

---

[6] Although some decisions from courts within the Sixth Circuit suggest that prejudice, standing alone, may warrant granting a motion to strike, the bulk of the cases embrace the "general judicial agreement" that motions to strike redundant, immaterial, impertinent, or scandalous matters "should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy *and* may cause some form of significant prejudice to one or more of the parties to the action." Wright & Miller, *supra*, § 1382 (emphasis added); *see also, e.g.*, *Oxley v. Vanede, LLC*, No. 2:18-cv-02401-SHM-tmp, 2018 WL 4328264, at *2 (W.D. Tenn. July 30, 2018); *Jewell v. Shelby Cnty. Gov't*, No. 13-02048-STA-dkv, 2013 WL 5306102, at *4 (W.D. Tenn. Sept. 20, 2013); *Starnes Fam. Off., LLC v. McCullar*, 765 F. Supp. 2d 1036, 1059 (W.D. Tenn. 2011); *Snow v. Kemp*, No. 2:10-cv-02363-STA-cgc, 2010 WL 5670911, at *1 (W.D. Tenn. Oct. 22, 2010), *report and recommendation adopted*, 2011 WL 321651 (W.D. Tenn. Jan. 28, 2011) (explaining, in the context of a motion to strike a defense, that, "[e]ven when technically appropriate and well founded, Rule 12(f) motions are often not granted in the absence of a showing of prejudice to the moving party"). *But see Russ v. Memphis Light, Gas & Water Div.*, No. 2:14-cv-02365-SHM-dkv, 2014 WL 12664813, at *3 (W.D. Tenn. Dec. 17, 2014) ("The Court may also strike allegations if the moving party demonstrates significant prejudice."); *Brashier*, 2020 WL 12846638, at *2. Here, as explained below, the City Defendants have failed to demonstrate that the RED DOG unit-related allegations are redundant, immaterial, impertinent, or scandalous, contrary to the requirements of Rule 12(f), and therefore the allegations should not be struck regardless of prejudice.

F.3d 454 (6th Cir. 2003)); *see also Brashier v. Manorhouse Mgmt., Inc.*, No. 3:20-CV-294-CLC-HBG, 2020 WL 12846638, at *1 (E.D. Tenn. Sept. 18, 2020) ("Although motions to strike are generally disfavored as a drastic remedy, the court 'possesses considerable discretion in disposing of a Rule 12(f) motion to strike.'" (quoting *Godfredson v. JBC Legal Group, P.C.*, 387 F. Supp. 2d 543, 547 (E.D.N.C. 2005))). "Any doubt about whether the challenged material is redundant, immaterial, impertinent, or scandalous should be resolved in favor of the non-moving party." *Jewell*, 2013 WL 5306102, at *4 (citing Wright & Miller, *supra*, § 1382).

## ANALYSIS

The Motion seeks to strike the portions of the complaint that deal with the RED DOG unit, asserting that those allegations are not only immaterial and impertinent, but also scandalous under Rule 12(f).

**I.     The RED DOG Unit-Related Allegations Are Not Immaterial**

The City Defendants assert that any wrongs by the RED DOG unit are irrelevant to the City's liability in this case. "An immaterial matter is that which has 'no bearing on the subject matter of the litigation,'" whereas "[i]mpertinent allegations include statements that are not necessary to the issues presented." *White v. City of Cleveland*, No. 1:17-CV-01165, 2020 WL 4207668, at *2 (N.D. Ohio July 22, 2020) (quoting *McKinney v. Bayer Corp.*, No. 10-CV-224, 2010 WL 2756915, at *1 (N.D. Ohio July 12, 2010)); *see also Napper v. Hankison*, 617 F. Supp. 3d 703, 733 n.11 (W.D. Ky. 2022) (explaining that, though the allegations may be "inflammatory and indirect," striking them under Rule 12(f) was inappropriate because they "certainly relate[d] to the Plaintiffs' theory of the case"). The City Defendants argue that "the City cannot be held liable under *Monell* based on the alleged constitutional violations of an old and disbanded police unit established in a completely different jurisdiction because these allegations do not support the

allegations of deliberate conduct on the part of the City." (ECF No. 82-1, at 6–7.) Wells counters that the RED DOG unit allegations are relevant because they "demonstrate Chief Davis' participation in a previous and similar police suppression unit that inspired and informed her creation of SCORPION and its operational contours" and that Davis's "history with RED DOG and the APD clearly relates to Plaintiff's lawsuit and the subject matter of the litigation—the *Monell* allegations and the City of Memphis' pattern, practice, and policies that were the moving force behind the constitutional violations that ultimately led to the death of Tyre Nichols." (ECF No. 93, at 5.)

To state a claim against a municipality for a civil rights violation under 42 U.S.C. § 1983, a party must show that the violation occurred because of a municipal policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "A local government entity violates § 1983 where its official policy or custom actually serves to deprive an individual of his or her constitutional rights." *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (citing *Monell*, 436 U.S. at 692–94). That deprivation can occur where a policy is either unconstitutional on its face or "facially constitutional but consistently implemented to result in constitutional violations with explicit or implicit ratification by city policymakers." *Id.* In the latter case, "'the plaintiff 'must demonstrate that the municipal action was taken with "deliberate indifference" as to its known or obvious consequences.'" *Id.* (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Jackson v. City of Cleveland*, 925 F.3d 793, 836 (6th Cir. 2019) (quoting *Brown*, 520 U.S. at 410).

Wells argues that the allegations regarding the RED DOG unit are material because they relate to the deliberate indifference aspect of her *Monell* claim. As the City Defendants acknowledge, the logical chain of Wells's complaint is that Chief Davis and Assistant Chief Jones were involved in the RED DOG Unit in Atlanta from 2006 to 2009, that their "history with the Atlanta Police Department and their involvement with the RED DOG Unit should have given the City pause before hiring them," and that they "designed and operated [the SCORPION Unit in Memphis] in a similar manner as the RED DOG Unit." (ECF No. 82-1, at 3.) Wells asserts that "[t]he similarities between the two units demonstrate how the City of Memphis—through Chief Davis—created SCORPION modeled on RED DOG'[s] organizational structure and directives despite knowing the risks and foreseeable consequences of doing so." (ECF No. 93, at 5.) Those similarities "make it more likely that the City and Chief Davis were aware and able to predict the consequences of their policies, practices, and failures; therefore making it more likely they were deliberately indifferent." (*Id.* at 4–5.) Wells further asserts that "Chief Davis' experience in the RED DOG unit put her on notice, as the Chief of Police, of the substantial need for additional and specialized training for officers in the specialized SCORPION unit." (*Id.* at 6.)

In their reply, the City Defendants argue that only the conduct of City employees can be relevant to determining whether the City was deliberately indifferent. (ECF No. 102, at 2–3 ("Plaintiff must show a history of abuse **by the Memphis Police Department** to establish these claims, **not a history of abuse by the Atlanta Police Department**.").) But the scope of the relevance of what the City allegedly knew and disregarded is not so limited. For example, in the failure-to-train context,[7]

---

[7] "[A]t lease two types of situations . . . justify a conclusion of deliberate indifference in the failure to train police officers. One is failure to provide adequate training in light of foreseeable consequences that could result from the lack of instruction. . . . A second type of situation

8

> it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)) (discussing how inadequate training on the handling of exculpatory materials has the "highly predictable consequence of due process violations" (quotation omitted)); *see also Arrington-Bey v. City of Bedford Heights, Ohio*, 858 F.3d 988, 995 (6th Cir. 2017) ("It must be obvious that the failure to train will lead to certain conduct, *and* it must be obvious (*i.e.*, clearly established) that the conduct will violate constitutional rights."). To pursue such a theory, Wells will be required to show that the duties required of the SCORPION unit created obvious training needs and that the lack of such training would have likely and predictably resulted in constitutional violations. If the allegations regarding the similarities between the SCORPION unit and the RED DOG unit are true—and the Court must accept them as true at this stage—then those allegations are potentially relevant to demonstrating what should and should not have been obvious and predictable to Chief Davis and the City. Given the early posture of this litigation and the low relevance bar applicable to motions to strike, the City Defendants have not met their burden of demonstrating that the RED DOG allegations in no way relate to the subject matter of the case or the issues presented, and thus the allegations should, for now, remain a part of the complaint.

---

justifying a conclusion of deliberate indifference is where the city fails to act in response to repeated complaints of constitutional violations by its officers." *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999) (citing *Harris*, 489 U.S. 378). The City Defendants' argument appears to be directed toward the latter situation but does not address the former.

In light of the potential relevance of the RED DOG allegations, the City Defendants' argument that the allegations will cause juror confusion are premature at this time. The City Defendants may renew their confusion arguments, if necessary, during the pretrial stage of the case. *See, e.g.*, *Airgood v. Twp. of Pine*, No. 14-1249, 2016 WL 1247237, at *12 (W.D. Pa. Mar. 30, 2016) ("The Court finds that the challenged averments are arguably relevant . . . . To the extent the challenged allegations are potentially prejudicial and/or likely to confuse a fact-finder, the Court will have the ability to address these concerns through appropriate pretrial orders and/or careful jury selection, if the action proceeds to that stage.").

## II.   The RED DOG Unit-Related Allegations Are Not Scandalous

The RED DOG unit allegations are also not scandalous. The City Defendants cite two examples of allegations they consider scandalous, which they assert serve only to "disparage Chief Davis for her alleged actions with a different police department over fourteen years before she assumed the role of Chief of Police of the MPD." (ECF No. 82-1, at 8.) The first, paragraph 60, alleges that, "[i]n 2006, just months into Chief Davis' time as a Commander in the RED DOG Unit, three narcotics officers shot and killed a 92-year-old woman in a drug raid gone wrong." (*Id.*) The second, paragraph 61, alleges that, "[a]ccording to prosecutors of those narcotics officers, their 'routine violations of the Fourth Amendment led to the death of an innocent citizen.'" (*Id.*)[8]

---

[8] The City Defendants assert that these allegations are also inaccurate, as Chief Davis was never Commander of the RED DOG unit and instead was the Major over Special Operations, which included the RED DOG unit. (*Id.* at 8 n.1.) As for Jones, the City Defendants assert that he "was never involved with Special Operations or the RED DOG Unit." (*Id.*) The alleged falsity of the statements does not support striking them at this time. *See N.S. ex rel. J.S. v. Tenn. Dep't of Educ.*, No. 3:16-CV-0610, 2017 WL 1347753, at *6 (M.D. Tenn. Apr. 12, 2017) (explaining that, "[b]y their very nature, pleadings will often contain allegations that are ultimately found to be untrue, but this does not render the pleadings improper or subject to being stricken at the

10

The City Defendants assert that these statements "are nothing more than [an] attempt to inflame public opinion against Chief Davis and the MPD" and that such "[s]candalous allegations that improperly cast a derogatory light on a party will be stricken, especially if they are immaterial or irrelevant, or 'may cause the objecting party prejudice.'" (*Id.* at 8 (quoting *Brashier*, 2020 WL 12846638, at *1).) Wells characterizes the statements as "adverse, properly pled facts that the Defendants must grapple with" and asserts they "do not implicate or attack the City Defendants['] moral character, nor do they use any repulsive language." (ECF No. 93, at 7, 9.)

"The word 'scandalous' in Rule 12(f) 'generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court.'" *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 776 (E.D. Mich. 2014) (quoting *Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003)). The City Defendants point to no allegation that does either. The RED DOG unit-related allegations do not impugn Davis's character or use repulsive language.

Moreover, as discussed above, such allegations are potentially relevant, even if inflammatory, and thus they should not be stricken under Rule 12(f) as scandalous. *See Penman v. Correct Care Sols.*, No. 5:18-CV-58-TBR, 2018 WL 6241621, at *2 (W.D. Ky. Nov. 28, 2018) ("While such statements may be inflammatory, and perhaps ill-advised, they simply do not rise to the level of 'scandalous' sufficient to warrant relief under Rule 12(f)." (quoting *Cobell v. Norton*, 224 F.R.D. 266, 283 (D.D.C. 2004))); *Dassault Systemes, S.A. v. Childress*, No. 09-

beginning of the litigation process," as "[o]therwise . . . courts would be overwhelmed with motions to strike allegations whenever they are factually denied by defendants").

10534, 2009 WL 3602084, at *5 (E.D. Mich. Oct. 27, 2009), *aff'd*, 663 F.3d 832 (6th Cir. 2011) (explaining that "[i]t is not enough that the matter offends the sensibilities of the objecting party of the person who is the subject of the statement in the pleading, if the challenged allegations describe acts or events that are relevant to the action" (quoting Wright & Miller, *supra*, § 1382)); *White v. City of Cleveland*, No. 1:17-CV-01165, 2020 WL 4207668, at *3 (N.D. Ohio July 22, 2020) (explaining that, "because the allegations are relevant, they are not scandalous within the meaning of Rule 12(f)"); *see also Brashier*, 2020 WL 12846638, at *3 (finding the complaint's "generalized history of LGBTQ discrimination" scandalous, "to the extent that the generalized allegations of historical discrimination across the country are imputed on Defendant"). The statements at issue speak directly to Davis's involvement with the RED DOG unit and its operations, allegations that relate to Wells's theory of the case. As a result, they are not scandalous and will not be stricken from the complaint.

## CONCLUSION

"[C]ourts should not tamper with the pleadings unless there is a strong reason for so doing." *Church Joint Venture v. Blasingame*, No. 2:12-cv-02999-SHM-tmp, 2017 WL 943961, at *4 (W.D. Tenn. Mar. 9, 2017) (citations omitted). The City Defendants have failed to provide such a strong reason as to the allegations they seek to strike from the complaint. The Motion is therefore DENIED.

SO ORDERED this 19th day of October, 2023.

s/Annie T. Christoff<br>
ANNIE T. CHRISTOFF<br>
UNITED STATES MAGISTRATE JUDGE