**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| ROWVAUGHN WELLS, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF TYRE DEANDRE NICHOLS, DECEASED, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:23-CV-02224 |
| | ) | |
| THE CITY OF MEMPHIS, A MUNICIPALITY; CHIEF CERELYN DAVIS, IN HER OFFICIAL CAPACITY; EMMITT MARTIN III, IN HIS INDIVIDUAL CAPACITY; DEMETRIUS HALEY, IN HIS INDIVIDUAL CAPACITY; JUSTIN SMITH, IN HIS INDIVIDUAL CAPACITY; DESMOND MILL, JR. IN HIS INDIVIDUAL CAPACITY; TADARRIUS BEAN, IN HIS INDIVIDUAL CAPACITY; PRESTON HEMPHILL, IN HIS INDIVIDUAL CAPACITY; ROBERT LONG, IN HIS INDIVIDUAL CAPACITY; JAMICHAEL SANDRIDGE, IN HIS INDIVIDUAL CAPACITY; MICHELLE WHITAKER, IN HER INDIVIDUAL CAPACITY; DEWAYNE SMITH, IN HIS INDIVIDUAL CAPACITY AND AS AGENT OF THE CITY OF MEMPHIS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT LONG'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS FOR QUALIFIED IMMUNITY**

**COMES NOW**, Defendant Robert Long, by and through counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully submits the following Memorandum in Support of His Motion to Dismiss. Defendant Long now asks the Court to dismiss this lawsuit against him for

1

two reasons: (1) Plaintiff has failed to plead a viable constitutional violation based on inadequate medical care; and (2) Plaintiff has not presented a clearly established 14th Amendment claim to medical services.

## INTRODUCTION

As the Complaint states, Tyree Nichols died at the hands of rogue police officers and the Scorpion unit that was set up by the City of Memphis and the Chief of Police. Defendant Long was dispatched to a pepper spray incident at an entirely different location. It is undisputed that Defendant Long nor any other member of the Memphis Fire Department was dispatched to the scene of Tyree Nichols. Upon arriving on the scene, the police officers on the scene prevented Defendant Long from doing his job by refusing to release Mr. Nichols for emergency medical treatment.

Qualified immunity requires a plaintiff to demonstrate two things: (1) a defendant violated a constitutional right; and (2) it was a clearly established right at the time. Plaintiff cannot avoid qualified immunity in this matter. First, there is no Fourteenth Amendment right to adequate medical care from state actors. Second, Plaintiff's allegations do not support any constitutional violation. And third, any conceivable violation was not clearly established in January of 2023. Recently, the Sixth Circuit Court of Appeals released *Linden v. City of Southfield, et al*, 75 F4th, 597, 602 (6th Cir. 2023). ("Generally, there is no constitutional right to adequate medical care for individuals who are not in custody of the state."). The Court went on to say that "it is not a constitutional violation for a state actor to render incompetent medical assistant or fail to rescue those in need." *Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005); *Peete v. Metropolitan Gov't of Nashville and Davidson Cnty.*, 486 F.3d 217 (6th Cir. 2007); *DeShaney v. Winnebago Cty. Dep't*

*of Sco. Servs.*, 489 U.S. 189, 198 (1989). Thus, it is hard to see how Plaintiff can maintain a claim against Defendant Long as an Emergency Medical Technician.

## STATEMENT OF THE ALLEGATIONS

This lawsuit arises out of the death of Tyree Nichols due to a beating by Memphis Police Officers.  This lawsuit is filed against the City of Memphis, Chief Cerelyn Davis, Emmitt Martin III, Demetrius Haley, Justin Smith, Desmond Mills, Jr., Tadarrius Bean, Preston Hemphill, Robert Long, JaMichael Sandridge, Michelle Whitaker, and DeWayne Smith.  Case No. 2:23-cv-002224 [ECF Docket 1, PageID 1].   Plaintiff's Complaint alleges the following as to Defendant Long:

 "At 8:41 p.m. three Emergency Medical Technicians ("EMTs") arrived and proceeded to disregard Tyre's condition and failed to provide any of the clearly necessary medical aid to him." [ECF Docket 1, ¶236, PageID 46]

"Two of those EMTs—Memphis Fire Department ("MFD") EMTs Robert Long and JaMichael Sandridge—joined the other officers milling around Tyre."  [ECF Docket 1, ¶237, PageID 46]

"The third was Lieutenant Michelle Whitaker—a 25-year veteran with the MFD— who had arrived in a fire engine nearby, could see Tyre and was informed of the incident, but never left the engine to assist on the scene."  [ECF Docket 1, ¶238, PageID 46]

"EMTs Long and Sandridge knelt near Tyre briefly while carrying medical bags containing triage kits and first aid supplies."  [ECF Docket 1, ¶239, PageID 46]

"At one point, EMT Sandridge pulled a blood pressure cuff from his bag."  [ECF Docket 1, ¶240, PageID 46]

"MFD EMT Sandridge took out the blood pressure cuff, but failed to use it or anything else in his medical bag." [ECF Docket 1, ¶241, PageID 46]

"Rather than using the cuff to evaluate Tyre's blood pressure, EMT Sandridge set it back down after Tyre slumped over onto the ground at which time EMT Sandridge left him there." [ECF Docket 1, ¶242, PageID 46]

"For the next 19 minutes, all three EMTs failed to provide aid for Tyre:

a.   They did not assess Tyre's airway, breathing, and circulation;

b.   They did not obtain vital signs;

c.   They did not conduct a head-to-toe examination;

d.   They did not uncuff Tyre or adjust him against the squad car;

e.   They did not attend to his obvious wounds;

f.   They did not provide high-flow oxygen;

g.   They did not provide an intravenous line;

h.   They did not place Tyre on a cardiac monitor to assist in his future care at the hospital; and

i.   They did not transport him to a hospital or emergency medical center." [ECF Docket 1, ¶243, PageID 47].

"MFD EMT Robert Long was aware of Tyre's medical condition and plainly obvious injuries, but deliberately refused to provide necessary medical care." [ECF Docket 1, ¶244, PageID 47].

Plaintiff's complaint further alleges in Count XX that Defendant Long committed the following:

Long violated Plaintiff's 14th Amendment "right to adequate and sufficient medical care and/or treatment such that Plaintiff hereby incorporates and realleges Paragraphs 1 through 293 as though fully pleaded herein. [ECF Docket 1, ¶766, PageID 117].

"The conduct by Memphis Fire Department Emergency Medical Technician ("EMT") Robert Long identified and described in this count and in the preceding factual paragraphs constituted

4

deliberate indifference to serious medical needs in violation of the Fourteenth Amendment to the United States Constitution." [ECF Docket 1, ¶767, PageID 117].

"The conduct by Memphis Fire Department EMT Robert Long identified and described in this count and in the preceding factual paragraphs constituted deliberate indifference to serious medical needs as defined by clearly established law." [ECF Docket 1, ¶768, PageID 117].

"At all relevant times, Memphis Fire Department EMT Robert Long was acting under color of state law, as an agent of the City of Memphis, and within the scope of his employment and authority as a duly certified EMT with the City of Memphis." [ECF Docket 1, ¶769, PageID 117].

"At all relevant times, Memphis Fire Department EMT Robert Long was licensed by the Tennessee Emergency Medical Services Division as an advanced emergency medical technician in the State of Tennessee, Licensed since 2020." [ECF Docket 1, ¶770, PageID 117].

"At all relevant times in which Memphis Fire Department EMT Robert Long interacted with him, Tyre Nichols was suffering from injuries so obvious that even a layperson would have easily recognized the necessity for medical attention." [ECF Docket 1, ¶771, PageID 118].

"Every reasonable EMT would have known that Tyre Nichols objectively required medical attention after observing the following physical conditions:

a. He was unable to communicate or speak;

b. He was unable to hold himself up in a seated position;

c. He was bleeding from his face and his body, and his wounds were unattended;

d. He was unable to keep his eyes open;

e. He passed in and out of consciousness." [ECF Docket 1, ¶772, PageID 118].

"Even a layperson, let alone a trained EMT, would have known that Tyre Nichols was suffering from several serious medical needs and necessitated medical treatment." [ECF Docket 1, ¶773, PageID 118].

"Memphis Fire Department EMT Robert Long failed to transport Tyre Nichols to receive medical care by a doctor for approximately nineteen minutes." [ECF Docket 1, ¶774, PageID 118].

"Every reasonable EMT would have known that it was deliberately indifferent to fail to provide medical treatment in the face of such easily recognizable and serious medical conditions." [ECF Docket 1, ¶775, PageID 118].

"Memphis Fire Department EMT Robert Long was deliberately indifferent in denying Tyre Nichols appropriate medical care that was obviously necessary." [ECF Docket 1, ¶776, PageID 118].

"As a trained EMT, Robert Long was required to transport patients with medical needs to the emergency department to be treated by physicians." [ECF Docket 1, ¶777, PageID 118].

"Memphis Fire Department EMT Robert Long observed Tyre Nichols' grave condition for nearly twenty minutes, and only assisted in placing him on a stretcher when other medical personnel arrived on scene to provide care for Tyre Nichols." [ECF Docket 1, ¶778, PageID 119].

"Memphis Fire Department EMT Robert Long showed deliberate indifference to a substantial risk of serious harm to Tyre Nichols when he ignored Tyre Nichols' condition, and instead stood and walked around Tyre Nichols as his physical condition only worsened." [ECF Docket 1, ¶779, PageID 119].

"Memphis Fire Department EMT Robert Long failure to render medical attention to Tyre Nichols or transport him to a hospital in a timely manner after he was in a critical medical condition was deliberately indifferent and violated clearly established law." [ECF Docket 1, ¶780, PageID 119].

6

"As a direct and proximate result of Memphis Fire Department EMT Robert Long's deliberate indifference to serious medical needs, Tyre Nichols experienced catastrophic personal injuries and death." [ECF Docket 1, ¶781, PageID 119].

"As a direct and proximate result of Memphis Fire Department EMT Robert Long's deliberate indifference to serious medical needs, Tyre Nichols experienced catastrophic conscious pain, suffering, and emotional distress." [ECF Docket 1, ¶782, PageID 119].

"As a direct and proximate result of Memphis Fire Department EMT Robert Long's deliberate indifference to serious medical needs, Tyre Nichols eventually died of his injuries." [ECF Docket 1, ¶783, PageID 119].

"As a direct and proximate result of Memphis Fire Department EMT Robert Long's deliberate indifference to serious medical needs, Tyre Nichols suffered compensatory and special damages as defined under federal common law and in an amount to be determined by a jury." [ECF Docket 1, ¶784, PageID 119].

"Punitive damages are available against Memphis Fire Department EMT Robert Long as a matter of federal common law and are hereby sought by Plaintiff." [ECF Docket 1, ¶785, PageID 119].

"As a direct and proximate result of the acts and omissions described in this Count, Tyre Nichols' next of kin have suffered pecuniary loss, including medical and funeral expenses; loss of future wages and earnings; and loss of aid, counsel, guidance, advice, assistance, protection, and support in an amount to be determined by a jury." [ECF Docket 1, ¶786, PageID 120].

"Plaintiff is entitled to recovery of costs and reasonable attorneys' fees as prescribed under 42 U.S.C. § 1988.e State of Tennessee, licensed since 2020." [ECF Docket 1, ¶787, PageID 120].

In this Motion, Defendant Long now asks the Court to grant him qualified immunity because Plaintiff has not plead a violation of an actual constitutional right, nor was any alleged right clearly established.

## STANDARD OF REVIEW

A complaint must allege all material elements of a "viable legal theory" to sufficiently state a claim. *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). A court must accept all well-pled factual allegations as true, but "need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true." *Id*. The motion is generally confined to the pleadings, but a court may consider other materials, such as "exhibits, public records, and items appearing in the records of the case" when they are verifiable and/or public records appropriate for judicial notice. *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017) (holding that the district court appropriately considered a video that captured the entire event that was in dispute and contradicted the plaintiff's allegations.

If, after construing the complaint in a light most favorable to the non-moving party, the court determines that plaintiff has failed to plead "enough facts to state a claim for relief that is plausible on its face," the court must grant the moving party judgement as a matter of law. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Qualified immunity is an appropriate basis for dismissal under Rule 12(b)(6). *Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005). A court can dismiss a complaint under Rule 12(b)(6) "if it is clear that no violation of a clearly established constitutional right could be found under any set of facts that could be proven consistent with the allegations or pleadings." *Id*. Moreover, in light of recent Sixth Circuit precedent such as *Linden v. City of Southfield*, *et al*, 75 F4th, 597, 602 (6th Cir. 2023), ("[g]enerally, there is no constitutional right to adequate medical care for

individuals who are not in custody of the state"), and *Peete v. Metropolitan Gov't of Nashville and Davidson Cnty.*, 486 F.3d 217 (6th Cir. 2007) ("it is not a constitutional violation for a state actor to render incompetent medical assistant or fail to rescue those in need"), Plaintiff cannot overcome qualified immunity and this Court can dismiss Plaintiff's complaint if it is clear that the events as established by the public records and pleadings could never support a violation of clearly established law. *See Bailey*, 860 F.3d at 386, and *Jackson*, 429 F.3d at 589.

## LAW AND ANALYSIS

### I.    PLAINTIFF HAS FAILED TO PLEAD A VIABLE CONSTITUTIONAL VIOLATION BASED ON INADEQUATE MEDICAL CARE

Plaintiff's liability theories are not viable and subject to dismissal under Rule 12(b)(6) because Defendant Long is entitled to qualified immunity under both prongs of the traditional two-step analysis. *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) (quoting *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993)) (holding that complaints must state viable claims). It is well-known that the doctrine of qualified immunity protects government officials from civil liability to the extent that their conduct does not violate clearly established statutory or constitutional rights. *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (quoting *Reichle v. Howards*, 132 S.Ct. 2088, 2093, (2012)); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As originally announced in *Saucier v. Katz*, there are two parts to any qualified immunity analysis: (1) whether a constitutional right was violated, and (2) whether the right was clearly established. 533 U.S. 194 (2001); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Defendant Long asks the Court to hold that "there is no constitutional right to adequate medical care for individuals who are not in custody of the state." *Linden v. City of Southfield*, *et al*, 75 F4th, 597, 602 (6th Cir. 2023).    Defendant Long also states "it is not a constitutional violation for a state actor to render incompetent medical assistant or fail to rescue those in need."

*Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005); *Peete v. Metropolitan Gov't of Nashville and Davidson Cnty.*, 486 F.3d 217 (6th Cir. 2007); *DeShaney v. Winnebago Cty. Dep't of Sco. Servs.*, 489 U.S. 189, 198 (1989). Defendant Long further asks the Court to hold that there was no clearly established right under the second prong of the qualified immunity analysis. *Id.* This prong is, itself, a two-step process. First, the analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. Therefore, the constitutional right "must be defined at the appropriate level of specificity to determine whether it was clearly established at the time the defendants acted." *Risbridger v. Connelly*, 275 F.3d 565, 569 (6th Cir. 2002). This does not require that the specific factual scenario in each case have been previously addressed, but that the unconstitutional nature of such conduct "be apparent." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Unfortunately, there is no case that supports the Plaintiff's proposition that Defendant Long violated the Plaintiff's constitutional rights.

Once a right is defined with particular clarity, the second step is to determine whether existing case law would have notified the actor that his conduct was prohibited. *Id.* (citing *Saucier*, 533 U.S. at 202). For such notice to exist, there must be binding precedent that makes the unlawfulness of the conduct readily apparent to a reasonable person in the actor's position (e.g. every police officer, every EMS provider, every clerk, etc.). *Risbridger*, 275 F.3d at 569. The law must be clear enough that "any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014). As applied in the Sixth Circuit, this requires that the law be so clear "that every reasonable [official] in [the official's] shoes would have recognized that [his actions were unconstitutional]—and not just in the

abstract but in the precise situation [the official] was facing." *Ashford v. Raby*, 951 F.3d 798, 801 (6th Cir. 2020).

The search for binding precedent must start with our Supreme Court, then to the relevant Circuit Courts. *Champion*, 380 F.3d at 902 (citing *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir.2002)). Next, the search for case law looks to other courts within the circuit, i.e., District Courts. *Id.* Lastly, the search looks to the law in other circuits. *Id.* However, once the search turns to cases beyond the relevant circuit, such as opinions from district courts or other circuits, the Supreme Court has cautioned courts in finding clearly established law. The Sixth Circuit recently reiterated the bounds of this inquiry regarding opinions from sister circuits in *Ashford*, 951 F.3d at 804. The Court stated that precedent from other circuits "are usually irrelevant" to this inquiry. *Id.* Such precedent is relevant only in "'extraordinary' cases where out-of-circuit decisions 'both point unmistakably to' a holding and are 'so clearly foreshadowed by applicable direct authority as to leave no doubt' regarding that holding." *Id.* (quoting *Ohio Civil Serv. Emps. Ass'n v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988) (emphases added)).

The holdings governing the claim Plaintiff attempts to bring now are anything but clear. The case law within the Sixth Circuit appears only to weigh against Plaintiff's claims. Precedent from other circuits is not helpful to Plaintiff's as there are no "extraordinary" holdings that would have placed Defendant Long on notice. Therefore, Plaintiff's claim is also barred by prong two of the immunity analysis.

## II.    PLAINTIFF HAS NOT PRESENTED A CLEARLY ESTABLISHED 14TH AMENDMENT CLAIM TO MEDICAL SERVICES

Plaintiff's constitutional claim is stated vaguely as a "right to adequate and sufficient medical care and/or treatment…" under the Fourteenth Amendment. [ECF No. 1, PageID.46-47, ¶¶236-244, 117-120:766-787]. This claim appears to assert a general right to adequate medical

care extending directly from the text of the Fourteenth Amendment.  It appears to be an attempt to circumvent the controlling law on this issue that arises from the Supreme Court's opinion in *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 198 (1989).  Plaintiff tries to circumvent *Deshaney* because it cannot satisfy its requirements to assert a substantive due process claim. As argued below, Plaintiff's pleadings do not allege a constitutional violation under *Deshaney* or the Fourteenth Amendment generally.[1]

### A.    DEFENDANT LONG IS ENTITLED TO QUALIFIED IMMUNITY BECAUSE THERE IS NO GENERIC RIGHT TO ADEQUATE MEDICAL CARE OWED TO FREE CITIZENS

"It is not a constitutional violation for a state actor to render incompetent medical assistance or fail to rescue those in need." *Linden v. City of Southfield*, et al, 75 F4th, 597, 602 (6th Cir. 2023); *Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005) (citing *DeShaney*, 489 U.S. at 196) (emphasis added); *Baker v. City of Detroit*, 217 F. App'x 491, 494 (6th Cir. 2007); *Peete v. Metropolitan Gov't of Nashville and Davidson Cnty.*, 486 F.3d 217 (6th Cir. 2007); *Brown v.  Commonwealth of Pennsylvania Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 478 (3d Cir. 2003) (holding "that there is no federal constitutional right to rescue services, competent or otherwise").

The law recognizes that the government owes a duty to provide adequate medical care to those in its custody but has not extended this duty to free citizens generally. *Griffith v. Franklin Cty., Kentucky*, 975 F.3d 554, 566 (6th Cir. 2020), *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004), and *Baynes v. Cleland*, 799 F.3d 600, 618 (6th Cir. 2015)). (explaining rights extended to inmates and pretrial detainees).  Any extension of the duty to provide medical care is

---

[1] Beyond an analysis of these theories of recovery, neither Defendant Long nor the Court has a duty to search out a claim not plainly outlined in Plaintiff's pleadings. *Freightliner of Knoxville, Inc. v. DaimlerChrysler Vans, LLC*, 484 F.3d 865, 871 n.4 (6th Cir. 2007*); In re Commonwealth Institutional Sec., Inc.*, 394 F.3d 401, 405 (6th Cir. 2005) (holding that complaint must give defendant fair notice of claims).

best viewed through the lens of *Deshaney*, discussed in Section B below. But as Mr. Nichols was a free member of society, he held no general right to adequate medical care. Plaintiff's claim to the extent it is premised on this assertion, should be dismissed because Plaintiff has not asserted that Defendant Long violated a constitutional right. Defendant Long is thus, entitled to qualified immunity.

> **B.    DEFENDANT LONG IS ENTITLED TO QUALIFIED IMMUNITY BECAUSE PLAINTIFF CANNOT SATISFY *DESHANEY'S* ELEMENTS TO ASSERT A VALID FOURTEENTH AMENDMENT VIOLATION**

The doctrine upon which Plaintiff's claim may lie arose out of the Supreme Court's holding in *Deshaney*. In *Deshaney*, the Supreme Court was confronted with an "undeniably tragic" situation. *DeShaney*, 489 U.S. at 191. A young boy had suffered horrible abuse by his father; such abuse eventually led the boy, Joshua, to suffer severe brain damage. *Id*. at 192-93. He and his mother sued alleging that his Fourteenth Amendment rights were violated when the State failed "to intervene to protect him against a risk of violence at his father's hands of which they knew or should have known." *Id*. at 193. The district court dismissed the case and the Seventh Circuit affirmed. *Id*. at 193-94. The Supreme Court accepted the petition to address "inconsistent approaches taken by the lower courts in determining *when, if ever, the failure of a state or local government or its agent's failure to provide an individual with adequate protective services constitutes a violation of the individual's due process rights…*and the importance of the issue to the administration of state and local governments." *Id*. at 194 (internal citations omitted) (emphasis added).

The Supreme Court first looked to the text and history of the 14th Amendment. *Id*. at 194-197. Concluding first that Joshua's claim sounded in substantive, not procedural due process, the Court framed the question as whether the state was "categorically obligated to protect him in these

circumstances." *Id*. at 195. The text of the Amendment did not require such protection from "private actors," nor was it intended to guarantee a minimum level of safety. *Id*. Instead, it was intended to limit "the State's power to act," i.e., it was a restraint of power, not an affirmative guarantee the State would exercise its power in a certain way. *Id*.

The Court next discussed its similar interpretations in previous Fourteenth Amendment decisions. *Id*. It discussed an array of cases where it held that the State did not have an affirmative duty to provide aid, "even where such aid may be necessary to secure life, liberty, or property interests." *Id*. From here, the Court concluded that "it follows that the State cannot be held liable under the [Due Process] Clause for injuries that could have been averted had it chose to provide [protective services]." *Id*. 196-97.

The Court's most explicit rejection of the current *Deshaney* doctrine lies in the next portion of its analysis: whether a duty can arise based on a special relationship that arose through the State's knowledge of the danger Joshua faced and its prior effort to protect him. *Id*. at 197. The Court's response was clear when it wrote, "We reject this argument." *Id*. The Court discussed how it had previously acknowledged that an affirmative duty of protection arose only under limited circumstances wherein the State "so restrain an individual's liberty that it renders him unable to care for himself, and at the same time fails to provider for his basic human needs." *Id*. at 200. Thus, the underlying principle of *Deshaney* is that a State's affirmative duty to protect does not arise from its "knowledge of an individual's predicament," or "its expressions of intent to help;" it arises only where the State limits an individual's "freedom to act on his own behalf." *Id*. (holding that the State must restrain an individual's ability to act through "incarceration, institutionalization, or other similar restraint of personal liberty.").

The Supreme Court reiterated *Deshaney* in *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 755 (2005). In *Castle Rock*, the Court addressed whether a State can create a procedural due process right to protection, a question the Court acknowledged it left unanswered in *Deshaney*. 545 U.S. at 755. In explaining why it went unanswered, the Court wrote that their holding in *Deshaney* was "that the so-called 'substantive' component of the Due Process Clause does not 'requir[e] the State to protect the life, liberty, and property of its citizens against invasion by private actors.'" *Id.* (quoting *Deshaney*, 489 U.S. at 195). The Court answered the previously unanswered question in the negative and instructed that "[t]his result reflects our continuing reluctance to treat the Fourteenth Amendment as a font of tort law." *Id.* at 768 (cleaned up). In its final note, the majority wrote:

> "Although the framers of the Fourteenth Amendment and the Civil Rights Act of 1871, 17 Stat. 13 (the original source of § 1983), did not create a system by which police departments are generally held financially accountable for crimes that better policing might have prevented, the people of Colorado are free to craft such a system under state law."

*Id.* at 768-69.

The Sixth Circuit applied *Deshaney* in *Nobles v. Brown*, 985 F.2d 235, 237 (6th Cir. 1992). (holding that Fourteenth Amendment did not guarantee prison guards protection from prisoners). Later the Court developed a cause of action in *Walton v. City of Southfield*, 995 F.2d 1331, 1337 (6th Cir. 1993) (finding one application of the doctrine not clearly established), and *Foy v. City of Berea*, 58 F.3d 227, 231 (6th Cir. 1995) (holding that police did not restrain an individual's ability to care for himself where they ordered an intoxicated person to get in a car and leave), to its outright adoption in *Stemler v. City of Florence*, 126 F.3d 856 (6th Cir. 1997), *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998) (defining state-created danger theory), and *Davis v. Brady*, 143 F.3d 1021 (6th Cir. 1998).

15

The Sixth Circuit recognizes a version of both the custody exception and the state-created danger doctrine. Under the custody exception, the state has a general duty to provide for an individual's basic needs, i.e., the food, shelter, clothing, and safety mentioned in *Deshaney*. *Lipman v. Budish*, 974 F.3d 726, 741–42 (6th Cir. 2020). As the name implies, the custody exception "only applies to injuries that occur when the plaintiff is in the state's custody." *Id.* at 742-43. The custody exception is improperly characterized as a *Deshaney* exception, where it is otherwise just an extension of the existing Fourteenth Amendment *Estelle-Youngberg* line of cases. The custody exception does not apply when an individual is merely released into a world with the same risks he faced before he entered the state's custody. *Id.* at 743. There is nothing in Plaintiff's complaint that establishes that Mr. Nichols' injuries occurred while in custody. Thus, the *Deshaney* exception does not apply.

The state-created danger doctrine is a true creation based on *Deshaney*. *Lipman*, 974 F.3d at 743. Under the state-created danger doctrine, a plaintiff must satisfy three elements:

> "1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party;
> 2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and
> 3) the state knew or should have known that its actions specifically endangered the plaintiff."

*Id.* at 744 (citing *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003).

Within the Sixth Circuit, these two exceptions have been applied, and routinely rejected, in cases involving claims against emergency medical responders who allegedly failed to provide adequate medical care. The Sixth Circuit has addressed this point in two cases with very similar allegations to those asserted here, *Jackson and Baker*. See also *Willis v. Charter Tp. of Emmett*, 360 F. App'x 596 (6th Cir. 2010) (holding firefighter could not be liable for mispronouncing death of patient).

16

> i. JACKSON V. SCHULTZ – 2005 - SIXTH CIRCUIT CLEARLY
> ESTABLISHES EMERGENCY RESPONDERS HAVE NO AFFIRMATIVE
> CONSTITUTIONAL DUTY TO PROVIDE AID

In *Jackson*, the complaint provided the basis for dismissal and contained the proceeding allegations. *Jackson*, 429 F.3d at 588-89. The decedent suffered a gunshot wound in a bar and EMTs were dispatched to respond by the Detroit Fire Department. *Id.* at 588. The decedent was alive but bleeding profusely when the EMTs arrived and placed him in their ambulance. *Id*. The EMTs did not provide any life support or transport, despite department policy requiring the transport. *Id*. The decedent died in the ambulance. *Id*. The plaintiff sued the EMTS on two theories of liability: that they violated the decedent's right to substantive due process when they did not provide any medical care; and that *Deshaney* triggered a right to adequate medical care because the decedent was in state custody and in a situation of state created danger. *Id*. at 589. It is uncertain but this appears to be the approach Plaintiff takes in this case.

The *Jackson* court quickly dismissed the first theory, writing only that "[i]t is not a constitutional violation for a state actor to render incompetent medical assistance or fail to rescue those in need." *Id*. at 590 (citing *Deshaney*, 489 U.S. at 196). The court then recognized that *Deshaney* presented the only exceptions to that rule but found that neither of *Deshaney's* two exceptions applied. *Id*. *Deshaney's* in-custody exception did not apply because it imposed a duty to provide medical care only when the state had "restrain[ed] the ability of an individual to act on his own behalf," like prisoners, the involuntarily committed, foster children, and pre-trial detainees. *Id*. The *Jackson* decedent was not in custody even though he had been moved to an ambulance because the EMTs did nothing to restrain the unconscious decedent. *Id*. at 590-91.

"[The] Decedent's liberty was 'constrained' by his incapacity, and his incapacity was in no way caused by the defendants." *Id*. at 591.

Likewise, *Deshaney's* state-created danger theory was rejected. *Id*. This theory required the plaintiff to "plead (1) an affirmative act by the EMTs that creates or increases a risk that the decedent would be exposed to 'private acts of violence,' (2) a special danger to the decedent such that the EMTs' acts placed the decedent specifically at risk, as distinguished from a risk that affects the public at large, and (3) that the EMTs knew or should have known that their actions specifically endangered the decedent." *Id*. The court deduced that plaintiff's theory was based on two different ideas: that the EMTs moved the decedent to a more dangerous area (the back of the ambulance), or that the decedent was moved to a place where it was less likely other people would render aid. *Id*.

The *Jackson* court suggested that the only possible claim the plaintiff could have pled was that the EMTs cut off "private sources of rescue without providing an adequate alternative." *Id*. This was based on dictum in *Beck v. Haik*, 377 F.3d 624, 643 (6th Cir. 2004), that suggested a constitutional claim may lie where "police threatened to arrest private search and rescue divers at the scene of a drowning, and then failed to provide adequate state divers." *Id*. The Sixth Circuit held that such a claim was not satisfied in *Jackson* because there were no allegations the EMTs did anything more than place the decedent in the back of the ambulance; they did not discourage others from entering the ambulance; there were no allegations that private rescue was available or attempted; nor were there any facts showed "the EMTs interfered with private aid." *Id*. at 592. Similar to *Jackson*, Plaintiff in the case at hand has failed to plead any allegation that Defendant Long interfered with private aid or prevented others from providing services to Mr. Nichols.

ii        **BAKER V. CITY OF DETROIT – 2007 – SIXTH CIRCUIT REAFFIRMS THAT EMERGENCY RESPONDERS HAVE NO DUTY TO RENDER COMPETENT AID**

The Sixth Circuit reaffirmed the principles outlined in *Jackson* just two years later in *Baker v. City of Detroit*, an unpublished opinion.  217 F. App'x at 494-96.  In *Baker*, paramedic Townsend was sued by his patient Baker. *Id*. at 492.  Townsend responded to a call that Baker was having breathing difficulties.  *Id*.  Baker's condition did not appear serious, but she reported having breathing problems for "several weeks," even though she was able to go to work.  *Id*.  Baker also reported that she had no heart problems and did have a family history of hypertension but had never been diagnosed with it herself.  *Id*. Baker walked from her home to the ambulance before Townsend could take her vitals. *Id*.

Inside the ambulance, Baker experienced "extreme respiratory discomfort" and refused to sit down while suffering a "bronchial *spasm*."  *Id*.  at 493.  Baker panicked and the responders had to force a mask on to her to administer albuterol; she knocked the mask off before being injected with .5 cc of epinephrine. *Id*. Baker calmed down and Townsend administered another .5 cc epinephrine injection. *Id*.

Townsend's administration of the epinephrine was against protocol.  *Id*.  Protocol limited epinephrine injections to .3 cc and required approval from hospital personnel before it was administered.  *Id*.  Epinephrine was not approved for patients with elevated blood pressure, cardiac problems, or those over the age of 35.  *Id*.  Additionally, when Townsend told the hospital he was transporting the patient "Code 1" a patient in respiratory distress that had received epinephrine, he did not mention how much epinephrine.  *Id*.  Townsend also told the hospital "he was unable to

get Baker's vital signs," and would try again, but never did. *Id*. Baker went into cardiopulmonary arrest and died shortly after arriving at the hospital. *Id*.

Following Baker's death, an expert opined that the epinephrine injections caused Baker's death. *Id*. The governing medical control authority also reviewed Townsend's treatment of Baker and found that he performed poorly and violated multiple protocols. *Id*. Townsend was required to take remedial training courses. *Id*. When Baker's Estate sued, its claims included a violation of Baker's Fourteenth Amendment rights. *Id.* at 494. This violation was based on two theories: that Townsend had taken Baker into custody and failed to provide adequate medical care; and, that Townsend had exacerbated the danger Baker faced by administering epinephrine. *Id*. The District Court dismissed this claim and the Estate appealed. *Id*. The Sixth Circuit quickly disposed of the Estate's custody argument. *Id*. at 494-95. The court explained that Baker's liberty was never restrained to trigger a duty to provide adequate medical care as required in the *Estelle-Youngberg* line of cases. *Id*. To satisfy the restraint element, there had to be some "application or threat of force and a show of authority made with the intent of acquiring physical control," which Baker could not satisfy because she had desired and sought treatment from Townsend. *Id*. Whether Townsend's medical treatment was correct or negligent did not alter the court's analysis or conclusion. *Id*.

The Sixth Circuit found the Estate's second theory, that Baker created the danger by injecting her with epinephrine, unclear. *Id*. Nonetheless, it found that the theory did not survive because there was not a sufficient level of culpability. *Id*. The Estate had failed to address whether the appropriate standard of culpability, whether it was deliberate indifference or something higher, with the court suggesting something higher may be appropriate. *Id*. (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)). The Estate merely relied on the fact that Townsend had

committed an affirmative act, which by itself, does not support a constitutional violation. *Id*. A constitutional violation also requires a reference to the circumstances in which the action occurred and "an analysis of what level of culpability applies to those circumstances." *Id*.

### iii. SHOULD THIS COURT ACCEPT THE SIXTH CIRCUIT'S LATER *DESHANEY* INTERPRETATION, PLAINTIFF HAS FAILED TO SATISFY ITS TWO EXCEPTIONS

Application of the above case law should lead to one clear result: that Defendant Long is entitled to qualified immunity on either prong of the analysis. Plaintiff has alleged that Defendant Long provided Mr. Nichols with inadequate medical care; they do so in a number of ways, but all Plaintiff's allegations say is that Mr. Nichols received incompetent medical care. [ECF No. 1]. Standing by itself, the Fourteenth Amendment does not provide Plaintiff a right to competent medical care.

Plaintiff does not allege that Mr. Nichols was in custody, nor would such facts be supported by the record. Defendant Long did not restrain Mr. Nichols' ability to act on his own behalf, nor did Defendant Long restrain anyone's ability to act for Mr. Nichols. Like *Baker*, Mr. Nichols was incapacitated due to something the Police may or may not have done, not the actions of Defendant Long. Defendant Long was only present because a police officer was peppered sprayed and Defendant Long happened to notice Mr. Nichols; his actions did not in any way restrain Mr. Nichols' ability to seek care. Plaintiff pleads no facts that would support application of the custody exception to Defendant Long.

That leaves Plaintiff with only the state-created danger doctrine which is equally as unsupported. There are no allegations that Mr. Nichols was exposed to private acts of violence by Defendant Long. There are no allegations that Defendant Long's actions placed Mr. Nichols at risk of a special danger that is different from any danger affecting the public at large. There are

not even any allegations that could follow any plausible path that Defendant Long prevented private sources of rescue. There are no allegations that Defendant Long stopped anyone from providing additional aid; no allegations that private rescue was available or attempted; and no allegations that private aid was in any way interfered with by Defendant Long; aid was provided by Defendant Long and allegedly incompetently provided, not that aid was requested from private sources that Defendant Long in some way prevented. Through no means can Plaintiff satisfy the state-created danger doctrine.

As such, Plaintiff has failed to demonstrate that a Fourteenth Amendment violation occurred. Defendant Long is thus entitled to qualified immunity under prong one of the analysis. Plaintiff fairs no better under prong two, as there is no case law that would have notified every reasonable paramedic and EMT that the conduct of Defendant Long would violate Mr. Nichols' constitutional rights under *Deshaney* or any of its progeny. *Ashford v. Raby*, 951 F.3d 798, 801 (6th Cir. 2020). Therefore, the Court should grant dismissal to the Defendant Long under either immunity prong.

Lastly, *Linden v. City of Southfield, et al*, 75 F4th, 597, 602 (6th Cir. 2023) make it clear that Defendant Long is entitled to qualified immunity. In *Linden*, emergency medical personnel responded to Timesha Beauchamp, a patient with cerebral palsy. *Id*. at 601. Upon arriving to the scene, four emergency medical personnel performed CPR and ventilation for about a half hour. *Id*. In *Linden*, the First Responders discontinued efforts to resuscitate Beauchamp and declared her dead. *Id*. After Beauchamp was declared dead, there were numerous medical indications that she was still alive. *Id*. In fact, Beauchamp's family members informed First Responders that she was still alive and breathing because her chest was moving. *Id*. First Responders placed a monitor

on Beauchamp which showed organized electrical activity suggesting that she was still alive. *Id*.
First Responders made excuses and still pronounced her dead. *Id*.

In *Linden*, a police officer prior to calling for the funeral home to pick up the body
questioned the movement of Beauchamp's chest, and the First Responder stated that it was due to
medication given. *Id*. Once the funeral employee arrived, he also questioned the First Responder
because Beauchamp's chest was moving. Again, the First Responder made excuses for not treating
Beauchamp. *Id*. Fifteen minutes after Beauchamp arrived at the funeral home, the embalmer
opened the body bag and Beauchamp started gasping for air. *Id*. She was transported to the
hospital where she suffered anoxic brain injury and died six weeks later. *Id*.

In *Linden*, the Court stated that Linden failed to allege "(1) an affirmative act by the [First
Responders] that create[d] or increase[d] a risk that [Beauchamp] would be exposed to private acts
of violence, (2) a special danger to [Beauchamp] such that the [First Responders'] acts placed
[Beauchamp] specifically at risk, as distinguished from a risk that affects the public at large,"
*Linden*, 75 F4th at 602 (citing *Jackson*, 429 F.3d at 591) (internal quotation marks and citation
omitted), and (3) that the First Responders "acted with the requisite culpability to establish a
substantive due process violation." *Jane Doe v. Jackson Loc. Sch. Dist. Bd. of Educ.*, 954 F.3d
925, 932 (6th Cir. 2020) (quoting *Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th Cir. 2002)).
The Court went on to state that misdiagnosing someone and transporting them to the funeral home
may be incompetent medical care but that does not rise to a constitutional violation. *Id*.; *Peete v.
Metro. Gov't of Nashville and Davidson Cnty.*, 486 F.3d 217, 223 (6th Cir. 2007) (state-created
danger theory unavailable where state actors' incompetent medical care did not expose decedent
to private act of violence). Thus, the First Responders are entitled to qualified immunity.

Similar to *Linden*, Plaintiff's failed to allege "(1) an affirmative act by the [Defendant Long] that create[d] or increase[d] a risk that [Mr. Nichols] would be exposed to private acts of violence, (2) a special danger to [Mr. Nichols] such that [Defendant Long] acts placed [Mr. Nichols] specifically at risk, as distinguished from a risk that affects the public at large," *Jackson*, 429 F.3d at 591 (internal quotation marks and citation omitted), and (3) that Defendant Long "acted with the requisite culpability to establish a substantive due process violation." *Jane Doe v. Jackson Loc. Sch. Dist. Bd. of Educ.*, 954 F.3d 925, 932 (6th Cir. 2020) (quoting *Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th Cir. 2002)). Thus, Plaintiff's complaint fails to allege Defendant Long's conduct exposed Mr. Nichols to a private act of violence. *Peete v. Metro. Gov't of Nashville and Davidson Cnty.*, 486 F.3d 217, 223 (6th Cir. 2007) (state-created danger theory unavailable where state actors' incompetent medical care did not expose decedent to private act of violence). Thus, like the First Responders in *Linden*, Defendant Long is entitled to qualified immunity.

Any application of the custody exception here would clearly cut against the *Deshaney* principle because Mr. Nichols' liberty was never restrained by Defendant Long. Thus, at a minimum, this Court should not apply the custody exception. At best, this Court should follow the controlling precedent of the Supreme Court and the Sixth Circuit in *Linden*, consistent with the drafter's intention, that no violation of Mr. Nichols' 14th Amendment rights occurred. Under such a finding, Defendant Long is entitled to qualified immunity and dismissal of the Substantive Due Process claim.

For the foregoing reasons, Defendant Long is entitled to qualified immunity and this matter should be dismissed against him.

Respectfully Submitted,

s/Darrell J. O'Neal

_____
Darrell J. O'Neal (BPR #20927)
LAW OFFICE OF DARRELL J. O'NEAL
2129 Winchester Road
Memphis, Tennessee 38116
(901) 345-8009 telephone
(901) 345-8014 facsimile
domemphislaw@darrelloneal.com
*Attorney for Robert Long*

**CERTIFICATE OF SERVICE**

I, Darrell J. O'Neal, hereby certify that I have forwarded a copy of the foregoing document

through the ECF/ECM system on this 19th day of November 2023.

s/ Darrell J. O'Neal

_____
Darrell J. O'Neal

25