**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| RowVaughn Wells, Individually and as Administratrix Ad Litem of the Estate of Tyre Deandre Nichols, deceased. | Case No. 2:23-CV-02224 |
| Plaintiff, | |
| vs. | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS ROBERT LONG, JAMICHAEL SANDRIDGE, AND MICHELLE WHITAKER'S MOTIONS TO DISMISS** |
| The City of Memphis, a municipality; Chief Cerelyn Davis, in her official capacity; Emmitt Martin III, in his individual capacity; Demetrius Haley, in his individual capacity; Justin Smith, in his individual capacity; Desmond Mills, Jr., in his individual capacity; Tadarrius Bean, in his individual capacity; Preston Hemphill, in his individual capacity; Robert Long, in his individual capacity; JaMichael Sandridge, in his individual capacity; Michelle Whitaker, in her individual capacity; DeWayne Smith, in his individual capacity and as an agent of the City of Memphis. | |
| Defendants. | |

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS ROBERT LONG, JAMICHAEL SANDRIDGE, AND MICHELLE WHITAKER'S MOTIONS TO DISMISS**

# TABLE OF CONTENTS

Table of Contents ...............................................................................................................ii

Table of Authorities.........................................................................................................iii

I.     Introduction .........................................................................................................1

II.    Legal Standard .....................................................................................................2

III.   Argument .............................................................................................................3

    A. Plaintiff has adequately pleaded a Fourteenth Amendment violation against Defendants Long, Sandridge, and Whitaker. ..........................................................4

        i.  Tyre's medical needs when the EMT Defendants arrived on scene were objectively serious and obvious to a layman. ...............................................5

        ii.  Plaintiff has adequately pleaded that the EMT Defendants had sufficiently culpable states of mind in denying Tyre medical attention. ........................6

    B. Tyre had a clearly established Fourteenth Amendment right to adequate medical care because he was injured while being apprehended by MPD Officers. Defendants Long, Sandridge, and Whitaker are therefore not entitled to qualified immunity. ..............................................................................................................11

        i.  *City of Revere v. Massachusetts General Hospital* ...................................13

        ii.  *Estate of Owensby v. City of Cincinnati*...................................................13

        iii.  *Estate of Carter v. City of Detroit* ............................................................16

        iv.  *Scozzari v. Miedzianowski*.........................................................................17

    C. Despite Defendants' arguments to the contrary, police protection from private violence, illness, or injury is not at issue and does not govern the analysis in this case.................................................................................................................19

        i.  Plaintiff has adequately pleaded that Tyre was in State custody when Defendants Long, Sandridge, and Whitaker arrived on scene. .................20

        ii.  The *DeShaney* line of cases does not control the analysis for Plaintiff's claims against the EMT Defendants. ..........................................................22

            a.  *Town of Castle Rock, Colorado v. Gonzales* ................................24

            b.  *Jacson v. Schultz* ...........................................................................25

            c.  *Baker v. City of Detroit* .................................................................27

    D. This Court should decline Defendants' attempts to convert their Rule 12(b)(6) motions to Rule 56 motions by adding facts and exhibits from outside the pleadings. .........................................................................................................28

IV.   Conclusion .........................................................................................................32

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................2

*Baker v. City of Detroit*, 217 Fed. Appx. 491 (6th Cir. 2007) ...........................10, 27, 28

*Baynes v. Cleland*, 799 F.3d 600 (6th Cir. 2015) .......................................................2, 3, 7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)....................................................2

*Brawner v. Scott County, Tennessee*, 14 F.4th 585 (6th Cir. 2021) ...........................4, 11

*Brosseau v. Haugen*, 543 U.S. 194 (2004).......................................................................2

*Brown v. Tennessee*, No. 3:22-cv-00754, 2023 WL 3467740 (M.D. Tenn. May 15, 2023)............5

*Burns v. United States*, 542 Fed. Appx 461 (6th Cir. 2013) ....................................29, 30

*Burwell v. City of Lansing, Michigan*, 7 F.4th 456 (6th Cir. 2021)................................5

*Carver v. City of Cincinnati*, 474 F.3d 283 (6th Cir. 2007)) ...................................11, 21

*City of Revere v. Massachusetts General Hospital*, 463 U.S. 239 (1983) .............passim

*Colson v. City of Alcoa, Tennessee*, 37 F.4th 1182 (6th Cir. 2022) ...............................20

*Courtright v. City of Battle Creek*, 839 F.3d 513 (6th Cir. 2016).....................2, 3, 11, 12

*Davidson v. Cannon*, 474 U.S. 344 (1986) .....................................................................23

*DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989).........passim

*Estate of Carter v. City of Detroit*, 408 F.3d 305 (6th Cir. 2005)............................16, 17

*Estate of Miller v. Michigan Department of Corrections*, No. 22-10934, 2023 WL 122903 (E.D. Mich. Jan. 6, 2023)..............................................................................................30, 31

*Estate of Owensby v. City of Cincinnati*, 414 F.3d 596 (6th Cir. 2005) ...............passim

*Estelle v. Gamble*, 429 U.S. 97 (1976)....................................................................24, 27

*Ewolski v. City of Brunswick*, 287 F.3d 492 (6th Cir. 2002) .........................................7

*Farmer v. Brennan*, 511 U.S. 825 (1994)........................................................................7

*Fitzke v. Shappell*, 468 F.2d 1072 (6th Cir. 1972) ........................................................17

*Golden v. City of Columbus*, 404 F.3d 950 (6th Cir. 2005).......................................2, 29

*Griffith v. Franklin County, Kentucky*, 975 F.3d 554 (6th Cir. 2020) ......................8, 12

*Harrison v. Ash*, 539 F.3d 510 (6th Cir. 2008) ...............................................................5

*Heflin v. Stewart County*, 958 F.2d 709 (6th Cir. 1992) ...............................................17

*Heyne v. Metropolitan Nashville Public Schools*, 655 F.3d 556 (6th Cir. 2011) ..........12

*Howell v. NaphCare, Inc.*, 67 F.4th 302 (6th Cir. 2023) ................................................ 4-5

*Hunter v. Atchison*, 466 F.2d 490 (6th Cir. 1972) ........................................................29

*Jackson v. Schultz*, 429 F.3d 586 (6th Cir. 2005) ........................................9, 25, 26, 28

*Johnson v. Moseley*, 790 F.3d 649 (6th Cir. 2015) ..................................................3, 12

*Jones v. Cincinnati*, 521 F.3d 555 (6th Cir. 2008) .......................................................30

*Judd v. City of Baxter, Tennessee*, 780 Fed. Appx. 345 (6th Cir. 2019) .......................12

*Linden v. City of Southfield, Michigan*, 75 F.4th 597 (6th Cir. 2023) ...............10, 20, 28

*Linden v. Piotrowski*, 619 Fed. Appx. 495 (6th Cir. 2015) ..........................................21

*Nichols v. Knox County, Tennessee*, No. 3:11-cv-417-PLR-HBG, 2014 WL 2803106 (E.D. Tenn. Jun. 19, 2014) ............................................................................................................5

*Peete v. Metropolitan Government of Nashville and Davidson County*, 486 F.3d 217 (6th Cir. 2007) .................................................................................................................9, 10, 28

*Phillips v. Roane County, Tennessee*, 534 F.3d 531 (6th Cir. 2008) ...............................7

*Robinson v. California*, 370 U.S. 660 (1962) ...............................................................23

*Rouster v. County of Saginaw*, 749 F.3d 437 (6th Cir. 2014) .........................................8

*Scozzari v. Miedzianowski*, 454 Fed. Appx. 455 (6th Cir. 2012) ..............12, 17, 18, 22

*Sexton v. Core Civic Incorporated of Tennessee*, No. 3:22-cv-00489, 2022 WL 10198330 (M.D. Tenn. Oct. 17, 2022) ................................................................................................5

*Spears v. Ruth*, 589 F.3d 249 (6th Cir. 2009) ..............................................................8

*Sutton v. Metropolitan Government of Nashville and Davidson County*, 700 F.3d 855 (6th Cir. 2012) ......................................................................................................................2

*Terrance v. Northville Regional Psychiatric Hosp.*, 286 F.3d 834 (6th Cir. 2002) .........7

*Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748 (2005) ...........21, 24, 25, 28

*United States v. Ferguson*, 681 F.3d 826 (6th Cir. 2012) ............................................30

*Wesley v. Campbell*, 779 F.3d 421 (6th Cir. 2015) .......................................................3

*Williams v. Curtin*, 414 Fed. Appx. 784 (6th Cir. 2011) ...............................................5

*Willis v. Charter Township of Emmett*, 360 Fed. Appx. 596 (6th Cir. 2010) ..............10, 11, 21, 26

*Wysocki v. International Business Machine Corp.*, 607 F.3d 1102 (6th Cir. 2010) .......31

*Youngberg v. Romeo*, 457 U.S. 307 (1982) ..........................................................23, 27

**Statutes**

42 U.S.C. § 1983.................................................................................................................1, 2, 4, 15

**Federal Rules**

Fed. R. Civ. P. 12.................................................................................................................................3

Fed. R. Civ. P. 12(b)(6) ...........................................................................................3, 12, 20, 28, 31

Fed. R. Civ. P. 12(d).........................................................................................................................31

Fed. R. Civ. P. 56.......................................................................................................................28, 31

Fed. R. Evid. 201(b)..........................................................................................................................30

I.        **INTRODUCTION**

On the evening of January 7, 2023, Tyre Nichols was ruthlessly and savagely beaten, doused with chemical irritants, and tased over the course of several minutes by a group of MPD SCORPION Officers—Defendants Haley, Martin, Smith, Mills, Bean, and Detective Hemphill ("Defendant Officers")—without legal justification. Doc. 1 at ¶¶ 40-48, 145-222. After Tyre collapsed from his injuries, he was handcuffed by Defendant Officers, dragged over to an MPD vehicle, and propped against it. Doc. 1 at ¶¶ 218-20, 229-234. His movement was restricted and he was not free to leave the scene: he was in custody.

Defendants Long, Sandridge, and Whitaker ("EMT Defendants") arrived on scene approximately two minutes later in their capacity as emergency medical technicians ("EMTs") for the City of Memphis. Doc. 1 at ¶¶ 237-38. Once on scene, the EMT Defendants failed to provide any medical assistance whatsoever to Tyre, instead waiting nearly 20 minutes for two other EMTs to arrive on scene. Doc. 1 at ¶¶ 239-252. Due to the obviousness and severity of Tyre's physical condition, the two late-arriving EMTs immediately began to treat Tyre, eventually loading him into an ambulance and taking him to the hospital. Doc. 1 at ¶¶ 252-54. Despite his doctors' best efforts, Tyre died from his injuries three days later. Doc. 1 at ¶¶ 283-93.

As it relates to the instant motions, Plaintiff brings § 1983 claims for violation of Tyre's Fourteenth Amendment right to adequate medical care against the EMT Defendants. Doc. 1 at ¶¶ 766-833. Those Defendants have moved this Court to dismiss the claims against them and assert that they are entitled to qualified immunity. *See* Docs. 128-1, 132, 133. Defendants' motions fail to comprehend and engage with the facts in this case as well as Plaintiff's claims against them, instead attempting to convince this Court, against all well-pled facts and precedent to the contrary, that this is a case of private violence for which Tyre did not have a right to adequate treatment.

Such a notion is absurd and nowhere to be found in Plaintiff's Complaint—the violence was entirely carried out by state actors.

Defendants' motions miss the mark. Defendants' entire argument is premised on their *contention*, which is entirely at odds with the well-pled facts of the complaint, that somehow Tyre was not in custody. Any argument to the contrary may be ripe for summary judgment, but for now, it is pled, and the Court must take the allegations as true. As such, the motions must all be denied.

## II.     LEGAL STANDARD

"To survive a motion to dismiss for failure to state a claim, a complaint must allege sufficient facts that, accepted as true, 'state a claim to relief that is plausible on its face.'" *Sutton v. Metropolitan Gov. of Nashville and Davidson Cnty.*, 700 F.3d 855, 871 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). "In reviewing the motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

"Section 1983 of Title 42 of the United States Code imposes civil liability on those individuals who, acting under color of state law, deprive a citizen of, among other things, his federally guaranteed constitutional rights." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Brosseau v. Haugen*, 543 U.S. 194, 197-98 (2004)). "To state a claim under § 1983, a

plaintiff must set forth facts that, when favorably construed, establish: (1) the deprivation of a right secured by the Constitution or the laws of the United States; (2) caused by a person acting under the color of state law." *Id.*

Because the EMT Defendants have "raised the qualified immunity defense, plaintiff bears the burden of showing that defendants are not entitled to qualified immunity." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). "At the pleading stage, this burden is carried by alleging facts plausibly making out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Id.* There is no heightened pleading requirement when reviewing a motion to dismiss based on qualified immunity. *Courtright*, 839 F.3d at 518. "[I]t is generally *inappropriate* for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015) (emphasis added). "Although an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Id.* (cleaned up, internal citation omitted) (collecting cases).

## III.   ARGUMENT

Plaintiff has sufficiently stated her Fourteenth Amendment claims against the EMT Defendants for deliberate indifference to Tyre Nichol's serious medical needs. The EMT Defendants appear to argue, or at least imply, that this Court should view the savage and deadly beating of Tyre by several on-duty members of the Memphis Police Department, Defendant Officers, as private violence because Tyre was not "in custody" at the time he was assaulted. On its face, the argument is absurd. The EMT Defendants then continue with this flawed premise and argue that, because this was private violence and not state action—and alternatively because EMT

Defendants did not *themselves* participate in the violence—Tyre did not have a Fourteenth Amendment right to adequate and necessary medical care, *even though Tyre was in MPD custody when they arrived on scene*, so they cannot be held liable for failing to provide that medical care. *See*, *e.g.*, Doc. 128-1 at p. 13 ("But as Mr. Nichols was a free member of society, he held no general right to adequate medical care. Plaintiff's claim to the extent it is premised on this assertion, should be dismissed because Plaintiff has not asserted that Defendant Long violated a constitutional right."); Doc. 132 at pp. 14-15; Doc. 133 at pp. 11-12. In the alternative, the EMT Defendants argue that they are entitled to qualified immunity because Tyre's Fourteenth Amendment right to adequate medical care after being injured while being apprehended by Defendant Officers was not clearly established by 2023.

 EMT Defendants' arguments have no merit and defy long-established case law. *See*, *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("The Due Process Clause, however, does **require** the responsible government or government agency to provide medical care to persons, such as [the plaintiff], who have been injured while being apprehended by the police." (emphasis added)). EMT Defendants' motions to dismiss should be denied in their entirety.

## A. Plaintiff has adequately pleaded a Fourteenth Amendment violation against Defendants Long, Sandridge, and Whitaker.

Plaintiff brings claims against the EMT Defendants under § 1983 Fourteenth Amendment for their deliberate indifference to serious medical needs. *See*, Doc. 1 at pp. 117-127 (Counts XX-XXII). The Sixth Circuit announced a modified standard for deliberate indifference to serious medical needs under the Fourteenth Amendment for pretrial detainees in *Brawner v. Scott County, Tenn.*, 14 F.4th 585 (6th Cir. 2021). The *Brawner* Court held that "a pretrial detainee must make a showing (1) that he had an objectively serious medical need and (2) that each defendant 'acted deliberately [and] also recklessly in the face of an unjustly high risk of harm that is either known

or so obvious that it should be known." *Howell v. NaphCare, Inc.*, 67 F.4th 302, 311 (6th Cir. 2023) (alteration original). "An objectively serious medical need includes conditions that have been 'diagnosed by a physician as mandating treatment' or that are 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)). The Sixth Circuit has "routinely held that a condition resulting in death is 'sufficiently serious to meet the objective component.'" *Burwell v. City of Lansing, Mich.*, 7 F.4th 456, 463 (6th Cir. 2021) (collecting cases). There is no dispute, nor can there be at this stage, that the injuries Tyre Nichols suffered on the night of the incident resulted in his death. *See generally* Doc. 1.

To begin, Plaintiff has adequately pleaded, and the EMT Defendants do not contest, that EMT Defendants were state actors during their response to the savage beating of Tyre. *See*, Doc. 1 at ¶¶ 33, 35, 37, 236-238.

### i. Tyre's medical needs when the EMT Defendants arrived on scene were objectively serious and obvious to a layman.

First, Plaintiff has adequately stated that Tyre had an objectively serious medical need. *See*, Doc. 1 at ¶¶ 180-83, 204-08, 211-21, 229-30, 234-36. *See also*, *Williams v. Curtin*, 414 Fed. Appx. 784, 788 (6th Cir. 2011) (unpublished) ("head injuries…are sufficiently serious to satisfy the objective requirement."); *Brown v. Tennessee*, No. 3:22-cv-00754, 2023 WL 3467740, *7 (M.D. Tenn. May 15, 2023) (finding head injuries, headaches, and blurred vision after being kicked in the head during a brawl to be a serious medical need); *Sexton v. Core Civic Inc. of Tenn.*, No. 3:22-cv-00489, 2022 WL 10198330, *6 (M.D. Tenn. Oct. 17, 2022) (finding allegations including black eyes, lower lip lacerations, headaches, loose teeth, and head injury after beatings by gang-affiliated inmates were sufficient to allege serious medical needs); *Nichols v. Knox Cnty, Tenn.*, No. 3:11-cv-417-PLR-HBG, 2014 WL 2803106, *6 (E.D. Tenn. Jun. 19, 2014) (finding a reasonable jury

could find jail nurse who found plaintiff lying on the floor after falling from a height of approximately four feet and hitting his head had "'perceived the facts from which to infer a substantial risk of neck injury,' and 'did in fact draw the inference.'" (cleaned up)).

Here, by the time the EMT Defendants arrived on scene, Tyre had endured seven minutes of beatings with hands and police batons, had been doused with chemical agents, had been tasered, and was passing in and out of consciousness. *See generally*, Doc. 1 at ¶¶ 180-236. His face was nearly unrecognizable from swelling and bruising, and he was passing in and out of consciousness when the EMT Defendants arrived on scene. *Id*. All three EMT Defendants observed Tyre's physical state and obvious need for medical attention. *Id*.



*Tyre looking unrecognizable propped up against an unmarked MPD vehicle. Time stamp: 20:39:04 (8:39 p.m.)*. Doc. 1, pg. 44.

        ii.        ***Plaintiff has adequately pleaded that the EMT Defendants had sufficiently culpable states of mind in denying Tyre medical attention.***

Plaintiff has likewise adequately alleged facts that show that the EMT Defendants deliberately and recklessly disregarded Tyre's serious head injuries, other injuries, and obvious need for medical care when they arrived on scene. "Although 'deliberate indifference entails

something more than mere negligence,' the Supreme Court has made clear 'it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Baynes*, 799 F.3d at 618 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). "Because government officials do not readily admit the subjective component of this test, it may be 'demonstrated in the usual ways, including inference from circumstantial evidence and a fact finder may conclude that a[n] official knew of a substantial risk from the very fact that the risk was obvious.'" *Id.* (quoting *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002)) (cleaned up); *see also*, *Phillips v. Roane Cnty, Tenn.*, 534 F.3d 531, 540 (6th Cir. 2008) ("Officials, of course, do not readily admit this subjective component, so 'it [is] permissible for reviewing courts to infer from circumstantial evidence that [an official] had the requisite knowledge.'"). "The determining factor is 'whether the circumstances allowed the state actors time to fully consider the potential consequences of their conduct.'" *Estate of Owensby v. City of Cincinnati*, 414 F.3d 596, 602 (6th Cir. 2005) (quoting *Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th Cir. 2002)).

Plaintiff has alleged the EMT Defendants did the following after arriving on scene:

- Defendants Long and Sandridge joined the other officers milling around Tyre (Doc. 1 at ¶ 237);

- Defendant Whitaker could see Tyre and was informed of the incident but never left the MFD fire engine to assist Tyre (*Id.* at ¶ 238);

- Defendants Long and Sandridge knelt near Tyre briefly while carrying medical bags containing triage kits and first aid supplies (*Id.* at ¶ 239);

- Defendant Sandridge pulled out a blood pressure cuff but failed to use it or anything else from his medical bag (*Id.* at ¶¶ 240-41);

- Defendant Sandridge walked away from Tyre after Tyre slumped over onto the ground (*Id.* at ¶ 242);

- EMT Defendants failed to provide aid to Tyre for at least **an additional 19 minutes**, including failing to assess Tyre's airway, breathing, and vital signs; failing to conduct a

head-to-toe assessment of Tyre's injuries or attend to his obvious wounds; failing to uncuff Tyre or adjust him against the squad car; failing to provide Tyre high-flow oxygen or an IV line; failing to place Tyre on a cardiac monitor; and failing to transport him to a hospital or emergency medical center (*Id*. at ¶ 243) (emphasis added);

- EMT Defendants refused to provide medical assistance to Tyre despite their awareness of Tyre's medical condition and plainly obvious injuries (*Id*. at ¶¶ 244-247).

Despite the obviously dire condition that Tyre was in, it was not until two other EMTs arrived on scene that anyone assessed Tyre, loaded him into an ambulance, and transported him to the hospital. *Id*. at ¶¶ 252-54. Tyre died in the hospital days later, with broken teeth, brain swelling, and multiple organ failure despite his doctors' best efforts to keep him alive. Id. at ¶¶ 285-293. In essence, Plaintiff has pled that the EMT Defendants arrived on scene with information about the incident and observed Tyre's physical state but refused to assess him; either did not exit the fire engine or milled around with the other on-scene officers making jokes and otherwise wasting time; walked away after allowing Tyre to slump over on to the ground when he was clearly passing in and out of consciousness; had sufficient time to consider the situation and yet still failed to provide any assistance; and waited for other EMTs to arrive on scene to provide medical care to Tyre—who did so immediately upon their arrival. *See Griffith v. Franklin Cnty, Kent.*, 975 F.3d 554, 577 (6th Cir. 2020) ("'To be sure, medical providers may not escape liability if the evidence showed that they merely refused to verify underlying facts that they strongly suspected to be true, or declined to confirm inferences of a risk that they strongly suspected to exist.'" (quoting *Rouster v. County of Saginaw*, 749 F.3d 437, 451 (6th Cir. 2014)) (cleaned up)).

The facts as pleaded by Plaintiff would allow a reasonable factfinder to infer that the EMT Defendants were aware of Tyre's serious medical needs yet disregarded them for approximately 20 minutes. Thus, Plaintiff has pleaded adequate facts to show that the EMT Defendants had "a sufficiently culpable state of mind in denying medical care." *Spears v. Ruth*, 589 F.3d 249, 254

(6th Cir. 2009). Indeed, the seriousness and obviousness of Tyre's medical needs is underscored by the fact that two additional EMTs arrived on scene nearly 20 minutes after the EMT Defendants did and *immediately* determined that Tyre needed medical attention. Doc. 1 at ¶¶ 252-54.

EMT Defendants' argument that they merely misdiagnosed Tyre or provided "incompetent medical assistant [sic]," Doc. 128-1 at pp. 2, Doc. 132 at p. 7, Doc. 133 at pp. 9-10, is belied by the simple fact, adequately pleaded in Plaintiff's complaint, that the EMT Defendants failed to even assess Tyre, much less make a diagnosis or attempt treatment. *See* Doc. 1 at ¶¶ 236-252. Furthermore, none of the cases cited by EMT Defendants in support of this proposition are factually similar to the case at hand because, in each, the injury was caused by a private actor outside of state custody, or by a pre-existing disease, and the emergency medical responders were responding to 911 calls from the public. *See also*, Section C, below.

The Sixth Circuit in *Jackson v. Schultz* found no constitutional violation for paramedics who responded to 911 calls of a shooting in a bar, loaded the wounded victim into an ambulance, but failed to administer life support or transport the victim to a nearby hospital. 429 F.3d 586, 588-89 (6th Cir. 2005). The Court reasoned that, although the victim was loaded into the ambulance, he was never taken into custody because the plaintiff had not alleged that the EMTs restrained or handcuffed the victim and there were no allegations that he had not been free to leave or be removed from the ambulance. *Id.* at 591 (*cf.* Tyre was handcuffed here at the time the EMT Defendants arrived, Doc. 1 at ¶¶ 218-220, 229-230, 236).

In *Peete v. Metropolitan Government of Nashville and Davidson County*, the Sixth Circuit found no constitutional violation for paramedics who responded to a 911 call about a man suffering an epileptic seizure. 486 F.3d 217, 219-20 (6th Cir. 2007). The *Peete* Court determined that the EMTs had not taken the man into custody and that their actions had been undertaken "in an effort

to render medical treatment." *Id.* at 223. Nor did the EMTs' actions create private danger to the man. *Id.*

In *Linden v. City of Southfield, Mich.*, the Sixth Circuit found no constitutional violation where 911 was called for a woman who had cerebral palsy and was unresponsive, was declared dead after 30 minutes of resuscitation efforts, despite numerous medical indicators that she was still alive, and was transported to a funeral home for embalming. 75 F.4th 597, 600-01 (6th Cir. 2023). The plaintiff in *Linden* proceeded on a state-created danger theory of liability, but the Sixth Circuit determined that the first responders had not exposed the woman to private violence or increased "the risk that a Funeral Home employee would begin processing her presumed-dead body for funeral proceedings, including putting her into a body bag and transporting her to the Funeral Home." *Id.* at 604.

EMTs likewise responded to a 911 call for a woman experiencing breathing difficulties who began to experience "extreme respiratory discomfort" in the ambulance, but resisted treatment, and later died of cardiopulmonary arrest in *Baker v. City of Detroit*, 217 Fed. Appx. 491-93 (6th Cir. 2007). There, the Court found no constitutional violation because, again, the medical responders had neither taken the woman into custody nor created the danger that resulted in the woman's death. *Id.* at 495-96.

Finally, in *Willis v. Charter Township of Emmett*, the Sixth Circuit found no constitutional violation for police and paramedics who responded to the scene of a car accident and left a severely injured man alone in his vehicle for over two hours after mistakenly concluding that he had died because a pulse could not be found in his arm; the man later died at the hospital. 360 Fed. Appx. 596, 597-99 (6th Cir. 2010). The *Willis* Court determined that the man had not been taken into custody because "[w]hen the inquiry involves alleged custody of an unconscious victim, we

require a further showing of 'some state action that applies force (or the threat of force) and show of authority made with the intent of acquiring physical control.'" *Id.* at 600 (quoting *Carver v. City of Cincinnati*, 474 F.3d 283, 286 (6th Cir. 2007)). The *Willis* Court then determined that the man "was restrained by the circumstances of the car accident, not by the defendants' actions." *Id.*

These cases have nothing to do with a person injured while being apprehended by the police and in state custody, but instead are all based on factual circumstances where emergency medical responders or law enforcement responded to the scene of private violence, injury, or illness. These cases do not control the analysis here and should be disregarded.

Plaintiff has adequately pleaded both prongs of the deliberate indifference test laid out by the Sixth Circuit in *Brawner*, and adequately pleaded her claims against the EMT Defendants, who do not dispute that Tyre was injured by state actors here. , Defendant Officers were on-duty with MPD at the time they savagely beat Tyre (which Plaintiff has likewise adequately pleaded, *see* Doc. 1 at ¶¶ 147, 203), and subsequently took Tyre into custody before EMT Defendants arrived on scene (Doc. 1 at ¶¶ 218, 229). The EMT Defendants' motions to dismiss for failure to state a claim should be denied.

**B. Tyre had a clearly established Fourteenth Amendment right to adequate medical care because he was injured while being apprehended by MPD Officers. Defendants Long, Sandridge, and Whitaker are therefore not entitled to qualified immunity.**

It has long been established that individuals who are injured while being apprehended by the police have a Fourteenth Amendment right to adequate medical care, defeating the EMT Defendants' claims to qualified immunity in this case. "To survive the motion to dismiss on qualified-immunity grounds, the plaintiff must allege facts that 'plausibly make out a claim that the defendant's conduct violated a constitutional right that was clearly established at the time, such that a reasonable officer would have known that his conduct violated that right.'" *Courtright*, 839

F.3d at 518 (quoting *Johnson*, 790 F.3d at 653). "The test is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an officials' acts violated the plaintiff's clearly established constitutional right." *Id.* (quoting *Heyne v. Metro. Nashville Public Schs.*, 655 F.3d 556, 562-63(6th Cir. 2011)). "Although 'insubstantial claims against government officials should be resolved as early in the litigation as possible, preferably prior to broad discovery, we also have cautioned that 'it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity.'" *Id.* (internal citations omitted).

Further, although many constitutional cases "involve police officers, not paramedics, we have held that paramedics who act in a law enforcement capacity are held to the same standard as police officers." *Judd v. City of Baxter, Tenn.*, 780 Fed. Appx. 345, 349 (6th Cir. 2019) (discussing qualified immunity in Fourth Amendment context).

As Plaintiff has shown, *supra*, she has adequately alleged that the EMT Defendants violated Tyre's Fourteenth Amendment constitutional rights by refusing to provide any medical assistance to him while they were on scene after he was savagely beaten, tased, and sprayed with chemical irritants, despite Tyre's obvious and serious medical needs. The second prong of qualified immunity analysis asks whether this right was clearly established in 2023.

"The Due Process Clause of the Fourteenth Amendment requires government officials to provide adequate medical care to individuals injured while apprehended by police." *Scozzari v. Miedzianowski*, 454 Fed. Appx. 455, 464 (6th Cir. 2012) (citing *City of Revere*, 463 U.S. at 244). Further, "[t]he Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those who it detains." *Griffith*, 975 F.3d at 566. The EMT Defendants fail entirely to engage with this precedent in their motions to dismiss, and instead insist,

without any factual or jurisprudential basis, that Tyre was not in custody and therefore was not entitled to adequate medical care.

### i.       *City of Revere v. Massachusetts General Hospital*

In *City of Revere*, the Supreme Court was asked whether "a municipality's constitutional duty to obtain necessary medical care for a person injured by the municipality's police in the performance of their duties includes a corresponding duty to compensate the provider of that medical care." 463 U.S. at 240. While not directly on point with the facts of this case, in *City of Revere*, police were trying to apprehend a man, Kivlin, at the scene of a breaking and entering in progress. *Id.* After repeated commands and a warning shot, one of the officers shot Kivlin and injured him. *Id.* Kivlin was taken to the hospital by private ambulance and treated. *Id.* at 241. The hospital billed the City of Revere for Kivlin's medical treatment, and the City refused to pay. *Id.* In "delineating governmental responsibility in a situation of this kind," *id.* at 242, the Supreme Court noted that "[t]he Due Process Clause, however, does require the responsible government or governmental agency to provide medical care to persons, such as Kivlin, who have been injured while being apprehended by the police." *Id.* at 244. "In short, the injured detainee's constitutional right is to receive the needed medical treatment." *Id.* at 245. Thus, the constitutional right to be treated for injuries caused by police while the person is being apprehended had been determined by the Supreme Court to have been established by 1978.

### ii.       *Estate of Owensby v. City of Cincinnati*

The Sixth Circuit has also determined that individuals injured by the police have a Fourteenth Amendment right to adequate medical care. In *Estate of Owensby v. City of Cincinnati*, the Sixth Circuit affirmed the denial of qualified immunity for officers based on somewhat similar circumstances to those here. 414 F.3d at 599. There, officers stopped a man, Owensby, whom they

suspected had fled from one of the officers in a drug-related incident a few months prior. *Id.* Although Owensby was compliant at the beginning of the stop, he eventually tried to allude the officers but was immediately tackled, landing face down in a parking lot with his arms underneath him. *Id.* Owensby was pinned in a prone position and officers struggled to get his arms out from beneath him; during the struggle, one of the officers struck Owensby on the lower back, arm, and legs while another officer placed him in a "head wrap." *Id.* at 599-600. After he was handcuffed, one of the officers lifted Owensby's head and another officer sprayed mace twice into Owensby's eyes from a distance of approximately 6 inches while officers continued to strike him in the back. *Id.* at 600. Owensby was bleeding from the face and did not resist the officers once he was handcuffed. *Id.*

Owensby was picked up, possibly unconscious, and was roughly placed in back seat of a police cruiser while officers continued to beat him. *Id.* An officer from a different police department arrived, looked at Owensby in the back of the police cruiser and noted that it appeared that Owensby could not breathe, but took no further action. *Id.* "At this point, at least eleven Cincinnati police officers and two Gold Manor officers were either on the scene or in the vicinity— three of whom were trained emergency medical technicians—yet no officer attempted to provide any medical care to Owensby." *Id.* at 600-01. "Instead, the uncontroverted testimony indicates that the officers greeted each other, secured items that might have been dropped, prepared for the arrival of their supervisors, and made sure that their uniforms were intact." *Id.* at 601. After approximately six minutes in the cruiser, a supervisor arrived on scene and "promptly discovered that Owensby was not breathing." *Id.* Owensby was unable to be resuscitated by EMTs and was later pronounced dead. *Id.* His death was ruled a homicide by the medical examiner, listing "police intervention: asphyxiation during restraint attempts" as the cause of death. *Id.*

The plaintiff brought Fourteenth Amendment deliberate indifference to serious medical needs claims against the officers and defendant officers asserted their entitlement to qualified immunity at summary judgment. *Id.* The district court denied qualified immunity, and the officers appealed. *Id.* On appeal, the Sixth Circuit noted, "each officer viewed Owensby in significant physical distress, yet made no attempt to summon or provide any medical care until several minutes later[.]" *Id.* at 603. "This evidence is sufficient to demonstrate that each officer's failure to provide medical care to Owensby constituted a violation of the Fourteenth Amendment." *Id.* Likewise, the *Estate of Owensby* Court also noted that because Owensby's need for medical assistance was "obvious," the Estate did not "need to prove that the officers' acts or omissions were the proximate cause of Owensby's death in order to hold the officers liable under section 1983." *Id.* at 604.

The *Owensby* officers further argued that the violation was not clearly established because "Owensby was, in their words, a 'just-arrested fleeing and resisting suspect'" which "distinguishes this case from the typical case involving the denial of medical care to a pretrial detainee." *Id.* The Sixth Circuit, however, stated "[t]hat Owensby may have fled or resisted before being taken into custody is irrelevant." *Id.* "There is no evidence that he was attempting to flee or resist during the time that he was in police custody and denied medical care; in fact, the evidence suggests that Owensby may have been unconscious when he was placed in the Gold Manor police cruiser and never regained consciousness." *Id.* "We find no principled basis on which to find Owensby's right to medical care any less clearly established than the right of other pretrial detainees." *Id.*

Here, all three EMT Defendants observed Tyre in significant physical distress: battered, bloodied, and passing in and out of consciousness. Doc. 1 at ¶¶ 236-246. Yet not one of the EMT Defendants did anything over a period of approximately 20 minutes while on scene to provide Tyre with any medical assistance of *any kind* despite the obviousness of his medical needs—indeed, it

took the arrival of two other EMTs for Tyre to be assessed and taken to the hospital.  Doc. 1 at ¶¶ 236-243. *Estate of Owensby* established that Tyre had a constitutional right to medical care even if Tyre was considered to have fled and resisted arrest (which Plaintiffs strongly contest and do not concede) before being taken into custody. *Estate of Owensby* shows that EMT Defendants' very behavior of failing to provide medical assistance to a person who was injured while being apprehended by the police was clearly established as a constitutional violation in this Circuit since at least 2000.

### iii.    *Estate of Carter v. City of Detroit*

In *Estate of Carter v. City of Detroit*, a woman, Carter, and her sister were arrested after a physical altercation. 408 F.3d 305, 307 (6th Cir. 2005). Shortly after she was booked, she complained to a corrections officer that she was having chest pains. *Id.* The officer left the jail a short time later, but Carter continued to cry loudly for help because she had pain in her chest. *Id.* at 308. Approximately three hours after the officer left the jail, another officer called a car to take Carter to the hospital but Carter was found lying unconscious on the floor of her cell. *Id.* She was pronounced dead at the hospital. *Id.* Her death was determined to have been caused by a heart attack triggered by the complete blockage of an artery. *Id.*

Carter's estate brought 14th Amendment claims, among others, against the corrections officers; the officers claimed qualified immunity at summary judgment. *Id.* at 309. The district court denied qualified immunity on the Estate's constitutional claims. *Id.* Determining that the officer, who had first received Carter's complaint of chest pains was aware of Carter's serious medical needs and "yet disregarded it," had violated Carter's Fourteenth Amendment rights, the Sixth Circuit turned to the qualified immunity analysis. *Id.* at 313. "To complete the qualified immunity analysis, this right [to be free from deliberate indifference to her serious medical need]

was clearly established at the time of [defendant officer's] violation." *Id.* "As early as 1972, this court stated that 'where the circumstances are clearly sufficient to indicate the need for medical attention for injury or illness, the denial of such aid constitutes the deprivation of constitutional due process.'" *Id.* (quoting *Fitzke v. Shappell*, 468 F.2d 1072, 1076 (6th Cir. 1972)). "Furthermore, in 1992, this court explicitly held that a pretrial detainee's right to medical treatment for a serious medical need has been established since at least 1987." *Id.* (citing *Heflin v. Stewart Cnty*, 958 F.2d 709, 717 (6th Cir. 1992)). Because a pretrial detainee's right to be free from deliberate indifference to serious medical needs had long been established, the Sixth Circuit affirmed the trial court's decision to deny qualified immunity to the officer. *Id.*

### iv.   *Scozzari v. Miedzianowski*

The Sixth Circuit reiterated the clearly established right to medical care for individuals injured by police during apprehension in *Scozzari v. Miedzianowski*, 454 Fed. Appx. 455 (6th Cir. 2012) (unpublished) (considering delay of medical care deliberate indifference claim). There, Scozzari was shot after police responded to a call of shots fired in a park adjacent to a motel. *Id.* at 457. After a volley of shots, Scozzari collapsed and the officers called for medical assistance immediately, but nevertheless "held back" for a few minutes in case Scozzari was faking his injury. *Id.* at 459. During that time, Scozzari could be seen with his body shaking and gurgling sounds coming out of his mouth; when the officers approached, they looked for a pulse, found none, and then rolled Scozzari onto his back and handcuffed him. *Id.* at 459-60. "Officers took no medical or resuscitative action until the ambulance arrived." *Id.* at 460. After approximately 12 minutes, EMTs were permitted to approach Scozzari, but he did not survive. *Id.* at 460, 465.

Scozzari's estate brought Fourteenth Amendment deliberate indifference to a serious medical need claims, among others, against the officers. *Id.* at 460. The defendants asserted

qualified immunity at summary judgment which the trial court denied as to plaintiff's constitutional claims. *Id.* The *Scozzari* Court noted that "[t]he Due Process Clause of the Fourteenth Amendment required government officials to provide adequate medical care to individuals injured while apprehended by the police." *Id.* at 464. The Sixth Circuit determined that "[i]n all, it took twelve minutes, from the initial report of the shooting until paramedics were able to treat Scozzari," but that the defendant officers "fail[ed] to explain why they were unable to secure the scene and search Scozzari before the ambulance arrived." *Id.* at 465. "Moreover, there is evidence that the Officers spent at least part of this time knocking on doors and asking neighbors to witness Scozzari's weapons, activities that were unrelated to securing the scene or saving Scozzari's life." *Id.* "Further, as in *Owensby*, there is evidence that the Officers were aware of Scozzari's precarious medical condition but nevertheless engaged in activities unnecessary to their duties." *Id.* at 466. In affirming the denial of qualified immunity for the defendant officers, the Sixth Circuit said "[r]easonable officers would have known, based on this Circuit's precedent, that the obligation to provide adequate medical care to an injured detainee is not discharged merely by promptly calling for assistance, but extends to ensuring that medical responders are able to access the victim without unreasonable delay." *Id.*

Here, the EMT Defendants arrived on scene and failed to provide even an iota of medical assistance to Tyre for at least 19 minutes until two other EMTs arrived and promptly began treating Tyre's serious medical needs. Doc. 1 at ¶¶ 236-246. Instead, the EMT Defendants arrived on scene and either stayed in their fire engine (Defendant Whitaker) or milled around with the other officers (Defendants Long and Sandridge) despite being informed of the circumstances and observing Tyre's physical condition after being severely beaten. Doc. 1 at ¶¶ 237-239, 244-246. EMT Defendants have provided this Court with no information that would allow a finding that there was

a necessary law enforcement or medical reason for the delay and ultimate failure to provide any medical assistance to Tyre at all. Nor is Plaintiff aware of any such information. *See generally*, Docs. 128-1, 132, 133.

A pretrial detainee's Fourteenth Amendment right to be free from deliberate indifference to his serious medical needs has long been established in the jurisprudence of both the Supreme Court and the Sixth Circuit. Further, as the Supreme Court noted in *City of Revere*, suspects who have been injured while being apprehended by police, as is the case here, have had the clearly established right to adequate medical assistance since at least 1978. Any argument that Tyre's rights in the factual circumstances laid out in Plaintiff's complaint were not clearly established by 2023 should be soundly rejected. Since it has been more than 40 years since the *City of Revere* decision came down—treating the right to medical assistance after being injured by police while being apprehended by them as a given—even reasonable officers in the EMT Defendants' position would have known that the failure to do so was a constitutional violation.

**C. Despite Defendants' arguments to the contrary, police protection from private violence, illness, or injury is not at issue and does not govern the analysis in this case.**

At base, EMT Defendants attempt to convince this Court that the violence inflicted by Defendant Officers against Tyre was private as opposed to State action and argue that the *DeShaney* line of Fourteenth Amendment cases govern the analysis here. This argument fails from the start, as EMT Defendants do not support in any way their premise that Defendant Officers were not state actors acting under color of law at the time they assaulted Tyre. Nor can they claim that Tyre was not in MPD custody when they arrived on scene.

i.   *Plaintiff has adequately pleaded that Tyre was in State custody when Defendants Long, Sandridge, and Whitaker arrived on scene.*

EMT Defendants argue that Tyre was not "in custody" when he was assaulted, and alternatively when they arrived on scene, so they had no duty to provide him medical services. *See*, Doc. 128-1 at pp. 9, 16 ("There is nothing in Plaintiff's complaint that established that Mr. Nichols' injuries occurred while in custody."); Doc. 132 at pp. 7, 14-15; Doc. 133 at pp. 11-12. While it is true that "there is no constitutional right to adequate medical care for individuals who are not in the custody of the state," *Linden*, 75 F.4th at 601, here Plaintiff has adequately pled that Tyre *was* in MPD custody by the time the EMT Defendants arrived on scene and that the seriousness of his injuries was obvious to all involved. *See*, *Colson v. City of Alcoa, Tennessee*, 37 F.4th 1182, 1188 (6th Cir. 2022) ("A failure to provide medical care is not a seizure…. Rather, it is inaction in the face of a duty to provide adequate care.").

Plaintiff has pled that Defendant Officers seized Tyre when they pulled him out of his vehicle and began beating him. Doc. 1 at ¶¶ 165-217. After being attacked for several minutes by Defendant Officers, "Tyre fell to the ground and the SCORPION Officers held him on his stomach so that he could be cuffed[.]" Doc. 1 at ¶ 218. "At approximately 8:38 p.m. two officers dragged Tyre from his position laying on the ground, and another officer helped them prop him up in a supine position to lean him against an unmarked squad car[.]" Id. at ¶ 229. "Tyre passed in and out of consciousness, attempting to roll on several occasions, while officers milled around and chatted nearby." Id. at ¶ 230. "At 8:41 p.m. three Emergency Medical Technicians ("EMTs") arrived and proceeded to disregard Tyre's condition and failed to provide any of the clearly necessary medical aid to him." Id. at ¶ 236.

Thus, taking Plaintiff's well pleaded factual allegations as true, as the Court must when considering a Rule 12(b)(6) motion to dismiss, it is clear that the EMT Defendants all arrived on

the scene when Tyre was in custody, subdued, handcuffed, passing in and out of consciousness as a result of the beating he endured, and surrounded by SCORPION and other MPD officers. *See*, *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 751 (2005) ("Because the case comes to us on appeal from a dismissal of the complaint, we assume its allegations are true."). The Sixth Circuit has further clarified that "[w]hen the [custody] inquiry involves the alleged custody of an unconscious victim, we require a further showing of 'some state action that applies force (or the threat of force) and show of authority made with the intent of acquiring physical control.'" *Willis*, 360 Fed. Appx. at 600 (quoting *Carver*, 474 F.3d at 286); *see also*, *id.* ("The custody exception does not apply in this case because [decedent] was restrained by the circumstances of the car accident, not by the defendants' actions."); *Linden v. Piotrowski*, 619 Fed. Appx. 495, 500 n.1 (6th Cir. 2015) ("Black plainly was a detainee for purposes of the deliberate-indifference claim. He was handcuffed and was not free to leave the scene.") (citing *Estate of Owensby*, 414 F.3d at 600, 603)). Here, Tyre was restrained by several MPD officers savagely assaulting him and then handcuffing him, dragging him to an MPD vehicle, and propping him up against it. He was not free to leave.

Tyre was "in custody" in all respects by the time the EMT Defendants arrived on the scene at 8:41 p.m. It defies logic and long established caselaw to hold, as EMT Defendants request, that because Tyre was arbitrarily and savagely beaten by Defendant Officers—without justification—*before* they placed Tyre in custody that Defendants Long, Sandridge, and Whitaker cannot be found liable for their complete failure to provide medical services once Defendant Officers *did* take Tyre into custody. *See*, Doc. 128-1 at p. 13, 16; Doc. 132 at pp. 6-15; Doc. 133 at pp. 11-12. Applying the EMT Defendants' logic and reasoning to other factual scenarios, the result would be that no right to medical care exists for arrestees if force was used against them before they were in handcuffs and told they were under arrest. Applying the same logic to Eighth Amendment cases,

this position is no different than saying that there is no need to treat inmates' pre-existing medical conditions in jail because the inmate was not "in custody" when the condition initially developed. The argument that EMT Defendants are shielded from liability because Tyre was not "in custody" when he was injured by Defendant Officers has been soundly rejected by the Supreme Court and the Sixth Circuit. *See*, *City of Revere*, 463 U.S. at 244; *Estate of Owensby*, 414 F.3d at 603-04; *Scozzari*, 454 Fed. Appx. at 464, 466.

ii.     ***The* DeShaney *line of cases does not control the analysis for Plaintiff's claims against the EMT Defendants.***

Defendants attempt to liken this case to *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), and other similar cases, but fail to do so. *See* Doc. 128-1 at pp. 12-15; Doc. 132 at pp. 6-15; Doc. 133 at pp. 11-12. In *DeShaney*, authorities in Winnebago County, Wisconsin became aware that a young boy was being abused by his father. 489 U.S. at 192. Although local child protective services investigated incidents of suspected child abuse, and themselves suspected child abuse, the boy was not removed from his father's home. *Id.* at 192-93. Ultimately, the father beat the boy so badly that he fell into a life-threatening coma requiring emergency brain surgery; the brain surgery showed "a series of hemorrhages caused by traumatic injuries to the head inflicted over a long period of time." *Id.* Although the boy did not die from his injuries, he suffered significant brain damage. *Id.* The father was eventually tried and convicted of child abuse. *Id.*

The child and his mother brought suit against Winnebago County, "contend[ing] that the State deprived [the child] of his liberty interest in 'free[dom] from … unjustified intrusions on personal security' by failing to provide him with adequate protection against his father's violence." *Id.* at 195 (third and fourth alteration original, internal citation omitted). The Supreme Court explained that "nothing in the language of the Due Process Clause itself requires the State to protect

22

the life, liberty, and property of its citizens against **invasion by private actors**." *Id.* (emphasis added). The Clause "forbids **the State itself** to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation to ensure that those interests do not come to harm through other means." *Id.* (emphasis added). "Like its counterpart in the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment was intended to prevent **government** 'from abusing [its] power, or employing it as an instrument of oppression.'" *Id.* at 196 (quoting *Davidson v. Cannon*, 474 U.S. 344, 348 (1986)) (alteration original, emphasis added). "Its purpose was to protect the people from the State, not to ensure that the State protected them from each other." *Id.* "[W]e conclude that a State's **failure to protect an individual against private violence** simply does not constitute a violation of the Due Process Clause." *Id.* (emphasis added).

Nevertheless, the *DeShaney* Court noted, there are "certain limited circumstances" in which the Constitution "imposes upon the State affirmative duties of care and protection with respect to particular individuals," including the requirement that the State "provide adequate medical care to incarcerated prisoners" under the Eighth Amendment. *Id.* at 198 (citing *Robinson v. California*, 370 U.S. 660 (1962)). The Supreme Court extended this analysis to "suspects in police custody who have been injured while being apprehended by the police" in *City of Revere*. *Id.* at 199. As the Supreme Court explained, prior precedent had established by 1989 that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume responsibility for his safety and general well-being." *Id.* at 199-200 (citing *Youngberg v. Romeo*, 457 U.S. 307 (1982); *City of Revere*, 463 U.S. 239 (1983)). "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, ***but from the limitation***

***which it has imposed on his freedom to act on his own behalf.***" *Id.* at 200 (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)) (emphasis added). "In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause[.]" *Id.*

Whether Tyre was "in custody" (1) once he was beaten so badly by Defendant Officers that he began to lose consciousness or (2) when the Defendant Officers placed him in handcuffs, propped him up against an MPD vehicle, and surrounded him, he was certainly in State custody by the time Defendants Long, Sandridge, and Whitaker arrived. Those "certain limited circumstances" noted by the *DeShaney* Court—*not* the question of protection from private violence—squarely control the facts and analysis in this case.

### a. *Town of Castle Rock, Colorado v. Gonzales*

Likewise, *Town of Castle Rock* does not support Defendants' argument. There, a woman received a restraining order against her ex-husband as part of their divorce proceedings. 545 U.S. at 751. One afternoon weeks later, the woman realized that her three daughters were missing and suspected that her ex-husband had taken them. *Id.* She called the police several times throughout the afternoon, and even spoke with her ex-husband who told her he had the girls at an amusement park—information she passed along to the police. *Id.* at 753. The police officers she spoke with told the woman to continue waiting and that they could not do anything, even with the restraining order in place. *Id.* At approximately 3:20 a.m. the following morning, the ex-husband "arrived at the police station and opened fire with a semiautomatic handgun he had purchased earlier that evening. Police shot back, killing him. Inside the cab of his pickup truck, they found the bodies of all three daughters, whom he had already murdered." *Id.* at 754.

The question before the Supreme Court was whether the woman "**had a property interest in police enforcement** of the restraining order against her husband" and whether "the town **deprived her of this property** without due process by having a policy that tolerated nonenforcement of restraining orders." *Id.* at 755 (emphasis added). The Court reasoned that "[e]ven if we were to think [that Colorado statutes created a property interest in entitlement to police protection through its template restraining order language], it is by no means clear that an individual entitlement to enforcement of a restraining order could constitute a 'property' interest for purposes of the Due Process Clause." *Id.* at 765. "Such a right would not, of course, resemble any traditional conception of property." *Id.* Plaintiff is not making a claim to a property interest in police enforcement here.

She is claiming that Tyre had a Fourteenth Amendment right to receive adequate medical care from the EMT Defendants after he was severely beaten by Defendant Officers and taken into their custody.

### b.  *Jackson v. Schultz*

In *Jackson v. Schultz*, a man was shot by another bar patron who "indiscriminately" fired a weapon. 429 F.3d at 588. Someone called 911, and Detroit Fire Department EMTs were dispatched to the scene. *Id.* When the EMTs arrived, the man was bleeding profusely but alive; he was loaded into an ambulance, but life-saving measures were not taken. *Id.* The man died in the back of the ambulance. *Id.* Again, this is a case that examines the constitutional parameters of medical care for the victim of private violence, here being shot by another bar patron. The Sixth Circuit analyzed the case under *DeShaney*, looking to both the "custody exception" and the "state-created danger exception" under that doctrine. *Id.* at 590-92. As the *Jackson* Court explained, "[t]he 'custody exception' triggers a constitutional duty to provide adequate medical care to incarcerated prisoners, those involuntarily committed to mental institutions, foster children, pre-

25

trial detainees, and those under 'other similar restraint of personal liberty.'" *Id.* at 590. "The overarching prerequisite for custody is an affirmative act by the state that restrains the ability of an individual to act on his own behalf." *Id.*

Reasoning that placing an unconscious patient into an ambulance is not taking a person into custody, and because there were no allegations that the EMTs (or anyone else) had handcuffed the victim or that he had not been free to leave the ambulance had he chosen to, the Sixth Circuit determined that the custody exception did not apply. *Id.* at 590-91. The Court did, however, note that "custody might be found where an unconscious drunk is handcuffed and transported to jail." *Id.* at 590. The Sixth Circuit also determined that plaintiff had not pled sufficient facts to show an affirmative act by the EMTs that created or increased a risk that the decedent would be exposed to "private acts of violence" and therefore had not adequately pleaded a state-created-danger exception. *Id.* at 591-92.

Plaintiff here does not rely on the custody or the state-created danger theories of *DeShaney* liability against the EMT Defendants because all Defendants were state actors, as Plaintiff has adequately alleged. *See*, Doc. 1 at ¶¶ 8-39, 769, 791, 813. Even if the Court considers this case to fall under *DeShaney*, the custody exception applies here because Tyre was handcuffed and in MPD custody before the EMT Defendants arrived on scene. *See* Doc. 1 at ¶¶ 218-220, 229-230, 236. Indeed, Plaintiff has adequately pleaded that Defendant Officers used force, the threat of force, and show of authority to take Tyre into custody. *See*, Doc. 1 at ¶¶ 155-222; *see also*, *Willis*, 360 Fed. Appx. at 600. Plaintiff has further alleged that Tyre *was* in the custody of the State at the time the EMT Defendants arrived on scene, as he was handcuffed, subdued, and seriously and obviously injured. Doc. 1 at ¶¶ 220, 222, 229, 236.

### c.   *Baker v. City of Detroit*

In *Baker v. City of Detroit*, two EMTs responded to a 911 call from Baker complaining of breathing difficulties. 217 Fed. Appx. at 492 (unpublished). Upon arrival, one of the EMTs observed that Baker's condition did not appear to be serious, did not take Baker's vitals, and walked Baker to the ambulance. *Id.* Baker began to experience "extreme respiratory discomfort" and panic after entering the ambulance; the EMTs attempted to place a nebulizer mask on Baker but she knocked it off her face. *Id.* at 493. The EMT then administered a shot of epinephrine to Baker, which was contraindicated for Baker based on age and potential symptoms. *Id.* The EMTs reached the hospital and immediately took Baker to the resuscitation room but had to wait 9 minutes for a doctor to arrive. *Id.* During that time, Baker went into full cardiopulmonary arrest and died shortly later. *Id.*

The representative of Baker's estate brought suit against the EMTs, alleging that they violated Baker's Fourteenth Amendment rights because they took Baker "into custody, thereby creating a special relationship" under *Estelle v. Gamble*, 429 U.S. 97 (1976) and *Youngberg v. Romeo*, 457 U.S. 307 (1982) that imposed a duty on the EMTs to provide adequate medical care. *Id.* In determining that no special relationship arose, the Sixth Circuit noted the following facts:

> The plaintiff does not dispute that Baker **voluntarily** called 911, that she **voluntarily** went with [the EMTs] to the ambulance in order to be taken to the hospital, that she then began to experience difficulty breathing that required the intervention of the paramedics, and that she became panicky and did not want to sit down inside the ambulance. The facts alleged by the plaintiff show that [the EMT] **attempted to administer medication for Baker's benefit**, a course of action consistent with Baker's desire to be treated and taken to the hospital. [The EMT's] actions, whether medically correct or negligent, were not the sort of actions giving rise to a conclusion that Baker was in custody.

*Id.* at 495 (emphasis added).

The facts of *Baker*, like the facts in *DeShaney*, *Town of Castle Rock*, and *Jackson*, as well as *Peete* and *Linden*, *supra*, are simply not analogous to the facts in Tyre's case. Tyre did not call 911 or seek out Defendant Officers in any way. Once again, Plaintiff repeats that there was no private violence against Tyre and EMT Defendants have not provided this Court with a shred of evidence or caselaw to support such a finding. Tyre was the victim of a brutal, unprovoked attack by on-duty MPD officers in the SCORPION unit who routinely participated in gratuitous violence against Memphis citizens (*see* Doc. 1 at ¶¶ 79, 99-107, 116), who placed him in custody by putting him in handcuffs once he collapsed, dragged him over to an MPD vehicle, and propped him up against it. Tyre was in custody: a reasonable person in Tyre's position would not have believed that he was free to go in these circumstances.

The EMT Defendants arrived thereafter. Plaintiff's claims against the EMT Defendants arise because of state action and excessive force by Defendant Officers and the corresponding, long-established Fourteenth Amendment right to be provided with adequate medical care when injured while being apprehended by police officers. The EMT Defendant officers here had a clearly established duty to provide medical care to Tyre once he was in the custody of MPD officers but failed to do so. The EMT Defendants are not entitled to qualified immunity on the well-pled facts alleged by Plaintiff in her complaint, and EMT Defendants' motions to dismiss should be denied in their entirety.

**D. This Court should decline Defendants' attempts to convert their Rule 12(b)(6) motions to Rule 56 motions by adding facts and exhibits from outside the pleadings.**

Defendants Long and Whitaker attempt to convert their Rule 12(b)(6) motions to Rule 56 motions for summary judgment by including unpled facts, *see* Doc. 128-1 at p. 2 ("Defendant Long was dispatched to a pepper spray incident at an entirely different location…Upon arriving

on the scene, the police officers on scene prevented Defendant Long from doing his job by refusing to release Mr. Nichols for emergency medical treatment."), and documents that are not incorporated by or referenced in the complaint as exhibits, *see* Doc. 132 at pp. 4-6 (discussion of facts outside the complaint allegedly from "Engine 55 Patient Care Records" attached to motion as Exhibit 1, Doc. 132-1).

Defendant Whitaker also argues more broadly, impermissibly, that Plaintiff's allegations are "false." *See* Doc. 132 at pp. 3-6; *see also*, *Hunter v. Atchison*, 466 F.2d 490, 491 (6th Cir. 1972) (per curiam) ("We must, of course, accept the truth of the plaintiff's allegations for the purpose of evaluating a motion to dismiss."); *Golden*, 404 F.3d at 958-59 ("A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations. Thus, this Court must assume that all allegations are true[.]").

Ultimately, what the EMT Defendants were doing before they arrived on scene, why they arrived on scene, or other scenes that they were dispatched to are irrelevant to the question before the Court—whether Plaintiff has adequately pleaded that EMT Defendants violated Tyre's Fourteenth Amendment rights by failing to provide medical care to him after he was injured while being apprehended by the police. The facts relevant to that inquiry are what happened once the EMT Defendants arrived on scene in their capacities as emergency medical technicians for the City of Memphis. This Court should decline to consider any facts presented by EMT Defendants that are outside of the complaint.

Furthermore, this Court should decline to consider and strike Defendant Whitaker's Exhibit 1 attached to her motion to dismiss. *See*, Doc. 132-1. "As a general rule, a district court, in ruling on a motion to dismiss, should look only to the allegations of the complaint." *Burns v. United States*, 542 Fed. Appx 461, 466 (6th Cir. 2013). "A document referred to or attached to the

29

pleadings, *and integral to plaintiff's claims*, may also be considered without converting a motion to dismiss into one for summary judgment." *Id.* But "even if an exhibit attached to a motion to dismiss satisfies this standard, a district court need not consider it if it 'captures only part of the incident and would provide a distorted view of the events at issue." *Estate of Miller v. Michigan Dep't of Corr.*, No. 22-10934, 2023 WL 122903, *2 (E.D. Mich. Jan. 6, 2023) (quoting *Jones v. Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008)).

Here, Defendant Whitaker proposes to introduce "Engine 55 patient care records" which are neither quoted nor referenced in any way in Plaintiff's complaint. *See generally*, Doc. 1. Nor does Defendant Whitaker ask this Court to take judicial notice of these records. *See*, Doc. 132 at p. 4 fn.14. Tyre's medical records are nevertheless inappropriate for judicial notice because they cannot "be accurately and readily determined from sources whose accuracy [here, the EMT Defendants themselves] cannot reasonably be questioned." *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012). "Judicial notice is only appropriate if 'the matter is beyond reasonable controversy. The rule proceeds upon the theory that dispensing with traditional methods of proof should only occur in clear cases.'" *Id.* (quoting Fed. R. Evid. 201(b) advisory committee's note) (cleaned up). The Court should decline to take judicial notice of Tyre's medical records.

In *Estate of Miller v. Michigan Department of Corrections*, defendants included 16 exhibits with their motion to dismiss. 2023 WL 122903 at *2. Within the exhibits were "over 200 pages of Miller's medical records," which the defendants argued should be considered "because the complaint 'repeatedly references both the adequacy of Miller's treatment and the knowledge of [the MDOC] and its employees of Miller's mental health history and alleged suicidal ideation." *Id.* (alteration original) The Court determined that defendants' argument was "not enough" to bring the medical records within the scope of the motion to dismiss because the complaint did not

reference or rely on his treatment at MDOC or the other factual allegations contained in the Defendants' motion. *Id.* The *Estate of Miller* Court further noted because the exhibits, including the medical records, "'show only a distorted view of the entire situation' leading to Miller's death," the Court determined that all but one of the exhibits—and all of Miller's medical records—should not be considered on the motion to dismiss. *Id.* at *3. Defendant Whitaker's Exhibit likewise only shows a distorted view of the situation leading to Tyre's death. This Court should follow the reasoning of the *Estate of Miller* Court and should similarly not consider Tyre's medical records at the motion to dismiss stage of this litigation.

Because Tyre's medical records are not incorporated by reference in plaintiff's complaint, they should not be considered here without converting Defendant Whitaker's motion to a Rule 56 summary judgment motion. *See*, *Wysocki v. Int'l Bus. Machine Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010) ("The federal rules require that if, in a 12(b)(6) motion to dismiss, 'matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.'" (quoting Fed. R. Civ. P. 12(d))). "'All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion,'" *Id.* (quoting Fed. R. Civ. P. 12(d)). Plaintiffs have no information about the veracity of these documents and would need to conduct discovery into their contents before being able to "present all the material" pertinent to these records.

Given that Tyre's medical records are unreferenced and not relied upon in Plaintiff's complaint, Defendant Whitaker's Exhibit 1 should not be considered by this Court in consideration of her motion. Should this Court determine that the medical records attached to Defendant Whitaker's motion should be considered, Plaintiff respectfully requests limited discovery into those records and an opportunity to submit supplemental briefing and evidence on the matter.

## IV.    <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiff respectfully requests the Court deny Defendants Long, Sandridge, and Whitaker's Motions to Dismiss in their entirety and permit the parties to proceed to discovery to investigate the well-pled, plausible factual allegations against them.

In the alternative, should the Court dismiss any of the challenged claims, Plaintiff respectfully requests that such dismissal be granted without prejudice and with leave to amend to make the necessary edits to Plaintiff's Complaint.

<div align="right">

Respectfully submitted,
</div>

**Dated: January 8, 2024**

<div style="margin-left: 40%;">

**/s/ Bryce T. Hensley**
**ROMANUCCI & BLANDIN, LLC**
Antonio Romanucci (*pro hac vice*)
(Illinois ARDC No. 6190290)
Bhavani Raveendran (*pro hac vice*)
(Illinois ARDC No. 6309968)
Bryce Hensley
(Illinois ARDC/WDTN No. 6327025)
Sarah Raisch (*pro hac vice*)
(Illinois ARDC No. 6305374)
321 North Clark St., Suite 900
Chicago, Illinois 60654
Tel: (312) 458-1000
Fax: (312) 458-1004
Email: aromanucci@rblaw.net
Email: b.raveendran@rblaw.net
Email: bhensley@rblaw.net
Email: sraisch@rblaw.net

**MENDELSON LAW FIRM**
David Mendelson
(Tennessee Bar No. 016812)
Benjamin Wachtel
(Tennessee Bar No. 037986)
799 Estate Place
Memphis, Tennessee 38187
Tel: (901) 763-2500 ext. 103
Fax: (901) 763-2525
Email: dm@mendelsonfirm.com
Email: bwachtel@mendelsonfirm.com
</div>

**BEN CRUMP LAW**
Ben Crump (*pro hac vice pending*)
(Washington, D.C. Bar No. 1552623)
(Tennessee Bar No. 038054)
Chris O'Neal (*pro hac vice pending)*
(Florida Bar No. 910201)
Brooke Cluse
(Texas Bar No. 24123034)
717 D Street N.W., Suite 310
Washington, D.C. 20004
Email: ben@bencrump.com
Email: chris@bencrump.com
Email: brooke@bencrump.com

**COUNCIL & ASSOCIATES, LLC**
Lashonda Council Rogers
(Georgia Bar No. 190276)
50 Hunt Plaza, SE Suite 740
Atlanta, Georgia 30303
Tel: (404) 526-8857
Fax: (404) 478-8423
Email: lrogers@thecouncilfirm.com

**EARNESTINE HUNT DORSE**
Earnestine Hunt Dorse
(Tennessee Bar No. 012126)
3268 N Waynoka Circle
Memphis, Tennessee 38111-3616
Tel: (901) 604-8866
Email: ehdorse@gmail.com