**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| ROWVAUGHN WELLS, Individually and as Administratix Ad Litem of the Estate of TYRE DEANDRE NICHOLS, deceased, | Case No.: 2:23-cv-02224-MSN-atc |
| *Plaintiff,* | **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR LEAVE:** |
| v. | **(1) TO TAKE A MAXIMUM OF THIRTY-FIVE DEPOSITIONS;** *and…* |
| THE CITY OF MEMPHIS, a municipality, *et al.*, | |
| *Defendants.* | **(2) TO CONDUCT CERTAIN DEPOSITIONS OVER THE PERMITTED SEVEN HOURS** |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR LEAVE (1) TO TAKE A MAXIMUM OF THIRTY-FIVE DEPOSITIONS; AND (2) TO CONDUCT CERTAIN DEPOSITIONS OVER THE PERMITTED SEVEN (7) HOURS**

**COMES NOW** the Plaintiff, RowVaughn Wells, individually and as Administratix Ad Litem of the Estate of Tyre Deandre Nichols, deceased, ("Plaintiff"), by and through her attorneys of record, and, in support of her motion for entry of an Order granting her leave (1) to take a maximum of thirty-five (35) (non-expert) depositions, and (2) to conduct certain (identified) depositions over the permitted seven (7) hours, the Plaintiff states as follows:

**I.    Introduction and Statement of the Nature of the Matter**

This case arises out of the January 10, 2023 death of Plaintiff's decedent, Tyre Deandre Nichols ("Mr. Nichols"). Given those complexities attendant to the instant case (and for those reasons stated here), it is the position of the Plaintiff that the needs of this case justify (1) an allowance of additional time to conduct the deposition of Defendant City of Memphis' designated Rule 30(b)(6) deponent(s); (2) an allowance of additional time to conduct the depositions of

named-Defendants; and (3) an enlargement of those depositions permitted under Rule 30, such that the Plaintiff would have leave to take, *at a minimum*, thirty-five (35) depositions.

## II.    Statement of the Facts.

Preliminarily, and in an effort to avoid redundancy and duplication, Plaintiff does not repeat those facts contained within her corresponding motion again in the instant filing, but, rather, incorporates by reference paragraphs one to eleven of the aforementioned motion, as well as any exhibits, herein in full by reference.

## III.    Standard of Review

As this Court has noted in other litigation, "[t]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad[,]" such that, under the provisions of Rule 26(b)(1), for example, "[p]arties may obtain discovery on any matter that is not privileged and is relevant to any party's claim or defense if it is reasonably calculated to lead to the discovery of admissible evidence." *Goree v. United Parcel Service, Inc.*, 14-cv-2505-SHL-tmp, 2015 WL 11120571, *5 (W.D. Tenn. Sept. 29, 2015) (citing *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) and FED. R. CIV. P. 26(b)(1)); *see also* FED. R. CIV. P. 401 (deeming evidence "relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action"). In ascertaining the proper scope of discovery (the "wide" discretion for which resides squarely within the province of the district court), "the court looks to the underlying claims and defenses[,]" though it remains the burden of "[t]he party seeking the discovery [to] show [that] the requests are relevant to the claims or defenses" of the action. *Goree*, 2015 WL 11120571, at *5 (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007); *Trevino v. Celanese Corp.*, 701 F.2d 397, 406 (5th Cir. 1983), for the proposition that "[t]he scope of discovery […] is ***limited only by***

*relevance and burdensomeness*.") (emphasis added)); *see also, Scales v. J.C. Bradford and Co.*, 925 F.2d 901, 906 (6th Cir. 1991); *Northend Investors, LLC v. Southern Trust Insurance Co.*,[1] 1:16-cv-01137-JDB-egb, 2017 WL 11494659, *2 (W.D. Tenn. June 15, 2017) (citing *Albritton v. CVS Caremark Corp.*, 5:13-CV-00218-GNS-LLK, 2016 WL 3580790, *3 (W.D. Ky. June 28, 2016); *Gruenbaum v. Werner Enterprises, Inc.*, 2:09-CV-1041, 270 F.R.D. 298, 302 (S.D. Ohio Oct. 7, 2010)).

Upon a showing of relevance by the party seeking discovery, "the burden shifts to the party opposing discovery to show, *with specificity*, why the requested discovery is not proportional to the needs of the case." *Fusion Elite All Stars v. Varsity Brands, LLC*, Nos. 20-cv-02600-SHL-tmp and 20-cv-02892-SHL-tmp, 2022 WL 945605, *2 (W.D. Tenn. Mar. 29, 2022) (emphasis added) (citing *Johnson v. CoreCivic, Inc.*, No. 18-CV-1051-STA-tmp, 2019 WL 5089086, *2 (W.D. Tenn. Oct. 10, 2019); *William Powell Co. v. Nat'l Indem. Co.*, No. 1:14-CV-00807, 2017 WL 1326504, *5 (S.D. Ohio Apr. 11, 2017), *aff'd sub nom.* 2017 WL 3927525 (S.D. Ohio June 21, 2017), and *modified on reconsideration*, 2017 WL 4315059 (S.D. Ohio Sept. 26, 2017)). Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, the following "[s]ix factors are relevant to proportionality: (1) "the importance of the issues at stake in the action;" (2) "the amount in controversy;" (3) "the

---

[1] By way of illustrating the manner in which this Court has previously exercised its broad discretion in determining the scope of discovery, Plaintiff would note that, in *Northend Investors, LLC*, which involved a dispute arising from an insurance claim, this Court granted a motion to compel, requiring, among other things, that defendant "designate an individual to testify on its net worth and financial position for the years 2013 through 2015[.]" 2017 WL 11494659, at *2. In that case, the plaintiff maintained that the aforementioned deposition and requested information were "relevant to the [claim for punitive] damages it allege[d,]" and, while the defendant did not dispute the information's relevancy, defendant did dispute whether punitive damages were even "recoverable in disputes arising from insurance claims." *Id.*, at **1-2. In referring to a previous Order finding "that a legal basis for punitive damages exist[ed] in the case[,]" this Court would ultimately conclude that "[i]nformation on a defendant's net worth and financial condition is relevant for discovery purposes when a plaintiff *seeks* punitive damages." *Id.*, at *2 (emphasis added) (citations omitted). Critically, this Court would go on to observe that "the majority of courts have held that a plaintiff seeking punitive damages is entitled to such discovery in advance of trial **[even] without a *prima facie* showing that plaintiff is entitled to recover [such] damages**." *Id.* (citing *Westbrook v. Charlie Sciara & Son Produce Co., Inc.*, 07-2657 Ma/P., 2008 WL 839745, *2 (W.D. Tenn. Mar. 27, 2008); *Howard v. Wilkes & McHugh, P.A.*, 06-2833 Ml/P., 2008 WL 4415162, *6 (W.D. Tenn. Sept. 24, 2008)) (bold added for emphasis). Such is but an example of the manner in which this Court has previously exercised its broad discretion in determining the scope of discovery.

parties' relative access to relevant information;" (4) "the parties' resources;" (5) "the importance of the discovery in resolving the issues;" and (6) "whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Id.* (citing and quoting FED. R. CIV. P. 26(b)(1)). In the event a party opposing discovery might wish to narrow the scope of discovery by suggesting that "the narrow issues for trial[ ]" (*i.e.*, those issues that survive and await adjudication following the pendency of a motion to dismiss) "establish the foundational basis for relevancy," it is worth noting that such an argument runs counter to "the plain language of Rule 26 [which] dictates otherwise." *Amos v. Lampo Group, LLC*, Case No. 3:21-cv-00923, 2023 WL 375938, *2 (M.D. Tenn. Jan. 24, 2023) (citing FED. R. CIV. P. 26(b)(1), which holds that "[i]nformation within the scope of discovery need not be admissible in evidence to be discoverable").

Rule 26(b)(2) of the Federal Rules of Civil Procedure states the following, in relevant part, concerning those "Limitations on Frequency and Extent" applicable to discovery:

> (A) *When Permitted*. By order, the court may alter the limits in these rules on **the number of depositions** and interrogatories or on **the length of depositions under Rule 30**…
>
> \*       \*       \*
>
> (C) *When Required*. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
>> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>>
>> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; *or*
>>
>> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

(bold added for emphasis). Further, Rule 30(a)(2) of the Federal Rules of Civil Procedure states the following, in relevant part, and, specifically, as it concerns "When a Deposition May Be Taken[:]"

> (2) *With Leave*. A party must obtain leave of court, and **the court must grant leave to the extent consistent with Rule 26(b)(1) and (2)**:[2]
>
> > (A) if the parties have not stipulated to the deposition and:
> >
> > > (i) the deposition would result in more than 10 depositions being taken under this rule or Rule 31 by the plaintiffs, or by the defendants, or by the third-party defendants…

(emphasis in original). Rule 30(d), then, notes the following, in relevant part, concerning the duration of a deposition:

> (1) *Duration*. Unless otherwise stipulated or ordered by the court, a deposition is limited to one day of 7 hours. **The court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent** or if the deponent, another person, or any other circumstance impedes or delays the examination.

(bold added for emphasis).

## IV. Plaintiff's Arguments

### a. The needs of this case require an allowance of additional time to conduct the deposition of Defendant City of Memphis' designated Rule 30(b)(6) deponent(s).

As Plaintiff previously indicated to counsel for the Defendants, Plaintiff should be afforded leave of Court to proceed in the following manner, as it concerns the taking of a Rule 30(b)(6) deposition of any deponent(s) so designated by Defendant City of Memphis:

i.   In the event Defendant Chief Cerelyn Davis were to be designated by Defendant City of Memphis as the sole Rule 30(b)(6) deponent for all matters or topics concerning the Memphis Police Department, Plaintiff's counsel should be afforded the opportunity to

---

[2] As this Court previously acknowledged in *Fusion Elite All Stars*, while "Rules 26(b)(1) and (2) are used to evaluate a Motion to Compel[,]" an analysis under these rules would apply even to those plaintiffs who "have not exceeded their allotted depositions." 2022 WL 945605, *2 n.2.

conduct this portion of any soon-coming Rule 30(b)(6) deposition for Defendant City of Memphis over the course of thirty-five (35) hours (none of which should be deemed a portion or component of Defendant Chief Cerelyn Davis' own deposition in her capacity as a named-Defendant); *and*…

ii. Otherwise, Plaintiff's counsel should be afforded the opportunity to conduct fourteen (14) hour depositions per topic so identified within her Rule 30(b)(6) rider. *See generally* Exhibit 3 to Plaintiff's motion ("Exhibit 3").

As this Court has previously acknowledged, "[a] Rule 30(b)(6) deponent testifies as to the knowledge of [a] corporation and the corporations' subjective beliefs and opinions and interpretation of documents and events[,]" whereas, "[a] fact witness, on the other hand, testifies as to his individual knowledge and gives his personal opinions." *Hilton Hotels Corp. v. Dunnet*, No. 00-2852-GV, 2002 WL 1482543, *2 (W.D. Tenn. Mar. 15, 2002) (citing *United States v. Taylor*, No. 3:89CV00231, 166 F.R.D. 356, 360 (M.D.N.C. Feb. 27, 1996)). Accordingly, the testimony of a Rule 30(b)(6) deponent "must be distinguished from that of a 'mere corporate employee' whose deposition is not considered that of the corporation and whose presence must be obtained by subpoena." *Id*. (internal quotation marks omitted) (also citing 8A Wright, Miller & Marcus § 2103, at 36-37). Given this distinction in testimony, it should, therefore, come as no surprise that a person can, *indeed*, "be both a fact witness and a [Rule] 30(b)(6) witness[ ]" – the rule for which "expressly states that it does not preclude a deposition by any other procedure." *Id*. By way of illustrating these principles, consider certain findings made by this Court in *Hilton Hotels Corp.* that (1) defendants' requested fact witness deposition of a designated Rule 30(b)(6) deponent (in their capacity as a fact witness) would not be duplicative; and (2) defendants were entitled to conduct separate depositions of this particular witness – "one as a fact witness, […] and one as a [Rule] 30(b)(6) witness." *Id*. Accordingly, Plaintiff continues to maintain that she is entitled to conduct separate depositions of Defendant Chief Cerelyn Davis – one as a fact witness,

and one as a Rule 30(b)(6) deponent, in the event she were to be so designated by Defendant City of Memphis. *Id*.

Turning now to the requested length (in hours) of any soon-coming Rule 30(b)(6) depositions in this matter, Plaintiff acknowledges that, under Rule 30, "a deposition is limited to one day of [seven] hours," unless the parties so stipulate or the Court orders otherwise. *Buie v. Dist. of Columbia*, Civil Action No. 16-01920 (CKK/RMM), 327 F.R.D. 1, 15 (D.D.C. Aug. 14, 2018) (citing and quoting FED. R. CIV. P. 30(d)). However, "[t]he Advisory Committee notes for the 2000 Amendment indicate that "[f]or purposes of this durational limit, the deposition of each person designated under Rule 30(b)(6) should be considered a *separate* deposition."" *Id*., at *15 (citing and quoting FED. R. CIV. P. 30, Advisory Committee note to subdivision (d) (2000)) (emphasis added). Though not necessarily binding upon this Court, as has been observed by other federal courts, the Advisory Committee notes are helpful in that they "explain the intent behind the rules and "are nearly universally accorded great weight in interpreting federal rules."" *Id*. (citing *Horenkamp v. Van Winkle & Co., Inc.*, 402 F.3d 1129, 1132 (11th Cir. 2005) (internal quotation mark and citation omitted in original); *3M Co. v. Boulter*, Civil Action No. 11-cv-1527 (RLW), 842 F.Supp.2d 85, 96-101 (D.D.C. Feb. 2, 2012)). It is for this reason that the District Court for the District of Columbia in *Buie* (a civil rights action under 42 U.S.C. § 1983 against Defendants the District of Columbia and a former Metropolitan Police Department ("MPD") officer premised upon the defendant-police-officer's sexual assault of the plaintiff when she was a minor) refused to accept a contention on the part of the defendant that a Rule 30(b)(6) deposition ("in which multiple deponents [would] testify") "should last no more than seven hours[ ]" under Rule 30(d). *Id*., at **5, 15. Rather, upon assessing the scope of the relevant Rule 30(b)(6) notice, and in exercising "its discretion to modify the time limit for the [Rule] 30(b)(6) deposition," the

court in *Buie* ultimately set an eighteen (18) hour limit for testimony responsive to four, separate topics within the relevant Rule 30(b)(6) notice, noting that, "unless the parties agree[d] otherwise, no more than seven hours of testimony [could] be taken during a single day of the [Rule] 30(b)(6) deposition." *Id.*, at *15.

The four, separate, Rule 30(b)(6) topics meriting eighteen (18) hours of testimony in *Buie* concerned the following areas of inquiry: (1) testimony regarding a named-defendant-police-officer's "hiring, promotion, demotion, transfer, training, supervision, termination, or resignation[ ]" (otherwise described as a request for testimony concerning said defendant's personnel, training, and disciplinary files); (2) testimony regarding "[t]he disciplinary files, and all other documents having to do with the training, discipline, or supervision, termination, or resignation of [the aforementioned named-defendant-police-officer], individually, and those of other MPD members involved in an instance or instances of alleged sexual misconduct/harassment[,]" subject to certain clarifications or refinements on the part of both the plaintiff and the court; (3) "records and testimony, from 1987 through [February 23, 2018], concerning "the methodology that […] MPD applied and the procedures it followed in the promotion, demotion, transfer, training, supervision, or termination […] of sworn MPD members involved in an instance of alleged sexual misconduct/harassment[;]" and (4) a request for records and testimony regarding "the investigatory records and all other documents […] [concerning] investigation[s] of allegations of sexual misconduct/harassment by sworn MPD members[,]" subject to certain, court-imposed limitations as to the scope of this particular topic. *Id.*, at **5, 7-15.

Much like the Rule 30(b)(6) topics in *Buie* meriting eighteen (18) hours of testimony, those subjects of inquiry contained within Plaintiff's Rule 30(b)(6) rider touch upon similar topics (*e.g.*, hiring practices; the manner in which officers accused of behavior or conduct akin to the central

allegations in this case are investigated and disciplined; the manner in which officers were trained and supervised (*e.g.*, officers within the SCORPION Unit,[3] which would necessarily include named-Defendants Demetrius Haley, Emmitt Martin, III, Justin Smith, Tadarrius Bean, and Desmond Mills, Jr.); allegations of misconduct as against certain officers (*e.g.*, the aforementioned named-Defendants, as well as other officers, within the SCORPION Unit), etc.), as evidenced here:

1. **Any and all City of Memphis and Memphis Police Department policies, procedures, and training on the use of force.** This topic includes but is not limited to any and all policies, procedures, and training on de-escalation during a police stop, escalation of a traffic stop to a use of force encounter, deployment of pepper spray, deployment of a telescoping police baton, escort holds, soft and closed hand holds, hand and foot strikes, handcuffing, segmenting, and restraint devices in effect on January 7, 2023. This topic also includes policies, procedures, and training on the Fourth Amendment's prohibition against excessive force as well as civilians' and custodial subjects' Constitutional rights as they relate to the use of force. This topic also includes policies, procedures, and training on police officer's duty to intervene when they witness an officer commit an excessive, unjustified, and/or unnecessary use of force.

2. **Any and all City of Memphis and Memphis Police Department policies, procedures, and training on the detention and seizure of civilians.** This topic includes policies, procedures, customs, and training addressing arrests, detention, Terry stops, foot pursuits, uses of force, traffic stops, investigations of individuals believed to have taken illegal drugs, probable cause, and reasonable suspicion.

3. **Any and all City of Memphis and Memphis Police Department policies, procedures on hiring personnel.** This topic includes but is not limited to information considered, obtained, and investigated regarding potential candidates for hire, position vacancies, certifications and/or formal education required of medical personnel, and the criteria used to select officers to join the SCORPION unit, including prior arrest records, employment records, performance at the police academy, educational background, prior disciplinary records, prior civilian complaints, background reports, prior performance at the Memphis Police Department or any law enforcement or security agency.

4. **Any and all City of Memphis, Memphis Police Department's policies, procedures, and training on summoning and/or providing medical attention to a subject that officers encounter, arrest, detain, chase, use force against, or otherwise interact with in the course of their duties.** This topic includes policies, procedures, and training regarding standardized interventions, the provision of medical attention to a

---

[3] The "now-disbanded Memphis [Police Department] unit" otherwise referred to as "the Street Crimes Operation to Restore Peace In Our Neighborhoods[.]" *See* ECF Dkt. 1, at p. 2.

handcuffed, compliant, and/or restrained subject, the provision of medical attention to an individual who is believed to be intoxicated, the applicable chain of command when agents of the Police Department and the Fire Department are at the scene where a civilian requires medical attention, the division of responsibility between Police personnel, Fire personnel, and Medical personnel at a scene where an individual requires medical attention, the applicable protocol to seek medical care for an individual or request an ambulance, information relayed to officers and/or medical personnel prior to arriving at a scene where a subject requires medical attention, information relayed to providers that will be providing care to the individual once moved off scene, and the provision of medical care to a critically injured individual, the transportation of an individual requiring medical attention, available resources for officers to provide medical attention, and the timely assessment of an individual requiring medical attention.

5. **Any and all Memphis Police Department policies and procedures for investigating officers accused of police misconduct and excessive force, as well as policies and procedures for disciplining, terminating, or recommending for criminal prosecution those officers who are found to have committed a policy violation or other instance of misconduct, including the use of force.**

6. **Any and all City of Memphis, Memphis Police Department and/or Memphis Fire Department policies, procedures, and training addressing the transmittal of information regarding an incident from City of Memphis personnel to members of the public.** This topic includes but is not limited to policies, procedures, and training relating to a police officer's communication with the family members of an individual that a City of Memphis police officer has recently detained, arrested, chased, and/or used force against.

7. **Any and all City of Memphis, Memphis Police Department and/or Memphis Fire Department policies, procedures, and training regarding the SCORPION Unit.** This topic includes information regarding the creation, chain of command, and supervision of officers belonging to the SCORPION Unit. This topic also includes allegations of misconduct against the SCORPION Unit (including but not limited to allegations involving the use of force) and personnel involved with the SCORPION Unit, the purpose of the SCORPION Unit. This topic also includes policies, procedures, and customs applicable to the SCORPION Unit and any training provided to or undergone by SCORPION Unit personnel.

8. **Any and all City of Memphis and/or Memphis Police Department training for new recruits or new hires for sworn officer positions, including, but not limited to, the training officers undergo in the police academy, field training, on the job training, policy training, police procedure training, team or assignment training, training on Constitutional rights of citizens, and new applicant training.**

9. **Any and all Memphis Fire Department's policies, procedures, and training on providing medical care to a subject that police officers encounter, arrest, detain,**

**chase, use force against, or otherwise interact with in the course of their duties.** This topic includes policies, procedures, and training regarding standardized medical responses and/or interventions, the provision of medical attention to a handcuffed, compliant, and/or restrained subject, the provision of medical attention to an individual who is believed to be intoxicated, the applicable chain of command when agents of the Police Department and the Fire Department are at the scene where a civilian requires medical attention, the division of responsibility between Police personnel, Fire personnel, and Medical personnel at a scene where an individual requires medical attention, information relayed to medical personnel prior to arriving at a scene where a subject requires medical attention, information relayed to providers that will be providing care to the individual once moved off scene, and the provision of medical care to a critically injured individual, the transportation of an individual requiring medical attention, available resources for medical personnel to provide medical attention, and the timely assessment of an individual requiring medical attention.

*See* Exhibit 3, at pp. 1-2 (emphasis added). Now, unlike the Rule 30(b)(6) topics in *Buie* meriting eighteen (18) hours of testimony, those subjects of inquiry contained within Plaintiff's Rule 30(b)(6) rider go even further in that they concern not just one named-defendant's employment with a municipal defendant (as was the case in *Buie*), but **eleven named-Defendants**, spanning *several* agencies or departments (and individual units thereof, *e.g.*, SCORPION Unit) within the greater City of Memphis organizational framework (*e.g.*, Memphis Police Department, Memphis Fire Department).

Surely, if a section 1983 case like *Buie* which largely concerned the conduct of one named-defendant yet merited eighteen (18) hours of Rule 30(b)(6) testimony (and, further, involved a claim under *Monell*),[4] then a case such as this involving eleven named-Defendants across several departments ought to merit, at a minimum, (1) thirty-five (35) hours of Rule 30(b)(6) testimony from Defendant Chief Cerelyn Davis (in her capacity as a designated Rule 30(b)(6) deponent for Defendant City of Memphis, were she to be so designated); and (2) a minimum of fourteen (14) hours of Rule 30(b)(6) testimony per topic (for those topics Defendant Chief Cerelyn Davis is not so designated as *the* Rule 30(b)(6) deponent for Defendant City of Memphis) – particularly in a

---

[4] *Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658 (1978); *see also, Buie*, 327 F.R.D. at 13.

world wherein the "courts have declined to limit a Rule 30(b)(6) deposition to seven hours[,]" as evidenced above. *Smith v. Smith*, Case No. 19-10330, 2020 WL 1933820, *6 (E.D. Mich. Apr. 22, 2020) (citing *Buie*, 327 F.R.D. at 1, 15).

### b. Those needs of this case require an allowance of additional time to conduct the depositions of named-Defendants.

As Plaintiff previously indicated to counsel for the Defendants, Plaintiff should be afforded leave of Court to proceed with fourteen (14)-hour depositions (or a twenty-one (21) hour deposition, in the case of Defendant Chief Cerelyn Davis) for the following named-Defendants, each of which will necessarily involve numerous, complex issues given the nature of this case: (1) Demetrius Haley; (2) Emmitt Martin, III; (3) Justin Smith; (4) Tadarrius Bean; (5) Desmond Mills, Jr.; (6) Chief Cerelyn Davis; (7) Robert Long; (8) JaMichael Sandridge; (9) Michelle Whitaker; (10) DeWayne Smith; and (11) Preston Hemphill.

This Court has broad discretion to set the length of depositions depending upon the needs or circumstances of a case. *Marsico v. Sears Holding Corp.*, 370 Fed.Appx. 658, 664 (6th Cir. 2010). Further, Rule 30(d)(1) is flexible, in that the rule itself acknowledges that "[t]he court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine [a] deponent[.]" FED. R. CIV. P. 30(d)(1). Consider, too, the fact that, within the Sixth Circuit, courts have routinely allowed additional time for depositions where, like here, the deponent is a key witness or a party in a complicated case.[5] In a case such as this wherein the Plaintiff's Complaint

---

[5] *See, e.g., Dow Chemical Co. v. Reinhard*, No. 07-12012-BC, 2008 WL 1735295, **1, 5 (E.D. Mich. Apr. 14, 2008) (permitting the deposition of plaintiff-Dow Chemical Company's chief executive officer's to proceed for an additional day of seven (7) hours, being unpersuaded "that additional time to depose [this] central witness [would] result in "annoyance, embarrassment, oppression, or undue burden or expense[ ]"); *Burket v. Hyman Lippitt, P.C.*, Civil Action Nos. 05-72110, 05-72171, and 05-72221, 2007 WL 2421514, *3 (E.D. Mich. Aug. 23, 2007) (deeming an additional seven (7) hours of testimony from one defendant and an additional nine (9) hours of testimony from another as "reasonable," "convinced that both [defendants] ha[d] much information relevant to the claims and defenses in the[ ] actions"); *Mike Vaughn Custom Sports, Inc. v. Piku*, Civil Action No. 12-CV-13083, 2013 WL 5818557, **5-6 (E.D. Mich. Oct. 29, 2013) (permitting additional deposition testimony from plaintiff's president despite having given eleven (11) hours of testimony over the course of two prior depositions); *Brooks v. Charter Twp. of Clinton*, No. 12-CV-

at Law alone spans over 138 pages, containing over 897 paragraphed allegations against twelve defendants, to suggest that "the needs of [this] case may justify" an extension of the "standard" seven (7) hours allowed per deposition would be an understatement. *See generally* ECF Dkt. 1; *see also, Norfolk Cnty. Ret. Sys. v. Comty. Health Sys., Inc.*, No. 3:11-cv-00433, 2019 WL 3003661, **1-2 (M.D. Tenn. Apr. 19, 2019) (denying a motion for review of a magistrate judge's nondispositive order extending the time for a named-defendant's deposition, wherein the magistrate judge's order observed that "the needs of a case may justify […] extensions[ ]" of both the hourly-standard and limitation on more than ten depositions, and finding, too, that the defendant need not have "be[en] deposed first for seven hours before a determination [was] made as to whether additional time [was] needed").

As to the depositions of named-Defendants (1) Demetrius Haley; (2) Emmitt Martin, III; (3) Justin Smith; (4) Tadarrius Bean; and (5) Desmond Mills, Jr. (*i.e.*, those named-Defendants alleged to have been directly involved in the death of Plaintiff's decedent, Mr. Nichols), an allotment of fourteen (14) hours each to proceed with these depositions is warranted and justified given the needs of the case. Each of these deponents (all of whom are believed to have been members of the SCORPION Unit at the time of the January 7, 2023 incident) possess relevant and discoverable information that are necessary to answer substantial questions of fact. Such unanswered questions cover a wide range of complex topics, including: (a) the basis for the initial traffic stop at the outset of Mr. Nichols' encounter with members of the Memphis Police Department on the evening of January 7, 2023, at approximately 8:24 P.M.; (b) the use of force employed by Defendants against Mr. Nichols (as well as any alleged justifications proffered by said named-Defendants for their use of force), including, but not limited to, the use of pepper

---

12880, 2014 WL 1319681, *2 (E.D. Mich. Apr. 1, 2014) ("exercis[ing] its discretion to extend the duration of the deposition of [two plaintiffs]").

and/or chemical spray, a TASER, batons, punches, kicks, etc.; (c) whether, as Plaintiff has alleged, there "[were] never any attempts to intervene [in the alleged use of force inflicted upon Mr. Nichols] by any officer or Memphis Police Department official[,]" nor were there any attempts to render immediate medical care even as "[Mr. Nichols'] body lay devastated from the beating[ ]" in the time thereafter; (d) whether, as Plaintiff has alleged, Defendants and other Memphis Police Officers "carried out untold Fourth Amendment violations with a focus on Black men living in Memphis[;]" (e) whether their actions were in accordance with certain directives from Defendant Chief Cerelyn Davis, herself, members of the SCORPION Unit (such as these named-Defendants); and (f) the (cumulatively decades-long) vocational, employment, training, and disciplinary history for each of these named-Defendants. *See* ECF Dkt. 1, at PageID 3-4.

As to the deposition of Defendant (6) Chief Cerelyn Davis, an allotment of twenty-one (21) hours to proceed with this deposition is warranted and justified given the vast amount of information she possesses that is directly pertinent to Plaintiff's *Monell* claims. She possesses relevant and discoverable information which is necessary to resolve number of substantial and complex questions of fact, including: (a) Plaintiff has alleged that, prior to joining Defendant City of Memphis in 2021 as its Chief of Police, Defendant Chief Cerelyn Davis had previously served as an officer within the Atlanta Police Department, where she played a prominent role in that department's so-called "RED DOG" unit (*i.e.*, "a police unit that was eventually disbanded due to numerous allegations of violations of the Fourth Amendment to the United States Constitution, including – but not limited to – illegal searches and seizures and excessive force"), thereby rendering her extensive vocational history within law enforcement entirely relevant to the instant case; (b) Plaintiff has alleged that, upon joining Defendant City of Memphis in 2021, Defendant

Chief Cerelyn Davis, alongside Assistant Chief of Police Shawn Jones,[6] created an identical unit to that of the "RED DOG" unit from the Atlanta Police Department, in the form of the SCORPION Unit; (c) Plaintiff has alleged that, in accordance with certain directives from Defendant Chief Cerelyn Davis, herself, members of the SCORPION Unit "carried out untold Fourth Amendment violations with a focus on Black men living in Memphis[;]" (d) substantial questions of fact remain concerning the manner in which Defendant Chief Cerelyn Davis carried out her role as "the final policymaker" for the Memphis Police Department, and, specifically, as it concerns the implementation of police policies and practices, the implementation of police hiring and assignment to specialized units within the department, the implementation and oversight of police training, and the implementation and oversight of police supervision; (e) Cerelyn Davis possesses essential knowledge regarding the customs and practices of the Memphis Police Department and the SCORPION Unit which Plaintiff alleges were the moving force behind the constitutional violations at issue; and (f) substantial questions of fact remain concerning Defendant Chief Cerelyn Davis' decades-long vocational, employment, training, and disciplinary history as a member of and supervisor within law enforcement. *See* ECF Dkt. 1, at PageID 2-3, 7-8; *see also, id.*, at ¶¶ 12-16.

As to the depositions of named-Defendants (7) DeWayne Smith; and (8) Preston Hemphill, an allotment of fourteen (14) hours each to proceed with these depositions is warranted and justified given that each of these deponents possesses relevant and discoverable information related to substantial questions of fact on the following issues: (a) Defendant DeWayne Smith's (a lieutenant with the department and supervisor for the SCORPION Unit) "arriv[al] on the scene at

---

[6] Plaintiff has alleged that, upon hiring Defendant Chief Cerelyn Davis to serve as the chief of police for Defendant City of Memphis, former colleague of Defendant Chief Cerelyn Davis from the Atlanta Police Department, Shawn Jones, was also hired and would serve as assistant chief of police for Defendant City of Memphis. *See* ECF Dkt. 1, at PageID 2-3.

the very end of the beating [of Mr. Nichols] by his five fellow Memphis Police Department SCORPION Officers[;]" (b) whether and to what extent, as Plaintiff has alleged, there "[were] never any attempts to intervene [in the alleged use of force inflicted upon Mr. Nichols] by any officer or Memphis Police Department official[,]" nor were there any attempts to render immediate medical care even as "[Mr. Nichols'] body lay devastated from the beating[ ]" in the time thereafter; (c) the extent to which certain inaccurate representations were made to the Plaintiff, Mr. Nichols' mother, at approximately 9:50 P.M., on January 7, 2023, concerning Mr. Nichols (*e.g.*, Mr. Nichols "was under arrest for DUI[,]" "intoxicated"); (d) Defendant DeWayne Smith's awareness of the medical condition of Mr. Nichols in the time immediately following officers' alleged use of force; (e) the basis for Mr. Nichols' having been subjected to a traffic stop at the outset of his encounter with members of the Memphis Police Department on the evening of January 7, 2023, at approximately 8:24 P.M.; (f) the use of force employed by Defendant Preston Hemphill against Mr. Nichols (as well as any alleged justifications proffered by said Defendant for his use of force), including, but not limited to, the use of pepper and/or chemical spray, a TASER, batons, punches, kicks, etc.; and (g) the (cumulatively decades-long) vocational, employment, training, and disciplinary history for each of these Defendants. *See* ECF Dkt. 1, at ¶¶ 255, 263-67, 279-82, 690-703, 725; *see also, id.*, at PageID 4.

        As to the depositions of named-Defendants (9) Robert Long; (10) JaMichael Sandridge; and (11) Michelle Whitaker, an allotment of fourteen (14) hours each to proceed with these depositions is warranted and justified because each of these deponents possesses relevant and discoverable information regarding the following complex issues and questions of fact pertinent to Mr. Nichols' medical care (and lack thereof): (a) Plaintiff has alleged that there were never any attempts to render immediate medical care to Mr. Nichols by these Defendants following the

alleged use of force inflicted upon him, even as "[his] body lay devastated from the beating[ ]" in the time thereafter; (b) whether any City of Memphis police officer prevented these Defendants from rendering medical aid; (c) Mr. Nichols' medical condition during these Defendants' presence on the scene; and (d) the (cumulatively decades-long) vocational, employment, training, and disciplinary history for each of these named-Defendants. *See* ECF Dkt. 1, at PageID 4.

All the witnesses described above not only have information regarding what happened to Mr. Nichols on that tragic night, but also the extent to which the City of Memphis's policies, procedures, practices, and customs were the moving force behind the litany of constitutional violations which Plaintiff has alleged. Plaintiff has alleged several policies, procedures, practices, and customs set forth by the City of Memphis which support a meritorious *Monell* claim and require extensive discovery on what Justice Breyer has described as "a highly complex body of interpretive law." *Bd. Of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 430 (1997). Given the inherent complexity of this area of law and the factual complexity of the City of Memphis' policies, procedures, and customs, there is an extensive amount of essential discovery that must necessarily be drawn from the City's Police Chief, Cerelyn Davis, as well as the other Defendants who presumably carried out such practices on a daily basis.

### c. The needs of this case require an enlargement of those depositions permitted under Rule 30, such that the Plaintiff would have leave to take, *at a minimum*, thirty-five (35) depositions.

To reiterate her position, in a case such as this wherein the Plaintiff's Complaint at Law alone spans over 138 pages, containing over 897 paragraphed allegations, to suggest that "the needs of [this] case may justify" an extension of "the limit on [ten] depositions" would be an understatement. *See generally* ECF Dkt. 1; *see also, Norfolk Cnty. Ret. Sys.*, 2019 WL 3003661,

**1-2.[7] Note, too, the fact that this case involves complicated and multi-faceted theories of liability under *Monell* that all but necessitate extensive depositions, particularly when the depositions of each of the eleven (11) named-Defendants in this action, *alone*, would exceed the standard allotment of ten (10) depositions permitted under the rules. *See generally* ECF Dkt. 1, at ¶¶ 294-376.

Accordingly, as to the significance of those depositions of (named-Defendants) (1) Demetrius Haley; (2) Emmitt Martin, III; (3) Justin Smith; (4) Tadarrius Bean; (5) Desmond Mills, Jr.; (6) Chief Cerelyn Davis; (7) DeWayne Smith; (8) Preston Hemphill; (9) Robert Long; (10) JaMichael Sandridge; (11) Michelle Whitaker; and (12) Defendant City of Memphis' designated Rule 30(b)(6) deponent(s), Plaintiff would refer the Court to those arguments levied above.

As to the depositions of (13) Sgt. Denetta Craig, #4164; and (14) Lt. Monique Williams, #4181, (a) each of these deponents possesses relevant and discoverable information; and (b) each of these deponents played a critical role in the Memphis Police Department investigation of the incident involving Mr. Nichols.

---

[7] By way of an additional example of the manner in which these requests have typically been addressed, in *B.M.D. ex rel. Dickerson v. Knox County* (a matter previously pending before the Eastern District of Tennessee), upon completing fifteen (15) depositions, the plaintiffs moved, in accordance with Rule 30(a)(2) of the Federal Rules of Civil Procedure, for the court's leave to take five additional depositions on the basis that such depositions were "needed." No. 3:07-CV-73, 2008 WL 723538, *1 (E.D. Tenn. Mar. 14, 2008). Specifically, it was the argument of the plaintiffs that the testimony of the requested five additional deponents (*e.g.*, "two Knox County Assistant District Attorneys […] and three high school students") was vital to the plaintiffs' case, as "all five of [their requested deponents] were directly involved in [those] matters at issue[.]" *Id.* In granting the plaintiffs' motion, the Eastern District of Tennessee in *B.M.D. ex rel. Dickerson* found that (1) "the five additional depositions sought by the plaintiffs [would] not be duplicative of depositions already taken[;]" (2) "a less burdensome method of obtaining the information sought[ ]" was not available to the plaintiffs; (3) "the previous depositions taken by the plaintiffs […] were necessary," such that the plaintiffs "[had] not squandered their allowed number of depositions[;]" and (4) "the *likely* benefit of the discovery sought outweigh[ed] any burden or expense the discovery might impose on the defendants." *Id.*, at *2 (emphasis added); *see also, Pierce v. Wyndham Vacation Resorts, Inc.*, 3:13-CV-641-CCS, 2017 WL 10434733, **1 (E.D. Tenn. May 18, 2017) (granting defendants' motion to take the depositions of twenty-three plaintiffs that, effectively, served as a representative sample of a larger group of 164 plaintiffs, finding the defendants' "request to depose [said] Plaintiffs proportional to the needs of the case").

As to the depositions of (15) Officer Cornell McKinnie; (16) Officer Darrell Mathis; (17) Officer "C. Mohney;" (18) Officer Samuel Lively; (19) Officer Jamil Matthews; (20) Officer "Roberts;" (21) Officer Irma Montes; (22) Officer Christopher Wilson; (23) Officer Tony Moore; (24) Officer Adrian Blakes; and (25) Officer Carlos Ivy, (a) each of these deponents possesses relevant and discoverable information; and (b) Plaintiff has alleged that there "[were] never any attempts to intervene [in the alleged use of force inflicted upon Mr. Nichols] by any officer or Memphis Police Department official[,]" nor were there any attempts to render immediate medical care even as "[Mr. Nichols'] body lay devastated from the beating[ ]" in the time thereafter, thereby rendering the testimony of these deponents, as officers for the Memphis Police Department who arrived at the scene of the incident, wholly relevant. *See* ECF Dkt. 1, at PageID 4.

As to the depositions of (26) Deputy Chief "Jones;" (27) Deputy Chief "Crowe;" (28) Deputy Chief Michael Hardy; and (29) Col. Sharon Cunningham, (a) each of these deponents possesses relevant and discoverable information; and (b) each of these deponents can, by virtue of their seniority, title, and rank within the department, attest to their observations, history, and conduct within the department's leadership (and, further, any involvement had with Defendant Chief Cerelyn Davis during her tenure as head of the department or any of their named-Defendant-colleagues).

As to the depositions of (30) Officer Wann Reed; (31) Officer Charles White; (32) Officer Victor Lester; (33) Col. J.D. Smith; (34) Lt. Kevin Lake; (35) Lt. Patrick Fox; (36) Lt. Brandon Harris; (37) Lt. Michael Jackson; (38) Lt. Andrew Kosso; (39) Lt. Israel Taylor; and (40) Officer "Patson," (a) each of these deponents (all of whom are believed to have been members of the SCORPION Unit at the time of the January 7, 2023 incident) possess relevant and discoverable information; (b) Plaintiff has alleged that, in accordance with certain directives from Defendant

Chief Cerelyn Davis, herself, members of the SCORPION Unit "carried out untold Fourth Amendment violations with a focus on Black men living in Memphis[,]" thereby rendering their testimony concerning their observations, history, and conduct within the SCORPION Unit wholly relevant to the instant case; and (c) each of these deponents can, by virtue of their assignment within the department, attest to their observations, history, and conduct within the department's SCORPION Unit (and, further, any involvement had with Defendant Chief Cerelyn Davis during her tenure as head of the department or any of their named-Defendant-colleagues). *See* ECF Dkt. 1, at PageID 3.

**WHEREFORE** the Plaintiff, RowVaughn Wells, individually and as Administratix Ad Litem of the Estate of Tyre Deandre Nichols, deceased, by and through her attorneys of record, and, pursuant to Rule 26(b)(2) and Rule 30 of the Federal Rules of Civil Procedure, respectfully requests that this Honorable Court enter an Order granting Plaintiff the relief so requested within her motion, in addition to all such other and further relief to which the Plaintiff may be justly entitled.

Date: March 14, 2024

Respectfully submitted,
**ROMANUCCI & BLANDIN, LLC**

/s/ Javier Rodriguez, Jr.

One of Plaintiff's attorneys

Antonio M. Romanucci (Illinois Bar No. 6190290) (*pro hac vice*)
Bhavani K. Raveendran (Illinois Bar No. 6309968) (*pro hac vice*)
Sarah Raisch (Illinois Bar No. 6305374) (*pro hac vice*)
Javier Rodriguez, Jr. (Illinois and W.D. Tenn. Bar No. 6330351)
Sam Harton (Illinois Bar No. 6342112) (*pro hac vice pending*)
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark St., Ste. 900
Chicago, IL 60654

+1 (312) 458-1000, *Main*
+1 (312) 458-1004, *Facsimile*
aromanucci@rblaw.net
b.raveendran@rblaw.net
sraisch@rblaw.net
jrodriguez@rblaw.net
sharton@rblaw.net

David L. Mendelson (Tennessee Bar No. 016812)
Benjamin Wachtel (Tennessee Bar No. 037986)
**MENDELSON LAW FIRM**
799 Estate Place
Memphis, TN 38187
+1 (901) 763-2500 (ext. 103), *Telephone*
+1 (901) 763-2525, *Facsimile*
dm@mendelsonfirm.com
bwachtel@mendelsonfirm.com

Ben Crump (Wash., D.C. Bar No. 1552623; Tennessee Bar No. 038054)
Chris O'Neal (Florida Bar No. 910201) (*pro hac vice pending*)
Brooke Cluse (Texas Bar No. 24123034) (*pro hac vice pending*)
**BEN CRUMP LAW, PLLC**
717 D Street N.W., Suite 310
Washington, D.C. 20004
+1 (337) 501-8356 (Cluse), *Telephone*
ben@bencrump.com
chris@bencrump.com
brooke@bencrump.com

LaShonda Council Rogers (Georgia Bar No. 190276) (*pro hac vice pending*)
**COUNCIL & ASSOCIATES, LLC**
50 Hunt Plaza, SE Suite 740
Atlanta, GA 30303
+1 (404) 526-8857, *Telephone*
+1 (404) 478-8423, *Facsimile*
lrogers@thecouncilfirm.com

Earnestine Hunt Dorse (Tennessee Bar No. 012126)
**EARNESTINE HUNT DORSE**
3268 N Waynoka Circle

Memphis, TN 38111-3616
+1 (901) 604-8866, *Telephone*
ehdorse@gmail.com

*Attorneys for Plaintiff, RowVaughn Wells, individually*
*and as Administratix Ad Litem of the Estate of Tyre*
*Deandre Nichols, deceased.*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that, on March 14, 2024, they electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Western District of Tennessee by using the CM/ECF system, which will send notification of such filing to all CM/ECF participants.

Date: March 14, 2024

Respectfully submitted,
ROMANUCCI & BLANDIN, LLC

/s/ Javier Rodriguez, Jr.
_____
One of Plaintiff's attorneys