1

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE WESTERN DISTRICT OF TENNESSEE

3    WESTERN DIVISION

4    _____

5    ROWVAUGHN WELLS,

6             Plaintiff,

7    vs.                                    NO. 2:23-cv-02224

8    CITY OF MEMPHIS, et al,

9             Defendant.

10   _____

11

12

13   MOTION HEARING

14

15

16   BEFORE THE HONORABLE ANNIE CHRISTOFF, JUDGE

17

18   MONDAY

19   8TH OF APRIL, 2024

20

21

22

23   LISA J. MAYO, RDR, CRR
     OFFICIAL REPORTER
     FOURTH FLOOR FEDERAL BUILDING
24   MEMPHIS, TENNESSEE 38103

25

**UNREDACTED TRANSCRIPT**

2

1               A P P E A R A N C E S

2

3          Appearing on behalf of the Plaintiff:

4               MR. ANTONIO ROMANUCCI
                Romanucci & Blandin, LLC
5               321 North Clark Street, Suite 900
                Chicago, Illinois 60654
6               Phone: (312)458-1000

7

8          Appearing on behalf of the Defendant:

9           (City of Memphis)
                MR. BRUCE McMULLEN
10              MS. JENNIE VEE SILK
                Baker Donelson Bearman Caldwell Berkowitz
11              165 Madison Avenue, Suite 2000
                Memphis, Tennessee 38103
12              Phone: (901) 577-2356

13          (Emmitt Martin, III)
                MS. FLORENCE JOHNSON
14              Johnson and Johnson, PLLC
                1407 Union Avenue, Suite 1002
15              Memphis, Tennessee 38104
                Phone: (901) 725-7520

16

17          (Preston Hemphill)
                MS. DEBORAH E. GODWIN
18              MS. MARY ELIZABETH McKINNEY
                Godwin Morris Laurenzi & Bloomfield, P.C.
19              50 North Front Street, Suite 800
                Memphis, Tennessee 38103
20              Phone: (901) 528-1702

21          (Robert Long)
                MR. DARRELL J. O'NEAL
22              Law Office of Darrell J. O'Neal
                2129 Winchester Road
23              Memphis, Tennessee 38116
                Phone: (901) 345-8009

24

25

**UNREDACTED TRANSCRIPT**

3

1              A P P E A R A N C E S

2

3         Appearing on behalf of the Defendant:

4           (JaMichael Sandridge)
               MS. LAURA ELIZABETH SMITTICK
5               Smittick Law Firm
                242 Poplar Avenue
6               Memphis, Tennessee 38103
                Phone: (901) 338-0404
7
            (Michelle Whitaker)
8               MR. JARRETT SPENCE
                Spence Partners
9               65 Union Avenue, Suite 900
                Memphis, Tennessee 38103
10              Phone: (901) 312-9160

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNREDACTED TRANSCRIPT**

4

1                          MONDAY

2                        April 8, 2024

3

4                   ----------------------

5

6          **THE COURT:**  All right.  Good afternoon, everyone.

7    We are here in case 23-2224, Wells versus City of Memphis.

8    And before we get started, I just want to remind everyone of

9    the prohibition on recording or taking photographs of any of

10   these proceedings.  I know you all are familiar with that

11   requirement.

12              So let's see who all we have for plaintiffs.

13         **MR. ROMANUCCI:**  Good afternoon, Your Honor.  This

14   is Tony Romanucci, and I will primarily be speaking on behalf

15   of plaintiffs.

16         **THE COURT:**  Excellent.  Good afternoon, Mr.

17   Romanucci.  How are you?

18         **MR. ROMANUCCI:**  Very well, thank you.  Just

19   finished washing the eclipse.

20         **THE COURT:**  Yes.  I hope everybody got to take a

21   peek at it at least with the appropriate eyewear, of course.

22         **MR. ROMANUCCI:**  Of course we did.

23         **THE COURT:**  Excellent.

24              And for the City, I see Mr. McMullen?

25         **MR. McMULLEN:**  Yes.  Yes, Your Honor.  I am here

**UNREDACTED TRANSCRIPT**

1  on behalf of the City, and I will be speaking and probably

2  supplemented by Mrs. Silk if I say something wrong.

3          **THE COURT:**  I'm sure she will jump in.  Good

4  afternoon Mr. McMullen and Ms. Silk.  Good to have you all.

5          All right.  Let's see, for Mr. Hemphill and

6  Mr. DeWayne Smith?

7          **MS. McKINNEY:**  Yes, Your Honor, Betsy McKinney

8  and Deborah Godwin.

9          **THE COURT:**  All right.  Good afternoon,

10 Ms. McKinney and Ms. Godwin.

11         And for Mr. Long?

12         **MR. O'NEAL:**  Good afternoon, Your Honor.  Darrell

13 O'Neal on behalf of Mr. Long.

14         **THE COURT:**  Good afternoon, Mr. O'Neal.  How are

15 you?

16         **MR. O'NEAL:**  Good to see you again.

17         **THE COURT:**  Good to see you.  And for

18 Mr. Sandridge.

19         **MS. SMITTICK:**  Good afternoon, Your Honor.  Laura

20 Smittick on behalf of Defendant Sandridge.

21         **THE COURT:**  Sandridge, is that Ms. Sandridge?

22 Did I say that wrong?

23         **MS. SMITTICK:**  I'm not sure, Your Honor, but I'm

24 here on behalf of Defendant Sandridge.

25         **THE COURT:**  All right.  Thank you.  Good

**UNREDACTED TRANSCRIPT**

afternoon, Ms. Smittick.

And no, it's Ms. Whitaker.  For Ms. Whitaker?

**MR. SPENCE:**  Good afternoon, Your Honor, Jarrett Spence on behalf of Ms. Michelle Whitaker.

**THE COURT:**  Good afternoon, Mr. Spence.  How are you?

**MR. SPENCE:**  Good.  How about yourself?

**THE COURT:**  Good.  Thank you.  All right.  Did I get everybody?

**MS. JOHNSON:**  Good afternoon, Your Honor.  This is Florence Johnson.  I am here for defendant Emmitt Martin. He is one of the defendants that is stayed but I'm here.  I just wanted to make sure that I kind of kept my eye on the proceedings.  I don't expect to speak today.  I think Martin Zummach and Steve Leffler and John Keith Perry won't be on the phone as well and they represent defendants that are stayed in this matter.

**THE COURT:**  Excellent.  Good afternoon, Ms. Johnson.  And of course you are more than welcome to be here so good to have you.

**MS. JOHNSON:**  Thank you, Your Honor.

**THE COURT:**  Thank you.  All right.  So we are here on Plaintiff's Motion 163 to conduct depositions in excess of the allotted time and number.  And so we have a number of issues here that I want to get into, and I think

**UNREDACTED TRANSCRIPT**

1    the best way to do this might be to take the issues one at a

2    time.  So I'd like to start with plaintiff's request to

3    conduct the depositions of the named defendants for 14 hours

4    in excess of the seven allotted under the rules, and as to

5    Chief Davis for 21 hours.

6              So the first thing that I want to ask,

7    Mr. Romanucci, is -- and you know, we just heard from

8    Ms. Johnson.  We have a number of defendants for whom the

9    case has been stayed.  Are you asking me to make a ruling on

10   the deposition of those defendants as well?

11             **MR. ROMANUCCI:**  No, Your Honor.  There currently

12   is a stay in place for the charged defendants, for the five

13   charged defendants, and that would be, you know, Bean,

14   Martin, Smith, Mills and Haley.  I think I got them all.  And

15   so we are not seeking leave to take those depositions at this

16   time.  There will be a moment in time when we anticipate that

17   those depositions will be ripe and we would expect that any

18   ruling that Your Honor would make would reflect that those

19   depositions remain stayed but when the stay is lifted that

20   that ruling be applied to them.

21             **THE COURT:**  Well, all right.  I might have to

22   think about that.  I'm not sure that it would really be

23   appropriate for me to enter a ruling at all at this point.

24   You know, to the extent that -- because of the stay in

25   effect.  So I think probably what I will do is deny that

**UNREDACTED TRANSCRIPT**

1  request without prejudice to reraise it when the stay is

2  lifted.

3          **MR. ROMANUCCI:**  I see.  Understood, and that's

4  fine, Your Honor.  I understand the rationale.

5          **THE COURT:**  All right.  Thank you.

6          All right.  And then the next thing that I want

7  to do is just make sure I am aware of all of the defendants'

8  positions on -- and again, we're just talking about the

9  length of the named of depositions -- the named defendants'

10 depositions.  So, let's see.  Mr. McMullen, I know that the

11 City, you know, you filed a response so I know that the City

12 is opposed to depositions -- the deposition of, let's see,

13 Chief Davis being 21 hours and Lieutenant Smith being

14 14 hours.  That's correct?

15         **MR. McMULLEN:**  That's correct, Your Honor.  It's

16 our position, first of all, that it's premature to ask for an

17 enlargement of time.  That's something that could be handled

18 when it's ripe if we get to a point where a deposition is not

19 complete.  And I'd also like to point out, you know,

20 that's -- you know, the rules say seven hours of deposition

21 time.  That's usually a ten-hour day, and when you're talking

22 about the number of hours that Mr. Romanucci is proposing

23 without knowing what the witnesses are going to say we think

24 is premature and the issue is not ripe for adjudication.

25         **THE COURT:**  All right.  Thank you, Mr. McMullen.

**UNREDACTED TRANSCRIPT**

1              And Ms. McKinney, you all have stipulated to a

2     length of the deposition, so I believe the request is moot as

3     to your clients.

4              **MS. McKINNEY:**  Correct.

5              **THE COURT:**  All right.  Thank you.

6              And Mr. Spence, what about for Mr. Whitaker, what

7     is your position?

8              **MR. SPENCE:**  For Ms. Whitaker, Your Honor, we

9     don't oppose the request as going --

10             **THE COURT:**  No opposition?

11             **MR. SPENCE:**  No opposition.

12             **THE COURT:**  All right.  And Mr. O'Neal, how about

13    for Mr. Long?

14             **MR. O'NEAL:**  Yeah, Your Honor.  I just -- my only

15    concern is I'm kind of like Mr. McMullen on this particular

16    matter.  I mean, I don't want to in a vacuum just say that

17    you're going to be able to do this ungodly number of hours of

18    deposition, and when you say 14 hours -- and, again, I didn't

19    file a response because I was really in my mind kind of

20    piggybacking off the fact that if you made the ruling in

21    regards to the City, some of those individuals that would

22    apply to, you know, overall, but you know, my real big

23    concern here is, like I said, you're talking about 14 hours.

24    We have no clue of where we're going on this.

25             So if we get to the seven-hour window and just

**UNREDACTED TRANSCRIPT**

1  say hypothetically that's a full day and that comes after ten

2  hours really because, you know, you start taking breaks and

3  all these different things.  So you're there for the entire

4  day.  Then hypothetically we could be done by then, but if we

5  get 14 hours or we give 14 hours, then the Court comes back

6  and then when we finish the 14 hours it's determined that, oh

7  my God, I need another ten hours, then we're out here pretty

8  bad and I don't think it's appropriate at this particular

9  time to give a vacuum number of hours until we get some

10 clarity here.

11            **THE COURT:**  All right.  Thank you, Mr. O'Neal.

12            And Ms. Smittick, how about for Mr. Sandridge?

13       **MS. SMITTICK:**  So, Your Honor, I don't want to

14 parrot what's been said here, but it's the same concern here.

15 It's the idea that, okay, we've got seven hours, do I want to

16 just carte blanche say 14 hours when I don't even know if

17 it's necessary, Your Honor.  And again, I don't want to

18 parrot what everybody's already said but that's really the

19 concern here.  I don't want to go in blindly.  Thank you.

20            **THE COURT:**  All right.

21            Mr. Romanucci, so we will go to you then.  I have

22 of course read your filings, but talk to me about why you

23 think 14 hours is necessary, and I think we're probably going

24 to have to get specific on the particular defendants that

25 we're talking about.

**UNREDACTED TRANSCRIPT**

1        **MR. ROMANUCCI:**  And, Your Honor, are you only

2   referring to the defendants now or -- is that correct?

3        **THE COURT:**  Yes.  The 14 hours for the named

4   defendants, except it's 21 hours for Chief Davis.

5        So why don't we save Chief Davis and just talk

6   about the other named defendants.

7        **MR. ROMANUCCI:**  All right.  So we -- I will

8   address your question as to the named defendants.

9        So when you look at the totality of this case,

10  what we're looking at is an event that did not transpire --

11  you know, typically police use of force cases if it's

12  excessive force, it involves a shooting, it's a situation

13  where the shooting occurs in a matter of seconds, and that's

14  what we have.  That's not what we have in this particular

15  case, Your Honor.

16       We have an event that took place over the course

17  of if not over an hour, nearly an hour at two specific

18  locations.  The two locations that I'll refer them to are the

19  stop location and then the detention location.  At the stop

20  location, we have a minimum of three defendants who are

21  located at the stop detention (sic).  They interacted with

22  Mr. Nichols in the form of profanities, of other

23  terminologies, of hands-on.  He was pepper-sprayed and he was

24  also tasered.

25       At that point, Mr. Nichols was able to move to

**UNREDACTED TRANSCRIPT**

1  the detention location.  At the detention stop where two out

2  of the three defendants who were at the traffic stop then met

3  up with the three other named officer defendants minus

4  Hemphill and Smith.  So that location it was Haley, Bean,

5  Martin, Mills and Smith.  That is Justin Smith, by the way,

6  because there are two Smiths in this case, Your Honor.

7         They met up with them.  So the five named

8  officers at the traffic stop all -- we allege all took part

9  in use of force that was excessive which ultimately led to

10  Mr. Nichols' death.

11         So why is that important?  Because this took a

12  long period of time.  There were a lot of -- for example, a

13  lot of conversations that were had between the officers

14  themselves and between upper echelon of the Memphis Police

15  Department.  There were multiple instances of use of force.

16         So if I may, Your Honor -- and I will not give up

17  any protected information here at all, but there were a

18  number of officers who were cited with administrative

19  regulations.  It has been widely publicized that many of the

20  officers were terminated.  That is in the public domain.  But

21  there were a minimum of 14 administrative regulations that

22  have been attributed to some of the officers who have been

23  terminated.

24         So one could imagine that with the scope of the

25  occurrence at two locations and the number of administrative

**UNREDACTED TRANSCRIPT**

13

1  regulations that have been attributed to most if not all of

2  the defendant officers which include lieutenant -- that would

3  be D. Smith and also Preston Hemphill, that there is a lot of

4  questioning here.

5          Indeed, I created my own outline, Your Honor, of

6  what I could anticipate because obviously I was going to

7  anticipate your question, why do you need this much time.

8          Well, I created my own outline which obviously

9  I'm not sharing today.  It will be shared at deposition, but

10  my outline contains 17 different topics which I need to

11  review with the defendant officers.  And with looking at the

12  number of topics, Your Honor, it's not premature.  It is not

13  premature at all, and indeed, it is ripe right now to make

14  this decision so that we don't have to come back because one

15  could imagine what happens at deposition.  Hypothetically if

16  plaintiff is not completed with the questioning on the topics

17  at least that I've outlined for myself over seven hours, and

18  there's a request for additional time made of defendant or

19  defendants in good faith and that request is denied, it's

20  going to take us about, you know, anywhere between and four

21  weeks to get a motion filed and then get back in front of

22  Your Honor and have the matter adjudicated.

23          So what happens?  Well, you lose the entire --

24  what's the right word?  I mean, you lose -- you lose your

25  momentum in the deposition for sure because if we do agree on

**UNREDACTED TRANSCRIPT**

14

1    a length of time of greater than seven hours -- ideally as

2    we've agreed with some of the defendants already on that

3    being Hemphill and D. Smith, we've agreed to depose over a

4    couple of days, over two consecutive days or at most with one

5    day in between.  And I think that's important because there's

6    a lot of preparation that's required for these depositions.

7    The reports that have been generated of the defendants are

8    numerous.  I'm not even prepared to tell Your Honor how many

9    different either statements, proffers or other -- I shouldn't

10   say testimony -- or other statements that the defendant

11   officers have given in this magnanimous report.

12         You can imagine the investigation into all of the

13   administrative regulations, into all of these officers who

14   have been terminated, and certainly every defendant officers

15   has either been terminated or resigned in this case.  So

16   there is an immense amount of discovery that's been given to

17   us that's attributed to each one of these defendants.

18         I counted -- now this does include all officers,

19   not just the defendant officers, but it includes all officers

20   who were cited with administrative regulations.  There's a

21   total of 48 add -- a total of 48 administrative regulations

22   attributed to all the officers that the Memphis Police

23   Department and the ISB which is Internal Service Bureau -- I

24   believe is the correct moniker for that -- that they have

25   found that these officers violated.

**UNREDACTED TRANSCRIPT**

15

1          So, again, to even make the suggestion, Your

2   Honor, that is premature, it's not, and here's another very

3   compelling reason why it's not premature:  We've not been

4   able to get any cooperation from the city with regard to

5   scheduling any of their depositions.

6          Mr. McMullen, what he said today, I would agree

7   with him.  That's exactly been his statement from day one

8   when I asked back in February what is your position on the

9   enlargement of either the time of depositions or scope?  He

10  says it's premature.  He said take your depositions, see how

11  much time you need and then if you need more time go back and

12  ask.

13         So I agree; he's been consistent with that.  And

14  here we are almost, you know, not quite 60 days it's taken us

15  to get through the process of a Rule 37 conference, getting

16  our motion on file and getting scheduled before Your Honor.

17         Now we do have -- and it's before Judge Norris.

18  We do have a motion for extension of time on discovery.

19  Discovery is supposed -- written discovery currently as it

20  stands right now is supposed to be done, completed by

21  June 30th of this year.  I think all of us on this call, we

22  have reached agreement that an extension on discovery is

23  required, and we're prepared to extend discovery until at

24  least right now September 1st.

25         I can't get any depositions from defendant, Your

**UNREDACTED TRANSCRIPT**

1  Honor.  I have a total of five days that the City of Memphis

2  has given me as their availability for deposition time

3  between now and June 30th, and in my opinion, that's not

4  acceptable in terms of the number of depositions in which we

5  need to take, which Your Honor hasn't asked me about yet so I

6  won't address that.  So that issue may be premature at the

7  moment.

8          So getting back to Your Honor's request as to why

9  14 hours is requested, is because it's certainly -- it's

10  certainly proportional to the amount of discovery that we've

11  been given and certainly proportional to the amount of issues

12  that need to be discussed with each officer.  We're not

13  talking about, you know, one officer who committed one type

14  of excessive force.  I have a minimum of six officers because

15  we'll exclude Lieutenant DeWayne Smith.  We are not alleging

16  that he used excessive force.  He had a different role in

17  this case.  He was not only the lieutenant for SCORPION Team

18  1 but he also went to the Wells' home while he was at the

19  detention stop and interacted with RowVaughn Wells, and we

20  have a separate claim against him for that.

21          But there are six officers here who -- and also I

22  don't want to neglect the firefighters because now I'm

23  getting to them too.  At the traffic stop, there were no

24  firefighters.  However at the detention stop, there were a

25  number of firefighters who came to the scene, three that we

1    named as defendants.  And they were on scene for -- some of

2    them were on scene for 20-25 minutes, and you could see from

3    video -- again that's been widely reported, not -- I am not

4    giving up any protected information.  They were having

5    conversations.  They were interacting with the police

6    officers.

7              So getting back to my point when you see this

8    come together, there is a scene at the detention spot where

9    there are a dozen or more officials, either Memphis PD or

10   Memphis Fire, who are either engaged in multiple different

11   types of use of excessive force which include batons, open

12   hand, closed hand, pepper spray, kicking.  I don't know if I

13   left one out.

14             And then after Mr. Nichols finally was able to

15   get in detention, when he was finally handcuffed, then there

16   are issues as to whether or not MPD attended to him in what

17   we allege to be a reasonable period of time where they could

18   have done something to preserve his life because eventually

19   Mr. Nichols did die three days later.

20             It took what we allege too much time in order for

21   them to attend to him, care for him, render medical care and

22   aid, eventually transfer him to a hospital where he was

23   placed -- where he was admitted in critical condition, placed

24   on eventually life support and then expired on January 10th.

25   So again, this is a clear totality case where if taken in

**UNREDACTED TRANSCRIPT**

18

1    totality the proportion of the time requested is reasonable.

2              And, Your Honor, I'd like to think -- and I'm

3    just going to harken back to last week because this was -- it

4    rung very very true to me.  Our office was involved in a case

5    last week that was being argued before the Seventh Circuit.

6    I was not one of the arguing attorneys, but our cases

7    involved -- and the attorney that was arguing for the other

8    side was chastised for minimizing a certain fact.  So I

9    listened to that and I heard the chastising from one of the

10   justices, and I want to ensure you, Your Honor, that I am not

11   doing the opposite here.  I am not trying to exaggerate the

12   time that I'm asking for and looking for Your Honor to -- I'm

13   not trying to horse trade on this.  I'm being sincere in my

14   request that the 14 hours is reasonable, it's made in good

15   faith, and it's proportionate to the amount of discovery that

16   we have been handed by the City of Memphis which we are

17   dutifully going through.

18              I mean, I have a team -- just so Your Honor is

19   aware that we are not skimping.  I have a team of a staff of

20   nine which includes five attorneys who are combing through

21   the discovery as we get prepared for these depositions.

22   We're not looking to abuse time, especially given the fact

23   that -- and I'm just going to touch upon it until you ask me

24   more specifically -- on the number of depositions.

25              You know, I have to -- I have to, in my head, I

**UNREDACTED TRANSCRIPT**

1  have to bake in the fact, well, if Your Honor does give me

2  additional time for certain defendants, I also have to bake

3  into the fact that those are extra days.  And if Your Honor

4  does grant my extension on enlargement for the number of

5  depositions, I have to consider that also, that can I get

6  this done in time?  And I certainly can because I've made the

7  calculus, but it requires everyone's cooperation to make this

8  case priority because it requires it.

9            It's the type of case where we can't skimp on

10  discovery.  If I, heaven forbid, do not get leave to ask all

11  the questions that are necessary and we don't get full

12  discovery, well, obviously it's prejudicial to the case.

13  It's prejudicial to Ms. Wells who is the representative of

14  the estate, but it's also a prejudice to the public because

15  at trial the public also requires full accountability.

16            So I think I have exhausted myself in terms of

17  giving you my most reasonable and most important bases for

18  why 14 hours is required.  And again, just in conclusion on

19  this issue, Your Honor, it's in good faith.  I firmly and

20  strongly believe it's reasonable and it's proportional to the

21  amount of discovery, and I'm free -- happy to comment on the

22  amount of discovery that we've asked for and what we've

23  received.

24            And indeed, just so Your Honor is aware, you

25  know, we did get another dump from the City of Memphis within

1  maybe the past 7 or 10 days.  I can't be more specific.  I

2  know that we received another data dump and that's being

3  reviewed.  I don't know if the City is done yet or not.

4  That's something that we have to discuss on the side, but

5  discovery, written, although we're getting pretty close to

6  the end, it's still ongoing.

7          **THE COURT:**  All right.  Thank you, Mr. Romanucci.

8          Oh, and before I turn away from you:  Talk to me

9  about 21 hours for Chief Davis.  What is the justification

10 there?

11         **MR. ROMANUCCI:**  Yeah.  Well, Chief Davis is --

12 yeah.  There's definitely compelling reasons for 21 hours on

13 Chief Davis.  And that kind of goes into her role in the

14 Memphis Police Department.  So, first of all, currently she

15 we think that she will be named as a 30(b)(6) witness.  So if

16 that happens, I have a different request for 30(b)(6).

17 However, Chief Davis not only is -- she has been identified.

18 She is the policy maker.  So we know that she has that role,

19 but also, she created the SCORPION unit.

20         So in her creation of the SCORPION unit, there

21 are so many different areas that need to be explored with her

22 as to what her expectation of supervision of the SCORPION

23 unit was, how it was to be conducted.  Chief Davis has made

24 public statements, nothing that I'm going to share right now

25 because I don't want to do anything inappropriate, but Chief

**UNREDACTED TRANSCRIPT**

1   Davis has made public statements about her understanding of

2   what SCORPION unit members' orders were supposed to be when

3   they were out on the street.

4           So SCORPION team, Your Honor, is a subset of OCU

5   which is the Organized Crime Unit of the Memphis Police

6   Department.  So in her capacity as creator of SCORPION unit,

7   that's why I am asking for enlargement of her deposition from

8   14 hours to 21 because her information is vast.  She has a

9   lot of information that is going to be absolutely germane to

10  the two issues that we have here, not only Section 1983,

11  because then ultimately our burden on the other claim is

12  Monell.  We have to show, you know, custom, practice and

13  policy, and that's why we're asking for 21 hours on Chief

14  Davis, Your Honor.

15          **THE COURT:**  Okay.  Thank you, Mr. Romanucci.

16          Mr. McMullen, would you like to respond?

17          **MR. McMULLEN:**  Yes.

18          I'd like to start out by saying I see why now

19  Mr. Romanucci thinks it takes 14 hours to do a deposition,

20  but keeping that in mind, I didn't see -- hear anything

21  compelling in his argument to justify this.  I mean, we're

22  putting these -- he's putting out these numbers without

23  really having gone through the discovery and understanding

24  the discovery and knowing what he needs.

25          I just want to throw out some numbers for you.  I

**UNREDACTED TRANSCRIPT**

1   think he's noticed over a hundred -- identified over a

2   hundred different witnesses he wanted to take depositions.

3   If you did all of them 14 hours, that will be like

4   1400 hours.  That would be close to 36 weeks' worth of

5   depositions.  If you look at the number of people here, if

6   they adjusted their calendars for that, they couldn't

7   practice -- they couldn't do anything else.  It's kind of

8   ludicrous to go ahead before you know what's going to come

9   out in the deposition to set parameters of 14 hours.

10              I would like to point out something that probably

11  didn't come out, and I know Mr. Romanucci got into the facts

12  with Chief Davis and I'll address that, but I'd like to point

13  out something.  Lieutenant Smith is also sued in his official

14  capacity and individually.  In his official capacity, we

15  represent him, and even though his attorneys in his

16  individual capacity agreed to 14 hours on that aspect of it,

17  we again are not agreeing.

18              **MS. GODWIN:**  We did not.

19              **MR. McMULLEN:**  Oh, you did not agree?  I'm sorry.

20              **THE COURT:**  I'll give you a chance, Ms. Godwin.

21  I'll give you a chance to respond.

22              **MR. McMULLEN:**  Okay.  If I misspoke, I'm sorry.

23              Well, then, I think Ms. Godwin would join in with

24  me of 14 hours would be too much for that witness.

25              And, Your Honor, if you look at the number of

**UNREDACTED TRANSCRIPT**

23

```
 1    people who are on this phone call, the scheduling of all of
 2    that without being fluid would be a scheduling nightmare.
 3    I've handled several 1983 cases.  I mean, this -- a tragedy
 4    resulted as of this case, and I think everybody's heart goes
 5    out for what happened in this case, but as Mr. Romanucci
 6    pointed out, a number of the witnesses were cited for
 7    violating regulations.  I think one of the witnesses
 8    testified that he violated policy.  This is not the -- the
 9    facts of the case are not very complex and most of the case
10    was caught on videotape.  So I don't think the facts are very
11    complex, and if we get into something that goes over time, as
12    I've told Mr. Romanucci, I would agree to extend more time,
13    but you're looking at 14 hours -- you're looking at reserving
14    two days for every deposition -- every deposition he's
15    requested this on, and I think that would be unduly burden
16    some.
17              I think the information he will get will be
18    duplicative.  A lot of things happened with multiple officers
19    around at the same time.  Their testimony would no doubt be
20    duplicative.  It would be cumulative.  And it would really be
21    a waste of -- waste of everybody's time.  I don't think
22    anything really fruitful will come from that, but, you know,
23    we're not taking a hard line as I told him.  If we get to the
24    end of the day and he's getting information and need to go,
25    go on, I don't even see a need to come to the Court.  I mean,
```

**UNREDACTED TRANSCRIPT**

24

1    I'm a practical person.  We can find additional date.

2            Now if we get to the point where I feel that

3    information is, you know, repetitive and duplicative and the

4    questions are repetitive and then that might be something we

5    have to address the Court with the transcript and get it

6    done, but I think the way Mr. Romanucci is just -- is just --

7    is not ripe for decision at this point, is not really an

8    issue and I think the federal rules have it right.

9            Now I want to talk about -- a little bit about

10   Chief Davis.  Now under Mr. Romanucci's request, if Chief

11   Davis is the 30(b)(6) witness, he wants 35 hours from her,

12   plus he wants 21 hours from her in her official capacity; and

13   that's 56 hours from Chief Davis.  To me -- and I don't want

14   to guess anybody's motive, but if he can't get it from her --

15   if it takes him 56 hours to get whatever information he needs

16   from her, I think it's -- it would seem -- it would seem like

17   this would be borderline harassment.

18            I mean, I think Mr. Romanucci mentioned that he

19   said Chief Davis created the SCORPION unit.  The criminal --

20   the CAT unit has been around for years before Chief Davis

21   came.  It was just rebranded.  I'm sure Mr. Romanucci knows

22   that because we produced documents to show that.

23            So I don't think setting up these parameters

24   would be beneficial to the case.  I think it will hold the

25   case up.  I think scheduling would be a nightmare when in

**UNREDACTED TRANSCRIPT**

1   large part it's premature and we don't know that we need

2   this.

3          I want to cite something else.  Mr. Romanucci in

4   his motion say for the 30(b)(6) if anybody but Chief Davis

5   does the 30(b)(6) he wants 14 hours on each subject, and he's

6   outlined nine different subjects that he wants 14 hours on.

7   And that in and of itself is 126 hours.  That's three and a

8   half weeks of deposition.

9          I think this is unnecessary to make this decision

10  at this time.  I think -- I've never seen a case have this

11  length of time for depositions, federal, state -- federal or

12  state; and I think it's just premature at this time, and

13  actually the request to me seems borderline harassment.

14          **THE COURT:**  All right.  Thank you, Mr. McMullen.

15          **MR. ROMANUCCI:**  Your Honor?

16          **THE COURT:**  I'm going to let you respond.  Let me

17  go through all the defendants.

18          **MR. ROMANUCCI:**  Thank you, Your Honor.

19          **THE COURT:**  Thank you.

20          So Ms. Godwin, I think, was jumping in to clarify

21  that they had stipulated to nine and a half hours for DeWayne

22  Smith's deposition.  Ms. McKinney or Ms. Godwin, anything

23  else to add?  I don't think you have a dog in this fight if

24  I'm right.

25          **MS. GODWIN:**  Okay.  As long as we're sure that

**UNREDACTED TRANSCRIPT**

26

1   it's also covering him in his agency capacity, which we were

2   under the impression it was.  I just wanted to be sure now

3   that the nine and a half hours covers him in his individual

4   and agency capacity.

5           **THE COURT:**  Well, okay.  Let me clarify two

6   things then.  Mr. McMullen, I understood that you represented

7   Mr. Smith to the extent that he is the agent of the city, is

8   that right?

9           **MR. McMULLEN:**  That's correct, Your Honor.

10          **THE COURT:**  Okay.  And then, Mr. Romanucci, let

11  me ask you:  The stipulation that you had reached with

12  Ms. McKinney and Ms. Godwin about nine and a half hours for

13  Lieutenant Smith, does that cover his depositions in his

14  individual and agency capacity or just his individual

15  capacity?

16          **MR. ROMANUCCI:**  Thank you, Your Honor.  This is

17  very important because Mr. McMullen or I should say the city

18  does not have an appearance on file for D Smith in any

19  capacity whatsoever.  The only two lawyers that I know who

20  represent DeWayne Smith are Ms. McKinney and Ms. Godwin.

21  That I understand.

22          D. Smith is a defendant and they represent D.

23  Smith for the allegations that we claim within the complaint.

24          Within the last week we heard that Bruce McMullen

25  or Bruce told me specifically that he represents D. Smith in

**UNREDACTED TRANSCRIPT**

official capacity. We never knew that. I mean, that was

unknown to the plaintiff until now. So if we're going to be

splitting up the depositions, I think that it would be

reasonable to include D. Smith and 14 hours for both official

and as a defendant.

Now I'm not looking to go back on my word to

counsel for Smith, but we were never told that Bruce or that

the City is going to be representing D. Smith. There's no

appearance on file.

**THE COURT:** All right. Mr. McMullen, let me ask

you: It would seem to me that the indication that I got from

your filings was that Lieutenant Smith might be serving as

representative for the City as a party. I'm not sure that

you would need to notice an appearance for him personally if

that's the capacity that he's participating in your

representation of the City. Although, given -- if I'm

correct about that, it would seem that any deposition of

Lieutenant Smith in that agency capacity would be through

30(b)(6). And so we wouldn't really be contemplating a

personal deposition of Lieutenant Smith as agent of the City.

That would be -- the deposition of the City is the 30(b)(6)

deposition. Is that right, Mr. McMullen?

**MR. McMULLEN:** Your Honor, you pose an

interesting -- an interesting scenario, but before I answer

your question, I would like to point your attention to

**UNREDACTED TRANSCRIPT**

document number 81, in which I filed a motion to dismiss the
City of Memphis Chief Cerelyn Davis in his official capacity
and DeWayne Smith as an agent of the City.

So Mr. Romanucci just did not read all of the
motions that were filed and were served on him, and therefore
he is not aware that I represent DeWayne Smith as an agent of
the City.

Now, I know I had conversations with his
co-counsel Bryce Hensley about that, and I think Document 81
kind of exposes Mr. Romanucci's lack of understanding of
what's been filed in this case, but Your Honor, as an agent
for the City, 30(b)(6), you got me stumped on that. I think
you're correct, Your Honor.

**THE COURT:** Mr. Romanucci -- I'm sorry.
Ms. McKinney? Ms. Godwin?

**MS. GODWIN:** I'm sorry. Lieutenant Smith is no
longer with the City of Memphis. He retired in the face of
charges. We did have some conversation with Ms. Raisch,
particularly Ms. McKinney, and we did discuss the fact that
the City technically represented Smith in his official or
agency capacity, but, you know, a suit against an officer in
their agency capacity is a suit against the City.

So, I mean, our discussions were such at least
our understanding was, that the only time -- that Lieutenant
Smith was to be deposed once and that it was going to be nine

**UNREDACTED TRANSCRIPT**

29

1   and a half hours mand that if there was a need to go over,

2   you know, we would discuss it then and that was our

3   agreement.  Am I right?

4           **MR. ROMANUCCI:**  And that I do agree with.

5           **MS. MCKINNEY:**  Yes.

6           **MS. GODWIN:**  We can't hear you.

7           **MS. MCKINNEY:**  I don't know why.

8           **THE COURT:**  I can hear you.

9           **MS. GODWIN:**  Now we can.

10          **THE COURT:**  Ms. McKinney, you're cutting in and

11  out.  I'm sorry.

12          Let me go to Mr. Romanucci just to clarify.  I

13  mean, these are your clients' claims.  So I'm looking at the

14  style and you have sued -- your clients have sued Lieutenant

15  Smith in his individual capacity and as agent of the City of

16  Memphis.  So maybe I just need you to educate me a little

17  bit.  You know, I'm used to seeing personal capacity versus

18  official capacity.  Is this something different from that?

19          **MR. ROMANUCCI:**  No, Your Honor.  I guess it's

20  just styled -- just word wise it's different.

21          **THE COURT:**  Okay, okay.

22          And then in that case, do you agree with Ms.

23  Godwin that to the extent that Lieutenant Smith was sued in

24  his official capacity or as agent of the City that is a suit

25  against the City?

**UNREDACTED TRANSCRIPT**

1          **MR. ROMANUCCI:**  Agreed.

2          **THE COURT:**  Okay, okay.  All right.

3          So I think then we are all in agreement that to

4    the extent Mr. Smith would be deposed outside of a 30(b)(6)

5    notice that that is covered by the nine and a half hour

6    stipulation?

7          **MR. ROMANUCCI:**  The nine and a half hours, and

8    they have also graciously agreed if I show good faith they

9    would agree to more time but that's between us, yes.

10         **THE COURT:**  Yes.  Okay, good.

11         All right.  It sounds like we are on the same

12    page about that then.

13         **MS. GODWIN:**  Thank you.

14         **THE COURT:**  So let's see.  So, Ms. Godwin, thank

15    you for bringing that up so we could clarify that.

16         **MS. GODWIN:**  Thank you.

17         **THE COURT:**  Thank you.  Let's go to -- let's see,

18    Mr. Spence does not oppose the motion.

19         Mr. O'Neal, anything else to add?

20         **MR. O'NEAL:**  Yeah, Your Honor.  You know, there's

21    a reason why people either love or hate federal court, and

22    that reason that people love it and the reason people hate it

23    is the efficiency of the federal court.  A federal court is

24    really efficient with the rules, it's really efficient with

25    the time, it's really efficient with the regulations.  And in

**UNREDACTED TRANSCRIPT**

1    fact the Rule 30(b)(6) or Rule 30, rather, was -- has been on

2    the books prior to this, but it was amended in 1984.

3              So for over 40 years Rule 30 has been in

4    existence, and over that 40-year period of time, with all the

5    practitioners that come through federal court and all the

6    cases that come through federal court, the Court has landed

7    on seven hours and one day for deposition because the Court

8    wants/requires/desires efficiency.  And it says to everybody,

9    we've given you seven hours and one day to get this done.

10   You need to get it down to efficiency.

11             Now, like Ms. Godwin and Ms. McKinney, I told I

12   think it was Mr. Rodriguez that if they started deposing my

13   client and we were, you know, it was seven hours done and we

14   were close, I wouldn't fight them on more time, but I am

15   never a fan of giving blanket time with unknown parameters,

16   unknown guidelines.  And I want to be efficient just like

17   federal court.  My time is really minimal.  So I don't want

18   to waste my time dedicating 14 hours and we only need six.

19             So why not get -- why not start this thing, get

20   us to a point.  If in fact you need another hour, Darrell

21   O'Neal ain't going to fight you on another hour.  If you need

22   another two hours, I'm probably not going to fight you over

23   it, but if you need another day and you've started off asking

24   about somebody's mother and grandmother that was in -- you

25   know, 50 years ago, yeah, I'm going to fight you then because

**UNREDACTED TRANSCRIPT**

1    now you've wasted my client's time with minutia.

2              So as long as we're doing this thing efficient,

3    I'm going to be all about efficiency.  That's the reason I

4    didn't file a response because it's not efficient to file a

5    response in this scenario because I will work it out but I

6    can't do it blanketly.  That's my only issue, Your Honor.

7              **THE COURT:**  Thank you, Mr. O'Neal.

8              Ms. Smittick, anything you would like to add?

9              **MS. SMITTICK:**  Your Honor, I'm going to piggyback

10   on Mr. O'Neal and be efficient here.  I don't think anything

11   I'm going to add is change the dialogue, Your Honor.

12             **THE COURT:**  Thank you.  I appreciate that.

13             **MR. McMULLEN:**  Your Honor, I would like to say

14   something that I think would cut through a lot of it.

15   Mr. Romanucci sued Chief Davis in her official capacity, and

16   it is my understanding as to what he told you, that's the

17   same thing he sued Lieutenant Smith, and it's my

18   understanding -- I think you're right -- that's a 30(b)(6)

19   deposition.

20             There's no need for 21 other hours of Chief

21   Davis.  That would fall under the 30(b)(6) because she was

22   only sued in her official capacity.  So we can -- we can

23   strike that request right there.

24             **THE COURT:**  Mr. Romanucci?

25             **MR. ROMANUCCI:**  Your Honor, there may be an

                    **UNREDACTED TRANSCRIPT**

amendment to the Complaint.  So in light of the fact that

Chief Davis may very well become an individual defendant with

an amendment to the Complaint being filed, if Your Honor

feels it would be efficient right now to not grant 21 hours,

I understand the Court's position, but I still haven't

addressed or maybe I need to complete addressing the 35-hour

issue.  And obviously I have a response to some of the other

issues that were -- that were raised.

**THE COURT:**  Well, we are going to get into the

30(b)(6) issue separately.  So I'm not -- I'm not cutting you

off there.  I will give you full opportunity.

But anything else?  So I hear you saying that the

request for the 21 hours for Chief Davis outside of 30(b)(6)

is withdrawn.  It does seem to me as you suggested that maybe

the most efficient way to do it at this point -- if there's

going to be an amendment to the complaint because then it

would moot any other argument that we would need to have on

whether or not there's a separate deposition that should be

taking place.

So anything that you'd like to rebut or bring up

on the 14 hours for the other named defendants?

**MR. ROMANUCCI:**  Yes, Your Honor.  I think

something very very important needs to be -- very important

rebuttal point and I'm not here --

**THE COURT:**  Ms. Silk, I see that you're muted but

**UNREDACTED TRANSCRIPT**

34

1    I can hear you.  I'm not sure why, but just -- okay.

2         **MR. ROMANUCCI:**  I am not here to attack anybody

3    and I've heard many of those toward me so I will reflect

4    those and pretend that I don't hear any of them, but what was

5    said was that I am requesting under 26(a)s that were filed --

6    yes, there are over a hundred witnesses that are listed on

7    our 26(a)(1)s.  Those are not witnesses that I am asking.

8    All those witnesses are asking to be deposed for 14 hours.

9    That is not correct.

10        I am not looking to depose a hundred and some odd

11   witnesses for 14 hours.  I am looking to depose a very select

12   number of witnesses which I feel have the most germane

13   information to this case.  And I will tell you, I have

14   reviewed all the discovery.  As what has been suggested is

15   that I have not, and I have, and that's why that request is

16   being made, Your Honor, because I do know the facts, the

17   issues in this case.

18        The defendants certainly require the amount of

19   time that we are requested carved out, carving out the

20   agreement made with Ms. Godwin and Ms. McKinney.  So that is

21   what I am saying with regard to the defendants.

22        I have never been granted by the City, by voice

23   or by writing, any additional time that if we are deposing

24   someone that they will grant additional time.  I don't know

25   who it is that they would give me additional time on because

**UNREDACTED TRANSCRIPT**

1    right now the attorneys who represent the defendants, minus

2    the ones being charged, are the ones on the phone.  So for

3    Mr. McMullen or the City, for anyone, to say that they were

4    going to give me more time on the defendants, well, they

5    would have to have an agreement with one of the attorneys to

6    do so.

7              I don't know what's standing right now especially

8    if Davis and D. Smith are not part of the equation.  For him

9    to say that he was going to give me more time is disingenuous

10   because he never said that.  It's not in his papers and it

11   was never voiced to me or e-mailed to me.

12             Lastly, Your Honor, I think it was Mr. O'Neal who

13   said he doesn't want to grant anybody any additional

14   deposition time unless he knows the guidelines and doesn't

15   want to give anybody blanket approval.  Well, I guess the

16   manner in which I asked the deposition or I take the

17   deposition, those are the guidelines that is to be

18   determined, how the deposition is taken; but as far as

19   blanket, I'm asking for a set amount of time, period.

20             So again, the number of depositions we're still

21   going to talk about, but the ones that are germane to this

22   equation right now are really five people.  That's it.  It's

23   five deponents.  And then you've already indicated with

24   regard to the other charged officers.  Understood.

25             **THE COURT:**  All right.  Thank you, Mr. Romanucci.

**UNREDACTED TRANSCRIPT**

36

1      So here is what we are going to do:  I tend to

2  agree with Mr. O'Neal.  You know, the seven hours is a long

3  time, and in most cases, every case I've ever litigated, it's

4  been enough.  We've heard today from each of the lawyers that

5  if you're getting towards the end of the day and it looks

6  like you, you know, may need another hour or you've got

7  another page in your outline to go through, you know, you're

8  getting close and, you know, the day has otherwise gone

9  efficiently that they act in good faith and have their

10  clients stay longer for that deposition; and I take them at

11  their word at that.  In this district that's commonly done

12  and agreed to by counsel.

13      Mr. Romanucci, I also completely take you at your

14  word that you're asking for this extra time in good faith.  I

15  don't think that it sounds like the purpose is to harass, but

16  I just haven't heard anything specific about why it would

17  take so long.  You know, this is not a case involving, you

18  know, relationships between parties over years that involve

19  hundreds of thousands of e-mails and, you know, the kind of

20  thing that makes a deposition so lengthy.

21      As Mr. Romanucci said himself, the events at

22  issue took place in over an hour, and as to some of these

23  defendants, I think you said they were there for 20-25

24  minutes.  So there's only so much that you can talk about for

25  seven hours to cover that time period, understanding of

**UNREDACTED TRANSCRIPT**

1    course you will also be covering their employment history,

2    their knowledge of policy, you know.  I know that it will

3    take at least seven hours.  I just don't see it taking 14.

4              And so I'm going to deny that motion and we will

5    keep it to the seven hours.  I do want to reiterate, though,

6    that we did all hear representations from lawyers today that

7    they would be reasonable and would work -- that you-all would

8    work with each other to the extent necessary to get these

9    depositions completed if you're not able to cover everything

10   in the seven hours, and so I hope we won't have to be back

11   here on this issue but of course things happen and there

12   are -- reasonable minds can disagree.

13             So if you get to that point and you need to file

14   another motion, you know, feel free to do so, but at this

15   point, we are going to stick with the seven hours for the

16   named defendants.

17             Okay.  Let's talk about the 30(b)(6) depositions.

18   So the first question that I have is for Mr. McMullen.  We

19   are speaking about a lot of hypotheticals here.  Is Chief

20   Davis the 30(b)(6) witness?

21             **MR. McMULLEN:**  Well, he's outlined -- the

22   plaintiff has outlined nine different areas in which he will

23   be examining the City under the 30(b)(6), and I am not sure

24   that she is the best witness for all nine of them.  So she

25   will not be covering all nine areas.

**UNREDACTED TRANSCRIPT**

1       Some of it talk about fire department policies.

2  I think that's number nine.  Another talk about training and

3  recruits.  We'll have somebody from the Academy talking about

4  that.

5       So long story short, she will not be the person

6  in all nine of the categories, but she may be in one or

7  multiple categories.

8            **THE COURT:**  Okay.  I think that's fair if that

9  decision just hasn't been made yet, but you do think that it

10  will be greater than zero and less than nine of the topics

11  that she'll be covering?

12            **MR. McMULLEN:**  Yes.  That's a fair assessment,

13  Your Honor.

14            **THE COURT:**  All right.

15       So, Mr. Romanucci, I understand that the request

16  is that if Chief Davis is the sole designee that it be

17  35 hours.  We just heard she will not be the sole designee.

18  And then your other request was that, you know, I guess

19  depending on however many other witnesses are designated,

20  that you be allotted 14 hours per topic.

21       So talk to me again about why we need 14 hours

22  per topic.

23            **MR. ROMANUCCI:**  Yes, Your Honor.  Thank you.

24       I do agree that on Topic Number 9 I never had the

25  expectation that Cerelyn Davis would be testifying as to the

**UNREDACTED TRANSCRIPT**

1   Memphis Fire Department policies, procedures.  I did not have

2   an expectation as to 1 through 8, and today is the first time

3   I've heard that she will be testifying to some but not the

4   remaining eight topics.

5           So given that, I had -- my request was for if --

6   had Cerelyn Davis been named for the eight topics -- sorry.

7   You keep moving around the square and I try to keep my eye

8   contact with you.

9           Had she been named for eight topics, I would have

10  requested 35 hours which would have come out to about

11  somewhere between three and four hours per topic per 30(b)(6)

12  request, which, you know, when you look at the totality that

13  is not an unreasonable request given the scope.

14          So on Document 163, which is the memorandum of

15  law, Page Number 9, you know, we outlined our discussion on

16  the topics that we would be seeking.  Obviously when it comes

17  to, you know, custom, practice and policy, these are issues

18  that do not only relate to the date of the event but go back

19  in time.

20          Chief Davis had been chief in Memphis for

21  approximately two years.  Prior to that she had been Chief of

22  Police in Atlanta and also at a department in North Carolina.

23  In the Atlanta police department, she also was the supervisor

24  for a unit there called Red Dog, which was similar to the

25  SCORPION team, and so we are waiting for all of the discovery

**UNREDACTED TRANSCRIPT**

1    to come back from Atlanta right now with regard to her

2    participation in Red Dog.

3            So it's not unreasonable given what we've

4    outlined again -- and I could certainly make the record but

5    I'm not going to of reading the topics and what we're

6    seeking.  And not to mention the fact, Your Honor, that we

7    have asked the City for data backing up, excuse me, all of

8    the types of stops that were made with regard to this

9    particular type of stop, whether or not there was any policy

10   in place that existed about detaining people without probable

11   cause and seizing their property without due process.

12           So we have looked -- we have asked for all this

13   data, and I will be employing, you know -- I mean, there's no

14   secret -- a statistician in order to pour over that data and

15   give us an understanding of whether or not there is a pattern

16   there or not.

17           So it's not unreasonable for Chief Davis, if she

18   is a 30(b)(6) to these topics, to testify for an

19   extraordinary -- for an enlarged number of hours other than

20   the seven because she has a lot of knowledge here.  I mean,

21   her knowledge is great.

22           **THE COURT:**  Yes, okay.  Thank you.

23           So, Mr. McMullen, it does sound like these topics

24   are going to be a bit more document heavy and that Chief

25   Davis may well be testifying on multiple topics that could be

**UNREDACTED TRANSCRIPT**

1    time consuming.

2              Let me ask you this:  As I said, it's a bit hard

3    to discuss this in the abstract.  Do you think it would make

4    more sense if we get back together on this issue once you

5    have decided who will be designated for each topic?

6              **MR. McMULLEN:**  Your Honor, I think that's fair,

7    and I do want to point out, like 6 and 7, if you looked at

8    Topic 6:  Any and all City of Memphis, Memphis Police

9    Department and/or Memphis Fire Department policies.  7 is

10   worded basically the same way.  It's the and/or for fire

11   department.

12             So you're talking about 6, 7 and 9 are probably

13   going to have to have hybrid witnesses, someone to talk about

14   the fire part of it and someone to talk about the police part

15   of it.  But, Your Honor, I think you're right.  The most

16   efficient way to handle it, let me -- let us firm up who is

17   going to cover each of these areas, and actually it looks

18   like it's more -- if you break it out, it's more like 11 than

19   9 because some of them do fire department and police

20   department.  And so that kind of makes it difficult, and it

21   probably definitely not going to be one person, but I think

22   the most efficient thing to do is let us try to identify for

23   each and including the hybrid Number 6, 7 and 9 and we can

24   report back to the Court.

25             **THE COURT:**  About how long do you think you would

**UNREDACTED TRANSCRIPT**

42

1    need to do that?  I'd like to go ahead and get a timeline.

2              **MR. McMULLEN:**  Okay.  That's where Ms. Silk just

3    supplemented my thinking.  Two weeks should be --

4              **THE COURT:**  Two weeks?

5              Mr. Romanucci, that -- two weeks sounds

6    reasonable to me.  So my suggestion -- but I'm interested to

7    hear from you as well.

8              My suggestion would be that, you know, we set a

9    deadline of two weeks from today, which would be the 22nd,

10   for Mr. McMullen to identify the designee or designees for

11   each topic so that you-all can have a better idea of how much

12   time you are going to need to ask for, you know.

13             If it's nine different witnesses, you might need

14   more total hours than you would need if it's, you know, two

15   different witnesses.  So I think that that might just give

16   you a better feel for exactly what you'll need.  How does

17   that sound?

18             **MR. ROMANUCCI:**  I have no opposition to that at

19   all because I was anticipating that the 30(b)(6) witnesses

20   would be -- were the ones kind of pushed down the line in

21   terms of when they're -- you know, when they would be

22   produced.  So I think that's totally reasonable, and actually

23   it dovetails very nicely into a request that I was going to

24   make of the Court that we might actually adjourn for a couple

25   of weeks at a time for the next maybe month or two so that

**UNREDACTED TRANSCRIPT**

43

1  you could supervise our discovery somewhat to make sure that

2  we do stay on track because we're in a very sensitive time

3  right now for this.  I'm very very -- to say the least, I get

4  very anxious about completing discovery within -- you know,

5  within my time parameters, and I think it would be very very

6  helpful and useful to all the parties here if this Court

7  stayed involved in our discovery efforts at least for some

8  time until we're able to, you know, get past some of these

9  issues obviously with joint status reports being filed in

10  advance of that.

11         **THE COURT:**  Well, Mr. Romanucci, I appreciate

12  that request.  I will tell you I don't want to get out over

13  my skis too much.  I think that that would be a decision for

14  Judge Norris to make whether he would want me to take that

15  role.  So I will let you-all get together and discuss among

16  the lawyers if you think that that is, you know, the kind of

17  relief that you think appropriate and if so to file a motion,

18  and we'll let Judge Norris weigh in on what he would like to

19  see happen there.

20         But in terms of this 30(b)(6) deposition -- and I

21  also -- I appreciate your comment about thinking that this

22  probably would be one of the later scheduled depositions.

23  That makes sense as well.  So we will look for Mr. McMullen's

24  submission on April 22nd.  And I'll tell you what:

25  Mr. McMullen, no need to file that on the docket.  Just

**UNREDACTED TRANSCRIPT**

1    provide that to Mr. Romanucci, and then I'd like for you-all

2    to get together to see if you can come to some agreement.

3    You know, I think my ruling to this point can maybe inform

4    your discussions a little bit, but also the indication that I

5    gave that I do think there might be more flexibility needed

6    in the timing on this given the time period that's going to

7    be covered and the number of documents.

8          So I will let you-all get back together on that,

9    and then, Mr. Romanucci, if you would just file a status

10   update on your discussions about the 30(b)(6) to let me know,

11   why don't we say maybe a week after that, the 29th -- or is

12   that too quick?

13         Why don't we go ahead and give you two weeks.  I

14   know sometimes it takes y'all a while to get together.  So

15   we'll say by May 6th, if you could give me a status update

16   about whether there are timing issues on the 30(b)(6) that

17   need to be resolved or whether we can close out that issue.

18   I mean, you know, I don't -- I appreciate that you-all have

19   not gotten into talking about objections to the 30(b)(6)

20   topics today.  I don't know if that's going to be an issue

21   here, but it may make sense to take all of that up at one

22   time if that does become an issue.

23         So again, I'll just -- I'll let you-all talk

24   about that, and I'm confident that you can work it out

25   amongst yourselves, but if you can't, then just let me know

**UNREDACTED TRANSCRIPT**

45

1   that there's still something that I need to weigh in, okay.

2              **MR. ROMANUCCI:** Very well, thank you, Your Honor.

3              **THE COURT:** Excellent.

4              All right. And then the last topic, unless you

5   tell me otherwise, is the number of depositions.

6              So the motion specifically asks for leave to take

7   35 or more. I believe the City's filing indicated that 47

8   had been noticed so far. I know that -- again, I just want

9   to do a quick role call.

10             So, Mr. McMullen, I know that the City is opposed

11  to the 35 number. Your briefing does say that you understand

12  that more than ten would be necessary. Do you have a number

13  in mind that you would be agreeable to?

14             **MR. McMULLEN:** Yes, Your Honor, but let me give

15  you some context. We were told that there were 35 witness

16  identified. Then we got two subpoenas for two witnesses that

17  were not on that list of 35. Then we got a list of 45. Then

18  we got a list of 45. And I understand from Mr. Romanucci he

19  has about -- he's thinking about 109 potential witnesses at

20  this point. So that's where we are, you know, for context.

21             So outside of the parties, you know, I'm looking

22  at somewhere around 25 witnesses from the plaintiffs should

23  be able to get it done, and that's going over the normal ten

24  witnesses that's in most federal court cases. So I am

25  flexible on that, but when we're talking about 45 or a 100 or

**UNREDACTED TRANSCRIPT**

```
 1   however -- however large the number is, I think that's way

 2   outside the bounds of what it takes to successfully

 3   adjudicate this case.

 4              THE COURT:  Thank you, Mr. McMullen.

 5              And Ms. McKinney or Ms. Godwin, I understand that

 6   you have no opposition to the number exceeding ten?

 7              MS. MCKINNEY:  We are fine with that.  We had

 8   said 35.

 9              THE COURT:  Okay.  And Mr. Spence also no

10   opposition?

11              MR. SPENCE:  Correct, Your Honor.  No opposition.

12              THE COURT:  Mr. Spence is just hanging out today.

13   That's great.

14              And Mr. O'Neal, are you with the City on this or

15   do you have a different position?

16              MR. O'NEAL:  No opposition, Your Honor.

17              THE COURT:  Okay.  And Ms. Smittick?

18              Ms. Smittick, you're muted.  You're showing up as

19   muted.  Oh, there we go.

20              MS. SMITTICK:  Okay.  Better?

21              THE COURT:  Yes.

22              MS. SMITTICK:  No opposition, Your Honor.

23              THE COURT:  Thank you.

24              All right.  So Mr. Romanucci, talk to me about

25   the number of depositions.  Well, make your case.
```

**UNREDACTED TRANSCRIPT**

47

1          **MR. ROMANUCCI:**  Thank you, Your Honor.

2          First, I wanted to clarify one more time because

3    I don't want it to be confused.

4          **THE COURT:**  I understand the potential witnesses

5    and notice depositions are two different things.  So let's

6    just talk about, yeah, the notices.

7          **MR. ROMANUCCI:**  Understood.  Because I have

8    combed through the discovery, I know how many different

9    statements are contained within the ISB report, and there are

10   more than two dozen statements in the ISB report.  Now,

11   admittedly, some of those do include statements from the

12   charged police officers and the defendants.  So I'm not

13   saying these are additional witnesses.

14          But with the hundred or so potential witnesses at

15   trial, which you know is not going to happen.  There's going

16   to be a paired down witness list for trial.  But that doesn't

17   limit the ability for me or for the plaintiff to discover

18   what is necessary in this case, and because of the number of

19   statements that have been given by different people and the

20   number -- which some of them include people who were on

21   scene.  Many of them include people who were off scene.  I

22   way exceed -- I'm way past 35.

23          So that's again -- I am trying to be -- exercise

24   extreme good faith in the number of depositions that I am

25   requesting based upon the number of different people who have

**UNREDACTED TRANSCRIPT**

1    given statements to either the Memphis Police Department, the

2    Internal Services Bureau, the TBI and even other government

3    agencies.  When you put them altogether, there are dozens and

4    dozens.  And, you know, when there are statements, that's

5    what needs to be tested.  They're statements versus what --

6    how they're going to testify in court.  And so I well exceed

7    that number.

8              I had a point to make and of course I was over

9    thinking it.  Why don't I just stop there as opposed to

10   trying to make something up?

11             **THE COURT:**  Thank you, Mr. Romanucci.

12             Mr. McMullen, anything else to add?  You're

13   muted, but I think you said no.

14             **MR. McMULLEN:**  No.  No, Your Honor.

15             **THE COURT:**  All right.  Thank you.

16             So, Mr. Romanucci, I appreciated the specificity

17   in your memorandum on this subject and how you broke out the

18   categories of deponents.  So first we have the parties in the

19   case.  You identified people involved in the MPD

20   investigation.  You identified other officers that are not

21   named in the suit that were on the scene, people within the

22   department -- it says by virtue of their seniority, title and

23   rank can attest to their observations, history and conduct

24   within the department's leadership; other members of the

25   SCORPION unit who I don't believe were involved in the

**UNREDACTED TRANSCRIPT**

1    incident but could provide information about the unit itself.

2              And all of those are certainly relevant topics,

3    and it looks like you-all have done a lot of work to identify

4    the people falling within those topics.  Of course -- and so,

5    you know, you've certainly met your burden of demonstrating

6    relevance.

7              Against relevance, though, we always must measure

8    proportionality and burden; and, you know, the City had made

9    the argument that information from some of these folks is at

10   some point going to get repetitive.  And so -- or maybe it's

11   not and then you know you need to take more depositions, but

12   if you've heard the same thing from four people then you

13   might not need to talk to five, six and seven.

14             So what I'm going to do is I will grant an

15   extension beyond the 10 provided for in the rules to 30.  So

16   we will set the limit at 30.  I am, again, going to emphasize

17   that if you are in a situation where, you know, based on the

18   depositions you've already taken, it becomes clear that there

19   are some really important other depositions that you need to

20   take, that the lawyers work together on that and hopefully

21   can come to some agreement on that.  But, of course, if you

22   find yourself in that position and are not able to achieve a

23   further extension by stipulation, you can again file another

24   motion.

25             But at this point, again, in balancing the

**UNREDACTED TRANSCRIPT**

1  relevance of this information with the -- taking into account

2  the proportionality of that relevance to the burden of

3  conducting so many depositions and encouraging that

4  efficiency that we were talking about before, we are going to

5  increase that number to 30 at this point.

6          **MR. ROMANUCCI:**  Thank you, Your Honor.

7          **THE COURT:**  Thank you.  So that's what we'll do

8  on that.

9          Now, Mr. Romanucci, I think I covered everything

10 that was requested.  Did I leave anything out?

11         **MR. ROMANUCCI:**  One moment, Your Honor.

12         **THE COURT:**  Please, take your time.

13         **MR. ROMANUCCI:**  Thank you, Your Honor.  Nothing

14 else from plaintiff.

15         **THE COURT:**  Thank you.

16         **MR. McMULLEN:**  Your Honor, in that 30 number -- I

17 think I'm clear about this -- that's for the plaintiffs only?

18         **THE COURT:**  For the plaintiffs.

19         **MR. McMULLEN:**  Okay.  Thank you.

20         **THE COURT:**  Exactly.

21         **MS. McKINNEY:**  Does that --

22         **THE COURT:**  Ms. McKinney, you've cut out again.

23 I'm so sorry.  Maybe Ms. Godwin can read your mind.

24         **MS. McKINNEY:**  Can you hear me?

25         **MR. McMULLEN:**  Ms. Godwin, you're on mute.

**UNREDACTED TRANSCRIPT**

1          **THE COURT:**  Ms. Godwin is on mute.

2          Ms. McKinney, I can hear you.  It's a reception

3   issue.  It's not a mute issue.  You're cutting in and out.

4   No, I can't hear you.  I'm sorry.

5          Ms. Godwin, you're muted.

6          Do you want to try one more time, Ms. McKinney?

7          **MS. GODWIN:**  Okay.  Try again, Betsy.  Nope.  I

8   don't know what's going on with hers.  She's not in the same

9   room with me so I can't -- I don't know what she's trying to

10  say.

11         **THE COURT:**  Okay.  Well, Ms. McKinney, if you

12  want to -- here she is.

13         **MS. MCKINNEY:**  Does it include plaintiff's

14  experts?

15         **THE COURT:**  Can you get closer?  I'm sorry.

16         **MS. GODWIN:**  She's asking whether it included

17  experts.

18         **THE COURT:**  Experts are separate.  These are fact

19  witnesses.

20         **MS. MCKINNEY:**  Just fact, okay.

21         **THE COURT:**  Yes.

22         **MS. GODWIN:**  Sorry about that.  We'll have to

23  check her --

24         **THE COURT:**  No, no.  I'm glad she was so close

25  by.

**UNREDACTED TRANSCRIPT**

1          Mr. McMullen, anything else we need to cover

2   today?

3          **MR. McMULLEN:**  No, Your Honor.

4          **THE COURT:**  All right.

5          **MR. McMULLEN:**  I think that's it.

6          **THE COURT:**  All right.  And Ms. Godwin, anything

7   else from your end?

8          **MS. GODWIN:**  No, Your Honor, no.

9          **THE COURT:**  Mr. O'Neal?

10         **MR. O'NEAL:**  No, Your Honor.

11         **THE COURT:**  Ms. Smittick?

12         **MS. SMITTICK:**  No, Your Honor.

13         **THE COURT:**  Mr. Spence?

14         **MR. SPENCE:**  No, Your Honor.

15         **THE COURT:**  All right.  And Ms. Johnson, I don't

16   know if you're still with us.  Anything from you?

17         **MS. JOHNSON:**  I am still here, Your Honor, and

18   nothing from Defendant Martin.  Thank you, Your Honor.

19         **THE COURT:**  Excellent.  Well, thank you all so

20   much.  This was very productive.  We will get an order

21   entered as soon as we can and court is adjourned.  Thank you

22   all.

23         **ATTORNEYS:**  Thank you, Your Honor.

24         (Adjournment.)

25

**UNREDACTED TRANSCRIPT**

53

1                    **C E R T I F I C A T E**

2

3

4           I, LISA J. MAYO, do hereby certify that the

5    foregoing 53 pages are, to the best of my knowledge, skill

6    and abilities, a true and accurate transcript from my

7    stenotype notes of the MOTION HEARING on 8TH DAY OF APRIL, in

8    the matter of:

9

10

11   ROWVAUGHN WELLS

12   vs.

13   CITY OF MEMPHIS, et al

14

15   Dated this 04.15.2024

16

17

18

19                          _____S/Lisa J. Mayo_____

20                          LISA J. MAYO, RDR, CRR
                            Official Court Reporter
21                          United States District Court
                            Western District of Tennessee
22

23

24

25

                    **UNREDACTED TRANSCRIPT**