IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF
TENNESSEE WESTERN DIVISION

ROWVAUGHN WELLS, Individually
and as Administratrix Ad Litem of the
Estate of Tyre Deandre Nichols, deceased.

       Plaintiff,
v.

THE CITY OF MEMPHIS, a municipality;
CHIEF CERELYN DAVIS, in Her Official
Capacity; EMMITT MARTIN III, in His
Individual Capacity; DEMETRIUS HALEY, in
His Individual Capacity; JUSTIN SMITH,
in His Individual Capacity; DESMOND
MILLS, JR., in His Individual Capacity;
TADARRIUS BEAN, in His Individual
Capacity; PRESTON HEMPHILL, in His
Individual Capacity; ROBERT LONG, in His
Individual Capacity; JAMICHAEL
SANDRIDGE, in His Individual Capacity;
MICHELLE WHITAKER, in Her Individual
Capacity; and DEWAYNE SMITH, in His
Individual Capacity and as an Agent of the
City of Memphis,

    Defendants.

Case No. 2:23-cv-02224-MSN-atc

**PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**

     Plaintiff RowVaughn Wells, both individually and as Administratrix Ad Litem on behalf of the Estate of Tyre Deandre Nichols, deceased, brings this civil rights action against the City of Memphis (the "City"), the Chief of the Memphis Police Department ("MPD"), and a group of MPD officers and Memphis Fire Department EMTs for killing her son, Tyre Nichols, on January 7, 2023, without any legal justification.

     The current dispute concerns a series of sweeping third-party subpoenas that the City has issued seeking years of irrelevant and intrusive information: *(1)* the communications of a family (the Volkers) that Mr. Nichols was close to from childhood but who were not present at, and have

1

no personal knowledge of, the events of Mr. Nichols' killing or its aftermath, and *(2)* Ms. Wells' and Mr. Nichols' cell phone records.

The scope of these non-party subpoenas is staggering. The subpoenas to the Volkers seek *any* communications—texts, emails, voicemails, private social media messages, and the like—that Marvin Volker, Lori Volker, Kris Volker, and Melissa Volker had with Mr. Nichols, Ms. Wells, or Ms. Wells' husband, Rodney Wells, *about anything* stretching back *four years before* Mr. Nichols was killed. And that's not all. The City also seeks any communications that the Volkers had with *anyone else* about *anything* related to Mr. Nichols, Mr. Nichols' estate, Mr. Nichols' son (the sole heir to his estate), or "this litigation," dating back *more than six years before* Mr. Nichols' death. As to the subpoenas for phone records, the City seeks *all* records associated with Ms. Wells' and Mr. Nichols' cell phones *about anything*, including "records of telephone calls, text messages, multi-media messages, or emails." The subpoenas for Mr. Nichols' records reach back four years before he was killed; the subpoenas for Ms. Wells' records cover more than a year and a half after her son was killed. None of the cell phone subpoenas have any limitation by recipient or subject matter.

The information requested in these subpoenas has no relevance to the claims or defenses in this action. Indeed, the City has conceded that these requests have no relevance to liability and are, at most, relevant only to damages. But that argument fails too. As explained below, the expansive categories of cell phone records, emails, texts, digital messages, and other communications that the City seeks are not relevant for any valid damages assessment. The City's subpoenas for cell phone records and the Volkers' communications are facially overbroad, not proportionate to the needs of this case, and are calculated to harass, embarrass, and intimidate Ms. Wells. The requests are nothing more than a fishing expedition into Mr. Nichols' personal history—

2

an attempt to dig up irrelevant dirt with which the City apparently hopes to smear Mr. Nichols' character in some effort to minimize damages and compensation for his minor son. That is not allowed under Rule 26.

In addition, the cell phone subpoenas are barred for a separate, independent reason: they violate the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq.* As explained below, the SCA prohibits the subpoena respondents (Ms. Wells' and Mr. Nichols' cell phone providers) from disclosing to the City the contents of their communications *and* any non-content information, such as the date, time, and originator/recipient of the communications.

Because the City's subpoenas violate the permissible scope of discovery and the cell phone subpoenas additionally violate the SCA, Ms. Wells respectfully requests a protective order, pursuant to Rule 26, requiring that the City withdraw these subpoenas and destroy any responsive documents that have been produced to date. Ms. Wells also requests that compliance with the subpoenas, and the City's review of any materials produced to date, be held in abeyance until the Court has ruled on this motion.

## I. BACKGROUND

### A. Plaintiffs' Claims and Procedural Background.

On the evening of January 7, 2023, Mr. Nichols was tased, savagely beaten, and doused with chemical irritants by a group of MPD officers with no legal justification. Dkt. 1 at ¶¶ 40-48, 145-222. Mr. Nichols died from his injuries three days later. *Id.* ¶¶ 283-93. As alleged in the Complaint, the officers' merciless beating of Mr. Nichols was the direct and foreseeable result of the unconstitutional policies, practices, customs, and deliberate indifference of the City and MPD Chief Cerelyn Davis. *Id.* ¶¶ 294-376.

On April 19, 2023, Ms. Wells filed her Complaint in this action. *Id.* She brings Fourth Amendment claims for unlawful stop, excessive force, and failure to intervene; Fourteenth Amendment claims for deliberate indifference to serious medical needs; and state-law claims for intentional and negligent infliction of emotional distress and fraudulent misrepresentation.

The parties are currently conducting written and oral discovery, with discovery set to close on December 31, 2024. On August 29-30, 2024, the City notified Plaintiff of a slew of third-party subpoenas duces tecum that seek extremely broad categories of documents and information from twelve different entities and individuals.[1] As a result of the parties' discussions regarding these subpoenas, the parties have resolved a number of disputes, but have reached an impasse regarding the subpoenas to the Volkers and the cell phone providers.

**B.     The Volker Family.**

As Ms. Wells has explained to the City in her Interrogatory responses (Ex. A at 7), Mr. Nichols became best friends with Kris Volker in childhood, at seven or eight years old, when he and Ms. Wells were living in Sacramento, California. As young boys, the two frequently hung out at the Volkers' home, where Kris's father, Marvin Volker, and Kris's stepmother, Lori Volker, spent time with Mr. Nichols and helped look after him. *Id.* In 2008, Ms. Wells and her son moved from Sacramento to Memphis, while the Volkers remained living in Sacramento. *Id.* Mr. Nichols ultimately moved back to Sacramento shortly after moving to Memphis in 2008. He lived in

---

[1] In addition to the subpoenas to the Volkers and the cell phone providers, the City also served subpoenas on Mr. Nichols' former employers, the social media platforms that Mr. Nichols used, and the mother of Mr. Nichols' son.

4

Sacramento with his father through high school and remained close friends with Kris Volker and the Volker family.

Through his young adult life when Mr. Nichols was living in Sacramento, he would visit the Volkers and Ms. Wells believes he may have spent periods staying in their home before he moved to Memphis in 2020. *Id.* at 8. Mr. Nichols and Kris Volker remained good friends as of the time Mr. Nichols was killed in 2023. *Id.*

    **C.    The City's Subpoenas to the Volkers and Cell Phone Providers.**

The subpoenas to the Volkers (Exs. C-F) each contain the following expansive document requests:

1. Any and all Communications between You and Mr. Nichols from January 1, 2019 through January 7, 2023.

2. Any and all Communications between You and Ms. Wells from January 1, 2023 through the present.

3. Any and all Communications between You and Mr. Wells from January 1, 2023 through the present.

4. Any and all of Your Communications with Plaintiff's attorneys regarding anything related to Your relationship with Mr. Nichols, the administration of Mr. Nichols's estate, and/or this litigation.

5. Any and all of Your Communications with anyone regarding anything related to Your relationship with Mr. Nichols, the administration of Mr. Nichols's estate, and/or this litigation.

6. Any and all Communications between You, Mr. Nichols, and/or anyone connected to You or Mr. Nichols, regarding Mr. Nichols' son, including but not limited to communications regarding the identities of the child's biological, adoptive, or step-parents.

The subpoenas to Ms. Wells' and Mr. Nichols' cell phone providers, T-Mobile and Verizon (Exs. G-H), contain similarly far-reaching requests: "A complete copy of any and all phone records" for Ms. Wells' and Mr. Nichols' cell phones, "including without limitation the subscriber's name, billing records, and records of telephone calls, text messages, multi-media messages, or

5

emails received by or placed from it from January 1, 2019 through present day" for Mr. Nichols' records, and "from January 1, 2023 through the present" for Ms. Wells' records.[2]

### D. The Parties' Efforts to Meet and Confer.

Plaintiff's counsel promptly informed counsel for the City that Plaintiff objects to the subpoenas to the Volkers and the cell phone providers because they seek information that is not relevant, they are overbroad, they are not proportional to the needs of this case, they are calculated to harass and intimidate, and, as to the cell phone providers, the subpoenas violate the SCA.[3] After the parties met and conferred regarding Plaintiff's objections, the City refused to withdraw the subpoenas. As to the Volkers' subpoenas, the City was also unwilling to make any modifications other than one: adding a date range of January 1, 2017 to February 28, 2023 to Request No. 5, which previously lacked any temporal scope. As for the cell phone subpoenas, the City proposed narrowing the date range to January 1, 2020 – January 10, 2023 for Mr. Nichols' records and December 1, 2022 – February 28, 2023 for Ms. Wells' records. The City refused to narrow its subpoenas by limiting them to any specific subjects or any specific originators/recipients of the subpoenaed communications. As explained below, the City's proposed modifications are not sufficient to remedy the subpoenas' Rule 26 deficiencies and do not cure the cell phone subpoenas' violation of the SCA.

On September 23, 2024, the City's counsel informed Plaintiff's counsel that, on September 20, one of the cell phone subpoena respondents, T-Mobile, produced the subpoenaed records for the period September 2022 to present. The City agreed not to review the records until Plaintiff had

---

[2] In addition, the subpoenas to T-Mobile and Verizon request Mr. Nichols' employment records (he had worked at both companies). The parties were able to resolve their disputes regarding the employment records requests, so that portion of the subpoenas is not at issue in this motion.

[3] The City also subpoenaed the Volkers for depositions, which Plaintiff has not objected to. Those depositions are scheduled to take place in November.

6

an opportunity to file this motion, but the City refused to provide a copy of the records to Plaintiff and also refused to destroy the records, as Plaintiff requested. (Ex. B.)

II.     **LEGAL STANDARD**

The court "must limit the . . . extent of discovery" if "the proposed discovery is outside the scope [of relevancy and proportionality] permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii). Additionally, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" arising from the challenged discovery. *Id.* R. 26(c)(1). District courts "have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 854 (6th Cir. 2017).

"[S]ubpoenas issued under Rule 45 are subject to the same constraints that apply to all of the other methods of formal discovery." *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 236–37 (D. Minn. 2013) (quotations omitted). Rule 26(c) "permit[s] a party to seek a protective order to preclude discovery demanded by a third-party subpoena." *Large on behalf of Large v. Blazer*, No. 3:20-CV-1012, 2022 WL 99986, at *2 (M.D. Tenn. Jan. 10, 2022); *see also Fleet Bus. Credit Corp. v. Hill City Oil Co.*, No. 01-2417-GV, 2002 WL 1483879, at *2 (W.D. Tenn. June 26, 2002) (collecting cases). And "a showing of irrelevancy of proposed discovery can satisfy the good cause requirement of Rule 26(c)" for obtaining a protective order. *Blazer*, 2022 WL 99986, at *2. The district court's decision to issue a protective order is "within the broad discretion of the district court in managing the case." *Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989) (affirming grant of protective order barring deposition of witness who "had no knowledge as to facts pertinent to [the] action").

7

### III. ARGUMENT

    **A. The City Has Failed to Demonstrate the Relevance of the Subpoenaed Communications and Phone Records.**

Like all discovery, information sought from a third party via a subpoena must be "relevant to [a] party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The burden is on "the party seeking discovery . . . to demonstrate relevance." *Commonspirit Health v. Healthtrust Purchasing Grp., L.P.*, No. 3:21-CV-00460, 2022 WL 19403858, at *2 (M.D. Tenn. July 13, 2022). The City has failed to satisfy that threshold requirement for its subpoenas to the Volkers and the cell phone providers.

The Volkers have no connection to the facts at issue in this case. They were not witnesses to the Defendant Officers' traffic stop or beating of Mr. Nichols. Nor did they see Mr. Nichols as he lay dying in the hospital. As discussed above, Kris Volker is a childhood friend of Mr. Nichols, and Kris's father and stepmother helped look after Mr. Nichols at various points when he was living in Sacramento. The most recent of these was at least *three years before* the events of January 7, 2023 at issue here. During the parties' conferrals about the Volker document requests, the City offered nothing to suggest that Ms. Wells—or anyone else for that matter—communicated with the Volkers about the allegations or the relief sought in this case. Mr. Nichols' relationship with the Volkers simply does not relate to any question of fact at issue. The City thus cannot make the showing of relevance or proportionality that would be necessary to permit it to pry into as many as *six years* of personal texts, emails, and other private messages between the Volkers, Mr. Nichols, Ms. Wells, and Mr. Wells—much less private messages between the Volkers and unlimited *other third parties* about Mr. Nichols years before his death. And because the Volkers do not have information relevant to the claims or defenses in this case, the subpoenas' request for communications between the Volkers and Plaintiff's attorneys likewise seeks information that is not relevant.

The City has likewise failed to establish the relevance or proportionality of its subpoenas for nearly two years of Ms. Wells' phone records and four years of Mr. Nichols'. Based on the parties' conferrals prior to the filing of this motion, the City believes that T-Mobile and Verizon likely possess logs showing the date and time of every call and SMS text message that Ms. Wells and Mr. Nichols sent or received during the years-long period subpoenaed, as well as the phone number of the third party who initiated/received their call or SMS. A record of *every* person that Ms. Wells and Mr. Nichols have communicated with via cell phone call and SMS over a two-year and four-year period, respectively, will include calls and texts with dozens, perhaps hundreds, of individuals who have absolutely no connection to, or knowledge of, the facts of this case. And the City's proposal of limiting Ms. Wells' phone records to a three-month date range (December 1, 2022 – February 28, 2023) is still overbroad. A log of every person Ms. Wells communicated with on her cell phone for one month before her son's killing and two months after is not reasonably calculated to lead to the discovery of admissible evidence. None of the allegations or relief sought in this case put Ms. Wells' or Mr. Nichols' texts and phone calls at issue *en masse*. This is yet another attempted fishing expedition by the City, in hopes of finding some message or call that could taint Mr. Nichols' character.

A few simple hypothetical examples illustrate the irrelevance and overbreadth of the City's subpoenas. Consider the following potential Volker communications: a text from Kris Volker to Mr. Nichols making plans to meet up at a bar; a text from Mr. Nichols to Lori Volker wishing her a merry Christmas; an email from Kris Volker to a friend mourning Mr. Nichols' death. Or consider the following potential cell phone records: a call from Mr. Nichols in 2020 to catch up with a coworker; a text to Mr. Nichols in 2022 from an online restaurant reservation platform. None of

9

these private communications have even tangential relevance to the claims or defenses in this case yet all fall within the vast scope of the City's subpoenas.

Where, as here, a subpoena seeks information that is irrelevant and overbroad, courts routinely grant orders barring the improper subpoena. *See, e.g.*, *Stewart v. Orion Fed. Credit Union*, 285 F.R.D. 395, 398-99 (W.D. Tenn. 2012) (granting protective order barring subpoenas that sought "documents of questionable relevance"); *Mayes v. City of Oak Park*, No. CIVA 05-CV-74386-DT, 2007 WL 187941, at *2 (E.D. Mich. Jan. 22, 2007) (granting protective order barring subpoena that sought information "not relevant to the claims or defenses asserted in Plaintiff's complaint"); *Shukh*, 295 F.R.D. at 236–37 (same); *Simon v. Northwestern Univ.*, No. 1:15-cv-1433, 2017 WL 66818, at *4 (N.D. Ill. Jan. 6, 2017) (quashing subpoena because defendant failed "to provide sufficient facts for the court to ascertain how" the requested communications "would either be relevant to the litigation or necessary to defend the claims against him").

Courts regularly prohibit or significantly limit wide-ranging subpoenas for parties' cell phone records "[a]bsent some evidence or even unsupported allegation" that the requested records relate to the parties' claims or defenses. *Baker v. Royce*, No. 1:14-CV-14035, 2015 WL 13584586, at *3 (E.D. Mich. June 26, 2015); *see also, e.g.*, *Hawn v. Vitas Hospice Servs. LLC*, No. 1:19-CV-220, 2020 WL 5230713, at *4 (S.D. Ohio Sept. 2, 2020) (quashing subpoena for 28 months of cell phone records where "there are no allegations that suggest the relevancy of text messages or other electronic data sent or received"); *Burdette v. Panola Cnty.*, 83 F. Supp. 3d 705, 707 (N.D. Miss. 2015) (finding subpoena for plaintiff's phone records was irrelevant where there was no evidence that the records had any bearing on the plaintiff's claims, and it was overbroad because it included twenty days after the events at issue). Such relief is necessary here. At a minimum, the City's subpoenas must be tailored to specific subjects or recipients that have some likelihood of resolving

10

a question at issue in this action. "The mere hope that there might be something of relevance is insufficient." *Baker*, 2015 WL 13584586, at *3.

### B. Plaintiff's Claim for Damages Does Not Make the Subpoenaed Communications and Phone Records Relevant.

During the parties' conferences, the City conceded that the subpoenas at issue in this motion have no relevance to liability, but claimed the requested communications and phone records are relevant to the issue of damages. They are not.

*First*, the City argued that because damages for Mr. Nichols' wrongful death are at issue, the subpoenas are necessary to "paint a picture" of Mr. Nichols and "get to know" him. This stretches the Rule 26 relevance and proportionality limitations beyond recognition. Subpoenas for years of unrestricted call and text logs, for vast quantities of private communications between Mr. Nichols and his family friends, and for communications that his family friends exchanged with unlimited other third parties about him, is nothing but a fishing expedition in hopes of finding something that the City can use as dirt against Mr. Nichols. The Sixth Circuit has "never sanctioned blind-faith efforts to unearth the supposition of wrongdoing," and such efforts should not be permitted here. *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 238 (6th Cir. 2016) (holding protective order was proper to bar disclosure of sensitive information); *see also Anwar*, 876 F.3d at 854 ("[A] [party] should have access to information necessary to establish her claim, but [] a [party] may not be permitted to 'go fishing[.]'").

That the damages Plaintiff seeks include loss of future wages and earnings, and loss of aid, counsel, guidance, advice, and assistance to Mr. Nichols' minor son does not give the City license to rummage through years of private communications of Mr. Nichols and his loved ones in an effort to assassinate his character. In a wrongful death case where lost future financial support is at issue, "evidence of the decedent's 'character' that does not *directly relate* to the likelihood or

11

unlikelihood of future financial contributions [to the decedent's heirs]" is not relevant. *Johnson v. Dobrosky*, 187 N.J. 594, 608 (2006) (finding trial court committed reversible error in wrongful death case by admitting irrelevant evidence of decedent's character). Similarly, with respect to damages for lost advice, guidance, and the like, "general character evidence offered to prove, for example, that the decedent was lazy, had loose morals, or was otherwise a person of bad character" is not relevant. *Id.* at 611.

**Second**, with regard to the Volker subpoenas specifically, the City suggested that the requested communications are relevant to damages because they show the nature of Mr. Nichols' relationship with his *own* family—specifically, his relationship with his mother, his minor son, and his son's mother. In particular, the City pointed to Lori Volker's statement in the press that Mr. Nichols had referred to her as a second "mom."

The City's reasoning makes no sense. Having a close relationship with Lori Volker does not mean Mr. Nichols *lacked* a close relationship with his own mother, Ms. Wells. For instance, many people call their in-laws "mom" and "dad"—that certainly doesn't reflect poorly on the person's relationship with their biological parents. The City's argument is particularly far-fetched because the period in which Mr. Nichols may have been periodically living with the Volkers was at least *three years before* he died. Ex. A at 7-8. And in the three years preceding his death, Mr. Nichols was living with Ms. Wells, on the opposite side of the country from Ms. Volker. *Id.* In any case, even if Mr. Nichols' relationship with Lori Volker *could* shed light on the relationship between Mr. Nichols and his own mother, the City has never demonstrated how Mr. Nichols' relationship with Ms. Wells is relevant to a proper determination of damages such that it would justify such intrusive and attenuated third-party discovery. Allowing the City to proceed with the Volkers subpoenas would set an extraordinary precedent: simply by virtue of being friends with a

12

decedent in a wrongful death action, a person could be required to disclose in litigation years of their private communications with the decedent. Plaintiff is aware of no authority supporting such a conclusion.

The only potentially relevant information the Volkers might conceivably possess are facts that would bear directly on Plaintiff's damages claims for Mr. Nichols' lost earnings, and the loss of aid, counsel, guidance, advice, and assistance to Mr. Nichols' minor son—the sole heir to the estate. Thus far, the City has failed to articulate what, if any, such information would be. If the City's upcoming depositions of the Volkers reveal those facts, perhaps a substantially narrowed version of the Volker document requests—tailored to those specific subjects—would be appropriate. In the absence of such a showing of relevance, the Volker document requests fail to comply with Rule 26 and the Court should order them withdrawn.

    **C.    The City's Subpoenas Improperly Intrude on Ms. Wells' and Mr. Nichols' Privacy Interests.**

Absent Court intervention, the City's effort to pry into years of Ms. Wells' and Mr. Nichols' private communications, as well as years of the Volkers' private communications with Mr. Nichols, Ms. Wells, and Mr. Wells—and communications the Volkers had with anyone else about Mr. Nichols—will unquestionably harass, annoy, embarrass, and unduly burden Ms. Wells and her deceased son. Those are precisely the circumstances where a protective order is warranted. *See* Fed. R. Civ. P. 26(c)(1); *Herbert v. Lando*, 441 U.S. 153, 155 (1979) ("[D]istrict courts should not neglect their power to restrict discovery where justice requires protection for a party or person from annoyance, embarrassment, oppression, or undue burden or expense." (quotations omitted and alterations adopted)).

The harm to Plaintiff in allowing this fishing expedition to proceed—the violation of her privacy interests—is serious. By definition, the communications the City seeks (such as emails,

13

text messages, voicemails, and direct messages on any digital platform) are private communications that either were sent to/from Mr. Nichols, Ms. Wells, or Mr. Wells, or were sent *about* Mr. Nichols, or both. Plaintiff and her deceased son never imagined that these personal communications might one day be viewed and used by the City of Memphis and the other parties to this litigation in an effort to tarnish Mr. Nichols' reputation. The Volkers were longtime family friends of Mr. Nichols, and Kris Volker remained a close friend to the day Mr. Nichols was killed. Like any close relationship, their communications undoubtedly contain many unvarnished sentiments, hopes, plans, memories, jokes, and so on. Permitting the City to probe years of Mr. Nichols' intimate conversations with his close childhood friend and his friend's family would be a deep indignity and invasion of privacy. Similarly, allowing the City to obtain years of cell phone records revealing every person whom Ms. Wells and Mr. Nichols called and texted—with no nexus to the claims or damages at issue—would violate core privacy interests and is not justified by any legitimate need to access this sensitive information. *See Baker*, 2015 WL 13584586, at *2 ("[A party] possesses a right of privacy in her cellular telephone records").

At the very least, the burden and oppression of these intrusive requests far "outweighs [the] likely benefit . . . in resolving the issues" in this case, as demonstrated above. Fed. R. Civ. P. 26(b)(1). Accordingly, the Court should forbid the City's attempt to obtain broad, years-long swaths of irrelevant, personal communications that infringe on Plaintiff's privacy interests. *See Elvis Presley Enterprises. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir.1991) (upholding protective order barring deposition where deponent "had no knowledge" relevant to the claims at issue and the "primary purpose in deposing her would be to harass and annoy her.").

### D. The City's Subpoenas to the Cell Phone Providers Are Barred by the Stored Communications Act.

In addition to the subpoenas' Rule 26 deficiencies, there is a separate, independent reason why the subpoenas to T-Mobile and Verizon must be withdrawn and any responsive records produced to date must be destroyed: compliance with the subpoenas violates the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq.*[4]

The SCA broadly restricts the information that a provider of "electronic communication service[s]" can divulge unless it has the consent of the originator or recipient of the communication. 18 U.S.C. § 2702(a)(1); *id.* § 2702(b)(3). Cell phone providers, such as T-Mobile and Verizon, fall within the scope of the Act. *See, e.g.*, *Hawn*, 2020 WL 5230713, at *4; *Baker*, 2015 WL 13584586, at *3 (quashing subpoena for cell phone records "because disclosure by Verizon" would violate the SCA).

Unless one of the statutory exceptions applies or consent is given, the SCA prohibits a provider from *(i)* disclosing "the contents of a communication" to any entity and *(ii)* disclosing "so-called 'subscriber information' (*e.g.*, the date, time, originating and receiving telephone number, and duration for incoming and outgoing calls) *to governmental entities*," such as the City here. *Doe v. City of San Diego*, No. 12-CV-0689-MMA DHB, 2013 WL 2338713, at *4 (S.D. Cal. May 28, 2013) (emphasis added); *see* 18 U.S.C. § 2702(a)(3). As described above, the material in T-Mobile's and Verizon's possession, and that T-Mobile recently produced, is precisely the sort of "subscriber information" that Section 2702(a)(3) prohibits from disclosure.[5] Plaintiff has not

---

[4] The City also served subpoenas on Meta Platforms, Inc. ("Meta") and Snap, Inc. ("Snap") seeking Mr. Nichols' social media data. Like the cell phone subpoenas, the social media subpoenas also violate the SCA. However, the social media subpoenas are not at issue in this motion because Meta and Snap objected on SCA grounds (among others) and the City agreed it would not move to compel production.

[5] The fact that T-Mobile has recently produced the information, in violation of the SCA, does not negate Plaintiff's entitlement to enforce her rights under the SCA by obtaining a protective order to clawback the unlawfully produced records and order the City to destroy the copy it received. *See, e.g.*,

15

provided consent for the disclosure of the subpoenaed records, and the SCA's other exceptions plainly do not apply here. *See* 18 U.S.C. § 2702(b).

Crucially, as many courts have concluded, "[t]he SCA does not contain an exception for civil discovery subpoenas." *Doe*, 2013 WL 2338713, at *3 (internal quotations omitted) (collecting cases). *See In re Sittenfeld,* 49 F.4th 1061, 1076 n.5 (6th Cir. 2022) ("[The party]'s request for a civil subpoena here was otherwise unauthorized.") (citing *Lucas v. Jolin*, No. 1:15-cv-108, 2016 WL 2853576, at *5 (S.D. Ohio May 16, 2016) (explaining that "the SCA prevents a provider from releasing the 'contents' of a user's stored communications in response to a civil subpoena from a third party")); *accord United States v. Glenn*, 341 F.R.D. 217, 222 (N.D. Ohio, May 5, 2022); *Baker*, 2015 WL 13584586, at *3; *Hawn*, 2020 WL 5230713, at *4.

Therefore, the City's subpoenas for Ms. Wells' and Mr. Nichols' cell phone records are barred in their entirety by the SCA. *See Doe*, 2013 WL 2338713, at *4 ("[T]he SCA prohibits Verizon from disclosing Plaintiff's 'subscriber information' to the City[.]"); *Thayer v. Chiczewski*, No. 07 C 1290, 2009 WL 2957317, at *5 n.5 (N.D. Ill. Sept. 11, 2009) ("The SCA . . . prohibits [providers] from divulging . . . subscriber or customer information or records to governmental entities."); *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 611 (E.D. Va. 2008) ("[G]overnmental entities are prohibited from using Rule 45 civil discovery subpoenas to circumvent the [SCA]'s protections."); *FTC v. Netscape Commc'ns Corp.*, 196 F.R.D. 559, 560–61 (N.D.Cal.2000) (concluding that the SCA does not allow "government entities to make an end-run around the statute's protections through the use of a Rule 45 subpoena").

---

*Ademiluyi v. Phillips*, No. 2:14-CV-00507-MMD, 2014 WL 7012493, at *4 (D. Nev. Dec. 12, 2014) ("[T]o the extent [the party that issued the subpoena] has already received the cell phone records from T-Mobile, this Court directs [the party] to destroy all of the records and submit an affidavit to this Court within ten (10) days from the issuance of this order attesting to the destruction of these records.").

## IV.  CONCLUSION

For the reasons set forth above, the City's subpoenas to the Volkers and the cell phone providers violate the permissible scope of discovery under Rule 26, and the cell phone subpoenas additionally violate the SCA. Ms. Wells therefore respectfully requests that the Court grant the following relief, pursuant to Rule 26(b)(2)(C)(iii) and/or Rule 26(c)(1):

(A) Order that compliance with the subpoenas, and the City's review of any documents produced to date, be held in abeyance until the Court has ruled on this motion;

(B) Grant this motion;

(C) Order the City to withdraw the subpoenas and destroy any documents that have been produced to date; and

(D) Provide any such further relief as the Court deems just and proper.


Dated: September 25, 2024         Respectfully submitted,

                                  s/ *Antonio M. Romanucci*

                                  Antonio M. Romanucci (Ill. Bar No. 6190290) (*pro hac vice*)
                                  Bhavani K. Raveendran (Ill. Bar No. 6309968) (*pro hac vice*)
                                  Sarah Raisch (Ill. Bar No. 6305374) (*pro hac vice*)
                                  Sam Harton (Ill. Bar No. 6342112) (*pro hac vice*)
                                  **ROMANUCCI & BLANDIN, LLC**
                                  321 N. Clark St., Ste. 900
                                  Chicago, IL 60654
                                  +1 (312) 458-1000, Main
                                  +1 (312) 458-1004, Facsimile
                                  aromanucci@rblaw.net
                                  b.raveendran@rblaw.net
                                  sraisch@rblaw.net
                                  sharton@rblaw.net

                                  David L. Mendelson (Tenn. Bar No. 016812)
                                  Benjamin Wachtel (Tenn. Bar No. 037986)
                                  **MENDELSON LAW FIRM**

17

799 Estate Place
Memphis, TN 38187
+1 (901) 763-2500 (ext. 103), Telephone
+1 (901) 763-2525, Facsimile
dm@mendelsonfirm.com
bwachtel@mendelsonfirm.com

Ben Crump (Wash., D.C. Bar No. 1552623; Tennessee Bar No. 038054)
Chris O'Neal (Fla. Bar No. 910201) (*pro hac vice pending*)
Brooke Cluse (Tex. Bar No. 24123034) (*pro hac vice pending*)
**BEN CRUMP LAW, PLLC**
717 D Street N.W., Suite 310
Washington, D.C. 20004
+1 (337) 501-8356 (Cluse), Telephone
ben@bencrump.com
chris@bencrump.com
brooke@bencrump.com

*Attorneys for Plaintiff, RowVaughn Wells, individually and as Administratrix Ad Litem of the Estate of Tyre Deandre Nichols, deceased*

**CERTIFICATE OF CONSULTATION**

I, Sarah Raisch, hereby certify as follows: On September 6, 2024 and September 10, 2024, Plaintiff's counsel and counsel for the City met and conferred in an attempt to resolve the disputes presented in the above motion. The parties additionally engaged in substantial email correspondence regarding these issues. Despite the parties' good faith efforts, the parties have been unable to reach agreement, necessitating the above motion.

*s/ Sarah Raisch*
Sarah Raisch

**CERTIFICATE OF SERVICE**

I, Sarah Raisch, hereby certify that on September 25, 2024 I caused the foregoing to be electronically filed with the clerk of the court by using the CM/ECF system, and that, upon filing, such system will serve a copy of the foregoing upon all counsel of record in this action.

*s/ Sarah Raisch*
Sarah Raisch