**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| RowVaughn Wells,<br><br>Plaintiff,<br><br>v.<br><br>The City of Memphis, *et al.*,<br><br>Defendants. | Case No. 2:23-CV-02224<br><br>JURY DEMAND |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT CITY OF MEMPHIS'S MOTION TO SUPPLEMENT AND REQUEST FOR RELIEF TO CURE PREJUDICE**

Plaintiff RowVaughn Wells, through her undersigned counsel, submits this response in opposition to Defendant City of Memphis's Motion for Leave to File Supplemental Response in Opposition to Plaintiff's Motion for Protective Order (the "City's Motion") (ECF No. 230), and requests specific relief to cure the prejudice caused by the City's Motion, for the reasons set forth below. The City's Motion is a transparent—and successful—attempt to have derogatory allegations about Tyre Nichols, his family, and his lawyers, larded with innuendo, picked up by the press and injected into the public narrative about this case. It is a bad faith filing intended to poison the jury pool against Mr. Nichols and his family.

The Court should not stand by and permit its public docket to be misused in this manner. The Court, indeed, has already removed the City's Motion from the docket, which is an appropriate interim measure. Plaintiff respectfully submits that the City's Motion should be permanently sealed, and that additional, targeted prophylactic remedies are needed to mitigate the damage that the City's public filing has already caused. Plaintiff describes that relief herein.

## DISCUSSION

The City's Motion is styled as a simple housekeeping matter, seeking leave merely to supplement a previous discovery pleading. In reality the City's Motion, though just over two pages long, is a compendium of salacious claims about Tyre Nichols and his family. It claims Mr. Nichols was involved in domestic violence years before his death. It highlights that a substantial sum of money was given to the mother of Mr. Nichols' minor child, and baselessly implies an unspecified *quid pro quo* between the child's mother and Plaintiff, or perhaps Plaintiff's attorneys. It recounts hearsay about an alleged dispute between Mr. Nichols and his own mother that caused him to leave the house before his death. And it claims Plaintiff paid off a non-party, who is not even a percipient witness to the facts at issue in this case.

The allegations range from misleading to flatly false.[1] More importantly, none of them have any bearing on the claims or defenses in this case. Any of them, had they been included in the City's answer to Plaintiff's complaint, would have been subject to a Rule 12(f) motion to strike as "immaterial, impertinent, or scandalous matter." But each of them is an explosive and tantalizing claim about the personal lives of the parties in one of this city's most high-profile lawsuits in decades, and as such, each was guaranteed to do one thing: lead the press to repeat the same claims in the Memphis media market.

That, indeed, has already happened. Plaintiff's counsel began receiving press inquiries just a few hours after the City's Motion was filed, and local press have already published multiple articles reporting on the City's Motion and repeating its disparaging claims. Those news reports have headlines like this one, from the Daily Memphian: *City Takes Aim at Nichols' Family in New*

[1] None of these explosive claims are supported by citations to deposition transcripts, as the City did not wait for the transcripts to be prepared before filing its motion.

*Court Filing*,[2] and this one, from the Memphis Commercial Appeal: *City Alleges Domestic Violence, Family Troubles in Latest Tyre Nichols Filing*.[3] At least two stories so far identify the mother of Mr. Nichols' young child by name. *Id.* Surely there are more articles, and more will follow.

This should never have happened. Courts flatly prohibit parties from making "the court . . . a partner in the use of subpoenaed material 'to gratify private spite or promote public scandal' . . . with no corresponding assurance of public benefit." *Smith v. City of Greensboro*, No. 1:19-cv-386, 2021 WL 5772309, at *10 (M.D.N.C. Oct. 18, 2021) (quoting *Nixon v. Warner Com.*, 435 U.S. 589, 603 (1978)). But that is precisely what the City has done. Virtually every substantive line of the City's extraordinary filing sets out tantalizing claims, which—taken out of context and presented without the transcripts to provide the full facts—invite the public to assume improper motives and low character of Mr. Nichols, his mother, the mother of Mr. Nichols' child, and Plaintiff's counsel. It goes further, needlessly publicizing front and center the name of the mother of Mr. Nichols' young child—which will require little, in this age of internet research, to identify her family and the child. The City had no reason to highlight the mother's name in its filing other than to sully and intimidate her and her family.

None of this information, it bears repeating, is relevant to the claims and defenses in this case. It is, rather, information that the City gathered using the Court's subpoena power, and has now published via the City's Motion to generate negative connotations about the personal lives of

[2] Samuel Hardiman, *City Takes Aim at Nichols' Family in New Court Filing*, Daily Memphian (Nov. 16, 2024), https://dailymemphian.com/subscriber/section/metrocity-of-memphis/article/47963/city-of-memphis-new-claims-tyre-nichols-civil-suit.

[3] Lucas Finton, *City Alleges Domestic Violence, Family Troubles in Latest Tyre Nichols Filing*, Memphis Commercial Appeal (Nov. 16, 2024), https://www.commercialappeal.com/story/news/local/2024/11/16/city-of-memphis-targeting-tyre-nichols-california-history-in-filing/76361482007/.

an American family that has been thrust into public life by the horrific acts of the City's own employees. This Court would never tolerate Plaintiff using the Court's docket to publicize irrelevant yet embarrassing details about the private lives of the police officer defendants in this case, and rightfully so. It should not countenance such conduct by the City either.

To be clear, Plaintiff does not seek to shield herself or her family from fair-play litigation. Federal discovery is appropriately broad and will often result in the gathering of information that is both irrelevant and possibly embarrassing. And where private and even discomfiting information must be aired in order to resolve the claims or defenses in a matter, that is the necessary price parties pay for the adjudication of cases in a court of law. It is something else, however, to use a court's docket to publish irrelevant, scandalous information—and misrepresentations—against an opponent. And in a case like this one, in which virtually every court filing has been covered by local media, the only plausible purpose of such a filing is to prejudice the potential jury pool, shifting the public's focus from the defendants' shocking misconduct to irrelevant, damaging innuendo about Plaintiff and Mr. Nichols.

* * *

The dispute that putatively gives rise to the City's Motion involves subpoenas by the City to gather broad swathes of communications and correspondence between Mr. Nichols, his family in Memphis, close family friends in Sacramento, and the mother of Mr. Nichols' child. These were people with whom Mr. Nichols had personal connections going back decades, but who had no connection to his death and thus the events in this case. While some discovery may be appropriate (Plaintiff did not object to the depositions of these witnesses), Plaintiff opposed the City's broad document subpoenas as a fishing expedition for irrelevant character evidence and filed a motion for protective order. ECF No. 211. The City opposed Plaintiff's motion, ECF No. 216, which is

still pending, and then chose to move forward with the depositions, deposing the Sacramento family and the mother of Mr. Nichols' child during the week of November 11, 2024. The depositions covered three days and featured hours of testimony—much of it about Mr. Nichols, but virtually all of it of dubious relevance to any claim or defense in this case. Included in that testimony was information relating to that set out, albeit in an untrue or misleading fashion, in the City's Motion.

If the City's lawyers believed that the testimony of the witnesses called for revisiting all or part of Plaintiff's motion for protective order or the scope of the City's document subpoenas to these witnesses, it would have been a simple matter to raise the issue with Plaintiff's counsel, either during or after the depositions. Indeed, that is the very purpose of Rule 37(a)(1), which provides that a movant must "in good faith confer[] or attempt[] to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Nothing was said, however.

On the afternoon of Friday November 15, 2024, counsel for the City emailed asking for consent to file a supplemental response to Plaintiff's motion for protective order. Nobody opposed this request, including counsel for Plaintiff.[4] So eager was the City to file its Motion, it did not wait for the transcripts of the depositions to be created, and filed the City's Motion within an hour or so of receiving no objection.

The City's experienced and sophisticated counsel would have known that in the circumstance of an unopposed motion for leave to supplement, a general submission citing "new evidence," "additional information," and generalized descriptions of new issues would have been

[4] Plaintiff's counsel informed counsel for the City that Plaintiff would not oppose the City's motion for leave to file a supplemental response on the condition that the City agree not to oppose Plaintiff filing a reply brief. *See* Ex. A.

enough. That made the motion that the City did file, with its explosive claims about the character of both Plaintiff and Mr. Nichols, doubly unnecessary. Had the City conferred with Plaintiff's counsel about targeting its subpoenas in light of the deposition testimony, the filing of the City's Motion would likely have been entirely unnecessary. And given that Plaintiff consented to the City's motion to supplement, the City could have brought the motion as a generic request. Instead, it assembled a compendium of irrelevant, embarrassing, and misleading claims about Mr. Nichols and his family under the guise of a routine motion for leave.

The City's motivation for misusing the Court's docket is not hard to guess. This is a case of extraordinary gravity. Mr. Nichols was an innocent young man who was pulled over and then beaten to death by Memphis police officers, for no reason. Ample evidence, including explosive testimony offered at the recent federal criminal trial of those officers, revealed that in beating Mr. Nichols, those officers were following a longstanding custom within the Memphis Police Department of imposing a "run tax" on civilians who fled from them—a practice that the City has tolerated and enabled for years through an entrenched code of silence across the department. Those are the basic ingredients of *Monell* liability. More to the point—and as the City must recognize—these facts can be expected to outrage a jury.

Given that reality, as this case gets closer to trial, the City has every incentive to create a counter-narrative in the public, focusing on purported character flaws of Mr. Nichols, his family, or his lawyers. It is hard to imagine that the City's lawyers had any other intention in filing its Motion. What could possibly be the point of airing purported fights between Mr. Nichols and his son's mother *years* before his death, ***and*** specifying the exact, large sum of money received by the son's mother, ***and*** detailing a purported serious dispute between Mr. Nichols and his mother in the days before his death, ***and*** charging that Plaintiff has used money to tamper with a witness—all in

a three-page, unopposed housekeeping motion merely seeking leave to supplement a response to a motion for protective order? Indeed, Plaintiff's motion for protective order does not even challenge the City's subpoena to the child's mother. The Court need not be taken for a fool. The City has highjacked the Court's docket for a highly improper purpose.

**REQUESTED RELIEF**

The City's experienced lawyers have used the Court's docket to file explosive and irrelevant claims that, in a high-profile case like this one, will predictably be picked up and then broadcast by the press, which is precisely what has happened. Plaintiff submits to the Court that the City's Motion is a calculated effort to poison the jury pool. Given that reality, Plaintiff respectfully submits that three remedies are in order:

***First***, Plaintiff will separately request that the Court seal any portions of the City's Motion (ECF No. 230) that refer to Mr. Nichols' child or the child's mother. Plaintiff's separate motion to seal focuses on the City's exposure of the identity of the mother of Mr. Nichols' child and the danger that publication created. Here, Plaintiff adds that the City's Motion should be sealed in its entirety to remove from the public record the other incendiary and highly prejudicial allegations set out in the City's filing, which threaten to poison the jury pool. These compelling interests warrant sealing the City's Motion in its entirety and outweigh any value of public disclosure—which is none—for the reasons explained above. *See Valenti v. Dfinity USA Rsch. LLC*, No. 21-CV-06118-JD, 2023 WL 3331310, at *5 (N.D. Cal. May 8, 2023) (sealing documents that were "unrelated to the merits of the underlying cause[s] of action," where the documents "could scandal or cause annoyance or embarrassment" to a non-party) (internal quotations and citations omitted).[5]

---

[5] For the same reasons that the City's Motion should be sealed, Plaintiff has redacted from this response brief any descriptions of the allegations in the City's motion, and seeks leave to file under seal this unredacted version of this brief.

***Second***, Plaintiff requests that the Court enter an order admonishing the City and its attorneys for filing its Motion in the manner they did, and warn them against making similar filings going forward.

***Third***, Plaintiff requests that the Court permit Plaintiff to cure the prejudice caused by the City's Motion at the jury selection stage. If the salacious details set out in the City's Motion are not otherwise introduced in the public record (so far, the allegations are *only* in the public because of the City's Motion) or deemed admissible for trial, Plaintiff requests leave to submit a questionnaire to potential jurors designed to determine whether any of them learned of the information contained in the City's Motion; and, if a potential juror indicates that they did learn of such information, Plaintiff should have the right to strike that juror for cause.

This targeted relief should effectively address the unfair prejudice caused by the City's purposeful effort to denigrate Plaintiff, Mr. Nichols, and his family through the filing of the salacious, irrelevant claims contained in the City's Motion.

Dated: November 17, 2024 Respectfully submitted,

/s/ *Antonio M. Romanucci*
Antonio M. Romanucci (Ill. Bar No. 6190290) (*pro hac vice*)
Bhavani K. Raveendran (Ill. Bar No. 6309968) (*pro hac vice*)
Sarah Raisch (Ill. Bar No. 6305374) (*pro hac vice*)
Joshua M. Levin (Ill. Bar No. 6320993) (*pro hac vice*)
Stephen H. Weil (Ill. Bar No. 6291026) (*pro hac vice*)
Sam Harton (Ill. Bar No. 6342112) (*pro hac vice*)
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark St., Ste. 900
Chicago, IL 60654

+1 (312) 458-1000, Main
+1 (312) 458-1004, Facsimile
aromanucci@rblaw.net
b.raveendran@rblaw.net
sraisch@rblaw.net
jlevin@rblaw.net
sweil@rblaw.net
sharton@rblaw.net

David L. Mendelson (Tenn. Bar No. 016812)
Benjamin Wachtel (Tenn. Bar No. 037986)
**MENDELSON LAW FIRM**
799 Estate Place
Memphis, TN 38187
+1 (901) 763-2500 (ext. 103), Telephone
+1 (901) 763-2525, Facsimile
dm@mendelsonfirm.com
bwachtel@mendelsonfirm.com

Ben Crump (Wash., D.C. Bar No. 1552623;
Tennessee Bar No. 038054)
Chris O'Neal (Fla. Bar No. 910201) (*pro hac vice pending*)
Brooke Cluse (Tex. Bar No. 24123034) (*pro hac vice pending*)
**BEN CRUMP LAW, PLLC**
717 D Street N.W., Suite 310
Washington, D.C. 20004
+1 (337) 501-8356 (Cluse), Telephone
ben@bencrump.com
chris@bencrump.com
brooke@bencrump.com

LaShonda Council Rogers (Ga. Bar No. 190276)
(*pro hac vice pending*)
**COUNCIL & ASSOCIATES, LLC**
50 Hunt Plaza, SE Suite 740
Atlanta, GA 30303
+1 (404) 526-8857, Telephone
+1 (404) 478-8423, Facsimile
lrogers@thecouncilfirm.com

Earnestine Hunt Dorse (Tenn. Bar No. 012126)
**EARNESTINE HUNT DORSE**
3268 N Waynoka Circle
Memphis, TN 38111-3616

+1 (901) 604-8866, Telephone
ehdorse@gmail.com

*Attorneys for Plaintiff, RowVaughn Wells, individually and as Administratrix Ad Litem of the Estate of Tyre Deandre Nichols, deceased*

**CERTIFICATE OF SERVICE**

I, Antonio M. Romanucci, hereby certify that on November 17, 2024, I caused the forgoing to be electronically filed with the clerk of the court by using the CM/ECF system, and that upon filing, such system will serve a copy of the foregoing upon all counsel of record in this action, and that Plaintiff's counsel served an unredacted version of the foregoing to all counsel of record via email.

*/s/ Antonio M. Romanucci*
Antonio M. Romanucci