IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ROWVAUGHN WELLS,<br><br>　　　　Plaintiff,<br><br>v.<br><br>THE CITY OF MEMPHIS, *et al.*,<br><br>　　　　Defendants. | Case No. 2:23-cv-02224-MSN-ATC<br><br>JURY DEMAND |

### PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 15 Plaintiff, through her undersigned counsel, hereby moves the Court for leave to file an amended complaint. A copy of Plaintiff's proposed First Amended Complaint is attached hereto as **Exhibit 1**. Plaintiff has consulted with the Defendants in this action, and each Defendant has told Plaintiff they oppose this motion.

Pursuant to Local Rule 7.1(d), and for the reasons set forth herein, Plaintiff additionally requests a hearing on this motion.

Plaintiff brings this motion in the wake of the criminal trial in *United States v. Bean et al.*, No. 2:23-cr-20191 (W.D. Tenn.), over which this Court presided. That trial featured blockbuster revelations about multiple, unwritten customs and practices within the Memphis Police Department ("MPD") that drove and enabled the savage beating of Tyre Nichols by multiple MPD officers. Multiple police witnesses, at least four of whom appear to have been cooperating with federal prosecutors under threat of criminal charges or prison time, testified that there was a longstanding and widespread custom within the MPD of imposing a "tax" to punish civilians who had annoyed the police during an encounter—meaning that officers would beat such people

1

without justification.  Police would cover up such beatings, these same officers explained, by manipulating what their body-worn cameras recorded, and by lying to exaggerate the danger posed by their victims to make the beatings appear justified.  These police witnesses also testified to a code of silence within the MPD that concealed this misconduct, thereby enabling it.  And the testimony of the officer-witnesses indicated that these customs both drove and enabled the savage beating of Mr. Nichols on January 7, 2023.

Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), these revelations are watershed evidence against the City of Memphis for its culpability in Mr. Nichols' death. They call for an amendment of Plaintiff's complaint to comport with this evidence.  Plaintiff promptly requested a copy of the *United States v. Bean* trial transcript and has now completed a review of more than 2,000 pages of the trial record.  Upon completing that review Plaintiff served additional *Monell* discovery on the City, and now seeks the Court's leave to file a First Amended Complaint that incorporates evidence adduced during the *United States v. Bean* trial.

In this motion, Plaintiff seeks leave to file that amended complaint in the Court's docket. In support of her request, Plaintiff states as follows:

**BACKGROUND**

The Court is familiar with the facts giving rise to this case.  On January 7, 2023, multiple Memphis police officers beat Tyre Nichols so brutally that he died three days later in a hospital intensive care unit.  The officers involved in beating Mr. Nichols initially claimed the force they used against him was necessary because he fought with them during the encounter.  Their story, however, was undone by a surveillance camera that—unbeknownst to those officers—was mounted on a nearby light pole and captured footage showing that their use of force against Mr. Nichols was entirely unjustified and was enacted for no apparent purpose except to punish him.

In April 2023, Plaintiff brought this Section 1983 action against those officers, as well as the City of Memphis. *Wells* ECF 1. Besides asserting claims against various individual defendants, the complaint asserted a *Monell* claim against the City. The *Monell* claim focused on the MPD's "SCORPION" Unit of which the defendant-officers were members. SCORPION was a tactical-unit program that the MPD's new police chief had championed, even though similar police units in other jurisdictions had been disbanded for routinely using excessive force on civilians. *Id.* ¶¶ 50-105.

Discovery in this case has proceeded, but it has been circumscribed by criminal charges pending against the officers who were involved in beating Mr. Nichols that were brought by both federal and state prosecutors. To protect the Fifth Amendment rights of the officer-defendants, the Court has allowed discovery to proceed against the City but has stayed discovery against the indicted officers until the conclusion of the criminal cases against them. *See* ECF 110. Such stays are familiar in Section 1983 cases where government agents are criminally indicted for conduct that also gives rise to *Monell* claims, *see, e.g.*, *Martinez v. City of New York*, No. 23-cv-6303, 2023 WL 6877906 (S.D.N.Y. Oct. 18, 2023) (under similar facts, finding substantial overlap and still lifting stay of discovery as to municipal liability issues), but they do complicate *Monell* discovery. Indeed, while Plaintiff has been vigorous in gathering *Monell* evidence in this case, up until the *United States v. Bean et al.* criminal trial, Plaintiff has had limited tools for exploring the brazenly excessive force the defendant-officers used against Mr. Nichols and connecting that force with the municipal customs and practices that are required for municipal liability under *Monell*.

The federal *United States v. Bean* criminal trial of the officers changed all that. At the trial, multiple MPD officers who were previously unknown to Plaintiff offered testimony, for the first time, revealing that the shocking beating of Mr. Nichols was driven and enabled by longstanding

3

and widespread practices of brutality and cover-up within the MPD. Among the most salient testimony included the following:

**The "run tax" or "street tax."** Multiple MPD witnesses testified that within the MPD there was a custom of inflicting a "run tax" or "street tax," pursuant to which police officers would enact some form of physical punishment if a civilian ran from or otherwise angered a Memphis police officer. *See U.S. v. Bean* ECF 676 at 82:6-22. That punishment generally meant beating the person once they were in custody. *See U.S. v. Bean* ECF 677 at 99:25-100:6; ECF 676 at 244:10-18. Critically, the "run tax" was not limited to the SCORPION Unit. Asked how he learned about the "run tax," for example, MPD Officer James Harvey testified, "I heard it from officers when I was in patrol. Heard it all the time from older officers that had been on the job for a while." *U.S. v. Bean* ECF 676 at 244:19-22.

MPD witnesses at the *Bean* trial also connected the custom of the "tax" directly to the officers who beat Mr. Nichols. They testified that those officers used the "tax" term when communicating informally with each other about beating arrestees, *see U.S. v. Bean* ECF 676 at 124:4-18, and they testified that they had seen multiple members of the team who beat Mr. Nichols previously impose the "tax" on other people who were arrested—including a person whom the officers abused the very day before they beat Mr. Nichols. *U.S. v. Bean* ECF 677 at 100:7-101:25.

**Manipulation of evidence.** Police witnesses testified that the "run tax" and similar acts of brutality were hidden through a practiced system of lies, concealment, and manipulation of evidence. These witnesses testified that when police used excessive force against a person, officers would exaggerate or fabricate what the person did, manufacturing violent or threatening behavior that falsely made the officers' excessive force appear proportional and necessary. *See, e.g., U.S. v. Bean* ECF 674 at 243:14-24; ECF 676 at 119:13-25. To further obscure what happened when

4

officers used excessive force, these witnesses testified, police sometimes manipulated the evidence that was captured by their body-worn cameras. *See, e.g.*, *U.S. v. Bean* ECF 676 at 87:25-88:6. MPD officers would do this by a variety of means. MPD witnesses testified, for example, that officers would fail to turn on the cameras for an encounter with a civilian, *U.S. v. Bean* ECF 674 at 242:1-10, would activate the cameras but then cover them during inappropriate uses of force, *id.* at 87:25-88:6 and would shoo away from the scene officers with active cameras so that abuse would not be documented. *Id.* at 88:1-89:4.

**Code of silence**. Multiple police witnesses testified that the lies Memphis police told to justify their illegal uses of force were enabled by a code of silence. Police witnesses testified that they did not report beatings because they anticipated retaliation from other officers if they did so. *See, e.g.*, *U.S. v. Bean* ECF 676 at 244:23-245:23; ECF 646 at 85:2-86:23. This could have deadly consequences. One officer testified that he feared that if he were labeled a "snitch" within the department, he might not get help from other officers when he needed it in the field. *U.S. v. Bean* ECF 676 at 245:18-23.

These officers also revealed that the code of silence ran up the MPD's ranks: in those rare instances in which a line officer did venture to report abuse, one police witness testified, his superior did not investigate the use of force itself, and instead cautioned the *reporting officer* against making such reports lest he be labeled a "snitch." *U.S. v. Bean* ECF 646 at 141:5-21. At the trial, testimony from officers and an FBI agent revealed that the officers who beat Mr. Nichols operated under this code of silence, believing their beating of Mr. Nichols would be hidden behind lies to justify their assault and silence to prevent accountability. *See U.S. v. Bean* ECF 646 at 82:7-86:23, 90:3-91:10; ECF 674 at 243:14-24. Indeed, their supervisor, Defendant Lieutenant DeWayne Smith, appeared all too willing to accept the officers' fabricated justifications for the

beating, until the mounted pole video footage was released and revealed their narratives to be false. *U.S. v. Bean* ECF 665 at 107:7-109:1.

## DISCUSSION

The police testimony in *United States v. Bean* that Plaintiff has summarized above is bombshell *Monell* evidence. It is direct evidence of flagrantly unconstitutional customs and practices within the MPD, and it is compelling evidence indicating that those customs and practices both drove and enabled the unlawful beating of Mr. Nichols. The *Bean* police testimony revealed that those customs and practices predated and go well beyond the SCORPION Unit, and instead have long been accepted and encouraged within the MPD generally.

It is unlikely, moreover, this evidence ever would have come to light without the *United States v. Bean* criminal trial. That is so because it appears that the federal prosecutors in *Bean* were able to break that code of silence by threatening the police witnesses with prison time if they did not cooperate. Defendants Mills and Martin both testified pursuant to plea agreements that compelled fulsome cooperation with federal prosecutors. *See, e.g.*, *U.S. v. Bean* ECF 91 (Mills plea agreement, conditioning government's recommendation of sentencing leniency on whether the government determined that the defendant had "cooperated fully and provided substantial assistance" to the government); *U.S. v. Bean* ECF 499 (Martin plea agreement; similar conditions). The other two Memphis police witnesses who offered the most revealing *Monell* testimony were Kyle Coudriet and James Harvey. Both Coudriet and Harvey testified that they had lied to FBI agents investigating the death of Mr. Nichols, *see U.S. Bean* ECF 676 at 120:17-121:4, 132:12-24, 206:14-207:5 (Coudriet); *U.S. Bean* ECF 676 at 245:24-246:7 (Harvey). Federal prosecutors obviously caught them in those lies, and were, in all likelihood, able to extract cooperation from both officers on the threat of charging them with perjury, obstruction, or a similar federal crime.

The power wielded by federal prosecutors to extract testimony by threatening witnesses with criminal convictions and prison time is simply unavailable to civil litigants like Plaintiff. If anything, the criminal predicaments of Coudriet and Harvey drive this point home: neither officer was implicated in Mr. Nichols' beating, nor implicated by the City during the course of discovery in the civil case, yet both were willing to lie to *FBI agents* in order to cover up misconduct by fellow MPD officers. Only after they were confronted with those lies—a federal felony, exposing them to criminal prosecution, *see* 18 U.S.C. § 1001(a)—did Coudriet and Harvey reveal the existence of the "run tax" and the code of silence at the *U.S. v. Bean* trial. A civil litigant never could hope to extract similarly damning, truthful testimony from police officers operating under such a powerful and effective code of silence. There is simply no reason to believe that the *Monell* evidence elicited during *United States v. Bean* would ever have been obtained without the criminal trial, whether this Court's Fifth Amendment stay in this case was in place, or not.

## RELIEF REQUESTED

***Amended complaint***. The new evidence disclosed in the *United States v. Bean* criminal trial has shifted the terrain in this case. It calls for an amendment of Plaintiff's complaint in this case. Plaintiff has polled the Defendants, all of whom oppose Plaintiff's request to amend. "Leave to amend should be 'freely' granted 'when justice so requires.'" *Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018) (quoting Fed. R. Civ. P. 15(a)(2)). Indeed, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[I]t should be emphasized that the case law in this Circuit manifests liberality in allowing amendments to a complaint." *Newberry v. Silverman*, 789 F.3d 636, 645 (6th Cir. 2015) (quotation omitted).

The proposed First Amended Complaint is entirely appropriate under these principles. The amended allegations flow from the testimony outlined in this brief *supra*—the longstanding custom within the MPD of imposing a "tax" on civilians who ran from or otherwise aggravated the police, and the manipulation of evidence and broader code of silence that enabled this misconduct. *See, e.g.*, Exhibit 1 ¶¶ 45-99. And they charge that both these widespread and longstanding practices were at play in the decision by the defendant SCORPION officers to beat Mr. Nichols, believing that they could do so with impunity because of the MPD's code of silence. *Id.* ¶¶ 128, 141, 180-186.

The proposed First Amended Complaint makes some additional changes that are appropriate under the circumstances. It narrows Plaintiff's allegations regarding the MPD's training, which Plaintiff amends in part due to the testimony of Officer Larnce Wright during the *Bean* trial. *See U.S. v. Bean*, ECF 673 at 88:8-225:22, ECF 674 at 19:18-228:14. The proposed amended complaint is also amended to identify Chief Davis as being sued in her individual capacity. *See* Exhibit 1 ¶¶ 14. Plaintiff timely proposed making this amendment in response to the City's motion to dismiss, *see* ECF 81, meaning that Plaintiff's request has thus been pending since well before the running of the statute of limitations on claims against Chief Davis.[1] The remainder of the amendments to the proposed complaint are secondary.

The proposed amendments will not prejudice the Defendants. The City's Rule 12(b)(6) motion to dismiss Plaintiff's existing complaint has yet to be ruled upon, such that Plaintiff would be expected to be given the opportunity to amend her claims if the Court accepted the City's arguments about the merits of the City's Rule 12 contentions—many of which would be resolved

---

[1] To the extent Defendants object to identifying Chief Davis as a defendant in her individual capacity, Plaintiff respectfully submits that those objections should be advanced on the merits once the complaint has been amended, rather than being adjudicated under Rule 15.

by the changes Plaintiff is now proposing in the current proposed amended complaint. *Compare* ECF 81 (City's arguments regarding SCORPION) *with* Exhibit 1 ¶¶ 45-100 (broader allegations regarding MPD). There is also no surprise to the proposed amendment—the City's lawyers presumably followed the *Bean* trial as closely as counsel for Plaintiff, and in all events Plaintiff's counsel has advised the City since October that in light of the testimony at the *Bean* trial, an amended complaint was coming.

Nor will amending the complaint improperly delay the adjudication of this case. Plaintiff is endeavoring to take discovery on the new allegations as quickly as possible, and, as noted above, has already served new discovery targeted at the *Monell* testimony in the *Bean* trial. And that testimony would warrant an extension of the schedule for this case in its own right. But there is no reason to anticipate any delay in this case at all. While the *Bean* federal criminal trial of the officer-defendants was recently completed, the *state* criminal trial of those same defendants is not scheduled to *start* until late April 2025. That means we can anticipate that the Court's Fifth Amendment stay, described *supra*, will remain in place through at least May 2025. Only then will Plaintiff be allowed to take discovery from the defendants who actually beat Mr. Nichols and whose conduct gave rise to this case. The intervening time can be used profitably to gather the *Monell* discovery that is suggested by the *Bean* testimony, and which is contemplated in the proposed amended complaint. The City (and the other Defendants) will not be prejudiced by the gathering of this important discovery.

***Hearing.*** This case features multiple individual defendants, a municipal *Monell* defendant, and multiple parallel criminal proceedings. An amendment of the operative complaint in the manner Plaintiff proposes will have complex and differing implications for this complex case and the various parties to it, as well as the management of the case going forward. Plaintiff respectfully

9

submits that the Court would benefit from a live hearing in which the Court can weigh the various arguments and positions of the parties in a flexible manner. Under such circumstances, Plaintiff submits that hearing under Local Rule 7.1(d) is called for.

**WHEREFORE,** Plaintiff respectfully requests that the Court issue an order:

(A)   Granting Plaintiff leave to file the amended complaint attached hereto as Exhibit 1.

(B)   Setting an in-person hearing regarding case management to be held as the Court's schedule permits.

Dated: November 30, 2024

Respectfully submitted,

*s/ Antonio M. Romanucci*

Antonio M. Romanucci (Ill. Bar No. 6190290) (*pro hac vice*)
Bhavani K. Raveendran (Ill. Bar No. 6309968) (*pro hac vice*)
Sarah Raisch (Ill. Bar No. 6305374) (*pro hac vice*)
Joshua M. Levin (Ill. Bar No. 6320993) (*pro hac vice*)
Stephen H. Weil (Ill. Bar No. 6291026) (*pro hac vice*)
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark St., Ste. 900
Chicago, IL 60654
+1 (312) 458-1000, Main
+1 (312) 458-1004, Facsimile
aromanucci@rblaw.net
b.raveendran@rblaw.net
sraisch@rblaw.net
jlevin@rblaw.net
sweil@rblaw.net

David L. Mendelson (Tenn. Bar No. 016812)
Benjamin Wachtel (Tenn. Bar No. 037986)
**MENDELSON LAW FIRM**

10

799 Estate Place
Memphis, TN 38187
+1 (901) 763-2500 (ext. 103), Telephone
+1 (901) 763-2525, Facsimile
dm@mendelsonfirm.com
bwachtel@mendelsonfirm.com

Ben Crump (Wash., D.C. Bar No. 1552623; Tennessee Bar No. 038054)
Chris O'Neal (Fla. Bar No. 910201) (*pro hac vice pending*)
Brooke Cluse (Tex. Bar No. 24123034) (*pro hac vice pending*)
**BEN CRUMP LAW, PLLC**
717 D Street N.W., Suite 310
Washington, D.C. 20004
+1 (337) 501-8356 (Cluse), Telephone
ben@bencrump.com
chris@bencrump.com
brooke@bencrump.com

LaShonda Council Rogers (Ga. Bar No. 190276) (*pro hac vice pending*)
**COUNCIL & ASSOCIATES, LLC**
50 Hunt Plaza, SE Suite 740
Atlanta, GA 30303
+1 (404) 526-8857, Telephone
+1 (404) 478-8423, Facsimile
lrogers@thecouncilfirm.com

Earnestine Hunt Dorse (Tenn. Bar No. 012126)
**EARNESTINE HUNT DORSE**
3268 N Waynoka Circle
Memphis, TN 38111-3616
+1 (901) 604-8866, Telephone
ehdorse@gmail.com

*Attorneys for Plaintiff, RowVaughn Wells, individually and as Administratrix Ad Litem of the Estate of Tyre Deandre Nichols, deceased*

## CERTIFICATE OF CONSULTATION

Pursuant to Local Rule 7.2(a)(1)(B), the undersigned hereby certifies that from November 26, 2024, to November 30, 2024, counsel for Plaintiff consulted with counsel for Defendants via email regarding the relief requested in the foregoing motion. Defendants oppose the requested relief.

*s/ Antonio M. Romanucci*
Antonio M. Romanucci