IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ROW VAUGHN WELLS, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF TYRE DEANDRE NICHOLS, DECEASED, ) ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | CASE NO. 2:23-CV-02224 JURY DEMAND |
| THE CITY OF MEMPHIS, A MUNICIPALITY; CHIEF CERELYN DAVIS, IN HER OFFICIAL CAPACITY; EMMITT MARTIN III, IN HIS INDIVIDUAL CAPACITY; DEMETRIUS HALEY, IN HIS INDIVIDUAL CAPACITY; JUSTIN SMITH, IN HIS INDIVIDUAL CAPACITY; DESMOND MILL, JR. IN HIS INDIVIDUAL CAPACITY; TADARRIUS BEAN, IN HIS INDIVIDUAL CAPACITY; PRESTON HEMPHILL, IN HIS INDIVIDUAL CAPACITY; ROBERT LONG, IN HIS INDIVIDUAL CAPACITY; JAMICHAEL SANDRIDGE, IN HIS INDIVIDUAL CAPACITY; MICHELLE WHITAKER, IN HER INDIVIDUAL CAPACITY; DEWAYNE SMITH, IN HIS INDIVIDUAL CAPACITY AND AS AGENT OF THE CITY OF MEMPHIS, ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

**DEFENDANT CITY OF MEMPHIS'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

Defendant the City of Memphis (the "City") hereby files the following Response in Opposition to Plaintiff's Motion for Leave to File Amended Complaint ("Motion to Amend"). (ECF No. 248.)

1

4937-0800-6149

I.      **INTRODUCTION**

Plaintiff filed her Complaint at Law on April 19, 2023. (ECF No. 1.) Now, almost twenty months later, and less than three months ahead of trial (based on the operative scheduling order[1]), Plaintiff has moved for leave to file an amended complaint. Such an amendment should not be permitted. As a threshold matter, Plaintiff's motion is procedurally improper, as it ignores that the deadline to amend pleadings passed over a year ago. Federal Rule of Civil Procedure 16 and case law provide clear requirements for any motion to amend pleadings after a deadline has passed, but Plaintiff fails to acknowledge such procedures and precedent.

Moreover, not only is amendment untimely at this juncture, but amendment would cause further undue delay and prejudice to the City, and likely to the other defendants. Trial is currently set for March 2025—approximately three months from now. The parties have already engaged in significant discovery, including thirteen depositions taken by Plaintiff. At this late stage, amendment would unduly prejudice the defendants by depriving the defendants of sufficient time to reevaluate their arguments and defenses in light of the new allegations, or would cause undue delay by pushing back deadlines far enough to accommodate for the significant changes in Plaintiff's case as proposed in the amendments,[2] or both. Finally,

---

[1] On July 18, 2024, Plaintiff and the City filed a Joint Motion to Modify the Second Amended Scheduling Order ("Joint Motion"). (ECF No. 201.) The Joint Motion is still pending. On November 26, 2024, the City filed a motion requesting the Court to enter a modified scheduling order pursuant to the deadlines in the Joint Motion, ECF No. 201. (*See* ECF No. 246.) The Joint Motion suggests trial be set during the summer of 2025. (ECF No. 246, PageID 2750.) Nothing in this Response should be construed as the City withdrawing its motion for entry of a third amended scheduling order, filed as ECF No. 246.

[2] Indeed, Plaintiff has suggested a modified scheduling order that contemplates extending discovery through August 2025, dispositive motion briefing through February 2026, and no suggested trial date thereafter. (ECF No. 247, PageID 2753–54.) Of note, Plaintiff did not include a new deadline to file amended pleadings among this proposed modified schedule. *See infra* Section II.B.

2

Plaintiff's proposed amendment adding Chief Cerelyn Davis ("Chief Davis") as a party in her individual capacity is futile, as Plaintiff has failed to plausibly allege facts sufficient to impose any individual liability on Chief Davis.

For the reasons set forth herein, Plaintiff's Motion for Leave to File an Amended Complaint should be denied.

## II. LAW AND ARGUMENT

### A. Legal Standard for Motions to Amend Pleadings After Expiration of Amendment Deadline.

In situations where, such as here, the deadline for filing amended pleadings has passed,[3] leave to amend must be considered under both Rules 15 and 16 of the Federal Rules of Civil Procedure. *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003). In other words, a party must seek leave **both** to amend the pleadings **and** to modify the scheduling order.

#### 1. Rule 16

In 1983, Federal Rule of Civil Procedure 16 was revised to add a provision restricting the timing of amended pleadings. The Sixth Circuit explained in *Leary v. Daeschner* that "Rule [16] is designed to ensure that 'at some point both the parties and the pleadings will be fixed.'" *Leary*, 349 F.3d at 906 (quoting Fed. R. Civ. P. 16, 1983 advisory committee's notes).

While leave to amend under Rule 15 should be "freely" given, Rule 16 only "permits modification to the scheduling order 'upon a showing of good cause *and* by leave of the district judge.'" *Id.* (quoting Fed. R. Civ. P. 16(b)) (emphasis in original). The Sixth Circuit's directive on the intersection between Rule 15 and Rule 16 is clear:

> Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a).

---

[3] *See infra* Section II.B.

3

*Id.* at 909 (citations omitted).

Thus, the analysis for whether Plaintiff should be granted leave must start with Rule 16(b). A finding that Plaintiff has not established good cause is sufficient to support a denial of Plaintiff's motion, and the Court need not consider the Rule 15(a) factors. *Lockhart v. D & S Residential Servs., LP*, No. 218CV02586JPMCGC, 2020 WL 13111154, at *4 (W.D. Tenn. Mar. 17, 2020) (denying motion to amend upon a finding no good cause and declining to complete a Rule 15(a) analysis).

Good cause requires the movant to demonstrate "diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (quotation omitted); *see also Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 879 (6th Cir. 2020). A movant must explain why it *could not* have reasonably complied with the scheduling order, not merely why the movant *did not* seek leave to amend in accordance with the order. *Lockhart*, 2020 WL 13111154, at *4; *Interstate Packaging Co. v. Century Indem. Co.*, 291 F.R.D. 139, 145 (M.D. Tenn. 2013). Further, it is important for courts to consider "whether the opposing party will suffer prejudice by virtue of the amendment." *Leary*, 349 F.3d at 906 (citing *Inge,* 281 F.3d at 625).[4]

  2. Rule 15

Federal Rule of Civil Procedure 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

---

[4] While the Sixth Circuit indicated in *Leary* that Rule 16(b) requires a finding of both good cause and prejudice to the non-movant, it later clarified in *Korn v. Paul Revere Life Insurance Company* that prejudice is "merely a consideration that informs whether [movant] has satisfied the 'good cause' requirement of the *Leary* standard." *Korn*, 382 F. App'x 443, 450 (6th Cir. 2010); *see Interstate Packaging Co.*, 291 F.R.D. at 145 (comparing *Leary* and *Korn*, concluding that a movant "must justify its failure to file a timely Motion to Amend, independent of the resultant prejudice—or lack thereof—to" the non-movant).

4

Nevertheless, a party must act with due diligence if it intends to take advantage of [Rule 15's] liberality. *United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995); *see EEOC v. Taco Bell Corp.*, 575 F. Supp. 2d 884, 888 (W.D. Tenn. 2008); ("[T]he broad, permissive language appearing in Rule 15 does not mean that there are no standards by which the trial court is to be guided.")

Courts consider several factors when deciding whether to grant a motion to amend, including "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 458 (6th Cir. 2001).

Delay alone is typically an insufficient basis for denying leave to amend. *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 409 (6th Cir. 2000). However, if a movant's delay creates undue prejudice to the non-movant, a court may deny leave to amend a pleading. *See Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (noting that "allowing amendment after the close of discovery creates significant prejudice"). "The longer the delay, the less prejudice the opposing party will be required to show." *Garza*, 972 F.3d at 880; *see also Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 641 (6th Cir. 2018); *Phelps v. McClellan*, 30 F.3d 658, 662 (6th Cir. 1994); *Duggins*, 195 F.3d at 834 ("[A]n increased burden is on the movant at this late stage in the litigation to show justification for the failure to move earlier.").

A motion to amend is futile if the proposed amendments could not withstand a Rule 12(b)(6) motion to dismiss. *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005). Thus, to avoid futility, the proposed amended pleadings must allege non-conclusory factual statements

5

rather than mere conclusory allegations. *See Kircher v. City of Ypsilanti*, 809 F. App'x 284, 297 (6th Cir. 2020).

    **B.**    **Plaintiff's Motion is Procedurally Improper.**

        1.    <u>Plaintiff did not move to modify the scheduling order pursuant to Rule 16(b).</u>

Plaintiff moved to amend her complaint under Rule 15, but she failed to move to modify the scheduling order under Rule 16(b). (*See* ECF No. 248, PageID 2759 ("Pursuant to Federal Rule of Civil Procedure 15, Plaintiff . . . hereby moves the Court for leave to file an amended complaint.").) The deadline for amending pleadings was November 10, 2023. (ECF No. 111, PageID 935.) Despite Plaintiff's previous three motions to modify the scheduling order—two unopposed motions and one joint motion with the City—Plaintiff never once moved to modify the deadline to amend pleadings. *Leary*, 349 F.3d at 909 ("Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)")

Accordingly, Plaintiff's request leave to amend her complaint is at best, incomplete, and at worst, premature.

        2.    <u>Plaintiff has not demonstrated good cause because she did not exercise reasonable diligence in timely seeking leave to amend her Complaint.</u>

Even if the Court were to read a request to modify the Second Amended Scheduling Order into Plaintiff's Motion to Amend, Plaintiff has failed to demonstrate good cause for such a modification under Rule 16(b). *Garza*, 972 F.3d at 880; *see Interstate Packaging Co.*, 291 F.R.D. at 144–45 ("[T]he 'good cause' requirement . . . clearly refers to good cause for filing a motion to amend after the deadline, rather than good cause for the amendment itself."). Plaintiff has shown no "diligence in attempting to meet" the scheduling order's requirements.

6

Plaintiff has been on notice that the federal and/or state criminal trials may reveal information she wished to include in her Complaint arguably since September 2023, when Defendants Haley, Mills, Martin, Bean, and Justin Smith were indicted on September 12, 2023. *United States v. Bean, et al.*, No. 2:23-cr-20191 (W.D. Tenn.), ECF No. 1. On September 21, 2023, a Criminal Scheduling Order was entered, setting a jury trial for May 2024. *See U.S. v. Bean*, ECF No. 51. *See Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 450 (6th Cir. 2010) (affirming denial of motion to amend, in relevant part, where the plaintiff was aware of and had access to the agreement on which the proposed amendment was based); *Duggins*, 195 F.3d at 834 (denying motion to amend, in part, because the plaintiff was aware of the basis of the proposed new claim for many months).

Despite being on notice of the criminal trial schedule, Plaintiff failed to seek an extension to the scheduling order deadline for amending pleadings—a deadline that has long since passed. Plaintiff had several opportunities to request a modification of the scheduling order to include a new deadline by which to amend pleadings. She failed to do so, and she should not be permitted to request an extension to that deadline now. *See Lockhart*, 2020 WL 13111154, at *3 (denying motion to amend complaint because the original scheduling order and three amendments thereto all included the same deadline to amend pleadings, and the plaintiff never moved the Court to extend the deadline).

On September 21, 2023 (the same day that the Criminal Scheduling Order was entered), the Court entered the original Scheduling Order (ECF No. 111) in this case, which included a deadline of November 10, 2023 for motions to amend pleadings. Thereafter, the following events occurred:

    a. On January 17, 2024, Plaintiff filed an Unopposed Motion for Modified Scheduling Order. (ECF No. 149.) Plaintiff's unopposed motion did not include a request for an

7

4937-0800-6149

      extended deadline to amend pleadings. The Court entered the First Amended Scheduling Order (ECF No. 151) on January 23, 2024.

b. On April 1, 2024, Plaintiff again filed an Unopposed Motion for Modified Scheduling Order. Plaintiff's unopposed motion did not include a request for an extended deadline to amend pleadings.

c. Seven days later, on April 8, 2024, the Court held a hearing on an unrelated motion, during which Plaintiff's counsel "indicated that an amended complaint is forthcoming . . . ." (ECF No. 179, PageID 1375, n.2.)

d. The Court entered the Second Amended Scheduling Order (ECF No. 185) on April 26, 2024. The Court did not add a new deadline to amend pleadings despite Plaintiff's counsel's statements at the April 8, 2024 hearing.

e. On July 18, 2024, Plaintiff and the City filed a Joint Motion to Modify Second Amended Scheduling Order. The Joint Motion did not include a request for an extended deadline to amend pleadings. The Joint Motion is still pending.

Now, over a year after the deadline for motions to amend pleadings has passed, Plaintiff seeks leave to amend her Complaint. Courts in this Circuit have denied motions to amend due to similar delay. *Garza*, 972 F.3d at 879 (affirming denial of motion to amend filed almost nine months after deadline); *Coe v. Homecomings Fin., LLC*, 509 F. App'x 520, 522 (6th Cir. 2013) (affirming denial of motion to amend where motion was filed nearly five months after expiration of the scheduling order's deadline and no good cause shown to support delay); *Lockhart*, 2020 WL 13111154, at *3 (finding that the plaintiff's one-year delay in moving to amend the complaint "alone counsels against granting Plaintiff's motion").

In this case, Plaintiff could have—and should have—included a request to extend the deadline for amending pleadings in any of her three requests to modify the scheduling orders. Further, Plaintiff should have sought leave to modify the scheduling order shortly after learning of the dates set for the federal jury trial. Her failure to do so demonstrates a lack of the diligence necessary to satisfy the good cause standard. *Lockhart*, 2020 WL 13111154, at *4 (finding that

8

4937-0800-6149

the plaintiff had the information to support a modified scheduling order months in advance of the deadline, and as such, her failure to make a timely motion "did not demonstrate the level of diligence necessary to meet the 'good cause' standard").

        3.    <u>The City will suffer undue prejudice if Plaintiff is allowed to amend at this late date.</u>

As further discussed below, modification of the scheduling order to properly accommodate all parties in light of Plaintiff's proposed amendments would cause significant prejudice to the City. *Garza*, 972 F.3d at 879 (finding "considerable reason" to support prejudice against the defendants was clear where there was significant delay, and the amendments would require new depositions, additional discovery, and the addition of a new party with separate interests would result in further delay to allow the attorneys to familiarize themselves with the updated record).

    **C.**    **The Amendment Will Cause Undue Delay and Prejudice.**

        1.    <u>The Motion to Amend's proximity to trial creates undue prejudice against the City.</u>

Based on the operative scheduling order, trial is set for March 2025—approximately three months from now. (ECF No. 185.) The original scheduling order (which did provide a deadline for amending pleadings) contemplated approximately fourteen months to take place between the deadline to amend pleadings and trial (originally set for January 27, 2025). (ECF No. 111.) While the City's motion to enter the pending Joint Motion to Modify the Second Amended Scheduling Order (ECF No. 246) contemplates a trial date of Summer 2025, should Plaintiff be permitted to amend her Complaint, it would leave the parties with only six to eight months between filing of the amended complaint and trial. Fed. R. Civ. P. 16, 1983 advisory committee's notes ("[Rule 16(b)(1)] assures that at some point both the parties and the pleadings will be fixed, by setting a time within which joinder of parties shall be completed and the

9

pleadings amended."); *see Est. of Barnwell by S.C. B. v. Grigsby*, No. 3:13-CV-124, 2017 WL 4202229, at *2 (E.D. Tenn. Sept. 21, 2017) (denying motion to amend complaint, in part, due to the case's proximity to trial); *cf. Holland v. Metro. Life Ins. Co.*, 869 F.2d 1490 (6th Cir. 1989) ("Where discovery is completed, the burden imposed on the defendant by allowing an amendment is greater, since the defendant likely will have begun trial preparation based on the issues aired in the discovery process.").

Despite Plaintiff suggesting otherwise, amendment at this late stage of litigation would cause both undue delay and prejudice to the City.

## 2. The proposed joinder of Chief Davis will result in significant delay and prejudice to the City.

Plaintiff should not be permitted to add Chief Davis in her individual capacity as a defendant at this point in the litigation. Plaintiff has waited some twenty months to finally decide to add Chief Davis to the Complaint, but Plaintiff offers no explanation for this delay. The significance to the prejudice analysis as a result of adding Chief Davis as a party in her individual capacity cannot be ignored.

The Sixth Circuit has opined on a similar situation in *Garza*:

> With her motion, Plaintiff sought to rejoin a party [the District] against whom all claims had been dismissed a year before. While several District administrators remained involved in the case [not representative of the entity], the District had a separate interest in the case. Protecting that interest could require new depositions of individuals who had already been deposed, additional discovery, and additional delay to allow District attorneys to familiarize themselves with the updated record. Even assuming Defendants would be less prejudiced than they might otherwise have been because District administrators were still involved in the lawsuit, this still presented considerable reason to find prejudice.

*Garza*, 972 F.3d at 880.

Here, the addition of Chief Davis as a party in her individual capacity necessarily warrants additional discovery in the case. That Plaintiff indicated her intention to add Chief

10

4937-0800-6149

Davis in her individual capacity during a hearing over eight months ago should be given little weight. Eight months ago, the parties were in the height of written discovery, deadlines for discovery were weeks or months away, very few depositions had even been scheduled, and trial was not set until the following year. Importantly, Plaintiff not only chose not to add Chief Davis in her individual capacity as a party after counsel announced that he intended to do so, Plaintiff also has failed to depose Chief Davis in this case. In fact, Plaintiff suddenly canceled the deposition of Chief Davis that had been scheduled for months in October 2023. In light of this significant delay, Plaintiff should not be permitted to add Chief Davis in her individual capacity as a defendant at this late date.

    3.  <u>The proposed amendments will likely create a need to re-open depositions and extend discovery.</u>

Plaintiff has already noticed and taken thirteen depositions in this case. Plaintiff's proposed amendments may require the parties to re-open several depositions and extend discovery. *Duggins*, 195 F.3d at 834 (finding that allowing a late-stage amendment would create prejudice because discovery would need to be reopened).

Not only would the City need additional discovery to address the proposed joinder of Chief Davis in her individual capacity as a party, but also additional discovery will be required to address any new allegations that are relevant to the City's claims or defenses. Doing so would significantly impact the course of the case, ultimately prejudicing the City. For example, Plaintiff proposes adding a new section to her complaint that for the first time in the civil case details "well-established and widespread" customs and practices within MPD, using unofficial terms such as "run tax" and "code of silence." (ECF No. 248-1, PageID 2782–86.) The City has not had the opportunity to explore these allegations or Plaintiff's proof in support thereof. In her Motion to Amend, Plaintiff explains that these allegations are based on testimony given at the

11

criminal trial, some of which was given by Defendants Mills and Martin. (ECF No. 248, PageID 2759, 2762–64.) The City cannot cross-examine these defendants because the civil action is currently stayed against them. Thus, if Plaintiff is permitted the amend her complaint to include these allegations, discovery would necessarily need to be extended until the stay against Defendants Mills and Martin are lifted.

Moreover, the City has only had the opportunity to take four of its own depositions in this case. This is due, in large part, because Plaintiff's counsel repeatedly scheduled and cancelled depositions between June and September. As a result, either those dates were no longer available for depositions because none of Plaintiff's attorneys were available or because the cancellation did not leave sufficient time for another party to notice a deposition for a different witness.

Further, this case involves twenty-eight attorneys of record from fifteen different law firms. Coordination of schedules among such a large number of attorneys in addition to witnesses' availability, court reporters, etc. is often burdensome, and requires scheduling depositions far in advance.

> 4. Plaintiff's counsel has already caused significant delay to the completion of discovery in this case.

Plaintiff has noticed or informally scheduled and then cancelled several depositions over the last several months, including re-scheduling for the same witness multiple times and even abandoning deposing certain witnesses altogether. In light of Plaintiff's counsel's lack of diligence in prosecuting her case, she should not be allowed to further delay the case with an untimely amendment of her complaint. *Cf. Shane v. Bunzl Distribution USA, Inc.*, 200 F. App'x 397, 406 (6th Cir. 2006) (affirming denial of motion to extend discovery deadline where party seeking amendment scheduled then cancelled depositions without re-noticing the depositions before the discovery deadline). While the City acknowledges that other factors—including the

12

other parties—have contributed to delays in this case, it cannot be ignored that it was often Plaintiff's attorneys' actions that caused significant delay over the last several months.

        5.        <u>The proposed amendments serve little practical purpose.</u>

The proposed amendments, while not necessarily futile within the meaning of the Rule 15 analysis, ultimately serve no practical purpose. Many of Plaintiff's proposed new allegations are merely more detailed versions of the same allegations. For example, Section II of proposed First Amended Complaint seeks to add additional instances of alleged excessive force. This far exceeds the pleading standard under Rule 8. While such detail is not normally grounds for denying a motion to amend, courts in this Circuit have denied motions to amend under similar circumstances. In *Coy/Superior Team v. BNFL, Inc.*, the Sixth Circuit affirmed the Eastern District of Tennessee's denial of a motion to amend where the motion was made only four months before trial and "on the basis that the expanded allegations . . . did not add a new claim or otherwise add anything of significance." *Coy/Superior Team v. BNFL, Inc.*, 174 F. App'x 901, 909 (6th Cir. 2006); *see also Garza*, 972 F.3d at 879 ("Plaintiff's First Amended Complaint actually detailed these same allegations [as the original complaint].")

Likewise, relying upon the same reasoning, the Eastern District of Tennessee again denied a motion to amend in *Est. of Barnwell by S.C. B. v. Grigsby*, in part, due to the fact that the proposed amendments "merely implement[ed] materials from the discovery process in order to bring the pleadings into conformity with the now-existing proof." *Est. of Barnwell*, 2017 WL 4202229 at *2. The court concluded the nature of the proposed amendments, including that "the proposed amendments concern factual issues that are already being litigated and will not affect any actual legal issue," did not warrant an amended complaint in light of the proximity of trial, the defendants' objections, and the lack of prejudice to the plaintiff by the denial of the motion to amend. *Id*.

13

Here, the amendments would only serve to prejudice the City in that by filing an amended complaint, the City would then have to spend time preparing an answer or other responsive filing and making adjustments to its strategies and case accordingly. *See Coy/Superior Team*, 174 F. App'x at 909 ("[R]equiring [defendant] to answer a third amended complaint would result in undue prejudice and delay.") Plaintiff's proposed amendments are unnecessary to her case at this stage in the litigation, and thus should be denied in light of the untimely motion for leave and risk of prejudice to the City.

      6.      <u>The testimony used to support Plaintiff's motion is unreliable.</u>

A large portion of Plaintiff's Motion to Amend, and the accompanying proposed amendments, focuses on the testimony that was given during the related criminal trial. Most of the testimony relied upon came from witnesses who pled to felonies and were testifying on behalf of the government in an obvious attempt to reduce their time of incarceration. This testimony is unreliable, and in light of the impending trial date in this case, allowing allegations based on the unreliable testimony without sufficient time for the parties to prepare defenses is highly prejudicial. *See Holland*, 869 F.2d 1490 at *2 (affirming denial of motion to amend filed after discovery deadline, months after plaintiff knew about basis for amendment, and burden imposed upon defendant since it likely already started trial preparation based on the issues revealed during discovery before it closed).

To this point, Plaintiff said herself that the prosecution *wielded its power* "to extract testimony by *threatening* witnesses." (ECF No. 248, PageID 2765 (emphases added).)[5] This

---

[5] *See also* ECF No. 248, PageID 2759 (criminal trial witnesses were cooperating with prosecutors "under *threat* of criminal charges or prison time); PageID 2764 (prosecutors were able to break the alleged "code of silence *by threatening* the police witnesses" and prosecutors were "able to *extract cooperation* from [other officer witnesses] *on the threat* of charging them with perjury, obstruction, or a similar federal crime") (all emphases added).

14

raises major concerns about the reliability of the testimony upon which Plaintiff's amendments rely. Given the procedural posture of the case, new allegations upon such precarious testimony further heighten the risk of prejudice to the City.

### D. The Addition of Chief Davis in Her Individual Capacity as a Party to the Litigation Is Futile.

In addition to causing undue delay and prejudice, the proposed joinder of Chief Davis in her individual capacity is futile because Plaintiff fails to allege facts sufficient to establish individual liability as to Chief Davis. Amendment is futile if the proposed amendments could not withstand a Rule 12(b)(6) motion to dismiss. *Rhea v. Brown Mfg. Corp.*, No. 3:08-CV-35, 2010 WL 11519875, at *1 (E.D. Tenn. May 25, 2010). Thus, the proposed amendments are considered using the same analysis: "[W]e perform this analysis while accepting the plaintiff's factual allegations as true and drawing all reasonable inferences in his favor." *Hart v. Hillsdale Cty., Michigan*, 973 F.3d 627, 635 (6th Cir. 2020).

Plaintiff's burden to impose individual liability on a City official requires a showing that (1) the official violated a federal statutory or constitutional right, **and** (2) the unlawfulness of the official's conduct was clearly established at the time. *Dist. of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018). Courts can address these requirements in either order, but in order to overcome the defense, **both** requirements must be met. *Pearson v. Callahan*, 555 U.S. at 223, 236 (2009). If a plaintiff fails to adequately plead either prong, the individual liability claim fails on its face. *Crawford*, 15 F.4th at 760; *see Crouse v. Town of Moncks Corner*, 848 F.3d 576, 583 (4th Cir. 2017) ("[T]he first two prongs of the test are questions of law . . . ."). Here, the proposed amendments fail to adequately plead either prong.

    1. <u>Chief Davis did not violate a statutory or constitutional right.</u>

The proposed amended complaint does not include allegations that Chief Davis herself took any action that violated a constitutional or statutory right. For example, Paragraph 290 of the proposed amended complaint states "the conduct *of multiple MPD officers* toward Tyre Nichols on the night of January 7, 2023 constituted both an unreasonable seizure and excessive force in violation of the Fourth Amendment to the United States Constitution." (ECF No. 248-1, PageID 2833 (emphasis added).) Paragraph 290 does <u>not</u>, however, allege any unconstitutional action taken by Chief Davis toward Mr. Nichols on January 7, 2023, nor could Plaintiff allege any such action because Chief Davis did not interact with Mr. Nichols or any other citizen on the night of the incident.

Likewise, Section I of the proposed amended complaint alleges a "longstanding custom" of unconstitutional policing within MPD—a custom, Plaintiff alleges, that existed far before Chief Davis was appointed as Chief of Police in April 2021. (*See* ECF No. 248-1, PageID 2782–89.) Indeed, Plaintiff alleges that Chief Davis "observed the problem the first week on the job . . . that the MPD was 'woefully unsupervised.'" (ECF No. 248-1, PageID 2785, ¶ 70.) Yet Plaintiff now seeks to pin on Chief Davis the alleged acts and omissions that preceded her tenure. Such allegations do not adequately plead any unconstitutional actions by Chief Davis herself, and the joinder of Chief Davis in her individual capacity would be futile.

    2. <u>There are no facts to support the allegations that Chief Davis acted unlawfully.</u>

The proposed amended complaint does not plausibly allege that Chief Davis acted unlawfully based on clearly established law. For example, the proposed amendments allege:

> [T]here were no written policies requiring audits or other oversight of supervisors' reviews of use of force, nor was there any written requirement to randomly audit body-worn camera videos or use of force reports to ensure compliance with use of force policies—instead, such audits were optional.

16

(ECF No. 248-1, PageID 2785–86, ¶ 73.) This allegation does not support unlawful conduct by Chief Davis.

Paragraphs 80–83 also fail to allege any unlawful actions by Chief Davis. (*See* ECF No. 248-1, PageID 2786–87, ¶¶ 80–83.) These paragraphs allege:

> 80. By the time the City hired Chief Davis in 2021, tactical units like SCORPION had been discredited across the country and had fallen out of favor.
>
> 81. Indeed, while she was with the Atlanta police department, Chief Davis worked in a unit similar to SCORPION, called RED DOG, which was disbanded in 2011 after multiple high profile incidents in which its officers used excessive force against civilians.
>
> 82. Despite Chief Davis's experience with RED DOG in Atlanta, the MPD, under her command, pursued similar tactics with the SCORPION Unit in Memphis.
>
> 83. The stated purpose of these units was to enter purportedly "high crime" areas and interdict hardened criminals there. Chief Davis, for example, claimed that the SCORPION Unit was "laser-focused on repeat offenders, those individuals we know are committing violent crime in the community."

*Id.* Again, Plaintiff does not—and cannot—allege that Chief Davis's implementation of the SCORPION Unit was unlawful.

Plaintiff's proposed amended complaint fails to plausibly allege individual liability as to Chief Davis. As such, the proposed joinder of Chief Davis in her individual capacity is futile, and Plaintiff's motion should be denied.

### III.    CONCLUSION

Based on the foregoing, the City respectfully requests that the Court deny Plaintiff's Motion.

17

4937-0800-6149

Dated: December 16, 2024.

        Respectfully submitted,

        **BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.**

        *s/ Bruce McMullen*
Bruce McMullen (#18126)
Jennie Vee Silk (#35319)
Freeman B. Foster (#23265)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 526-2000
bmcmullen@bakerdonelson.com
jsilk@bakerdonelson.com
ffoster@bakerdonelson.com

*Attorneys for Defendant City of Memphis, Chief Cerelyn Davis in her Official Capacity, and Dewayne Smith as Agent of the City of Memphis*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served upon all counsel of record and the Guardian Ad Litem via the Court's electronic filing system on December 16, 2024.

        *s/ Bruce McMullen*
        Bruce McMullen

18

4937-0800-6149