IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ROWVAUGHN WELLS, | |
| Plaintiff, | Case No. 2:23-cv-02224-MSN-ATC |
| v. | JURY DEMAND |
| THE CITY OF MEMPHIS, *et al.*, | |
| Defendants. | |

## PLAINTIFF'S MOTION TO COMPEL

Pursuant to Federal Rule of Civil Procedure 37, Plaintiff RowVaughn Wells, through her undersigned counsel, brings this motion to compel Defendant City of Memphis (the "City") to produce documents in response to multiple Rule 34 requests for production issued by Plaintiff.[1]

### TABLE OF EXHIBITS

| | |
|---|---|
| **Ex. 1** | City Response to Plaintiff's 2d Set of RFPs (Req. Nos. 29-32) |
| **Ex. 2** | City Response to Plaintiff's 3d Set of RFPs (Req. Nos. 73, 87-90) |
| **Ex. 3** | City Response to Plaintiff's 4th Set of RFPs (Req. Nos. 96, 110) |
| **Ex. 4** | Letter from Plaintiff to City (Oct. 30, 2024) |
| **Ex. 5** | Letter from City to Plaintiff (Oct. 31, 2024) |
| **Ex. 6** | Letter from Plaintiff to City (Nov. 11, 2024) |
| **Ex. 7** | Letter from Plaintiff to City (Nov. 13, 2024) |
| **Ex. 8** | Email from City to Plaintiff (Nov. 18, 2024) |
| **Ex. 9** | Email from City to Plaintiff (Dec. 6, 2024) |
| **Ex. 10** | Letter from Plaintiff to City (Dec. 13, 2024) |

---

[1] Pursuant to Local Rule 7.2, Plaintiff certifies that she attempted to confer with the City regarding the matters raised in this motion. The consultation was unsuccessful for the reasons set forth herein.

# INTRODUCTION

This motion concerns multiple discovery requests that Plaintiff propounded to the City of Memphis to gather evidence to support her *Monell* claims. The issues regarding each of the requests are distinct and Plaintiff summarizes them separately herein. In each instance, however, the parties are at issue because the City cut off discussions when Plaintiff asked the City to substantiate the objections that the City had relied on to withhold production of responsive documents.

The City objected to the requests as overbroad and unduly burdensome in an omnibus October 31, 2024 letter to Plaintiff (**Ex. 5**).[2] Plaintiff responded with two letters on November 11, 2024 (**Ex. 6**) and November 13, 2024 (**Ex. 7**), asking questions to help eliminate, mitigate, or simply explain the basis for the October 31 objections. In both those November letters, Plaintiff asked for a follow-up Rule 37 conference. *Id.* The City asked to put off the conference until after the Thanksgiving holiday so that the meeting would be "more productive," (**Ex. 8**), but when the agreed-upon call happened on December 5, 2024, the City's counsel was woefully lacking in information, conceding she had no answers to multiple questions Plaintiff had asked in her November letters. *See* **Ex. 10** (summarizing Dec. 5 call).

Counsel for the City committed at the December 5 conference to find answers to the questions Plaintiff had propounded in the November 11 & 13 letters. *Id.* On December 6, however, the City sent an email stating broadly that it was standing on the objections in its October 31, 2024 letter. **Ex. 9**. In doing so, the City cut off the parties' Rule 37 discussions without answering key questions Plaintiff posed in her November 11 & 13 letters—questions which were designed to

---

[2] The October 31 letter followed up on a Rule 37 conference Plaintiff held with the City on October 28.

interrogate the very objections that the City asserted in its October 31 letter. The result is this motion to compel.

Plaintiff now comes before the Court, but she should not have to. Plaintiff maintains that the City's objections it asserted in its October 31 letter could have been mitigated or eliminated had the City simply provided the information Plaintiff requested to understand and address those objections. As it stands, Plaintiff must now bring this motion to the Court with key information missing because of the City's unilateral withdrawal from discussions.

All the same, the City's various objections simply fail. The requested documents are of great relevance for proving Plaintiff's *Monell* claims, and the City's objections of overbreadth and burden are either unsubstantiated, implausible, or both. And by cutting off discussions instead of substantiating those objections and working out how the City's stated concerns could be addressed, the City has short-circuited the meet-and-confer process that is expected of parties under Rule 37. The Court should order the City to produce responsive documents and ESI.

## DISCUSSION

### I.  Rule 34 requests concerning electronic data: RFP Nos. 73 (Ex. 2) 96 (Ex. 3).

These requests ask the City to produce electronic data related to MPD statistics and use of force reports. The City asserted burden objections with respect to both requests. In response Plaintiff asked questions designed to understand the nature of the burdens the City was asserting, so as to identify ways to mitigate or eliminate the asserted burdens. Instead of answering, the City cut off discussion on December 6, 2024.

*Request No. 73* asked the City to produce certain data underlying MPD's CompStat (short for "Compare Statistics") meetings from 2018 to 2023. **Ex. 2 ¶** 73. CompStat meetings are weekly meetings at which MPD officials make decisions about officer deployment, tactics, and other police practices based on data about crime rates and policing activity. The City has represented

3

that the data are "maintained" on a program called "Power BI" that "does not store the underlying data in any categorized format, and that [the data] cannot be recreated for purposes of production." **Ex. 5**. Plaintiff responded with a letter on November 13, 2024 pointing out that "Power BI" is a Microsoft application for *viewing* data in an underlying database, and explaining that Plaintiff sought the data in the underlying repository itself. **Ex. 7**. Plaintiff asked the City to explain where the data were stored, and in what format. *Id.* The City asked for an extension to answer that request. *See* **Ex. 8** (City counsel asking for more time to hold Rule 37 conference so that it would be "more productive").

The parties committed to discuss the matter at their December 5, 2024 conference, but at that conference the City's counsel offered no answer to the question. Then, in its December 6 email, the City effectively cut off discussions, stating: "RFP No. 73: The City reiterates its position as explained in its October 31 letter to Plaintiff." **Ex. 9**. The parties are at issue.

***Request No. 96***. This request seeks copies of the reports that MPD officers complete to document any use of force against a civilian—known as Response to Resistance ("RTR") reports—generated between 2018 and 2023. **Ex. 3** ¶ 96. These "RTR" reports are entered into a computer, and the resulting data is s stored electronically.

Once again, the City asserted burden objections but then cut off discussions when Plaintiff interrogated the City's claims. First the City objected that its attorneys would need to review every RTR form for confidential information before producing it. At the parties' October 28, 2024 Rule 37 conference, however, counsel for Plaintiff responded that Plaintiff would be willing to enter into a confidentiality agreement to cover any confidential information in the RTR forms. The City then shifted to a different argument, set out in its October 31, 2024 letter: it would take a person 1-2 minutes to "convert" each RTR form into a "producible format," resulting in 140 hours to

4

make a full production responsive to the request. **Ex. 5**. In her November 13 letter, Plaintiff responded that the time-consuming "conversion" the City had identified on October 31 might not be necessary at all if the City could simply produce the RTR data in a native, electronically stored format, directly from the data source where the RTR information is stored. **Ex. 7**. To that end, Plaintiff's letter asked for some basic information about the RTR data, asking the City to identify what format the RTR data was stored in currently, and in what repository. *Id.*

Once again, when the parties met on December 5, 2024, the City had no answers—indeed the City's counsel conceded that they had not inquired into any of the questions Plaintiff had asked in the November 13 letter. **Ex. 10**, at 1 (describing City counsel's lack of knowledge on Dec. 5 call). On the December 5 call, the City's lawyer agreed to look into the matter further and get back to Plaintiff. *See id*. But in its December 6 email the City said it would *not* be providing any further information, and instead would be standing on its objections. *See* **Ex. 9** ("RFP No. 96: The City reiterates its position as explained in its October 31 letter to Plaintiff."). The parties are at issue.

**II.** **Rule 34 Requests concerning MPD files relating to specific incidents of excessive force and related investigations: RFP Nos. 87-90 (Ex. 2), 110 (Ex. 3).**

*Request Nos. 87-90*. These requests ask the City to produce 126 excessive force complaints and related case files that the City has previously made available to local media (RFP Nos. 87-89), as well as a separate set of MPD Inspectional Services Bureau ("ISB") case files for MPD investigations of officer misconduct related to specific, relevant categories: use of force, body-worn cameras, and what MPD refers to as "personal conduct." (RFP No. 90). The City objected that the responsive documents were in hard copy (a combination of paper files and CD-ROMs), and as such they were too burdensome to produce. **Ex. 5**. Instead, the City said, Plaintiff could inspect them.

5

Inspection alone would not permit Plaintiff to gather the documents for use in this case, and, Plaintiff pointed out in response, courts are generally hostile to party's claims of burden that are created by the party's own decision to store documents in an inaccessible format. **Ex. 4** at 6 (collecting case law). Nevertheless, Plaintiff sought a way forward. Plaintiff tentatively proposed that a corporate document vendor could be hired to scan the hardcopy documents and download the data on the CDs. In her November 13, 2024 letter Plaintiff asked the City: "Will you agree to gathering the documents in this manner? We ask that you please be prepared to discuss whether the City will agree to have a vendor process the documents and CDs[.]" **Ex. 7**. To help the parties evaluate this option, Plaintiff asked the City to "provide an estimate of the number of pages involved . . . . If the documents are stored in file cabinets, banker boxes, or the like, an estimate of the number of boxes . . . should be sufficient." *Id.*

When the parties finally met for a Rule 37 conference on December 5, 2024, the City's counsel did not have the requested information: no estimate as to the number of documents, boxes, CDs, or anything else. Once again the City's counsel said she would to follow up with this information. **Ex. 10**, at 1 (describing lack of City counsel's knowledge at the December 5 conference). But once again, on December 6, the City's email reverted to its October 31 burden objections, refusing to explain further, and insisting on its inspect-or-nothing position. **Ex. 9** ("RFP Nos. 87-90: The City reiterates its position as explained in its October 31 letter to Plaintiff."). With the City refusing to provide more information, Plaintiff concluded that the parties are at impasse.

***Request No. 110***. This request asks the City to produce MPD excessive force complaints and ISB investigations that the City referred to the Shelby County District Attorney's Office for review from January 1, 2018 through January 10, 2023. The City agreed to produce documents

6

only from January 1, 2021 to Jan 10, 2023, and objected to overbreadth as to anything outside this date range and refused to make further production.

In her November 11, 2024 letter, Plaintiff pointed out that the overbreadth objection contradicted a great number of authorities that endorsed a five-year period for the gathering of *Monell* evidence. **Ex. 6**. As to burden, Plaintiff pointed out at the parties' December 5 conference that any files transferred from the MPD to the Shelby County District Attorney's Office would likely have been organized for transmission already, and as such it was unlikely that producing documents from 2018 to 2021 would pose a significant burden. Counsel for the City acknowledged this point on the December 5 call and committed to determining whether the City's transmission to the District Attorney could be replicated efficiently. Alternatively, as with RFPs 87-90, the City's counsel committed on the December 5 call to report back on the volume of documents at issue, with an eye to retaining a vendor to duplicate them. **Ex. 10**. On December 6, however, the City reverted to its October 31 burden and overbreadth objections, and provided none of the information it had agreed to provide the day before. **Ex. 9** ("RFP No. 110: The City's position on this RFP is subsumed by our response to RFP No. 87-90 as stated in our October 31, 2024 letter regarding the burdensomeness of the ISB case file copying."). This effectively ended Plaintiff's attempts to negotiate this discovery with the City, and the parties are now at impasse.

**III.   Rule 34 requests concerning MPD cellphone data:  RFP Nos. 29-32 (Ex. 1).**

These requests seek ESI from the cellphones of several MPD officials. Request No. 29 seeks to inspect the cellphones of the individual defendants in this case, including Chief Davis, for the days in the immediate aftermath of Mr. Nichols' beating. **Ex. 1** ¶ 29. Request Nos. 30-32 seek ESI including text messages and other phone-based communications regarding Mr. Nichols' beating from MPD employees as well. *See id.* ¶¶ 30-32 (including one unnumbered request). The

7

City has identified multiple ESI custodians, including Chief Davis, but has made no production of cellphone ESI from any of these custodians.

The City's original responses asserted that MPD employee cellphones were not within the City's possession, custody, or control. In her November 11, 2024 letter, however, Plaintiff pointed out that the City issues cellphones to certain MPD employees and regulates their use, restricting it to City business. *See* **Ex. 6**, at 2 (quoting MPD written policy: "Cellular telephones provided by the Memphis Police Department are for **BUSINESS USE ONLY**." (emphasis original)). That, Plaintiff's November 11 letter explained, brought MPD-issued cellphones squarely within the City's possession, custody, or control. *Id.*

During the parties' December 5, 2024 conference, the City's attorney acknowledged that multiple MPD employees, including Chief Davis, had City-issued cellphones at the time of Mr. Nichols' beating. *See* **Ex. 10**, at 1-3. The City's counsel pointed out that Chief Davis in particular likely had many communications unrelated to this case on her phone as well, and asked whether Plaintiff's counsel would agree to criteria (to be specified later) to ensure that the scope of production was within the claims at issue in this case. Plaintiff's counsel responded that they would agree to appropriate limitations, and the City's counsel said she would follow up. *Id.*

In its December 6, 2024 email, however, the City asserted that it would *not* image Chief Davis's phone, citing overbreadth again. **Ex. 9** ("To the extent that MPD is in the possession, custody, or control of a phone issued to Chief Davis, the City will not agree to generate a forensic image of any such phone. The vast majority of the contents of Chief Davis's phone have no relevance to this action.") Plaintiff responded on December 13, pointing out that the multiple RFPs that called for imaging and production from Chief Davis's phone (as well as that of other MPD custodians) relating to Mr. Nichols' beating itself, among other topics, could not possibly be

8

overbroad so as to bar the cell phone collection in its entirety. **Ex. 10**, at 1-3 (citing RFP Nos. 29 and 30-32). In the December 13 letter, Plaintiff counsel reiterated that they were willing to discuss a protocol for producing *relevant* ESI from the cellphones, but emphasized again that production from the phones was called for. *Id.* Given that the City already refused inspection in its December 6 email, Plaintiff's December 13 letter asked the City to inform Plaintiff by December 18 whether the City would be changing its position as to this discovery. *Id.* Plaintiff has heard nothing. The parties are at issue.

## ARGUMENT

As Plaintiff has set out above, the City's conduct has followed a pattern: first the City has asserted an objection—like overbreadth or lack of custody—that allows it to avoid production. When Plaintiff has explained why that objection is incorrect, the City has reverted to a burden objection. But when Plaintiff asked questions to understand the nature of that burden, the City cut off discussions entirely.

That is not how discovery should be conducted. "Discovery is supposed to proceed with minimal involvement of the Court." *FDIC v. Butcher*, 116 F.R.D. 196, 203 (E.D. Tenn. 1986). That expectation is effectuated through "the meet and confer requirement[, which] promotes a frank exchange between counsel to resolve issues by agreement." *Compton v. Donley*, No. 1:12-CV-954, 2013 WL 5276538, at *6 n.6 (S.D. Ohio Sept. 18, 2013) (quotation omitted). To accomplish this goal, the parties must "treat [Rule 37's] informal negotiation process as a substitute for, and not simply a formalistic prerequisite to, judicial resolution of discovery disputes." *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 297, 302 (D. Nev. 2019). To that end,

> [T]he parties must present to each other the merits of their respective positions with the same candor, specificity, and support during informal [discovery] negotiations as during the briefing of discovery motions.

9

*Liberty Ins. Underwriters, Inc. v. Beaufurn, LLC*, No. 1:16-cv-1377, 2021 WL 185580, at *5 (M.D.N.C. Jan. 19, 2021) (quotation omitted). "Only after all of the cards have been laid on the table . . . can there be a sincere effort to resolve the matter." *Id.* (quotation omitted). The City signally refused to uphold these obligations, with the result that Plaintiff is left with objections that are generally half-formed and unsubstantiated across the board.

All the same, the City's various objections simply fail. Plaintiff has already described the City's burden and overbreadth objections above—but only as best she can, given the City's premature termination of the parties' discussions. Speaking more broadly, the City has repeatedly asserted that Plaintiff's discovery is unduly burdensome because it brings within it many documents. As Plaintiff pointed out in her October 30, 2024 letter to the City, however, this sort of objection ignores the simple reality that *Monell* claims alleging a widespread practice, such as those asserted here, require the production of voluminous materials. This burdensome discovery is necessary precisely because *Monell* affords formidable defenses to municipalities like the City, requiring that a *Monell* plaintiff establish a widespread, settled practice by municipal employees and indifference by its policymakers.

At summary judgment and trial the City will doubtlessly insist that the Court hold Plaintiff to those demanding standards. The corollary, however, is that *Monell* discovery must be broad to make it possible for Plaintiff to satisfy those burdens. *See, e.g.*, *Mollica v. County of Sacramento*, No. 2:19-cv-2017, 2021 WL 2417118, at *2 (E.D. Cal. June 14, 2021) (finding request to identify every complaint or grievance of jail staff's alleged failure to provide medical care over a multi-year period was relevant and proportional to plaintiffs' *Monell* claims because "such claims often require a broad and substantial amount of discovery," since they "implicate a potentially large number of events taking place in an organization over a period of time"); *DeLeon v. Guevara*, No.

10

18-cv-1028, 2019 WL 4278043 (N.D. Ill. Sept. 10, 2019) (requiring defendants to produce all homicide files over a multi-year period where Plaintiffs alleged *Monell* claim and noting that "courts evaluating *Monell* discovery requests routinely order production of all files for a five-year period preceding the event at issue in a case." (collecting cases)); *McCrimmon v. Centurion of Fla., LLC*, No. 3:20-cv-36, 2022 WL 356160, at *9 (M.D. Fla. Feb. 7, 2022) ("Documents of treatment provided or denied by Centurion healthcare providers [a prison medical vendor]. . . over a period of years certainly is relevant to Plaintiffs' *Monell* claim, which requires a showing of other instances of constitutionally inadequate healthcare.").

Plaintiff's discovery is targeted to gather evidence of patterns and practices within the Memphis Police Department related to excessive force and coverup within the Department that, Plaintiff alleges, were the proximate cause of Mr. Nichols' savage beating and death. This discovery is entirely appropriate in a case like this one. The Court should order the City to produce the documents in its possession that are responsive to this discovery now.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court order the City to produce those documents and data in its possession, custody, or control that are responsive to Plaintiff's discovery requests, as set forth herein.

Dated: January 10, 2025                                             Respectfully submitted,


*/s/ Stephen H. Weil*

Antonio M. Romanucci (Ill. Bar No. 6190290) (*pro hac vice*)
Bhavani K. Raveendran (Ill. Bar No. 6309968) (*pro hac vice*)
Sarah Raisch (Ill. Bar No. 6305374) (*pro hac vice*)
Joshua M. Levin (Ill. Bar No. 6320993) (*pro hac vice*)
Stephen H. Weil (Ill. Bar No. 6291026) (*pro hac vice*)

11

Sam Harton (Ill. Bar No. 6342112) (*pro hac vice*)
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark St., Ste. 900
Chicago, IL 60654
+1 (312) 458-1000, Main
+1 (312) 458-1004, Facsimile
aromanucci@rblaw.net
b.raveendran@rblaw.net
sraisch@rblaw.net
jlevin@rblaw.net
sweil@rblaw.net
sharton@rblaw.net

David L. Mendelson (Tenn. Bar No. 016812)
**MENDELSON LAW FIRM**
799 Estate Place
Memphis, TN 38187
+1 (901) 763-2500 (ext. 103), Telephone
+1 (901) 763-2525, Facsimile
dm@mendelsonfirm.com

Brooke Cluse (Tex. Bar No. 24123034) (*pro hac vice*)
**BEN CRUMP LAW, PLLC**
717 D Street N.W., Suite 310
Washington, D.C. 20004
+1 (337) 501-8356
brooke@bencrump.com

*Attorneys for Plaintiff*