

Joshua M. Levin<br>
Direct: (312) 253-8623<br>
Email: jlevin@rblaw.net

October 30, 2024

**VIA EMAIL**

Bruce McMullen
Jennie Vee Silk
Freeman B. Foster
Baker, Donelson, Bearman
Caldwell & Berkowitz, P.C.
165 Madison Avenue, Suite 2000
Memphis, TN 38103

      Re:   *Wells v. City of Memphis, et al.*
              Case No. 2:23-cv-02224-MSN-atc

Dear Counsel:

      Thank you for meeting with us on October 28, 2024. I am writing to recount what we discussed and to provide further information regarding Plaintiff's position on key issues raised in Defendant's October 9, 2024 Motion to Compel and Plaintiff's October 16, 2024 Rule 37 Letter. This letter addresses these issues in the order discussed on our call.

      Where we indicate below that we have agreed to provide a supplemental discovery response, we are working to provide as many of those as possible to you by November 1, 2024.

      **A.**      **Discovery Issues Raised in City of Memphis's October 9 Motion to Compel**

            **1.**  **City's Interrogatory 2 (identity of any witness who Plaintiff or Plaintiff's counsel has interviewed)**

      As discussed, Plaintiff objects to the City's request for "any witness or potential witness whom [Plaintiff], or someone on [Plaintiff's] behalf, has interviewed or obtained a statement from with respect to the allegations set forth in the Complaint" on grounds that this request is overbroad, unduly burdensome, and improperly calls for Plaintiff to divulge information protected by the work-product doctrine.

      Courts addressing such discovery have disallowed it, holding that a party is not required to disclose the identities of all individuals interviewed, as such interrogatories "effectively seek disclosure of [] counsel's work product because disclosure of the information would reveal counsel's litigation strategy." *Hammett v. Am. Queen Steamboat Operating Co., LLC*, No. 14-CV-2540-

1



Joshua M. Levin<br>Direct: (312) 253-8623<br>Email: jlevin@rblaw.net

SHL/TMP, 2015 WL 12805697, at *4 (W.D. Tenn. July 17, 2015) (colleting cases); *see also Glenn v. City of Hammond*, No. 2:18-CV-150-TLS-JEM, 2023 WL 4117972, at *3, n.1 (N.D. Ind. June 21, 2023) ("[The] Court finds that . . . the work-product doctrine protects against disclosure of a list of individuals interviewed by the attorneys and their agents in relation to litigation is supported by the persuasive district court decisions from this and other circuits.") (colleting cases)); *Advanced Laparoscopic Surgery, PC v. Cynosure, Inc.*, No. 19-cv-10151, 2020 WL 12574966, at *2 (E.D. Mich. Mar. 30, 2020) ("[T]he cases cited by defendant, that find that the names of witnesses interviewed by counsel are protected by the work product doctrine, are more persuasive and more respectful of the sanctity of opinion work product protection . . . .").

Courts prohibit such discovery because interrogatories asking who opposing counsel has interviewed "seek to track the steps of opposing counsel and their witness choices," which inappropriately "focus[es] on the actions of lawyers rather than the knowledge of witnesses." *EEOC v. Collegeville/Imagineering Ent.*, No. CV-05-3033, 2007 WL 1089712, at *1 (D. Ariz. Apr. 10, 2007). It is for this reason that "courts have recognized a distinction between a party seeking the identities of individuals *with relevant knowledge* and a party seeking the identities of individuals interviewed by opposing counsel, the latter of which raises work product concerns." *Hammett*, 2015 WL 12805697, at *4 (emphasis added). Plaintiff's position tracks this well-established distinction. As discussed, Plaintiff has disclosed individuals with relevant knowledge in her Rule 26(a)(1) disclosures and will continue to supplement those disclosures as appropriate throughout discovery, but Plaintiff stands on her objection to disclosing "any witness or potential witness whom [Plaintiff], or someone on [Plaintiff's] behalf, has interviewed or obtained a statement from."

### 2. City's Interrogatory 5 (Identity of Mr. Nichols Employers)

The parties agreed that Plaintiff will further supplement her response to this interrogatory with two additional employers recently discovered.

### 3. City's Interrogatory 6 (Mr. Nichols Educational background)

The parties agreed that Plaintiff will further supplement her response to this interrogatory to add the one additional year recently discovered.

### 4. City's Interrogatory 13 (Nature of Ms. Wells Psychological Injuries)

Plaintiff will supplement her response to this interrogatory.

### 5. City's Interrogatory 17 (Persons who have resided with Mr. Nichols' son)

The parties agreed that Plaintiff will further supplement her response to this interrogatory to clarify that she is not withholding responsive information based on her objections.

### 6. City's Request for Production 3 (Communications with any person regarding the lawsuit)

The parties discussed Plaintiff's overbreadth and undue burden objections to this request. The parties agreed that the City will provide proposed language narrowing this request by end of day



Joshua M. Levin
Direct: (312) 253-8623
Email: jlevin@rblaw.net

October 31, 2024.

**7. City's Request for Production 7 (All communications with Morgan Jackson)**

The parties agreed that Plaintiff will further supplement her response to this RFP to clarify that she is not withholding responsive information based on her objections.

**8. City's Request for Production 21 (Executed copies of releases)**

To our knowledge, the City provided Plaintiff with 16 releases for the first time on October 28, 2024 at 1:44 p.m., a few minutes before our 2:00 p.m. call that day. At the time of our call, Plaintiff had not yet reviewed that email and was not aware of the breadth of the releases. We are reviewing these proposed releases and will advise you by the end of next week as to whether we will agree to execute them.

**B.   Discovery Issues Raised in Plaintiff's October 16 Rule 37 Letter**

**1. SCORPION SOP**

On our call, counsel for the City reiterated that they discovered the SCOPRION SOP during their deposition prep of Monique Williams, when Ms. Williams showed counsel documents in a folder, which included a hard copy of the SCOPRION SOP. Counsel for the City stated that they interviewed anyone who would be familiar with the SCORPION SOP, and none recall ever seeing the document or knowing whether a final, operative version was in effect.

We note, however, that while the City has produced one version of the SCORPION SOP that appears to be a scan of a hard copy, presumably from Ms. Williams (COM_0047036), the City has *also* produced five versions of the SCORPION SOP that are native Word files (COM_0057786; COM_0054599; COM_0054704; COM_0054600; COM_0057787).

These native Word versions of the SCORPION SOP had to have come from specific electronic repositories on the City's computer system. Those repositories themselves, and the metadata associated with the documents, should reveal a wealth of information about the authors and custodians of the SOPs. The metadata on these documents that we have reviewed, however, reveals little: the metadata for all the versions of the SCORPION SOP produced to date all state "Unspecified Custodian," fail to identify any noncustodial source, and list "Information Systems" as the Author. The "Created" dates are either November 9, 2021 or August 1, 2023.

Counsel for the City stated that they have not done a global collection of ESI from network drives or shared drives, and instead they have made requests to MPD personnel to search particular network drives or shared drives for documents responsive to particular RFPs. We have never agreed on that approach and we do not believe that approach is sufficient, including for identifying the information relevant to these SOPs, their sources, custodians, and authors.

**The City agreed to run search terms for the SCORPION SOP through the City's ESI collection, which the City stated consists of custodial emails and attachments. Please inform us of the results of this search and produce any responsive documents by November 8, 2024.**



Joshua M. Levin
Direct: (312) 253-8623
Email: jlevin@rblaw.net

In addition to this search, we must ask that you identify the following:

**Please let us know, by November 8, 2024, where you collected each of these versions of the SCORPION SOP, including all drafts of the SOP, and who the custodian(s) and authors are of each. If there is no custodian or author, provide the name of the non-custodial source.**

2. Plaintiff's Request for Production 96 (Response to Resistance Forms from 2018-2023)

During our call, the thrust of the City's objection to this discovery was that it was overbroad. Specifically, the City argued that these RFPs are outside the scope of discovery because the allegations in Plaintiff's complaint concern only the SCORPION Unit.

That argument is simply incorrect. While the complaint's narrative theme certainly emphasizes the SCORPION unit, its factual allegations are broader, concern excessive force and failure to supervise at the MPD generally, and go back years before SCORPION's formation. For example, the complaint points to the deaths of "Anjustine Hunter (killed in 2013 after a traffic stop), Darrius Stewart (killed in 2015 after a traffic stop), and D'Mario Perkins (killed in 2018 after a traffic stop)," and notes that "[w]hile these deaths pre-date the SCORPION unit, they are illustrative of the violent custom of MPD officers in conducting traffic stops, the Department's tolerance of the same, their refusal to make changes, and the need for further training." Compl. at 24 n.3. Likewise, the complaint points to the fact that "violent, pretextual traffic stops by Memphis Police Officers (including SCORPION Unit Officers) were resulting in frequent injury and even several deaths and had been since 2013." Compl. ¶ 107. The complaint notes that "formal excessive-force complaints against MPD officers reached an all-time high in 2020—a nearly 60% [increase] from the previous three years' average." Compl. ¶ 128. And the complaint notes that "[t]he hiring of inexperienced officers and officers with disciplinary issues were not unique to the SCORPION Unit, as Chief Davis and the City of Memphis were hiring inexperienced and problem officers throughout the department between 2020 and 2022[.]" Compl. ¶¶ 120-21.

There are numerous other examples of such allegations, which go well outside the SCORPION Unit. *See, e.g.*, Compl. at 17 n.1; *id.* ¶¶ 115-116, 135, 300-301, 328-331, 335, 337, 339-340, 354-355. The factual allegations of Plaintiff's complaint bring RFP 96 and each of the requests that the City objected to on overbreadth grounds well within the *Monell* claims Plaintiff has asserted. Indeed, the City itself has been emphatic that the "SCORPION" Unit had been in operation since at least 2006, and had simply been operating under another name—"CAT." *See, e.g.*, City's Resp. to Pl.'s Interrogatory 5 (stating that the SCORPION unit was "merely" a "rebranding" of "CAT," MPD's Criminal Apprehension Team, which "existed since 2006").

What is more, as discussed on the parties' call, Plaintiff plans to amend her complaint to address MPD policies and practices well beyond the SCORPION unit, as those widespread practices were brought into focus by testimony given at the criminal trial, which revealed widespread practices across the MPD of unwarranted police brutality and a code of silence that enabled it. Plaintiff's counsel received criminal trial transcripts on October 23, 2024, and are now drafting an amended complaint that will assert broader allegations about MPD practices. Those allegations will certainly



Joshua M. Levin
Direct: (312) 253-8623
Email: jlevin@rblaw.net

encompass the discovery requests to which you are objecting on scope. Refusing to produce the discovery now does little except manufacture delay.

We do not, for these reasons, believe that the City's scope objections are appropriate, even under the current version of the complaint. During the call, the City also mentioned a "burden" objection—but it was not immediately clear what that burden might be. The City first claimed it would take time to review every RTR to determine whether it contained information that would require a confidentiality designation or require redactions, but Plaintiff counsel is prepared to enter into a stipulation presumptively treating each RTR as confidential—and to make reasonable adjustments to the confidentiality orders in this case to eliminate the need for redactions.

That seems to be the meat of the City's burden objection. The City did not assert that the actual gathering and production of RTRs would be burdensome, which would not be expected as the RTRs are apparently stored electronically. Other than that, the City intimated that it might want to read the roughly 5,000 RTRs requested in RFP 96, but the City has notably not asserted such an objection with respect to the tens of thousands of pages it has produced so far in this case. And in any event, this sort of objection ignores the simple reality that *Monell* claims, such as those asserted here, alleging a widespread practice *require* the production of voluminous materials. *See, e.g.*, *Mollica v. County of Sacramento*, No. 2:19-cv-2017, 2021 WL 2417118, at *2 (E.D. Cal. June 14, 2021) (finding request to identify every complaint or grievance of jail staff's alleged failure to provide medical care over a two year period was relevant and proportional to plaintiffs' *Monell* claims because "such claims often require a broad and substantial amount of discovery," since they "implicate a potentially large number of events taking place in an organization over a period of time"); *DeLeon v. Guevara*, No. 18-cv-1028, 2019 WL 4278043 (N.D. Ill. Sept. 10, 2019) (requiring defendants to produce all homicide files over a four-year period where Plaintiffs alleged *Monell* claim of widespread practice of withholding exculpatory evidence in homicide cases and noting that "courts evaluating *Monell* discovery requests routinely order production of all files for a five-year period preceding the event at issue in a case." (collecting cases)); *McCrimmon v. Centurion of Fla., LLC*, No. 3:20-cv-36, 2022 WL 356160, at *9 (M.D. Fla. Feb. 7, 2022) ("Documents of treatment provided or denied by Centurion [a prison medical vendor] healthcare providers . . . over a period of years certainly is relevant to Plaintiffs' *Monell* claim, which requires a showing of other instances of constitutionally inadequate healthcare.").

It is precisely because *Monell* defendants enjoy the protection of an exacting standard of proof on widespread-practice claims that *Monell* discovery is often so broad. We do not believe the Court will be receptive to the City both demanding strict proof of a widespread practice while also objecting to the discovery that would permit Plaintiff to establish such a practice, such as the RTR discovery Plaintiff seeks here—particularly in light of the shocking revelations of a "run tax" and the code of silence that the Court just heard in the federal criminal trial over Mr. Nichols's death. Production of the RTRs, which is not burdensome in any event, is appropriate in this case.

The City agreed to notify Plaintiff by October 31, 2024 whether it intends to stand on its objections to RFP 96 or withdraw its objections and produce responsive documents.

3. **Plaintiff's request for Production 73 (CompStat Meeting Documents)**

This request asks for the production of minutes, reports, data, and compiled statistics from all MPD CompStat meetings from 2018-2023. The City objected to this RFP based on grounds that

5



Joshua M. Levin
Direct: (312) 253-8623
Email: jlevin@rblaw.net

it is overly broad, not reasonably calculated to lead to relevant evidence, and not proportional to the needs of the case.

On the parties' call, the City agreed to search for and produce all emails (including any attached data), minutes, and notes that were circulated or generated in connection with CompStat meetings dating back to January 2018.

The City maintained that it was not feasible to produce data that was presented in real time at CompStat meetings from the MPD data platform. On our call, however, the City was not prepared to say why this was so. Presumably the data from which the CompStat information was generated is the result of data entry that resides in a database or similar platform. Such data is typically straightforward to produce once technical issues regarding export and ingestion of the data have been resolved. That is likely the case here. **To evaluate your position further, we ask that you please specify, by November 8, 2024, how and where the data underlying the CompStat reports is recorded. That information should help us assess the practicality of accessing this data in discovery.**

   4. **Plaintiff's Request for Production 90 (Memphis ISB Dashboard Files)**

This request asks for ISB Case Files for any ISB investigations from 2019 to 2023 in the following categories: Bodyworn Cameras (DR 101), Personal Conduct (DR 104), and Excessive and Unnecessary Force (DR 301). The City has objected to this request as overbroad based on the premise that Plaintiff's *Monell* allegations are limited to the SCORPION unit. That premise is incorrect, as I explain above. *See supra* Part B.2. The City agreed to notify Plaintiff by October 31, 2024 whether it intends to stand on its objections to RFP 90 or withdraw its objections and produce responsive documents.

   5. **Plaintiff's Request for Production 87, 88, and 89 (Production of Excessive Force ISB files the City allowed for Inspection to WMC Action News)**

These requests ask for the ISB Case Files from the period of 2015-2019 that the City made available to WMC Actions News Five. The City has objected to these requests as overbroad based on the premise that Plaintiff's *Monell* allegations are limited to the SCORPION unit. That premise is incorrect, as I have explained. *See supra* Part B.2.

Additionally, the City objects to these requests on the grounds that they are overly burdensome to produce because these documents are currently maintained, at least in part, in paper form. Courts are generally hostile to a party's claims of burden that are created by a party's own decision to store documents in an archaic manner. *E.g.*, *Briddell v. Saint Gobain Abrasives Inc.*, 233 F.R.D. 57, 61 (D. Mass. 2005) ("[I]t is [defendant's] own record keeping policies which have contributed significantly to the burden imposed on it. Courts have been loath to reward (and possibly encourage) poor record keeping by shielding companies with inefficient recording methods from discovery."); *Trask v. Olin Corp.*, 298 F.R.D. 244, 266-67 (W.D. Pa. 2014) (rejecting undue burden claim where the "substantial expense" the defendant would incur was "largely because of the significant time needed to go through its files to determine what information was contained therein," and "t[he expense of production wa]s thus due—at least in part—to the state of [defendant]'s record keeping"). Thus, your burden objection is not well taken, particularly where the requested documents



Joshua M. Levin  
Direct: (312) 253-8623  
Email: jlevin@rblaw.net

are of great relevance to Plaintiff's widespread-practice *Monell* claims.

Plaintiff's counsel explained, furthermore, that because the City has previously made these documents available to a third party it should not be overly burdensome to produce them to Plaintiff. The City agreed to notify Plaintiff by October 31, 2024 whether it intends to stand on its objections to RFPs 87-89 or withdraw its objections and produce responsive documents.

### 6. Plaintiff's Request for Production 118 (SCOPRION Unit Documents made available to news outlets through Public Records Requests)

This request asks for all documents or items produced or made available for inspection to all news outlets through Public Records Requests pertaining to the MPD SCORPION Unit. The City has objected to this request as overbroad based on the incorrect premise that Plaintiff's *Monell* allegations are limited to the SCORPION unit. *See supra* Part B.2. The City agreed to notify Plaintiff by October 31, 2024 whether it intends to stand on its objections to RFPs 87-89 or withdraw its objections and produce responsive documents.

* * *

We look forward to hearing from you regarding the above discovery matters.

Sincerely,

*/s/ Joshua M. Levin*

Joshua M. Levin  
*Senior Attorney*  
**Romanucci & Blandin, LLC**  
321 North Clark Street, Suite 900  
Chicago, Illinois 60654  
Direct Phone #: 312-253-8623  
Fax: 312-458-1004 (Attn: Joshua Levin)  
Email: jlevin@rblaw.net