1

1    IN THE UNITED STATES DISTRICT COURT
     FOR THE WESTERN DISTRICT OF TENNESSEE
2                WESTERN DIVISION

3    _____

4    RowVAUGHN WELLS, Individually and as
     Administratrix Ad Litem of the Estate
5    of Tyre Deandre Nichols, Deceased.

6         Plaintiff,

7    vs.                              NO. 2:23-cv-02224

8    CITY OF MEMPHIS, et al.

9         Defendants.
     _____

10

11

12               TRANSCRIPT OF MOTION HEARING

     BEFORE THE HONORABLE MARK S. NORRIS, JUDGE
13

                       FRIDAY
14
               3RD OF JANUARY, 2025
15

16

17

18

19

20

21

22

23
               LASHAWN MARSHALL, RPR
24             OFFICIAL COURT REPORTER
         167 NORTH MAIN STREET - SUITE 242
25             MEMPHIS, TENNESSEE 38103

                 *UNREDACTED TRANSCRIPT*

1                    **A P P E A R A N C E S**

2

3   **Appearing on behalf of the Plaintiff:**

4              MR. ANTONIO ROMANUCCI
             MR. JOSHUA LEVIN
5              MR. STEPHEN H. WEIL
             MS. SARAH M. RAISCH
6              Attorneys at Law
             ROMANUCCI & BLANDIN, LLC
7              321 North Clark Street, Suite 900
             Chicago, Illinois  60654
8

9              MR. BEN CRUMP
             MS. BROOKE CLUSE
10             Attorneys at Law
             BEN CRUMP LAW, PLLC
11             2620 West Sam Houston Parkway, Suite 200
             Houston, Texas  77042
12

13             MR. DAVID L. MENDELSON
             MR. BENJAMIN WACHTEL
14             Attorneys at Law
             MENDELSON LAW FIRM
15             799 Estate Place
             Memphis, Tennessee  38187
16

17  **Appearing on behalf of the City of Memphis:**

18             MR. BRUCE McMULLEN
             MS. JENNIE VEE SILK
19             MR. FREEMAN FOSTER
             Attorneys at Law
20             BAKER DONELSON
             165 Madison Avenue, Suite 2000
21             Memphis, Tennessee  38103

22

    **Appearing as Guardian ad litem:**
23
             MS. CHASITY S. GRICE
24             Attorney at Law
             474 Perkins Extended, Suite 205
25             Memphis, Tennessee  38117

                    *UNREDACTED  TRANSCRIPT*

**A P P E A R A N C E S**
**(continued)**

Appearing on behalf of Preston Hemphill:

            MS. MARY E. McKINNEY
            MS. DEBORAH E. GODWIN
            Attorney at Law
            GODWIN MORRIS LAURENZI & BLOOMFIELD, P.C.
            50 North Front Street, Suite 800
            Memphis, Tennessee  38103


Appearing on behalf of Emmitt Martin, III:

            MS. FLORENCE M. JOHNSON
            Attorney at Law
            JOHNSON AND JOHNSON, PLLC
            1407 Union Avenue, Suite 1002
            Memphis, Tennessee  38104


Appearing on behalf of Robert Long:

            MR. DARRELL J. O'NEAL
            Attorney at Law
            LAW OFFICE OF DARRELL J. O'NEAL
            2129 Winchester Road
            Memphis, Tennessee  38116


Appearing on behalf of JaMichael Sandridge:

            MS. LAURA E. SMITTICK
            Attorney at Law
            SMITTICK LAW FIRM
            242 Poplar Avenue
            Memphis, Tennessee  38103


Appearing on behalf of Michelle Whitaker:

            MR. ROBERT L. SPENCE, JR.
            MR. JARRETT M. SPENCE
            Attorneys at Law
            SPENCE PARTNERS
            65 Union Avenue, Suite 900
            Memphis, Tennessee  38103

*UNREDACTED  TRANSCRIPT*

4

1                A P P E A R A N C E S
                      (Continued)

2

3    **Appearing on behalf of Justin Smith:**

4                MR. MARTIN W. ZUMMACH
                 Attorney at Law
5                SPARKMAN ZUMMACH, P.C.
                 P.O. Box 266
6                Southaven, Mississippi  38671

7

8    **Appearing on behalf of Tadarrius Bean:**

9                MR. JOHN KEITH PERRY, JR.
                 Attorney at Law
                 PERRY GRIFFIN, PC
10               5699 Getwell Road, Building G5
                 Southaven, Mississippi  38672

11

12   **Appearing on behalf of Demetrius Haley:**

13               MR. STEPHEN R. LEFFLER
                 Attorney at Law
14               LAW OFFICE OF STEPHEN R. LEFFLER, PC
                 2670 Union Avenue Extended, Suite 819
15               Memphis, Tennessee  38112

16

17

18

19

20

21

22

23

24

25

                 *UNREDACTED  TRANSCRIPT*

```
1                           FRIDAY

2                       January 3, 2025

3

4                 * * * * * * * * * * * * * * * * * * * * * * * *

5

6           THE COURT:  Just looking out over to see if

7    counsel -- not the whole -- not the whole EC.  Fine.  Fine.

8    How are you?

9           MR. ZUMMACH:  I got my good luck with me right

10   here.

11          THE COURT:  Nice to see you again.

12          Mr. McMullen, you've missed so much of what some

13   of us are reminiscing.

14          MR. MCMULLEN:  Oh, from the criminal trial?

15          THE COURT:  Yeah, that one.

16          MR. MCMULLEN:  Happy to have missed it.

17          THE COURT:  Went from the once Martin trial to

18   now I see it's being referred to as the Bean trial.

19          But thank you-all for being here.  And we have

20   visitors also again from the media, just like old times.  I

21   think I see some familiar faces back there.  And I always

22   mention, for the record, I -- I no longer really need to do

23   it, especially for the local media, but we had entered our

24   standard order on broadcasting some time ago.  It's -- it's

25   never been an issue with -- really, with any of our media,
```

*UNREDACTED TRANSCRIPT*

1    but I mention it for the record.  The order regarding

2    broadcasting, televising, recording, or photographing

3    courtroom proceedings, this was entered back in September

4    of '23, and that's still the standing order.

5            Where to begin?

6            My.  I keep a -- it's not a spreadsheet.  It's just

7    sort of a -- looks like the control panel on the -- remember

8    the Challenger?  This kind of reminds me of the space

9    shuttle.  Yeah.

10           Tracking what's been done, what's been left undone,

11   and the deadlines that have passed.

12           We have a second-amended scheduling order, just sort

13   of setting the stage here, that was never updated.  I know

14   the city had moved the -- there was no resolution, as some of

15   the deadlines expired as we went, and many of those now have

16   passed.  For example, the deadline to complete all discovery

17   was the end of December, December 30th.  Document requests

18   and interrogatories was the beginning of November.  Just

19   going through some of this.

20           And we need to determine a path forward and document

21   it appropriately in what will become the third-amended

22   scheduling order.

23           I could, I guess, for the record, pause to let you-all

24   introduce yourselves for the court reporter here, and that

25   way, it will be clear.  I know almost each and every one of

*UNREDACTED TRANSCRIPT*

7

```
 1   you.  I think I really do.  But why don't we --
 2   Mr. Romanucci, why don't we go ahead and have you introduce
 3   yourself.  And we'll have defense counsel do the same.
 4             MR. ROMANUCCI:  Thank you, Your Honor.  Good
 5   afternoon, Your Honor, and thank you for scheduling this
 6   conference.  My name is Antonio Romanucci.  I'm one of the
 7   attorneys for the plaintiff RowVaughn Wells and the estate of
 8   Tyre Nichols.  And I'll let the rest of the team introduce
 9   themselves.
10             THE COURT:  Okay.  That makes me feel better,
11   too.
12             MR. LEVIN:  Good afternoon, Your Honor.  I'm
13   Joshua Levin, also for the plaintiff.
14             THE COURT:  Mr. Levin, thank you.
15             MR. WEIL:  Good morning, Judge.  Stephen Weil for
16   the plaintiff.
17             THE COURT:  It has been a while.
18             MS. RAISCH:  Good afternoon, Your Honor.  Sarah
19   Raisch also for the plaintiff.
20             THE COURT:  Yes.  Thank you, Ms. Raisch.  Thank
21   you.
22             MS. CLUSE:  Good afternoon.  Brooke Cluse for the
23   plaintiff as well.
24             THE COURT:  All right.  Thank you.
25             And I know we have several.
```

*UNREDACTED TRANSCRIPT*

1          Oh, Mr. Crump, hang on.

2          We've got two lawyers who could not be here as I

3     had requested in person.  They filed their motion, and I've

4     granted that.  I appreciate their professionalism.

5          **MR. ROMANUCCI:**  Do you want me to introduce them

6     as not being here, Your Honor, or that's disposed of by

7     order?

8          **THE COURT:**  That's okay.  Disposed of by order.

9          Yes, sir?

10         **MR. CRUMP:**  Good afternoon, Your Honor.

11         Ben Crump for the plaintiffs.

12         **THE COURT:**  Nice to see you again.

13         **MR. CRUMP:**  You, too, sir.

14         **MR. MENDELSON:**  David Mendelson for the

15     plaintiff, Your Honor.

16         **THE COURT:**  Are you my only local counsel?

17         **MR. MENDELSON:**  Along with Benjamin Wachtel, yes,

18     Your Honor.

19         **THE COURT:**  Oh, I didn't mean to -- yes.

20         **MS. GRICE:**  Good afternoon, Your Honor.  Chasity

21     Grice, guardian ad litem.

22         **THE COURT:**  There we go.  Thank you.

23         **MR. R. SPENCE:**  Morning, Your Honor.  Robert

24     Spence for Michelle Whitaker.

25         **THE COURT:**  Mr. Spence.

*UNREDACTED TRANSCRIPT*

1          **MR. J. SPENCE:**  Good morning, Your Honor.

2   Jarrett Spence also for Michelle Whitaker.

3          **THE COURT:**  All right.  The Spences.

4          And yes, sir?

5          **MR. O'NEAL:**  Darrell O'Neal on behalf of Robert

6   Long, Your Honor.

7          **THE COURT:**  Thank you, sir.

8          **MS. SMITTICK:**  Good afternoon.  Laura Smittick on

9   behalf of Defendant JaMichael Sanders, Your Honor.

10         **THE COURT:**  All right.  Thank you, Ms. Smittick.

11         **MR. FREEMAN:**  Good afternoon, Your Honor.

12  Freeman Foster on behalf of the City of Memphis.

13         **THE COURT:**  Mr. Foster.

14         **MS. SILK:**  Good afternoon, Your Honor.  Jennie

15  Silk on behalf of the defendant City of Memphis.

16         **THE COURT:**  That's two.  And?

17         **MR. MCMULLEN:**  Good afternoon, Your Honor.  Bruce

18  McMullen on behalf of the City of Memphis.

19         **THE COURT:**  Welcome back.  Does returning to

20  Courtroom 4 make you think of the sewer case?

21         **MR. MCMULLEN:**  It does make me think of sewage.

22         We have Kelsie McKinney from my office.

23         **MS. MCKINNEY:**  Good morning, Your Honor.  Or good

24  afternoon.

25         **THE COURT:**  Good afternoon, Ms. McKinney.

*UNREDACTED TRANSCRIPT*

10

1              And?

2              **MR. REAGAN:**  Ian Reagan from the City of Memphis.

3              **THE COURT:**  Last but not least.

4              Are you-all counsel of record as well?

5              **MULTIPLE SPEAKERS:**  No, Your Honor.

6              **THE COURT:**  That's why they're against the wall.

7              **MR. MCMULLEN:**  Thank you.

8              **THE COURT:**  Nice to have you.

9              Well, anything further?

10             I'm sorry.

11             **MS. GODWIN:**  Deborah Godwin, Your Honor, on

12  behalf of Preston Hemphill and DeWayne Smith.

13             **THE COURT:**  Thank you.

14             **MS. MCKINNEY:**  Mary Elizabeth McKinney on behalf

15  of Hemphill and Smith.

16             **THE COURT:**  Mr. Leffler?

17             **MR. LEFFLER:**  Steve Leffler on behalf of

18  Demetrius Haley, Your Honor.

19             **MS. JOHNSON:**  Good afternoon, Your Honor.

20  Florence Johnson here for Defendant Emmitt Martin.

21             **THE COURT:**  Thank you, ma'am.

22             **MR. ZUMMACH:**  Martin Zummach for Justin Smith.

23             **MR. PERRY:**  May it please the Court, John Perry

24  on behalf of Defendant Tadarrius Bean.

25             **THE COURT:**  Thank you.

*UNREDACTED TRANSCRIPT*

1          All right.  Good to see you-all again and a few

2     of you maybe for the first time.

3          So a couple of building blocks here:  There's the

4     plaintiff's motion to amend, which is opposed by the city.

5     There is still, in effect, the stay, which I refer to sort of

6     generically.

7          We entered a stay.  And I think this is the

8     operative pleading.  It's Document 110, ECF 110, back in

9     September, September 21st of 2023.  It's captioned:  Order

10    granting in part and denying in part motions to stay filed by

11    Defendants Haley, Martin, Bean, Mills, and Justin Smith, and

12    denying the motion to stay filed by Defendants Hemphill and

13    DeWayne Smith.

14         I don't think there was further filing concerning

15    the stay, Mr. Romanucci?

16         **MR. ROMANUCCI:**  No, Your Honor.  That is --

17    that's accurate.

18         **THE COURT:**  All right.  And so for all those who

19    may not be here in a representative capacity, the stay is in

20    order to protect those individuals' rights against

21    self-incrimination because there are matters pending against

22    them in state court.  And the -- the scheduled trial in the

23    state proceedings has been rescheduled to April 28th.

24         **MR. PERRY:**  April 28th, yes, Your Honor.

25         **THE COURT:**  And that's a date it had previously

*UNREDACTED TRANSCRIPT*

```
 1   been scheduled, as I recall, and so that's the latest
 2   scheduling date.
 3           And do we have any indication yet whether the
 4   state intends to proceed on that date, or are they waiting to
 5   see how the sentencings proceed in this case?
 6           MR. ZUMMACH:  I think recently we had a little
 7   cat and mouse over there in state court because Mr. Perry's
 8   client and my client moved to sever from Emmitt Martin, which
 9   was granted.
10           THE COURT:  Right.
11           MR. ZUMMACH:  And Hagerman, the DA, I noticed
12   kept his trial date -- Emmitt Martin's -- for April 28th.  So
13   you actually have Emmitt Martin's trial date for the 28th as
14   well as the three defendants you had for April 28th, but they
15   have given us no indication --
16           THE COURT:  That was one of my questions.  It's
17   not -- it's not clear.
18           And to what extent do you feel that -- speaking
19   of cat and mouse -- the state is awaiting sentencings here
20   before the state determines the extent to which it's going to
21   proceed with those trials?  That may not be a fair question.
22           MR. ZUMMACH:  It's a fair question, but I'm going
23   to reserve comment.  I'm finally learning from Mr. Perry to
24   keep my comments to myself.  For years.
25           THE COURT:  But he was only able to do that
```

*UNREDACTED TRANSCRIPT*

1    because you spoke out so much for everyone, so --

2              **MR. ZUMMACH:**  It paid off pretty well, don't you

3    think, Judge?

4              **THE COURT:**  I won't comment on that.  I know you

5    have more motions pending still, both of you do, in the

6    criminal case.

7              We got the criminal case to trial.  We had the --

8    I guess the superseding indictment, the indictment on which

9    we went to trial, and the case set and tried to verdict in

10   less than a year.  Heavens.  It may have been nine months.

11   That's the criminal proceeding.

12             So here we are in civil court, and the Court

13   finds the parties in sort of an interesting posture, in that

14   here, we have what Mr. Romanucci's proposed a trial as late

15   as the summer of 2026.  And the city hasn't exactly said, but

16   it would look.  At first blushes, though, the city would like

17   to see it disposed of sooner.

18             Normally, cases, at least when I was practicing

19   before this court as a civil litigator, defendants -- the

20   longer it took to get there, the better it looked to the

21   defendant.  So the roles are a little bit reversed here.

22             And Mr. Romanucci, do you want to speak to the --

23   assuming I'm granting your motion to amend -- the need for

24   the schedule you've set forth with a trial date that far in

25   advance?

*UNREDACTED TRANSCRIPT*

1          And I remember at one point, you-all had more

2    than 30 depositions to take.  I don't know how many of those

3    have been taken, and I also am not sure where you-all stand

4    in mediation.  I know there were some partial mediation, by

5    which -- I mean, the defendants against whom proceedings were

6    stayed or for whom the proceedings were stayed didn't

7    actively participate in the mediation.  Judge Donald

8    undertook the mediation.

9          **MR. ROMANUCCI:**  She did.

10          **THE COURT:**  So I know there was some effort put

11   into that.  There was never a certificate filed about the

12   status of that, so I presume it's pending, technically, but

13   I'm not sure.

14          Will she continue to be the mediator in this

15   case?

16          **MR. ROMANUCCI:**  No, Your Honor.  As a matter of

17   fact, within the last several weeks -- I can't pinpoint a

18   date.  Maybe somebody else has the date exactly.  But within

19   the last several weeks, Judge Donald did send the parties

20   resigning as a mediator in the case.  She said she will no

21   longer be able to fulfill that role.

22          So in terms of a certificate being filed, I would

23   not expect a certificate.

24          And, secondly, the parties have not had any

25   discussion, since that resignation, regarding replacing her.

*UNREDACTED TRANSCRIPT*

1    So we are at, I would say, a complete standstill with respect

2    to mediation at the moment.

3                **THE COURT:**  All right.  Well, that needs to be

4    addressed in a -- in the what will become the third-amended

5    scheduling order.

6                I understand the city's -- and let's say several

7    defendants' -- opposition to the motion to amend.  I mean,

8    I've read the pleadings.  I don't know if you'd like to be

9    heard a little bit on -- on your positions concerning the

10   motion to amend.  I'll tip my hand.  It appears to me to be

11   pretty well taken.  The question becomes, as you go through

12   the elements, the extent to which any of you feel that

13   it's -- you know, that it's unfair to your client's position.

14   And I see that you're ready to speak to it.

15                **MR. O'NEAL:**  Good afternoon, again, Your Honor.

16   Darrell O'Neal on behalf of Robert Long.

17                Your Honor, so I did file an opposition to the

18   motion for leave to amend the complaint, not to amend the

19   scheduling order.  And my concern with amending the

20   complaint, obviously -- we filed a motion to dismiss under

21   the qualified immunity standard, and that motion is still

22   sitting out there.  So my concern and my problem with -- if

23   you allow that amendment of the complaint at this particular

24   stage, it moots my complaint, my motion to dismiss.  I have

25   to start all over again.

*UNREDACTED TRANSCRIPT*

1          So I didn't know where the Court was in regards

2   to ruling on that motion or, you know, how the Court felt

3   about that motion.  But under the qualified immunity

4   standard, we wouldn't have to participate in the discovery

5   normally while that process is going on.  But we have, and I

6   just didn't want to say we don't -- we agree with the motion

7   for leave to amend, and then you say, well, we're just going

8   to dismiss the motion to dismiss.

9          **THE COURT:**  It would require -- it's a reset.  It

10  moots them, and you'd have to refile.  And there is that;

11  I'll grant you that.  Yeah.

12          Mr. McMullen.

13          **MR. MCMULLEN:**  Your Honor, I don't have a super

14  strong opposition other than to say, as Mr. O'Neal said, we

15  have pending motions to dismiss --

16          **THE COURT:**  That's right.

17          **MR. MCMULLEN:**  -- with Monell claims.  I don't

18  see anything in their amended complaint that really affects

19  that.  And I understand we can refile it.  But as you've

20  observed, we'd rather go sooner than later.  And under the

21  current scheduling order that we were operating on, because

22  no new scheduling order was there, it made it difficult for

23  us to agree to a motion to amend when discovery was

24  cutting -- cut off on December 30th.  So a lot of it was

25  prophylactic in nature.

*UNREDACTED TRANSCRIPT*

1              **THE COURT:**  Better for me than the -- I mean, you

2    can tell your client, well, the Court -- the Court made us do

3    it.

4              **MR. MCMULLEN:**  Yeah, I blame a lot on the Court.

5    Don't worry.

6              **THE COURT:**  That's right.

7              All right.  Tell me more, Mr. Romanucci.  Tell me

8    more.  What -- what else do you have to offer for the good of

9    the order here?

10             **MR. ROMANUCCI:**  I think what I have to offer,

11   Your Honor, is this:  Had you walked in five minutes before,

12   you would have seen, you know, the Kumbaya moment amongst all

13   of us.

14             **THE COURT:**  I was listening.

15             **MR. ROMANUCCI:**  You were listening.  Okay.

16             **THE COURT:**  In fact, I wondered, perhaps, if I'd

17   waited just a little longer --

18             **MR. ROMANUCCI:**  We might have worked this out.

19   We might have had an agreement without Your Honor coming out.

20             But I would say I think, on at least Plaintiff's

21   behalf and I think everyone's behalf, how much we appreciate

22   being here in person today because as much as we were happy

23   to see each other to wish each other Happy New Year, it has

24   been -- it's been a little rough lately.  It's been

25   contentious amongst us.  And that's because, as the

*UNREDACTED TRANSCRIPT*

1    litigation is proceeding, things are getting a little bit

2    more heated than hot.  And we needed this reset today.

3           I think this was important for all of us to be

4    here.  And so what I have to say, in furtherance of the

5    amended scheduling order, not the amended complaint but the

6    amended scheduling order, is that I do believe in my heart of

7    hearts that that is a fair scheduling order.

8           Now, I will tell you:  When we met in September

9    of 2023, we thought that the scheduling order that was

10   proposed, that we all talked about, was also fair.  But

11   certainly there were moments that occurred in between.  There

12   were intervening events from September 23 up until today that

13   have kind of turned that apple cart completely upside down.

14   And some of it had to do with the attorneys and our

15   schedules.

16          And you can see.  I didn't count, but there's

17   got -- there have got to be at least 20-plus lawyers that

18   attend depositions on these cases.  And scheduling us,

19   that -- that requires a mediator in and of itself.  We need

20   help just scheduling, let alone sometimes refereeing our

21   depositions.

22          But putting that aside -- because that's our

23   burden; that's up to us -- we were not anticipating the

24   criminal trial -- the federal criminal trial being extended

25   as late as they were and now certainly the state criminal

*UNREDACTED TRANSCRIPT*

trials, which were set to be originally in August of 2024 now in April, the end of April 2025.  And there's probably no chance that they begin until the beginning of May.

So when you consider not only the evidence that's been brought forth in the federal criminal trial but knowing -- putting aside evidentiary issues alone -- just timing, just timing with the criminal trials and the finishing of the criminal trials and if there are guilty verdicts or pleas in between their sentencing -- if there aren't, well, then we can expect that May would be the closure of those trials, depending on which way it goes.

But either way, we've accounted for that.  We believe that we have fairly accounted for either which way in this schedule, especially given the fact that if the trials go ahead and there is additional evidence, we're not saying we're going to come running back to you because we think we know, at this point, what the evidence is solidly.  But we would hope not.

But you can't set aside what happened on December 11th of last month with the DOJ issuing its report. That also was absolutely new information to the plaintiff. Was it -- was it new information that the DOJ would be issuing a report?  Well, we had no idea when, but we certainly weren't aware the gravitas of that information.

And, you know, I don't want to be repeating

*UNREDACTED TRANSCRIPT*

1    anything at all that -- that Your Honor has already read or

2    that he knows, but some of the seminal critical points in the

3    DOJ report from last month include finding that the City of

4    Memphis escalates encounters in low-level traffic offenses

5    leading to unreasonable use of force, uses unreasonable force

6    on people who are restrained or under control, and weak

7    oversight which contributes to excessive force, amongst other

8    things.

9            The reason I highlighted those three, Your Honor,

10   is because those are -- those are the core of the issues, not

11   only in the 1983 constitutional Fourth Amendment violation

12   but then the other side of the ventricle of the heart, which

13   is Monell.

14           And we know.  We know how high of a burden we

15   have when it comes to proving Monell.  We understand that,

16   and we don't run from it.  And that's why we're asking Your

17   Honor for the indulgence to complete or get the documents,

18   get the data.  Because what is Monell?  It's -- it is

19   burdensome also for defendants.  It is.  There's a

20   proportionality that we have to meet.  On this discovery,

21   there's a burden on us that we have to meet, and there's a

22   burden on them to produce.  But it's all about statistics and

23   data, and we need to get to it.

24           And now, given the fact that we've had these two

25   moments -- the federal criminal trial, the DOJ report --

*UNREDACTED TRANSCRIPT*

1    which as our papers indicated, Your Honor, we believe those

2    are watershed moments that revealed data, that new evidence

3    that was unavailable to Plaintiff beforehand.  We have to

4    explore it fully, and that's -- I don't want to get into the

5    amendment of the complaint because I think Your Honor wishes

6    to reserve that, but you can't ignore it either because it

7    does go hand and hand.

8              We seek to amend because there are very important

9    facts that we -- it's not going to be Mr. Zummach there;

10   although, he impanelled himself there today.  But we are

11   going to need to produce competent evidence to the jury in

12   order to meet our high burden on Monell.

13             So the schedule, what it accounts for in terms of

14   the closing of discovery, it gives us enough time to

15   certainly run with the city and get the documents that we

16   need.

17             We have issued RFP 6 and 7 to the city, which

18   matches, so to speak, what we think we need from the criminal

19   trial and also the DOJ, because the City of Memphis

20   cooperated with the Department of Justice in giving them the

21   documents for the DOJ to issue that report.  Well, we seek

22   those same underlying documents.

23             So the end-of-August closure date gives us now

24   that window to complete not only the Monell discovery but

25   should give us enough of a runway to complete the discovery

*UNREDACTED TRANSCRIPT*

1    with the officers who are currently stayed.

2              And then after that, Your Honor, I need -- I need

3    to see my order because then we propose, clearly, other dates

4    that would -- we're pretty much in lockstep in terms of time

5    with the first scheduling order and the second scheduling

6    order for the city to file -- or parties to file dispositive

7    motions, expert disclosures, depositions.  And I think that's

8    why you see that the trial date could run into some time

9    spring, summer of 2026.  But it's not because of delay.

10             And, you know, you asked the question also.  We

11   were granted leave for 30 depositions, and you asked how many

12   have been taken.  And Plaintiff has participated.  We have

13   noticed or subpoenaed 13 out of those 30 depositions, and

14   some of them include -- just to give you a high-level view of

15   who's been deposed, there have been individual defendant

16   officers deposed.  Preston Hemphill, DeWayne Smith have been

17   deposed.  Although, there is an issue about DeWayne Smith

18   that someone, either yourself or the magistrate, Her Honor,

19   would have to resolve.

20             There have been high-level investigators who have

21   been deposed from the City of Memphis, multiple of them.  The

22   medical examiner's been the deposed.  The treating physician

23   from the hospital has been deposed and obviously others.

24   But -- so we still have -- we -- we're careful in managing

25   how many we can use because we know that we have a lot of

*UNREDACTED TRANSCRIPT*

1    state people still that we need to depose, so we've been

2    careful in the management of it.

3              And I don't want you to think, well, Counsel --

4    you know, Your Honor may say, "You've got 17 left to take.

5    Why haven't you taken them"?

6              Well, I don't want to jump ahead of myself and

7    impugn anything or anything that we haven't done, but because

8    of that management, we have had to withdraw a couple of

9    notices because of what happened in the criminal trial.  We

10   didn't -- after that, we felt -- we don't have all the

11   evidence, because of what was said during the criminal trial,

12   with regard to this street tax slash run tax.  Although, it's

13   a very small phrase, a couple of words, it has huge

14   implications for a custom, pattern, or practice.  And so we

15   did have to withdraw several of those notices.

16             Certainly, I know Mr. McMullen can speak for

17   himself, but they have been diligent in taking depositions:

18   Probably close to half a dozen or so, somewhere in that area.

19   So it's not that we have been standstill; although, during

20   the criminal trial, we were at a standstill for about five or

21   six weeks.  We -- the house shut down in terms of anybody

22   scheduling depositions, you know, with a cushion before and

23   after, without any -- any dispute from anyone.

24             So I'm hoping that gives enough of a macro view

25   of why Plaintiff feels the scheduling order makes sense.

*UNREDACTED  TRANSCRIPT*

24

From what I'm hearing -- again, without putting words in

anyone's mouth, it seems like we might get a get-along on

this schedule, if it's reasonable.  But it will require -- it

will require work on both sides in order to get it done.

        And I know you're probably going to give me

another chance to speak.  Maybe you won't, so that's why I'm

going to ask now, just in case, because I know it's at the

top of my head because I just thought of it.  It might be of

great benefit to us, Your Honor, maybe have maybe statuses

every couple of months with you.  It might just make sure

that everybody stays --

        **THE COURT:**  On task.

        **MR. ROMANUCCI:**  -- on task.

        **THE COURT:**  And on schedule.

        I have no problem doing that.  I enjoy seeing

you.

        Mr. McMullen, did you want to respond to anything

Mr. Romanucci just said?

        **MR. MCMULLEN:**  I don't think I have much

meaningful to say, but I do agree with Mr. Romanucci.  And I

know you were involved in the criminal trial early on, and I

understand that.  That took a lot of your time.  But I do

agree with Mr. Romanucci.  Maybe if we have a regular

scheduling conference -- conference -- maybe we can identify

problems.

*UNREDACTED TRANSCRIPT*

1          **THE COURT:**  Yeah.

2          **MR. MCMULLEN:**  Not end up with late-night filings

3   and things of that nature.

4          But I do want to point out:  We had a meeting

5   with Magistrate Christoff, and she expressed to the whole

6   group the Court's wishes to keep the trial.  And so that

7   caused us to have to jump through tremendous hoops, my group,

8   to get things done by a certain day.

9          **THE COURT:**  Which this court appreciates.

10         **MR. MCMULLEN:**  And -- but like I say, we -- we

11  have basically soft opposition to moving some of the

12  scheduling dates.

13         **THE COURT:**  All right.  I'm going to grant the

14  motion to amend.  I'll enter an order.  But just so you know,

15  I -- from what I've heard and what I've read that there's

16  sufficient finding, there's good cause for the motion.  The

17  defendants will not be unduly prejudiced.  I understand it's

18  a reset on the motions, but as has been indicated, it may not

19  be that much difference in terms of what needs to be filed

20  there and refiling those.

21         Another element we consider is the futility of

22  amendment.  I -- that was given appropriate mention.  I don't

23  want to say in passing, but it's -- I don't like to use

24  motions to amend to resolve those substantive matters.  I

25  think they can be taken up separately in a 12(b)(6) or a 56,

*UNREDACTED TRANSCRIPT*

1    whatever is appropriate, rather than me passing judgment on

2    some of those defenses here and saying, well, I'm not going

3    to allow the amendment because it would be futile.  I'll

4    reserve judgment on that.  And so the -- the motion to amend

5    is granted.

6              Now, having done that, let's look at the

7    third-amended scheduling order.  And to what extent do you

8    think we could hammer that out here and now, with the new

9    deadlines?  You have referred to what your -- what you had

10   proposed.  Do you have it separately set forth in an order?

11             **MR. ROMANUCCI:**  We do, Your Honor.  I'm going to

12   ask for help on the side here.  I know -- I think I flagged

13   it.

14             **MR. LEVIN:**  Your Honor, 267 is our most recent

15   filing that has it on Page 3 to 4, ECF 267.

16             **THE COURT:**  It's just slow to load.

17             **THE CASE MANAGER:**  Same.

18             **THE COURT:**  Same.  I've got it now.

19             **MR. LEVIN:**  Your Honor, we have a blank copy of

20   it if --

21             **THE COURT:**  Pass that up, too.  That'll save me

22   from printing it because this computer's really slow today.

23             Thank you.

24             **MR. ROMANUCCI:**  Thank you, Your Honor.

25             **THE CASE MANAGER:**  You want this back?  I printed

*UNREDACTED TRANSCRIPT*

1   it.

2               Thank you, sir.

3               **THE COURT:**  So do you think -- working backwards,

4   let's see when counsel might be available for a new trial

5   date in 2026.  You had mentioned summer in one of your

6   pleadings, and, you know, from the dispositive motion filing

7   deadline and response and reply time, if any, the Court needs

8   sufficient time to respond to those, which I think could be

9   accomplished by June of '26.  But what are your thoughts on

10  that?  June or July for a trial date?

11              **MR. ROMANUCCI:**  Your Honor, if I could, I was

12  going to propose May or June.

13              **THE COURT:**  Okay.

14              **MR. ROMANUCCI:**  So that's -- I think that totally

15  fits in.  Obviously, we're open.  We've already discussed.

16  We're all available.

17              **THE COURT:**  Mr. McMullen.

18              **MR. MCMULLEN:**  I think June would be better for

19  us.  So if you're okay with June, we're okay with June.

20              **MR. ROMANUCCI:**  When you say June, like the

21  beginning of June?

22              **MR. MCMULLEN:**  Anytime in the month of June, yes.

23  May --

24              **MR. ROMANUCCI:**  Agreed.

25              **MR. MCMULLEN:**  May is graduation month and all of

*UNREDACTED TRANSCRIPT*

28

1    that.

2              **MR. ROMANUCCI:**  Fine.

3              **MR. MCMULLEN:**  June is --

4              **THE COURT:**  Okay.

5              **MR. ROMANUCCI:**  Agreed.

6              **THE COURT:**  How do we look?  Pretty open in June?

7              **THE CASE MANAGER:**  Yes, Your Honor.  We have

8    currently one matter set the week of June 22nd.  It's a '22

9    case, 2022.

10             **THE COURT:**  And how long do you think, at this

11   point, knowing now what you didn't know then, the case will

12   take to try?

13             **MR. ROMANUCCI:**  Well, it's -- it's a good

14   question.  I mean, I -- again, I'm not foreshadowing

15   anything.  It's just when litigation -- typically what

16   happens, either some parties drop, some parties settle, and

17   there are fewer witnesses.  So there may be -- I think

18   there's going to be an extreme balance between what drops off

19   and what comes in.  I don't think the number of trial days

20   will change.

21             Having said that, I do anticipate Plaintiff's

22   case to be robust.  I don't know Your Honor's rules.  I

23   apologize, but I don't know your rules on whether you're

24   going to have us on the clock or whether you're going to give

25   us a number of days to start and finish our case.  If that's

*UNREDACTED TRANSCRIPT*

```
1    the case, then I probably need to know.  But if you're going
2    to say, you've got free reins at least for the moment, I will
3    probably say we need somewhere between 10 and 15 trial days
4    for Plaintiff.
5            THE COURT:  Mr. McMullen, may be the first time
6    you've heard that.
7            MR. MCMULLEN:  Yeah.  Yes, but -- but I've dealt
8    with Mr. Romanucci for a while, so it's -- I think it would
9    be longer than shorter.
10           We -- if you're asking me -- if you're asking me
11   how many days, if they put on 15 days -- trying to anticipate
12   the witnesses, we would probably need five to seven full
13   days.
14           MR. LEVIN:  Your Honor, the only other
15   observation I would offer is just that the criminal trial --
16   if you use that as sort of a benchmark -- and we also have
17   all of the Monell evidence to put on, so I think it could be
18   20 trial days for the plaintiff, just trying to be realistic
19   about our forecast.
20           THE COURT:  I appreciate that.
21           MR. ROMANUCCI:  Notwithstanding whether or not I
22   take up too much air.
23           THE COURT:  Yes, sir.
24           MR. R. SPENCE:  I guess -- and Your Honor, Robert
25   Spence for Michelle Whitaker.
```

*UNREDACTED TRANSCRIPT*

1          I have just one observation to make:  I believe

2     that a June trial setting is too early.  I think that the

3     briefing on dispositive motions is going to be all consuming.

4     And I wonder whether or not this court would benefit from an

5     additional month to rule on all the dispositive motions that

6     are going to be filed and whether or not it makes more sense

7     for us to have a July or August trial setting, give the

8     Court -- give the Court sufficient runway to consider the

9     filings, to make a ruling, and then when the parties appear

10    for the joint pretrial order, those of us that hope to be cut

11    from the herd will be gone.  Those that are going to be here

12    to try the case will be here.

13          And so I would ask the Court to consider pushing

14    a potential trial date another 30 or 60 days just to make

15    sure that the dispositive motions can be ruled upon and

16    considered and that the parties that are going to be here for

17    trial, they know it; they're sure about it.  They can ramp up

18    and prepare.  And those who are not will not have to go

19    through that labor.  That's all I offer, Your Honor.

20          **THE COURT:**  I understand.

21          All right.  Counsel, how do your schedules look

22    for trial beginning Monday, July 27th?

23          **MR. ROMANUCCI:**  Your Honor, I would say yes.  The

24    only thing that I would add into it is not for myself,

25    because I don't have that issue, but if there are attorneys

*UNREDACTED TRANSCRIPT*

1  with children who are either starting school or going away to

2  school, that might be an issue.  But I do not have that

3  issue.  I'm good to go on July 27th.

4          MR. MCMULLEN:  I'm almost at the same issue,

5  Mr. Romanucci.  I'm being burned up about vacation, stuff

6  like that, children going back to school.

7          What about somewhere in August?

8          MR. ROMANUCCI:  I was going to suggest, if -- I

9  was going to suggest to the Court maybe a week or two earlier

10  in July so we could be -- we could be done.

11          THE COURT:  And one of my considerations is just

12  I have turnover of law clerks, you know, at the end of

13  August, so I'm trying to give enough buffer there that the

14  folks I'm working with on the case will be able to be here

15  through the case.  I could move it a little earlier.

16          MR. MCMULLEN:  And to Mr. Spence's point -- and

17  only you can answer this because you -- you're going to get a

18  flood of motions, and only you can answer whether we'll be

19  ready to go.  If you want to move it back, I'm fine.

20          THE COURT:  So would moving it, for example, to

21  the week of the 13th give enough?

22          I note that the Fourth of July that year is

23  the -- I believe that's the 250th anniversary, and there will

24  be lots of people doing lots of things -- one would hope --

25  attendant upon that semiquincentennial.

*UNREDACTED TRANSCRIPT*

1              **MR. ROMANUCCI:**  July 13th is good for us, Your

2    Honor.

3              Bruce?

4              **MR. MCMULLEN:**  July 13th.

5              **THE COURT:**  July 13th, it is.  That's our new

6    trial date.

7         And with trial on the 13th, Ms. Frazier, the joint

8    proposed pretrial order and pretrial conference?

9              **THE CASE MANAGER:**  Your Honor, because of -- that

10   Friday is July 3rd.  That would normally be our pretrial

11   conference date.  I guess we could go to the Friday prior or

12   the Thursday prior for the pretrial conference.

13             **THE COURT:**  The 9th, for example, for the -- or

14   prior to the Fourth you mean?

15             **THE CASE MANAGER:**  Normally, with the July 13th

16   trial date, the pretrial conference would have been the 3rd

17   of July.  So we could either do -- I don't know if the 2nd

18   would make it any better.  Or we could go to the Friday --

19   the last Friday of June; Friday, June 26th.

20             **THE COURT:**  Friday, June 26th for the pretrial

21   conference.  That's in person as well.  Okay.

22             **MR. ROMANUCCI:**  Plaintiff would agree.

23             **THE CASE MANAGER:**  At 9:30.

24             **THE COURT:**  9:30 on Friday.  9:30, Friday,

25   June 26th.

*UNREDACTED TRANSCRIPT*

1          **THE CASE MANAGER:**  And the pretrial order would

2    be due the Friday before June 19th.

3          **THE COURT:**  And the pretrial order, your joint

4    pretrial order, Friday, June 19th.

5          What's proposed for dispositive motion filing is

6    December 19th of 2025, with responses thereto, January 19th

7    of 2026, and replies to dispositive motions or replies to

8    those responses February 9, 2026.

9          Any objections to those proposals?  Dispositive

10   motion deadlines, December 19th of '25; responses,

11   January 19, '26; and replies, if any, February 9, 2026.

12         All right.  Without objection.

13         As to the -- what's proposed for -- the

14   completion of discovery is proposed at August 29, 2025.  And

15   that would include depositions' deadline of August 29, 2025.

16   But then document production and interrogatories as well as

17   requests for admission July 12th of 2025.

18         Any objection to those?

19         **MR. R. SPENCE:**  Your Honor?

20         **THE COURT:**  Yes, Mr. Spence.

21         **MR. R. SPENCE:**  I only rise to maybe ask for some

22   additional instruction from the Court.  Having sort of

23   witnessed the last -- the last year and a half of litigation

24   in this case and the inability to schedule things because of

25   so many lawyers, I think it would behoove us if the Court

*UNREDACTED TRANSCRIPT*

1    entered an order that required the lawyers to be available

2    for one full week of every month leading up to the end of

3    discovery.  Otherwise, we're going to be back down here

4    saying this scheduling order doesn't work, just because of

5    the scheduling problems that we have had and that I

6    anticipate we will continue to have.

7           And so the Court has made this case a priority.

8    The lawyers need to make it a priority.  And I think every

9    month, we need to have one week that is clear to conduct

10   depositions in order to meet this scheduling order.

11          **THE COURT:**  Mr. Romanucci.

12          **MR. ROMANUCCI:**  I think Mr. Spence's argument is

13   well taken to a point.  I agree.  I mean, it's -- it's

14   been -- I already foreshadowed that issue.  I mean, it's a

15   mountain to climb, getting everybody on board.  And soon

16   enough, we're going to be facing a state criminal trial where

17   several of these lawyers are going to be on trial, and

18   they're going to have -- we're going to face another block of

19   time where we're not going to be able to schedule depositions

20   for a while.

21          I like the idea of the commitment and the

22   dedication because, certainly, I can tell you Plaintiff is

23   setting aside a week every month.  It's possible, but if you

24   order it and we don't abide by it, then we don't -- nobody

25   wants to come in and be held in contempt because they weren't

*UNREDACTED TRANSCRIPT*

able to set aside a week.  Do I think that Plaintiff can do
it?  I think we can.  And I would endeavor to do that.  And
if Your Honor strongly recommends and suggests to us that we
take Mr. Spence's suggestion and put it to practice, we'll do
that.  But I'm just afraid of an order.

**THE COURT:**  I would -- I would agree, at this
point, that that's my request that you-all do so and that you
apprise the Court as to your success in blocking off those
weeks and taking advantage of them.  If it becomes apparent
that it's not working, then we need to get you-all back in
here.

And I know Magistrate Judge Christoff is -- is
listening in as well, as I did at your last hearing in
December; I was tuned in there.  But we always have her
assistance.  I know she's got several of your matters under
advisement right now; I think three.  And so I'm going to
coordinate some of these efforts with her.  But if you will
apprise us as to your success in blocking out those dates and
putting them to good use for those depositions, that will
sort of assure that you undertake the effort and keep us
apprised.  And if it looks as though you're not -- you know,
if you're coming off the rails somehow, we'll be able to get
you back here to see what needs to be done.

So not going to enter an order, but I think -- I
sense that, from a professional standpoint, you-all will be

*UNREDACTED TRANSCRIPT*

1   able to make that work.

2             I do want to take up the expert witness

3   disclosures against.  What had been proposed was the

4   disclosure of Plaintiff's experts, the deadline

5   September 19th of 2025; of Defendant's just a month later,

6   October 10th of 2025; and the depositions of those experts to

7   be concluded on or before November 7th.  Motions to exclude

8   experts, Daubert motions and the like, what's proposed here

9   is December 19, 2025.

10            And without objection, those dates look fine to

11  the Court.  Mr. McMullen any?

12            **MR. MCMULLEN:**  No objections, Your Honor.

13            **THE COURT:**  Rule 26(e)(1) supplementation, what

14  was proposed is September 29th of 2025, which would appear to

15  be adequate, absent any objections.

16            I do want to address a deadline for you to agree

17  upon a mediator once again.  I don't know how much time you

18  might need.  Do you need 30 days to do that, from today's

19  date, to select a new mediator?

20            **MR. ROMANUCCI:**  Thirty days is not unreasonable.

21  I would probably ask for a little bit more time, maybe 45,

22  because we're starting anew.  We're going to have to exchange

23  proposals and -- back and forth.  I'm not saying it can't be

24  done within 30 days.  But because we're starting anew and I

25  remember last time when we -- it took us a good part of

*UNREDACTED TRANSCRIPT*

```
 1   30-plus days to get to a name.  So I would ask, if you would,
 2   if --
 3                 THE COURT:  I will.
 4                 MR. ROMANUCCI:  Okay.  Thank you.
 5                 THE COURT:  So Ms. Frazier, 45 days.
 6                 THE CASE MANAGER:  Tuesday, February 18th.
 7                 THE COURT:  Tuesday, February 18th to stipulate
 8   as to a mediator, and if you fail to do so, I'll appoint one.
 9                 What other matters do we need to address?
10                 MR. ROMANUCCI:  The -- the amended complaint.
11                 THE COURT:  Granted.
12                 MR. ROMANUCCI:  Oh, that's granted.  Okay.  I'm
13   sorry.  Sometimes the amendment -- I didn't know if you meant
14   the amendment to the scheduling -- the amended complaint,
15   granted.
16                 Excuse me, Your Honor.  One moment.
17                 MS. JOHNSON:  If, Your Honor, please, Florence
18   Johnson.
19                 THE COURT:  Yes, ma'am.
20                 MS. JOHNSON:  I've been somewhat of a silent
21   minority in this matter.  And I appreciate Mr. McMullen and
22   Mr. Romanucci taking a spearhead here.  But I did want to ask
23   for the Court's assistance and clarification with regard to
24   the defendants that are stayed.
25                 We're talking about mediation, and we know, from
```

*UNREDACTED TRANSCRIPT*

1    the Court's previous order, that the state defendants do not

2    have to participate in mediation.  But I just want to be

3    clear, as we're going forward, pushing this out to 2026, what

4    the Court expects from those individuals that represent the

5    state defendants and what you want us to do.

6            I have participated in discovery in this matter

7    just to make sure that I understand and convey to my client

8    what's happening, but I also want to make sure I don't run a

9    foul with anything the Court wants us to do nor with regard

10   to informing my client.

11           So I did want to just jump in before we get to

12   anything else and ask what the Court wants to do, just to

13   clarify that the order remains in place for those defendants.

14   Thank you, Your Honor.

15           **THE COURT:**  Thank you.  I appreciate your raising

16   that.  And the order does remain in place, but let's explore

17   that a little bit.

18           I know -- gosh, it's sometime back.  But as to

19   the defendants for whom the stay applies, this gets back to

20   the ECF 110.  The order granted in part and denied in part

21   the stay.

22           To what extent, if any, have you considered, in

23   your amendment -- it wasn't addressed in your amendment, but

24   since the Court's granting your motion to amend -- taking any

25   different tact as to these defendants?  For example, suing

*UNREDACTED TRANSCRIPT*

them in their representative capacity as opposed to

individual capacity or severing or any number of other

options that would carve them out and allow you to proceed

more holistically.

**MR. ROMANUCCI:**  So I understand what Your Honor

is asking, is this with respect to the mediation itself, or

is this just to the litigation as a whole?

**THE COURT:**  It was more the latter, just to get

it on the table for discussion.

You know, we shadowbox with the state or

shadow-dance, maybe I should say, and, you know, at some

point, this case that's before the Court needs to get tried.

And I have no idea what the state proceedings may yield.  But

you need to consider cutting some of these folks loose one

way or another.

**MR. ROMANUCCI:**  Okay.  Well, I'm glad you brought

it up, as opposed to me, so it's not my idea.  Right?

Look, I -- how do I say this?  Of course that is

never outside the scope of anything that we have thought of,

but obviously having these individuals as defendants gives us

certain -- allows us to do something with them at trial that,

if they were cut loose, we may not be able to do.

So in the future, if we have maybe a discussion

at mediation with these folks, we might be able to come to

some sort of agreement or resolution.  But it's not -- it's

*UNREDACTED TRANSCRIPT*

1   not a decision that I could ever be prepared to make today

2   but one that has been considered, been discussed.  And I

3   think I should leave it at that because, then, I'd be giving

4   away probably a little bit too much.

5           But I would maybe encourage, you know, even the

6   state defendants, if they wish -- and we could work it out.

7   Maybe they should participate in mediation.

8           **THE COURT:**  And there's participating in

9   mediation, and then there's participating in mediation.

10          **MR. ROMANUCCI:**  Right.

11          **MR. ZUMMACH:**  Why can't the Court put, with

12  Mr. Romanucci's input, a limit on -- I've had this in civil

13  cases where there's a time limit that says you're going to

14  sever, dismiss, Rule 41, whatever you're going to do.  You're

15  going to get the final trial parties down to a lick-bog

16  (phonetic) by such-and-such day.

17          What's wrong with that?

18          I don't understand why we're playing again.

19  Well, let's just keep Justin Smith in there for a while until

20  we can get him over the barrel over here.

21          Either he's in or he's out.

22          **MR. PERRY:**  It's one of those rare times I say

23  ditto.

24          **MS. GODWIN:**  It's not just simple as they're in

25  or they're not in, because as Your Honor pointed out, they're

*UNREDACTED  TRANSCRIPT*

1    in, in an individual capacity and potentially also in a

2    representative capacity.

3                And we've certainly had cases where they've been

4    dismissed in their individual capacity simplifies things

5    greatly in terms of immunity defenses, but they're kept in,

6    in their representative capacity.  And there's an agreement

7    that they will appear, subject to subpoena or whatever.

8    So --

9                **MR. ZUMMACH:**  To be clear, I was referring to the

10   individual capacity.

11               **THE COURT:**  Right.

12               **MR. ZUMMACH:**  And -- and hopefully, my man is

13   amongst the free people that come in his representative

14   capacity.

15               **MS. GODWIN:**  And realistically, these officers

16   that particularly are subject to the criminal, you can say

17   participate in the mediation, but what have they gotten to

18   offer?  So I would welcome Your Honor's suggestion and hope

19   that the parties can discuss perhaps simplifying this case.

20   I think it would be a whole lot simpler to proceed if some of

21   the individual-capacity claims are gone.

22               **THE COURT:**  Mr. Romanucci.

23               **MR. ROMANUCCI:**  Yeah.  Thank you, Your Honor, and

24   thank you, Counsel.

25               I mean, I know that simple always seems better,

*UNREDACTED TRANSCRIPT*

42

1    but it's not.  And I wasn't trying to dodge anybody or

2    anything, but we've got some important issues that remain.

3              These defendants, they will acknowledge and admit

4    they are stayed.  They are stayed because they preserve a

5    constitutional right right now that does not incriminate

6    them.  I haven't had a chance to examine them, and that's

7    why, again, this is -- this is a very hardy discussion to be

8    had as to what their testimony could or might be, whether or

9    not they will be adverse, whether or not they are cooperating

10   with the examination.  And that's why I don't know that right

11   now is the time to make these decisions.

12             I think the discussion is healthy.  I think

13   that's very healthy.  But right now, especially, for example,

14   with DeWayne Smith.  With DeWayne Smith, his deposition went

15   ahead in early May of 2023 because he's a named defendant,

16   individually.  RowVaughn Wells individually named DeWayne

17   Smith individually, under state law, for intentional

18   infliction of emotional distress.  That -- we had an

19   agreement, and Judge Christoff oversaw that part of the

20   agreement where we were allowed to depose DeWayne Smith in

21   his individual capacity but not his representative capacity.

22             We're not done with DeWayne Smith's deposition

23   yet.  And DeWayne Smith's deposition is important.  Not going

24   to say it's critical, but it's important because he was an

25   on-scene officer that night, and he was the supervisor for

*UNREDACTED TRANSCRIPT*

1    the SCORPION Unit team on that particular night.

2              So there are issues yet to be resolved.  I

3    understand they may feel frustration, now that they hear a

4    trial date in July of 2026.  If my defendant is stayed, I

5    can't participate; I can't offer anything; I can't do

6    anything.

7              I understand, but we'll get there.  But setting a

8    deadline, as Mr. Zummach said, that may not solve the issue

9    either.  But I think the discussion that we're having is

10   healthy and was a good one.

11             **THE COURT:**  And, yes, Mr. McMullen.

12             **MR. MCMULLEN:**  Your Honor, I'm a little concerned

13   about a couple of things.  When you talk about them meeting

14   when they acknowledge they don't have any funds or to

15   contribute toward anything and them mediating and not

16   mediating, it raises my senses to a Mary Carter Agreement or

17   something like that, which should -- which would be shielded

18   by mediation.  And I would not want to get into that because

19   that will get very complex.

20             The other thing is if there's a deadline, as

21   Mr. Zummach says, set for them -- Mr. Romanucci -- to fish or

22   cut bait with respect to those defendants individually, then

23   we'll like to put the Court on notice that we'd revisit the

24   scheduling order because it wouldn't be as complex and as

25   many parties involved when and if that happens.

*UNREDACTED TRANSCRIPT*

1          **THE COURT:** So at this point, to answer
2    Ms. Johnson's question, the -- at the outset, the order on or
3    as to the stay remains in effect.
4              It occurs to the Court that it might facilitate
5    more forward progress, if -- if Counsel would participate or
6    be able to participate in some of the mediation sessions.  I
7    can -- without getting into Mary Carter Agreements, I can
8    imagine that the -- Mr. McMullen and Mr. Romanucci may be
9    working on a certain resolution that might require at least
10   some of these codefendants to consider certain positions.
11   And if Counsel aren't involved or continue to be apprised of
12   the -- of what's going on in mediation -- there's a stay and
13   they're not there, it could delay things further.  So I'm
14   just thinking out loud about it, but it does seem to me that
15   the order stays in effect as it is, as it is written.  But we
16   might want to consider whether it should be amended to a
17   limited extent.  And keeping in mind what Mr. Zummach has
18   raised as ultimately a fish-or-cut-date deadline.
19          **MR. ZUMMACH:** May I put a caveat on it for all
20   these lawyers to think about?  If you put a deadline, just
21   think about this before we say no to it.  If the Court put a
22   deadline -- because we have to name parties all the time.  We
23   have to finalize who our parties are going to be.  Why can't
24   we put a deadline on the plaintiff for now that says by
25   March 1st -- because we're about to get into a state criminal

*UNREDACTED TRANSCRIPT*

1   trial which is going to take a month or so to prepare.  If,

2   by March 1st, the plaintiff can always take a Rule 41

3   dismissal as to those three remaining -- I'm going to call

4   them criminal defendants because we still have criminal

5   matters going on in federal court.

6           **THE COURT:**  Right.

7           **MR. ZUMMACH:**  That doesn't prejudice the

8   plaintiff.  It helps in scheduling.  They're not going to be

9   able to take part in mediation or depositions prior to that

10  criminal trial anyway.  So if we put a limitation on there

11  and say, look, Plaintiff, you -- you keep them in, or you

12  Rule 41 them by March 1st, that will allow us, out of

13  fairness to the individual defendants, to get prepared for

14  trial, instead of going to depositions and everything else.

15  That's a Rule 41 dismissal.  There's no prejudice to the

16  plaintiff.

17          **THE COURT:**  Food for thought.  I'll consider

18  that.  You do the same.  Think about it.

19          **MR. ROMANUCCI:**  Thank you.

20          **THE COURT:**  Meanwhile, status quo as to the stay

21  order.

22          What else do we need to take up?

23          **MR. MCMULLEN:**  Your Honor, one -- a couple of

24  issues I wanted to preview, and I didn't want to -- don't

25  want to get in the details of what's going on, but there's an

*UNREDACTED TRANSCRIPT*

issue about sealing documents that's before the Court.
And -- and also there's an issue of whether -- I guess a
issue with the defendants, this defendant, whether a guardian
ad litem should take a larger role, in light of things that
have come to light in discovery.  And I'm sure the Court has
read depositions and pretty much know whether the guardian ad
litem should take a larger role because it appears that
there's been some things that the guardian ad litem should be
concerned about.  And I don't want to speak for her, but
maybe that larger role should be reporting to the magistrate
or the Court on a routine basis, if anything is there, as
opposed to the traditional guardian ad litem role, to wait
till cases fully settled, or whatever, and involve
themselves.

           **THE COURT:**  On that point first, I -- do I recall
correctly that that -- that the guardian ad litem did seek
guidance from, I think, the magistrate judge as to the
appropriate role?

           **MS. GRICE:**  I did, Your Honor.  I did.  Upon
initially being appointed, I filed a motion with the Court to
seek guidance simply because I've served as guardian ad litem
in many different types of cases.  And in every single case,
the scope of my duties are different.

           We had a pretty lengthy discussion about that
during that hearing, in which case Magistrate Christoff did

*UNREDACTED TRANSCRIPT*

1  enter an order regarding the scope of my responsibilities.

2            Now, I'm quite familiar with counsel's

3  perspective, I will say, and I will obviously yield to the

4  Court on what the Court perceives my role to be going

5  forward.  There are many concerns here, which I believe can

6  be addressed one way or the other.  I don't know if reporting

7  specifically to magistrate regarding concerns in a more

8  formal way is a better way to handle that.  I'm not sure

9  about that just yet, Your Honor.  But there are certainly

10  concerns, which I believe are a little bit outside the scope

11  of today's hearing, that would likely need to be addressed at

12  some point.

13            **THE COURT:**  All right.  And as Mr. McMullen said,

14  he's just sort of previewing issues that may become more

15  greater concern.

16            And what was the other?

17            **MR. ROMANUCCI:**  Can I -- can I respond to that,

18  Your Honor?

19            **THE COURT:**  Yes.  Sure.

20            **MR. ROMANUCCI:**  May I just say one thing to it?

21            **THE COURT:**  Yes, sealing.

22            **MR. ROMANUCCI:**  During the hearing with Judge

23  Christoff, where there was further guidance as to the

24  guardian ad litem's role, it was made clear that Ms. Grice's

25  role is to protect the best interest of the child, and there

*UNREDACTED TRANSCRIPT*

1    was agreement that day -- actually I didn't agree to it.  But

2    Defense agreed.  The City of Memphis agreed that the

3    plaintiff's lawyers were the best suited legal team to

4    continue the litigation in pursuit of the best interest of

5    the child.

6                So these concerns -- if there's a concern about

7    how we're prosecuting the case civilly, then I do believe

8    that Ms. Grice has every authority to go before this court

9    and suggest that there's concern about the continuing of that

10   representation.  But other than that, I think the statement

11   of concerns is of no value.  There's no concern, unless we

12   are not protecting the best interest of the child.

13               **THE COURT:**  And I think what Mr. McMullen was

14   saying was just sort of heads-up, that, you know, in the

15   event that becomes of greater concern.  And you had brought

16   it up in this -- following -- having read the issue of

17   sealing, sealing of the --

18               **MR. MCMULLEN:**  The second issue is -- and the

19   Court is going to have to rule on documents that we

20   designated confidential and things allegedly sealed.  But the

21   Court has read all those documents.  So without violating any

22   protective order or interim protective order, I won't go into

23   what --

24               **THE COURT:**  Right.

25               **MR. MCMULLEN:**  But the Court can see why there

*UNREDACTED TRANSCRIPT*

```
 1   is, as the guardian ad litem said, some concerns that was

 2   raised.

 3           And Mr. Romanucci is right.  A lot of the

 4   concerns happened after the meeting with Magistrate

 5   Christoff.  And during that meeting, I never doubted the

 6   competency of Mr. Romanucci.  I think that may be the only

 7   compliment I gave him.  I said, yes, they have adequate

 8   counsel.  But those are not the concerns that I'm sure the

 9   Court is aware that we have and Ms. -- and those were

10   Ms. Grice concerns.  But I am -- I am -- and we'll file the

11   appropriate documents, and we can put them under seal until

12   the Court rule on the sealing.

13           THE COURT:  All right.  Okay.

14           Yes, ma'am.

15           MS. MCKINNEY:  Yes, Your Honor.  With the Court

16   granting the motion to amend the complaint today, I was going

17   to ask, on behalf of the defendants, for a little bit more

18   additional time to file responsive pleadings to the amended

19   complaint.

20           THE COURT:  How much?

21           MS. MCKINNEY:  45 days.

22           THE COURT:  So the request, Mr. Romanucci, is for

23   them to respond to the amended complaint.

24           MR. ROMANUCCI:  Agreed.

25           THE COURT:  45 days?
```

*UNREDACTED TRANSCRIPT*

1          **MR. ROMANUCCI:**  Agreed.

2          **MS. MCKINNEY:**  Thanks.

3          **THE COURT:**  And we'll consider it.  Well, you

4     file it today.  I presume you're here.  And so 45 days from

5     today.  Okay.

6          **MR. MCMULLEN:**  And that's for all Defendants,

7     right?

8          **THE COURT:**  Yes.

9          **MR. LEVIN:**  Your Honor, on this, on the amended

10    schedule, I just want to be clear that we've gone through the

11    complete schedule.  We're working backwards up till trial

12    date.  I think we left off with the disclosure of Plaintiff's

13    experts.

14         **THE COURT:**  I had -- I had --

15         **MR. LEVIN:**  Did we go all the up to the close of

16    fact discovery?  Is --

17         **THE COURT:**  I have addressed those, yes.  Let me

18    double-check, though.

19         The disclosure of Plaintiff's experts, that's

20    September 19th, and the defendants at October 10th.  And

21    depositions of experts to and including November 7th.

22         **MR. ROMANUCCI:**  You know what, Your Honor?  Is it

23    possible, when I handed this to you, that you only copied the

24    one side and not the other?

25         **THE COURT:**  Well, I'm working off of Page 3 and

*UNREDACTED TRANSCRIPT*

1    4.  That's --

2                MR. ROMANUCCI:  Oh, you do have it.  Okay.

3                THE COURT:  Page -- yeah, Page ID 3079 and 3080.

4                MR. ROMANUCCI:  Okay.

5                MR. LEVIN:  Did the Court -- I may have just

6    missed it.  Did the Court already rule that all discovery is

7    to be completed by August 29th?

8                THE COURT:  Yes, but let me look at my check

9    marks.

10               Yeah, completing all discovery, August 29th.

11               MR. LEVIN:  Thank you, Your Honor.

12               MR. O'NEAL:  Your Honor?

13               THE COURT:  Yes, sir.

14               MR. O'NEAL:  I'm sorry, Your Honor.

15               THE COURT:  It's all right.

16               MR. O'NEAL:  Two things:  Number one, I did not

17   see, in the scheduling order -- maybe I missed it, or you

18   didn't say it -- a motion deadline, a deadline for the motion

19   to dismiss to be filed.  Because if you're resetting

20   everything, then for motion to dismiss for qualified

21   immunity, that deadline needs to be set somewhere in the

22   document, and I didn't see that in there.

23               THE COURT:  So I had dispositive motions.

24               MR. O'NEAL:  That's the dispositive motion, Your

25   Honor.  I'm talking about the qualified immunity motions, the

*UNREDACTED TRANSCRIPT*

```
 1   motion -- basically a motion to dismiss.

 2            THE COURT:  Which is a different -- a dispositive

 3   motion by a different name.

 4            MR. O'NEAL:  Yes, sir.  Yes, sir.  And I think

 5   that's one that we do earlier than later.  And the Rule 56

 6   motion is later, after all the discovery has closed, versus

 7   the Rule 12, allowing us to put ourselves in a qualified

 8   immunity realm prior to engaging in substantial amount of

 9   discovery from those individuals' point of view.

10            So we originally filed the motion to dismiss for

11   qualified immunity.  Then once he filed his motion for leave

12   to amend, you granted.  That basically resets that deadline.

13   So now we would have to file a new motion for qualified

14   immunity prior to any discovery being set forward.  So that

15   was -- I just want --

16            THE COURT:  So you want a separate, earlier

17   deadline for 12(b)(6) motions?

18            MR. O'NEAL:  Absolutely, Your Honor.

19            And then the second part of that, Your Honor, if

20   possible -- I know this is extremely unusual, but it's an

21   unusual case -- is there any possibility that we can actually

22   have a deadline?  I'm sorry, not a deadline.  But a date

23   certain on when the Court was going to rule on dispositive

24   motions.

25            THE COURT:  No.
```

*UNREDACTED TRANSCRIPT*

53

1          **MR. O'NEAL:**  I didn't think so.  I thought I
2    would throw that out there.

3          **MR. MCMULLEN:**  I didn't join in that.

4          **THE COURT:**  Nice try.

5          **MR. O'NEAL:**  I thought I would throw that out
6    there.

7          **THE COURT:**  So typically in this court, I'll see
8    the 12(b)(6) as the responsive pleading.  I've extended, you
9    know, dates for responsive pleadings 45 days from today.  And
10   we announced when that was.  That would be the time for you
11   to raise your 12(b)(6), I would think.  Yeah.

12         **MS. MCKINNEY:**  That's what I meant when --

13         **THE COURT:**  Right.  Right.

14         **MS. MCKINNEY:**  -- the 45 days.  I'm sorry I
15   wasn't clear.

16         **THE COURT:**  Answer or other responsive pleading.
17         Great.  What else?

18         **MR. WEIL:**  Judge, I'll raise one issue, kind of
19   a --

20         **THE COURT:**  Okay.

21         **MR. WEIL:**  If we're all doing motions to dismiss
22   again, we have a concern that we're never going to get -- if
23   the city moves to dismiss, everyone else moves to dismiss,
24   we're not going to have a whole lot time, if those are
25   denied, to hear about affirmative defenses.  I don't know

*UNREDACTED TRANSCRIPT*

```
 1   exactly how to address that, but it's an issue that we need

 2   to take discovery on at some point.  If there's a bunch of

 3   motions to dismiss out there and no answers, we may have a

 4   problem.

 5              It may make sense to order answers at the same

 6   time or just an assertion of affirmative defenses or

 7   something like that.  But we're going to be running up

 8   against a deadline here for us to take discovery on

 9   affirmative defenses, if they're going to be issued.

10              THE COURT:  I'll remain mindful of that.

11              MR. WEIL:  Thank you, Judge.

12              THE COURT:  The burden's on me.

13              MR. WEIL:  Understood.

14              THE COURT:  Mr. Crump, don't you want to say

15   something for the good of the order?  I mean, come all this

16   way.

17              MR. CRUMP:  Can we all just get along?

18              THE COURT:  Thank you, Mr. Crump.

19              MR. CRUMP:  Thank you, Your Honor.

20              THE COURT:  Anything else?  All right.

21              MR. MCMULLEN:  No, Your Honor.

22              THE COURT:  Okay.

23              MS. GODWIN:  No, Your Honor.  It's my birthday,

24   so I just --

25              THE COURT:  Happy birthday.  Happy birthday.
```

*UNREDACTED TRANSCRIPT*

55

1          **MS. GODWIN:**  Thank you.

2          **THE COURT:**  That's -- our gift to you is we're

3    letting you out before five o'clock on a Friday.

4          **MR. ROMANUCCI:**  Thank you, Your Honor.

5          **THE COURT:**  All right.  You-all are free to go.

6    Thank you very much.

7          **MULTIPLE SPEAKERS:**  Thank you, Your Honor.

8          (Proceedings concluded at 3:20 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*UNREDACTED TRANSCRIPT*

56

# C E R T I F I C A T E

1

2

3

4          I, LASHAWN MARSHALL, RPR, do hereby certify that

5    the foregoing 55 pages are, to the best of my knowledge,

6    skill and abilities, a true and accurate transcript from my

7    stenotype notes of the STATUS CONFERENCE on the 3rd day of

8    January 2025, in the matter of:

9

10

11

12   RowVAUGHN WELLS

13   vs.

14   CITY OF MEMPHIS, et al.

15

16

17   Dated this 27th day of January 2025,

18

19

20

21

22          *S/Lashawn Marshall*

23          Lashawn Marshall, RPR
            Official Court Reporter
24          United States District Court
            Western District of Tennessee
25

*UNREDACTED TRANSCRIPT*