IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| RowVaughn Wells, <br><br> Plaintiff, <br><br> v. <br><br> The City of Memphis *et al.*, <br><br> Defendants. | Case No. 2:23-CV-02224 <br><br> JURY DEMAND |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO CITY'S MOTION TO VACATE
PLAINTIFF'S CONFIDENTIALITY DESIGNATIONS**

Plaintiff RowVaughn Wells, through her counsel, submits this Response in Opposition to the City's Motion to Vacate Plaintiff's Confidentiality Designations (the "Motion") (ECF 287).[1]

**INTRODUCTION**

The City's Motion is the latest in its efforts to use discovery and this Court's docket to publicly smear the character and motives of Plaintiff and her deceased son based on salacious allegations that are unlikely to be admissible at trial. These matters are not new to this Court. As discussed in the parties' prior filings, in November 2024, the City took the depositions of four nonparties: the mother of Tyre Nichols' son and three members of a Sacramento family (the Volkers) that Mr. Nichols was close to from childhood. Since then, the parties have extensively briefed the question of whether the City should be allowed to publish on the Court's docket a series

---

[1] Pursuant to the Protective Order (ECF 213 § VII) and for the reasons stated herein and in Plaintiff's prior filings on the parties' sealing disputes (ECF 233, 235, 262), Plaintiff seeks leave to file this brief under seal, with a redacted version filed on the Court's public docket. Because the exhibits hereto (deposition transcripts) are replete with material designated confidential, the exhibits will be filed only with the sealed, unredacted version.

1

of incendiary claims about the private lives of Mr. Nichols, his mother (the Plaintiff), and his son's mother, based on information the City obtained during these depositions. *See* ECF 233, 235, 236, 237, 238, 262. The dispute over whether to seal these allegations is fully-briefed and pending with the Court. In her briefs, Plaintiff explained that these allegations should be sealed for two reasons: to protect the privacy of the litigants and third-party deponents, and to prevent prejudicing the jury pool in this massively high-profile case. *See* ECF 233, 235, 236, 262. Among the privacy reasons for sealing, Plaintiff explained, is that Plaintiff designated all of the testimony at issue as confidential under the Court's Protective Order (ECF 213), which bars public disclosure of this discovery.

The City's current Motion attacks those confidentiality designations.[2] While the City broadly asserts that Plaintiff's confidentiality designations as to these deposition transcripts "are improper and should be vacated" across the board, the City identifies only a small handful of designations that it actually takes issue with.[3] Mot. at 4. These are, no surprise, the very same pieces of prejudicial testimony that the City has been attempting to publish since the day these depositions concluded:

[redacted]

---

[2] In addition to Plaintiff's confidentiality designations, Mr. Nichols' son's mother separately served confidentiality designations as to the portions of her testimony that the City seeks to disclose. *See* ECF 213 §§ II.5., IV. (authorizing non-party witnesses to designate material as confidential, including deposition testimony). The City has not challenged those designations.

[3] The City has waived any challenge to any portion of testimony that it failed to specifically challenge in its Motion. *See Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2013 WL 4773433, at *8 (S.D. Fla. Sept. 4, 2013) ("[T]he general rule is that the challenging party must make specific challenges [to confidentiality designations]."). Courts have permitted a "blanket request" for re-designation only if the movant demonstrates bad faith, which the City has failed to establish.

2

██████████████████████████████████████████

As explained below, Plaintiff properly designated each of these pieces of deposition testimony as confidential. The designations fall within the scope of the Protective Order based on its plain language (*infra* pp. 5-6); the designations are supported by good cause (*infra* pp. 7-11); and they were made in good faith (*infra* pp. 11-13). And of course the confidentiality designations do not in any way impair the City's ability to take discovery on these matters or try its case before a jury (*infra* pp. 15-16).

Why, this Court must ask, is the City so fixated on Plaintiff's confidentiality designations when they in no way bar the City from using the designated material in support of the City's claims or defenses? There can be only one reason, and the City comes right out and says it: The City is frustrated with the "narrative" that it believes "Plaintiff and her counsel have spun" about Mr. Nichols, and the City hopes to present a counter-narrative "to the citizens of Memphis and within the Western District of Tennessee." Mot. at 2. The City wants the people of Memphis—the future jury—to walk into the courtroom knowing two things above all else: ████████████ ████████████████████████████████████ But under the plain text of the Protective Order and well-established caselaw, the Court should reject the City's efforts to publish confidential material that plainly falls within the scope of the Court's Protective Order.

## ARGUMENT

I. **Courts Uphold a Party's Confidentiality Designations on a Showing of Good Cause.**

"The typical way for parties to handle the production of *any* type of sensitive information—personal or commercial—is through what many courts have described as a blanket protective order." *Ruiz-Bueno v. Scott*, No. 2:12-CV-0809, 2013 WL 6122399, at *2 (S.D. Ohio Nov. 21, 2013) (emphasis added). This Court entered such an order in September 2024, after the parties

3

reached agreement on its terms. ECF 213. When a party's confidentiality designation under a blanket protective order is challenged, the party claiming confidentiality must establish that its designation is supported by "good cause." *MSC.Software Corp. v. Altair Eng'g, Inc.*, No. 07-12807, 2012 WL 13222577, at *4 (E.D. Mich. May 17, 2012). Additionally, the Protective Order in this case requires that the designating party make designations "in good faith." ECF 213 § 7.

According to the City, however, a showing of good cause and good faith are not enough. Even after those are satisfied, it says, the Court must find that the "private interest in avoiding harm" from disclosure of the designated material outweighs "the public interest in access to an open court system." Mot. at 6, 15-16. But that's not right. Under Sixth Circuit precedent, the court must balance whether the interests in confidentiality are "outweighed [by] the public interest in access" only when issuing an "order[] to seal court records" at the "adjudicative stage" of proceedings—not when parties are merely "exchang[ing] [] information" in the "discovery stage." *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016); *see also Dow Chem. Co. v. Reinhard*, No. 07-12012-BC, 2008 WL 1931910, at *6 (E.D. Mich. May 2, 2008) ("As these documents are not filed before the Court, the question regarding the propriety of sealing them does not arise. Instead, the issue pertains only to the propriety of their designation as confidential.").

Here, all that is at issue is the confidentiality of deposition testimony taken during pretrial discovery. There is no public right of access to such discovery materials. The Supreme Court has made clear that "pretrial depositions and interrogatories are not public components of a civil trial[,] . . . and, in general, they are conducted in private as a matter of modern practice." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984). As such, the Supreme Court has concluded that "restraints placed on *discovered, but not yet admitted*, information are not a restriction on a traditionally public

4

source of information." *Id.* (emphasis added); *accord The Courier J. v. Marshall*, 828 F.2d 361, 364 (6th Cir. 1987) ("Pretrial discovery . . . ordinarily proceeds as a private interchange between the parties, the fruits of which are not presumptively public."); *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 225 (6th Cir. 1996) ("*[P]arties* to civil litigation do not have a right to disseminate information they have gained through participation in the discovery process."). The two non-Sixth Circuit, pre-*Shane Group* cases cited by the City, Mot. at 16, are not to the contrary: they do not address whether *discovery materials* were properly designated as confidential under an existing blanket protective order, such as in place here.

The issue here is merely whether portions of discovery materials will remain confidential between the parties during the pendency of discovery. At this stage, no party is asking the Court to rely on these materials as evidence in adjudicating any party's substantive rights. Nor is any party claiming that any materials be deemed inadmissible. As such, the challenged deposition transcripts should remain confidential on a showing of good cause (and good faith).

**II.     The Protective Order Broadly Protects "Private and/or Sensitive Information."**

The central problem for the City is that the plain language of the Protective Order does not support its claims. *See* ECF 213 § I.A.1. And plain meaning is what governs here. As "a court-approved agreement, [the Protective Order] must be construed according to general principles of contract law," *City of Hartford v. Chase*, 942 F.2d 130, 134–35 (2d Cir. 1991), including that the Court must "begin with the [] text" and "give effect to its plain meaning in an ordinary and popular sense." *Fulkerson v. UNUM Life Ins. Co. of Am.*, 36 F.4th 678, 681 (6th Cir. 2022) (quotation marks omitted).

Under the plain terms of the Protective Order, the scope of what may be designated confidential is expansive:

> **Sec. I.A.1.** – Any material that contains "(i) confidential or proprietary business information; or (ii) ***private and/or sensitive information*** including, *but not limited to*, financial information, medical information, leave information, disciplinary information, social security numbers, dates of birth and other private employee information"; or
>
> **Sec. I.A.3.** – Any material that contains "*personal financial* or tax *information*"; or
>
> **Sec. I.A.6.** – "*Any other type of information* that is maintained by the producing party on a confidential basis, provided that the producing party has a legitimate interest in maintaining the confidentiality/privacy of said information."

ECF 213 § I.A.1.-6. (emphases added).

The City continually tries to rewrite the Protective Order to fit its argument that only the narrowest of protections are allowed. According to the City, the Order only protects "very limited categories of information." Mot. at 4. The Order's purpose, it asserts, is to protect nothing but "*limited details* from documents such as *officers' personnel records* and *police reports* with third parties' private or identifying information." Mot. 5 (emphases added). But that is not what the Protective Order says. The Protective Order expressly states that the category "private and/or sensitive information" is "*not limited to*" the particular types of information (financial, medical, etc.) that are listed. ECF 213 § I.A.1. So the City's assertion that the Protective Order "only uses the terms 'private' and 'sensitive' in reference to discernable categories of information such as 'financial information, medical information, leave information, disciplinary information, social security numbers, dates of birth and other private employee information" is simply wrong. Mot. at 10. The City cites no authority that would warrant disregarding the plain meaning of the terms "including, but not limited to" or any other terms in the Order, and the Court should not do so.

6

III. **Intimate and Private Familial Matters Are Properly Designated Confidential.**

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████ As discussed in Plaintiff's prior briefing, courts have repeatedly recognized that familial relations and activities should be protected against public disclosure in litigation. *See* ECF 262 at 7 (citing cases). ████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████

Additionally, this Court's Local Rules establish good cause for designating as confidential ████████████████ The Local Rules expressly require that parties redact or file under seal ██████████████████████████████████████████████████████

████████████████████████████

---

4 ██████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████

7

The City contends that any injury resulting from public disclosure of these matters is not "clearly defined [or] serious" enough to warrant protection. Mot. at 11-12. But the harm that Plaintiff, Mr. Nichols' minor child, and the child's mother would suffer from allowing the City to publish this personal information is clear: the embarrassment and humiliation of having their most private affairs known to the world.[5] Clearly, the City's aim is to include details of Mr. Nichols' ███████████████████████████████ in as many public filings in this case as possible, with the hope of having those damaging details republished by the press, which, the City knows, covers virtually every filing in this case. *See* Mot. at 5 ("[A]ny party should be free to file on the public docket any portion of the deposition testimony[.]").

As a result, lifting Plaintiff's confidentiality designations would, in all likelihood, cause Mr. Nichols' minor child to live for the rest of his life with the ███████████████ ███████████████████████████████████████████████████ ███████████████████████. The City cannot seriously maintain that a company's trade secrets would satisfy the Protective Order's criteria, Mot. at 12 n.12, but the same Order provides no protection for ███████████████████████████████ ███████████████████████.

The City attempts to minimize the injury of embarrassment and the related mental and emotional harms, but the text of Rule 26(c) and binding precedent make clear that preventing potential embarrassment constitutes good cause to bar public disclosure of materials obtained in discovery. *See* Fed. R. Civ. P. 26(c) ("[T]he court may, for good cause, issue an order to protect a party or person from annoyance, *embarrassment*, oppression, *or* undue burden or expense[.]"

---

[5] A separate, additional injury is the risk of prejudicing the jury based on this highly prejudicial information that may well never be admitted at trial, as Plaintiff has explained in her prior filings. *See* ECF 233; ECF 262 at 1-4, 9-12.

8

(emphasis added)). As the Supreme Court held in *Seattle Times*, good cause justified a protective order barring the "dissemination of [] information" obtained in discovery where disclosure could "result in annoyance, embarrassment and even oppression." 467 U.S. at 37 (barring disclosure of lists identifying members of religious organization). Indeed, the very case cited by the City, *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, Mot. at 11-12, *supports* this principle. The court in *Litton* agreed that "significant embarrassment" may justify confidentiality designations, but held that a deponent's "assertion of the Fifth Amendment" did not, without more, create sufficient risk of embarrassment to warrant non-disclosure. 734 F. Supp. 1071, 1081 (S.D.N.Y. 1990). Here, Plaintiff has shown good cause to support her confidentiality designations as to the sensitive deposition testimony given ███████████████████████

███████████████████████████████████████

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

This private financial transaction clearly falls within the scope of the Protective Order. Indeed, financial information is listed as an expressly protected category in the Order not once, but twice. *See* ECF 213 § I.A.1. ("private and/or sensitive information including, but not limited to,

---

███████████████████████████████████████

[7] For confidentiality purposes, the deposition of Mr. Nichols' son's mother is referred to as "Mother Dep." This deposition transcript is attached as Exhibit A.

9

financial information"); *id.* § I.A.3. ("personal financial or tax information"). The City offers no authority to support its assertion that "testimony regarding payments" do not constitute "financial information" protected by the Order. Mot. at 4 n.5. There is no language in the Protective Order that would suggest that private monetary transactions between individuals do not fall within "financial information." If the parties had intended to limit this category to bank account numbers, credit card numbers, and the like, they could have done so; they did not. In any event, even if the transaction does not fall within the City's cramped construction of "financial information," it clearly satisfies the broader definition set forth in Section I.A.6: "Any other type of information that is maintained by the producing party on a confidential basis, provided that the producing party has a legitimate interest in maintaining the confidentiality/privacy of said information."

If there were any doubt based on the text of the Protective Order, longstanding Supreme Court precedent makes clear that information exchanged in discovery about monetary payments is precisely the sort of private or sensitive material that should be shielded from public disclosure through a protective order. *See Seattle Times Co.*, 467 U.S. 20 at 37 (finding good cause justified protective order barring disclosure of documents identifying "the amounts [individuals] donated" to a religious organization because it would reveal organization's "sources of financial support"); *see also e.g., Krauter v. Norfolk S. Ry. Co.*, No. 3:03CV7231, 2005 WL 81901, at *2 (N.D. Ohio Jan. 14, 2005) (granting protective order to bar "[p]rying into a plaintiff's private financial affairs"); ECF 262 at 7 (collecting cases). Additionally, this Court's Local Rules establish good cause for designating as confidential the testimony ███████████ ███████████ the Local Rules expressly require that parties redact or file under seal any "[i]ndividual financial information." LR 3.2, Appx. A. Sec. 13.4.3.

10

The harm that would be done by publicly revealing ███████████████████ ███████████████ Plaintiff explained at length in her prior Motion to Seal (ECF 235). The public disclosure of ███████████████—in a case with such intense media coverage—compromises the privacy and safety of the minor child, and creates a needless risk of harassment and intrusion to him and his family. ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████—with absolutely no countervailing need for this payment to be revealed publicly.

V.     **Plaintiff's Confidentiality Designations Were Made in Good Faith.**

As mentioned above, the Protective Order requires that any party making confidentiality designations do so in good faith. ECF 213 § 7. Plaintiff's good faith is overwhelmingly established for all of the reasons discussed above and set out in Plaintiff's prior briefs demonstrating why the allegations the City continually seeks to publish from its November 2024 depositions should be sealed. *See* ECF 233, 235, 236, 262. There is no merit to any of the City's arguments asserting Plaintiff's lack of good faith.

*First*, the City argues that the sheer percentage of deposition material that Plaintiff designated confidential suggests bad faith. But the relatively high percentage designated confidential (about 75%) makes perfect sense in light of the subject-matter of this discovery: depositions of Mr. Nichols' former intimate partner and personal friends, in which the City probed—in hundreds of pages worth of testimony—the details of the personal relationships

between Mr. Nichols, Plaintiff, and their loved ones, including all of the sensitive topics discussed above. Moreover, much of Plaintiff's designations are comprised of voluminous material that inarguably qualifies for protection, so much so that the City has not even attempted to challenge them. This includes deposition testimony and exhibits about the following: ███████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ The City ignores all of this in its effort to suggest that the quantity of Plaintiff's designations show bad faith.

*Second*, the City argues that Plaintiff's confidentiality designations were not made in good faith because, it says, Plaintiff designated as confidential only those portions of the depositions that contain "unflattering details of her and Mr. Nichols' lives[.]" Mot. at 2-3, 13. That's not true. Plaintiff also designated as confidential much of the testimony that was flattering to Mr. Nichols, ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████ Plaintiff likewise designated as confidential all of the testimony by Kris Volker that is favorable to Mr. Nichols, ███████████████████████████████ ███████████████████████████████████████████████████████████████

---

[8] *See* ECF 213 § I.A.1. (protecting as confidential "private employee information"); *see also Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359 (6th Cir. 1999) (affirming protective order barring public disclosure of employee personnel files to prevent "harm and embarrassment").

[9] *See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 983 (6th Cir. 2003) ("[A]ny communications made in furtherance of settlement are privileged.").

12

██████████████████████████████████████████████████████████████████

████████████████████████████████████████ As these examples show, Plaintiff's designations were plainly based on whether material is "private and/or sensitive" (or otherwise falls within the scope of the Protective Order), regardless of whether it may cast Mr. Nichols in a flattering or unflattering light.

*Third*, the City argues that Plaintiff's confidentiality designations were not made in good faith because they include information "that is publicly available." Mot. at 7-9. On the contrary, however, Plaintiff was careful *not* to designate testimony or exhibits that are publicly available, or that contain no private or sensitive information. For example, Plaintiff did not designate as confidential the screenshots of Plaintiff's GoFundMe webpage (Mother Dep. Ex. 10), testimony concerning a newspaper article in which Kris Volker was quoted (Kris Volker Dep. 84:7–86:17), or testimony about the contents of public Facebook pages belonging to Marvin Volker, Lori Volker, and Melissa Volker (Marvin Volker Dep.[11] 82:5–85:17, 110:9–25; Lori Volker Dep.[12] 62:19–63:22). ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████ The City misses the point. Plaintiff has not claimed that publicly available court records themselves qualify as confidential under the Protective Order. Rather, the confidentiality designation applies to the deponents' testimony about those topics, which is replete with private and sensitive details and impressions, none of which are contained in public court records or other publicly available sources. Additionally, and apart from the protections contained

---

[10] Kris Volker's deposition transcript is attached as Exhibit B.

[11] Marvin Volker's deposition transcript is attached as Exhibit C.

[12] Lori Volker's deposition transcript is attached as Exhibit D.

within the four corners of the Protective Order, Plaintiff has argued that references to ███████ ███████ should be sealed in filings in this Court because publishing the alleged incident in this high-profile litigation risks unfairly prejudicing the jury pool with information likely to be inadmissible at trial. *See* ECF 233; ECF 262 at 1-4, 9-12.

## VI. Plaintiff Has Not Waived Any Protection of the Protective Order.

The City argues that Plaintiff has "waived any expectation of privacy through her own activity with the media." Mot. at 12; *see also id.* at 3, 17. This is wrong. Contrary to the City's assertions, Plaintiff has not "made statements to the media on issues that [she] now maintain[s] should be treated as confidential." *Id.* at 12. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████

The fact that Plaintiff has made general statements about "Mr. Nichols' character in the public" (such as he was "a gentle, free spirit and a loving father" or "[h]e'd never been in a fistfight"), Mot. at 3, does not bar Plaintiff from designating discovery material as confidential where it plainly satisfies the criteria of the Protective Order. Nothing in the Protective Order suggests that its protections fall away after a party makes general comments to the press that do not reveal the specific information at issue in a designation. Nor has the City cited any authority to support this proposition. On the contrary, Sixth Circuit precedent makes clear that a litigant retains the ability to invoke confidentiality protections to prevent broad dissemination of sensitive information even when the litigant has already shared the information with certain third parties. *See Marshall v. Bramer*, 828 F.2d 355, 360 (6th Cir. 1987) (barring public filing of subpoenaed list of Ku Klux Klan members to "protect the right of Klan members to privacy," even though their "Klan affiliation" was clearly already known at least to other Klan members).

The City's waiver argument also cannot be squared with its own practices designating material as confidential under the Protective Order. The City has made many public statements regarding its police practices since the start of this litigation,[13] and yet the City has designated as confidential *thousands of pages* of Memphis Police Department documents, including arrest reports and call logs for prior excessive force incidents, officer personnel files, training documents, disciplinary records, and misconduct investigations. The documents the City has designated as confidential—such as records of prior instances of excessive force by Memphis police officers— involve activity by *public* officials *that occurred in public* against *members of the public*. If this sort of material qualifies as confidential under the Protective Order, the deposition testimony Plaintiff has designated certainly does too.

### VII. The City Will Not Be Prejudiced By Maintaining Plaintiff's Confidentiality Designations.

Throughout the City's Motion, the City suggests that Plaintiff's confidentiality designations will somehow impede the City's ability to develop its evidence, pursue its defenses, or otherwise litigate this case. The City repeatedly argues that the deposition testimony should not be designated confidential because it "is relevant to the City's claims and defenses," and the City "is entitled to rely upon" this testimony, and "is entitled to [further] discovery on those issues." *Id.* at 17, 21; *see also id.* at 4 n.5, 15. But of course, the City never actually says how it will be prejudiced, because it won't be. The City seems to be confusing confidentiality with admissibility, as though information marked confidential will automatically be deemed inadmissible for

---

[13] *See, e.g.*, Lucas Finton, *Memphis Mayor Paul Young Plans to Enforce Tyre Nichols Ordinances, Other Crime Initiatives*, Memphis Commercial Appeal (Jan. 4, 2024), https://www.commercialappeal.com/story/news/local/2024/01/04/memphis-mayor-paul-young-tyre-nichols-ordinances-enforcement/72105625007/; Memphis Police Interim Chief C.J. Davis Speaks One-on-One with WREG, WREG News Channel 3 (Dec. 27, 2024), https://www.youtube.com/watch?v=-V_uVxl1N3g.

15

summary judgement or trial. That is not the case. The Protective Order expressly permits material designated confidential to "be used" for the "prosecution or defense of the claims in this action." ECF 213 § II.8. Under the Protective Order, confidential material can be shown not only to the parties and their counsel, but also to consultants and experts retained by the parties, *id.* § III.A.3., and to persons providing depositions or testimony in this case, *id.* § III.A.5. As the Protective Order makes clear, nothing bars a party from seeking further discovery about information that has been designated confidential (assuming it is otherwise discoverable). Nor does a confidentiality designation bar a party from using the material at summary judgment or trial (assuming it is otherwise admissible). The question of whether the material "is relevant," Mot. at 21, simply has nothing to do with whether the material should be kept confidential during discovery.

In considering challenges to confidentiality designations, courts in this Circuit look to whether the challenging party has shown how the designations would "impact[] [the party's] ability to use the documents." *F.D.I.C. v. Cuttle*, No. 11-CV-13442, 2013 WL 878773, at *4 (E.D. Mich. Mar. 8, 2013) (denying motion challenging confidentiality designations where movant failed to "establish[] how the designations have impacted his ability to use the documents"); *cf. MSC.Software Corp.*, 2012 WL 13222577, at *2 (vacating "Attorneys Eyes Only" designation where the restrictions prevented the party's own litigation team from reviewing the documents). Here, the challenged confidentiality designations will not in any way impair the City's ability to use the deposition transcripts in this litigation, which militates heavily in favor of preserving the designations.

16

### VIII. To The Extent Any Multi-Factor Balancing Test Applies, the Factors Support Plaintiff's Confidentiality Designations.

As explained above, the City's claim that the Court should balance the Plaintiff's privacy interests against the public interest in disclosure is refuted by binding Sixth Circuit and Supreme Court precedent, which establish that there is no public right to access pretrial discovery materials. *Supra* pp. 4-5. For that reason, this Court should not apply the seven-factor balancing test that the City borrows from the Third Circuit's decision in *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).[14] But to the extent the Court considers the *Glenmede* factors, *all of them* weigh *in favor* of retaining Plaintiff's confidentiality designations, as shown briefly below.

*1) Whether disclosure will violate any privacy interests;*

As discussed above and in Plaintiff's prior briefing, public disclosure of these highly personal and sensitive portions of deposition testimony harm the privacy interests of Plaintiff, Mr. Nichols, Mr. Nichols' son, and Mr. Nichols' son's mother.

*2) Whether the information is being sought for a legitimate purpose or for an improper purpose;*

As discussed above and in Plaintiff's prior briefing, the City seeks to disclose the information designated confidential for the improper purpose of poisoning the jury pool. *See* ECF 233; ECF 262 at 1-4, 9-12.

---

[14] In addition, *Glenmede* is irrelevant because it did not even address the question of confidentiality designations. At issue in *Glenmede* was the propriety of the district court's decision denying a protective order that would shield a party *from producing* documents in response to a subpoena. 56 F.3d at 478. The question in *Glenmede* was whether the party had to produce the requested material at all—not whether material, already produced under an existing confidentiality order, was properly designated confidential.

> **3) Whether disclosure of the information will cause a party embarrassment;**

As discussed above and in Plaintiff's prior briefing, public disclosure of these highly personal and sensitive portions of deposition testimony will cause embarrassment to Plaintiff, Mr. Nichols, Mr. Nichols' son, and Mr. Nichols' son's mother.

> **4) Whether confidentiality is being sought over information important to public health and safety;**

None of the materials Plaintiff has designated confidential bear any relation to public heath or safety.

> **5) Whether the sharing of information among litigants will promote fairness and efficiency;**

Plaintiff's confidentiality designations do not bar the parties from sharing or using the information amongst themselves for purposes of this litigation. The designations merely bar the parties from disclosing the material with *non*-litigants. As discussed above, the City has made no argument that the confidentiality designations would impede the fairness or efficiency of this litigation.

> **6) Whether a party benefitting from the order of confidentiality is a public entity or official;**

The parties benefiting from the confidentiality protections are private individuals, not public entities or officials (for whom there would be a greater public interest in requiring disclosure).

> **7) Whether the case involves issues important to the public.**

While Plaintiff's claims of constitutional violations and widespread practices by the Memphis Police Department of using excessive force and maintaining a code of silence are certainly issues of importance to the public, the private matters designated confidential in the deposition testimony are unrelated to these claims or the City's defenses to them.

18



Thus, as the City acknowledges, the private matters it seeks to publish have no relation whatsoever to the issue of liability or to the vast majority of Plaintiffs' alleged damages.

## CONCLUSION

For the reasons explained above and in Plaintiff's prior filings on the parties' sealing disputes (*see* ECF 233, 235, 236, 262), Plaintiff respectfully requests that the Court deny the City's Motion to Vacate Plaintiff's Confidentiality Designations.


Dated:  February 5, 2025                    Respectfully submitted,


                                            */s/ Antonio M. Romanucci*
                                            Antonio M. Romanucci (Ill. Bar No. 6190290)
                                            Bhavani K. Raveendran (Ill. Bar No. 6309968)
                                            Sarah Raisch (Ill. Bar No. 6305374)
                                            Joshua M. Levin (Ill. Bar No. 6320993)
                                            Stephen H. Weil (Ill. Bar No. 6291026)
                                            Sam Harton (Ill. Bar No. 6342112)
                                            **ROMANUCCI & BLANDIN, LLC**
                                            321 N. Clark St., Ste. 900
                                            Chicago, IL 60654
                                            P: (312) 458-1000
                                            aromanucci@rblaw.net
                                            b.raveendran@rblaw.net
                                            sraisch@rblaw.net
                                            jlevin@rblaw.net
                                            sweil@rblaw.net
                                            sharton@rblaw.net

David L. Mendelson (Tenn. Bar No. 016812)
**MENDELSON LAW FIRM**
799 Estate Place
Memphis, TN 38187
+1 (901) 763-2500 (ext. 103), Telephone
+1 (901) 763-2525, Facsimile
dm@mendelsonfirm.com

Brooke Cluse (Tex. Bar No. 24123034) (*pro hac vice pending*)
**BEN CRUMP LAW, PLLC**
717 D Street N.W., Suite 310
Washington, D.C. 20004
+1 (337) 501-8356 (Cluse), Telephone
brooke@bencrump.com

*Attorneys for Plaintiff*