IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| RowVaughn Wells, Individually and as Administratrix of the Estate of Tyre Deandre Nichols, Deceased,<br><br>　　　Plaintiff,<br><br>v.<br><br>The City of Memphis, Tennessee; Chief Cerelyn Davis; Emmitt Martin III; Demetrius Haley; Justin Smith; Desmond Mills, Jr.; Tadarrius Bean; Preston Hemphill; Robert Long; JaMichael Sandridge; Michelle Whitaker; DeWayne Smith,<br><br>　　　Defendants. | CASE NO. 2:23-CV-02224<br>JURY DEMAND |

### DEFENDANT CITY OF MEMPHIS'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL

Defendant the City of Memphis (the "City") hereby files the following Response to Plaintiff's Motion to Compel. (ECF Nos. 279, 281.)

The parties are continuing to work cooperatively to resolve the issues in the Motion to Compel, and some of the issues have been mooted in light of the productive discussions and negotiations that have taken place between the parties over the last several weeks.

Accordingly, the City asks that the Court deny the Motion to Compel or, alternatively, withhold its ruling on the Motion to Compel until a time that the parties are at an impasse.

1

I.      **DISCUSSION**

The following is a summary of the progress the parties have made with respect to the specific discovery requests at issue in the Motion to Compel.

   A.      **Request for Production No. 73.**

Plaintiff's Request No. 73 seeks production of "all minutes, reports, data, and compiled statistics from all MPD CompStat meetings, . . . for the time period January 1, 2018 through December 31, 2023." The City has produced approximately 6,600 documents responsive to Request No. 73, including documents, spreadsheets, and presentations from CompStat meetings dating back to 2018. In addition, today the City is producing a spreadsheet generated for the purpose of responding to this Request, which contains all data underlying the meetings identified in Request No. 73.

Plaintiff agreed that these two productions should satisfy this request. *See* January 28, 2025 Email from Plaintiff's Counsel, attached as Exhibit A, at 1. This issue is moot.

   B.      **Request for Production No. 96.**

Plaintiff's Request No. 96 seeks production of all Response to Resistance ("RTR") forms generated from January 2018 through January 2023, specifically those referenced on the Reimagining Policing in Memphis Response to Resistance Dashboard. This amounts to a total of 5,486 RTR forms. As the City explained in a letter to Plaintiff's counsel:

> Upon consultation with the Inspectional Services Bureau for the City of Memphis ("ISB"), the City was advised that it would take an individual approximately one to two minutes to convert a single Response to Resistance form into a produceable format. Based on this conservative estimate, presuming each of the 5,486 Response to Resistance forms were processed in one and a half minutes, production of the requested documents would take approximately 140 hours. This estimate does not include the time the City's legal team would need to review such documents prior to production.
>
> It is also relevant to point out that ISB is completely walled off from the

> other departments of the Memphis Police Department ("MPD"). This fact is due to the confidential nature of ISB's work, as well as the need for impartiality in ISB decision-making. So, the document compilation would necessarily have to be done by an ISB employee because MPD could not assign an officer to ISB for the limited purpose of compiling documents. It is also relevant to note that ISB does not have the staff to devote approximately 140 hours on this production effort for a single request for production.

(ECF No. 281-5, PageID 3624.) Based on the above, the City offered a compromise that strikes an appropriate balance between the parties' respective interests: production of RTR forms generated for a narrowed period of time, January 2021 through January 2023. The City approximates that this approach would include 2700–3000 RTR forms and take 70–80 hours of labor, exclusive of any review by the City's legal team prior to production. Plaintiff essentially declined this offer and insisted on the full scope of the original Request. (ECF No. 281-7, PageID 3633.)

More recently, the City has agreed to generate and produce a spreadsheet (in .csv format) for all of the data underlying the Response to Resistance reports identified in Request No. 96. The City anticipates that this spreadsheet will be ready by February 21, 2025. Plaintiff has accepted this proposal in part, but Plaintiff has also requested that the parties agree to an ESI protocol regarding the production of "ESI surrounding RTR reports in database form." Ex. A, at 1. Plaintiff has stated, and the City agrees, that the parties "should be able to have a more productive conversation once the .csv file . . . is produced." February 6, 2025 Email from Plaintiff's Counsel, attached as Exhibit B, at 1. Plaintiff's counsel has committed to the first draft of the proposed ESI protocol.

In light of the foregoing, the parties are not at an impasse on this issue, and the Court should withhold its ruling on the Motion to Compel.

3

C. **Request for Production Nos. 87–90 and 110.**

Request Nos. 87, 89, 90, and 110 seek production of ISB case files, and Request No. 88 seeks the RTR forms associated with the 126 ISB case files identified in Request No. 87.

1. Request Nos. 87, 89, and 90.

Together, these Requests result in approximately 600–700 unique ISB case files. As the City explained in a letter to Plaintiff's counsel:

> The City stores the requested documents at ISB. An entire ISB Case File is stored in a hard copy medium with a CD disc that contains any digital evidence, such as car or bodyworn camera footage or audio files. The hard copy/CD mediums are the only way that a complete ISB Case File is stored.
> . . .
>
> Since the complete ISB Case File is kept in hard copy and CD format, a conservative estimate for the time to compile a *single* ISB Case File responsive to this request (which would include scanning the hardcopy files and copying the CD) is approximately *45 minutes to an hour*. This means that it would take approximately [475–700][1] hours to simply compile the requested documentation into a produceable format. This does not account for any time the City's legal team will need to review any documents prior to production. Again, if a MPD employee were to spend time compiling the requested documents, it would have to be an employee assigned to ISB.

(ECF No. 281-5, PageID 3624.) Based on the above, the City offered to make all the requested files available for inspection pursuant to Rule 34. Rule 34 does not require a party to provide copies of the documents requested; inspection is sufficient, especially in situations where the documents are maintained in hard copy in the ordinary course of business. *See, e.g.*, *Trevino v. Gates*, 99 F.3d 911, 921 (9th Cir. 1996), *holding modified by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ("[A] party who produces documents for inspection is not required to make copies for the other party." (citing 8A Charles A. Wright et al., Fed. Prac. & Proc. § 2213

---

[1] The quoted section of the City's October 31, 2025 Letter was only addressing Request No. 90 at the time. Because this analysis applies equally to Request Nos. 87 and 90, the estimations have been altered to reflect the additional 126 ISB case files identified in Request No. 87.

(1994)); *Gross v. Lunduski*, 304 F.R.D. 136, 152 (W.D.N.Y. 2014) ("[I]t, it is well-established that in responding to a Rule 34(a) request, the party may make the relevant files available for the requesting party's inspection, instead of reviewing the files itself and producing copies of relevant documents."); *De Varona v. Disc. Auto Parts, LLC*, 285 F.R.D. 671, 673 (S.D. Fla. 2012) ("[Rule 34] places no obligation on the producing party to copy the documents for the requester.")

Given the large volume of files, copying is likely unfeasible without engaging a third-party vendor. Accordingly, the parties have agreed to an inspection by Plaintiff's counsel to assess the volume of documents at issue. The parties will then work together on the issue of identifying an appropriate vendor, if necessary. Finally, the City notes that, upon inspection, Plaintiff's counsel might be able to narrow down the number of files they want copied, which would potentially reduce the burden of copying enough to make a third-party vendor unnecessary. Thus, the parties are not at an impasse on this issue, and the Court should withhold its ruling at this time.

    2.    <u>Request No. 88.</u>

As explained above, the City is making available for inspection all ISB files requested by Plaintiff, including the "126 excessive force complaints provided to WMC Action News Five from the period 2015 to 2019" as described in Request No. 87. While the City did not provide copies of these files to the news station, the City did make the files available for inspection and copying at the new station's expense. The Response to Resistance forms for each of these incidents are included in the ISB case files. Thus, the parties are not at an impasse on this issue, and the Court should withhold its ruling at this time.

       3.     <u>Request No. 110.</u>

This Request seeks production of excessive force complaints and ISB investigations referred to the Shelby County District Attorney's Office for review from January 1, 2018 through January 10, 2023. The City has already produced all responsive documents from January 1, 2021 through January 10, 2023. (ECF No. 281-3, PageID 3611 (identifying responsive documents by bates number.) For the same reasons explained in Section II.D.1. above, the City is making available for inspection all responsive documents for the remaining time period identified by Plaintiff—January 1, 2018 through December 31, 2020. Thus, the parties are not at an impasse on this issue, and the Court should withhold its ruling at this time.

    **D.**    **Requests for Production Nos. 29–32.**

These Requests seek production of the following:

    (i)    the cellphones of each of the named individual Defendants in this case for inspection and imaging;

    (ii)    all communications from or to any City "employees, agents, affiliates, or members" from January 6, 2023 through January 25, 2023, "including but not limited to phone call logs, text messages, emails, social media messages, posts, or direct messages";

    (iii)    all communications from or to any City "employees, agents, affiliates, or members . . . in any way related to the January 7, 2023 incident involving Tyre Nichols, including but not limited to phone call logs, text messages, emails, social media messages, posts, or direct messages;

    (iv)    cell phone data reflecting any communication through any medium "from or to the personal or professional cellular telephone or mobile telephone of any employees, agents, affiliates, or members . . . in any way related to the January 7, 2023 incident involving Tyre Nichols"; and

    (v)    cell phone data reflecting any communication through any medium "from or to any named Defendant, from January 6, 2023- January 25, 2023."

(*See* ECF No. 281-1, PageID 3570–73.) The City is not in possession of the cell phones issued to Defendants Martin, Haley, Mills, Bean, and Justin Smith. The City understands that

6

several cell phones were taken by the Tennessee Bureau of Investigation ("TBI"), and the City believes those devices are still in the possession of the TBI. To the best of the City's knowledge, no City-owned cell phones were issued to Defendants Long. Sandridge, or Whitaker. Plaintiff cannot compel the City to produce information it does not have within its possession, custody, or control. *Teran v. Lawn Enf't, Inc.*, No. 22-CV-02338-JTF-TMP, 2024 WL 5112756, at *3 (W.D. Tenn. Dec. 13, 2024) (quoting *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 569 F. Supp. 3d 626, 639 (E.D. Mich. 2021)).

The City was able to identify the cell phones issued to Defendants Hemphill and DeWayne Smith. The cell phones are in the possession of the City's counsel. The City has offered to make the phones available to Plaintiff's counsel for inspection. The City further notes that these phones are rudimentary flip phones, so the types of data stored on those phones are limited.

With regard to Chief Davis' cell phone(s), Plaintiff initially requested a full forensic image of any phone used by Chief Davis, business or personal, done without any temporal or subject matter limitations. The City objected to this Request as overbroad and not reasonably calculated to lead to relevant evidence. Instead, the City proposed that Plaintiff narrow the Request to target relevant information, and then the City would conduct the necessary searches for the information on Chief Davis' phone(s). Plaintiff offered to take the first draft of an ESI protocol to address this issue. The City is awaiting Plaintiff's draft of the proposed protocol, and upon receipt, the parties will negotiate the terms of the protocol. The parties are not at an impasse on this issue, and the Court should withhold its ruling at this time.

7

## II.     CONCLUSION

In sum, the parties are not at an impasse on any of the above issues, and they are actively working toward mutually agreeable solutions. Accordingly, judicial resolution of these issues is not necessary at this time. Based on the foregoing, the City respectfully requests that the Court deny Plaintiff's Motion to Compel, or alternatively, withhold its ruling on the Motion until it is clear that the parties are at an impasse on an issue.

Dated: February 14, 2025.

                                            Respectfully submitted,

                                            **BAKER, DONELSON, BEARMAN,
                                            CALDWELL & BERKOWITZ, P.C.**

                                            *s/ Bruce McMullen*
                                            Bruce McMullen (#18126)
                                            Jennie Vee Silk (#35319)
                                            Freeman B. Foster (#23265)
                                            165 Madison Avenue, Suite 2000
                                            Memphis, Tennessee 38103
                                            Telephone: (901) 526-2000
                                            bmcmullen@bakerdonelson.com
                                            jsilk@bakerdonelson.com
                                            ffoster@bakerdonelson.com

                                            *Attorneys for Defendant City of
                                            Memphis, Chief Cerelyn Davis, and
                                            Dewayne Smith as Agent of the City of
                                            Memphis*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served upon all counsel of record and the Guardian Ad Litem via the Court's electronic filing system on February 14, 2025.

                                            *s/ Bruce McMullen*
                                            Bruce McMullen