IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| RowVaughn Wells, <br><br> Plaintiff, <br><br> v. <br><br> The City of Memphis *et al.*, <br><br> Defendants. | Case No. 2:23-CV-02224 |

**PLAINTIFF'S MOTION TO COMPEL AND FOR COURT CASE MANAGEMENT**

Pursuant to Federal Rules of Civil Procedure 16(c)(2)(L) and 37(a)(1), Plaintiff, through her undersigned counsel, submits the present motion to the Court. For the reasons set forth herein, Plaintiff requests a hearing on this motion pursuant to Local Rule 7.2(d).

**TABLE OF EHXIBITS**

- Ex. 1  Plaintiff's sixth set of Rule 34 requests to City (Nov. 24, 2024)
- Ex. 2  City's response to sixth set of Rule 34 requests (Dec. 26, 2024)
- Ex. 3  City's first revised response to Rule 34 requests (Jan. 15, 2025)
- Ex. 4  City's second revised response to Rule 34 requests (Jan. 28, 2025)
- Ex. 5  Rule 37 email chain (Jan. 13, 2025 – Jan. 28, 2025)
- Ex. 6  Rule 37 email chain (Jan. 31, 2025 – Feb. 24, 2025)
- Ex. 7  Rule 37 email chain (Jan. 28, 2025 – Feb. 14, 2025)
- Ex. 8  Letter from U.S. Dep't of Justice to Plaintiff Counsel (Feb. 18, 2025)

**INTRODUCTION**

Discovery communications between Plaintiff and Defendant City of Memphis have broken down, again. Last time, in December 2024, the City cut off Rule 37 communications after Plaintiff's counsel asked the City to explain the basis for a variety of dubious objections that the City had lodged against Plaintiff's discovery. That forced Plaintiff to file a motion to

1

compel on January 10 (ECF 279).  It turned out the City's objections were based on nothing: after Plaintiff moved to compel, the City largely capitulated and agreed to provide nearly all the requested evidence, without further discussion.  *See* ECF 299-1 at PageID 4208-09 (City email agreeing to bulk of discovery without further discussion); PageID 4206 (Plaintiff response pointing out City's inappropriate discovery conduct).  Cutting off Rule 37 in December was a tactic to win a discovery dispute by frustrating the meet and confer process, and it failed because Plaintiff went to the Court.

The City has now done it again, cutting off discovery discussions just as Plaintiff completed weeks of Rule 37 correspondence in preparation for a conference to work out with the City how complex *Monell* ESI could be gathered from the City's files.  That has frozen Plaintiff's discovery in its tracks, all as the clock to complete discovery continues to tick away, with only four months of written discovery remaining in this complicated *Monell* case.  Here is the discovery at issue in this motion:

***MPD database information accessed by the U.S. DOJ.***  Plaintiff has served discovery asking the City to produce the documents it provided to U.S. Department of Justice for the DOJ's pattern and practice investigation of the MPD.  The DOJ had conducted much of its investigation by accessing data from several MPD databases, so this discovery involves gathering information from those databases as well.  Plaintiff's counsel spent weeks emailing the City to figure out how to conduct targeted searches of those databases, but days after Plaintiff asked for a conference with the City to discuss how that methodology could be implemented, the City cancelled all conferences and told Plaintiff's counsel they should issue *individual* search requests to the City via email.  That about-face undid weeks of effort and effectively frustrated any efforts to gather *Monell* evidence underlying the DOJ's December 4, 2024 pattern and practice report.

2

***Development of an ESI protocol***. The City cancelled Rule 37 conferences just days after Plaintiff asked it to come to their next conference prepared to discuss how to develop an ESI protocol to gather discovery for multiple *Monell* discovery requests. ESI protocols of this nature require parties to confer and come to an understanding over custodians, search terms, data repositories, and search methodologies—a process that invariably requires dialogue between the parties in a conference setting, lest back-and-forth written technical communications drag out for months. Refusing to meet and confer about a protocol simply manufactures delay.

***The City's attempt to unilaterally control the parties' Rule 37 discussions.*** The City cancelled the parties' Rule 37 conference days after Plaintiff sent a lengthy discovery enforcement letter pointing out numerous deficiencies a number of the City's written discovery responses and asking the City for a conference to explain those responses. The City said it would provide a written reply instead, but as of this writing, that reply has never come. The upshot is that Plaintiff is forced to wait until the City decides to respond, meaning that the City effectively exercises unilateral control over what discovery it will address, and when it will address it. Meanwhile, the time to complete discovery in this case continues to slip away.

\*   \*   \*

At this stage of the litigation, time is a weapon for the City of Memphis. The U.S. DOJ's December 4 pattern and practice report makes plain that within the City's files there is ample, damning evidence of widespread unconstitutional conduct within the MPD, precisely of the sort Plaintiff has alleged in her complaint. Plaintiff has served discovery targeted at gathering that evidence to prove her *Monell* claims. The Court has given Plaintiff a limited time to gather that evidence, however, with a July 12, 2025 cutoff for written discovery. It is imperative for Plaintiff to gather this evidence within that schedule so that documents can be reviewed and

3

understood, witnesses identified in those documents can be located, interviewed or deposed, and experts can access the evidence and offer informed opinions about the City's practices.

Gathering this evidence in a timely manner requires discovery enforcement. And the lynchpin of that enforcement is the live meet-and-confer conference between the parties, a process contemplated under both Rule 37(a)(1) and Local Rule 7.2(1)(B). By refusing to participate in Rule 37 conferences, the City has slowed Plaintiff's discovery efforts to a crawl. Instead of holding a scheduled conference where the parties can come together with their "cards . . . laid on the table," *Liberty Ins. Underwriters, Inc. v. Beaufurn, LLC*, No. 1:16-cv-1377, 2021 WL 185580, at *5 (M.D.N.C. Jan. 19, 2021), Plaintiff is forced to wait until the City decides to respond over email, meaning that the City effectively exercises unilateral control over what discovery it will address, and when it will address it.

That has already resulted in significant delays, as Plaintiff explains below. It also invites incomprehension, particularly with respect to complex discovery like the database and ESI discovery at issue now. Indeed that incomprehension was front and center in the City's very emails announcing that it would be refusing to meet and confer. There, the City displayed a wholesale misunderstanding of the database discovery Plaintiff was seeking, and which Plaintiff had been laying out in a month of email correspondence with the City's lawyers. Plaintiff is left back at square one, and because the City has refused to confer, Plaintiff has no ability to try coming to a meeting of the minds with the City's lawyers in a direct dialogue. Meanwhile, nearly half the written discovery period granted by the Court on January 3 has already expired.

This cannot go on. In this motion, Plaintiff asks the Court to:

(1) **Order City to respond to discovery**. Compel the City of Memphis to respond to certain discovery as outlined herein.

(2) ***Order City to participate in Rule 37 conferences***.  Compel the City to participate in live Rule 37 conferences with Plaintiff within one calendar week of receiving a Rule 37 conference request from Plaintiff's counsel.

(3) ***Schedule bi-weekly status conferences***.  Schedule bi-weekly status conferences to set an established time at which the parties can seek the Court's help with unresolved discovery and case management disputes.

Pursuant to Local Rule 7.2(d), Plaintiff requests a hearing regarding this motion.  A hearing is called for because the factual matters involved are complex, involving both electronic discovery and access to databases.  Plaintiff, furthermore, is unable to give a full accounting of these issues because the City has cut off dialogue with Plaintiff's counsel.  Yet the issues demand prompt resolution, as they go to important evidence regarding Plaintiff's *Monell* claims while the clock runs down on Plaintiff's time to conduct her *Monell* discovery.  Plaintiff submits that a live hearing will permit the Court to cut the issues to the chase and determine whether Plaintiff is entitled to the relief she seeks in this motion.  Plaintiff's counsel are prepared to appear in person and at the Court's convenience.

## BACKGROUND

This motion concerns Plaintiff's sixth set of Rule 34 requests for production to the City. Plaintiff served those requests on November 24, 2024.  **Ex. 1**.  The City initially refused to respond, claiming that the time for discovery had passed.  **Ex. 2**.  After the Court's January 3, 2025 hearing, the City amended its responses to the discovery.  By agreement, the responses occurred in two different phases: on January 15, the City responded to one request, RFP 133, which asked the City to produce the documents it had provided to the U.S. DOJ as part of the DOJ's pattern and practice investigation of the MPD.  *See* Ex. 1 ¶ 133.  **Ex. 3**.  The City responded to the remaining discovery requests on January 28.  **Ex. 4**.

Discovery enforcement proceeded on two tracks as well:

*Enforcement regarding request No. 133.*  On January 22, the parties held a Rule 37 telephone conference regarding RFP 133.  *See* **Ex. 5** at 4.  Plaintiff then followed up with written enforcement, on January 28 (Ex. 5 at 1), and then again on February 6, (**Ex. 6** at 15-16), February 12 (Ex. 6 at 12-13), February 14 (Ex. 6 at 10-11), February 17 (Ex. 6 at 8-9), and February 18 (Ex. 6 at 8).  To conclude this enforcement, Plaintiff proposed a Rule 37 telephone conference to occur on or around February 20.  *See* Ex 6 at 10, 9, 8.

*Enforcement regarding the remaining discovery requests.*  On February 14, Plaintiff sent Rule 37 correspondence to the City regarding the City's January 28 responses to the remaining discovery requests.  **Ex. 7** at 1-3.  Plaintiff proposed that the parties confer regarding these requests on February 20 as well.  *Id.*

On February 19, the City emailed to say it was refusing to hold any further Rule 37 conferences with Plaintiff's counsel.  Ex. 6 at 6-7.  The City claimed it was doing this because during past conferences Plaintiff's counsel had been unwilling to compromise, and the conferences had become unproductive and contentious.  *Id.*  Instead, the City said it would respond to Plaintiff's discovery enforcement correspondence via email, and would do so the next day.  Ex. 6 at 7.  Plaintiff wrote to disagree with the City's unilateral cancellation of all Rule 37 conferences, explaining that they were indispensable for the parties to understand each other's positions.  Ex. 6 at 4-5.  To resolve any claims of acrimony Plaintiff proposed to have the parties record the conferences, and asked the City to reconsider its refusal.  Ex. 6 at 4-5.  The City declined.  Ex. 6 at 1-2. While the City had promised to respond in writing to the issues raised in Plaintiff's discovery enforcement correspondence, Ex. 6 at 6-7, as of this filing Plaintiff has not

6

received further correspondence from the City regarding the discovery defects discussed below. This motion follows.

## ARGUMENT

The City's conduct has brought much of Plaintiff's discovery to a standstill—or at best, promises to drag it out under a timetable that the City unilaterally sets by deciding when it will respond to Plaintiff's discovery enforcement correspondence, and what items of correspondence it will choose to address. As Plaintiff has set forth above, in this motion she asks the Court (1) to order the City to respond to discovery; (2) to order the City to participate in Rule 37 conferences; and (3) to take an active case management role by scheduling bi-weekly status conferences at which the parties can get the Court's help to resolve outstanding discovery and case management disputes. These measures are required to ensure that discovery is completed in a timely manner.

I. **The Court should compel the City to respond to Plaintiff's discovery.**

   a. **RFP 133 – Access to MPD database information underlying DOJ Report**

RFP 133 asks the City to produce: "All documents the City has provided or produced to the DOJ since January 7, 2023 relating to or in connection with the DOJ Pattern or Practice Investigation." Ex. 1 ⁋ 133.[1] In response, on January 15th, the City produced a handful of written policy documents. Otherwise, the City responded that it had provided several "law enforcement databases" to the DOJ, and objected to producing these databases to Plaintiff on grounds that they contained highly sensitive information regarding citizens, officers, and ongoing investigations. Ex. 3.

---

[1] Plaintiff has separately attempted to gather this information by asking the U.S. DOJ itself to produce it. The DOJ, however, has objected and asserted numerous federal privileges barring production. *See* **Ex. 8** (February 18, 2025 letter from U.S. DOJ to Plaintiff's counsel).

7

The parties held a Rule 37 video conference regarding this response on January 22.  *See* Ex. 5 at 1-3.  During the conference (and in subsequent correspondence), the City explained that it had made multiple MPD databases available to the DOJ.[2]  The City explained that because it had produced its databases to the DOJ, it did not know what information—in particular, what information about what incidents—the DOJ had accessed from the databases to conduct its investigation.

Plaintiff asked the City whether it would agree to re-produce the databases to Plaintiff. Ex. 5 at 2. The City objected on scope and confidentiality grounds. *See id.* at 2 ("Confidentiality" and "Database fields" headings).  In response, Plaintiff proposed that the City permit Plaintiff to review the database *fields* so that Plaintiff could focus the search for responsive information.  *Id.* ("Database fields" heading).  The City refused that proposal as well.  *Id.*

While the January 22 meet-and-confer did not resolve RFP 133, the conference did reveal a possible means of identifying at least some of the information gathered by the DOJ: the Evidence.com database.  That database, which is maintained by a private vendor (Taser / Axon), stores body camera video footage, and it records an audit trail identifying each user who viewed each video.  Ex. 5 at 3 (Plaintiff email to the City noting, "it is our understanding that . . . Evidence.com contains both metadata and audit trails showing which videos were accessed, and by whom.").  The DOJ's investigators had been given login credentials to access the MPD's videos on the Evidence.com database, so Plaintiff asked the City to produce the DOJ audit trails. *Id.*  The City agreed and produced multiple Evidence.com audit trails to Plaintiff.  Ex. 6 at 21.

---

[2]  The databases that the City described to the U.S. DOJ are:  Axon, Getac, Hexagon, IAPro/Blue Team, Inform RMS, PowerDMS, and Watson by Data Driven.  All but one are identified as operating on SQL software.  The operation of SQL databases is described herein.

8

The Evidence.com audit trails are indeed a promising means of identifying numerous incidents that were accessed by DOJ investigators during the DOJ's pattern and practice investigation. The Evidence.com database, and other MPD databases provided to DOJ, are "relational" databases that use Structured Query Language, or "SQL" to identify and access "related" data. By way of illustration, picture Blockbuster Video storing a list of customers on one spreadsheet, and video titles in a second spreadsheet. A relational database "relates" the data from these two spreadsheets via "unique IDs" that connect the data in the different spreadsheets, which can then be "related" to each other using a SQL query. A Blockbuster employee can use an SQL query to determine which video titles had been rented by a particular customer, or use a different SQL query to find all the customers who had rented a particular video title.

In a similar way, it appears that it may be possible to "relate" an incident recorded in the Evidence.com videos with other MPD data regarding the same incident, such as incident reports, investigations, complaints, and the like, in the MPD's other databases. The Evidence.com spreadsheets contain fields identifying: (a) when a DOJ user streamed a video; (b) the video's "owner," i.e., the police officer whose BWC recorded the video; (c) an "Evidence ID" which appears to assign unique ID numbers to every incident, and (d) an "Evidence Title" that appears to identify the street address or name of incident where the video was recorded. The following is an example, partially anonymized with X's:

| Action | Owner | Evidence ID | Evidence Title |
|---|---|---|---|
| Evidence Record Streamed | Bean, Tadarrius (147XXX) | P22129XXXX | 48XX Tulane |
| Evidence Record Streamed | PII Collins, MiXXXX | P22129XXXX | 48XX Tulane |

As with the Blockbuster Video example, Plaintiff expects that one or more of these fields (most likely, the "Evidence ID" or the "Evidence title" fields) can be used as a "unique ID" to "relate" incidents recorded on Evidence.com videos with information in MPD's other databases

9

about the same incident.  It stands to reason, indeed, that *some* field in the Evidence.com spreadsheet permits "relating" each streamed video to the MPD's other databases.  Without it, the Evidence.com videos would effectively be useless, as there would be no way to connect a particular body camera video with a particular police encounter.  "Relating" videos of incidents viewed by DOJ investigators on Evidence.com with records about the same incident in the MPD's other databases appears to be an effective and targeted means of identifying many of the incidents described in the DOJ's December 4, 2024 pattern and practice report.

On February 12, Plaintiff wrote the City to raise this point.  Noting that Evidence.com spreadsheets *did* contain audit trails showing which videos the DOJ accessed, Plaintiff asked:

> We presume each video on the Evidence.com site is linked to a case file / incident report / etc. in the RMS database and possibly some of the other databases you have listed.  Along with the Evidence.com audit trail we would ask that you provide linking information to the other databases.

Ex. 6 at 13.  Plaintiff concluded the February 12 email by asking for time to discuss this request in the following days, once the City's lawyers had an opportunity to "check with tech folks." *Id.* Plaintiff followed up on February 14 to elaborate on this request, explaining:

> The bulk of the use of force incidents described in the DOJ Report appear to compare what police video shows with the manner in which the incident was handled in . . . use of force reports, supervisory review, ISB review, etc. . . .  That should significantly narrow the documents we will need to review.

Ex. 6 at 11.  Plaintiff therefore requested "information sufficient to link those videos with information in the other police databases that pertains to the same incident as the video, such as incident report numbers[.]" *Id.*  Again, Plaintiff requested a Rule 37 conference to discuss this possibility. *Id.* at 10.  Plaintiff heard nothing from the City and emailed again on February 17 to ask again for a conference.  Ex. 6 at 8.  Plaintiff emailed yet again on February 18.  *Id.*  In these emails, Plaintiff proposed that the parties hold the call on February 20.  *Id.*

10

On February 19 the City responded and said it would not hold future conferences. Ex. 6 at 6-7. The remainder of its email addressed a different set of requests (RFPs, 87-90, relating to ISB files), but did not address Plaintiff's correspondence about "connecting" the Evidence.com database with the MPD's other databases. *Id.* The City promised to send an email about Plaintiff's other discovery requests the next day (*i.e.*, February 20), *id.* at 7, but nothing came.

On February 21 Plaintiff followed up, noted Plaintiff had received no relevant correspondence from the City, and asked the City to reconsider its refusal to confer. Ex. 6 at 4-5. The City responded the same day, and wrote:

> It seems like you are again asking for us to produce the databases we have already declined to produce. We stand on our objection to producing the databases that we produced to the DOJ. You do not have the statutory mandate that the DOJ has to investigate a law enforcement agency, and just because we produced our entire records management system to the DOJ does not mean you are entitled to it. That is a fishing expedition. If there is something in particular that you feel is responsive in a relational database that uses SQL, please send a request for that and we will respond accordingly.

Ex. 6 at 3.

This email, of course, entirely misconstrued Plaintiff's request—and ignored weeks of emails in which Plaintiff's counsel had been attempting to work out a way to target data extraction from the MPD's databases. In proposing to "relate" videos accessed by the DOJ's investigators in Evidence.com with records about those same incidents in the MPD's other databases, Plaintiff had *already* been proposing a method for targeted searches of the MPD's data. And the City's offer to gather information in the databases if Plaintiff could identify "something in particular" was an entirely empty gesture, as the City had already rejected Plaintiff's request for the fields in the databases so that Plaintiff could understand the types of information that the databases were storing. *See* Ex. 5 at 2 (Plaintiff counsel noting that "We

11

asked to have access to the database fields that would permit us [to] focus our review for responsive information. You refused.").[3]

That is where things stand. The City has refused to hold Rule 37 conferences to discuss Plaintiff's discovery *and* it has evidently failed either to read or comprehend the multiple emails in which Plaintiff counsel sought to explain what they were seeking. The City's refusal to meet and confer is preventing Plaintiff from gathering the critical *Monell* evidence of the numerous incidents described in the DOJ's pattern and practice report.

### b. Remaining discovery from Sixth set of requests for production

In addition to RFP 133, Plaintiff's sixth set of requests for production contains a variety of other discovery requests. The City served responses to these requests on January 28. Ex. 4. Plaintiff sent a Rule 37 enforcement letter on February 14, requesting a Rule 37 conference on February 20. Ex. 7. Plaintiff's February 14 email sets out a variety of issues with the City's discovery responses. As of this filing, the City has not responded. Plaintiff summarizes those items below.

**ESI / search protocol**. As Plaintiff notes in her February 14 email, in response to multiple requests the City stated that it had located no documents. Ex. 7 at 1. But those representations, Plaintiff explained, are not plausible. *Id.* Instead, Plaintiff wrote, "the responses call for an agreement to a discovery protocol for identifying and producing responsive documents." *Id.* Therefore, Plaintiff wrote,

> At our Rule 37 conference, we ask that you please be prepared to discuss:

---

[3] The City also claimed that Rule 37 conferences had become contentious. Ex. 6 at 6. In response Plaintiff offered to record the conferences using Zoom's record feature, noting that such recordings had resolved claims of acrimony in other cases. Ex. 6 at 4. The City has never responded to that proposal.

12

> 1. the custodians who you identi[f]y as likely to possess documents responsive to the requests;
>
> 2. the repositories (such as email, office files, and databases) you identify for search; and
>
> 3. the methodology you propose to use to conduct the search, including all keywords and all other search methodologies.
>
> We believe the foregoing will assist us in completing appropriate searches in a timely and efficient manner.

Ex. 7 at 1. The City never responded to this request—and of course it refused to hold a conference. But the conference that Plaintiff requested in her email is necessary. Courts have long recognized that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information." *Am. Consol. Indus., Inc. v. Blasingim*, No. 1:19-CV-00137, 2024 WL 2093659, at *4 (N.D. Ohio Apr. 16, 2024) (quotation omitted). The parties are required to confer regarding what requests require a protocol, who the likely custodians within the City might be, where and in what repositories responsive documents might be located, and what search methodologies would be most likely to identify and gather responsive documents in an efficient manner. Plaintiff specifically requested a Rule 37 conference to discuss these issues, *see* Ex. 7 at 1, and it was that conference that the City cancelled. Plaintiff requests that the Court order the City to respond in writing to Plaintiff's questions regarding an ESI protocol, and to participate in conferences following the City's written response so that an appropriate ESI protocol can be worked out.

**Specific discovery requests**. Plaintiff's February 14 letter references a number of specific discovery requests and asked the City to confer about them. *See* Ex. 7 *passim*. In announcing that it was refusing to hold a conference, the City wrote that it would be providing written responses by February 20. *See* Ex. 6 at 7. That written response never came, however,

13

and as of this writing Plaintiff has not received a response. Plaintiff therefore understands that the parties are at issue with respect to each of the items raised in Exhibit 7. Without engagement from the City, Plaintiff can do little except incorporate her positions in Exhibit 7 by reference, and does so here. *See* Ex. 7 *passim* (referring to RFPs 122, 125, 129-131, 134, 135, 136, 137, 139-141). The City should be compelled to amend its responses, for the reasons set forth in Exhibit 7.

The City should also be ordered to provide the clarifications requested at the outset of Exhibit 7. Notably, with respect to a number of responses Plaintiff was forced to ask the City to explain the basis for its written position, since some of those written responses beggared belief. *See, e.g.*, Ex. 7 at 3 (calling "implausible" the City's written response to RFP 137 that there were no responsive communications within the MPD about the "run tax" even after the revelations in the *Bean* criminal trial, and asking the City to come to the parties' Rule 37 call "prepared to identify precisely how you attempted to identify documents responsive to this request."). Other matters require clarification as well. *See id.* at 1-2 (seeking clarification regarding privilege logs, "not withholding" responses, "Rolling" productions, and personnel files). With no responses from the City, Plaintiff is in the dark regarding this evidence.

**II.   The City must participate in Rule 37 conferences.**

The City's refusal to engage in Rule 37 conferences (both before and after its formal announcement on February 19) has resulted in discovery enforcement on the City's terms and on the City's timing. As Plaintiff has set forth above, that has stymied Plaintiff's discovery efforts, and stalled communications regarding complex electronic discovery in particular.

The City's purported grounds for refusing to meet and confer are meritless. The City claims that Plaintiff's counsel have refused to compromise their positions at the conferences.

That is demonstrably untrue; in the parties' January 22 conference, for example, Plaintiff counsel repeatedly tried to narrow or target the scope of a request in response to the City's objections and offered suggestions for resolving others. *See* Ex. 5 at 1-3.[4] Indeed much of Plaintiff's point in requesting a follow-up Rule 37 conference on February 20 as to determine whether various discovery compromises proposed by Plaintiff's counsel were acceptable to the City. *See, e.g.*, Ex. 6 at 10-11 (proposing Rule 37 conference on February 20 to discuss *inter alia* whether audit trails from one of the MPD's databases could be used as "an efficient way" to identify information used by the DOJ in its pattern and practice report). Because the City is refusing to meet and confer, Plaintiff still does not know whether this and other proposals are agreeable to it.

Of course in some disputes, Plaintiff has stood firm. The City's objection to this misunderstands the ultimate purposes of the Rule 37 conference. The meet-and-confer requirement is certainly "meant to encourage parties to [] talk with each other, see each other's positions, try to find areas of compromise, and work out disputes amongst themselves," but where the parties are ultimately unable to find common ground, it is intended to "narrow, sharpen, and focus the issues they cannot resolve before they present those issues to the court." *Sayta v. Martin*, No. 16-CV-03775-LB, 2019 WL 1102989, at *2 (N.D. Cal. Mar. 8, 2019).

That is how Plaintiff has approached these conferences. Plaintiff counsel have tried to compromise where possible, but where that has not worked, Plaintiff has sought to *understand* the City's position so that a narrow, focused dispute can be presented to the Court. The City's

---

[4] As an example of Plaintiff's efforts to resolve the City's objections through compromise, in the parties' January 22 conference, the City refused to produce one of the MPD databases containing information the City shared with DOJ, claiming that the database contained sensitive information related to ongoing investigations. In response Plaintiff asked the City to share the *database fields*, so that Plaintiff could try to narrow her requests to focus on responsive information that does not involve ongoing investigations. The City refused. Ex. 5 at 2.

15

refusal to participate in conferences has prevented that from happening.  Plaintiff is left to seek relief from the Court while guessing at the City's ultimate reasons for opposing this or that discovery request.  That is not how it should be.  The City has insisted it can conduct future Rule 37 "conferences" in writing, but its first attempt to do so, replete with misunderstandings of Plaintiff's effort to target data extractions from MPD databases, demonstrates why that is simply impracticable.  *See supra* at 11 & Ex. 6 at 3.  The City, furthermore, never responded to multiple deficiencies identified by Plaintiff weeks ago.  *See supra* at 10-11 & Ex. 7.

Stalling out discovery in this way prevents Plaintiff from conducting discovery effectively or on time.  The Court must obligate the City to respond appropriately to Plaintiff's discovery and to meet and confer with Plaintiff's counsel.  Plaintiff requests that the Court order the City going forward to participate in a telephonic Rule 37 meet and confer within 7 days of a request by Plaintiff.  Such an order will help keep discovery in this case on track.

**III.    The Court should schedule bi-weekly status conferences.**

At this point, Plaintiff believes that the Court's intervention is called for to ensure that this complex discovery can be completed in a timely manner.  To that end, Plaintiff proposes that the Court schedule a status conference to be held once every other week for the remainder of discovery.  The parties would submit any disputes to the Court in writing two business days before the conference; or, if the parties have no disputes requiring resolution, they would so inform the Court and the conference can be cancelled.  Ideally most conferences *would* be cancelled, since the parties should be able to work out their differences informally.  As set forth above, however, that has not been the case until now, and Plaintiff is running out of time to complete discovery in this case.

Plaintiff respectfully submits that scheduling status conferences in this way would be an efficient means for disputes to be resolved in a timely manner, so that the discovery in this case can be completed within the period that the Court has allotted in the operative scheduling order.

## CONCLUSION

For the reasons set forth in this motion, Plaintiff respectfully requests that the Court order the following relief:

(1) Compel the City of Memphis to respond to certain discovery as outlined herein.

(2) Compel the City to participate in telephonic / video Rule 37 conferences with Plaintiff within one calendar week of receiving a Rule 37 conference request from Plaintiff's counsel.

(3) Schedule bi-weekly status conferences going forward, to set an established time at which the parties can seek the Court's help with unresolved discovery and case management disputes at the conferences.

Dated: March 4, 2025                                 Respectfully submitted,


/s/ *Stephen H. Weil*
_____

Antonio M. Romanucci* (Ill. Bar No. 6190290)
Sarah Raisch* (Ill. Bar No. 6305374)
Joshua M. Levin* (Ill. Bar No. 6320993)
Stephen H. Weil* (Ill. Bar No. 6291026)
Sam Harton* (Ill. Bar No. 6342112)
Colton Johnson Taylor* (Ill Bar No. 6349356)

**ROMANUCCI & BLANDIN, LLC**
321 N. Clark St., Ste. 900
Chicago, IL 60654
+1 (312) 458-1000, Main
+1 (312) 458-1004, Facsimile
aromanucci@rblaw.net
sraisch@rblaw.net
jlevin@rblaw.net

sweil@rblaw.net
sharton@rblaw.net
cjohnson@rblaw.net


David L. Mendelson (Tenn. Bar No. 016812)
Benjamin Wachtel (Tenn. Bar No. 037986)
**MENDELSON LAW FIRM**
799 Estate Place
Memphis, TN 38187
+1 (901) 763-2500 (ext. 103), Telephone
+1 (901) 763-2525, Facsimile
dm@mendelsonfirm.com
bwachtel@mendelsonfirm.com

Brooke Cluse* (Tex. Bar No. 24123034)
**BEN CRUMP LAW, PLLC**
717 D Street N.W., Suite 310
Washington, D.C. 20004
+1 (337) 501-8356
brooke@bencrump.com


*Attorneys for Plaintiff.*

* Admission *pro hac vice*

**CERTIFICATE OF CONSULTATION**

Pursuant to Local Rule 7.2(a)(1)(B), the undersigned hereby certifies that on February 24, 2025, counsel for Plaintiff consulted with all parties via email regarding the relief requested in the foregoing motion. Counsel for defendant City of Memphis opposed all relief requested. Counsel for defendant Michelle Whittaker did not oppose Plaintiff's request for scheduling bi-weekly hearings, so long as only one lawyer for a party were required to attend. The other parties did not respond to Plaintiff's request for position.

/s/ Stephen H. Weil
Stephen H. Weil