# EXHIBIT 8

**U.S. Department of Justice**

United States Attorney's Office
Western District of Tennessee

*167 North Main St*
*Suite 800*
*Memphis, TN 38103*

February 18, 2025

Antonio M. Romanucci
Romanucci & Blandin
321 N. Clark St.
Suite 900
Chicago, IL 60654

Re:   *Touhy* Request Regarding Department of Justice Investigation of the Memphis Police Department and the City of Memphis

Dear Mr. Romanucci:

I write in response to your revised request for information dated December 11, 2024, and delivered to the United States Attorney's Office on December 12, 2024.

Your request seeks information in connection with *Wells v. City of Memphis et al.*, Case No. 23-cv-2224 (W.D. Tenn.), a case to which the United States is not a party. The request seeks the United States' documents regarding an open law enforcement matter: the Department of Justice's investigation of the City of Memphis and the Memphis Police Department.

Your request seeks (1) all non-privileged Documents referred to in the Report, (2) all non-privileged Documents that formed the basis for the statements and findings in the Report, and (3) all non-privileged Documents that DOJ or the U.S. Attorney's Office gathered in investigating and preparing the Report and reaching their findings.

The United States declines to provide the requested information. Your request seeks protected law enforcement materials regarding an ongoing matter with the City of Memphis. Non-privileged documents and data underlying the investigation can be readily obtained from publicly available information or from the City, a party to your case. Information related to the Department's selection, compilation, review, and analysis of City materials, or the Department's interviews with impacted witnesses, are protected investigatory records compiled for law enforcement purposes. Disclosure would interfere with ongoing law enforcement proceedings. The records are also privileged under multiple doctrines.

I.   **The Department's Ongoing Investigation**

On July 27, 2023, the Department opened an investigation into the City of Memphis and the Memphis Police Department, pursuant to the pattern-or-practice provision of the Violent Crime Control and Law Enforcement Act of 1994. 34 U.S.C. § 12601.  Congress authorized the Attorney General to bring a lawsuit on behalf of the United States seeking court-ordered changes when reasonable cause exists to believe a governmental agency maintains a pattern or practice of violating civil rights. 34 U.S.C. § 12601(b). During the investigation, the Department reviewed numerous documents, incident reports, body-worn camera videos, and data from MPD and the City. In addition, the Department interviewed witnesses, conducted observation, and reviewed more materials from third parties.

On December 4, 2024, the Department issued a public report titled "Investigation into the City of Memphis and Memphis Police Department" (the Report) detailing its findings.[1] The Department's investigation into the City of Memphis and the Memphis Police Department was conducted and the Report was prepared in anticipation of litigation. The Department is working with the City to resolve this matter. Our investigation therefore remains open.

**II.      The Department's *Touhy* Regulations**

Under 5 U.S.C. § 301, commonly known as the "Housekeeping Statute," the heads of Executive departments may "prescribe regulations for the government of [their] department . . . and the custody, use, and preservation of its records, papers, and property." Pursuant to the statute, the Department of Justice has adopted regulations that "restrict[] the ability of department employees to produce documents" and "outlin[e] the procedures one must follow to request documents and the factors officials should consider in determining whether to release them." *Rimmer v. Holder*, 700 F.3d 246, 262 (6th Cir. 2012). These regulations, known as *Touhy* regulations, determine whether and to what extent a federal agency is authorized to disclose information. *See Touhy v. Ragen*, 340 U.S. 462 (1951).

In *Touhy*, the Supreme Court held that a federal employee could not be held in contempt for refusing to produce subpoenaed documents where his refusal was based on regulations prohibiting the disclosure of official information without prior authorization. 340 U.S. at 468. The Court held that the Attorney General had the authority to "prescribe regulations . . . for 'the custody, use, and preservation of the records, papers, and documents appertaining to' the Department of Justice," *id.* at 468, and thereby "withdraw from his subordinates the power to release department papers," *id.* at 467. Federal agencies therefore have the authority to decline to respond to requests for information pursuant to these regulations. *See Jackson v. Allen Indus., Inc.*, 250 F.2d 629, 630 (6th Cir. 1958) (approving a district court's refusal to compel an FBI agent to comply with a subpoena); *Appeal of U.S. Securities and Exchange Comm'n*, 226 F.2d 501, 516 (6th Cir. 1955) (overturning a district court's decision to hold a federal attorney in contempt for refusing to produce privileged documents). This authority is based on the federal government's sovereign immunity. *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 277 (4th Cir. 1999).

The governing *Touhy* regulations are located at 28 C.F.R. §§ 16.22-16.28. Under these provisions, the United States considers "[w]hether the disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose, and whether disclosure is appropriate under the relevant substantive law concerning privilege." *Id.* § 16.26(a). Section 16.26(b) also prohibits disclosure where, among other factors, "[d]isclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired . . . ." 28 C.F.R. § 16.26 (b)(5).

**III.     The Requested Materials Are Protected from Disclosure Under Federal Rules and Substantive Privileges.**

The requested material is not appropriate for disclosure under the Department's *Touhy* regulations. To the extent you request non-privileged information underlying the investigation, that can be obtained from the City. The City cooperated with the investigation and provided MPD reports, body-worn camera footage, policies, and training materials). The City has ready access to all that information.

The Rules of Civil Procedure limit discovery of information that "can be obtained from some other source that is more convenient." Fed. R. Civ. P. 26(b)(2)(C)(i). Courts generally avoid burdening non-parties with discovery requests if the requesting party can easily obtain the requested information from another source.

---

[1]Available at https://www.justice.gov/crt/media/1379096/dl?inline.

2

*See Raymond James & Assocs., Inc. v. 50 N. Front St. TN, LLC*, No. 18-CV-2104-JTF-TMP, 2018 WL 6528192 (W.D. Tenn. Sept. 10, 2018) ("[N]umerous courts have quashed subpoenas issued to non-parties when the requesting parties could have obtained the documents from other parties."); *Baumer v. Schmidt*, 423 F. Supp. 3d 393, 408 (E.D. Mich. 2019) ("[C]ourts in this circuit have repeatedly denied motions to compel discovery and quashed subpoenas directed to non-parties where the discovery sought was obtainable from a party to the litigation."); *Mason v. U.S. Dep't of Just.*, 3:22-MC-00002-KDB, 2022 WL 737459, at *5 (W.D.N.C. Mar. 10, 2022) (finding *qui tam* relator had no substantial need for government's interview notes because the information was available through first-party discovery).

Other information underlying the Department's investigation is protected by the law-enforcement privilege, work-product privilege, and deliberative-process privilege.

　　a.　Law-Enforcement Privilege

The Department's *Touhy* regulation protects against disclosing information that would "reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired." 28 C.F.R. § 16.26(b)(5). This prohibition is based on the law enforcement privilege recognized by the Supreme Court in *Roviaro v. United States*, 353 U.S. 53, 59 (1957).

Our findings are the result of privileged investigated techniques and procedures, and therefore protected by the qualified law enforcement privilege. *United States v. Haney*, 934 F.3d 502, 507-08 (6th Cir. 2019) (upholding district court's decision not to compel disclosure of information about an investigative technique). Production of the documents and information you seek would reveal records compiled for investigatory purposes and could interfere with the current and future law enforcement proceedings.

In *Gulluni v. Levy*, 85 F.4th 76 (1st Cir. 2023), the First Circuit held that the U.S. Attorney for the District of Massachusetts reasonably denied a request for information regarding the Department's pattern or practice investigation into the Springfield Police Department. 85 F.4th at 78. In that case, a local prosecutor requested the documents that the Department selected and relied upon in its public findings report. The court applied the law enforcement privilege, reasoning that "[d]isclosure of those specific materials could have undermined DOJ's negotiation strategies because Gulluni was seeking the fruit of DOJ's investigative techniques and procedures," and "disclosure might decrease the willingness of local police departments to share records with DOJ in the future." *Id.*; *see also Stephens Produce Co. v. NLRB*, 515 F.2d 1373, 1376 (8th Cir. 1975) (the law enforcement privilege protects "informal investigatorial and trial-preparatory processes"); *United States v. Carell*, No. 3:09-0445, 2010 WL 11610440, at *2 (M.D. Tenn. Oct. 8, 2010) (quashing deposition of FBI agents because it would "reveal investigatory records compiled for law enforcement purposes, would interfere with enforcement proceedings and would disclose investigative techniques and procedures"); *St. Vincent Med. Grp., Inc. v. U.S. Dep't of Just.*, No. 1:22-MC-00011-JPH-MG, 2022 WL 16715468, at *5 (S.D. Ind. Oct. 27, 2022), *aff'd*, 71 F.4th 1073 (7th Cir. 2023) (applying the law enforcement privilege in the context of a *Touhy* request).

Disclosure of this information could thwart governmental processes by discouraging cooperation with the Department. The materials underlying the DOJ's ongoing pattern-or-practice investigation are therefore entitled to this protection.

　　b.　Work-Product Privilege

The Department also declines to provide information in response to your request based on the work-product privilege, which protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3); *see also Hickman v. Taylor*, 329 U.S. 495, 511

3

(1947).

The information underlying the Department's investigation was selected, collected, compiled, reviewed, and analyzed in anticipation of litigation, as the First Circuit also recognized in *Gulluni*. There, the court reasoned that the Department's selection of police department documents and its determinations of misconduct were "effectuated to correct such constitutional deprivations in which remedy would have occurred through either litigation or a consent decree," and therefore DOJ reasonably concluded that its work was done in anticipation of an enforcement proceeding against the Springfield Police Department and the city of Springfield. 85 F.4th at 83. The court specifically noted that though potential litigation would be between DOJ and the Springfield Police Department, disclosure to a third party "could have waived DOJ's work product protections and impaired its negotiation leverage against SPD." *Id.* at 84. Moreover, disclosure would reveal "the thoughts and impressions of DOJ attorneys, paralegals, and investigators," and "would reveal the internal deliberation process within the Department of Justice." *Id.* at 83.

Likewise, in *Mason*, a district court refused to order the Department to disclose information related to its investigation in a *qui tam* case. 2022 WL 737459, at *1. There, the government declined to intervene in the relator's False Claims Act case and later declined to comply with the relator's subpoena seeking witness interview reports and other materials related to the government's pre-declination investigation. *Id.* at *1–*2. The court and the parties agreed that the government's interview notes were protected work product and denied the relator's motion to compel production of the documents because the relator failed to show a substantial need for and an inability to obtain the equivalent of the materials. *Id.* at *4–*5.

Disclosure of the requested documents regarding the Department's ongoing investigation would improperly interfere with that investigation and impair our ability to resolve this matter with the City and MPD pursuant to 34 U.S.C. § 12601. Disclosure would also damage the Department's ability to conduct future investigations in other jurisdictions.

    c. <u>Deliberative-Process Privilege</u>

Finally, the information requested is subject to the deliberative-process privilege. "The deliberative process privilege shields documents that reflect an agency's preliminary thinking about a problem, as opposed to its final decision about it." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 266 (2021). To be protected by this privilege, a document must be both "deliberative" and "pre-decisional." *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975); *Rugiero v. U.S. Dep't of Just.*, 257 F.3d 534, 550 (6th Cir. 2001). "Documents are predecisional if they were generated before the agency's final decision on the matter, and they are deliberative if they were prepared to help the agency formulate its position." *Sierra Club, Inc.*, 592 U.S. at 268. "A predecisional document may be virtually any document that contains personal opinions and is designed to assist agency decision-makers in making their decisions." *Mo. Coal. for Env't Found. v. U.S. Army Corps. of Eng'rs.*, 542 F.3d 1204, 1211 (8th Cir. 2008). It includes "recommendations, draft documents, proposals, suggestions, and other subjective documents that reflect the opinions of the writer rather than the policy of an agency." *Rugiero*, 257 F.3d at 550. Facts included in a predecisional document are also exempt to the extent their disclosure "would expose an agency's decisionmaking process in such a way as to discourage discussion within the agency and thereby undermine the agency's ability to perform its functions." *Schell v. U.S. Dep't of H. & Hum. Servs.*, 843 F.2d 933, 940 (6th Cir. 1988) (quoting *Dudman Comms. Corp. v. Dep't of Air Force*, 812 F.2d 1565, 1568 (D.C. Cir. 1987)).

The requested information is both predecisional and deliberative. The information you seek was generated before the Department released its public Report and is therefore predecisional. The requested information is also deliberative because it was collected, reviewed, analyzed, and summarized to assist Department officials in drafting and promulgating the final Report. Deliberating litigation strategy, making recommendations to supervisors about conclusions that can be drawn from the facts, and documenting and

analyzing information gained during an investigation are all deliberative and therefore privileged.

### IV. Conclusion

The Department declines to disclose information in response to your request. Nonprivileged materials, such as body-worn camera or MPD reports, can be obtained more expeditiously from the City, a party to the case. The other materials sought are privileged. The foregoing objections are not exhaustive, and the Department reserves the right to assert further objections in response to the requests as appropriate. If you have further questions, please do not hesitate to contact Assistant U.S. Attorneys Chris Cotten and Stuart Canale at (901) 544-4231

                                        Sincerely,

                                        Reagan Taylor Fondren
                                        Acting United States Attorney

By:    /s/ Christopher E. Cotten
        Christopher E. Cotten
        Assistant United States Attorney

        /s/ Stuart J. Canale
        Assistant United States Attorney