IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ROWVAUGHN WELLS, | |
| Plaintiff, | Case No. 2:23-cv-02224-MSN-ATC |
| v. | JURY DEMAND |
| THE CITY OF MEMPHIS, *et al.*, | |
| Defendants. | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL
AND REQUEST FOR HEARING**

Pursuant to Local Rule 7.2(c) and the Court's February 26 order, ECF 322, Plaintiff submits this reply in support of her January 10, 2025, motion to compel, ECF 279 (corrected at ECF 281) and in rejoinder to the response filed by the City of Memphis, ECF 299.

The Court's intervention is required because, as set forth herein, the City is engaged in a pattern of cutting off discovery negotiations, refusing to hold Rule 37 meet-and-confer conferences with Plaintiff's counsel. **Pursuant to Local Rule 7.2(d), Plaintiff requests a hearing regarding this motion to compel**. The City's refusal to meet and confer is frustrating Plaintiff's efforts to conduct *Monell* discovery, while the time that Plaintiff has been given to conduct that discovery winds down. A hearing will permit the Court to hear the parties in real time and determine whether to order the City to resume Rule 37 meet-and-confer conferences.

BACKGROUND

In her January 10 motion to compel, Plaintiff recounted the following sequence of events: on October 31, 2024, the City sent a Rule 37 letter taking positions on various discovery items Plaintiff had raised earlier. ECF 279 at 2. Plaintiff responded with Rule 37 letters on November

11 & 13, asking a number of questions designed to eliminate, mitigate, or simply understand the City's October 31 positions, and asking for a follow-up meet-and-confer. *See id.* at 2. The City asked for extra time so that the conference would be "more productive." *Id.* at 2. But when the parties eventually held the conference, on December 5, the City was entirely unprepared to address the bulk of the inquiries Plaintiff had made in the two November letters. *Id.* at 2. Then the next day (December 6), the City sent an email reverting to its October 31 positions, cutting off the parties' discussions, and effectively ignoring the various inquiries Plaintiff had made in her November 11 & 13 letters. *Id.* at 2. That behavior forced Plaintiff's January 10 motion.

The City's response to Plaintiff's January 10 motion was due on January 24. On January 22, the City emailed Plaintiff and broadly agreed to the discovery items Plaintiff had raised in the January 10 motion. *See* ECF 299-1 at 3-4. Among other things:

- For **RFP 73**, the City offered to produce a .csv file with certain MPD statistics—providing the information Plaintiff had sought through informal negotiation and had been forced to move to compel. *Compare* ECF 299-1 at 3 *with* ECF 279 at 3-4.

- For **RFP 96**, the City announced it had "identified a process for isolating [RTR report] data" instead of the laborious "production" it claimed in its October 31 letter—once again, effectively adopting the process Plaintiff had attempted to suggest in meet-and-confer letters in November. *Compare* ECF 299-1 at 3 *with* ECF 279 at 4-5.

- For **RFPs 29-32**, the City said it would be willing to discuss conducting searches of Chief Davis's work cellphone, subject to reasonable boundaries—which is exactly what Plaintiff's counsel had proposed to discuss on December 5, and what Plaintiff had proposed in emails to the City even *after* December 6 when the City cut off all discussions about Chief Davis's phone. *Compare* ECF 299-1 at 3-4 *with* ECF 279 at 7-9.

2

**DISCUSSION**

The City's January 22 email was a broad, point-by-point capitulation to Plaintiff's motion to compel. That about-face should not be mistaken for a change of heart, however. It should be read, rather, a tacit admission that in cutting off discussions in December, the City had engaged in conduct that was entirely indefensible under the Federal Rules. Courts routinely sanction conduct of this sort, and "a party may not avoid sanctions merely by producing the documents after a motion [to compel] has been filed." *Automated Facilities Mgmt. Corp. v. DPSI*, No. 8:08-cv-502, 2010 WL 2696194, at *2 (D. Neb. June 30, 2010) (quotation omitted).

Plaintiff is not seeking sanctions here. However, this history is relevant to the discovery that remains the subject of this motion, and to the City's discovery conduct generally going forward. On March 4, 2025, Plaintiff filed another motion to compel discovery responses from the City. *See* ECF 324. Plaintiff's March 4 motion arose from the following conduct: during January and February, Plaintiff counsel wrote a series of Rule 37 emails to the City asking it to explain multiple positions it had taken, attempting narrow and resolve objections the City had raised several *Monell* discovery requests, and proposing a Rule 37 conference on February 20. ECF 325 at 6-7. Then, on February 19, the City pulled the rug out, abruptly refusing to meet and confer with Plaintiff's counsel regarding discovery at all, and reverting to maximalist objections it had made earlier—ignoring Plaintiff's multiple Rule 37 emails sent in the interim, which were designed to address those precise objections and propose narrowed alternatives instead. *See id.* at 10-11. This conduct forced Plaintiff to file the March 4 motion to compel.

Sound familiar? The City's conduct on February 19 bears striking resemblance to its conduct on December 5 and 6. Both "withdrawals" from discovery negotiations occurred just as Plaintiff had asked for a Rule 37 conference after engaging in discovery enforcement

3

correspondence that either addressed, or at least narrowed, objections the City had made earlier. The City's *modus operandi* is now becoming clear: once opposing counsel disarms the City's discovery objections, it simply stops conferring. That is not how a responding party is supposed to operate under the Federal Rules, and the delay it continues to cause is extraordinarily prejudicial to Plaintiff. The Court must put an end to it.

## THE PRESENT DISCOVERY

The City's February 19 refusal to negotiate, moreover, has implications for the discovery at issue Plaintiff's January 10 motion that is the subject of this reply:

- For **RFP 96**, the City has agreed to produce Response to Resistance ("RTR") forms. The RTR data exists in a "relational," database, however, which Plaintiff describes in her March 4 motion to compel. *See* ECF 324 at 9-11. Plaintiff has written the City asking to discuss production of the *relational* RTR information using SQL queries, but because the City is refusing to confer with Plaintiff about discovery as of February 19, it has not engaged. *See id*. For the reasons set out in Plaintiff's March 4 motion to compel regarding RFP 133 and the City's database information (*see* ECF 324 at 10-11), **the parties are at issue**.

- For **RFPs 29-32**, the parties have sent correspondence about an ESI protocol for cellphones. Those discussions are incomplete, however, and a meet-and-confer may yet be required to hammer out the details of that protocol. While the parties have not yet come to issue, Plaintiff is concerned that the City's refusal to meet and confer could lead either to incomprehension over the ESI protocol, or to an unnecessary slowdown as Plaintiff is shunted into conferring via writing only. **This issue remains open**.

- Other discovery matters remain open as the City's refusal to meet continues. The problem posed by the City's continued refusal to meet and confer threatens either to stop or to slow down discovery discussions regarding these or any discovery item, all unnecessarily.

### RELIEF REQEUSTED

It is time for the Court to get actively involved in managing discovery in this case, as Plaintiff explained in detail in her March 4 motion to compel. In this reply Plaintiff seeks to compel regarding RFP 96, but more broadly, what Plaintiff needs is for the Court to order the City to meet and confer with Plaintiff regarding this and other complicated *Monell* discovery, as described in Plaintiff's March 4 motion to compel, ECF 324. That is precisely what the City refuses to do—and the City benefits from it every day that Plaintiff's discovery goes unresolved.

In addition to ordering the City's production of data responsive to RFP 96, Plaintiff respectfully submits that the Court should hold regular hearings to exercise supervision over the remaining *Monell* discovery in this case. *See* ECF 324. The need for these hearings to commence is urgent. Plaintiff's counsel will make themselves available at the Court's convenience.

Respectfully submitted,                                        Dated: March 5, 2025

/s/ *Stephen H. Weil*
_____

Antonio M. Romanucci* (Ill. Bar No. 6190290)
Sarah Raisch* (Ill. Bar No. 6305374)
Joshua M. Levin* (Ill. Bar No. 6320993)
Stephen H. Weil* (Ill. Bar No. 6291026)
Sam Harton* (Ill. Bar No. 6342112)
Colton Johnson Taylor* (Ill Bar No. 6349356)

**ROMANUCCI & BLANDIN, LLC**
321 N. Clark St., Ste. 900
Chicago, IL 60654
+1 (312) 458-1000, Main

+1 (312) 458-1004, Facsimile
aromanucci@rblaw.net
sraisch@rblaw.net
jlevin@rblaw.net
sweil@rblaw.net
sharton@rblaw.net
cjohnson@rblaw.net

David L. Mendelson (Tenn. Bar No. 016812)
Benjamin Wachtel (Tenn. Bar No. 037986)
**MENDELSON LAW FIRM**
799 Estate Place
Memphis, TN 38187
+1 (901) 763-2500 (ext. 103), Telephone
+1 (901) 763-2525, Facsimile
dm@mendelsonfirm.com
bwachtel@mendelsonfirm.com

Brooke Cluse* (Tex. Bar No. 24123034)
**BEN CRUMP LAW, PLLC**
717 D Street N.W., Suite 310
Washington, D.C. 20004
+1 (337) 501-8356
brooke@bencrump.com

*Attorneys for Plaintiff.*

* Admission *pro hac vice*