# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| RowVaughn Wells, Individually and as Administratrix of the Estate of Tyre Deandre Nichols, Deceased, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) CASE NO. 2:23-CV-02224<br>) JURY DEMAND |
| The City of Memphis, Tennessee; Chief Cerelyn Davis; Emmitt Martin III; Demetrius Haley; Justin Smith; Desmond Mills, Jr.; Tadarrius Bean; Preston Hemphill; Robert Long; JaMichael Sandridge; Michelle Whitaker; DeWayne Smith, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**CITY OF MEMPHIS'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND FOR COURT CASE MANAGEMENT**

4906-8485-2262

Defendant, the City of Memphis ("the City"), by and through counsel, hereby files its Response in Opposition to Plaintiff's Motion to Compel and for Court Case Management ("Plaintiff's Motion to Compel"). (ECF No. 324.)  In support of their opposition, the City states as follows:

I.      **INTRODUCTION**

The City takes issue with virtually every characterization of the City's discovery practices set forth in Plaintiff's Motion to Compel.  The City has not refused to consult with Plaintiff regarding Plaintiff's discovery requests, the City's responses, or the City's production efforts.  The City has, in the context of the discovery at issue in Plaintiff's Motion to Compel, made clear that it believes telephonic conferencing has not and will not be productive, and instead stated its preference for consultation via email.  (*See infra* Sect. II, Part D.)  The City prefers the written medium for consultation in this context, in part, due to the fact it creates a written record of the consultation.  This position does not amount to a refusal to consult with Plaintiff despite Plaintiff's disingenuous and repeated contentions to the contrary.

Plaintiff's Motion to Compel is Plaintiff's latest attempt to have the Court help litigate her case, like the flurry of motion practice related to the various sealing disputes before the Court.  Once again Plaintiff is using the Court as a shield and their public statements as a sword.  Plaintiff's Motion to Compel is also symptomatic of the primary issue with Plaintiff's case – Plaintiff cannot prove the allegations set forth in her Second Amended Complaint even with the voluminous discovery provided by the City to date.  In an effort to overcome this reality, Plaintiff seeks discovery which largely does not exist.  For example, when the City does not have documents responsive to a request, Plaintiff assumes the documents exist and are not being produced.  It is painfully clear that the Plaintiff does not have a grasp of what Plaintiff wants, or

the existence or non-existence of responsive documents. As the Court knows, and as Plaintiff conceded in Court, the *Monell* standard is a high standard.

Moreover, in a futile attempt to convince the Court that the City has "manufacture[d] delay" or that "the City effectively exercises unilateral control over what discovery it will address, and when it will address it," Plaintiff ignores the remedies available to her in the context of discovery disputes. (Pl.'s Mot. to Compel, ECF No. 324, PageID 4525.) As Plaintiff knows, a motion to compel is one such available remedy. Plaintiff claims that "the time to complete discovery in this case continues to slip away," and that "Plaintiff is forced to wait until the City decides to respond over email, meaning that the City effectively exercises unilateral control over what discovery it will address, and when it will address it." (*Id.* at PageID 4525, 4526.) Not so. Plaintiff's reluctance to put these issues before the Court, via the filing of a motion to compel, does not amount to the City having unilateral control over discovery or timing of discovery in this case. If Plaintiff is truly concerned that the City is delaying her discovery efforts with no basis for its conduct, Plaintiff is fully entitled to file a motion to compel to that effect. Until recently, after this case has been pending for nearly two years, Plaintiff has not done so, despite devoting significant attention to conduct of the City that occurred weeks prior to Plaintiff's filing of the instant motion to compel. It is clear the Plaintiff thought it could capitalize off the tragic death of Mr. Nichols and the public's sentiment to obviate the need to establish *Monell* liability.

Similarly, a careful review of Plaintiff's Motion to Compel reveals that what Plaintiff actually needs is a 30(b)(6) deposition of the City. This would allow Plaintiff to educate herself on the documents and information, as well as what is required to legally prove that the City is legally responsible for Mr. Nichols' death. The Federal Rules of Civil Procedure provide for this type of deposition, and nothing is preventing Plaintiff from pursuing it. In fact, Plaintiff initially

2

pursued a series of these corporate depositions in early 2024, before eventually abandoning them without having taken a 30(b)(6) deposition on a single topic.  A corporate representative deposition, not endless meet and confers, which amount to interviews of the City's counsel, is the proper vehicle for Plaintiff to discover many of the things she seeks.  The Plaintiff wants to use the "meet and confers" as a 30(b)(6) deposition to educate herself on what is needed to prove her case.  Plaintiff has no expert to guide her inquiry and wants defense counsel to perform that task.  That is not the purpose of a "meet and confer."

Further, the narrative put forth in Plaintiff's Motion to Compel would lead a reader lacking context to believe the City has refused to engage in discovery on a nearly wholesale basis.  This is flatly untrue.  Based on this misleading narrative spun by Plaintiff, it is important for the Court to understand the scope of Plaintiff's discovery requests, Plaintiff's consultation efforts, and the City's production to date.  Plaintiff has propounded to the City seven sets of Rule 34 Requests for Production, totaling 237 document requests.  Many of those 237 document requests include multiple subparts.  Relatedly, since July 19, 2024, Plaintiff has sent the City approximately 10 "Rule 37 Letter(s)" regarding Plaintiff's perceived deficiencies with the City's discovery practices and efforts.  Likewise, Plaintiff has sent approximately 35 substantive discovery related emails since December 18, 2024.

In response, the City has made twenty-seven separate productions of documents to Plaintiff.  Since January 31, 2025 the City has made five separate productions, and the most recent production, Production 27, was made after Plaintiff's Motion to Compel was filed.  As of the time of this filing, the City has produced approximately 15,400 files, comprised of documents, emails, spreadsheets, images, PowerPoints, etc.  These files amount to approximately 430 gigabytes (GB) of data and over 190,000 pages of documents.  The City has also produced

approximately 4,800 documents (Word, PDF, etc.), 4000 PowerPoints, 3100 emails, 1900 spreadsheets, 700 images, and 600 audio and video files (in addition to a few hundred other, less common file types). In addition to the document productions themselves, the City produces an "inventory," in the form of a spreadsheet, that cross-references by bates number which documents produced are responsive to which of the 273 document requests.

Accordingly, Plaintiff's claims of delay and of the City's unilateral control over the progress of discovery do not hold water—the City has been diligent in its discovery efforts, and to date, those discovery efforts have been comprehensive. What Plaintiff really wants is for defense counsel to tell Plaintiff what is needed to overcome the *Monell* standard. That is not the job of defense counsel, nor is it the purpose of a "meet and confer." The truth is that the MPD's policies and practices did not cause the tragic death of Mr. Nichols.

II.     **ARGUMENT**

    A.     **Plaintiff's Arguments Pertaining to Plaintiff's Request for Production No. 133 Are Misleading and Unpersuasive.**

As a preliminary matter, Plaintiff's request for "[a]ccess to MPD database[s] underlying DOJ Report" ignores the difference between the authority behind a Department of Justice ("DOJ") Pattern and Practice Investigation and the parameters governing discovery in a civil lawsuit for monetary damages. As Plaintiff has acknowledged, "DOJ pattern and practice investigations are conducted pursuant to 34 USC § 12601," which is a congressional mandate made via statute allowing the DOJ to conduct such investigations. (Pl.'s Mot. to Compel, ECF No. 324-5, Ex. 5, PageID 4616.) This is different from a civil lawsuit against a municipality. The mere fact that the City cooperated with the DOJ in its Pattern and Practice Investigation does not mean that the City is now obligated to produce the documents or databases provided to the DOJ to Plaintiff, a civil litigant publicly seeking over $500 million in damages from the City.

4

Moreover, Plaintiff's argument for production of the data and documentation underlying the incidents cited in the DOJ's Report presupposes two things: (1) that the City has the ability to identify the entirely anonymous incidents on its own; and (2) that the incidents "reported" in the DOJ Report are true and accurately stated. Neither is true.  The DOJ Report contains a list of seventy-three "incidents," most of which the City has not been able to positively identify because the DOJ refuses to provide any information regarding those incidents to the City, including the names of the officers or persons involved, the address, or even the date of each incident.  Second, of the incidents the City has been able to identify, those incidents are grossly mischaracterized in the DOJ Report.

In making her constrained arguments for the databases shared with the DOJ, Plaintiff ignores the axiomatic principles that discovery must be "<u>relevant</u> to any party's claim or defense and <u>proportional</u> to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphases added).  Plaintiff does not even attempt to make this showing with respect to her Request for Production No. 133, and instead, focuses on the communications of the parties regarding the Request.  (*See generally* Pl.'s Mot. to Compel, ECF No. 324, at PageID 4529–34.)  In the context of a motion to compel, "the party seeking discovery must demonstrate that the requests are relevant to the claims or defenses pending in the action." *Ammons v. Bell*, No. 06-2578-MA/P, 2008 WL 426507, at *1 (W.D. Tenn. Feb. 14, 2008).  Plaintiff has failed to meet this burden, particularly considering the expansive and sweeping requests for access to the various databases.  This is so because the expansive and sweeping requests, which are not reasonably calculated or sufficiently narrowed, amount to a fishing expedition.

Moreover, Plaintiff's proposed course of action regarding the Evidence.com audit trails is not actually a "method of targeted searches for the MPD's data." (Pl.'s Mot. to Compel, ECF

5

No. 324, PageID 4533.) Plaintiff claims that "[t]he Evidence.com audit trails are indeed a promising means of identifying numerous incidents that were accessed by DOJ investigators during the DOJ's patten and practice investigation." (*Id.* at PageID 5431.) What Plaintiff describes as "numerous" actually amounts to the DOJ's review of likely thousands of videos, documents, etc. comprising of an untold number of incidents. What Plaintiff fails to understand is that the DOJ Report provides narratives of approximately seventy-three unique incidents. The DOJ Report, however, does not state how many incidents were reviewed in total, nor does it state how many of those reviewed incidents were not referenced in the DOJ Report. Based on the Evidence.com audit trails alone, it appears that the DOJ reviewed at least one audio or video file from approximately 880 unique incidents, but again, only seventy-three incidents are referenced in the DOJ Report. Additionally, of those seventy-three incidents, many do not even relate to use of force within the MPD, making any documents reflecting those incidents irrelevant to Plaintiff's claims and outside the scope of permissible discovery as provided by Federal Rule of Civil Procedure 26(b).

Thus, Plaintiff's claim that she is narrowing the scope of her Request for Production No. 133 is simply untrue. In reality, Plaintiff wants to review everything reviewed by the DOJ, even if she does not get wholesale access to the specific databases, and despite the fact that the DOJ refused to provide to the City the specific details surrounding any of the incidents in the DOJ Report. This proposed "method of targeted searches for the MPD's data" is anything but "targeted." Plaintiff seeks to have the City produce all the documents, videos, etc. reviewed by the DOJ, and such a request is not tenable or likely to lead to relevant evidence based on the completely unchallenged nature of the DOJ Report. The Court should deny this sweeping request.

4906-8485-2262

### B. Plaintiff and the City Have Already Agreed to an ESI Protocol.

The City previously agreed to an ESI Protocol with Plaintiff. This ESI Protocol included a list of custodians, and the City has been using that same list of custodians in its production efforts to date. A copy of the email conveying the ESI Protocol is attached hereto as Exhibit 1. A copy of the ESI Protocol, which was attached to the email from Plaintiff's counsel is attached hereto as Exhibit 2. The ESI Protocol, of which Plaintiff is presumably aware, should be sufficient to address Plaintiff's questions regarding custodian lists, repositories, and methodology. (*See* Pl.'s Mot. to Compel, ECF No. 324-7, PageID 4649.) This is the ESI Protocol the City has been following since it was agreed upon in May 2024.

With respect to search terms, Plaintiff's request for an explanation of the ESI and Search Protocol is made in connection with its position on Request for Production Nos. 122, 125, 129–31, 133–137, and 139–41. (*Id.* at PageID 4649–50.) Regarding Request for Production Nos. 122, 129–131, and 133, the City has objected to these requests and accordingly did not run search terms. Regarding Request for Production No. 125, the City has produced all responsive documents and did not run search terms. Regarding Request for Production Nos. 134–136, the City did not run search terms because the City previously produced all responsive MPD policies and procedures.

With respect to Request for Production No. 137, the City ran a search for the term "run tax" from 2018 to present based on the list of agreed upon custodians. (*See* Exhibit 2, at p. 16.) Request for Production No. 137 is addressed in further detail below. (*See infra* Section C.) Finally, with respect to Request for Production Nos. 139–141, the City ran searches for the following terms, using the agreed upon custodian list:

- "scorpion" and "measurable performance objectives"
- "scorpion" and "op plan"

7

- "scorpion" and "operational plan"

This information is sufficient to address Plaintiff's request for "the Court [to] order the City to respond in writing to Plaintiff's questions regarding an ESI Protocol." (Pl.'s Mot. to Compel, ECF No. 324, PageID 4535.)

    **C.    Plaintiff's Requests Include Bad Faith Attempts to Discover the City's Litigation Strategy.**

Plaintiff's Request for Production No. 122 plainly seeks documents that are protected by the attorney work product privilege. (Pl.'s Mot. to Compel, ECF No. 324-4, PageID 4592.) In line with Plaintiff's own discovery practices, the City submits that the production of the requested privilege log is "unduly burdensome and disproportionate to the needs of the case." This exact argument was recently raised by counsel for Plaintiff in regard to the City's own discovery requests, and a copy of this email correspondence is attached hereto as Exhibit 3. (*See* Exhibit 3, at p. 1.) In line with this position, and the fact the request plainly seeks protected documents, there is no legitimate basis to request a privilege log. *See also In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for use in a Foreign Proceeding*, 286 F. Supp. 3d 1, 7 (D.C. Dist. 2017) (quoting *Ryan Inv. Corp. v. Pedregal De Cabo San Lucas*, No. C 06-3219, 2009 WL 5114077 at *3 (N.D. Cal. Dec. 18, 2009) ("denying plaintiff's motion to compel, explaining that 'counsel's communications with the client and work product developed once the litigation commences are presumptively privileged and need not be included on any privilege log'")).

With respect to Request for Production No. 125, the City has explicitly stated it "is not currently withholding any documents responsive to this Request." (Pl.'s Mot. to Compel, ECF No. 324-4, Page ID 4593.) While the City raised the attorney work product doctrine, to preserve

8

its objection, there is no privilege log to produce based on the plain language of the City's response.

In regard to Request for Production Nos. 129–131, Plaintiff's requests do not seek documents relevant to this litigation, and Plaintiff's contrary arguments are unavailing. The DOJ's Pattern and Practice Investigation, by the plain language of the report, is completely unrelated to "the circumstances of Mr. Nichols' death."[1] Accordingly, there is no support for Plaintiff's bald assertion that the Mr. Nichols' death "prompted the DOJ to investigate the City's pattern and practices." (Pl.'s Mot. to Compel, ECF No. 324-7, PageID 4649.) These communications are not relevant to this litigation. Furthermore, Plaintiff has expressly stated that she is willing to exclude "communications that concern purely logistical matters about the investigation" from these Requests. (*Id.*) The overwhelming majority of the City's communications with the DOJ pertain to these logistical matters—setting up interviews, ride-alongs, etc. Without waiving any of the above objections, the City is willing to produce official letter correspondence to and from the DOJ, such as a letter the DOJ sent the City when it officially commenced its investigation.

Regarding Request for Production Nos. 134–136 and 139–141, the City has identified responsive documents and explicitly stated that it "is not withholding documents responsive to this Request." (Pl.'s Mot. to Compel, ECF No. 324-4, PageID 4597–99.) To the extent that Plaintiff believes this representation is incorrect, Plaintiff is entitled to test the veracity of the

---

[1] UNITED STATES DEPARTMENT OF JUSTICE CIVIL RIGHTS DIVISION AND UNITED STATES ATTORNEY'S OFFICE WESTERN DISTRICT OF TENNESSEE CIVIL DIVISION, *Investigation of the Memphis Police Department and the City of Memphis*, p. 1 n. 1, available at: chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.justice.gov/crt/media/1379096/dl?inline.

9

City's statement at depositions she takes in this matter. Plaintiff's subjective belief that the City's position is "implausible" does not provide a legitimate basis to move to compel the City to produce documents it does not have in its possession. Moreover, to the extent that Request Nos. 139–141 seek reports about the weekly activities of SCORPION Unit, the City has produced a multitude of CompStat meeting notes, responsive to Plaintiff's Request for Production No. 73. An example can be found at COM_0155499. To that point, Plaintiff's request presupposes that SCORPION Unit had "operational plans," and it did not.

Finally, with respect to Request for Production No. 137, the City has searched the term "run tax" using the agreed upon custodian list from 2018 to present. The search has revealed eleven email communications, all of which are news articles using the term in the context of the criminal trial, and thus post-date the incident with Mr. Nichols. The City will produce these eleven email communications in short order.

      **D.**      **The City Is Not Refusing to Engage in the Meet and Confer Process.**

Plaintiff claims that the City is "[r]efusing to meet and confer," or that the City has "refused to confer." (Pl.'s Mot. to Compel, ECF No. 324, PageID 4525, 4526.) Plaintiff likewise claims that "the lynchpin of [Plaintiff's discovery] enforcement is the live meet-and-confer conference between the parties, a process contemplated under both Rule 37(a)(1) and Local Rule 7.2(1)(B) [sic]." (*Id.* at PageID 4526.) Simply put, Plaintiff's statements mischaracterize the City's position on the meet and confer process, and do not accurately reflect the plain language of Federal Rule of Civil Procedure 37(a)(1) or Local Rule 7.2(a)(1)(B).

As a preliminary matter, the City <u>has not</u> refused to confer with Plaintiff regarding discovery generally, nor has the City refused to confer with Plaintiff regarding the discovery at issue in Plaintiff's Motion to Compel. This is evident from the exhibits Plaintiff has attached to

10

her Motion to Compel. (*See* Pl.'s Mot. to Compel, Ex. 6, ECF No. 324-6, PageID 4627–31.) Specifically, counsel for the City stated, "we do not think it would be productive to schedule another Rule 37 conference via Teams or via phone." (*Id.* at PageID 4630.) In that same email, counsel for the City also stated that City Defendants "think the best path forward is to consult via email." (*Id.*) Despite Plaintiff's factually incorrect framing, the City has never refused to "confer" with Plaintiff. Rather, the City has expressed its viewpoint, based on the hours of unproductive telephonic conferencing to date, that consultation via email is the best way for Plaintiff and the City to address the discovery issues pertinent to Plaintiff's Motion to Compel. Importantly, nothing in the City's emails to Plaintiff state that the City will never be willing to confer via telephonic conference, but the City does note the previous telephonic conferences with the City and Plaintiff have been anything but productive. (*Id.* at PageID 4626–31.)

Relatedly, the plain language of Federal Rule of Civil Procedure 37(a)(1) and Local Rule 7.2(a)(1)(B) do not support Plaintiff's implied proposition that the City's preference for email consultation amounts to a refusal to confer or consult with Plaintiff. Federal Rule of Civil Procedure 37(a)(1) provides:

> **(1)** ***In General.*** On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

Fed. R. Civ. P. 37(a)(1) (emphasis in original). Notably missing from Federal Rule of Civil Procedure 37(a)(1) is the term "Rule 37 conference" or any requirement that the conferring occur via telephonic conference. *See id.*

Tellingly, Plaintiff fails to cite any authority stating or suggesting that conferring via email is counter to Federal of Civil Procedure 37(a)(1). On the other hand, there is Sixth Circuit

11

authority acknowledging that email communications may satisfy the meet and confer requirement imposed by Federal Rule of Civil Procedure 37(a)(1).  *See O'Malley v. NaphCare Inc.*, 311 F.R.D. 461, 464 (S.D. Ohio 2015) (noting, in the context of Fed. R. Civ. P. 37(a)(1) and S.D. Ohio Local Rule 37.1, that the "'meet and confer' requirement . . . requires counsel to communicate in good faith with each other—via telephone, letter correspondence, or email—to attempt to resolve any discovery disputes prior to the filing of a motion to compel") (emphasis added).  Obviously, the use of the disjunctive "or" means that email (or letter correspondence) can satisfy the requirements of Federal Rule of Civil Procedure 37(a)(1), irrespective of any telephonic conferencing.

Similarly, nothing in the plain language of Local Rule 7.2(a)(1)(B) imparts a duty to confer via telephonic conference.  *See* Local Rule 7.2(a)(1)(B).  The rule requires the moving party "to initiate the conference upon giving reasonable notice of the time, place and specific nature of the conference," but nothing expressly requires the "conference" be anything more than letter or email correspondence.  *See id.*  Put simply, Plaintiff seeks to impart a requirement on the City that is not rooted in the Federal Rules of Civil Procedure or the Local Rules of this Court.

Finally, Plaintiff cites to out of circuit authority for the proposition that "[t]he meet-and-confer requirement is certainly 'meant to encourage parties [] to talk with each other, see each other's positions, try to find areas of compromise, and work out disputes among themselves,' but where the parties are ultimately unable to find common ground, it is intended to 'narrow, sharpen, and focus the issues they cannot resolve before they present those issues to the court.'" (Pl.'s Mot. to Compel, ECF No. 324, PageID 4537 (quoting *Sayta v. Martin*, No. 16-CV-03775-LB, 2019 WL 1102989, at *2 (N.D. Cal. Mar. 8, 2019))).  Despite reliance on these propositions, Plaintiff fails to explain how or why these aims cannot be accomplished through email

12

consultation. Obviously, sophisticated parties in complex litigation are fully capable of "talk[ing] with each other, see[ing] each other's positions, try[ing] to find areas of compromise, and work[ing] out disputes among themselves" via email correspondence. *Sayta*, 2019 WL 1102989, at *2.

Accordingly, the City has not refused to engage in the consultation required by Federal Rule of Civil Procedure 37(a)(1) or Local Rule 7.2(a)(1)(B) because nothing in either rule precludes consultation via email or requires consultation via telephonic conference. Relatedly, if Local Rule 7.2(a)(1)(B) did require consultation via telephonic conferencing, Plaintiff's counsel has violated this requirement in many instances throughout this litigation. This Court should find that the City has not refused to engage in consultation and should not require the City "to participate in a telephonic Rule 37 meet and confer within 7 days of a request by Plaintiff." (Pl.'s Mot. to Compel, ECF No. 324, PageID 4538.)

    **E.**  **While Claiming That the City Defendants' Positions Are Counter to Judicial Economy, Plaintiff Seeks a Remedy Counter to Judicial Economy.**

Plaintiff alludes that in-person telephonic conferences aim to promote judicial economy. For instance, Plaintiff states she "is left to seek relief from the Court while guessing at the City's ultimate reasons for opposing this or that discovery request" in the context of her argument that the City should be required to "participate in a telephonic Rule 37 meet and confer within 7 days of a request by Plaintiff." (Pl.'s Mot. to Compel, ECF No. 324, PageID 4538.) Similarly, Plaintiff contends that "the Court's intervention is called for to ensure that this complex discovery can be completed in a timely manner." (*Id.* at PageID 4538.) Plaintiff's requested relief has no basis in any Federal Rule or binding precedent, as is evident from the fact Plaintiff fails to cite any authority in support of her request. (*See generally id.* at PageID 4538–39.)

13

Moreover, the requested relief is counter to judicial economy in that it requires the Court to essentially referee the discovery in this case on a bi-weekly basis. This approach is counterproductive <u>and</u> counter to the usual course of litigation. As Plaintiff surely knows, discovery prosecution, at times, requires motion practice when the parties are at issue with respect to specific requests. Nothing in this case or the nature of the discovery requires the Court to depart from the usual course of motion practice regarding discovery. Finally, Plaintiff's requested relief completely presupposes that her contention that the City is refusing to engage in consultation is true. For all the reasons addressed in this Response, Plaintiff's contention is unfounded.

Based on the foregoing, the City respectfully requests that the Court deny Plaintiff's request for bi-weekly status conferences regarding discovery.

### III.     **CONCLUSION**

Based on the foregoing, the City respectfully requests that the Court deny Plaintiff's Motion to Compel in its entirety.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**

*s/ Bruce McMullen*
Bruce McMullen (#18126)
Freeman B. Foster (#23265)
Jennie Vee Silk (#35319)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 526-2000
bmcmullen@bakerdonelson.com
jsilk@bakerdonelson.com
ffoster@bakerdonelson.com

*Attorneys for Defendant City of Memphis, Chief Cerelyn Davis in her Individual Capacity, and Dewayne Smith as Agent of the City of Memphis*

## CERTIFICATE OF SERVICE

I, Bruce McMullen, hereby certify that on March 18, 2025, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, and that upon filing, such system will serve a copy of the foregoing upon all counsel of record in this action.

*s/ Bruce McMullen*
Bruce McMullen

15

4906-8485-2262