## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

RowVaughn Wells,

               Plaintiff,

   v.

The City of Memphis *et al.*,
Defendants.

Case No. 2:23-CV-02224

### PLAINTIFF'S POSITION STATEMENT

Pursuant to the Court's March 20, 2025 order (ECF 345) Plaintiff, by her undersigned counsel, submits this position statement regarding certain discovery requests as to which the parties are currently in dispute.  The parties are currently at issue with respect to Plaintiffs' Requests for Production ("RFP") 133 and 122.  (The parties remain in discussion regarding a number of other requests.)  Plaintiff addresses RFP 133 first, and then RFP 122.

    I.    **RFP 133**.  *This request asks the City to produce the documents and ESI that it produced or provided to the DOJ as part of the DOJ's pattern and practice investigation, which DOJ launched following Defendants' fatal beating of Mr. Nichols.*  **See ECF 324-1 at 3.**

The City has once more cut off discovery discussions just as Plaintiff was proposing concrete ways to resolve the City's objections to this discovery request.  Plaintiff has recounted the City's use of this tactic previously.  *See* ECF 324 at 1-5; ECF 326 at 1-5. This time, when the City claimed undue burden because they would have to conduct one-by-one searches of their SQL databases to gather the information Plaintiff was seeking, Plaintiff hired an ESI consultant named Thomas Matzen, and proposed that Mr. Matzen confer with the City's database managers about conducting "bulk queries" of the databases, which would resolve the burden asserted by the City.  The City refused, saying they had researched Mr. Matzen online and determined that he

lacked experience with SQL. The City is wrong, but no matter—the next day, Plaintiff proposed

another ESI consultant, Charles Platt, to confer with the City's database managers instead.

Plaintiffs provided the City with Mr. Platt's CV, which showed he is inarguably qualified to

discuss and conduct SQL queries. The City *never responded*. That is why the parties are at issue

regarding this critical discovery.

This cannot go on. Plaintiff served RFP 133 in November 2024, and despite unflagging

efforts by Plaintiff's counsel to work with the City to gather responsive discovery, the City is still

resisting. We are now in April, after this Court specifically ordered the City to confer with

Plaintiff regarding this very discovery request, and the City is still cutting off discussions.

Plaintiff is running out of time to conduct *Monell* discovery in this case, and she fears that

another order by this Court will simply result in more struggle with the City's lawyers, more

delay, and another round of motion practice, all while precious weeks and more slip away. As set

forth herein, Plaintiff therefore proposes that the Court appoint Mr. Charles Platt as a court

neutral to explore and conduct the SQL queries that are required for the gathering of the evidence

called for in RFP 133. Mr. Platt has submitted a declaration and CV, which are attached hereto

as **Exhibit A**. Plaintiff explains why this appointment is needed below.

## DISCUSSION

Plaintiff served RFP 133, which seeks documents provided to DOJ for its pattern and

practice investigation, in November 2024. The purpose of this discovery is to gather targeted

evidence to prove Plaintiff's *Monell* claims—specifically, that the City had settled customs of

using excessive force and allowing that police brutality to flourish through a code of silence and

inadequate supervision within the Memphis Police Department ("MPD"). The City responded

that the bulk of its production to the DOJ consisted of several SQL-server databases that

contained broad information about MPD encounters with civilians and the supervisory review of those same encounters.  However, the City explained, because it had provided entire databases to the DOJ, the City did not know which incidents the DOJ had actually reviewed within those databases.  And, the City objected to providing the databases in their entirety to Plaintiff's counsel (as the City did for DOJ), citing overbreadth and burden.  ECF 324 at 8.

This overbreadth objection is dubious—the DOJ Report[1] made clear that DOJ's pattern and practice investigation of MPD broadly covered the same territory as Plaintiff's *Monell* claims, and there is no obvious burden to producing the databases.  All the same, Plaintiff sought a way to address the City's objections, by targeting the information sought in the request.  One of the databases accessed by the DOJ, "Evidence.com," houses MPD's body-worn camera ("BWC") videos.  This database maintained an audit trail that showed which videos DOJ investigators had viewed. The Evidence.com database, like MPD's other databases, is based on SQL, meaning that an incident viewed by the DOJ investigators in Evidence.com can be "related" to other MPD records for the same incident that are stored in MPD's other databases (such as use of force reports, arrest reports, supervisory reviews, and Inspectional Services Bureau materials).  *See* ECF 324 at 9-10.

With this in mind, Plaintiff asked the City to produce **(1)** the BWC videos that DOJ had viewed in the Evidence.com database (as reflected in the database's audit trails), along with **(2)** records contained in MPD's other SQL databases that recorded information relating to those same incidents.  ECF 324 at 10-11; ECF 324-6 at 11 (PageID 4635).  The City refused to discuss

---

[1] "DOJ Report" refers to the December 4, 2024 report titled *Investigation of the Memphis Police Department and the City of Memphis* by the U.S. Department of Justice Civil Rights Division and the United States Attorney's Office for the Western District of Tennessee Civil Division, which is available at the following link: https://www.justice.gov/crt/media/1379096/dl?inline.

this proposal and shut off discussions with Plaintiff. Plaintiff filed her March 4 motion to compel to force the City to resume conferences regarding this proposal. *See* ECF 324 at 1-5.

After the Court ordered the City to participate in a conference (*see* ECF 345), the parties discussed Plaintiff's proposal on March 28, 2025. The City objected that Plaintiff's proposal would be unduly burdensome: gathering documents relating to the 880 incidents reviewed by DOJ investigators from the MPD's *other* databases would require a user to conduct individual, one-by-one queries of each database by incident number. **Ex. C** at 1 (Apr. 2, 2025 email). Searching for 880 incidents across multiple databases would require several thousand individual queries, said the City, resulting in an undue burden.

Plaintiff immediately sought to address this objection. Plaintiff proposed to the City that *bulk* SQL queries could be run through the "back end" of the databases for the 880 incidents— rather than one-by-one searches on the front-end user interface—permitting the gathering of the information for the 880 incidents in just a few steps. **Ex. C** at 1. To discuss the means by which such bulk back-end queries could be done, Plaintiff hired Mr. Thomas Matzen, an e-discovery consultant, and made him available for a follow-up call with the City on April 4. **Ex. D** at 8 (Apr. 5, 2025 email). On Saturday April 5, Plaintiff sent an email to the City reiterating Plaintiff's request that Mr. Matzen meet with database personnel for the City to discuss Plaintiff's proposal of conducting bulk queries for the records related to the 880 incidents. *Id.*

On April 6, the City responded. **Ex. D** at 2-7. Counsel for the City said they had looked up Mr. Matzen online and determined that he lacked experience with SQL. Therefore, the City said, the parties were "at issue." *Id.* at 4. This objection was wrong, since Mr. Matzen does have SQL experience, and it was illogical: if Mr. Matzen lacked SQL experience, it would be Plaintiff's loss, not the City's. All the same, the very next day, on Monday April 7, Plaintiff

proposed another e-discovery consultant, Mr. Charles Platt, and provided Mr. Platt's CV to the City. **Ex. B** at 1 (Apr. 7, 2025 email). The CV inarguably showed that Mr. Platt, who has specialized in database technology for decades, was amply qualified to consult with the City regarding a back-end SQL query. Mr. Platt's qualifications unquestionably resolved the City's objection to Mr. Matzen. The City, however, never responded to this proposal. The parties are thus at issue.

The City's refusal to even consult with Mr. Platt fits the pattern Plaintiff has identified previously: the City raises objections to Plaintiff's *Monell* discovery, but once Plaintiff does the legwork to resolve those objections, the City cuts off discussion. *See* ECF 324. The result is that the City stymies Plaintiff's efforts to gather *Monell* evidence, even where the City has run out of legitimate objections to Plaintiff's *Monell* discovery request. That, certainly, is what has happened here. By refusing to meet with Mr. Matzen, the City effectively seeks to confine Plaintiff to the City's preferred way of responding to RFP 133: the City insists that it should provide Plaintiff with *only* the BWC videos for the 880 incidents, and then have Plaintiff counsel make one-off requests for other MPD records for specific, select incidents among the 880.

For a host of reasons, this proposal would effectively deprive Plaintiff of large swathes of highly relevant *Monell* evidence.

***First***, the DOJ Report emphasizes that narrative reports by MPD officers (such as in Response to Resistance reports, incident reports, or arrest reports) often did not match what the BWC videos showed, frequently downplaying or omitting uses of force, or inflating the conduct of the civilian at issue to falsely justify the force the officer used. With only BWC videos, and no related documentation, it will be impossible to identify such instances. This is essential evidence for Plaintiff to obtain because one of the core customs alleged in Plaintiff's *Monell*

5

claims is that officers concealed their use of excessive force by fabricating or exaggerating facts in their written reports to falsely make the officers' excessive force appear justified. *See* ECF 277 ⸿ 56-63. Proving these allegations requires comparing BWC video to officers' written accounts of the same incident.  But that evidence would not be available under the limited response on which the City insists.

*Second*, the DOJ Report notes that supervisory review of BWC videos and related use of force reports often appeared cursory or nonexistent, or endorsed the inaccurate narratives provided by officers over the conduct visible in the videos.  By producing only the BWC videos, and not the related supervisory review records, it will be impossible for Plaintiff identify such incidents of improper supervisory review. Again, this evidence is crucial for Plaintiff to obtain because a key alleged municipal custom is not just the use of excessive force, but the *indifference* to such excessive force by the MPD's commanders.  BWC videos alone will not show whether MPD's use of excessive force was enabled by inadequate supervision, oversight and accountability. *See* ECF 277 ⸿ 64-76.

*Third*, the City's position would force Plaintiff to view the videos without the full context of the other information that MPD has in its possession about what precipitated the police encounter shown in a video.  The DOJ Report is particularly critical of MPD officers using force in response to minor infractions, but without context it will often be impossible to tell what prompted a particular encounter between MPD officers and a civilian.  Was a car pulled over for a broken tail-light, or a bank robbery? One precipitating event might justify a highly aggressive approach by police, while another would not. Without knowing what suspected violation was at issue, it will often be impossible to tell.

*Fourth*, Plaintiff will likely seek to interview or depose many of the victims of MPD brutality who appear in the BWC videos, as potential witnesses to be presented at trial. But with only the BWC videos and not the full set of written records, it will effectively be impossible to identify and talk with these witnesses in the limited time that remains for discovery.

*Fifth*, and critically, the City's position injects yet more delay into the gathering of documents responsive to RFP 133: Plaintiff's counsel will be forced to review the incomplete, BWC-only records of each incident, identify potentially germane incidents from this incomplete information, gather up those incidents, and make multiple one-off requests to the City, which will then, on an undisclosed timetable, would conduct a one-by-one search of its various databases, and then eventually produce the remaining records for the requested incidents. Meanwhile the time for Plaintiff to make *use* of those documents will continue to dwindle as the July 12 deadline for written discovery approaches—all for a discovery request that Plaintiff propounded in November 2024 and which Plaintiff has been attempting to enforce for months now.

Each of these is an independent and compelling reason that gathering MPD records about each incident shown in an Evidence.com BWC video reviewed by DOJ investigators is of high relevance to Plaintiff's *Monell* case. That is particularly so with respect to supervisory review of these incidents, which is both a central component of Plaintiff's *Monell* case and a bulwark for the City's defenses to those claims: with no evidence of lax supervisory review, the City will argue that even numerous uses of excessive force, no matter how improper, are one-off misconduct by bad apples, rather than indications of supervisory indifference to those officers. Plaintiff, meanwhile, has been able to identify multiple incidents of excessive force by MPD officers, many of which she recounts in her amended complaint, *see* ECF 277 ¶ 100, but Plaintiff has largely been confined to news reports and other public records—in other words, she has been

limited to high-profile events that likely did get at least some supervisory review, *because* they were known to the public. The DOJ's investigators, by contrast, were able to access MPD's non-public data and appear to have identified numerous incidents that never saw the light of public scrutiny, precisely because of the lack of oversight and culture of coverup that Plaintiff has alleged in her complaint. Improper supervisory review of those incidents will be impossible to detect from the BWC videos alone, without access to the *other* MPD records about the incidents, in particular supervisory review records (or lack thereof), that are recorded in the other MPD databases at issue.

***

Aside from its refusal to confer with Mr. Platt regarding the back-end database queries, the City's primary objection to Plaintiff's proposal to gather incident information from the MPD databases is, once again, overbreadth. The City argues that while the audit trails show DOJ investigators viewed BWC videos for 880 incidents, the DOJ Report only describes 73 specific incidents of improper conduct. Thus, it argues, gathering information about all 880 incidents is overbroad.

This argument suffers from multiple flaws. ***First***, it is wrong on its own terms: even assuming the 73 incidents described in the DOJ Report are the *only* constitutional violations among the 880 incidents for which DOJ viewed BWC footage, the resulting 1-in-12 "hit" rate would be the envy of virtually any litigator involved in *Monell* widespread-practice discovery. By comparison, there were nearly 5,500 Response to Resistance reports in total from 2018 to 2022, according to the Reimagining Policing in Memphis Response to Resistance Dashboard. It is hard to imagine how improper uses of force—*and* coverup tactics and inadequate oversight— could be identified in a more efficient manner than review of the 880 incidents. Without the

8

benefit of the BWC audit trails to point the way, Plaintiff would likely have been forced to make far broader and more labor-intensive requests for both videos and related incident documents, with a much lower yield rate for relevant incidents—and thus much more work for both sides to sift through a multitude of mundane encounters.

*Second*, the City gives no reason to think that the 73 incidents described in the DOJ report are the only unlawful uses of force that DOJ investigators saw among the 880 incidents in Evidence.com. Plaintiff (and the City) can only offer conjecture about how the 880 incidents were selected, but one may presume that DOJ's professional investigators selected videos they had reason to think would show evidence of misconduct. There is every reason to think, too, that the DOJ winnowed down (to 73) the number of examples of unlawful conduct that it chose to describe in its published report. Certainly the City's conjecture to the contrary is no basis to exclude the evidence DOJ reviewed from the broad scope of discovery under Rule 26(b)(1).

*Third*, the City's overbreadth objection is really a one about undue burden: that gathering information about 880 incidents will simply take too much time and labor. But that objection is grounded on the City's claim that it will have to gather information from the MPD's other databases manually, one-by-one. And that is simply not so. As Mr. Platt explains in the attached declaration, **Ex. A**, the City's SQL databases are *designed* to facilitate bulk queries that allow the gathering of large amounts of information in just a few steps. Doubtless this will require the development of queries that permit such bulk gathering. But as Mr. Platt explains, *see* **Ex. A** ¶¶ 1-4, 11-16, that is precisely his area of expertise.

## APPOINTMENT OF MR. PLATT

Plaintiff has been trying, for months now, to engage the City on extracting relevant *Monell* information from its databases. The City has stalled these discussions for months in turn,

and even after this Court ordered the City to confer with the Plaintiff about how to gather this discovery, the City cut off discussions with Plaintiff yet again, after Plaintiff proposed an expert—Mr. Platt—who could work with the City to gather information responsive to RFP 133—information that comprises critical *Monell* evidence in this case.

The City has proven itself to be intransigent in its opposition to this discovery.  If the Court orders more cooperation after hearing this motion on April 11, Plaintiff predicts more intransigence, and more delays.  Perhaps with enough motions Plaintiff will be able finally to force the City to provide the data Plaintiff seeks, but by that time the deadline to complete *Monell* discovery in this case likely will have passed or will be fast approaching.  The prejudice to Plaintiff is acute, and there is every reason to think it will grow.

Plaintiff therefore proposes that the Court appoint Mr. Platt as a neutral, to conduct directed queries of the MPD's SQL databases.  As Mr. Platt recounts in his declaration, **Ex. A**, he has been appointed by a federal court to serve in such a role before, in *Perez v. DirecTV*, No. 8:16-cv-01440-JLS-DFM (C.D. Cal.), in a closely analogous SQL query matter.  Mr. Platt would be able to perform the same role in this case, and resolve this discovery dispute in an expeditious manner.

## II.    RFP 122.  *This request asks the City to produce all documents that it may use solely for impeachment during trial in this case.*

The City objects to RFP 122 on the ground that it is not required to disclose such documents.   But that is wrong, and the Sixth Circuit has foreclosed the City's claim.  *See Varga v. Rockwell Int'l Corp.*, 242 F.3d 693, 697 (6th Cir. 2001) ("[T]he recipient of a properly propounded document request must produce all responsive, non-privileged documents without regard to the recipient's view of how that information might be used at trial. A party may not, under any circumstances, hold back materials responsive to a proper discovery request because it

10

prefers to use the evidence as surprise impeachment evidence at trial."). In *Varga*, the Sixth

Circuit emphasized that any contention that a party was entitled to withhold such documents

from discovery was "patently wrong." *Id.*

Notably, Plaintiff has not served an interrogatory asking the City to say *what* documents

it plans to use for impeachment. The City is free to produce responsive documents as part of a

larger production in this case, without identifying them as potential impeachment material. But

such documents fall within the scope of permissible discovery under Rule 26(b)(1), and the City

is obligated to produce them.

Dated: April 9, 2025                                      Respectfully submitted,


/s/ Stephen H. Weil
Antonio M. Romanucci (Ill. Bar No. 6190290) (*pro hac vice*)
Sarah Raisch (Ill. Bar No. 6305374) (*pro hac vice*)
Joshua M. Levin (Ill. Bar No. 6320993) (*pro hac vice*)
Stephen H. Weil (Ill. Bar No. 6291026) (*pro hac vice*)
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark St., Ste. 900
Chicago, IL 60654
+1 (312) 458-1000, Main
+1 (312) 458-1004, Facsimile
aromanucci@rblaw.net
sraisch@rblaw.net
jlevin@rblaw.net
sweil@rblaw.net

David L. Mendelson (Tenn. Bar No. 016812)
**MENDELSON LAW FIRM**
799 Estate Place
Memphis, TN 38187
+1 (901) 763-2500 (ext. 103), Telephone
+1 (901) 763-2525, Facsimile
dm@mendelsonfirm.com
bwachtel@mendelsonfirm.com

Brooke Cluse (Tex. Bar No. 24123034) (*pro hac vice*)
**BEN CRUMP LAW, PLLC**
717 D Street N.W., Suite 310
Washington, D.C. 20004
+1 (337) 501-8356
ben@bencrump.com
brooke@bencrump.com

*Attorneys for Plaintiff*

Exhibit A

**Declaration of Charles Platt**

**Qualifications**

1.      My name is Charles Platt.  I am the Director of Information Security and Data Analytics for Bitscope Consulting, LLC (Bitscope), a consulting firm that provides digital forensics, data analytics, and other services in conjunction with litigation and investigations.  I have held this position since I founded Bitscope in the fall of 2004.

2.      Including at Bitscope, I have over thirty-five (35) years of experience in information technology, eDiscovery, digital forensics, and cybersecurity.  My CV is appended to this Declaration.

3.      I have a bachelor's degree in Computer Information Systems and a master's degree in Management of Secure Information Systems.  I hold a certificate from Harvard University in Information Risk Management and industry certifications in software development, database administration, digital forensics, and cyber-security, including Certified Cloud Security Professional (CCSP), EnCase Certified Examiner (EnCE), C/C++ Certified Unix Developer, Microsoft Certified Database Administrator (MCDBA), and Certified Information Systems Security Professional (CISSP).

4.      I have provided consulting services related to litigation, electronic discovery, digital forensics, and structured data analysis for over twenty (20) years and have testified in both state and federal court as an expert related to the same.  I have extensive experience with database design and development, including having developed database solutions and tools professionally for organizations including NASA, The Smithsonian, the U.S. Department of State, and the U.S. Department of Education.

**MPD Databases**

5.      I have been asked by Counsel for Plaintiff in this matter to provide advice and consultation regarding the collection of data from several databases used by the Memphis Police Department ("MPD").  I have been given to understand the following:

   a. It is my understanding that the MPD maintains or subscribes to several Microsoft SQL ("Structured Query Language") Server databases.  Several of these SQL databases contain documents (such as body camera videos) or information (such as reports by police officers) regarding encounters ("incidents") between police and civilians (*e.g.*, an arrest, issuing at ticket, investigative interview, etc.).

b.  One of these SQL databases, "Evidence.com," contains policy body camera ("BWC") videos.  This database also contains audit trails identifying videos accessed and viewed by investigators from the U.S. Department of Justice ("DOJ").  The Evidence.com database also tracks the videos by incident using a unique identification number ("Incident ID").  A single incident with multiple videos will have the same Incident ID.  It is my understanding that the audit trails indicate DOJ investigators reviewed BWC videos for approximately 880 incidents ("880 incidents").

c.  The same "Incident ID" number is found in other MPD databases. This connects BWC videos with other records for the same incident.  It is also my understanding that a second identifier may be used in some databases.  This may or may not require a two-step process to connect the BWC videos to data stored in these databases regarding a particular incident, but should not preclude doing so.

d.  The MPD accesses information from the databases via end-user interfaces ("UIs").  UIs can be targeted for different clients, e.g. browser-based websites for web users, traditional applications (e.g. "EXEs" or "GUIs") for desktop users, or Mobile Apps for smartphones or tablets.  Regardless of the intended client, such UIs are designed for end-users and, it is my understanding here, that the UIs in use by MPD are limited to performing single-incident searches.

**Collection of Data**

6.  I have been asked by Counsel for the Plaintiff to provide consultation on the feasibility of conducting direct back-end queries of the MPD databases.  Specifically, using the "Incident IDs" from the 880 DOJ audit trails in the Evidence.com database in order to identify and gather information from the other MPD databases related to those 880 incidents.

7.  Given the information available, I believe that efficient direct SQL queries of the MPD databases are not only feasible and practicable but constitute common practice in structured data discovery.  A direct SQL query is a common means for gathering information from a database using specific identifiers such as "Incident IDs."  The SQL language is designed to facilitate this type of data gathering and providing this functionality is a basic requirement for any SQL database.  I have extensive personal experience with this type of data collection specifically using MS SQL Server in a litigation context.

8.  Most UIs, including those used by the MPD, are designed for end-users to operate in the normal course of business to facilitate a business process.  As such, UIs tend to focus on a single business process, or "incident", at a time.  Contrastingly, a direct SQL query

allows a data analyst to gather information about a large number of processes, or in this case "incidents," at a single time.

9.       SQL queries can be written to instruct a database to gather and present data relating to one or more identifiers.  It is my understanding that the "Incident IDs" in the Evidence.com audit trails are such identifiers (and that there may be at least one other identifier used in some of the other databases).  Using such identifiers is a common practice in relational database architecture as they are required for connecting related data.

10.      Constructing these SQL queries is not a complicated task for a person with the required expertise.  While SQL databases all have unique architectures designed for the particular needs of the business, there are common functions and tools shared among them. One of these common tools is the SQL "language" itself, which is a standardized language used by all SQL databases. Microsoft SQL Server has its own versions of these tools, specifically a version of SQL referred to as T-SQL and an administrative UI known as "Microsoft SQL Server Management Studio" that facilitates direct SQL queries of Microsoft SQL Server databases.

**Perez v. DirecTV example case**

11.      I have conducted large, mass SQL queries on numerous occasions.  One matter is particularly relevant as an example. In the matter of Perez v. DirecTV (CD Cal 8:16-cv-01440-JLS-DFM) I was appointed by the federal district court as a neutral to assist in resolving a data collection dispute between the parties.  The DirecTV case was a class action.  Defendants possessed a customer relationship management ("CRM") SQL database that contained relevant information regarding the class members, but they were purportedly unable to extract required data.  Defendants asserted they could not perform large, mass queries and instead had to gather information about each class member individually. With a potential class of over 8,000 members, Defendants argued this was overly burdensome, as it would require months of work.

12.      The true issue at hand was that the user interface (UI) for the CRM was not designed for mass queries.  But, by using direct SQL queries and bypassing the UI, I was able to conduct individual queries across large data sets and successfully select and extract the data required for the 8,000 class members quickly and efficiently.

13.      The issues presented by the MPD's databases in this case, as I understand them and have described them above, appear similar to the issues presented in the DirecTV case. The MPD employs UIs that permit only single-incident queries from its SQL databases.  Because the databases in question are SQL databases, however, they are capable of direct SQL queries that will gather "incident" information en masse for the 880 incidents.  SQL databases are designed to perform these queries quickly and efficiently, and I have every reason to believe it

will be possible to design efficient and comprehensive queries regarding the 880 incidents reflected in the DOJ Evidence.com audit trails.

**Conclusion**

14.      It is my opinion that the issue presented in this case is a common issue when extracting and collecting data from SQL databases.  The UIs used by the business are designed for specific business purposes and do not contain the functionality required to facilitate large scale collection and extraction of data.  Nevertheless, the capability to extract such data is readily available using SQL direct queries of the database.

15.      In almost every instance where I have collected data from SQL databases related to litigation it has been more efficient and more reliable to access the back-end database directly via SQL.  In fact, SQL databases provide tools specifically to facilitate direct SQL queries such as this.  In the case of Microsoft SQL Server, Microsoft provides SQL Server Management Studio to facilitate the process.

16.      It is my opinion that, in this matter, by following a similar process and directly querying the SQL databases using the "Incident IDs" (and possibly a second identifier) associated with the 880 Evidence.com DOJ audit trails would result in similar results.  It is my opinion that doing so would be considered standard structured data discovery practice.

I swear on penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: April 9, 2025                          _____

                                             Charles Platt

# Charles Harris Platt
*MSIS, CIRM, CISSP, ISSMP, CCSP, MCDBA, CEH, EnCE*

Data Analytics and Cyber Security
703.489.7707

charlie@bitscopeconsulting.com
https://www.linkedin.com/in/charlesplatt/

A senior *cybersecurity*, *digital forensics*, and *data analytics* leader with written
and oral *testifying experience* and a *proven track record* of solving intractable and stubborn problems.

## CAREER SUMMARY



*Bitscope Consulting, LLC*                    *Founder*                    *2004 – Present*

I founded Bitscope Consulting in 2004 with the goal of offering cyber security, digital forensic and data analysis services including *incident response*, *expert testimony* and *structured data analysis* for litigation and internal investigations. Clients included Fortune 10 companies, large government organizations, small and mid-size commercial enterprises, and international law firms. While at Bitscope I have been responsible for all areas of running the business, from identifying new clients, proposals, and capture, through execution, billing, and reporting.



*Harvard University*          *Assessor – Managing Risk in the Information Age*          *2023 - Present*

Worked with students on writing assignments and grading/assessing ongoing projects. Course covers risk management and information security topics, including governance, legal and regulatory compliance, and technical mitigation techniques.



*Arete*                    *Sr. Director, IR, Forensics, and Solutions*                    *2021 - 2022*

As a Sr. Director at Arete I worked with their *Incident Response* and *Digital Forensics* teams focusing on providing common vision across teams and looking at how Arete uses *technology to improve delivery* and consistency across the company.



*ESI Analyst*                    *VP of Innovation and Data Security*                    *2020 – 2021*

At ESI Analyst I was responsible for *new product development* and data security. I led the development of the ESI Desktop product released in November of 2020 and which, by second quarter 2021, was driving over 80% of new business. I also assisted with development and testing of the ESI Analyst API.



*CyberRx*                    *Affiliate Sr. Director*                    *2018 – 2021*

My work with CyberRx includes conducting *NIST CyberSecurity Framework* (CSF) and *NIST 800-30* (RMF) cyber security *risk assessments* for private firms and government contractors. I am responsible for *managing the risk assessment team*, *conducting interviews* with senior executives and business unit leadership, and developing the *final assessment report*.



*Intelligent Discovery Solutions*          *Director, Data Analytics Practice*          *2014 – 2020*

At iDS I ran the Data Analytics practice, and *managed teams* of 5 – 10 DFIR professionals for large domestic and *international projects* involving cyber *incident response*, $350+ Million class action *litigation*, and high-profile *internal investigations*. Clients ranged from small firms to *fortune 10 companies*. Responsibilities also included *speaking nationally* on topics related to digital forensics, data analytics, and cyber security, publishing thought leadership articles, and working with clients to set *cyber policy* and educate *senior leadership*. While at iDS I pioneered a comprehensive overhaul of how the company handles structured data in litigation and developed tools to assist in processing and analyzing structured data quickly and reliably.



*LECG, LLC*                    *Digital Forensics Lab Manager*                    *2004 – 2006*

For a $300M global consulting firm, I managed large international projects, *developed proposals*, performed digital forensics analysis, managed the DC Digital Forensics Lab, and providing *guidance and leadership* to 10 - 15 junior and senior consultants. While at LECG I developed a utility for e-discovery early case assessment (ECA) that *increased reliability* and speed while significantly *reducing costs*.

## SELECT CERTIFICATIONS







Charles Harris Platt                                                      *MSIS, CISSP, ISSMP, CCSP, MCDBA, CEH, EnCE*

## CAREER SUMMARY (CONTINUED)

*Additional Employment History*                                                          *1991 – 2004*

| | | |
|---|---|---|
| FTI | Sr. Consultant | 2004 – 2004 |
| Gelco Information Network | Sr. Consultant | 2003 – 2004 |
| Interknowledgies, Inc. | Sr. Developer / Founder | 2000 – 2002 |
| Himes Technology Consulting | Sr. Developer / Founder | 1998 – 2000 |
| Litton Enterprise Solutions | Principal Consultant | 1995 – 1998 |
| First Union National Bank | Business Systems Analyst | 1991 – 1995 |

## EDUCATION

    

| | | |
|---|---|---|
| *Managing Risk* in the Information Age | Harvard University | 2019 |
| Phi Kappa Phi | Honor Society | 2013 |
| MS in *Management of Secure Information Systems* | George Mason University | 2013 |
| Introduction to Criminal Investigations | George Washington University | 2005 |
| Introduction to Criminal Procedure | George Washington University | 2005 |
| C/C++ and *Unix Systems Development* | George Washington University | 2002 |
| BS in Computer Information Systems | Roanoke College | 1992 |

## SELECT PROJECT EXPERIENCE

  *Data Analysis and Production*     *Court Appointed Neutral – Data Analytics*     *2021*

Analyzed and provided *data analysis* as a court appointed neutral in a case involving a *Fortune 100 company* undergoing a *class action* lawsuit.  Provided oral results direct to court related to analysis efforts, failed prior attempts, and successfully produced data previously claimed to be unavailable and impossible to extract or produce.

  *Breach Response Analysis*        *Data and Encryption Analysis*        *2021*

Supported expert for defense relating to analysis of *100M+ record breach* and analysis of exfiltrated data.  Analyzed organization's *encryption* and database technology, assisted in writing report, developing opinions, and assessing plaintiffs' expert's opinions and testimony.  Analyzed expert report, database, and incident response report provided and supported expert in developing opinions.

  *Root Cause Analysis Investigation*      *Business Email Compromise*      *2017*

Assisted mid-sized business in responding to business email compromise incident.  Halted second compromise and transfer of funds already in progress at time of engagement.  *Identified root cause* and assisted in implementation of MFA and email security protocols.

  *Structured Data Log Analysis*      *Data Analysis and Expert Testimony*      *2019 - 2020*

*Testified* for defendant in an expert role relating to analysis of truck driver logs and plaintiffs' expert's methodology and results.  Analyzed expert report, database, and SQL code provided by plaintiffs' expert and provided related testimony and expert opinions.  Ultimately plaintiffs' motion for *class certification was denied*.

Charles Harris Platt                                          *MSIS, CISSP, ISSMP, CCSP, MCDBA, CEH, EnCE*

## SELECT PROJECT EXPERIENCE (CONTINUED)

 *Government DoD Contractor     Cybersecurity Incident Response Investigation*                    *2018*

Led the onsite team investigating an *alleged internal breach* and compromise for one of the largest naval architecture firms in the US. Responded to *FBI demands* and allegations of breach. Worked directly with client to document corporate infrastructure and defenses, reviewed forensic evidence produced by the FBI, and acquired and reviewed additional evidence. I developed and tested theories for the incident and delivered an *expert report* documenting the breach and exposure for presentation to law enforcement. I presented our findings orally to *corporate executive staff,* including the CEO and CISO.

 *Medical Malpractice Litigation          Medical Records Data Analysis*                              *2017 - 2018*

Provided *expert testimony* for plaintiff in a McKesson *Medical Records database systems* and audit trail data case. The court had significant concerns about *HIPAA* and the expertise required to review medical database records. As a result of deposition and *court testimony,* the court ordered defendant to provide direct access to medical records systems for our expert review, as well as sanctions ordering defendant to pay a significant portion of the cost of the onsite review. Onsite at defendant's IT offices I reviewed McKesson databases for missing or unproduced audit trail data, which resulted in an *expert report* and additional *deposition testimony* on the state of the McKesson records and audit trail data. I was also able to identify and produce additional audit trail data that was previously undisclosed.

 *Government Contractor                  Ransomware Incident Response*                                *2017*

Assisted $200M government contractor with response to *ransomware* attack. Developed and delivered expert report and reconstituted corporate IT infrastructure post-incident. *Successfully recovered critical data* and had systems up and running at pre-incident levels in *under 72 hours.*

 *Medical Malpractice Litigation          Medical Records Data Analysis*                              *2016*

*Testified* for defendant in an expert role relating to McKesson Medical Records database systems and alleged *data spoliation.* Analyzed metadata and database processes to understand current state of medical records metadata. Testified in deposition and provided expert opinions related to the metadata. Ultimately spoliation *charges were dropped* and client was found *innocent* of data destruction.

 *Large Public Utility                      PII Exposure and Cyber Investigation*                        *2016*

Managed technical team responding to *internal investigation* into potential exposure of client Personally Identifiable Information *(PII)* data. Wrote expert report and provided oral report to corporate officers regarding exposure, including results of investigation showing lack of evidence of access and exfiltration of data.

 *Private Law Firm                        CBI Exposure and Cyber Investigation*                        *2014*

Worked with internal IT and third-party vendors to investigate exposure of *confidential business information* related to ongoing litigation for boutique Washington, DC law firm. Provided written testimony and expert report for multiple ongoing matters in front of the *International Trade Commission* related to data exposure, including analysis of any access to, or exfiltration of, confidential data related to each case.

 *Fortune 10 Company              Wage and Labor Class Action – Data Analytics*                    *2015 - 2017*

Analyzed and provided *expert testimony* for e-discovery and Data Analytics for a *Fortune 10 company* undergoing a *1,000+ plaintiff class action* lawsuit. Provided oral and written testimony related to discovery efforts and data analytics regarding plaintiffs' daily activities and routines.

 *International Finance              Wage and Labor Class Action – Data Analytics*                    *2015 - 2016*

Managed the project and developed data analysis protocols for a $65B *international financial company* undergoing a *450,000+ plaintiff class action* lawsuit. Provided data analysis related to *work patterns* leading to segregation of the class into dozens of non-similar, discrete groups. Lead attorney, when presented with our draft report, responded with a single comment, "*This is the first time I've really understood this case.*" Case ultimately failed to meet class certification and was dismissed.

Charles Harris Platt                                          *MSIS, CISSP, ISSMP, CCSP, MCDBA, CEH, EnCE*

## SELECT PROJECT EXPERIENCE (CONTINUED)



*Retail Manufacturer*              *International Counterfeit Investigation*              *2014 - 2017*

Led multi-disciplinary, *international teams* in responding to court order for *forensic investigation* into counterfeiting allegations.  Forensic team onsite in *Shenzhen, China* performed onsite acquisition, processing and in country review of dozens of laptops, email and file servers and personal devices.  Domestically, the *Washington, DC* and *New York City* teams performed structured data analytics against SQL Server databases to determine sales volumes and post-lawsuit alteration of sales records.  Washington DC team wrote expert report and assisted with subsequent written testimony.  Ultimately led to *successful spoliation charges* and *sanctions*.



*National Trucking Organization*              *Spoliation Defense*              *2015*

Led consulting team that solved at *10-year-old mystery* related to document *fraud* and *spoliation*.  Two documents had been alleged by plaintiffs to have been altered *maliciously* post-lawsuit, including alleged evidence of *cover-up* and altering of meta-data.  Our team was able to uncover the *truth* about the documents, *remove any suspicion* as to the intent of the individuals, and to explain clearly and precisely how the meta-data was altered and what it meant.  Ultimately our analysis led to plaintiffs removing all mention of these documents from court testimony and arguments.

## CERTIFICATIONS

| | | |
|---|---|---|
| CCSP – Certified *Cloud Security* Professional | ISC2 | 2019 |
| ISSMP - Information Systems *Security Management* Professional | ISC2 | 2017 |
| CISSP - Certified *Information Systems Security* Professional | ISC2 | 2017 |
| EnCE - EnCase Certified Examiner | Guidance Software | 2016 |
| CEH - Certified Ethical Hacker | EC-Council | 2015 |
| EnCE - EnCase Certified Examiner (Expired 2009) | Guidance Software | 2006 |
| A+ Certified | CompTIA | 2005 |
| Network+ Certified | CompTIA | 2005 |
| MCDBA - Microsoft Certified DBA | Microsoft | 2004 |
| MCP - Microsoft Certified Professional | Microsoft | 2004 |
| C/C++ Certified Unix Developer | George Washington University | 2002 |
| Sun Certified Java Programmer (Expired) | Sun | 2002 |
| PCLP - Principal Certified Lotus Professional | IBM/Lotus | 2002 |

## BOARD MEMBERSHIP

| | | |
|---|---|---|
| Browne Academy | *Chair, Cybersecurity Committee* | 2015 - Present |
| Browne Academy | Board of Trustees | 2010 - Present |
| Wildfell, Ltd. | Treasurer and Vice President | 2005 - Present |
| Platt & Co. | Director and Vice President | 2000 - Present |

## RECOGNITION & AWARDS

| | | |
|---|---|---|
| The Greystone Award | Browne Academy | 2017 |
| Happy Buddha Award | Intelligent Discovery Solutions | 2015 |
| *Outstanding MSIS Student* Class of 2013 | George Mason University | 2013 |
| You Make Gelco Rock Award | Gelco Information Network | 2003 |

Charles Harris Platt                                                    *MSIS, CISSP, ISSMP, CCSP, MCDBA, CEH, EnCE*

## SELECT PUBLICATIONS

| | | |
|---|---|---|
| Java Mail Metadata Analysis | Digital Forensics Magazine | November 2017 |
| The Ethical Hacker – *Ransomware Protection* | Metropolitan Corporate Counsel | May 2017 |
| The Ethical Hacker – Great Employee or Insider Threat | Metropolitan Corporate Counsel | May 2017 |
| Technically Speaking, *Cyber Security isn't About Speaking Technically* | Metropolitan Corporate Counsel | April 2017 |
| Field Notes: Leveraging IoT Data Isn't a Budget Killer | Metropolitan Corporate Counsel | March 2017 |
| The Ethical Hacker – I Got 99 Problems, But No Data Ain't One | Metropolitan Corporate Counsel | January 2017 |
| IoT Data: Objective, Consistent and Pervasive | Metropolitan Corporate Counsel | December 2016 |
| Ten Key Legal *Considerations for Cloud* Solutions | Metropolitan Corporate Counsel | November 2016 |
| Data Analytics: How Parties Are Using Tools Beyond TAR | Law360 | November 2016 |
| *Metadata Analysis* in Email | Digital Forensics Magazine | May 2016 |
| Big Data Yields Big Results | Metropolitan Corporate Counsel | May 2016 |
| Data Breach & Incident Response | Metropolitan Corporate Counsel | February 2016 |
| A Brief Legal History of Time, pt. 2 | Bloomberg BNA | February 2016 |
| A Brief Legal History of Time, pt. 1 | Bloomberg BNA | January 2016 |
| The Most Crucial Time During a Data Breach | Bloomberg BNA | January 2016 |
| Structured What? Leveraging structured data | Metropolitan Corporate Counsel | November 2015 |

## SELECT SPEAKING AND TRAINING EVENTS

| | | |
|---|---|---|
| *Hacked! What's Your Plan?* | Wednesdays with Woodward – Travelers Insurance | June 2022 |
| Cyber IR and Litigation: IR Today means Litigation Tomorrow | (ISC)2 Cyber Security Summit | October 2021 |
| The Cloud Gambit: Advanced Moves for a Cloud Security Career | (ISC)2 Webinar | August 2021 |
| *CLE – Digital Forensics for Attorneys* | Various Law Firms | July - September 2021 |
| *Getting the Board on Board with Cyber* | OpenText EnFuse Conference | November 2019 |
| Getting the Board on Board with Cyber | (ISC)2 Cyber Security Summit | October 2019 |
| *Taking Cybersecurity from IT to the Board* | Ing3nious Cybersecurity Retreat | October 2018 |
| Data Breach and *Incident Response* | TGCI, Data Privacy and Cybersecurity Forum | November 2017 |
| Careers in Cybersecurity | Flint Hill High School | October 2017 |
| *Breach Response* Best Practices | Small Business Cybersecurity Xchange | October 2017 |
| Argyle – Data and Efficiency in Litigation | Argyle Chief Legal Office Forum | June 2017 |
| IoT Data Analytics | Littler Executive Employer | May 2017 |
| A Lawyer's Introduction to Computers | Temple Law School | January 2017 |
| Outsourcing Big Data to the Cloud | TGCI, Data Privacy and Cybersecurity Forum | November 2016 |
| IoT: Content is the New Context | Organization of Legal Professionals, Webinar | November 2016 |
| The IoT and Litigation | The Masters Conference, Panel Moderator | October 2016 |
| Forensics and the Rise of *Google Docs* | Littler Mendelson | October 2016 |
| A Lawyer's Introduction to Computers | University of Pennsylvania Law School | September 2016 |
| The IoT and Litigation | The Masters Conference, Panel Moderator | July 2016 |
| The IoT:IoT and Relational Analytics | Metropolitan Corporate Counsel Webinar | June 2016 |
| The IoT and Litigation | The Masters Conference | May 2016 |
| Practicing Law in the Cloud | Pennsylvania Bar Association | January 2016 |
| A Lawyer's Introduction to Computers | American University Law School | January 2016 |
| *Structured Data Discovery* | The Knowledge Group Webinar | December 2015 |
| Breach Response:  What Do I Do Now? | TGCI, Data Privacy and Cyber Security Forum | November 2015 |
| *Digital Forensics for Attorneys* | Temple University | January 2015 |
| Implementing Systems at the National Zoo | George Mason University | March 2014 |
| Securing the Academy, *Strategic Cybersecurity Plan* | Browne Academy | June 2013 |
| Digital Forensics and Security | George Mason University | February 2013 |

Charles Harris Platt                                                          *MSIS, CISSP, ISSMP, CCSP, MCDBA, CEH, EnCE*

## TESTIFYING EXPERIENCE

1.  **Analysis of Email Communications**, expert report, United Services Automobile Association a/s/o Steven and Jaime Dolen v. Karl Schwarz, Laura Addison, Artistic Lighting and Design Group, et. al., Superior Court of New Jersey, Somerset County, Docket No. SOM-L-381-18, October 2021.

2.  **Appropriate Production of ESI**, declaration, BFL Construction Co., INC. v. Pinon Lofts, LLC, et. al., Arizona Superior Court, Yavapi County, Case No. V1300CV202180084, October 2021.

3.  **Analysis of Email Communications**, expert report, Adam Ausloos and Tax Deferral Trustee Services, LLC v. Robert Binkele and Estate Planning Team, Inc., Judicial Arbitration and Mediation Services, JAMS Ref No. 1260005658, April 2021.

4.  **Analysis of Web Logs and Geolocation of IP Addresses**, expert report, Jason Allen et al. v. Kevin Farmer et al., United States District Court, In and for the District of Arizona, Case No. CV-20-01298-PHX-SPL, March 2021.

5.  **Rebuttal of Expert Report Regarding Deleted Files**, declaration, RJP-AZ, LLC v. Safeguard Estate and Financial, LLC, Superior Court of the State of Arizona, Maricopa County, Case No. CV2019-001514, March 2021.

6.  **Analysis of Source Code and Website Scripting**, deposition testimony, ConsumerDirect, Inc. v. LeadPoint, Inc., Superior Court of the State of California, Orange County Central Justice Center, Case No. 30-2017-00946431-CU-BC-CJC, November 2019.

7.  **Structured Data Analysis of Driver Logs**, deposition testimony, Dueker v. CRST Expedited, Inc, US District Court, Central District of California, Case No. 2:180cv008751-FMO-FEM, October 2019.

8.  **Supplemental Report: Rebuttal to Structured Data Analysis of Driver Logs**, expert report, Dueker v. CRST Expedited, Inc, US District Court, Central District of California, Case No. 2:180cv008751-FMO-FEM, October 2019.

9.  **Analysis of Source Code and Website Scripting**, declaration, ConsumerDirect, Inc. v. LeadPoint, Inc., Superior Court of the State of California, Orange County Central Justice Center, Case No. 30-2017-00946431-CU-BC-CJC, October 2019.

10. **Rebuttal to Structured Data Analysis of Driver Logs**, expert report, Dueker v. CRST Expedited, Inc, US District Court, Central District of California, Case No. 2:180cv008751-FMO-FEM, September 2019.

11. **Digital Forensics Analysis of USB Device Use**, deposition testimony, Digital Assurance Certification, LLC v. Alex Pendolino, Jr., US District Court, Middle District of Florida, Case No. 6:17-cv-72-Orl-31TBS, December 2018.

12. **Rebuttal to Forensic Investigation Protocols and Methods**, declaration, Digital Assurance Certification, LLC v. Alex Pendolino, Jr., US District Court, Middle District of Florida, Case No. 6:17-cv-72-Orl-31TBS, November 2018.

13. **Analysis of Expert Report and Expert's Methodology**, declaration, DHI Group, Dice, Rigzone.com v. David Kent, Oilpro.com, US District Court, Southern District of Texas, Case No. 4:16-cv-01670, November 2018.

14. **Digital Forensics Analysis on USB Device Use**, expert report, Digital Assurance Certification, LLC v. Alex Pendolino, Jr., US District Court, Middle District of Florida, Case No. 6:17-cv-72-Orl-31TBS, November 2018.

15. **Incident Response Investigation / FBI Investigation**, Expert Report, Confidential Client, April 2018.

16. **Structured Data Analysis / Medical Records**, deposition testimony, Culpepper v. Wellstar Kennestone, State Court of Dekalb County, GA, Case No. 15A54645E7, January 2018.

17. **Forensic Analysis of Laptop**, affidavit, Gondolier Properties, LLC et. al. v. Joellen Tilseth, Don Tilseth, et. al., State Court of Lee County, FL, Case No. 16-CA-1206.

18. **PeopleSoft Database Forensics**, declaration, Private Internal Investigation, November 2017.

19. **Structured Data Analysis / Medical Records**, Expert Report, Culpepper v. Wellstar Kennestone, State Court of Dekalb County, GA, Case No. 15A54645E7, September 2017.

20. **Electronic Discovery and Forensics**, declaration, Digital Assurance Certification, LLC v. Alex Pendolino, Jr., US District Court, Middle District of Florida, Case No. 6:17-cv-72-Orl-31TBS, September 2017.

21. **Structured Data Analysis / Medical Records**, court hearing testimony, Culpepper v. Wellstar Kennestone, State Court of Dekalb County, GA, Case No. 15A54645E7, August 2017.

Charles Harris Platt                                    *MSIS, CISSP, ISSMP, CCSP, MCDBA, CEH, EnCE*

22. **Structured Data Analysis / Medical Records**, deposition testimony, Culpepper v. Wellstar Kennestone, State Court of Dekalb County, GA, Case No. 15A54645E7, May 2017.

23. **Source Code Versioning System Forensics**, declaration, Sotera Wireless, Inc. Debtor, US Bankruptcy Court, Southern District of California, Case No. 16-05968-LT11, January 2017.

24. **USB Device Forensic Analysis**, declaration, Digital Assurance Certification, LLC v. Alex Pendolino, Jr., US District Court, Middle District of Florida, Case No. 6:17-cv-72-Orl-31TBS, January 2017.

25. **Structured Data Analysis / Medical Records**, deposition testimony, Ruchotzke v. Methodist Medical Center, Circuit Court, Tenth Judicial Circuit, Peoria County, IL, Case No. 13-L-78, September 2016.

26. **Cybersecurity Breach Response / Ransomware**, expert report, Government Contractor, Ransomware and Remote Desktop Breach, April 2016.

27. **Results of Cybersecurity / PII Exposure**, expert report, Public Utility, July 2015.

28. **Collection and Processing of Email from Webmail Systems**, declaration, Maddy et al v. General Electric Company, US District Court, District of New Jersey, Case No. 14-cv-00490-JEI-KMW, August 2015.

29. **Cost of Collecting and Processing of Email**, declaration, Maddy et al v. General Electric Company, US District Court, District of New Jersey, Case No. 14-cv-00490-JEI-KMW, November 2015.

30. **Preservation of Structured Data**, declaration, Maddy et al v. General Electric Company, US District Court, District of New Jersey, Case No. 14-cv-00490-JEI-KMW, December 2015.

31. **Preservation of Structured Data**, deposition testimony, Maddy et al v. General Electric Company, US District Court, District of New Jersey, Case No. 14-cv-00490-JEI-KMW, December 2015.

32. **Cybersecurity Breach Response / CBI Exposure**, expert reports, Multiple Related Cases, United States International Trade Commission, September 2014.

Exhibit B

| From: | Stephen Weil |
|---|---|
| To: | McKinney, Kelsey; Sarah Raisch; Antonio Romanucci; brooke@bencrump.com; Joshua Levin; dm@mendelsonfirm.com; fjohnson@johnsonandjohnsonattys.com; stephenleffler@yahoo.com; martin@sparkman-zummach.com; keenandl@aol.com; jkp@perrygriffin.com; dgodwin@gmlblaw.com; bmckinney@gmlblaw.com; domemphislaw@darrelloneal.com; support@smitticklaw.com; Robert Spence; jspence@spencepartnerslaw.com; Alexis Johnson; cgrice; ge@perrygriffin.com; lgross@perrygriffin.com; mcollins@gmlblaw.com; tnorman@gmlblaw.com; Dana Kondos; Mistie@sparkman-zummach.com; Colton Johnson Taylor |
| Cc: | McMullen, Bruce; Thompson, Theresa; Morris, Angela; Silk, Jennie; Reagan, Ian |
| Subject: | RE: Subpoena and Notice of Deposition for Rodney Wells - Wells v. City of Memphis, et al., Case No. 2:23-cv-02224 |
| Date: | Monday, April 7, 2025 1:51:19 PM |
| Attachments: | Charles Platt-CV 2024.pdf<br>image001.png<br>image002.png<br>image003.png<br>image004.png<br>image005.png<br>image006.png |

Kelsey,

Your repeated claim that we are mischaracterizing what happened during our calls is incorrect.  We are not. Indeed the reason we write follow-up emails is to ensure both sides are in agreement about what understandings the parties reached with each other.  We are engaged in this meet and confer process precisely so we can come to a common understanding of each side's positions (even if we don't end up agreeing).

**RFP 133**.

*Gathering videos*. If we understand you correctly, the City is now saying that it will not even begin to *gather* videos from the 880 incidents unless we agree not to even investigate the possibility of bulk queries.  That generates needless delay.  This discovery was due months ago.  We ask that you begin gathering the videos so that they can be produced promptly after we have agreement or the Court orders it.

*Bulk-query / technical consult*.  To explore the possibility of a bulk SQL query, we offered to have an eDiscovery consultant, Tom Matzen, speak with City IT folks about performing bulk queries.  You apparently looked up information about Mr. Matzen online and did not see his qualifications regarding SQL—so you have refused any form of technical consultation.  That objection is transparently pretextual:  we have engaged Mr. Matzen as our technical consultant; if he is not qualified on the topic (he is), then the loss is ours, not yours.  All the same, to address this objection we propose to use **Charles Platt** as a technical consultant to confer with the City's IT personnel regarding bulk SQL searches.  Mr. Platt's CV is attached.  **Please advise by 12:00 Tuesday whether you will agree to a conversation between Mr. Platt and the City's IT personnel.**

**RTRs** and **RFP 139-141**.  It sounds as though we're on the same page for these.

**Complaints against officers**.  You say we're mischaracterizing something here.  I'm not sure what.  In my 3/29 email, we recounted Jennie's statement that complaints against officers that are deemed not meritorious do not appear in the officer's personnel file.  On 3/31 Bruce responded, "We

stated that if a complaint is not deemed meritorious, it <u>may</u> not appear in the officer's personnel file, but this is not an absolute rule." (emphasis original). We recorded you saying essentially the same thing on our 4/4 call, an in my 4/5 email I said that you were uncertain whether complaints that get off the ground are connected with officer IBM numbers.  Now you say I'm mischaracterizing something—but what is it?  Perhaps we mixed up officer personnel files and IBM numbers?  If we did get something wrong,  I would like to understand how what you wrote yesterday comports with Bruce's 3/31 email.

**RFP 134-136**.  Your tone here is lamentable, and wrong.  Our point is that confining your search for responsive documents to a strict word search of emails does not fulfill the City's obligation to respond to this discovery, for the reasons I explained.   As for word searches into the City's network files, we would like to get an agreement on what repositories will be searched.  You are correct that we said we'd have search terms by Friday; it is taking some additional time but we expect to have them today.

**Production deadlines**.  We are willing to work with you on deadlines but we do need them, and Rule 34(b)(2)(B) requires you to provide them.  Thus we ask you to propose a production schedule.

Best regards,

Steve

**Stephen H. Weil**
Senior Attorney



**www.rblaw.net**

**e:** <u>sweil@rblaw.net</u>
**p:** (312) 253-8592
**f:** (312) 458-1004
**a:** <u>321 N Clark St, Ste</u>
<u>900, Chicago, IL 60654</u>



🌲 **Go Green - Please don't print this e-mail unnecessarily.**

**Confidentiality Statement.**  The information contained in this electronic mail communication is intended only for the personal and confidential use of the designated recipient named above. This message may be an attorney-client communication and, as such, is privileged and confidential. If the reader of this message is not the intended recipient, you are hereby notified that you have received this communication in error and that any review, dissemination, distribution, or copying of the message is strictly prohibited.  If you have received this transmission in error, please notify us immediately by telephone at 312.458.1000 or by reply e-mail.

**From:** McKinney, Kelsey <kmckinney@bakerdonelson.com>
**Sent:** Sunday, April 6, 2025 5:24 PM
**To:** Stephen Weil <SWeil@rblaw.net>; Sarah Raisch <sraisch@rblaw.net>; Antonio Romanucci <aromanucci@rblaw.net>; brooke@bencrump.com; Joshua Levin <JLevin@rblaw.net>;

# Charles Harris Platt

*MSIS, CIRM, CISSP, ISSMP, CCSP, MCDBA, CEH, EnCE*

Data Analytics and Cyber Security

703.489.7707

charlie@bitscopeconsulting.com

https://www.linkedin.com/in/charlesplatt/

A senior *cybersecurity*, *digital forensics*, and *data analytics* leader with written
and oral *testifying experience* and a *proven track record* of solving intractable and stubborn problems.

## CAREER SUMMARY



*Bitscope Consulting, LLC*                    *Founder*                              *2004 – Present*

I founded Bitscope Consulting in 2004 with the goal of offering cyber security, digital forensic and data analysis services including *incident response*, *expert testimony* and *structured data analysis* for litigation and internal investigations. Clients included Fortune 10 companies, large government organizations, small and mid-size commercial enterprises, and international law firms. While at Bitscope I have been responsible for all areas of running the business, from identifying new clients, proposals, and capture, through execution, billing, and reporting.



*Harvard University*          *Assessor – Managing Risk in the Information Age*          *2023 - Present*

Worked with students on writing assignments and grading/assessing ongoing projects. Course covers risk management and information security topics, including governance, legal and regulatory compliance, and technical mitigation techniques.



*Arete*                        *Sr. Director, IR, Forensics, and Solutions*                *2021 - 2022*

As a Sr. Director at Arete I worked with their *Incident Response* and *Digital Forensics* teams focusing on providing common vision across teams and looking at how Arete uses *technology to improve delivery* and consistency across the company.



*ESI Analyst*                    *VP of Innovation and Data Security*                    *2020 – 2021*

At ESI Analyst I was responsible for *new product development* and data security. I led the development of the ESI Desktop product released in November of 2020 and which, by second quarter 2021, was driving over 80% of new business. I also assisted with development and testing of the ESI Analyst API.



*CyberRx*                        *Affiliate Sr. Director*                            *2018 – 2021*

My work with CyberRx includes conducting *NIST CyberSecurity Framework* (CSF) and *NIST 800-30* (RMF) cyber security *risk assessments* for private firms and government contractors. I am responsible for *managing the risk assessment team*, *conducting interviews* with senior executives and business unit leadership, and developing the *final assessment report*.



*Intelligent Discovery Solutions*          *Director, Data Analytics Practice*          *2014 – 2020*

At iDS I ran the Data Analytics practice, and *managed teams* of 5 – 10 DFIR professionals for large domestic and *international projects* involving cyber *incident response*, $350+ Million class action *litigation*, and high-profile *internal investigations*. Clients ranged from small firms to *fortune 10 companies*. Responsibilities also included *speaking nationally* on topics related to digital forensics, data analytics, and cyber security, publishing thought leadership articles, and working with clients to set *cyber policy* and educate *senior leadership*. While at iDS I pioneered a comprehensive overhaul of how the company handles structured data in litigation and developed tools to assist in processing and analyzing structured data quickly and reliably.



*LECG, LLC*                        *Digital Forensics Lab Manager*                    *2004 – 2006*

For a $300M global consulting firm, I managed large international projects, *developed proposals*, performed digital forensics analysis, managed the DC Digital Forensics Lab, and providing *guidance and leadership* to 10 - 15 junior and senior consultants. While at LECG I developed a utility for e-discovery early case assessment (ECA) that *increased reliability* and speed while significantly *reducing costs*.

## SELECT CERTIFICATIONS

    

Charles Harris Platt                                                                *MSIS, CISSP, ISSMP, CCSP, MCDBA, CEH, EnCE*

## CAREER SUMMARY (CONTINUED)

*Additional Employment History*                                                                              *1991 – 2004*

| | | |
|---|---|---|
| FTI | Sr. Consultant | 2004 – 2004 |
| Gelco Information Network | Sr. Consultant | 2003 – 2004 |
| Interknowledgies, Inc. | Sr. Developer / Founder | 2000 – 2002 |
| Himes Technology Consulting | Sr. Developer / Founder | 1998 – 2000 |
| Litton Enterprise Solutions | Principal Consultant | 1995 – 1998 |
| First Union National Bank | Business Systems Analyst | 1991 – 1995 |

## EDUCATION

    

| | | |
|---|---|---|
| *Managing Risk* in the Information Age | Harvard University | 2019 |
| Phi Kappa Phi | Honor Society | 2013 |
| MS in *Management of Secure Information Systems* | George Mason University | 2013 |
| Introduction to Criminal Investigations | George Washington University | 2005 |
| Introduction to Criminal Procedure | George Washington University | 2005 |
| C/C++ and *Unix Systems Development* | George Washington University | 2002 |
| BS in Computer Information Systems | Roanoke College | 1992 |

## SELECT PROJECT EXPERIENCE

 *Data Analysis and Production     Court Appointed Neutral – Data Analytics*          *2021*

Analyzed and provided *data analysis* as a court appointed neutral in a case involving a *Fortune 100 company* undergoing a *class action* lawsuit.  Provided oral results direct to court related to analysis efforts, failed prior attempts, and successfully produced data previously claimed to be unavailable and impossible to extract or produce.

 *Breach Response Analysis          Data and Encryption Analysis*                    *2021*

Supported expert for defense relating to analysis of *100M+ record breach* and analysis of exfiltrated data.  Analyzed organization's *encryption* and database technology, assisted in writing report, developing opinions, and assessing plaintiffs' expert's opinions and testimony.  Analyzed expert report, database, and incident response report provided and supported expert in developing opinions.

 *Root Cause Analysis Investigation       Business Email Compromise*                *2017*

Assisted mid-sized business in responding to business email compromise incident.  Halted second compromise and transfer of funds already in progress at time of engagement.  *Identified root cause* and assisted in implementation of MFA and email security protocols.

 *Structured Data Log Analysis        Data Analysis and Expert Testimony*          *2019 - 2020*

*Testified* for defendant in an expert role relating to analysis of truck driver logs and plaintiffs' expert's methodology and results.  Analyzed expert report, database, and SQL code provided by plaintiffs' expert and provided related testimony and expert opinions.  Ultimately plaintiffs' motion for *class certification was denied*.

Charles Harris Platt                                              *MSIS, CISSP, ISSMP, CCSP, MCDBA, CEH, EnCE*

## SELECT PROJECT EXPERIENCE (CONTINUED)

 *Government DoD Contractor    Cybersecurity Incident Response Investigation                2018*

Led the onsite team investigating an *alleged internal breach* and compromise for one of the largest naval architecture firms in the US. Responded to *FBI demands* and allegations of breach. Worked directly with client to document corporate infrastructure and defenses, reviewed forensic evidence produced by the FBI, and acquired and reviewed additional evidence. I developed and tested theories for the incident and delivered an *expert report* documenting the breach and exposure for presentation to law enforcement. I presented our findings orally to *corporate executive staff,* including the CEO and CISO.

 *Medical Malpractice Litigation        Medical Records Data Analysis                2017 - 2018*

Provided *expert testimony* for plaintiff in a McKesson *Medical Records database systems* and audit trail data case. The court had significant concerns about *HIPAA* and the expertise required to review medical database records. As a result of deposition and *court testimony,* the court ordered defendant to provide direct access to medical records systems for our expert review, as well as sanctions ordering defendant to pay a significant portion of the cost of the onsite review. Onsite at defendant's IT offices I reviewed McKesson databases for missing or unproduced audit trail data, which resulted in an *expert report* and additional *deposition testimony* on the state of the McKesson records and audit trail data. I was also able to identify and produce additional audit trail data that was previously undisclosed.

 *Government Contractor                Ransomware Incident Response                2017*

Assisted $200M government contractor with response to *ransomware* attack. Developed and delivered expert report and reconstituted corporate IT infrastructure post-incident. *Successfully recovered critical data* and had systems up and running at pre-incident levels in *under 72 hours.*

 *Medical Malpractice Litigation        Medical Records Data Analysis                2016*

*Testified* for defendant in an expert role relating to McKesson Medical Records database systems and alleged *data spoliation*. Analyzed metadata and database processes to understand current state of medical records metadata. Testified in deposition and provided expert opinions related to the metadata. Ultimately spoliation *charges were dropped* and client was found *innocent* of data destruction.

 *Large Public Utility                PII Exposure and Cyber Investigation                2016*

Managed technical team responding to *internal investigation* into potential exposure of client Personally Identifiable Information *(PII)* data. Wrote expert report and provided oral report to corporate officers regarding exposure, including results of investigation showing lack of evidence of access and exfiltration of data.

 *Private Law Firm                CBI Exposure and Cyber Investigation                2014*

Worked with internal IT and third-party vendors to investigate exposure of *confidential business information* related to ongoing litigation for boutique Washington, DC law firm. Provided written testimony and expert report for multiple ongoing matters in front of the *International Trade Commission* related to data exposure, including analysis of any access to, or exfiltration of, confidential data related to each case.

 *Fortune 10 Company        Wage and Labor Class Action – Data Analytics                2015 - 2017*

Analyzed and provided *expert testimony* for e-discovery and Data Analytics for a *Fortune 10 company* undergoing a *1,000+ plaintiff class action* lawsuit. Provided oral and written testimony related to discovery efforts and data analytics regarding plaintiffs' daily activities and routines.

 *International Finance        Wage and Labor Class Action – Data Analytics                2015 - 2016*

Managed the project and developed data analysis protocols for a $65B *international financial company* undergoing a *450,000+ plaintiff class action* lawsuit. Provided data analysis related to *work patterns* leading to segregation of the class into dozens of non-similar, discrete groups. Lead attorney, when presented with our draft report, responded with a single comment, "*This is the first time I've really understood this case.*" Case ultimately failed to meet class certification and was dismissed.

Charles Harris Platt                                          *MSIS, CISSP, ISSMP, CCSP, MCDBA, CEH, EnCE*

## SELECT PROJECT EXPERIENCE (CONTINUED)



*Retail Manufacturer*              *International Counterfeit Investigation*              *2014 - 2017*

Led multi-disciplinary, *international teams* in responding to court order for *forensic investigation* into counterfeiting allegations.  Forensic team onsite in *Shenzhen, China* performed onsite acquisition, processing and in country review of dozens of laptops, email and file servers and personal devices.  Domestically, the *Washington, DC* and *New York City* teams performed structured data analytics against SQL Server databases to determine sales volumes and post-lawsuit alteration of sales records.  Washington DC team wrote expert report and assisted with subsequent written testimony.  Ultimately led to *successful spoliation charges* and *sanctions*.



*National Trucking Organization*              *Spoliation Defense*              *2015*

Led consulting team that solved at *10-year-old mystery* related to document *fraud* and *spoliation*.  Two documents had been alleged by plaintiffs to have been altered *maliciously* post-lawsuit, including alleged evidence of *cover-up* and altering of meta-data.  Our team was able to uncover the *truth* about the documents, *remove any suspicion* as to the intent of the individuals, and to explain clearly and precisely how the meta-data was altered and what it meant.  Ultimately our analysis led to plaintiffs removing all mention of these documents from court testimony and arguments.

## CERTIFICATIONS

| | | |
|---|---|---|
| CCSP – Certified *Cloud Security* Professional | ISC2 | 2019 |
| ISSMP - Information Systems *Security Management* Professional | ISC2 | 2017 |
| CISSP - Certified *Information Systems Security* Professional | ISC2 | 2017 |
| EnCE - EnCase Certified Examiner | Guidance Software | 2016 |
| CEH - Certified Ethical Hacker | EC-Council | 2015 |
| EnCE - EnCase Certified Examiner (Expired 2009) | Guidance Software | 2006 |
| A+ Certified | CompTIA | 2005 |
| Network+ Certified | CompTIA | 2005 |
| MCDBA - Microsoft Certified DBA | Microsoft | 2004 |
| MCP - Microsoft Certified Professional | Microsoft | 2004 |
| C/C++ Certified Unix Developer | George Washington University | 2002 |
| Sun Certified Java Programmer (Expired) | Sun | 2002 |
| PCLP - Principal Certified Lotus Professional | IBM/Lotus | 2002 |

## BOARD MEMBERSHIP

| | | |
|---|---|---|
| Browne Academy | *Chair, Cybersecurity Committee* | 2015 - Present |
| Browne Academy | Board of Trustees | 2010 - Present |
| Wildfell, Ltd. | Treasurer and Vice President | 2005 - Present |
| Platt & Co. | Director and Vice President | 2000 - Present |

## RECOGNITION & AWARDS

| | | |
|---|---|---|
| The Greystone Award | Browne Academy | 2017 |
| Happy Buddha Award | Intelligent Discovery Solutions | 2015 |
| *Outstanding MSIS Student* Class of 2013 | George Mason University | 2013 |
| You Make Gelco Rock Award | Gelco Information Network | 2003 |

Charles Harris Platt                                    *MSIS, CISSP, ISSMP, CCSP, MCDBA, CEH, EnCE*

## SELECT PUBLICATIONS

| | | |
|---|---|---|
| Java Mail Metadata Analysis | Digital Forensics Magazine | November 2017 |
| The Ethical Hacker – *Ransomware Protection* | Metropolitan Corporate Counsel | May 2017 |
| The Ethical Hacker – Great Employee or Insider Threat | Metropolitan Corporate Counsel | May 2017 |
| Technically Speaking, *Cyber Security isn't About Speaking Technically* | Metropolitan Corporate Counsel | April 2017 |
| Field Notes: Leveraging IoT Data Isn't a Budget Killer | Metropolitan Corporate Counsel | March 2017 |
| The Ethical Hacker – I Got 99 Problems, But No Data Ain't One | Metropolitan Corporate Counsel | January 2017 |
| IoT Data: Objective, Consistent and Pervasive | Metropolitan Corporate Counsel | December 2016 |
| Ten Key Legal *Considerations for Cloud* Solutions | Metropolitan Corporate Counsel | November 2016 |
| Data Analytics: How Parties Are Using Tools Beyond TAR | Law360 | November 2016 |
| *Metadata Analysis* in Email | Digital Forensics Magazine | May 2016 |
| Big Data Yields Big Results | Metropolitan Corporate Counsel | May 2016 |
| Data Breach & Incident Response | Metropolitan Corporate Counsel | February 2016 |
| A Brief Legal History of Time, pt. 2 | Bloomberg BNA | February 2016 |
| A Brief Legal History of Time, pt. 1 | Bloomberg BNA | January 2016 |
| The Most Crucial Time During a Data Breach | Bloomberg BNA | January 2016 |
| Structured What? Leveraging structured data | Metropolitan Corporate Counsel | November 2015 |

## SELECT SPEAKING AND TRAINING EVENTS

| | | |
|---|---|---|
| *Hacked! What's Your Plan?* | Wednesdays with Woodward – Travelers Insurance | June 2022 |
| Cyber IR and Litigation: IR Today means Litigation Tomorrow | (ISC)2 Cyber Security Summit | October 2021 |
| The Cloud Gambit: Advanced Moves for a Cloud Security Career | (ISC)2 Webinar | August 2021 |
| *CLE – Digital Forensics for Attorneys* | Various Law Firms | July - September 2021 |
| *Getting the Board on Board with Cyber* | OpenText EnFuse Conference | November 2019 |
| Getting the Board on Board with Cyber | (ISC)2 Cyber Security Summit | October 2019 |
| *Taking Cybersecurity from IT to the Board* | Ing3nious Cybersecurity Retreat | October 2018 |
| Data Breach and *Incident Response* | TGCI, Data Privacy and Cybersecurity Forum | November 2017 |
| Careers in Cybersecurity | Flint Hill High School | October 2017 |
| *Breach Response* Best Practices | Small Business Cybersecurity Xchange | October 2017 |
| Argyle – Data and Efficiency in Litigation | Argyle Chief Legal Office Forum | June 2017 |
| IoT Data Analytics | Littler Executive Employer | May 2017 |
| A Lawyer's Introduction to Computers | Temple Law School | January 2017 |
| Outsourcing Big Data to the Cloud | TGCI, Data Privacy and Cybersecurity Forum | November 2016 |
| IoT: Content is the New Context | Organization of Legal Professionals, Webinar | November 2016 |
| The IoT and Litigation | The Masters Conference, Panel Moderator | October 2016 |
| Forensics and the Rise of *Google Docs* | Littler Mendelson | October 2016 |
| A Lawyer's Introduction to Computers | University of Pennsylvania Law School | September 2016 |
| The IoT and Litigation | The Masters Conference, Panel Moderator | July 2016 |
| The IoT:IoT and Relational Analytics | Metropolitan Corporate Counsel Webinar | June 2016 |
| The IoT and Litigation | The Masters Conference | May 2016 |
| Practicing Law in the Cloud | Pennsylvania Bar Association | January 2016 |
| A Lawyer's Introduction to Computers | American University Law School | January 2016 |
| *Structured Data Discovery* | The Knowledge Group Webinar | December 2015 |
| Breach Response:  What Do I Do Now? | TGCI, Data Privacy and Cyber Security Forum | November 2015 |
| *Digital Forensics for Attorneys* | Temple University | January 2015 |
| Implementing Systems at the National Zoo | George Mason University | March 2014 |
| Securing the Academy, *Strategic Cybersecurity Plan* | Browne Academy | June 2013 |
| Digital Forensics and Security | George Mason University | February 2013 |

Charles Harris Platt                                    *MSIS, CISSP, ISSMP, CCSP, MCDBA, CEH, EnCE*

## TESTIFYING EXPERIENCE

1. **Analysis of Email Communications**, expert report, United Services Automobile Association a/s/o Steven and Jaime Dolen v. Karl Schwarz, Laura Addison, Artistic Lighting and Design Group, et. al., Superior Court of New Jersey, Somerset County, Docket No. SOM-L-381-18, October 2021.

2. **Appropriate Production of ESI**, declaration, BFL Construction Co., INC. v. Pinon Lofts, LLC, et. al., Arizona Superior Court, Yavapi County, Case No. V1300CV202180084, October 2021.

3. **Analysis of Email Communications**, expert report, Adam Ausloos and Tax Deferral Trustee Services, LLC v. Robert Binkele and Estate Planning Team, Inc., Judicial Arbitration and Mediation Services, JAMS Ref No. 1260005658, April 2021.

4. **Analysis of Web Logs and Geolocation of IP Addresses**, expert report, Jason Allen et al. v. Kevin Farmer et al., United States District Court, In and for the District of Arizona, Case No. CV-20-01298-PHX-SPL, March 2021.

5. **Rebuttal of Expert Report Regarding Deleted Files**, declaration, RJP-AZ, LLC v. Safeguard Estate and Financial, LLC, Superior Court of the State of Arizona, Maricopa County, Case No. CV2019-001514, March 2021.

6. **Analysis of Source Code and Website Scripting**, deposition testimony, ConsumerDirect, Inc. v. LeadPoint, Inc., Superior Court of the State of California, Orange County Central Justice Center, Case No. 30-2017-00946431-CU-BC-CJC, November 2019.

7. **Structured Data Analysis of Driver Logs**, deposition testimony, Dueker v. CRST Expedited, Inc, US District Court, Central District of California, Case No. 2:180cv008751-FMO-FEM, October 2019.

8. **Supplemental Report: Rebuttal to Structured Data Analysis of Driver Logs**, expert report, Dueker v. CRST Expedited, Inc, US District Court, Central District of California, Case No. 2:180cv008751-FMO-FEM, October 2019.

9. **Analysis of Source Code and Website Scripting**, declaration, ConsumerDirect, Inc. v. LeadPoint, Inc., Superior Court of the State of California, Orange County Central Justice Center, Case No. 30-2017-00946431-CU-BC-CJC, October 2019.

10. **Rebuttal to Structured Data Analysis of Driver Logs**, expert report, Dueker v. CRST Expedited, Inc, US District Court, Central District of California, Case No. 2:180cv008751-FMO-FEM, September 2019.

11. **Digital Forensics Analysis of USB Device Use**, deposition testimony, Digital Assurance Certification, LLC v. Alex Pendolino, Jr., US District Court, Middle District of Florida, Case No. 6:17-cv-72-Orl-31TBS, December 2018.

12. **Rebuttal to Forensic Investigation Protocols and Methods**, declaration, Digital Assurance Certification, LLC v. Alex Pendolino, Jr., US District Court, Middle District of Florida, Case No. 6:17-cv-72-Orl-31TBS, November 2018.

13. **Analysis of Expert Report and Expert's Methodology**, declaration, DHI Group, Dice, Rigzone.com v. David Kent, Oilpro.com, US District Court, Southern District of Texas, Case No. 4:16-cv-01670, November 2018.

14. **Digital Forensics Analysis on USB Device Use**, expert report, Digital Assurance Certification, LLC v. Alex Pendolino, Jr., US District Court, Middle District of Florida, Case No. 6:17-cv-72-Orl-31TBS, November 2018.

15. **Incident Response Investigation / FBI Investigation**, Expert Report, Confidential Client, April 2018.

16. **Structured Data Analysis / Medical Records**, deposition testimony, Culpepper v. Wellstar Kennestone, State Court of Dekalb County, GA, Case No. 15A54645E7, January 2018.

17. **Forensic Analysis of Laptop**, affidavit, Gondolier Properties, LLC et. al. v. Joellen Tilseth, Don Tilseth, et. al., State Court of Lee County, FL, Case No. 16-CA-1206.

18. **PeopleSoft Database Forensics**, declaration, Private Internal Investigation, November 2017.

19. **Structured Data Analysis / Medical Records**, Expert Report, Culpepper v. Wellstar Kennestone, State Court of Dekalb County, GA, Case No. 15A54645E7, September 2017.

20. **Electronic Discovery and Forensics**, declaration, Digital Assurance Certification, LLC v. Alex Pendolino, Jr., US District Court, Middle District of Florida, Case No. 6:17-cv-72-Orl-31TBS, September 2017.

21. **Structured Data Analysis / Medical Records**, court hearing testimony, Culpepper v. Wellstar Kennestone, State Court of Dekalb County, GA, Case No. 15A54645E7, August 2017.

Charles Harris Platt                                                    *MSIS, CISSP, ISSMP, CCSP, MCDBA, CEH, EnCE*

22. **Structured Data Analysis / Medical Records**, deposition testimony, Culpepper v. Wellstar Kennestone, State Court of Dekalb County, GA, Case No. 15A54645E7, May 2017.

23. **Source Code Versioning System Forensics**, declaration, Sotera Wireless, Inc. Debtor, US Bankruptcy Court, Southern District of California, Case No. 16-05968-LT11, January 2017.

24. **USB Device Forensic Analysis**, declaration, Digital Assurance Certification, LLC v. Alex Pendolino, Jr., US District Court, Middle District of Florida, Case No. 6:17-cv-72-Orl-31TBS, January 2017.

25. **Structured Data Analysis / Medical Records**, deposition testimony, Ruchotzke v. Methodist Medical Center, Circuit Court, Tenth Judicial Circuit, Peoria County, IL, Case No. 13-L-78, September 2016.

26. **Cybersecurity Breach Response / Ransomware**, expert report, Government Contractor, Ransomware and Remote Desktop Breach, April 2016.

27. **Results of Cybersecurity / PII Exposure**, expert report, Public Utility, July 2015.

28. **Collection and Processing of Email from Webmail Systems**, declaration, Maddy et al v. General Electric Company, US District Court, District of New Jersey, Case No. 14-cv-00490-JEI-KMW, August 2015.

29. **Cost of Collecting and Processing of Email**, declaration, Maddy et al v. General Electric Company, US District Court, District of New Jersey, Case No. 14-cv-00490-JEI-KMW, November 2015.

30. **Preservation of Structured Data**, declaration, Maddy et al v. General Electric Company, US District Court, District of New Jersey, Case No. 14-cv-00490-JEI-KMW, December 2015.

31. **Preservation of Structured Data**, deposition testimony, Maddy et al v. General Electric Company, US District Court, District of New Jersey, Case No. 14-cv-00490-JEI-KMW, December 2015.

32. **Cybersecurity Breach Response / CBI Exposure**, expert reports, Multiple Related Cases, United States International Trade Commission, September 2014.

Exhibit C

| From: | Stephen Weil |
|---|---|
| To: | McMullen, Bruce; Antonio Romanucci; Silk, Jennie; Joshua Levin |
| Cc: | Alexis Johnson; Betsy McKinney; Florence Johnson; Brooke Cluse; cgrice; Clyde W. Keenan; Darrell J. O"Neal; David Louis Mendelson I; Deborah Godwin; ge@perrygriffin.com; John Keith Perry Jr.; Laura Elizabeth Smittick; lgross@perrygriffin.com; Martin Zummach; Mary Collins; Mistie@sparkman-zummach.com; Robert Spence; Terri Norman; Reagan, Ian; McKinney, Kelsey; Jarrett Spence; Dana Kondos; Sarah Raisch |
| Subject: | RE: Wells v. Memphis -- |
| Date: | Wednesday, April 2, 2025 3:04:42 PM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |

Bruce,

I'm responding to your 3/31 email, in this chain.

**Inspection**. I don't think it makes sense for the parties to engage further on the topic in this chain. We have a follow-up inspection set.

**RFP 133**. Thank you for clarifying that the CAD number provides a unique ID for each incident. You state that a search for each CAD number would need to be run one-by-one on the MPD's databases. This appears to refer to a "front-end" user-interface search, which is indeed typically done one at a time. These are SQL databases, however, and SQL databases enable bulk queries. Those queries are not done through the user interface. Instead they are done using a "back end" bulk SQL query, which is constructed using the SQL code base language. Once we confirm the unique ID for incidents, the City's IT department should be able to run the bulk query. We also have IT consultants who can either perform the query directly or work with the City's IT to build and run the query. We'd ask that you please consult with the City's IT, and we can discuss this in practical terms on Friday. It may be helpful to get the City's IT people and our IT consultants on a call together, and we are happy to facilitate that as well.

**RTRs.** We reviewed the RTR .csv / Excel file you referred to on our last call (COM_0185791). We have compared the RTR fields in that sheet to the RTR form, however, and there are a number of information categories that appear to be missing. For example, compare the RTR .csv file (COM_0185791) with RTR form COM_0039163. There are a number of missing categories (e.g., "Location of Occurrence," "Entered by," "Record ID Number," "Reporting/Involved citizen". There are others.). Are those categories recorded elsewhere? Are parallel queries required?

**RFP 139-141**. Please identify the search terms / custodians / parameters you used for this search.

**Complaints against officers**. We will provide a list of officers. In the meantime, please let us know whether complaints would have an incident number that could permit referral between databases— something like a CAD number. We'd also like to understand whether complaint records are searchable for keywords.

Thanks,

Steve

.

Exhibit D

| From: | Stephen Weil |
|---|---|
| To: | McKinney, Kelsey; Sarah Raisch; Antonio Romanucci; brooke@bencrump.com; Joshua Levin; dm@mendelsonfirm.com; fjohnson@johnsonandjohnsonattys.com; stephenrleffler@yahoo.com; martin@sparkman-zummach.com; keenandl@aol.com; jkp@perrygriffin.com; dgodwin@gmlblaw.com; bmckinney@gmlblaw.com; domemphislaw@darrelloneal.com; support@smitticklaw.com; Robert Spence; jspence@spencepartnerslaw.com; Alexis Johnson; cgrice; ge@perrygriffin.com; lgross@perrygriffin.com; mcollins@gmlblaw.com; tnorman@gmlblaw.com; Dana Kondos; Mistie@sparkman-zummach.com; Colton Johnson Taylor |
| Cc: | McMullen, Bruce; Thompson, Theresa; Morris, Angela; Silk, Jennie; Reagan, Ian |
| Subject: | RE: Subpoena and Notice of Deposition for Rodney Wells - Wells v. City of Memphis, et al., Case No. 2:23-cv-02224 |
| Date: | Monday, April 7, 2025 1:51:19 PM |
| Attachments: | Charles Platt-CV 2024.pdf |
| | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |
| | image006.png |

Kelsey,

Your repeated claim that we are mischaracterizing what happened during our calls is incorrect. We are not. Indeed the reason we write follow-up emails is to ensure both sides are in agreement about what understandings the parties reached with each other. We are engaged in this meet and confer process precisely so we can come to a common understanding of each side's positions (even if we don't end up agreeing).

**RFP 133**.

*Gathering videos*. If we understand you correctly, the City is now saying that it will not even begin to *gather* videos from the 880 incidents unless we agree not to even investigate the possibility of bulk queries. That generates needless delay. This discovery was due months ago. We ask that you begin gathering the videos so that they can be produced promptly after we have agreement or the Court orders it.

*Bulk-query / technical consult*. To explore the possibility of a bulk SQL query, we offered to have an eDiscovery consultant, Tom Matzen, speak with City IT folks about performing bulk queries. You apparently looked up information about Mr. Matzen online and did not see his qualifications regarding SQL—so you have refused any form of technical consultation. That objection is transparently pretextual: we have engaged Mr. Matzen as our technical consultant; if he is not qualified on the topic (he is), then the loss is ours, not yours. All the same, to address this objection we propose to use **Charles Platt** as a technical consultant to confer with the City's IT personnel regarding bulk SQL searches. Mr. Platt's CV is attached. **Please advise by 12:00 Tuesday whether you will agree to a conversation between Mr. Platt and the City's IT personnel.**

**RTRs** and **RFP 139-141**. It sounds as though we're on the same page for these.

**Complaints against officers**. You say we're mischaracterizing something here. I'm not sure what. In my 3/29 email, we recounted Jennie's statement that complaints against officers that are deemed not meritorious do not appear in the officer's personnel file. On 3/31 Bruce responded, "We

1

stated that if a complaint is not deemed meritorious, it <u>may</u> not appear in the officer's personnel file, but this is not an absolute rule." (emphasis original). We recorded you saying essentially the same thing on our 4/4 call, an in my 4/5 email I said that you were uncertain whether complaints that get off the ground are connected with officer IBM numbers. Now you say I'm mischaracterizing something —but what is it? Perhaps we mixed up officer personnel files and IBM numbers? If we did get something wrong, I would like to understand how what you wrote yesterday comports with Bruce's 3/31 email.

**RFP 134-136**. Your tone here is lamentable, and wrong. Our point is that confining your search for responsive documents to a strict word search of emails does not fulfill the City's obligation to respond to this discovery, for the reasons I explained.  As for word searches into the City's network files, we would like to get an agreement on what repositories will be searched. You are correct that we said we'd have search terms by Friday; it is taking some additional time but we expect to have them today.

**Production deadlines**. We are willing to work with you on deadlines but we do need them, and Rule 34(b)(2)(B) requires you to provide them. Thus we ask you to propose a production schedule.

Best regards,

Steve



**Stephen H. Weil**
Senior Attorney

**www.rblaw.net**

**e:** <u>sweil@rblaw.net</u>
**p:** <u>(312) 253-8592</u>
**f:** (312) 458-1004
**a:** <u>321 N Clark St, Ste
900, Chicago, IL 60654</u>



 **Go Green - Please don't print this e-mail unnecessarily.**

**Confidentiality Statement.**  The information contained in this electronic mail communication is intended only for the personal and confidential use of the designated recipient named above. This message may be an attorney-client communication and, as such, is privileged and confidential. If the reader of this message is not the intended recipient, you are hereby notified that you have received this communication in error and that any review, dissemination, distribution, or copying of the message is strictly prohibited.  If you have received this transmission in error, please notify us immediately by telephone at 312.458.1000 or by reply e-mail.

**From:** McKinney, Kelsey <kmckinney@bakerdonelson.com>
**Sent:** Sunday, April 6, 2025 5:24 PM
**To:** Stephen Weil <SWeil@rblaw.net>; Sarah Raisch <sraisch@rblaw.net>; Antonio Romanucci <aromanucci@rblaw.net>; brooke@bencrump.com; Joshua Levin <JLevin@rblaw.net>;

dm@mendelsonfirm.com; fjohnson@johnsonandjohnsonattys.com; stephenrleffler@yahoo.com; martin@sparkman-zummach.com; keenandl@aol.com; jkp@perrygriffin.com; dgodwin@gmlblaw.com; bmckinney@gmlblaw.com; domemphislaw@darrelloneal.com; support@smitticklaw.com; Robert Spence <rspence@spencepartnerslaw.com>; jspence@spencepartnerslaw.com; Alexis Johnson <AJohnson@rblaw.net>; cgrice <cgrice@eflawgroup.com>; ge@perrygriffin.com; lgross@perrygriffin.com; mcollins@gmlblaw.com; tnorman@gmlblaw.com; Dana Kondos <DKondos@rblaw.net>; Mistie@sparkman-zummach.com; Colton Johnson Taylor <cjohnson@rblaw.net>
**Cc:** McMullen, Bruce <bmcmullen@bakerdonelson.com>; Thompson, Theresa <tthompson@bakerdonelson.com>; Morris, Angela <amorris@bakerdonelson.com>; Silk, Jennie <jsilk@bakerdonelson.com>; Reagan, Ian <ireagan@bakerdonelson.com>
**Subject:** RE: Subpoena and Notice of Deposition for Rodney Wells - Wells v. City of Memphis, et al., Case No. 2:23-cv-02224

**[EXTERNAL EMAIL]** DO NOT CLICK links or attachments unless you recognize the sender and know the content is safe.

Steve,

We are confused and disappointed that your "summary" of our conference on Friday is so blatantly incorrect. Luckily, we took very good notes. Accordingly, below is a summary of what *actually* transpired on Friday's call.

On another note, we have now spent at least 7 hours on phone conferences with you regarding these and other discovery issues in the last few weeks. We spent 4.5 hours *just last week* on the phone with you, and this is the result? A false summary of "agreements" that we never made? Consider this our last meet and confer on this issue. Our responses to your specific items are in red below.

**RFP 133.**

The parties agree that the City will produce the Evidence.com videos for the 880 incidents reviewed by the DOJ in the Evidence.com database.  What remains for discussion is what additional database information will be gathered relating to those incidents.

The Evidence.com videos.  You indicated that the City had not yet begun the process of gathering these videos or otherwise making them accessible to us.  We asked you to begin that process and you agreed.  As discussed, the videos will refer to metadata, including the metadata provided in the Evidence.com spreadsheet.  We asked for rolling production of these videos and you agreed.

This is incorrect, as was clarified at the very end of the call. As a threshold matter, we stand on our relevance objection as to these 880 incidents. Your focus on these 880 incidents is akin to a fishing expedition, especially in light of your other document requests for relevant documents. In an effort to compromise on RFP 133 as a whole, we have offered to produce the Evidence.com files for the 880 incidents so that Plaintiff can begin narrowing down the request further. This is offer is not--and never has been--in addition to plaintiff's request for back-end bulk searches. As was clarified on the call, if plaintiff is going to insist on production via a bulk query, the City will not agree to produce the videos.

Thus, no, we have not agreed to begin producing the 880 videos. Likewise, there was no discussion on the call about the videos referring to the metadata in the "Evidence.com spreadsheet." It is unclear what you mean by that, but we will assume you are referring to the audit trails. What was discussed is that in addition to the videos, any production from Evidence.com will include spreadsheets with every .zip file downloaded that identifies some level of metadata about the videos, such as the uploading officer, Evidence ID, etc.

*Bulk SQL queries*.  We discussed performing back-end bulk SQL queries to locate the various records that exist in MPD's databases for each of the 880 incidents. As discussed, we are proposing the method of back-end bulk SQL querying as an alterative to your proposed front-end incident-by-incident searches to address your burden objections. We proposed having our consultant Mr. Tom Matzen, who was on the call, confer with technical persons on the City's side to discuss the details of how this might be done.  **You committed to providing us with an answer to this request by Monday.**

We will not agree to have Mr. Matzen meet with our client about this issue. We reviewed Mr. Matzen's credentials, and he does not appear to have any experience or expertise with the complex database issues on which he is advising you. We stand on our objections. We are at issue.

*User-interface queries*.  We discussed access the user interface(s) for the databases.  That discussion was somewhat exploratory, so be clear: our understanding of the SQL server is that the City can give us the code that that comprises the interfaces, which will enable us to operate the user interfaces for the 880 incidents once they have been isolated using the bulk query.  In other words, instead of giving us access to the user interfaces for the full databases like MPD did for DOJ, we would have access to the user interfaces only for records related to the 880 incidents. This likely will require further discussion between Mr. Matzen and your technical person, which we can arrange for Monday/Tuesday. **Please let us know by Monday.**

This was not discussed on the call. As stated above, we will not agree to have Mr. Matzen meet with our client about this issue. We stand on our objections. We are at issue.

*Database fields*.  We noted that you had agreed on our previous call to provide Plaintiff with the universe of fields in the MPD databases that exist for any one of the 880 incidents on <u>Evidence.com</u>.  You stated on yesterday's call that you did not recall this, but you agreed to get back to us with this information. **Please let us know by Monday.**

We have no memory of agreeing to this, nor do we see the relevance.

*Unique incident IDs.* In these discussions you noted that the unique incident numbers that link records in <u>Evidence.com</u> to records related to the same incident in MPD's other databases might not be entered in all InformRMS entries, and that there would need to be a second-order connection (to another unique ID) for some entries. To address that issue, Mr. Matzen asked whether the databases, including InformRMS, have a unique ID number for incidents that may not be visible but can be used for performance issues etc. and could potentially be used to link the MPD data for each incident, including data in InformRMS. **You agreed to check and let us know.**

I don't even know what you are actually trying to get from this request, but since we agreed to ask about it, we will.  In any event, we object to any further requests for information about our databases. You are not entitled to our databases, nor are you entitled to unfettered access to the data therein.

*Databases in question*.  For purposes of this discussion, the databases we are referring to are the ones set out in the Copy of Table Identifying Storage spreadsheet—though we don't expect to connect with the PowerDMS for this discussion, since that database just tracks training.  On the other hand we are assuming the Getac database (which contains in-car videos) has an audit trail system similar to the Axon / Evidence.com database.  We will therefore need to discuss gathering information from and related to this database as well.  We anticipate that will be considerably simpler once we have ironed out gathering information connected with the Evidence.com / Axon database.

We stand on our objections to performing back-end searches. At this time, no further discussion is needed because we are at issue.

**RTRs.**  We will provide you with a list of the fields missing from the RTR spreadsheet that are relevant. You agreed to provide the field name dictionary for the RTR excel file.

Correct.

**RFPs 139-141.**  You stated that you had conducted a cross custodian (i.e., all-MPD) search for the terms listed.  At our request you agreed to re-run the searches by eliminating the term "scorpion" but confining the custodians to MPD employees in the OCU.  When this search is run we ask that you please provide the list of custodians it is run against. You agreed that if this search returns voluminous hit rates, you will provide a report of hit counts per each custodian so that we can work through any burden issues.

Correct. We have submitted this search request.

**Complaints against officers**.

You were uncertain whether complaints that do not get off the ground (e.g., are treated as unfounded at the outset) are recorded against officer IBM numbers.  You also stated that some complaints are in paper.

This is incorrect. We have no reason to believe that complaints against officers—whether unfounded or escalated—would not be connected to the officer's IBM numbers, nor did we make a representation otherwise. We also stated that some of those records may be in paper, as some processes at the workstation level are still completed on paper. We were very clear that it was unknown as to the availability of everything digitally. Please take care not to misrepresent our discussions.

For all the officers identified, we asked you to run searches for their IBM numbers in the complaint database (not just their personnel files) and you agreed to so so.

We will run searches for all officers identified in RFPs 144-194, subject to any objections previously stated in our responses.

We asked what information fields are present in the complaint database (besides officer IBM number), and whether the complaints/the fields are tagged in any way.  You did not know and are getting back to us.

You will also get back to us about whether and how paper complaints can be searched.

We are looking into this. Please see paragraph above about paper records, as you have again misrepresented the discussion.

**RFP 134-136**.  You have provided search terms and stated that these would be run against custodians that had been proposed last year (before these RFPs were served) along with one additional custodian (Col. Willie Mathena) who the City has agreed to add for all ESI searching in this case.  We are editing the search terms and will get proposed edits to you promptly.

We emphasized that the searches for documents responsive to RFPs 134-136 should not be limited strictly to these search terms and to a list of email custodians that were not agreed on with these RFPs in mind. These requests all concern documents reflecting identification of policymakers and actions taken by policymakers.  That calls for counsel to ask policymakers whether certain actions had been taken, who within MPD has taken any such actions, and where responsive documents related to these actions might be located.  Often, we noted, if a particular policy review was conducted, it might simply be reflected in a memorandum, irrespective of the emails responsive to a word search.  We also noted that word searches might be over- and under-inclusive. In addition, your search-term-based custodial searching is not adequate because it only searches the email accounts of custodians, and does not search shared drives, hard drives, network drives, and other non-custodial sources where responsive material may be.

We also noted that these requests were propounded to gather documents for Rule 30(b)(6) depositions, and that we were anticipating taking a Rule 30(b)(6) deposition on substantially similar topics. Responding to these RFPs thus called for an investigation similar to preparation for a Rule 30(b)(6) deposition— conferring with policymakers about the likely location of responsive documents, not just performing word searches.

On our call, **you agreed to consider our position about the need to conduct non-search-term-based searching, as described above, to locate documents responsive to RFPs 134-136, and to get back to us.** In addition, you agreed to let us know whether your conversations with policymakers concerning 134-136 yielded any additional custodians for email/search-term searching. You also agreed to let us know your position on the relevant time period for RFPs 134-136, which is 2018 to present, in our view.

Additionally, it appears you intend to confine your search to emails only.  However, the results of policy reviews may be contained in office files.  Or they simply may be gathered somewhere, i.e. in a policy analysis or similar office within the MPD. Such repositories should be located and searched, using search terms or manually.  **Please advise whether you agree to search office files**. (This issue was not raised directly on the call, though it is connected to "searches" conducted through conversations with policymakers and likely custodians discussed above.)

<span style="color:red">Your lengthy explanation of the actions you are asking us to take sound a lot like you asking us to do your job for you. In a previous hours-long meet and confer, you asked us for search terms. We have provided the search terms.. Moreover, it is up to us to decide how and when we prep our witnesses for depositions. Once you actually notice a 30(b)(6) deposition, then we will do our job to make sure they are adequately prepared. Until then, as is a standard practice, we will run search terms in emails and in the larger MPD network to the extent that is possible.</span>

<span style="color:red">In addition, you committed to providing feedback on our proposed search terms for RFPs 134-136 **on Friday**. We did not receive anything from your team on this point. Please provide your changes promptly.</span>

**Production Deadlines.**  This topic was not directly discussed on yesterday's call, but we will need to discuss with you next week:  we need to discuss deadlines for gathering and producing documents responsive to

the foregoing discovery, along with other RFPs you have agreed to respond to, e.g., **RFP 125**, **RFP 129-131**, **RFP 137**.  Please propose dates for gathering and production.

We are constantly gathering, reviewing, and producing documents. We will continue to do so on a rolling basis. We have wasted hours in recent weeks on unproductive videoconferences and repeat inspections.

Kindly,
Kelsey

___

**Kelsey W. McKinney** (she/her/hers)
Associate
Direct:  901.577.8204
Email:  kmckinney@bakerdonelson.com

---

**From:** Stephen Weil <SWeil@rblaw.net>
**Sent:** Saturday, April 5, 2025 2:53 PM
**To:** Silk, Jennie <jsilk@bakerdonelson.com>; Sarah Raisch <sraisch@rblaw.net>; Reagan, Ian <ireagan@bakerdonelson.com>; Antonio Romanucci <aromanucci@rblaw.net>; brooke@bencrump.com; Joshua Levin <JLevin@rblaw.net>; dm@mendelsonfirm.com; fjohnson@johnsonandjohnsonattys.com; stephenrleffler@yahoo.com; martin@sparkman-zummach.com; keenandl@aol.com; jkp@perrygriffin.com; dgodwin@gmlblaw.com; bmckinney@gmlblaw.com; domemphislaw@darrelloneal.com; support@smitticklaw.com; Robert Spence <rspence@spencepartnerslaw.com>; jspence@spencepartnerslaw.com; Alexis Johnson <AJohnson@rblaw.net>; cgrice <cgrice@eflawgroup.com>; ge@perrygriffin.com; lgross@perrygriffin.com; mcollins@gmlblaw.com; tnorman@gmlblaw.com; Dana Kondos <DKondos@rblaw.net>; Mistie@sparkman-zummach.com; Colton Johnson Taylor <cjohnson@rblaw.net>
**Cc:** McMullen, Bruce <bmcmullen@bakerdonelson.com>; McKinney, Kelsey <kmckinney@bakerdonelson.com>; Thompson, Theresa <tthompson@bakerdonelson.com>; Morris, Angela <amorris@bakerdonelson.com>
**Subject:** RE: Subpoena and Notice of Deposition for Rodney Wells - Wells v. City of Memphis, et al., Case No. 2:23-cv-02224

Counsel,

I am writing to follow up on yesterday's call.

**RFP 133.**

The parties agree that the City will produce the Evidence.com videos for the 880 incidents reviewed by the DOJ in the Evidence.com database.  What remains for discussion is what additional database information will be gathered relating to those incidents.

*The Evidence.com videos*.  You indicated that the City had not yet begun the process of gathering these videos or otherwise making them accessible to us.  We asked you to begin that process and you agreed.  As discussed, the videos will refer to metadata, including the metadata provided in the Evidence.com spreadsheet.  We asked for rolling production of these videos and you agreed.

*Bulk SQL queries*.  We discussed performing back-end bulk SQL queries to locate the various

records that exist in MPD's databases for each of the 880 incidents. As discussed, we are proposing the method of back-end bulk SQL querying as an alterative to your proposed front-end incident-by-incident searches to address your burden objections. We proposed having our consultant Mr. Tom Matzen, who was on the call, confer with technical persons on the City's side to discuss the details of how this might be done. **You committed to providing us with an answer to this request by Monday.**

*User-interface queries*. We discussed access the user interface(s) for the databases. That discussion was somewhat exploratory, so be clear: our understanding of the SQL server is that the City can give us the code that that comprises the interfaces, which will enable us to operate the user interfaces for the 880 incidents once they have been isolated using the bulk query. In other words, instead of giving us access to the user interfaces for the full databases like MPD did for DOJ, we would have access to the user interfaces only for records related to the 880 incidents. This likely will require further discussion between Mr. Matzen and your technical person, which we can arrange for Monday/Tuesday. **Please let us know by Monday.**

*Database fields*. We noted that you had agreed on our previous call to provide Plaintiff with the universe of fields in the MPD databases that exist for any one of the 880 incidents on Evidence.com. You stated on yesterday's call that you did not recall this, but you agreed to get back to us with this information. **Please let us know by Monday.**

*Unique incident IDs.* In these discussions you noted that the unique incident numbers that link records in Evidence.com to records related to the same incident in MPD's other databases might not be entered in all InformRMS entries, and that there would need to be a second-order connection (to another unique ID) for some entries. To address that issue, Mr. Matzen asked whether the databases, including InformRMS, have a unique ID number for incidents that may not be visible but can be used for performance issues etc. and could potentially be used to link the MPD data for each incident, including data in InformRMS. **You agreed to check and let us know.**

*Databases in question*. For purposes of this discussion, the databases we are referring to are the ones set out in the Copy of Table Identifying Storage spreadsheet—though we don't expect to connect with the PowerDMS for this discussion, since that database just tracks training. On the other hand we are assuming the Getac database (which contains in-car videos) has an audit trail system similar to the Axon / Evidence.com database. We will therefore need to discuss gathering information from and related to this database as well. We anticipate that will be considerably simpler once we have ironed out gathering information connected with the Evidence.com / Axon database.

**RTRs.** We will provide you with a list of the fields missing from the RTR spreadsheet that are relevant. You agreed to provide the field name dictionary for the RTR excel file.

**RFPs 139-141.** You stated that you had conducted a cross custodian (i.e., all-MPD) search for the terms listed. At our request you agreed to re-run the searches by eliminating the term "scorpion" but confining the custodians to MPD employees in the OCU. When this search is run we ask that you please provide the list of custodians it is run against. You agreed that if this search returns voluminous hit rates, you will provide a report of hit counts per each custodian so that we can work through any burden issues.

**Complaints against officers**.

You were uncertain whether complaints that do not get off the ground (e.g., are treated as unfounded at the outset) are recorded against officer IBM numbers.  You also stated that some complaints are in paper.

For all the officers identified, we asked you to run searches for their IBM numbers in the complaint database (not just their personnel files) and you agreed to so so.

We asked what information fields are present in the complaint database (besides officer IBM number), and whether the complaints/the fields are tagged in any way.  You did not know and are getting back to us.

You will also get back to us about whether and how paper complaints can be searched.

**RFP 134-136**.  You have provided search terms and stated that these would be run against custodians that had been proposed last year (before these RFPs were served) along with one additional custodian (Col. Willie Mathena) who the City has agreed to add for all ESI searching in this case.  We are editing the search terms and will get proposed edits to you promptly.

We emphasized that the searches for documents responsive to RFPs 134-136 should not be limited strictly to these search terms and to a list of email custodians that were not agreed on with these RFPs in mind.  These requests all concern documents reflecting identification of policymakers and actions taken by policymakers.  That calls for counsel to ask policymakers whether certain actions had been taken, who within MPD has taken any such actions, and where responsive documents related to these actions might be located.  Often, we noted, if a particular policy review was conducted, it might simply be reflected in a memorandum, irrespective of the emails responsive to a word search.  We also noted that word searches might be over- and under-inclusive. In addition, your search-term-based custodial searching is not adequate because it only searches the email accounts of custodians, and does not search shared drives, hard drives, network drives, and other non-custodial sources where responsive material may be.

We also noted that these requests were propounded to gather documents for Rule 30(b)(6) depositions, and that we were anticipating taking a Rule 30(b)(6) deposition on substantially similar topics. Responding to these RFPs thus called for an investigation similar to preparation for a Rule 30(b)(6) deposition—conferring with policymakers about the likely location of responsive documents, not just performing word searches.

On our call, **you agreed to consider our position about the need to conduct non-search-term-based searching, as described above, to locate documents responsive to RFPs 134-136, and to get back to us.** In addition, you agreed to let us know whether your conversations with policymakers concerning 134-136 yielded any additional custodians for email/search-term searching. You also agreed to let us know your position on the relevant time period for RFPs 134-136, which is 2018 to present, in our view.

Additionally, it appears you intend to confine your search to emails only.  However, the results of policy reviews may be contained in office files.  Or they simply may be gathered somewhere, i.e. in a policy analysis or similar office within the MPD. Such repositories should be located and

searched, using search terms or manually.  **Please advise whether you agree to search office files.**  (This issue was not raised directly on the call, though it is connected to "searches" conducted through conversations with policymakers and likely custodians discussed above.)

**Production Deadlines.**  This topic was not directly discussed on yesterday's call, but we will need to discuss with you next week:  we need to discuss deadlines for gathering and producing documents responsive to the foregoing discovery, along with other RFPs you have agreed to respond to, e.g., **RFP 125**, **RFP 129-131**, **RFP 137.**  Please propose dates for gathering and production.

Please get back to us by COB Monday at the latest.  We would welcome correspondence before then, especially as it relates to the consultation between Mr. Matzen and your IT personnel.

Best regards,

Steve



## Stephen H. Weil
### Senior Attorney

**e:** sweil@rblaw.net
**p:** (312) 253-8592
**f:** (312) 458-1004
**a:** 321 N Clark St, Ste 900, Chicago, IL 60654



**www.rblaw.net**



 **Go Green - Please don't print this e-mail unnecessarily.**

**Confidentiality Statement.**  The information contained in this electronic mail communication is intended only for the personal and confidential use of the designated recipient named above. This message may be an attorney-client communication and, as such, is privileged and confidential. If the reader of this message is not the intended recipient, you are hereby notified that you have received this communication in error and that any review, dissemination, distribution, or copying of the message is strictly prohibited.  If you have received this transmission in error, please notify us immediately by telephone at 312.458.1000 or by reply e-mail.

**From:** Silk, Jennie <jsilk@bakerdonelson.com>
**Sent:** Wednesday, April 2, 2025 3:25 PM
**To:** Sarah Raisch <sraisch@rblaw.net>; Reagan, Ian <ireagan@bakerdonelson.com>; Antonio Romanucci <aromanucci@rblaw.net>; brooke@bencrump.com; Joshua Levin <JLevin@rblaw.net>; dm@mendelsonfirm.com; fjohnson@johnsonandjohnsonattys.com; stephenrleffler@yahoo.com; martin@sparkman-zummach.com; keenandl@aol.com; jkp@perrygriffin.com; dgodwin@gmlblaw.com; bmckinney@gmlblaw.com; domemphislaw@darrelloneal.com; support@smitticklaw.com; Robert Spence <rspence@spencepartnerslaw.com>; jspence@spencepartnerslaw.com; Alexis Johnson <AJohnson@rblaw.net>; cgrice <cgrice@eflawgroup.com>; ge@perrygriffin.com; lgross@perrygriffin.com; mcollins@gmlblaw.com; Stephen Weil <SWeil@rblaw.net>; tnorman@gmlblaw.com; Dana Kondos <DKondos@rblaw.net>; Mistie@sparkman-zummach.com; Colton Johnson Taylor <cjohnson@rblaw.net>