IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| RowVaughn Wells, Individually and as Administratrix of the Estate of Tyre Deandre Nichols, Deceased, <br><br>    Plaintiff, <br><br> v. <br><br> The City of Memphis, Tennessee; Chief Cerelyn Davis; Emmitt Martin III; Demetrius Haley; Justin Smith; Desmond Mills, Jr.; Tadarrius Bean; Preston Hemphill; Robert Long; JaMichael Sandridge; Michelle Whitaker; DeWayne Smith, <br><br>    Defendants. | CASE NO. 2:23-CV-02224 <br> JURY DEMAND |

**THE CITY'S POSITION STATEMENT REGARDING PLAINTIFF'S FIRST AND SECOND MOTIONS TO COMPEL**

Defendant the City of Memphis (the "City"), pursuant to the Court's Order, ECF No. 345, respectfully advises the Court of its updated positions regarding the issues raised in Plaintiff's Motions to Compel. (ECF Nos. 279, 281, 324.) The City states as follows:

**I.     INTRODUCTION**

Plaintiff's Motions to Compel addressed disputes over the following Requests for Production of Documents propounded to the City: 29–32, 73, 87–90, 96, 110, and 133. Plaintiff also raised Request Nos. 122, 125, 129–131, 134–136, 137, and 139–141 and a few larger issues related to discovery responses and production. (ECF No. 324, PageID 4535–36; ECF No. 324-7.)

1

4916-8628-2292

In addition, the parties remain at issue regarding the meet and confer process and the development of an ESI protocol. Each of these items are addressed in turn below.

II.     **DISPUTES THAT REMAIN**

    A.     **The Parties Are at Impasse Regarding Request Nos. 122 and 133.**

*Request No. 122.* This Request seeks "[a]ll documents that the City may use solely for impeachment during any deposition, hearing, or trial in this case." (ECF No. 324-4, PageID 4592.) The City maintains its objection that such a request plainly seeks documents that are protected by the attorney work product doctrine, and as such, the Request is a bad faith attempt to discover the City's litigation strategy. A fulsome explanation of the City's position is located in the City's Response to Plaintiff's Second Motion to Compel, ECF No. 343, PageID 4695.

*Request No. 133.* This Request seeks "[a]ll documents the City has provided or produced to the DOJ since January 7, 2023 relating to or in connection with the DOJ Pattern or Practice Investigation." (ECF No. 324-4, PageID 4596.) The City maintains its objection to the production of the entirety of MPD's law enforcement databases. The City outlines its position as to this Request in its Response to Plaintiff's Second Motion to Compel, ECF No. 343, PageID 4691. A summary is set forth below.

*First*, Plaintiff—a private, civil litigant—is not entitled to the same level of unfettered access to this information as the DOJ—a federal government agency acting with the authority of a statutory mandate (34 U.S.C. § 12601). This is indisputable. Federal Rule of Civil Procedure 26(b)(1) entitles civil litigants to discovery of relevant information, subject to the proportionality factors listed in the Rule. Plaintiff's request seeking production of all of MPD's databases is plainly overbroad and would result in the production of a mountain of irrelevant information. To be clear, Plaintiff's *only* basis for seeking these databases *in full* is that the City provided them to the DOJ. While the DOJ report may have parallels to Plaintiff's claims, the report contains very

2

little information about what the DOJ actually reviewed or the basis upon which it made its conclusions. Obviously, the databases will likely contain some information relevant to Plaintiff's case. However, the demand for the databases in full is overly broad and would yield minimum relevant information.

*Second*, the City does not know what the DOJ reviewed in its analysis of MPD's databases because the databases were copied to a hard drive and transmitted to the DOJ. Further, the DOJ has refused to tell any municipality the basis for, or how it arrived to, its conclusions.[1] The DOJ has also refrained from filing any action against the City based on this report. Thus, there is no audit trail for the majority of the DOJ's activity. The one exception is MPD's online database of audio and video files from body worn and in-car cameras, stored on MPD's instance of Evidence.com by AXON. The DOJ was given access to the entirety of this database. Given the online nature of the database, MPD was able to recover audit trails of the DOJ investigators' activity. While the City still objects to providing Plaintiff with unfettered access to Evidence.com, the City has been able to use the audit trails to identify approximately 880 unique incidents that the DOJ accessed and/or reviewed. The City has no information about whether the DOJ relied upon any of these 880 incidents in its report, but it does significantly narrow the universe of potentially relevant materials. That said, each unique incident can have anywhere from a handful to hundreds of media files, so the universe is still quite broad.

*Third*, Plaintiff's proposed compromise to narrow the scope of the Request would only make production more burdensome. Plaintiff does not merely want the media files; she also wants the related documentation for each incident, such as incident reports, dispatch logs, and

---

[1] *See, e.g., U.S. v. Louisville Jefferson Cty. Metro Gov't*, No. 3:24-CV-722-BJB, 2025 WL 238010, at *3–5 (W.D. Ky. Jan. 18, 2025).

3

disciplinary actions. While the City can use a unique Evidence ID to locate the related documents, it is not as simple as Plaintiff suggests in the Blockbuster example. (ECF No. 324, PageID 4531.) Instead, to identify and produce all documents associated with all 880 incidents, the City would have to run 880 separate searches across several different databases, resulting in thousands of searches total. Then, the documents would need to be downloaded, transmitted, and reviewed by counsel for the City prior to production. Consequently, the burden of production is still significant.

In an effort to compromise, the City offered to produce links to the videos of 880 incidents to all parties. The City identified a means of isolating those videos and bates labeling them prior to production. This would also eliminate the need for the City to independently download and transmit the video files to its counsel for production. As it is highly likely that many, if not most, of these incidents will be irrelevant to Plaintiff's claims in this case, the City asked Plaintiff's counsel to review the incidents, and then make requests for related documents to incidents they deem relevant. Thus, instead of thousands of searches across MPD's databases, the scope of the search could be narrowed. Plaintiff rejected this approach.

Instead, Plaintiff insists that there must be a way to gather the information using back-end bulk queries to search all of MPD's databases at once. The City has consulted with the appropriate MPD personnel on this issue, and they have explained that such an approach would merely produce a massive, unwieldy spreadsheet with thousands, or even millions, of fields. Despite this explanation, Plaintiff's counsel insists that, *in addition to the video links*, generating a spreadsheet of data is a less burdensome means of identifying the relevant information. That is not true. Plaintiff's proposed solution misses a key point: Plaintiff ultimately wants the actual

4

documents associated with each incident, and Plaintiff can use the videos to narrow the relevant incidents. So, the data request would accomplish nothing.

In short, Plaintiff's "less burdensome" approach of narrowing the Request would have three steps: (1) access to the video links; (2) creation of a spreadsheet of data; and (3) additional requests for specific documentation. In contrast, the City's suggested approach only requires only two steps: (1) access to the video links; and (2) additional requests for specific documentation. The City's approach is not only less burdensome on both parties, but also, it does not require trial and error of amalgamating data to no end or more negotiation about what constitutes a satisfactory production in Plaintiff's view.

*Fourth*, the City notes that Plaintiff has propounded over 200 other Rule 34 requests for production of documents. Surely, those requests cover all documents with any relevance to Plaintiff's claims. Accordingly, Plaintiff's insistence on enforcing her request for databases is not only duplicative, but the definition of a fishing expedition.

Finally, the case of *Saunders v. City of Chicago* is instructive because it involves civil plaintiffs' access to a law enforcement database. *Saunders*, No. 12-CV-9158, 2017 WL 36407 (N.D. Ill. Jan. 4, 2017). In that case, the district court overruled the plaintiffs' objections to the magistrate judge's order denying the plaintiffs request for unfettered access to a small, outdated Chicago Police Department ("CPD") database. The magistrate ultimately ordered CPD to produce:

> [A] physical copy of the database that has been modified in that it includes only the data for . . . the 7 known cases related to [the actual perpetrator of the underlying crime]. But the City is also to create a copy of the full database (approximately 293 cases) and make it available at a designated location for examination as needed by 1 attorney for each Plaintiff as well as by the Plaintiffs' expert. The designated attorneys and expert shall not copy or download materials from the full database without either the City's

5

>   agreement or a court order. The parties are to confer and prepare a protective
>   order for the database containing these and other proposed conditions.

*Id.* at *7 (emphasis added).

Despite the plaintiffs' objections, the district court characterized the magistrate's order as "eminently reasonable." *Id.* at *8. The district court specifically noted that the magistrate's order struck a reasonable balance between relevance and proportionality. Moreover, the district court echoed the magistrate's public policy concerns associated with the plaintiffs' request. The City raises similar concerns here: Ordering the City to produce its full databases to Plaintiff in this case risks "setting a precedent that any time somebody has an argument that maybe there is a [*Monell*] claim that all of a sudden we're producing to parties, a law enforcement database, so they can run their searches." *Id.* (cleaned up).[2]

During meet-and-confer discussions, the City has raised privacy concerns with producing the entirety of its databases, given the sensitive nature of the information contained therein. Plaintiff has suggested these concerns could be assuaged via a protective order, but as the *Saunders* court explained, an "agreement to enter into a protective order would do nothing to alleviate this concern." *Id.* Finally, the court emphasized the need to assess the proportionality factors when considering plaintiffs' requests to law enforcement databases. *Id.*

The *Saunders* case is instructive because it involves civil plaintiffs' access to a law enforcement database. The opinion is well-reasoned, and the same reasoning is even more so applicable here. The universe of database records at issue in this case is significantly larger than

---

[2] The City recognizes that the volume of evidence required to sustain a *Monell* claim is greater than that of a *Brady* claim. However, the City's position remains the same, and allowing Plaintiff unfettered access to all of MPD's databases sets a fallacious, and arguably dangerous, precedent for future *Monell* claims across the nation. *Cf. Saunders*, 2017 WL 36407, at *9 ("[T]he same relevance arguments that Plaintiff makes here would apply to any law enforcement database that is or could be used to find potential links between officers' criminal investigation into a civil rights plaintiff and their other investigations and suspects.")

that in *Saunders*. Here, Plaintiff seeks the production of copies of database information for a minimum of 880 incidents.[3]

In light of the foregoing, the City objects to producing the databases in full to Plaintiff. The City asks the Court to order Plaintiff to review the videos from the 880 incidents and request documentation from the relevant incidents only.

> **B.    The Parties Are Still Discussing Resolution as to Request Nos. 29–32, 87–90, 96, 110, 129–131, 134–136, 137, 139–141, and Other Topics.**

***Request Nos. 29–32.*** The issue at hand related to Request Nos. 29–32 are the terms of an ESI collection protocol for the parties' witnesses' cell phone data. These discussions are ongoing. Plaintiff's counsel represents several third-party witnesses, and as such, they are subject to Plaintiff's control in discovery. The City and Plaintiff have agreed that all witnesses should be subject to the same ESI protocol. Discussions have stalled, however, because Plaintiff's counsel will not agree that **all** of Plaintiff's witnesses would be subject to the same protocol as the City's witnesses. It is unfair for Plaintiff to be able to pick and choose which of her witnesses are subject to a potentially invasive collection protocol only after the terms have been negotiated. Until Plaintiff concedes that **all** of her witnesses that be subject to the same protocol as the City's witnesses, regardless of its terms, negotiations about the terms of the protocol are on hold.

***Request Nos. 87–90 and 110.*** These Requests seek production of 600–700 unique ISB case files The City has proposed two solutions to Plaintiff for these requests, and Plaintiff has not advised the City on her position as to either solution. Production of these 600–700 ISB case files via copying, is extremely burdensome. The City offered to make the files available for inspection and copying at Plaintiff's expense. As an alternative, the City offered to produce only the contents of the files that are maintained digitally, and without any associated media files, for

---

[3] *See supra* note 2.

Plaintiff to review and make narrower requests based on that information. The City awaits Plaintiff's response on either option.

*Request No. 96.* The City produced a spreadsheet containing the underlying data from MPD Response to Resistance (RTR) forms for January 2018-January 2023. The spreadsheet had to be generated by MPD personnel, which they did with the guidance the database vendor. Plaintiff has identified some fields that appear to be inadvertently excluded from the spreadsheet. This is merely the result of the process created by the vendor. Plaintiff agreed to provide a list of the excluded fields. The City agreed to try to generate a new spreadsheet with those fields included and to provide a field name index to assist Plaintiff's counsel with their review.

The City also notes that in October 2024, it offered to start producing the RTR forms in a PDF format (as opposed to a spreadsheet) for a limited time period, January 2021 through January 2023, given that production in this format is burdensome. (ECF No. 281-5, PageID 3624 (explaining the burden of production).) Plaintiff never agreed to this compromise, so the City has not produced the information in that format.

*Request Nos. 129–131.* The City agreed to produce communications with the DOJ regarding logistical matters, such as arranging interviews with MPD personnel. These emails have been collected. They will be reviewed for responsiveness and produced in short order.

*Request Nos. 134–136.* The City has agreed to search for additional documents. The parties are in the process of negotiating search terms to run through MPD's network drive and emails using a narrow list of custodians. However, the parties remain at issue regarding the City's obligations to treat these Requests as a precursor to a Rule 30(b)(6) deposition and having conversations with its clients to that same effect. The City has spoken with its client regarding these Requests and based on those discussions, proposed search terms targeted at finding

8

documents that are responsive to the Requests. Plaintiff insists, however, that the City must also rely on the memories of MPD policymakers to identify some sort of "smoking gun" documents that Plaintiff can use at a 30(b)(6) deposition (that has yet to be scheduled).

*Request No. 137.* The City agreed to search the term "tax" in MPD's emails using a narrow list of custodians. The search produced almost 34,000 unique documents consisting of over 307,000 pages. Upon a cursory review, the vast majority of these documents are irrelevant. The parties are still discussing ways to narrow this Request.

*Request Nos. 139–141.* The City agreed to run an additional search in MPD's emails using a narrow list of custodians using the following search terms: "operational plan"; "op plan"; and "measurable performance objectives." This search is ongoing, and the parties will resume discussions once the search is complete.

*Personnel files (Request Nos. 144–194).* The City has agreed to run searches using certain officers' unique ID numbers ("IBM numbers") to identify any complaints, discipline, or supervisory review records that were not included in the officers' personnel files. This search is ongoing.

### III. DISPUTES THAT ARE RESOLVED

The parties' disputes regarding Request Nos. 73 and 125 are fully resolved.

### IV. DISCOVERY MEET-AND-CONFERS

The City again wishes to raise with the Court the issue of live discovery meet-and-confers. After the March 19 hearing, and upon the Court's instructions, the City agreed to several live meet-and-confers with Plaintiff. The parties met via videoconference two times about Plaintiff's discovery and one time about the City's discovery.[4] The two meetings about Plaintiff's

---

[4] The subject of this meet-and-confer will be addressed in the City's forthcoming motion to compel.

9

4916-8628-2292

discovery totaled approximately three hours. Plaintiff informed the City on April 8 that the parties remain at issue only on Request Nos. 122 and 133. This is misleading. As set forth above, there are a number of outstanding disputes that, while court resolution is unnecessary at this time, have yet to be fully resolved despite hours of live meetings over the past several months.

Ultimately, any agreements regarding these discovery disputes largely did not occur on the conferences. Instead, the agreements were made later, after additional internal discussions, via email. Again, these meetings consisted of the parties cycling through the same arguments, plaintiff's counsel refusing to so much as consider the City's proposed compromises or engage in reciprocal behavior with respect to production of documents and witnesses. Consequently, very little progress is made during these meet-and-confers. Accordingly, the past three weeks have made clear that progress is most likely to be made over email.

## V.   CONCLUSION

For these reasons, the City respectfully requests that the Court deny Plaintiff's Motions to Compel.

Dated: April 9, 2025.

                                                                        Respectfully submitted,

                                                                        **BAKER, DONELSON, BEARMAN,**
                                                                        **CALDWELL & BERKOWITZ, P.C.**

                                                                        *s/ Bruce McMullen*
                                                                        Bruce McMullen (#18126)
                                                                        Freeman B. Foster (#23265)
                                                                        Jennie Vee Silk (#35319)
                                                                        165 Madison Avenue, Suite 2000
                                                                        Memphis, Tennessee 38103
                                                                        Telephone: (901) 526-2000
                                                                        bmcmullen@bakerdonelson.com
                                                                        jsilk@bakerdonelson.com
                                                                        ffoster@bakerdonelson.com

4916-8628-2292

*Attorneys for Defendant City of Memphis, Chief Cerelyn Davis in her Individual Capacity, and Dewayne Smith as Agent of the City of Memphis*

4916-8628-2292