1

1    IN THE UNITED STATES DISTRICT COURT
     FOR THE WESTERN DISTRICT OF TENNESSEE
2                 WESTERN DIVISION

3    _____|

4    ROWVAUGHN WELLS,              |
     INDIVIDUALLY AND AS           |
5    ADMINISTRATRIX AD LITEM OF    |
     THE ESTATE OF TYRE DEANDRE    |
6    NICHOLS, DECEASED,            |    NO. 23-CV-2224
                                   |
7         Plaintiff,               |
                                   |
8    vs.                           |
                                   |
9    CITY OF MEMPHIS, ET AL.       |
                                   |
10        Defendants.              |

11   _____|

12

13

14        TRANSCRIPT OF THE MOTION HEARING

15              BEFORE THE

16        HONORABLE ANNIE CHRISTOFF

17

18                 FRIDAY

19            APRIL 11, 2025

20

21

22

23
          TINA DuBOSE GIBSON, RPR, RCR
24             OFFICIAL REPORTER
          FOURTH FLOOR FEDERAL BUILDING
25          MEMPHIS, TENNESSEE 38103


UNREDACTED TRANSCRIPT

2

1                    A P P E A R A N C E S

2

        Appearing on behalf of the Plaintiff:
3
                Stephen H. Weil
4               Sarah M. Raisch
                Joshua Levin
5               ROMANUCCI & BLANDIN, LLC
                321 N. Clark St.
6               Suite 900
                Chicago, Illinois 60654
7               312-458-1000
                sweil@rblaw.net
8               sraisch@rblaw.net
                jlevin@rblaw.net
9
                Brooke Cluse
10              BEN CRUMP LAW, PLLC
                2620 W. Sam Houston Pkwy Ste 200
11              Houston, TX 77042
                337-501-8356
12              brooke@bencrump.com

13
        Appearing on behalf of the Defendant City of Memphis:
14
                Bruce McMullen
15              Jennie V. Silk
                BAKER, DONELSON, BEARMAN,
16              CALDWELL & BERKOWITZ, P.C.
                165 Madison Ave.
17              Suite 2000
                Memphis, Tennessee 38103
18              901-577-2356
                bmcmullen@bakerdonelson.com
19              jsilk@bakerdonelson.com

20
        Appearing on behalf of the Defendant Emmitt Martin, III:
21
                Florence M. Johnson
22              JOHNSON AND JOHNSON, PLLC
                1407 Union Avenue
23              Suite 1002
                Memphis, Tennessee 38104
24              901-725-7520
                fjohnson@johnsonandjohnsonattys.com

25

1              A P P E A R A N C E S

2

3    Appearing on behalf of the Defendants Preston Hemphill
     and DeWayne Smith:

4              Mary Elizabeth McKinney
               GODWIN, MORRIS, LAURENZI & BLOOMFIELD, PC
5              80 Monroe Avenue
               Suite 315
6              Memphis, Tennessee 38103
               901-528-1702
7              bmckinney@gmlblaw.com

8

     Appearing on behalf of the Defendant Robert Long:
9
               Darrell J. O'Neal
10             LAW OFFICE OF DARRELL J. O'NEAL
               2129 Winchester Road
11             Memphis, Tennessee 38116
               901-345-8009
12             domemphislaw@darrelloneal.com

13

     Appearing on behalf of the Defendant Justin Smith:
14
               Martin W. Zummach
15             SPARKMAN ZUMMACH, P.C.
               P.O. Box 266
16             Southaven, Mississippi 38671-0266
               662-349-6900
17             martin@sparkman-zummach.com

18

     Also Present:  Charles Platt
19

20

21

22

23

24

25

1                              FRIDAY

2                          APRIL 11, 2025

3                      ---------------------

4                                                            02:02:43

5           THE COURT:  Good afternoon, everyone.  We are    02:02:43

6    here in Case 23-2224, *RowVaughn Wells v. City of Memphis* and   02:02:46

7    others.  And we are here on a motion to compel hearing.  Who    02:02:53

8    do we have arguing for the plaintiff today?                02:02:55

9           MR. WEIL:  Good afternoon, Judge.  Steve Weil    02:03:02

10   here for the plaintiff.  I may be joined, depending on the    02:03:04

11   topic, by Josh Levin.                                      02:03:07

12          THE COURT:  All right.  Good afternoon, Mr. Weil    02:03:08

13   and Mr. Levin.                                             02:03:11

14          And for the City?                                  02:03:12

15          MR. MCMULLEN:   Bruce McMullen and Jennie Silk.    02:03:15

16          THE COURT:  Good afternoon, Mr. McMullen and      02:03:22

17   Ms. Silk.                                                  02:03:24

18          MS. SILK:  Good afternoon.                         02:03:24

19          THE COURT:  All right.  I'm assuming that those    02:03:25

20   are going to be the lawyers that are going to be           02:03:28

21   participating the most today.  Of course, if anybody else    02:03:29

22   feels the need to weigh in on anything, feel free to jump in.   02:03:31

23          Also a reminder that, you know, recordings or      02:03:35

24   photographs of any sort are allowed in these proceedings.  I    02:03:38

25   know you-all are all familiar with those instructions.     02:03:41

| | |
|---|---|
| 1 | All right.  So thank you very much for the very | 02:03:44 |
| 2 | helpful position papers.  Succinct and helpful.  Really | 02:03:49 |
| 3 | appreciate it. | 02:03:59 |
| 4 | So let's start with Request for Production 133. | 02:03:59 |
| 5 | We -- there's a little bit of table setting I want to get | 02:04:02 |
| 6 | done first just to clarify where we are. | 02:04:06 |
| 7 | So, Mr. Weil, it is my understanding that what | 02:04:09 |
| 8 | the plaintiff is looking for in this request are the 880 | 02:04:16 |
| 9 | body-worn camera videos and the related documents from other | 02:04:21 |
| 10 | databases that relate to those 880 incidents.  Is that right? | 02:04:26 |
| 11 | **MR. WEIL:**  That's correct, Judge.  I should note | 02:04:33 |
| 12 | just before we get going, Mr. Charles Platt is mentioned in | 02:04:35 |
| 13 | our briefing.  He's on the Zoom, as well.  He's available for | 02:04:36 |
| 14 | you should you have any questions for him. | 02:04:38 |
| 15 | **THE COURT:**  Thank you.  And I do appreciate you | 02:04:43 |
| 16 | having Mr. Platt be with us today. | 02:04:45 |
| 17 | Mr. Platt, thank you for being here.  I suspect | 02:04:47 |
| 18 | that we will get to a point where we will need to talk to | 02:04:50 |
| 19 | him, so thank you. | 02:04:52 |
| 20 | Okay.  So given that that is the universe that we | 02:04:53 |
| 21 | are talking about in 133, I don't see that there's any sort | 02:04:56 |
| 22 | of request for unfettered discretion to the databases or | 02:05:00 |
| 23 | anything like that, so that is the universe that we are going | 02:05:06 |
| 24 | to be focusing on today. | 02:05:09 |
| 25 | So, Mr. McMullen, then, it's my understanding, | 02:05:11 |

6

| | |
|---|---|
| 1 | based on your position paper, that the City has agreed to | 02:05:16 |
| 2 | produce the 880 videos themselves.  Is that right? | 02:05:17 |
| 3 | MR. MCMULLEN:  That's correct, Your Honor. | 02:05:22 |
| 4 | THE COURT:  And then as to the 73 -- | 02:05:23 |
| 5 | MR. MCMULLEN:  And, Your Honor, it's not -- it's | 02:05:27 |
| 6 | probably way more videos than that because there are | 02:05:31 |
| 7 | different body cameras.  880 incidents. | 02:05:33 |
| 8 | THE COURT:  Incidents.  Thank you.  That's a good | 02:05:38 |
| 9 | clarification.  Thank you. | 02:05:40 |
| 10 | And so as to the 73 incidents identified in the | 02:05:41 |
| 11 | DOJ report, has the City agreed to make those videos and all | 02:05:44 |
| 12 | of the related documents available? | 02:05:50 |
| 13 | MS. SILK:  Your Honor, I'm going to just kind of | 02:05:55 |
| 14 | jump in here because I know a little bit more of the | 02:05:57 |
| 15 | technical aspect of things -- | 02:06:00 |
| 16 | THE COURT:  Please. | 02:05:55 |
| 17 | MS. SILK:  -- than to Mr. McMullen. | 02:05:55 |
| 18 | Can you hear me okay? | 02:06:03 |
| 19 | THE COURT:  Yes. | 02:06:04 |
| 20 | MS. SILK:  Okay.  So the 880 incidents are what | 02:06:06 |
| 21 | we have been able to identify as the entire universe of what | 02:06:10 |
| 22 | the DOJ reviewed on evidence.com. | 02:06:14 |
| 23 | THE COURT:  Right. | 02:06:14 |
| 24 | MS. SILK:  We assumed that the 73 incidents that | 02:06:18 |
| 25 | made their way into the report are a part of those 880 | 02:06:20 |

| | |
|---|---|
| 1 | incident universe, but we don't know because the DOJ won't | 02:06:25 |
| 2 | tell us what they actually put in the report. | 02:06:29 |
| 3 | **THE COURT:** Okay. That's fair. I do think | 02:06:34 |
| 4 | that's a safe assumption, but we can -- that is a good caveat | 02:06:36 |
| 5 | that we can keep in mind as we go forward. | 02:06:41 |
| 6 | So, then, in terms of the 73 that are identified | 02:06:43 |
| 7 | in the report, is the City willing to make the documents | 02:06:46 |
| 8 | related to the videos for those incidents available to the | 02:06:50 |
| 9 | plaintiff? | 02:06:54 |
| 10 | **MS. SILK:** Your Honor, we would if we could | 02:06:55 |
| 11 | identify them, but we -- there's no identifying information | 02:06:57 |
| 12 | in the report that will allow us to definitively say, | 02:07:01 |
| 13 | incident on page 13 of the report is this incident; and, | 02:07:06 |
| 14 | therefore, here are the videos and here are the documents. | 02:07:12 |
| 15 | **THE COURT:** Okay. | 02:07:15 |
| 16 | **MS. SILK:** There are a few incidents, Your Honor, | 02:07:16 |
| 17 | that we have been able to identify, you know, both as counsel | 02:07:18 |
| 18 | for the City and through our client's own internal | 02:07:21 |
| 19 | investigation trying to identify them, but the vast majority | 02:07:26 |
| 20 | of them we have not been able to identify. | 02:07:29 |
| 21 | **THE COURT:** Okay. Good. So, then, the reason | 02:07:31 |
| 22 | that those -- as to the 73, the reason that they have not yet | 02:07:35 |
| 23 | been produced, to the extent they have not yet been produced, | 02:07:39 |
| 24 | is not a relevance basis. It's just you don't know which | 02:07:42 |
| 25 | documents are associated with those incidents. | 02:07:45 |

| | |
|---|---|
| 1 | **MS. SILK:**  That's exactly right, Your Honor. | 02:07:47 |
| 2 | **THE COURT:**  Okay.  Good. | 02:07:50 |
| 3 | All right.  So then, Mr. Weil, I'll come back to | 02:07:50 |
| 4 | you.  Given the lack of identification of the 73 within the | 02:07:54 |
| 5 | 880, are you comfortable with, you know, with Ms. Silk's | 02:08:00 |
| 6 | point that she just made that there may not be full overlap | 02:08:07 |
| 7 | between the 73 and 880.  Are you comfortable with focusing | 02:08:12 |
| 8 | only on the 880? | 02:08:16 |
| 9 | **MR. WEIL:**  Judge, we are.  And I can -- to | 02:08:17 |
| 10 | elaborate a little bit, one of the basic reasons we're asking | 02:08:18 |
| 11 | for the 880 is because of the point that Ms. Silk just made | 02:08:22 |
| 12 | that we don't know exactly which ones are mentioned in the | 02:08:27 |
| 13 | DOJ report.  As Ms. Silk just said, there's every reason to | 02:08:31 |
| 14 | believe that the 880 videos show the incidents that are | 02:08:34 |
| 15 | reflected in the DOJ report. | 02:08:38 |
| 16 | We would have every reason to think that the DOJ, | 02:08:40 |
| 17 | in going through the trouble describing one of those | 02:08:43 |
| 18 | incidents, flyspecked the records they have from the City to | 02:08:46 |
| 19 | take a look at them, and based whatever their description was | 02:08:48 |
| 20 | on that, understanding may have been additional sources, but | 02:08:51 |
| 21 | I have reason to think they went into those 880 incidents and | 02:08:55 |
| 22 | pulled the relevant documents and took a look to make their | 02:08:58 |
| 23 | description. | 02:09:02 |
| 24 | So we have attempted to focus in this way.  It's | 02:09:02 |
| 25 | possible, obviously, that something is missing, but this is | 02:09:05 |

| | |
|---|---|
| 1 | sort of the rough justice that we've tried to achieve in | 02:09:08 |
| 2 | gathering documents in this case. | 02:09:12 |
| 3 | THE COURT:  Okay. | 02:09:14 |
| 4 | MR. WEIL:  We have no reason to think that the | 02:09:15 |
| 5 | DOJ went beyond those 880 incidents and looked at other | 02:09:17 |
| 6 | things, but we -- sitting here today, the one thing we have | 02:09:20 |
| 7 | are the video audit trails that show us what they did look | 02:09:23 |
| 8 | at. | 02:09:26 |
| 9 | THE COURT:  Got you.  Okay.  Good.  That's very | 02:09:27 |
| 10 | helpful. | 02:09:29 |
| 11 | And so, then, Mr. Weil, in the City's position | 02:09:30 |
| 12 | paper, they indicate that they are willing to make the 880 | 02:09:33 |
| 13 | videos available for review, and then maybe if a subset of | 02:09:37 |
| 14 | those are identified as relevant by the plaintiff, that there | 02:09:43 |
| 15 | could be discussions about gathering additional related | 02:09:46 |
| 16 | documents to those incidents. | 02:09:49 |
| 17 | I very much take the point made in your position | 02:09:52 |
| 18 | paper that one of the key aspects of the relevance of this | 02:09:57 |
| 19 | information is the alleged mismatch between what you see in | 02:10:03 |
| 20 | the video and what you read in the related documents.  And so | 02:10:07 |
| 21 | simply just watching a video will not tell you if that | 02:10:11 |
| 22 | mismatch exists because you don't have the documents to | 02:10:16 |
| 23 | compare it to. | 02:10:19 |
| 24 | So my question is -- well, first of all, both | 02:10:21 |
| 25 | parties seem to indicate that you don't really know what | 02:10:27 |

1    process the DOJ investigators used in deciding to view or          02:10:30

2    pull up these 880 incidents.  Is that right, Mr. Weil?            02:10:39

3            MR. WEIL:  Judge, it is to a point.  I think that         02:10:45

4    we -- you know, we can make some educated guesses, though.        02:10:47

5    There are thousands of Memphis police officers recording          02:10:53

6    video almost daily.  In another database pulled, which we can     02:10:55

7    discuss, the Memphis -- the City has produced to us over          02:10:59

8    100,000 RTR reports.  Presumably, many of those are connected     02:11:03

9    with video, so we're talking a universe with thousands and        02:11:06

10   thousands of videos.                                              02:11:13

11           I think that we can assume that the DOJ will              02:11:13

12   fault the benefit of the one hand of the videos and then all      02:11:14

13   these other documentations that they have, all these other        02:11:16

14   documents concerning incidents, that they weren't random,         02:11:18

15   that they were circumspect and careful about what they were       02:11:21

16   picking because they had limited time too.                        02:11:26

17           So you're right, we do not exactly know.  I don't         02:11:27

18   think it's unreasonable to surmise that there was some            02:11:31

19   deliberateness in the videos they chose to look at.               02:11:37

20           THE COURT:  I agree.  I think that's a fair               02:11:39

21   assessment.                                                       02:11:41

22           Ms. Silk or Mr. McMullen, do you agree with that,        02:11:44

23   that we don't know the exact parameters of what the              02:11:44

24   investigators were looking at?  We can assume that it came        02:11:47

25   from some basis in other existing documents that they            02:11:48

1   reviewed, but we don't know for sure.                    02:11:52

2           MR. MCMULLEN:   To be honest with you, Your Honor,   02:12:04

3   we're not sure whether they have corroborating -- we're not   02:12:05

4   sure how they got the names they got in the report.  We know   02:12:09

5   some of the cases I've handled, so I know the facts of the   02:12:16

6   case.  One is even in Judge Norris's court.              02:12:17

7           And so -- but it appears to us there was some     02:12:20

8   anecdotal information that they just took from the person on   02:12:24

9   the street and they included in the report that there's no --   02:12:27

10  we've looked.  We can't figure out what they're talking     02:12:33

11  about.  And so I want to be careful about assuming that what   02:12:36

12  the report produced was something that was well documented   02:12:46

13  and well looked at on both sides as far as looking at the   02:12:52

14  video.                                                   02:12:55

15          I'd like to point the Court's attention to in     02:12:56

16  Louisville, when confronted with -- Louisville agreed to the   02:13:02

17  consent decree and the federal judge is pushing back on that   02:13:06

18  because the DOJ won't say necessarily what they used to write   02:13:10

19  the report or what -- how many incidents represent a pattern.   02:13:16

20  And I looked at the docket today, and they filed an          02:13:20

21  extension.  They were given time to come forth with that     02:13:26

22  information, they filed an extension, and they still haven't   02:13:29

23  produced the information asked by the Court.             02:13:32

24          I say all this to say this:  I'm not really sure   02:13:34

25  that the incidents in the DOJ in the report, some of it I   02:13:39

UNREDACTED TRANSCRIPT

1   know is how people felt or felt they were treated, but I   02:13:46

2   don't know if sometimes -- if any record was made, any   02:13:51

3   complaint was made of that or whatever.   02:13:54

4         So we don't know what the 73 things -- we know   02:13:56

5   within two weeks of them filing the report, they told us that   02:14:02

6   they were also going to do an ADA finding, and so that -- and   02:14:06

7   I don't know when they started that.  But that, I assume, is   02:14:12

8   a part of the 73.   02:14:15

9         So to be honest with you, we don't -- we don't   02:14:17

10   know, and they have not told us.  We've asked over and over,   02:14:21

11   and they have not told us what they included in the report.   02:14:26

12         THE COURT:  Okay.   02:14:32

13         MR. MCMULLEN:  So I want to be careful about -- I   02:14:34

14   want to be careful about making assumptions about the DOJ's   02:14:36

15   process because it's been challenged other places, and I   02:14:43

16   understand what Mr. Weil is saying.  He's assuming that they   02:14:46

17   did certain things, but some things that I'm personally   02:14:49

18   involved with, some cases, I know that they didn't.  So I   02:14:52

19   just want to be careful about making that assumption.   02:14:56

20         THE COURT:  Okay.  I hear that.   02:14:59

21         MR. WEIL:  Judge, if I could get back to what   02:15:02

22   Mr. McMullen said because I think it's important.  One of the   02:15:07

23   points we make in this is that there may be witnesses we want   02:15:08

24   to talk to, and they may indeed, as Mr. McMullen just said,   02:15:11

25   have testimony or, you know, something to say about these   02:15:15

1    events that will not be recorded and probably wasn't recorded    02:15:18
2    in some of the RTRs if they were not above board.  And so,    02:15:21
3    you know, the way we will identify witnesses like that is    02:15:25
4    through the other documents that are connected to those    02:15:28
5    videos.    02:15:32
6         **THE COURT:**  Okay.  So, then, Mr. Weil, my    02:15:33
7    question is:  Given that, I think what we've heard from both    02:15:36
8    sides is that, you know, there is sort of a baseline    02:15:42
9    assumption that the investigators would have gone about some    02:15:45
10   rational process in pulling these 880 incidents to review,    02:15:49
11   but we don't actually know that for sure.  In some instances    02:15:54
12   it may have been an irrational process, unlikely but    02:15:59
13   certainly possible; and because we don't know, we don't know.    02:16:04
14        So given that, the idea that the City has    02:16:06
15   proposed of allowing you to first review the 880 videos -- it    02:16:10
16   seems to me that it is entirely possible that there are    02:16:16
17   incidents depicted in those videos that are wholly innocuous    02:16:19
18   encounters that would not be something that you would be    02:16:26
19   interested in pulling further information about.  Do you not    02:16:28
20   think that that's possible?    02:16:32
21        **MR. WEIL:**  Judge, I do think it's possible.    02:16:33
22   However, in a situation like this, one of the problems we're    02:16:35
23   dealing with is the matter of time.  We tried to begin    02:16:38
24   talking with the DOJ -- I'm sorry, the City of Memphis, about    02:16:40
25   this at the end of January.  We're here, you know, in the    02:16:44

| | |
|---|---|
| 1 | middle of April.  And if we were to go and look for all those | 02:16:48 |
| 2 | videos, then come back and do the things that you're talking | 02:16:51 |
| 3 | about, we're talking about a lot more time. | 02:16:54 |
| 4 | While I'm confident that there are probably going | 02:16:57 |
| 5 | to be a few incidents that do seem innocuous, on the other | 02:17:00 |
| 6 | hand, there are almost certainly going to be many that | 02:17:04 |
| 7 | aren't.  We know at least of 73, and as we point out in the | 02:17:08 |
| 8 | report, there's probably more.  For each of those, once | 02:17:11 |
| 9 | they're identified, we are going to have to go back to see; | 02:17:15 |
| 10 | and this process is going to happen, a very lengthy process, | 02:17:17 |
| 11 | frankly, of going back and printing reports. | 02:17:19 |
| 12 | Judge, you asked a specific question, so I don't | 02:17:23 |
| 13 | want to sort of be talking over the next point you're going | 02:17:25 |
| 14 | to make, but the process we're advocating is one that gets us | 02:17:29 |
| 15 | all the information now rather than later, and we can explain | 02:17:32 |
| 16 | why it's going to work.  It's not as the City thinks it is. | 02:17:34 |
| 17 | **THE COURT:**  Okay.  Yeah, let's put a pin in that | 02:17:38 |
| 18 | for a second because in terms of -- I understand that it is a | 02:17:42 |
| 19 | lengthy process, but in one -- you're going to be reviewing | 02:17:45 |
| 20 | these videos anyway.  So in one situation, you would be | 02:17:52 |
| 21 | reviewing videos from 880 incidents and then deciding the | 02:17:54 |
| 22 | subset of those that you want more related documents for. | 02:18:00 |
| 23 | And the other set of -- the other situation you would be | 02:18:04 |
| 24 | receiving and presumably reviewing 880 incidents and all of | 02:18:08 |
| 25 | the related documents. | 02:18:13 |

1       So the -- the smaller universe of documents is                  02:18:15

2   the first category that I described where you would review          02:18:21

3   them first, identify the subset and then request the related        02:18:23

4   documents for those -- that are relevant to the case.               02:18:30

5       **MR. WEIL:** Judge, I think that is one way to look            02:18:35

6   at it.  The other is we could do a quick check.  If we have         02:18:37

7   everything in front of us, we can do a quick check to see,          02:18:39

8   you know, is there a problem with this given what's in the          02:18:42

9   report or not?  Do we have to go through and ask the City of        02:18:45

10  Memphis for something that turns out to be entirely innocuous       02:18:48

11  given the description of, you know, this wasn't a tail light.       02:18:52

12  It was a bank robber that these cops ran up on this person          02:18:54

13  really aggressively for.  That kind of thing.                       02:18:58

14      You know, if we have those things together, we                  02:19:00

15  actually skip a step.  Again, we can get into the burden of         02:19:01

16  doing the back inquiries that we're talking about, but if we        02:19:05

17  have all of the documents in hand, it's often going to be           02:19:08

18  less steps for us.  In almost every case, it's going to be          02:19:11

19  less steps for us if we have everything in one hand versus          02:19:13

20  not.                                                                02:19:13

21      **THE COURT:** Okay.  So --                                     02:19:13

22      **MR. WEIL:** Again, so you're looking at the video,           02:18:35

23  you're looking at what the police officer is saying in his          02:19:17

24  report, what their supervisor reviewed, and you can often           02:19:19

25  satisfy yourself that there's no need to ask for anything           02:19:23

| | |
|---|---|
| 1 | else. |
| 2 | **THE COURT**:  Okay.  So let me make sure I |
| 3 | understand because that's an interesting point.  So what |
| 4 | you're saying is that if you have both the videos and the |
| 5 | related documents that it might actually be quicker to look |
| 6 | at an incident report that describes a bank robbery, and then |
| 7 | you're not possibly even going to look at the video for that |
| 8 | incident because it's a heightened incident and you would |
| 9 | expect a certain amount of -- well, however you want to |
| 10 | describe it, but, you know, vigorous interaction by the |
| 11 | officers. |
| 12 | **MR. WEIL**:  Essentially, Judge, I think I would |
| 13 | flip it around a little bit and just say, we watch a video, |
| 14 | it shows police running up on a car extremely aggressively. |
| 15 | The video starts playing as the officer's running up.  Well, |
| 16 | what's going on here? |
| 17 | You know, and, again, if that's a bank robbery |
| 18 | they're responding to, completely not troubling.  We have |
| 19 | nothing, no criticism of the way the police act in that |
| 20 | instance.  In another case, similar to Mr. Nichols where |
| 21 | it's, like, what exactly was going on here?  What -- |
| 22 | **THE COURT**:  Right.  No, Mr. Weil, I certainly |
| 23 | understand why if you've seen the video, you would then want |
| 24 | to see the documents if the video shows something.  What I'm |
| 25 | trying to get at is can you just look at the -- are you going |

02:19:25
02:19:25
02:19:27
02:19:29
02:19:33
02:19:37
02:19:40
02:19:42
02:19:47
02:19:52
02:19:56
02:19:57
02:19:58
02:20:01
02:20:05
02:20:05
02:20:06
02:20:09
02:20:12
02:20:17
02:20:19
02:20:22
02:20:24
02:20:26
02:20:29

1    to look at all of the videos anyway, and if so, can you just    02:20:31

2    do that and then eliminate the ones that I said -- you know,    02:20:34

3    like I said, involve an innocuous interaction?    02:20:38

4              MR. LEVIN:  If I could just jump in, Your Honor.    02:20:43

5    I think the key point is that viewing just the videos in    02:20:45

6    isolation without the supervisor reports --    02:20:49

7              THE COURT:  No.  I'm not talking about just in    02:20:52

8    isolation.    02:20:53

9              MR. LEVIN:  So --    02:20:43

10             THE COURT:  I'm talking about a two-step -- let    02:20:43

11   me finish.  I'm talking about a two-step process where you    02:20:56

12   would view the video.  If there's anything concerning at all    02:20:59

13   in the video -- and I'm not even saying that this would be    02:21:02

14   subject to further discussion or arguments between the    02:21:05

15   parties.  I'm saying if you view a video, you don't see    02:21:08

16   anything interesting in that video at all, you don't want to    02:21:11

17   look at the relevant documents, doesn't it make sense to do    02:21:13

18   that first cut on the front end?    02:21:16

19             MR. LEVIN:  But it's impossible to know what's    02:21:20

20   interesting or not just based on the video.  For example, if    02:21:22

21   there is a video that -- I think when you used the term    02:21:25

22   innocuous, Your Honor, you might be thinking about an    02:21:28

23   instance where the use of force is pretty minor, maybe, you    02:21:31

24   know, dragging someone a little bit on the ground as opposed    02:21:35

25   to using deadly force.    02:21:38

| | | |
|---|---|---|
| 1 | **THE COURT:** So I actually am not thinking of | 02:21:40 |
| 2 | that. I'm thinking of an officer walks up to the window of a | 02:21:42 |
| 3 | car, hands somebody a ticket, and walks away. | 02:21:45 |
| 4 | **MR. WEIL:** Right. Judge, you're completely | 02:21:48 |
| 5 | right. We're not going to be looking further into a | 02:21:50 |
| 6 | situation like that. I think the point here is that we're | 02:21:52 |
| 7 | talking about one step together, all the other documents, as | 02:21:56 |
| 8 | opposed to many, and that's sort of the issue that we're | 02:21:59 |
| 9 | facing. | 02:22:03 |
| 10 | **THE COURT:** Okay. So, then, let me ask -- | 02:22:04 |
| 11 | Mr. Platt, you're with us? | 02:22:11 |
| 12 | **MR. PLATT:** Yes, Your Honor, I'm here. | 02:22:13 |
| 13 | **THE COURT:** Thank you again for being here today. | 02:22:14 |
| 14 | I have a few questions. So -- | 02:22:16 |
| 15 | **MR. MCMULLEN:** Your Honor, I don't mean to | 02:22:20 |
| 16 | interrupt, but we just found out about Mr. Platt yesterday. | 02:22:22 |
| 17 | We don't -- two days ago, they had another guy that they | 02:22:25 |
| 18 | brought in as an expert. I think his name is -- | 02:22:29 |
| 19 | **THE COURT:** I understand, Mr. McMullen. Tell me | 02:22:34 |
| 20 | your objection. | 02:22:41 |
| 21 | **MR. MCMULLEN:** Okay. I don't know his | 02:22:41 |
| 22 | qualifications. I don't know him. The guy that they brought | 02:22:43 |
| 23 | in two days ago had no real qualifications and they | 02:22:46 |
| 24 | jettisoned him -- | 02:22:52 |
| 25 | **THE COURT:** We've moved on from him. | 02:22:41 |

| | |
|---|---|
| 1 | **MR. MCMULLEN:**  Right.  Mr. Platt, This is the | 02:22:41 |
| 2 | first we saw -- we saw in the filings, but we don't -- we | 02:22:52 |
| 3 | hadn't had an opportunity to even review his credentials or | 02:22:55 |
| 4 | whatever.  And they asked that he be appointed as a | 02:23:01 |
| 5 | neutral -- | 02:23:06 |
| 6 | **THE COURT:**  Okay.  We're not there yet, | 02:23:06 |
| 7 | Mr. McMullen.  Let me just say this:  I'm not an expert in | 02:23:09 |
| 8 | SQL databases.  Are you? | 02:23:13 |
| 9 | **MR. MCMULLEN:**  No. | 02:23:16 |
| 10 | **THE COURT:**  Do you have anyone with you today | 02:23:17 |
| 11 | that is? | 02:23:17 |
| 12 | **MR. MCMULLEN:**  Not today.  We were not -- | 02:23:19 |
| 13 | **THE COURT:**  Okay.  I'm going to ask Mr. Platt | 02:23:20 |
| 14 | some questions just so I can get an understanding of how the | 02:23:22 |
| 15 | process might work.  Okay.  We're not committing to anything | 02:23:25 |
| 16 | yet.  I need to get some background information. | 02:23:28 |
| 17 | Ms. Silk? | 02:23:30 |
| 18 | **MS. SILK:**  Thank you for acknowledging my hand | 02:23:31 |
| 19 | raised, Your Honor. | 02:23:33 |
| 20 | I just wanted to respond briefly to the exchange | 02:23:34 |
| 21 | you had with plaintiff's counsel.  So the -- what they want | 02:23:37 |
| 22 | are the videos and all the relevant documents.  But what | 02:23:44 |
| 23 | they're going to have Mr. Platt, I believe, opine upon is a | 02:23:48 |
| 24 | process that will generate an enormous spreadsheet of data. | 02:23:52 |
| 25 | **THE COURT:**  Okay.  I'm going to ask him, and then | 02:23:57 |

1    let's talk about it.                                                      02:24:00

2                 **MS. SILK:**  Okay.                                          02:24:05

3                 **THE COURT:**  Okay.                                         02:24:06

4          Okay.  So, Mr. Platt, first of all, my first                        02:24:06

5    question is -- can you explain to me -- let me explain to you             02:24:09

6    my understanding, and you tell me how I'm wrong because I'm               02:24:12

7    sure I'm wrong to some degree if not a hundred percent                    02:24:14

8    degree.                                                                   02:24:18

9          My understanding is that you could construct a                      02:24:18

10   query that would use the particular incident numbers that are            02:24:21

11   gleaned from the audit trail, the 880 incidents.  You could              02:24:28

12   use those incident numbers to then query other databases for             02:24:33

13   documents that relate to the same incident number, and that              02:24:41

14   that can be done as a bulk query, so sort of kind of one fell            02:24:46

15   swoop.  And what would be returned is -- and this is my                   02:24:55

16   question, but, again, feel free to attack the premise of my              02:24:58

17   question.  What would be returned is the documents themselves            02:25:02

18   or just some identifier of those documents?                              02:25:04

19                **MR. PLATT:**  I think you're fairly correct, and          02:25:10

20   what's returned is open to decision.  We don't have to return            02:25:12

21   everything.  My belief is there's probably fields that are               02:25:19

22   relevant, and there are fields of data that are not relevant.            02:25:23

23   And so we can target the query to only pull back the fields              02:25:26

24   that have data that Mr. Weil and his team are looking to                  02:25:31

25   obtain.                                                                   02:25:36

1          **THE COURT:**  Can you give me an example?  I'm not          02:25:41

2    really following.  Like, what types of --          02:25:42

3          **MR. PLATT:**  Sure.  If I wanted to know -- say,          02:25:47

4    we're talking about drivers' histories and I wanted to know          02:25:48

5    whether or not you registered your car.  The database that          02:25:50

6    stores that probably also stores every time you've renew your          02:25:53

7    license and what your insurance is and a bunch of -- your          02:25:56

8    tickets that you received.  When I write a query against          02:25:59

9    that, I don't have to pull back all of it.  I can pull back          02:26:02

10   just your registrations and see that information.          02:26:06

11         And so when we write the queries, we can be very          02:26:09

12   specific about what data we want to pull back.  It certainly          02:26:13

13   would be possible to pull back everything and make a huge          02:26:15

14   mass dump of data, but I don't think that is the goal here.          02:26:18

15   I think the goal is to try to target very specific items.          02:26:21

16         And I think the way you might approach that would          02:26:26

17   be to look at the front end user interface, identify which          02:26:28

18   pieces of data in that interface you want, identify where          02:26:33

19   they reside in the back end, and then just pull that          02:26:37

20   information for the 880.          02:26:41

21         **THE COURT:**  Okay.  And then, again, when you say          02:26:41

22   pull the information, are you pulling some sort of, like, you          02:26:45

23   know, numbers that identify the document or do you literally          02:26:48

24   mean that it would pull the document itself from the          02:26:52

25   database?          02:26:54

1    **MR. PLATT:**  In the database, the data that you    02:26:56

2    think -- so if you think of like a document, like a report,    02:26:59

3    each block of text, each piece of your first name, your last    02:27:00

4    name, the comment that you've entered, the date that it was    02:27:05

5    entered, each one of those resides in a separate storage    02:27:08

6    location called a field.    02:27:13

7        I would pick which fields of data do we want, or    02:27:15

8    which records do we want, what identifiers we want, and then    02:27:17

9    it would come back as sort of a spreadsheet-looking type of    02:27:17

10   form width.  You know, the first row would say this is the    02:27:21

11   person's first name.  Then you get a list of first names.    02:27:23

12   This is the person's last name and a list of last names.    02:27:26

13       **THE COURT:**  Okay.  I see.  I was thinking more in    02:27:30

14   terms of, you know, images and documents, but it really is    02:27:32

15   more a database of forms with information in them.    02:27:38

16       **MR. PLATT:**  Yes, yes.  And the user interface    02:27:42

17   puts all the wrapper around it and turns it into what looks    02:27:44

18   like a document, but stored on the back end, it's just    02:27:47

19   individual pieces of data.    02:27:51

20       **THE COURT:**  Just the data, okay.  Okay.  That    02:27:54

21   makes a lot of sense.  Thank you so much.    02:27:54

22       And then my second question is:  Could you -- so    02:27:54

23   if you know what the databases have, you know what the    02:27:57

24   different fields are, could you begin constructing the query    02:28:01

25   without knowing the particular incident numbers?  You know,    02:28:05

1   like, is there a way to construct sort of a skeleton query?          02:28:09

2   And then if you have 880 incident numbers to feed into the          02:28:12

3   algorithm or whatever it is, you could do that, but if it's          02:28:17

4   some subset of that, you could do that.          02:28:21

5          MR. PLATT:  Absolutely.  That's the way I would          02:28:23

6   suggest doing it was you would set it up a query or a series          02:28:24

7   of queries.  It might be a couple of different ones,          02:28:27

8   depending upon where the data resides.  And that query would          02:28:28

9   basically say these are the fields I want and I want them          02:28:32

10  from these tables, and I want them where the incident ID          02:28:34

11  equals.  And you could just leave that equals part blank for          02:28:38

12  now and then fill it in later.          02:28:43

13         Or what actually might make more sense would be          02:28:45

14  to feed that data a list of identifiers into the query so          02:28:48

15  that if it's identified outside in like a document or          02:28:54

16  something, you could just pull it out and paste it.  You're          02:28:55

17  not typing it in one at a time.          02:28:58

18         THE COURT:  Okay.  And then what additional          02:29:00

19  information would you need to be able to construct this          02:29:01

20  query?  I mean, how in depth do you need to go into MPD's          02:29:04

21  databases?  I would assume you would have to have fairly good          02:29:10

22  access to what the databases contained.          02:29:12

23         MR. PLATT:  I think there's a couple of things          02:29:17

24  that you would start off with.  First is I think that whoever          02:29:19

25  does this would want to make sure that they are restricted in          02:29:21

1  their rights to just get the data.  So that can be done on          02:29:24

2  the admin side.  You would be granted just read only access.        02:29:30

3  You wouldn't be able to change anything.  You would be given         02:29:33

4  access to just the areas that contain the data that was             02:29:36

5  relevant.                                                            02:29:41

6          I think also part of it would be if we have an              02:29:42

7  exemplar of a report or a screenshot that says, hey, here's         02:29:48

8  the data that Mr. Weil and his team are interested in.  We          02:29:49

9  could then say, okay, this piece of data resides in this            02:29:53

10 database location, so we would map that out first, and we           02:29:56

11 would know exactly where we needed to go to get that.               02:30:00

12         I think it's an exercise in looking through both           02:30:02

13 the interface and the reports that, I believe -- I'm not sure        02:30:08

14 if any examples have been generated yet or not.  And looking        02:30:12

15 at one or two of those and say, yes, this is the information        02:30:17

16 I want.  And then having someone with knowledge of the              02:30:19

17 database saying, oh, well, that data resides here, this is          02:30:24

18 how you would pull it, and this is how it's identified with         02:30:27

19 that incident ID.  And you could build those queries that           02:30:30

20 way.                                                                02:30:34

21         **THE COURT**:  Okay.  All right.                          02:30:34

22         So, then, Ms. Silk, back to you and the point you          02:30:35

23 were making before.  If it's possible to build that type of         02:30:39

24 query to generate that information, you know, it may be a           02:30:45

25 mass of information, but it sounds like it would be fairly          02:30:48

| 1 | organized.  What's the problem with that? | 02:30:52 |
| 2 | **MS. SILK:**  Well, first of all, I just want to | 02:30:54 |
| 3 | make the point that we've never disputed that this data -- | 02:30:56 |
| 4 | this amalgamation of data can be created, and we don't need | 02:31:00 |
| 5 | Mr. Platt or anyone else to help us do that.  We're totally | 02:31:05 |
| 6 | capable of doing that with our own IT professionals at the | 02:31:09 |
| 7 | Memphis Police Department. | 02:31:14 |
| 8 | The issue is that they're going to get this data, | 02:31:14 |
| 9 | and then they're going to say, but now we need to see the -- | 02:31:16 |
| 10 | all the documents associated with that data because the data | 02:31:21 |
| 11 | is just going to be in, like, a big giant spreadsheet, right. | 02:31:24 |
| 12 | And so we ran into this exact thing when we tried | 02:31:28 |
| 13 | to do a data version of production of all of our response to | 02:31:32 |
| 14 | resistance forms over the course of a five-year period.  They | 02:31:38 |
| 15 | initially requested the actual response to resistance forms. | 02:31:44 |
| 16 | I think there were, like, four or 5,000 of them over a | 02:31:49 |
| 17 | five-year period.  We said that's going to be burdensome. | 02:31:53 |
| 18 | So then they issued a request for the data behind | 02:31:54 |
| 19 | them.  So we have our IT people do this exact thing.  They | 02:31:56 |
| 20 | made a database, spreadsheet of all of the data underlying | 02:31:59 |
| 21 | the response to resistance forms.  We produced that to | 02:32:05 |
| 22 | plaintiff. | 02:32:08 |
| 23 | Plaintiff has a problem with the spreadsheet | 02:32:09 |
| 24 | because it doesn't look exactly like the form.  Like, it | 02:32:11 |
| 25 | doesn't necessarily exactly match up.  So when they get the | 02:32:14 |

1  data and it's not what they have in their mind, then they're          02:32:18

2  going to want to see the underlying documents in any event.           02:32:21

3          So it takes us back to our original proposition              02:32:25

4  of let's just weed out the ones you know you're not going to           02:32:28

5  want, and then when we get to a more narrow universe, then             02:32:33

6  let's discuss it.  Let's discuss it because what we know is            02:32:38

7  that there are going to be hundreds of incidents that are not          02:32:41

8  relevant.  And to produce all of the data underlying those            02:32:46

9  incidents that are not relevant, there is a proportionality           02:32:53

10 argument to be made because that information about those              02:32:56

11 citizens and their interactions with the police, there's a            02:32:59

12 privacy concern there.                                                02:33:04

13         **THE COURT:**  Mr. Weil?                                     02:33:06

14         **MR. WEIL:**  Yes, Judge.  I think Ms. Silk is              02:33:08

15 hitting on a perfect example, and it's actually the                   02:33:10

16 spreadsheet she's referring to we sent to Mr. Platt before            02:33:14

17 this hearing as an example.  What that sheet has is a                 02:33:16

18 response to resistance data within it.                                02:33:20

19         And, again, Judge, it's important to remember                02:33:22

20 here that there is no form out there.  There is no document           02:33:24

21 out there for -- I can't give a response to resistance.  It's         02:33:28

22 a data entry format.  The data goes into a database.  When            02:33:33

23 you want to pull it back out, then it comes back in that              02:33:36

24 form.  You know, there's -- and what the City gave us is              02:33:39

25 exactly what they -- what -- what Ms. Silk said.  It's a              02:33:42

1    spreadsheet of thousands of rows of response to resistance                02:33:47

2    forms.                                                                      02:33:51

3           Now, what it -- it's a large spreadsheet that has              02:33:52

4    all the data we need in it.  It's in spreadsheet form.  We're               02:33:54

5    not disputing.  We have no problem with it being in                         02:33:58

6    spreadsheet form, Judge.  What we're asking for is a couple                 02:34:01

7    of different data points.  We took the form itself because we               02:34:04

8    have that -- we have the user interface.  We said, look, it                 02:34:07

9    also includes victim name.  We want that to be added to the                 02:34:11

10   spreadsheet.                                                                02:34:15

11          Again, the City, as far as I understood,                       02:34:15

12   conducted the precise query that Mr. Platt is talking about.               02:34:17

13   They said, look, we think -- there's tons of data out there,               02:34:20

14   thousands of fields, we think these are the ones that are                  02:34:22

15   relevant.  And they gave us a bunch.  And some of them are --             02:34:26

16   we agreed.                                                                  02:34:27

17          Like the narrative that the police officer has,                02:34:28

18   that's relevant.  We have asked them to add a couple of more               02:34:31

19   lines to it.  Just we want the victim's name, we want a                    02:34:35

20   couple of the details reflected in the report, but we're not              02:34:38

21   quibbling with the fact that it's a spreadsheet.                           02:34:41

22          Because what Mr. Platt will tell you and what                   02:34:42

23   Ms. Silk may agree is that once we have those relevant                     02:34:45

24   things, the same data points that are in the data entry form             02:34:47

25   itself, which is why Mr. Platt keeps mentioning that, we can              02:34:52

| | |
|---|---|
| 1 | have that database blow back what looks exactly like the | 02:34:57 |
| 2 | response to resistance form. | 02:35:02 |
| 3 | It's going to have all the information.  It's | 02:35:04 |
| 4 | going to be user-friendly.  We can do that for any particular | 02:35:04 |
| 5 | form we want.  And so that -- there isn't an additional step | 02:35:09 |
| 6 | here.  The document does not exist out there.  There is no -- | 02:35:12 |
| 7 | it all just exists in the database.  That's what databases | 02:35:15 |
| 8 | are. | 02:35:19 |
| 9 | And so we're just asking, we just want something | 02:35:19 |
| 10 | that looks -- that has the same data as reflected on the | 02:35:22 |
| 11 | entry form.  We get that, we get the database, and then we | 02:35:22 |
| 12 | just construct a user interface that pulls that back out and | 02:35:25 |
| 13 | we're perfectly happy.  We have no problem with the | 02:35:30 |
| 14 | spreadsheet. | 02:35:33 |
| 15 | MR. LEVIN:  And the further point is that the | 02:35:33 |
| 16 | data -- | 02:35:34 |
| 17 | THE COURT:  And when you say "we construct" a | 02:35:36 |
| 18 | user interface, you mean you, the plaintiff, and your expert | 02:35:38 |
| 19 | or tech person, or you mean the City? | 02:35:42 |
| 20 | MR. WEIL:  Judge, I'll let Mr. Platt talk about | 02:35:44 |
| 21 | that a little bit.  Essentially, you know, what the City did | 02:35:46 |
| 22 | or its vendor did -- and I'm speaking -- and I don't want to, | 02:35:49 |
| 23 | you know, step on Mr. Platt's shoes, but they agreed to user | 02:35:52 |
| 24 | interface. | 02:35:56 |
| 25 | It's a data entry.  I'm a police officer.  I just | 02:35:56 |

1  had a use of force incident.  I'm sitting down in my police          02:35:58

2  car with my laptop, and I'm saying, okay, here the person's         02:36:02

3  name, here's the time of day, maybe some of that gets auto          02:36:03

4  entered.  Here's my narrative of what happened.  Here's the         02:36:07

5  address, et cetera, et cetera, et cetera.  All that just --         02:36:11

6  there's -- no form was created.  That just gets dumped into a       02:36:13

7  database.                                                            02:36:15

8          But if you look at the user entry -- you know,              02:36:16

9  you could print out a user entry form.  You say, okay, here         02:36:17

10 are the pieces of data.  There's 15 pieces of data on this          02:36:20

11 user interface.  All of those correspond to a row on a              02:36:25

12 database.  I just want to get a user interface that looks the       02:36:29

13 same.                                                                02:36:36

14         My understanding from Mr. Platt -- I got to stop            02:36:36

15 and let him explain and correct me if I'm wrong -- is you can       02:36:36

16 do the same thing on the back end.  You say, okay, well, the        02:36:38

17 user interface that the police officer used had XYZ, the user       02:36:42

18 interface that the supervisor used had, you know, five              02:36:46

19 things.  I just want to pull that back out on the other end,        02:36:48

20 which is what the City would do anyway.  That's how the City        02:36:53

21 would produce documents if we adopted their process.  They          02:36:54

22 would just do that one at a time.  We could do that once we         02:36:57

23 have this data.                                                      02:37:01

24         So I'll just stop there, but it is something                02:37:01

25 that's constructive.  Databases were -- by extracting data          02:37:01

| | |
|---|---|
| 1 | with that structured query language command, it commands the | 02:37:01 |
| 2 | database to pull data from here, there and the other, pulls | 02:37:13 |
| 3 | it back out, and then you have something that looks exactly | 02:37:13 |
| 4 | like the entry form that it came in on. | 02:37:16 |
| 5 | THE COURT: And so, Mr. Weil, then, is the | 02:37:19 |
| 6 | dispute -- for example, on the response resistance forms, is | 02:37:21 |
| 7 | the dispute just about the format of the information of how | 02:37:26 |
| 8 | it was produced? I know that you said that there was a | 02:37:31 |
| 9 | couple of fields that you wanted and some you didn't need or | 02:37:34 |
| 10 | whatever, but is that the primary dispute? | 02:37:37 |
| 11 | MR. WEIL: Maybe I'm not following you, Judge, | 02:37:41 |
| 12 | but I think I'm going to approximate. We want the data now | 02:37:42 |
| 13 | so that when we say, look, this is interesting, we can just | 02:37:45 |
| 14 | go look at the spreadsheet, type in something and out pops | 02:37:49 |
| 15 | what we want, or we can actually look at the spreadsheet | 02:37:54 |
| 16 | itself. | 02:37:59 |
| 17 | I've looked into the response to resistance | 02:37:59 |
| 18 | spreadsheet that Ms. Silk is talking about. I can just go to | 02:38:00 |
| 19 | the narrative right there. It looks like a spreadsheet. I | 02:38:03 |
| 20 | can just go right there and pull it up and scroll through. | 02:38:06 |
| 21 | The point is I have it. I don't go through this process that | 02:38:09 |
| 22 | we're talking about where I go to the City and say, hey, I | 02:38:12 |
| 23 | want this one, maybe I provide three dozen. It's like, oh, | 02:38:16 |
| 24 | gosh, this is the burden that we were talking about at the | 02:38:21 |
| 25 | front end. None of that exists if we just do this query. | 02:38:25 |

1        **THE COURT:**  Right.  And then -- okay.                          02:38:30

2            And so, Mr. Platt, am I understanding that then              02:38:31

3    the -- if the database -- excuse me, if the spreadsheet is          02:38:35

4    created, and then there's the user interface that allows you        02:38:37

5    to pull what looks like a form, for example, if you'd rather        02:38:41

6    view it in that format, that that's something that plaintiffs       02:38:44

7    would be able to do on their own without having to go through       02:38:48

8    the City?                                                           02:38:52

9            **MR. WEIL:**  I would have Mr. Platt -- he's --            02:38:59

10           **MR. PLATT:**  Here I am.                                   02:39:03

11       **THE COURT:**  There he is.                                     02:39:03

12           **MR. PLATT:**  Sorry.                                       02:39:05

13       **THE COURT:**  No.  That's okay.                                02:39:05

14           **MR. PLATT:**  I think it's a simple matter of             02:39:05

15   creating a report for the data.  It's not -- we're not going        02:39:06

16   to rebuild the entire user interface.  We're going to rebuild       02:39:10

17   what looks like a screenshot that's, basically, here's all          02:39:14

18   the data.  It's almost like a mail merge in Microsoft Word if       02:39:18

19   you've ever done that.  Here's all the data for the fields.         02:39:19

20   Here's where you want the fields to sit on the page.  You           02:39:21

21   know, for this record, populate the data.                           02:39:24

22       **THE COURT:**  Okay.  But that's all done, for                 02:39:26

23   example, like in-house for plaintiff.  That's not something         02:39:28

24   that they would have to be going back and forth.  Once they         02:39:31

25   have the spreadsheet with all of the raw information, then          02:39:35

| | |
|---|---|
| 1 | they can put it in whatever format they want to put it in. | 02:39:39 |
| 2 | **MR. PLATT:** Yes, Your Honor, that's correct. | 02:39:43 |
| 3 | **THE COURT:** Okay. | 02:39:44 |
| 4 | So, Ms. Silk, does that not take care of that | 02:39:45 |
| 5 | problem? | 02:39:48 |
| 6 | **MS. SILK:** I'm sorry, Your Honor, I don't know if | 02:39:48 |
| 7 | you can see me. | 02:39:50 |
| 8 | **THE COURT:** Yes, there you are. | 02:39:50 |
| 9 | **MS. SILK:** Not exactly, because in the situation | 02:39:52 |
| 10 | with the response to resistance forms, that was one set of | 02:39:53 |
| 11 | data to create one form. The data that we produced to them | 02:39:58 |
| 12 | does not replicate the form because there are diagrams on the | 02:40:04 |
| 13 | form. Okay. So and, for example, there's a diagram of, | 02:40:08 |
| 14 | like, the human body, and in the case of an officer-involved | 02:40:13 |
| 15 | shooting, the officer is required to fill out a form by hand | 02:40:18 |
| 16 | and, like, circle, mark on the body the areas that are | 02:40:22 |
| 17 | relevant to that response to resistance form, so it's not | 02:40:26 |
| 18 | exact. So it's not going to necessarily eliminate the need | 02:40:30 |
| 19 | for the forms. | 02:40:34 |
| 20 | Secondly, what they're proposing that we do for | 02:40:34 |
| 21 | these 880 incidents, it's not just one form, response to | 02:40:38 |
| 22 | resistance. It's an entire universe of documentation | 02:40:43 |
| 23 | relevant to that incident, and that could include the | 02:40:49 |
| 24 | criminal investigation. That could include the ISB file, | 02:40:52 |
| 25 | basically, internal affairs investigation file. That could | 02:40:56 |

| | |
|---|---|
| 1 | include, you know, the personnel files of the officers | 02:41:03 |
| 2 | involved.  It is going to be a massive amount of data that | 02:41:05 |
| 3 | will not be wielded for lack of a better term. | 02:41:11 |
| 4 | **MR. MCMULLEN:**  And, Your Honor, in my 30 years of | 02:41:17 |
| 5 | handling 1983 cases, what they're essentially asking for is | 02:41:19 |
| 6 | MPD's -- their database.  Their entire database.  I think | 02:41:25 |
| 7 | public policy is against a police department giving their | 02:41:32 |
| 8 | entire database, basically, to a plaintiff's firm. | 02:41:36 |
| 9 | We know a protective order doesn't work because | 02:41:40 |
| 10 | of things that have happened in this case, with things that | 02:41:42 |
| 11 | have been leaked from the DA's office, and we've gotten | 02:41:45 |
| 12 | documents that we should not have had access to. | 02:41:49 |
| 13 | And so I think this is -- this is just highly | 02:41:51 |
| 14 | intrusive and is the definition of a fishing expedition.  I | 02:41:55 |
| 15 | think the Court started the conversation earlier correctly. | 02:42:00 |
| 16 | They got 880 incidents they could look at, and as the Court | 02:42:06 |
| 17 | said, if it's a parking ticket, they don't need to go | 02:42:10 |
| 18 | further.  They can whittle it down and make it manageable. | 02:42:13 |
| 19 | What I hear them saying is they just want full access to | 02:42:19 |
| 20 | MPD's -- all MPD's databases and collection forms. | 02:42:24 |
| 21 | **THE COURT:**  Mr. McMullen, sorry to interrupt you, | 02:42:30 |
| 22 | but say they reviewed all 880 videos to try to make a first | 02:42:32 |
| 23 | cut, and they came back and said 880 -- this is purely | 02:42:36 |
| 24 | hypothetical -- 860 of these involved violent interactions | 02:42:41 |
| 25 | between police officers and citizens.  Would the City then | 02:42:45 |

1  say, okay, great, you've got all of the related files for all          02:42:48

2  of those incidents?                                                     02:42:51

3          MR. MCMULLEN:  Yes.  Yes, and if it doesn't                     02:42:53

4  whittle it down -- if 880 -- I can almost guarantee you if             02:42:58

5  there were 880 incidents, they would be in the DOJ report, or          02:43:03

6  some form of them.  But let's play along with their                     02:43:08

7  hypothetical.  If there were 880 incidents, yes, then we take          02:43:10

8  the next step.                                                          02:43:13

9          We take the burdensome next step of giving them               02:43:14

10  every related form to every incident.  I do agree with that.          02:43:19

11  But right now, we have 73 identified incidents, and a portion         02:43:23

12  of those are ADA allegations.  And so when you get down to            02:43:27

13  what is use of force or those type of things, it's going to           02:43:32

14  be -- I think it's going to be even much smaller than the 73          02:43:38

15  that was identified by the DOJ.                                        02:43:42

16          And remember this whole conversation started off             02:43:51

17  on we want the documents that you provided to the DOJ.  Now           02:43:57

18  it's gotten into we want access to MPD's entire database so           02:43:57

19  we can fish around and find stuff now.                                 02:44:02

20          Now that's the area we're in, too, in now, but it            02:44:05

21  started out we want the documents that you gave to the DOJ.           02:44:07

22  We said we did not give them any documents.  We gave them             02:44:12

23  access to our database, and here's their audit trail.  This           02:44:16

24  is what they looked at, and that was the original request.            02:44:22

25          Now we've moved into let us just have unfettered             02:44:25

1    access to MPD, and as plaintiff's attorney, I think there's a    02:44:29

2    strong public policy against that.  These cases have been    02:44:37

3    prosecuted, and I've never seen this type of open access.    02:44:40

4    I've never seen it.    02:44:40

5              THE COURT:  Okay.  So --    02:44:40

6              MR. WEIL:  Judge, I don't know if you want me to    02:44:49

7    respond to any of that or not.    02:44:50

8              THE COURT:  I don't think I need it because    02:44:52

9    here's what I think that we're going to do.  I don't think    02:44:54

10   they're asking for unfettered access.  We have identified a    02:44:57

11   very small universe of 880 incidents.  We all acknowledge    02:45:01

12   that that may be both over and under inclusive of the    02:45:05

13   relevant information that exists in the universe, but    02:45:10

14   plaintiff has adopted it as a proxy for identifying the most    02:45:13

15   readily identifiable scope of relevant information for their    02:45:21

16   Monell claims, and I think that's a reasonable proxy.  In    02:45:27

17   fact, it sounds more reasonable to me than a lot of other    02:45:30

18   ways they could have gone about it.    02:45:33

19              However, I also do think that although it is --    02:45:35

20   as we discussed before, I think it's fair to assume that    02:45:39

21   there was some rational method for using in deciding which    02:45:41

22   out of the, I'm assuming thousands, resulted in looking at    02:45:47

23   these 880.  Surely not everything that they pulled was a    02:45:51

24   positive hit for them.  And so I think there is value to    02:45:56

25   plaintiff going through those 880 videos that the City has    02:46:00

| | |
|---|---|
| 1 | agreed to make available and determining which ones they want | 02:46:04 |
| 2 | more information about. | 02:46:08 |
| 3 | Now, and so I don't think that's a fishing | 02:46:10 |
| 4 | expedition because I think it is -- that the 880 has some | 02:46:12 |
| 5 | basis in a rational relationship to the information they're | 02:46:16 |
| 6 | trying to get at, and as I said, I do think it's a more | 02:46:23 |
| 7 | efficient basis than any other that's been identified. | 02:46:27 |
| 8 | MR. MCMULLEN:  We agree 100 percent, Your Honor. | 02:46:31 |
| 9 | That's what we put in our brief. | 02:46:34 |
| 10 | THE COURT:  Okay.  So but then once the plaintiff | 02:46:36 |
| 11 | identifies that subset of incidents that they are interested | 02:46:39 |
| 12 | in, then I think that all of the related documents are | 02:46:43 |
| 13 | relevant and should be produced.  So if -- you know, if it | 02:46:49 |
| 14 | turns out that they think that 879 of those incidents are | 02:46:54 |
| 15 | relevant, then the City is going to need to produce that | 02:46:59 |
| 16 | information. | 02:47:02 |
| 17 | It is -- you know, it sounds to me like what | 02:47:04 |
| 18 | we're talking about in terms of burden will vary vastly based | 02:47:08 |
| 19 | on the method that the parties can agree to to obtain these | 02:47:17 |
| 20 | documents, and it sounds to me like plaintiff is proposing a | 02:47:22 |
| 21 | much more cost-efficient and effective means of acquiring | 02:47:25 |
| 22 | those documents. | 02:47:29 |
| 23 | But if the -- Mr. Weil, does that sound right to | 02:47:31 |
| 24 | you? | 02:47:36 |
| 25 | MR. WEIL:  Judge, I don't -- I guess.  I think we | 02:47:37 |

1    do think that this is much more cost efficient.  One thing    02:47:42

2    that I'd like to raise, and it hasn't been put out on the    02:47:46

3    briefs, is one of the things that the DOJ did was sampling,    02:47:50

4    and we don't know whether that was involved here.  But we'd    02:47:53

5    like to perform samples too, and that would require taking    02:47:55

6    the good and the bad from these.  So the fact that there    02:47:58

7    might be one document that is irrelevant or that looks like a    02:48:01

8    nonhit, that's actually helpful to us.  And it's --    02:48:04

9            THE COURT:  You mean sampling within the 880?    02:48:08

10            MR. WEIL:  Yes.    02:48:12

11            THE COURT:  Okay.    02:48:13

12            MR. WEIL:  In which case we're just going to need    02:48:15

13    to get the other documents.  There's some other things,    02:48:17

14    Judge.  I mean, it's not front of mind, but there are other    02:48:19

15    things that the spreadsheet that we're talking about just    02:48:21

16    lets us do.    02:48:24

17            For instance, one thing that's been found often    02:48:24

18    in Monell cases is that police officers would just cut and    02:48:28

19    paste a description of what happened, so you will get the    02:48:31

20    same language over and over and over again.  And we will not    02:48:34

21    be able to -- it will be very cumbersome to do that with    02:48:39

22    looking -- you know, paging form through form.  We won't even    02:48:41

23    have it if we just look at the videos and we'll know what to    02:48:46

24    look for.    02:48:46

25            But an officer who's -- you know, if that kind of    02:48:48

1  thing is happening, again, we are taking -- Judge, remember     02:48:50

2  we -- what we asked for is what the City produced to the DOJ.    02:48:53

3  Mr. McMullen is exactly wrong.  We're not going outside of       02:49:00

4  that.  We're asking for a subset of that.  So we're taking a     02:49:03

5  huge hit by limiting ourselves to the 880.  We're limiting       02:49:06

6  ourselves and our ability to look at language that's being       02:49:11

7  used, which is important for a code of silence, and it's just    02:49:13

8  sort of a coverup.                                               02:49:16

9        The same thing with what supervisors are doing.           02:49:18

10  Are they just, you know, not even -- one example being, you     02:49:21

11  may have an innocuous use of force.  Does the supervisor even   02:49:24

12  look at that?  One of the criticisms the DOJ has is they        02:49:29

13  never even look at the video.  We will not see that in the      02:49:33

14  proposition that we just don't look at videos.                  02:49:37

15        We will need to see a supervisor report.  Even if        02:49:37

16  the report is fairly innocuous, supervisors are supposed to     02:49:39

17  look at every single video, and one of the criticisms is they   02:49:43

18  don't.  So they're just ignoring it.  We will never know.  We   02:49:46

19  will never know if they have that information.                  02:49:48

20        With a method we're proposing, we get it, and we         02:49:50

21  get it efficiently, and we get it at very little cost.          02:49:53

22        Ms. Silk raised the idea that there's going to be        02:49:56

23  a bunch of other data that is not relevant or what have you.    02:49:58

24  We have asked over and over again since February to look at     02:50:02

25  the fields, to look at the fields that are being recorded, is   02:50:05

1  the name, date, address, whatever.  Flat no, every single          02:50:08

2  time.                                                               02:50:12

3          We won't even negotiate with you about the                 02:50:13

4  fields, so we don't have the ability to narrow down anything        02:50:15

5  right here.  We don't have the ability to target it.  We            02:50:19

6  don't have the ability to address the City's objection.  This       02:50:20

7  is just going to be a big sort of free-for-all data because         02:50:22

8  they refuse to tell us what the fields are.                         02:50:24

9          So we're operating in a situation where we don't            02:50:27

10  know what -- you know, we think that if we finally get the         02:50:30

11  City's cooperation, we might, but we've been trying to get it      02:50:33

12  for two months.  The reason we proposed having Mr. Platt come      02:50:36

13  in is because we just have not gotten it.  We have not gotten      02:50:42

14  cooperation.                                                       02:50:44

15          We've asked for the fields to say, hey, we could           02:50:45

16  probably knock out 50 percent of them, 80 percent, but we         02:50:47

17  don't know.  We have no idea because the City has refused to       02:50:51

18  produce them flatly.                                               02:50:53

19          So I don't think in the sense that what you're             02:50:56

20  proposing, Judge, as I understand it, is what the City would       02:50:57

21  prefer here is going to get us to where we need.  And, again,      02:51:00

22  it's -- we're sitting in a posture we've taken huge hit on         02:51:02

23  the data that we're able to gather.                                02:51:05

24          THE COURT:  So, Mr. Weil, just to clarify, what            02:51:05

25  I'm saying is that after you've reviewed the videos and            02:51:08

| | |
|---|---|
| 1 | determine which ones you want more documents for or more | 02:51:11 |
| 2 | information, related information for, the City will then be | 02:51:14 |
| 3 | ordered to produce all of that information.  How is that not | 02:51:17 |
| 4 | getting you what you want? | 02:51:21 |
| 5 | MR. WEIL:  Okay.  There's a couple of things. | 02:51:22 |
| 6 | One, I brought up the example of supervisors just not | 02:51:24 |
| 7 | reviewing videos where that's supposed to happen and | 02:51:27 |
| 8 | systematically doesn't.  That doesn't matter.  It's supposed | 02:51:30 |
| 9 | to be every video. | 02:51:32 |
| 10 | It doesn't matter whether it's a use of force | 02:51:33 |
| 11 | being recorded or a minor thing where I bumped into someone's | 02:51:35 |
| 12 | hand, what have you, every video is supposed to get reviewed. | 02:51:39 |
| 13 | We will never know.  If it's innocuous or not, everybody is | 02:51:42 |
| 14 | supposed to have reviewed it.  If there's a low rate of | 02:51:44 |
| 15 | review, we will never see that. | 02:51:46 |
| 16 | THE COURT:  But, Mr. Weil, you're not asking for | 02:51:48 |
| 17 | that information.  You're only asking of the 880, right? | 02:51:52 |
| 18 | MR. WEIL:  Of these 880 -- so, again, take it | 02:51:55 |
| 19 | back, a step back to the DOJ report, Judge.  What the DOJ | 02:51:56 |
| 20 | says is, you know, supervisors are supposed to review every | 02:51:59 |
| 21 | video.  We found a lot of examples where they don't.  They | 02:52:03 |
| 22 | don't bother to find out what's in the video. | 02:52:07 |
| 23 | Now, that may be -- it may be the case that | 02:52:09 |
| 24 | they're not reviewing a video that's very bad and looks | 02:52:11 |
| 25 | awful, but it may also be the case that in an innocuous | 02:52:11 |

1    video, while that doesn't show that there's a -- you know, a          02:52:15

2    supervisor may not be reviewing that either.  The supervisor          02:52:18

3    doesn't know whether that video is innocuous or not.                  02:52:21

4            So a practice in a culture of just not reviewing             02:52:24

5    videos, that's not going to show -- we're not going to be            02:52:26

6    able to tell that if we're just sitting there just looking at        02:52:28

7    the video.  The point the DOJ makes is supervisors just don't        02:52:31

8    review videos they're supposed to.  If there's a low rate of         02:52:35

9    review, then we're not going to be able to see that if we're         02:52:38

10   just saying, well, let's look at the bad videos.                     02:52:39

11           Again, you know, there may be scuttlebutt where              02:52:41

12   supervisors say, okay, I finally reviewed that one, we're            02:52:43

13   going to get, I think, a higher rate of review once someone          02:52:45

14   goes to the hospital, that kind of thing.  But an overall            02:52:48

15   culture of not reviewing videos, supervisors not reviewing           02:52:53

16   videos, we're not going to be able to capture that by looking        02:52:54

17   at videos.  We need to be able to see what the underlying            02:52:58

18   documentation is.                                                    02:53:00

19           The second thing, Judge, that --                            02:53:01

20           THE COURT:  Okay.  So --                                    02:39:05

21           MR. WEIL:  -- we're losing -- okay.  Go ahead,              02:39:05

22   Judge.  I'm sorry.                                                   02:53:04

23           THE COURT:  Well, I was just going to say I told           02:53:04

24   you that of the 880, it's up to you to identify which ones           02:53:07

25   you want to look at, so are you just telling me it's going to        02:53:11

| | |
|---|---|
| 1 | be all 880 because -- | 02:53:13 |
| 2 |         MR. WEIL:  Judge, in the example I gave you, it | 02:53:16 |
| 3 | would have to be the 880. | 02:53:20 |
| 4 |         THE COURT:  Okay.  Okay. | 02:53:20 |
| 5 |         MR. WEIL:  Because what we're saying is, look, | 02:53:21 |
| 6 | did the supervisor review this video or not?  We cannot know | 02:53:22 |
| 7 | until we see the other document.  And, again, the | 02:53:24 |
| 8 | innocuousness of the interaction doesn't matter.  The point | 02:53:31 |
| 9 | of body cameras is accountability.  If supervisors are not | 02:53:31 |
| 10 | reviewing body cameras and that's a widespread culture or | 02:53:31 |
| 11 | widespread practice of just not looking into video -- | 02:53:36 |
| 12 |         THE COURT:  I understand. | 02:53:36 |
| 13 |         MR. WEIL:  Yeah.  But the other thing is, Judge, | 02:53:37 |
| 14 | is we are running out of time.  The City can correct me if | 02:53:39 |
| 15 | I'm wrong, but on our last call, we said, have you started to | 02:53:42 |
| 16 | gather these videos?  It was, like, no, until you agree to | 02:53:45 |
| 17 | the method that we're going to do.  So they're not gathering | 02:53:48 |
| 18 | these things as of the last call.  I don't know what they're | 02:53:50 |
| 19 | doing now, but we are running out of time. | 02:53:53 |
| 20 |         We have to go through hundreds of videos.  We | 02:53:55 |
| 21 | have to figure out which videos are important, which | 02:53:57 |
| 22 | witnesses, we want to go and look for.  And this process, | 02:54:01 |
| 23 | again, we've been trying to do this since the end of January. | 02:54:05 |
| 24 | We're here in mid-April.  We're running out of time, and this | 02:54:09 |
| 25 | process of waiting when there's an efficient way of doing it | 02:54:11 |

| | |
|---|---|
| 1 | is just going to hurt us. | 02:54:16 |
| 2 | **THE COURT:** Okay. It strikes me that you're | 02:54:17 |
| 3 | going to have to do all of that whether you get it all at | 02:54:20 |
| 4 | once or you get it in stages anyway. | 02:54:23 |
| 5 | Mr. McMullen, it sounds to me like they're going | 02:54:27 |
| 6 | to ask for all 880, regardless of whether we do a first cut | 02:54:28 |
| 7 | or not. So -- | 02:54:32 |
| 8 | **MR. MCMULLEN:** We're okay for them asking for the | 02:54:34 |
| 9 | 880 reports. We're fine with that and then whittle it down. | 02:54:36 |
| 10 | When they see just a ticket given and there was no real | 02:54:42 |
| 11 | interaction, they don't need that one. And then they whittle | 02:54:46 |
| 12 | it down to the ones that they want. | 02:54:49 |
| 13 | That's what we thought we laid out in our briefs, | 02:54:51 |
| 14 | that they start with the 880, and they will whittle it down. | 02:54:54 |
| 15 | We think it's some number under 73, but we have no idea of | 02:54:59 |
| 16 | knowing because the DOJ was not forthcoming with that. | 02:55:03 |
| 17 | **THE COURT:** Okay. | 02:55:06 |
| 18 | **MR. MCMULLEN:** We have no idea. | 02:55:07 |
| 19 | **THE COURT:** Now -- | 02:55:11 |
| 20 | **MR. MCMULLEN:** So We're okay with the -- what you | 02:55:13 |
| 21 | suggested made sense. It narrowed the field, and it gave | 02:55:14 |
| 22 | them what they originally asked: What documents did you give | 02:55:22 |
| 23 | to the DOJ? No, but what they did get is what did the DOJ | 02:55:25 |
| 24 | review, and that's the 880. We don't mind giving that. | 02:55:27 |
| 25 | **THE COURT:** But the 880 are all body-worn camera | 02:55:31 |

1    videos, right?  There's not reports in that?      02:55:34

2           **MS. SILK:**  No, there's not reports, Your Honor.    02:55:38

3    It's evidence.com houses our body-worn camera footage and our    02:55:40

4    in-car camera footage.  There could be a -- there's a    02:55:46

5    universe of documentation for each incident that's going to    02:55:49

6    vary based on each incident.  That's part of the issue.    02:55:54

7           **THE COURT:**  Right, right.    02:55:57

8           **MS. SILK:**  You know, where somebody may have    02:55:58

9    pulled a car over and gave a ticket like Your Honor's    02:56:00

10    example, there's going to be, you know, maybe one document    02:56:04

11    with it.  If there's an officer-involved shooting, there's    02:56:07

12    going to be a thousand documents associated with it.    02:56:11

13           So we really could narrow this down more    02:56:15

14    efficiently, and we're going to have to give them the    02:56:19

15    documents anyway because, respectfully, you know, the    02:56:22

16    spreadsheet is never going to be a substitute for the actual    02:56:25

17    documents.  I mean, there's a lot of things that are saved    02:56:30

18    into our RMS system that are, like, you know, not entered    02:56:32

19    into a database.  I mean, what if we have handwritten notes    02:56:37

20    that an investigator has saved, things like that?  So I    02:56:40

21    think --    02:56:43

22           **THE COURT:**  Or photographs or --    02:56:43

23           **MS. SILK:**  Absolutely.    02:56:45

24           **MR. MCMULLEN:**  Absolutely.    02:56:46

25           **MS. SILK:**  Witness statements, handwritten    02:56:47

1    witness statements.  So I think Your Honor is on the right        02:56:50

2    track here with asking them to whittle it down in good faith,     02:56:53

3    Your Honor, not just go back and say we've looked at them all     02:56:56

4    and we want all 880 because the reality is not all of them        02:57:00

5    were going to be relevant.                                        02:57:04

6           MR. WEIL:  Judge, I think neither Ms. Silk or              02:57:06

7    Mr. McMullen heard anything I said.  We -- the supervisor         02:57:09

8    review is a perfect example of why we can't tell what's going     02:57:13

9    on from the video.  Again, Ms. Silk's point that there's          02:57:15

10   going to be a different variation in documents is, of course,     02:57:18

11   taken.  We just want what there is.                               02:57:21

12          Now, there may be an interaction with an officer           02:57:22

13   where it's the body-worn camera doesn't get reviewed by a         02:57:25

14   supervisor.  We will have no idea whether that happened           02:57:33

15   unless we have the underlying documentation, and we have an       02:57:33

16   easy, cheap, simple method to produce it that gives it to us      02:57:34

17   now rather than months from now where they're saying, well,       02:57:37

18   we have to go through each one, it's going to be burdensome,      02:57:40

19   it's going to take time.  We're out of time.                      02:57:42

20          THE COURT:  Mr. Weil, I take your point that               02:57:45

21   you're out of time.  I'm just wondering, you know, if you         02:57:47

22   have incidents that actually involve, you know, physical          02:57:51

23   interactions, escalated encounters, how valuable is it really     02:57:55

24   going to be to you to have several examples of innocuous          02:58:02

25   incidents where supervisors didn't review video?                  02:58:09

1    **MR. WEIL:** I can answer that, Judge. The point    02:58:13

2    is a systemic issue, correct. If we have, say, what looks    02:58:17

3    like an innocuous description in the RTR report, an innocuous    02:58:21

4    essentially truthful officer, systemically, that is not    02:58:27

5    enough for the MPD, and it shouldn't be. There's supposed to    02:58:33

6    be a check. There's supposed to be a supervisor review.    02:58:37

7         Now, to the extent there isn't that check, that    02:58:39

8    indicates a systemic problem. Because when an officer lies    02:58:43

9    in a report, that officer may know, look, supervisors never    02:58:47

10    look at this thing at all. I never actually get checked, and    02:58:52

11    so --    02:58:57

12        **THE COURT:** I understand. I understand why it's    02:58:57

13    relevant. I'm just wondering how valuable it is, really, in    02:58:58

14    the context of the things that we're talking about in this    02:59:01

15    case and the things that are highlighted in the DOJ report.    02:59:03

16        **MR. WEIL:** Judge, it goes to the heart of our    02:59:07

17    case because what the City is able to do every time there's a    02:59:08

18    particular incident is say, that was just a bad apple, maybe    02:59:12

19    there's a hundred bad apples, but they're just bad apples.    02:59:16

20    We don't know that.    02:59:16

21        The City's point in their motion to dismiss and    02:59:21

22    I'm confident it will be the point in the summary judgment    02:59:24

23    is, look, no police department is perfect. They all have bad    02:59:25

24    apples, but the supervisory process we have captures that or    02:59:29

25    it doesn't. And the fact that the videos aren't being    02:59:33

| | |
|---|---|
| 1 | reviewed based on the word of an officer is evidence that | 02:59:35 |
| 2 | that's not the case. | 02:59:38 |
| 3 |       That system is indifferent to the possibility | 02:59:39 |
| 4 | that an officer is lying, and that's the important point | 02:59:43 |
| 5 | here.  So the fact that a supervisor doesn't review an | 02:59:46 |

1 reviewed based on the word of an officer is evidence that   02:59:35
2 that's not the case.   02:59:38
3        That system is indifferent to the possibility   02:59:39
4 that an officer is lying, and that's the important point   02:59:43
5 here.  So the fact that a supervisor doesn't review an   02:59:46
6 innocuous video, the supervisor doesn't know.  The supervisor   02:59:49
7 has a report that says, look, this is no big deal, he brushed   02:59:53
8 up against me, I pushed him away, and maybe that particular   02:59:56
9 officer is being perfectly true.  The next one isn't.  But   03:00:00
10 without the review, without the accountability, an officer   03:00:03
11 could know that they could lie about something that's bad and   03:00:05
12 it won't get reviewed.  A systemic failing to review, a   03:00:08
13 common failing to review, is part of our case and --   03:00:11
14        THE COURT:  Okay.  And, Mr Weil, do you know how   03:00:14
15 is that information captured in the MPD databases?  Do you   03:00:16
16 know?   03:00:20
17        MR. WEIL:  It's our understanding that reviews   03:00:20
18 are tracked electronically, and so if a supervisor -- a   03:00:24
19 supervisor pulls up whatever it is in their database, some   03:00:27
20 other computer system, and says, okay, I've got this use of   03:00:31
21 force report, I'm sitting down at the end of my shift, I've   03:00:33
22 got 15 use of force reports or five or three or whatever, I   03:00:36
23 need to go through each one, eyeball the use of force report,   03:00:39
24 look at the video to see if that cop is telling the truth,   03:00:41
25 that line officer is telling the truth.   03:00:47

48

| | |
|---|---|
| 1 | If that's not happening, that's -- and the DOJ | 03:00:47 |
| 2 | says there doesn't appear to be a lot of supervisor review or | 03:00:49 |
| 3 | there's no audits, you know, a second level thing.  That's | 03:00:53 |
| 4 | something that we will not have any idea if we're just | 03:00:56 |
| 5 | looking at the videos.  And so the paperwork that goes behind | 03:00:58 |
| 6 | the interactions, good, bad, or ugly is very important. | 03:01:02 |
| 7 | Again, we would ask for something much broader | 03:01:06 |
| 8 | here, Judge.  If we weren't compromising, we would ask for a | 03:01:11 |
| 9 | very broad search of the City's databases to get every time | 03:01:13 |
| 10 | that a supervisor reviewed, I want to connect that to a | 03:01:17 |
| 11 | camera, et cetera, we're giving that up.  We're giving it up | 03:01:20 |
| 12 | to get the 880, and now the City is trying to cut us off from | 03:01:22 |
| 13 | that. | 03:01:27 |
| 14 | **THE COURT**:  I understand.  Just in the interest | 03:01:27 |
| 15 | of time, though, is there some subset of information, say the | 03:01:29 |
| 16 | videos plus X or X, Y, that you could review to make that | 03:01:32 |
| 17 | first cut? | 03:01:38 |
| 18 | **MR. WEIL**:  Judge, if we'd been given the form, | 03:01:39 |
| 19 | the fields months ago when we asked for them, we might be | 03:01:42 |
| 20 | able to have an intelligent discussion about it, but the City | 03:01:45 |
| 21 | has refused to give us those fields.  So I'm sitting here, I | 03:01:48 |
| 22 | know what the DOJ is saying because we know what evidence | 03:01:52 |
| 23 | they looked at because the City has given us everything | 03:01:54 |
| 24 | they've looked at, right. | 03:01:57 |
| 25 | We know they looked at these databases.  We know | 03:01:57 |

| | |
|---|---|
| 1 | that they concluded there's a lack of supervisor review, and | 03:02:00 |
| 2 | what they have is the databases.  I don't know -- you know, | 03:02:00 |
| 3 | that's the way they have it, so I don't -- there's -- it's | 03:02:05 |
| 4 | possible we don't have it.  But, again, the marginal cost of | 03:02:08 |
| 5 | gathering that plus additional evidence as Mr. Platt has laid | 03:02:12 |
| 6 | out is minimal to zero.  You're essentially adding another | 03:02:16 |
| 7 | field. | 03:02:19 |

<br>

1  that they concluded there's a lack of supervisor review, and     03:02:00

2  what they have is the databases.  I don't know -- you know,       03:02:00

3  that's the way they have it, so I don't -- there's -- it's        03:02:05

4  possible we don't have it.  But, again, the marginal cost of      03:02:08

5  gathering that plus additional evidence as Mr. Platt has laid     03:02:12

6  out is minimal to zero.  You're essentially adding another        03:02:16

7  field.                                                            03:02:19

8          We can have and we can sit down with the City and         03:02:20

9  have an intelligent discussion about what fields should or        03:02:22

10 should not be under the query.  That's fine.  We've been          03:02:26

11 asking them to do that for months now, and we've been getting     03:02:26

12 stonewalled.  I mean, the problem here is just every time we      03:02:30

13 come, that's why we file these motions, a motion to compel        03:02:31

14 them to talk to us because we're asking for this basic            03:02:35

15 information, and it's -- we're just out of time, Judge.           03:02:40

16          THE COURT:  Okay.  Mr. McMullen, Mr. Silk,               03:02:41

17 anything to add?  Ms. Silk, excuse me.                            03:02:45

18          MS. SILK:  We haven't refused to give them fields        03:02:48

19 of the database, but what I just mentioned to you earlier is      03:02:51

20 that the universe of documents that will -- the data from         03:02:54

21 which will populate this enormous spreadsheet is endless.  So     03:02:58

22 it's not like we can just go and pull a key of every single       03:03:03

23 field of every single form that law enforcement uses and give     03:03:07

24 it to them and say, here, give us what you want.  That's not      03:03:10

25 possible.                                                         03:03:14

1      **THE COURT:**  Well, Ms. Silk, then, say there were      03:03:17

2      only two incidents, how would you do it then?      03:03:19

3      **MS. SILK:**  We would go and pull whatever      03:03:22

4      documents are associated with those particular two incidents.      03:03:24

5      So if it's a --      03:03:27

6      **THE COURT:**  So why can't that be done with 880      03:03:28

7      incidents?      03:03:31

8      **MS. SILK:**  It can be.  It's just going to be      03:03:32

9      extremely laborious, so that's why we were asking them to      03:03:34

10     narrow the universe of it.      03:03:38

11     **THE COURT:**  Laborious because it's an      03:03:40

12     incident-by-incident query?      03:03:42

13     **MR. MCMULLEN:**  It's a lot --      03:03:45

14     **MS. SILK:**  Correct.      03:03:45

15     **MR. MCMULLEN:**  Yes.      03:03:45

16     **THE COURT:**  And so why will the SQL query not      03:03:45

17     solve that problem?      03:03:50

18     **MS. SILK:**  Because it's just going to be this      03:03:51

19     mass of data of irrelevant -- most of it irrelevant      03:03:54

20     information that is not going to end up capturing everything      03:03:56

21     that's in the file because of the things I was describing      03:04:00

22     earlier with diagrams and handwritten notes or whatever, and      03:04:02

23     then we're going to be in a situation where they're going to      03:04:05

24     say, oh, my gosh, we're going to need these documents anyway.      03:04:08

25     So let's just figure out the universe of documents and give      03:04:11

UNREDACTED TRANSCRIPT

1  them the documents.                                                03:04:15

2          THE COURT:  Mr. Weil, what about the nondata              03:04:16

3  information in the database?  I realize it's all data, but         03:04:23

4  you know what I mean:  Images, handwritten notes.                  03:04:26

5          MR. WEIL:  Judge, if the -- again, having had a           03:04:32

6  lot of conversations about that, my understanding is that if      03:04:34

7  we -- to back up for a sec, when we asked, this is RFP 133,        03:04:37

8  we got back a couple of training materials, and they said         03:04:42

9  we're not going to give you anything else.  What we gave them     03:04:46

10 was databases.                                                     03:04:49

11         Again, Mr. Platt can help me out here, but it's           03:04:50

12 not just texts, of course.  There can be images.  Other           03:04:54

13 things can be recorded, photographs.  The evidence.com            03:04:57

14 database itself is a perfect example.  A video doesn't sit on     03:05:01

15 a line of code, right.  A video is a document, similar to a       03:05:04

16 drawing.  The database refers to that video, and so the           03:05:08

17 database pulls to that video as it would anything else.           03:05:11

18         When we're given the evidence.com database, which        03:05:15

19 they have to agree to produce, we're not really looking for       03:05:20

20 the spreadsheet.  The spreadsheet refers us to the right          03:05:20

21 place.  It's going to be the same with anything else.  If the     03:05:23

22 DOJ looked at it, again, we're confining ourselves to the         03:05:25

23 880.  If they didn't look at it, then they don't have it, but     03:05:30

24 they are -- you know, if it wasn't produced to them, they         03:05:31

25 don't have it.  The DOJ never got it.                             03:05:34

1    My understanding is the DOJ would have had all          03:05:34

2    these things.  A database can pull to documents.  Mr. Platt   03:05:38

3    can explain how, but my very rough approximation is the X on   03:05:41

4    database which pulls to a video, right.  So it isn't just   03:05:49

5    texts in a field, but it does pull to these other documents,   03:05:51

6    and those are all be gathered up in the same way.          03:05:52

7         **THE COURT**:  Mr. Platt, can you clarify for us?   03:05:54

8    Is that all of that information subject to the SQL query?   03:05:57

9         **MR. PLATT**:  So there could be -- and I think the   03:06:02

10   videos is a good example, where in the database, it would   03:06:04

11   tell you here's the evidence or the incident ID number and   03:06:09

12   here's a link.  You can also think of it like a hyperlink or   03:06:13

13   reference in the database to where that actual video resides,   03:06:18

14   and it probably resides outside of the database on a file   03:06:20

15   system in like -- you think like a video, like, when you   03:06:25

16   would download to watch a movie, the same type of video   03:06:28

17   format.  MP4 is most likely or something like that that it   03:06:32

18   would point to it and say, hey, if you want to see the video   03:06:35

19   that's associated with this incident, it's sitting over here,   03:06:38

20   you can go see it there.  And then you just have a big list   03:06:42

21   of all these in the databases.                             03:06:44

22        It is possible to store the video in the               03:06:44

23   database, though, that -- I haven't seen that very often.   03:06:48

24   It's much more common to have it stored out on a file system   03:06:51

25   somewhere else as a loose file and point to it.            03:06:56

1    **MR. WEIL:**  Judge, I want to point out one very            03:06:59

2    important thing that Mr. Platt just said that, again, what    03:07:01

3    the MPD told us is they gave the entire -- they said we can't 03:07:02

4    give you -- we don't know which documents the DOJ looked at   03:07:06

5    because we just picked up our entire database and gave it to  03:07:10

6    them, and they did whatever they wanted with it.  And there's 03:07:15

7    where we don't have an audit trail to say they looked at      03:07:18

8    this, that, and the other.                                    03:07:19

9           If that's the case, then that's fine.  If the DOJ     03:07:20

10   is asking the database to go make queries of MPD servers,     03:07:24

11   which what Mr. Platt said they might have, there should be    03:07:28

12   evidence of that in the form of metadata.  I don't know.  I   03:07:31

13   don't want to get into it here, but I am a little concerned   03:07:35

14   that there may be more documents that we didn't get based on  03:07:39

15   what Mr. Platt just said.                                     03:07:42

16          **THE COURT:**  You've lost me there, Mr. Weil.        03:07:46

17          **MR. WEIL:**  Judge, I don't -- I think we can ask    03:07:48

18   the City about it later.  What Mr. Platt says --             03:07:52

19          **MS. SILK:**  One thing I'd like to say about the     03:07:57

20   supervisor hypothetical that Mr. Weil was talking about.  I   03:08:01

21   think Your Honor asked a good question about how are you      03:08:04

22   going to identify if a supervisor actually reviewed a video   03:08:06

23   or not.  If a supervisor isn't going to review a video, which 03:08:09

24   is outside of policy, he's not going to -- he or she is       03:08:13

25   probably not going to write on there, I didn't review this   03:08:18

1  video, right?                                                    03:08:21

2         So the -- there's -- the assumptions in the DOJ           03:08:22

3  report might just be that.  Like, there's not necessarily        03:08:30

4  going to be a note in the file:  The supervisor did not          03:08:32

5  review this video.                                               03:08:34

6         So I'm not sure that what Mr. Weil is trying to           03:08:37

7  get at is even possible through the means that they are          03:08:41

8  proposing here.  I just wanted to add that.                      03:08:44

9         **MR. LEVIN:**  Our understanding, Your Honor, is         03:08:51

10  that there's a check box or an affirmative click button, or     03:08:52

11  something of that sort that a -- some affirmative step that a   03:08:57

12  supervisor takes to record that they are complying with        03:08:59

13  policy of reviewing the line officer's body-worn camera        03:09:02

14  footage.  And so the absence of that is what would indicate    03:09:02

15  it to us.                                                      03:09:02

16         **THE COURT:**  Ms. Silk, do you know if that's         03:09:02

17  right?                                                         03:09:13

18         **MS. SILK:**  I do not know, Your Honor.  I don't      03:09:13

19  know.                                                          03:09:13

20         **THE COURT:**  Okay.  And then, Mr. Weil, tell me      03:09:14

21  why that's an issue.  Is it you can't have that field plus     03:09:21

22  the videos?                                                    03:09:24

23         **MR. WEIL:**  Judge, we have been -- it's really --    03:09:27

24  we're talking here with -- you know, we're blindfolded.  We    03:09:30

25  don't have the fields.  We have been asking for them for a     03:09:34

1    long time.  We haven't gotten them.  So I'm talking out of          03:09:37

2    the lack of knowledge for things we've requested, and that's        03:09:42

3    in the records that we sent you.  The correspondence we have         03:09:46

4    from the City, flatly refusing to provide us with the fields,        03:09:49

5    which we've asked for for a long time.                               03:09:53

6              THE COURT:  I understand.                                  03:09:56

7              MR. WEIL:  I think, again, Judge, you know, the            03:09:58

8    evidence, again, of something like police officers cutting          03:10:00

9    and pasting their action forms, that kind of thing, that's          03:10:01

10   all evidence that's relevant to this.  It's evidence that we        03:10:05

11   would be asking for from the City's database at large.  We          03:10:08

12   are taking a severe cut from what we're asking for.  We're          03:10:12

13   just asking for these 880.  We just want the other data.            03:10:16

14   There's an easy way to get it that's efficient.                     03:10:19

15             If we want to talk about this extraneous data             03:10:21

16   that might be there, we can talk to them about it, but we           03:10:25

17   just have not been able to have that conversation.                  03:10:27

18             THE COURT:  Okay.  Well, the place where we are           03:10:30

19   now is that a decision needs to be made, and we do not have         03:10:36

20   perfect information.  And I appreciate all the lawyers and          03:10:39

21   Mr. Platt trying to do the best with the information that you       03:10:47

22   have.  But to me, it is just too incomplete at this point to        03:10:51

23   be able to identify, you know, particular fields that would         03:10:57

24   be helpful or any sort of meaningful way to reduce the              03:11:03

25   universe of data.                                                   03:11:08

1      And so because, you know, we need to get this          03:11:09

2  process started, I am going to just go ahead and order the   03:11:15

3  City to produce the videos and the related information for    03:11:18

4  all 880 incidents.  That is my ruling.  That's what's going   03:11:22

5  to happen.                                                    03:11:27

6      Now, the way that it's going to happen is going          03:11:28

7  to be subject to some of that more detailed information that  03:11:34

8  we all admit today that we do not have.                       03:11:37

9      So, Mr. Weil, what I'm thinking, perhaps, about          03:11:40

10  you-all getting together, hopefully coming up with an         03:11:46

11  agreed-upon solution of how to acquire that information, but  03:11:53

12  at the very least, exchanging parameters and, you know,       03:11:57

13  databases, fields, what have you, so that you understand      03:12:05

14  better the universe of what you're dealing with.  And then if 03:12:08

15  there is any dispute in us getting back together quickly, to  03:12:12

16  resolve that so that the information can then go ahead and be  03:12:18

17  produced.  So what would you see as a reasonable timeline for 03:12:21

18  those discussions?                                            03:12:27

19      MR. WEIL:  Judge, I think two weeks would be             03:12:28

20  enough and I think -- I would ask for two things that we get, 03:12:30

21  which are the fields that we've been talking about, just a    03:12:36

22  list of the fields, and then the -- and Mr. Platt can correct 03:12:39

23  me if I need more, but the user interfaces where data is      03:12:43

24  entered, which is going to let us see again what an officer   03:12:49

25  is entering.  There may be data in the background, say, a     03:12:51

| | |
|---|---|
| 1 | tracking number that an officer never sees or supervisor | 03:12:53 |
| 2 | never sees, but just those fields that show us what's being | 03:12:56 |
| 3 | entered by the officer, what the officer is saying, | 03:13:01 |
| 4 | essentially, and what a supervisor is saying, what have you. | 03:13:03 |
| 5 | The user interfaces, I think, are the key along with us | 03:13:06 |
| 6 | knowing all the other fields. | 03:13:11 |
| 7 | THE COURT:  Okay.  And Mr. McMullen or Ms. Silk, | 03:13:12 |
| 8 | what is a reasonable timeline for you to identify that | 03:13:15 |
| 9 | information? | 03:13:18 |
| 10 | MS. SILK:  Well, a couple of things, Your Honor. | 03:13:19 |
| 11 | First of all, as I mentioned a few moments ago, the database | 03:13:20 |
| 12 | field question is largely dependent on the documents | 03:13:25 |
| 13 | underlying the data for each incident, so there's going to be | 03:13:30 |
| 14 | hundreds of different types of documents.  So there's going | 03:13:34 |
| 15 | to be hundreds of different types of fields, depending on the | 03:13:36 |
| 16 | type of incident. | 03:13:40 |
| 17 | So if I'm understanding Your Honor's ruling, | 03:13:41 |
| 18 | you're ordering the City to go ahead and produce all the | 03:13:46 |
| 19 | documents and all the videos from 880 incidents.  If that is | 03:13:49 |
| 20 | the case, then we don't need to go through the exercise of | 03:13:53 |
| 21 | the data.  Then plaintiff can use Mr. Platt or any other | 03:13:56 |
| 22 | expert they want to create their own database, but if your | 03:14:00 |
| 23 | ruling is that we need to provide the documentation and the | 03:14:04 |
| 24 | videos, then we'll get started on them. | 03:14:06 |
| 25 | It's going to take some time, but we will do it | 03:14:08 |

1    and then we can skip these conversations that we've frankly          03:14:10

2    been having for months about the databases, and plaintiff can         03:14:15

3    do with their data whatever they want to do with it.                   03:14:19

4          THE COURT:  Okay.  So did I just hear you say                   03:14:22

5    that it is possible to quickly, then, produce the raw data?            03:14:24

6          MS. SILK:  No, Your Honor.  I'm saying we will                  03:14:31

7    start producing the videos and the documents for the 880.             03:14:32

8          THE COURT:  And you gave an alternative there.                  03:14:37

9    What was that alternative?                                             03:14:41

10         MS. SILK:  I'm not sure that I did, Your Honor.                 03:14:42

11   I said, then, plaintiff, if they want to create a database on          03:14:44

12   their own, they can do so using the documents and the videos          03:14:48

13   that we produce, but if I'm understanding what you just               03:14:51

14   ordered, you ordered us to produce the documents and the             03:14:57

15   videos.                                                                03:15:00

16         THE COURT:  Yes.                                                03:15:00

17         MS. SILK:  And so we will get on that right away;              03:15:01

18   but because we've been ordered to do that, there is no reason         03:15:05

19   to continue the discussions about the data.                           03:15:07

20         MR. WEIL:  Judge, I think we've got to figure                   03:15:11

21   this out a little bit.  We do want to do the database                 03:15:14

22   queries.  It is efficient.  We can do back end.  If we have           03:15:18

23   the user interfaces and the data, we can do this.  Again,             03:15:21

24   what I think what they're proposing is one-off, 880 times            03:15:24

25   over multiple databases, thousands of queries, the exact             03:15:28

| | |
|---|---|
| 1 | thing that they said was unduly burdensome and we're | 03:15:32 |
| 2 | proposing an alternative for.  And that's going to take a | 03:15:36 |
| 3 | long time, which is the reason we want to avoid it. | 03:15:39 |
| 4 |      THE COURT:  Right.  Ms. Silk, I don't understand | 03:15:41 |
| 5 | why that is the only option. | 03:15:44 |
| 6 |      MS. SILK:  Well, Your Honor, the issue is we keep | 03:15:47 |
| 7 | talking in circles around this database issue, and even as we | 03:15:49 |
| 8 | sat here today, Mr. Weil doesn't seem to understand that | 03:15:54 |
| 9 | there's not just the list of fields that we can give to him | 03:15:57 |
| 10 | because across the database system -- it's not just one | 03:16:02 |
| 11 | database, it's multiple databases. | 03:16:06 |
| 12 |      There are multiple types of documents with | 03:16:07 |
| 13 | multiple types of fields.  I mean, it is going to be this | 03:16:10 |
| 14 | endless project of narrowing down what fields we're going to | 03:16:14 |
| 15 | put in the spreadsheet.  There is burden in that, as well. | 03:16:17 |
| 16 |      And I don't know that we're ever going to come to | 03:16:20 |
| 17 | an agreement on it because, as you know, Your Honor, we | 03:16:23 |
| 18 | haven't been able to agree on much in discovery in this case. | 03:16:25 |
| 19 | So if we can just go ahead and we're going to go ahead and | 03:16:28 |
| 20 | start producing the documents, then let's just go ahead and | 03:16:31 |
| 21 | start producing the documents. | 03:16:34 |
| 22 |      THE COURT:  Mr. Weil? | 03:16:38 |
| 23 |      MR. WEIL:  Judge, again, that -- what they're | 03:16:40 |
| 24 | proposing takes very long.  We agree that there's going to be | 03:16:45 |
| 25 | different documents for any particular incident.  Mr. Platt | 03:16:48 |

1    gave the example of doing a query of drivers.  Some people    03:16:51

2    get tickets, some people don't.  For the people that don't    03:16:56

3    get a speeding ticket, that field will be empty, but you can    03:17:00

4    still run the query and that box just happens to be empty.    03:17:03

5    So, again, the database query lets us do a couple of things    03:17:05

6    where, efficiently, it lets us gather and see everything at    03:17:10

7    once.    03:17:14

8         THE COURT:  Now, I know what you wanted, but what    03:17:14

9    Ms. Silk is saying is even identifying the databases and the    03:17:16

10   fields within the databases that you want is itself a process    03:17:21

11   that would take as long or longer than just doing the 880    03:17:26

12   queries.    03:17:30

13        MR. WEIL:  Judge, I might defer to Mr. Platt    03:17:30

14   here, but that's what I'm pushing back against again with the    03:17:31

15   example of a driver -- you know, a sequel search of drivers    03:17:34

16   in Tennessee, you know, people with driver's licenses.  I    03:17:37

17   don't need to do --    03:17:37

18        MR. MCMULLEN:  (Inaudible.)    03:17:37

19        THE REPORTER:  I'm sorry?    03:17:37

20        THE COURT:  Mr. McMullen, I can hear you.  Sorry.    03:17:37

21   I don't know if you wanted me to.    03:17:30

22        MR. WEIL:  Again, I want to find out drivers.  I    03:17:30

23   want to find out information on every driver.  You know, I'm    03:17:52

24   going to pick out five categories, you know, time, did they    03:17:58

25   have insurance, did they get a speeding ticket.  There's five    03:18:00

1    categories of interest.  A lot of people are going to have no    03:18:03

2    speeding tickets.  That field will just be empty, but I get    03:18:06

3    all the other ones.    03:18:11

4         So in the case of an incident, there's going to    03:18:11

5    be, again, like Ms. Silk said, one is a speeding ticket that    03:18:11

6    gets handed out, very limited data on that field.  There's    03:18:15

7    one is a police shooting.  A lot of fields like that.  But    03:18:18

8    that database -- it doesn't matter to the database.  It's all    03:18:21

9    going to gather the same -- it's one search at the same time.    03:18:25

10   Now, again, there may be many fields that aren't relevant.    03:18:29

11   We can talk about that, but we just need the fields.    03:18:34

12        THE COURT:  Well, I think what she's saying is    03:18:37

13   that, you know, Incident No. 1 is a speeding ticket.  It has    03:18:39

14   a report that comprises 18 fields.  Incident No. 2 is an    03:18:44

15   arson investigation.  It has four forms that each have 20    03:18:52

16   fields that are totally different from the fields in Incident    03:18:56

17   No. 1 and the form in Incident No. 1.  And so it wouldn't be    03:18:59

18   the same query.  It wouldn't be the same -- it's almost    03:19:03

19   apples to oranges at that point.    03:19:09

20        Is that right, Ms. Silk?    03:19:11

21        MS. SILK:  (Moving head up and down.)    03:19:14

22        MR. WEIL:  Judge, I keep wanting to refer to    03:19:15

23   Mr. Platt.  But I don't think that's exactly right.  I think    03:19:18

24   what that would just show is a bunch of empty fields for    03:19:18

25   investigator notes, photos, you know, what have you, and    03:19:23

1    those would just be empty.  The database just runs through                03:19:27

2    it, and it's going to just capture that as empty and then                 03:19:31

3    there's nothing there for us to look at.                                  03:19:35

4          But because there's an incident number keyed into                   03:19:37

5    every single one, we just pull everything about that                      03:19:40

6    incident, full stop, good, bad, or indifferent, speeding                  03:19:41

7    ticket, murder, arson investigation, domestic violence                    03:19:45

8    incident, or just there's an incident that's a unique ID.  It             03:19:48

9    gives us everything about that incident.  That's all I want.              03:19:51

10         **THE COURT:**  Mr. Platt, can you help at all?  Do                  03:19:53

11   you have an understanding of -- I know you don't know                      03:19:55

12   anything about MPD's databases, but of how this data might                03:19:58

13   typically be stored?                                                      03:20:02

14         **MR. PLATT:**  I think that what -- so, again, I                    03:20:04

15   have no idea what their database looks like, what fields are             03:20:10

16   in there, or how it's architected.  But in the past when I've            03:20:13

17   done this, it isn't that you would take the data and try to              03:20:18

18   force it all into one big spreadsheet.                                    03:20:25

19         If there was something that was a speeding ticket                   03:20:28

20   and that was a very specific type of thing, you would have               03:20:32

21   one spreadsheet that says here's the 880 incidents that had              03:20:35

22   speeding tickets and you would have just one spreadsheet for             03:20:40

23   that.                                                                     03:20:43

24         And then you would say, okay, here's an instance                   03:20:43

25   where it was, you know, weapon fire, and that has a different            03:20:47

1  sort of format.  Here's just the ones -- it would probably,        03:20:50

2  hopefully, be a much smaller subset, but it would look a           03:20:54

3  little bit different.  It might have different fields in it.        03:20:59

4           So at the end of this, you might -- you wouldn't          03:21:03

5  have one huge massive spreadsheet.  You might have a couple        03:21:04

6  of dozen smaller targeted spreadsheets, each one that points       03:21:05

7  to a very specific type of incident or table from the              03:21:10

8  database.                                                          03:21:16

9           THE COURT:  And is it your understanding, then,           03:21:17

10  that the query -- it would still be one query per database        03:21:19

11  or -- and then as Mr. Weil said just some forms -- excuse me,     03:21:25

12  some entries are blank and some are not, or would it need to      03:21:30

13  be separate queries for each type of --                           03:21:34

14           MR. PLATT:  It would likely -- it would most            03:21:38

15  likely -- and, again, not knowing how the databases are           03:21:41

16  structured or what there is, it would most likely be a query      03:21:43

17  for a data type.  So you would have a query which is --           03:21:47

18  depending upon how it's written -- is a couple of lines of        03:21:50

19  sequel code that says:  Select these data items from this         03:21:53

20  location where incident ID is in this list.                       03:21:57

21           And so you would target that, if you had a table         03:22:02

22  that says -- or a data location that says:  Here are all of       03:22:05

23  the speeding tickets.                                             03:22:09

24           You would have a query that would hit that table,        03:22:10

25  pull out the specific fields that you want, and you could         03:22:14

| | |
|---|---|
| 1 | export that to a spreadsheet. | 03:22:17 |
| 2 | **THE COURT:** Okay. Mr. Weil, I have to say that | 03:22:20 |
| 3 | based on that information from Mr. Platt, it really does | 03:22:23 |
| 4 | sound like what Ms. Silk is saying may be true. Because, you | 03:22:26 |
| 5 | know, I've had some experience with the MPD forms, you know, | 03:22:33 |
| 6 | for a given incident. | 03:22:35 |
| 7 | There are some forms that are common to | 03:22:38 |
| 8 | incidents. There are some forms that are different to | 03:22:40 |
| 9 | incidents, and it may be that the exercise of developing | 03:22:42 |
| 10 | those different searches for different databases and then | 03:22:48 |
| 11 | within those databases, different types of forms, | 03:22:55 |
| 12 | different -- you know, every form is going to have a name, | 03:22:59 |
| 13 | but it's probably going to be called a different field in | 03:23:01 |
| 14 | each form because the forms are different. | 03:23:04 |
| 15 | I may be totally wrong, but that's kind of what | 03:23:07 |
| 16 | I'm hearing. And so if -- it almost sounds like the | 03:23:10 |
| 17 | equivalent of just running 880 individual searches. | 03:23:13 |
| 18 | **MR. WEIL:** Judge, I think -- well, I'll just say | 03:23:19 |
| 19 | this about this about -- if I can talk about the substance -- | 03:23:22 |
| 20 | I don't think that that is likely. Again, you have to go | 03:23:26 |
| 21 | back to the real world and think about what DOJ was looking | 03:23:30 |
| 22 | into. It's police civilian encounters involving -- you know, | 03:23:33 |
| 23 | I think they're generally focused, and if you look at the | 03:23:39 |
| 24 | report, generally focused on encounters that resemble | 03:23:43 |
| 25 | Mr. Nichols in some form, the encounter with Mr. Nichols. | 03:23:47 |

1    So not in the sense of the severity, but there's    03:23:49

2  a police encounter with a civilian, probably a traffic stop,    03:23:53

3  maybe something else.  There's others as well.  But it's not    03:23:57

4  police are coming upon a murder scene or an arson scene.    03:23:59

5  They conduct an investigation of that incident, and they    03:24:03

6  happen to have their body cameras on.  That's not the species    03:24:05

7  of an encounter.  Or police are involved in river rescues and    03:24:09

8  they did that incompetently, and I'm looking at those.    03:24:15

9    You know, there's just a lot of types of events    03:24:18

10 that I don't think the DOJ was looking at.  We can surmise at    03:24:20

11 this point that they weren't that interested based on what's    03:24:24

12 in the report.    03:24:28

13    And so it's -- I think the proposition that we're    03:24:29

14 going to be talking about, just an infinite number of    03:24:31

15 possibilities, is speculative right now.  And, certainly, I    03:24:34

16 think it could be tested by actually just running the sequel    03:24:39

17 query and see what shows up.    03:24:43

18    **THE COURT**:  Ms. Silk?    03:24:50

19    **MS. SILK**:  Your Honor, we are ready to put this    03:24:52

20 behind us.  I don't know how -- another way to say this.  And    03:24:57

21 the quickest way to produce relevant and responsive documents    03:25:01

22 is the way that we've outlined.    03:25:06

23    To go through this process of working for another    03:25:10

24 two weeks to test and run queries and attempt to develop    03:25:15

25 fields or whatever, and we may not ever get to an agreement    03:25:18

1    is just going to add time to the eventual result of us just                03:25:23

2    producing the documents which, by the way, I still am                     03:25:27

3    proposing that we go with the original request to have them               03:25:31

4    narrow it down.                                                           03:25:34

5          But I heard Your Honor's ruling, and I'm just                       03:25:35

6    ready to put this behind us.  This database inquiry will not              03:25:37

7    further that.  It will not further the interest of this case             03:25:42

8    by requiring us to go through this process to just make                   03:25:47

9    things easier for plaintiff.                                              03:25:51

10          **MR. WEIL:**  Judge --                                            03:25:56

11          **THE COURT:**  Well, and, honestly, I don't think                 03:25:58

12    it's going to make it easier for anyone.                                 03:25:59

13          Mr. Weil, I hear what you're saying and in a                       03:26:02

14    perfect world, it certainly would be the most efficient way             03:26:04

15    to get the database -- or to get the information, but it                  03:26:07

16    sounds like the MPD databases are far from a perfect world,             03:26:09

17    and it just doesn't sound conducive to me.                               03:26:13

18          So we are going to let the City produce the                        03:26:17

19    documents in the form that they want to produce them in, find           03:26:19

20    them in the form they want to find them in and, you know,               03:26:23

21    produce them in some reasonable format that will get you this           03:26:26

22    information.  And at this point -- I think that's the most --            03:26:34

23    that's the quickest way to get you the information, and                   03:26:40

24    you've said multiple times that time is an issue here.  So               03:26:42

25    that's what we're going to do.                                           03:26:45

| | |
|---|---|
| 1 | Ms. Silk, how much time do you think you need? | 03:26:47 |
| 2 | **MS. SILK:** Your Honor, I don't know but we'll | 03:26:51 |
| 3 | start on it today, and we can provide a status update to the | 03:26:54 |
| 4 | Court, if you like, in a week or so. | 03:26:58 |
| 5 | **THE COURT:** Okay. That would be great. | 03:27:00 |
| 6 | **MS. SILK:** Okay. | 03:27:02 |
| 7 | **THE COURT:** Okay. So we will ask you to provide | 03:27:10 |
| 8 | a status update on April 18th, please. | 03:27:13 |
| 9 | **MS. SILK:** Yes, ma'am. | 03:27:20 |
| 10 | **THE COURT:** Thank you, Ms. Silk. And, you know, | 03:27:21 |
| 11 | let me just say that these are complicated issues both | 03:27:24 |
| 12 | substantively and technically, and I really appreciate all of | 03:27:28 |
| 13 | the thought and work that all of the parties have put into | 03:27:31 |
| 14 | this. I understand that you-all have not been getting along | 03:27:33 |
| 15 | with each other, but you have all independently been doing a | 03:27:36 |
| 16 | lot of hard work on this, and I appreciate it; and, again, I | 03:27:39 |
| 17 | really appreciate Mr. Platt being here today to offer just | 03:27:43 |
| 18 | incredibly valuable information. | 03:27:48 |
| 19 | So I'm now going to move on to 122, which, | 03:27:51 |
| 20 | Mr. Platt, thankfully for you, has nothing to do with | 03:27:58 |
| 21 | databases, and so if you want to drop off or if you want to | 03:28:01 |
| 22 | stay on, you're welcome to either way. | 03:28:04 |
| 23 | **MR. WEIL:** Mr. Platt, thanks very much. | 03:28:07 |
| 24 | **THE COURT:** Thank you, sir. | 03:28:08 |
| 25 | **MR. PLATT:** Thank you, Your Honor. | 03:28:10 |

| | |
|---|---|
| 1 | **THE COURT:** Okay. 122 seems like a complete | 03:28:11 |
| 2 | nonissue for me. | 03:28:13 |
| 3 | Mr. Weil, plaintiff is not asking for a list of | 03:28:14 |
| 4 | documents being reserved for impeachment, and you're not | 03:28:17 |
| 5 | asking for a privilege log of those documents. You just want | 03:28:20 |
| 6 | to ensure that the documents themselves have been produced. | 03:28:23 |
| 7 | Is that right? | 03:28:26 |
| 8 | **MR. WEIL:** That's correct, Judge. | 03:28:28 |
| 9 | **THE COURT:** And, Mr. McMullen, I agree that the | 03:28:30 |
| 10 | thought processes of counsel about what may be used for | 03:28:32 |
| 11 | impeachment, that might be privileged, but the documents | 03:28:35 |
| 12 | themselves, to the extent they are not privileged, should be | 03:28:38 |
| 13 | produced. Under the *Vargas* case, very clear law. | 03:28:41 |
| 14 | Are there any documents that are being withheld | 03:28:45 |
| 15 | on that basis that they're solely for use in impeachment. | 03:28:48 |
| 16 | **MR. MCMULLEN:** No, Your Honor. We have produced | 03:28:52 |
| 17 | all relevant documents. | 03:28:53 |
| 18 | **THE COURT:** Okay. | 03:28:53 |
| 19 | **MR. MCMULLEN:** Okay. But here's the problem I | 03:28:55 |
| 20 | have with it. We don't know when the witnesses are going to | 03:28:58 |
| 21 | be dishonest about something. You don't know -- | 03:29:03 |
| 22 | **THE COURT:** Oh, sure. | 03:29:05 |
| 23 | **MR. MCMULLEN:** -- if you need to impeach them and | 03:29:07 |
| 24 | you don't what -- we don't want to be limited. I mean, it | 03:29:09 |
| 25 | was a point when there were things said that we found out -- | 03:29:11 |

1    you've read the record -- that are totally inconsistent.  So        03:29:15

2    I don't want to be limited when I'm cross-examining a               03:29:18

3    plaintiff and they say my name is not XYZ.                          03:29:21

4              Now, I can't show their driver's license because         03:29:25

5    I didn't say that was going to be used for impeachment.  So I       03:29:28

6    think asking for that information, I have no idea what the          03:29:33

7    witnesses are going to be inconsistent about which would           03:29:37

8    cause me to do that.                                                03:29:40

9              Now, relevant documents that we have, we produced         03:29:41

10   them pursuant to the rule.                                          03:29:45

11             **THE COURT**:  Okay, good.  Okay.  So, of course,        03:29:47

12   you can't produce what you don't know about.  All you can          03:29:49

13   produce is what has been asked for, and you say that you've         03:29:53

14   produced all relevant documents.  If you come to trial and a       03:29:56

15   witness says something that triggers the City to go pull a         03:30:01

16   new document and try and introduce that for impeachment            03:30:06

17   purposes, I think at that point, that's when the argument          03:30:10

18   would come up where plaintiff would say, this is responsive        03:30:12

19   to XYZ requests for production, it should have already been        03:30:16

20   produced.                                                           03:30:20

21             And then the City would say, it's not responsive         03:30:21

22   to those and here's why, and we only know about those now          03:30:23

23   because of the witness's testimony.  And that is all, you          03:30:27

24   know, a common -- common fodder for trial squabbles over           03:30:29

25   exhibits.                                                           03:30:34

70

| | |
|---|---|
| 1 | But I think the key piece of information right | 03:30:34 |
| 2 | now is that there's nothing being withheld on the basis of | 03:30:38 |
| 3 | that objection, and so I think we can move on from that. | 03:30:42 |
| 4 | Mr. Weil, do you agree? | 03:30:45 |
| 5 | MR. WEIL:  I do, Judge, and as long as production | 03:30:46 |
| 6 | is made pursuant to 26(e) where it's updated, that's fine | 03:30:48 |
| 7 | with us. | 03:30:52 |
| 8 | THE COURT:  Absolutely.  I'm sure the City is | 03:30:53 |
| 9 | well aware of its duty to supplement. | 03:30:55 |
| 10 | MR. MCMULLEN:  Your Honor, I would like them to | 03:30:59 |
| 11 | do the same. | 03:31:01 |
| 12 | THE COURT:  Of course, the rule applies to | 03:31:01 |
| 13 | everyone. | 03:31:04 |
| 14 | MR. MCMULLEN:  Okay.  I just want to make sure | 03:31:05 |
| 15 | Mr. Weil understands that he has that obligation too because | 03:31:06 |
| 16 | we've been getting documents lately by mistake that they've | 03:31:09 |
| 17 | obviously had that have never been produced, so that's a | 03:31:13 |
| 18 | cause of concern, and I know the Court knows what I'm talking | 03:31:16 |
| 19 | about. | 03:31:19 |
| 20 | MR. WEIL:  Judge, on that -- | 03:31:20 |
| 21 | THE COURT:  Mr. Weil, I'm sure there's a lot of | 03:31:22 |
| 22 | things you want to say.  That's not before me today.  That's | 03:31:26 |
| 23 | not what we're getting into.  Everybody is aware of those | 03:31:28 |
| 24 | discovery obligations.  Everybody is aware that mistakes | 03:31:32 |
| 25 | happen during litigation and that's what 26(e) is for.  If | 03:31:35 |

| | |
|---|---|
| 1 | there's a violation of that, then that's what motions to | 03:31:38 |
| 2 | compel or for sanctions are for.  I think everyone is aware | 03:31:43 |
| 3 | of their obligations. | 03:31:46 |
| 4 | Okay.  Mr. Weil, anything else today? | 03:31:48 |
| 5 | MR. WEIL:  Just to be clear, we'll respond to the | 03:31:53 |
| 6 | request.  I don't know that we've received a request for | 03:31:55 |
| 7 | documents we might use in impeachment, but we'll obviously | 03:31:58 |
| 8 | respond to the defense request as they exist. | 03:32:02 |
| 9 | THE COURT:  Okay.  Mr. McMullen, anything else on | 03:32:05 |
| 10 | your end? | 03:32:07 |
| 11 | MR. MCMULLEN:  (Inaudible.) | 03:32:12 |
| 12 | THE COURT:  Mr. McMullen, I can't hear you.  I'm | 03:32:14 |
| 13 | sorry.  I don't know if it's me.  Okay. | 03:32:18 |
| 14 | MR. MCMULLEN:  Okay.  I want to make sure I | 03:32:18 |
| 15 | understand.  We produced all documents relevant to the rules. | 03:32:20 |
| 16 | Now, which ones we would have to use for impeachment, we | 03:32:23 |
| 17 | can't identify that until a witness testifies inconsistent | 03:32:26 |
| 18 | with -- | 03:32:29 |
| 19 | THE COURT:  Mr. McMullen, I think Mr. Weil was | 03:32:30 |
| 20 | just saying that he doesn't recall a reciprocal request for | 03:32:32 |
| 21 | production from you-all to the plaintiff.  So -- | 03:32:36 |
| 22 | MR. MCMULLEN:  Yes.  Yes, I understand, but the | 03:32:39 |
| 23 | request to me is irrelevant.  They should have produced all | 03:32:41 |
| 24 | documents pursuant to the rule anyway as we did.  That's why | 03:32:44 |
| 25 | we think their request is irrelevant.  I mean, we produced | 03:32:48 |

1    everything we have, and they should have produced everything    03:32:55

2    that they have.  Identifying what we're going to use as    03:32:57

3    impeachment, we can't do that at this point.  We don't know    03:33:02

4    what the witnesses are going to say on the stand.    03:33:06

5            THE COURT:  I think what we're just hearing is    03:33:08

6    just a difference in litigation strategy.  You know, some    03:33:11

7    people -- I've seen that request for production before.  I've    03:33:15

8    seen people not ask it.  So, you know, it's purely within    03:33:19

9    you-all's preference.    03:33:21

10            Again, it doesn't change the fact that if you get    03:33:23

11    to trial and somebody tries to introduce a document that is    03:33:24

12    relevant for some reason, but was not previously produced,    03:33:28

13    you're probably going to have a problem whether or not it's    03:33:32

14    used for impeachment.    03:33:35

15            Okay.  All right, you-all.  Thank you for getting    03:33:38

16    together on a Friday afternoon.  Everybody have a good    03:33:41

17    weekend.  I appreciate all the hard work.  Court is    03:33:44

18    adjourned.    03:33:47

19            (Adjournment.)

20

21

22

23

24

25

73

1                        **C E R T I F I C A T E**

2

3

4          I, TINA DuBOSE GIBSON, do hereby certify that the

5  foregoing 72 pages are, to the best of my knowledge, skill

6  and abilities, a true and accurate transcript from my

7  stenotype notes of the motion hearing held on the 11th day of

8  April, 2025, in the matter of:

9

10 WELLS

11 vs.

12 CITY OF MEMPHIS

13

14

15 Dated this 14th day of April, 2025.

16

17

18

19                     S/Tina DuBose Gibson

20                     _____
                       TINA DuBOSE GIBSON, RPR, RCR
21                     Official Court Reporter
                       United States District Court
22                     Western District of Tennessee

23

24

25

UNREDACTED TRANSCRIPT