# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| RowVaughn Wells, Individually and as Administratrix of the Estate of Tyre Deandre Nichols, Deceased, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:23-CV-02224 JURY DEMAND |
| The City of Memphis, Tennessee; Chief Cerelyn Davis; Emmitt Martin III; Demetrius Haley; Justin Smith; Desmond Mills, Jr.; Tadarrius Bean; Preston Hemphill; Robert Long; JaMichael Sandridge; Michelle Whitaker; DeWayne Smith, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**REPLY TO PLAINTIFF'S RESPONSE TO CITY OF MEMPHIS STATUS REPORT AND REQUEST FOR HEARING**

Plaintiff's Response is an exemplar of a larger issue: Plaintiff's counsel refuses to compromise, even when that compromise is Court-ordered. As in all previous meet-and-confers, counsel circle around the same arguments in an attempt to force decisions based on hypotheticals and do not work with the material available to them. For example, Plaintiff's Response repeatedly estimates that these bulk queries could "enable the gathering much of the 'Related Information' . . . in a matter of days." (ECF No. 396, PageID 5902–03.) This is purely hypothetical; in fact, despite Plaintiff's assertion otherwise, Mr. Platt never opined about a timeline for creating and executing bulk queries at the April 11 hearing. (*See* ECF No. 389, PageID 5828, 5830–34, 5841–42, 5862, 5872–73, 5877 (containing all of Mr. Platt's testimony).)

To the contrary, it is unlikely that the City could identify and produce the information from bulk queries "in a matter of days."[1] This conclusion is not based in some nebulous hypothetical. The City has already gone through this exercise for Plaintiff's Request Nos. 73 and 96. Those Requests are significantly narrower, and it still took MPD *weeks* to produce the data through this bulk query mechanism.

Here, the Court ordered a <u>real</u> solution: the City will make available all videos for 880 incidents and produce all Related Information for those 880 incidents. Plaintiff is already in possession of some of this information, and the City's first production will be made on or about May 2, 2025. This solution is a sensible compromise. It strikes a balance: although burdensome for the City, this compromise provides Plaintiff with the information she seeks while not requiring the City to plan, test, and generate queries and data into some amorphous format that ultimately does not give Plaintiff the actual documents she will inevitably require.

---

[1] As explained during the April 11 hearing, MPD has the expertise and capability in-house to construct and run bulk SQL queries. An outside expert is unnecessary. (*See* ECF No. 389, PageID 5835.)

Furthermore, Plaintiff's Response is yet another attempt to re-litigate issues before the Court. The Court has heard this argument and has ruled. Despite the Court's order resolving the dispute, Plaintiff's counsel still refuse to accept a solution not of their own design. Instead, Plaintiff's counsel now attempt to circumvent the Federal Rules through a procedurally improper response to the City's Status Update in order to re-litigate this issue and renew a request for the same exact relief the Court declined to grant.[2] Plaintiff's counsel have engaged in the same pattern of conduct during the numerous discovery disputes between the parties. It has caused hours of unproductive meet-and-confers. Consequently, this was the genesis of the City's preference to meet-and-confer via written communications. Regardless of whether it is clear the parties are at issue, Plaintiff's counsel insists on revisiting the same discussions to make the same arguments over and over in an effort to coerce a different position from the City and, in this case, from the Court. This has resulted in an endless cycle of meet-and-confers that have wasted both the Court's and the parties' time and resources. This should not continue.

I.  **PLAINTIFF'S RESPONSE IS IMPROPER.**

   A.  **Plaintiff's Response Is an Improperly Asserted Objection to the Magistrate Judge's Order.**

Plaintiff's Response is improper because it merely re-argues the same points and seeks the ***exact same relief*** requested in the motion to compel briefing and during the April 11, 2025 hearing. The Court has already considered these arguments and made a ruling. (*See* ECF No. 388.) Thus, the relief Plaintiff now seeks should be requested under Rule 72 objections to the Magistrate Judge's order. Fed. R. Civ. P. 72(a) ("When a pretrial matter not dispositive of a

---

[2] Of note, this is not the first time Plaintiff's counsel has ignored the Federal Rules in such a manner. In December, the City raised this very concern with the Court in its Response in Opposition to Plaintiff's Motion for Order Setting Comprehensive Briefing Schedule. (ECF No. 249, PageID 2918–23.)

2

party's claim or defense is referred to a magistrate judge to hear and decide, . . . and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy."); *see also* L.R. 72.1(g)(1) ("An appeal from an order of a magistrate judge determining a pretrial matter shall be filed . . . within fourteen days after being served with a copy of the order. Any other party may file a response within 14 days after being served with a copy of such appeal."). Plaintiff should not be permitted an unauthorized second bite at the apple by using a procedurally improper process to request the Magistrate Judge reconsider her ruling.[3]

If Plaintiff feels the Magistrate's ruling was clearly erroneous or contrary to law, as is the standard under Rule 72, then the proper procedure is to file objections with the District Judge. That has not been done. Therefore, the Court should decline to consider Plaintiff's Response. *See* Fed. R. Civ. P. 72(a); *see also* L.R. 72.1(g)(1) ("The presiding district judge may reconsider any order determining a pretrial matter where it has been shown that the magistrate judges' order is clearly erroneous or contrary to law.").

### B.     Plaintiff Is Not Entitled to a Response Without Leave from the Court.

The City's Status Update is not a motion, and as such, Plaintiff is not entitled to a response as a matter of course. Plaintiff should have filed a motion with the Court requesting leave to file a response. Such a motion for leave would be subject to the Local Rule 7.2(a)(1)(B) requirement to consult with counsel. Had Plaintiff's counsel followed the proper procedure, the City could have cleared up several of Plaintiff's misconceptions discussed in the following section of this Reply. *See infra* Sect. II.

---

[3] *See infra* Sect. I.B. (further discussing the procedural impropriety of ECF No. 396.)

3

## II. THE CITY'S PLAN FOR COMPLIANCE WITH THE COURT'S ORDER.

### A. The Rolling Document Production Will Minimize Any Prejudice to Plaintiff.

The City has committed to a rolling document production <u>starting on or about</u> May 2, 2025 and <u>finishing on or before</u> mid-July. (ECF No. 392, PageID 5888.) Plaintiff's assertion that "[i]n reality [the production will take] more than 90 days—the City proposes 90 days for MPD to gather responsive documents, and then additional time for the City to review and produce them" misstates the City's Status Update. (ECF No. 396, PageID 5900.) To be clear: the City expects to *produce all* responsive materials to the parties *within ninety days*.[4]

Plaintiff's Response misses another crucial point by indicating that they expect a singular production containing a massive dump of documents in mid-July. The City will engage in a rolling production starting on or about May 2; consequently, Plaintiff can, *inter alia*, begin identifying, locating, and interviewing witnesses as early as May. Likewise, as Plaintiff's counsel begins reviewing the documents, they will likely gain a better understanding of the information available and what types of information are relevant. There is nothing stopping Plaintiff from issuing additional discovery requests. For example, Plaintiff points to the possible need for the full disciplinary records for any officers involved in the 880 incidents. (ECF No. 396, PageID 5901.) Plaintiff has not made such a request to the City, but the City does not foresee an objection to producing relevant personnel records. While any additional request will add to the burden of production, in light of the overall burden, adding disciplinary files to the list of searches is feasible.

---

[4] Even if the City needs a few extra days, any review by the City's counsel would be minimal. There is no dispute that the documents being gathered are responsive, so any review would focus on ensuring proper confidentiality designations, filtering for privileged documents, and organizing the documents for an orderly production as opposed to a substantive analysis to determine responsiveness.

4

In addition, the City has already produced a number of documents responsive to other requests that are also responsive to Request No. 133. *See also infra* note 5. Given that Plaintiff has access to the DOJ audit trails, which contain the unique Evidence IDs, Plaintiff has the means to begin reviewing these responsive documents for the information outlined in page 2 of her Response. (*See* ECF No. 396, PageID 5902 (identifying items Plaintiff's counsel intends to spend time doing with the responsive documents).) Nevertheless, the City will provide an updated production inventory identifying these documents by bates number in short order.

      **B.**      **Plaintiff Misstates the Plan for Production of Video Links.**

Plaintiff's response states that "[t]he City has *already produced* hyperlinks for each of the videos . . . ." (ECF No. 396, PageID 5902 (emphasis in original).) This is incorrect. The City has not already produced these links, and the City is unsure how Plaintiff's counsel came to this conclusion. The Response further characterizes the ability for the City to bates label the videos prior to production as an unnecessary and "time-consuming" process. (*Id.* at PageID 5901.) Bates labeling is necessary for the orderly production of discovery materials, and the process for bates labeling the videos is not the time-consuming or burdensome part of the production process. The City has never indicated otherwise. This is actually relatively simple.

      **C.**      **The City Has Not Caused Delay.**

Plaintiff's Response points a finger at the City, claiming the City's conduct has caused delay. The City is confused by this accusation. As explained below, the parties were at issue regarding Request No. 133 after a meet-and-confer on January 22. At that time, Plaintiff had satisfied her obligations under Rule 37 to "in good faith confer[] . . . in an effort to obtain [the discovery] without court action." Fed. R. Civ. P. 37(a)(1). Thus, Plaintiff could have filed the March 4 Motion to Compel as early as January 22, 2025, but her counsel chose not to do so. Curiously, Plaintiff's counsel characterizes their conduct as "unflagging in Rule 37 enforce it

5

[sic] since then." (ECF No. 396, PageID 5901.) Clearly, they have not. From the City's view, Plaintiff's counsel engaged in unproductive discussions and correspondence with the City, despite the City repeatedly stating that it intended to stand on its objections. Thus, any delay is, in reality, the result of Plaintiff's counsel's reluctance to seek Court resolution on this dispute, as would be the normal course of action when two parties are at issue.

Plaintiff served the City with her Sixth Set of Request for Production ("Sixth RFPs") on November 25, 2024, including Request Nos. 120 through 194. Relevant here is Request No. 133, which seeks: "All documents the City has provided or produced to the DOJ since January 7, 2023 relating to or in connection with the DOJ Pattern or Practice Investigation."

The City served its initial responses and objections on December 26, 2024, largely objecting to the Sixth RFPs as untimely, on the basis that the time period for written discovery had closed. (ECF No. 324-2.) On January 3, 2025, the Court held a hearing and entered the Third Amended Scheduling Order, which extended the discovery period by several months. (ECF Nos. 273, 276.) Pursuant to its obligations under Federal Rule of Civil Procedure 26(e), the City served revised responses to the Sixth RFPs on January 28, 2025. (ECF No. 324-4.) In addition, upon a special request by Plaintiff, the City separately served its revised response to Request No. 133 on January 15, 2025. (ECF No. 324-3.) The City's response, in full, states:

> **RESPONSE:** The City is producing documents responsive to this Request. The responsive documents are identified by Bates Number in the Production Inventory.
>
> The City objects to producing certain law enforcement databases that were produced to the DOJ on the grounds of relevancy and burdensomeness. The databases contain highly sensitive information about citizens, police officers, and ongoing investigations that are irrelevant to this litigation, and which would require a disproportionate amount of cost and effort to segregate out that information. The City is withholding access to those databases it provided to the DOJ.

(*Id.* at PageID 4588.) The same day, the City made its twenty-second document production, which included 233 documents responsive to this request.

6

On January 17, 2025, Plaintiff's counsel sent a letter to the City setting out Plaintiff's disagreements with the City's response to Request No. 133. A copy of this letter is attached as Exhibit 1. The parties met and conferred regarding Request No. 133 via videoconference on January 22, 2025. (*See* ECF No. 324-5, PageID 4615.) By the end of this call, it was clear to the City that the parties were at issue regarding the databases. Over the next several weeks, Plaintiff and the City corresponded regarding this and other discovery requests on several occasions, often exchanging lengthy emails. (*See, e.g.*, ECF Nos. 324-5, 324-6, 324-7.) In the spirit of cooperation, the City agreed to provide some additional information about the databases, and the City agreed to produce the DOJ investigators' Evidence.com audit trails. (*See* ECF No. 324-6, PageID 4635, 4637–38, 4640–41, 4645.) On February 14, 2025, the City's twenty-fourth document production included the eleven audit trails.[5] (*See id.* at PageID 4633.) Ultimately, however, these communications only further solidified that the parties were at issue regarding Request No. 133, and Court intervention would be required to resolve the dispute.

Six weeks after the parties' initial meet and confer regarding Request No. 133, on March 4, 2025, Plaintiff filed a Motion to Compel and for Court Case Management. (ECF No. 324.) The Court held a hearing on March 19, 2025, during which the Court ordered the parties to spend three more weeks attempting to resolve several outstanding discovery disputes, including Request No. 133. (ECF No. 345.) The parties were still unable to resolve the dispute as to Request No. 133 after three hours of live videoconferences and several more emails. (*See, e.g.*, ECF No. 378-1, PageID 5563–64, 5573–84; ECF No. 378-2, PageID 5593–94.)

---

[5] The City has previously produced documents that fall within the "Related Information" category as defined by the Court. (ECF No. 388, PageID 5808.) In the interest of time, and to prevent unnecessary delay, the City has been working to identify these documents. The City will provide the parties with an updated production inventory identifying these documents by bates number, as required by Rule 34(b)(2)(E)(i).

4896-8124-1657

The Court heard argument from the parties regarding Request No. 133 for almost an hour and a half during the April 11, 2025 hearing. (*See* ECF Nos. 388, 389.) The Court ultimately declined to adopt Plaintiff's approach for obtaining responsive information. (*See* ECF Nos. 388, 389.) Instead, the Court ordered the City to produce the videos and all Related Information for the approximately 880 unique incidents it identified through the DOJ audit trails. (*See* ECF Nos. 388, 389, PageID 5865–66, 5876.) Thus, the dispute was resolved.

The City, as directed by the Court, submitted a status update on April 18, 2025 outlining its plan for producing the responsive information. (ECF No. 392.) Given Plaintiff's counsel's previous conduct of disregarding the Federal Rules, it was no surprise when a few days later—without leave from the Court or consultation with the parties—Plaintiff filed a "response" to the City's Status Update. (ECF No. 394.)

As outlined above, if any party contributed to the delay in resolution of the present issue, it was Plaintiff's counsel, not the City.

## III.   THE CITY OBJECTS TO THE APPOINTMENT OF A NEUTRAL.

The Court already declined to adopt Plaintiff's approach to Request No. 133, which included the appointment of a neutral. (ECF No. 388, PageID 5809); *see supra* Sect. II.C. Furthermore, appointment of a third-party neutral with expertise in bulk queries and SQL is unnecessary, as MPD has the resources and expertise in-house. (*See* ECF No. 389, PageID 5835 (explaining MPD's capabilities regarding bulk queries).)

That said, to the extent the Court is inclined to consider Plaintiff's renewed request to appoint a neutral to facilitate discovery, the City specifically objects to the appointment of Mr. Platt as such neutral. Plaintiff's request for a court-appointed neutral was never discussed with the City, and as such, the City was not afforded the opportunity to present its position on this issue or propose alternative options. While the City was minimally aware of Plaintiff's

8

engagement of Mr. Platt, the City first learned of Plaintiff's desire for a court-appointed neutral when the parties filed their position statements on April 9, 2025. (ECF No. 378.) Plaintiff should be required to consult with the parties before making such a request directly with the Court.

Mr. Platt's prior experience as a neutral in *Perez v. DirecTV*, No. 8:16-cv-01440-JLS-DFM (C.D. Cal.) is not a "closely analogous SQL matter" nor does this experience qualify him to serve as a neutral in this case (*See* Plaintiff's Position Statement, ECF No. 378-1, PageID 5547.) In *Perez*, the responding party, DirecTV, could not figure out a way to locate in its system basic contact information for potential class members, such as emails and phone numbers. *Perez*, 2021 WL 840437, at *1–2. DirecTV's own expert firm was unsuccessful in isolating this information. *Id.* at *3. As a result, the court eventually ordered that the parties agree on a neutral to extract the data necessary to identify the class members. *Id.* at *5.

*Perez* is distinguishable from the present issue in a number of ways. First, the discovery request at issue in *Perez* was an interrogatory, not a document request. *Id.* at *1. Second, the court specifically noted that the request was narrow, and the information sought was relevant: contact information for the putative class. *Id.* at *3–4. Third, the court emphasized that appointing a neutral ESI liaison was something it viewed "as a last resort" and something the court had never done before. *Id.* at *4. Fourth, the court did not simply appoint Mr. Platt based on a unilateral request by the Plaintiff. Rather, the court ordered the parties to "meet and confer . . . to agree upon a neutral ESI vendor." *Id.* at *5. If the parties were unable to agree, the court further ordered them to "each submit their preferred vendor" for the court to choose. *Id.*

Here, Request No. 133 is not targeted to specific information stored in one database. While the Court has determined that limiting the universe of the request to the 880 incidents narrows the request to some extent, the data Plaintiff still seeks lacks the specificity of the

9

request at issue in *Perez*. (*See* ECF No. 389, PageID 5815.) Plaintiff seeks *all* data associated with approximately 880 incidents dating back for an unknown period of time and contained in multiple databases. The universe of data available for these 880 incidents is a far cry from simply seeking basic contact information for individuals. Thus, the queries Mr. Platt constructed in *Perez* are not analogous to the queries needed to identify and isolate the massive amounts of data sought here.

Further, the City has concerns about Mr. Platt's impartiality in this case. Mr. Platt has been engaged by Plaintiff's counsel for an unknown period of time and for unknown costs and fees associated with his services. Likewise, the City has not had the opportunity to cross-examine Mr. Platt regarding his knowledge, expertise, and qualifications. If, however, the Court is considering Mr. Platt, the City requests production of all communications between Mr. Platt and Plaintiff's counsel and information regarding Mr. Platt's fees and any monies paid or incurred related to this matter prior to any appointment.

Ultimately, the City thinks the Court's original ruling declining to appoint a neutral to facilitate ESI discovery in this case is the correct ruling.

**IV.   CONCLUSION**

For these reasons, the City respectfully requests the Court decline to consider Plaintiff's Response to City of Memphis Status Report and Request for Hearing because it is improper under Rule 72. The City further requests that Plaintiff's improper renewed requests for a hearing and appointment of a neutral be denied.

10

4896-8124-1657

Dated: April 30, 2025

        Respectfully submitted,

        **BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.**

        *s/ Bruce McMullen*
Bruce McMullen (#18126)
Jennie Vee Silk (#35319)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 526-2000
bmcmullen@bakerdonelson.com
jsilk@bakerdonelson.com

*Attorneys for Defendant City of Memphis, Chief Cerelyn Davis in her Individual Capacity, and Dewayne Smith as Agent of the City of Memphis*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served upon all counsel of record and the Guardian Ad Litem via the Court's electronic filing system on April 30, 2025.

*s/ Bruce McMullen*
Bruce McMullen

11

4896-8124-1657