**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| ROWVAUGHN WELLS,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF MEMPHIS, *et al.*,<br><br>Defendants. | Case No. 2:23-cv-02224-MSN-ATC<br><br>JURY DEMAND |

**PLAINTIFF'S RESPONSE TO CITY OF MEMPHIS'S MOTION TO COMPEL**

Plaintiff RowVaughn Wells and subpoena respondents Rodney Wells, Keyana Dixon, and Lenge Dupree, through their counsel,[1] submits this response in opposition to the City's Motion to Compel Production of Documents Pursuant to City's Subpoenas Duces Tecum ("Motion" or "Mot.") (ECF 383).[2]

## INTRODUCTION

The City's Motion seeks to enforce sweeping non-party subpoenas that the City issued seeking years of irrelevant, intrusive information from Mr. Wells (Plaintiff's husband and Tyre Nichols' step-father), Ms. Dixon (Plaintiff's daughter and Mr. Nichols' sister), and Mr. Dupree (Plaintiff's son and Mr. Nichols' brother). The City's subpoenas seek the following:

[1] Plaintiff's counsel Romanucci & Blandin LLC represents Mr. Wells, Ms. Dixon, and Mr. Dupree in connection with the subpoenas at issue in the City's Motion. For simplicity, the undersigned counsel refers to itself as "Plaintiff's counsel" in this brief.

[2] Plaintiff files this Response under seal pursuant to the Court's December 6, 2024 Order (ECF 253), and for the reasons stated in Plaintiff's prior filings on the parties' sealing disputes (ECF 233, 235, 262) and because it discusses material that is designated as Confidential under the Protective Order in place (ECF 213).

- *Any* communications that Mr. Wells, Ms. Dixon, and Mr. Dupree had *about anything* with their deceased stepson/brother, for *a year* before Mr. Nichols was killed. (Request to all subpoena respondents, No. 1, *see* ECF 383-1, 383-2, 383-3)

- *Any* communications that Mr. Dupree and Ms. Dixon had about their deceased brother's killing, their deceased brother's minor child, "the GoFundMe," or "this litigation" with their mother, their stepfather, and Mr. Nichols' minor child's mother, over *more than six years*. (Requests to Ms. Dixon, Nos. 2, 3, 4, *see* ECF 383-1; Requests to Mr. Dupree Requests Nos. 2, 3, 4, *See* ECF 383-2)

- *Any* communications that Mr. Wells had about his deceased stepson's killing, his deceased stepson's minor child, "the GoFundMe," or "this litigation" with Mr. Nichols' minor child's mother, over *more than six years*. (Requests to Mr. Wells, No. 2, *see* ECF 383-3)

- *Any* communications that Mr. Wells had with his wife (the Plaintiff) about his deceased stepson's killing, his deceased stepson's minor child, "the GoFundMe," his deceased stepson's "move to Memphis," and "this litigation," *with no time limits*. (Requests to Mr. Wells, No. 3, *see* ECF 383-3)

- *Any* communications that Ms. Dixon and Mr. Dupree had "*with anyone regarding anything*" about their "relationship" with their deceased brother, or about his minor child or the minor child's mother, *with no time limits*. (Requests to Ms. Dixon, Nos. 6-8, *see* ECF 383-1; Requests to Mr. Dupree, Nos. 6-8, *see* ECF 383-2)

- *Any* communications that Mr. Wells, Ms. Dixon, and Mr. Dupree had with Plaintiff's counsel about "anything related to Mr. Nichols," "the administration of Mr. Nichols' estate," or "this litigation." (Requests to Mr. Wells, No. 4, *see* ECF 383-3; Requests to Ms. Dixon, No. 5, *see* ECF 383-1; Requests to Mr. Dupree, No. 5, *see* ECF 383-2)

- *Any* communications that Ms. Dixon and Mr. Dupree had "with *anyone*" about "*anything* related to [their] relationship" with their deceased brother, "the administration of Mr. Nichols' estate," or "this litigation," *with no time limits*. (Requests to Ms. Dixon, No. 6, *see* ECF-383-1; Requests to Mr. Dupree, No. 6, *see* ECF 383-3)

- *Any* communications that Mr. Wells had "with *anyone* regarding *anything*" related to "the administration of Mr. Nichols' estate" or "this litigation." (Requests to Mr. Wells, No. 5, *see* ECF 383-3)

- *Any* communications that Mr. Wells, Ms. Dixon and Mr. Dupree had with *anyone* regarding Mr. Nichols' minor child, *with no time limits*. (Requests to Mr. Wells, No. 6, *see* ECF 383-3; Requests to Ms. Dixon, No. 7, *see* ECF-383-1; Requests to Mr. Dupree, No. 7; *see* ECF 383-2)

- *Any* communications that Mr. Wells, Ms. Dixon and Mr. Dupree had with *anyone* regarding Mr. Nichols' minor child's mother, *with no time limits*. (Request to Mr. Wells, No. 7, *see* ECF 383-3; Requests to Ms. Dixon, No. 8, *see* ECF 383-1; Request to Mr. Dupree, No. 8, *see* ECF 383-2)

- *Any* communications that Mr. Dupree had with *other non-parties* (Kris Volker and Christina Chacon) *about anything*, over *more than six years*. (Requests to Mr. Dupree, Nos. 9-10, *see* ECF 383-2)

As a threshold matter, with respect to the subpoena to Mr. Dupree, the City's Motion must be denied because this Court lacks jurisdiction. Additionally, the scope of these non-party subpoenas is staggering, and the City's Motion should be denied entirely. The City's requests often lack any limitation by recipient, subject matter, or time period and seek *any* written communications of any kind—including text messages, emails, and private social media messages. Some of the requests even seek the subpoena respondents' communications with *other non-parties* about *anything* over multiple years.

The requests probe many of life's most sensitive areas: personal finances, the relationship and communications between adult siblings about literally everything for years, the relationship between parents and their adult children, communications concerning young children, about former and potentially tumultuous romantic relationships. The City's subpoenas are facially overbroad, not proportionate to the needs of this case, and are calculated to harass, embarrass, and intimidate Plaintiff and her family. The requests are nothing more than a fishing expedition into the personal lives of this family—an attempt to dig up anything the City might be able to use to smear the character of Plaintiff, Mr. Nichols, or their loved ones.

These issues are of course not new to the Court. *See* ECF 211 (Plaintiff's Motion for Protective Order to bar the City's subpoenas to the non-party Volker family). That is because the City's subpoenas to Mr. Wells, Ms. Dixon, and Mr. Dupree are emblematic of the broader pattern of inappropriate third-party written discovery that the City is attempting to conduct in this case. Since September 2024, the City has issued nine document subpoenas—one for *each* non-party the City has subpoenaed for deposition. Like the subpoenas to the Volkers, the City's subpoenas to Mr. Wells, Mr. Dupree, and Ms. Dixon seek expansive, often vaguely defined categories of non-parties'

private text messages, emails, social media messages, and other communications—much of which has little if any relevance to this case. This sets an entirely unreasonable and troubling precedent, effectively requiring every non-party deponent to surrender their cell phone to the City. The City's abusive discovery practices must end.

## DISCUSSION

### I. The Parties Efforts to Meet and Confer

The City characterizes the parties' efforts to meet and confer on these subpoenas as a "waste of the parties' time and resources." *See* Mot. at 6. While the City is correct that the meet and confer on April 2, 2025 did last over an hour, much of the time was spent discussing *other* topics at the City's urging, which prevented the parties from making headway on the three subpoenas. As the City notes, the parties only discussed one of the subpoenas—for Ms. Dixon. *Id.* The parties never discussed the subpoenas for Mr. Wells or Mr. Dupree, and therefore never had the opportunity to attempt to reach a compromise on the breadth of those subpoenas, or to report whether Mr. Wells or Mr. Dupree possessed responsive documents.

After the meet and confer, the City sent an email recapping the discussion and acknowledged that "further discussion may be required" concerning the subpoenas for Mr. Dupree and Mr. Wells. *See* ECF 383-8 at 4. Plaintiff's counsel responded to the City's email the next day, in an effort to continue the discussion and resolve the objections. Plaintiff's counsel stated that Plaintiff maintained her objections to the subpoenas, because "the requests to Ms. Dixon, Mr. Dupree, and Mr. Wells are inappropriate fishing expeditions into highly private communications, which must, at a minimum, be narrowed to target some relevant subject matter." *See* ECF 383-7 at 1. Plaintiff's counsel noted that he had previously invited the City to propose communication search terms to discuss, and that the City never did so. *Id.*

The City has refused to propose search terms to aid Plaintiff determine whether she persisted in her objections. The City declined to provide any guidance or propose search terms on these broad requests, and never sought to follow up with counsel. Instead, the City filed its Motion to Compel seven days after Plaintiff counsel's April 3, 2025 invitation to propose search terms.

## II. This Court Does Not Have Jurisdiction to Enforce the City's Subpoena to Mr. Dupree.

The City's Motion as to Mr. Dupree must be denied because the City seeks relief in the wrong court. Under Rule 45, a motion to compel must be filed in the "district where compliance [with the subpoena] is required." Fed. R. Civ. P. 45(d)(2)(B)(i). If this requirement is not met, "the Court lacks jurisdiction to compel." *Thacker v. Ethicon, Inc.*, 572 F. Supp. 3d 319, 322–23 (E.D. Ky. 2021). That is the case here, requiring dismissal of the City's Motion as to Mr. Dupree.[3]

Rule 45's "district of compliance language" means "the federal district that has jurisdiction over the place of compliance listed on the subpoena," which must be within 100 miles of where the subpoenaed person resides, is employed, or regularly does business. *Interstate Corp. v. Enviro USA, Inc.*, No. 2:23-CV-02625-SHL-ATC, 2024 WL 2178832, at *1 (W.D. Tenn. Apr. 12, 2024); Fed. R. Civ. P. 45(c)(2)(A). Here, the subpoena to Mr. Dupree, who resides in Sacramento, California, commands him to produce documents and appear for deposition in Sacramento, California. *See* ECF 383-2, at 1. Therefore, any motion to compel regarding this subpoena must be brought there, not in this Court. *See Interstate Corp.*, 2024 WL 2178832, at *1 ("[I]f New York is the place where compliance is required. . ., then any motion practice regarding this specific subpoena must be brought in an appropriate forum in New York.")

[3] Because the City's Motion as to Mr. Dupree must be dismissed for lack of jurisdiction, he does not address the City's merits arguments at this time, but reserves his right to do so if a jurisdictionally proper motion is filed against him.

Because the City did not bring its Motion in the district of compliance, this Court cannot enforce the City's subpoena to Mr. Dupree. The City's Motion as to that subpoena must therefore be denied. *See Id.*; *Thacker*, 572 F. Supp. 3d at 323 (denying motion to compel for lack of jurisdiction where motion was not brought in "district of compliance"); *Thompson Props., LLC v. Farmers State Bank*, No. 1:23-CV-624, 2023 WL 9118646, at *1 (W.D. Mich. Dec. 5, 2023) ("[T]his district is not the proper district for the motion [to compel] because it is not the district where compliance is required or where the discovery is or will be taken.").

## III. The Court Should Not Enforce the City's Subpoenas to Mr. Wells and Ms. Dixon.

### A. The City's Subpoenas Improperly Intrude on Mr. Wells' and Ms. Dixon's Privacy Interests.

The central reason that all of the City's subpoena requests are inappropriate is that these sweeping requests for communications invade the privacy of nonparties. Here, the intrusion on Mr. Wells' and Ms. Dixon's privacy is profound and is not justified by any countervailing need of the City's. The City's effort to pry into years of their private communications with their stepson/brother, with each other, and with *unlimited other nonparties* about a broad range of topics loosely related to Mr. Nichols will unquestionably harass, annoy, and embarrass not just the Plaintiff but also her nonparty family members. Those are precisely the concerns that weigh against enforcement of sweeping document requests to nonparties. As courts in this Circuit have explained in assessing whether to enforce a subpoena: "[P]arties to a lawsuit must accept [the] travails" of "invasive" discovery," but "[n]on-parties have a different set of expectations." *Tolliver v. Abuelo's Int'l*, LP, No. 2:20-CV-3790, 2021 WL 3188420, at *3 (S.D. Ohio July 28, 2021) (quashing subpoena). Thus, "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" underlying a challenged subpoena. *Id.*

The communications the City seeks (such as emails, text messages, voicemails, and direct messages on any digital platform) are, by definition, private communications that none of the nonparty senders or recipients ever imagined might one day be subject to the roving eyes of the City of Memphis and the other parties to this litigation in a free-wheeling hunt through years of personal communications in search of anything that "*may* [] reveal information" damaging to Mr. Nichols, Mr. Wells, Ms. Dixon, and Plaintiff's other family members. Mot. at 14. As with any family, especially amongst adult siblings, these communications undoubtedly contain many unvarnished sentiments, hopes, plans, memories, jokes, and so on. Permitting the City to probe years of Mr. Wells' and Ms. Dixon's intimate conversations with their immediate family members (as Mr. Wells Requests No. 1 and 3 and Ms. Dixon Requests No. 1, 3, and 4 call for) would be a deep indignity. Permitting the City to probe further into years of their private communications with an infinite number of *other* nonparties (as Mr. Wells Requests No. 5, 6, 7 and Ms. Dixon Requests No. 6, 7, and 8 call for) is an even more extraordinary infringement on their privacy and the privacy of other, unknown nonparties who likely have no connection to this case. The Court should not permit this.

The City's sole answer to the privacy objection is the Protective Order in this case, which the City claims "eliminates any privacy-based objections." *See* Mot. at 9, 11, 13. This is risible. The City has made abundantly clear, in its briefing on the scope of the Protective Order, that it believes the Order protects "from disclosure very limited categories of information." *See* ECF 287 at 4. Specifically, the City argues, the Protective Order applies to social security numbers, birth dates, and sensitive financial information. *Id.* at 10. Under the City's view, none of the subpoenaed communications would likely receive the protections of the Court's Protective Order. In any event, even if the City agreed that all of the subpoenaed communications fell within the scope of the

Protective Order, it would still leave the communications exposed to all of the many parties and counsel in this case, including the City—whose avowed aim is to generate a counter-narrative in the press that emphasizes Mr. Nichols' alleged character flaws. *See* ECF 243 at 3 (City stating it finds "questionable" the positive "public narrative about Mr. Nichols"); *see also* ECF 262-2 (similar statements in City counsel's Dec. 6, 2024 email correspondence).

**B. Request No. 1 to Mr. Wells.**

This Request seeks "any and all communications" that Mr. Wells had with his stepson over the yearlong period before Mr. Nichols was killed. See ECF 383-3, No. 1.

***Irrelevance.*** The City has failed to carry its burden of demonstrating that a year's worth of Mr. Wells' private communications with his stepson *about anything* are relevant to this case. *See CommonSpirit Health v. Healthtrust Purchasing Grp., L.P.*, No. 3:21-CV-00460, 2022 WL 19403858, at *2 (M.D. Tenn. July 13, 2022) (The burden is on "the party seeking discovery . . . to demonstrate relevance.").

The City's arguments for relevance are vague at best. According to the City, it seeks "to discover" "the extent and nature of [Mr. Wells'] relationship" with his stepson. Mot. at 8. But the general nature of Mr. Wells' relationship with Mr. Nichols—much less their texts or other communications on a daily basis—are not at issue in this case. The City cites three topics that Plaintiff has disclosed in her Rule 26(a)(1) disclosures as subjects that Mr. Wells may testify about: "life and aspirations," "strength and capacity to work and for earning money," and his "personal habits of sobriety and industry." Mot. at 8. But the City does not even attempt to explain how their plenary review of all communications between Mr. Wells and Mr. Nichols would rebut or otherwise illuminate these three categories of damages. Nor does the City offer a single case in support.

Indeed, the City admits that it has no idea what particular information it is after. *See* Mot. at 8 ("*Depending on what is produced* in response to Request No. 1, Mr. Wells's credibility as to these topics *may* be bolstered or weakened." (emphases added)). But "[t]he mere hope that there might be something of relevance is insufficient." *Baker v. Royce*, No. 1:14-CV-14035, 2015 WL 13584586, at *3 (E.D. Mich. June 26, 2015).

***Undue burden.*** Even if the City had established the relevance of obtaining a full year of Mr. Wells' communications with Mr. Nichols, that does not end the inquiry. The Sixth Circuit has made clear that "[c]ourts must balance the need for discovery against the burden imposed on the person ordered to produce documents, *and the status of that person as a non-party is a factor*." *In re: Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (quotations omitted and emphasis added); *see also Gischel v. Univ. of Cincinnati*, No. 1:17-cv-475, 2018 WL 9945170, at *4 (S.D. Ohio June 26, 2018) ("[T]he status of a person as a non-party is a factor that weighs against disclosure.").

The City treats the question of burden as though the only pertinent metric is the amount of time or money it would take to search for responsive materials. *See* Mot. at 9. But that is not how courts in this Circuit conduct the inquiry. "In determining whether a subpoena imposes an undue burden on a witness, courts looks to the following factors: relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Hogan v. Cleveland Ave Rest. Inc.,* No. 2:15-CV-2883, 2016 WL 7467968, at *2 (S.D. Ohio Dec. 28, 2016) (quotations omitted).

Here, each of the factors weighs against enforcing the City's request. First, as discussed above, the City has failed to demonstrate the relevance or need for one year's worth of all communications between Mr. Wells and his stepson. Second, the information requested is facially

overbroad, covering a year-long time period without any limitation by any topic area, subject matter, or other limiting factor. The day-to-day communications between a father and his stepson—including about social life, transportation arrangements, hobbies, sports—likely encompass numerous topics completely unrelated to this case.

The City's failure to tether this request to any specific question at issue in this case is fatal. *See Corcept Therapeutics, Inc. v. Elliott*, No. 1:22-MC-24, 2022 WL 17338515 at *7 (S.D. Ohio Nov. 30, 2022) (denying motion to compel where subpoena sought "[a]ll Documents and Communications concerning [one of the parties]," and finding that request "facially overbroad because it is not limited to information" relevant to the underlying litigation"). It is well established that blanket subpoena requests for "all communications" between a party and a non-party are facially overbroad and should not be enforced. *See, e.g.*, *Manookian v. Mervis*, No. CV 4:17-MC-00056, 2017 WL 3457063 at *3 (E.D. Tex. Aug. 11, 2017) (denying motion to compel where "[m]ovants served a request that was overbroad as it sought all emails that contained the parties' names and email addresses in the underlying action and two non-parties, who are alleged to be part of [the parties'] purported scheme."); *see also In re O'Hare*, No. MISC. H-11-0539, 2012 WL 1377891, at *2 (S.D. Tex. Apr. 19, 2012) (finding subpoena "facially overbroad" for blanket request of all documents with party to the lawsuit).

Lastly, as discussed above, the invasion of Mr. Wells' privacy is central to the undue burden of this request. The Sixth Circuit has long emphasized the importance of protecting nonparties' "interests in privacy." *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 477 (6th Cir. 1983). This Court must protect those interests too.

**C. Request No. 2 to Mr. Wells and Ms. Dixon.**

Request No. 2 seeks "any and all communications" that Mr. Wells and Ms. Dixon had with Mr. Nichols' minor child's mother "regarding Mr. Nichols, Mr. Nichols' minor child, the incident giving rise to this lawsuit, and/or this litigation from January 1, 2019 to present day." See ECF 383-3, No. 2; ECF 383-1, No. 2.

Mr. Wells and Ms. Dixon do not agree with the arguments asserted by the City in support of Request No. 2 and maintain their objections, for the same reasons explained throughout this brief, which address the City's other, similar requests. However, Mr. Wells and Ms. Dixon have completed reasonably diligent searches for the requested information and have not located any responsive documents in their possession, custody, or control. Thus, the City's Motion as to this Request should be denied as moot. *Dancy v. Lanxess Corp.*, No. 19-cv-02690-SHL-tmp, 2020 WL 5262311, at *2 (W.D. Tenn. Sept. 3, 2020) ("[T]he court cannot compel a party to produce what does not exist." (citations and alterations omitted)).

**D. Request Nos. 3-7 to Mr. Wells and Request Nos. 3-8 to Ms. Dixon.**

**1. As to Mr. Wells, Spousal Privilege Bars Enforcement of Request No. 3.**

Request No. 3 to Mr. Wells seeks "any and all communications" that he had with Plaintiff—his spouse—related to "Mr. Nichols' minor child, the incident giving rise to this lawsuit, the GoFundMe, and/or this litigation from January 1, 2019 to present." *See* ECF 383-3, No. 3, ECF 383-1, No. 3.

As a threshold matter, this request to Mr. Wells is barred by spousal privilege because it seeks disclosure of Mr. Wells' confidential communications with his wife. The City's attempts to circumvent the privilege are unavailing. The City suggests that because Plaintiff has identified Mr. Wells on her Rule 26(a)(1) disclosures as a witness she may call to testify about her "pain and suffering," "permanent injuries," and her "loss of enjoyment of life," Mr. Wells has waived the

privilege. Mot. at 13. That is not correct. The City cites no authority for its argument and courts in this District have specifically rejected it. *See Whitney v. City of Milan. Tennessee*, No. 109CV01127JDBEGB, 2014 WL 11411675, at *1 (W.D. Tenn. Feb. 27, 2014) (holding that spousal privilege was not waived by the plaintiff listing her husband as a person likely to have discoverable information on the "facts of [the] case" and "damages").

A waiver of spousal privilege occurs only if the spouse seeking to invoke the privilege "has intentionally disclosed the content of the confidential communications." *Dodd v. Hendrickson USA, LLC*, No. 3:24-CV-00076-DJH-CHL, 2025 WL 1140452, at *13 (W.D. Ky. Apr. 10, 2025) (citing *United States v. Bahe*, 128 F.3d 1440, 1443 (10th Cir. 1997)). Here, Mr. Wells has not intentionally disclosed the substance of any confidential communications between him and his wife. Nothing in Plaintiff's Rule 26(a)(1) disclosure or otherwise suggests Mr. Wells intends to do so, let alone has already done so. Rather, any testimony by Mr. Wells would be based on his *observations* of Plaintiff and her behavior, demeanor, and wellbeing before and after her son's death. It is well-established that such testimony does not waive the privilege over confidential communications between spouses. Spousal privilege "does not foreclose testimony about the spouse's observations as to the other spouse's actions and appearance." *United States v. Irons*, 646 F. Supp. 2d 927, 957 (E.D. Tenn. 2009); *see also United States v. Giavasis*, 805 F.2d 1037, *3 (6th Cir. 1986) (holding that spousal privilege does not apply "to testimony as to 'acts'"). As the court in *Whitney* concluded, listing one's spouse on Rule 26(a)(1) disclosures does not waive spousal privilege where the spouse's testimony is based "on at least some matters that he either personally observed or had knowledge of without reference to any confidential communications with Plaintiff." 2014 WL 11411675, at *3. That is exactly the circumstance here.

Moreover, the City's claim that the privilege prevents the City from "tak[ing] discovery on th[e] categories" of damages testimony listed in Plaintiff's Rule 26(a)(1) disclosure is simply not true. Mot. 13. The privilege does not cut off all discovery. The City will be deposing Mr. Wells in June. The City will have the opportunity to question him on the record regarding any of the damages categories, so long as the questions do not seek confidential spousal communications.

**2. Request Nos. 3-7 to Mr. Wells and Request Nos. 3-8 to Ms. Dixon are Irrelevant, Overbroad, and Unduly Burdensome.**

Even if no privilege applied, the City's Request Nos. 3-7 to Mr. Wells and Request Nos. 3-8 to Ms. Dixon should not be enforced because, like the requests discussed above, they fail the two-part relevance and overbreadth test.

***Irrelevance***. The City fails to make the showing of relevance that would be necessary to permit it to pry into as many as *six years* of personal texts, emails, and other private messages between Mr. Wells and his wife, and between Ms. Dixon and her mother and stepfather. The City strains to explain the relevance of the numerous broad topics sought in these requests. The City's primary argument appears to be that Mr. Wells and Ms. Dixon are listed on Plaintiff's Rule 26(a)(1) disclosure as potential witnesses to Plaintiff's "pain and suffering," "permanent injuries," and "loss of enjoyment of life" caused by her son's wrongful death and the emotional distress she endured on the night of his beating. Mot. at 12, 14. But the City never explains how these discrete damages topics justify disclosing nearly six-and-a-half years of Mr. Wells' communications with his wife and Ms. Dixon's communications with her mother and her stepfather. The City cites no authority to support its position.

The City suggests that Mr. Wells' and Ms. Dixon's communications "regarding Mr. Nichols' minor child" must be relevant because the minor child is the "heir of the estate." Mot. at 12, 14. But how so? The City points to nothing—not in Plaintiff's Rule 26(a)(1) disclosures or

elsewhere—to suggest that Mr. Wells or Ms. Dixon have relevant knowledge about the minor child's damages. Similarly, the City asserts that any communications that Mr. Wells or Ms. Dixon have had about "the administration of Mr. Nichols's estate" is relevant. Mot. 16-17. But again, there is no connection between these non-parties' likely testimony and the administration of the estate, which is the exclusive province of the Plaintiff.

The City's assertion that "the GoFundMe is relevant to this litigation," *id.*, also fails[4]. The City seeks completely irrelevant and private communications between Plaintiff and her family members regarding a GoFundMe page that a community organization started on Plaintiff's behalf in the wake of her son's death. Any communication between and among Plaintiff and her family members concerning the money raised through the GoFundMe page or how it was distributed are irrelevant to the issues presented in this case. Plaintiff's relationship with her grandson and his mother—including any gifts she gave them in the aftermath of Mr. Nichols' death—and the mother's decision about whether to serve as administrator of Mr. Nichols' estate have no bearing on liability or damages. The GoFundMe platform and proceeds concern private financial information, and bear no relevance on whether the City of Memphis is legally responsible for Memphis Police Department officers beating and killing Tyre Nichols.

The City's requests for communications between Mr. Wells and Ms. Dixon and the members of Plaintiff's legal team, Mot. 15-16, are completely baseless. For the same reason that the communications on the various requested topics are not relevant as between the members of the Wells family and each other—or between the Wells family and other unknown third parties—they certainly are not relevant as between Mr. Wells or Ms. Dixon and Plaintiff's attorneys.

---

[4] The City claims that "Plaintiff's counsel has acknowledged" that "the GoFundMe is relevant to this ligation." *See* Mot. at 12, 14. That is incorrect, Plaintiff has consistently maintained that the GoFundMe page is an irrelevant sideshow.

***Undue burden.*** As with Request No. 1, all of the pertinent considerations show that these requests are unduly burdensome. The City seeks more than *six years* of private communications between immediate family members on highly sensitive topics, including *anything* related to the death of the Wells' son (Ms. Dixon's brother) and *anything* related to the GoFundMe (which could be interpreted to include any number of private financial transactions between the family members). Further, many of the requests seek Mr. Wells and Ms. Dixon's private communications *with other non-parties*, often *with no time limits whatsoever*. For example:

- *Any* communications that Mr. Wells had "with *anyone* regarding *anything*" related to "the administration of Mr. Nichols' estate" or "this litigation." (Requests to Mr. Wells, No. 5, *see* ECF 383-3)
- *Any* communications that Mr. Wells or Ms. Dixon had with *anyone* regarding Mr. Nichols' minor child, *with no time limits*. (Requests to Mr. Wells, No. 6, *see* ECF 383-3; Requests to Ms. Dixon, No. 7, *see* ECF-383-1)
- *Any* communications that Mr. Wells or Ms. Dixon had with *anyone* regarding Mr. Nichols' minor child's mother, *with no time limits*. (Request to Mr. Wells, No. 7, *see* ECF 383-3; Requests to Ms. Dixon, No. 8, *see* ECF 383-1)

These requests are textbook examples of overbreadth: they do not limit the recipients or the temporal scope, and both senders and recipients are nonparties to this litigation.

The fact that these requests list various topic areas for the requested communications does not remedy the overbreadth. The topics themselves are broad, vague, and do not lend themselves to objectively ascertainable boundaries. For instance, "any and all communications . . . related to . . . the incident giving rise to this lawsuit" would conceivably include any communications about Mr. Nichols' death (including day-to-day expressions of grief and sorrow), Mr. Nichols' funeral, the memorial services and protests surrounding the incident, the media coverage of the incident, the officers who beat Mr. Nichols, the criminal prosecutions of the officers (both federal and state), and on and on. And "any and all communications . . . related to . . . this litigation" is just as expansive because "this litigation" arises out of "the incident." Subpoena requests, like these, that

call for "documents *'relating to'* a number of subjects" employ "a technique [that] courts have described as overly broad" and refused to enforce. *Joseph v. Joseph*, No. 1:16-CV-465, 2018 WL 11432995, at *5 (S.D. Ohio June 7, 2018) (emphasis added); *see also Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 666 (D. Kan. 1999) (holding a discovery request seeking "all documents relating to" a certain subject "facially overbroad, due to its use of the omnibus phrase relating to"). The Court should not compel compliance with the City's requests.

## CONCLUSION

For the reasons stated above, the City's Motion to Compel should be denied in its entirety.

Dated: May 1, 2025

Respectfully submitted,

*/s/ Joshua M. Levin*

Antonio M. Romanucci* (Ill. Bar No. 6190290)
Sarah Raisch* (Ill. Bar No. 6305374)
Joshua M. Levin* (Ill. Bar No. 6320993)
Stephen H. Weil* (Ill. Bar No. 6291026)
Sam Harton* (Ill. Bar No. 6342112)
Colton Johnson Taylor* (Ill. Bar No. 6349356)
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark St., Ste. 900
Chicago, IL 60654
P: (312) 458-1000
aromanucci@rblaw.net
sraisch@rblaw.net
jlevin@rblaw.net
sweil@rblaw.net
sharton@rblaw.net
cjohnson@rblaw.net

David L. Mendelson (Tenn. Bar No. 016812)
Benjamin Wachtel (Tenn. Bar No. 037986)
**MENDELSON LAW FIRM**
799 Estate Place
Memphis, TN 38187
+1 (901) 763-2500 (ext. 103), Telephone
+1 (901) 763-2525, Facsimile
dm@mendelsonfirm.com

bw@mendelsonfirm.com

Brooke Cluse* (Tex. Bar No. 24123034)
**BEN CRUMP LAW, PLLC**
717 D Street N.W., Suite 310
Washington, D.C. 20004
+1 (337) 501-8356 (Cluse), Telephone
brooke@bencrump.com

*Attorneys for Plaintiff*

* Admission *pro hac vice*