**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

ROWVAUGHN WELLS,                )
    Plaintiff,                )
                    )
v.                )          No. 2:23-cv-02224-SHL-atc
                    )
THE CITY OF MEMPHIS, et al.,                )
    Defendants.                )

**ORDER DENYING DEFENDANT CITY OF MEMPHIS'S MOTION FOR
SANCTIONS AGAINST PLAINTIFF**

Before the Court is Defendant City of Memphis's Motion for Sanctions Against Plaintiff,
filed May 13, 2025.  (ECF No. 412.)  Plaintiff RowVaughn Wells filed a response to the Motion
on May 16, 2025.  (ECF No. 415.)  For the reasons stated below, the Motion is **DENIED**.

## BACKGROUND

On January 3, 2025, Wells, individually and as administatrix ad litem of the estate of
Tyre Deandre Nichols, her son, filed an amended complaint, alleging twenty-nine counts against
the City of Memphis and eleven individual Defendants.  (ECF No. 277.)  The amended
complaint asserts various degrees of culpability against those Defendants for Nichols' death on
January 10, 2023, three days after he sustained injuries at the hands of several Memphis Police
Department officers following a traffic stop.

As relevant to the present Motion, Defendant asserts that sanctions are warranted against
Ben Crump and Antonio Romanucci, Wells' attorneys, because they "issued a knowingly false
statement to the public on May 12, 2025 in an attempt to deceive the public about their intent in
this litigation and the impact of this litigation on the taxpayers of the City of Memphis."  (ECF
No. 412 at PageID 6018.)  The statement in question was published on websites for both

attorneys' law firms in the form of a press release.  Defendant took exception with the release's

three concluding sentences.  They read:

> Further, we want to address the ongoing speculation that any result in the ongoing
> civil litigation could bankrupt the City of Memphis.  It's important to note that our
> quest for accountability is not intended to be punitive to the broader Memphis
> community and is designed to derive accountability specifically from those
> individuals and municipal entities who are responsible, all of whom have municipal
> insurance and other means contracted for precisely this purpose.  Anyone who is
> speculating that the civil case could bankrupt the city is engaging in fear mongering
> and distorting the public conversation away from the real issue, the patterns and
> practices of the Memphis Police Department that led to Tyre's tragic and wholly
> unnecessary death.

(ECF No. 412 at PageID 6019–20.)

The City asserts that Plaintiff was aware that the City is self-insured, as the City told her

as much three separate times in its initial, first supplemental, and second supplemental

disclosures.  (Id. at PageID 6021–22.)   Moreover, the City asserts that Plaintiff's counsel has

previously asserted an intent to bankrupt the city, so the suggestion in the press release that

"[a]nyone who is speculating that the civil case could bankrupt the city is engaging in fear

mongering and distorting the public conversation," is an attempt by Plaintiff's counsel to

disavow themselves of the statement.  (Id. at PageID 6023.)  Ultimately, Defendant asserts that

the statements are an "attempt at poisoning the jury pool in advance of the trial."  (Id. at PageID

6024.)

The City asks that the Court use its inherent power to assess sanctions against Plaintiff's

counsel in three ways: first, by ordering Plaintiff's counsel "to issue a corrective statement

explaining that their initial statement was knowingly false and intended to mislead the public, and

the corrective statement should clarify that the City does not have an insurance policy that will

cover an award of damages in this case, and that Plaintiff's Counsel knew this fact when it made

the false statement."  (Id. at PageID 6018–19.)  Second, by "ordering Plaintiff's Counsel to

immediately remove the false statement from their websites, social media platforms, and any other

platform wherein the false statement was posted." (Id. at PageID 6019.) And, finally, by entering

"an order restraining Plaintiff's Counsel from making knowingly false public statements about the

litigation under threat of contempt." (Id.) Defendant asserts that "[t]hese sanctions are necessary

to preserve the integrity of this litigation; and without the sanctions, the City may be forced to seek

a change of venue for the trial in this matter." (Id.)

Plaintiff's attorneys assert that sanctions are unwarranted for multiple reasons, beginning

with the fact that the City's self-insured status renders inaccurate its claim that it does not have

insurance. (ECF No. 415 at PageID 6067–68 (asserting that self-insurance "is a form of

municipal insurance used by larger governmental bodies that is typically backed by financing

mechanisms like insurance reserves, trust funds, and the power to issue dedicated self-insurance

bonds").) Nevertheless, Plaintiff acknowledges that its "statements carried a risk of confusion,"

so, "[w]ithin 24 hours of issuing the release, counsel removed the press release in its entirety

from Ben Crump Law's website and removed the municipal insurance statement from

Romanucci & Blandin's website. Plaintiff's counsel took these measures on their own and

out of an abundance of caution, before they were ever contacted by the City." (Id. at PageID

6068.)

Then, according to Plaintiff's counsel, the City contacted them and they took additional

remedial measures. They assert that after the City contacted them, "both Ben Crump Law and

Romanucci & Blandin issued corrective statements, which went out to all of the media outlets

that received the original release, and Romanucci & Blandin removed the language about

bankruptcy from the press release on its website." (Id.) Plaintiff's counsel asserts that their

prompt and voluntary corrective actions are not the sort taken by someone trying to deceive the

public, and, in any event, the actions they took are precisely the relief Defendant sought in its
Motion. Ultimately, Plaintiff's counsel asserts its actions are not the sort of egregious,
intentional misconduct that would warrant sanctions. (Id.)

## ANALYSIS

"[A] court's reliance upon its inherent authority to sanction derives from its equitable
power to control the litigants before it and to guarantee the integrity of the court and its
proceedings." First Bank of Marietta v. Hartford Underwriters Ins. Co., 307 F.3d 501, 512 (6th
Cir. 2002) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)). However, "[b]ecause of
their very potency, inherent powers must be exercised with restraint and discretion." Chambers,
501 U.S. at 44 (citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980)). Ultimately,
"the imposition of inherent power sanctions requires a finding of bad faith," as courts "may
impose sanctions pursuant to its inherent powers only when it finds the action in question was
taken in bad faith, or conduct that is tantamount to bad faith." First Bank of Marietta, 307 F.3d
at 517 (internal citations and quotations omitted).

Plaintiff provides a timeline of the actions it took and places them within the context of
its interactions with Defendant. (See ECF No. 415 at PageID 6070–71.) That timeline reveals
that, however one characterizes the contents of the initial press release, Plaintiff almost
immediately took steps to amend it, made additional modifications once contacted by the City,
and issued corrective statements seeking to clarify their content. Here is the relevant timeline:

At 3:50 p.m. on May 12, Plaintiff published the statements on Romanucci & Blandin's
website and posted them four minutes later on Crump's. (ECF No. 415 at PageID 6069.)

At 11:41 a.m. the next day, the language "all of whom have municipal insurance and other means contracted for precisely this purpose" was struck from the press release on Romanucci & Blandin's website.  (Id. at PageID 6070.)

Then, at 1:08 p.m., the statement was removed in its entirety from Crump's website.  (Id.)

At 2:51 p.m., the City emailed Plaintiff's counsel, indicating that it would file a motion for sanctions if Plaintiff's counsel did not agree, by 5:00 p.m., to the relief that is consistent with the Motion the City eventually filed.  (Id.)

At 4:57 p.m., Plaintiff's counsel responded that it would respond shortly to the City's request, and, at 5:27, removed additional text from the release that remained on Romanucci & Blandin's website.  (Id. at PageID 6070–71.)

After the City filed its Motion for Sanctions at 6:03 p.m., Plaintiff's counsel emailed the City five minutes later and explained the steps that it had taken and additional steps it planned to take.

At 6:14 p.m., Plaintiff's counsel published a corrective statement on Romanucci & Blandin's website, and, at 7:00 p.m., Crump sent out the same statement to the media outlets that received the original press release.  That statement reads:

> We wish to update and amend the statement we made yesterday regarding the Tyre Nichols case. The City of Memphis and the individual officer defendants do not necessarily have insurance that would cover any monetary recovery in the case. In the disclosures the defendants have made in the case, the City has stated that it is "self-insured" and the individual defendants have indicated that they do not have applicable insurance.

(ECF No. 415 at PageID 6071.)

When a Party takes prompt corrective actions, as Plaintiff did here, it undermines the suggestion that the actions it took were in bad faith, or tantamount to bad faith.  See, e.g., Jones v. Varsity Brands, LLC, No. 2:20-CV-02892-SHL-tmp, 2024 WL 1159289, at *4 (W.D.

5

Case 2:23-cv-02224-SHL-atc    Document 463    Filed 07/31/25    Page 6 of 7
PageID 6479

Tenn. Mar. 18, 2024) (finding sanctions under Rule 11 were inappropriate when the offending entity had moved to remedy the allegedly offending conduct).

The lack of bad faith is underscored by the fact that the sanctions the City asks the Court to impose have been rendered largely moot by the actions that Plaintiff's took within a day of publishing the press release. Plaintiff removed the press release entirely from Crump's website and removed the language Defendant objected to from Romanucci & Blandin's website. They also published a correction on both of the websites. That correction falls short of the City request that Plaintiff's counsel admit that "the initial statement was knowingly false and intended to mislead the public," and that Plaintiff's counsel knew that the City does not have an insurance policy "that will cover an award of damages in this case" at the time it made its statement. But the statement otherwise sufficiently corrects the record, and supports Plaintiff's contention that the initial press release was not issued in bad faith. Neither of the first two forms of sanctions that the City seeks are warranted.

The last form of sanctions the City seeks is one that only the Court can provide, in that it asks the Court to enter "an order restraining Plaintiff's Counsel from making knowingly false public statements about the litigation under threat of contempt." (ECF No. 412 at PageID 6019.) The Court will not pre-emptively declare that Plaintiff's counsel will be punished for knowingly making false statements in the future, mostly because it expects that all parties appearing before it will refrain from making false statements, whether in the context of a judicial proceeding or otherwise. It should go without saying that counsel in any litigation, but especially in highly publicized matters such as this one, must take pains to ensure that the statements it is making are accurate and complete upon first publication. Even centuries before our modern speeds of instantaneous information dissemination it was understood that inaccurate information can take

quick root, even when subsequently corrected.  "Falsehood flies," wrote Jonathan Swift in 1710, "and the Truth comes limping after it.  So that when Men come to be undeceiv'd, it is too late; the Jest is over, and the Tale has had its Effect."  <u>See</u> 1710 November 2 to November 9, The Examiner, Number 15, (Article by Jonathan Swift), Quote Page 2, Column 1, Printed for John Morphew, near Stationers-Hall, London, https://books.google.com/books?id= KigTAAAAQAAJ&q=%22Truth+comes%22#v=snippet&q=%22Truth%20comes%22&f=false [https://perma.cc/A9N2-FMXH]; <u>see</u> <u>also</u> bit.ly/3UCNfgr.

Here, the fact that Plaintiff began taking corrective measures regarding the press release within two hours of first publishing the information reveals that its vetting process should have been more thorough.  And the fact that it took several iterations of the press release to remove any potentially problematic wording suggests that the actions of Plaintiff's counsel could have been more swift.  Nevertheless, these shortcomings do not rise to the level of sanctionable conduct in the form of an order restraining Plaintiff's from making false statements at the threat of contempt.  Again, the Court expects Plaintiff—and Defendants—to not make any knowingly false statements regarding the case in or outside the Court, and of course there is always the potential for a finding of contempt, depending on the circumstances.  However, the request for the final form of sanctions is not appropriate and is **DENIED**.

Consistent with the foregoing, the City's Motion is **DENIED**.  The Court reiterates that the Parties are to be judicious in their comments to the press and what they otherwise publish regarding this case.

**IT IS SO ORDERED,** this 31st day of July, 2025.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE