IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ROWVAUGHN WELLS, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF TYRE DEANDRE NICHOLS, DECEASED,<br><br>    Plaintiff,<br><br>v.<br><br>THE CITY OF MEMPHIS, TENNESSEE; CHIEF CERELYN DAVIS; EMMITT MARTIN III; DEMETRIUS HALEY; JUSTIN SMITH; DESMOND MILLS, JR.; TADARRIUS BEAN; PRESTON HEMPHILL; ROBERT LONG; JAMICHAEL SANDRIDGE; MICHELLE WHITAKER; AND DEWAYNE SMITH,<br><br>    Defendants. | CASE NO. 2:23-CV-02224-SHL-atc<br>JURY DEMAND |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF THE CITY OF MEMPHIS AND DEWAYNE SMITH AS AN AGENT OF THE CITY**

Defendants the City of Memphis (the "City") and DeWayne Smith, as an agent of the City of Memphis ("Lt. Smith") (collectively, the "City Defendants"), submit this Memorandum in Support of their Motion for Summary Judgment as to Counts XXVII, XXVIII, and XXIX of the First Amended Complaint.[1]

**I.     INTRODUCTION**

Plaintiff brings three common law tort claims against Lt. Smith both in his individual capacity[2] and as an agent of the City: (i) intentional infliction of emotional distress ("IIED"), (ii) negligent infliction of emotional distress ("NIED"), and (iii) fraudulent misrepresentation as a result of Lt. Smith allegedly falsely communicating with her regarding her son's encounter with and the Memphis Police Department ("MPD").

The City Defendants are entitled to summary judgment on Plaintiff's claims against Lt. Smith as an agent of the City of Memphis for IIED, NIED, and fraudulent misrepresentation. First, Plaintiff's IIED and fraudulent misrepresentation claims are indisputably barred by Tennessee's Governmental Tort Liability Act ("GTLA"). Second, Plaintiff's NIED claim is, in reality, a negligent misrepresentation claim, which is also indisputably barred by the GTLA. Finally, even if Plaintiff's NIED claim is construed as an NIED claim such that it is not barred by the GTLA, Plaintiff's NIED claim fails for the additional reason that Plaintiff has failed to establish that she suffered damages *as a result of Lt. Smith's alleged misrepresentations*.

Accordingly, the City Defendants are entitled to summary judgment on Counts XXVII, XXVIII, and XXIX of the First Amended Complaint.

---

[1] Nothing in this Motion shall be construed as the City waiving any arguments raised in its Motion to Dismiss First Amended Complaint, which remains pending before the Court. (ECF No. 303.)
[2] The City of Memphis does not represent Lt. Smith in his individual capacity, and this Motion does not address claims against Lt. Smith in his individual capacity.

1

## II.   BACKGROUND

Plaintiff filed suit on April 19, 2023, alleging various claims against twelve defendants, including the City Defendants. Plaintiff alleges that Lt. Smith, who was a supervisor of the Scorpion Unit, arrived on scene after Mr. Nichols had been handcuffed. (Am. Compl., ECF No. 277, PageID 3180.) Once there, Plaintiff alleges that Lt. Smith saw Mr. Nichols's condition but did not question the officers. (*Id.* at ¶¶ 232–33.) Plaintiff claims that Lt. Smith walked to Mr. Nichols's home address where Nichols lived with Plaintiff. (*Id.* at ¶ 241.) At the residence, Lt. Smith allegedly told Plaintiff that Mr. Nichols was under arrest for driving while intoxicated. (*Id.* at ¶¶ 242–43.) Plaintiff alleges that Lt. Smith had no evidence that Mr. Nichols was intoxicated but did know that Mr. Nichols had been beaten by Scorpion Officers. (*Id.* at ¶¶ 245, 246.) Plaintiff claims that Lt. Smith misled and lied to Plaintiff about Mr. Nichols being intoxicated, that Mr. Nichols was receiving treatment from paramedics, and that Mr. Nichols would be transported to jail after receiving treatment. (*Id.* at PageID 3182–83.) Plaintiff further alleges that Lt. Smith misled Plaintiff by withholding certain information, including that Mr. Nichols was critically injured. (*Id.* at PageID 3183.) Plaintiff alleges that Scorpion Officers and Lt. Smith tried to cover up their crimes after the incident. (*Id.* at ¶¶ 262–70.)

The interaction between Plaintiff and Lt. Smith (hereinafter, the "Conversation") was captured in its entirety on Defendant Desmond Mills' body worn camera video. (City Defendants' Statement of Undisputed Material Facts in Support of Motion for Summary Judgment ("SUMF"), submitted contemporaneously herewith, at ¶ 3.) The entire Conversation, from when Lt. Smith knocked on the door of Plaintiff's residence until he left, lasted less than four minutes. (SUMF ¶ 4.) This is the only interaction between Plaintiff and Lt. Smith related to Mr. Nichols and the incident that occurred on January 7, 2023. (SUMF ¶ 5.)

Based on these alleged events, Plaintiff sues Lt. Smith as an agent of the City for allegedly intentionally and negligently inflicting emotional distress on her after he allegedly falsely communicated with her regarding the encounter with Scorpion Officers and Mr. Nichols's physical condition, as well as fraudulent misrepresentation.

## III.  LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant summary judgment if the movant shows that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is 'an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action' rather than a 'disfavored procedural shortcut.'" *FDIC v. Jeff Miller Stables*, 573 F.3d 289, 294 (6th Cir. 2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id*. at 325. A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Further, the non-moving party may not rest upon mere allegations or denials in the pleadings but must present evidence

setting forth specific facts showing a genuine issue for trial. *Ford v. General Motors Corp.*, 305 F.3d 545, 552 (6th Cir. 2002), *abr. on other grounds*, 548 U.S. 53 (2006). Here, there are no genuine issues of material fact in dispute, and the Court should grant summary judgment to the City Defendants on Plaintiff's claims.

### IV. PLAINTIFF'S COMMON LAW TORT CLAIMS ARE BARRED BY THE GTLA.

Plaintiff's tort claims, Counts XXVII, XXVIII, and XXIX, are barred by the GTLA. "State law claims against governmental entities and their employees are governed [exclusively] by the GTLA." *Epperson v. City of Humboldt*, 140 F. Supp. 3d 676, 689 (W.D. Tenn. 2015) (citing Tenn. Code Ann. § 29-20-101). The GTLA waives common law sovereign immunity and permits litigants to sue municipalities for injuries sounding in negligence. *Partee v. City of Memphis*, 449 F. App'x 444, 447 (6th Cir. 2011) (citing Tenn. Code Ann. § 29–20–205). However, "statutes which waive immunity of the governmental entity from suit are to be construed strictly in favor of the sovereign." *Siler v. Scott*, 591 S.W.3d 84, 104 (Tenn. Ct. App. 2019) (quoting *Hughes v. Metro. Gov't of Nashville & Davidson Cty.*, 340 S.W.3d 352, 361 (Tenn. 2011)). All claims for damages brought under the GTLA must strictly comply with the GTLA. *Limbaugh v. Coffee Medical Ctr.*, 59 S.W.3d 73, 82 n.7 (Tenn. 2001).

The GTLA contains a list of specific exceptions for which municipalities, such as the City and litigants sued in their official capacity, retain immunity. *See* Tenn. Code Ann. § 29-20-205(1)–(10). One is the "intentional tort exception," which bars claims for injuries arising out of "[f]alse imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, **deceit**, interference with contract rights, **infliction of mental anguish**, invasion of right of privacy, or civil rights." Tenn. Code Ann. § 29-20-205(2) (emphasis added); *Limbaugh*, 59 S.W.3d at 81. Another exception is the "misrepresentation exception," which bars claims for injuries arising out of

4

"**[m]isrepresentation** by an employee **whether or not such is negligent or intentional**." Tenn. Code Ann. § 29-20-205(6) (emphasis added); *Justice v. Anderson Cty.*, 955 S.W.2d 613, 615–16 (Tenn. Ct. App. 1997); *Barnes v. Bradley Cty. Mem. Hosp.*, 161 Fed. App'x 555, 561 (6th. Cir. 2006).

Plaintiff's common law tort claims fall squarely within these exceptions, and as such, Counts XXVII, XXVIII, and XXIX must be dismissed as a matter of law.

### A. Plaintiff's IIED Claim Fails as a Matter of Law Because It Is Expressly Barred by the GTLA.

Plaintiff's claim for IIED, Count XXVII, fails as matter of law because it is expressly barred by the "intentional infliction of mental anguish" category of the intentional tort exception to the GTLA. *See* Tenn. Code Ann. § 29-20-205(2). The GTLA provides an exception for the waiver of immunity for "[f]alse imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, **infliction of mental anguish**, invasion of right of privacy, or civil rights; [. . . .] Tenn. Code Ann. § 29-20-205(2) (emphasis added); *see Stapp v. Wall*, No. 3:08-cv-0101, 2008 WL 11510613, at *7 (M.D. Tenn. Oct. 6, 2008) ("[T]he reference to 'infliction of mental anguish' in the [GTLA] applies [] to intentional infliction of emotional distress [claims].") (citing *Sallee v. Barrett*, 171 S.W.3d 822, 829 (Tenn. 2005)); *see also Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 853 (E.D. Tenn. 2011) (stating that IIED claims are expressly barred by the GTLA). Tennessee law is clear—Plaintiff's claim for IIED cannot be sustained against the City Defendants because it is barred by the GTLA.

Based on the foregoing, the City Defendants are entitled to summary judgment as a matter of law on Plaintiff's IIED claim.

5

B.  **Plaintiff's Fraudulent Misrepresentation Claim Fails as a Matter of Law Because It Is Expressly Barred by the GTLA.**

Plaintiff's claim for fraudulent misrepresentation, Count XXIX, fails as a matter of law because it is barred by the GTLA's "misrepresentation exception," which provides an exception to the waiver of immunity resulting from "**[m]isrepresentation** by an employee whether or not such is negligent or **intentional**; [. . . .] Tenn. Code Ann. § 29-20-205(6) (emphasis added).

Plaintiff's claim for fraudulent misrepresentation is premised on the allegation that Lt. Smith made false representations to Plaintiff on January 7, 2023 regarding the condition of her son. (Am. Compl., ECF No. 277, at ¶¶ 899–911.) The GTLA, however, provides that the City is immune from claims for injuries arising from "misrepresentation by an employee whether or not such is negligent or intentional." Tenn. Code Ann. § 29-20-205(6). Since Lt. Smith was acting as an agent of the City when he made the allegedly fraudulent misrepresentations to Plaintiff, the City Defendants are immune from suit for those alleged misrepresentations pursuant to the GTLA. *See id.*; *Epperson*, 140 F. Supp. 3d at 689.

Based on the foregoing, the City Defendants are entitled to summary judgment as a matter of law on Plaintiff's fraudulent misrepresentation claim.

C.  **Plaintiff's NIED Claim Is Actually a Negligent Misrepresentation Claim, Which Is Barred by the GTLA.**

Count XXVIII or Plaintiff's Amended Complaint is identified as a claim for NIED. However, the allegations supporting this claim actually state a claim for negligent misrepresentation, which is barred by the GTLA's "misrepresentation exception." Tenn. Code Ann. § 29-20-205(6) (providing an exception to the waiver of immunity resulting from "**[m]isrepresentation** by an employee whether or not such is **negligent** or intentional" (emphasis added)). To be sure, Plaintiff's NIED claim is based on the same alleged misrepresentations that

6

give rise to Plaintiff's fraudulent misrepresentation claim. Accordingly, the "NIED" claim, too, is barred by the misrepresentation exception to the GTLA. *See id.*

Plaintiff cannot circumvent the immunity conferred to the City by the GTLA by attempting to frame a claim for negligent misrepresentation as a claim for NIED. To support a claim for negligent infliction of emotional distress, Plaintiff must adequately allege that "***defendant's negligence*** caused a serious or severe emotional injury," *Brown v. Regions Bank*, No. 2:19-CV-2356-JPM-TMP, 2019 WL 13297196, at *4 (W.D. Tenn. Nov. 14, 2019) (quotation omitted) (emphasis added), not that defendant's ***negligent misrepresentation*** caused her injury. This is so because the City is immune from claims for injuries arising from "misrepresentation by an employee ***whether or not such is negligent or intentional***." Tenn. Code Ann. § 29-20-205(6) (emphasis added).

Consequently, the City Defendants are entitled to summary judgment as a matter of law on Plaintiff's "NIED" claim.

V.  **THERE IS NO PROOF THAT PLAINTIFF'S INTERACTION WITH LT. SMITH CAUSED ANY EMOTIONAL INJURY TO PLAINTIFF, AND THEREFORE, PLAINTIFF'S NIED CLAIM FAILS AS A MATTER OF LAW.**

To the extent that the Court decides to construe Count XXVIII as one for NIED, the City Defendants are nonetheless entitled to summary judgment in their favor on this claim. Plaintiff's NIED claim fails because she cannot establish that she suffered severe emotional distress as a result of ***Lt. Smith's*** alleged negligent conduct.

A.  **Elements of NIED.**

A claim for NIED is, first and foremost, a negligence action. *Eskin v. Bartee*, 262 S.W.3d 727, 735 (Tenn. 2008). A plaintiff who brings a stand-alone NIED claim must (1) satisfy the five elements of ordinary negligence (duty, breach of duty, injury or loss, causation in fact, and proximate or legal cause); (2) establish a "serious" or "severe" emotional injury; and (3)

7

prove that the emotional injury is serious or severe with expert medical or scientific proof. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 270 (Tenn. 2015) (citing *Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996). A "stand-alone" NIED claim is one that seeks recovery only for emotional injuries or is based solely on the emotional distress cause of action. *See Amos v. Vanderbilt Univ.*, 62 S.W.3d 133, 137 (Tenn. 2001). However, "[n]egligence is not presumed from the mere fact of an . . . injury." *Suttle v. Powers*, No. 3:15-CV-29-HBG, 2015 WL 7283098, at *3 (E.D. Tenn. Nov. 16, 2015) (first alteration in original) (quoting *Hickman v. Jordan*, 87 S.W.3d 496, 499 (Tenn. Ct. App. 2001)).

Importantly, all claims for NIED require a showing that the plaintiff suffered a serious mental injury resulting from the defendant's conduct. *Rye*, 477 S.W.3d at 270–71. Plaintiffs who have not suffered any physical injury themselves must provide expert proof to establish a severe emotional injury. *Id*. at 271 (granting summary judgment to defendants on co-plaintiff husband's NIED claim because he did not suffer any physical injury and did not provide expert proof to establish a severe emotional injury); *see also Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521, 528 (Tenn. 2008). Further, a plaintiff must prove that the defendant's conduct giving rise to the claim for emotional distress "[w]as so extreme and outrageous that it would have caused a reasonable person to suffer serious or severe emotional injury." *Doe v. Belmont Univ.*, 367 F. Supp. 3d 732, 766 (M.D. Tenn. 2019).

Here, to prevail on her NIED claim, Plaintiff must show she suffered severe emotional distress as a result of *Lt. Smith's* conduct by expert proof. *Camper*, 915 S.W.2d at 446. Plaintiff has not established—and cannot establish—that Lt. Smith caused her emotional injury. Consequently, the City Defendants are entitled to judgment as a matter of law on this claim.

### B. There Is No Genuine Dispute of Material Fact That Lt. Smith Did Not Cause Plaintiff's Emotional Injury.

The City Defendants have identified, through Rule 34 requests to Plaintiff and Rule 45 subpoenas *duces tecum*, three of Plaintiff's medical and mental health providers: a general physician, OrthoSouth Orthopedic Clinic ("OrthoSouth"), and Compassion Mental Health ("Compassion"). (SUMF ¶¶ 6, 9, 16.) None of Plaintiff's records support her claim that she suffered emotional distress as a result of her limited encounter with Lt. Smith on the night of January 7, 2023.

First, Plaintiff admits that she has not received any treatment from her general physician related to her interaction with Lt Smith. (SUMF ¶ 7.) Second, Plaintiff has failed to produce any medical records from this provider, let alone any records of emotional distress. (SUMF ¶ 8.)

Further, Plaintiff's counseling records from Compassion do not demonstrate that Plaintiff suffered from a severe mental injury resulting from speaking to Lt. Smith on January 7, 2023. (SUMF ¶ 9–15.) Plaintiff began receiving treatment at Compassion sometime between January 2023 and June 2023. (SUMF ¶ 10.) Between June 2023 and July 2024 Plaintiff received treatment from a provider at Compassion approximately thirteen times. (SUMF ¶ 11.) Of those appointments, Compassion provided treatment notes pursuant to a subpoena *duces tecum* for six appointments from June 21, 2023 through November 14, 2023. (*Id.*) While the Compassion records note that Plaintiff began experiencing symptoms of depression and anxiety "with the traumatic death of her son," there is no evidence in the record that connects these afflictions with Plaintiff's interaction with Lt. Smith. (SUMF ¶¶ 13–15.) In fact, the treatment notes repeatedly note stressors associated with "her son's death." (SUMF ¶ 14.) Importantly, however, the treatment notes do not even reference Lt. Smith or Plaintiff's conversation with Lt. Smith on January 7, 2023. (SUMF ¶¶ 9–15.)

9

Likewise, Plaintiff's records from OrthoSouth do not demonstrate that she suffered a severe mental injury resulting from speaking to Lt. Smith on January 7, 2023. Plaintiff began seeing a provider at OrthoSouth in March 2024 for treatment of chronic mid and low back pain. (SUMF ¶ 16.) Plaintiff has suffered with back pain for years preceding the Incident and the interaction with Lt. Smith. (SUMF ¶ 17.) In fact, Plaintiff represented to OrthoSouth that "she has always had some pain the back." (SUMF ¶ 18.) During her first appointment with OrthoSouth, Plaintiff was diagnosed with degenerative scoliosis and spondylosis in the thoracic and lumbar spine. (SUMF ¶ 20.) Additionally, Plaintiff's physical therapy records indicate that the onset of her back pain began in April 2022, almost a year prior to the incident. (SUMF ¶ 19.) Notably absent from Plaintiff's treatment notes are any discussions regarding her emotional injuries she claims contributed to her back pain. (SUMF ¶¶ 16–21.)

Moreover, Plaintiff testified that she lost her job with First Horizon Bank as a result of the Incident. However, this claim is not supported by her employment records obtained by First Horizon pursuant to a subpoena duces tecum. According to Plaintiff's employment records, Plaintiff voluntarily resigned and began an early retirement in December 2023. (SUMF ¶ 22.) Neither Plaintiff's resignation letter nor her personnel file related to termination state any other reason for Plaintiff ending her employment. (SUMF ¶ 23.)

Here, the undisputed facts show that Plaintiff did not suffer a serious or severe emotional injury resulting from Plaintiff's brief verbal encounter with Lt. Smith on January 7, 2023. Although Plaintiff may be suffering from emotional distress due to the death of her son, she has not put forth any proof establishing that her emotional distress is attributable to Lt. Smith's conduct towards Plaintiff on January 7, 2023. Plaintiff has not presented any medical or scientific expert proof that Plaintiff experienced "serious or severe" emotional distress from

speaking to Lt. Smith on January 7, 2023. Because emotional distress is not presumed and must be substantiated by competent medical or scientific evidence, the absence of such proof is fatal to Plaintiff's NIED claim. *See Camper*, 915 S.W.2d at 439 (holding that "[d]espite the fact that the record reflects that [plaintiff] has undergone some psychiatric treatment, it contains no expert medical evidence detailing his alleged mental and emotional injuries").[3]

Without medical or scientific proof, Plaintiff cannot establish an essential element of her negligent infliction of emotional distress claim, and the City Defendants are entitled to judgment as a matter of law on Count XXVIII of the First Amended Complaint.

## VI.   CONCLUSION

For the foregoing reasons, the City Defendants respectfully request that the Court grant their Motion for Summary Judgment and dismiss Counts XXVII, XXVIII, and XXIX of the First Amended Complaint.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.**

*s/ Bruce McMullen*
Bruce McMullen (#18126)
Jennie Vee Silk (#35319)
Kelsey W. McKinney (#40434)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 526-2000
bmcmullen@bakerdonelson.com
jsilk@bakerdonelson.com
kmckinney@bakerdonelson.com

---

[3] It is not disputed that the death of Plaintiff's son had an impact on her emotionally, but there is no proof of Lt. Smith's specific actions having any emotional impact on Plaintiff. Plaintiff's tort claims do not allege that she has experienced emotional injuries as a result of her son's death. Rather, these claims allege that her emotional injuries are the result of her interaction with Lt. Smith.

11

*Attorneys for Defendant City of Memphis, Chief Cerelyn Davis in her Individual Capacity, and Dewayne Smith as Agent of the City of Memphis*

12