IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| ROWVAUGHN WELLS, individually and as Administratrix ad Litem of the Estate of TYRE DEANDRE NICHOLS, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2:23-cv-02224-SHL-atc |
| THE CITY OF MEMPHIS, a municipality, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER ON MOTION FOR PROTECTIVE ORDER,
MOTION TO SEAL, AND MOTION TO VACATE**

Before the Court by Orders of Reference are multiple motions and related filings. The first is Plaintiff RowVaughn Wells's Motion for Protective Order, filed on September 25, 2024. (ECF No. 211.)[1] Defendant City of Memphis ("the City") responded in opposition on October 9, 2024. (ECF No. 216.) On November 15, 2024, the City filed a Motion for Leave to File a Supplemental Response to the Motion for Protective Order ("Motion for Leave"). (ECF No. 230.)[2] On November 17, 2024, Wells filed a response in opposition to the City's Motion for Leave (ECF No. 233) and a Motion to Seal Portions of the Motion for Leave ("Motion to Seal") (ECF Nos. 234, 235).

---

[1] Wells's Motion for Protective Order was referred to the undersigned on September 26, 2024. (ECF No. 212.)

[2] The City's Motion for Leave, which was characterized as being unopposed at the time it was filed, was granted by text-only order on November 15, 2025. (ECF No. 231.)

Wells and the City subsequently filed multiple submissions concerning the Motion for Protective Order and the Motion to Seal:

- The City's Response to the Motion to Seal, filed on November 18, 2024 (ECF No. 237);

- The City's Supplemental Response to the Motion for Protective Order, filed on November 22, 2024 (ECF No. 243);

- The City's Status Report (ECF No. 260) and Wells's Status Report (ECF No. 261) concerning the issues raised in the Motion to Seal, both filed on December 18, 2024;

- Wells's Supplemental Brief concerning the Motion to Seal, filed on December 18, 2024 (ECF No. 262); and

- Wells's Reply to the City's Supplemental Response to the Motion for Protective Order, filed on January 3, 2025 (ECF No. 278).

Then, on January 22, 2025, the City filed a Motion to Vacate Plaintiff's Improper Confidentiality Designations ("Motion to Vacate"). (ECF Nos. 286, 287.)[3] Wells and the City subsequently filed multiple submissions concerning the Motion to Vacate:

- Wells's Response to the Motion to Vacate, filed on February 5, 2025 (ECF Nos. 294, 295);

- The City's Reply in Support of the Motion to Vacate, filed on February 18, 2025 (ECF No. 305);

- The City's Supplemental Reply in Support of the Motion to Vacate, filed on May 1, 2025 (ECF No. 407); and

- Wells's Surreply in Opposition to the Motion to Vacate, filed on May 5, 2025. (ECF No. 410.)

For the following reasons, Wells's Motion for Protective Order is granted in part and denied in part, Wells's Motion to Seal is denied without prejudice, and the City's Motion to Vacate is denied without prejudice.

---

[3] The City's Motion to Vacate was referred to the undersigned for determination on January 23, 2025. (ECF No. 288.)

2

**BACKGROUND**

At issue in Wells's Motion for Protective Order are document subpoenas issued by the City to Marvin Volker, Lori Volker, Kris Volker, and Melissa Volker[4]—family friends of Tyre Nichols and Wells—and subpoenas to T-Mobile and Verizon for the cell-phone records of Nichols and Wells. (ECF No. 211, at 2.) Wells challenges these subpoenas primarily on relevance grounds and, with respect to the cell-phone subpoenas, as violating the Stored Communications Act, 18 U.S.C. § 2701 *et seq.* ("SCA"). (*Id.* at 10–16.) Neither cell-phone provider has objected to the subpoenas.[5] (ECF No. 216, at 12.) It is unclear whether Verizon has produced responsive documents, but T-Mobile has produced documents from September 2022 to present that the City has agreed not to review pending a resolution of the Motion for Protective Order. (ECF No. 211, at 6–7.)

The Volker subpoenas seek their communications (1) with Nichols from January 1, 2019, to January 7, 2023; (2) with Wells from January 1, 2023, to present; (3) with Wells's husband from January 1, 2023, to present; (4) with Wells's attorneys regarding their relationship with Nichols, the administration of his estate, or this litigation; (5) with third parties regarding these same subjects; and (6) with Nichols or people connected to him concerning Nichols's minor child. (ECF Nos. 211-3, 211-4, 211-5, 211-6.) The subpoenas to Verizon and T-Mobile seek

---

[4] The City deposed Marvin, Lori, and Kris Volker in November 2024, which accounts for three of the four deposition transcripts at issue in the Motion to Seal and Motion to Vacate. Based on the Record before the Court, it is unclear whether Melissa Volker's deposition has been taken, as the parties' subsequent filings relating to the Motion to Seal and Motion to Vacate concern only Marvin, Lori, and Kris Volker.

[5] The Record does not reflect whether the Volkers object to the subpoenas issued to them.

3

subscriber information and records of all phone calls, text messages, multi-media messages, and emails from January 1, 2019, to present.[6]  (ECF Nos. 211-7, 211-8.)

At issue in Wells's Motion to Seal and the City's Motion to Vacate is whether Wells has properly designated a significant portion of the transcripts of the depositions of four non-party witnesses—Marvin Volker; Lori Volker; Kris Volker; and the mother of Nichols's minor child ("Child's Mother")[7]—as confidential under the parties' Agreed Protective Order (ECF No. 234; ECF No. 286-1, at 4) and whether Wells's confidentiality designations should remain in place now that those depositions have been filed in the case in the context of a discovery dispute—that is, the Motion for Protective Order—based on the Sixth Circuit's recent holding in *Grae v. Corrections Corp. of Am.*, 134 F.4th 927 (6th Cir. 2025).  (ECF Nos. 407, 410.)

Wells has designated approximately seventy-five to eighty-five percent[8] of the four non-party deposition transcripts as confidential.  The Agreed Protective Order allows a party to designate as confidential discovery materials that disclose "(i) confidential or proprietary business information; or (ii) private and/or sensitive information including, but not limited to, financial information, medical information, leave information, disciplinary information, social security numbers, dates of birth and other private employee information."  (ECF No. 213, at 2.)  The Agreed Protective Order's protections also extend to "(i) information concerning any

---

[6] The subpoena to Verizon also seeks information concerning Nichols's employment history with Verizon, but the parties were able to resolve their disputes over production of that information. (ECF No. 211, at 6 n.2.)

[7] Wells contends that Child's Mother's identity should remain confidential and under seal in this case.  As discussed below, Wells has not made a sufficient showing to that effect at present, but she may brief this issue again for the Court's consideration under the proper standard.

[8] Wells argues that the confidentiality designations encompass "about 75%" of the four deposition transcripts (ECF No. 295, at 11), whereas the City approximates the coverage at "85 percent" (ECF No. 305, at 7).  Resolution of this disagreement is unnecessary to the disposition of these Motions.

4

person's past or present medical condition(s), medical treatment(s), psychological condition(s), or psychological treatment(s);" "personal financial or tax information;" "unredacted body worn camera footage that is not already part of the public domain;" "[a]ny information not subject to disclosure under Tennessee Rule of Criminal Procedure 16(a)(2) and Federal Rule of Criminal Procedure 16(a)(2);" and "[a]ny other type of information that is maintained by the producing party on a confidential basis, provided that the producing party has a legitimate interest in maintaining the confidentiality/privacy of said information." (*Id.* at 2–3.)

With respect to confidentiality designations, the Agreed Protective Order requires the designating party to have a "good faith belie[f]" that the materials contain confidential information. (*Id.* at 4.) If discovery material is designated confidential, the material must be sealed if it is filed on the docket, subject to "the directives of the United States Court of Appeals for the Sixth Circuit in its holding in *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 302 (6th Cir. 2016)." (*Id.* at 9–10.) Finally, as relevant herein, the Agreed Protective Order allows a party to challenge the confidentiality designations of other parties through discovery motion practice. (*Id.* at 9.)

## ANALYSIS

I. **Wells's Motion for Protective Order**

   A. *Standard of Review*

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The party seeking discovery is obligated to demonstrate relevance." *Fusion Elite All Stars v. Nfinity Athletic LLC*, No. 2:20-cv-02600-SHL-tmp, 2022 WL 1175691, at *3 (W.D. Tenn. Apr. 20, 2022) (citing *Johnson v. CoreCivic, Inc.*, No. 2:18-cv-01051-STA-tmp, 2019 WL 5089086,

5

at *2 (W.D. Tenn. Oct. 10, 2019)). "Relevance is defined broadly; Rule 26(b)(1) explains that '[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'" *United States v. Tennessee*, No. 2:92-cv-02062-JPM-tmp, 2012 WL 13089423, at *2 (W.D. Tenn. Apr. 18, 2012). "Showing relevance is an 'extremely low bar,'" and evidence is relevant "if it has '*any* tendency to make a fact more or less probable.'" *Cain v. City of Detroit*, No. 20-cv-11099, 2022 WL 3337135, at *1 (E.D. Mich. Apr. 22, 2022) (quoting *In re Ford Motor Co. Spark Plug & 3-Valve Engine Prod. Liab. Litig.*, 98 F. Supp. 3d 919, 925 (N.D. Ohio 2014)).

If relevance is shown, "the party resisting discovery bears the burden of demonstrating why the request is unduly burdensome or otherwise not discoverable under the Federal Rules." *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 310 (W.D. Tenn. 2008) (collecting cases). To determine whether discovery is unduly burdensome or not proportional to the needs of the case, "six factors are relevant to proportionality: (1) 'the importance of the issues at stake in the action;' (2) 'the amount in controversy;' (3) 'the parties' relative access to relevant information;' (4) 'the parties' resources;' (5) 'the importance of the discovery in resolving the issues;' and (6) 'whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Johnson v. CoreCivic, Inc.*, No. 18-cv-1051-STA-tmp, 2019 WL 5089086, at *2 (W.D. Tenn. Oct. 10, 2019) (quoting Fed. R. Civ. P. 26(b)(1)).

Though the scope of discovery is broad, "a person from whom discovery is sought may move the court for a protective order limiting discovery." *Int'l Fid. Ins. Co. v. Vimas Painting Co.*, No. 2:07-CV-298, 2008 WL 11455038, at *2 (S.D. Ohio Mar. 5, 2008) (citing *Roll Rite Corp. v. Automated Integrated Sys. Inc.*, 186 F. App'x 590 (6th Cir. 2006)). Rule 26 provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance,

6

embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The moving party bears the burden of establishing good cause. *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001)). "Good cause exists when the party moving for the protective order 'articulate[s] specific facts showing "clearly defined and serious injury" resulting from the discovery sought . . . .'" *Vignes-Starr v. Lowe's Home Ctrs., LLC*, 544 F. Supp. 3d 774, 776 (W.D. Ky. 2021) (quoting *Nix*, 11 F. App'x 500 (6th Cir. 2001)).

With respect to subpoenas, pursuant to Rule 45(d)(3)(A), the Court must, on timely motion, quash or modify a subpoena that "fails to allow a reasonable time to comply; requires a person to comply beyond the geographical limits specified in Rule 45(c); requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). The decision of whether to quash, modify, or condition a subpoena is within the court's sound discretion. *Parkway Fox, L.P v. Mass. Bay Ins. Co.*, No. 2:13-cv-02567-JTF-dkv, 2014 WL 12634494, at *1 (W.D. Tenn. June 16, 2014).

    B.    *Subpoenas to the Cell-Phone Providers*

Since the filing of the Motion for Protective Order, much has happened in this case, including the depositions of at least three of the four Volkers; the deposition of Child's Mother; and significant document productions by Wells, the City, and third parties. As such, at least some of the issues raised in the Motion for Protective Order are moot due to the passage of time, the progression of this case, the depositions that have been taken, and the documents that have been produced over the past year.

To the extent any live disputes remain as to the relevance of the subpoenaed cell-phone records, however, those disputes are obviated because the SCA does not permit the providers to produce the requested records. The SCA sets out the following prohibitions:

7

> (1) a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service; and
>
> (2) a person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service—
>
>> (A) on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such service;
>>
>> (B) solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing; and
>
> (3) a provider of remote computing service or electronic communication service to the public shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications covered by paragraph (1) or (2)) to any governmental entity.

§ 2702(a). Though these prohibitions are subject to certain enumerated exceptions, including where the subscriber consents or when disclosure is to a law enforcement agency or "a governmental entity in an emergency involving potential danger, death, or serious physical injury to a person," "there is no civil discovery exception to the SCA." *Baker v. Royce*, No. 1:14-cv-14035, 2015 WL 13584586, at *3 (E.D. Mich. June 26, 2015) (citing § 2702(b); *Flagg v. City of Detroit*, 252 F.R.D. 346, 350 (E.D. Mich. 2008)). "Unless the matter falls within a specific exception, the SCA lacks any language that explicitly authorizes a service provider to divulge the contents of a communication pursuant to a subpoena or court order." *Elcometer, Inc. v. TQC-USA, Inc.*, No. 12-cv-14628, 2013 WL 5346382, at *4 (E.D. Mich. Sept. 23, 2013) (quotation omitted); *see also, e.g.*, *Flagg*, 252 F.R.D. at 367 (noting the conflicting authority as to whether the SCA allows a party in civil litigation to obtain cell-phone records without the other party's consent and ordering the party to seek documents by way of Rule 34 document requests, rather

than via subpoena to a cell-phone provider); *Buckner v. Douglas Autotech Corp.*, No. 5:20-cv-00056-TBR-llk, 2021 WL 3408485, at *3 (W.D. Ky. Aug. 4, 2021) (collecting cases for the proposition that the "question is not settled" as to whether the SCA prohibits cell-phone providers from disclosing records in response to civil-litigation subpoenas, absent an applicable exception); *Doe v. City of San Diego*, No. 12-cv-0689-MMA, 2013 WL 2338713, at *4 (S.D. Cal. May 28, 2013) (holding that "the SCA prohibits Verizon from disclosing any of the records sought by the City's subpoena" but that the same information could potentially be obtained under Rule 34).

In this case, the City has not identified any applicable exception that overcomes the SCA's protections, and the Motion for Protective Order is therefore GRANTED with respect to the subpoenas to T-Mobile and Verizon. *See, e.g.*, *Baker*, 2015 WL 13584586, at *3 ("Since none of these exceptions apply to the instant subpoena, the disclosure should not occur and the motion to quash should be granted."); *Doe*, 2013 WL 2338713, at *3–4 (quashing a subpoena where none of the SCA's exceptions applied); *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 611 (E.D. Va. 2008) ( "Applying the clear and unambiguous language of § 2702 to this case, AOL, a corporation that provides electronic communication services to the public, may not divulge the contents of the . . . electronic communications . . . because the statutory language of the Privacy Act does not include an exception for the disclosure of electronic communications pursuant to civil discovery subpoenas."); *Mintz v. Mark Bartelstein & Assocs.*, 885 F. Supp. 2d 987, 991–92 (C.D. Cal. 2012) (collecting cases for the proposition that "[t]he SCA does not contain an exception for civil discovery subpoenas"). The City must destroy any documents it received from Verizon and/or T-Mobile within fourteen days of the date of this Order. *See Ademiluyi v. Phillips*, No. 2:14-cv-00507-MMD, 2014 WL 7012493, at *4 (D. Nev. Dec. 12,

9

2014) (holding that a subpoena issued to T-Mobile should be quashed and that, "to the extent Plaintiff has already received the cell phone records from T-Mobile, this Court directs Plaintiff to destroy all of the records"). As noted in several of the cases cited herein, the City may be able to obtain the cell-phone records it seeks via Rule 34 discovery requests to Wells.

    C.    *Subpoenas to the Volkers*

Wells argues that the subpoenas to the Volkers are overly broad and seek irrelevant information because they do not bear on the claims or defenses in this case. (ECF No. 211, at 8–9.) If this case were solely about the events immediately leading up to and during Nichols's death, Wells arguments would likely be well taken. However, as the City correctly notes, Wells has made the information sought in the Volker subpoenas relevant through her claims for damages on behalf of herself and Nichols's minor child. (ECF No. 216, at 4–8.) Wells intends to put on proof concerning numerous types of damages, such as "pecuniary loss, including medical and funeral expenses; loss of future wages and earnings; and loss of aid, counsel, guidance, advice, assistance, protection, and support" on behalf of Nichols's minor child and "emotional damages in the form of severe emotional distress, loss of normal life, suffering, anguish, and disability" on behalf of both the child and Wells. (ECF No. 277, at 61, 142.) And in her supplemental Rule 26(a)(1) Initial Disclosures, Wells states that she and other potential witnesses expect to testify about, among other things, Nichols's "life and aspirations," Wells's and Nichols's "loss of enjoyment of life," his "strength and capacity to work and for earning money," his "personal habits of sobriety and industry," and "[a]ll other topics relevant to damages allowed under the law." (ECF No. 216-1, at 2–3.)

Based on the parties' submissions, the Volkers are likely to be important sources of information on such topics. For example, the City has provided transcripts from the depositions

10

of three of the Volkers, who testified about their knowledge of Nichols's education; his work history; his relationship with his minor child and with Child's Mother; his life, aspirations, and habits; and their communications and relationship with Nichols in the years preceding his death in January of 2023. (*See, e.g.*, ECF No. 244, at 46–50; ECF No. 244-1, at 19–25; ECF No. 244-2, at 15–19, 35–38, 76–80.) The City also provided the transcript of the deposition of Child's Mother, who testified that she knows the Volkers by way of Nichols's long-standing friendship with them and that they likely have information about the topics above. (ECF No. 240, at 90–95; ECF No. 240-1, at 22–24.) This information indicates that the Volker subpoenas—which seek the Volkers' communications with Nichols in the four years leading up to his death, with Wells and her husband since Nichols's death, and with third parties concerning the Volkers' relationships with Nichols—seek documents relevant to the claims and defenses in this case.

      Furthermore, considering the six Rule 26(b)(1) factors, Wells has not sufficiently shown that the subpoenaed information would be unduly burdensome to produce or is not proportional to the needs to the case. The issues at stake are of high importance, the amount in controversy is significant, the Volkers have greater access to the information than the City, and, as just discussed, the information may prove important to resolving some of the damages questions in this case. Though the City undoubtedly has greater resources than the Volkers, that factor is not weighty enough to overcome the rest, and the parties do not address what burden or expense would be associated with production or whether those downsides outweigh the benefits. The Motion for Protective Order is therefore DENIED with respect to the Volker subpoenas, and the City may have those subpoenas issued and served on the Volkers.

## II.     Wells's Motion to Seal and the City's Motion to Vacate[9]

The central issue in these motions is whether certain information should be protected from public disclosure. Though the parties frame the issue as whether information contained in deposition transcripts has been appropriately designated as confidential under the terms of the Agreed Protective Order,[10] the dispute has now achieved elevated importance, as that information is germane to the resolution of Well's Motion for Protective Order. As discussed above, portions of the Volkers' and Child's Mother's deposition transcripts have been offered to demonstrate the relevance of the documents sought from the Volkers, and that testimony directly impacted the Court's resolution of the Motion for Protective Order.

Thus, whether Wells's confidentiality designations comply with the Agreed Protective Order is largely immaterial, and the analysis shifts to the public-access issues set out in *Shane Group*, and, more recently, *Grae*. "[T]here is a stark difference" between protective orders that permit the designation of discovery materials as confidential and orders that maintain those designations by allowing materials to be filed on the docket under seal. *Shane Grp.*, 825 F.3d at 305. "Secrecy is fine at the discovery stage, before the material enters the judicial record." *Id.* (quoting *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002)). In the discovery

---

[9] Wells filed the Motion to Seal publicly at ECF No. 234 and under seal at ECF No. 235. Likewise, the City filed the Motion to Vacate publicly at ECF No. 286 and under seal at ECF No. 287. For the sake of simplicity, the Court will cite to the unsealed versions of the Motions.

[10] The City also argues that the Agreed Protective Order only protects the information of a "party" to the case, such that the depositions of the four non-party witnesses are not eligible for confidentiality designations. (ECF No. 407, at 3.) However, as Wells correctly counters (ECF No. 410, at 4), the City's reading of the Agreed Protective Order is too restrictive and would violate both the letter and spirit of the Order's protections of discovery material. For example, the Order provides that information obtained from non-parties may constitute confidential information and that "a party to this action[] and any non-party from whom discovery is sought" may designate materials as confidential. (*Id.* at 3–4.) The Order's protections thus extend to parties and non-parties involved in the discovery process.

stage, the court may enter a protective order that limits the disclosure or use of discovery materials "upon a mere showing of 'good cause.'" *Id.* (quoting Fed. R. Civ. P. 26(c)(1)). "These orders are often blanket in nature, and allow the parties to determine in the first instance whether particular materials fall within the order's protection." *Id.*

Once those materials are filed on the docket, however, the inquiry changes. "[F]ederal courts do their business in public—which means that the public is presumptively entitled to review every document that a party files with the court for purposes of influencing a judicial decision." *Grae*, 134 F.4th at 930. Thus, "[o]nly the most compelling reasons can justify non-disclosure of judicial records." *Id.* (quoting *Shane Grp.*, 825 F.3d at 305). "Unlike information merely exchanged between the parties, 'the public has a strong interest in obtaining the information contained in the court record.'" *Shane Grp.*, 825 F.3d at 305 (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983)). Thus, there is a "'strong presumption in favor of openness' as to court records." *Id.* (quoting *Brown*, 710 F.2d at 1179). The burden on the party seeking to seal records "is a heavy one: 'Only the most compelling reasons can justify non-disclosure of judicial records.'" *Id.* (quoting *In re Knoxville News–Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983)). "Moreover, the greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access." *Id.* "The proponent of sealing therefore must 'analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations.'" *Id.* at 305–06 (quoting *Baxter*, 297 F.3d at 548).

That is not to say that all records filed in a case must be open to public view. For example, the "privacy interests of innocent third parties can be reason enough to seal," and other information such as "trade secrets, information covered by a recognized privilege (such as the

13

attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault) is typically enough to overcome the presumption of access." *Grae*, 134 F.4th at 932 (citations and quotations omitted). Furthermore, documents that have been designated as confidential that are filed solely "to circumvent the strictures of a protective order . . . are not subject to the presumption of access. Nor are documents that 'cannot conceivably aid the understanding of judicial decisionmaking.'" *Id.* at 933 (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34–35 (1984); quoting *City of Greenville v. Syngenta Crop Prot., LLC*, 764 F.3d 695, 698 (7th Cir. 2014)).

      The question then becomes whether the deposition transcripts Wells seeks to keep sealed have crossed the line between materials exchanged between the parties in discovery and materials that have been placed "in the court record." *Shane Grp.*, 825 F.3d at 305. "[A] document counts as a judicial record, for purposes of the presumption of access, when it is 'filed with the objective of obtaining judicial action or relief' or otherwise plays 'a role in the adjudicative process.'" *Grae*, 134 F.4th at 933 (quoting *United States ex rel. Oberg v. Nelnet, Inc.*, 105 F.4th 161, 171 (4th Cir. 2024)). "When filed for that purpose, the entire document, and not just the parts cited by the parties or the court, becomes a judicial record." *Id.* (citing *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 668 (D.C. Cir. 2017)). "For a determination that material is irrelevant can itself 'reveal something valuable about the judicial process.'" *Id.* (quoting *City of Greenville v. Syngenta Crop Prot., LLC*, 764 F.3d 695, 698 (7th Cir. 2014)).

      Wells argues strenuously that the deposition transcripts have not become judicial records for purposes of *Shane Group*'s and *Grae*'s directives because "the presumption of public access [does not apply] to information exchanged between the parties during discovery (such as

deposition testimony) or documents filed in connection with discovery disputes, which do not adjudicate the parties' substantive rights or relief." (ECF No. 410, at 5). She asserts that *Grae* quotes with approval *In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013), which, in turn, according to Wells, stands for the proposition that the "presumption of public access attaches to discovery documents only if discovery documents were filed in connection with a dispositive motion, such as a motion for summary judgment because summary judgment adjudicates substantive rights." (ECF No. 410, at 4 n.2 (cleaned up).)

Wells's arguments concerning *Grae*'s citation to this Fourth Circuit case founder for a number of reasons. First, in *Grae*, the Sixth Circuit cites to *Oberg*, not *In re U.S.* Though *Oberg* cites to *In re U.S.*, it does not do so for the proposition cited by Wells. *Oberg*, 105 F.4th at 171–73. Second, both *In re U.S.*, 707 F.3d at 280–81, and *Oberg*, 105 F.4th at 171–72, focus on access to judicial documents related to dispositive motions under the public's First Amendment right of access, a right the Fourth Circuit described as "narrower and deeper" than the common law right of public access, which is "broad but shallow." *Oberg*, 105 F.4th at 171. Neither case stands for the proposition that only documents related to dispositive motions are judicial records that the public has a presumptive right to access, under the common law or otherwise, whereas documents related to discovery motion practice are not. Rather, the cases acknowledge that "the common law presumes a right to access of *all* judicial records and documents, but this presumption can be rebutted if the public's right of access is outweighed by competing interests." *In re U.S.*, 707 F.3d at 290 (quotation omitted); *see also Oberg*, 105 F.4th at 171 ("The common law presumes a right of the public to inspect and copy all judicial records and documents. Documents filed with the court are 'judicial records' if they play a role in the

15

adjudicative process or adjudicate substantive rights, such as when they were filed with the objective of obtaining judicial action or relief. The finding that a document is a judicial record guarantees only a presumption of access, however, and this presumption can be rebutted by a showing that countervailing interests heavily outweigh the public interests in access." (quotations omitted and cleaned up)).

In *Shane Group*, 825 F.3d at 307–08, and *Grae*, 134 F.4th at 931–33, the Sixth Circuit addressed the common law right of public access with respect to "substantive filings" and "substantive motions." Wells would have this Court interpret "substantive" to mean "dispositive," but nowhere in these cases does the Sixth Circuit imply that these terms are interchangeable for purposes of the presumption of public access. Nor do these cases limit the presumption of access to documents related to dispositive motions, as opposed to discovery motions; they instead hold that the presumption of public access arises when a document is "filed with the objective of obtaining judicial action or relief or otherwise plays a role in the adjudicative process." *Grae*, 134 F.4th at 933 (quotation omitted). Indeed, though *Grae* does not identify the subject matter of the underlying motion at issue, characterizing it only as a "substantive motion" filed in August 2020, a review of the *Grae* district court docket reveals that the filing was a motion to compel interrogatory responses, and not a dispositive motion. *See Grae*, 3:16-cv-2267, ECF Nos. 276–80 (M.D. Tenn. Aug. 14, 2020). Thus, Wells is simply incorrect that the presumption set out in *Shane Group* and *Grae* applies only to dispositive motions and not to discovery motions.

Since *Grae*, district courts in this circuit have likewise held that the presumption of public access attaches to documents filed in support of discovery motions. For example, in *GM Glob. Tech. Ops., LLC v. Quality Collision Parts, Inc.*, No. 23-cv-13026, 2025 WL 1888798, at

16

*3 (E.D. Mich. July 8, 2025), the court denied a motion to seal documents filed in conjunction with numerous discovery motions because the motion to seal did not contain the "document-by-document, line-by-line" analysis that is required to overcome the presumption of public access. The court further held that "harms to one's business or reputation" caused by unflattering, hearsay statements from a third party "are not compelling interests that warrant filing under seal" in the context of the parties' discovery disputes. *Id.* at *4. The court thus applied *Grae* to conclude that "the supposed harm that would result from publication is not itself sufficient to overcome the strong presumption in favor of openness in court records," denying the motion to seal and finding the motion challenging the confidentiality designations moot. *Id.* (quotation omitted); s*ee also, e.g.*, *United States v. EES Coke Battery, LLC*, No. 22-cv-11191, 2025 WL 1172449, at *1–2 (E.D. Mich. Apr. 22, 2025) (denying a motion to seal documents related to a discovery dispute without prejudice because the motion did not engage in a "document-by-document, line-by-line demonstration that the information in the document meets the demanding requirements for a seal" (quotation omitted)); *Mahoney v. Micka*, No. 2:24-cv-4043, 2025 WL 1568171, at *1 (S.D. Ohio June 3, 2025) (denying a joint motion to seal documents attached to the complaint because the parties failed show that "disclosure will work a clearly defined and serious injury" as required by *Grae*); *Vincent Sys. GMBH v. Fillauer Co.*, No. 1:23-cv-2-CEA-mjd, 2025 WL 1584689, at *1–2 (E.D. Tenn. June 4, 2025) (denying an unopposed motion to seal documents related to a motion to compel for failure to make the required showing under *Grae*).

In line with this authority, the deposition transcripts at issue in this case are judicial records, and any attempt to keep them sealed must comply with *Shane Group* and *Grae*. However, because the parties' arguments are largely addressed to the propriety of Wells's good-

17

faith basis for her confidentiality designations under the Agreed Protective Order, they have not conducted *Grae*'s document-by-document, line-by-line analysis of whether the information should remain under seal. Even if it were appropriate for the Court to conduct that analysis in the absence of the parties' presentation, the parties have not even sufficiently identified which specific lines or portions of the documents are at issue or how those portions satisfy the requirements of *Grae*.

Considering the above, the Motion to Seal and the Motion to Vacate are DENIED without prejudice. Wells shall, after consultation with the City, file a notice by October 24, 2025, setting forth the specific portions of the docket relating to the Motion for Protective Order, the Motion to Seal, and the Motion to Vacate that she asserts should remain under seal;[11] her arguments as to why sealing is permitted under *Shane Group* and *Grae*; and whether the City opposes the sealing of those portions.[12] Wells shall identify those specific portions document by document and line by line, as required by *Grae*. The City may file a response to Wells's notice by November 7, 2025.

## CONCLUSION

For the reasons discussed above, the Motion for Protective Order is GRANTED IN PART and DENIED IN PART. The Motion to Seal and Motion to Vacate are DENIED without prejudice. Wells shall file her notice discussed above by October 24, 2025, and the City may file a response by November 7, 2025.

---

[11] The docket contains multiple other filings under seal that have nothing to do with the Motion for Protective Order, the Motion to Seal, or the Motion to Vacate. The question of whether those documents should remain under seal is not presently before the undersigned and need not be addressed in Wells's notice.

[12] The sealed filings on the docket at issue are ECF Nos. 230, 233, 235, 240, 244, 260, 261, 262, 278, 287, and 295.

SO ORDERED this 26th day of September, 2025.

                                                s/Annie T. Christoff
                                                ANNIE T. CHRISTOFF
                                                UNITED STATES MAGISTRATE JUDGE