IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| RowVaughn Wells, <br><br> Plaintiff, <br> v. <br><br> The City of Memphis *et al.*, <br><br> Defendants. | Case No. 2:23-CV-02224 |

**JOINT STATUS REPORT**

Pursuant to the Court's August 11, 2025 Minute Entry, the parties[1] submit the following joint status report:

**Plaintiff's Position**

*Written Discovery*

Since the Court's August 11 hearing, Plaintiff and the City have made significant progress with written discovery. The parties have worked to resolve a number of previously outstanding issues. In several areas, Plaintiff and the City have reached compromises in which Plaintiff has narrowed her requests and the City has produced responsive documents. However, there are several key areas where the City's productions remain outstanding. These items are summarized below. These documents are necessary for Plaintiff to take productive *Monell* depositions. It is important that production be completed as quickly as possible.

---

[1] Counsel for Plaintiff and the City have identified positions for discussion at the October 29 status conference. Counsel for the remaining defendants did not identify additional matters for discussion at the conference.

1

a) *ISB Files*

The MPD's Inspectional Services Bureau ("ISB") investigates and determines discipline for officer violation of MPD policy (including excessive force). Plaintiff's RFPs 90 and 133 call for the production of ISB files related to use of force incidents. The complete ISB files are stored in hard-copy form, but MPD has digitized a subset of the materials for some files.

There has been a multi-month delay, since May, in the City's production of a swath of ISB file materials. Plaintiff has repeatedly accommodated the City and agreed to its preferred approaches for producing these documents. The City, however, has changed its mind multiple times, including as recently as October 20, regarding this production, delaying yet again.

In mid-May 2025, Plaintiff contacted the City to arrange for Plaintiff's vendor to scan the hard-copy ISB files—a plan the parties had previously agreed to. But when the City pushed back, Plaintiff agreed to proceed as the City preferred: the City would first produce the portions of all responsive ISB files that MPD had previously digitized, which the parties would use to whittle down the number of hard-copy ISB files that Plaintiff would engage a vendor to scan. Then in mid-September, when Plaintiff contacted the City to arrange a vendor to scan just 58 (of hundreds) of the hard-copy ISB files the City refused, stating instead that it would conduct a manual review of the hard-copy files to see whether the hard-copy versions contained anything missing from the already-produced digitized versions. Plaintiff agreed to that new approach based on the City's representation that it anticipated the manual review being completed by October 3. But after multiple follow-up attempts by Plaintiff, the City had not completed its manual review or even responded to Plaintiff's emails on the subject. Then on October 20, the City informed Plaintiff that it would *not* conduct the manual review, and would instead scan the entirety of each of the hard

copy versions of the 58 ISB files Plaintiff had specified. The City gave no explanation for this reversal, nor did it provide any estimated date for completing production.

In sum, ISB files that Plaintiff could have had in May still have not been produced. And the City has not even committed to a timeline for production. Plaintiff believes this matter should be addressed at the status hearing and a clear deadline for prompt production of the 58 complete ISB files should be set.

b) Plaintiff's RFP 90, 153, and 247.

As relevant here, these requests seek body-worn camera videos of ISB-investigated use of force incidents (RFP 90) and body-worn camera videos related to other specific incidents of apparent excessive force by MPD (RFPs 153 and 247). Responsive material has been outstanding for months. On the afternoon of the due date of this report, the City produced additional responsive videos, and represented that this completed the City's production of responsive material. Plaintiff's counsel is currently reviewing. To the extent the production appears incomplete after counsel has reviewed, Plaintiff submits that the matter should be addressed at the status hearing and the Court should enter a deadline for the City to complete its productions.

*Depositions*

Now that Plaintiff's counsel has reviewed the vast majority of documents produced regarding use-of-force incidents pursuant to RFP 133, Plaintiff has identified witnesses to depose and has begun scheduling a number of depositions of MPD personnel related to her Monell claims. The parties currently have four upcoming depositions scheduled of MPD supervisors: Carlos Davis (Oct. 23), Dewayne Smith (Oct. 24), Tracy Burford (Oct. 28), and Byron Hardaway (Oct. 30).

Currently Plaintiff has been allotted 30 depositions. *See* ECF 179 at 3. Given the number of use-of-force incidents and the breadth of evidence at issue in Plaintiff's *Monell* claims, Plaintiff

3

has determined she needs 17 additional depositions, for a total of 47 depositions. Defendants disagree, and the parties have recently come to issue regarding the number of depositions. Plaintiff will be filing a motion pursuant to Rule 30(a)(2)(A)(i) for a total allotment of 47 depositions before the October 29 hearing.

Briefly, at the time the Court determined that 30 depositions would be appropriate, Plaintiff's *Monell* theory was confined to allegations about the SCORPION unit, and given the relatively confined nature of that theory, the Court expressed concern that going past 30 depositions would result in "repetitive" discovery. *See* Apr. 8, 2024 Hr'g Tr. (ECF 180) at 49:10. At the same time, the Court "emphasize[d]" that it was open to entertaining requests for more depositions should the need become clear. *Id.* at 49:14-24. Since then, as Plaintiff has explained previously, *see generally* ECF 447 at 1-2, Plaintiff's *Monell* theory has expanded considerably to include the MPD generally and its oversight of use-of-force incidents. And through RFP 133 and related discovery requests, Plaintiff has gathered documentation regarding dozens of use-of-force incidents and the response of MPD supervisory authorities to those incidents. From among those incidents, Plaintiff has selected those most probative of her *Monell* theories. The additional 17 depositions are intended to gather evidence relating those different incidents and the City's response to them. Because the depositions relate to different incidents, they are not duplicative. At the same time, Plaintiff expects the City to contest her *Monell* evidence incident-by-incident, making these depositions necessary and proportional in light of Plaintiff's evidentiary burden to prove her *Monell* claim against the City.

*Sealing disputes*

The City has identified the parties' outstanding dispute regarding the sealing of certain filings in this case. Plaintiff respectfully submits that the Court need not weigh in on this dispute

now, because it is currently before Magistrate Judge Christoff. At the time Judge Christoff issues a decision regarding that dispute, a party dissatisfied with her ruling may object to this Court pursuant to Federal Rule of Civil Procedure 72(b)(2).

**The City Defendants' Position**

*Sealing Disputes*

The parties remain in dispute about what information should remain on the docket under seal. The Court in its Order on Motion for Protective Order, Motion to Seal, and Motion to Vacate (ECF No. 483), ordered the parties to confer and file briefs outlining their respective positions using a line-by-line analysis. Plaintiff has been consistent in seeking to seal discovery in this matter. Consequently, Plaintiff has now requested additional time to file her position statement—a delay tactic to continue litigating this case in secret. Clearly, Plaintiff is aware of the *Shane Group* and *Grae* factors that must be satisfied. As the City has made clear across its various filings on this issue, the only information that should be excluded from the docket, whether through sealed filings or simple redactions, are social security numbers, names of minor children, dates of birth, financial account numbers, state-issued identification card numbers, and home addresses. These are the categories of information contemplated by *Shane Group* and *Grae* in cases such as this one, where a private, individual plaintiff has sued a public entity and other private individuals under 42. U.S.C. § 1983 and state tort law. Thus, the analysis is rather simple on what should remain under seal in this case.

Accordingly, the City notifies the Court that not only does it oppose Plaintiff's motion for extension, the City intends to file its position statement with the Court prior to the October 29 status conference. In addition, the City notes that it intends to file additional motions to unseal all other docket entries not addressed by the Court's September 26 Order (ECF No. 483).

*Written Discovery*

The City agrees with Plaintiff that the parties have made significant progress on outstanding discovery issues since the August 11 Status Conference. However, the City disagrees with Plaintiff's characterizations of the remaining disputes as set forth in her portion of the Joint Status Report above. The City addresses the issues in turn below.

a) ISB Files

*Production to Date.* In total, RFP 90 calls for the production of 500-600 unique ISB case files. The City has produced over 62,000 pages of documents and other ESI responsive to RFP 90. Likewise, the City emphasizes to the Court that, it has already produced at least **10,000 pages** of documents and other ESI for Plaintiff's narrowed "short list" of 58 ISB case files.

*Hard Copy vs. Digitized Files.* The parties have discussed on several occasions the possibility of having a vendor come to ISB to scan the hard copy versions of the files. Until mid-September, Plaintiff would not agree to limit the number of hard copy files for scanning to less than the full 500-600 responsive files. In an effort to be transparent, the City allowed Plaintiff's vendor to physically inspect the ISB file room to get a sense of the burden of production. It was only after this meeting that Plaintiff finally agreed to the production of the digitized files instead, and the City's production of those files proceeded. The digitized versions include, among other things, comprehensive case summaries, transcripts and recordings of witness interviews, incident reports, analysis and conclusions on alleged violations, case notes from the ISB investigators, and documents related to associated discipline hearings. The non-digitized portions of a file, to the extent they exist, are usually supplementary materials added to the file after the investigation has been completed.

*The Short List.* In mid-September, Plaintiff sent a list of 58 ISB case numbers for which she requested a scan of the hard copy file. Initially, the City rejected this request as duplicative, as it would essentially result in the City re-producing the bulk of each file in a second format. However, after further consideration and discussion, the City determined that it would benefit all parties to produce the "short list" of files in this format, as it would result in all portions of the ISB case file being contained in one large, scanned document. Given the sensitive nature of the work done at ISB, the City is hesitant to allow a third-party vendor to scan these files, especially in light of the more manageable number of 58 case files (as opposed to 600). As the City has told Plaintiff, the City is currently working on a workflow to get these files scanned and produced.

b) *Plaintiff's RFP 90 (videos)*

Because RFP 90 calls for production of information from 500-600 ISB case files, the parties agreed to limit the initial production of videos for incidents involving allegations of excessive force. Then, the parties agreed that the City would produce videos for allegations of violations of the body-worn camera policy after completion of the production of the videos for excessive force allegations. As of October 22, 2025, the production of videos for incidents involving allegations of excessive force. approximately 150 incidents, is complete.

c) *Plaintiff's RFPs 153 and 247.*

As of October 22, 2025, the production of videos responsive to RFPs 153 and 247 is complete.

<u>Depositions</u>

In late September, Plaintiff began asking the parties if they would consent to Plaintiff taking depositions in addition to the 30 previously permitted by the Court. Plaintiff initially sought 62 total depositions. The City opposed, and then the Plaintiff shortened the list to 45 total depositions.

In light of the fact that the Court already declined Plaintiff's request to take 35 depositions, and entered an order permitting Plaintiff up to 30 depositions (ECF No. 179), the City informed Plaintiff that it cannot agree to such a request. Now, Plaintiff has indicated a need for 47 total depositions.

Aside from the Court's order on this issue, however, the City opposes Plaintiff's request for two additional reasons.[2] First, the request is premature. The Court has already granted Plaintiff an additional twenty depositions in excess of the ten allotted to all parties in Rule 30. To date, Plaintiff has taken 16 depositions total, and that total includes only 3 depositions taken in 2025. Plaintiff has scheduled three others to take place in the next week.[3] Thus, Plaintiff still has 11 depositions allotted to her that she has yet to schedule. Accordingly, this request is premature at this time.

Second, Plaintiff's discovery, including this request to take 47 total depositions, is entirely disproportional to the needs of the case. To date, the City has produced over 530,000 pages of documents and other ESI, and over 7,000 separately produced audio/video files. At every turn, Plaintiff determines she needs more discovery. Plaintiff's continued requests for more discovery are plainly a fishing expedition because, despite this voluminous discovery, she has been unable to find enough evidence to overcome the *Monell* standard. Despite having the documents and videos produced pursuant to RFP 133 since June 2025—over 7,000 videos and 6,800 documents—Plaintiff has taken only two depositions in that time.

To be clear, Plaintiff has issued 330 RFPs, many of which that have voluminous subparts, totaling almost 1,500 discrete requests for production to the City of Memphis. Plaintiff's conduct

---

[2] The City will, of course, outline its positions more fully in response to Plaintiff's forthcoming motion.
[3] Plaintiff has also scheduled the continuation of Defendant Lt. Smith's deposition.

8

has shown that, even if the Court were to grant an additional seventeen depositions, she will inevitably seek more. In light of Plaintiff's misuse of the discovery process, the City intends to file a motion for protective order prior to the October 29 status conference.

Dated:  October 22, 2025                                    Respectfully submitted,

**[SIGNATURES ON FOLLOWING PAGE]**

| | |
|---|---|
| **ROMANUCCI & BLANDIN, LLC** | **BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.** |

*/s/ Stephen H. Weil*
Antonio M. Romanucci* (Ill. Bar No. 6190290)
Sarah Raisch* (Ill. Bar No. 6305374)
Joshua M. Levin* (Ill. Bar No. 6320993)
Stephen H. Weil* (Ill. Bar No. 6291026)
Sam Harton* (Ill. Bar No. 6342112)
Colton Johnson Taylor* (Ill. Bar No. 6349356)
ROMANUCCI & BLANDIN, LLC
321 N. Clark St., Ste. 900
Chicago, IL 60654
P: (312) 458-1000
aromanucci@rblaw.net
sraisch@rblaw.net
jlevin@rblaw.net
sweil@rblaw.net
sharton@rblaw.net
cjohnson@rblaw.net

David L. Mendelson (Tenn. Bar No. 016812)
Benjamin Wachtel (Tenn. Bar No. 037986)
MENDELSON LAW FIRM
799 Estate Place
Memphis, TN 38187
+1 (901) 763-2500 (ext. 103), Telephone
+1 (901) 763-2525, Facsimile
dm@mendelsonfirm.com
bw@mendelsonfirm.com

Brooke Cluse* (Tex. Bar No. 24123034)
BEN CRUMP LAW, PLLC
717 D Street N.W., Suite 310
Washington, D.C. 20004
+1 (337) 501-8356 (Cluse), Telephone
brooke@bencrump.com

*Attorneys for Plaintiff*

* Admission *pro hac vice*

*s/ Bruce McMullen*
Bruce McMullen (#18126)
Jennie Vee Silk (#35319)
Kelsey W. McKinney (#40434)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 526-2000
bmcmullen@bakerdonelson.com
jsilk@bakerdonelson.com
kmckinney@bakerdonelson.com

*Attorneys for Defendant City of Memphis, Chief Cerelyn Davis in her Individual Capacity*