IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| RowVaughn Wells, Individually and as Administratrix of the Estate of Tyre Deandre Nichols, Deceased,<br><br>       Plaintiff,<br><br>v.<br><br>The City of Memphis, Tennessee; Chief Cerelyn Davis; Emmitt Martin III; Demetrius Haley; Justin Smith; Desmond Mills, Jr.; Tadarrius Bean; Preston Hemphill; Robert Long; JaMichael Sandridge; Michelle Whitaker; DeWayne Smith,<br><br>       Defendants. | CASE NO. 2:23-CV-02224-MSN-atc<br>JURY DEMAND |

**DEFENDANT CITY OF MEMPHIS' MOTION FOR PROTECTIVE ORDER AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Defendant City of Memphis (the "City") files this Motion for Protective Order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. The City seeks a protective order preventing required responses to Plaintiff's Ninth Set of Requests for Production of Documents. In support, the City states as follows:

**I.     INTRODUCTION**

As the Supreme Court has rightly cautioned, "pretrial discovery . . . has a significant potential for abuse." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). Plaintiff's discovery propounded to the City in this case has epitomized what the Supreme Court warned of more than forty years ago. To date, Plaintiff has propounded over 360 enumerated document requests

1

("RFPs") on the City, which amounts to approximately 1500 discreet requests when accounting for subparts. Likewise, Plaintiff has propounded 25 interrogatories and 251 requests for admission ("RFAs") on the City. In addition to written discovery requests, Plaintiff has been permitted by the Court to take thirty total depositions (ECF No. 483), has already taken seventeen of those depositions, and her counsel has recently indicated her intent to request the Court permit her to take a total of somewhere between forty-five and sixty-two depositions. Plaintiff has also served at least ten formal discovery letters, and countless other emails substantively addressing discovery in this matter, which magnify the required labor already imposed by the discovery under the Federal Rules of Civil Procedure.

The City has dutifully complied with its discovery obligations. It has produced over 538,000 pages of documents and ESI and, separately, well over 7,000 audio/video files. One document request alone resulted in production of 36,115 pages of documents and ESI and over 6,200 video files. The City has further presented for deposition twelve MPD witnesses. Nevertheless, these efforts remain unsatisfactory to Plaintiff, in that Plaintiff has not and cannot establish *Monell* liability.

Plaintiff's Ninth RFPs are disproportional to the needs of the case in light of the extensive discovery already conducted. Likewise, Plaintiff's relentless discovery risks prejudice to the City. Thus, good cause exists, and the Court should enter a protective order.

## II.    BACKGROUND

The discovery disputes between Plaintiff and the City have been discussed *ad nauseum* in the record both by Plaintiff (*see, e.g.*, ECF Nos. 279, 281, 324, 326, 378-1, 396, 437) and by the City (*see, e.g.*, ECF Nos. 343, 378-2, 405). Most recently, each party's version of the various disputes was recounted in the briefs filed related to Plaintiff's Motion to Amend Scheduling Order (ECF Nos. 447, 455, 457, 465.) In sum, Plaintiff claims that the high burden from *Monell*

warrants an inordinate amount of discovery—far beyond what the undersigned has ever seen in the many years he has defended § 1983 cases. While the City has pushed back on Plaintiff's excessive discovery, ultimately, the City has acquiesced to Plaintiff's obstreperous discovery demands, which is evidenced by the City's production efforts to date.

On April 10, 2024, the Court granted in part Plaintiff's request to take additional depositions in excess of the number allowed for by Rule 30. The Court determined, after weighing the Rule 26 proportionality factors, that thirty depositions would be sufficient. To date, Plaintiff has taken only seventeen depositions.[1]

The scope of discovery is explicitly limited by the Federal Rules, and the Court has a duty "to limit discovery that exceeds its proportional and proper bounds." *Helena Agri-Enters., LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 274 (6th Cir. 2021). Accordingly, the City moves for a protective order to shield it from Plaintiff's unduly burdensome, expensive, and disproportionate discovery.

### III.  LEGAL STANDARD

The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and **proportional** to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added). "[T]he trial court is given wide discretion in balancing the [discovery] needs and rights of both plaintiff and defendant." *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991). This wide discretion permits the trial court to limit or deny discovery, *see France v. Lucas*, 836 F.3d 612, 631 (6th Cir. 2016), and it "extends to determining whether a protective order is proper." *Wimberly v. Campbell Clinic, P.C.*, No. 2:19-cv-02691-JTF-tmp, 2021 WL 9880608, at *2 (W.D.

---

[1] Two other depositions are scheduled for October 28 and 30, 2025.

3

Tenn. Jan. 14, 2021) (citing *Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 903–04 (6th Cir. 2009)).

Under Rule 26 of the Federal Rules of Civil Procedure, the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" arising from discovery requests. Fed. R. Civ. P. 26(c)(1); *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 854 (6th Cir. 2017) (quoting Fed. R. Civ. P. 26(c)(1)). The party seeking a protective order bears the burden of demonstrating good cause for issuance of the order. *In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 929 (6th Cir. 2019). When considering a motion for protective order, courts must analyze the harm that the moving party would suffer in the absence of the protective order. *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012) (citing Fed. R. Civ. P. 26(a)).

"With [Rule 26(c)'s] authority at hand, judges should not hesitate to exercise appropriate control over the discovery process." *Herbert v. Lando*, 441 U.S. 153, 177 (1979). Orders of protection under Rule 26 may include, *inter alia*, forbidding the disclosure or discovery, specifying terms for the disclosure or discovery, prescribing a discovery method other than the one selected by the party seeking discovery, forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters. Fed. R. Civ. P. 26(c)(1).

In this case, the Court should enter an order protecting the City from Plaintiff's continual unduly burdensome, oppressive, and expensive discovery.

IV.   **ARGUMENT**

Good cause to enter a protective order against the Plaintiff's Ninth RFPs exists here for two primary reasons, each of which is independently sufficient for a finding of good cause. First, Plaintiff's Ninth RFPs are disproportional to the needs of the case in light of the extensive discovery already conducted in this action. Second, Plaintiff's discovery has reached the point of

4

being unduly burdensome and oppressive, and good cause exists to support entry of a protective order.

        **A.**      **The Ninth RFPs Are Not Proportional to the Needs of the Case.**

Good cause to enter a protective order exists when the discovery sought is not proportional to the needs of the case in light of discovery already conducted. *See Coleman v. Am. Red Cross*, 23 F.3d 1091, 1098 (6th Cir. 1994). Rule 26(b)(1) was amended in 2015 to cut back on the "costly and delay-inducing efforts to look under every stone in an e-discovery world populated by many stones[.]" *Helena Agri-Enters., LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 273 (6th Cir. 2021).

In the **twenty-five months** since Plaintiff issued her first set of written discovery requests, the City has produced 538,000 pages of documents and ESI and separately produced at least 7,000 video files. Plaintiff has been permitted twenty depositions more than that allotted in the Federal Rules, and she has indicated that she intends to request an additional fifteen depositions, resulting in a total of forty-five depositions.

Simply put, the "hundreds of [discovery] responses, numerous depositions, and [hundreds of] thousands of pages of documents that already [have already] been produced [are] sufficient" for purposes of discovery in this case. *Coleman*, 23 F.3d at 1098. Such extensive discovery is more than adequate to satisfy the Rule 26 requirements. Nevertheless, when determining the proportionality of discovery, courts consider six factors, each of which are addressed in turn below.

        1.      <u>Whether the Burden or Expense of the Proposed Discovery Outweighs Its Likely Benefit.</u>

This factor weighs heavily in favor of the City. Plaintiff's discovery requests for huge swaths of documents ranging back five or more years have resulted in substantial burden and

expense on the City. The City has raised concerns regarding the burden and expense of Plaintiff's discovery for well over a year. Countless man hours have been spent to accommodate Plaintiff's untargeted discovery.

The Ninth RFPs constitute continued layering of follow-on requests, many of which seek documents that either do not exist or have already been produced. The burden in responding to these requests, however, is not merely administrative. To fully comply with discovery obligations, responding to the Ninth RFPs implicates significant time and human resources to re-review incident files, cross-reference production logs, and confirm the absence of or prior production of documents across dozens of categories. This is not proportional to the needs of the case, particularly where many of the requests are duplicative, speculative, or framed to elicit admissions rather than uncover new evidence.

2. <u>The Parties' Relative Access to Relevant Information, the Parties' Resources, and the Importance of the Discovery in Resolving the Issues.</u>

The City has served fifty-one document productions amounting to over 538,000 pages of documents and other ESI and thousands of separately produced body-worn camera videos. These productions include without limitation:

a. Documents regarding *every* allegation of excessive force, body-worn camera policy violations, and personal conduct policy violations against an MPD officer from 2018 through 2023 (RFP 90);

b. Videos for incidents related to *every* allegation of excessive force against an MPD officer from 2018 through 2023 (RFP 90)

c. At least forty personnel files, including personnel files for *all* Scorpion Unit officers (*E.g.*, RFP 240);

d. Documents *and* videos related to approximately 880 incidents that *may* have been viewed by DOJ investigators (RFP 133);

e. ***Every*** response to resistance report submitted by the Defendant Officers in this case for the entire duration of their respective employment with MPD (RFP 238);

6

    f. Associated data for *every* response to resistance report submitted by *any* officer between 2018 and 2023 (RFP 138);

    g. *Every* ISB investigation referred to the Shelby County District Attorney's Office arising out of conduct from a Scorpion Unit officer, an Organized Crime Unit officer, or involving use of force from 2021 through 2023 (RFPs 108-110);

    h. Traffic data from 2018 through 2023 (RFPs 81-86).

Thus, Plaintiff undoubtedly has access to copious amounts of information relevant to her claims. Additionally, pursuant to Rule 34(b)(2)(E)(i), the City regularly provides Plaintiff with a spreadsheet that inventories each document produced by RFP number and the corresponding beginning bates number of the responsive document. Moreover, Plaintiff's counsel is comprised of a team of ten attorneys of record, all of whom presumably have the requisite knowledge, skills, and tools to receive, digest, and analyze the large volume of documents they have requested in this matter.

Moreover, in light of the extensive discovery already produced, the importance of this particular discovery—the Ninth RFPs—in resolving the issues is de minimis. If Plaintiff cannot find enough evidence to prove her case with the massive amounts of discovery already produced, this is an issue with her case, not an invitation to "look under every stone in an e-discovery world populated by many stones[.]" *Helena Agri-Enters., LLC*, 988 F.3d at 273.

    3. <u>The Importance of the Issues at Stake in the Action and the Amount in Controversy.</u>

Plaintiff's Ninth RFPs purport to be targeted at obtaining information to support her *Monell* claims. The City does not dispute that this is central to Plaintiff's case. Likewise, the City does not dispute that the amount in controversy in this case is significant. Plaintiff's counsel has very publicly stated that Plaintiff is seeking $550 million dollars in damages—a demand large enough to risk bankrupting the City of Memphis. Regardless, upon consideration of the other factors, the proportionality analysis weighs in favor of the City here.

### B.  Prejudice to the City Supports Good Cause to Enter a Protective Order.

Good cause is established with "specific facts showing 'clearly defined and serious injury' resulting from the discovery sought." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001); *see In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016) ("Good cause exists if specific prejudice or harm will result from the absence of a protective order." (quotation omitted)).

### 1.  Plaintiff's Discovery Has Diverted Substantial Resources Away from the Citizens of Memphis.

The City has devoted thousands of man hours to respond to Plaintiff's discovery. Plaintiff's discovery requires coordination across the City and MPD, involving multiple units and chains of command. Plaintiff's requests have required the efforts of dozens of MPD personnel over many, many months. Likewise, for every one of the documents, other ESI, and videos produced, dozens of MPD personnel (not usually engaged in assisting in litigation) had to divert their time and attention away from their normal duties in order to accommodate Plaintiff's requests. For example, to respond to Plaintiff's RFP 133 alone, MPD ***temporarily reassigned*** a staff member dedicated to responding.

While the City does not intend to minimize the issues at stake in this action, the City's resources cannot just be limited to this action. The resources expended by the City directly implicate the citizens of Memphis, and the citizens of Memphis should not be subject to the whims of unduly burdensome, laborious, and untargeted discovery.

### 2.  Plaintiff's Exhaustive Discovery Is Preventing This Case from Moving Forward.

This lawsuit has been pending for almost three years. Plaintiff has had over two and a half years to conduct discovery. The parties have been in the discovery phase of this litigation for two years. The operative scheduling order is the fifth iteration of the case's schedule, and a sixth

8

iteration is likely inevitable given the new trial granted to the Stayed Defendants and subsequent appeal of the same. This year, Plaintiff has twice sought extensions of discovery deadlines. First, Plaintiff sought an additional nine months and then sought another five more. Moreover, Plaintiff has often scheduled depositions, only to cancel them at the last minute. In the last twelve months, Plaintiff has taken only five depositions.

At this juncture, the City—and, for that matter, the other parties—is facing prejudice by Plaintiff's refusal to allow the case to move forward past the discovery phase. Discovery is not meant to be never-ending. As noted above, it is likely that the schedule will again be adjusted to accommodate the Stayed Defendants while they litigate the issue of a new trial, thus giving Plaintiff even more runway to continue to harass the City with additional discovery. There are limits imposed by the Federal Rules, and discovery in this case has reached those limits.

## V. CONCLUSION

For the foregoing reasons, the City of Memphis respectfully requests that the Court enter a protective order allowing the City not to respond to Plaintiff's Ninth Set of Requests for Production.

Dated: October 27, 2025

                                              Respectfully submitted,

                                              **BAKER, DONELSON, BEARMAN,**
                                              **CALDWELL & BERKOWITZ, P.C.**

                                              *s/ Bruce McMullen*
                                              Bruce McMullen (#18126)
                                              Jennie Vee Silk (#35319)
                                              Kelsey W. McKinney (#40434)
                                              165 Madison Avenue, Suite 2000
                                              Memphis, Tennessee 38103
                                              Telephone: (901) 526-2000
                                              bmcmullen@bakerdonelson.com
                                              jsilk@bakerdonelson.com

kmckinney@bakerdonelson.com

*Attorneys for Defendant City of Memphis and Chief Cerelyn Davis in her Individual Capacity*

## CERTIFICATE OF CONSULTATION

I, Bruce McMullen, hereby certify that on October 20 and 27, 2025, counsel for the City consulted with counsel for the various parties via email regarding the relief sought in this Motion. The Parties were asked whether they oppose the requested relief. A chart detailing the parties' responses is below:

| Party | Responding Counsel | Opposition? |
|---|---|---|
| Plaintiff | Josh Levin | Yes |
| Hemphill | No Response | |
| D. Smith | No Response | |
| J. Smith | No Response | |
| Haley | No Response | |
| Bean | No Response | |
| Martin III | No Response | |
| Mills, Jr. | No Response | |

*s/ Bruce McMullen*
Bruce McMullen

## CERTIFICATE OF SERVICE

I, Bruce McMullen, hereby certify that on October 27, 2025, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, and that upon filing, such system will serve a copy of the foregoing upon all counsel of record in this action.

*s/ Bruce McMullen*
Bruce McMullen