IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| RowVaughn Wells,<br><br>　　　　Plaintiff,<br><br>v.<br><br>The City of Memphis, *et al.*,<br><br>　　　　Defendants. | Case No. 2:23-cv-02224 |

**PLAINTIFF'S MOTION TO ENLARGE NUMBER OF DEPOSITIONS**

Pursuant to Federal Rule of Civil Procedure 30(a)(2)(A)(i), Plaintiff, through her undersigned counsel, brings this motion to increase the number of depositions allotted to Plaintiff from 30 to 44. Fifteen of those depositions can be limited to 3.5 hours instead of the usual 7, as explained below.

**INTRODUCTION**

Plaintiff seeks leave to take these additional depositions in order to prove up her *Monell* claims, which have expanded considerably since the Court initially addressed the number of depositions to be taken in this case. Tyre Nichols was beaten to death by members of a specialized unit within the Memphis Police Department ("MPD") dubbed "SCORPION." In the immediate aftermath of Mr. Nichols' killing, troubling facts emerged about the SCORPION unit, and Plaintiff filed a Section 1983 claim against the City of Memphis that grounded her *Monell* claims on the practices of the SCORPION unit itself.

Focused as Plaintiff's claims were on the SCORPION unit, the Court held in April 2024 that 30 depositions should be sufficient to gather evidence supporting Plaintiff's claims, centered as they were on the facts immediately surrounding Mr. Nichols' beating on the one hand, and

1

information about the SCORPION unit on the other, without the information becoming "repetitive" with respect to those two topics. *See* ECF 180 (Apr. 15, 2024 Hr'g Tr.) at 49:7-13. In permitting 30 depositions, however, the Court emphasized that if it became clear to Plaintiff that additional depositions were needed, the Court was ready to entertain a motion to expand the number allowed. *Id.* at 49:14-24.

Beginning in September 2024, the federal criminal trial began of the officers who beat Mr. Nichols. As Plaintiff has explained elsewhere, *see* ECF 447 at 3-4, multiple MPD witnesses at that trial offered watershed testimony about a pervasive and longstanding culture within the MPD—not just the SCORPION unit—of using force against civilians, particularly those who annoyed police, and then covering it up through manipulation of evidence and a code of silence. *Id*. In light of that testimony, Plaintiff amended her complaint to assert broader *Monell* allegations, issued new discovery to gather evidence proving those broader allegations, and, in January 2025, sought and obtained an expanded schedule in which to gather that discovery. *See id.* at 4-5.

For most of 2025, Plaintiff's efforts have focused on gathering documentary *Monell* evidence. *See id.* at 5-11 (describing efforts to gather documentary evidence). Those efforts have focused on gathering body-worn camera recordings of MPD officers' use of force against civilians, and the police documents relating to those encounters, such as use-of-force reports and supervisory reviews. As Plaintiff's counsel received productions from the City, counsel devoted considerable effort to reviewing those videos and documents so as to identify police-civilian encounters that are probative of the *Monell* allegations set out in Plaintiff's amended complaint. *Id.* at 9-11.

2

That review is now largely complete. Among the hundreds of videos produced, Plaintiff has identified many incidents that appear highly probative of her *Monell* allegations of a widespread practice of excessive force, coverup, and supervisory indifference or even approval. Plaintiff's purpose in seeking to expand the number of depositions now, from 30 to 44, is to depose officers involved in those uses of force, or their supervisors, regarding the particular incidents Plaintiff has identified and the widespread custom of brutality that enabled the killing of Mr. Nichols.

In **Exhibit 1** appended to this motion, Plaintiff sets out the status of her Rule 30 deposition discovery in this case. Roughly stated, the depositions can be grouped into three categories. ***First***, Plaintiff has deposed 15 witnesses designed to prove up the allegations in her original complaint. These include depositions regarding the immediate circumstances of Mr. Nichols' beating (MPD officers who arrived on the scene, supervisors in the chain of command, a doctor who treated Mr. Nichols, and another who took his autopsy), as well as officers and supervisors within the SCORPION unit who were deposed about the unit's policies, practices, and background. These are not wasted witnesses. Plaintiff's allegations about the SCORPION unit remain in the case.

***Second***, Plaintiff has set aside eight depositions that inevitably will need to be taken. These are the five defendant officers criminally charged (or convicted) with beating Mr. Nichols, Defendant C.J. Davis (the Chief of MPD), and the City of Memphis via Rule 30(b)(6). The five officer defendants will need to be deposed about their roles in the beating and MPD's custom of excessive force in which they were enmeshed. Chief Davis and the City are both defendants and will be deposed regarding MPD's practices and the acts and omissions of Chief Davis, the City's final policymaker on the relevant police policies and practices. In addition, Deputy Chief Don

3

Crowe has department-wide oversight of officer supervision, a position immediately below Chief Davis, and will be deposed regarding his actions and omissions with respect to ensuring appropriate supervision over officer use of force, use of force reporting, and related topics.

*Third*, Plaintiff has deposed or plans to depose 21 MPD employees regarding multiple, discrete police-civilian encounters that Plaintiff's counsel has identified as relevant to her expanded *Monell* claims alleging widespread practices of excessive force, coverup, and supervisory indifference or approval. Four of these witnesses are line officers involved in use of force incidents identified in discovery. The remainder are MPD supervisory officials who reviewed officers' uses of force (including body-worn camera footage and written reports) for compliance with MPD policy.

Plaintiff seeks to depose each of these supervisors about their reviews of select use-of-force incidents that Plaintiff's counsel identified in discovery. Most of the supervisors reviewed between two and four incidents that Plaintiff has identified for questioning. Some supervisors have more. Plaintiff seeks to ask each of these supervisors about the nature of their review, the steps taken, and the nature of and reasons for their conclusions as to whether the officers' conduct in the encounter complied with MPD policy. Because the number of incidents that Plaintiff seeks to review with the supervisors varies, Plaintiff has endeavored to determine which depositions can be shortened and to shorten them wherever possible. Of the 27 MPD officers and officials yet to be deposed, Plaintiff has identified 15 who can be deposed in half a deposition day, *i.e.*, 3.5 hours instead of the default 7 hours of deposition time.

Pursuant to Rule 30(a)(1), Plaintiff approached the City to determine whether it would stipulate to this adjusted deposition number: 44 depositions, with 14 limited to 3.5 hours. The City rejected Plaintiff's proposal, and did not make a counterproposal. This motion follows.

## DISCUSSION

"Where a party seeks leave of court to go beyond ten depositions, 'the court must grant leave to the extent consistent with Rule 26(b)(1) and (2).'" *Fusion Elite All Stars v. Varsity Brands, LLC*, No. 20-CV-02600-SHL-TMP, 2022 WL 945605, at *2 (W.D. Tenn. Mar. 29, 2022) (quoting Fed. R. Civ. P. 30(a)(2)). Rule 26(b)(1) governs the scope of discovery and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1),[1] whereas Rule 26(b)(2) seeks to ensure that depositions and other discovery are not "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).[2] *Cf. Power & Tel. Supply Co. v. Suntrust Banks, Inc.*, No. 03-2217M1V, 2004 WL 784533, at *2 (W.D. Tenn. Mar. 15, 2004) ("Rule 30 limits a party to ten depositions as did the scheduling order in this case. To determine if additional depositions should be permitted, the court is to apply the 'proportionality' considerations enunciated in Rule 26(b)(2)."). Notably, "[u]pon a showing of relevance [of the additional depositions], the burden shifts to the party opposing discovery to show, with

---

[1] Rule 26(b)(1) sets out six factors as relevant to proportionality: (1) "the importance of the issues at stake in the action;" (2) "the amount in controversy;" (3) "the parties' relative access to relevant information;" (4) "the parties' resources;" (5) "the importance of the discovery in resolving the issues;" and (6) "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Fusion Elite*, 2022 WL 945605, at *2 (applying Rule 26(b)(1) factors to Rule 30(a)(2)(A)(i) request to increase number of depositions).

[2] Some courts have added to the considerations set out in Rules 26(b)(1) and (b)(2) that a litigant seeking additional depositions under Rule 30(a)(2)(A)(i) must make a "particularized showing" that the additional depositions are necessary. *See, e.g., Goree v. United Parcel Serv., Inc.*, No. 14-CV-2505-SHL-TMP, 2016 WL 3647681, at *2 (W.D. Tenn. Apr. 12, 2016) (citation omitted)). This requirement, which can be traced from *Goree* back through a chain of citations to *Bell v. Fowler*, 99 F.3d 262 (8th Cir. 1996), ultimately appears to replicate the good-cause analysis of Rule 26(b)(2)'s factors themselves. *See Bell*, 99 F.3d at 271 (holding that a movant must "present[ a] good reason why the additional depositions [are] necessary").

specificity, why the requested discovery is not proportional to the needs of the case." *Fusion Elite*, 2022 WL 945605, at *2 (citing *William Powell Co. v. Nat'l Indem. Co.*, No. 1:14-CV-00807, 2017 WL 1326504, at *5 (S.D. Ohio Apr. 11, 2017)).

In this case, Plaintiff seeks to increase the number of depositions in light of the discovery she has obtained over the last several months regarding numerous MPD excessive force incidents—discovery that she served and gathered after amending her complaint to allege a broader and more longstanding culture of excessive force, coverup, and deficient supervision within the MPD. As Plaintiff has set out *supra*, this broader discovery was not contemplated or at issue when the Court permitted 30 depositions in April 2024. As such, Plaintiff's request for 44 depositions is not a request that the Court reconsider its original allotment of 30 depositions, but is rather a request that should be considered on its own merits. *Cf. Thykkuttathil v. Keese*, 294 F.R.D. 601, 602 (W.D. Wash. 2013) ("As discovery progresses, it will sometimes unveil a need to allow depositions beyond those contemplated at the initial scheduling conference. Upon such an event, [Rule] 26(b)(2) allows that the court may alter the limits in these rules on the number of depositions . . . under Rule 30." (quotation and citation omitted)).

Here, Rule 26(b)(2)'s proportionality considerations must begin with Plaintiff's *Monell* allegations in her amended complaint and the burdens of proof she must overcome to prevail on those claims at trial. Plaintiff's *Monell* claims against the City are grounded in a charge that there is a settled, widespread practice among MPD officers of using excessive force in encounters with civilians, particularly civilians who annoy or offend them in one way or another, such as by attempting to flee. *See* ECF 277 (First Am. Compl.) ¶¶ 46-54. This violent culture, the amended complaint alleges, is in turn enabled by a culture of coverup among police officers, as well as indifference and even approval by supervisory staff. *Id.* ¶¶ 55-76. These entrenched

practices, Plaintiff charges, were the driving force behind the beating of Mr. Nichols. *Id.* ¶¶ 76, 124, 128, 141, 186. *See also* ECF 347 at 6-12 (summarizing Plaintiff's *Monell* allegations).

It is one thing to make *Monell* allegations; it is another thing altogether to prove them at trial. Under the demanding standard set out in *Monell*, a Section 1983 plaintiff must prove municipal indifference to numerous instances of constitutional violations in order to satisfy her burden that a municipality itself, and not a wayward employee, was the "driving force" behind the particular constitutional violation at hand. *See, e.g.*, *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 495–96 (6th Cir. 2008) (noting that under *Monell*, a plaintiff asserting a widespread practice claim must show that "the relevant practice is so widespread as to have the force of law." (quotation omitted)).

The defenses erected for the City under *Monell*, in short, require Plaintiff to present a mass of evidence of widespread violations in order to prevail at trial. But it is precisely because *Monell* defendants enjoy the protection of an exacting standard of proof on widespread-practice claims that *Monell* discovery is necessarily so broad. Courts across the Nation have recognized this fact, permitting discovery going far beyond that which would be permitted in a case where corporate liability could be established through *respondeat superior*. *See, e.g.*, *Mollica v. County of Sacramento*, No. 2:19-cv-2017, 2021 WL 2417118, at *2 (E.D. Cal. June 14, 2021) (finding request to identify every complaint or grievance of jail staff's alleged failure to provide medical care over a two-year period was relevant and proportional to plaintiffs' *Monell* claims because "such claims often require a broad and substantial amount of discovery," since they "implicate a potentially large number of events taking place in an organization over a period of time"); *DeLeon v. Guevara*, No. 18-cv-1028, 2019 WL 4278043 (N.D. Ill. Sept. 10, 2019) (requiring defendants to produce all homicide files over a four-year period where Plaintiffs alleged *Monell*

7

claim of widespread practice of withholding exculpatory evidence in homicide cases and noting that "courts evaluating Monell discovery requests routinely order production of all files for a five-year period preceding the event at issue in a case." (collecting cases)); *McCrimmon v. Centurion of Fla., LLC*, No. 3:20-cv-36, 2022 WL 356160, at *9 (M.D. Fla. Feb. 7, 2022) ("Documents of treatment provided or denied by [a prison medical vendor] healthcare providers . . . over a period of years certainly is relevant to Plaintiffs' *Monell* claim, which requires a showing of other instances of constitutionally inadequate healthcare.").

That same rule applies to the number of depositions to be taken in a *Monell* case. As one court put it:

> [G]iven the number of defendants, witnesses, and incidents at issue in this case—including the need for Plaintiffs to show evidence of other incidents to support a *Monell* policy claim—this Court's decision to allow Plaintiffs to take more than the standard ten depositions is unremarkable. In fact, it would have been unreasonable for this Court to refuse to allow Plaintiffs to exceed the standard deposition limit in a case of this scope and magnitude.

*Fairley v. Andrews*, 423 F. Supp. 2d 800, 805 (N.D. Ill. 2006). That reasoning applies with full force here. In order to satisfy her burden under *Monell*, Plaintiff must prove that the officers' violation of Mr. Nichols' constitutional rights was part of a settled practice within MPD. That typically requires proving numerous, similar constitutional violations by MPD officers and accompanying indifference. The incidents Plaintiff has identified, and the depositions she seeks to take, go directly to proving that widespread pattern by taking depositions from MPD officials regarding multiple, different incidents.

Plaintiff, of course, might rest on the existing paper record she has compiled. Doubtless that record (video and paper) of the various incidents Plaintiff has identified, perhaps coupled with an expert opinion, would be enough to generate a material factual dispute about the City's *Monell* liability sufficient to survive a summary judgment motion. But cases do not end when a

plaintiff survives summary judgment. They end at trial. And at trial, the point is not merely to present some scintilla of evidence; it is to persuade a factfinder. In that arena, there is simply no substitute for live testimony in which a police officer or police official must explain why certain force was used, or why a use of force that appears troubling on camera was approved and not investigated or disciplined.

There is every reason to think that the City will avail itself of such testimony. At trial, the City can be expected to fight Plaintiff's *Monell* evidence incident-by-incident, with the ultimate goal of persuading a jury that Plaintiff has not come forward with enough *real* constitutional violations (or indifferent supervisory response) to prove a bona fide widespread custom within MPD. In offering this countervailing narrative, the City will have at its disposal its very own employees, who committed or approved the uses of force that Plaintiff will seek to present to a jury. Plaintiff should be permitted to understand, before trial, what those employees will have to say about the videos, use of force reports, and supervisory review documents that—on paper—paint a damning picture of MPD's practices. Given Plaintiff's burden of proof at trial, the need for these depositions is considerable.

\*     \*     \*

The other factors set out in Rule 26(b)(2) also favor permitting the 44 depositions Plaintiff seeks to take. These depositions are not cumulative—they concern *different* incidents that the different witnesses participated in or reviewed. The quantum of incidents is not cumulative either: the City's ready response to any incident is that it is an aberration committed by bad apples; the most effective way to overcome that defense is to disprove it through the sheer number of troubling incidents presented to a jury.

9

The depositions Plaintiff seeks to take are also not disproportionate. Plaintiff proposes that the 14 additional depositions she seeks to take will all be conducted in 3.5 hours instead of the 7-hour default under Rule 30. On the other side of the scale, it is not hyperbole to observe that this case has its origin in one of the most flagrant civil rights abuses in modern American history, which the U.S. Department of Justice later found to be connected with a widespread custom of excessive force within the MPD. The damages at issue in this case are catastrophic, and the importance of adjudicating Plaintiff's *Monell* allegations could hardly be more important to the residents of Memphis.

Finally, Plaintiff's request is not premature. Motions for additional depositions under Rule 30(a)(2)(A)(i) ultimately do not turn on whether all existing depositions have already been taken, but on what the movant can demonstrate. *See United States v. Umbrella Fin. Servs., LLC*, No. 3:22-CV-2759-D, 2023 WL 4109697, at *2 (N.D. Tex. June 21, 2023) ("[W]hen the movant demonstrates at the outset or at any early stage of a lawsuit that more than 10 depositions will [be] needed, this court has not precluded the movant from taking additional depositions before it has already taken the 10 depositions permitted by Rule 30."). Plaintiff has made such a showing here, identifying exactly who she has and will depose (*see* **Exhibit 1**), and why she requires the depositions she is seeking. Notably, forcing Plaintiff to run through all her allotted depositions now would improperly force Plaintiff's counsel to gamble on more being allowed later. Plaintiff, for example, intends to take the depositions of Chief Davis, Deputy Chief Crowe, and the City under Rule 30(b)(6) *after* the new depositions she is proposing, in part because the testimony in those additional depositions (of supervisors and line officers) will then guide Plaintiff's questioning of these highest-echelon officials and the City itself regarding their policies and practices. Forcing Plaintiff to exhaust her existing witnesses now would put Plaintiff's counsel to

the choice of either taking the upper-level depositions prematurely, or gambling that the Court would allow her to take those depositions later once she has exhausted her 30-deposition allotment with the incident-by-incident depositions Plaintiff has discussed above. There is no reason to put Plaintiff to such a choice, particularly where Plaintiff has set out a clear roadmap for the depositions she seeks to take, which the Court can evaluate and decide on now.

## CONCLUSION

For the reasons explained above, Plaintiff respectfully requests that the Court increase the number of depositions allotted to her, from 30 to 44, with fifteen of those depositions limited to 3.5 hours.

Dated:  October 27, 2025                         Respectfully submitted,


                                                 */s/ Joshua M. Levin*
                                                 Antonio M. Romanucci* (Ill. Bar No. 6190290)
                                                 Sarah Raisch* (Ill. Bar No. 6305374)
                                                 Joshua M. Levin* (Ill. Bar No. 6320993)
                                                 Stephen H. Weil* (Ill. Bar No. 6291026)
                                                 Sam Harton* (Ill. Bar No. 6342112)
                                                 Colton Johnson Taylor* (Ill. Bar No. 6349356)
                                                 **ROMANUCCI & BLANDIN, LLC**
                                                 321 N. Clark St., Ste. 900
                                                 Chicago, IL 60654
                                                 (312) 458-1000
                                                 aromanucci@rblaw.net
                                                 sraisch@rblaw.net
                                                 jlevin@rblaw.net
                                                 sweil@rblaw.net
                                                 sharton@rblaw.net
                                                 cjohnson@rblaw.net

                                                 David L. Mendelson (Tenn. Bar No. 016812)
                                                 Benjamin Wachtel (Tenn. Bar No. 037986)
                                                 **MENDELSON LAW FIRM**
                                                 799 Estate Place
                                                 Memphis, TN 38187
                                                 (901) 763-2500 (ext. 103)
                                                 dm@mendelsonfirm.com

bw@mendelsonfirm.com

Benjamin Crump (Tenn. Bar No. 038054)
Brooke Cluse* (Tex. Bar No. 24123034)
**BEN CRUMP LAW, PLLC**
717 D Street N.W., Suite 310
Washington, D.C. 20004
(337) 501-8356
court@bencrump.com
brooke@bencrump.com

* Admission *pro hac vice*

## CERTIFICATE OF CONSULTATION

Pursuant to Local Rule 7.2(a)(1)(B), the undersigned hereby certifies that counsel for Plaintiff consulted with all parties via email regarding the relief requested in the foregoing motion on September 24 & 25, 2025, and on October 14, 15, and 24, 2025. Counsel for Defendant City of Memphis opposed all relief requested.

*/s/ Stephen H. Weil*

Stephen H. Weil