IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| RowVaughn Wells,<br><br>     Plaintiff,<br>v.<br><br>The City of Memphis *et al.*,<br><br>     Defendants. | Case No. 2:23-CV-02224 |

**PLAINTIFF'S RESPONSE TO MOTION FOR PROTECTIVE ORDER (ECF 498)
AND REQUEST FOR HEARING PURSUANT TO LOCAL RULE 7.2(d)**

  Plaintiff, through her counsel, responds herein to the motion for protective order filed by defendant City of Memphis (ECF 498). The City's motion seeks a protective order from having to respond to Rule 34 requests for production served by Plaintiff on September 28, 2025. The City did not attach that discovery to its motion. Plaintiff attaches the requests here as *Exhibit 1*.

  **Pursuant to Local Rule 7.2(d), Plaintiff also requests a prompt hearing regarding the City's motion.** A hearing is necessary because the time it will take to resolve the City's motion may otherwise prevent Plaintiff from making use of the documents sought in the Sept. 28 requests before the close of fact discovery on February 6, 2026. As Plaintiff explains herein, the information sought in the Sept. 28 requests is of considerable importance to the remaining discovery that Plaintiff plans to take. The City, however, never responded in writing to the Sept. 28 requests before filing its motion for protective order. If the Court orders a response to the discovery, the time it would normally take to respond in writing and then produce documents could prejudice Plaintiff. A live hearing will allow the Court to fine-tune any discovery order that ensures production within an appropriate period.

1

**INTRODUCTION**

The City's motion seeks a protective order from having to respond, even in writing, to the Sept. 28 requests. The Court should reject that demand in its entirety. The City's motion does not grapple seriously with the Sept. 28 requests themselves. Instead it makes the following argument: the City points to existing *Monell* discovery taken by Plaintiff and argues that it is unduly is voluminous. Then, based on that volume *alone*, the City contends that Plaintiff's discovery has been an unfocused effort to "look under every stone" in the City's vast police files. ECF 498 at 7. At this point, says the City, Plaintiff must either have "enough evidence to prove [her] case," or there is simply no case to be made. *Id.* As such, the City argues, the Sept. 28 requests are "duplicative" of prior discovery and their importance to the issues in this case is "de minimis." *Id.*

That argument does not withstand scrutiny, because it simply does not reflect reality. Through her existing *Monell* discovery, Plaintiff has gathered videos and related police records of approximately 900 MPD encounters. Plaintiff has reviewed each of these encounters and identified several dozen incidents, involving particularly troubling uses of force, as the most relevant to her *Monell* claims. The Sept. 28 requests are targeted at gathering additional evidence *about these most relevant incidents*. For example, now that Plaintiff has identified incidents with particularly troubling uses of force, the Sept. 28 requests seek the personnel files of officers involved in those incidents, to determine whether they were disciplined for those incidents. *See* Ex. 1, RFP 262. That sort of evidence is central to Plaintiff's *Monell* claim of supervisory indifference within the MPD, and Plaintiff has requested it only *after* winnowing down the use-of-force incidents to identify those that are most relevant to her claims in this case. The other RFPs in the Sept. 28 requests, which Plaintiff describes herein, similarly aimed at

2

gathering information about the most troubling incidents and related events that Plaintiff has identified from among the discovery she has gathered to date.

Plaintiff explained months ago that this targeted discovery would be coming. *See, e.g.*, ECF 396 at 2 (April 2025 brief explaining that Plaintiff planned to "serve follow-up discovery requests, like the disciplinary records of officers among the 880 incidents who appear to have engaged in misconduct."); ECF 447 at 11 (July 2025 brief; same). That should have been expected, because winnowing down and then targeting follow up discovery in this manner is exactly what parties are supposed to do to gather evidence in an efficient manner. Plaintiff's discovery plan—to identify the most relevant incidents and then gather more detailed information about them—is entirely sensible. The Sept. 28 discovery is not "duplicative" or "de minimis" at all. On the contrary, it is among the most important *Monell* discovery in the case.

The City thus is wrong about the proportionality of Plaintiff's Sept. 28 requests. But the premise of the City's motion is wrong as well. The City claims Plaintiff's existing *Monell* discovery has been a wasteful effort to turn over every stone in the City's files. But Plaintiff's existing *Monell* discovery has not been spendthrift. Plaintiff has focused her *Monell* discovery on groups of documents that are both relevant and easy to gather. Those include documents that the City has already gathered and stored in an organized manner, such as ISB files for specific incidents (*see* RFP 90), and computer-stored data that can be produced with ease such as traffic-stop data (*see* RFPs 81-86). On the other hand, where the City has made a case that some discovery would be overly broad, Plaintiff has adjusted her requests to narrow them. That is what happened with RFP 133, which asked the City to produce the documents it had provided to the U.S. DOJ. When the City objected that the request swept too broadly, Plaintiff proposed to limit RFP 133 to those incidents for which DOJ investigators were recorded as having watched

3

BWC videos.  The Court observed that this proposal was "reasonable proxy.  In fact, it sounds more reasonable to me than a lot of other ways [Plaintiff] could have gone about it."  *See* ECF 389 (Apr. 11, 2025 Hrg. Tr.) at 35:16-19.  The proposition that Plaintiff has been unfocused in her existing *Monell* discovery is simply wrong.

       The City's criticisms of Plaintiff's existing discovery on pages 6-7 of its brief.  But the City's claims are not what they appear.  As Plaintiff sets out *infra*, the requests that the City complains about targeted documents that the City had already identified and organized, ensuring efficient collection. Much of the burden the City does complain about, moreover, is the result its own choices.  The City emphasizes that responding to RFP 133 has been laborious, *see* ECF 498 at 2, 6-7, 8, but the Court will recall that Plaintiff had proposed efficient, SQL bulk-query method to gather documents responsive to that request.  *See* ECF 324.  It was the City that demanded a document-by-document manual collection method instead, which resulted in the manpower burdens that the City highlights in its current motion.  Plaintiff had sought to avoid such a burdensome process, but the City insisted on it.

       Under *Monell*, widespread-practice discovery does carry certain unavoidable burdens.  But Plaintiff has not used that fact to be profligate in her requests.  To the contrary, her existing discovery consists of calculated requests intended to gather widespread-practice evidence in the most efficient manner possible.  The Sept. 28 requests are the culmination of this process, as they are focused on gathering additional information about the most serious and troubling use-of-force incidents that Plaintiff has identified from among the numerous incidents produced.  The City's motion simply fails to acknowledge that fact, and does not establish good cause to deny this important discovery.  It should be denied.

4

## BACKGROUND

Plaintiff served the discovery at issue in this motion on September 28, 2025. Plaintiff received no communication from the City regarding these requests until October 20, when the City wrote that it would be filing a motion for protective order, without discussing the requests themselves. Plaintiff responded suggesting that the parties confer regarding the requests, and went through the requests to explain why they were relevant and proportional. The City did not engage with these points. Instead, by way of reply, the City cited the volume of the existing discovery in the case. This correspondence is attached as *Exhibit 2*. Thereafter the City filed ECF 498, the present motion for protective order.

## LEGAL STANDARD

Parties in federal civil litigation may obtain discovery that is "relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). A party seeking a protective order under Rule 26(c) must "articulate specific facts showing clearly defined and serious injury resulting from the discovery sought." *Nix v. Sword*, 11 Fed. Appx. 498, 500 (6th Cir 2001) (quotation omitted). This burden is demanding, for the "mere fact that responding to a discovery request would involve producing a significant number of documents or would involve inconvenience and expense is, standing alone, not a sufficient showing of burdensomeness to garner protection from the Court." *SMA Portfolio Owner, LLC v. Corporex Realty & Inv., LLC*, No. CV 11-168-DLB-JGW, 2014 WL 12647934, at *2 (E.D. Ky. March 5, 2014). Rather, "[t]he opposing party must also show that the burden is undue or disproportionate to the needs of the case." *Am. Consol. Indus., Inc. v. Blasingim*, No. 1:19-CV-137, 2021 WL 4204936, at *4 (N.D. Ohio Feb. 24, 2021).

5

In assessing that proportionality, a plaintiff should not "be permitted [use discovery] to 'go fishing,'" but she "should not be denied access to information necessary to establish her claim[.]" *Id.* at *3. Assessing proportionality thus requires a court to "balance the potential value of the information to the party seeking it against the cost, effort, and expense to be incurred by the person or party producing it." *Union Com. Servs. Ltd. v. FCA Int'l Operations LLC*, No. 16-CV-10925, 2018 WL 558760, at *4 (E.D. Mich. Jan. 25, 2018).[1]

## ARGUMENT

### A. The September 28 requests target relevant information about a winnowed-down set of incidents most probative of Plaintiff's *Monell* claims.

Aside from a short paragraph of generalities, *see* ECF 498 at 6, City's motion does not grapple with the proportionality of the Sept. 28 requests themselves and never discusses them in any detail. As Plaintiff explained to the City, however, the Sept. 28 requests are designed to gather specific information about particular events Plaintiff has identified as most relevant to her *Monell* claims in this case. *See* Ex. 2. The requests are as follows:

**Request No. 262**. This request seeks personnel files and related documents for 30 officers who were involved in specific, particularly troubling use-of-force events. The point of this request is to gather evidence about each officer's prior conduct, the oversight of the officer, and the discipline (or lack thereof) that MPD imposed on the officer for the incident in question. That evidence is central to the question of what sort of oversight the City exercised over these officers and how the City responded, if at all, to the troubling use of force events that Plaintiff has identified.

---

[1] Rule 26 articulates these considerations in a list of factors to consider in making the proportionality assessment: "[1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [3] the parties' resources, [4] the importance of the discovery in resolving the issues, and [5] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

6

*Request No. 264*.  This request asks for documents showing how ISB (the MPD's internal affairs unit) was notified about 35 use-of-force incidents that Plaintiff has identified as relevant to her *Monell* claims.  This request is of central importance in understanding the MPD's oversight and accountability mechanisms.  The City claims that all reported use-of-force incidents are sent to ISB for review, as a "backstop" to ensure accountability for uses of force.  This request seeks to confirm whether and how ISB was notified, to understand what actual role ISB played in the review of these particularly concerning use of force incidents.

*Request Nos. 263, 265-314*.  Each of these requests seeks production of certain documents relating to a particular use of force incident.  The documents sought in the requests should exist among the incidents that the City has produced, but to not appear to be in the City's production.  The existence, or not, of such documents—including RTRs, Supervisory Incident Reports, ISB investigation documents, Blue Team chains, and Axon audit trails—is relevant to Plaintiff's *Monell* claims.  For example, the lack of an RTR or a Blue Team chain for a particular use of force can indicate that a use of force was never reported, or was never reviewed by supervisors.  These requests go to whether and how these uses of force were reported, whether and how they were reviewed, and whether and how they were investigated by ISB.  Those questions are all highly relevant to Plaintiff's *Monell* claims.[2]

*Request Nos. 315-318*.  During the course of discovery Plaintiff learned that the Shelby County District Attorney's Office wrote a letter to the MPD's leadership, including Chief Davis, expressing concern about a flagrant misuse of force by MPD officers and noting, "[t]he repeated punches to [the victim] *are reminiscent of other recent cases we have reviewed and show a*

---

[2] Plaintiff has also served companion Rule 36 requests to admit that each of these documents does not exist.  The City has admitted that a number of the documents do not exist, effectively eliminating the corresponding Rule 34 request being discussed here.

*practice* that should be addressed." (emphasis added).  The City has already admitted that Chief Davis never responded to this letter and did not direct anyone else to respond.  These requests simply seek to gather whatever internal communications there are among the MPD's leadership regarding the letter.  These requests are highly relevant to Plaintiff's *Monell* claims in this case, and they implicate only a handful of custodian over a short period.  The burden for this highly relevant discovery is minimal.

      ***Response Nos. 319-323***.  In an effort to compromise, Plaintiff's counsel offered to withdraw these requests.  *See* Ex. 2 at 6.  The City has not responded to that offer.

      ***Request Nos.  324-327***.  These requests seek to identify any follow up by MPD leadership in response to a particular use of force incident.  After the incident, an MPD officer wrote a memorandum informing his Lieutenant that after officers had caught and handcuffed a civilian who had attempted to flee, another officer beat the civilian with a baton.  Plaintiff has been able to identify no documents suggesting that any action was taken in response to the officer's memo.  The response by MPD supervisors or ISB to such a memo is highly relevant to Plaintiff's *Monell* claims in this case, as it may be indicative of MPD oversight policies.

*   *   *

      Those are the Sept. 28 requests.  Each is made with respect to specific, troubling incidents or events that Plaintiff has identified in the existing discovery.  And as Plaintiff explained at the outset of this memorandum, these requests are not duplicative of Plaintiff's existing discovery.  Rather they are the culmination of a process in which Plaintiff first reviewed hundreds of incidents to identify only those that are most relevant to her claims, and then sought to gather additional, relevant information regarding those incidents.  That is how efficient *Monell* discovery should be conducted. Additionally, as reflected in Plaintiff's correspondence with the City, *see* Ex. 2 at 6, Plaintiff has offered to meet and confer about ways to address concerns the

City might have. The City has never taken Plaintiff up on that offer. The City's motion does not come close to meeting the City's burden to demonstrate, with specificity, that this discovery is disproportionate to the needs of the case. It should be denied for that reason alone.

### B.     Plaintiff's existing *Monell* discovery has been targeted and efficient.

Besides failing to show that the Sept. 28 discovery is disproportionate, the premise of the City's motion is wrong as well. The City's motion is grounded on the contention that Plaintiff has sought capacious *Monell* discovery in an unfocused effort to "look under every stone" in the City's files in the hopes she might find something relevant to her claims. ECF 498 at 6-7. That is simply not so.

Discovery in *Monell* widespread practice cases like this one is necessarily burdensome, because a *Monell* plaintiff alleging a widespread practice must find and identify multiple instances of unconstitutional conduct in order to prove her claims at trial. But that does not mean Plaintiff has been profligate in her *Monell* requests in this case. To the contrary, Plaintiff's requests have targeted groups of documents that the City had already identified and organized in the normal course of business, making them easy for the City to gather and produce. Where Plaintiff's requests have been broader, they have focused on data stored in computer form, such as statistical information, that can be gathered and produced with little effort. Plaintiff herein reviews several of her discovery requests that the City has singled out for criticism in pages 6-7 of its motion, where the City purports to enumerate the breadth and burden of Plaintiff's existing discovery. ECF 498 at 6-7. In reality, as Plaintiff sets out below, these requests have been focused and efficient.

*Request Nos. 81-86.* These requests sought several different types of data regarding traffic stops. The City cites these requests as examples of voluminous discovery, but these

9

requests were targeted at gathering computerized data that would be easy to produce. And indeed, the City's responsive production consisted of a single spreadsheet.

***Request No. 90***.[3] This request asked the City to produce files from the ISB, the MPD's internal affairs bureau, regarding investigations the City itself had listed and enumerated on the MPD's website. The investigations sought in this discovery regarded three categories of alleged policy violations: use of force, personal conduct, and compliance with BWC and in-car video rules. The MPD web site enumerated the specific number of investigations conducted by ISB each year in each category, and RFP 90 sought production of the documents associated with those enumerated investigations. The City characterizes this request as wildly overly broad, but it is the opposite: it targeted specific investigations regarding specific events that the MPD itself already identified and enumerated, each concerning categories of alleged misconduct that are relevant to Plaintiff's claims. RFP 90, in other words, directed at relevant documents the City had already catalogued, which would be easy for the City to gather.

***Request Nos. 108-110***. These requests sought ISB investigations regarding excessive force complaints against SCORPION and other specialized unit officers, as wells as ISB investigations for excessive force that had been referred to the Shelby County District Attorney's Office. The relevance of these requests is self-evident. And the discovery targeted documents that would have been organized and straightforward to identify, making them easy to produce.

***Request No. 133***. The Court is familiar with this request, which asked the City to produce the documents it had provided to the U.S. DOJ for its policy and practice investigation.

---

[3] RFP 90 asks the City to produce "Produce all ISB Investigation Case Files for any ISB investigation referenced on the Reimagining Policing in Memphis ISB Dashboard found at [internet URL] . . . [listing enumerated investigations for three categories of policy violations from 2019-2023] DR 101 (Compliance With Regulations: In-Car Video / Bodyworn Cameras) . . . DR 104 (Personal Conduct) . . . DR 301 (Excessive / Unnecessary Force)."

Like RFP 90, RFP 133 was designed to gather documents which would be easy to produce, since the City would already have gathered and produced responsive documents to the DOJ. As the Court knows and as Plaintiff has summarized *supra*, when the City objected that the request was overbroad, Plaintiff proposed to use audit trails as a proxy—a proposal that the Court found was reasonable. That is the flexibility parties should show in addressing potential overbreadth in discovery. Notably, the burdens that the City complains about regarding this request arise from its insistence that all responsive documents be gathered manually, rather than the efficient, SQL bulk database query that Plaintiff had proposed. *See generally* ECF 324. The City should not be heard to invoke the burdens it created to oppose the Sept. 28 discovery.

*Request No. 138*.[4] This RFP asked the City to produce data regarding all response to resistance reports. The City highlights this request as an example of Plaintiff's overbroad discovery, but the responsive documents were a single spreadsheet.

*Request No. 238.*[5] This request sought all use-of-force reports submitted by the five officers who beat Tyre Nichols during their careers with the MPD. The City does not explain why it believes that the request is overbroad. This request is relevant for identifying evidence admissible against the officers under Rule 404(b). And in all events only 55 documents were identified as responsive to this request.

*Request No. 240*.[6] This request asks the City to produce the personnel files of the members of the SCORPION unit, and provides a document listing the member-officers. The

---

[4] Request No. 138 asks the City to produce "Data relating to every Response to Resistance report, including but not limited to the aggregated data that the MPD publishes [website URL]."

[5] Request No. 238 asks the City to produce "All response to resistance forms for Defendants Demetrius Haley, Emmitt Martin III, Preston Hemphill, Tadarrius Bean, Justin Smith, and Desmond Mills Jr. for the entirety of their employment with the Memphis Police Department ("MPD")."

[6] RFP 240 asks the City to produce "The personnel files for each MPD Officer that was a member of the SCORPION Unit. See COM_0159455 for list of SCOPRION members."

SCORPION unit was a small, short-lived unit within the MPD. The MPD officers who beat Mr. Nichols were members of the unit, and the unit was known for particularly aggressive tactics towards civilians. Personnel files are typically easy to locate as they are organized by officer, and the request gives the City a list of officers in any event. The City does not explain why this request would raise proportionality concerns.

*   *   *

These are evidently the worst requests that the City could come up with. What the requests actually show, however, is that Plaintiff has been careful to target documents *(1)* that are relevant to her *Monell* claims; and *(2)* that the City has already gathered and organized in the normal course of business. Where the City has identified particular overbreadth problems with Plaintiff's *Monell* discovery, as it did with respect to RFP 133, Plaintiff has worked to find ways to narrow her discovery to address those concerns. Plaintiff's existing *Monell* discovery has not been an unfocused effort to turn over every stone. It has, to the contrary, been targeted and efficient, directed at gathering relevant evidence in a manner that minimizes the burden imposed.

## CONCLUSION

Through her existing *Monell* discovery, Plaintiff has been able to gather documents and videos relating to several hundred use-of-force incidents. Plaintiff then reviewed those incidents and identified a subset of several dozen that are most relevant and probative of her *Monell* claims in this case. Only *then* has Plaintiff sought more in-depth or complete information about the incidents. The Sept. 28 requests are that narrowed-down, focused discovery. Conducting discovery in this manner is entirely appropriate under the Rules, and the Sept. 28 requests themselves are proportionate to the needs of the case under Rule 26(b)(1). The City's motion should be denied.

Date: November 10, 2025					Respectfully submitted,

							/s/ Stephen H. Weil

David L. Mendelson					Antonio M. Romanucci*
(Tenn. Bar No. 016812)					(Ill. Bar No. 6190290)
Benjamin Wachtel					Sarah Raisch*
(Tenn. Bar No. 037986)					(Ill. Bar No. 6305374)
MENDELSON LAW FIRM					Joshua M. Levin*
799 Estate Place					(Ill. Bar No. 6320993)
Memphis, TN 38187					Stephen H. Weil*
(901) 763-2500 (ext. 103)				(Ill. Bar No. 6291026)
dm@mendelsonfirm.com					Colton Johnson Taylor*
bw@mendelsonfirm.com					(Ill. Bar No. 6349356)
							ROMANUCCI & BLANDIN, LLC
Benjamin Crump						321 N. Clark St., Ste. 900
(Tenn. Bar No. 038054)					Chicago, IL 60654
Brooke Cluse*						(312) 458-1000
(Tex. Bar No. 24123034)					aromanucci@rblaw.net
BEN CRUMP LAW, PLLC					sraisch@rblaw.net
717 D Street N.W., Suite 310				jlevin@rblaw.net
Washington, D.C. 20004					sweil@rblaw.net
(337) 501-8356						cjohnson@rblaw.net
court@bencrump.com
brooke@bencrump.com

							***Attorneys for Plaintiff***

							* Admission *pro hac vice*