IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

RowVaughn Wells,

                Plaintiff,

v.                                                   Case No. 2:23-CV-02224-**SHL-ATC**

The City of Memphis *et al.*,

                Defendants.

**PLAINTIFF'S MOTION TO COMPEL RULE 30(b)(6) DEPOSITION**

Pursuant to Federal Rule of Civil Procedure 37(a)(3)(B)(ii), Plaintiff moves the Court to compel the City of Memphis to designate witnesses to provide testimony about certain topics in Plaintiff's Rule 30(b)(6) notice to the City.

Plaintiff's Rule 30(b)(6) notice to the City is appended to this memorandum as **Exhibit 1**. The notice largely covers a five-year period before January 7, 2023, when Tyre Nichols was fatally beaten by Memphis police officers. The parties are not in dispute about that period. The notice, however, also covers a period *after* the beating. The City has categorically refused to offer witnesses for any part of that period. It contends matters occurring after Mr. Nichols' beating, because they occurred after the beating, cannot be relevant to Plaintiff's *Monell* claims.

This position is contrary to the settled law in this Circuit and across the country, which holds that events occurring after the incident at issue *can* be relevant to a *Monell* claim. Subsequent events cannot, of course, be introduced for purposes of proving notice of a pattern of unconstitutional conduct before the

1

incident event. But "[p]ost-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right," *Sanders v. City of Pembroke*, No. 5:19-CV-23, 2020 WL 3065918, at *12 (W.D. Ky. June 9, 2020) (quotation omitted), and it is relevant under *Monell* for that reason. Indeed this rule is well-nigh uniform across the country, including in the Sixth Circuit. *See Abdur-Rahim v. City of Columbus*, No. 2:17-CV-601, 2019 WL 1873222, at *2 (S.D. Ohio Apr. 26, 2019) (collecting cases from the 1st, 3rd, 4th, 5th, 6th, 7th, 9th, 10th, and 11th Circuits); *Whitt v. City of St. Louis*, No. 4:18-CV-1294 RLW, 2020 WL 7122615, at *8 (E.D. Mo. Dec. 4, 2020) (collecting cases from the 1st, 3rd, 4th, 5th, 6th, 7th, 8th, 9th, 10th, and 11th Circuits). Post-event evidence is relevant to Plaintiff's *Monell* claims in this case too, and the City should be required to present a witness to testify about that period in its Rule 30(b)(6) deposition.

## BACKGROUND

Tyre Nichols was fatally beaten by several Memphis police officers on January 7, 2023. Plaintiff sued the City of Memphis pursuant to *Monell*, alleging a widespread-practice theory. On June 17, 2025, as part of her gathering of evidence to support these claims, Plaintiff served a Rule 30(b)(6) notice to the City. **Ex. 1**.

The notice, which employs cross-referencing topics, identifies certain areas of police policy and practice (Topic 1); then asks the City to identify efforts by its policymakers to identify shortcomings or deficiencies in those substantive practices (Topic 3); and then asks the City to identify changes that were made relating to said policies or practices (Topic 4). For example, Topic 1(b) asks the City to describe its

2

policies and practices with respect to "[t]he use of excessive or unjustified force by MPD officers, including the practice of imposing a 'tax' on civilians.'" Topic 3, referring to Topic 1(b), asks the City to identify efforts by its policymakers to identify misconduct, shortcomings, deficiencies, etc. relating to the policies and practices set out in Topic 1(b); and Topic 4 asks the City to identify any changes made to MPD policies and practices relating to Topic 1(b) and Topic 3.

Counsel for Plaintiff and the City have met and conferred regarding the notice. The parties generally reached agreement regarding the substantive scope of the topics—but the time period they covered proved a sticking point. Topic 4 sets out four specific periods:

> (a) the five years preceding Mr. Nichols' January 7, 2023 beating; (b) the period between Mr. Nichols' January 7, 2023 beating and the September 2024 federal criminal trial of the involved officers in *United States v. Bean et al.*, No. 2:23-cr-20191-MSN; (c) the period from the *Bean* trial to the December 4, 2024 issuance of the Department of Justice ("DOJ") Report finding MPD has a pattern or practice of excessive force; and (d) the period from the December 4, 2024 issuance of the DOJ Report to present; as well as the existence, description, nature, custody, condition, location, and custodians of the principal documents or other tangible things reflecting such changes.

*See* Ex. 1 Topic ¶ 4. The City agreed to the period covered by Topic 4(a), but it objected to the periods covered by Topics 4(b)-(d), on grounds that they could not be relevant to Plaintiff's *Monell* claims since they occurred after the beating. The City's position was categorical: it objected to any part of the deposition covering periods past January 7, 2023, regardless of the various substantive subtopics listed

3

in Topic 1.  Given that position, the parties determined during their conference that they were at issue regarding these time periods.[1]  This motion follows.

## LEGAL STANDARD

The scope of discovery, including Rule 30(b)(6) depositions, is governed by Rule 26(b)(1), which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).  The "standard for relevancy," in turn, "is extremely liberal." *United States v. Whittington*, 455 F.3d 736, 738 (6th Cir. 2006) (quotation omitted).  " '[E]vidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence' is relevant." *Robinson v. Runyon*, 149 F.3d 507, 512 (6th Cir. 1998) (quoting Fed. R. Evid. 401; emphasis original)).  The City here objected to *all* evidence arising from facts after January 7, 2023 as categorically irrelevant to Plaintiff's *Monell* claims, and declined to discuss the relevance of any particular topic.  Plaintiff addresses the City's position at that general level.

---

[1] Additionally, after the conference concluded, Plaintiff counsel noted that the Rule 30(b)(6) notice generally covered the time period January 1, 2018 to the present.  *See* Ex. 1 Instructions and Definitions ¶ 1.  Plaintiff counsel wrote to the City noting this period and asked whether the City generally objected to the deposition to the extent it covered dates after the beating.  The City has not responded to that question, but given the City's position with respect to Topics 4(b)-(d), Plaintiff presumes the City objects to offering testimony covering times after January 7, 2023.

4

## ARGUMENT

Plaintiff's *Monell* claim charges that the beating of Mr. Nichols was the fruit of practices and longstanding customs of excessive force within the MPD, to which the MPD's leadership was indifferent. That theory makes the post-event evidence covered in Plaintiff's Rule 30(b)(6) notice directly relevant to her *Monell* claims, because such evidence will have a tendency to show both that such customs and practices existed, and that the City's policymakers are indifferent to them.

### A. The relevance of post-event evidence to *Monell* claims.

Post-event evidence is relevant to *Monell* claims, particularly the custom claims that Plaintiff asserts in this case. As one court explained in rejecting the same position the City asserts here,

> [c]ontrary to the City's exhortation that the date an incident occurs marks the outside date for evidence-garnering on such an issue, we think that actions taken subsequent to an event are admissible if, and to the extent that, they provide reliable insight into the policy in force at the time of the incident.

*Foley v. Lowell*, 948 F.2d 10, 14 (1st Cir. 1991) (quoted in *Abdur-Rahimi*, 2019 WL 1873222, at *2). *Accord Henry v. Cnty. of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997), *as amended*, 137 F.3d 1372 (9th Cir. 1998) ("[W]e reiterate our rule that post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but may be highly probative with respect to that inquiry."). These principles are relevant to this case in two senses: similar incidents occurring after the beating of Tyre Nichols, and the conduct of MPD policymakers after that beating.

5

*Similar incidents*. "Similar subsequent incidents can be probative and material of what policies, practices, or accepted customs existed at the time of the incident at issue, which would be relevant to Plaintiffs' *Monell* claims. *Abdur-Rahimi*, 2019 WL 1873222, at *2. *See also Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3rd Cir. 1996) (similar subsequent events "may have evidentiary value for a jury's consideration whether the City and policymakers had a pattern of tacitly approving the use of excessive force."); *Groark v. Timek*, 989 F. Supp. 2d 378, 398 (D.N.J. 2013) ("Subsequent incidents . . . may be relevant to show a continuous pattern that supports a finding of an accepted custom or policy.").

*Post-event conduct by policymakers*. Post-event conduct by municipal policymakers is also relevant for establishing municipal customs. That is so because "subsequent conduct by a municipal policymaker may be used to prove preexisting disposition and policy." *Sherrod v. Berry*, 827 F.2d 195, 205 (7th Cir. 1987), *vacated on other grounds*, 835 F.2d 1222 (7th Cir. 1988). Among other things, "the subsequent acceptance of dangerous recklessness by the policymaker tends to prove his preexisting disposition and policy." *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985). *Accord Morant v. City of New Haven*, No. 3:22-CV-00630 (SVN), 2025 WL 2821260, at *30 (D. Conn. Oct. 3, 2025) (*Monell* decision holding that a municipal policymaker's "tepid reactions to learning about" certain "alleged misconduct could support a jury finding that [the policymaker], and by extension the City, had a policy of tolerating or overlooking misconduct like that alleged here, such that the City could be liable.").

6

Thus under *Monell*, additional similar events occurring after the incident at issue can be relevant to establish a municipality's customs and practices at the time of the incident, and a policymaker's actions and inactions after an event can be relevant to establishing the policymakers' tacit approval of misconduct like the incident in question. Both categories of evidence are relevant to *Monell* claims like the one Plaintiff makes here.

### B. Plaintiff's Rule 30(b)(6) notice seeks post-event evidence that is relevant to her *Monell* claims in this case.

As Plaintiff sets out above, the topics in her Rule 30(b)(6) notice are designed to work together. ***Topic 1*** and its subtopics describe various substantive areas of the MPD's policies and practices relevant to the *Monell* claims in this case. ***Topic 3***, referring to those various subtopics, asks what Memphis policymakers did to look into shortcomings and problems with those policies and practices. And ***Topic 4***, referring to Topics 1 and 3, asks what remedial steps were taken regarding those various policies and practices. **Ex. 1**.

Topics 1, 3, and 4 cover the five years before Mr. Nichols' beating—a period that both parties agree is relevant to Plaintiff's *Monell* claims in this case. But all three topics also cover a period beyond the beating, from January 2023 to the present. Those periods are relevant and probative of Plaintiff's *Monell* claims as well. Topic 4 divides up the time into some guideposts, which are useful for illustration:

7

      a. **Topic 4(b) -** *the period between Mr. Nichols' January 7, 2023 beating and the September 2024 federal criminal trial of the involved officers in United States v. Bean*.

This period, immediately following Mr. Nichols' beating, is inarguably relevant to Plaintiff's *Monell* claims. The beating was inarguably well known to the City's policymakers. Whether those policymakers endeavored to figure out whether the misconduct reflected broader problems in the department, and whether they made changes in light of the beating, is highly relevant to whether those policymakers were indifferent to the police culture that Plaintiff alleges drove the beating. *Cf. Collins v. City of New York*, 923 F. Supp. 2d 462, 477 (E.D.N.Y. 2013) (*Monell* decision holding that the municipal policymaker's "lack of . . . corrective action" post-event "might . . . reflect a tacit policy on [the policymaker's] part to condone" unconstitutional conduct); *Estevis v. City of Laredo*, No. 5:22-CV-22, 2023 WL 9319061, at *3 (S.D. Tex. Mar. 31, 2023) ("[W]hen the official policymaker knows about misconduct yet allegedly fails to take subsequent remedial action, this inaction arguably shows acquiescence to the misconduct such that a jury could conclude that it represents official policy." (citing *Sanchez v. Young Cnty., Texas*, 956 F.3d 785, 793 (5th Cir. 2020)).

      b. ***Topic 4(c) the period from the Bean trial to the December 4, 2024 issuance of the [DOJ] Report finding MPD has a pattern or practice of excessive force***.

As Plaintiff has previously explained, testimony by MPD officers at the federal criminal trial of the officers who fatally beat Mr. Nichols (*United States v. Bean*) featured revelations that there was a widespread practice within the MPD

8

both of beating civilians who resisted arrest or otherwise annoyed the police, jokingly referred to within the department as a "tax" or "run tax," as well as a robust code of silence in the department.  *See* ECF 248 at 3-6 (summarizing *Bean* trial revelations).  Plaintiff alleges those widespread, settled practices were a driving force behind Mr. Nichols' beating and the subsequent coverup.

Upon the revelation of this testimony at the *Bean* trial, did the MPD's policymakers do anything to determine whether it was true, and if so, what sort of reforms might fix it?  That is critical evidence in this case, because the response of MPD policymakers to the *Bean* trial revelations would indicate whether or not the City was indifferent to such conduct, including at the time leading up to Mr. Nichols' beating.  As a district court explained in *Morant v. City of New Haven*, *supra*, a municipal policymaker's "tepid reactions to learning about" "alleged misconduct" *after the incident in question* "could support a jury finding that [the policymaker], and by extension the City, had a policy of tolerating or overlooking misconduct like that alleged here, such that the City could be liable." 2025 WL 2821260, at *30.  *Accord Grandstaff*, 767 F.2d at 171 ("As subsequent conduct may prove discriminatory motive in a prior employment decision, and subsequent acts may tend to prove the nature of a prior conspiracy, so the subsequent acceptance of dangerous recklessness by the policymaker tends to prove his preexisting disposition and policy." (citations omitted)).  The City's response to the revelations in the *Bean* trial is relevant to Plaintiff's *Monell* claims in this case.

### c. Topic 4(d) - the period from the December 4, 2024 issuance of the DOJ Report to present.

In 2023 the U.S. Department of Justice, prompted by Mr. Nichols' beating, announced that it was conducting a pattern-and-practice investigation of the MPD. On December 4, 2024, the DOJ issued a report of that investigation, finding widespread and troubling patterns of excessive force within the MPD. *See* ECF 437 at 4-6 (summarizing parts of DOJ report).

How did the City's policymakers react to this report? Did they try and get to the bottom of the allegations? Clean house within the MPD? Continue with business as usual? The actions—or lack of action—taken by MPD policymakers in response to the report is relevant to Plaintiff's *Monell* claims in this case, as the reaction of policymakers may be indicative of their attitude towards excessive force and related misconduct in the time leading up to Mr. Nichols' beating. *Cf. Cratty v. City of Allen Park*, No. CV 17-11724, 2018 WL 7351683, at *2 (E.D. Mich. May 21, 2018) ("Evidence of citizens' complaints made after [the incident], and [the City's] treatment of them, could provide support for [the *Monell* plaintiff's] claim that the City has had an official policy to disregard [similar] alleged violation of citizens' rights."); *Grandstaff*, 767 F.2d at 171 (5th Cir. 1985) (holding that, because city failed iter alia to change policies in light of known problems, jury was entitled to conclude that practices were "accepted as the way things are done and have been done in" that city). The period following the issuance of the DOJ report is relevant to Plaintiff's *Monell* claims as well.

## CONCLUSION

"[P]ost-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but may be highly probative with respect to that inquiry." *Henry*, 132 F.3d at 519.  The Court should compel the City to provide a witness to testify about those topics in Plaintiff's Rule 30(b)(6) notice covering periods after the fatal police beating of Tyre Nichols.

Dated:            December 14, 2025                    Respectfully submitted,

                                                       /s/ *Stphen H. Weil*

David L. Mendelson                                     Antonio M. Romanucci*
(Tenn. Bar No. 016812)                                 (Ill. Bar No. 6190290)
Benjamin Wachtel                                       Sarah Raisch* (Ill. Bar No. 6305374)
(Tenn. Bar No. 037986)                                 Joshua M. Levin* (Ill. Bar No. 6320993)
**MENDELSON LAW FIRM**                                 Stephen H. Weil* (Ill. Bar No. 6291026)
799 Estate Place                                       Colton Johnson Taylor*
Memphis, TN 38187                                      (Ill. Bar No. 6349356)
+1 (901) 763-2500 (ext. 103), Telephone                **ROMANUCCI & BLANDIN, LLC**
+1 (901) 763-2525, Facsimile                           321 N. Clark St., Ste. 900
dm@mendelsonfirm.com                                   Chicago, IL 60654
bw@mendelsonfirm.com                                   P: (312) 458-1000
                                                       aromanucci@rblaw.net
Benjamin Crump                                         sraisch@rblaw.net
(Tenn. Bar No. 038054)                                 jlevin@rblaw.net
Brooke Cluse* (Tex. Bar No. 24123034)                  sweil@rblaw.net
**BEN CRUMP LAW, PLLC**                                cjohnson@rblaw.net
717 D Street N.W., Suite 310
Washington, D.C. 20004
+1 (337) 501-8356 (Cluse), Telephone
court@bencrump.com
brooke@bencrump.com

                                                       *Attorneys for Plaintiff*

                                                       * Admission *pro hac vice*

## CERTIFICATION OF CONSULATION

  I certify that on December 5, 2025, I held a video conference with lead counsel for the City in which the parties determined they were at issue regarding the matters set forth in the foregoing motion.

*/s/ Stephen H. Weil*

***Counsel for Plaintiff***
