# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ROWVAUGHN WELLS, | |
| Plaintiff, | Case No. 2:23-cv-02224-MSN-ATC |
| v. | |
| THE CITY OF MEMPHIS, *et al.*, | JURY DEMAND |
| Defendants. | |

### NOTICE OF 30(b)(6) DEPOSITION

**TO:** All Counsel of Record

**PLEASE TAKE NOTICE THAT** pursuant to Federal Rule of Civil Procedure 30(b)(6) Plaintiff notices the deposition of Defendant City of Memphis ("City"). The City shall designate an individual or individuals most knowledgeable and prepared to testify on behalf of the City regarding all information known or reasonably available with respect to the subject matter identified in the attached Rider which describes the topics of the deposition. This deposition will be taken in-person on a date/time and location to be determined.

Date: June 17, 2025                                    Respectfully submitted,


                                                       By: s/Joshua M. Levin
                                                       *Attorney for Plaintiff*


**MENDELSON LAW FIRM**
David Mendelson (Tennessee Bar No. 016812)
Benjamin Wachtel (Tennessee Bar No. 037986)
799 Estate Place
Memphis, Tennessee 38187
Tel: (901) 763-2500 ext. 103

**ROMANUCCI & BLANDIN, LLC**
Antonio Romanucci*
Sarah Raisch*
Joshua M. Levin* (ARDC No. 63 20993)
Stephen H. Weil*
Colton Johnson*
321 North Clark St., Suite 900

1

                                PageID 8262

Fax: (901) 763-2525  
Email: dm@mendelsonfirm.com  
Email: bwachtel@mendelsonfirm.com  

Chicago, Illinois 60654  
Tel: (312) 458-1000  
Fax: (312) 458-1004  
Email: aromanucci@rblaw.net  
Email: sraisch@rblaw.net  
Email: jlevin@rblaw.net  
Email: sweil@rblaw.net  
Email: cjohnson@rblaw.net  
*Admitted PHV*

**BEN CRUMP LAW**  
Ben Crump (pro hac vice pending)  
(Tennessee Bar No. 038054)  
Brooke Cluse  
(Texas Bar No. 24123034)  
717 D Street N.W., Suite 310  
Washington, D.C. 20004  
Email: ben@bencrump.com  
Email: brooke@bencrump.com  

*Attorneys for Plaintiff*

2

## RIDER TO RULE 30(b)(6) DEPOSITION NOTICE

Please take notice that pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiff will take the depositions upon oral examination of Defendant City of Memphis ("City"). The City shall designate an individual or individuals most knowledgeable and prepared to testify on behalf of the City regarding all information known or reasonably available with respect to the subject matter identified below.

The following is a partial list of Rule 30(b)(6) topics, which are subject to supplementation as discovery continues. Plaintiff expressly reserves the right, in her sole discretion, to supplement or otherwise amend the following Rule 30(b)(6) topics based on subsequently discovered information.

### INSTRUCTIONS AND DEFINITIONS

1. Unless otherwise indicated, all subject matter set forth herein refers to the period of time from January 1, 2018 to present.

2. As used here the term "tax" is synonymous with "run tax," "running tax," "street tax," and similar terms. It refers to the use of unnecessary or excessive force by police officers against civilians in situations where the civilian ran from the police or engaged in other actions that aggravated or frustrated the police. By way of example, "tax" term was described by one witness during the federal criminal trial involving Mr. Nichols' death as follows: "Street tax is basically -- it's a punishment. If you run from the police or make police do anything extra that when they get a hold of you, you're going to be punished by use of force, excessive use of force." *United States v. Bean et al.*, No. 2:23-cr-20191-MSN, PageID 12564:3-6 (ECF 677) (W.D. Tenn. Sept. 24, 2024).

### THE DEPONENT(S) SHALL BE PREPARED TO ADDRESS THE FOLLOWING TOPICS

1. The policies, practices, and procedures of the City of Memphis and the Memphis Police Department ("MPD") relating to each of the following subjects, as well as the existence, description, nature, custody, condition, location, and custodians of the principal documents or other tangible things reflecting same:

*Use of Force*

    a. The use of force by MPD officers.

3

b. The use of excessive or unjustified force by MPD officers, including the practice of imposing a "tax" on civilians.

c. The training that MPD officers receive regarding use of force, de-escalation, and traffic stops.

d. MPD's practices for assessing whether officers' use of force is in compliance with law and policy, including the review by MPD supervisors, the Inspectional Services Bureau ("ISB"), and any other reviewing unit/officer of police reports and body-worn and car camera footage for the purpose of identifying improper uses of force, and escalating such uses of force for further review and corrective action;

e. The documentation and recordkeeping requirements for the review described in Topic 1(d);

f. The training that MPD supervisors, ISB personnel, and any other reviewing unit/officer receive regarding the review described in Topic 1(d);

g. The auditing and oversight of the review described in Topic 1(d), including for the purpose of assessing whether the review is being conducted adequately;

h. Disciplinary, corrective, or remedial actions taken in response to incidents identified in the review described in Topic 1(d) as improper uses of force, including but not limited to punishment, enhanced supervision, monitoring, retraining, or other interventions taken to address officers' use of excessive force and to prevent future instances of the same;

*Use of Force Reporting*

i. The reporting by MPD officers of police-civilian encounters involving use of force, including but not limited to response to resistance reports;

j. The training that MPD officers receive regarding reporting of police-civilian encounters involving use of force.

k. MPD's practices for assessing whether officers complied with use of force reporting requirements, including the review by MPD supervisors, the Inspectional Services Bureau ("ISB"), and any other reviewing unit/officer of written reports, officers' body-worn camera footage, or other materials, and the procedures and practices for identifying improper use-of-force reporting (*e.g.*, providing false, inaccurate, or misleading information in police reports), and for escalating such improper reporting for further review and corrective action;

l. The documentation and recordkeeping requirements for the review described in Topic 1(k);

m.  The auditing and oversight of the review described in Topic 1(k), including for the purpose of assessing whether the review is being conducted adequately;

n.  Disciplinary, corrective, or remedial actions taken in response to incidents identified in the review described in Topic 1(k) as improper use-of-force reporting, including but not limited to punishment, enhanced supervision, monitoring, retraining, or other interventions taken to address officers' improper use-of-force reporting and to prevent future instances of the same;

***Body-Worn Cameras and Car Cameras***

o.  The use of body-worn and car cameras to record police-civilian interactions;

p.  The training that MPD officers receive regarding use of body-worn and car cameras;

q.  MPD's practices for assessing whether officers' usage of body-worn cameras and car cameras was in compliance with law and policy, including the review by MPD supervisors, the Inspectional Services Bureau ("ISB"), and any other reviewing unit/officer of officers' body-worn camera footage and car camera footage, and the procedures and practices for identifying improper uses of such cameras (*e.g.*, failing to activate cameras when required by policy/law, or obstructing or manipulating the camera to conceal or justify uses of force), and for escalating such improper camera usage for further review and corrective action;

r.  The documentation and recordkeeping requirements for the review described in Topic 1(q);

s.  The auditing and oversight of the review described in Topic 1(q), including for the purpose of assessing whether the review is being conducted adequately;

t.  Disciplinary, corrective, or remedial actions taken in response to incidents identified in the review described in Topic 1(q) as improper camera usage, including but not limited to punishment, enhanced supervision, monitoring, retraining, or other interventions taken to address officers' improper camera usage and to prevent future instances of the same;

***Duty to Intervene***

u.  The requirements for MPD officers who observe or believe that another MPD officer has violated MPD policy, state law, or federal law in the performance of his or her law enforcement duties (often referred to as the duty to intervene), including but not limited to in the areas of use of force, the reporting of use of force, and the use of body-worn cameras or car cameras;

v.  The training that MPD officers receive regarding the duty to intervene.

w.  MPD's practices for assessing whether officers are complying with any requirements identified in Topic 1(u), including the review by MPD supervisors,

5

    the Inspectional Services Bureau ("ISB"), and any other reviewing unit/officer to assess whether MPD officers are complying with such requirements, and the procedures and practices for identifying noncompliance, and for escalating noncompliance for further review and corrective action;

  x. The documentation and recordkeeping requirements for the review described in Topic 1(w);

  y. The auditing and oversight of the review described in Topic 1(w), including for the purpose of assessing whether the review is being conducted adequately;

  z. Disciplinary, corrective, or remedial actions taken in response to incidents identified in the review described in Topic 1(w) as noncompliance with duty-to-intervene requirements, including but not limited to punishment, enhanced supervision, monitoring, retraining, or other interventions taken to address officers' noncompliance and to prevent future instances of the same;

***Misconduct Complaints***

  aa. The solicitation, review, and investigation of civilian and officer complaints alleging misconduct related to the following subjects: use of force, use of force reporting, use of body-worn or car cameras, traffic stops, and the SCORPION unit;

  bb. The documentation and recordkeeping requirements for the review and investigation described in Topic 1(aa);

  cc. The auditing and oversight of the review/investigation described in Topic 1(aa), including for the purpose of assessing whether the review/investigation is being conducted adequately;

2. The identity of the principal City of Memphis or MPD policymaker who was responsible for, or had final policymaking authority for, each of the policies, practices, and procedures identified in Topic No. 1 above (including subtopics), as well as the existence, description, nature, custody, condition, location, and custodians of the principal documents or other tangible things identifying each such policymaker.

3. Any effort by any City of Memphis or MPD policymaker who was responsible for, or had final policy making authority for, any of the policies, practices, and procedures identified in Topic No. 1 above (including subtopics), to review, investigate analyze, uncover, prevent, or determine the prevalence of any misconduct, deficiency, shortcoming, or other problem relating to any such policy or practice, as well as the existence, description, nature, custody, condition, location, and custodians of the principal documents or other tangible things reflecting such efforts.

4. Any changes made to any policy, procedure, or practice of the City of Memphis or the MPD on any of the subjects identified in Topic No. 1 (including subparts) and 3 above. In particular, any changes made during the following periods: *(a)* the five years preceding Mr.

6

Nichols' January 7, 2023 beating; *(b)* the period between Mr. Nichols' January 7, 2023 beating and the September 2024 federal criminal trial of the involved officers in *United States v. Bean et al.*, No. 2:23-cr-20191-MSN; *(c)* the period from the *Bean* trial to the December 4, 2024 issuance of the Department of Justice ("DOJ") Report finding MPD has a pattern or practice of excessive force; and *(d)* the period from the December 4, 2024 issuance of the DOJ Report to present; as well as the existence, description, nature, custody, condition, location, and custodians of the principal documents or other tangible things reflecting such changes.

5. The policies, practices, and procedures of the SCORPION unit relating to each of the following subjects, as well as the existence, description, nature, custody, condition, location, and custodians of the principal documents or other tangible things reflecting the same:

   a. The objectives and tactics of the SCORPION unit.

   b. Any rules, requirements, guidance, directives, standard operating procedures, written policies, or handbooks specific to the SCORPION unit.

   c. The training that SCORPION officers received.

   d. The supervision of SCORPION officers, including the supervision of SCORPION officers by a SCORPION team lieutenant and the supervision of SCORPION unit/officers by MPD officials outside of SCORPION.

   e. The SCORPION unit's "operational goals" and "measurable performance objectives," as referred to in the SCORPION Standard Operating Procedure. *See* COM_0057786; COM_0054599; COM_0054704; COM_0054600; COM_0057787.

   f. The use of numerical goals, objectives, benchmarks, or similar requirements (often referred to as "quotas") that encouraged and/or required SCORPION officers, supervisors, or teams to conduct a certain amount of traffic stops, arrests, seizures, or other types of law-enforcement activity. This includes not only policies or practices regarding specific numbers of enforcement activity that SCORPION officers, supervisors, or teams were directed to produce, but also pressure on them to maintain or increase the reported numbers of enforcement activity.