IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| RowVaughn Wells, Individually and as Administratrix of the Estate of Tyre Deandre Nichols, Deceased, <br><br> Plaintiff, <br><br> v. <br><br> The City of Memphis, Tennessee; Chief Cerelyn Davis; Emmitt Martin III; Demetrius Haley; Justin Smith; Desmond Mills, Jr.; Tadarrius Bean; Preston Hemphill; Robert Long; JaMichael Sandridge; Michelle Whitaker; DeWayne Smith, <br><br> Defendants. | CASE NO. 2:23-CV-02224-SHL-atc <br> JURY DEMAND |

**DEFENDANT CITY OF MEMPHIS' MOTION FOR PROTECTIVE ORDER AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Defendant City of Memphis (the "City") files this Motion for Protective Order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. The City seeks a protective order preventing required responses to Plaintiff's Tenth Set of Requests for Production of Documents. In support, the City states as follows:

**I.   INTRODUCTION**

Despite having already received hundreds of thousands of pages of Memphis Police Department ("MPD") documents and ISB files plus thousands of audio/video files, Plaintiff has served yet another round of discovery requests on the City. Plaintiff's most recent discovery requests—the Tenth Set of Requests for Production ("Tenth RFPs") and Third Set of Requests

1

for Admission ("Third RFAs")—are not only duplicative, but also disproportional to the needs of the case in light of the extensive discovery already conducted.[1] The burden of responding to these requests far outweighs any potential benefit to Plaintiff. Because good cause exists, the Court should enter a protective order.

II.     **BACKGROUND**

The discovery disputes between Plaintiff and the City are well documented at this point in the litigation. (*See* ECF Nos. 279, 281, 324, 326, 343, 378-1, 378-2, 396, 405 437, 498, 514.) Most recently, the City moved for a protective order allowing the City not to respond to the Plaintiff's Ninth Set of Requests for Production (the "Ninth RFPs"). (ECF No. 498.) Plaintiff's Ninth RFPs consisted of sixty-seven requests, many of which were layered with additional sub-requests or follow-up requests. (*See* ECF No. 514-1.) Plaintiff, in response, argued that she is entitled to impose these excessive and overly burdensome requests to establish her *Monell* claim against the City, despite the fact that the City has already made over 50 productions consisting of hundreds of thousands of pages of documents and tens of separate productions of links to thousands of videos, many of which are responsive to the Ninth RFPs. (ECF No. 514.)

The City's Motion for Protective Order regarding Plaintiff's Ninth RFPs is still pending before the Court. In the meantime, Plaintiff has continued to serve excessive discovery requests on the City. Plaintiff served the Tenth RFPs and Third RFAs on November 13, 2025. The Tenth RFPs consist of four numbered requests, each seeking numerous ISB files, contracts, and other

---

[1] While the City is not seeking a protective order related to the Third RFAs, the City includes references to these requests throughout because they add to the overall burden imposed by Plaintiff's discovery. To be sure, the Third RFAs consist of 177 requests regarding dozens of ISB investigations of incidents involving MPD officers, many of which are incidents for which the City has already produced documents or otherwise responded.

2

documents related to various MPD events and officers. The Tenth RFPs also seek information contained in documents already produced in response to other RFPs.

The scope of discovery is explicitly limited by the Federal Rules, and the Court has a duty "to limit discovery that exceeds its proportional and proper bounds." *Helena Agri-Enters., LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 274 (6th Cir. 2021). Accordingly, the City moves for a protective order to shield it from this additional set of Plaintiff's unduly burdensome, expensive, and disproportionate discovery.

### III.   LEGAL STANDARD

The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and **proportional** to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added). "[T]he trial court is given wide discretion in balancing the [discovery] needs and rights of both plaintiff and defendant." *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991). This wide discretion permits the trial court to limit or deny discovery, *see France v. Lucas*, 836 F.3d 612, 631 (6th Cir. 2016), and it "extends to determining whether a protective order is proper." *Wimberly v. Campbell Clinic, P.C.*, No. 2:19-cv-02691-JTF-tmp, 2021 WL 9880608, at *2 (W.D. Tenn. Jan. 14, 2021) (citing *Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 903–04 (6th Cir. 2009)).

Under Rule 26 of the Federal Rules of Civil Procedure, the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" arising from discovery requests. Fed. R. Civ. P. 26(c)(1); *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 854 (6th Cir. 2017) (quoting Fed. R. Civ. P. 26(c)(1)). The party seeking a protective order bears the burden of demonstrating good cause for issuance of the order. *In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 929 (6th Cir. 2019). When considering

3

a motion for protective order, courts must analyze the harm that the moving party would suffer in the absence of the protective order. *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012) (citing Fed. R. Civ. P. 26(a)).

"With [Rule 26(c)'s] authority at hand, judges should not hesitate to exercise appropriate control over the discovery process." *Herbert v. Lando*, 441 U.S. 153, 177 (1979). Orders of protection under Rule 26 may include, *inter alia*, forbidding the disclosure or discovery, specifying terms for the disclosure or discovery, prescribing a discovery method other than the one selected by the party seeking discovery, forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters. Fed. R. Civ. P. 26(c)(1).

In this case, the Court should enter an order limiting the scope of discovery to protect the City from Plaintiff's continual unduly burdensome, repetitive, oppressive, and expensive discovery.

## IV.    ARGUMENT

Good cause to enter a protective order against the Plaintiff's Tenth RFPs exists here for two reasons. First, like Plaintiff's Ninth RFPs, these latest discovery requests are disproportional to the needs of the case in light of the extensive discovery already conducted in this action. Second, Plaintiff's discovery is well beyond the point of being unduly burdensome and oppressive such that a protective order is justified.

### A.    The Tenth RFPs Are Not Proportional to the Needs of the Case.

Good cause to enter a protective order exists when the discovery sought is not proportional to the needs of the case in light of discovery already conducted. *See Coleman v. Am. Red Cross*, 23 F.3d 1091, 1098 (6th Cir. 1994). Rule 26(b)(1) was amended in 2015 to cut back on the "costly and delay-inducing efforts to look under every stone in an e-discovery world populated by many stones[.]" *Helena Agri-Enters., LLC v. Great Lakes Grain, LLC*, 988 F.3d

4

260, 273 (6th Cir. 2021). Rule 26 provides six factors for courts to consider when determining the proportionality of discovery: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).

Since Plaintiff issued her first set of written discovery requests over twenty-five months ago, the City has produced 550,000 pages of documents and ESI and separately produced at least 7,000 video files. Additionally, the Court has already permitted Plaintiff to take thirty depositions, and Plaintiff has moved the Court to enlarge the number of her depositions to 44. (ECF No. 499.)

Simply put, the "hundreds of [discovery] responses, numerous depositions, and [hundreds of] thousands of pages of documents that [have already] been produced [are] sufficient" for purposes of discovery in this case. *Coleman*, 23 F.3d at 1098. As demonstrated below, such extensive discovery is more than adequate to satisfy the Rule 26 requirements.

      1.    <u>Whether the Burden or Expense of the Proposed Discovery Outweighs Its Likely Benefit.</u>

The burden of responding to Plaintiff's Tenth RFPs far outweighs any likely benefit of such discovery. The City has already expended substantial burden and expense responding and making productions to Plaintiff's previous discovery requests for massive amounts of documents ranging back five or more years. Despite the City raising concerns regarding the time and cost it has expended responding to Plaintiff's discovery, Plaintiff continues to flood the City with over 180 additional requests in the Tenth RFPs and Third RFAs alone.

The Tenth RFPs largely constitute compound and layered follow-up requests for documents that either do not exist or have already been produced. To fully comply with these

discovery requests, the City would expend significant time and human resources to re-review incident files, cross-reference production logs, and confirm the absence of or prior production of documents across dozens of categories. This is not proportional to the needs of the case, particularly where many of the requests are duplicative and speculative.

        2.        <u>The Parties' Relative Access to Relevant Information, the Parties' Resources, and the Importance of the Discovery in Resolving the Issues.</u>

Most of the requests in Plaintiff's Tenth RFPs relate to MPD Policy 301.[2] Policy 301 refers to the MPD's policy and procedures regarding excessive and unnecessary force.

Plaintiff has access to all relevant information with respect to her Tenth RFPs through the City's previous productions in this litigation. Notably, the City has produced documents and videos from *every excessive force allegation* from 2018-2023 in response to Plaintiff's RFP 90. Thus, the information Plaintiff seeks in, for example, RFP 332 is plainly in Plaintiff's possession and identified by bates number in the Production Inventory spreadsheet provided by counsel for the City. Moreover, the City has served fifty-two document productions amounting to over 550,000 pages of documents and other ESI—many of which are ISB files related to potential uses of excessive force—and thousands of separately produced body-worn camera videos. These productions include without limitation:

    a. Documents regarding every allegation of **excessive force**, body-worn camera policy violations, and personal conduct policy violations against an MPD officer from 2018 through 2023 (RFP 90);

    b. Videos for incidents related to every allegation of **excessive force** against an MPD officer from 2018 through 2023 (RFP 90)

---

[2] For example, RFP 332 seeks "[d]ocuments sufficient to show all Inspectional Services Bureau ("ISB") employees that investigated potential violations of MPD Policy 301 from November 1, 2018 to September 30, 2023." Similarly, RFA 256 requests that the City "[a]dmit that the MPD did not generate an ISB File determining whether charges for a violation of MPD Policy 301 were sustained arising out of the incident labeled MPD047-P203241664." Nearly all of the remaining requests in the Tenth RFPs and Third RFAs follow the same general construction as these.

c. At least forty personnel files, including personnel files for all Scorpion Unit officers (*e.g.*, RFP 240);

d. Documents and videos related to approximately 880 incidents that may have been viewed by DOJ investigators (RFP 133);

e. Every response to resistance report submitted by the Defendant Officers in this case for the entire duration of their respective employment with MPD (RFP 238);

f. Associated data for every response to resistance report submitted by any officer between 2018 and 2023 (RFP 138);

g. Every ISB investigation referred to the Shelby County District Attorney's Office arising out of conduct from a Scorpion Unit officer, an Organized Crime Unit officer, or involving **use of force** from 2021 through 2023 (RFPs 108-110);

Through these productions and many others like them, Plaintiff undoubtedly has access to copious amounts of information regarding claims and investigations of unnecessary and excessive force against MPD officers. Additionally, Plaintiff's counsel and team of attorneys presumably have the knowledge and resources necessary to analyze the large volume of documents they have already received from the City. As such, Plaintiff's Tenth RFPs, which mostly request documents related to the excessive or unnecessary force, are redundant and unlikely to produce any additional information related to Plaintiff's *Monell* claims.

In short, Plaintiff is unlikely to uncover new information relevant to her *Monell* claims by repackaging her earlier discovery requests (*e.g.*, RFP 90) for information related to unnecessary and excessive force as requests for potential Policy 301 violations. If Plaintiff cannot find enough evidence to prove her case with the massive amounts of discovery already produced, this is an issue with her case, not an invitation to "look under every stone in an e-discovery world populated by many stones[.]"[3] *Helena Agri-Enters., LLC*, 988 F.3d at 273.

---

[3] Two of Plaintiff's attorneys recently touted themselves to this Court as counsel who "specialize in *Monell* litigation and have a nationwide focused [sic] on *Monell* claims." *Young v. City of Memphis et al.*, No. 2:25-cv-02799, at ECF No. 52, PageID 363 (W.D. Tenn.). The fact that

3. <u>The Importance of the Issues at Stake in the Action and the Amount in Controversy.</u>

Plaintiff's Tenth RFPs purport to be targeted at obtaining information to support her *Monell* claims. The City does not dispute that this is central to Plaintiff's case. Likewise, the City does not dispute that the amount in controversy in this case could be significant. Plaintiff's counsel has very publicly stated that Plaintiff is seeking to bankrupt the City of Memphis. Regardless, upon consideration of the other factors, the proportionality analysis weighs in favor of the City here.

**B.     Prejudice to the City Supports Good Cause to Enter a Protective Order.**

To establish good cause, the party seeking a protective order must "articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (internal quotation marks omitted); *see also In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016) ("Good cause exists if specific prejudice or harm will result from the absence of a protective order." (quotation omitted)).

1. <u>Plaintiff's Discovery Has Diverted Substantial Resources Away from the Citizens of Memphis.</u>

The City has devoted thousands of man hours to respond to Plaintiff's discovery. Plaintiff's discovery requires coordination across the City and MPD, involving multiple units and chains of command. Plaintiff's requests have required the efforts of dozens of MPD personnel over many months. Likewise, for every one of the documents, other ESI, and videos produced, dozens of MPD personnel (not usually engaged in assisting in litigation) had to divert their time and attention away from their normal duties to accommodate Plaintiff's requests.

---

discovery has been ongoing in this case for over two years, yet Plaintiff's counsel is continuing to serve new discovery requests, is telling.

While the City does not intend to minimize the issues at stake in this action, the City's resources cannot be limited to this action. The resources expended by the City directly implicate the citizens of Memphis, and the citizens of Memphis should not be subject to the whims of unduly burdensome, laborious, and untargeted discovery.

    2.  <u>Plaintiff's Exhaustive Discovery Is Preventing This Case from Moving Forward.</u>

This lawsuit has been pending for almost three years. The parties have been in the discovery phase of this litigation for two years. The operative scheduling order is the fifth iteration of the case's schedule, and a sixth iteration is likely inevitable given the new trial granted to the Stayed Defendants and subsequent appeal of the same. This year, Plaintiff has twice sought extensions of discovery deadlines. First, Plaintiff sought an additional nine months and then sought another five more. Moreover, Plaintiff has often scheduled depositions, only to cancel them at the last minute. In the last twelve months, Plaintiff has taken only six depositions.

To date, Plaintiff has propounded more than 330 enumerated document requests, not including the numerous subparts accompanying these requests. Plaintiff has also propounded 429 requests for admission and 25 interrogatories on the City. For its part, the City has produced over 550,000 pages of documents and ESI and, separately, well over 7,000 audio/video files. The City has also presented fifteen MPD witnesses for deposition.

The City is facing prejudice by Plaintiff's refusal to allow the case to move forward past the discovery phase. As evidenced by the fact that Plaintiff served the Tenth RFPs and Third RFAs while the City's Motion for Protective Order with respect to Plaintiff's Ninth RFPs is pending, Plaintiff is likely to continue to harass the City with additional discovery if the schedule is extended further. Plaintiff's excessive discovery requests have far exceeded the limits imposed by the Federal Rules.

## V.  CONCLUSION

For the foregoing reasons, the City of Memphis respectfully requests that the Court enter a protective order allowing the City not to respond to Plaintiff's Tenth Set of Requests for Production.

Dated: December 15, 2025

                                                Respectfully submitted,

                                                **BAKER, DONELSON, BEARMAN,**
                                                **CALDWELL & BERKOWITZ, P.C.**

                                                *s/ Bruce McMullen*
                                                Bruce McMullen (#18126)
                                                Jennie Vee Silk (#35319)
                                                Kelsey W. McKinney (#40434)
                                                165 Madison Avenue, Suite 2000
                                                Memphis, Tennessee 38103
                                                Telephone: (901) 526-2000
                                                bmcmullen@bakerdonelson.com
                                                jsilk@bakerdonelson.com
                                                kmckinney@bakerdonelson.com

                                               *Attorneys for Defendant City of Memphis and Chief Cerelyn Davis in her Individual Capacity*

## CERTIFICATE OF CONSULTATION

I, Bruce McMullen, hereby certify that on December 11 and 12, 2025, counsel for the City consulted with counsel for the various parties via email regarding the relief sought in this Motion. The Parties were asked whether they oppose the requested relief. A chart detailing the parties' responses is below:

| Party | Responding Counsel | Opposition? |
|---|---|---|
| Plaintiff | Steve Weil | Yes |
| Hemphill | Betsy McKinney | No |
| D. Smith | Betsy McKinney | No |
| J. Smith | No Response | |
| Haley | No Response | |
| Bean | No Response | |
| Martin III | No Response | |
| Mills, Jr. | No Response | |

*s/ Bruce McMullen*
Bruce McMullen

## CERTIFICATE OF SERVICE

    I, Bruce McMullen, hereby certify that on December 15, 2025, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, and that upon filing, such system will serve a copy of the foregoing upon all counsel of record in this action.

*s/ Bruce McMullen*
Bruce McMullen
