# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| SYMARA A.C. YOUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF MEMPHIS, MEMPHIS POLICE | ) | |
| DEPARTMENT, ONTARIAN MALONE, | ) | |
| MARQUAVIUS WILLIAMS, and | ) | |
| MARTERRION BRISCO, | ) | |
| | ) | No. 2:25-cv-2799-SHL-atc |
| Defendants. | ) | No. 2:25-cv-2800-SHL-atc |
| | ) | JURY DEMANDED |
| SHONDA R. WHITE, INDIVIDUALLY | ) | |
| AND AS MOTHER AND NEXT FRIEND | ) | |
| OF LASUNDRA JOSEPHINE WHITE, A | ) | |
| MINOR and JASMINE KINDS, | ) | |
| DECEASED MINOR, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF MEMPHIS, TENNESSEE, | ) | |
| MEMPHIS POLICE DEPARTMENT, | ) | |
| ONTARIAN MALONE, MARQUAVIUS | ) | |
| WILLIAMS, MARTERRION BRISCO, and | ) | |
| XAVIER HUNT, | ) | |
| | ) | |
| Defendants. | ) | |

**CITY OF MEMPHIS'S RESPONSE TO PLAINTIFF'S NOTICE OF INADVERTENT
RECORDING OF JANUARY 12, 2026 HEARING**

The City of Memphis (the "City") hereby files this Response to Plaintiff's Notice of

Inadvertent Recording for January 12 Hearing (the "Notice") (ECF No. 69.)

1

Case 2:23-cv-02224-SHL-atc    Document 541-2    Filed 01/14/26    Page 3 of 42
PageID 8383
Case 2:25-cv-02799-SHL-atc    Document 71    Filed 01/13/26    Page 2 of 10
PageID 482

Plaintiff's Notice confirms what counsel for the City has long suspected: Plaintiff White's counsel, attorneys from Romanucci & Blandin, LLC and from Mendelson Law Firm (collectively referred to as, "Plaintiff's attorneys" or "Plaintiff's counsel") have been using an AI tool to transcribe and record meet-and-confers, depositions, and now, they used AI to record a court hearing. This conduct has occurred in the instant matter and in the *Wells v. City of Memphis* litigation, Case No. 2:23-cv-02224 (W.D. Tenn.).

In the Notice, Plaintiff's counsel claims that this was an innocent, inadvertent mistake, but that is simply contrary to logic. (ECF No. 69.) All three attorneys for the City received the Read AI email with the recap of the January 12 status conference at 11:43 am. (*See* Exhibit A, Read AI Email received by Mr. McMullen.) Plaintiff's counsel did not acknowledge the AI recording until the City's counsel confronted Plaintiff's counsel in an email sent yesterday, January 12, 2026 at 4:58 pm. (Exhibit B, January 12, 2025 Email "Concerns Regarding Improper Recording".) Clearly, Plaintiff's counsel knew about the recording hours before when the initial Read AI email was sent, but they did not realize that Read AI sent the notification to all participants from the hearing. It is the City's understanding that Read AI permits a user to choose to whom these notifications are sent, and in this instance, Plaintiff's attorney simply failed to exclude all participants. Consequently, Plaintiff's counsel's ongoing practice of secretly recording meet and confers, depositions, and court hearings has been confirmed.

I.    **Plaintiff's Counsel Has Recorded Meetings Between Counsel in the *Wells v. City of Memphis* Case.**

For at least a year, the City has suspected—and Plaintiff's counsel has acknowledged—that Plaintiff's counsel has recorded the discovery meet and confers between Plaintiff's counsel and City's counsel in the *Wells v. City of Memphis* litigation. To be clear, the City has repeatedly objected to the recording of the meet and confers.

2

On April 7, 2025, Plaintiff's attorney Stephen Weil admitted that Plaintiff's counsel had recorded a previous meet and confer. (Exhibit C, April 7, 2025 Email "RE: Subpoena and Notice of Deposition for Rodney Wells - Wells v. City of Memphis, et al., Case No. 2:23-cv-02224" ("We recorded you saying essentially the same thing on our 4/4 call, an in my 4/5 email I said that you were uncertain whether complaints that get off the ground are connected with officer IBM numbers. Now you say I'm mischaracterizing something—but what is it?") (emphasis added)).

After the City's counsel confronted Mr. Weil about his recording—which he denied—and advised that recording without both parties' consent is illegal in Illinois, [1] however, the City began to pay close attention to the fact that Plaintiff would often quickly circulate transcription-level notes after the meet and confers, when it was clear from the video conferences that no one from Plaintiff's counsel team was taking such detailed notes. For example, on August 15, 2025, the parties met via videoconference at 1:00 pm. The only attorney on the call representing Plaintiff was Josh Levin. During the meeting, Mr. Levin was engaged in the discussion, not taking detailed notes. However, just a few hours later, Mr. Levin sent an incredibly thorough recap of the meeting—even more thorough than the City's dedicated notetakers present on the call. (Exhibit D, August 15, 2025 Email "Wells v. City of Memphis et al. - August 15, 2025 Meet and Confer".)

In October 2025, having grave concerns about Plaintiff's use of AI to secretly record and/or transcribe these meetings, the City's counsel raised the issue of whether Plaintiff's counsel was using an AI tool to record and transcribe the meet and confers. Plaintiff's counsel

---

[1] The Romanucci & Blandin firm is located in Chicago, Illinois. Upon information and belief, these attorneys for Plaintiff have participated in all relevant videoconferences while located in Illinois.

vehemently denied using an AI tool to record and transcribe the meetings. The City has since raised this issue with Plaintiff's counsel at the beginning of every meet and confer since October 2025—expressly noting the City's objection to any recording—and Plaintiff's counsel has denied using any recording or transcription tools every time.

The City has also reminded Plaintiff's counsel that because they do not have permission to record conversations with City's counsel, doing so would violate Illinois law. This is so because Illinois, unlike Tennessee, <u>is a two-party consent state</u>, <u>meaning all parties must consent to the recording of a conversation</u>. 720 Ill. Comp. Stat. Ann. 5/14-2. Moreover, recording meetings between attorneys without both parties' consent is widely understood to run afoul of the Tennessee Rules of Professional Conduct, as it is considered an effort to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Tenn. Rules of Prof'l Conduct 8.4(c).

After the City raised the issue of the illegality of Plaintiff's counsel's recording under Illinois law, Mr. Mendelson, a Tennessee lawyer, started to attend **every** meet and confer and **every** Zoom or Teams meeting, deposition, and hearing. In one virtual meeting, the City again raised the objection to the Plaintiff's use of an AI tool to record the meeting, and Mr. Mendelson laughed and stated that Tennessee is a one-party state. While the City does not know why, after minimal participation for almost three years, Mr. Mendelson decided to suddenly participate in <u>all</u> videoconferences in the case, query whether he was dispatched to "record" from the state of Tennessee, in an attempt not to run afoul of Illinois law. Even still, it cannot be emphasized enough that recording meetings between attorneys without both parties' consent is contrary to the Tennessee Rules of Professional Conduct.

**II.    Plaintiff's Counsel Attempted to Record a Deposition in the *Wells v. City of Memphis* Case using Read AI.**

The City's suspicions about Plaintiff's counsel's use of an AI tool were unequivocally confirmed on December 18, 2025, during the deposition of Col. Eddie Bass (Ret.), which was noticed by Plaintiff and took place on Zoom. At the outset of the deposition, a Zoom participant appeared in the deposition named "Read AI."  In the chat, Zoom notified the participants that "David" had added Read AI to the meeting. Plaintiff's attorney David Mendelson was present on Zoom, and he was the only participant named "David." Counsel for the City demanded whoever was using Read AI to exit the Zoom. The user named Read AI would not exit. Eventually, the videographer, who was the host of the Zoom, had to manually remove Read AI from the virtual deposition. Counsel for the City confronted Mr. Mendelson about the chat notification that it was "David" who added Read AI to the Zoom, and Mr. Mendelson denied having any knowledge of Read AI.

This is important because Mr. Mendelson has once again used Read AI, but this time he has denied knowing anything about Read AI. That is demonstrably false. Incredibly, Plaintiff's Notice does not mention the circumstances of the Zoom deposition of Col. Bass where Mr. Mendelson attempted to use Read AI to record and transcribe the depositions. Plaintiff's Notice also alleges that Read AI is a feature of Microsoft Teams, but Read AI was deployed by "David" ***on Zoom***—***not Teams***—during the Col. Bass deposition. Nevertheless, at a minimum, Mr. Mendelson was on notice of this issue no later than December 18, 2025.

**III.    Plaintiff's Counsel Recorded the January 12, 2026 Status Conference in the *Young* and *White* Consolidated Case Using Read AI.**

On January 12, 2025, Plaintiff's counsel once again deployed its AI tool, and once again denied knowing anything about it. (*See* ECF No. 69, at ¶¶ 1, 2.) The City learned of Plaintiff's counsel's use of AI when the City's attorneys received an email from "David Mendelson via

Read AI," which included a preview of the "Meeting Report" of the status conference in *Young*
and *White* that was generated by an AI tool used by David Mendelson called Read AI. (*See*
Exhibit A.) Specifically, the email states: "You've been invited to view this report because David
Mendelson added Read to the meeting and wanted to share the recap with you." (Exhibit A.)

Following receipt of this email, the City emailed the parties in this case and in the *Wells*
litigation notifying counsel of its receipt of Mr. Mendelson's improper AI "Meeting Report" and
asking for an explanation. Shortly after, Mr. Mendelson offered to speak to counsel for City.
That call occurred on January 12 around 5:30 pm. During that call, Mr. Mendelson again denied
knowing anything about Read AI. The City's counsel confronted him with the presence of Read
AI before the Col. Bass deposition, and again he denied knowing anything about it. But that is
not true, and Plaintiff's Notice confirms this.

In Plaintiff's Notice, Mr. Mendelson does not deny knowing anything about Read AI.
Instead, he alleges that "***he did not know that the Read AI feature was activated during the***
***hearing***[*.*]" (ECF No. 69, ¶ 1.) Mr. Mendelson further claims in the Notice that he understands
that Read AI is "an artificial intelligence (AI) feature of Microsoft Teams . . . and that he did not
intentionally activate it." (*Id.* at PageID 477.) These statements are in direct contravention to the
conversation he had with the City's counsel just hours before during which Mr. Mendelson
claimed ***total ignorance*** about Read AI.

In short, Plaintiff's Notice is misleading at best, and, at worst, demonstrably false.

**IV.    Plaintiff's Counsel Intentionally Did Not Disclose That Read AI Had Recorded the
Status Conference.**

If City's counsel had not received Mr. Mendelson's Read AI "Meeting Report" (which
obviously was sent to all participants in the January 12 hearing by mistake), and if City's counsel
had not confronted Plaintiff's counsel with their error, Plaintiff's counsel would never have

disclosed this secret recording to the Court. All Plaintiff's attorneys received the "Meeting

Report" just as the City's counsel did. However, this did not raise any concern for Plaintiff's

counsel—and certainly did not provoke immediate action—because receiving these "Meeting

Reports" are normal course for Plaintiff's counsel. This time, however, they did not realize that

Mr. Mendelson had not opted out of sending the notification to <u>all participants</u> from the virtual

status conference. This is supported by the fact that not one of Plaintiff's attorneys

acknowledged receipt of, or raised concerns about, the "Meeting Report" that clearly indicates a

***court proceeding*** was recorded via an AI tool.

**V.    Plaintiff's Counsel's Conduct Raises Serious Legal and Ethical Concerns.**

There are multiple problems with Plaintiff's counsel's secret use of an AI tool to record

conversations, meet and confers, depositions, and court proceedings. The use of Read AI to

record a proceeding in this Court a violation of Local Rule 83.2(a)(1), which states:

> The taking of photographs or the recording of transmission of Court
> proceedings, whether in person or conducted virtually through an online
> platform, or the airing of radio, television or internet broadcasts by non-
> Court personnel from the floors of the Courthouse occupied by the Courts
> during the progress of or in connection with judicial proceedings or grand
> jury proceedings, including proceedings before a Magistrate Judge, whether
> or not Court is actually in session, are prohibited. In addition, the airing of
> radio, television, or internet broadcasts by non-Court personnel of any
> proceedings being conducted virtually through an online platform are also
> prohibited.

L.R. 83.2(a)(1).

Moreover, Plaintiff's counsel has violated Rule 8.4(c) of the Tennessee Rules of

Professional Conduct by "engag[ing] in conduct involving dishonesty, fraud, deceit, or

misrepresentation."

An even larger issue, however, is that Plaintiff's counsel's use of Read AI has put untold

amounts of confidential information into the AI "ether" with no protections on its use and

without the City's (or the Court's) permission. First, as mentioned above, Read AI is not a

"feature of Teams" as Mr. Mendelson states, but rather a third-party add-in that is available at

varying levels of integration and cost. *See* Read AI Pricing Webpage, https://www.read.ai/plans-

pricing (last visited Jan. 13, 2026). To be clear, Read AI is not a simple voice-to-text

transcription service, but rather *generative* AI.

According to its website, Read AI captures "User Content" (i.e., everything that is said or

shared during the meeting, deposition, or hearing) and uses the information however Read AI

sees fit. The Terms and Conditions make this crystal clear:

> **Use of User Content.** In order to provide the Services to you, we need
> certain rights to access, analyze, and use your User Content. For this
> purpose, you grant Read AI a nonexclusive, royalty-free, worldwide, fully
> paid, and sublicensable (through multiple tiers) license to use, reproduce,
> and analyze your User Content only for purposes of creating, providing, and
> improving our Services, without compensation to you or any third party.
> When you post or otherwise share User Content on or through our Services,
> you understand and agree that your User Content and any associated
> information (such as your username or profile photo) may be visible to
> others. You hereby irrevocably waive any "moral rights" or other rights
> with respect to attribution of authorship or integrity of materials regarding
> User Content that you may have under any applicable law or under any legal
> theory.

Read AI Terms of Service, at 3(b), https://www.read.ai/termsofservice (last updated
Mar. 26, 2024).

In short, there is no way to know who now has access to the information Plaintiff's

counsel has allowed to be used by a third-party AI software, over the City's express objections

and in contravention to law and this Court's rules. And there is no way to know how AI is

manipulating and using this information. Further, it is ironic that the same attorneys have sought

to seal from the public docket mass amounts of information in the *Wells* case on the basis that the

information should be kept confidential.

Plaintiff's Notice does not remedy the issue, and Plaintiff's counsel must acknowledge and atone for their continued misrepresentation regarding the recording of meetings, meet and confers, hearings, and depositions, and its misconduct with regard to the false disclosure to the Court.

## CONCLUSION

Plaintiff's counsel repeatedly flouts this Court's rules with impunity, and it must stop. The City, therefore, asks the Court to exercise its inherent authority to address Plaintiff's attorneys' behavior, particularly the attorneys admitted to this Court on a pro hac vice basis. Further, the City requests that the Court order Plaintiff to preserve all unauthorized recordings and any information given to or generated from an AI tool related to the *Wells*, *Young*, and *White* cases. Finally, the City respectfully requests the Court set a hearing to address this issue.

Dated: January 13, 2026

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, P.C.**

*s/ Bruce McMullen*
Bruce McMullen (#18126)
Jennie Vee Silk (#35319)
William G. Stevens (#42333)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone (901) 526-2000
E-mail: bmcmullen@bakerdonelson.com
E-mail:  jsilk@bakerdonelson.com
E-mail: wstevens@bakerdonelson.com
*Attorneys for Defendant City of Memphis*

9

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2026, a copy of the foregoing was served upon all counsel of record via the Court's e-filing system.

*s/ Bruce McMullen*
Bruce A. McMullen

# EXHIBIT A

**From:** David Mendelson via Read AI
**To:** McMullen, Bruce
**Subject:** 25-2799-SHL - Symara AC Young & Shonda R. White v. City of Memphis, et al. - Status Conference - Chief US District Judge Sheryl H. Lipman on January 12, 2026 | Read Meeting Report
**Date:** Monday, January 12, 2026 11:42:56 AM



You've been invited to view this report because David Mendelson added Read to the meeting and wanted to share the recap with you.

# 25-2799-SHL - Symara AC Young & Shonda R. White v. City of Memphis, et al. - Status Conference - Chief US District Judge Sheryl H. Lipman

### January 12, 2026

The status conference addressed the ongoing litigation in the cases of Young and White against the City of Memphis. Chief Judge Sheryl Lipman confirmed the attendance of all attorneys involved, including Matthew Pryor for Ms. Young and Henry Miller IV and Joshua Levin for Ms. White. The discussion included a... see more

**Access this meeting report**

Account creation required. This is your personal link, please do not forward this email to others.

## Recap

## Chapters & Topics

• Discovery Schedule and Deadlines Discussion

See all 8 chapters →

## Action Items

• Matthew Pryor will ensure that the service issue for Officer Malone in the White case is addressed promptly.

• Joshua Levin will prepare a written motion regarding the service of the defendants in the White case.

See all 5 action items →

## Key Questions

• What is the status of the service of Officer Malone in the Young case?

• What is the status of the service of Officer Malone in the White case?

See all 5 key questions →

[ Review notes ]



## Work smarter, not harder

Read makes meetings more effective and efficient with meeting recaps, transcripts, playback, personalized coaching, meeting recommendations, and more.

Get started for free →

Need help? Visit the Support Center or contact us.

Unsubscribe • Email Preferences

Team at Read AI • 999 3rd Ave, Suite 3300, Seattle, WA 98104

# EXHIBIT B

| From: | David Mendelson |
|---|---|
| To: | McMullen, Bruce; aromanucci_r_la_.net; _roo_e__encrump.com; JLevin_r_la_.net; sraisch_r_la_.net; s_eil_r_la_.net; c_ohnson_r_la_.net; D_ondos_r_la_.net; h_ard_r_la_.net; d_elly_r_la_.net; _atalie__encrump.com; Ben_amin Wachtel; _en__encrump.com; JLevin_r_la_.net |
| c: | Morris, Angela; Sil_, Jennie; Stevens, Will; Mc_inney, _elsey; _hompson, _heresa; Morris, Angela; stengel12260_m_spc.com; mcollins_gml_la_.com; mlf_arren__ellsouth.net; mlfmichael__ellsouth.net; miller_an_ruptcy_gmail.com; _sullivan_asilpc.com; M_ryor_asilpc.com; c_ohnson__ohnsonand ohnsonattys.com; _ran_hacher_memphistn.gov; Mistie__ummachla_.com; tnorman_gml_la_.com; lgross_perrygriffin.com; ge_perrygriffin.com; C_rice__La_group.com; dgod_in_gml_la_.com; _p_perrygriffin.com; _mc_inney_gml_la_.com; _eenandl_aol.com; martin__ummachla_.com; stephenleffler_yahoo.com; f_ohnson__ohnsonand ohnsonattys.com |
| Subject: | R_: Concerns Regarding Improper Recording |
| Date: | _uesday, January 1_, 2026 9:0_:5_ AM |
| _ttac_me_t_: | image001.png; _otice of Inadvertent Recording.pdf |

Counsel,

I apologize for inadvertently recording the hearing yesterday in the White/Young case. Please find attached the notice that I filed last night in the White/Young case.

Thank you,

David

David L. Mendelson



www.Mendelsonfirm.com

Physical Address: 799 Estate Place | Memphis, Tennessee 38120
Mailing Address: Post Office Box 17235 | Memphis, Tennessee 38187
Toll Free Telephone: 866-997-6325
Telephone: 901-763-2500 ext. 103 | Facsimile: 901-763-2525

You may opt out of receiving further email communications from Mendelson Law Firm to this email address by replying with an email message that has the word "STOP" in the subject line.

This communication is an attempt to collect a debt by a debt collector and any information obtained will be used for that purpose. .

NOTICE: The information contained in this electronic mail transmission ("e-mail") is intended by Mendelson Law Firm  for the use of the named individual or entity to which it is directed and may contain information that is privileged or otherwise confidential.  It is not intended for transmission to, or receipt by, anyone other than the named addressee (or a

*person authorized to deliver it to the named addressee). It should not be copied or forwarded to any unauthorized persons. If you have received this e-mail in error, please delete it from your system without copying or forwarding it, and notify the sender of the error by reply e-mail or by calling Mendelson Law Firm at (901) 763-2500 so that our address record can be corrected.*

*IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.*

---

**From:** McMullen, Bruce <bmcmullen@bakerdonelson.com>
**Sent:** Monday, January 12, 2026 4:29 PM
**To:** aromanucci@rblaw.net; brooke@bencrump.com; JLevin@rblaw.net; sraisch@rblaw.net; David Mendelson <dm@mendelsonfirm.com>; sweil@rblaw.net; cjohnson@rblaw.net; DKondos@rblaw.net; hward@rblaw.net; dkelly@rblaw.net; Natalie@bencrump.com; Benjamin Wachtel <bw@mendelsonfirm.com>; ben@bencrump.com; JLevin@rblaw.net
**Cc:** Morris, Angela <amorris@bakerdonelson.com>; McMullen, Bruce <bmcmullen@bakerdonelson.com>; Silk, Jennie <jsilk@bakerdonelson.com>; Stevens, Will <wstevens@bakerdonelson.com>; McKinney, Kelsey <kmckinney@bakerdonelson.com>; Thompson, Theresa <tthompson@bakerdonelson.com>; Morris, Angela <amorris@bakerdonelson.com>; stengel12260@mjspc.com; mcollins@gmlblaw.com; mlfwarren@bellsouth.net; mlfmichael@bellsouth.net; millerbankruptcy@gmail.com; jsullivan@asilpc.com; MPryor@asilpc.com; cjohnson@johnsonandjohnsonattys.com; Frank.Thacher@memphistn.gov; Mistie@zummachlaw.com; tnorman@gmlblaw.com; lgross@perrygriffin.com; ge@perrygriffin.com; CGrice@EFLawgroup.com; dgodwin@gmlblaw.com; jkp@perrygriffin.com; bmckinney@gmlblaw.com; keenandl@aol.com; martin@zummachlaw.com; stephenrleffler@yahoo.com; fjohnson@johnsonandjohnsonattys.com
**Subject:** Concerns Regarding Improper Recording

Counsel for Plaintiffs,

This correspondence is relevant to both the *Young* and *White* consolidated case and the *Wells* case. As such, I have copied all counsel of record for both cases here.

We received the attached summary of today's status conference in *Young* and *White* that was evidently generated by an AI tool used by David Mendelson called Read AI. (*See* attachment 1.) As you are well aware, we have repeatedly asked if you have been recording our meet and confers or using an AI tool to transcribe and summarize our meet and confers in the *Wells* case. At every turn, you have denied that you are recording the meetings, and you have denied using an AI tool to transcribe and summarize the meetings.

Then, during the Col. Eddie Bass (Ret.) deposition on December 18, a Zoom participant appeared in the deposition named "Read AI."  In the chat, it said something to the effect of "David has added Read AI to the Zoom." As I am sure you recall, we refused to go forward with the deposition until "Read AI" was removed from the deposition. Again, you denied using Read AI.

And then today we received the attached that appears to confirm that you are, in fact, using Read AI to transcribe and summarize conferences (and now court hearings), without having our permission to do so. Moreover, your transcription of today's status conference is a blatant violation of Local Rule 83.2(a)(1), which prohibits "[t]he taking of photographs or the recording of transmission of Court proceedings, whether in person or conducted virtually through an online platform, or the airing of radio, television or internet broadcasts by non-Court personnel from the floors of the Courthouse occupied by the Courts during the progress of or in connection with judicial proceedings or grand jury proceedings, including proceedings before a Magistrate Judge, whether or not Court is actually in session, are prohibited. In addition, the airing of radio, television, or internet broadcasts by non-Court personnel of any proceedings being conducted virtually through an online platform are also prohibited."

There are multiple problems with your use of Read AI in our conferences. First, as you know, Illinois is a two-party consent state, and you cannot legally record us without our permission. We have told you numerous times that you did not have our permission to record us. If you have been recording our meetings, it appears you have violated Illinois law (notwithstanding the fact that your Tennessee counsel may have been the one recording, everyone from Plaintiff's team present on the call would have been complicit.) Moreover, you have violated Rule 8.4(c) of the Tennessee Professional Rules of Conduct by "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation."

An even larger issue, however, is that your use of Read AI has put untold amounts of confidential information into the cloud with no protections on its use and without our (and the Court's) permission. (*See* attachment 2, Email dated April 7, 2025 where we outlined this issue to you.) There is no way to know who in the ether now has access to the information you have allowed to be used by a third-party AI software, over our express objections.

**We demand to know when you started using Read AI or other AI tools to record and/or transcribe the meet-and-confers, depositions, and court hearings in your Tennessee cases. We further demand that you preserve every prompt, document, summary, transcription, and anything else created by Read AI in the *Young*, *White*, or *Wells* cases, which will be subject to discovery requests in short order. <u>We are</u>**

**available for a phone call today at 5:30 pm CST to meet-and-confer on this issue.
Regardless, we are duty bound to notify the Court that you apparently used an AI
tool to transcribe at least today's hearing in the *Young* & *White* case in violation of
the Local Rules.**

**Bruce A. McMullen**
Office Managing Shareholder

Baker, Donelson, Bearman, Caldwell & Berkowitz
First Horizon Building
165 Madison Avenue - Suite 2000
Memphis, TN 38103
Direct Dial:  901.577.2356
Direct Fax:  901.577.4262
Email: bmcmullen@bakerdonelson.com

Firm Website: www.bakerdonelson.com
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
represents clients across the U.S. and abroad from offices
in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi,
South Carolina, Tennessee, Texas, Virginia and Washington, D.C.

NOTICE: This electronic mail transmission with any attachments may constitute an attorney-
client communication, protected health information (PHI) or other confidential information that
is in fact confidential, legally protected from disclosure and/or protected by the attorney-client
privilege. If you are the intended recipient, please maintain confidentiality and be aware that
forwarding this e-mail to others may result in a waiver of these protections and privileges and
regardless electronic communications may be at times illegally accessed and viewed. If you
are not the intended recipient, this e-mail is not intended for transmission to you, nor to be
read, reviewed, used, distributed or even received by you or any other unauthorized persons. If
you have received this electronic mail transmission in error, please double delete it from your
system immediately without copying, reading or disseminating it, and notify the sender by reply
e-mail, so that our address record can be corrected. Thank you very much.

# EXHIBIT C

**From:**        Stephen Weil
**To:**          McMullen, Bruce   Mc inney,  elsey   sraisch  r  la .net   aromanucci  r  la .net   roo e   encrump.com   JLevin  r  la .net
                 dm  mendelsonfirm.com   f ohnson  ohnsonand ohnsonattys.com   stephenrleffler  yahoo.com   martin  spar man- ummach.com
                 eenandl  aol.com   p  perrygriffin.com   dgod  in  gml la .com   mc inney  gml la .com   domemphisla   darrelloneal.com
                 support  smittic la .com   rspence  spencepartnersla .com   spence  spencepartnersla .com   AJohnson  r  la .net
                 corice  efla group.com   oe  perrygriffin.com   laross  perrygriffin.com   mccollins  gml la .com   tnorman  gml la .com
                 D ondos  r  la .net   Mistie  spar man- ummach.com   c ohnson  r  la .net
**c:**           hompson,  heresa   Morris, Angela   Sil , Jennie   Reagan, Ian
**Subject:**     Su poena and  otice of Deposition for Rodney Wells - Wells v. City of Memphis, et al., Case  o. 2:2 -cv-02224
**Date:**        Monday, April 7, 2025 5:47:55  M
**ttac me t :**  image001.png
                 image002.png
                 image00 .png
                 image004.png
                 image005.png
                 image006.png

Bruce I was referring to our taking notes on what was said during the call.

Please do let us know about conferring with the database consultant we have proposed.

- teve

## Stephen H. Weil
**Senior Attorney**



**www.rblaw.net**

**e:** sweil@rblaw.net
**p:** (312) 253-8592
**f:** (312) 458-1004
**a:** 321 N Clark St, Ste
900, Chicago, IL 60654



 **Go Green - Please don't print this e-mail unnecessarily.**

**Confidentiality Statement.**

**From:**

**Sent:**

**To:**

**Cc:**

**Subject:**

teve,

It appears from your email below (note the highlighted red portion) you have recorded the 4/4 call without the consent of my team. Isn t Illinois a two-party consent state  Weren't you in Illinois during the call   If you were and if your email is accurate (which I doubt), wouldn't your actions be illegal   Who else participated in the recording

**Bruce A. McMullen**

hareholder
Direct Dial:  01.577.235

| | |
|---|---|
| **From:** | |
| **Sent:** | |
| **To:** | |

| **Cc:** | |

| **Subject:** | |

   elsey,

Your repeated claim that we are mischaracterizing what happened during our calls is incorrect.  We are not. Indeed the reason we write follow-up emails is to ensure both sides are in agreement about what understandings the parties reached with each other.  We are engaged in this meet and confer process precisely so we can come to a common understanding of each side's positions (even if we don't end up agreeing).

**RFP 133**.

*Gathering videos*. If we understand you correctly, the City is now saying that it will not even begin to *gather* videos from the 880 incidents unless we agree not to even investigate the possibility of bulk
   ueries.  That generates needless delay.  This discovery was due months ago.  We ask that you begin gathering the videos so that they can be produced promptly after we have agreement or the Court orders it.

*Bulk-query / technical consult*.  To explore the possibility of a bulk    L uery, we offered to have

an eDiscovery consultant, Tom Matzen, speak with City IT folks about performing bulk   ueries.  You apparently looked up information about Mr. Matzen online and did not see his   ualifications regarding

L    so you have refused any form of technical consultation.  That objection is transparently pretextual:  we have engaged Mr. Matzen as our technical consultant  if he is not   ualified on the topic (he is), then the loss is ours, not yours.  All the same, to address this objection we propose to use **Charles Platt** as a technical consultant to confer with the City's IT personnel regarding bulk

L searches.  Mr. Platt's C   is attached.  **Please advise by 12:00 Tuesday whether you will agree to a conversation between Mr. Platt and the City's IT personnel.**

**RTRs** and **RFP 139-141**.  It sounds as though we're on the same page for these.

**Complaints against officers.**  You say we're mischaracterizing something here.  I'm not sure what.  In my 3/2   email, we recounted Jennie's statement that complaints against officers that are deemed not meritorious do not appear in the officer's personnel file.  On 3/31 Bruce responded, "We stated that if a complaint is not deemed meritorious, it <u>may</u> not appear in the officer's personnel file, but this is not an absolute rule."  (emphasis original).  <span style="color:red">We recorded you saying essentially the same thing on our 4/4 call,</span> an in my 4/5 email I said that you were uncertain whether complaints that get off the ground are connected with officer IBM numbers.  Now you say I'm mischaracterizing something

but what is it   Perhaps we mixed up officer personnel files and IBM numbers   If we did get something wrong, I would like to understand how what you wrote yesterday comports with Bruce's 3/31 email.

**RFP 134-136**.  Your tone here is lamentable, and wrong.  Our point is that confining your search for responsive documents to a strict word search of emails does not fulfill the City's obligation to respond to this discovery, for the reasons I explained.   As for word searches into the City's network files, we would like to get an agreement on what repositories will be searched.  You are correct that we said we'd have search terms by Friday  it is taking some additional time but we expect to have them today.

**Production deadlines**.  We are willing to work with you on deadlines but we do need them, and Rule 34(b)(2)(B) re   uires you to provide them.  Thus we ask you to propose a production schedule.

Best regards,

teve



**Stephen H. Weil**
Senior Attorney



**www.rblaw.net**

**e:** sweil@rblaw.net
**p:** (312) 253-8592
**f:** (312) 458-1004
**a:** 321 N Clark St., Ste 900, Chicago, IL 60654

**Go Green - Please don't print this e-mail unnecessarily.**

Confidentiality Statement.

**From:**
**Sent:**
**To:**

**Cc:**

**Subject:**

*actually*

*just last week*

**RFP 133.**

*Bulk SQL queries*

**You committed to providing us with an answer to this request by Monday.**

*User-interface queries*

**Please let us know by Monday.**

*Database fields*

**Please let us know by Monday.**

*Unique incident IDs.*

**You agreed to check and let us know.**

*Databases in question*

**RTRs.**

**RFPs 139-141.**

**Complaints against officers**

**RFP 134-136**

you agreed to consider our position about the need to conduct non-search-term-based searching, as described above, to locate documents responsive to RFPs 134-136, and to get back to us.

Please advise whether you agree to search office files

**on Friday**

**Production Deadlines.**

**RFP 125  RFP 129-131  RFP 137.**

___

**Kelsey W. McKinney** (she/her/hers)
Associate
Direct:  901.577.8204
Email:  kmckinney@bakerdonelson.com

---

**From:**          _____
**Sent:**
**To:**            _____        _____
                   _____        _____
                   _____        _____  _____
                   _____  _____  _____
                   _____  _____  _____
                   _____  _____  _____
                   _____    _____  _____
                   _____  _____  _____
                   _____  _____

**Cc:**            _____
                   _____        _____
                   _____

**Subject:**

**RFP 133.**

                                        _____
                   _____

*The Evidence.com videos*

_____

*Bulk SQL queries*

                              **You committed to providing us with an answer to this request by**
**Monday.**

*User-interface queries*

**Please let us know by Monday.**

*Database fields*

_____

**Please let us know by Monday.**

*Unique incident IDs.*

_____

**You agreed to check and let us know.**

*Databases in question*

_____

_____

**RTRs.**

**RFPs 139-141.**

**Complaints against officers**

**RFP 134-136**

you agreed to consider our position about the need to conduct non-search-term-based searching, as described above, to locate documents responsive to RFPs 134-136, and to get back to us.

Please advise whether you agree to search office files

Production Deadlines.

RFP 125  RFP 129-131  RFP 137.

**Stephen H. Weil**
Senior Attorney



**e:** sweil@rblaw.net
**p:** (312) 253-8592
**f:** (312) 458-1004
**a:** 321 N Clark St, Ste 900, Chicago, IL 60654

**www.rblaw.net**

*Go Green - Please don't print this e-mail unnecessarily.*

Confidentiality Statement.

From: _____
Sent:
To: _____

Cc:

Subject:

Counsel,

I am writing to follow up and memorialize our April 2, 2025 meet and confer regarding the City's subpoenas to Ms. Dixon, Mr. Dupree, and Mr. Wells.

E␣I/Phone Protocol

Plaintiff agreed with the City that the process for collection of E␣I/communications should be the same process for Plaintiff controlled witnesses and City controlled witnesses. Plaintiff stated that by removing Mr. Dupree from Plaintiff's Initial Disclosures, Plaintiff anticipates that this means Mr. Dupree will not be subject to any E␣I protocol. The City expressly reserved the right to depose Mr. Dupree and have his phone and/or electronics subject to whatever E␣I protocol is eventually in place, regardless of Plaintiff's amended disclosures. The City stated that the same protocol that applies to City controlled witnesses should apply to Mr. Dupree.

There was disagreement as to which custodians should be subject to any potential E I protocol. This may re uire further communication between the parties. That said, as a general proposition, the parties agree that any E I data collection protocol should apply to both City and Plaintiff controlled witnesses.

The parties discussed self-collection for data responsive to Ms. Dixon's subpoena since her deposition is scheduled for April 7, 2025. Plaintiff advised they would get back to the City on self-collection by the morning of April 3, 2025.

<u>Ms. Dixon Document Re uests</u>

Re uest No. 1: The parties agreed to limit the temporal scope to Jan. 1, 2022 to January 7, 2023. The parties discussed subject matter limitations on the re uest. The parties agreed that Plaintiff should provide the City with the volume of responsive communications. Based on that volume (or lack thereof) the parties could then discuss the possibility of narrowing the subject matter. Plaintiff said they would speak to their client and give the City a date certain for providing the information regarding volume by EOD April 3, 2025.

Re uest No. 2: The parties discussed the relevance of the sought communications. Plaintiff agreed that responsive communications about Mr. Nichols' relationship with the minor child, the oFundMe, and the domestic abuse are relevant. Plaintiff stated they would notify the City whether they are standing on their objections in light of this discussion by EOD April 3, 2025.

Re uest No. 3 and 4: The City agreed to strike the "related to Mr. Nichols" language from this re uest in principle. Plaintiff stated they would speak with their client and report back to the City. No specific date was discussed, but the City re uests a follow-up from Plaintiff by EOD April 3, 2025.

Re uest No. 5: The City asked whether Romanucci   Blandin and/or Ben Crump Law represent Ms. Dixon for purposes of her deposition. Plaintiff advised that Romanucci Blandin represent Ms. Dixon for her deposition. Plaintiff then advised they would confirm whether Ben Crump Law represents Ms. Dixon. The City re uests that Plaintiff report back with this information by EOD April 3, 2025.  nless Ben Crump Law represents Ms. Dixon in any capacity, any communications with Ben Crump Law would not be privileged. The City also stated that  areem Ali is on the Board of the Tyre Nichols Foundation and his communications with Ms. Dixon in that role are not privileged.

Re uest No.  : The City stated it is willing to limit the temporal scope from Jan. 1, 201  to present. The City stated the first step for this re uest is for Plaintiff to talk to Ms. Dixon to get a sense of how many people and to whom Ms. Dixon communicated with regarding these topics. Plaintiff stated they would speak to their client. The City re uests that Plaintiff follow up by EOD April 3, 2025.

Re uest No. 7: The City pointed out that this re uest is not unlimited in temporal scope since the minor child was born in 2017. Plaintiff stated they would speak to their client regarding

this re uest and report back.  The City re uests that Plaintiff report back by EOD April 3, 2025.

Re uest No. 8: Plaintiff re uested a narrowed temporal scope.  The City did not agree to a temporal limitation.  Plaintiff said they would speak with their client regarding this re uest and report back.  The City re uests that Plaintiff report back by EOD April 3, 2025.

<u>Mr. Dupree/Mr. Wells Document Re uests</u>

The parties did not discuss each specific re uest, but the City said it would be willing to make similar limitations as those it is willing to make for the Ms. Dixon subpoena where applicable.  The City noted many of the re uests are similar.  For example, the City is willing to limit the temporal scope for the Mr. Dupree subpoena Re uest No. 1 to Jan. 1, 2022 to Jan. 7, 2023, as it was willing to do for Re uest No. 1 in the Ms. Dixon subpoena.

Further discussion may be re uired.

<u>Consultation on Third Inspection of Car Contents</u>

The City has arranged to be present for the third inspection of the remaining contents of Mr. Nichols' car tomorrow.  The City's photographer and videographer will also attend the third inspection.   hould Mr. Levin's flight get cancelled due to inclement weather, the City is willing to arrange an alternative date for the inspection.

The City reminded Plaintiff's counsel of Ms. Wells' obligation to preserve any relevant materials, including the contents of the car.  Conse uently, the City advised that if the remaining contents of the car were not produced *in toto* at the third inspection, the City would be filing a Motion to Compel and Motion for   poilation and   anctions.  Plaintiff objected to the City's potential motion.

Thanks,

**Jennie Vee Silk**
Phone  901.577.8212

From:    _____
Sent:
To:      _____        _____
                _____  _____
         _____  _____  _____
         _____  _____
         _____  _____  _____
         _____  _____
         _____  _____  _____
         _____  _____  _____
                _____
Cc:                  _____

_____        _____

**Subject:**


Jennie,

Let's plan to discuss our objections to the City's subpoenas duces tecum to Mr. Wells, Ms. Dixon, and Mr. Dupree at **10:30am CT tomorrow**. We will send a Teams invite. We are open to discussing and finding ways to narrow each of these subpoenas to an appropriate scope, just as we were able to do with the City's subpoena to Ms. Jackson. To make our conversation as productive as possible, please send search terms you would propose for these individuals, so that we have concrete proposals to consider and discuss. We can also be available to meet later this week to discuss proposed terms.

Our objections to Mr. Wells' subpoena duces tecum (which you served on March 2  ) are as follows:

The document re uests seek communications about personal and intimate family matters that are not relevant to any party's claim or defense. Additionally, the City's Re uests are overbroad, unduly burdensome, and not proportional to the needs of this case. Furthermore, in seeking private, irrelevant information, the City's re uests are calculated to harass, embarrass, or intimidate Mr. and Ms. Wells. Below, we have highlighted the key overbreadth, relevance, and privacy concerns in each of the City's re uests.

- Re uest No. 1: "Any and all communications" that Mr. Wells had *about anything* with his deceased stepson for *a year* before Mr. Nichols was killed.
- Re uest No. 2: "Any and all communications" that Mr. Wells had with "Ms. Jackson regarding Mr. Nichols, Mr. Nichols' minor child, the incident giving rise to this lawsuit, and/or this litigation" stretching back *over six years*.
- Re uest No. 3: "Any and all communications" that Mr. Wells has had with his wife related to Mr. Nichols minor child, Mr. Nichols' beating and death, "the  oFundMe," Mr. Nichols' move to Memphis, or this litigation *with no time limits*.
- Re uest No. 5-7: "Any and all communications" that Mr. Wells had "*with anyone regarding anything*" related to the administration of Mr. Nichols estate and/or this litigation, regarding Mr. Nichols's minor child, or about the minor child's mother, *with no time limits*.

We additionally object to Re uest No. 3 on the basis of spousal privilege, and Re uest No. 4 which seeks "any and all communications" that Mr. Wells has had with "Plaintiff's attorneys regarding anything related to Mr. Nichols, the administration of Mr. Nichol's estate, and/or this litigation" on the basis of attorney-client privilege.

Additionally, we propose the following alternate deposition dates for Mr. and Mrs. Wells in Memphis:
- Mr. Wells   May 12
- Mrs. Wells   May 13 or May 14 if April 14 is unavailable due to trial.

Thanks,

Sarah M. Raisch
Senior Attorney
**Romanucci & Blandin, LLC**
321 N. Clark Street, Suite 900
Chicago, Illinois 60654
Phone: 312-458-1000
Direct: 312-253-8802
Fax: (312) 458-1004
Email: sraisch@rblaw.net
http: www.rblaw.net



*Go Green - Please don't print this e-mail unnecessarily.*

**Confidentiality Statement.** The information contained in this electronic mail communication is intended only for the personal and confidential use of the designated recipient named above. This message may be an attorney-client communication, and as such is privileged and confidential. If the reader of this message is not the intended recipient, you are hereby notified that you have received this communication in error, and that any review, dissemination, distribution, or copying of the message is strictly prohibited. If you have received this transmission in error, please notify us immediately by telephone at 312.458.1000 and/or by reply e-mail.

**From:** ilk, Jennie  jsilk_bakerdonelson.com
**Date:** Monday, March 31, 2025 at  :44 PM
**To:**  arah Raisch  sraisch_rblaw.net , Reagan, Ian  ireagan_bakerdonelson.com ,
Antonio Romanucci  aromanucci_rblaw.net , brooke_bencrump.com
brooke_bencrump.com , Joshua Levin  JLevin_rblaw.net ,
dm_mendelsonfirm.com  dm_mendelsonfirm.com ,
fjohnson_johnsonandjohnsonattys.com  fjohnson_johnsonandjohnsonattys.com ,
stephenrleffler_yahoo.com  stephenrleffler_yahoo.com , martin_sparkman-
zummach.com  martin_sparkman-zummach.com , keenandl_aol.com
keenandl_aol.com , jkp_perrygriffin.com  jkp_perrygriffin.com ,
dgodwin_gmlblaw.com  dgodwin_gmlblaw.com , bmckinney_gmlblaw.com
bmckinney_gmlblaw.com , domemphislaw_darrelloneal.com
domemphislaw_darrelloneal.com , support_smitticklaw.com
support_smitticklaw.com , Robert  pence  rspence_spencepartnerslaw.com ,
jspence_spencepartnerslaw.com  jspence_spencepartnerslaw.com , Alexis
Johnson  AJohnson_rblaw.net , cgrice  cgrice_eflawgroup.com ,
ge_perrygriffin.com  ge_perrygriffin.com , lgross_perrygriffin.com
lgross_perrygriffin.com , mcollins_gmlblaw.com  mcollins_gmlblaw.com ,
 tephen Weil   Weil_rblaw.net , tnorman_gmlblaw.com
tnorman_gmlblaw.com , Dana  ondos  D_ondos_rblaw.net ,
Mistie_sparkman-zummach.com  Mistie_sparkman-zummach.com , Colton
Johnson Taylor  cjohnson_rblaw.net

**Cc:** McMullen, Bruce  bmcmullen  bakerdonelson.com  , Mc  inney,  elsey
 kmckinney  bakerdonelson.com  , Thompson, Theresa
 tthompson  bakerdonelson.com  , Morris, Angela  amorris  bakerdonelson.com
**Subject:** RE:  ubpoena and Notice of Deposition for Rodney Wells - Wells v. City of
Memphis, et al., Case No. 2:23-cv-02224

arah and Josh,

We never heard back from you on Plaintiff's specific objections to the document re  uests
to Mr. Wells, nor did you provide us any dates for his deposition. If you would like to discuss
this before we file the motion to compel, we are available between   :30 and 11:30 am
tomorrow.

We are also available for the deposition of Lengee Dupree on May 8.

Please advise.

**Jennie Vee Silk**
Phone  901.577.8212

**From:**
**Sent:**
**To:**

**Cc:**

**Subject:**

Hi  arah and Josh,

Based upon your broad objections, we intend to file a motion to compel to enforce
the subpoenas duces tecum of Dixon, Dupree, and Mr. Wells on Tuesday, April 1.

You have identified these people as persons who will give testimony in this case. pecifically, the Initial Disclosures provide that these witnesses have information relevant to Plaintiff's own claims and damages.

We are entitled to take discovery, including re uesting documents and communications, from these witnesses. Your objections to the document re uests *in toto* are improper.

We received your specific objections to the subpoenas of Dixon and Dupree (attached). Please provide your specific objections to the subpoena of Mr. Wells no later than COB Friday, March 28. If you believe there is any room for compromise with your objections to these subpoenas, we are available to discuss on Monday, March 31 in the afternoon. If you are standing on your objections to these subpoenas *in toto*, please let us know and will note your objection in the motion to compel.

Please also provide alternate dates for Mr. Wells' deposition and for Mr. Dupree's deposition by COB Friday, March 28.

**Jennie Vee Silk**
Phone  901.577.8212

**From:**
**Sent:**
**To:**

**Cc:**

**Subject:**

Hi Ian,

Yes, we will accept service of Mr. Wells' subpoena. However, we do not agree to the April 25, 2025 date as we have not yet had an opportunity to confer on availability for a mutually agreed upon date. We also object to the

subpoena duces tecum in its entirety. We will respond further with specific objections, and get back to you on available dates for Mr. Wells' deposition.

Thank you,
 arah Raisch

**Sarah M. Raisch**
*Senior Attorney*



**www.rblaw.net**

**e:** sraisch@rblaw.net
**m:** (651) 247-2988
**p:** (312) 253-8802
**f:** (312) 458-1004
**a:** 321 N Clark St, Ste 900, Chicago, IL 60654

   

🌲 *Go Green - Please don't print this e-mail unnecessarily.*

Confidentiality Statement.

---

**From:** _____
**Sent:** _____
**To:** _____
_____  _____
 _____  _____
_____  _____
_____  _____
_____  _____  _____
_____  _____
       _____
_____  _____
_____  _____
_____  _____
_____  _____
_____  _____
_____

**Cc:** _____
_____
_____
_____
 _____

**Subject:**

Counsel,

Please see the attached subpoena and deposition notice for Mr. Rodney Wells.  We have noticed Mr. Wells' deposition for April 25, 2025.

Plaintiff's counsel, can you please confirm you will accept service of the attached subpoena to Mr. Wells by EOD today, March 2  , 2025

Thanks,

**Ian Reagan**
Associate

Baker, Donelson, Bearman, Caldwell, & Berkowitz, PC
165 Madison Ave
Memphis, TN 38103
Direct: 901.577.8267 (Ext. 8267) | Cell: 731.334.1153
Email: ireagan@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
represents clients across the U.S. and abroad from
offices in Alabama, Florida, Georgia, Louisiana, Maryland,
Mississippi, North Carolina, South Carolina, Tennessee,
Texas, Virginia and Washington, D.C.

NOTICE: This electronic mail transmission with any attachments may constitute an attorney-client communication, protected health information (PHI) or other confidential information that is in fact confidential, legally protected from disclosure and/or protected by the attorney-client privilege. If you are the intended recipient, please maintain confidentiality and be aware that forwarding this e-mail to others may result in a waiver of these protections and privileges and regardless electronic communications may be at times illegally accessed and viewed. If you are not the intended recipient, this e-mail is not intended for transmission to you, nor to be read, reviewed, used, distributed or even received by you or any other unauthorized persons. If you have received this electronic mail transmission in error, please double delete it from your system immediately without copying, reading or disseminating it, and notify the sender by reply e-mail, so that our address record can be corrected. Thank you very much.

# EXHIBIT D

| From: | Joshua Levin |
|---|---|
| To: | f ohnson  ohnsonand ohnsonattys.com , alton  gml la .com  stephenrleffler  yahoo.com<br>D od in  gml la .com  sraisch  r la .net  Sil , Jennie  Mc inney, elsev  Morris, Angela<br>ahenderson  spencepartnersla .com  a ohnson  spencepartnersla .com  aromanucci  r la .net<br>Broo e  encrump.com  achtel  mendelsonfirm.com  corice  efla group.com  eenandl  aol.com<br>c ohnson  r la .net  D ondos  r la .net  domemphisla   darrelloneal.com  dm  mendelsonfirm.com<br>ge  perrygriffin.com  HWard  r la .net  ipeoples  spencepartnersla .com  spence spencepartnersla .com<br>p  perrygriffin.com  support  smittic la .com  lgross  perrygriffin.com  martin  spar man  ummach.com<br>MCollins  gml la .com  natalie  encrump.com  rspence  spencepartnersla .com  sharton  r la .net<br>SWeil  r la .net  orman  gml la .com  McMullen, Bruce |
| Subject: | Wells v. City of Memphis et al. - August 15, 2025 Meet and Confer |
| Date: | riday, August 15, 2025 6:06:  1  M |

Counsel,

Thank you for meeting today. I am writing to recap our discussion.

 econd Deposition of Lt. DeWayne  mith

The parties agreed that the Plaintiff's second deposition of Lt.  mith would not repeat any topics that were covered in the first deposition. The parties also agreed that Lt.  mith would not be testifying as a representative of the City. Plaintiff's counsel explained that the first deposition focused on the facts of the Nichols incident and the actions of Lt.  mith and the other  CORPION officers that night, whereas the second deposition will be focused on Monell discovery that was not covered in the first deposition.

The parties had previously agreed that the total time allotted for Lt.  mith's deposition would be  .5 hours. Plaintiff's counsel stated that based on the video of the first deposition, 4 hours and 17 minutes have elapsed. Counsel for Lt.  mith will confirm that she agrees. Plaintiff's counsel stated that Plaintiff expects to use the full amount of time remaining for the second deposition.

RFP 133 Production

Counsel for the City and Plaintiff counsel discussed the BlueTeam documents that the City will be producing. Plaintiff counsel expressed concern that these documents were not included in the City's RFP 133 production at the time the City represented production was complete on July 3. Counsel for the City stated that the reason the BlueTeam records were not previously produced is that the City produced only documents that were in "document form," whereas the BlueTeam records are stored in a "computer system" and need to be "converted" into a document, which the City is now doing. In explaining how documents were gathered for the City's previous RFP 133 productions, City counsel stated that they collected documents from I  B, from repositories where criminal investigation documents are stored, and videos from Evidence.com.

Plaintiff counsel asked whether there are any other documents or information (apart from the

BlueTeam records) related to the RFP 133 incidents and the other incidents covered by Plaintiff's RFPs   including any information stored in computer systems   that the City has not yet produced. City counsel stated that it is not aware of any. Plaintiff counsel re uested that City counsel provide a Rule 2  (g) signature attesting to the completeness of the City's RFP 133 production after the BlueTeam documents are produced. City counsel stated they would consider this re uest.

City counsel stated that they are working to get the BlueTeam documents produced within the timeframe originally provided by the City (approximately two weeks from the City's August 5 email).

<u>I  B Files and   ideos Related to Those Incidents (RFPs 8  -  0)</u>

On August 13, Plaintiff counsel email the City notifying the City that it appears the City has not produced any video files in its production of I  B materials. On August 14, City counsel responded and asked Plaintiff counsel to identify the I  B files for which Plaintiff re uests video. The parties discussed this issue further on the call.

City counsel explained that the videos are not stored with the rest of the digitized I  B files  they are stored in CD-ROM and in <u>Evidence.com</u>. After discussing the most efficient way to produce the video files, the parties agreed that the City will start by producing the videos for all of the I  B-investigated incidents classified as "Excessive /   nnecessary Force," and will then produce the videos for all incidents classified as "Compliance With Regulations: In-Car   ideo / Bodyworn Cameras." The parties agreed to revisit production of videos for the incidents classified as "Personal Conduct" at a later point. The City agreed to se uence production this way for videos related to incidents responsive to both RFPs 8   and   0 (to the extent any video files exist).

Plaintiff counsel asked for an estimate as to when the City will produce the videos for the "Excessive /   nnecessary Force" incidents. City counsel said they will do their best to provide an estimate by end of the next.

Thank you,
Josh