IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

RowVaughn Wells,

Plaintiff,

v.

City of Memphis *et al.*,

Defendants.

Case No. 2:23-cv-02224-SHL-ATC

**PLAINTIFF'S MOTION TO AMEND SCHEDULE AND BIFURCATE CASE**

Pursuant to Federal Rules of Civil Procedure 16(b)(4) and 42(b), Plaintiff brings this motion to amend the scheduling order in this case, a modification that would include bifurcating this case so that the *Monell* claim against the City is tried on the currently set trial date of November 9, 2026, while the trials of the five criminally-stayed defendant officers (Defendants Martin, Mills, Haley, Bean, and Justin Smith) and two other defendant officers (Defendants Hemphill and Dwayne Smith) would occur after the criminal cases against the stayed defendants are resolved. If the Court adopts this proposal, Plaintiff would also immediately dismiss her claims against Defendant Chief C.J. Davis, which are currently stayed pending Chief Davis's qualified-immunity appeal, so that Plaintiff can depose her in advance of her expert disclosures. Besides bifurcation, Plaintiff also proposes several modest adjustments to the current schedule in light of the Magistrate

1

Judge's recent order that the City produce certain documents, *see* ECF 544, so that Plaintiff can use the documents in her depositions and expert reports.[1]

Plaintiff makes these proposals for a simple reason: the adjudication of Plaintiff's claims against the criminally-stayed defendants is ultimately a sideshow in Plaintiff's *Monell* case against the City, yet the criminal stay imposed for those defendants threatens to delay the adjudication of Plaintiff's *Monell* claims for years. The current trial date is set nearly four years after the beating of Tyre Nichols and over three years after the Court issued the criminal stay. Delaying this case further until the criminal cases against the stayed defendants finally end would, in all likelihood, add years before Plaintiff's case against the City ever goes to trial. That would work a manifest prejudice against Plaintiff and degrade her ability to put on evidence that will prove her case. It would also be contrary to the public interest, putting off for years the adjudication of important claims about police practices in Memphis. That sort of delay will further compound the prejudice Plaintiff suffers as her son's killing recedes further into the past.

Fortunately such an outcome is entirely unnecessary. With some minor adjustments to accommodate the late-arriving discovery ordered by the Magistrate Judge, Plaintiff's claims against the City can be presented to a jury this November as scheduled, with no further delay.

Plaintiff's proposed modified schedule is set out in **EXHIBIT 1**.

---

[1] Defendants oppose both the proposed schedule change and the bifurcation.

## BACKGROUND

When the existing scheduling order (ECF 474) was entered in August 2025, each of the stayed defendants was awaiting sentencing after having been convicted of federal crimes involving the beating of Mr. Nichols. At the time, those sentencings were set for December 2025. *See United States v. Martin et al.*, 2:23-cr-20191-SHL, ECF 911 (W.D. Tenn. August 28, 2025) ("*Martin*"). Sentencing is the conventional marker for the ending of Fifth Amendment stays, *see Sparkman v. Thompson,* No. 08–01–KKC, 2009 WL 1941907, at *2 (E.D. Ky. July 6, 2009), and the schedule adopted in ECF 474 was timed to line up with the sentencings of the stayed defendants, so that once they were sentenced there would be a window to depose them before the close of fact discovery in this case.

On August 28, 2025, however, the Court vacated the convictions of stayed defendants Haley, Bean, and Justin Smith, ordering new trials for them. *See Martin* ECF 919. As part of that ruling, the Court also continued indefinitely the sentencing of stayed defendants Martin and Mills, who have already pleaded guilty. *See Martin* ECF 971. As a result of the Court's ruling in the criminal cases, the Fifth Amendment stays of these defendants remain in place. Under the current schedule in *this* case, the criminal stay portends at least a year of delay, if not significantly more, before Plaintiff's claims against the City can be tried to a jury.

There is first the criminal appeal. The government has filed a notice of interlocutory appeal challenging the Court's order to vacate. *See Martin* ECF 950, 951, 955, and 956. Interlocutory appeals add considerable time to any case. But in

3

this one, the government's appeal has not even begun.  After the government filed

its notice of appeal, the stayed defendants filed notices of cross-appeals. *See United*

*States v. Martin et al.*, 25-5853, ECF 24 (6th Cir. Nov. 18, 2025).[2].  The government

has moved to dismiss those cross-appeals, and that motion remains pending.  App.

Dkt. 24.  The Court of Appeals has ordered briefing on the merits of the

government's underlying appeal in to be held in abeyance until the motion to

dismiss is decided.  App. Dkt. 25.

That means the government's appeal is not yet underway in any meaningful

sense:  there is no date for argument on the government's motion to dismiss, nor a

date to decide that motion.  There is no date even to begin briefing the government's

own appeal, no briefing schedule, and no date for argument—to say nothing of a

time horizon for a decision.  Once that process *begins*, the Court of Appeals' median

time to issue a decision is 11.1 months.[3] Given the uncommon issue presented in

the *Martin* appeal, with the government in the unusual posture of a criminal

appellant, the appeal may take considerably longer.

That, of course, is just the beginning of the delays that will accumulate.  The

Court of Appeals could conceivably reverse this Court's decision and allow the

convictions to stand.  That would be the fastest route for restarting the schedule in

this civil case, but the delay would still be lengthy:  the case would remain in

---

[2]  *United States v. Martin et al.,* No. 25-5853, (6th Cir. Nov. 18, 2025) ("App. Dkt.").

[3]  *See* United States Courts, U.S. Courts of Appeals - Median Times for Civil and
Criminal Cases Terminated on the Merits - Table B4.A (Jan. 2025).  *Available at:*
*https://www.uscourts.gov/sites/default/files/2025-01/jb_b4a_0930.2024.pdf*

suspension while the defendants were sentenced, a process that minimally would consume several months. After that and once the civil case got underway again, the stayed defendants would be given months to answer the complaint, and take their own discovery. They would also be entitled to assert qualified immunity, then be entitled to yet another interlocutory appeal if that defense were denied—taking yet another trip up to the Court of Appeals, with even more months of delay. Eventually would come depositions, followed by expert disclosures, long delayed dispositive motion practice, and finally trial. It is difficult to picture a plausible scenario in which these steps are completed in time for a trial anytime before 2028.

If this Court's decision vacating the officers' convictions is upheld, that same timeline stretches well into 2028 and beyond. Criminal trial preparations would begin anew, with the full complement of motions practice and its attendant delays. Then, if the subsequent trial also resulted in convictions, the process set forth above would need to be worked through in full: a wait for sentencing in the criminal case; and then in the civil case, time allotted for answers, written discovery, motion practice, interlocutory appeals, expert discovery, dispositive motions, and finally trial. Each of these steps will take months, and adding them together it is hard to picture trial occurring until well into 2028, if not 2029.

***Prejudice caused by delay***. Plaintiff's *Monell* case is at the finish line. After years of work, Plaintiff is in the final weeks of fact discovery and has retained experts to review the gathered evidence and develop their opinions. With a modest scheduling adjustment to account for some late-ordered discovery, *see* **Ex. 1 lines 3-**

5

**7**, that fact discovery will be completed and expert reports ready for adjudication on the current schedule for both dispositive motions and trial.

With the *Monell* case this close to complete, delaying trial against the City for at least a year, if not well more, would work a substantial prejudice on Plaintiff. *Cf. Drahos v. U.S. Bank Nat'l Ass'n*, No. 2:25-cv-663, 2025 WL 3718424, at *3 (S.D. Ohio Dec. 23, 2025) ("[A] lengthy discovery stay will prejudice Defendants. Defendants show they do not need much more discovery before filing their summary judgment motion. And the discovery cut-off is mere weeks away. To stay discovery this close to the finish line—and perhaps for more than a year—would substantially harm Defendants' position." (citations omitted)).  Indeed for all the robust discovery Plaintiff has gathered, a trial in this complex *Monell* case will be about the witnesses Plaintiff is able to put forward.  And on that score, the prejudice caused by additional delay in prosecuting Plaintiff's *Monell* case is acute.  As another court put it in a similarly complex case,

> A stay of class proceedings would not simply require Plaintiffs to wait longer to further litigate their claims (which, of course, is prejudice in itself); Plaintiffs allege—and soon must prove—a broad and lengthy conspiracy among multiple actors. Part of that proof will include witness testimony. The longer a merits adjudication is delayed, the more likely it is (according to the old axiom) that witness memories will fade.

*In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2014 WL 12591692, at *4 (N.D. Ohio May 16, 2014).  Plaintiff faces the same sort of complex proof here, and she will confront the inevitable loss of evidence she needs to meet her burden of proof as the discovery she has gathered is degraded as time passes along.  *Cf.*

6

*Compound Prop. Mgmt. LLC v. Build Realty, Inc.*, No. 1:19-CV-133, 2023 WL 3004148, at *4 (S.D. Ohio Apr. 18, 2023) (denying stay and noting that "[f]urther delay could substantially harm Plaintiffs in that witnesses move, parties die, and memories fade.").

This problem is especially acute when one considers the evidence supporting Plaintiff's *Monell* claims. While Tyre Nichols was beaten in January 2023, much of the *Monell* evidence Plaintiff has gathered concerns, by necessity, police encounters that occurred years *before* Mr. Nichols was beaten. When evidence is "that old, more delay itself would cause substantial harm" to the party bearing the burden of proof. *Compound Prop. Mgmt.*, 2023 WL 3004148, at *4. *See, e.g., Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cnty., Tennessee v. Momenta Pharms., Inc.*, No. 3:15-CV-01100, 2019 WL 5305506, at *3 (M.D. Tenn. Oct. 21, 2019) ("[A]ny further delay substantially harms Plaintiffs, especially considering their claims have been pending for over four years now.").

An indefinite delay of Plaintiff's *Monell* trial while the stayed officers' criminal cases continue to play out, likely for years, all but guarantees that Plaintiff's ability to prove her claims will be prejudiced, and materially so.

*      *      *

To remedy the delay created by the ongoing criminal stays, Plaintiff proposed to the defendants that the case be bifurcated and the schedule slightly modified. In doing so, Plaintiff proffered the proposed schedule set out in **Exhibit 1**. Counsel for the City and two of the defendants rejected the proposal. This motion follows.

7

## LEGAL STANDARD

Rule 16(b)(4) permits modification of a scheduling order "for good cause and with the judge's consent."  Rule 42(b), meanwhile, empowers a court to "order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims," and to do so "[f]or convenience, to avoid prejudice, or to expedite and economize," as the case may be.  *See Wilson v. Morgan*, 477 F.3d 326, 339 (6th Cir. 2007) ("In determining whether separate trials are appropriate, the court should consider several fact[or]s, including the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy." (quotation omitted)). Rule 42(b), notably, is disjunctive, meaning that "[o]nly one of these criteria need be met to justify bifurcation." *Saxion v. Titan-C-Mfg.*, 86 F.3d 553, 556 (6th Cir. 1996). *Accord Gillispie v. City of Miami Twp.*, No. 3:13-CV-416, 2022 WL 16541259, at *2 (S.D. Ohio Oct. 28, 2022) ("[O]nly one of the three criteria set forth in Rule 42(b)—furthering convenience, avoiding prejudice, or being conducive to expedition and economy—must be met to justify bifurcation." (citing *Saxion*)).  The rules place both bifurcation and scheduling within the Court's discretion.  *Saxion*, 86 F.3d at 556 (bifurcation under Rule 42(b)); *Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003) (scheduling under Rule 16(b)(4)).

## ARGUMENT

Plaintiff's proposed schedule respects the Fifth Amendment interests of the stayed defendants without permitting those stays to derail Plaintiff's *Monell* claims unnecessarily.  This comports with Rule 1's mandate that the federal rules "should

8

be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed R. Civ. P. 1.  The Court should bifurcate the case and adopt the schedule.

### A. There is good cause to adjust the schedule under Rule 16(b)(4).

Besides bifurcating the case between the City and the individual defendants, Plaintiff proposes modifying several of the discovery dates in the existing schedule, extending the fact discovery period by several weeks and moving corresponding dates as well. **Exhibit 1**.  Edits to events in the existing schedule are reflected in **bold**, while existing dates to be adjusted are reflected in ~~strikethrough~~.

This short extension of the fact-discovery period is necessary so that the City can produce documents recently ordered by the Magistrate Judge, *see* ECF 544 (ordering responses by February 16, 2026), and so that Plaintiff can make use of those documents in her outstanding depositions, including the Rule 30(b)(6) deposition of the City. These adjustments allow Plaintiff's claims against the City to be tried on the current schedule. Plaintiff respectfully submits that this constitutes good cause to modify the existing schedule.

Plaintiff's proposed schedule accomplishes this adjustment by making one substantive change:  instead of having *both* Plaintiff and the City submit *Daubert* motions on June 8 (simultaneously with dispositive motions), the proposed schedule has each side—moving and responding party—submit their *Daubert* motions simultaneously with their respective dispositive motion or their response to the dispositive motion.  Ex. 1 **lines 8 & 11**.  That frees up time in the schedule for a

9

five-week extension of fact discovery, Ex. 1 **line 3**, followed by expert discovery, Ex. 1 **lines 5-7**, without changing the dispositive motion or trial dates.

These changes to the *Daubert* briefing schedule will permit dispositive motion practice, pretrial deadlines, and the *Monell* trial in this case all to occur on the existing schedule set out in ECF 474.  Ex. 1 **lines 9, 10, 12–17**.  The trial for the individual defendants would occur at a time to be determined after the criminal cases against the stayed defendants have been resolved.  Ex. 1 **line 18**.  Pursuant to Rule 16(b)(4), Plaintiff respectfully submits there is good cause for this adjustment.

### B. Bifurcation is appropriate under Rule 42(b).

Plaintiff's *Monell* case will be ready to try under the current trial schedule. Without bifurcation, however, that case will languish for years, with the considerable prejudice to Plaintiff that is outlined above.  Bifurcation can avoid that outcome without causing undue prejudice to any of the defendants.  Indeed bifurcation is necessary to keep this case on track and ensure fairness to the parties.  The considerations set out in Rule 42(b) decidedly favor bifurcation. Plaintiff reviews those considerations below.

*Bifurcation will ensure timely adjudication of Plaintiff's Monell claims.*  Plaintiff has explained *supra* why timely adjudication of the *Monell* claims in this case is in the interest of justice, and why a delay in trying those claims— likely lasting well over a year, if not significantly longer—will prejudice Plaintiff, both by the delay itself and by degrading the evidence that Plaintiff has spent considerable effort amassing.  It bears repeating that Plaintiff's case is at the finish

10

line: after  years of work, Plaintiff is prepared to try her *Monell* case to a jury.  In order to do so, she is willing to make significant concessions, including giving up her claim against Defendant MPD Chief C.J. Davis, even though Plaintiff has developed ample evidence to support her claim against that defendant. Giving up her claim against Chief Davis is necessary to keep the current trial date against the City by enabling Plaintiff to take the deposition of Chief Davis, who currently enjoys a stay of discovery pending her qualified immunity appeal but will have no such stay once the claim against her is dismissed.

***Bifurcation will reduce confusion and duplication, not cause it***.  A first-blush reaction to Plaintiff's bifurcation proposal might be to acknowledge that further delay prejudices Plaintiff's *Monell* case, yet lament that trying the *Monell* claim before the claims against the officers puts the cart before the horse.  After all, a predicate to any *Monell* claim is that the underlying act violated the victim's constitutional rights.  To try the *Monell* claim first, this thinking goes, would be to reverse that order.

That concern might be relevant in some cases, but it is simply not present here.  That is so for multiple reasons.  From a procedural standpoint, what Plaintiff effectively proposes is to go to trial against the City now as though Plaintiff had never sued the officer defendants at all.  That is an entirely permissible posture in which to proceed against the City.  *See Stucker v. Louisville Metro Gov't*, No. 23-5214, 2024 WL 2135407, at *6 (6th Cir. May 13, 2024) ("*Monell* requires a constitutional injury, not the joinder of an officer acting unconstitutionally. . . .  [A]

11

*Monell* claim against a municipality may proceed without a claim against the offending officer, so long as it remains consistent with finding a constitutional violation." (collecting cases)).

And to borrow from *Stucker*, this case *can* proceed against the City now, consistent with finding that Mr. Nichols' constitutional rights were violated. That is because from an evidentiary standpoint, the question of whether the officers who beat Mr. Nichols violated his constitutional rights will not be a central issue in the *Monell* trial against the City. Two of the officers—Martin and Mills—have pleaded guilty in federal court to using excessive force against Mr. Nichols in violation of 18 U.S.C. § 242. *See Martin,* ECF 14. Those judicial admissions alone are sufficient to establish that Mr. Nichols rights were violated by agents of the City, even if a constitutional violation by the other three officers—Haley, Smith, and Bean— remains contested.

The City, furthermore, cannot seriously contest the use of excessive force by Haley, Smith, and Bean. The MPD terminated *all five* officers (Martin, Mills, Haley, Smith, and Bean) immediately after the beating, and then conducted a thorough investigation in which it concluded that all five officers used excessive force in violation of MPD policy. The City admitted as much in a press release, *see* **Ex. 2**. There is additional evidence as well, including deposition testimony by multiple MPD officials that they believed that the force used against Mr. Nichols was excessive. But the guilty pleas (which constitute judicial admissions) and the City's own findings (which constitute admissions by a party-opponent) are more than

12

enough.  The facts surrounding Mr. Nichols' beating will certainly be introduced as evidence at trial, but the question of whether the predicate for a *Monell* claim against the City can be established will not be a central question in this case.

Indeed if anything, a combined trial against the stayed officers and the City threatens to be a recipe for confusion—and for bifurcation in its own right.  Bean and Justin Smith were both acquitted of using excessive force against Mr. Nichols (their convictions are for a conspiracy after the fact).  Haley might yet be acquitted of that charge.  Thus at trial Smith and Bean, and perhaps Haley, can be expected to put on a case that they never used excessive force against Mr. Nichols.  That factual dispute will be immaterial to Plaintiff's *Monell* claim, since Martin and Mills *have* pleaded guilty to using excessive force, establishing the required predicate for *Monell*.  But such a position by Haley / Smith / Bean will be at war with the admission by their co-defendant—the City, in its investigative findings—that the three officers *did* use excessive force against Mr. Nichols.  That dispute promises considerable confusion at trial, and may well be its own grounds for bifurcating the trial against Haley / Smith / Bean from their co-defendants.

None of that confusion, it bears repeating, would alter the predicate for Plaintiff's *Monell* claim:  whether Mr. Nichols' constitutional rights were violated by the City's agents—a contention that Plaintiff is ready to prove now.  The point, for purposes of this bifurcation motion, is that a trial of the officers is not a necessary predicate for Plaintiff to try her claims against the City.  And in all events, Plaintiff

13

is the master of her case and can select the evidence she will marshal to prove

*Monell*.  Trying the City first is an entirely sensible means by which to proceed.

>    ***The City will not be unduly prejudiced by bifurcation***.  The City also

will not suffer undue prejudice from bifurcation.  The point of keeping individual

officers in a *Monell* trial is to litigate whether a constitutional violation occurred at

all, and thus whether the predicate for *Monell* liability exists.  But as Plaintiff has

explained *supra*, that predicate is simply not a point of dispute in this case.  The

*Monell* trial will concern whether Plaintiff can establish that the City's policies and

practices were a moving force behind those constitutional violations.

>    The City may claim that moving to trial now nevertheless would cause it to

suffer prejudice because it cannot call on the five officers, who will remain stayed, to

testify in its favor. That does not constitute undue prejudice.  Rather, it means that

the City faces a problem common to many civil litigants: its employees may assert

their Fifth Amendment privilege rather than testify on the City's behalf.  Courts

have repeatedly held that such problems do not warrant staying civil proceedings

against the employer.

>    In *Deloitte Consulting LLP v. Sagitec Solutions LLC*, No. 23-325-WCB, 2023

WL 6037201 (D. Del. Sept. 15, 2023), for example, the corporate defendant argued

that it could not properly defend itself when "key witnesses"—its former employees

who faced criminal charges for the conduct at issue in the civil case—would invoke

Fifth Amendment privilege. *Id.* at *4. The *Deloitte Consulting* court agreed that "to

some extent, corporations cannot adequately defend themselves without the

14

testimony of their employees." *Id.* at *5. But, it went on, the corporate defendants

"do not explain why the fact that their employees may not testify because of the

privilege makes their situation any more dire or unfair than that of any other party

who cannot find witnesses to testify on [its] behalf." *Id.* at *7.

Indeed, noted the *Deloitte Consulting* court, "[a] criminal defendant on trial

for his liberty—or even his life—is often faced with the problem that others involved

in events related to the alleged crime will invoke the privilege rather than testify.

Yet such a defendant would hardly be heard to complain that it is unfair for the

government to try him before completing its investigation into or immunizing his

potential witnesses." *Id. Accord In re 650 Fifth Avenue*, No. 08-cv-10934, 2011 WL

3586169 (S.D.N.Y. Aug. 12, 2011).[4]

As in *Deloitte Consulting* and *650 Fifth Avenue*, the fact that the City's

employees will be under Fifth Amendment protection does not justify a stay of

Plaintiff's claims against the City.  Indeed if anything, the City's concerns are less

acute than in those cases:  between the existing guilty pleas of Martin and Mills and

---

[4]  *In re 650 Fifth Avenue*, No. 08-cv-10934, 2011 WL 3586169 (S.D.N.Y. Aug. 12, 2011) reached the same holding as *Deloitte Consulting*, and distinguished cases in which a Fifth Amendment stay had been issued.  The key distinction, said the *650 Fifth Avenue* court, was that in those cases, "at least one party to the civil proceeding had been indicted or charged." *Id.* at *8.  Where that is not the case, "no defendant in this action faces an acute Fifth Amendment dilemma necessitating a stay. And therefore there are no efficiencies to be gained by staying the action as to indicted individuals' corporate employer co-defendants." *Id.*  Bifurcating this case, as Plaintiff has proposed, accomplishes the same outcome—the officers are effectively made non-parties to Plaintiff's *Monell* case against the City, none of them is put to a Fifth Amendment "dilemma" necessitating a stay.

the City's admissions that all five officers violated Mr. Nichols' rights, *supra*, the absence the defendant-officer witnesses will not be particularly significant in the *Monell* case.

***Bifurcation will not prejudice the individual defendants.*** The individual officers will suffer no prejudice from bifurcation. The officers will continue under the protection of the Fifth Amendment stay and need not participate in the *Monell* trial. A verdict in the *Monell* trial would be against the City not any of the individual defendants. And in any event, having not been parties to the *Monell* trial, the individual defendants would not be bound by its results, both because the material issues in a *Monell* claim are distinct from individual liability, and because the officers, having not participated in the trial, will not be subject to issue preclusion.

The Sixth Circuit has recognized that *Monell* municipal liability is analytically distinct from individual officer liability. *Doe*, 103 F.3d at 508 ("A municipality cannot be held liable under § 1983 solely because it employs a tortfeasor"). Any findings in the *Monell* trial regarding municipal policies and customs cannot be used against the individual officers in Phase II because *Monell* liability is based on completely different legal elements than individual officer liability. The *Monell* trial will not adjudicate the officers' culpability, state of mind, or entitlement to qualified immunity.

***The duplication of evidence will be modest.*** The beating of Tyre Nichols will, of course, feature as evidence in both the *Monell* trial and in the trial of the

16

officers, and some duplication of evidence will result. Given the existing admissions by Martin, Mills, and the City, however, that duplication is likely to be limited. Moreover, those admissions may lead Haley, Smith, and Bean to request bifurcation even in a combined trial, which would create duplication regardless of the Court's ruling on this motion.

An eventual trial of the officer defendants will focus on the specific actions and intent of each individual officer; each officer's state of mind and level of culpability; each officer's qualified immunity defense; and the apportionment of responsibility among individual defendants. None of these questions will be at issue in the *Monell* trial against the City. Instead, the central dispute in the *Monell* trial will be whether the City's policies and practices and the culture within the MPD were a moving force driving the beating. The *Monell* trial will focus on systemic questions such as whether MPD had policies or customs that tolerated or encouraged excessive force; whether the City's training was constitutionally adequate; whether the City's supervision and discipline of officers was sufficient; whether the City had notice of similar misconduct and failed to act; whether the SCORPION unit's structure, training, and supervision created constitutional risks; whether the culture within MPD encouraged or tolerated the sort of violence inflicted on Mr. Nichols; and whether the City's policies regarding accountability and discipline were a moving force behind the officers' conduct. These are fundamentally different inquiries requiring largely distinct evidence, and the

17

overlap regarding the facts of the beating itself will be modest in the context of the

overall case.[5]  Bifurcation is economical, efficient, and appropriate.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court

bifurcate this case, adopt the proposed schedule set forth in **Exhibit 1**, and permit

Plaintiff's *Monell* claims against the City to proceed to trial on November 9, 2026, as

currently scheduled. This approach will avoid substantial prejudice to Plaintiff,

serve the interests of justice, and respect the Fifth Amendment protections of the

stayed defendants.

[SIGNATURES ON FOLLOWING PAGE]

---

[5]  It is for this reason that Plaintiff would propose to try her claims against Defendants Hemphill and Dwayne Smith later on, with the stayed officers, rather than as part of her *Monell* claims against the City.  Hemphill and Dwayne Smith are MPD officers who were peripherally involved in the beating of Mr. Nichols.  (Hemphill was involved in the original stop of Mr. Nichols before he fled; Dwayne Smith arrived on the scene after Mr. Nichols had been beaten.)  Neither defendant was charged criminally and so Plaintiff could seek to try her claims against them now.  But that would shift the focus of a trial against the City away from *Monell* issues. Plaintiff is therefore trading off the passage of time against confusion of the issues in the *Monell* trial. That is an appropriate tradeoff for Plaintiff to make.

Dated: February 4, 2026                          Respectfully submitted,


                                                 /s/ Stephen H. Weil


David L. Mendelson                               Antonio M. Romanucci*
(Tenn. Bar No. 016812)                           (Ill. Bar No. 6190290)
Benjamin Wachtel                                 Sarah Raisch* (Ill. Bar No. 6305374)
(Tenn. Bar No. 037986)                           Joshua M. Levin* (Ill. Bar No. 6320993)
MENDELSON LAW FIRM                               Stephen H. Weil* (Ill. Bar No. 6291026)
799 Estate Place                                 Colton Johnson Taylor*
Memphis, TN 38187                                (Ill. Bar No. 6349356)
+1 (901) 763-2500 (ext. 103), Telephone          ROMANUCCI & BLANDIN, LLC
+1 (901) 763-2525, Facsimile                     321 N. Clark St., Ste. 900
dm@mendelsonfirm.com                             Chicago, IL 60654
bw@mendelsonfirm.com                             P: (312) 458-1000
                                                 aromanucci@rblaw.net
                                                 sraisch@rblaw.net
Benjamin Crump                                   jlevin@rblaw.net
(Tenn. Bar No. 038054)                           sweil@rblaw.net
Brooke Cluse* (Tex. Bar No. 24123034)            cjohnson@rblaw.net
BEN CRUMP LAW, PLLC
717 D Street N.W., Suite 310
Washington, D.C. 20004
+1 (337) 501-8356 (Cluse), Telephone
court@bencrump.com
brooke@bencrump.com

                                                 Attorneys for Plaintiff

                                                 * Admission *pro hac vice*

19

## CERTIFICATION OF CONSULATION

I certify that on January 26, 2026, Plaintiff's counsel contacted counsel for the defendants via email regarding this request. Counsel for the City, defendant Justin Smith, and defendant Martin noted their opposition via email.


/s/ Stephen H. Weil

Counsel for Plaintiff