IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| RowVaughn Wells, Individually and as Administratrix of the Estate of Tyre Deandre Nichols, Deceased, <br><br> Plaintiff, <br><br> v. <br><br> The City of Memphis, Tennessee; Chief Cerelyn Davis; Emmitt Martin III; Demetrius Haley; Justin Smith; Desmond Mills, Jr.; Tadarrius Bean; Preston Hemphill; DeWayne Smith, <br><br> Defendants. | CASE NO. 2:23-CV-02224-SHL-atc <br> JURY DEMAND |

## THE CITY DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND SCHEDULE AND BIFURCATE CASE

Defendants City of Memphis (the "City") and Chief Cerelyn J. Davis ("Chief Davis") (collectively, the "City Defendants") respectfully submit this Response in Opposition to Plaintiff's Motion to Amend Schedule and Bifurcate Case. (ECF No. 556.) Because Plaintiff's Motion raises two separate issues with distinct legal standards—scheduling and bifurcation—the City Defendants will respond to each topic separately.

In both cases, however, Plaintiff's Motion should be denied.

**I.      PLAINTIFF'S MOTION TO AMEND SCHEDULE.**

As a threshold matter, Plaintiff claims she requests to amend the scheduling order "for a simple reason." (ECF No. 556, PageID 8468.) That is, Plaintiff needs to amend the scheduling

1

order because of the Fifth Amendment stays currently in place for Defendants Martin, Haley, Mills, Bean, and J. Smith. (*Id.*) In reality, Plaintiff's request is really for a different reason: she has—once again—been dilatory in completing her fact discovery against the City, blaming the Court and the City for delays. (*Id.*) And now, Plaintiff again requests more time to complete her fact discovery. To be sure, Plaintiff herself states in her Motion that she requests adjustments to the schedule "in light of the Magistrate Judge's recent order that the City produce certain documents, see ECF 544, so that Plaintiff can use the documents in her depositions and expert reports." (*Id.* at PageID 8467–68.)

Plaintiff has failed to demonstrate her diligence in attempting to meet the deadlines set forth in the Amended Scheduling Order (ECF No. 474), and for that reason alone, her request to amend the scheduling order should be denied.

Modification of a scheduling order may be permitted only "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Good cause first requires the movant to demonstrate "diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (quotation omitted); *see also Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 879 (6th Cir. 2020). A movant must explain why she *could not* have reasonably complied with the scheduling order, not merely why the movant *did not* meet the deadlines. *See Lockhart v. D & S Residential Servs., LP*, No. 218CV02586JPMCGC, 2020 WL 13111154, at *4 (W.D. Tenn. Mar. 17, 2020) (citing *Interstate Packaging Co. v. Century Indem. Co.*, 291 F.R.D. 139, 145 (M.D. Tenn. 2013)).

Thus, the "main inquiry" in the good cause analysis is whether the moving party was diligent in pursuing discovery, and courts consider five "overlapping" factors to inform this analysis: (1) when the moving party learned of the issue that is the subject of discovery; (2) how

2

the discovery would affect the ruling below; (3) the length of the discovery period; (4) whether the moving party was dilatory; and (5) whether the adverse party was responsive to prior discovery requests. *Baber v. Dials*, 767 F. Supp. 3d 454, 466 (E.D. Ky. 2025) (citing *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010)) (explaining that the five factors are used by the Sixth Circuit when "reviewing a district court's denial of additional time for discovery" and used by district courts "to guide their evaluations of whether the moving party has shown good cause to reopen discovery").

Only if the moving party can demonstrate diligence may a court move on to consider other reasons to deny the motion to amend, such as prejudice to the non-moving party. *Good v. BioLife Plasma Servs., L.P.*, 656 F. Supp. 3d 738, 740 (E.D. Mich. 2023) (quoting *Smith v. Holston Med. Grp., P.C.*, 595 F. App'x 474, 479 (6th Cir. 2014)). Thus, while prejudice to the non-moving party is an important consideration, it is "*merely a consideration* that informs whether [movant] has satisfied the 'good cause' requirement[.]" *Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 450 (6th Cir. 2010) (emphasis added).

### A. Plaintiff Cannot Demonstrate That, Despite Her Diligence, She Could Not Meet the Deadlines in the Scheduling Order.

Plaintiff has shown no "diligence in attempting to meet" the scheduling order's requirements. *Garza*, 972 F.3d at 880; *see Buddenberg v. Est. of Weisdack*, 711 F. Supp. 3d 712, 806 (N.D. Ohio 2024) (quoting *Inge*, 281 F.3d at 625). Plaintiff asserts that there is good cause for modifying the scheduling order. However, Plaintiff's motion does not even attempt to explain why, despite her diligence, she could not have met the deadlines set forth in the operative scheduling order. Thus, Plaintiff has failed to meet her burden under the good cause analysis adopted by the Sixth Circuit, and therefore, her Motion should be denied on this basis alone. *Inge*, 281 F.3d at 625.

3

Not only has Plaintiff failed to make any efforts to demonstrate her diligence, a review of the procedural history of this case makes clear that Plaintiff *cannot* demonstrate her diligence in attempting to comply with the deadlines in the Amended Scheduling Order. Plaintiff has had ample time—almost three years—to conduct discovery in this case. Plaintiff filed her Complaint on April 19, 2023, and she issued her first set of written discovery on October 3, 2023. By the end of 2025, the City had made *fifty-three* document productions, including almost 29,000 documents; over 4,000 presentations; over 3,000 emails; over 2,000 spreadsheets; over 3,000 images; and over 8,000 audio or video files.[1] There is simply no reason that Plaintiff could not have obtained more than sufficient discovery in this time frame except for Plaintiff's own lack of diligence in prosecuting her case.

Plaintiff's lack of diligence continues even today. On January 26, 2026, Plaintiff's counsel cancelled the previously scheduled depositions of an MPD employee (January 30) and the Rule 30(b)(6) deposition of the City (February 5 and 6). The reason for cancelling, Plaintiff claims, is that the City's deadline for producing additional documents is February 16, 2026. *See* January 26, 2026 email correspondence, attached as Exhibit A.[2] This is just the latest in Plaintiff's pattern of conduct regarding depositions. Despite Plaintiff's claim that her case will ultimately rise and fall with "the witnesses Plaintiff is able to put forward" (ECF No. 556, PageID 8472), Plaintiff has routinely scheduled, then cancelled, numerous depositions, including the deposition of Chief Davis that was scheduled for November 2024, the deposition of Deputy

---

[1] On the date of this filing, the City will make its fifty-fourth document production comprised of, at a minimum, 8,600 pages of documents.

[2] This email thread branched out with overlapping responses. All portions of the email thread are including in Exhibit A, and as such, there are some duplicative parts of the thread.

Chief Paul Wright scheduled for October 2024, and all of the Rule 30(b)(6) depositions originally scheduled in 2024 and then rescheduled for 2026.

Cancelling these depositions on the basis of insufficient document discovery in a case with over ***550,000 pages of documents and ESI produced*** is dilatory in and of itself. Notwithstanding this fact, Plaintiff has not even attempted, as of the date of this filing, to reschedule these depositions for a future date after the City's next document production. Likewise, despite being granted leave to take an additional fourteen depositions by Magistrate Judge Christoff in mid-January, Plaintiff—again—has not reached out to the parties for availability on any dates to schedule these depositions.

Finally, Plaintiff relies on no authority in the § 1983 context to support her Motion to Amend. This is telling, as the law of § 1983 cases, and the procedural expectations in these cases, is well developed. The high burden of *Monell* is not new, and Plaintiff is not the first to have to reconcile aging evidence and lengthy litigation in pursuit of her relief.

In sum, Plaintiff has not and cannot show diligence to meet the current schedule. Accordingly, Plaintiff's Motion to Amend Schedule should be denied.

**B.     Plaintiff's Proposed Amended Schedule Will Prejudice the City Defendants.**

"'The primary measure of Rule 16's good cause standard is the moving party's diligence in attempting to meet' the scheduling order's requirements, but courts also consider 'possible prejudice to the party opposing the modification.'" *Garza*, 972 F.3d at 879 (quoting *Inge*, 281 F.3d at 625).

Plaintiff's proposed amended schedule only includes adjustments to the fact and expert discovery deadlines and Plaintiff's *Daubert* motion(s). It does not allow for any additional time for the Defendants' expert motions, dispositive motions, or other pre-trial and trial deadlines.

5

Thus, in effect, Plaintiff's proposal expands the deadlines that inure to her own benefit while compressing other deadlines to the point of being unworkable for the Defendants.

The operative Amended Scheduling Order allowed for an additional five months and one week of fact discovery followed by thirteen weeks to take expert discovery. (ECF No. 474.) Consequently, the parties would have six weeks from the end of expert discovery to prepare and file *Daubert* motions and dispositive motions. (*Id.*) Under Plaintiff's proposed amended schedule, fact discovery would be extended (in total) by six months and two weeks followed by eight weeks to take expert discovery. (ECF No. 556-1.) Therefore, any party intending to file dispositive motions (i.e., the Defendants) would have only three weeks and one business day to prepare and file *Daubert* motions **and** dispositive motions. (*Id.*) And in contrast, any party not filing dispositive motions (i.e., Plaintiff)[3] would have almost eight weeks to prepare and file *Daubert* motions. (*Id.*) To illustrate, the following table sets forth these disparities:

| Deadline | Current Time to Complete | Proposed Time to Complete |
|---|---|---|
| Completion of fact discovery | 5 months + 1 week | 6 months + 2 weeks |
| Completion of expert discovery | 13 weeks | 8 weeks |
| Dispositive motions | 6 weeks | 3 weeks + 1 business day |
| Moving party (Defendants) *Daubert* motions | 6 weeks | 3 weeks + 1 business day |
| Responding party (Plaintiff) *Daubert* motions | 6 weeks | 8 weeks |
| Responses to dispositive motions | 5 weeks | 5 weeks |

*Compare* ECF No. 474 *with* ECF No. 556-1.

---

[3] Plaintiff's counsel indicated at the August 11, 2025 Status Conference that Plaintiff is unlikely to file a motion for summary judgment against the City. (ECF No. 475, PageID 6697 at ll. 1-2, PageID 6704 at ll. 1-2.)

As illustrated above, Plaintiff's proposed schedule cuts the Defendants' time to prepare and file dispositive and *Daubert* motions in half while extending Plaintiff's time to prepare and file *Daubert* motions by two weeks. This adjustment to the schedule is not "modest" as Plaintiff asserts. (ECF No. 556, PageID 8467.) Rather, it would cause considerable prejudice against the City Defendants by unfairly shrinking the time for preparing for key motion practice in this matter. In light of this considerable prejudice, Plaintiff's Motion to Amend Schedule should be denied.

## II.     PLAINTIFF'S MOTION TO BIFURCATE

In addition to modifying the scheduling order in this case, Plaintiff asks the Court to bifurcate the case so that the *Monell* claim against the City is tried first, while the trials of the individual defendant officers (Martin, Mills, Haley, Bean, J. Smith, Hemphill, and D. Smith[4]) would occur after the criminal cases against five of the officers is resolved. (ECF No. 556, PageID 8467.)

This proposal is nonsensical, contrary to established Sixth Circuit practice, and poses a very serious risk of inconsistent verdicts. What Plaintiff actually proposes is not bifurcation of two issues tried by the same jury, but to sever the cases into two separate trials requiring presentation of much of the same proof and tried months, or even years, apart.

The Court should reject this request and instead stay all remaining deadlines in the case pending resolution of the criminal case.

---

[4] When Plaintiff initially consulted on this Motion, Plaintiff presented a proposal to the parties whereby the City, Preston Hemphill, and DeWayne Smith would be tried first, and then the five stayed defendants would be tried later. Now, for the first time, Plaintiff seeks to lump all the individual defendants into one bucket to be tried after the City. In either event, it makes no sense and is contrary to the practice in the Sixth Circuit. *See* Exhibit A, at 2. In addition, the City Defendants note that Plaintiff's certificate of consultation incorrectly stated that only counsel for the City Defendants, Defendant J. Smith, and Defendant Martin oppose Plaintiff's Motion. Counsel for Defendants D. Smith and Hemphill also oppose. *See* Exhibit A, at 5.

7

### A. Plaintiff's Proposal for Bifurcation Is Plainly Contrary to Established Sixth Circuit Precedent.

"A court may bifurcate a trial 'in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy.'" *Wilson v. Morgan*, 477 F.3d 326, 339 (6th Cir. 2007) (quoting Fed. R. Civ. P. 42(b)). "Additionally, bifurcation may be appropriate when litigation of one issue may eliminate the need for litigation of other issues." *SCF, LLC v. Hartford Fire Ins. Co.*, No. 120CV01173JDBJAY, 2021 WL 4206624, at *4 (W.D. Tenn. Sept. 15, 2021).

It cannot be stressed enough that the exact relief requested by Plaintiff—to try the claim against the City first—has been ***rejected*** by the Sixth Circuit. In *Wilson v. Morgan*, to which Plaintiff cites as authority on bifurcation in her Legal Standard section (ECF No. 556, PageID 8474), "Plaintiffs moved to bifurcate . . . to separate their claims against the individual defendants from their claims against the county, but argued that the claims against the county should proceed [to trial] first." *Wilson*, 477 F.3d at 339. In rejecting this approach, the Sixth Circuit reasoned that "it would be ***illogical*** to try the municipality first since its liability under § 1983 could not be determined without a determination of the lawfulness of the individuals' actions." *Id.* at 340 (emphasis added).

Since the Sixth Circuit's opinion in *Wilson* in 2007, courts in this Circuit have consistently held that, if trial in a § 1983 case is bifurcated, the appropriate procedure requires the individual defendants to be tried first and the municipal defendant to be tried second. In fact, the Southern District of Ohio once noted that it is "standard practice" to bifurcate § 1983 cases in this manner:

> [T]he jury will hear evidence on the individual claims and be asked to return a verdict on those claims. If the jury returns a verdict in Plaintiff's favor, Plaintiff would immediately proceed to present the balance of his evidence.

8

> If the jury returns a verdict in favor of [the individual defendant], then there will be no need for further evidence.

*Brewer v. Plummer*, No. 3:08-CV-311, 2009 WL 2780720, at *2 (S.D. Ohio Aug. 27, 2009).

More recently, the Eastern District of Michigan addressed concerns in a § 1983 case of "spillover prejudice" against an individual defendant if a jury hears *Monell* evidence of an alleged pattern of violations. *Woodall v. Wayne Cty.*, No. 17-13707, 2023 WL 119650, at *6 (E.D. Mich. Jan. 6, 2023). To combat this concern, that court "balance[ed] Plaintiff's concerns about efficiency and delay" and bifurcated the claim against the individual defendant from the *Monell* claims. That court approached the issue similarly to the court in *Brewer*:

> [T]he jury will first hear opening statements, evidence, and closing arguments on [plaintiff's] claim against [individual officer]. It will then deliberate and reach a verdict on that claim. Then, the same jury will hear opening statements, evidence, and closing arguments on all four plaintiffs' *Monell* claims, which will include the pattern evidence. It will then deliberate on the *Monell* claims and reach a verdict on those four claims. **Thus, the jury will not hear the pattern evidence until after it has decided [plaintiff's] individual claim against [individual officer]**. But there will be minimal delay as these two trials will happen one after another and during the same period as is currently allotted for the trial (March 1 through March 17). At most, bifurcation will add a few more days to the trial time, but this was already accounted for in the schedule.

*Id.* (emphasis added); *see also Sherrod v. Williams*, No. 3:14-CV-454, 2019 WL 396905, at *2 (S.D. Ohio Jan. 31, 2019) (ordering "back-to-back" trials using the same jury, first hearing evidence for the individual defendant and then hearing evidence for the *Monell* defendant).

Bifurcation in this manner has also been used in this Court. In *Uhuru v. City of Memphis*, the Court ordered the trial to be bifurcated, "with the parties first presenting proof on the issue of whether the [individual defendants] inflicted a constitutional injury on the [plaintiffs] and the jury making a determination on that issue" *Uhuru*, No. 08-2150-V, 2009 WL 10700490, at *2 (W.D. Tenn. June 4, 2009). Then, "[i]f the jury finds that such an injury did occur, the trial will

9

proceed on the issue of whether the City is liable for that injury." *Id.* In support of this order, the Court reasoned:

> It is well-established, therefore, that "[t]here can be no *Monell* municipal liability under § 1983 unless there is an underlying unconstitutional act." *[Wilson v.] Morgan*, 477 F.3d at 340 (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).
>
> Under this reasoning, the City cannot be liable in the instant case under § 1983 unless a jury first finds that the Officers inflicted a constitutional tort upon the Uhurus. Accordingly, bifurcation of trial, with a single jury first determining the issues of the liability of the Officers prior to determining the liability of the City, is appropriate pursuant to Rule 42(b). The court finds that such bifurcation is the most expeditious and economical manner of proceeding and will avoid any possibility that the jury would confuse the issues of liability of the Officers with those of the City such that it would prejudice the Officers.

*Uhuru*, 2009 WL 10700490, at *2.

Thus, it is clear that in the Sixth Circuit, bifurcation in the § 1983 context is approached by first determining the individual defendants' liability, and then, if necessary, determining the municipal defendant's liability with the same jury.

### B.   Plaintiff's Proposal for Bifurcation Fails to Satisfy Any Criterion Required by Rule 42(b).

While Plaintiff correctly notes that "[o]nly one of these criteria [from Rule 42(b)] need be met to justify bifurcation," *Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996), Plaintiff's proposal for bifurcation fails to satisfy any of the criteria set forth in Rule 42(b). A court may order bifurcation (1) for convenience, (2) to avoid prejudice, or (3) to expedite and economize. Fed. R. Civ. P. 42(b).

Plaintiff contends that "bifurcation will reduce confusion and duplication, not cause it." (ECF No. 556, PageID 8477.) In support of this contention, Plaintiff asks the Court to make a number of assumptions that are simply not based in reality, and then she asks the Court to grant her Motion based on those erroneous assumptions. First, Plaintiff claims that procedurally, her

10

request to try her case against the City first is equivalent to a situation where Plaintiff never brought claims against the individual defendants at all. (ECF No. 556, PageID 8477.) This is not reality; Plaintiff *did* bring claims against multiple individual defendants, and Plaintiff's choice in doing so cannot simply be ignored.

Moreover, the authority relied upon by Plaintiff for this assertion runs contrary to Plaintiff's point: "[A] *Monell* claim against a municipality may proceed without a claim against the offending officer, **so long as it remains consistent with finding a constitutional violation**." (ECF No. 556, PageID 8478 (emphasis added) (alteration in original) (quoting *Stucker v. Louisville Metro Gov't*, No. 23-5214, 2024 WL 2135407, at *6 (6th Cir. May 13, 2024))). The key language from *Stucker*, "so long as it remains consistent with finding a constitutional violation," cuts against Plaintiff's argument. Here, Plaintiff did bring claims against the individual defendants, and as explained below, having a trial against the City first and then a trial against the individual defendants second risks inconsistent verdicts on the issue of constitutional violations. In other words, assuming for the sake of argument that Plaintiff prevails on her *Monell* claim against the City, Plaintiff's proposal for bifurcation runs the risk of the first trial outcome being called into question if a later jury determines that none of the individual defendants committed a constitutional violation. *See infra* Section II.C.1.

Most confoundingly, Plaintiff asserts that she has already met her burden of proving that a constitutional violation did occur. Not so. Plaintiff asserts that her evidence of judicial admissions and admissions by a party opponent are sufficient to satisfy the first prong of a *Monell* claim. (*See* ECF No. 556, PageID 8478–79.) This is an absurd proposition, and it runs

11

contrary to the very nature of our adversarial legal system and rules of civil procedure and evidence.[5]

"It is axiomatic that a violation of police procedure does not necessarily rise to a constitutional violation." *Smith v. Jones*, No. 1:13 CV 744, 2016 WL 455617, at *9 (N.D. Ohio Feb. 5, 2016) (citing *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992)). "[T]he Sixth Circuit in [*Freland*] did not rule that [law enforcement standards] could not be considered by a fact finder, only that they cannot be understood to define the constitutional boundaries by which an officer's conduct is to be judged." *Id.* (third alteration in original) (quoting *King v. Taylor*, 944 F. Supp. 2d 548, 555 (E.D. Ky. 2013)). This makes sense. As explained in Freland,

> Under § 1983, the issue is whether [the officer] violated the Constitution, not whether he should be disciplined by the local police force. A city can certainly choose to hold its officers to a higher standard than that required by the Constitution without being subjected to increased liability under § 1983. **To hold that cities with strict policies commit more constitutional violations than those with lax policies would be an unwarranted extension of the law, as well as a violation of common sense**. [The plaintiff's] position, if adopted, would encourage all governments to adopt the least restrictive policies possible.

*Freland*, 954 F.2d at 347–48 (emphasis added).

In fact, only if the trial is bifurcated in accordance with Sixth Circuit precedent (i.e., trial for the individual defendants first and the City second), would Plaintiff's assertion be true that the central issue of her *Monell* claims is "whether Plaintiff can establish that the City's policies and practices were a moving force behind those constitutional violations." (*See* ECF No. 556, PageID 8480.) This is so because it is only *after* Plaintiff has satisfied her burden of proof

---

[5] While a different burden of proof applies in a criminal case, it cannot be presupposed that a jury in this case will necessarily find a constitutional violation. It must be noted that only one of three defendant officers who were tried was convicted of a civil rights violation in the case of *United States v. Bean*, No. 2:23-cr-20191-SHL (W.D. Tenn.). And even that conviction did not attribute the civil rights violation to Mr. Nichols's death. Moreover, this Court has granted a new trial in that matter.

12

regarding the predicate constitutional violation in front of a jury may Plaintiff make the claim that "the question of whether the predicate for a *Monell* claim against the City can be established will not be a central question" in her case against the City. (*Id.* at 8479.) Plaintiff's assertion that she does not have to meet her burden at trial on both prongs of her *Monell* liability is nonsensical.

Furthermore, Plaintiff curiously relies upon principles of vicarious liability in support of her proposition that the City will not be unduly prejudiced by her bifurcation proposal.[6] (ECF No. 556, PageID 8480–81.) But vicarious liability is not the standard in *Monell* cases, and as such, *Deloitte Consulting LLP v. Sagitec Solutions LLC*, No. 23-325-WCB, 2023 WL 6037201 (D. Del. Sept. 15, 2023) and *In re 650 Fifth Avenue*, No. 08-cv-10934, 2011 WL 3586169 (S.D.N.Y. Aug. 12, 2011), are entirely inapposite. Even assuming *arguendo* that the principles in *Deloitte Consulting* and *In re 650 Fifth Avenue* are generally analogous to the § 1983 context, the facts of these cases are entirely distinguishable from the instant action. In fact, the courts in both of these cases distinguished their cases from "cases in which stays were granted as to corporate defendants whose employees had been indicted; in those cases, the court explained, 'at least one party to the civil proceeding had been indicted or charged.'" *Deloitte Consulting*, 2023 WL 6037201, at *4 (quoting *In re 650 Fifth Ave.*, 2011 WL 3586169, at *8). Here, five of the individual Defendants have been criminally indicted. Accordingly, the general principles from *Deloitte Consulting* and *In re 650 Fifth Avenue* relied upon by Plaintiff do not apply here.[7]

---

[6] Rule 42(b) provides that bifurcation may be appropriate to "avoid prejudice." Fed. R. Civ. P. 42(b). Plaintiff argues that bifurcation is appropriate to avoid prejudice to Plaintiff, and doing so "can avoid that outcome without causing undue prejudice to any of the defendants." (ECF No. 556, PageID 8476.) But undue prejudice is not the standard. Here, bifurcation would not avoid prejudice as to the City Defendants. *See infra* Section II.C.

[7] Plaintiff's attempt to distinguish this exception is unavailing. Again, Plaintiff asks the Court to make an assumption not based in reality: "[T]he officers are effectively made non-parties to

Additionally, Plaintiff asserts that should the Court grant her motion to bifurcate, any duplication of evidence between the two trials would be modest. This is a flawed contention. First, Plaintiff's claims against the individual Defendants and her claim against the City contain overlapping elements. To prevail on a municipal liability claim, a plaintiff must show that (1) there was a deprivation of a constitutional right and that (2) the municipality is responsible for that violation. *See Doe v. Claiborne Cty., ex rel. Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 505–06 (6th Cir. 1996). To prevail on a claim against an individual defendant under § 1983, a plaintiff must show that (1) there was a deprivation of a constitutional right and (2) such deprivation occurred under color of state law. *Id.* at 511. Thus, for all Defendants in this case, Plaintiff must show that there was a deprivation of a constitutional right. The overlap of fifty percent of proof required for each type of defendant can hardly be described as "modest." (*See* ECF No. 556, PageID 8482.) Second, as explained above, Plaintiff's assertion that she has already met her burden of proof on the predicate constitutional violation for her *Monell* claim is erroneous. *See supra* pp. 11–13.

### C.   Plaintiff's Proposal for Bifurcation Risks Significant Prejudice to the City Defendants.

1. <u>Plaintiff's Proposal for Bifurcation Risks Inconsistent Verdicts.</u>

In civil cases, "courts strive to harmonize apparently inconsistent verdicts[.]" *Hartzler v. Licking Cty. Humane Soc.*, 740 F. Supp. 470, 478 (S.D. Ohio 1990). When "there is no rational, non-speculative way to reconcile the essential jury findings which necessarily form the basis for the verdicts rendered" in a case, then courts will set the jury verdict aside. *Id.* In *Hartzler*, a § 1983 action, the jury returned a verdict for the plaintiff on some claims and for the defendant

---

Plaintiff's *Monell* case against the City." (ECF No. 556, PageID 8481, n.4.) But the officers *are parties* to this case.

on others. *Id.* at 473. However, "the same evidence which was relied upon to support a finding of probable cause for the search and seizure also formed the basis for the arrest and prosecution." *Id.* at 479. Thus, the court concluded, "[t]he jury could not logically find that this evidence did not support a finding of probable cause for the issuance of the search warrant while at the same time finding that it did support probable cause for the arrest and prosecution. Yet this is precisely what the jury did." *Id.*

The rule allowing for bifurcation recognizes the potential for inconsistent verdicts, and as such, contains important limitations. *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 305 (5th Cir. 1993). "[T]he Seventh Amendment guarantee of a trial by jury is the *general right of a litigant to have only one jury pass on a common issue of fact*." *Id.* (emphasis in original) (quoting *State of Ala. v. Blue Bird Body Co.*, 573 F.2d 309, 318 (5th Cir. 1978)). "This rule [limiting the use of bifurcation] has an additional, pragmatic basis—if two juries were allowed to pass on an issue involving the same factual and legal elements, the verdicts rendered by those juries could be inconsistent, producing intolerably anomalous results." *Id.* (citing *Blue Bird Body Co.*, 573 F.2d at 318).

Should this case be bifurcated as proposed by Plaintiff, an inconsistent verdict similar to that in *Hartzler* becomes possible. For the City to be liable under *Monell*, Plaintiff must first establish that there was a constitutional violation. *See Wilson*, 477 F.3d at 339; *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) ("There can be no liability under *Monell* without an underlying constitutional violation."). Trying her case against the City first would require a jury to make a finding on that issue. Then, when Plaintiff tries her case against the individual Defendants at some point in the future, another jury will be tasked with the same question for

15

each individual Defendant. Thus, the verdict from the first jury on that issue necessarily determines how the second jury must find in the subsequent trial on the same evidence.

For example, if the first jury finds that there was a constitutional violation by an individual Defendant during the first trial against the City, then a different jury in the second trial against the individuals finds that there was no constitutional violation by the individual Defendants, that would result in an inconsistent verdict.

The reverse is also true. If the first jury decides that there was no constitutional violation, and therefore no *Monell* liability against the City, but the second jury determines that at least one individual Defendant committed a constitutional violation, that second verdict would be directly contradictory to the first verdict against the City that found no constitutional violation was committed.

Thus, the risk of inconsistent verdicts is just another example of why bifurcation in the manner proposed by Plaintiff is illogical. *See Wilson*, 477 F.3d at 339.

2.  The City Is Entitled to Take Discovery of All Witnesses.

Plaintiff's proposed plan to "bifurcate" her claims against the City from her claims against the individual defendants presupposes that the Fifth Amendment stays only impact Plaintiff's ability to develop her case. Not so. The Fifth Amendment stay also affects the City Defendants' ability to develop their defenses to Plaintiff's claims.

For example, the City Defendants have been unable to take any discovery from the stayed Defendants. The City Defendants need that discovery to proceed to summary judgment. For example, the City Defendants need to question the stayed Defendants who accepted plea deals with the Department of Justice in exchange for their testimony at the trial of *United States v. Bean*. The City Defendants were not able to cross-examine those witnesses during their criminal trials, and the City Defendants will be prejudiced by having to proceed to summary judgment

16

without the benefit of cross-examination of those Defendants as to their motivation for their testimony about certain alleged practices as well as the customs of the Memphis Police Department.

        3.   <u>Plaintiff May Not Dismiss Chief Davis Without Leave of the Court, and This Court No Longer Has Jurisdiction Over the Claims Against Chief Davis.</u>

In her Motion, Plaintiff states that "[i]f the Court adopts this proposal, Plaintiff would also immediately dismiss her claims against Defendant Chief C.J. Davis[.]" (ECF No. 556, PageID 8467; *see id.* at PageID 8477.) At this stage of the litigation, however, it is no longer within Plaintiff's discretion whether to pursue her claims against Chief Davis. Chief Davis has filed an Answer to the Amended Complaint, and as such, Plaintiff cannot voluntarily dismiss Chief Davis because Plaintiff does not have the authority to unilaterally dismiss claims against Chief Davis at this stage.

First, a Rule 41(a) voluntary dismissal is only permitted without a court order if the notice of dismissal is filed "before the opposing party serves either an answer or a motion for summary judgment[.]" Fed. R. Civ. P. 41(a)(1)(A)(i). Chief Davis filed her Answer to the First Amended Complaint on October 16, 2025. (ECF No. 493.) Second, because of the pending appeal, this Court is divested of jurisdiction as to the claims against Chief Davis. *Sherrod*, 2019 WL 396905, at *1 (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)).

Accordingly, even if Plaintiff could nonsuit Chief Davis under Rule 41(a), the Court would not have jurisdiction to enter an order dismissing Plaintiff's claim against Chief Davis. Moreover, Chief Davis would not even entertain a Rule 41(a) dismissal by stipulation unless Plaintiff agrees that such a dismissal would be with prejudice. Fed. R. Civ. P. 41(a)(1)(A)(ii). Plaintiff's tactics are clear—nonsuit Chief Davis in order to get around her qualified immunity

17

protections, then add her as a defendant after discovery is taken from her. The Court should reject this specious attempt at a workaround of the protections of qualified immunity.

In sum, Plaintiff has failed to establish that her proposal for bifurcation would benefit convenience, avoid prejudice, or expedite and economize this action. The opposite is true. Plaintiff's proposal would require two separate trials, months or years apart, by two different juries, hearing the same proof, all the while running a significant risk of inconsistent verdicts, which could ultimately result in reversal of one or both of the verdicts—all of which would prejudice the City Defendants.

### III. ALL POST-DISCOVERY DEADLINES SHOULD BE STAYED PENDING RESOLUTION OF THE CRIMINAL PROCEEDINGS.

At this point, the path forward for this case is clear. The remainder of the case should be stayed pending the resolution of the criminal proceedings and Chief Davis's appeal on qualified immunity. Once those proceedings are complete, the stay in this case should be lifted. The parties then can take any additional discovery needed from the stayed defendants (and vice versa) before moving forward with dispositive motions, expert motions, and preparations for trial. At that point, the Court should bifurcate the trial so that the issue of whether a constitutional violation occurred is tried first; and if so, the same jury will try the issue of whether the City's practices, policies, or customs were the moving force of that violation.

### IV. CONCLUSION

For these reasons, the City Defendants respectfully request the Court deny Plaintiff's Motion to Amend Schedule and Bifurcate Case in its entirety.

Dated: February 16, 2026

                  Respectfully submitted,

                  **BAKER, DONELSON, BEARMAN,
                  CALDWELL & BERKOWITZ, P.C.**

*s/ Bruce McMullen*
Bruce McMullen (#18126)
Jennie Vee Silk (#35319)
Kelsey W. McKinney (#40434)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 526-2000
bmcmullen@bakerdonelson.com
jsilk@bakerdonelson.com
kmckinney@bakerdonelson.com

*Attorneys for Defendant City of Memphis and Chief Cerelyn Davis in her Individual Capacity*

## CERTIFICATE OF SERVICE

I, Bruce McMullen, hereby certify that on February 16, 2026, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, and that upon filing, such system will serve a copy of the foregoing upon all counsel of record in this action.

*s/ Bruce McMullen*
Bruce McMullen