**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| RowVaughn Wells, individually and as Administratrix of Estate of Tyre Deandre Nichols, Deceased<br><br>Plaintiff,<br><br>v.<br><br>The City of Memphis, Chief Cerelyn Davis; Emmitt Martin III; Demetrius Haley; Justin Smith; Desmond Mills, Jr.; Tadarrius Bean; Preston Hemphill; DeWayne Smith,<br><br>Defendants. | ) | Case No.: 2:23-cv-02224-SHL-atc<br>JURY DEMANDED |

**RESPONSE OF DAVID MENDELSON, AS COUNSEL FOR PLAINTIFF, TO THE CITY OF MEMPHIS'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM READ AI**

Comes now Attorney David Mendelson, on behalf of himself and as counsel for Plaintiff RowVaughn Wells, and respectfully submits this Opposition to Defendant City of Memphis's ("City") Motion to Compel Plaintiff to Produce Documents from Read AI (ECF 567). For the reasons set forth below, the Motion should be denied in its entirety.

## Introduction

The City's Motion to Compel is a fundamentally improper attempt to conduct discovery directly against opposing counsel by demanding that counsel hand over information and records that may contain attorney-client privileged information, attorney work product, and information wholly irrelevant to the underlying merits of this litigation, including information pertaining to *other* matters, clients, or cases. This is not a discovery request directed at a party. This is the City

demanding that undersigned counsel, David Mendelson, personally sign an Authorization for Release of Information directed to a third-party technology provider so that the City can go on a fishing expedition in counsel's internal records and materials.

What the City seeks here—to compel opposing counsel to authorize production of his own files or that of a third party—strikes at the heart of the attorney-client relationship and represents an abuse of the discovery process.

The City wants to open a window to into opposing counsel's law practice. The City seeks information plainly unrelated to this case, and indeed, seeks information for *any and every case in this Court*. Such a request is flatly impermissible under every applicable legal standard. Moreover, the Motion seeks to compel a "revocable" authorization from counsel, not strictly production of the documents from counsel.

The City's Motion suffers from multiple fatal defects, each independently warranting denial. First, discovery directed at opposing counsel is strongly disfavored and is permitted only in the most exceptional circumstances under the stringent *Shelton* test—circumstances that are manifestly absent here. Second, the City relies on orders, affidavits, and proceedings from separate and entirely unrelated cases of *Young & White v. City of Memphis*, No. 2:25-cv-02799, as though proceedings in other litigation somehow create discovery obligations in this case. They do not. Third, Read AI itself has lodged comprehensive objections to the City's subpoena that sought nearly identical information, articulating numerous legal and practical barriers to production that the City has simply ignored, including violations of the federal Stored Communications Act. Fourth, the information sought bears no relationship whatsoever to the merits of this civil rights action.

The City's decision to file their Motion in this case reveals their strategy is not a good-faith effort to obtain relevant discovery. The Court should deny this Motion.

**Factual and Procedural Background**

On January 14, 2026, in the consolidated cases of *White & Young*, the Court filed an Order Requiring Counsel to Submit Affidavits.[1] The subject of counsels' affidavits was to identify the scope of the inadvertent use of Read AI program to make "any other recording using Read AI or any other mechanism that violates Local Rule 83.2(a)(1) in this or any other matter before courts in the Western District of Tennessee. . . . [and] have recorded any other non-judicial proceedings in this or the Wells matter without first informing opposing counsel that the interactions would be recorded." (ECF 72, at 3.) Mr. Mendelson filed his Affidavit, in response to the Court's Order, on January 20, 2026, along with an Affidavit of his information technology vendor. Both Affidavits are attached as Collective **Exhibit 1**.

But even before Mr. Mendelson or any other attorney filed their affidavit, the City served a subpoena on Read AI, a third-party technology provider, seeking documents and information regarding counsel's use of Read AI.[2] On January 23, 2026, Read AI, through its counsel Hayden M. Schottlaender of Perkins Coie LLP, responded with a comprehensive letter objecting to the subpoena in its entirety and stating that Read AI would produce no documents in response. (**Exhibit 3**) The documents sought by the Subpoena, as stated on its Exhibit A, are nearly identical to those sought by the authorizations which the City seeks to compel Mr. Mendelson's execution.

[1] The order was filed in 2:25-cv-02799-SHL-atc (ECF 72).

[2] The subpoena was dated January 16, 2026; served January 23, 2026; and demanded compliance by January 26, 2026. (**Exhibit 2**.)

Read AI lodged multiple objections to the Subpoena, which apply equally to the sought-for authorization, including that subpoena was "an indecipherable word salad of technology-adjacent terms devoid of meaning[.]" (**Exhibit 3**.) Furthermore, production of user communications is prohibited by the federal Stored Communications Act, 18 U.S.C. § 2702(a), and that the SCA prohibits Read AI from producing even non-content records to a governmental entity such as the City in response to a subpoena.

Following Read AI's objections, the City abandoned its subpoena to Read AI and instead turned its attention to Plaintiff's counsel. The City reached out to Mr. Mendelson via email on January 23, 2026, requesting that counsel sign authorizations for release of information by Read AI. In response, Mr. Mendelson expressed concerns about the scope of the requested authorization, including that it would "produce information outside the scope of these cases." (*See* ECF 567-4, at 14.) Undeterred by counsel's reasonable objections, the City then propounded Requests for Production of Documents in this case, seeking the same information as the Subpoena, on February 3, 2026, followed by this premature Motion to Compel only 14 days later, on February 17, 2026.

## Argument

I. Discovery From Opposing Counsel Is Strongly Disfavored and the City Has Not Satisfied the *Shelton* Test.

The City's Motion seeks something extraordinary: discovery directed at opposing counsel in pending litigation. This request contravenes well-established legal principles that strongly disfavor such discovery and permit it only in the most exceptional circumstances.

A. The *Shelton* Test Governs the Motion to Compel.

The *Shelton* test governs discovery of opposing counsel of record in litigation. *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002) (citing *Shelton v.*

*Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)). Discovery from a party's attorney is strongly disfavored and should be used only in limited and rare circumstances. *Kattawar v. Logistics & Distribution Services, Inc.*, 2:14-cv-02701-STA-cgc, 2015 WL 11752984, at *4 (W.D. Tenn. Mar. 27, 2015) (citing *Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999)). Indeed, seeking and obtaining discovery from opposing counsel "disrupts the adversarial system and lowers the standards of the profession . . . it also adds to the already burdensome time and cost of litigation." *Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 393 (W.D. Ky. 2007) (quoting *Shelton*, 805 F.2d at 1327). Although the *Shelton* test and its progeny have predominantly been applied to depositions of counsel, Defendants agree that its logic applies equally to the discovery sought in this case.

Before obtaining discovery from an opposing party's counsel, the party seeking the discovery must show: (1) no other means exist to obtain the information; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton*, 805 F.2d at 1327. The *Shelton* test represents a demanding standard that reflects the unique concerns implicated when a party seeks discovery from opposing counsel. To allow discovery without meeting the *Shelton* test would have a "demoralizing" effect on the bar and undermine the adversarial system of trial. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 516 (1947) (J. Jackson, concurring) (discussing discovery requiring counsel to recreate statements of interviewed witnesses pursuant to interrogatories).

B. The City Cannot Satisfy the *Shelton* Test

The City has not asserted any reason it needs Mr. Mendelson's information held by Read AI; how it is relevant to the merits of the case; how that information is crucial to the preparation

of the City's case; or why Mr. Mendelson's Affidavit is not sufficient. The City has not satisfied the *Shelton* test and their Motion should be denied.

i. <u>The City Cannot Satisfy the First Prong: the Information Has Been Provided.</u>

The City claims that "there are no other means to obtain the information regarding Plaintiff's counsel's use of Read AI." This assertion is demonstrably false.

First, the City has already obtained sworn affidavits from all relevant counsel. On January 20, 2026, Mr. Mendelson filed a sworn affidavit in the *Young & White* case addressing his use of Read AI. Attorneys from Romanucci & Blandin also filed sworn affidavits denying any use of Read AI or any other recording or transcription service. These sworn statements constitute evidence under oath regarding counsel's use of Read AI.

Second, Mr. Mendelson has already produced information from Read AI. As counsel stated in correspondence with the City, he has "produced information from ReadAI, through its 'Dashboard' and that information the affidavits I filed show how that information touches these cases." (See ECF 567-4, at 16.) The City has received voluntary production of relevant information. Not only do other means exist to obtain the "relevant" information, but it has been provided already.

Third, to the extent that any judicial proceedings, such as hearings or depositions, have been recorded by Read AI and were also recorded by a stenographer or court reporter, then the official transcript of the proceeding is the easiest method of obtaining such information.

ii. <u>The City Cannot Satisfy the Second Prong: The Information Sought Is Not Relevant and May Be Privileged.</u>

The City asserts that the sought-after material is relevant because it "relates to Plaintiff's counsel's [allegedly] improper and unauthorized use of an AI tool, Read AI, to surreptitiously

record meetings and judicial proceedings." (Motion, at 8.) But to the extent these are statements between counsel or with the Court, they are not "at issue" in the case, as they do not tend to make any fact more or less probable. The City contends that Mr. Mendelson and counsel's alleged "misuse of Read AI" is relevant because the "Court has expressed concerns," but that does not make it relevant to the facts of the case. Further, as the Affidavit of Mr. Mendelson demonstrates, Read AI did not make transcriptions in connection with this case. Therefore, none of the sought-after information is even presumptively relevant.

To the extent that the information sought is greater in scope than simply any recordings of meetings with counsel or court—and to be sure, it is—that information may very well contain privileged or confidential information. The information sought reach client communications or calendar events with third-parties detailing attorney work-product. As noted by Read AI's objections, the scope of the information sought is an "indecipherable word salad" which is too vague for Read AI to form a reasonable response to, and thus full compliance may unintentionally result in production of privileged information.

iii. The City Cannot Satisfy the Third Prong.

The third prong of the *Shelton* test requires the party seeking discovery from opposing counsel to demonstrate that the information sought is "crucial to the preparation of the case." *Nationwide Mut. Ins. Co.*, 278 F.3d at 628. The City has utterly failed to make this showing.

This is a civil rights case arising from the tragic death of Tyre Nichols. The merits of the case concern the conduct of the City of Memphis and its police officers, not the conduct of Plaintiff's counsel. Information regarding the use of Read AI has no bearing whatsoever on the substantive claims and defenses in this litigation.

The City argues that the information is relevant to potential contempt or sanctions proceedings. But sanctions and contempt are collateral matters, not the merits of the case. The *Shelton* test requires that the information be crucial to the "preparation of the case"—meaning the underlying claims and defenses—not to collateral proceedings that the City apparently hopes to initiate against opposing counsel.

Read AI made this point forcefully in its objection letter, noting that "[t]his is a civil rights case concerning the death of Tyre Nichols.[3] Read AI cannot possibly imagine how any data in its possession could have any bearing on that case." The City's request for Read AI materials is wholly disconnected from the merits of this litigation. What is more, the Motion fails to even make a good faith effort to address this prong. It prejudicially conflates other complaints against Plaintiffs' counsel with this issue, and purports to use this Motion in an attempt to address that alleged misconduct. It is not the City's role to broadly investigate alleged "flout[ing]" of "the ethical rules that bind all attorneys."

## II. The City Improperly Relies on Proceedings In a Separate Case.

The City's Motion is replete with references to proceedings in *Young & White v. City of Memphis*, No. 2:25-cv-02799 (W.D. Tenn.), and *White v. City of Memphis*, No. 2:25-cv-02800 (W.D. Tenn.). The City cites orders, affidavits, and other documents from these separate cases to support its Motion in this case. This reliance is improper.

Each case pending before this Court constitutes a separate legal proceeding with its own facts, causes of action, parties, discovery obligations, deadlines, and scope. Orders entered in one case do not create discovery obligations in another case. Affidavits filed in one case are not discovery responses in another case.

---

[3] See Section II, *infra*.

The City's attempt to bootstrap proceedings from *Young & White v. City of Memphis* into discovery obligations in this case conflates separate proceedings and improperly expands the scope of discovery beyond what the Federal Rules of Civil Procedure permit in this case. Discovery in this case must be governed by the discovery requests, objections, and orders in this case. Discovery cannot be governed by what has occurred in other litigation.

The City repeatedly cites this Court's January 2026 Order in *Young & White* requiring counsel to file affidavits regarding their use of Read AI. But that Order was entered in *Young & White*, not in this case. The scope of that Order is limited to the Young & White proceedings. Mr. Mendelson complied with the Court's Order in *Young & White* by filing two sworn affidavits (including his and that of an information technology professional) on January 20, 2026. That affidavit addressed counsel's use of Read AI. The City cannot now use that Order as a basis for additional discovery in this case. If the City believes undersigned counsel violated the Order in *Young & White*, the City's remedy lies in that case, not through a Motion to Compel in this case.

The City's attempt to use affidavits and orders from other cases to support discovery in this case raises fundamental due process concerns. Parties in this case are entitled to know what discovery obligations apply to them in this case. They should not be required to anticipate that statements made or orders entered in other proceedings will be used against them in this case. This is particularly concerning where, as here, the City seeks to use affidavits that counsel filed in compliance with a Court Order in another case as the basis for additional discovery. Counsel filed those affidavits in good faith to comply with the Court's Order. The City should not be permitted to weaponize that compliance by using the affidavits as a springboard for additional discovery demands in a different case.

III. Read AI's Objections Demonstrate that Production Would Violate Federal Law and the Authorization is Ineffectual.

Read AI, through its counsel, lodged comprehensive objections to the City's subpoena. These objections are not mere technical quibbles; they identify fundamental legal barriers to production that the City fails to address in its Motion.

Read AI objected that production of the materials sought by the City would violate the Stored Communications Act ("SCA"), 18 U.S.C. § 2702. The SCA prohibits electronic communication service providers from disclosing the contents of user communications. 18 U.S.C. § 2702(a); *United States v. Warshak*, 631 F.3d 266, 288 (6th Cir. 2010) (holding that compelled production of content by a governmental entity from a provider requires a search warrant).

The Sixth Circuit's decision in *Warshak* is directly on point. The court held that the contents of electronic communications are protected by the Fourth Amendment and that a governmental entity cannot compel their production without a warrant. *Warshak*, 631 F.3d at 288. The City is a governmental entity. It cannot circumvent the SCA's protections by compelling counsel to sign an authorization.

Moreover, Read AI objected that the SCA further prohibits it from producing even non-content records to a governmental entity in response to a Rule 45 subpoena. Courts have consistently held that governmental entities cannot use civil discovery subpoenas to circumvent the SCA's protections. *See Doe v. City of San Diego*, No. 12-cv-0689-MMA (DHB), 2013 WL 2338713, at *4 (S.D. Cal. May 28, 2013) ("[T]he SCA prohibits Verizon from disclosing Plaintiff's 'subscriber information' to the City's counsel of record."); *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 611 (E.D. Va. 2008) ("[G]overnmental entities are

prohibited from using Rule 45 civil discovery subpoenas to circumvent the [SCA]'s protections.").

The City cannot avoid these legal prohibitions by having counsel sign an authorization. The SCA's protections exist to protect user privacy. Those protections do not evaporate merely because a governmental entity demands that a user waive them.

Read AI objected that the City's subpoena was "an indecipherable word salad of technology-adjacent terms devoid of meaning." Read AI noted that it could not reasonably interpret terms like "speaker diarization," "confidence intervals," "payload schemas," "provisioning history," "recording/transcription toggles," or "prompt templates" in the context of the data it retains. Read AI further objected that the subpoena lacked sufficient identifiers for Read AI to even begin to identify a universe of responsive data, noting that Read AI would need to "guess at, e.g., email domains for the Custodians" and that Read AI does not have any reliable way of identifying specific meetings based on attendees.

These objections demonstrate that the City's requests are not reasonably calculated to obtain specific, identifiable information, but are instead an overbroad fishing expedition designed to burden counsel and Read AI. The same defects that rendered the subpoena objectionable render the requested Authorization objectionable.

Read AI objected that the subpoena sought information that is not proportional to the needs of the case. Federal Rule of Civil Procedure 26(b)(1) requires that discovery be proportional to the needs of the case, considering "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

This is a civil rights case concerning the death of Tyre Nichols. No data in Read AI's possession could have any bearing on that case. The City's discovery request is entirely collateral to the merits of this litigation. The burden of compelling counsel to authorize broad production of records from a third-party technology provider far outweighs any conceivable benefit to resolving the substantive issues in this case.

**Conclusion**

For the foregoing reasons, the City's Motion to Compel should be denied in its entirety as to Mendelson, as well as to each and every one of Plaintiff's counsel. Additionally, the Court should award Mr. Mendelson his reasonably attorney's fees and costs incurred in opposing this Motion. Fed. R. Civ. P. 37(a)(5)(B). Mr. Mendelson requests such further and other relief as the Court deems just and proper.

Respectfully submitted,

**ADAMS & REESE, LLP**

*s/ Lucian T. Pera*______________
Lucian T. Pera (TN Bar No. 11641)
John D. Woods III (TN Bar No. 35791)
6075 Poplar Ave., Ste. 700
Memphis, Tennessee 38119
Tel.: (901) 524-5278
Fax: (901) 524-5378
Lucian.Pera@arlaw.com
John.Woods@arlaw.com
*Counsel for David Mendelson*

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that a true and correct copy of the foregoing document was served by U.S. Mail, the Court's electronic filing system, or email by agreement, upon counsel of record.

Dated: March 3, 2026

*s/ Lucian T. Pera*____________________
Lucian T. Pera