IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

ROWVAUGHN WELLS,                    )
    Plaintiff,                  )
                                    )
                                    )
v.                                  )          No. 2:23-cv-02224-SHL-atc
                                    )
THE CITY OF MEMPHIS, et al.,        )
    Defendants.                 )
                                    )

---

**ORDER DENYING PLAINTIFF'S MOTION TO BIFURCATE**

---

Before the Court is Plaintiff RowVaughn Wells's Motion to Amend Schedule and Bifurcate Case, filed February 4, 2026.  (ECF No. 556.)  Defendant City of Memphis and Police Chief Cerelyn Davis (the "City Defendants") responded on February 16.  (ECF No. 565.)  The Court held a status conference on February 17, at which it granted Plaintiff's motion to amend the schedule, held in abeyance its ruling on the issue of bifurcation, and granted Plaintiff leave to file a reply to the City's response.  (ECF Nos. 568, 571.)  Plaintiff filed her timely reply.  (ECF No. 575.)  After being granted leave, Plaintiff filed an amended reply (ECF No. 581), and the City filed a sur-reply (ECF No. 586).  For the reasons explained below, the Motion to Bifurcate is **DENIED**.

**BACKGROUND**

On January 3, 2025, Wells, individually and as administatrix ad litem of the estate of Tyre Deandre Nichols, her son, filed an amended complaint, alleging twenty-nine counts against the City of Memphis and eleven individual Defendants.  (ECF No. 277.)  The amended complaint asserts various degrees of culpability against those Defendants for Nichols' death on

January 10, 2023, three days after he sustained injuries at the hands of several Memphis Police Department officers following a traffic stop.

Several procedural elements in this, and the related criminal case, are relevant to Plaintiff's Motion to Bifurcate.  As for the criminal case, on September 12, 2023, the United States of America returned a four-count indictment against Emmitt Martin III, Tadarrius Bean, Demetrius Haley, Desmond Mills, Jr., and Justin Smith, each of whom was alleged to have been involved in violating Nichols's constitutional rights while working as detectives in the City of Memphis Police Department.  (See United States of America v. Emmitt Martin III, Tadarrius Bean, Demetrius Haley, Desmond Mills, Jr., and Justin Smith, 23-cr-20191-SHL ("Criminal Case").)  Each of those Defendants is also a Defendant in this case.

On November 2, 2023, Mills pleaded guilty to Counts One and Three of the indictment, for deprivation of rights under color of law: excessive force and failure to intervene, and conspiracy to witness tamper.  (See Criminal Case, ECF Nos. 90–92.)  On August 23, 2024, Martin pleaded guilty to the same two counts.  (See id., ECF Nos. 498–500).)  Bean, Haley, and Smith proceeded to a jury trial, which began on September 9, 2024.  (Id., ECF No. 561.)  On October 3, 2024, the jury returned verdicts finding Bean and Smith guilty on Count Four of the indictment for obstruction of justice, and Haley guilty on all four counts.  (Id., ECF No. 627.)  On June 13, 2025, before any of the Defendants were sentenced, the Criminal Case was transferred to the undersigned.  Then, on August 28, 2025, the Court entered an Order Granting Motions for New Trial in the Criminal Case.  (Id., ECF No. 919.)  On September 23, 2025, the Government appealed that order to the Sixth Circuit Court of Appeals.  (Id., ECF No. 946.)  The appeal remains pending.

Meanwhile, on June 26, 2025, this civil matter also was transferred to the undersigned. (ECF No. 438.)  Before it was transferred, however, Judge Norris, who previously presided over the case, entered an order that stayed the civil matter as to Haley, Martin, Bean, Mills, and Smith, reasoning in part that, "[a]bsent any stay, the Indicted Defendants would be forced to decide between an effective defense and fulfillment of their discovery obligations in this matter and the assertion of their Fifth Amendment rights for purposes of their state and federal criminal proceedings."  (ECF No. 110 at PageID 929.)  The matter has remained stayed as to those Defendants since that time.  Although it was likely that the stay would have been lifted following the Defendants' sentencings pursuant to their guilty pleas and guilty verdict, any such chance was indefinitely delayed when the Court ordered a new trial and when that order was subsequently appealed.

On September 30, 2025, the Court entered an order that, among other things, denied Davis's Motion to Dismiss the claims against her in her individual capacity based on an assertion of qualified immunity.  (ECF No. 484.)  Davis appealed that order to the Sixth Circuit Court of Appeals on October 29, 2025 (ECF No. 507), and, the next day, the Court entered an order staying the proceedings against her (ECF No. 510).  That appeal also remains pending.

Given the appeals pending before the Sixth Circuit in this and the Criminal Case,[1] as well as the corresponding stays as to Defendants in this case, Plaintiff asserts that "it is hard to picture trial occurring until well into 2028, if not 2029" under the current schedule.  (ECF No. 556 at PageID 8471.)  To that end, Plaintiff seeks to bifurcate the case, allowing for the case to proceed against the City now, and against the remaining Defendants at whatever point the stays are lifted

---

[1] After the City appealed the Order Granting Motions for New Trial in the Criminal Case, Haley, Smith, Bean, and Martin filed cross appeals.  (Criminal Case, ECF Nos. 950, 951, 955, 956.)

3

and to the extent that claims remain against them.[2]  Plaintiff asserts that "a trial of the officers is

not a necessary predicate for Plaintiff to try her claims against the City."  (Id. at PageID 8479.)

Ultimately, according to Plaintiff, bifurcation will ensure a timely adjudication of her Monell[3]

claims against the City, will reduce confusion and duplication, will not unduly prejudice the City

or the individual Defendants, and the duplication of evidence across multiple trials will be

modest.  (See id. at PageID 8476–83.)

The City opposes bifurcation, asserting that, for Monell claims in the Sixth Circuit, "if

trial in a § 1983 case is bifurcated, the appropriate procedure requires the individual defendants

to be tried first and the municipal defendant to be tried second."  (ECF No. 565 at PageID 8538.)

The City challenges the position that Plaintiff has staked out in her briefing regarding

bifurcation, which is that, although "[t]here is no question that in the ordinary Monell case

bifurcation is officer-first, since a violation usually must be established before Monell's policy

element comes into play," trying the individual officers first in these circumstances is not

---

[2] Plaintiff asserts in her Motion, and did so again at recent status conferences, that, if the
Court adopts her bifurcation proposal, she will dismiss her claims against Davis.  (See id. at
PageID 8467.)  Plaintiff explains that, "[g]iving up her claim against Chief Davis is necessary to
keep the current trial date against the City by enabling Plaintiff to take the deposition of Chief
Davis, who currently enjoys a stay of discovery pending her qualified immunity appeal but will
have no such stay once the claim against her is dismissed."  (Id. at PageID 8477.)  In response to
the Motion and again at the status conferences, Davis's counsel asserts that, to the extent Plaintiff
seeks to dismiss her claims against Davis, that move would be procedurally impermissible.
Defendants assert that, "even if Plaintiff could nonsuit Chief Davis under Rule 41(a), the Court
would not have jurisdiction to enter an order dismissing Plaintiff's claim against Chief Davis,"
given her pending appeal in the Sixth Circuit as to her entitlement to qualified immunity.  (ECF
No. 565 at PageID 8547.)

[3] Establishing a municipality's liability for a constitutional violation "implicates the
familiar principles set forth in Monell v. Department of Social Services," which requires a
plaintiff to demonstrate both that a constitutional violation occurred and the governmental entity
is responsible for that violation.  Graham ex rel. Est. of Graham v. Cnty. of Washtenaw, 358 F.3d
377, 382 (6th Cir. 2004) (citing Monell, 436 U.S. 658, 694 (1978); Doe v. Claiborne Cnty., 103
F.3d 495, 505–06 (6th Cir. 1996)).

necessary because, when Mills and Martin pleaded guilty to violating Nichols's Fourth Amendment rights, it established the predicate constitutional claim necessary to proceed with its Monell claims against the City.  (ECF No. 581 at PageID 8933.)

According to the City, Plaintiff's assertion that the City would be collaterally estopped from challenging the first element of a Monell claim, that is, that a constitutional violation is established based on Mills and Martin's guilty pleas, relies on non-binding authority and, in any event, is contrary to the law on collateral estoppel.  (See ECF No. 586.)  More generally, the City asserts that, "[w]hile a different burden of proof applies in criminal cases, it cannot be presupposed that a jury in this case will necessarily find a constitutional violation."  (ECF No. 565 at PageID 8542 n.5.)

## APPLICABLE LAW

Under the Federal Rules of Civil Procedure, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."  Fed. R. Civ. P. 42(b).  Only one of these criteria need be met to justify bifurcation.  Saxion v. Titan-C-Mfg., Inc., 86 F.3d 553, 556 (6th Cir. 1996) (citing MCI Commc'ns Corp. v. Am. Tel. & Tel. Co., 708 F.2d 1081, 1177 (7th Cir. 1983)).  Courts can consider several additional factors in determining whether bifurcation is appropriate, including "the possible confusion of the jury, whether the evidence and issues sought to be bifurcated are substantially different, and whether bifurcation would enhance settlement."  Farmers Bank of Lynchburg, Tenn. v. BancInsure, Inc., No. 2:10-cv-02222-dkv, 2011 WL 2023301, at *1 (W.D. Tenn. May 20, 2011) (citing Wilson v. Morgan, 477 F.3d 326, 339 (6th Cir. 2007); Kelley v. Steel Transport, Inc., 2011 WL 1690066, *4 (E.D. Mich. May 4, 2011)).

"[T]he party moving to bifurcate bears the burden of demonstrating that bifurcation is appropriate." Id. (citation omitted). "The Sixth Circuit has determined that the decision to grant or deny bifurcation is well within the discretion of the trial judge." SCF, LLC v. Hartford Fire Ins. Co., No. 1:20-cv-01173-JDB-jay, 2021 WL 4206624, at *3 (W.D. Tenn. Sept. 15, 2021) (citing Saxion, 86 F.3d at 556). However, "[b]ifurcation is the exception to the general rule that disputes should be resolved in a single proceeding and should be ordered only in exceptional cases." Woods v. State Farm Fire & Cas. Co., No. 2:09-CV-482, 2010 WL 1032018, at *1 (S.D. Ohio Mar. 16, 2010) (citation omitted).

## ANALYSIS

Although Plaintiff raises legitimate concerns regarding delays in this case absent bifurcation, this is not a case that warrants an exception to the general rule counseling against bifurcation. The Parties' briefing touches on the various factors courts consider when determining whether a case should be bifurcated, but the bulk of their arguments focus on the potential prejudice and injustice that would befall Plaintiff if the case is not bifurcated.

Plaintiff's strongest argument is that, by bifurcating the case, she will avoid the prejudice that is likely to accompany the delay in resolving her claims, as well as the potential that evidence will be degraded. (ECF No. 556 at PageID 8476; see also ECF No. 581 at PageID 8932 ("And while we wait, the passage of time will inevitably destroy evidence Plaintiff needs to prove her Monell claims.").) Defendants counter that conducting two separate trials months or years apart, and the risk of inconsistent verdicts that could accompany separate trials, would prejudice it.

While it is the case that Plaintiff may be prejudice by the passage of time, the risk of prejudice to the City Defendants is significant if the Court were to bifurcate the case and proceed

6

to trial this fall on the <u>Monell</u> claims.  That is because Defendants, like Plaintiffs, have been unable to conduct discovery as to the individual officer defendants while the stays have remained in effect.

Defendants assert that they need discovery from the officers to proceed to summary judgment—and, presumably, to trial after that, if necessary.  (ECF No. 565 at PageID 8547.) Defendants assert that they "need to question the stayed Defendants who accepted plea deals with the Department of Justice in exchange for their testimony at the" trial in the Criminal Case, and, because they "were not able to cross-examine those witnesses during their criminal trials," they would be "prejudiced by having to proceed to summary judgment without the benefit of cross-examination of those Defendants as to their motivation for their testimony about certain alleged practices as well as the customs of the Memphis Police Department."  (<u>Id.</u> at PageID 8546–47.)

Plaintiff counters that the prejudice Defendants identify is "vague and indeterminable," that "locating the prejudice in an <u>inability</u> to question the officers is a recipe for truly interminable delay," and the "logic of the City's position requires staying the trial against <u>it</u> until every such appeal is truly exhausted, many more years down the road."  (ECF No. 581 at PageID 8935.)

It is true, as Plaintiff points out, that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify."  (<u>Id.</u> at PageID 8936 (quoting <u>Doggett v. United States</u>, 505 U.S. 647, 655 (1992).)  Memories may fade, witnesses may become unavailable over time, and degradation of evidence may cut against the party with the burden—here, Plaintiff.  But any such prejudice would not solely fall on the Plaintiff.  Here, "both parties could suffer due to the passage of time."  <u>See</u> <u>In re Ohio Execution</u>

Protocol Litig., 2015 WL 13778476, at *3 (S.D. Ohio Sept. 24, 2015) (quoting Hinfin Realty

Corp. v. Pittston Co., 206 F.R.D. 350, 357 (E.D.N.Y. 2002)).  At the same time, the parties have

already engaged in immense amounts of discovery, including dozens of depositions and

discovery requests that have resulted in the exchange of thousands of pages of documents.

Although it is unlikely that the already-conducted discovery represents the entire universe of

evidence that Plaintiff would rely on at trial, that evidence is fixed in time, so much so that

Plaintiff asserts she can be ready for a trial against the City by November.  Given this, although

there is some risk of evidence degradation absent bifurcation, the reliability of the trial would not

be compromised based on the passage of time.[4]

Plaintiff also challenges Defendants' argument that bifurcating the cases in the manner

Plaintiff proposes runs afoul of Sixth Circuit precedent.  Plaintiff acknowledges the standard

approach in the Sixth Circuit for bifurcation in § 1983 cases is the one that Defendants describe:

trying the individuals first to determine whether a constitutional violation occurred, before

proceeding in the second portion of the trial to establish whether a municipality's custom or

practice led to that violation.[5]  But Plaintiff asserts that the City's reliance on that approach

---

[4] Plaintiff also asserts that, although "the City says it wants to question the officers . . . , it never explains how the resulting testimony would affect summary judgment or the trial." (ECF No. 581 at PageID 8935.)  But it is not very difficult to imagine how testimony from the officers might serve Defendants in the case against them.  For instance, the officers may offer testimony that contradicts evidence Plaintiff might present that speaks to the custom or policy that led to Nichols being beaten.  Plaintiff's argument that a stay is not necessary simply because the witnesses Defendants want to call may invoke the Fifth Amendment is similarly unpersuasive. The cases that it cites are unpublished decisions from other jurisdictions and are distinguishable. Most obviously, the court in Deloitte Consulting LLP v. Sagitec Sols. LLC, at *4 (D. Del. Sept. 15, 2023), explained that, unlike here, no party to the civil case had been indicted, citing to 650 Fifth Avenue, 2011 WL 3586169 (S.D.N.Y. Aug. 12, 2011), another one of Plaintiff's authorities, and another case where no defendant had been indicted.  That is obviously not the case here.

[5] Defendants assert that the appropriate approach here is to stay this matter pending the resolution of the Criminal Case and Davis's qualified immunity appeal.  If the case proceeds to

ignores the elephant in the room: "two of the five officers who beat Tyre Nichols have already pleaded guilty to violating his Fourth Amendment rights." (ECF No. 581 at PageID 8932.) Thus, Plaintiff argues, "the pleas alone establish the predicate (an underlying constitutional violation) necessary to proceed with the Monell case against the City, and to do so now." (Id.) Defendants counter that Mills and Martin's guilty pleas in the Criminal Case do not collaterally estop them from litigating the first prong of Monell in this case.

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Coleman v. Indymac Venture, LLC, 966 F. Supp. 2d 759, 775 (W.D. Tenn. 2013) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)). A party seeking to invoke collateral estoppel must satisfy four requirements:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;[] (2) determination of the issue must have been necessary to the outcome of the prior proceeding;[] (3) the prior proceeding must have resulted in a final judgment on the merits;[] and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

N.A.A.C.P., Detroit Branch v. Detroit Police Officers Ass'n (DPOA), 821 F.2d 328, 330 (6th Cir. 1987). Plaintiff's argument is based on offensive collateral estoppel, that is, where "a plaintiff is seeking to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 329 (1979). A party can invoke offensive collateral estoppel, but trial courts have broad discretion to determine when it should be applied. Id.

---

trial after the stay is lifted, Defendants assert that it should then be bifurcated consistent with the Sixth Circuit precedent. (ECF No. 565 at PageID 8548.)

Defendants assert that, not only is Plaintiff's attempt to invoke offensive collateral estoppel improper given that it was Mills and Martin, not the City, who previously had claims litigated against them, but also Plaintiff has failed to satisfy the third and fourth prongs of the collateral estoppel analysis.

Here, not only did the City Defendants not have the full and fair opportunity to litigate— or lose—the claims that Plaintiff has asserted against them, but, as Defendants point out, because the officers have not been sentenced in the Criminal Case, a final judgment has not been reached on the merits. See United States v. Mattice, No. 17-4276, 2018 WL 2945942, at *1 (6th Cir. June 11, 2018) ("Final judgment in a criminal case means sentence. The sentence is the judgment.") (quoting Berman v. United States, 302 U.S. 211, 212 (1937)).[6] Plaintiff's attempt to invoke collateral estoppel to prevent the City Defendants from raising the issue as to whether there was a constitutional violation based on Mills and Martin's guilty pleas is, at the least, premature, and, in any event, provides an improper basis for bifurcating the case.[7]

Plaintiff's remaining arguments also do not warrant bifurcating the case. Bifurcation will not reduce confusion and duplication, as Plaintiff suggests. Although Plaintiff argues that

---

[6] Plaintiff relies on another out-of-circuit case, Pizzuto v. County of Nassau, 239 F. Supp. 2d 301 (E.D.N.Y. 2003), to support her argument that the City should be precluded from challenging that the first Monell prong has been met. (See ECF No. 581 at PageID 8932.) But that case, as Defendants explain, is distinguishable from this one because there the parties were the same in both the criminal and civil cases, and "the question there was whether the officers who pleaded guilty would be estopped from challenging their own civil liability in the face of" their guilty pleas. (ECF No. 586 at PageID 8984.) That is not the case here.

[7] Plaintiff relies on the City's press release that explained that the officers involved in the Nichols' beating used excessive force as further evidence establish a constitutional violation. That reliance is unpersuasive. The press release explained that, "[a]fter a thorough review of the circumstances surrounding this incident, we have determined that five (5) MPD officers violated multiple department policies, including excessive use of force, duty to intervene, and duty to render aid." (ECF No. 556-2 at PageID 8490.) That document may establish a finding of a violation of departmental policies, and might be used as evidence at trial to suggest more, but it does not on its face establish a constitutional violation.

10

Defendants overstate the risk that there may be inconsistent verdicts if the case is bifurcated, the argument reveals the duplicative nature of having two trials.  Plaintiff explains that there is not perfect overlap between the <u>Monell</u> claims against the City Defendants and claims for individual liability under § 1983.  But the foundation of both is a constitutional violation.  So, although it is true, as Plaintiff suggests, that <u>Monell</u> "does not ask who did what," both proposed trials require the establishment of the "what" that is at issue here: a constitutional violation.  Plaintiff suggests that "the first (<u>Monell</u>) jury will never be asked to decide which individual officer did or did not violate Mr. Nichols' rights," whereas "[t]he second (officer) jury thus will never confront a scenario where the first jury has already decided that a particular officer violated Mr. Nichols' rights."  (ECF No. 581 at PageID 8934.)  Not only does that raise the issue of inconsistent verdicts, contrary to Plaintiff's assertion, but, as important, it is the opposite of judicial economy.  There would be significant evidentiary overlap if the case were bifurcated, and, given what would inevitably be two lengthy trials, would not be an efficient use of the Court or the Parties' resources.

For all of the foregoing reasons, Plaintiff has failed to meet the high burden of establishing that bifurcating the case is warranted.  Accordingly, her Motion to Bifurcate is **DENIED**.

At the conclusion of her Amended Reply in Support of Her Motion for Bifurcation, Plaintiff asks that, "[i]f the Court decides to deny Plaintiff's bifurcation motion, Plaintiff respectfully requests a status hearing within 7 days of the Court's decision.  This would give Plaintiff an opportunity to decide whether to move to sever and dismiss the defendant officers from this case, contemplate the resulting scheduling implications, and confer with the defendants about these matters."  (ECF No. 581 at PageID 8936 n.3.)  As noted, Defendants assert that the

11

case should be stayed  pending the resolution of the criminal proceedings and Davis's appeal on qualified immunity.

Before the Court determines the path the case will take going forward, the Parties shall confer about the next steps.  To that end, Plaintiff's request for a status hearing is **GRANTED**. The hearing will be held at 3 p.m. March 23, 2026, in Courtroom 1.  Prior to the hearing, the Parties shall confer about the next steps in the schedule and be ready to discuss them with the Court.

**IT IS SO ORDERED,** this 17th day of March, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

12