**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

| | | |
|---|---|---|
| **ROWVAUGHN WELLS, individually and as Administratrix ad Litem of the Estate of TYRE DEANDRE NICHOLS, deceased,** | ) ) ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 2:23-cv-02224-SHL-atc** |
| | ) | |
| **THE CITY OF MEMPHIS, a municipality, *et al.*,** | ) ) | |
| | ) | |
| **Defendants.** | ) | |

---

### ORDER ON THE CITY'S MOTIONS TO COMPEL

---

Before the Court by Orders of Reference are two motions and related filings.[1]  The first is Defendant City of Memphis's Motion to Compel Production of Documents Pursuant to the City's Subpoenas *Duces Tecum* Propounded to Rodney Wells, Keyana Dixon, and Lenge Dupree, filed on April 10, 2025 ("the Subpoena Motion").  (ECF No. 383.)  Plaintiff RowVaughn Wells responded in opposition on May 1, 2025. (ECF No. 408.)[2]  The second is the City's Motion to Compel Plaintiff Pursuant to the City's Fourth, Fifth, and Ninth Requests for Production of Documents, filed on July 17, 2025 ("the RFP Motion").  (ECF No. 453.)  Plaintiff responded in opposition on August 7, 2025.  (ECF No. 466.)  Then, on August 29, 2025, Plaintiff filed a Status Report and Notice of Correction regarding her Response to the City's RFP Motion.

---

[1] The motions discussed herein were referred to the undersigned for determination at ECF Nos. 384 and 464.

[2] For ease of reference herein, the Court will refer to RowVaughn Wells as "Plaintiff" and Rodney Wells as "Mr. Wells."

(ECF No. 476.)  With leave of Court, the City filed a Reply to Plaintiff's Status Report on

September 11, 2025.  (ECF No. 479.)

Pursuant to the Court's Order Setting Hearing on Motions and Requiring Further

Consultation and Joint Notice (ECF No. 528), the parties filed a Joint Status Report on

January 12, 2026 (ECF No. 540).  The parties indicated that they had not resolved any issues

concerning the City's Subpoena Motion.  As to the City's RFP Motion, Plaintiff had provided

the City with an inventory "identifying which documents produced [were] responsive to

particular requests," but otherwise the parties had not resolved any issues.  (ECF No. 540, at 1–

2.)  During a hearing on January 15, 2026, the City confirmed that it had not sought to enforce

the subpoena as to Dupree in California, and Plaintiff confirmed that she is withholding some

documents responsive to the discovery requests at issue in the RFP Motion.  (ECF No. 542.)

For the reasons set forth below, the City's Subpoena Motion and RFP Motion are granted

in part and denied in part.

## BACKGROUND

At issue in the City's Subpoena Motion are three subpoenas issued to Mr. Wells,

Plaintiff's Husband and Tyree Nichols's step-father; Dixon, Plaintiff's daughter and Nichols's

sister; and Dupree, Plaintiff's son and Nichols's brother.  (ECF No. 383.)  The subpoenas seek

their communications with Nichols, Plaintiff, Plaintiff's counsel, and others concerning multiple

topics including, among other things, this lawsuit, their relationship with Nichols, the

administration of Nichols's estate, and Nichols's minor child.  (ECF Nos. 383-1, 383-2, 383-3.)

In its RFP Motion, the City seeks to compel Plaintiff to respond to numerous production

requests across its Fourth, Fifth, and Ninth RFPs, including (1) production of numerous items

from Nichols's car from the time of his death for forensic testing; (2) communications with or

2

concerning third parties identified in the First Amended Complaint that allegedly experienced

misconduct by the Memphis Police Department ("MPD"); (3) communications with or

concerning three former MPD officers who testified during the related criminal trial about

MPD's alleged culture and practices; (4) communications with court staff; and

(5) communications with the Department of Justice ("DOJ").  (ECF Nos. 454, 466.)

## ANALYSIS

### I.    Standard of Review

In the Sixth Circuit, "the scope of discovery is extremely broad under the Federal Rules

of Civil Procedure and is . . . within the broad discretion of the trial court."  *Clark Constr. Grp.,*

*Inc. v. City of Memphis*, 229 F.R.D. 131, 137 (W.D. Tenn. 2005) (citations and quotations

omitted).  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to

any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P.

26(b)(1).  "The party seeking discovery is obligated to demonstrate relevance."  *Fusion Elite All*

*Stars v. Nfinity Athletic LLC*, No. 2:20-cv-02600-SHL-tmp, 2022 WL 1175691, at *3 (W.D.

Tenn. Apr. 20, 2022) (citing *Johnson v. CoreCivic, Inc.*, No. 2:18-cv-01051-STA-tmp, 2019 WL

5089086, at *2 (W.D. Tenn. Oct. 10, 2019)).  Relevance is defined broadly, and Rule 26(b)(1)

provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant

to any party's claim or defense and proportional to the needs of the case."  *Solve Together, LLC*

*v. Fedex Corp.*, No. 2:22-cv-02680-JTF-atc, 2023 WL 8605334, at *2 (W.D. Tenn. Nov. 20,

2023.  "Showing relevance is an 'extremely low bar,'" and evidence is relevant "if it has '*any*

tendency to make a fact more or less probable.'"  *Cain v. City of Detroit*, No. 20-cv-11099, 2022

WL 3337135, at *1 (E.D. Mich. Apr. 22, 2022) (quoting *In re Ford Motor Co. Spark Plug & 3-*

*Valve Engine Prod. Liab. Litig.*, 98 F. Supp. 3d 919, 925 (N.D. Ohio 2014)).

3

If relevance is shown, "the party resisting discovery bears the burden of demonstrating why the request is unduly burdensome or otherwise not discoverable under the Federal Rules." *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 310 (W.D. Tenn. 2008) (collecting cases). To determine whether discovery is unduly burdensome or not proportional to the needs of the case, "six factors are relevant to proportionality: (1) 'the importance of the issues at stake in the action;' (2) 'the amount in controversy;' (3) 'the parties' relative access to relevant information;' (4) 'the parties' resources;' (5) 'the importance of the discovery in resolving the issues;' and (6) 'whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Johnson v. CoreCivic, Inc.*, No. 18-cv-1051-STA-tmp, 2019 WL 5089086, at *2 (W.D. Tenn. Oct. 10, 2019) (quoting Fed. R. Civ. P. 26(b)(1)).

**II.     The City's Subpoena Motion**

     A.     <u>The Dupree Subpoena</u>

Plaintiff objects to the Dupree Subpoena because this Court lacks jurisdiction to enforce it under Federal Rule of Civil Procedure 45(d), as the Subpoena's place of compliance and Dupree's residence is Sacramento, California. (ECF No. 408, at 5.) On this point, Plaintiff is correct. "While subpoenas 'must issue from the court where the action is pending,' the place of compliance for the production of documents is 'a place within 100 miles of where the person [or company] resides, is employed, or regularly transacts business in person.'" *Interstate Corp. v. Enviro USA, Inc.*, No. 2:23-cv-02625-SHL-atc, 2024 WL 2178832, at *1 (W.D. Tenn. Apr. 12, 2024) (quoting Fed. R. Civ. P. 45(a)(2), 45(c)(2)(A)).

Rule 45 requires that motions to quash or enforce a subpoena must be brought in "the federal district that has jurisdiction over the place of compliance listed on the subpoena." *Id.* (citing *Fitzgerald Truck Parts & Sales, LLC v. United States*, No. 2:20-cv-00026, 2023 WL

4

1974720, at *2 (M.D. Tenn. Feb. 13, 2023)) ("[A]ny motion practice regarding this specific subpoena must be brought in an appropriate forum in [the district of compliance]."); *see also Thompson Props., LLC v. Farmers State Bank*, No. 1:23-cv-624, 2023 WL 9118646, at *1 (W.D. Mich. Dec. 5, 2023) ("[A] motion to compel compliance with a subpoena must be filed in 'the district where compliance is required.' . . . [T]his district is not the proper district for the motion because it is not the district where compliance is required or where the discovery is or will be taken." (quoting Fed. R. Civ. P. 45(d)(2)(B)(i))).  Because Sacramento is the place of compliance, as well as Dupree's residence, any motion practice relating to the subpoena must be brought in the Eastern District of California, and this Court lacks jurisdiction to consider the Motion.  As a result, the Subpoena Motion is denied as to the Dupree Subpoena.

B.     Request 1 to Mr. Wells[3]

Request 1 seeks Mr. Wells's communications with Nichols from January 1, 2022, through January 7, 2023.  (ECF No. 38-3, at 6.)  Plaintiff objects to providing all such communications about anything, with no subject-matter limitation.  (ECF No. 408, at 8.)  The City maintains that the documents are necessary because Plaintiff has indicated that Mr. Wells will testify about Nichols's "life and aspirations," "strength and capacity to work," and "personal habits of sobriety and industry."  (ECF No. 383, at 8.)  The City also argues that, even beyond those topics, "the volume of communications between Mr. Wells and Mr. Nichols will be revealing as to the nature and extent of their relationship."  (*Id.*)

_____

[3] In her Response, Plaintiff does not raise specific objections as to the similar Request 1 to Dixon.  (*See* ECF No. 408, at 8.)  The parties have not disclosed, however, whether Dixon has produced documents responsive to Request 1.  To the extent she has not already done so, she is ordered to do so by April 30, 2026.  In addition, though Request 1 to Dixon seeks her communications with Nichols from January 1, 2019, through January 7, 2023 (ECF No. 383-1, at 6), the City has agreed to limit it to January 1, 2022 to January 7, 2023 (ECF No. 383, at 9).

Given the topics Plaintiff expects Mr. Wells to testify about, the Court has already ruled that the City is entitled to obtain this type of discovery.  In a prior discovery dispute, Plaintiff sought to quash subpoenas the City issued to the Volkers, who were family friends of Nichols. (ECF No. 483, at 10.)  As the Court ruled in that dispute, because Plaintiff has put Nichols's "life and aspirations," "strength and capacity to work," and "personal habits of sobriety and industry" at issue, the City is entitled to discover communications from those close to Nichols who are likely to have information on those topics, such as his step-father.  (*Id.* at 10–11.)  Indeed, Plaintiff essentially repackages the same relevancy and undue-burden arguments in this dispute as she made with respect to the Volker subpoenas, which the Court has already rejected. (*Compare* ECF No. 211, at 8–14, *with* ECF No. 408, at 13–16.)

Furthermore, considering the six Rule 26(b)(1) factors, Plaintiff has not sufficiently shown that the subpoenaed information would be unduly burdensome to produce or is not proportional to the needs of the case.  The issues at stake are of high importance, the amount in controversy is significant, Mr. Wells has greater access to the information than the City, and, as just discussed, the information may prove important to resolving some of the damages questions in this case.  Though the City undoubtedly has greater resources than Mr. Wells, that factor is not weighty enough to overcome the rest, and the parties do not address what burden or expense would be associated with production or whether those downsides outweigh the benefits.

But the City's request goes too far.  By failing to limit the communications it seeks from Mr. Wells in any way, the City exceeds the bounds of relevance and proportionality.  The City's assertion that the sheer volume of communication will be indicative of Mr. Wells's relationship with Nichols is simply too speculative to support such a broad request.  As such, the Subpoena Motion is granted as to Request 1 to Mr. Wells, but only as to his communications with Nichols

6

related to Nichols's "life and aspirations," "strength and capacity to work," and "personal habits

of sobriety and industry" from January 1, 2022, through January 7, 2023. Mr. Wells is ordered

to produce responsive documents by April 30, 2026.

C.    Request 2 to Dixon and Mr. Wells

Request 2 seeks all communications between Dixon/Mr. Wells and Nichols's minor

child's mother regarding Nichols, the minor child, the incident giving rise to this lawsuit, and

this litigation from January 1, 2019, to the present. (ECF No. 383-1, at 6; ECF No. 383-3, at 6.)

Plaintiff represents that Dixon and Mr. Wells "have completed reasonably diligent searches for

the requested information and have not located any responsive documents in their possession,

custody, or control." (*Id.* at 11.) Therefore, the Subpoena Motion as to Request 2 is denied as

moot. *See Keyes v. Circuit Playhouse, Inc.*, No. 2:19-cv-02788-MSN-atc, 2021 WL 6752198, at

*1 (W.D Tenn. Nov. 4, 2021) ("[T]he court cannot compel a party to produce what does not

exist." (quoting *Dancy v. Lanxess Corp.*, No. 19-cv-02690-SHL-tmp, 2020 WL 5262311, at *2

(W.D. Tenn. Sept. 3, 2020)).

D.    Requests 3–8 to Dixon

These requests seek Dixon's communications with Plaintiff, Mr. Wells, Plaintiff's

counsel, and others relating to, among other things, the minor child, a GoFundMe fundraiser

created following Nichols's death, the administration of Nichols's estate, the mother of the minor

child, and this lawsuit.[4] (ECF No. 383-1, at 6–7.) As discussed above, Plaintiff's arguments

regarding the production of this information have already been rejected by the Court. (ECF

---

[4] With respect to Requests 3 and 4, the City originally sought Dixon's communications with
Plaintiff and Mr. Wells regarding Nichols. (ECF No. 383-1, at 6–7.) The City has agreed,
however, to limit these requests by not seeking such communications regarding Nichols. (ECF
No. 383, at 13, 15.)

7

No. 483, at 10–11.)  The Court has determined such topics are appropriate avenues of discovery

with respect to the Volker family, and the same conclusion applies as to Dixon, Nichols's sister

and Plaintiff's daughter, who is likely to be an important source of information on such topics.

The Subpoena Motion is therefore granted with respect to Requests 3–8 to Dixon, and she is

ordered to produce responsive documents by April 30, 2026.[5]

>        E.        Requests 3–7 to Mr. Wells

Substantively, the same conclusion reached above as to Requests 3–8 to Dixon applies to

Requests 3–7 to Mr. Wells.  Plaintiff additionally argues, however, that Mr. Wells's

communications with her are protected by the spousal (or martial communications) privilege.

"The marital communications privilege protects confidential communications made by one

spouse to another during the marriage, and this privilege is assertable by either spouse." *Dodd v.*

*Hendrickson USA, LLC*, 349 F.R.D. 286, 303 (W.D. Ky. 2025) (citing *United States v. Porter*,

986 F.2d 1014, 1018 (6th Cir. 1993)).  "Courts generally hold that a spouse seeking to invoke

this privilege has waived it only if that spouse has intentionally disclosed the content of the

confidential communications."  *Id.* (citing *United States v. Bahe*, 128 F.3d 1440, 1443 (10th Cir.

1997)).

The City briefly argues that the spousal privilege does not apply, as "Plaintiff should not

be allowed to use the spousal privilege as a shield in discovery and also use Mr. Well's

testimony about his wife as a sword to amplify Plaintiff's damages."  (ECF No. 383, at 14.)  The

---

[5] Requests 3 and 4 to Dixon seek communications from January 1, 2019, to the present, and
Requests 5–8 do not contain a time limitation. (ECF No. 383-1, at 6–7.)  In light of the City's
agreement to "make similar [time] limitations to similar requests" (ECF No. 383, at 9), the Court
limits Requests 3–8 to January 1, 2022, to the present.  Though the City specifically offered to
narrow Request 6 to only "January 1, 2019 to present" (ECF No. 383, at 17), it failed to justify
that longer time period, and thus Request 6 will be limited to the same time period as the others.

City cites no case law, and the Court is aware of none, that stands for such a sweeping

proposition.  Rather, as correctly argued by Wells (ECF No. 408, at 11–13), the spousal privilege

was not waived when Mr. Wells was listed in Plaintiff's Rule 26(a)(1) disclosures.  *See, e.g.*, *Su

v. Tosh Pork, LLC*, No 1:24-cv-01038-STA-jay, 2024 WL 5701507, at *4–5 (W.D. Tenn.

Dec. 19, 2024) (holding that the martial communications privilege was not waived when a

spouse testified at a preliminary injunction hearing about the subject matter of the lawsuit);

*Jones-McNamara v. Holzer Health Sys.*, No. 2:13-cv-616, 2014 WL 4805412, at *2–4 (S.D.

Ohio Sept. 26, 2014) (holding that the martial communications privilege was not waived when a

spouse was listed as a potential trial witness); *Whitney v. City of Milan, Tenn.*, No. 1:09-cv-

01127-JDB-egb, 2014 WL 11411675, at *2–3 (W.D. Tenn. Feb. 27, 2014) (holding that the

martial communications privilege was not waived when a spouse was listed as a witness in

Rule 26(a)(1) initial disclosures).

 Mr. Wells may claim the martial communications privilege with respect to otherwise

responsive documents.  In so doing, a privilege log must be produced as to each responsive

document withheld under the privilege.  *See ChampionX, LLC v. Resonance Sys., Inc.*, No. 3:21-

cv-288-TAV-jem, 2024 WL 1235551, at *5–7 (E.D. Tenn. Jan. 18, 2024) (discussing the

necessity and importance of privilege logs in the context of the martial communications

privilege).  Otherwise, the Subpoena Motion is granted with respect to Requests 3–7 to Mr.

Wells, and he is ordered to produce responsive documents (and a privilege log) by April 30,

2026.[6]

---

[6] Similar to Requests 3–8 to Dixon, the Court limits the time period of Requests 3–7 to Mr.
Wells to January 1, 2022, to the present.

**III.    The City's RFP Motion**

    A.    <u>Production of Items from Nichols's Car</u>

In RFP No. 161, the City seeks to compel Plaintiff to produce eleven items located in Nichols's car on the night of his death for forensic testing.  (ECF No. 454, at 4–6.)  Wells argues that the City has failed to establish the relevance of such testing with respect to Nichols's alleged drug use.  (ECF No. 466, at 6–9.)  The Court has already determined, however, that Plaintiff put Nichols's "personal habits of sobriety and industry" at issue in this case.  As Plaintiff concedes that some evidence exists that Nichols used marijuana, including on the night of his death (*id.* at 7–8), the forensic testing sought by the City is relevant.  The City's Motion is granted as to RFP No. 161, and Plaintiff is ordered to produce the items for forensic testing by April 30, 2026.

Plaintiff also objects that the City does not specify the type of testing sought.  (ECF No 466, at 3–9.)  As to a digital camera, the City seeks "to determine when the photographs on the camera were deleted" (ECF No. 454, at 5), but the City has not specified a testing protocol for the other items, though Plaintiff concedes that the City seeks to test these items for "narcotics" (ECF No. 466, at 5).  The parties are therefore ordered to consult and agree upon a testing protocol for the items in RFP No. 161 by April 14, 2026.

    B.    <u>Communications with Third Parties Identified in the Amended Complaint</u>

RFP Nos. 46–126 seek production of communications between Plaintiff and various individuals identified in the Amended Complaint that allegedly "were subject to the same alleged misconduct by the City and MPD as the misconduct alleged regarding Mr. Nichols."  (ECF No. 454, at 6.)  Plaintiff objects to these requests because the wording of the requests would arguably capture counsel's internal case-investigation strategy and implicate work-product

10

concerns.[7]  (ECF No. 466, at 10–15.)  Plaintiff also contends that responding to these requests at all would reveal the names of witnesses interviewed by counsel, further implicating work-product concerns.  (*Id.* at 13–15.)

The work-product doctrine was first adopted in *Hickman v. Taylor*, where the Supreme Court explained that "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney."  329 U.S. 495, 510 (1947).  In describing the contours of the doctrine, the Court stated that

> it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.  Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.

*Id.* at 510–11.

The work-product doctrine has been codified in Rule 26(b)(3)(A).  With certain exceptions, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A).  At the same time, "[d]ocuments prepared in the ordinary course of business are not covered.  Thus, a document will not be covered if it would have been prepared in substantially the same manner irrespective of the anticipated litigation."  *Volkswagon AG v. Dorling Kindersley Pub., Inc.*, No. CIVA 05-CV-72654-DT, 2007 WL 188087, at *3 (E.D. Mich. Jan. 22, 2007) (citing *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006)).  The

---

[7] Wells does not dispute that written statements made by these individuals are not protected by the work-product doctrine.  (ECF No. 466, at 14.)  The Court therefore presumes that any such written statements that are responsive to these requests have already been produced.  If not, they must be produced immediately.

Sixth Circuit applies the so-called "because of" test as the standard for determining whether documents were prepared in anticipation of litigation, that is, whether they were "prepared or obtained *because of* the prospect of litigation." *Roxworthy*, 457 F.3d at 593 (quoting *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998)).

Courts have generally found two types of work product: opinion and fact work product. *Bose v. Rhodes Coll.*, No. 16-cv-02308-JTF-tmp, 2017 WL 4479258, at *9 (W.D. Tenn. Oct. 6, 2017), *aff'd sub nom. Bose v. De La Salud Bea*, 2017 WL 11358732 (W.D. Tenn. Nov. 9, 2017)). Opinion work product, which applies to "an attorney's mental impressions, opinions, conclusions, judgments, or legal theories," is not discoverable absent a waiver. *Id.* (citations omitted). Fact work product is only discoverable "upon a showing of substantial need and inability to otherwise obtain [the evidence] without material hardship." *Id.* (quoting *Columbia/HCA*, 293 F.3d at 294) (alteration in original).

As an initial matter, the City argues that Plaintiff has waived work-product protection by failing to invoke it when she first responded to the RFPs. (ECF No. 454, at 12–13.) However, as correctly argued by Plaintiff, it was not until the parties' Rule 37 enforcement correspondence that Plaintiff realized that the City sought responsive documents from not only Plaintiff herself but also her counsel. (ECF No. 466, at 12–13.) The Court thus finds no waiver of the work-product doctrine as to those documents.

As to the substance of the requests, to the extent the RFPs seek documents exchanged between Plaintiff's counsel and the third parties identified in the Amended Complaint, Plaintiff must either produce responsive documents or a privilege log that shows the grounds for her assertion of the work-product doctrine. Though it may be true, as Plaintiff argues, that work-product concerns could be implicated by requests to reveal the identity of otherwise unknown

12

witnesses interviewed by counsel (*id.* at 13–15), that concern is not paramount here, as the individuals at issue are those identified by Plaintiff herself in her Amended Complaint (*see* ECF No. 277). As such, production of communications with or documents concerning those identified individuals does not seem to reveal counsel's investigation strategy.

That is not to say that Plaintiff's counsel must produce or identify their own notes or internal communications. "Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes." *Upjohn Co. v. United States*, 449 U.S. 383, 399 (1981). Plaintiff's counsel's internal communications, notes, and memoranda reveal "the attorneys' mental processes in evaluating the communications" and are thus protected as work product. *Id.*; *see also* Rule 26(b)(3)(B) ("If the court orders discovery of these materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.").

Thus, if Plaintiff's counsel possesses documents responsive to RFP Nos. 46–126 that are obviously opinion work product—that is, internal documents reflecting "an attorney's mental impressions, opinions, conclusions, judgments, or legal theories," *Bose*, 2017 WL 4479258, at *9—those documents need not be produced or identified on a privilege log. However, to the extent counsel possesses communications with or documents about third parties that are not opinion work product, those documents must either be produced or included on a privilege log that describes the basis for a claim of fact work product. With these caveats, the RFP Motion is granted as to these RFPs, and Plaintiff is ordered to produce responsive documents and/or provide a privilege log by April 30, 2026.

13

C.      Communications with the Three Former MPD Officers

RFP Nos. 133–41 are effectively the same in substance as RFP Nos. 46–126, except they are directed at communications between three former MPD officers (who testified during the criminal trial about MPD's alleged culture and practices) and Plaintiff and her counsel.  (ECF No. 454, at 8–9; ECF No. 466, at 16–17.)  Thus, the results for RFP Nos. 133–41 are the same as for RFP Nos. 46–126.  If Plaintiff's counsel has documents responsive to RFP Nos. 133–41 that are obviously opinion work product, those documents need not be produced or identified on a privilege log.  However, to the extent that counsel has communications with these third parties that are not opinion work product, those documents must either be produced or included on a privilege log that describes the basis for a claim of fact work product.  As a result, the RFP Motion is granted as to these RFPs, and Plaintiff is ordered to produce responsive documents and/or provide a privilege log by April 30, 2026.

D.      Communications with Court Staff

In RFP No. 127, the City seeks documents and/or communications exchanged between "Plaintiff and the Court presiding over this lawsuit," including "any clerk, deputy, Judge, and/or Magistrate Judge."  (ECF No. 454, at 9; ECF No. 466, at 18.)  This request is not related or relevant to the claims or defenses in this case; rather, the Court presumes this request seeks to relitigate the issues addressed under seal at ECF Nos. 354–364.  These matters have been

14

resolved, such that RFP No. 127 does not seek the production of relevant documents.[8]  As a result, the RPF Motion is denied as to No. 127.

      E.      <u>Communications with the DOJ</u>

RFP Nos. 128–29 seek Plaintiff's and her counsel's communications with the DOJ that relate to this lawsuit and the DOJ's pattern and practice investigation of the MPD.  (ECF No. 454, at 10–11; ECF No. 466, at 17–18.)  As with RFP Nos. 46–126 and 133–41, the requests ultimately seek third-party communications that are likely relevant to the claims and defenses in this case; thus, the parties' dispute revolves around the applicability of the work-product doctrine.  The result here is the same as above.  To the extent that counsel has communications with the DOJ that are not opinion work product, those documents must either be produced or included on a privilege log that describes the basis for a claim of fact work product.  As a result, the RFP Motion is granted as to these RFPs, and Plaintiff is ordered to produce responsive documents and/or provide a privilege log by April 30, 2026

**CONCLUSION**

For the reasons discussed above, the City's Subpoena Motion and the RFP Motion are GRANTED IN PART AND DENIED IN PART.  The Subpoena Motion is denied as to Dupree and is granted as to Dixon and Mr. Wells, who shall produce responsive documents (and, as for Mr. Wells, a privilege log) as discussed above by April 30, 2026.  The parties shall consult and agree upon a testing protocol for the items in RFP No. 161 by April 14, 2026, and Plaintiff shall make those items available for testing by April 30, 2026.  Plaintiff shall produce responsive

---

[8] The resolution of these matters is discussed in an Order from Chief Judge Lipman in *Young v. City of Memphis*, No. 2:25-cv-2799-SHL-atc, ECF No. 41, at 6–7 (W.D. Tenn. Dec. 5, 2025).

documents and/or a privilege log as to RFP Nos. 46–126, 128–29, and 133–41 as discussed

above by April 30, 2026.

SO ORDERED this 31st day of March, 2026.

s/Annie T. Christoff
ANNIE T. CHRISTOFF
UNITED STATES MAGISTRATE JUDGE

16