**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| RowVaughn Wells, Individually and as Administratrix of the Estate of Tyre Deandre Nichols, Deceased, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:23-CV-02224-SHL-atc JURY DEMAND |
| The City of Memphis, Tennessee; Chief Cerelyn Davis; Emmitt Martin III; Demetrius Haley; Justin Smith; Desmond Mills, Jr.; Tadarrius Bean; Preston Hemphill; DeWayne Smith, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF MEMPHIS'S MOTION
TO REOPEN DISCOVERY FOR A LIMITED PURPOSE
AND TO AMEND SCHEDULING ORDER
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Defendant City of Memphis (the "City") respectfully asks this Court to reopen fact

discovery for a limited purpose and to amend the current scheduling order, pursuant to Federal

Rule of Civil Procedure 16(b)(4). In support of this Motion, the City states as follows:

At the March 23, 2026 Status Conference, the Court stated: "Plaintiffs are going to

disclose their liability expert by April 3. If the Defendants think they can't disclose their expert

by April 24, they're going to file a motion and they're going to tell me exactly why they can't do

so, and I'll take it up if that happens." (ECF No. 606, PageID 9214–15.) On April 3, 2026,

Plaintiff served her expert disclosures. The City cannot disclose its experts by April 24, 2026 for

the following reasons:

> (1) The pending parallel criminal cases preclude the City from obtaining discovery necessary to develop rebuttal expert opinions on causation and to support dispositive motions;

> (2) Plaintiff disclosed seven expert witnesses—nearly double the number she represented during the February 17 hearing;

> (3) Plaintiff's seven experts provided reports comprising over 350 pages, which require significant additional time for review, depositions, and rebuttal[1]; and

> (4) Plaintiff's own discovery responses remain incomplete, and the outstanding discovery Plaintiff has been ordered to produce will likely be necessary for the City's rebuttal expert witness reports.

Further, fact discovery needs to be reopened due to Plaintiff's untimely disclosure of (1) twenty-two new witnesses and (2) the existence of a second autopsy performed on the decedent back in January 23, 2023.

Accordingly, the City submits that Plaintiff's expert disclosures on April 3, 2026, and Plaintiff's dilatory actions, necessitate the extension of all subsequent deadlines in this matter. The City's proposed amended schedule is attached as Exhibit 1. Further, the City respectfully requests that the Court either: (1) provide an expedited ruling; or (2) enter an Order holding in abeyance all deadlines while the issues discussed herein are fully and fairly addressed.

## I.    LEGAL STANDARD UNDER FEDERAL RULE OF CIVIL PROCEDURE 16(b).

The Court has the authority to amend scheduling orders as circumstances warrant, including when unforeseen developments arise that make the original schedule unworkable. *See Com. Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 377 (6th Cir. 2009) (quoting *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)). Modification of a scheduling order

---

[1] Although Plaintiff has indicated that three experts are for "causation and damages" only, a reading of the reports indicate that their findings on causation intersect liability as well.

may be permitted only "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

Good cause first requires the movant to demonstrate "diligence in attempting to meet the case

management order's requirements." *Inge*, 281 F.3d at 625 (quotation omitted); *see also Garza v.

Lansing Sch. Dist.*, 972 F.3d 853, 879 (6th Cir. 2020).

The courts in the Sixth Circuit consider the five *Dowling* factors on motions to extend

discovery deadlines: (1) when the moving party learned of the issue that is the subject of

discovery; (2) how the discovery would affect the ruling below; (3) the length of the discovery

period; (4) whether the moving party was dilatory; and (5) whether the adverse party was

responsive to discovery requests. *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th

Cir. 2010) (citing *Audi AG v. D'Amato,* 469 F.3d 534, 541 (6th Cir. 2006)); *see Baber v. Dials*,

767 F. Supp. 3d 454, 466 (E.D. Ky. 2025) (quoting *Bentkowski v. Scene Mag.*, 637 F.3d 689, 696

(6th Cir. 2011) (explaining that the five *Dowling* factors are used by district courts "to guide

their evaluations of whether the moving party has shown good cause to reopen discovery").

Courts may also consider other factors, such as prejudice to the non-moving party. *Good

v. BioLife Plasma Servs., L.P.*, 656 F. Supp. 3d 738, 740 (E.D. Mich. 2023) (quoting *Smith v.

Holston Med. Grp., P.C.*, 595 F. App'x 474, 479 (6th Cir. 2014)). However, while prejudice to

the non-moving party can be an important consideration, it is "*merely a consideration* that

informs whether [movant] has satisfied the 'good cause' requirement." *Korn v. Paul Revere Life

Ins. Co.*, 382 F. App'x 443, 450 (6th Cir. 2010) (emphasis added).

Moreover, motions to reopen discovery are considered using the same good-cause

standard under Rule 16(b)(4). In addition, "[t]he party seeking to reopen discovery must indicate

to the court the need for more discovery, what material facts it hopes to uncover and why it has

not previously discovered the information." *U.S. Diamond & Gold v. Julius Klein Diamonds

3

*LLC*, No. C-3-06-371, 2008 WL 2977891, at \*11 (S.D. Ohio July 29, 2008).

## II.     REOPENING DISCOVERY FOR A LIMITED PURPOSE IS PERMISSIBLE AND NECESSARY.

The City seeks to reopen discovery for two limited purposes: (1) to seek narrowly-tailored discovery focused on the newly disclosed witnesses identified in Plaintiff's Fourth Supplemental Witnesses list; and (2) to seek narrowly-tailored discovery related to the newly disclosed second autopsy. These requests are relevant and proportional to the needs of the case.

### A.     The City Is Entitled to Discovery Regarding the Newly Disclosed Witnesses in Plaintiff's Fourth Supplemental Initial Disclosures.

Plaintiff's untimely disclosure of over twenty witnesses subverts the purpose of supplementation under Rule 26(e). Rule 26(e)(1) requires supplementation of a party's initial disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or [] as ordered by the court." Fed. R. Civ. P. 26(e)(1). "The duty to supplement under Rule 26(e) is designed to prevent a party from surprising his adversary in setting forth new facts not disclosed during discovery in sufficient time to adequately respond to them." *Clark v. Louisville Jefferson Cty. Metro Gov't*, No. 3:17-CV-419-GNS-CHL, 2023 WL 2316205, at \*4 (W.D. Ky. Mar. 1, 2023) (quoting *Matilla v. S. Ky. Rural Elec. Co-op. Corp.*, No. CIV. A. 6:04-380-DCR, 2006 WL 7128675, at \*3 (E.D. Ky. Jan. 20, 2006)) (quotation marks omitted).

The City sought an agreement from Plaintiff as to a modest extension of the Rule 26(e) supplementation deadline to memorialize information that the parties had corresponded about in letters, via email, and in meetings. The City communicated this to the parties during a March 23, 2026 videoconference. Plaintiff thereafter agreed to the extended deadline via email on March 23, 2026. *See* Email "RE: . . . Supplementation deadline," attached as Exhibit 2, at 3.

In contrast, Plaintiff perceived this extension as an opportunity to expand the scope of discovery. Plaintiff provided her Fourth Disclosures via email at 11:43 p.m. the night of March 30. *See* Pl.'s Fourth Supp. Rule 26(a)(1) Disclosures, attached as Exhibit 3. Contained in those disclosures are sixty-nine additional witnesses,[2] twenty-two[3] of whom have never been identified by Plaintiff in any way, let alone as potential witnesses. *See id.* Plaintiff has placed the nature, scope, and substance of her communications with these witnesses squarely at issue. Plaintiff represents that these witnesses are important to her claims and has reserved them for potential use at trial. Consequently, the City is entitled to discover if Plaintiff has communicated with these individuals, the substance of those communications, and whether Plaintiff or her counsel had knowledge of these witnesses and their purported testimony well before the close of discovery. Plaintiff cannot shield from discovery the communications that gave rise to the identification or purported relevance of these individuals by filing such a delayed disclosure.

In short, Plaintiff cannot inject dozens of new witnesses into the case after the close of discovery and also resist targeted discovery aimed at understanding how, when, and why those witnesses suddenly appeared. The requested discovery is directly relevant, narrowly tailored, and necessary for the City to address the prejudice created by Plaintiff's untimely supplementation.

Accordingly, the City requests limited discovery into these twenty-two individuals.

---

[2] During discovery, Plaintiff referenced the majority of the other forty-seven individuals newly identified in her Fourth Disclosures individuals in only two ways: either by requesting documents related to alleged incidents involving them, or by listing their names in a chart attached to her Motion to Enlarge the Number of Depositions—which she never took. (*See* ECF No. 499-1.)

[3] Specifically, the previously unidentified witnesses consist of E. Winslow "Buddy" Chapman; Det. Niesha Williams; Det. Kenneth Johnson; Lt. Frederick Martin; and Officers Michael R. Williams, Ericsteven Cook, Joshua Redding, Rufus Potts, Caleb Ervin, Catrellus Yancey, James Reed, Jermaine Wilson, Carey Owen, Stephen Owens, William Smith, Bryan Farrington, Tevren Mitchell, Jasmine Linsey, Brian Scott, Jacob Walsh, Nicholas Hawkins, Patric J. Ferguson.

**B.    Plaintiff's Late Disclosure of the Second Autopsy Raises Questions Regarding the Completeness of Plaintiff's Written Discovery and Document Production.**

When Plaintiff served her expert disclosures on April 3, 2026, the City learned, for the first time, that Plaintiff engaged an independent forensic pathologist to perform a second autopsy of the decedent on **January 23, 2023**—*over three years after* this autopsy occurred. Now, Plaintiff has disclosed this Michigan-based pathologist, Dr. Allecia Wilson, as a testifying expert, as well as her report from the autopsy she performed back in January 2023. According to the report, Plaintiff's counsel Sarah Raisch was present at the autopsy. Additionally, the report states that Plaintiff herself executed consent forms for the autopsy to be performed and that photographs were taken during the examination.[4]

Upon information and belief, this autopsy was conducted in Memphis. The decedent's body was in the custody and control of the Shelby County Medical Examiner's office ("SCME") at that time. In addition, Plaintiff's counsel, including Ms. Raisch, were also present in Memphis on January 23, 2023 because Plaintiff, her counsel, representatives of the City, and the City's counsel participated in an in-person meeting at the undersigned counsel's office. Thus, it appears that Plaintiff's counsel facilitated and/or coordinated the autopsy, including communications between Dr. Wilson and the SCME office, namely the pathologists who performed the original autopsy: Dr. Marco Ross and Dr. Laura Bagwell.

Moreover, during the February 20, 2026 videoconference referenced above, Mr. Levin noted that one of plaintiff's experts was a forensic pathologist. Mr. Levin intentionally omitted, however, that this pathologist was one of three individuals who examined the decedent's body— an option that is no longer available to the other litigants, as the decedent was cremated.

Serious questions arise as to the completeness of Plaintiff's written discovery and

---

[4] Neither the consent forms nor the photographs were included in Plaintiff's expert disclosures.

document production because communications between Plaintiff and the two doctors who

performed the original autopsy—Dr. Ross and Dr. Bagwell—related to coordination of the

second autopsy are plainly responsive to the City's Request for Production Nos. 39 and 40:

> REQUEST NO. 39: **Produce all communications between You and anyone acting on your behalf, including your attorneys, with Dr. Marco Ross related to Tyre Nichols**, this civil litigation, or the criminal prosecution of former officers . . . .
>
> Response: Plaintiff objects to this request to the extent it seeks documents that are not relevant to the claims or defenses in this action. Subject to and without waiving this objection, Plaintiff produces herewith the responsive documents that can be located through a reasonably diligent search.
>
> REQUEST NO. 40: **Produce all communications between You and anyone acting on your behalf, including your attorneys, with Dr. Laura Bagwell related to Tyre Nichols**, this civil litigation, or the criminal prosecution of former officers . . . .
>
> Response: See attached, where Plaintiff has produced responsive documents that can be located through a reasonably diligent search.

*See* Pl.'s Resp. to Third Set of Req. for Prod., attached as Exhibit 4, at 2–3 (emphases added).

Because the decedent's body was in the custody and control of the SCME, Plaintiff

signed consent forms for Dr. Wilson to perform the second autopsy, and Ms. Raisch was present

at the second autopsy, it stands to reason that there would have been some coordination between

Plaintiff and the SCME's office related to the second autopsy. However, as of April 6, 2026,

Plaintiff had only identified two documents responsive to Request Nos. 39 and 40, neither of

which relate to the second autopsy. More importantly, however, is the fact that Dr. Ross himself

has confirmed through his own document production that the one document Plaintiff had

identified as responsive to Request No. 39 is ***not*** the only communication between Plaintiff's

attorneys and Dr. Ross. In fact, in response to a subpoena *duces tecum*, Dr. Ross produced many

communications between himself and members of Plaintiff's counsel team that had not been

previously produced by Plaintiff. These omissions raise major concerns for the City related to

7

Plaintiff's adherence to her discovery obligations.

When the City brought these concerns to Plaintiff's attention, Ms. Raisch responded and indicated that there were no communications with Dr. Ross or Dr. Bagwell related to the second autopsy that was conducted at Dr. Ross's and Dr. Bagwell's office and at which Ms. Raisch herself was present. *See* Email "RE: . . . Plaintiff's Supplemental Document Production", attached as Exhibit 5, at 1.[5] This simply defies logic—an autopsy performed by a third party at another entity's facility could not have been coordinated without a paper trail, i.e., communications with the SCME prior to the autopsy.

Moreover, the disclosure of this second autopsy report confirms that Plaintiff's response to Request No. 38 is incomplete:

> REQUEST NO. 38: Permit for inspection all . . . pathologic material obtained from Mr. Nichols's person during his treatment . . . or otherwise for the purpose of **any autopsies performed** on all or part of Mr. Nichols's body.
>
> Response: Plaintiff objects to this request because it seeks objects that are not in Plaintiff's possession, custody, or control. Subject to and without waiving this specific objection, Plaintiff will produce for inspection at a mutually agreeable time the autopsy slide recuts **from the original autopsy** of Mr. Nichols that are in Plaintiff's possession.

Ex. 4, at 2 (emphases added). Rule 34 requires that an objection "state whether any responsive materials are being withheld on the basis of that objection" and, if objecting only in part, the objection "must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). Request No. 38 seeks materials related to "any" autopsies performed. Plaintiff only objected and

---

[5] Further, Ms. Raisch claims that Plaintiff's counsel's communications with Dr. Wilson are not discoverable pursuant to Rule 26(b)(4)(C). First, Rule 26(b)(4)(C) would not apply to Plaintiff's counsel's communications with Dr. Ross, which are plainly sought in Request No. 39. Second, Rule 26(b)(4)(C) does not provide blanket protection for all communications between counsel and an expert. *See* Fed. R. Civ. P. 26(b)(4)(C)(i)-(iii). The City's Request Nos. 29 and 30 seek these types of communications. Plaintiff has neither produced any communications with Dr. Wilson, nor has she supplemented her written response to indicate whether any responsive documents exist.

8

identified materials related to the "original" autopsy, but she failed to state whether she was withholding responsive materials, which it appears that she was.

In sum, the City respectfully requests that the Court reopen discovery for the two limited, narrowly tailored purposes identified above. These requests are both directly relevant and proportional to the needs of the case, as Plaintiff's late disclosures and incomplete production have prejudiced the City's ability to prepare its defense. The City requests the Court grant this motion to ensure the City can fairly respond to the claims and witnesses Plaintiff has injected into the case after the close of discovery. Whether Plaintiff's dilatory disclosures were intentional or careless, they were inexcusable, and Plaintiff should not benefit from these actions.

## III.    GOOD CAUSE EXISTS TO AMEND THE CURRENT SCHEDULE.

### A.    The Pending Criminal Cases Preclude Necessary Discovery on Causation.

The most fundamental obstacle confronting the City are the Fifth Amendment protections for Defendants Haley, J. Smith, Martin, Mills, and Bean (collectively, the "Stayed Defendant Officers"), which prevent the City from taking meaningful discovery from these individuals— whether they are parties and protected by the current stay or as non-parties protected by the Fifth Amendment during the pendency of their criminal case, should they be dismissed.[6]

This stay and/or the pending criminal case create an insurmountable barrier to the City's ability to develop rebuttal expert opinions on causation and to file meaningful dispositive motions. Plaintiff's experts have opined that the individual officers' specific actions—their alleged punches, kicks, baton strikes—were the proximate cause of Mr. Nichols' death.

To rebut these causation opinions, the City needs discovery from the individual officers

---

[6] Plaintiff filed a Motion for Voluntary Dismissal of Claims Against Stayed Defendant Officers on March 27, 2026. (*See* ECF No. 607.) The City responded to the motion on April 10, 2026. (ECF No. 610.)

themselves. The City's counsel articulated this need at the March 23, 2026 Status Conference:

the City requires access to "those Defendants and their depositions" because it was not "able to

cross-examine those witnesses during their criminal trials."[7] (ECF No. 606, PageID 9193, 9196.)

The City needs to explore the officers' motivations for their testimony, the circumstances of their

plea agreements, and the factual basis for their conduct—all of which bear directly on the

causation opinions Plaintiff's experts have offered. (*See id.*) Counsel for individual defendants

Preston Hemphill and DeWayne Smith similarly identified the critical need for this discovery,

because the Stayed Defendant Officers' statements and actions during the encounter form the

factual predicate for the causation analysis. (*Id.* at PageID 9211.)

The Court has recognized the legitimacy of the City's position. In its March 17, 2026

Order Denying Plaintiff's Motion to Bifurcate, the Court noted that the City's concern about

being "prejudiced by having to proceed to summary judgment without the benefit of cross-

examination of those Defendants" was not far-fetched—"[i]t is not very difficult to imagine how

testimony from the officers might serve Defendants in the case against them." (ECF No. 595,

PageID 9065 (quoting ECF No. 565) (quotation marks omitted); *id.* at PageID 9066 n.4.)

The City has diligently participated in discovery throughout this litigation, completing

document productions ahead of schedule and cooperating with the Court's case management

directives. *See Dowling*, 593 F.3d at 478 (specifically directing courts to consider "whether the

moving party was dilatory"). The obstacle here is not any failure of diligence by the City; it is a

***fundamental constitutional protection*** that prevents the City from obtaining the very discovery

---

[7] Some of Plaintiff's experts clearly relied on testimony given during the federal criminal trial
arising from this incident. Unless those witnesses become unavailable, this testimony is hearsay
for purposes of dispositive motions and trial, but Plaintiff still has the benefit of using it with their
experts.

it needs to mount its defense. No amount of diligence can overcome the Fifth Amendment. The City cannot meaningfully depose officers who are exercising their constitutional right against self-incrimination.

Plaintiff's counsel acknowledged at the March 23, 2026 Status Conference that certain officers—particularly Defendants Martin and Mills who entered guilty pleas—may be "on the Fifth [Amendment] for the rest of their lives" because of the risk of perjury prosecution. (ECF No. 606, PageID 9202.) This reality underscores the gravity of the situation. The City has consistently flagged the stay issue for the Court at every available opportunity, including in its December 16, 2025 Motion for Protective Order Regarding Plaintiff's Depositions and at the February 17, 2026 and March 23, 2026 status conferences. (ECF Nos. 525, 570, 606.) At the March 23 Status Conference, the Court directed the parties to proceed under the existing schedule while reserving the right to address the stay issue if and when it became a concrete obstacle. (ECF No. 606, PageID 9220.) The City is now being asked to prepare rebuttal expert reports on causation, file *Daubert* motions, and submit dispositive motions without the opportunity to depose or conduct any discovery from the individuals whose conduct is at the center of Plaintiff's causation theories; this inherently constitutes an obstacle in need of the Court's intervention.

Courts routinely extend discovery deadlines where external circumstances—such as a co-defendant's invocation of the Fifth Amendment—prevent a party from obtaining necessary discovery through no fault of its own. *See, e.g.*, *Hall v. Navarre*, 118 F.4th 749, 755 (6th Cir. 2024) (recognizing the relevance of whether the adverse party was responsive to discovery requests and whether external factors impeded the movant's ability to conduct discovery). Particularly salient here is that the officers have not merely been unresponsive—they have been

11

affirmatively shielded from responding by order of the Court. *See Dowling*, 593 F.3d at 478

(directing courts to consider "whether the adverse party was responsive to prior discovery

requests"); *see also Metro Fin. Servs. Corp. v. Geller*, No. 2:13-CV-2867-SHL-DKV, 2015 WL

12910697, at *10 (W.D. Tenn. Feb. 24, 2015) (granting extension where opposing party's

conduct in discovery "necessitate[d] the extension").

In *Commerce Benefits Group, Inc.*, the Sixth Circuit affirmed that "[t]he primary measure

of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case

management order's requirements" and that "[a]nother relevant consideration is possible

prejudice to the party opposing the modification." *Com. Benefits Grp.*, 326 F. App'x at 377

(citations and quotation marks omitted). Here, the City has been diligent, and the obstacle is

entirely beyond its control. Requiring the City to proceed to rebuttal expert discovery and

dispositive motions without the ability to take discovery from the Stayed Defendant Officers

would be profoundly prejudicial to the City's defense.

Plaintiff seemingly thinks that the cause of Mr. Nichols's death is irrelevant to the City's

defense against the *Monell* claims. In opposing this Motion, Plaintiff stated:

> The City has no need to depose Babu, Wilson, Kholes [sic], or McCourt before
> filing its summary judgment motion. The only scenario in which those experts
> would bear on summary judgment is if the City intended to argue that no reasonable
> juror could find that the Defendant Officers' beating of Mr. Nichols caused his
> death. That is not a plausible argument.

*See* Email "RE: . . . Plaintiff's Expert Disclosures", attached as Exhibit 6, at 17.

Plaintiff assumes that the actions of all five Stayed Defendant Officers actions are equal.

In other words, Plaintiff is attempting to lump all five individuals into one and treat them as one

litigant. But this is not the case. Each individual's actions must be considered separately, even as

it relates to causation—and other elements of liability, e.g., whether the individuals were acting

outside of their training. To be sure, a municipal defendant cannot be liable under § 1983 unless

12

the municipality is "the moving force behind the injury alleged." *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (quotation omitted). The City, therefore, has an interest in taking discovery related to causation.

The facts related to *each individual's* actions bear directly on the City's defense of Plaintiff's *Monell* claims: whether any *specific individual* was acting within policy, properly using their training, etc. Critically, several of Plaintiff's experts—including Dr. Babu, Dr. Kohles, and Dr. Wilson—opine directly on causation, concluding that the individual officers' actions caused Mr. Nichols's death. Without adequate time to obtain this discovery—or, at minimum, without deferring the expert rebuttal and dispositive motion deadlines until a time where lifting the stay is appropriate—the City's ability to present a complete defense will be fundamentally compromised. *See Dowling*, 593 F.3d at 478 (directing courts to consider "how the discovery would affect the ruling below").

In sum, the Fifth Amendment protections for the Stayed Defendant Officers create an externally imposed constitutional barrier that prevents it from obtaining the individualized discovery necessary to rebut Plaintiff's expert causation opinions and defend against the *Monell* claims. Proceeding under the current deadlines would fundamentally compromise the City's ability to present a complete defense.

## B.    The Unanticipated Expert Disclosures Create Scheduling Challenges.

Plaintiff's expert disclosures markedly exceeded the representations upon which the schedule was predicated. At the February 17, 2026 Status Conference, Plaintiff's counsel represented that Plaintiff would disclose "three liability experts" with "a possibility of a fourth, but, really, it's three." (ECF No. 570, PageID 8832.) The Court relied on that representation in crafting the expert discovery schedule, expressly noting that the schedule was designed "given the number of experts you're talking about." (*Id.* at PageID 8834.) The City likewise relied on

13

Plaintiff's representation in assessing whether the timeframe was feasible. The City's counsel confirmed as much when she noted that the schedule was workable "[a]s far as *Daubert* motions are concerned" with that limitation, and the Court agreed to push the dispositive motion deadline to June 15, in part to accommodate the anticipated number of experts. (*Id.* at PageID 8833); *see Dowling*, 593 F.3d at 478 (directing courts to consider "the length of the discovery period").

Plaintiff's disclosure of seven experts—nearly double—fundamentally alters the calculus of the Amended Scheduling Order. The City must now review the work product of seven separate experts, prepare for and take depositions of each, and develop rebuttal expert opinions in response to the full breadth of their opinions. This is a dramatically different task than reviewing and responding to three or four expert reports. The current schedule simply does not afford the City adequate time to perform this work.

Furthermore, at least fifteen of the twenty-two new witnesses Plaintiff disclosed in her Fourth Supplemental Witness list (*see supra* Section II.A.) are directly referenced in some of Plaintiff's experts' reports.[8] The City will need additional time to conduct the fact discovery requested above for its experts' rebuttal reports.

Moreover, the City must depose all seven of Plaintiff's experts before April 24, making the logistics of scheduling and completing seven depositions significantly more complex than was contemplated when the schedule was set. As the Court noted on February 17:

> THE COURT: So I guess, Ms. Silk, what I'm hearing from [Mr. Weil] is you get to depose their experts first. That's a commitment by him.

(ECF No. 570, PageID 8830, ll: 6-8.)

Thus, the practical challenges are compounded by the fact that Plaintiff's seven experts

---

[8] E. Winslow "Buddy" Chapman and Officers Michael R. Williams, Ericsteven Cook, Rufus Potts, Caleb Ervin, James Reed, Jermaine Wilson, Carey Owen, Stephen Owens, Bryan Farrington, Tevren Mitchell, Jasmine Linsey, Brian Scott, Jacob Walsh, and Nicholas Hawkins.

14

are located in different parts of the country: California, Florida, Michigan, New York, Oregon, South Carolina, and Virginia. The City must coordinate the schedules of its attorneys, experts, opposing counsel, and seven opposing experts, as well as travel arrangements, in a very compressed timeframe. Coordinating and completing depositions of all seven experts by April 24, 2026 requires the City to depose experts at a rate of more than one per week, in multiple jurisdictions, while simultaneously preparing rebuttal expert reports. The schedule as it exists does not permit meaningful preparation.

Each *Dowling* factor supports the City's request. First, the City learned of this scheduling issue only on April 3, 2026, when Plaintiff disclosed seven experts. The City could not have known of or addressed this issue before that date. Second, the requested extension will directly affect the quality of the City's expert defense and dispositive motion practice. Third, the expert discovery period as currently structured is extraordinarily compressed given the number of experts actually disclosed. Fourth, the City has not been dilatory; it is filing this motion promptly upon learning that the schedule is unworkable. Fifth, Plaintiff's own conduct is the direct cause of the scheduling difficulty.

The Court cautioned Plaintiff at the February 17 Status Conference as to her duties in keeping the pace of this case, specifically as it relates to scheduling depositions:

> THE COURT: . . . Frankly, they shouldn't have to reach out to you for alternate dates. You're pushing it. You should push it on all fronts. If that's your posture, then you can't push it on certain issues and not other issues.

(ECF No. 570, PageID 8774, ll. 20-23; *see also id.* at PageID 8772–73.)

Plaintiff did not heed the Court's admonishment. During a videoconference on February 20, 2026, Plaintiff's counsel informed the City that she intended to start scheduling expert depositions the following week. See Email "RE: Wells v. City of Memphis - Meet and confer on 2/20", attached as Exhibit 7, at 3. She did not do so. In fact, Plaintiff never made ***any*** effort to

15

schedule the depositions of her experts until April 7 when *the City* requested their availability. Ex. 6, at 18–19. Even then, Plaintiff did not provide availability for *all* of her experts until April 9. *See* Ex. 6, at 11. And based on this availability, it is <u>impossible</u> to depose all seven experts, as Plaintiff has only provided April 17 for both Dr. Kohles (Oregon) and Mr. Alpert (South Carolina).[9] Ex. 6, at 3, 11, 14–16. Further, Plaintiff did not reach out to hold dates for her depositions of the City's experts until April 9, yet again showing Plaintiff's idleness. *See* Email ". . . Scheduling Depositions of City"s Experts", attached as Exhibit 8.

In sum, courts have consistently held that good cause exists to modify a scheduling order when circumstances beyond the moving party's control render the existing schedule unworkable. *See, e.g.*, *Metro Fin. Servs.*, 2015 WL 12910697, at *9 (granting extension where the discovery period "was too ambitious, and it was not a sufficient amount of time to conduct discovery"). Here, the City has been diligent at every stage. The schedule became unworkable not through any fault of the City, but because Plaintiff was dilatory in scheduling and because Plaintiff disclosed nearly twice the number of experts she had represented to the Court.

###### C.    The Extraordinary Volume of Expert Materials Requires Additional Time.

The sheer volume of Plaintiff's expert reports independently warrants amending the schedule. The expert reports alone total over 350 pages. For example, Mr. Longo's report spans 124 pages, examining dozens of individual use-of-force incidents. Likewise, Dr. Kohles's biomechanical engineering report provides 30 pages of granular forensic calculations.

The City's rebuttal expert disclosures are due just twenty-one days after receiving this mountain of material. In that three-week window, the City must: (1) review and analyze over 350

---

[9] On Sunday, April 12, 2026 at 12:46 PM, Mr. Levin informed counsel for all parties that Mr. Alpert can also be available on April 20, and that April 20 is the last available date Mr. Alpert has through the May 15—the expiration of the expert discovery period under the current Amended Scheduling Order. (ECF No. 571.) In any event, counsel for the City is not available on April 20.

pages of expert opinion spanning biomechanics, neurosurgery, forensic pathology, forensic video analysis, and police practices; (2) retain and/or consult with its own experts in each relevant discipline; (3) provide those experts with the necessary case materials (the list of which takes up almost 115 pages); (4) allow those experts sufficient time to review Plaintiff's reports and formulate their own opinions; (5) prepare and serve written rebuttal reports and supporting documents compliant with Rule 26(a)(2)(B); and (6) prepare for and take the depositions of Plaintiff's seven experts. No party could reasonably be expected to accomplish this in twenty-one days—particularly when the schedule was designed for three to four expert reports, not seven. Rushing through the rebuttal process will prejudice the City's ability to mount a meaningful defense at summary judgment and at trial. *See Dowling*, 593 F.3d at 478 (directing courts to consider "the length of the discovery period").

Unlike Plaintiff, the City has been diligent in addressing the issues arising from Plaintiff's expert disclosures. *See Dowling*, 593 F.3d at 478 (directing courts to consider "when the moving party learned of the issue that is the subject of discovery"). In just over one week of receiving Plaintiff's expert disclosures, the City has exchanged correspondence with Plaintiff's counsel flagging the issue and prepared this Motion to bring the issue to the Court's attention. *See Bentkowski*, 637 F.3d at 696 (identifying the timing of the motion as relevant to diligence).

As the Sixth Circuit has recognized, courts must evaluate whether a scheduling order affords parties "a sufficient amount of time to conduct discovery" in light of the actual demands of the case. *Metro Fin. Servs.*, 2015 WL 12910697, at *9 (finding good cause where "[t]he agreed-on length was too ambitious").

> **D.     The City's Motions to Compel Have Been Granted, and the Requested Discovery is Needed for the City's Expert Disclosures.**

Plaintiff also has outstanding discovery that will likely bear directly on the City's rebuttal

17

expert reports. On March 31, 2026, the Court entered an Order granting in part and denying in part the City of Memphis's Motion to Compel Production Pursuant to Subpoenas and its Motion to Compel Plaintiff's Responses to the City's Requests for Production. (*See* ECF No. 609.) The Court reaffirmed the broad scope of discovery under Rule 26 and expressly held that much of the discovery sought by the City is relevant and proportional to the needs of this case.

In particular, the Court granted the City's motions as to (1) communications from Rodney Wells and Keyana Dixon concerning Mr. Nichols's life, aspirations, work capacity, sobriety, family relationships, the administration of his estate, fundraising efforts, and this litigation (subject to defined scope and time limitations); (2) physical items recovered from Mr. Nichols's vehicle for forensic testing, including narcotics testing pursuant to an agreed-upon testing protocol; and (3) communications and documents exchanged with a number of individuals identified by Plaintiff in her First Amended Complaint, her Initial Disclosures, and/or her discovery requests. The Court ordered that all such discovery be produced, or appropriately described in a privilege log, by April 30, 2026, thereby compelling substantial categories of evidence central to the City's defenses. (*See id.* at PageID 9297–98.)

Because the Court granted the City's Motions to Compel, the discovery ordered by the Court is not optional or cumulative—it is discovery the Court has expressly determined to be relevant, proportional, and necessary to the litigation of Plaintiff's claims. This compelled discovery directly informs the factual predicates for the City's liability expert analyses, including but not limited to opinions concerning sobriety and substance use, forensic evidence, and the credibility and scope of Plaintiff's experts' opinions. Without these Court-ordered productions, the City's experts would be forced to render opinions on an incomplete record.

Moreover, the Court's deadline of April 30, 2026, is ***after*** the City's current expert

disclosure deadline of April 24, 2026. The City's experts cannot be expected to fairly respond to evidence which the City simply does not, and likely will not, have until after the expert disclosure deadline.[10] Accordingly, the requested discovery is essential for the City to prepare full, fair, and compliant expert disclosures consistent with Rule 26.

Additionally, some of the compelled discovery—particularly the forensic testing requested in Request No. 161—may take even longer to be completed. The results of these tests may inform the City's experts, specifically related to toxicology. The City submitted this request for production far in advance of the discovery deadline, and it was Plaintiff who refused to provide the clearly relevant discovery. The City should not now be hindered by its Motions to Compel being granted in such close proximity to the City's expert disclosure deadline. Further, Plaintiff has made next to no efforts to facilitate the arrangements for the forensic testing, despite being Ordered to do so by the Court. (ECF No. 609.) After hearing nothing from Plaintiff for over week after entry of the Order, the City emailed Plaintiff's counsel on April 9, 2026 to request availability on April 14 to confer regarding testing protocols. In response, Plaintiff's counsel chose to criticize the City's choice in date for scheduling—seemingly comparing availability for a short videoconference to a seven-hour deposition—and did not provide any specific availability. *See* Ex. 6, at 11. For a litigant who has been ordered to produce certain information, Plaintiff has shown lack of concern about her obligations.

Further still, Plaintiff has numerous, currently uncompelled responses that are plainly

---

[10] Plaintiff indicated her intent to produce all the documents subject to the Court's Order by April 10, 2026. *See* Ex. 5, at 4–5. However, on April 10, Plaintiff produced only seven documents, all responsive to the City's Request No. 133, four of which included communications Plaintiff had already produced. Plaintiff did not indicate whether other document productions are forthcoming, whether she will be producing a privilege log, or whether she will be supplementing her written responses in order to comply with her Rule 34 obligations.

19

incomplete. *See Dowling*, 593 F.3d at 478 (directing courts to consider "whether the adverse party was responsive to prior discovery requests"). On March 30, 2026, Plaintiff served supplemental responses to five interrogatories, four documents (without identifying to which request(s) the documents are responsive), and her Fourth Supplemental Rule 26(a)(1) Initial Disclosures. Plaintiff failed to supplement her written responses to the City's Rule 34 requests for production, despite at least fifty responses being facially incomplete.[11] Plaintiff's disclosure of the second autopsy also made clear that Plaintiff's discovery responses and document production are incomplete. Additionally, the City's Request Nos. 29 and 30 seek Plaintiff's communications with her expert witnesses, but Plaintiff has neither produced those communications nor supplemented her written responses indicating whether any responsive communications exist.

Plaintiff will suffer no meaningful prejudice from a reasonable extension. The Court has already acknowledged that holding the November 9, 2026 trial date may prove difficult given the ongoing stays, observing at the March 23, 2026 Status Conference that "it's possible that we may still be able to hit that November 9 jury trial date, but I'm not sure of the chances." (ECF No. 606, PageID 9192–93.) A modest extension of the expert discovery and dispositive motion deadlines will not derail the case, but instead ensure that the City has a fair opportunity to defend itself. It appeared to be the Court's sentiment that the parties do as much discovery as could be conducted regardless of the stay and/or the pending criminal appeal. The City has taken this

---

[11] Plaintiff's responses to Request Nos. 12–17, 19, 24, 26, 31, 34–36, 38, 45, 48, 51, 54, 57, 60, 63, 66, 69, 72, 75, 78, 81, 84, 87, 90, 93, 96, 99, 102, 105, 108, 111, 114, 117, 120, 123, 126, 128–131, 133, 135, 138, 141, 148, 149, and 157 are incomplete because Plaintiff eitjer (1) indicated in her responses that she is continuing to search for responsive documents or planned to "seasonally" supplement; (2) used future-tense "will produce" language without confirming whether any search was completed or any documents were produced; and/or (3) lodged numerous objections but failed to state whether any documents are being withheld.

seriously and has attempted to do so.

## IV.   CONCLUSION

For these reasons, the City respectfully asks this Court to reopen discovery and extend

the deadlines in the Amended Scheduling Order. *See* Ex. 1. Further, the City respectfully

requests that the Court either: provide an expedited ruling on this Motion or enter an Order

holding in abeyance all deadlines while the issues discussed herein are fully and fairly addressed.

Dated: April 13, 2026

Respectfully submitted,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.**

*s/ Bruce McMullen*
Bruce McMullen (#18126)
Jennie Vee Silk (#35319)
Kelsey W. McKinney (#40434)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 526-2000
bmcmullen@bakerdonelson.com
jsilk@bakerdonelson.com
kmckinney@bakerdonelson.com

*Attorneys for Defendant City of Memphis
and Chief Cerelyn Davis in her Individual
Capacity*

21

## CERTIFICATE OF CONSULTATION

I, Bruce McMullen, hereby certify that on April 7 and 9, 2026, counsel for the City consulted with counsel for the parties via email regarding the relief requested. A chart detailing the parties' responses is below:

| Party | Responding Counsel | Opposition? |
|---|---|---|
| Plaintiff | Josh Levin | Yes |
| Hemphill | Betsy Walton | No |
| D. Smith | Betsy Walton | No |
| J. Smith | No response | n/a |
| Haley | No response | n/a |
| Bean | No response | n/a |
| Martin III | Florence Johnson | No |
| Mills, Jr. | No response | n/a |

*s/ Bruce McMullen*
Bruce McMullen

22