# EXHIBIT 3

| | |
|---|---|
| **From:** | Joshua Levin |
| **To:** | cgrice@eflawgroup.com; keenandl@aol.com; dgodwin@gmlblaw.com; fjohnson@johnsonandjohnsonattys.com; cjohnson@johnsonandjohnsonattys.com; ge@perrygriffin.com; jkp@perrygriffin.com; lgross@perrygriffin.com; martin@sparkman-zummach.com; bmckinney@gmlblaw.com; McMullen, Bruce; mcollins@gmlblaw.com; mistie@sparkman-zummach.com; tnorman@gmlblaw.com; Reagan, Ian; McKinney, Kelsey; Morris, Angela; Silk, Jennie; stephenrleffler@yahoo.com |
| **Cc:** | Colton Johnson Taylor; Antonio Romanucci; Stephen Weil; Sarah Raisch; Brooke@bencrump.com; Dana Kondos; Houston Ward; Devon Kelly; bw@mendelsonfirm.com; dm@mendelsonfirm.com; Natalie@bencrump.com; court@bencrump.com |
| **Subject:** | Pl."s 4th Supp. Rule 26a1 Disclosures |
| **Date:** | Monday, March 30, 2026 11:43:10 PM |
| **Attachments:** | image001.png<br>image002.png<br>image003.png<br>image004.png<br>image005.png<br>2026-03-30 Pl."s 4th Supp. Rule 26a1 Disclosures.pdf |

Counsel: Please find attached Plaintiff's 4th Supplemental Rule 26(a)(1) Disclosures.

## Joshua M. Levin
### Senior Attorney



**www.rblaw.net**

**e:** jlevin@rblaw.net
**p:** (312) 253-8623
**f:** (312) 458-1004
**a:** 321 N Clark St, Ste
900, Chicago, IL 60654

   

 *Go Green - Please don't print this e-mail unnecessarily.*

**Confidentiality Statement.** The information contained in this electronic mail communication is intended only for the personal and confidential use of the designated recipient named above. This message may be an attorney-client communication and, as such, is privileged and confidential. If the reader of this message is not the intended recipient, you are hereby notified that you have received this communication in error and that any review, dissemination, distribution, or copying of the message is strictly prohibited. If you have received this transmission in error, please notify us immediately by telephone at 312.458.1000 or by reply e-mail.

Exhibit 3 - Page 1 of 45

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

RowVaughn Wells,

                    Plaintiff,

         v.                                          Case No. 2:23-CV-02224

The City of Memphis *et al.*,

                    Defendants.

## PLAINTIFF'S FOURTH SUPPLEMENTAL RULE 26(a)(1) DISCLOSURES

NOW COMES Plaintiff RowVaughn Wells, individually and as administratrix of the

estate of Tyre Deandre Nichols, by and through her attorneys, pursuant to Rule 26(a)(1) of the

Federal Rules of Civil Procedure, making her fourth supplemental Rule 26(a) disclosures:

## PRELIMINARY STATEMENT

**Plaintiff has not yet determined who will be called to offer testimony at trial as a witness or which documents and tangible things will be utilized to support Plaintiff's claims. Investigation continues as to the identity of witnesses and the types of documents and tangible things. Plaintiff reserves all rights to name additional lay witnesses and identify additional documents and tangible things.**

**Plaintiff further reserves the right to supplement or amend her Disclosure at a later date once all depositions and discovery has been completed, and in accordance with applicable court orders and the Federal Rules of Civil Procedure.**

**The disclosure of any witness or subject matter of their testimony shall in no way be construed as a waiver to any substantive motion, motion in limine, or objection—whether at deposition, trial, or otherwise.**

## DEFINITIONS

- **"Defendant Officers"**: This term used throughout these Disclosures shall refer to Defendants Demetrius Haley; Emmitt Martin III; Tadarrius Bean; Desmond Mills, Jr.; Justin Smith; Preston Hemphill; and DeWayne Smith.

Exhibit 3 - Page 2 of 45

- **"Defendant EMTs"**: This term used throughout these Disclosures shall refer to Defendants JaMichael Sandridge, Robert Long, and Michelle Whitaker.

- **"Individual Defendants"**: This term used throughout these Disclosures shall refer to all Defendant Officers and Defendant EMTs.

- **"Subject Occurrence"**: This term used throughout these Disclosures refers to all interactions between Tyre Nichols and SCORPION Unit Officers, Memphis Police Department Officers, and Memphis Fire Department Members on January 7, 2023 as described in Plaintiff's operative Complaint.

## WITNESSES

**Rule 26(a)(1)(A)(i):  The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless solely for impeachment:**

1. **RowVaughn Wells**
   c/o Plaintiff's Counsel (Romanucci & Blandin, LLC)

RowVaughn Wells is the Plaintiff in the instant matter and may be contacted through her counsel. Mrs. Wells is the mother of the decedent, Tyre Nichols. Mrs. Wells is the Administratrix of the Estate of Tyre Nichols and also has claims in her individual capacity against Defendant DeWayne Smith and the City of Memphis.

Mrs. Wells is expected to testify as to her knowledge of the facts and circumstances surrounding the Subject Occurrence, her interactions with members of the Memphis Police and Fire Department, and those described in the Operative Complaint. Mrs. Wells will also testify regarding her emotional distress and loss of normal life and her son's pain, suffering, emotional distress, and all damages proximately caused by the Subject Occurrence described in the Operative Complaint, including but not limited to:

- Tyre's life and aspirations;
- Tyre's medical expenses;
- Tyre's loss of earning capacity;
- Tyre's pain and suffering;
- Tyre's permanent injuries;
- Tyre's disfigurement;
- Tyre's loss of enjoyment of life;
- Tyre's death;
- RowVaughn's medical expenses;
- RowVaughn's pain and suffering;
- RowVaughn's permanent injuries;
- RowVaughn's loss of enjoyment of life;
- Tyre's age;

Page 2

Exhibit 3 - Page 3 of 45

- Tyre's education;
- Tyre's health condition before the Subject Occurrence;
- Tyre's strength and capacity to work and for earning money;
- Tyre's personal habits of sobriety and industry; *and…*
- All other topics relevant to damages allowed under the law.

Mrs. Wells is expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

### 2. Rodney Wells
c/o Plaintiff's Counsel (Romanucci & Blandin, LLC)

Rodney Wells is Tyre Nichols' stepfather and RowVaughn Wells' husband. He may be contacted through Mrs. Wells' counsel.

Mr. Wells is expected to testify as to his knowledge of the facts and circumstances surrounding the Subject Occurrence and those complained described in the Operative Complaint. Mr. Wells will also testify regarding his wife's emotional distress and loss of normal life and his stepson's pain, suffering, emotional distress, and all damages proximately caused by the Subject Occurrence described in the Operative Complaint, including but not limited to:

- Tyre's life and aspirations;
- Tyre's death;
- RowVaughn's pain and suffering;
- RowVaughn's permanent injuries;
- RowVaughn's loss of enjoyment of life;
- Tyre's age;
- Tyre's strength and capacity to work and for earning money;
- Tyre's personal habits of sobriety and industry; *and…*
- All other topics relevant to damages allowed under the law.

Mr. Wells is expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

### 3. Michael Cutrer
c/o Plaintiff's Counsel (Romanucci & Blandin, LLC)

Michael Cutrer is Tyre Nichols' brother and the son of RowVaughn Wells. He may be contacted through Mrs. Wells' counsel.

Mr. Cutrer is expected to testify as to his knowledge of the facts and circumstances surrounding the Subject Occurrence and those described in the Operative Complaint. Mr. Cutrer will also testify regarding his mother's emotional distress and loss of normal life and his deceased brother's pain, suffering, emotional distress, and all damages proximately caused by the Subject Occurrence described in the Operative Complaint, including but not limited to:

Exhibit 3 - Page 4 of 45

- Tyre's life and aspirations;
- Tyre's death
- RowVaughn's pain and suffering;
- RowVaughn's permanent injuries;
- RowVaughn's loss of enjoyment of life;
- Tyre's strength and capacity to work and for earning money;
- Tyre's personal habits of sobriety and industry; *and…*
- All other topics relevant to damages allowed under the law.

Mr. Cutrer is expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

### 4. Keyana Dixon
c/o Plaintiff's Counsel (Romanucci & Blandin, LLC)

Kenyana Dixon is Tyre Nichols' sister and the daughter of RowVaughn Wells. He may be contacted through Mrs. Wells' counsel.

Ms. Dixon is expected to testify as to her knowledge of the facts and circumstances surrounding the Subject Occurrence and those described in the Operative Complaint. Ms. Dixon will also testify regarding her mother's emotional distress and loss of normal life her deceased brother's pain, suffering, emotional distress, and all damages proximately caused by the Subject Occurrence described in the Operative Complaint, including but not limited to:

- Tyre's life and aspirations;
- Tyre's death;
- RowVaughn's pain and suffering;
- RowVaughn's permanent injuries;
- RowVaughn's loss of enjoyment of life;
- Tyre's age;
- Tyre's education;
- Tyre's health condition before the Subject Occurrence;
- Tyre's strength and capacity to work and for earning money;
- Tyre's personal habits of sobriety and industry; *and…*
- All other topics relevant to damages allowed under the law.

Ms. Dixon is expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

### 5. Chief Cerelyn Davis
c/o Counsel for City of Memphis (Baker Donelson)

Cerelyn Davis is the Memphis Police Department Chief of Police (also known as the Director of Police Services). She was the Chief of in the approximately 18 months preceding the subject

Page 4

Exhibit 3 - Page 5 of 45

occurrence, during the subject occurrence, and up through the present. Chief Davis will be called as an adverse witness pursuant to Federal Rule of Evidence 611.

Chief Davis will testify in her individual capacity regarding the facts and circumstances surrounding the Subject Occurrence described in Plaintiff's operative Complaint.

Chief Davis will testify in her individual capacity regarding her career in law enforcement; her previous employment; her current employment; and actions she has taken in being hired and since being hired by the City of Memphis.

Chief Davis will also testify in her individual capacity regarding hiring, employment histories, and the policies, procedures, and structure of the SCORPION Unit and the Memphis Police Department generally.

Further, Chief Davis will testify in her individual capacity regarding training that police officers undergo prior to their employment with the Memphis Police Department, at the Police Academy, during their employment with the Memphis Police Department, and with respect to the SCORPION Unit in areas including-but not limited to-*Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally.

Chief Davis will also testify in her individual capacity regarding the Constitution, as well as the policies, patterns, practices, operating procedures, day-to-day operations, formation, maintenance, and disbanding of the SCORPION Unit within the Memphis Police Department, as well as her experience with similarly-styled units in other jurisdictions (i.e., REDDOG Unit with the Atlanta Police Department in Georgia).

Chief Davis will testify in her individual capacity regarding the supervision of police officers within the Memphis Police Department, generally, and the SCORPION Unit while it existed.

Chief Davis will testify in her individual capacity regarding the Constitution and proper police policies, practices, procedures, and standards as she has understood them after a career in law enforcement and in serving as a Chief of Police.

Chief Davis will testify in her individual capacity regarding any and all post-Subject Occurrence reports filled out by the officers in this matter, including reports and hearings addressing administrative disciplinary/decertification hearings for SCORPION officer involved in the Subject Occurrence.

Chief Davis is expected to testify regarding efforts she has undertaken pursuant to her ongoing obligation to preserve evidence.

Chief Davis is expected to testify consistently with any deposition given in this matter. Investigation continues as to all information contained herein.

Page 5

Exhibit 3 - Page 6 of 45

**6. Assistant Chief Shawn Jones**
   c/o Counsel for City of Memphis (Baker Donelson)

Shawn Jones was the Memphis Police Department Assistant Chief of Police and he served in that role preceding the subject occurrence, during the subject occurrence, and through July of 2024. He will be called as an adverse witness pursuant to Federal Rule of Evidence 611.

Assistant Chief Jones will testify regarding the facts and circumstances surrounding the Subject Occurrence described in Plaintiff's operative Complaint. He will testify regarding his career in law enforcement; his previous employment; his current employment; and actions he has taken in being hired and since being hired by the City of Memphis. He will also testify about the circumstances surrounding his departure from MPD in July of 2024.

Assistant Chief Jones will also testify regarding hiring, employment histories, and the policies, procedures, and structure of the SCORPION Unit and the Memphis Police Department generally.

Further, Assistant Chief Jones will testify regarding training that police officers undergo prior to their employment with the Memphis Police Department, at the Police Academy, during their employment with the Memphis Police Department, and with respect to the SCORPION Unit in areas including-but not limited to-*Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally.

Assistant Chief Jones will also testify regarding the Constitution, as well as the policies, patterns, practices, operating procedures, day-to-day operations, formation, maintenance, and disbanding of the SCORPION Unit within the Memphis Police Department.

Assistant Chief Jones will testify regarding the supervision of police officers within the Memphis Police Department, generally, and the SCORPION Unit while it existed.

Assistant Chief Jones will testify regarding proper police policies practices, procedures, and standards as he has understood them after a career in law enforcement and in serving as an Assistant Chief of Police.

Assistant Chief Jones will testify regarding any and all post-Subject Occurrence filled out by Defendant Officers in this matter, including reports and hearings addressing administrative disciplinary/decertification hearings for SCORPION officer involved in the Subject Occurrence.

Assistant Chief Jones is expected to testify regarding efforts he has undertaken pursuant to his ongoing obligation to preserve evidence.

Assistant Chief Jones is expected to testify consistently with any deposition given in this matter. Investigation continues as to all information contained herein.

Page 6

Exhibit 3 - Page 7 of 45

7. **Assistant Chief Don Crowe**
   c/o Counsel for City of Memphis (Baker Donelson)

Donald Crowe is the Memphis Police Department Assistant Chief of Police and he served in that role preceding the subject occurrence, during the subject occurrence, and up through the present. He will be called as an adverse witness pursuant to Federal Rule of Evidence 611.

Assistant Chief Crowe will testify regarding the facts and circumstances surrounding the Subject Occurrence described in Plaintiff's operative Complaint. He will testify regarding his career in law enforcement; his previous employment; his current employment; and actions he has taken in being hired and since being hired by the City of Memphis.

Assistant Chief Crowe will also testify regarding hiring, employment histories, and the policies, procedures, and structure of the SCORPION Unit and the Memphis Police Department generally.

Further, Assistant Chief Crowe will testify regarding training that police officers undergo prior to their employment with the Memphis Police Department, at the Police Academy, during their employment with the Memphis Police Department, and with respect to the SCORPION Unit in areas including-but not limited to-*Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally.

Assistant Chief Crowe will also testify regarding the Constitution, as well as the policies, patterns, practices, operating procedures, day-to-day operations, formation, maintenance, and disbanding of the SCORPION Unit within the Memphis Police Department.

Assistant Chief Crowe will testify regarding the supervision of police officers within the Memphis Police Department, generally, and the SCORPION Unit while it existed.

Assistant Chief Crowe will testify regarding proper police policies practices, procedures, and standards as he has understood them after a career in law enforcement and in serving as an Assistant Chief of Police.

Assistant Chief Crowe will testify regarding any and all post-Subject Occurrence filled out by Defendant Officers in this matter, including reports and hearings addressing administrative disciplinary/decertification hearings for SCORPION officer involved in the Subject Occurrence.

Assistant Chief Crowe is expected to testify regarding efforts he has undertaken pursuant to his ongoing obligation to preserve evidence.

Assistant Chief Crowe is expected to testify consistently with any deposition given in this matter. Investigation continues as to all information contained herein.

Page 7

Exhibit 3 - Page 8 of 45

**8. Demetrius Haley**
c/o Counsel for Demtrius Haley  (Stephen Leffler)

Demetrius Haley is a named Defendant in this matter and will be called as an adverse witness pursuant to Federal Rule of Evidence 611.

Mr. Haley is a former police officer with the Memphis Police Department and was assigned to the SCORPION Unit at the time of the Subject Occurrence. He will testify regarding information as to the facts and circumstances surrounding the Subject Occurrence complained of in Plaintiffs' operative Complaint and of the defenses asserted in response thereto. Mr. Haley is likely to have information regarding the recorded body camera videos and police reports authored by himself and other individuals after the Subject Occurrence.

Mr. Haley is likely to have information regarding his hiring, employment history, and the policies, procedures, and structure of the SCORPION Unit and the Memphis Police Department generally. Further, he is likely to have information concerning his training and experience prior to his employment with the Memphis Police Department, during his employment with the Memphis Police Department, and with respect to the SCORPION Unit in areas including-but not limited to-*Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally. He will also testify regarding the policies, patterns, practices, operating procedures, day-to-day operations, formation, maintenance, and disbanding of the SCORPION Unit within the Memphis Police Department.

Mr. Haley is expected to have information concerning his administrative and disciplinary hearings in the aftermath of the Subject Occurrence, and the results of those proceedings.

Mr. Haley is expected to testify regarding efforts he has undertaken pursuant to his ongoing obligation to preserve evidence.

Mr. Haley is expected to testify consistent with any deposition given in this matter.  Investigation continues as to all information contained herein.

**9. Desmond Mills Jr.**
c/o Counsel for Desmond Mills Jr. (Clyde Keenan)

Desmond Mills Jr. is a named Defendant in this matter and will be called as an adverse witness pursuant to Federal Rule of Evidence 611.

Mr. Mills Jr. is a former police officer with the Memphis Police Department and was assigned to the SCORPION Unit at the time of the Subject Occurrence. He will testify regarding information as to the facts and circumstances surrounding the Subject Occurrence complained of in Plaintiffs' operative Complaint and of the defenses asserted in response thereto. Mr. Mills Jr. is likely to have information regarding the recorded body camera videos and police reports authored by himself and other individuals after the Subject Occurrence.

Mr. Mills Jr. is likely to have information regarding his hiring, employment history, and the policies, procedures, and structure of the SCORPION Unit and the Memphis Police Department generally. Further, he is likely to have information concerning his training and experience prior to his employment with the Memphis Police Department, during his employment with the Memphis Police Department, and with respect to the SCORPION Unit in areas including-but not limited to-

Page 8

Exhibit 3 - Page 9 of 45

*Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally. He will also testify regarding the policies, patterns, practices, operating procedures, day-to-day operations, formation, maintenance, and disbanding of the SCORPION Unit within the Memphis Police Department.

Mr. Mills Jr. is expected to have information concerning his administrative and disciplinary hearings in the aftermath of the Subject Occurrence, and the results of those proceedings.

Mr. Mills Jr. is expected to testify regarding efforts he has undertaken pursuant to his ongoing obligation to preserve evidence.

Mr. Mills Jr. is expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

### 10. Justin Smith
 c/o Counsel for Justin Smith (Sparkman Zummach)

Justin Smith is a named Defendant in this matter and will be called as an adverse witness pursuant to Federal Rule of Evidence 611.

Mr. J. Smith is a former police officer with the Memphis Police Department and was assigned to the SCORPION Unit at the time of the Subject Occurrence. He will testify regarding information as to the facts and circumstances surrounding the Subject Occurrence complained of in Plaintiffs' operative Complaint and of the defenses asserted in response thereto. Mr. J. Smith is likely to have information regarding the recorded body camera videos and police reports authored by himself and other individuals after the Subject Occurrence.

Mr. J. Smith is likely to have information regarding his hiring, employment history, and the policies, procedures, and structure of the SCORPION Unit and the Memphis Police Department generally. Further, he is likely to have information concerning his training and experience prior to his employment with the Memphis Police Department, during his employment with the Memphis Police Department, and with respect to the SCORPION Unit in areas including-but not limited to-*Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally. He will also testify regarding the policies, patterns, practices, operating procedures, day-to-day operations, formation, maintenance, and disbanding of the SCORPION Unit within the Memphis Police Department.

Mr. J. Smith is expected to have information concerning his administrative and disciplinary hearings in the aftermath of the Subject Occurrence, and the results of those proceedings.

Mr. J. Smith is expected to testify regarding efforts he has undertaken pursuant to his ongoing obligation to preserve evidence.

Mr. J. Smith is expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

### 11. Emmitt Martin III
 c/o Counsel for Emmitt Martin III (Johnson and Johnson)

Page 9

Exhibit 3 - Page 10 of 45

Emmitt Martin III is a named Defendant in this matter and will be called as an adverse witness pursuant to Federal Rule of Evidence 611.

Mr. Martin III is a former police officer with the Memphis Police Department and was assigned to the SCORPION Unit at the time of the Subject Occurrence. He will testify regarding information as to the facts and circumstances surrounding the Subject Occurrence complained of in Plaintiffs' operative Complaint and of the defenses asserted in response thereto. Mr. Martin III is likely to have information regarding the recorded body camera videos and police reports authored by himself and other individuals after the Subject Occurrence.

Mr. Martin III is likely to have information regarding his hiring, employment history, and the policies, procedures, and structure of the SCORPION Unit and the Memphis Police Department generally. Further, he is likely to have information concerning his training and experience prior to his employment with the Memphis Police Department, during his employment with the Memphis Police Department, and with respect to the SCORPION Unit in areas including-but not limited to-*Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally. He will also testify regarding the policies, patterns, practices, operating procedures, day-to-day operations, formation, maintenance, and disbanding of the SCORPION Unit within the Memphis Police Department.

Mr. Martin III is expected to have information concerning his administrative and disciplinary hearings in the aftermath of the Subject Occurrence, and the results of those proceedings.

Mr. Martin III is expected to testify regarding efforts he has undertaken pursuant to his ongoing obligation to preserve evidence.

Mr. Martin III is expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

### 12. Tadarrius Bean
c/o Counsel for Tadarrius Bean (Perry Griffin)

Tadarrius Bean is a named Defendant in this matter and will be called as an adverse witness pursuant to Federal Rule of Evidence 611.

Mr. Bean is a former police officer with the Memphis Police Department and was assigned to the SCORPION Unit at the time of the Subject Occurrence. He will testify regarding information as to the facts and circumstances surrounding the Subject Occurrence complained of in Plaintiffs' operative Complaint and of the defenses asserted in response thereto. Mr. Bean is likely to have information regarding the recorded body camera videos and police reports authored by himself and other individuals after the Subject Occurrence.

Mr. Bean is likely to have information regarding his hiring, employment history, and the policies, procedures, and structure of the SCORPION Unit and the Memphis Police Department generally. Further, he is likely to have information concerning his training and experience prior to his employment with the Memphis Police Department, during his employment with the Memphis Police Department, and with respect to the SCORPION Unit in areas including-but not limited to-*Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and

Page 10

Exhibit 3 - Page 11 of 45

the Fourth Amendment more generally. He will also testify regarding the policies, patterns, practices, operating procedures, day-to-day operations, formation, maintenance, and disbanding of the SCORPION Unit within the Memphis Police Department.

Mr. Bean is expected to have information concerning his administrative and disciplinary hearings in the aftermath of the Subject Occurrence, and the results of those proceedings.

Mr. Bean is expected to testify regarding efforts he has undertaken pursuant to his ongoing obligation to preserve evidence.

Mr. Bean is expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

### 13. Preston Hemphill
c/o Counsel for Preston Hemphill (Godwin, Morris, Laurenzi & Bloomfield)

Preston Hemphill is a named Defendant in this matter and will be called as an adverse witness pursuant to Federal Rule of Evidence 611.

Mr. Hemphill is a former police officer with the Memphis Police Department and was assigned to the SCORPION Unit at the time of the Subject Occurrence. He will testify regarding information as to the facts and circumstances surrounding the Subject Occurrence complained of in Plaintiffs' operative Complaint and of the defenses asserted in response thereto. Mr. Hemphill is likely to have information regarding the recorded body camera videos and police reports authored by himself and other individuals after the Subject Occurrence.

Mr. Hemphill is likely to have information regarding his hiring, employment history, and the policies, procedures, and structure of the SCORPION Unit and the Memphis Police Department generally. Further, he is likely to have information concerning his training and experience prior to his employment with the Memphis Police Department, during his employment with the Memphis Police Department, and with respect to the SCORPION Unit in areas including-but not limited to-*Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally. He will also testify regarding the policies, patterns, practices, operating procedures, day-to-day operations, formation, maintenance, and disbanding of the SCORPION Unit within the Memphis Police Department.

Mr. Hemphill is expected to have information concerning his administrative and disciplinary hearings in the aftermath of the Subject Occurrence, and the results of those proceedings.

Mr. Hemphill is expected to testify regarding efforts he has undertaken pursuant to his ongoing obligation to preserve evidence.

Mr. Hemphill is expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

### 14. DeWayne Smith
c/o Counsel for DeWayne Smith (Godwin, Morris, Laurenzi & Bloomfield)

DeWayne Smith is a named Defendant in this matter and will be called as an adverse witness pursuant to Federal Rule of Evidence 611.

Exhibit 3 - Page 12 of 45

Mr. D. Smith is a former lieutenant with the Memphis Police Department and was assigned to the SCORPION Unit at the time of the Subject Occurrence. He will testify regarding information as to the facts and circumstances surrounding the Subject Occurrence complained of in Plaintiffs' operative Complaint and of the defenses asserted in response thereto. Mr. D. Smith is likely to have information regarding the recorded body camera videos and police reports authored by himself and other individuals after the Subject Occurrence. He will also testify regarding conversations he had directly with the Plaintiff on the night of the Subject Occurrence and in the subsequent days and weeks.

Mr. D. Smith is likely to have information regarding his hiring, employment history, and the policies, procedures, and structure of the SCORPION Unit and the Memphis Police Department generally. Further, he is likely to have information concerning his training and experience prior to his employment with the Memphis Police Department, during his employment with the Memphis Police Department, and with respect to the SCORPION Unit in areas including-but not limited to- *Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally. He will also testify regarding the policies, patterns, practices, operating procedures, day-to-day operations, formation, maintenance, and disbanding of the SCORPION Unit within the Memphis Police Department.

Mr. D. Smith is expected to have information concerning his administrative and disciplinary hearings in the aftermath of the Subject Occurrence, and the results of those proceedings.

Mr. D. Smith is expected to testify regarding efforts he has undertaken pursuant to his ongoing obligation to preserve evidence.

Mr. D. Smith is expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

### 15. JaMichael Sandridge
c/o Counsel for JaMichael Sandridge (Smittick Law)

JaMichael Sandridge is a named Defendant in this matter and will be called as an adverse witness pursuant to Federal Rule of Evidence 611. Mr. Sandridge is a former Emergency Medical Technician with the Memphis Fire Department, who responded to the scene after the Subject Occurrence.

He is likely to have information as to the facts and circumstances surrounding the Subject Occurrence complained of in Plaintiffs' Complaint at Law and of the defenses asserted in response thereto, as well as the damages suffered by the decedent, Tyre Nichols. Mr. Sandridge is likely to have information regarding any recorded notes, reports, videos, or audio recordings of the Subject Occurrence.

Further, he is likely to have information concerning his training and experience concerning the standard of care regarding providing emergency medical care by an emergency medical technician.

Mr. Sandridge is expected to have information concerning his administrative and disciplinary hearings in the aftermath of the Subject Occurrence, and the results of those proceedings.

Exhibit 3 - Page 13 of 45

Mr. Sandridge is expected to testify regarding efforts he has undertaken pursuant to his ongoing obligation to preserve evidence.

Mr. Sandridge is expected to testify consistently with any deposition given in this matter. Investigation continues as to all information contained herein.

### 16. Robert Long
c/o Counsel for Robert Long (Darrell O'Neal)

Robert Long is a named Defendant in this matter and will be called as an adverse witness pursuant to Federal Rule of Evidence 611. Mr. Longg is a former Emergency Medical Technician with the Memphis Fire Department, who responded to the scene after the Subject Occurrence.

He is likely to have information as to the facts and circumstances surrounding the Subject Occurrence complained of in Plaintiffs' Complaint at Law and of the defenses asserted in response thereto, as well as the damages suffered by the decedent, Tyre Nichols. Mr. Long is likely to have information regarding any recorded notes, reports, videos, or audio recordings of the Subject Occurrence.

Further, he is likely to have information concerning his training and experience concerning the standard of care regarding providing emergency medical care by an emergency medical technician.

Mr. Long is expected to have information concerning his administrative and disciplinary hearings in the aftermath of the Subject Occurrence, and the results of those proceedings.

Mr. Long is expected to testify regarding efforts he has undertaken pursuant to his ongoing obligation to preserve evidence.

Mr. Long is expected to testify consistently with any deposition given in this matter. Investigation continues as to all information contained herein.

### 17. Michelle Whitaker
c/o Counsel for Michelle Whitaker (Spence Partners)

Michelle Whitaker is a named Defendant in this matter and will be called as an adverse witness pursuant to Federal Rule of Evidence 611. Ms. Whitaker is a former Emergency Medical Technician and Lieutenant with the Memphis Fire Department, who responded to the scene after the Subject Occurrence.

She is likely to have information as to the facts and circumstances surrounding the Subject Occurrence complained of in Plaintiffs' Complaint at Law and of the defenses asserted in response thereto, as well as the damages suffered by the decedent, Tyre Nichols. Ms. Whitaker is likely to have information regarding any recorded notes, reports, videos, or audio recordings of the Subject Occurrence.

Further, she is likely to have information concerning his training and experience concerning the standard of care regarding providing emergency medical care by an emergency medical technician.

Page 13

Exhibit 3 - Page 14 of 45

Ms. Whitaker is expected to have information concerning his administrative and disciplinary hearings in the aftermath of the Subject Occurrence, and the results of those proceedings.

Ms. Whitaker is expected to testify regarding efforts she has undertaken pursuant to her ongoing obligation to preserve evidence.

Ms. Whitaker is expected to testify consistently with any deposition given in this matter. Investigation continues as to all information contained herein.

**18. Shelby County Sheriff's Deputy Jeremy Watkins**
**19. Shelby County Sheriff's Deputy Johntavious Bowers**
    201 Poplar Avenue, 9th Floor
    Memphis, Tennessee 38103

The foregoing witnesses are or were deputies with The Shelby County Sherriff's Office on the night of the Subject Occurrence. They are likely to have information as to the facts and circumstances surrounding the Subject Occurrence complained of in Plaintiff's Complaint at Law as they were present on the scene.

These witnesses are likely to have information regarding the layout of the scene of the Subject Occurrence; description of the Subject Occurrence; and the actions of the Individual Defendants during and after the Subject Occurrence. Further, they are likely to have information with regard to any and all post- Subject Occurrence reports filled out by the deputies in this matter.

They are expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

**20. Officer Cornell McKinnie**
**21. Officer Darrell Mathis**
**22. Officer C. Mohney**
**23. Officer Samuel Lively**
**24. Officer Jamil Matthews**
**25. Officer Irma Montes**
**26. Officer Christopher Wilson**
**27. Officer Tony Moore**
**28. Officer Adrian Blakes**
**29. Officer Carlos Ivy**
**30. Major Willie W. Mathena, Jr.**
**31. Major Christopher Mohney**
    c/o Counsel for City of Memphis (Baker Donelson)

The foregoing witnesses are or were officers or ranking officials within the Memphis Police Department on the night of the Subject Occurrence. They are likely to have information as to the facts and circumstances surrounding the Subject Occurrence complained of in Plaintiff's Complaint at Law as they were present on the scene. Those witnesses may be called adversely pursuant to Federal Rule of Evidence 611.

These witnesses are likely to have information regarding the layout of the scene of the Subject Occurrence; description of the Subject Occurrence; and the actions of the Individual Defendants

Page 14

Exhibit 3 - Page 15 of 45

during and after the Subject Occurrence. Further, they are likely to have information with regard to any and all post- Subject Occurrence reports filled out by the deputies in this matter.

Further, they are likely to have information concerning their training and experience prior to their employment with the Memphis Police Department, during their employment with the Memphis Police Department, and with respect to the SCORPION Unit in areas including-but not limited to-*Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally. They will also testify regarding the policies, patterns, practices, operating procedures, day-to-day operations, formation, maintenance, and disbanding of the SCORPION Unit within the Memphis Police Department.

They are expected to testify regarding efforts they have undertaken pursuant to their ongoing obligation to preserve evidence.

They are expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

32. **Jesse Guy**
33. **Jalen Jones**
34. **Gregory Bryant**
35. **Cloe Smith**
36. **Shundra Catron**
37. **Kieran Bowien**
38. **Antonia Crawford**
39. **Other Memphis Fire Department Officers / Emergency Medical Technicians**
    *To be requested in discovery*
    c/o Counsel for City of Memphis (Baker Donelson)

The foregoing witnesses' identities are currently both known and unknown to Plaintiff's Counsel and within the possession of Defendant City of Memphis. Plaintiff would seek to depose any officer who served within the Memphis Fire Department and were present on the night of the Subject Occurrence at the scene. Those witnesses may be called adversely pursuant to Federal Rule of Evidence 611.

These witnesses are likely to have information regarding the layout of the scene of the Subject Occurrence; description of the Subject Occurrence; and the actions of the Individual Defendants during and after the Subject Occurrence. Further, they are likely to have information with regard to any and all post- Subject Occurrence reports filled out by the deputies in this matter.

They are expected to testify regarding efforts they have undertaken pursuant to their ongoing obligation to preserve evidence.

They are expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

40. **Jamil Matthews**
41. **Wann Reed**
42. **Charles White**

Page 15

Exhibit 3 - Page 16 of 45

43. **Victor Lester**
44. **Col. J.D. Smith**
45. **Lt. Kevin Lake**
46. **Lt. Patrick Fox**
47. **Lt. Brandon Harris**
48. **Lt. Michael Jackson**
49. **Lt. Andrew Kosso**
50. **Lt. Israel Taylor**
51. **All Other Former SCORPION Officers**
    *To be requested in discovery*
    c/o Counsel for the City of Memphis (Baker Donelson)

Plaintiff would seek to depose those officers listed and any officer who served on the Memphis Police Department's SCORPION Unit at any time prior to the Subject Occurrence. Those witnesses may be called adversely pursuant to Federal Rule of Evidence 611.

They are likely to have information as to the facts and circumstances surrounding the Subject Occurrence complained of in Plaintiff's Complaint at Law as they may have been present on the scene.

These witnesses are likely to have information regarding the layout of the scene of the Subject Occurrence; description of the Subject Occurrence; and the actions of the Individual Defendants during and after the Subject Occurrence. Further, they are likely to have information with regard to any and all post- Subject Occurrence reports filled out by the deputies in this matter.

Further, they are likely to have information concerning their training and experience prior to their employment with the Memphis Police Department, during their employment with the Memphis Police Department, and with respect to the SCORPION Unit in areas including-but not limited to-*Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally.

They will also testify regarding the Constitution, as well as the policies, patterns, practices, operating procedures, day-to-day operations, formation, maintenance, and disbanding of the SCORPION Unit within the Memphis Police Department.

They are expected to testify regarding efforts they have undertaken pursuant to their ongoing obligation to preserve evidence.

They are expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

52. **Memphis Police Department Deputy Chief Michael Hardy**
    c/o Counsel for City of Memphis (Baker Donelson)

Michael Hardy is a Deputy Chief with the Memphis Police Department. He served as the administrative hearing officer for the disciplinary hearing addressing the professional misconduct charges for the Defendant Officers, and the repercussions, including termination, thereof.

He is likely to have information concerning the investigation of these officers into their conduct surrounding the Subject Occurrence.

Page 16

Exhibit 3 - Page 17 of 45

Further, he is likely to have information concerning their training and experience prior to their employment with the Memphis Police Department, during their employment with the Memphis Police Department, and with respect to the SCORPION Unit in areas including-but not limited to-*Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally. He will also testify regarding the policies, patterns, practices, operating procedures, day-to-day operations, formation, maintenance, and disbanding of the SCORPION Unit within the Memphis Police Department. He is expected to testify regarding the policies, patterns, practices, operating procedures, and day-to-day operations of the Memphis Police Department.

He is expected to testify regarding efforts he has undertaken pursuant to his ongoing obligation to preserve evidence.

He is expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

### 53. Colonel Sharon Cunningham
c/o Counsel for City of Memphis (Baker Donelson)

Sharon Cunningham is a Colonel with the Memphis Police Department. She is the Memphis Police Department Commander of Training.

She is likely to have information concerning the investigation of these officers into their conduct surrounding the Subject Occurrence.

Further, she is likely to have information concerning their training and experience prior to their employment with the Memphis Police Department, during their employment with the Memphis Police Department, and with respect to the SCORPION Unit in areas including-but not limited to-*Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally. She will also testify regarding the policies, patterns, practices, operating procedures, day-to-day operations, formation, maintenance, and disbanding of the SCORPION Unit within the Memphis Police Department. She is expected to testify regarding the policies, patterns, practices, operating procedures, and day-to-day operations of the Memphis Police Department.

She is expected to testify regarding efforts he has undertaken pursuant to his ongoing obligation to preserve evidence.

She is expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

### 54. Unknown Employees of the Memphis Police Department RealTime Crime Center
### 55. Keeper of Records at the Memphis Police Department RealTime Crime Center
*To be requested in discovery*
c/o Counsel for City of Memphis (Bake Donelson)

The foregoing witnesses' identities are currently unknown to Plaintiff's Counsel and within the possession of Defendant City of Memphis and Defendant Chief Davis. Plaintiff would seek to

Page 17

Exhibit 3 - Page 18 of 45

depose employees of the Memphis Real Time Crime Center, which is believed to be a division of the Memphis Police Department monitoring crime within the City of Memphis through technology, including-but not limited to-that owned by SkyCop, Inc.

These witnesses would testify regarding their observations within the Memphis RealTime Crime Center preceding, during, and after the Subject Occurrence, as well as all reports or documents drafted and activities carried out by the Memphis RealTime Crime Center during and after the Subject Occurrence.

These witnesses would testify regarding the procedures of the Memphis RealTime Crime Center; their work alongside the Memphis Police Department; their work alongside the SCORPION Unit; their protocol and procedures for the gathering, collection, and preservation of evidence generally and specifically to the Subject Occurrence.

They are expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

57. **Keeper of Records at SkyCop, Inc.**
    600 Jefferson Ave., #400
    Memphis, TN 38105
    *To be requested in discovery*
    c/o Counsel for City of Memphis (Baker Donelson)

The foregoing witnesses' identities are currently unknown to Plaintiff's Counsel and within the possession of Defendant City of Memphis and Defendant Chief Davis. Plaintiff would seek to depose employees of SkyCop, Inc, which is a private company that works alongside the Memphis RealTime Crime Center, which is believed to be a division of the Memphis Police Department monitoring crime within the City of Memphis.

These witnesses would testify regarding their observations within at SkyCop, Inc. alongside the Memphis RealTime Crime Center preceding, during, and after the Subject Occurrence, as well as all reports and activities carried out by SkyCop, Inc. and Memphis RealTime Crime Center during and after the Subject Occurrence.

These witnesses would testify regarding the procedures of SkyCop, Inc.; their work alongside the Memphis RealTime Crime Center, their work alongside the Memphis Police Department; their work alongside the SCORPION Unit; their protocol and procedures for the gathering, collection, and preservation of evidence generally and specifically to the Subject Occurrence.

They are expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

58. **Michael Rallings**
    *To be requested in discovery*
    c/o Counsel for City of Memphis (Baker Donelson)

Page 18

Exhibit 3 - Page 19 of 45

Michael Rallings is the former Memphis Police Director, immediately preceding Chief Cerelyn Davis from approximately 2015 until his retirement from the Memphis Police Department in 2021. Mr. Rallings will testify regarding his 31-year Memphis policing career.

Mr. Rallings will testify regarding his career within the Memphis Police Department, including his time serving as the Memphis Police Director. Mr. Rallings will testify regarding the Memphis Police Department's policies, patterns, practices, operating procedures, and day-to-day operations *before* the hiring of Chief Cerelyn Davis, as well as any knowledge he has regarding those same topic areas *after* the hiring of Chief Davis and the Subject Occurrence.

He will also testify regarding the hiring standards of the Memphis Police Department; the general structure of the Memphis Police Department, especially specialized units; and locations of various department buildings. He will also testify regarding training in areas including-but not limited to-specialized units, *Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally. He will also testify regarding the supervision of patrol officers and officers within specialized units.

He is expected to testify consistently with any deposition given in this matter. Investigation continues as to all information contained herein.

### 59. Sam Cochran
*To be requested in discovery*
c/o Counsel for City of Memphis (Baker Donelson)

Sam Cochran is a former Memphis Police Department Major who served in the Memphis Police Department for 30 years and was the Coordinator of the Memphis Police Services Crisis Intervention Team (CIT).

He will testify regarding the Memphis Police Department's policies, patterns, practices, operating procedures, and day-to-day operations *before* and *after* hiring Chief Cerelyn Davis.

He will also testify regarding the hiring standards of the Memphis Police Department; the general structure of the Memphis Police Department, especially specialized units; and locations of various department buildings. He will also testify regarding training in areas including-but not limited to-specialized units, *Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally, as well as crisis intervention. He will also testify regarding the supervision of patrol officers and officers within specialized units.

He is expected to testify consistently with any deposition given in this matter. Investigation continues as to all information contained herein.

### 60. Brian McNamee
*To be requested in discovery*
c/o Counsel for City of Memphis (Baker Donelson)

Brian McNamee is a former Memphis Police Department Lieutenant who served as a supervisor of training for the Memphis Police Department from 2019-2021. Lt. McNamee retired in 2021.

Page 19

Exhibit 3 - Page 20 of 45

He will testify regarding the Memphis Police Department's policies, patterns, practices, operating procedures, and day-to-day operations *before* hiring Chief Cerelyn Davis.

He will also testify regarding the hiring standards of the Memphis Police Department; the general structure of the Memphis Police Department, including specialized units; and locations of various department buildings. He will also testify regarding training in areas including-but not limited to-*Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally. He will also testify regarding the supervision of patrol officers and officers within specialized units.

He is expected to testify consistently with any deposition given in this matter. Investigation continues as to all information contained herein.

### 61. Alvin Davis
*To be requested in discovery*
c/o Counsel for City of Memphis (Baker Donelson)

Alvin Davis is a former Memphis Police Department Lieutenant and Memphis Police Academy Recruiter and Teacher. Lt. Davis retired in 2021.

He will testify regarding the Memphis Police Department's policies, patterns, practices, operating procedures, and day-to-day operations *before* hiring Chief Cerelyn Davis.

He will also testify regarding the hiring standards of the Memphis Police Department; the general structure of the Memphis Police Department, including specialized units; and locations of various department buildings. He will also testify regarding training in areas including-but not limited to-*Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally. He will also testify regarding the supervision of patrol officers and officers within specialized units.

He is expected to testify consistently with any deposition given in this matter. Investigation continues as to all information contained herein.

### 62. Chester Striplin
*To be requested in discovery*
c/o Counsel for City of Memphis (Baker Donelson)

Chester Striplin is a former Memphis Police Department Lieutenant. Lt. Striplin assisted in procuring the Memphis Police Department Academy's national accreditation. Lt. Davis retired from the Police Department in 2018, but still works for the City of Memphis.

He will testify regarding the Memphis Police Department's policies, patterns, practices, operating procedures, and day-to-day operations *before* and *after* hiring Chief Cerelyn Davis.

He will also testify regarding the hiring standards of the Memphis Police Department; the general structure of the Memphis Police Department, including specialized units; and locations of various department buildings. He will also testify regarding training in areas including-but not limited to-*Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and

Page 20

Exhibit 3 - Page 21 of 45

the Fourth Amendment more generally. He will also testify regarding the supervision of patrol officers and officers within specialized units.

He is expected to testify consistently with any deposition given in this matter. Investigation continues as to all information contained herein.

**63. James Lash**
*To be requested in discovery*
c/o Counsel for City of Memphis (Baker Donelson)

James Lash is a former academy instructor and Crisis Intervention Team coordinator for the Memphis Police Department. Officer Lash retired in 2022.

He will testify regarding the Memphis Police Department's policies, patterns, practices, operating procedures, and day-to-day operations *before* and *after* hiring Chief Cerelyn Davis.

He will also testify regarding the hiring standards of the Memphis Police Department; the general structure of the Memphis Police Department, including specialized units; and locations of various department buildings. He will also testify regarding training in areas including-but not limited to-*Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally. He will also testify regarding the supervision of patrol officers and officers within specialized units.

He is expected to testify consistently with any deposition given in this matter. Investigation continues as to all information contained herein.

**64. Monterrious Harris**
**65. Cornell Walker, a.k.a. Cornell McKinney**
**66. Maurice Chalmers-Stokes**
**67. Sebastian Johnson**
**68. Kendrick Johnson Ray**
**69. Davitus Collier**
**70. Damecio Wilbourn**
**71. Romello Hendrix**
**72. Johnny Graham**
Addresses Unknown

These individuals are believed to be current or former residents of the City of Memphis. Their contact information is more readily available through Defendant City of Memphis' records.

These individuals were identified in Plaintiff's Complaint as having experiences within the City of Memphis at the hands of the Memphis Police Department, the SCORPION Unit, and/or the Defendant Officers similar to the Subject Occurrence.

They are expected to have information as to the facts and circumstances surrounding any encounters they have had with the Memphis Police Department, the SCORPION Unit, and/or the Defendant Officers, including-but not limited to-those encounters described in Plaintiff's Complaint. They are expected to testify regarding any investigation (or lack thereof) that Memphis Police Department undertook related to their encounters with MPD officers, and the

Page 21

Exhibit 3 - Page 22 of 45

impact of those encounters on their lives. They are further likely to have information regarding the background, customs, and practices of the Memphis Police Department.

They are expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

### 73. Kadejah Townes
Address Unknown

Ms. Townes is a current or former resident of the city of Memphis. Her contact information is more readily available through Defendant City of Memphis' records.

Ms. Townes is believed to have had one or more experiences within the City of Memphis at the hands of the Memphis Police Department, the SCORPION Unit, and/or the Defendant Officers similar to the Subject Occurrence.

She is expected to have information as to the facts and circumstances surrounding any encounters she has had with the Memphis Police Department, the SCORPION Unit, and/or the Defendant Officers, including-but not limited to-those encounters described in Plaintiff's operative Complaint. She is expected to testify regarding any investigation (or lack thereof) that Memphis Police Department undertook related to her encounters with MPD officers, and the impact of those encounters on her life. She is further likely to have information regarding the background, customs, and practices of the SCORPION Unit or other MPD officers.

She is expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

### 74. Jennifer Roberts
*To be requested in discovery*

Ms. Roberts is a current or former resident of the city of Memphis. Her contact information is more readily available through Defendant City of Memphis' records.

Ms. Roberts is likely to have information as to the facts and circumstances surrounding the Subject Occurrence complained of in Plaintiff's operative Complaint as she was present at a home nearby, witnessed the Subject Occurrence, and recorded videos of the Subject Occurrence.

She is expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

### 75. Shelby County District Attorneys' Office
**District Attorney Steve Mulroy**
**Unknown Assistant District Attorneys**
201 Poplar Ave #301, Memphis, TN 38103

The foregoing witnesses are or were attorneys with the Shelby County District Attorneys' Office who are believed to have information about the Subject Occurrence described in Plaintiff's operative Complaint, the subsequent investigation, evidence uncovered, communications with witnesses, investigators, and the prosecution, grand juries, and indictments related to this matter.

Page 22

Exhibit 3 - Page 23 of 45

These witnesses are likely to have information regarding any and all post- Subject Occurrence reports filled out by any investigating agencies or persons in this matter, evidence in this matter, video and audio recordings related to the Subject Occurrence, any conversations with Defendants and others involved in and/or witnesses to the Subject Occurrence, their observations, and their investigations.

These witnesses will also testify regarding the Shelby County District Attorney's Office to dismiss approximately 30 criminal cases investigated by the Defendant Officers, as well as their experience and knowledge regarding the formation, operation, and disbanding of the SCORPION Unit within the Memphis Police Department and the City of Memphis.

They are expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

**76. Dr. Matthew Mabie**
**77. Dr. Michelle Surbrook**
**78. Dr. Michael Washington**
**79. Dr. Peter Law**
**80. Dr. Pranab Das**
**81. Dr. Omer Siddiqui**
**82. Dr. Justin Adler**
**83. Unknown Medical Professionals and Records Keepers**
St. Francis Park Hospital
5959 Park Avenue
Memphis, TN 38119

The above listed healthcare professionals are believed to have provided Decedent Tyre Nichols' medical care after the Subject Occurrence and prior to his death.

They are expected to testify consistently the corresponding records for the care and treatment of the Decedent, and their knowledge of Decedent's medical condition. They will testify regarding the topics disclosed in the medical records, reports, and charts generated by, and ordered by or reviewed by them.

These healthcare providers will further testify regarding the following subject matter:

a) The foundation for their testimony including their education, training, experience, certifications, medical records generated by them and their medical professional colleagues, medical records generated by Tyre Nichols' other treating medical professionals, their independent recollections, their physical examinations and findings, the history provided by the patient, a review of imaging studies and their reports; a review of photographs and video where available;

b) The injuries for which they treated Tyre Nichols, their specific diagnoses as contained in the medical records generated by them and other treating doctors;

Page 23

Exhibit 3 - Page 24 of 45

c) The causal relationship between the incident described within Plaintiff's operative Complaint and its causal connection to the injuries and death for which they treated Tyre Nichols including-by way of example and not limitation-that the incident: was a cause of those injuries and death; aggravated, accelerated, and/or exacerbated a prior pre-existing condition of Tyre Nichols; that the injuries and death complained of are consistent with those to be expected from the Subject Occurrence;

d) That there is no evidence of any other trauma that could be the cause of Tyre Nichols' injuries and death;

e) Plaintiff's damages and Tyre Nichols' damages including those reported by Decedent and those determined by factual observation of the treater;

f) The treatment rendered, ordered, prescribed, referred, and/or given to Tyre Nichols was reasonable, necessary, and at least partially related to the Subject Occurrence;

g) That the injuries were a cause of Tyre Nichols' pain and suffering, disability, and/or loss of normal life while he was still living;

h) That the materials, findings, and facts reviewed in reaching their conclusions and opinions are those reasonably relied on by professionals in their field;

i) That the injuries were a cause of Tyre Nichols' death; *and/or…*

j) The charges for the treatment provided, and that they are usual and customary for the geographic region in which the treatment was rendered.

They will testify consistently with any deposition given in this matter. Investigation continues as to all information contained herein.

**84. Marco Ross, MD**
**85. Laura Bagwell, MD**
**Shelby County Medical Examiner**
637 Poplar Ave
Memphis, TN 38105

The foregoing witnesses are employees of the Shelby County Medical Examiner's Office and performed an autopsy on Tyre Nichols. They will testify regarding the findings made and conclusions and opinions reached in the course of performing the autopsy of Tyre Nichols, as well as the bases of those conclusions and opinions. They will testify regarding Tyre Nichols' cause and manner of death.

Page 24

Exhibit 3 - Page 25 of 45

It is expected that the medical examiners listed and/or any of their designees will give testimony that Tyre Nichols died as a result blunt force injuries to the head and his manner of death was homicide. These witnesses' findings are more fully expressed in the Autopsy Report they completed regarding Tyre Nichols and the Death Certificate that they authored.

The Autopsy Report has been made or will be made available through discovery in this action. Dr. Ross or Dr. Bagwell will opine, within a reasonable degree of medical and/or pathological certainty, as to the nature and extent of Tyre Nichols' injuries, the cause and manner of his death, comorbidities, toxicology, pain, suffering, and eventual death.

It is expected they will testify that the materials, findings, and facts reviewed in reaching their conclusions and opinions are those reasonably relied on by professionals in their field.

They are expected to testify consistent with any deposition given in this matter. Investigation continues as to all matters described herein.

**86. Rebecca Folkerth, MD, Forensic Neuropathologist**
   **MooseHenge Medical Consulting, PLLC**
   1066 Berme Rd,
   High Falls NY 12440

Rebecca Folkerth is a Forensic Neuropathologist who provided a consultation on the autopsy of Tyre Nichols for the West Tennessee Regional Forensic Center.  She is likely to have information as to the findings made and conclusions reached in the course of preparing her consultation report.

It is expected Dr. Folkerth will testify that the materials, findings, and facts reviewed in reaching her conclusions and opinions are those reasonably relied on by professionals in her field. It is expected that Dr. Folkerth will testify to reasonable degree of medical and/or neuropathological certainty.

Dr. Folkerth is expected to testify consistently with any deposition given in this matter. Investigation continues as to all information contained herein.

**87. Daniel T. Anderson, M.S., D-ABFT-FT, ABC-GKE, Forensic Toxicologist**
   **NMS Labs**
   200 Welsh Road
   Horsham, PA 19044

Daniel Anderson is a scientist at NMS labs and a toxicologist. He provided a toxicology analysis on various blood samples, tissue samples, and other samples from the body of Tyre Nichols. He will testify regarding the findings made and conclusions reached in the course of preparing his report.

It is expected Mr. Anderson will testify that the materials, findings, and facts reviewed in reaching his conclusions and opinions are those reasonably relied on by professionals in his field. It is

Page 25

Exhibit 3 - Page 26 of 45

expected that Mr. Anderson will testify to reasonable degree of scientific and/or toxicological certainty.

Mr. Anderson is expected to testify consistently with any deposition given in this matter. Investigation continues as to all information contained herein.

### 88. Medical Records Custodian/Hospital Records Custodian
*To be requested in discovery*

Plaintiff assumes that the medical and hospital records will be stipulated to as admissible as evidence at trial. If not, Plaintiff reserves the right to call the medical/hospital records custodian at all of the facilities/offices referenced herein and where either Plaintiff or the Decedent received treatment to authenticate the medical and hospital records and to lay the appropriate foundation for their introduction into evidence.

### 89. Medical Bills Custodian/Hospital Bills Custodian
*To be requested in discovery*

Plaintiff reserves the right to question all of the witnesses identified in these and previous 26(a)(1) responses so as to lay a foundation for all of the medical and hospital bills incurred by the Plaintiff and the Decedent in this case and further to elicit opinion testimony from any and all 26(a)(1) witnesses as to the amount of the Plaintiff's and Decedent's medical and hospital bills were reasonable and necessary services and treatment for Plaintiff and the Decedent and that the medical and hospital bills reflect reasonable and customary charges for said necessary medical services and treatment.

Plaintiff also identifies the record keepers/records custodians/billing supervisors of the various medical care providers with regard to Plaintiff and Decedent that have been subpoenaed or produced during discovery herein. If called, these record keepers/record custodians/billing supervisors are expected to testify regarding customs and practices and records keeping/billing practices at their respective entities in order to establish admission of their records/bills into evidence.

### FIRST SUPPLEMENTAL WITNESSES

### 90. Chief George Turner
### Atlanta Police Department
Address Unknown

George Turner is a former Chief of the Atlanta Police Department. Upon information and belief, he directed the Atlanta Police Department to disband their police suppression "RED DOG" unit in 2011. He is expected to testify as to the RED DOG unit, how it functioned, how its officers were trained, the patterns, practices, and policies of the Unit, and the ultimate decision to disband the RED DOG unit. Mr. Turner is expected to testify consistently with any deposition given in this matter. Investigation continues as to all information contained herein.

### 91. Mohammad T. Assaf, M.D.

Page 26

Exhibit 3 - Page 27 of 45

**92. Rachael Love, N.P.**
**93. Eston Vanhoozer, RN**
**94. Rebecca McCalla, RN**
   St. Francis Park Hospital
   5959 Park Avenue
   Memphis, TN 38119

The above listed healthcare professionals are believed to have provided Decedent Tyre Nichols' medical care after the Subject Occurrence and prior to his death.

They are expected to testify consistently the corresponding records for the care and treatment of the Decedent, and their knowledge of Decedent's medical condition. They will testify regarding the topics disclosed in the medical records, reports, and charts generated by, and ordered by or reviewed by them.

These healthcare providers will further testify regarding the following subject matter:

a) The foundation for their testimony including their education, training, experience, certifications, medical records generated by them and their medical professional colleagues, medical records generated by Tyre Nichols' other treating medical professionals, their independent recollections, their physical examinations and findings, the history provided by the patient, a review of imaging studies and their reports; a review of photographs and video where available;

b) The injuries for which they treated Tyre Nichols, their specific diagnoses as contained in the medical records generated by them and other treating doctors;

c) The causal relationship between the incident described within Plaintiff's operative Complaint and its causal connection to the injuries and death for which they treated Tyre Nichols including-by way of example and not limitation-that the incident: was a cause of those injuries and death; aggravated, accelerated, and/or exacerbated a prior pre-existing condition of Tyre Nichols; that the injuries and death complained of are consistent with those to be expected from the Subject Occurrence;

d) That there is no evidence of any other trauma that could be the cause of Tyre Nichols' injuries and death;

e) Plaintiff's damages and Tyre Nichols' damages including those reported by Decedent and those determined by factual observation of the treater;

f) The treatment rendered, ordered, prescribed, referred, and/or given to Tyre Nichols was reasonable, necessary, and at least partially related to the Subject Occurrence;

g) That the injuries were a cause of Tyre Nichols' pain and suffering, disability, and/or loss of normal life while he was still living;

Page 27

Exhibit 3 - Page 28 of 45

h)  That the materials, findings, and facts reviewed in reaching their conclusions and opinions are those reasonably relied on by professionals in their field;

i)  That the injuries were a cause of Tyre Nichols' death; *and/or…*

j)  The charges for the treatment provided, and that they are usual and customary for the geographic region in which the treatment was rendered.

They will testify consistently with any deposition given in this matter. Investigation continues as to all information contained herein.

**95. Rebecca McCalla, RN**
**96. Kathleen Lanier**
**97. Denetta Craig**
**98. Monique Williams**
    c/o Counsel for City of Memphis (Baker Donelson)

The foregoing witnesses are or were officers or ranking officials within the Inspectional Services Bureau of the Memphis Police Department. They are likely to have information as to the facts and circumstances surrounding the Subject Occurrence complained of in Plaintiff's Complaint at Law as they were present on the scene. Upon information and belief, they are likely to have information concerning the investigation of these officers into their conduct surrounding the Subject Occurrence. Those witnesses may be called adversely pursuant to Federal Rule of Evidence 611.

They are expected to testify regarding efforts undertaken pursuant to their ongoing obligation to preserve evidence.

They are expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

**99. Lt. Colonel Charles Morris**
**100.     Colonel Christopher Moffatt**
    c/o Counsel for City of Memphis (Baker Donelson)

The foregoing witnesses are or were officers or ranking officials within the Memphis Police Department.  They are likely to have information as to the facts and circumstances surrounding the Subject Occurrence complained of in Plaintiff's Complaint at Law as they were present on the scene shortly thereafter, and, upon information and belief, took part in investigative efforts or were otherwise contemporaneously informed of the subject occurrence. Those witnesses may be called adversely pursuant to Federal Rule of Evidence 611.

These witnesses are likely to have information regarding the layout of the scene of the Subject Occurrence; description of the Subject Occurrence; and the actions of the Individual Defendants during and after the Subject Occurrence. Further, they are likely to have information with regard to any and all post- Subject Occurrence reports filled out by the deputies in this matter.

Further, they are likely to have information concerning their training and experience prior to their employment with the Memphis Police Department, during their employment with the Memphis

Page 28

Exhibit 3 - Page 29 of 45

Police Department, and with respect to the SCORPION Unit in areas including-but not limited to-*Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally. They will also testify regarding the policies, patterns, practices, operating procedures, day-to-day operations, formation, maintenance, and disbanding of the SCORPION Unit within the Memphis Police Department.

They are expected to testify regarding efforts they have undertaken pursuant to their ongoing obligation to preserve evidence.

They are expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

### 101.    Officer Valandria McKinnie
c/o Counsel for City of Memphis (Baker Donelson)

The foregoing witness is or was an officer with the Memphis Police Department.  They are likely to have information as to the facts and circumstances surrounding the Subject Occurrence complained of in Plaintiff's Complaint at Law, and, upon information and belief, they are likely to have information concerning any interviews conducted with the Defendant Officers after the subject occurrence. This witness may be called adversely pursuant to Federal Rule of Evidence 611.

This witness is likely to have information regarding the layout of the scene of the Subject Occurrence; description of the Subject Occurrence; and the actions of the Individual Defendants during and after the Subject Occurrence. Further, they are likely to have information with regard to any and all post- Subject Occurrence reports filled out by the deputies in this matter.

Further, they are likely to have information concerning their training and experience prior to their employment with the Memphis Police Department, during their employment with the Memphis Police Department, and with respect to the SCORPION Unit in areas including-but not limited to-*Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally. They will also testify regarding the policies, patterns, practices, operating procedures, day-to-day operations, formation, maintenance, and disbanding of the SCORPION Unit within the Memphis Police Department.

They are expected to testify regarding efforts they have undertaken pursuant to their ongoing obligation to preserve evidence.

They are expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

### 102.    James Arnold
c/o Counsel for City of Memphis (Baker Donelson)

The foregoing witness is or was an officer with the Memphis Police Department.  They are likely to have information as to the facts and circumstances surrounding the Subject Occurrence complained of in Plaintiff's Complaint at Law as, upon information and belief, they were on duty

Page 29

Exhibit 3 - Page 30 of 45

during the time of the subject occurrence. Further, upon information and belief, they are likely to have information concerning videos of the subject occurrence. This witness may be called adversely pursuant to Federal Rule of Evidence 611.

This witness is likely to have information regarding the layout of the scene of the Subject Occurrence; description of the Subject Occurrence; and the actions of the Individual Defendants during and after the Subject Occurrence. Further, they are likely to have information with regard to any and all post- Subject Occurrence reports filled out by the deputies in this matter.

Further, they are likely to have information concerning their training and experience prior to their employment with the Memphis Police Department, during their employment with the Memphis Police Department, and with respect to the SCORPION Unit in areas including-but not limited to-*Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally. They will also testify regarding the policies, patterns, practices, operating procedures, day-to-day operations, formation, maintenance, and disbanding of the SCORPION Unit and the Memphis Police Department generally.

They are expected to testify regarding efforts they have undertaken pursuant to their ongoing obligation to preserve evidence.

They are expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

**103.    Cody Young**
c/o Counsel for City of Memphis (Baker Donelson)

The foregoing witness is or was an officer with the Memphis Police Department.  He is likely to have information as to the facts and circumstances surrounding the Subject Occurrence complained of in Plaintiff's Complaint at Law, and, upon information and belief, he is likely to have information concerning the involvement of medical personnel and investigating officers in the investigation surrounding the Subject Occurrence. This witness may be called adversely pursuant to Federal Rule of Evidence 611.

Further, this witness is likely to have information concerning their training and experience prior to their employment with the Memphis Police Department, during their employment with the Memphis Police Department, and with respect to the SCORPION Unit in areas including-but not limited to-*Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally. They will also testify regarding the policies, patterns, practices, operating procedures, day-to-day operations, formation, maintenance, and disbanding of the SCORPION Unit within the Memphis Police Department.

They are expected to testify regarding efforts they have undertaken pursuant to their ongoing obligation to preserve evidence.

They are expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

**104.    Jasmine Saulsberry**

Page 30

Exhibit 3 - Page 31 of 45

**105.    Britney Leake**
c/o Counsel for City of Memphis (Baker Donelson)

The foregoing witnesses are or were officers with the Memphis Police Department. They are likely to have information as to the facts and circumstances surrounding the Subject Occurrence complained of in Plaintiff's Complaint at Law, and, upon information and belief, they are likely to have information concerning conversations or communications had with named Defendants. Further, upon information and belief, they are likely to have information concerning the investigative efforts of various law enforcement agencies or other investigative entities. These witnesses may be called adversely pursuant to Federal Rule of Evidence 611.

Further, these witnesses are likely to have information concerning their training and experience prior to their employment with the Memphis Police Department, during their employment with the Memphis Police Department, and with respect to the SCORPION Unit in areas including-but not limited to-*Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally. They will also testify regarding the policies, patterns, practices, operating procedures, day-to-day operations, formation, maintenance, and disbanding of the SCORPION Unit within the Memphis Police Department.

They are expected to testify regarding efforts they have undertaken pursuant to their ongoing obligation to preserve evidence.

They are expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

**106.    Adam Matz**
c/o Counsel for City of Memphis (Baker Donelson)

The foregoing witness is or was an officer with the Memphis Police Department. He was on duty at the time of the subject occurrence. He is likely to have information concerning his training and experience prior to their employment with the Memphis Police Department, during their employment with the Memphis Police Department, and with respect to the SCORPION Unit in areas including-but not limited to-*Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally. He will also testify regarding the policies, patterns, practices, operating procedures, day-to-day operations, formation, maintenance, and disbanding of the SCORPION Unit within the Memphis Police Department. This witness may be called adversely pursuant to Federal Rule of Evidence 611.

They are expected to testify regarding efforts they have undertaken pursuant to their ongoing obligation to preserve evidence.

They are expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

**107.    Hardy Savage**
c/o Counsel for City of Memphis (Baker Donelson)

Exhibit 3 - Page 32 of 45

The foregoing witness is or was an officer with the Memphis Police Department. He served as an instructor within the Firearms Training Unit, and will testify as to his experience and Memphis Police Department firearms training generally. Further, upon information and belief, he is likely to have information concerning the use of tasers on the night of the Subject Occurrence. This witness may be called adversely pursuant to Federal Rule of Evidence 611.

Further, this witness will testify regarding training that police officers undergo prior to their employment with the Memphis Police Department, at the Police Academy, during their employment with the Memphis Police Department, and with respect to the SCORPION Unit in areas including-but not limited to firearms training or any other areas of training within his experience including *Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally.

They are expected to testify regarding efforts they have undertaken pursuant to their ongoing obligation to preserve evidence.

They are expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

### 108. Chuck Baker
Address Unknown

Upon information and belief, this witness served or serves as the lead investigator into the Subject Occurrence by the Tennessee Bureau of Investigations. He is expected to testify as to the full investigative efforts by the Tennessee Bureau of Investigations of Defendant Officers, Defendant Paramedics, Chief Davis, the City of Memphis, and all related information, as it concerns the Subject Occurrence.

They are expected to testify regarding efforts they have undertaken pursuant to their ongoing obligation to preserve evidence.

They are expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

## SECOND SUPPLEMENTAL WITNESSES

### 109. Lt. Darryl Dotson
c/o Counsel for the City of Memphis (Baker Donelson)

Plaintiff would seek to depose Lt. Dotson concerning his experience as a SCORPION Unit 1 supervisor, and as a Memphis Police Department officer generally. This witness may be called adversely pursuant to Federal Rule of Evidence 611.

As a formers supervisor with SCORPION Unit 1, Lt. Dotson is likely to have information about the training, expectations, habits, and conduct of SCORPION Unit officers from approximately 2021 – 2023.  He is expected to testify about the supervision of SCORPION Unit officers, the expectations of SCORPION Unit officers including but not limited to report writing, daily activity logs, Body Worn Camera recording and review, training regarding unreasonable and reasonable

Page 32

Exhibit 3 - Page 33 of 45

force, protocol concerning filling out response to resistance reports. He will also testify about the his experience reviewing reports of unreasonable force and his requirements as a supervisor to review attendant body worn camera footage and the standards for advancing reports to his supervisor.

He is likely to have information concerning his training and experience prior to his employment with the Memphis Police Department, during his employment with the Memphis Police Department, and with respect to the SCORPION Unit in areas including-but not limited to-*Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally.

He is expected to testify regarding efforts he has undertaken pursuant to their ongoing obligation to preserve evidence.

He is expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

### 110.     Trooper Kyle Coudriet

555 County Road, Evanston, WY 82930

Trooper Kyle Coudriet is a former Memphis Police Department officer who was assigned to SCORPION Unit 1 prior to the subject occurrence. He will testify about his training, experience, and duties with both the Memphis Police Department and the SCORPION Unit specifically. He will testify about the customs and practices of his fellow officers concerning the use of Body Worn Cameras, reporting force in the course of civilian interactions, and the use of unreasonable force by himself and fellow officers. He will testify about the response and discipline by supervisors to reports of unreasonable force.

He will testify about learning about "the tax" as a Memphis Police Department Officer—a custom of utilizing unreasonable force when an individual has run from, resistance, or humiliating officers. He will testify about specific instances of unreasonable force, and his understanding of the investigation into those incidents.

He is likely to have information concerning his training and experience prior to his employment with the Memphis Police Department, during his employment with the Memphis Police Department, and with respect to the SCORPION Unit in areas including-but not limited to-*Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally.

He will testify about his participation and testimony in the federal criminal trial for the defendant officers.

He is expected to testify regarding efforts he has undertaken pursuant to their ongoing obligation to preserve evidence.

He is expected to testify consistent with his deposition. Investigation continues as to all information contained herein.

Page 33

Exhibit 3 - Page 34 of 45

111.    **James Harvey**

Address Unknown

James Harvey is a former Memphis Police Department officer who was assigned to SCORPION Unit 1 prior to the subject occurrence. He will testify about his training, experience, and duties with both the Memphis Police Department and the SCORPION Unit specifically. He will testify about the customs and practices of his fellow officers concerning the use of Body Worn Cameras, reporting force in the course of civilian interactions, and the use of unreasonable force by himself and fellow officers. He will testify about the response and discipline by supervisors to reports of unreasonable force.

He will testify about his failure to report incidents of unreasonable force due to fear of being treated like an "outcast." He will testify about observing specific instances of unreasonable force, and his understanding of the investigation into those incidents.

He is likely to have information concerning his training and experience prior to his employment with the Memphis Police Department, during his employment with the Memphis Police Department, and with respect to the SCORPION Unit in areas including-but not limited to-*Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally.

He will testify about his participation and testimony in the federal criminal trial for the defendant officers.

He is expected to testify regarding efforts he has undertaken pursuant to their ongoing obligation to preserve evidence.

He is expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.


### THIRD SUPPLEMENTAL WITNESSES

112.    **Deangelo Lauderdale**
113.    **Jeremy Henderson**
114.    **LaBryant Burnside**
115.    **Marcus Bills**
116.    **Carla Hamilton**
117.    **Jesus Valles**
118.    **Kieron Lee**
119.    **Marco Lockett**
120.    **Drew Thomas**
121.    **Jeremiah Hall**
122.    **Anthony Whitt**
123.    **Antonio Strawder**
124.    **Daniel Jefferson Jr.**

Addresses Unknown

Page 34

Exhibit 3 - Page 35 of 45

These individuals are believed to be current or former residents of the City of Memphis. Their contact information is more readily available through Defendant City of Memphis' records.

These individuals were identified in paragraph 100 of Plaintiff's Complaint as having experiences within the City of Memphis at the hands of the Memphis Police Department, the SCORPION Unit, and/or the Defendant Officers similar to the Subject Occurrence.

They are expected to have information as to the facts and circumstances surrounding any encounters they have had with the Memphis Police Department, the SCORPION Unit, and/or the Defendant Officers, including-but not limited to-those encounters described in Plaintiff's operative Complaint. They are expected to testify regarding any investigation (or lack thereof) that Memphis Police Department undertook related to their encounters with MPD officers, and the impact of those encounters on their lives. They are further likely to have information regarding the background, customs, and practices of the Memphis Police Department.

They are expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

125.    **Julian "J.B." Burrow**
        5526 Kinbrook Cove, Memphis, TN
        901-421-0511

Mr. Burrow is an employee at FedEx who worked with Mr. Nichols during the entirety of Mr. Nichols' employment there. Mr. Burrow also supervised Mr. Nichols for a period of time. Mr. Burrow will testify as to his relationship with Mr. Nichols, Mr. Nichols' work ethic, dependability, and job performance at FedEx, his understanding of Mr. Nichols' career aspirations, and his observations of Mr. Nichols as a colleague with other FedEx employees. He will also testify to Mr. Nichols' relationship with his stepfather, Rodeny Wells, at FedEx.

126.    **Charlotte Lewis-Ray**
        7624 Sparta Drive, #11, Memphis, TN 38119
        901-520-7001

Ms. Lewis-Ray is an employee at FedEx who worked with Mr. Nichols during the entirety of Mr. Nichols' employment there. Ms. Lewis-Ray also supervised Mr. Nichols for a period of time. Ms. Lewis-Ray will testify as to her relationship with Mr. Nichols, his work ethic, dependability, and job performance at FedEx, her understanding of Mr. Nichols' career aspirations, and her observations of Mr. Nichols as a colleague with other FedEx employees. She will also testify about Mr. Nichols' love and affection for his minor son.

127.    **LaTonya Parham**
        887 Valley Springs Drive, Southhaven, MS 38671
        901-412-2902

Ms. Parham has known Mrs. Wells since approximately 2008, and is both Mrs. Wells' personal friend and her former coworker. Ms. Parham will testify regarding her observations of and interactions with Mrs. Wells, both before and after Mr. Nichols' death, including Mrs. Wells' pain and suffering, grief and sorrow, and emotional distress. Ms. Parham will also testify regarding

Page 35

Exhibit 3 - Page 36 of 45

Mrs. Wells' relationship with Mr. Nichols, and Ms. Wells' interest and concern about her grandson, Mr. Nichols' minor son. Ms. Parham will testify about her interactions with Mr. Nichols, as well as her understanding of Mr. Nichols' residence at the Wells' home.

**128.    Pamela Euell**
1399 Stable Run Drive, Cordova, TN 38016
901-218-1693

Ms. Euell has known Mrs. Wells since approximately 2008, and is both Mrs. Wells' personal friend and her former coworker. Ms. Euell will testify regarding her observations of and interactions with Mrs. Wells, both before and after Mr. Nichols' death, including Mrs. Wells' pain and suffering, grief and sorrow, and emotional distress. Ms. Euell will also testify regarding Mrs. Wells' relationship with Mr. Nichols, and Ms. Wells' interest and concern about her grandson, Mr. Nichols' minor son. Ms. Euell will also testify about Mrs. Wells' capabilities as a professional and a colleague at First Horizon Bank before Mr. Nichols' death.

**129.    James "Jim" Strickland**
*Contact information unknown*

Former Memphis Mayor Jim Strickland has knowledge of the selection, vetting, and appointment of Cerelyn Davis as the Memphis Police Department Chief of Police. He has knowledge of the City's policies, customs, and practices to address crime in the City, including the policies, customs, and practices of the Memphis Police Department and the SCORPION Unit in particular.

Mr. Strickland also has knowledge of the Subject Occurrence and the actions (or lack thereof) that the City took to investigate and remedy both the Subject Occurrence and the underlying policies, customs, and practices that resulted in the Subject Occurrence.

**FOURTH SUPPLEMENTAL WITNESSES**

**130.    Sergeant Jeffrey Klein**
**131.    Detective Dedrick Jones**
**132.    Detective Niesha Williams**
**133.    Detective Kenneth Johnson**
c/o Counsel for the City of Memphis (Baker Donelson)

The foregoing witnesses are or were officers or ranking officials within the Inspectional Services Bureau of the Memphis Police Department. They are likely to have information as to the facts and circumstances surrounding encounters between civilians and Officers with the Memphis Police Department, the SCORPION Unit, and/or the Defendant Officers involving use of force. This includes but is not limited to those encounters described in Plaintiff's operative Complaint. They are expected to testify regarding any investigation (or lack thereof) that Memphis Police Department undertook related to these encounters with MPD officers. They are further likely to

Page 36

Exhibit 3 - Page 37 of 45

have information regarding the background, customs, and practices of the Memphis Police Department.

They are expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

| | |
|---|---|
| 134. | **Colonel Tracy J Burford** |
| 135. | **Colonel Eddie B. Bass** |
| 136. | **Colonel Patricia Burnett** |
| 137. | **Lt. Colonel Carlos Davis** |
| 138. | **Major Robert A. Brown** |
| 139. | **Major Timothy Foster** |
| 140. | **Major Dressels Fox** |
| 141. | **Major Tyrone Butler** |
| 142. | **Lt. Mark D. Thompson** |
| 143. | **Lt. Byron Hardaway** |
| 144. | **Lt. Walter L. Williams** |
| 145. | **Lt. Louis Mithcell** |
| 146. | **Lt. Frederick Martin** |
| 147. | **Officer Charles Morrow** |
| 148. | **Officer LaPatrick Rubin** |
| 149. | **Officer Trey Moore** |
| 150. | **Officer Martin Brooks** |
| 151. | **Officer William Hickman** |
| 152. | **Officer Armond Fairley** |
| 153. | **Officer Jeremy Mackey** |
| 154. | **Officer David Rowsey** |
| 155. | **Officer Michael Tippett** |
| 156. | **Officer William Skelton** |
| 157. | **Officer Michael R Williams** |
| 158. | **Officer Anthony Henderson** |
| 159. | **Officer Brandon McLean** |
| 160. | **Officer Jason Waddell** |
| 161. | **Officer Ericsteven Cook** |
| 162. | **Officer Jarrod Hurst** |
| 163. | **Officer Joshua Redding** |
| 164. | **Officer Mark Martin** |
| 165. | **Officer Justin Murray** |
| 166. | **Officer Christopher Freeman** |
| 167. | **Officer Niesha Robinson** |
| 168. | **Officer Armando Bustamante** |

| | |
|---|---|
| 169. | Officer Alexis Brown |
| 170. | Officer Alexander Anderson |
| 171. | Officer Rufus Potts |
| 172. | Officer Caleb Ervin |
| 173. | Officer Timothy Hamilton |
| 174. | Officer Christopher Cato |
| 175. | Officer Kyle Lampley |
| 176. | Officer Kimberly Houston |
| 177. | Officer Catrellus Yancey |
| 178. | Officer Charles Pittman |
| 179. | Officer James Reed |
| 180. | Officer Dennis McNeil |
| 181. | Officer Sarah Carpenter |
| 182. | Officer Jermaine Wilson |
| 183. | Officer Carey Owen |
| 184. | Officer Stephen Owens |
| 185. | Officer Terry Morrio |
| 186. | Officer Antonio Malone |
| 187. | Officer Demorris Carter |
| 188. | Officer William Smith |
| 189. | Officer Bryan Farrington |
| 190. | Officer Tevren Micthell |
| 191. | Officer Jasmine Linsey |
| 192. | Officer Brian Scott |
| 193. | Officer Taiyuan Brooks |
| 194. | Officer Jacob Walsh |
| 195. | Officer Nicholas Hawkins |
| 196. | Officer Patric J. Ferguson |
| 197. | Officer Taiyuan Brooks |

c/o Counsel for the City of Memphis (Baker Donelson)

The foregoing witnesses are or were officers or ranking officials within the Memphis Police Department. They are likely to have information as to the facts and circumstances surrounding numerous encounters between civilians and Officers with the Memphis Police Department, the SCORPION Unit, and/or the Defendant Officers involving use of force. This includes but is not limited to-those encounters described in Plaintiff's operative Complaint. They are expected to testify regarding any investigation (or lack thereof) that Memphis Police Department undertook related to these encounters with MPD officers. They are further likely to have information regarding the background, customs, and practices of the Memphis Police Department.

They are expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

Page 38

Exhibit 3 - Page 39 of 45

198. **Lorna S. McClusky** (Lorna.McClusky@scdag.com)
199. **Robert H. Gowen** (rob.gowen@shelbycountytn.gov)

The foregoing witnesses are or were attorneys and officials in the Shelby County District Attorney's Office Justice Review Unit (JRU). They are likely to have information as to the facts and circumstances surrounding the use of force by officers of the Memphis Police Department, the SCORPION Unit, and/or the Defendant Officers, including but not limited to those encounters and patterns described in Plaintiff's operative Complaint.

Ms. McClusky served as Chief of the Justice Review Unit, and Mr. Gowen served as Deputy Chief of the Justice Review Unit. In those capacities, both witnesses reviewed officer use of force cases involving Memphis Police Department officers for potential criminal prosecution. They wrote a June 23, 2023 letter to Chief Cerelyn Davis and Deputy Chief Don Crowe concerning an officer-involved shooting and officer use of force on December 30, 2022, involving Memphis Police Department Officers Justin Vazeii and William Hickman, and civilian Mica'h Finney. COM_0215424. McClusky and Gowen's letter described Officer Hickman's "repeated punches" to Mr. Finney as "reminiscent of other recent cases we have reviewed and show a practice that should be addressed." *Id.* These witnesses will testify regarding their findings, observations, and conclusions set forth in that correspondence and in connection with their broader review of MPD use of force cases.

They are expected to testify consistently with any deposition given in this matter. Investigation continues as to all information contained herein.

200. **E. Winslow "Buddy" Chapman**
*Contact information unknown*

E. Winslow "Buddy" Chapman is a former Director (now referred to as "Chief") of the Memphis Police Department, who served in that role from 1976 to 1983. Mr. Chapman will testify regarding his career within the Memphis Police Department, including his time serving as the Director.

Mr. Chapman has knowledge of the Memphis Police Department's policies, patterns, practices, operating procedures, and day-to-day operations *before* the tenure of Director Michael Rallings and Chief Cerelyn Davis, as well as knowledge of those same topic areas *after* his departure.

He also has knowledge of the hiring standards of the Memphis Police Department; the general structure of the Memphis Police Department, especially of specialized units; and locations of various department buildings. He also has knowledge of MPD training in various areas, including but not limited to specialized units, *Terry* stops, reasonable articulable suspicion, probable cause, traffic stops, foot pursuits, the use of force, the use of batons, the use of tasers, the use of pepper spray, the use of deadly force, and the Fourth Amendment more generally. He also has knowledge of the supervision within MPD of patrol officers and officers within specialized units.

He is expected to testify consistent with any deposition given in this matter. Investigation continues as to all information contained herein.

Exhibit 3 - Page 40 of 45

**PLAINTIFF'S RIGHT TO SUPPLEMENT**

Plaintiff reserves all rights to supplement and amend with additional witnesses until the Court-ordered deadline cutting off any future discovery and the supplementation of additional witnesses. Plaintiffs reserve the right to supplement this disclosure as discovery is ongoing, including-but not limited to-witnesses such as (1) those necessary to lay foundation for video or audio recordings; (2) those necessary to lay foundation for business records; (3) those necessary to lay foundation for medical records and bills; (4) those necessary to authenticate any recordings, records, or bills; (5) witnesses identified during written discovery and depositions; and (6) those necessary to perfect the impeachment of any witness' testimony.

Plaintiff hereby incorporates the disclosure and reserves the right to disclose, depose, and call to testify any witness disclosed by any other party in this litigation.

## DOCUMENTS

**Rule 26(a)(1)(A)(ii): A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment:**

Each and every witness may be shown various documents, electronically stored information, tangible things, exhibits, and other materials prior to and at the time of trial. Plaintiff does not want the other parties to be surprised that demonstrative exhibits concerning medical concepts or diagrams, animations, videos relating to liability may be shown to the witnesses. It is impossible to identify all exhibits that might or could be used at this time, but it is anticipated that exhibits will be liberally used throughout depositions and during the course of trial.

The following documents and tangible things are currently in Plaintiff's possession, custody or control, which Plaintiff may use to support a claim or defense:

- Medical records reflecting Plaintiff's injuries and damages;

- Videos from witness Jennifer Roberts;

- Medical Records received to date from St. Francis Hospital for Tyre Nichols;

- Autopsy Report for Tyre Nichols;

- Autopsy Photographs for Tyre Nichols;

- Videos shared by Memphis Police Department on March 7, 2023 depicting the Subject Occurrence;

- Officer Decertification Documents;

- Family photographs; *and…*

Page 40

Exhibit 3 - Page 41 of 45

- Family videos.

## PHOTOGRAPHS, VIDEOS, AND MEDICAL ANIMATIONS

Photographs and videos depicting Tyre Nichols, the Subject Occurrence, RowVaughn Wells, the Nichols/Wells family, or other matters relevant to Plaintiff's operative Complaint and allegations contained therein  may be produced, and, if so, will be produced to all parties prior to trial.

Medical illustrations and animations depicting the nature and extent of Tyre Nichols' injuries and death and RowVaughn Wells' injuries and/or current medical condition may be created prior to trial. Upon completion, the medical illustrations and animations will be produced to all parties. The medical witnesses will testify that the medical illustrations and animations truly and accurately depict the nature and extent of Tyre Nichols' injuries and death and RowVaughn Wells' injuries and/or current medical condition

## PLAINTIFF'S RIGHT TO SUPPLEMENT

Plaintiff reserves all rights to supplement and amend with additional documents until the Court-ordered deadline cutting off any future discovery and the supplementation of additional witnesses.

## DAMAGES

**Rule 26(a)(1)(A)(iii): A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered:**

Compensatory Damages – Economic:

Plaintiff has suffered economic damages, including but not limited to, medical expenses, funeral expenses, the past and future loss of income, and attorneys' fees and costs.

Mr. Nichols' minor son has suffered economic damages through future loss of income and financial support from Mr. Nichols.

Investigation continues and Plaintiff will supplement upon receipt of any records and/or bills. The quantification of such damages will be left to a jury to determine.

Compensatory Damages – Non-Economic:

The value of the life of the deceased, Mr. Nichols.

Mr. Nichols' conscious pain and suffering from the time of his initial injuries until the time of his death.

Page 41

Exhibit 3 - Page 42 of 45

Plaintiff has suffered, and will continue to suffer, non-economic damages, including but not limited to: (a) mental and emotional distress; (b) psychological pain and suffering; (c) physical pain and suffering; and (d) grief. Theses damages are difficult to quantify and investigation continues. The quantification of such damages will be left to a jury to determine.

Mr. Nichols' minor son has suffered, and/or will suffer, non-economic damages, including but not limited to: (a) psychological pain and suffering; (b) grief; and (c) the loss of intangible benefits, including but not limited to love, affection, attention, education, guidance, care, protection, training, companionship, and cooperation that the minor child would reasonably be certain to have received from Mr. Nichols had Mr. Nichols not been killed.

Theses damages are difficult to quantify and investigation continues. The quantification of such damages will be left to a jury to determine.

Punitive Damages: As a result of the reprehensibility of the Individual Defendants' misconduct, Plaintiff also seeks punitive damages to punish those Individual Defendants and to deter future misconduct. The quantification of such damages will be left to a jury to determine.

Attorneys' Fees and Costs: Pursuant to 42 U.S.C. § 1988, in an action or proceeding to enforce 42 U.S.C. § 1983, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction. Plaintiff's Counsel's fee structure with proposed reasonable hourly rates will be tendered at a later date upon Motion or at a time when instructed by the Court.

## PLAINTIFF'S RIGHT TO SUPPLEMENT

Plaintiff reserves all rights to supplement and amend with additional damages until the Court-ordered deadline cutting off any future discovery and the supplementation of additional witnesses.

## INSURANCE

**Rule 26(a)(1)(A)(iv): For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment:**

Not applicable to the Plaintiff.

Dated:  March 30, 2026                          Respectfully submitted,

                                                */s/ Joshua M. Levin*
                                                Antonio M. Romanucci* (Ill. Bar No. 6190290)
                                                Sarah Raisch* (Ill. Bar No. 6305374)
                                                Joshua M. Levin* (Ill. Bar No. 6320993)
                                                Stephen H. Weil* (Ill. Bar No. 6291026)
                                                Sam Harton* (Ill. Bar No. 6342112)

Page 42

Exhibit 3 - Page 43 of 45

Colton Johnson Taylor* (Ill. Bar No. 6349356)
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark St., Ste. 900
Chicago, IL 60654
(312) 458-1000
aromanucci@rblaw.net
sraisch@rblaw.net
jlevin@rblaw.net
sweil@rblaw.net
sharton@rblaw.net
cjohnson@rblaw.net

David L. Mendelson (Tenn. Bar No. 016812)
Benjamin Wachtel (Tenn. Bar No. 037986)
**MENDELSON LAW FIRM**
799 Estate Place
Memphis, TN 38187
(901) 763-2500 (ext. 103)
dm@mendelsonfirm.com
bw@mendelsonfirm.com

Benjamin Crump (Tenn. Bar No. 038054)
Brooke Cluse* (Tex. Bar No. 24123034)
**BEN CRUMP LAW, PLLC**
717 D Street N.W., Suite 310
Washington, D.C. 20004
(337) 501-8356
court@bencrump.com
brooke@bencrump.com

* Admission *pro hac vice*

Page 43

Exhibit 3 - Page 44 of 45

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on March 30, 2026, the foregoing was served by email on all counsel of record.


*/s/ Joshua M. Levin*

Page 44

Exhibit 3 - Page 45 of 45