**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| RowVaughn Wells, Individually and as Administratrix of the Estate of Tyre Deandre Nichols, Deceased, | ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| The City of Memphis, Tennessee; Chief Cerelyn Davis; Emmitt Martin III; Demetrius Haley; Justin Smith; Desmond Mills, Jr.; Tadarrius Bean; Preston Hemphill; DeWayne Smith, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

CASE NO. 2:23-CV-02224-SHL-atc
JURY DEMAND

**CHIEF CERELYN DAVIS'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR SEVERANCE AND VOLUNTARY DISMISSAL WITH**
**PREJUDICE OF CLAIMS AGAINST CHIEF CERELYN DAVIS**

Defendant Chief Cerelyn Davis ("Chief Davis") respectfully submits this Response in Opposition to Plaintiff's Motion for Severance and Voluntary Dismissal with Prejudice, (ECF No. 608). Plaintiff's Motion should be denied because it seeks to extinguish Chief Davis's appeal of the denial of her qualified immunity through a unilateral dismissal of Chief Davis as a party to this underlying lawsuit.

That issue is before the Sixth Circuit now and is ripe for resolution. Dismissal of Chief Davis's appeal at this point would deny her right to have that issue resolved, and it would

perpetuate the confusion that exists in the Sixth Circuit surrounding the "clearly established" prong of qualified immunity. Accordingly, the Court should deny Plaintiff's Motion.

**I.      Chief Davis Has a Cognizable Interest in Having Her Qualified Immunity Appeal Resolved Based on the Misapplication of the Legal Standard in *Peatross v. City Of Memphis*.**

Chief Davis filed a motion to dismiss asserting qualified immunity. (*See* ECF No. 303.) In her Response, Plaintiff cited to *Peatross v. City of Memphis*, 818 F.3d 233 (6th Cir. 2016) stating:

> As set out above, [*Peatross*] held on no uncertain terms that a police chief in a city like Memphis who "knowingly acquiesce[s] in widespread unconstitutional conduct [sic] by the chief's subordinates, including by "acts" and "omissions" in failing to address and take reasonable steps to stop that conduct, violates the law and is liable as a supervisor under Section 1983.

(ECF No. 347, PageID 4762–63 (second alteration in original).)

The Court denied Chief Davis qualified immunity. (ECF No. 484, PageID 7064.) In so doing, the Court relied on *Peatross v. City of Memphis* for the proposition that "it was clearly established at the time of these events that a police supervisor could be liable for 'at least implicitly authoriz[ing], approv[ing], or knowingly acquiesc[ing] in the unconstitutional conduct of the offending officers.'" (*Id.* (citing *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016).)

Chief Davis immediately exercised her right to appeal the issue of qualified immunity to the Sixth Circuit, arguing, in part, that *Peatross* was wrongly decided, and the standard for determining what is "clearly established" under the framework of qualified immunity should be resolved by the appellate court.

In her Appellant Brief, Chief Davis argues that *Peatross* is not "clearly established" law such that every reasonable Police Chief would interpret it to establish the particular rule Plaintiff

2

seeks to apply. This is so because *Peatross* applied an incorrect standard to the "clearly

established" prong of qualified immunity. *See RowVaughn Wells, et al. v. City of Memphis, et

al.*, No. 25-05998, Dkt. No. 21 (6th Cir. Oct 30, 2025).

In *Peatross*, the Sixth Circuit incorrectly stated that the plaintiff "need only show that the

right that [the subordinate officers] violated was clearly established at the time of the violation."

*Peatross*, 818 F.3d at 245 (citing *Coley v. Lucas Cty.*, 799 F.3d 530, 539–41 (6th Cir. 2015)).

More specifically, the Court stated:

> We next examine whether the right alleged to have been violated was clearly
> established at the time of the violation. As an initial matter, Armstrong
> argues that the Estate failed to allege a clearly established right because the
> Estate seeks to hold Armstrong liable under a theory of supervisory liability,
> and Vanterpool did not have a constitutional right to additional police
> training. Armstrong's argument evinces a misunderstanding of this prong of
> the qualified immunity analysis. The Estate need not show that Vanterpool
> had a constitutional right to additional training or adequate supervision from
> Armstrong; it need only show that the right that Officers McMillen and
> Dunaway violated was clearly established at the time of the violation.
> Armstrong admits that Vanterpool's "Fourth Amendment rights are clearly
> established insofar as the alleged misconduct of Officer's Dunaway and
> McMillen are concerned." Based on Armstrong's concession, which is
> consistent with this court's precedent, the right is clearly established.

*Peatross*, 818 F.3d at 245 (citing *Coley,* 799 F.3d at 539–41 (emphasis added); *Smith v. Cupp,*

430 F.3d 766, 774 (6th Cir. 2005).

But this is not the correct analysis. To determine if a right was "clearly established" for

purposes of qualified immunity, the question ***is not*** whether ***the plaintiff's constitutional rights***

were clearly established at the time of the incident; but rather, the question is whether ***the***

***conduct of the officers*** was clearly established to have been violative of a constitutional right at

the time of the incident.

The Supreme Court has explained that "'clearly established' means that, at the time of the

officer's conduct, the law was sufficiently clear that every reasonable official would understand

3

that what he is doing is unlawful." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018) (cleaned up). In other words, existing law must have placed the constitutionality of **Chief Davis's conduct** "beyond debate." *Id.*

*Peatross* did not apply this rubric. In *Peatross*, the Sixth Circuit incorrectly stated that the plaintiff "need only ***show that the right that [the subordinate officers] violated was clearly established*** at the time of the violation." *Peatross*, 818 F.3d at 245 (citing *Coley*, 799 F.3d at 539–41) (emphasis added). *Peatross* thus concluded that because the decedent's "Fourth Amendment rights [were] clearly established insofar as the alleged misconduct of [the subordinate officers] are concerned . . . the right [was] clearly established." *Id.*

Not only did *Peatross* misapply the legal standard for "clearly established," it also misstated the case upon which it relied to come to its conclusion. *Peatross* relied on *Coley* for the proposition that the plaintiff "need only show that the right that [the subordinate officers] violated was clearly established at the time of the violation" to succeed on the clearly established prong. *Id.* (citing *Coley*, 799 F.3d at 539–41).

But *Coley* does not state that—*Coley* applied the correct standard for determining whether the right was clearly established:

> [W]e now turn to whether the law regarding the use of gratuitous force on a restrained detainee is clearly established. To satisfy this second prong of the qualified immunity analysis, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." The key inquiry is whether a defendant claiming qualified immunity "was on notice that his alleged actions were unconstitutional." The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." We look first to Supreme Court decisions, then Sixth Circuit case law in order to determine if the right claimed was clearly established when the events occurred. The plaintiff "has the burden of showing that a right is clearly established," while the defendant "carries the burden of showing that the challenged act was objectively reasonable in light of the law existing at the time."

*Coley*, 799 F.3d at 539–40 (cleaned up) (emphasis added).

4

*Coley* found that, at the time of the incident giving rise to the lawsuit, pretrial detainees had a clearly established right not to be gratuitously assaulted while fully restrained and subdued, and pointed to *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995) and *Moore v. Holbrook*, 2 F.3d 697, 700–01 (6th Cir. 1993). Stated another way, it was clearly established at the time of the incident in *Coley* that officers could not gratuitously assault a detainee while fully restrained.

*Peatross* did not apply that same analysis to the clearly established prong. Instead, *Peatross* relied on the police chief's concession that the victim's rights were violated by the officers involved in the shooting (importantly, not by the Director of Police) as determinative that the "right" at issue was clearly established. *See Peatross*, 818 F.3d at 245.

Since *Peatross*, numerous cases have been decided in reliance on *Peatross*, and undoubtedly many more courts will rely on *Peatross* in the future to deny qualified immunity to law enforcement supervisors. *Peatross* specifically ruled on the constitutionality of the conduct of one of Chief Davis's predecessors, making her interest in having *Peatross* adjudicated that much more substantial. *Peatross* also serves as the legal basis for other subsequent lawsuits against Chief Davis where those plaintiffs assert that Chief Davis lacks qualified immunity. Chief Davis, as the Chief of Police in Memphis, Tennessee, undoubtedly has a cognizable interest in resolving the issue of what is a "clearly established" right under the doctrine of qualified immunity as it applies to police chiefs and other law enforcement supervisors.

Since Chief Davis made these arguments regarding *Peatross* in her Appellant Brief, the United States Supreme Court decided *Zorn v. Linton*, 146 S. Ct. 926 (2026), which fortuitously further clarifies the "clearly established" prong and confirmed that *Peatross* applied an impermissibly generalized standard. In *Zorn*, the Supreme Court reversed the Second Circuit,

explaining that "[a] right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Zorn*, 146 S. Ct. at 930 (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (*per curiam*)) (quotation marks omitted). The Supreme Court stated that the inquiry must be conducted in light of the specific context of the case as "courts generally 'need to identify a case where an officer acting under similar circumstances . . . was held to have violated' the Constitution." *Id.* (quoting *Escondido v. Emmons*, 586 U.S. 38, 43 (2019) (*per curiam*) (internal quotation marks omitted)).

Crucially, the Supreme Court clarified that it is not enough that an officer's actions ***might possibly*** violate someone's constitutional rights. To defeat qualified immunity, the plaintiff must "identify a case where an officer taking similar actions in similar circumstances 'was held to have violated' the Constitution." *Id.* at 931 (citing *Emmons*, 586 U.S. at 43) (emphasis added). In *Zorn*, the Supreme Court reversed the Second Circuit's denial of qualified immunity because "the Second Circuit failed to identify a case where an officer taking similar actions in similar circumstances 'was held to have violated' the Constitution." *Id.*

So, too, in *Peatross*. Not only did the *Peatross* Court misapply the "clearly established" framework, the *Peatross* Court failed to identify a case where an officer taking similar actions in similar circumstances "was held to have violated" the Constitution. The *Peatross* Court relied solely on *Coley* to satisfy the clearly established prong, but *Coley* ***did not hold that the supervisor's actions in that case were violative of a constitutional right***. Rather, *Coley* held that the plaintiff's ***allegations*** regarding the supervisor's culpability were merely "***sufficient to show*** that [p]laintiffs [had] established a valid claim under § 1983 . . . ." *Coley*, 799 F.3d at 542 (emphasis added).

Under *Zorn*, *Peatross* fails to establish the clearly established prong of qualified

6

immunity. *Zorn* clarifies that it is not enough to point to precedent that muses that certain conduct ***might possibly give rise to*** constitutional violation, the court must point to precedent ***that holds that the conduct in question violates a constitutional right***. *Peatross* failed to do so, and its holding must be revisited.

Thus, Chief Davis has a concrete, legally cognizable interest in appellate review of the Court's Order relying on *Peatross*. Dismissal of Chief Davis from this case at this juncture would inflict clear legal prejudice on Chief Davis, and Plaintiff's Motion should be denied.

**II.    The Court Should Deny Plaintiff's Request to Provide an Indicative Ruling Under Rule 62.1 Stating That It Would Grant the Motion to Dismiss Chief Davis.**

Plaintiff relies heavily on Federal Rule of Civil Procedure 62.1, but that Rule does not mandate an indicative ruling, nor does it authorize district courts to disrupt appellate jurisdiction. Rule 62.1 is discretionary. It provides that a district court ***"may"*** issue an indicative ruling—it does not require one. *See* Fed. R. Civ. P. 62.1(a). Moreover, it supplies district courts with three options: defer considering the motion; deny it; or "state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." *Id*.; *see also Frank v. Good Samaritan Hosp. of Cincinnati, Ohio,* No. 1:18-CV-00618, 2023 WL 2265313, at *3 (S.D. Ohio Feb. 28, 2023), *aff'd sub nom. Frank v. Good Samaritan Hosp. of Cincinnati, Ohio*, No. 23-3275, 2023 WL 6623635 (6th Cir. Oct. 11, 2023).

The Court should instead deny Plaintiff's request to provide an indicative ruling stating that it would grant Plaintiff's motion to dismiss her claims against Chief Davis. Here, an indicative ruling would do precisely what Rule 62.1 is designed to avoid: collapse the appellate process mid-stream and deprive the Court of Appeals of the issue before it. Instead, the Court can choose to defer or deny Plaintiff's request as to an indicative ruling. "[U]nilateral expressions might actually complicate, confuse and prolong these proceedings, since the court of appeals

7

would now have to consider both the positions of the litigants and two separate orders from this court granting somewhat different forms of relief to the petitioner." *Han Tak Lee v. Cameron*, No. 4:08-CV-1972, 2015 WL 1000231, at \*5 (M.D. Pa. Mar. 5, 2015) (recognizing district court discretion under Rule 62.1 and declining an indicative ruling where doing so would intrude on the appellate court's consideration of the same issue).

As explained above, Chief Davis has a cognizable interest in the adjudication of her qualified immunity denial. Plaintiff relies on *Smoot v. Fox*, 340 F.2d 301 (6th Cir. 1964), *Pedreira v. Sunrise Children's Servs., Inc.*, 79 F.4th 741 (6th Cir. 2023), and *Faulkner v. Martin*, 2024 WL 869931 (6th Cir. Feb. 29, 2024). But none of these cases support her position. Those cases involve district courts exercising discretion over voluntary dismissals where **no interlocutory appeal was pending and no immunity rights were at stake**. They do not hold that a plaintiff may extinguish a defendant's appellate rights, nor could they. [1]

In fact, *Pedreira* declined to adopt a rigid interpretation of Rule 41(1)(2) that would make denial of a motion for voluntary dismissal an abuse of discretion. *Pedreira*, 79 F.4th at 749–51. The Court stated:

> Modern litigation involves ever-more complex configurations of parties, and courts may face circumstances that require a fuller inquiry of a voluntary motion to dismiss with prejudice than that conducted by the *Smoot* court. Although it is unlikely that dismissing an action with prejudice might so unfairly affect a defendant that a voluntary motion for such dismissal should be denied, there may be rare cases in which dismissal with prejudice adversely affects the interests of defendants or third parties in a way that causes them plain legal prejudice. Rule 41(a)(2)'s emphasis on court oversight only affirms the need for courts to use their discretion in considering motions to dismiss with prejudice, and to impose terms and conditions on dismissals as they see fit.

---

[1] It should be noted that Plaintiff attached and quoted from a confidential Rule 408 settlement communication that cannot be used as evidence and should never have been disclosed publicly. (*See* ECF No. 608-1, PageID 9276–82.)

*Id* at 750–51 (cleaned up) (citations omitted) (emphasis added). That is exactly one of those "rare cases" where dismissal will adversely affect the interest of Chief Davis.

Moreover, while Rule 41(a)(2) generally favors voluntary dismissal, the Sixth Circuit has been clear that dismissal may be denied where it would cause "plain legal prejudice" to the defendant:

> In determining whether a defendant will suffer plain legal prejudice, a court should consider such factors as the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and whether a motion for summary judgment has been filed by the defendant.

*See Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994).

Here, application of the *Grover* factors weighs in favor of denying any request for voluntary dismissal of Chief Davis. Chief Davis has expended efforts and resources to defend herself—including filing a Motion to Dismiss Plaintiff's First Amended Complaint based on qualified immunity, then filing an Answer to the First Amended Complaint, and, most notably, appealing the district court's denial of her motion to dismiss on qualified immunity grounds to the Sixth Circuit.

Second, it is well documented with this Court the delays caused by Plaintiff in this case. Plaintiff has taken enormous amounts of discovery from the parties. Plaintiff has scheduled and canceled and rescheduled depositions for years, and Plaintiff still has not completed her discovery obligations despite the Court ordered deadline for doing so. In fact, Plaintiff just recently disclosed an additional seventy potential witnesses—twenty-two of whom had never previously been disclosed by Plaintiff in any correspondence or filings—in her Fourth Supplemental Initial Disclosures that were served ten days after the close of fact discovery. (*See* Plaintiff's Fourth Supplemental Initial Disclosures, ECF No. 608-1.) Plaintiff also disclosed

9

seven liability experts after the close of fact discovery, despite indicating to the Court they have only three or four liability experts (ECF No. 570, PageID 8832, ll. 1-5.), and Plaintiff has not completed her Court-ordered document production or produced certain items from Mr. Nichols's car for forensic testing as was ordered by the Court. (*See* ECF No. 609.)

Regarding the third factor, dismissal is not warranted if the moving party fails to "provide[] a sufficient explanation for the need to take a dismissal[,]" when looking at the circumstances of the case in its totality. *Owner-Operator Indep. Drivers Ass'n v. United Van Lines, Inc.*, No. 4:06-CV-219 (JCH), 2007 WL 1223463, at *2 (E.D. Mo. Apr. 24, 2007) (denying plaintiffs' motion to voluntarily dismiss with prejudice the defendant when "[t]he vague assertion that previous orders have 'effectively terminated' [p]laintiffs' claims do not show a need to take a dismissal, especially when class certification is set to begin in May").

Plaintiff has offered one sole justification for the Motion for Severance and Voluntary Dismissal: her desire to try the case in November 2026 as currently scheduled. (*See* ECF No. 608, PageID 9250.)  This lone justification does not override Chief Davis's interest in settling the issue of qualified immunity for police chiefs and other supervisors that is currently before the Sixth Circuit. Moreover, Plaintiff's stated justification—preserving a potential trial date—is disingenuous and, at best, speculative. Plaintiff disclosed twenty-two additional witnesses after fact discovery was closed *knowing* that diligent counsel would need additional time for fact discovery related to those witnesses. As courts have recognized, vague or convenience-based explanations do not justify dismissal where significant rights are at stake. *See, e.g.*, *Owner-Operator Indep. Drivers Ass'n v. United Van Lines, Inc.*, 2007 WL 1223463, at *2 (E.D. Mo. Apr. 24, 2007). And gamesmanship, clearly, is not a justification.

10

Importantly, the trial date remains subject to alteration due to the stay as to the five criminally indicted defendants and ongoing discovery disputes. Thus, Plaintiff's inconvenience-based explanation of why she must have immediate dismissal of Chief Davis should not override the vested appellate rights of Chief Davis and the parties' need to obtain discovery from the Stayed Defendant Officers.

Forcing dismissal here would permanently deprive Chief Davis of a vested right to interlocutory review of her qualified immunity and would perpetuate the incorrect analysis in *Peatross*—a case on which courts in this Circuit are required to rely, and on which it did rely. That loss constitutes quintessential "plain legal prejudice" under *Grover*. This prejudice is entirely avoidable, and the competing interests[2] between all the parties involved is best managed by maintaining the current status quo—denying Plaintiff's Motion for Severance and Voluntary Dismissal.

## III.    Severance of the Claims Against Chief Davis Is Improper.

Though Plaintiff boldly asserts that "[s]everance is practical" here and that "it has no effect on [Chief Davis] at all, because Plaintiff is seeking to dismiss all claims against her with prejudice[,]" Plaintiff ignores the fact that she seeks severance of the claims against Chief Davis while Chief Davis seeks the adjudication of Chief Davis's interlocutory appeal of the Court's denial of her qualified immunity. (ECF No. 608, PageID 9252.)

In considering a motion to sever under Rule 21, courts consider the following:

> . . . principles of fundamental fairness and judicial efficiency as well as prejudice to any party or resulting undue delay. ***The moving party is tasked***

---

[2] To be sure, Plaintiff, in her individual capacity, will not suffer any prejudice by a delay in the trial date. Her claims against the City have been dismissed, and her recovery is limited to her state law claims against two out-of-work former police officers. The Estate will not suffer any prejudice by the delay because the sole heir to the Estate—Mr. Nichols' minor child—does not even know that Mr. Nichols is his biological father, nor has he ever received any support directly from Mr. Nichols. He certainly is not expecting or counting on a windfall from this case on any certain time frame.

11

> ***with establishing that severance is required to avoid prejudice or
> confusion and to promote the ends of justice.*** Courts have also considered
> whether settlement of the claims or judicial economy would be facilitated;
> whether prejudice would be avoided if severance were granted; and whether
> different witnesses and documentary proof are required for the claims
> sought to be severed and the claims that would remain. Applying this
> standard, the court "has virtually unfettered discretion" in determining
> whether severance is appropriate. Claims may be severed if the court
> determines, in its discretion, that the interest of justice would be served by
> doing so.

*Mark Francis Macduff Spence, Sr. v. Dexcom, Inc.*, No. 3:18-CV-0369, 2019 WL 302504, at *2
(M.D. Tenn. Jan. 23, 2019) (citations omitted) (emphasis added); *see Alvion Properties, Inc. v.
Weber*, 2009 WL 3060419, at * 8 (M.D. Tenn. Sept. 23, 2009). "Rule 21 severance is not the
norm[] [as it] usually arises in the context of misjoinder of parties . . . .  Rule 21 severance may
also be called for where failure to sever would place an undue burden on the parties, impose
unnecessary expense, or would risk jury confusion at trial." *Alvion Props., Inc.*, 2009 WL
3060419, at *8 (citation omitted).

Plaintiff cannot meet her obligation as the moving party to demonstrate why severance is
required. Severance under Rule 21 is not warranted here because it would undermine judicial
efficiency, create a substantial risk of inconsistent adjudications, and prejudice Plaintiff, rather
than advancing fundamental fairness or the orderly administration of justice.

First, the claims against Chief Davis, as the claims against the Stayed Defendant Officers,
are inextricably intertwined with the claims against the City and the remaining individual
Defendants. All claims arise from the same nucleus of operative facts, involve overlapping
witnesses and documentary evidence, and turn on common factual questions regarding policies,
practices, supervision, and conduct. Plaintiff's claims against the City are necessarily predicated,
at least in part, on the alleged actions and decisions of Chief Davis in her role as Chief of Police.
Severing those claims would fracture what is fundamentally a single, cohesive case and require

12

duplicative presentation of evidence in separate proceedings. *See, e.g.*, *Six L's Packing Co. v. Beale*, No. 3:10-CV-01132, 2012 WL 928897, at *2 (M.D. Tenn. Mar. 19, 2012) ("[D]ue to the interrelated nature of the allegations, claims, and parties in this case, the Court does not believe that severance would serve the interests of efficiency and judicial economy.").

Severance would also create a substantial risk of inconsistent factual determinations. Proceeding to trial against the City and other officers while Chief Davis's claims are separated invites overlapping factual findings on supervision, policymaking, and causation. In civil cases, "courts strive to harmonize apparently inconsistent verdicts[.]" *Hartzler v. Licking Cty. Humane Soc.*, 740 F. Supp. 470, 478 (S.D. Ohio 1990). When "there is no rational, non-speculative way to reconcile the essential jury findings which necessarily form the basis for the verdicts rendered" in a case, then courts will set the jury verdict aside. *Id.* Here, Plaintiff risks precisely that outcome: factual determinations regarding Chief Davis's supervisory role and alleged constitutional violations would necessarily overlap with, and potentially conflict with, findings made in a trial against the City and other officers. Such fragmentation would undermine judicial economy, threaten verdict integrity, and increase the likelihood of retrial or reversal—outcomes that weigh strongly against severance.

Even if severance were procedurally permissible, the efficiency rationale offered in its favor is illusory. Plaintiff's assertion that severance would preserve the current trial date rests on administrative convenience alone, which does not justify fragmenting a factually unified case. Severance would merely shift inefficiencies—resulting in duplicative motion practice, repeated evidentiary rulings, overlapping witnesses, and the real possibility of multiple trials involving the same evidence. Plaintiff's filings make clear that the true motive for severance is preserving a preferred trial schedule and eliminating appellate delay, but strategic inconvenience cannot

13

override a defendant's right to qualified-immunity review. Particularly when the "offending" stay has been in place for some time. Where, as here, the claims are factually intertwined and cannot proceed as discrete actions, severance is neither efficient nor appropriate.

Severance is appropriate *only* when it promotes efficiency and fairness without prejudicing the parties or causing undue delay—those considerations weigh strongly against severance in this case. The Court should therefore deny the request to sever Plaintiff's claims under Rule 21.

### CONCLUSION

Plaintiff's Motion requests extraordinary relief that undermines settled jurisdictional principles, fragments intertwined claims, and strips Chief Davis of her right to appellate adjudication of qualified immunity. The Federal Rules do not require—and Sixth Circuit precedent does not permit—such a result. For these reasons, Chief Cerelyn Davis respectfully requests that Plaintiff's Motion be denied in its entirety.

Dated: April 14, 2026

Respectfully submitted,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.**

*s/ Bruce McMullen*
Bruce McMullen (#18126)
Jennie Vee Silk (#35319)
Kelsey W. McKinney (#40434)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 526-2000
bmcmullen@bakerdonelson.com
jsilk@bakerdonelson.com
kmckinney@bakerdonelson.com

*Attorneys for Defendant City of Memphis
and Chief Cerelyn Davis in her Individual
Capacity*

14