**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| ROWVAUGHN WELLS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:23-cv-02224-SHL-atc |
| | ) | |
| THE CITY OF MEMPHIS, et al., | ) | |
|     Defendants. | ) | |
| | ) | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL
OF CLAIMS AGAINST STAYED DEFENDANT OFFICERS**

Before the Court is the Motion for Voluntary Dismissal of Claims Against Stayed

Defendant Officers, filed March 27, 2026, by Plaintiff RowVaughn Wells, individually and as

administatrix ad litem of her son Tyre Deandre Nichols's estate.  (ECF No. 607.)  The Motion

seeks to dismiss, with prejudice, the claims against Emmitt Martin III, Desmond Mills, Jr.,

Tadarrius Bean, Demetrius Haley, and Justin Smith (the "Stayed Defendants"), against whom

this case has been stayed since September 21, 2023, while the related criminal case has

proceeded against them.  (See ECF No. 110.)[1]  None of those Defendants object to Plaintiff's

Motion.  The two Defendant officers against whom the case has not been stayed, DeWayne

Smith and Preston Hemphill, did not voice any objection to the Motion, and their time to do so

has passed.  However, Defendant City of Memphis filed its response opposing the Motion on

April 10, 2026.  (ECF No. 610.)

---

[1] On July 29, 2025, the Court entered an Order Denying Plaintiff's Motion to Lift Stay on
Proceedings, noting that recent developments in the case, including the resetting of the
sentencings of the stayed Defendants, as well as their motions for new trials, rendered Plaintiff's
request to lift the stay premature.  (ECF No. 461.)

In its response, the City contends that any dismissal should be conditioned on the entry of a protective order staying all discovery against the Stayed Defendants until the conclusion of the criminal case against them. (Id. at PageID 9299.) Ultimately, the City argues that the appropriate approach is for the Court to maintain the current status quo by "denying the Motion for Voluntary Dismissal; or conditioning the dismissal upon the entry of a protective order that would prevent any discovery against the Stayed Defendant Officers until the remaining criminal proceedings have reached a point of conclusion that reduces or extinguishes the current Fifth Amendment considerations." (Id. at PageID 9308.)

For the reasons stated below, the Motion is **GRANTED**. At the same time, discovery shall be stayed as to the dismissed defendants until the criminal matters against them are resolved.

## BACKGROUND

On September 12, 2023, the Government indicted the Stayed Defendants on four counts related to their alleged involvement in the violation of Nichols's constitutional rights. (See United States of America v. Emmitt Martin III, Tadarrius Bean, Demetrius Haley, Desmond Mills, Jr., and Justin Smith, 23-cr-20191-SHL ("Criminal Case").) Nichols died on January 10, 2023, three days after he sustained injuries at the hands of several Memphis Police Department officers following a traffic stop. (See id.) On November 2, 2023, Mills pleaded guilty to Counts One and Three of the indictment, for deprivation of rights under color of law: excessive force and failure to intervene, and conspiracy to witness tamper. (See id., ECF Nos. 90–92.) On August 23, 2024, Martin pleaded guilty to the same two counts. (See id., ECF Nos. 498–500).) Bean, Haley, and Smith proceeded to a jury trial, which began on September 9, 2024. (Id., ECF No. 561.) On October 3, 2024, the jury returned verdicts finding Bean and Smith guilty on

2

Count Four of the indictment for obstruction of justice, and Haley guilty on all four counts.  (Id., ECF No. 627.)

On June 13, 2025, before any of the Defendants were sentenced, the Criminal Case was transferred to the undersigned.  On August 28, 2025, the Court entered an Order Granting Motions for New Trial in the Criminal Case.  (Id., ECF No. 919.)  On September 23, 2025, the Government appealed that order to the Sixth Circuit Court of Appeals.  (Id., ECF No. 946.)  The appeal remains pending.[2]

This civil matter proceeded parallel to the criminal proceeding.  On January 3, 2025, Wells filed an amended complaint, alleging twenty-nine counts against the City of Memphis and eleven individual Defendants.  (ECF No. 277.)[3]  The amended complaint asserts various degrees of culpability against the Defendants for Nichols' death.  Wells sued the Stayed Defendants on a variety of counts under the Fourth and Fourteenth amendments.

On June 26, 2025, the civil matter was also transferred to the undersigned.  (ECF No. 438.)  Judge Norris, who previously presided over the case, entered the stay as to the Stayed Defendants, reasoning in part that, "[a]bsent any stay, the Indicted Defendants would be forced to decide between an effective defense and fulfillment of their discovery obligations in this matter and the assertion of their Fifth Amendment rights for purposes of their state and federal criminal proceedings."  (ECF No. 110 at PageID 929.)

Now, Plaintiff seeks to dismiss her claims against Martin, Mills, Bean, Haley, and Smith, because, "[d]ue to events outside of Plaintiff's control, it has become impossible to keep the

---

[2] On April 6, 2026, the Sixth Circuit entered an order dismissing the Defendants' cross appeals, and then entered a briefing schedule.  See USA v. Haley, Smith, Bean, Martin and Mills, Case No. 25-5853 (6th Cir.) (Doc. 36, 37.)  Under that schedule, the appeal will be fully briefed no later than July 8, 2026.  See id., Doc. 37.

[3] Wells filed her original complaint on April 19, 2023.  (ECF No. 1.)

November 9 trial date if the criminally-stayed Defendant Officers remain a part of this case."
(ECF No. 607 at PageID 9229.)

## APPLICABLE LAW

Under Federal Rule of Civil Procedure 21, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Under the law in the Sixth Circuit, in cases with multiple defendants, "Rule 21 provides the appropriate basis for dismissal of a single defendant." Henderson-Thompson v. Jardoin, No. 2:22-cv-2013-MSN-cgc, 2022 WL 349896, at *2 (W.D. Tenn. Feb. 4, 2022) (citing Philip Carey Mfg. Co. v. Taylor, 286 F.2d 782, 785 (6th Cir. 1961)); see also Wilkerson v. Brakebill, No. 3:15-CV-435-TAV-CCS, 2017 WL 401212, at *2 (E.D. Tenn. Jan. 30, 2017) (collecting district court cases from within the Sixth Circuit that recognize that Federal Rule of Civil Procedure 21, rather than Rule 41, is applicable when dismissing a single claim or defendant rather than an entire lawsuit). Dropping parties under Rule 21 functions as a dismissal of the party. See Henderson-Thompson, 2022 WL 349896, at *2.

At the same time, "[w]hile Rule 41 'necessarily involves dismissal of the entire action, rather than merely certain claims[,] . . . courts should nevertheless consider Rule 41 standards as guidance in evaluating potential prejudice to the non-movant' when evaluating a motion to dismiss under Rule 21." Cooke v. Life Ins. Co. of N. Am., No. 2:25-cv-02901-SHL-tmp, 2025 WL 3163092, at *1 (W.D. Tenn. Nov. 12, 2025) (quoting Henderson-Thompson, 2022 WL 349896, at *2).

Under Rule 41, a court evaluates several, non-exhaustive factors to determine whether a non-moving party would suffer "plain legal prejudice" upon granting dismissal, including "the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a

4

dismissal, and whether a motion for summary judgment has been filed by the defendant."
Grover by Grover v. Eli Lilly & Co., 33 F.3d 716, 718 (6th Cir. 1994).  "Although it is unlikely
that dismissing an action with prejudice might so unfairly affect a defendant that a voluntary
motion for such dismissal should be denied . . . , there may be rare cases in which dismissal with
prejudice adversely affects the interests of defendants or third parties in a way that causes them
plain legal prejudice."  Pedreira v. Sunrise Children's Servs., Inc., 79 F.4th 741, 751 (6th Cir.
2023) (citations omitted).  Ultimately, "a plaintiff is 'the master of its own complaint,' and this
principle counsels in favor of allowing a plaintiff to effectively amend its own complaint by
dropping a party unless so doing would plainly prejudice one or more defendants."  United Food
& Com. Workers, Loc. 1995 v. Kroger Co., No. 3:20-CV-00948, 2022 WL 80238, at *5 (M.D.
Tenn. Jan. 7, 2022) (quoting Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc., 535 U.S.
826, 831 (2002)).

### ANALYSIS

Plaintiff asserts that dismissal of the Stayed Defendants is appropriate under Rule 21, as
it "is 'just' by any measure."  (ECF No. 607 at PageID 9230.)  She asserts that, based on the
City's opposition to the dismissal, "it would have this Court hold that a co-defendant may
override the unanimous agreement of a plaintiff and other defendants to be dismissed in order to
keep those defendants in the case against their will.  Plaintiff is aware of no case that supports
this astonishing position."  (ECF No. 607 at PageID 9232.)

In making her argument, Plaintiff  relies a case from this district for the proposition that
"a Rule 21 dismissal looks to whether the defendant *who would be dismissed* would suffer 'plain
legal prejudice from the dismissal.'"  (ECF No. 607 at PageID 9231 (quoting Henderson-
Thompson, 2022 WL 349896, at *2).)  Plaintiff then applies the factors courts consider when

determining whether to grant a dismissal, but only as those factors apply to the stayed

Defendants.  (ECF No. 607 at PageID 9231.)

But Plaintiff inappropriately narrows the ruling in Henderson-Thompson to apply the

factors only to the Stayed Defendants that it seeks to dismiss.  Whether those Defendants would

suffer plain legal prejudice must be evaluated—and their lack of opposition to the motions

reveals that they would not—but, contrary to Plaintiff's contentions, the Court must also evaluate

the potential prejudice facing the remaining Defendants, including the City.  See, e.g., United

Food & Com. Workers, 2022 WL 80238, at *4 n.6 (M.D. Tenn. Jan. 7, 2022) (explaining that

there were two non-moving parties in that case, one that would be dismissed without prejudice,

the other a defendant that would remain in the case, and the court understood "that the question

is whether plain legal prejudice would be suffered by either Defendant"); Daniels v. CoreCivic,

Inc., No. 1:22-CV-1373, 2023 WL 9315791, at *1 (N.D. Ohio Dec. 27, 2023), report and

recommendation adopted, 2024 WL 197415 (N.D. Ohio Jan. 18, 2024) ("Because dropping less

than the entirety of an action . . . risks prejudice to the other parties, remaining parties are

typically afforded an opportunity to respond before a court rules on a Rule 21 motion.") (citation

modified); Championx, LLC v. Resonance Sys., Inc., No. 3:21-CV-288-TAV-JEM, 2024 WL

150606, at *1 (E.D. Tenn. Jan. 12, 2024) (granting a Rule 21 motion after noting that the

remaining defendants did not respond to a joint motion seeking to dismiss two other defendants);

Goldberg v. Meridor, 81 F.R.D. 105, 112 (S.D.N.Y. 1979) (explaining that defendants have no

"vested right" to keep other defendants in the lawsuit, and a "motion to drop a defendant should

be granted unless the remaining defendants can demonstrate prejudice to them") (citations

omitted).  Accordingly, the Grover factors will be evaluated as to the City as well.

6

On the surface, the <u>Grover</u> factors suggest that the City would not suffer the sort of plain legal prejudice that would warrant denying dismissal of the Stayed Defendants. As to the first factor, the City's effort and expense of preparation for trial has undoubtedly been vast. But dismissing the Stayed Defendants would not thwart that effort and expense. Even without the Stayed Defendants in the case, this matter would eventually progress to trial, therefore the effort and expenses the City has already expended will at some point have been necessary. <u>See</u> <u>Rosenthal v. Bridgestone/Firestone, Inc.</u>, 217 F. App'x 498, 502 (6th Cir. 2007) (finding that when discovery that had already been collected would largely be transferrable to a substantially similar action pending in a different court there was an absence of prejudice). This factor weighs in Plaintiff's favor.

As to the delays, the City asserts that "Plaintiff has taken obscene amounts of discovery from the City. Plaintiff has scheduled and canceled and rescheduled depositions for years, and Plaintiff still has not completed her discovery obligations despite the Court ordered deadline for doing so." (ECF No. 610 at PageID 9306.) It is true that much discovery has occurred and that this matter has suffered from interminable delays. Neither have much to do with dismissal in this context, where Plaintiff seeks to dismiss only some Defendants. But in any event, the record shows that the City has not been without fault as to the delays, and, if the City has its way, the matter would be delayed even more if it is stayed through the disposition of the Criminal Case. To be fair, the City contends that its prejudice in this regard flows not only from Plaintiff's delays, but also because Plaintiff seeks to proceed to trial by the end of the year while thwarting the City's ability to conduct any discovery as to the Stayed Defendants. The Court addresses that point in more detail below, but, on the surface, this factor does not favor either Plaintiff or the City.

As to the third factor, the City asserts that Plaintiff's "sole justification for the Motion for Voluntary Dismissal: her desire to try the case in November 2026 as currently scheduled," is insufficient. (Id. at PageID 9307.) The City argues that "Plaintiff's Motion for Voluntary Dismissal suggests the exact piecemeal approach as to the officer conduct most directly at issue across the parallel proceedings that the Court attempted to avoid by denying Plaintiff's Motion to Bifurcate." (Id.) However, the piecemeal approach that the Court highlighted in its Order that denied the motion to bifurcate stemmed from Plaintiff seeking to "allow[] for the case to proceed against the City now, and against the remaining Defendants at whatever point the stays are lifted and to the extent that claims remain against them." (ECF No. 595 at PageID 9061-9062.) Dismissing the Stayed Defendants would eliminate that concern and, in any event, "[t]he Court is further guided by the maxim that the plaintiff is the 'master of his complaint,' and . . . the Court should not force Plaintiff to prosecute a suit against Defendants which Plaintiff does not wish to pursue." Yandell Constr. Servs., Inc. v. LMR Constr., LLC, No. 1:17-cv-01037-JDB-egb, 2018 WL 4375112, at *4 (W.D. Tenn. Sept. 13, 2018). This factor weighs in Plaintiff's favor.

Finally, as to the last factor, the City acknowledges that there is no motion for summary judgment pending, but nevertheless argues that the factor should "weigh in favor of denying the Motion for Voluntary Dismissal despite the lack of a pending Motion for Summary Judgment because the City's need for discovery to progress to summary judgment is significant, has been brought to the Court on multiple occasions, and can be conducted once the criminal proceedings are in a position for the stay to be lifted." (ECF No. 610 at PageID 9308.) Nevertheless, the absence of a pending motion for summary judgment weighs against the City.

Generally, then, the Grover factors weigh in favor of granting Plaintiff's motion to dismiss the stayed Defendants. But "[t]he Grover factors are not an exclusive or mandatory list."

8

Rosenthal, 217 F. App'x at 502; see also Small v. Sykes Enters., Inc., No. 19-cv-02722-TLP-tmp, 2021 WL 4185885, at *1 (W.D. Tenn. Apr. 29, 2021), report and recommendation adopted, 2021 WL 3487177 (W.D. Tenn. Aug. 9, 2021) (explaining that the factors provided in Grover are non-exhaustive). Ultimately, "[t]here is no requirement that each of the Grover factors be resolved in favor of the moving party before dismissal is appropriate," as "[t]he factors are 'simply a guide for the trial judge, in whom the discretion ultimately rests.'" Rosenthal, 217 F. App'x at 502 (quoting Kovalic v. DEC Int'l, Inc., 855 F.2d 471, 474 (7th Cir. 1988)).

The City has made clear throughout these proceedings that it "has always contemplated taking discovery from the Stayed Defendant Officers, and their dismissal from the lawsuit does not alter the City's strategy." (ECF No. 610 at PageID 9305.) And Plaintiff asserts that "[t]he City (or the Plaintiff, for that matter) can depose the officers regardless of whether they are parties to this case, just like any third-party deposition." (ECF No. 607 at PageID 9232.) That is true, as far as it goes. But the Court cannot ignore what permeates most of the arguments that the City is making against granting Plaintiff's motion, and informs the condition they seek to impose if the Stayed Defendants are dismissed. That is, under the current schedule, dismissing the Stayed Defendants means that the trial would almost certainly proceed absent the City being able to get meaningful discovery from those officers given that they would likely invoke their Fifth Amendment rights against self-incrimination in this case while the Criminal Case remains unresolved.

So, although in a vacuum the Grover factors do not counsel against granting Plaintiff's Motion, the City's ability to defend itself against the Monell[4] claims at issue in this case would

---

[4] Establishing a municipality's liability for a constitutional violation "implicates the familiar principles set forth in Monell v. Department of Social Services," which requires a plaintiff to demonstrate both that a constitutional violation occurred and the governmental entity

be hamstrung by an inability to gather discovery from the Stayed Defendants, including, most

basically, discovery that would speak to whether the actions that the Stayed Defendants took

against Nichols were the result of a custom or practice of the Memphis Police Department.  This

is plain legal prejudice to the City.  That prejudice does not warrant the outright denial of

Plaintiff's Motion to Dismiss the Stayed Defendants, but it does warrant attaching contingencies

to the dismissal.

Plaintiff previously argued in her Motion to Amend Schedule and Bifurcate Case that

"the fact that the City's employees will be under Fifth Amendment protection does not justify a

stay of Plaintiff's claims against the City."  (ECF No. 556 at PageID 8481.)  Plaintiff

characterized this as the "the City fac[ing] a problem common to many civil litigants: its

employees may assert their Fifth Amendment privilege rather than testify on the City's behalf."

(Id. at PageID 8480.)  When the Court denied the Motion to Bifurcate it rejected this argument in

part because of the fact that the out-of-circuit cases Plaintiff relied upon were distinguishable. In

those cases, "unlike here, no party to the civil case had been indicted[.]"  (ECF No. 595 at

PageID 9066 n.4.)  Although dismissal of the Stayed Defendants would at least superficially

remedy this issue by eliminating any indicted party from this civil case, those cases are

distinguishable for additional reasons.

For starters, as the City previously pointed out, the cases Plaintiff relied upon were not

§ 1983 cases, and applied a vicarious liability standard that is inapplicable in the Monell context.

See Deloitte Consulting LLP v. Sagitec Solutions LLC, No. 23-325-WCB, 2023 WL 6037201

---

is responsible for that violation.  Graham ex rel. Est. of Graham v. Cnty. of Washtenaw, 358 F.3d
377, 382 (6th Cir. 2004) (citing Monell, 436 U.S. 658, 694 (1978); Doe v. Claiborne Cnty., 103
F.3d 495, 505–06 (6th Cir. 1996)).

(D. Del. Sept. 15, 2023); In re 650 Fifth Avenue, No. 08-cv-10934, 2011 WL 3586169 (S.D.N.Y. Aug. 12, 2011).  The underlying facts in this cases are also clearly distinguishable from those cases.  In re 650 Fifth Avenue was a civil forfeiture case, and Deloitte involved claims of copyright infringement, trade secret misappropriation, unfair competition, and unjust enrichment.

Furthermore, in Deloitte, the defendant software company sought to stay the proceedings against it while criminal charges were pending against two of its former employees.  The court explained that the factual overlap was considerable between the charges against the two employees in the indictment with the claims against the corporate entity in the civil matter, which alone required that the "motion for a stay be given serious consideration."  Id. at *2.  But the court then explained that any such overlap was tempered by the fact that the allegations in the indictment that were shared with the civil complaint were directed principally to the charges that had been dismissed from the indictment.  Id.

That is not the case here, where the claims in both the criminal and civil matters are based on violations of Nichols's constitutional rights.  Moreover, unlike in Deloitte, this is not the sort of circumstance where the "risk that the pendency of the criminal action will unfairly burden" the City's "ability to litigate this case [is] merely speculative."  Deloitte, 2023 WL 6037201, at *4.  It is not speculation to say that the City's ability to litigate its case and defend itself rests, at least in part, on its ability to demonstrate that the Stayed Defendants were not acting consistent with a custom or practice of the Memphis Police Department.  And, while the City, like the Defendant in Deloitte, could "have any of its unindicted employees serve as its witnesses and can produce documents which will speak for themselves," id., the testimony from the Stayed Defendants is essential for the City's defense (and, incidentally, may serve to benefit Plaintiff).

11

Ultimately, the justifications the courts offered for denying the requested stays in <u>Deloitte</u> and <u>In re 650 Fifth Avenue</u> cannot be found in this case.

Given the foregoing, the Court finds that the Stayed Defendants should be dismissed from the case, as Plaintiff requests.  However, the Court finds that, consistent with Rule 21's directive that such dismissals may be made on "just terms," the dismissal must be made consistent with the terms the City proposes.  So, the Stayed Defendants will be dismissed and the Court will simultaneously stay all discovery against them pending a resolution of their criminal proceedings.  This also necessitates granting the City's additional request that the dispositive motion deadline be stayed, as well as the trial date, which will allow time for meaningful discovery to be taken from the Stayed Defendant Officers following the conclusion of their criminal proceedings.  The Court will set those deadline and a trial date at the appropriate time.

This stay also implicates the City's recently filed Motion to Reopen Discovery for a Limited Purpose and to Amend Scheduling Order.  (ECF No. 611.)  In that Motion, the City seeks to extend the time to disclose its experts beyond the current April 24, 2026 deadline.  The City proposed extending its deadline to June 12, 2026, and to extend the corresponding expert deposition deadline, Daubert motions for liability experts, and dispositive motion deadline.  (<u>Id.</u> at PageID 611-1 at PageID 9380.)  But, in so doing, the City noted that its proposed amended schedule "does not account for the obstacles outside of the City's control, namely, the status of the Stayed Defendant Officers and their pending criminal cases," and "submits that these factors—while still outstanding—are likely to affect any schedule at this time."  (<u>Id.</u>)

The day after it filed its Motion, the City submitted a Notice of Request for Emergency Hearing, or Alternatively, Request for Expedited Hearing on the Motion.  (ECF No. 612.)  Plaintiff joined in that request, but asked that the hearing also address her "motion to voluntarily

12

dismiss her claims against the stayed officers" and her "motion to sever and voluntarily dismiss the claims against Chief Davis[.]"  (ECF 614 at PageID 9523.)

At this time the Court will not set a hearing on the City's Motion to Reopen Discovery or on what remains from Plaintiff's request.  Instead, the Court will wait until the City's Motion is fully briefed, which, according to Plaintiff, will be April 21, ahead of schedule.  (See ECF No. 614 PageID 9524.)  To the extent a hearing is necessary, the Court will set one at the appropriate time.  However, given the impending April 24 deadline for Defendants to disclose expert reports, the Court will suspend that deadline, with further rulings potentially related to it to come with a ruling on the City's Motion.

The Court also notes that, in the City's Motion to Reopen Discovery, it accurately reflected that, throughout the discovery disputes and the motion practice in this matter, "the Court's sentiment" has been "that the parties do as much discovery as could be conducted regardless of the stay and/or the pending criminal appeal."  (ECF No. 611 at PageID 9376.)  That sentiment remains unchanged by the entry of this Order.  To the extent that there is outstanding discovery that needs to be produced or other issues that do not implicate discovery related to the Stayed Defendants, the Parties are expected to proceed on those issues.

**IT IS SO ORDERED,** this 17th day of April, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

13