**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

RowVaughn Wells,

        Plaintiff,

    v.

City of Memphis *et al.*,

        Defendants.

Case No. 2:23-cv-02224-SHL-ATC

**PLAINTIFF'S RESPONSE TO CITY OF MEMPHIS' MOTION TO REOPEN
DISCOVERY AND TO AMDEND THE SCHEDULING ORDER (ECF 611)**

The City's motion (ECF 611) asks the Court to grant it various extensions to gather

information for its expert reports—and then to stay this entire case indefinitely, with no further

expert reports, no dispositive motions, and no trial, until some unknown date years in the future

when the officer defendants, with appeals and collateral challenges exhausted, finally come off

the Fifth Amendment. The Court should reject that proposal and instead adopt a schedule that

keeps this case moving towards trial. Plaintiff submits a proposed schedule as **Exhibit 1**.

Plaintiff's proposed schedule provides several months before the City's expert reports

would be due, on June 26, 2026. That provides a period for limited additional fact discovery,

which addresses the complaints lodged by the City in ECF 611. ***First***, as the City notes, ECF 611

at 17-18, the Magistrate Judge has granted some additional limited discovery in response to a

motion to compel, but Plaintiff has already produced all responsive non-privileged material.

***Second***, the City complains that Plaintiff submitted too many expert reports and that they are too

long. ECF 611 at 13-17. The City's characterization of Plaintiff's submissions is incorrect, but in

all events Plaintiff's proposed schedule gives the City more than three months—rather than the

three weeks provided for in the existing schedule—to take discovery from Plaintiff's experts and

1

prepare its own reports. That is more than enough time.  *Third*, the City complains that Plaintiff disclosed 22 witnesses near the close of fact discovery. But 21 of those witnesses are MPD employees whose names appear throughout the City's own documents and to whom the City has ready access. The final witness is a former Chief of MPD; Plaintiff has never spoken with him, and the City may depose him if it chooses. *Fourth*, the City claims surprise at a "second" autopsy report that supports the reports of one of Plaintiff's expert witnesses. It cannot have been surprised: the report was the subject of considerable news coverage when Plaintiff's counsel announced it in January 2023. Contrary to the City's claims, it never requested the report in fact discovery.  The report has been disclosed pursuant to Rule 26(a)(2) as part of Dr. Wilson's expert opinions, on schedule. And the City will have ample time to review it before June 26, when its expert reports would be due.

*     *     *

That leaves the City's request to stay this litigation until the officers finally come off the Fifth—at an unspecified time years in the future. Such relief is literally unprecedented. One court rejecting a similar request noted that it had been "unable to identify a single case finding an overlap of issues that was sufficient to grant a stay where no party to the civil suit was a defendant to a criminal case." *Franz v. Oxford Cmty. Sch. Dist.*, No. 21-cv-12871, 2022 WL 883022, at *2 (E.D. Mich. Mar. 24, 2022). Another described the request as "an effort to collect [a] windfall through a stay of any pre-trial proceedings." *Fid. Funding of Cal. v. Reinhold*, 190 F.R.D. 45, 52 (E.D.N.Y. 1997). Notably, until December 2025 the City took the position that it did ***not*** need to depose the officers and that it was ready for dispositive motions and trial on schedule. It was when Plaintiff announced, in February 2026, that she was ready for trial that the City reversed course and claimed that gathering discovery from the officers was indispensable to its case.  That proposition is dubious.  To ferret out such claims the Sixth Circuit imposes a heavy

2

burden on a party seeking a stay, and directs district courts to weigh multiple factors before granting one. *See F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627 (6th Cir. 2014). That showing, and that analysis, have never occurred in this case. Plaintiff sets out the factors herein. It is plain that the City has not made the clear showing it needs to make in order to demonstrate that the indefinite it seeks stay is justified. The Court should instead adopt Plaintiff's proposed schedule, which permits a trial in early 2027.

## BACKGROUND

On January 2023, Tyre Nichols was beaten to death by five MPD officers after he ran from a traffic stop.  Plaintiff filed this case in April 2023 against the officers and the City.  The officers were indicted on criminal charges in both state and federal court, and in light of those charges they moved to stay proceedings in the civil case.  *See* ECF 57, 60, 62, and 70.

The Court held that the case should be stayed as to the officer-defendants but that otherwise it should move forward.  ECF 110 at 9.  In doing so, the Court expressed the "hope[] that the federal criminal case will not face unnecessary delay. Absent additional information indicating excessive delays of the proceedings at issue in this matter, the Court finds this factor [status of the criminal case] to weigh slightly in favor of a stay." *Id.* at 10.  The case proceeded along this framework, and the criminal stay remained in place, with the trial date shifting several times as the complaint was amended and *Monell* discovery was gathered.

On June 16, 2025, Plaintiff wrote defense counsel proposing to amend the existing scheduling order.  Plaintiff pointed out that fact discovery was set to close in August 2025, and that *Monell* discovery had not been completed due to slow document production.  *See* ECF 447 at 9-12 (describing status of production at the time).  *Additionally*, plaintiff noted that "the [Fifth Amendment] stay of discovery as to the convicted defendants remains in place," making it impossible to depose the officer-defendants before the close of fact discovery.  **Ex. 2** at 4.

3

Counsel for the City responded, "***We oppose any further extension to the trial date. it's time to get on with it.***" *See* Ex. 2 at 1; ECF 447 at 14 (collecting correspondence). The City expressed no concern whatsoever about the need to depose stayed officers for fact discovery, expert reports, or trial. Plaintiff then moved the Court to extend the discovery schedule, ECF 447, explaining again that the defendant-officers were still under the Fifth Amendment stay, *id.* at 12-14, and proposing an extension to correspond to the anticipated sentencing of the officer-defendants and a lifting of the Fifth Amendment stay upon sentencing—even though the officers had made it clear that they intended to remain on the Fifth for "many years," through their appeals. *Id.* at 13, 17. The City opposed Plaintiff's motion, arguing "***no additional time is needed to proceed to dispositive motions and trial***." ECF 455 at 7. The City made no mention of a need to depose the officer-defendants.

The Court granted Plaintiff's motion to extend the discovery period, moving the close of fact discovery from August 2025 to February 2026, after the officers' scheduled sentencings. ECF 474. Plaintiff counsel used this time to conduct numerous *Monell* depositions. Even then, the City expressed no interest in deposing the officer-defendants. In fact, in December 2025, the City sought to *bar* Plaintiff from deposing the officer-defendants if she used up her allotment of depositions on other witnesses. *See* ECF 525 at 9. Nowhere did the City suggest that *it* intended to take the officers' depositions. To the contrary, the City argued that given the extensive existing discovery that had already occurred, "[a]uthorizing additional depositions [of the stayed defendants] would significantly increase the burden of litigation, disrupt City operations, and impose unnecessary strain on public resources." *Id.* at 8.

By the end of January 2026, having deposed witnesses about the *Monell* documents, Plaintiff had largely completed her *Monell* discovery, and was prepared to go to trial against the

4

City.  Given the interminable delays in the officers' criminal cases (with the convictions vacated and appeals pending), Plaintiff elected to proceed to trial against the City without the officers. That was when the City performed a 180-degree turn, suddenly insisting that gathering evidence from the officers was indispensable to its case.

On February 4, 2026, Plaintiff filed her motion to bifurcate.  ECF 556. Plaintiff explained that she was prepared to go to trial against the City on the current schedule, ECF 556 at 10, effectively jettisoning her claims (and any discovery) against the officers.  *Id.*  The City objected. Whereas a few months earlier it had opposed a discovery extension proposed specifically due to the stayed officers because "no additional time is needed to proceed to dispositive motions and trial," ECF 455 at 7, now it said that "[t]he City Defendants need [] discovery [from the stayed defendants] to proceed to summary judgment."  ECF 565 at 16.  And now the City said that it was ***not*** ready for trial—instead, it said, the entire case should be stayed until the criminal proceedings against the officers came to an end, so that it could depose them.  *Id.* at 18.

The Court denied the bifurcation motion as procedurally improper.  ECF 595.  Faced with that denial, Plaintiff made the painful decision to move, under Rule 21, to voluntarily dismiss the officers who had killed her son.  ECF 607.  The City responded with three filings.  In ECF 610 the City responded to ECF 607, arguing that it would be prejudiced by the dismissal of the officers if it was forced to go to trial while it was unable to take discovery from them.  In ECF 611, the City argued for an extension of the expert schedule, arguing, again, that it could not complete expert discovery while the criminal cases against the stayed officers were still pending and they remained on the Fifth.  Finally in ECF 612, the City asked for an emergency hearing on the extension it sought in ECF 611.

On April 14, Plaintiff responded to the City's filings. *See* ECF 614.  She joined the City's request for an emergency hearing, but asked for time to file a brief in opposition to the City's filings, explaining that the multiple filings "raise overlapping questions that need to be resolved promptly concerning the case schedule, the scope of discovery, and the overall path from here to trial."  ECF 614.  As such, Plaintiff requested "a reasonable opportunity to file her opposition brief to the City's Motion [ECF 611] before the requested hearing takes place, so that the Court has a full understanding of the arguments and caselaw presented by both sides," and that the Court could then "schedule the three above-mentioned motions for a hearing on a date shortly after April 21."  ECF 614 at 2.

On April 17, before Plaintiff had filed that response brief, the Court issued its Order. ECF 619. The Court suspended the City's April 24 expert disclosure deadline as well as the dispositive motion deadline and trial date. *Id.* at 12-13. Additionally, the Court granted Plaintiff's motion to voluntarily dismiss with prejudice the officer-defendants, yet also stayed all discovery from those now-nonparties "until the criminal matters against them are resolved." *Id.* at 2.

 In issuing this stay, the Court applied Rule 21's standard for voluntary dismissals.  *Id.* It appears that for that reason the Court did not treat the City's opposition to the dismissal of the officers (ECF 610) as a request for a stay, and therefore did not conduct the multi-factor test prescribed by the Sixth Circuit for analyzing a request to stay a case. Instead, the Court reached its decision based on a single consideration:  the purported prejudice to the City if the case were to proceed to trial without an opportunity to depose the officers once they were off the Fifth. ECF 619 at 11-12.  With the benefit of the Court's ruling at ECF 619, Plaintiff submits this response to ECF 611.  As Plaintiff indicated in ECF 614, this response encompasses both the

specific issues raised in ECF 611 and the broader issues raised by the City's request to stay this

action until the officers come off the Fifth regarding their beating of Mr. Nichols.

## DISCUSSION

Plaintiff has summarized the City's positions in ECF 611 *supra*.  Plaintiff addresses the

several discovery items raised by the City in seeking an extension, and then turns to the larger

matter of the City's request for an indefinite stay.

### A.  Several arguments for extending discovery are resolved by the Plaintiff's proposed schedule.

As set forth *supra*, the City raises several arguments for an extension of the discovery

schedule that do not pertain to testimony from the officer-defendants.  Plaintiff disagrees with the

bulk of the City's positions, but that is ultimately irrelevant, as Plaintiff's proposed schedule set

out in **Exhibit 1** provides sufficient time for the City to address the issues it has raised.

***Discovery ordered by the Magistrate Judge.***  As the City notes, ECF 611 at 17-18, the

Magistrate Judge has granted some additional limited discovery in response to a motion to

compel, but Plaintiff has already produced all responsive non-privileged material.  There is no

reason to believe that the taking of this additional discovery will last past June 26.  Plaintiff's

proposed schedule accommodates it.

***Number and length of Plaintiff's expert reports.***  The City argues Plaintiff submitted

more "liability" expert reports than counsel had indicated, and that the reports are too

voluminous to address under the existing schedule.  ECF 611 at 13-17.  The City's

characterization is wrong:  Plaintiff simply submitted all her reports—liability and damages—at

the same time, as she had told the City she would do.  In any event, Plaintiff's proposed schedule

gives the City nearly three months to take discovery from Plaintiff's experts and submit its own

7

reports on June 26. That is more than enough time given that the existing schedule provided for a fraction of that time.

*Late-disclosed witnesses.* The City complains that Plaintiff disclosed 22 witnesses near the close of fact discovery. But twenty-one are *MPD employees*. The City controls their personnel files, training records, and communications, and can interview them at any time. It needs no court order to speak with its own officers. These witnesses should not surprise the City. Their names appear throughout the City's own document production on relevant documents in this case. The sole witness who does not currently work for MPD, E. Winslow "Buddy" Chapman, is a former Chief of MPD and published author whose background is publicly accessible. The City is no less capable than Plaintiff of locating and contacting him, and there is nothing in Plaintiff's possession regarding him that the City could not obtain directly. As Plaintiff has already informed the City, she has had no communications with him. In all events, Plaintiff's proposed schedule provides several months during which there is enough time to interview its own employees and address whatever factual questions the supplemental disclosures have raised.

### B. The City's claims about a "second autopsy" are meritless.

One of Plaintiff's retained Rule 26(a)(2) experts, Dr. Allecia Wilson, included an autopsy of Mr. Nichols as part of the materials supporting her expert opinion. The City makes a number of claims about this autopsy, and seeks to reopen discovery about it. None of those claims withstand scrutiny, however. The City claims it "learned for the first time" of the second autopsy upon receipt of Plaintiff's expert disclosures on April 3, 2026. ECF 611 at 6. That isn't true; Plaintiff's counsel publicly announced the independent autopsy at a press conference on January 24, 2023, and it was widely reported within days by CBS News, NBC News, ABC News, CNN,

the *Commercial Appeal*, the *Daily Memphian*, and media outlets. The City had every opportunity to seek information about it through targeted discovery, but it did not. The City does not identify a single discovery request calling for disclosure of the second autopsy, because it issued none. There is no good cause to reopen discovery. *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010).

The City's argument also assumes the independent autopsy took place at the Shelby County Medical Examiner's Office and required coordination with SCME pathologists Dr. Ross and Dr. Bagwell. ECF 611 at 6-8. Both assumptions are incorrect. The autopsy took place at a private funeral home. An autopsy performed at a private funeral home requires no coordination with the county medical examiner. The City cannot bootstrap Dr. Ross's third-party subpoena production into evidence of Plaintiff's non-compliance without identifying what it believes was actually withheld. Indeed, Plaintiff does not have in her possession, custody, or control any pathologic materials from the second autopsy, and she previously offered to make slide recuts from the original autopsy available for inspection. The City never asked to inspect them. Plaintiff's communications with Dr. Wilson, meanwhile, are protected under Federal Rule of Civil Procedure 26(b)(4)(C), and the City has identified no applicable exception. The City also claims prejudice now that Mr. Nichols' remains are unavailable. Aside from lacking merit, the City had ample opportunity to conduct its own autopsy: the independent autopsy was conducted on January 23, 2023 and announced the next day. Mr. Nichols's funeral was held nine days later. The City never sought to commission its own examination. It cannot claim prejudice now.

### C. The City has never made a "clear case" that an indefinite stay should be issued under the Sixth Circuit's multi-factor test.

"A stay of civil proceedings due to a pending criminal investigation is an extraordinary remedy[.]" *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627 (6th Cir. 2014) (quotation

9

omitted).  A district court has discretionary power to issue such a stay, "[b]ut the court 'must

tread carefully in granting a stay of proceedings, since a party has a right to a determination of its

rights and liabilities without undue delay.'" *Luttrell v. City of Germantown*, No. 2:25-CV-02153-

SHL-TMP, 2025 WL 697681, at *1 (W.D. Tenn. Mar. 4, 2025) (quoting *Ohio Envtl. Council v.

U.S. Dist. Ct., S.D. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977)).

 "[T]he burden is on the party seeking the stay to show that there is pressing need for

delay, and that neither the other party nor the public will suffer harm from entry of the order."

*E.M.A. Nationwide*, 767 F.3d at 627-28 (quotation omitted).  "[I]f there is even a fair possibility

that the stay for which he prays will work damage to someone else," then "[t]he suppliant for a

stay must make out a clear case of hardship or inequity in being required to go forward . . . ."

*Ohio Envtl. Council*, 565 F.2d at 396 (quotation omitted).

 "The moving party must also demonstrate that the stay will not be 'immoderate' in

duration or scope." *NTCH-W. Tenn, Inc. v. ZTE USA, Inc.*, No. 1:11-CV-01169-JDB, 2014 WL

4444037, at *2 (W.D. Tenn. Sept. 9, 2014) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254

(1936)).  A court may "abuse[] its discretion in issuing an unlimited stay that ha[s] the potential

to 'place [a] case in limbo for years.'" *Id.* (quoting *Ohio Envtl. Council*, 565 F.2d at 396).

 Courts in the Sixth Circuit apply the forgoing principles through an analysis that balances

the following factors:

> 1) the extent to which the issues in the criminal case overlap with those presented
> in the civil case; 2) the status of the case, including whether the defendants have
> been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously
> weighed against the prejudice to plaintiffs caused by the delay; 4) the private
> interests of and burden on the defendants; 5) the interests of the courts; and 6) the
> public interest.

*E.M.A. Nationwide*, 767 F.3d at 627.

10

The City's response (ECF 610) to Plaintiff's Rule 21 motion (ECF 607) never acknowledged or discussed any of the factors set out in *E.M.A. Nationwide* and similar stay decisions.  Neither did the Court's ECF 619 ruling, which, issued as it was under Rule 21, did not acknowledge the City's burden in seeking a stay and did not attempt to measure the City's purported harm against that which would be suffered by Plaintiff, or any of the other *E.M.A. Nationwide* factors.  In that light, and given the Court's election to issue ECF 619 before receiving Plaintiff's briefing on the stay question, Plaintiff reads the Court's ruling in ECF 619 as provisional and subject to an analysis of the City's affirmative request for a stay that is set out in ECF 611.  Plaintiff offers that analysis now, guided by the factors set out in *E.M.A. Nationwide* and the burdens that the Sixth Circuit has imposed on parties, like the City, that seek to stay ongoing litigation.

**1.  The extent to which the issues in the criminal case overlap with those presented in the civil case.**

The extent to which the issues in a criminal case overlap with those presented in a civil case is generally the "most important factor" for determining whether or not to grant a stay. *Franz v. Oxford Cmty. Sch. Dist.*, No. 21-CV-12871, 2022 WL 883022, at *2 (E.D. Mich. Mar. 24, 2022) (quotation omitted). But "[a] stay is not justified just because the criminal and civil cases arise from the same incident or feature similar evidence." *Id*. As such, the overlap factor "clearly contemplates that at least one party to the civil case will be a defendant in a criminal case, or at least subject to a criminal investigation." *Id.* at *2. *Cf. In re Bolin & Co., LLC*, No. 3:08CV1793, 2012 WL 3730410, at *3 (D. Conn. June 27, 2012) ("Daly [a witness on the Fifth] is no longer a party to this [civil] action and, as a result, no longer has any stake in the outcome to weigh against the risk of waiving the privilege.").

11

Courts have been consistent and emphatic in explaining that it is "[t]he simultaneous litigation of criminal charges and civil causes of action against the **same person**, for the **same conduct**, [that] may give rise to Fifth Amendment concerns sufficient to warrant a stay of the civil proceedings." *Doe v. Matthew 25, Inc.*, 322 F. Supp. 3d 843, 850 (M.D. Tenn. 2018) (quotation omitted; emphasis added)).  By contrast, when a defendant in a criminal case is *not* a party to a parallel civil case, the dilemma animating Fifth Amendment stays *does not exist*: since they are no longer parties to the civil case they face no collateral consequences for asserting their Fifth Amendment rights.  *See, e.g.*,  *Johnson v. City of Chicago*, No. 19-CV-3904, 2021 WL 1952489, at *2 (N.D. Ill. May 10, 2021) (denying a stay because "petitioner Crawford is not even a party to this case. He will not face an adverse inference in this case if he refuses to testify" and thus "has no right to be free from asserting the Fifth Amendment.").

The application here is straightforward: now that the officer-defendants have been dismissed from this civil case, they face zero collateral consequences for invoking their right to remain silent. They can freely assert their Fifth Amendment rights in a deposition or at trial, since an invocation of their Fifth Amendment rights cannot be used against them in their criminal cases. The City—not the officers—is the party seeking the stay here, but of course it has no Fifth Amendment rights. It has no standing to seek a Fifth Amendment stay under *E.M.A. Nationwide, Inc*.  "Instead of a Hobson's choice, the [City] is faced with a problem of proof," in that it wants to gather evidence from a witness on the Fifth.  *Cf. In re Bolin*, 2012 WL 3730410, at *3.  That, however, is a conventional problem of an inability to "find a witness to testify on his behalf," *id*. which takes the case out of the Fifth Amendment dilemma that animates the Sixth Circuit's criminal-civil stay jurisprudence. It is likely for this reason that, as the *Franz* court noted,

12

Defendants—and the Court—are unable to identify a single case finding an overlap of issues that was sufficient to grant a stay where no party to the civil suit was a defendant to a criminal case or subject to a criminal investigation.

*Id.* The "overlap" factor weighs decidedly against a stay.

### 2. The status of the criminal cases.

Typically this factor focuses on whether an indictment has occurred, as that indicates that the Fifth-Amendment Hobson's choice is real instead of hypothetical. But the reverse is true when no party in the civil case is a defendant in the criminal case, or faces even the prospect of indictment. No party to this case faces that likelihood. This factor weighs against a stay.

### 3. The private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay.

"'[T]he moving party has the burden of proving that . . . the non-moving party will not be injured by the stay.'" *James v. Thomas*, No. 1:24-CV-00061, 2025 WL 1392156, at *3 (W.D. Ky. May 14, 2025) (quoting *IBEW, Local 2020 v. AT&T Network Sys.*, 879 F.2d 864 (Table), 1989 WL 78212, at *8 (6th Cir. July 17, 1989). The City has failed to do that here. The City declares that "Plaintiff will suffer no meaningful prejudice from a reasonable extension," ECF 611 at 20, but nowhere in ECF 611 does the City explain why that is so. In ECF 610, meanwhile, the City argued that "a delay in the trial date" brought about by the stay it was requesting would not prejudice Plaintiff because (1) the claims by Ms. Wells are "against two out-of-work former police officers," and because (2) "the sole heir to the Estate—Mr. Nichols' minor child—does not even know that Mr. Nichols is his biological father, nor has he ever received any support from Mr. Nichols. He certainly is not expecting or counting on a windfall from this case on any certain time frame." ECF 610 n.4.

These arguments appear intended primarily to demean Ms. Wells and her son rather than to persuade the Court. For they ignore the obvious prejudice that the stay will cause Plaintiff in

13

this case: her ability to carry her burden of proof at trial by putting on live witnesses who are actually available and whose memories have not faded with time.

The Court has previously suggested that because Plaintiff had already conducted depositions and gathered documents supporting her case, "that evidence is fixed in time" such that "the reliability of the trial would not be compromised based on the passage of time." ECF 595 at 8. Plaintiff believes that intuition misapprehends the evidence that she will need to put on to carry her burden of proof against the City in this case. Plaintiff will need to put on live witnesses at trial—a presentation of evidence for which there is simply no substitute in cold documents and transcripts. The Committee Note for Rule 43 drives this point home, explaining,

> The importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition.

Fed. R. Civ. P. 43(a) committee note (1996 amendment). The Sixth Circuit agrees. *See, e.g.*, *Stoner v. Sowders*, 997 F.2d 209, 213 (6th Cir. 1993) (rejecting the argument that "video depositions are almost as good as live testimony" because "the jury and the judge never actually see the witness" and the witness "is not confronted in the courtroom situation.")

Plaintiff intends and should be entitled to prove her case with live witnesses at trial. She has prepared to do that by deposing dozens of witnesses, and has identified additional trial witnesses pursuant to Rule 26(a)(1). Many of those witnesses are retired police officials or former officers who have left the MPD. Those witnesses can be expected to move, lose their memories, or die. The prejudice caused to Plaintiff by the passage of time will be considerable, and it will compound as the years pass.

There is every reason to believe, on the other hand, that the delay that the City seeks will be lengthy. The City does not seek a stay that lasts until the officers' criminal cases are

14

terminated, such as at sentencing.  Rather, the City seeks to stay this case until all the officers are *off the Fifth*. That period promises truly to be indefinite.  Plaintiff outlined this scenario in her bifurcation motion, explaining that there is every reason to think that appeals, trials, interlocutory appeals, postconviction proceedings, and the like will drag out for years.  ECF 556 at 5.  The delay, indeed, would likely extend beyond this timeline, because any eventual conviction could not only be appealed once again, but subject to collateral attacks as well.  The officers will be on the Fifth through all of this.  *See S.E.C. v. Pence*, 323 F.R.D. 179, 189 (S.D.N.Y. 2017) (Fifth Amendment privilege attaches through adjudication of timely filed 28 U.S.C. § 2255 motions).  Such drawn out litigation is likely here: the officers' criminal counsel have shown a willingness to take every available avenue to attack the criminal cases brought against their clients.

Simply put, the stay that the City requests is not over at the "resolution" of the officers' criminal cases—at, say, sentencing.  It is a stay of indefinite duration, until the officers come off the Fifth at some point in the future that is indeterminate, but which promises to be years and years down the line, after the conclusion of protracted trial and appellate litigation.  Courts do not tolerate those sorts of delays.  *See, e.g.*, *Fid. Nat. Title Ins. Co. of New York v. Nat'l Title Res. Corp.*, 980 F. Supp. 1022, 1024 (D. Minn. 1997) ("Given . . . the potential for lengthy appeals should a conviction be returned, a strong likelihood of a lengthy, and indeterminate, delay in the preparation of this case for Trial would surely ensue, if we were to now grant the requested stay."); *Amazon Inc. v. Armycamo USA, Inc.*, No. C24-0394JLR, 2026 WL 1078201, at *3 (W.D. Wash. Apr. 21, 2026) ("[T]his case has been pending for over two years and has been stayed for more than 15 months, and neither party can estimate when the [criminal] investigation will conclude. As a result, a stay pending the completion of the criminal investigation would be indefinite at best. Therefore, the court concludes that Plaintiffs' interest in expeditious

15

proceedings weighs in favor of lifting the stay." (citations omitted)).  As discussed above, Plaintiff's case will suffer severe prejudice if the Court enters the stay that the City seeks here. Certainly, the City has not met its burden to show otherwise.

### 4. The private interests of and burden on the defendants.

The City insists it will suffer considerable prejudice if it must proceed to trial while the officers remain on the Fifth. Its claims do not withstand scrutiny.

***Changed positions***.  As an initial matter, the City's assertion that it has "always contemplated taking discovery from the Stayed Defendant Officers," ECF 610 at 7, is belied by its claims, as late as December 2025, that it was prepared to proceed to dispositive motions and trial *without* the officers' testimony—indeed arguing as late as December 2025 that depositions of the officers would be unduly burdensome. *Supra.* It was only in February 2026, when Plaintiff announced her *Monell* case was ready for trial, that the City suddenly claimed a pressing need to depose the officers. *Id.* The City's new position, with the principal effect of delaying trial against it indefinitely, lacks credibility.

***Cross-examining Martin and Mills about their criminal trial testimony***.  Officers Martin and Mills took plea deals and testified in the federal criminal trial.  The City says it "needs to explore the officers' motivations for their testimony, the circumstances of their plea agreements, and the factual basis for their conduct" before it can prepare expert reports or be ready for trial.  ECF 611 at 10.  These arguments are not adequate grounds for the indefinite stay that the City seeks, particularly weighed against the severe prejudice it will cause Plaintiff.  First, there is no reason to expect that Martin and Mills will *ever* come off the Fifth regarding their trial testimony, as both remain subject to potential perjury prosecution for any changes to that testimony. *See United States v. Perkins*, 138 F.3d 421, 425 (D.C. Cir. 1998) (holding that the

16

witness in that case, despite having testified at an earlier trial, did not waive his Fifth

Amendment rights because he remained in danger of further incrimination, specifically the risk

of being prosecuted for perjury based on his prior testimony). The very thing the City seeks to

question them about—whether they lied under oath—is something any competent defense

attorney would instruct Martin and Mills to assert the Fifth to. Second, their criminal testimony

is already admissible at trial under Federal Rule of Evidence 804(b)(1).[1]  That is so because

Defense counsel in the criminal cases had the same motive and opportunity to cross-examine

Martin and Mills about their motivation for cooperating with the DOJ, *see United States v. Bean,

et al.*, No. 2:23-cr-20191 (W.D. Tenn.),[2] making them predecessors in interest to the City.  *See

Clay v Johns-Manville Sales Corp.*, 722 F.2d 1289, 1294-95 (6th Cir. 1983) (there should be a

"generous" construction of "predecessor in interest,"  "if it appears that in the former suit a party

having a like motive to cross-examine about the same matters as the present party would have,

---

[1]  That Martin and Mills' trial testimony qualifies for Rule 804(b)'s hearsay exception is straightforward.  Under Rule 804(a)(1) both men are "unavailable" to testify in this case because their Fifth Amendment "privilege applies."  This qualifies them for the exceptions set out in Rule 804(b), specifically the "former testimony" exception of Rule 804(b)(1).  First, their testimony was "given as a witness at a trial," Fed. R. Evid. 804 (b)(1)(A), and it is given "against a party . . . whose predecessor in interest had . . . an opportunity and similar motive to develop it by . . . cross-[] examination."  Fed. R. Evid. 804(b)(1)(B).

[2]    The defense at the *Bean* trial exhaustively cross-examined both Martin and Mills on their plea agreements, cooperation incentives, and the personal benefits driving their testimony. Defense counsel established that Martin's testimony was driven by self-interest, walking Martin through his plea agreement's provision that any further sentencing reduction was "solely within the discretion of the government" and conditioned on the government's assessment of the "value, truthfulness and completeness" of his cooperation. *Bean* ECF 675 at 25:7-26:11. Counsel established that Mills' account changed materially after he received a government promise of a downward departure in exchange for cooperation, with Mills himself admitting his signed ISB statement was "not truthful." *Bean* ECF 645, at 66:7-15; 69:22-70:3. Both Mills' federal plea agreement and his state criminal agreement were introduced, establishing he was testifying to escape accountability in two separate criminal proceedings simultaneously. *Id.* at 215:16–216:11. He was confronted with the full arc of his changed story, from telling his lieutenant the night of the incident "we did everything by the book" to his trial testimony describing excessive force and a coverup. *Id.* at 212:20–23; 213:10–17.

17

was accorded an adequate opportunity for such examination, the testimony may be received against the present party."). Martin and Mills' testimony is not grounds for an indefinite stay.

*Other testimony.* Beyond examining Martin and Mills, the City has not identified any specific testimony it would gather from the officers. It claims it must examine each officer about "causation" and whether each was "acting outside their training" or "within policy," ECF 611 at 13, but that is hard to follow. Plaintiff is not pursuing individual claims against the officers. She is suing the City, alleging its officers used excessive force pursuant to widespread MPD practices. What is more, the beating was captured on video, and the five officers all gave lengthy *Garrity* statements about their encounter with Mr. Nichols. The City has already questioned them. And those statements will be admissible at trial. *See Lindsly v. Worley*, No. 1:09-cv-375, 2012 WL 12986674 (S.D. Ohio June 19, 2012) (explaining that *Garrity* "does not apply unless the officer's statements are used against him in a criminal case," so use of statements at a civil trial was permissible).

To obtain a stay, the City must "make out a clear case of hardship or inequity in being required to go forward[.]" *Ohio Env't Council*, 565 F.2d 393, 396. Given the extensive video evidence and the officers' own *Garrity* statements, the City was obligated to explain what is missing and what prejudice it would suffer without it. It has not done so. Notably, the question at trial will be whether the officers used excessive force against Mr. Nichols. That is a decidedly objective inquiry: "evidence tending to reveal [an officer's] subjective state of mind is irrelevant to [a] federal excessive-force claim," and would not even be admissible at trial. *Helfrich v. Lakeside Park Police Dept.*, 497 Fed. Appx. 500, 508 (6th Cir. 2012). There is ample objective evidence about what the officers did in this case. The City simply has not carried its burden to show why the lack of further examination will prejudice it. This factor weighs against a stay.

18

### 5. The interests of the courts.

"Staying a civil case until the resolution of a criminal case is inconvenient for the court," and is to be avoided absent a sufficient need. *ESG Capital Partners LP v. Stratos*, 22 F. Supp. 3d 1042, 1047 (C.D. Cal. 2014). As set forth above, that need is absent here.

### 6. The public interest.

In 2023, shortly after this case was filed, the officer-defendants moved for a complete stay until their criminal cases were adjudicated. The City vigorously *opposed* that motion, emphasizing that while the officers who beat Mr. Nichols had been indicted, "no trial dates have been scheduled in any of their criminal cases. It could be literally years before the Indicted Defendants go to trial . . . ." *Id.* This, the City said, amounted to an "indefinite" delay, and "[t]he public's interest is best served with moving forward in this case. The public at large needs closure in this case, and the tax paying citizens of Memphis are best served by having the civil lawsuit resolved expeditiously." *Id.* at 9. Plaintiff agrees. This factor weighs against a stay.

**CONCLUSION**

The Court should reject the City's request for an indefinite stay and adopt Plaintiff's proposed schedule instead. There is no reason for further delay.

[SIGNATURES ON FOLLOWING PAGE]

19

Date: May 7, 2026

/s/ *Stephen H. Weil*

David L. Mendelson
(Tenn. Bar No. 016812)
Benjamin Wachtel
(Tenn. Bar No. 037986)
MENDELSON LAW FIRM
799 Estate Place
Memphis, TN 38187
(901) 763-2500 (ext. 103)
dm@mendelsonfirm.com
bw@mendelsonfirm.com

Benjamin Crump
(Tenn. Bar No. 038054)
Brooke Cluse*
(Tex. Bar No. 24123034)
BEN CRUMP LAW, PLLC
717 D Street N.W., Suite 310
Washington, D.C. 20004
(337) 501-8356
court@bencrump.com
brooke@bencrump.com

Antonio M. Romanucci* (Ill. Bar No. 6190290)
Sarah Raisch* (Ill. Bar No. 6305374)
Joshua M. Levin* (Ill. Bar No. 6320993)
Stephen H. Weil* (Ill. Bar No. 6291026)
Colton Johnson Taylor* (Ill. Bar No. 6349356)
ROMANUCCI & BLANDIN, LLC
321 N. Clark St., Ste. 900
Chicago, IL 60654
(312) 458-1000
aromanucci@rblaw.net
sraisch@rblaw.net
jlevin@rblaw.net
sweil@rblaw.net
cjohnson@rblaw.net

*Attorneys for Plaintiff*

* Admission *pro hac vice*

20