**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| RowVaughn Wells, Individually and as Administratrix of the Estate of Tyre Deandre Nichols, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:23-CV-02224-SHL-atc JURY DEMAND |
| The City of Memphis, Tennessee; Chief Cerelyn Davis; Preston Hemphill; and DeWayne Smith, | ) ) ) | |
| Defendants. | ) ) | |

**CITY OF MEMPHIS'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO CLAW BACK DOCUMENT**

Defendant City of Memphis (the "City") respectfully submits this response in opposition to Plaintiff's Motion to Claw Back Inadvertently Produced Privileged Document Pursuant to FRE 502(b) and FRCP 26(b)(5)(B) ("Motion to Claw Back," ECF No. 640). The document Plaintiff seeks to claw back is a November 2, 2023 email from Plaintiff's lead counsel, Antonio Romanucci, to his co-counsel forwarding a publicly-filed plea agreement between the DOJ and Desmond Mills—the substance upon which Mr. Romanucci apparently had input—and describing the plea agreement as "**Gold on paper.**" (*See* November 2, 2023 email (the "'Gold on paper' email"), attached as Exhibit 1.)

This "Gold on paper" email undoubtedly memorializes a victory lap or celebration by Plaintiff's counsel of their success in influencing the language of the plea agreement of former defendant Desmond Mills to support their civil case; however, it is not privileged. Moreover, even if the Court finds this celebratory email would have been protected by some recognized

1

privilege, Plaintiff's failure to immediately act waived any privilege protections the "Gold on paper" email may have had.

Plaintiff's counsel knowingly produced this document on April 30, 2026, pursuant to the Court's Order on Motion to Compel. (ECF No. 609, PageID 9297.) The City referenced, identified, and attached the document as part of the Joint Reply in Support of the City's Motion to Reopen Discovery for a Limited Purpose and to Amend Schedule filed on May 11, 2026. (*See* ECF No. 611.) After the document was filed, Plaintiff's counsel made no mention of clawing back the document despite the parties convening in-person for a status conference with the Court later that same day. In fact, counsel for both parties were together in the hallway of the courthouse for nearly an hour before the May 11, 2026 status conference, and Plaintiff's attorneys never mentioned the alleged "inadvertently produced" document.

Even worse, the pleading to which the "Gold on paper" email was cited and attached was discussed extensively during the status conference on May 11, 2026, but Plaintiff did not alert the Court that the document attached to and cited in the pleading was "inadvertently produced," nor did Plaintiff claim any privilege on the document.

Three days elapsed following the status conference. Finally, on May 14, 2026, Plaintiff attempted to recast the "Gold on paper" email as privileged, demanded its destruction, and sought to scrub it from the Court's record. But no Federal Rule of Civil Procedure permits a party to claw back a document simply because it regrets having produced it.

The Court should deny Plaintiff's Motion to Claw Back because Plaintiff waived her right to claw back the document by not raising the privilege issue contemporaneously with her discovery of its disclosure and because the "Gold on paper" email is not protected under the attorney work-product doctrine in any event.

2

## I.      Background

On March 31, 2026, the Court ordered Plaintiff to produce, *inter alia*, documents in response to the City's Requests for Production Nos. 128 and 129. (ECF No. 609, PageID 9297.)

On April 30, 2025, Plaintiff's counsel served documents responsive to the City's Request for Production Nos. 128 and 129 and a privilege log. Plaintiff's April 30 document production consisted of only eighteen documents totaling just 197 pages.

Within that production, Plaintiff disclosed communications concerning former defendant Desmond Mills's plea agreement, including communications showing that Plaintiff's counsel received advance notice of and provided input on the plea arrangement. (*See* ECF No. 636, PageID 9777.) Among those communications was a November 2, 2023 email in which DOJ counsel sent filed plea papers to Mr. Romanucci**,** who then forwarded those papers to co-counsel and described them as **"Gold on paper."** (ECF No. 636-2, PageID 9785–86 (emphasis added).) The email containing the "Gold on paper" statement appeared within a document totaling just thirty-one pages.

Between the time of the April 30 Production and May 11, 2026, when the City filed the Joint Reply (ECF No. 636) and attached the "Gold on paper" email, Plaintiff did not claw back any portion of the production, nor did Plaintiff's counsel identify the "Gold on paper" email as privileged on the privilege log. On May 11, 2026, the City, together with Defendants DeWayne Smith and Preston Hemphill, filed the Joint Reply in Support of the City's Motion to Reopen Discovery for a Limited Purpose and to Amend Schedule, referenced the email in the text of the memorandum in support and attached the email as an exhibit. (ECF No. 636, PageID 9776–77; ECF No. 636-2, PageID 9785–86.)[1]

---

[1] Including exhibits, the Defendants' Joint Reply is in total only fourteen pages and directly quotes

Later on May 11, 2026, the Court held an in-person status conference. Present at that status conference were ***seven*** members of Plaintiff's legal team: Joshua Levin, Sarah Raisch, Stephen Weil, Colton Johnson Taylor, Benjamin Wachtel, Brooke Cluse, and David Mendelson. (*See* ECF No. 638.) During that conference, the Court and the parties addressed issues raised in the City's Joint Reply, including the City's concerns related to Plaintiff's counsel's coordination with prosecutors. (ECF No. 643, PageID 9955, 9969, 9990.) In fact, Plaintiff's counsel, Sarah Raish, directly addressed the communications regarding the plea agreement stating:

> **MS. RAISCH:** I am very sorry to interrupt you, but I -- I did want to address the one -- the last sort of bucket of items that they would like to take additional discovery on or reopen discovery on, and that's these allegations of some sort of collusion and coordination between the prosecutors' offices and Ms. Wells' counsel. And none of the communications that were provided or that were -- that were had between Ms. Wells' counsel and the prosecutors' offices, either federally or at the state level, were anything inappropriate or unusual in a common interest prosecution, both between the civil and criminal side, and in a scenario where we represent the victim of a crime. It is certainly customary for -- when it comes to plea agreements in particular, for that to be -- to go through the victim of the crime; in this case, Ms. Wells.

(ECF No. 643, PageID 9990.)

Thus, Plaintiff's counsel had clearly reviewed and evaluated the communications referenced and attached to the Joint Reply, which included the "Gold on paper" email, but she did not raise any work-product claim, claw back request, or concern that the email had been inadvertently produced to the Court during her soliloquy. At the end of the status conference, the Court asked whether there were "[a]ny questions or anything else we can accomplish today? Anything from Plaintiffs?" Plaintiff's counsel responded, "No, Your Honor. That does it. Thank

---

and discusses the "Gold on paper" email for the first time on the third page of the Joint Reply, making the email virtually impossible to overlook even during a quick read. (ECF Nos. 636 through 636-3; *see* ECF No. 636, PageID 9778.)

you." (ECF No. 643, PageID 9997.)

Over seventy-two hours after the conclusion of the status conference, Plaintiff's counsel for the first time notified the City of an alleged work-product privilege associated with the "Gold on paper" email. After close of business on Thursday, May 14, 2026, Plaintiff's counsel Joshua Levin emailed all counsel, stating that the "Gold on paper" email "is privileged attorney work product" and that "it was a confidential communication between co-counsel relating to their representation in this litigation," while requesting that Defendants "promptly return, sequester, or destroy the specified document and any copies." (*See* Email Chain RE: Wells v. City of Memphis - 23-cv-2224 - Clawback of Privileged Document including the City's Objections, attached as Exhibit 2.) The email stated that the "Gold on paper" email "was inadvertently included in our production" despite prior review efforts.

The following morning, on May 15, Plaintiff's counsel sent a follow-up email providing a redacted version of the "Gold on paper" email and an updated privilege log. (*See* Email Chain RE: Wells v. City of Memphis - 23-cv-2224 - Clawback of Privileged Document including Redacted "Gold on Paper" email and revised privilege log, attached as Exhibit 3.) The redacted "Gold on paper" email includes redaction of not only the substance of the email where Mr. Romanucci says "Gold on paper," but also the lines automatically generated for every email including the "From," "Sent," "To," "Subject," and "Attachments"—information that Plaintiff then confoundingly disclosed in her updated privilege log. (*Id.*)

On May 16, 2026, the City objected to Plaintiff's tardy and baseless attempt to claw back the document. (*See* Exhibit 2.) Plaintiff, without responding to or even acknowledging the City's objection, filed the Motion now before the Court. (ECF No. 640.)

II.     **Plaintiff Is Precluded from Clawing Back the "Gold on Paper" Email Under Rule 502(b) Because Plaintiff Failed to Timely Rectify the Disclosure, Thereby Waiving Any Privilege or Protection.**

Plaintiff waived her right to claw back the "Gold on paper" email through her failure to timely rectify the disclosure. Federal Rule of Evidence 502(b) governs inadvertent disclosures, providing:

> When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
>
> (1) the disclosure is inadvertent;
>
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; *and*
>
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(b) (emphasis added). This conjunctive test requires Plaintiff to show each element to prevent the waiver of the attorney work-product privilege pertaining to the "Gold on paper" email.

> Although Rule 502 does not contain any factors to determine whether the disclosure should constitute a waiver, the Advisory Committee Notes to the rule suggest a flexible test that considers "the reasonableness of precautions taken, the time taken to rectify the error, the scope of discovery, the extent of disclosure and the overriding issue of fairness[,] . . . the number of documents to be reviewed and the time constraints for production[,] . . . [the] use . . . [of] advanced analytical software applications and linguistic tools in screening for privilege and work product," and "implementation of an efficient system of records management before litigation."

*Bd. of Trs., Sheet Metal Workers' Nat. Pension Fund v. Palladium Equity Partners, LLC*, 722 F. Supp. 2d 845, 850 (E.D. Mich. 2010); *see also Talismanic Props., LLC v. Tipp City*, 309 F. Supp. 3d 488, 493–95 (S.D. Ohio 2017) (examining the analysis of Rule 502(b) and the above listed factors).

6

Here, even assuming as Plaintiff claims, that the disclosure was inadvertent, Plaintiff fails

to establish either of the remaining two elements of Rule 502(b). Plaintiff has not shown

reasonable steps she took to prevent disclosure. Plaintiff's counsel claims to have performed

"multiple levels of review," but provides no specific evidence of a structured privilege-review

process, targeted search protocol, quality-control measure, or other safeguards tailored to the

production. (ECF No. 640, PageID 9919, 9921, 9926–27.) That omission matters because the

production was narrow: only eighteen documents totaling 197 pages, with the challenged email

appearing in a thirty-one-page document. (*See* ECF No. 636-2, PageID 9785–86.)

Plaintiff also had ample notice of the need to review these materials carefully for

privilege. The Order compelling production of the documents stated:

> RFP Nos. 128–29 seek Plaintiff's and her counsel's communications with
> the DOJ that relate to this lawsuit and the DOJ's pattern and practice
> investigation of the MPD. (ECF No. 454, at 10–11; ECF No. 466, at 17–
> 18.) As with RFP Nos. 46–126 and 133–41, the requests ultimately seek
> third-party communications that are likely relevant to the claims and
> defenses in this case; thus, **the parties' dispute revolves around the
> applicability of the work-product doctrine.** The result here is the same as
> above. **To the extent that counsel has communications with the DOJ
> that are not opinion work product, those documents must either be
> produced or included on a privilege log that describes the basis for a
> claim of fact work product.** As a result, the RFP Motion is granted as to
> these RFPs, and Plaintiff is ordered to produce responsive documents and/or
> provide a privilege log by April 30, 2026.

(Order, ECF No. 609, PageID 9297 (emphases added).)

Plaintiff's production was made under the Court's March 31, 2026 Order compelling

documents responsive to Request for Production Nos. 128 and 129, and Plaintiff's own affidavit

confirms that counsel reviewed the documents for privilege before production. (ECF No. 609,

PageID 9297; ECF No. 640-1, PageID 9926–27.) Yet the "Gold on paper" email was produced

and not identified as allegedly protected until after the City used it in support of its filing. Those circumstances do not establish reasonable precautions under Rule 502(b)(2).

Plaintiff likewise failed to act promptly once the issue was apparent. Plaintiff admits that its legal team learned of the City's filing the morning of May 11 while traveling to the status conference. (ECF No. 640, PageID 9919.) And the document in question was not complex: the allegedly protected sentence was one line—"Here you go. Gold on paper."—forwarding filed plea papers that DOJ counsel, Ms. Kathryn Gilbert,[2] had sent to Mr. Romanucci. (ECF No. 636-2, PageID 9786.) Nonetheless, Plaintiff did not raise the issue at the May 11 status conference and did not send a written claw back demand until after close of business on May 14, 2026. (ECF No. 640, PageID 9919–22; ECF No. 643, PageID 9996.)

Plaintiff relies on one out-of-circuit case to support her argument that her claw back attempt is timely. Plaintiff cites *Victor Stanley, Inc. v. Creative Pipe, Inc*, but that case underscores the need for diligence, not delay. *See Victor Stanley*, 250 F.R.D. 251 (D. Md. 2008). *Victor Stanley* emphasized that promptness must be evaluated in light of the surrounding circumstances, including when the producing party learned of the disclosure and how quickly it acted thereafter. *Id.* at 263. The *Victor Stanley* court actually found that the defendants waived any privilege or work-product protection for the 165 privileged documents they inadvertently disclosed to the plaintiff even though only one week had transpired between production of the documents and the time of the discovery of the privileged documents. *Id.* at 263. The court found that the defendants failed to take reasonable precautions to prevent the disclosure of privileged information. *Id.*

---

[2] The City intends to file a motion asking the Court to allow the deposition of Ms. Kathryn Gilbert because of its recently uncovered knowledge of her involvement in this civil matter.

8

So, too here. Plaintiff failed to discover the disclosure during the twelve days between the April 30 production and the City's May 11 filing, then waited more than three additional days after admittedly learning of the public filing before sending a claw back demand. (ECF No. 640, PageID 9919–22.) Plaintiff's waiver is exacerbated by the fact that the document in question was publicized in a news article on May 11, 2026, yet Plaintiff's counsel waited another three days following publication of the article to raise the issue of claw back.[3]

The delay is especially consequential because the email had already been filed on the public docket, cited in a filed brief, and followed by a status conference at which Plaintiff did not raise any privilege or claw back concerns. (ECF No. 636, PageID 9776–77; ECF No. 636-2, PageID 9785–86; ECF No. 643, PageID 9996.) Rule 502(b) requires prompt reasonable steps to rectify the error—it does not permit a producing party to wait while the disclosure remains public and then seek retroactive relief after the document has been used in motion practice.

In short, *Victor Stanley* weighs decisively against Plaintiff's position because Plaintiff's counsel failed to discover their inadvertent disclosure for twelve days—several days more than the parties in *Victor Stanley*—before it was cited and filed as an exhibit in support of Defendants' Joint Reply. Plaintiff then failed to act immediately upon discovery. Instead, Plaintiff's counsel allowed the subject matter of the communications to be discussed in open court and remain on the public docket for three days after "first learn[ing] of the inadvertent production"—despite having actual knowledge of the disclosure and the resources of a large legal team present at the very hearing where the document was addressed. (ECF No. 640, PageID 9921.) Only after the significance of the document became clear—presumably after the national media published an

---

[3] *See* Lucas Finton, *City alleges Tyré Nichols attorneys shaped criminal cases to help lawsuit*, COMMERCIAL APPEAL, https://www.commercialappeal.com/story/news/crime/2026/05/11/tyre-nichols-civil-lawsuit-updates-allegations/90027870007/ (last updated May 13, 2026 at 10:42 AM).

article about it—did Plaintiff attempt to claw it back. And even then, Plaintiff waited another three days before attempting to claw back the document. This is precisely the kind of delayed, reactive conduct *Victor Stanley* warns against. Far from supporting Plaintiff, the case confirms that Plaintiff's failure to act promptly forecloses any relief under Rule 502(b).

Plaintiff seeks extraordinary relief, including removal of a publicly filed court exhibit and prohibiting Defendants from using the document.[4] Such relief is inappropriate, particularly where, as here, Plaintiff has failed to establish that the document is protected or that Rule 502(b) applies in the first instance. Plaintiff cites no authority requiring its retroactive removal under these circumstances—particularly given Plaintiff's own role in producing the document and delaying corrective action. Plaintiff had ample opportunity to claw back the "Gold on paper" email before Defendants' filing during the twelve-day interim after the April 30 Production. The seven members of Plaintiff's legal team present at the May 11, 2026 status conference could have discussed the supposed inadvertent disclosure with the City before appearing before the Court. Those same seven attorneys could have broached at least the **potential** need to claw back the document with the Court and Defendants' counsel before and during the May 11, 2026 status conference. Plaintiff's counsel could even have communicated with the City's counsel any time during the three days after the status conference and the "Gold on paper" email remained on the public docket before their after-close-of-business email on May 14, 2026. Plaintiff's counsel failed to take any of these measures.

These delays are fatal. Rule 502(b) demands prompt action, not deliberative reconsideration after the consequences of disclosure becomes apparent. Plaintiff's attempt to

---

[4] The City intends on fully exploring the interactions between the civil attorneys and Ms. Kathryn Gilbert, attorney for the DOJ; consequently, the jury will be well aware of these interactions.

justify its delay with references to travel and internal review underscores the problem: the rule requires diligence, not convenience. Once the pleading in which the "Gold on paper" email was attached was addressed in open court without objection, Plaintiff forfeited any claim of acting with urgency. "[A]ny order issued now by the court to attempt to redress these disclosures would be the equivalent of closing the barn door after the animals have already run away." *Victor Stanley*, 250 F.R.D. at 263.

In short, Plaintiff's minimal production, inadequate review, delayed response, and the public dissemination of the document foreclose relief under the conjunctive requirements of Rule 502(b). Even if the email were once protected, that protection has been irretrievably lost.

### III.    Plaintiff Has Not Carried Her Burden to Establish Work-Product Protection.

The Court should also deny the Motion because Plaintiff has not shown that the "Gold on paper" email qualifies for work-product protection in the first instance. "The work-product doctrine protects an attorney's trial preparation materials from discovery to preserve the integrity of the adversarial process." *360 Const. Co. v. Atsalis Bros. Painting Co.*, 280 F.R.D. 347, 353 (E.D. Mich. 2012) (quotation marks omitted) (quoting *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009)). The doctrine creates a "zone of privacy in which an attorney can investigate, prepare, and analyze a case." *In re Grand Jury Subpoena Dated Nov. 8, 1979*, 622 F.2d 933, 935 (6th Cir. 1980).

The burden is on the party asserting protection to show that anticipated litigation was the "driving force behind the preparation of each requested document." *Id.* (quoting *United States v. Roxworthy*, 457 F.3d 590, 595 (6th Cir. 2006)). Conclusory assertions are insufficient. "Federal courts in this circuit[] . . . will reject a claim of work product protection if the only basis for the claim is a party's conclusory allegations that a document has been prepared in anticipation of litigation." *Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 387 (W.D. Ky. 2007).

Plaintiff has not met that burden. The "Gold on paper" email can, at best, be characterized as an after-the-fact victory lap about an extrajudicial lobbying effort, whose substance concerns the manipulation of a criminal proceeding to be favorable in the civil case. It was nothing more than a celebratory email about having shaped a third party's charging document. There is clearly no privileged mental impression here. While the initial design of this plan to influence the criminal case in favor of the civil matter *may* qualify as a protected mental impression, the celebration of the results of the plan does not. It is a communication about a completed act, wholly devoid of the analytical content the attorney work-product doctrine exists to shield. The "Gold on paper" email relates exclusively to Plaintiff's counsel's conduct and communications regarding Defendant Mills's plea agreement. The words "[g]old on paper" do not provide any analytical value as to the nature of the litigation. Because the email is indistinguishable from ordinary attorney communications reacting to external events, Plaintiff cannot show that litigation was the reason it was created.

Plaintiff's revised redactions further illustrate the absence of a developed work-product showing. Rule 26(b)(5)(A) requires a party withholding information on a claim of protection to describe the nature of the material in a manner that, without revealing protected information, enables other parties to assess the claim. Fed. R. Civ. P. 26(b)(5)(A). Yet Plaintiff redacted ordinary header fields—"From," "Sent," "To," "Subject," and "Attachments"—while disclosing the same identifying information in the updated privilege log. (*See* Exhibit 3.) That approach does not demonstrate that the redacted material consists of protected mental impressions; it instead underscores that Plaintiff's work-product claim rests on assertion rather than a substantiated showing.

Accordingly, the Court should deny the Motion for the additional reason that Plaintiff has

not carried her burden to prove that the "Gold on paper" email is protected work-product.

## CONCLUSION

For the foregoing reasons, the City respectfully asks that this Court deny Plaintiff's

Motion to Claw Back.

Dated: May 20, 2026

Respectfully submitted,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.**

*/s/ Bruce McMullen*

Bruce McMullen (#18126)
Jennie Vee Silk (#35319)
Kelsey W. McKinney (#40434)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 526-2000
bmcmullen@bakerdonelson.com
jsilk@bakerdonelson.com
kmckinney@bakerdonelson.com

*Attorneys for Defendant City of Memphis
and Chief Cerelyn Davis in her Individual
Capacity*