**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

|  |  |
|---|---|
| RowVaughn Wells,<br><br>   Plaintiff,<br><br> v.<br><br>City of Memphis *et al.*,<br><br>   Defendants. | Case No. 2:23-cv-02224-SHL-ATC |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO STAY

Plaintiff, through her undersigned counsel, submits this memorandum in response to the requests to stay this case submitted by the City (ECF 647) ("City Br.") and the remaining individual defendants (ECF 646) ("Hemphill/Smith Br. 5-6"). Those requests should be denied. Plaintiff explains why herein.

### INTRODUCTION

Defendants ask this Court for relief that is extraordinary twice over. A stay of civil proceedings pending a parallel criminal case is itself "an extraordinary remedy." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627 (6th Cir. 2014). The stay Defendants seek is more extraordinary still. The only stay *E.M.A. Nationwide* and its progeny authorize is to spare a person who is a defendant in *both* a civil and criminal case from facing the Hobson's choice of asserting his Fifth Amendment rights at the risk of civil liability, or waiving these rights to defend himself in civil proceedings at the risk of incriminating himself. But that stay has no applicability here. None of the Defendants are defendants in the parallel criminal case. And none of the criminally charged officers is a defendant in this case. Indeed, as a corporate entity, the City has no Fifth Amendment right against self-incrimination at all. Defendants concede they seek to protect no

1

one's Fifth Amendment rights. City Br. at 5, 8. What Defendants seek operates in an entirely different register: not the protection of a constitutional privilege, but a garden-variety evidentiary advantage. They seek to halt this case indefinitely so that they might one day obtain testimony from the officers, non-party witnesses, who are now invoking the Fifth and can be expected to remain on the Fifth until they have exhausted every available appellate option years from now. Defendants cite no case, anywhere, granting a stay on that basis—let alone in a *Monell* case. Plaintiff cites several refusing one. Defendants ask this Court to be the first, against the weight of authority.

The burden of justifying that relief is Defendants', and this briefing was their final chance to carry it: the Court ordered them to address the *E.M.A. Nationwide* factors and to identify what testimony they need from the officers and why. The City had sought leave to address those factors in its earlier reply, then did not; the Court gave it this further chance. The City still has not made the showing. It catalogs broad subjects it would explore but never identifies any specific testimony it expects to obtain from any officer. Nor does it cite a single case holding that such testimony is relevant to a *Monell* claim, much less so essential that it would justify delaying trial indefinitely and steadily eroding Plaintiff's proof.

The absence of supporting authority is no coincidence. The officers' testimony is *not* necessary to defend a *Monell* claim. That is why, for most of this litigation, the City claimed not to need it. *See* ECF 633, Pl.'s Opp. Br. 3-5. When the officers sought a Fifth Amendment stay at the outset of this case, the City opposed it, stating the stay would "needlessly delay litigation for an indefinite amount of time, which would *serve no one* other than the moving Defendants." ECF 76 at 9 (emphasis added). In November 2025, when the City moved for leave to take additional depositions and specifically catalogued the witnesses it needed to defend the *Monell* claims, the

officers appeared nowhere on its list. ECF 517. As late as December 2025, the City said it was ready to proceed to summary judgment and trial without the officers' testimony, and even moved to bar *Plaintiff* from deposing the officers as unduly burdensome. ECF 525 at 2, 8-9. Only in February 2026, the moment Plaintiff announced she was ready to try her *Monell* case against the City, did the City reverse course and declare the officers' testimony suddenly indispensable. *See* ECF 565 at 16. The City does not deny its 180-degree turn, City Br. 14-15, and that matters. Its abrupt change in position, on an issue so central to this case, suggests the City does not in fact need this testimony for its *Monell* defense. Sophisticated counsel do not discover, years into a case and at the close of fact discovery, that evidence they had long dismissed as unnecessary is in fact essential—just as their opponent announces she is ready for trial. Whatever explains the City's reversal, the relief it now seeks has one clear result: a lengthy, open-ended delay before the City must face a jury. *See Ramirez v. Collier*, 595 U.S. 411, 452 (2022) ("[Movant's] shifting litigation position lays bare what he really wants: to manipulate the judicial process to win further delay." (quotations omitted)).

After three years of litigation, this case should move forward. Municipalities regularly proceed to trial on *Monell* claims while the officers whose conduct is at issue remain on the Fifth. This is standard. The City has provided no reason why it should get special treatment that no other municipalities receive. In the May 11 hearing, the Court stated the proper path forward: the parties can depose the officers in the coming months, the officers will answer or invoke the privilege, and the case will proceed to trial with whatever inferences follow—just like *Monell* cases across the country every day.

## ARGUMENT

The *E.M.A. Nationwide* factors exist to answer one overarching question: whether requiring a civil party to litigate would burden that party's constitutional privilege against self-incrimination. The overlap of issues, the status of the criminal case, the burden on the defendant, and the balancing of the equities each measure the risk of that constitutional injury. Where, as here, no civil party can suffer that injury, the factors foreclose a stay.

**A.      The Overlap Factor Weighs Against a Stay Because No Party to this Case Faces Self-Incrimination.**

The overlap factor does not ask, in the abstract, whether the civil and criminal cases concern the same events. It asks that question for a particular reason with specific constitutional implications: the degree of overlap measures the risk that a person who is a party to the civil case *and* a related criminal proceeding will be forced to incriminate himself in civil discovery. "[D]istrict courts have acknowledged that the first factor—the extent to which the civil and criminal issues overlap—is the most important factor, because the degree of overlap tends to correlate with *the danger of self-incrimination*." *Johnson, next friend of C.P.S. v. Hamilton Cnty. Gov't*, No. 1:19-CV-329, 2020 WL 6479558, at *2 (E.D. Tenn. Feb. 26, 2020) (collecting cases) (emphasis added). This factor, in other words, "consider[s] the extent to which the defendant's fifth amendment rights are implicated." *E.M.A. Nationwide*, 767 F.3d at 627 (quotation omitted). And criminal exposure is the key: the "common thread" in cases granting stays under *E.M.A. Nationwide* is "a substantial concern that the defendants would be faced with an untenable choice—waiving their Fifth Amendment rights to try to win the civil case or taking the Fifth and potentially losing" it. *Smith v. FirstEnergy Corp.*, No. 2:20-CV-3755, 2021 WL 507881, at *4 (S.D. Ohio Feb. 11, 2021). None of the remaining Defendants in this case face that dilemma, and so the overlap factor cuts decisively against a stay.

4

Defendants try to salvage this factor by asserting that "[i]t is *irrelevant* whether the parties 'overlap,'" and that "the danger of self-incrimination" is only "*one rationale* to support the overlap factor." City Br. 4; Hemphill/Smith Br. 5-6. Having dispensed with the self-incrimination concern, they argue that, even in the absence of party overlap, a stay due to a pending criminal proceeding may still be warranted. Defendants cite not a single case for this proposition,[1] and it is refuted by *E.M.A. Nationwide*, its predecessors, and its progeny. The decision from which the Sixth Circuit adopted its multi-factor test held: "[I]f there is no overlap, then there would be *no danger of self-incrimination* and no need for a stay." *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1039 (W.D. Mich. 2007) (quotations omitted and emphasis added); *see E.M.A. Nationwide*, 767 F.3d at 627 (adopting *Chao* factors). Courts in this Circuit and beyond have repeatedly agreed. *See Almeyda v. Wooster Motor Ways, Inc.*, 2025 WL 1679528, at \*3 (W.D. Ky. June 13, 2025) (holding that issue overlap between civil and criminal cases "supports a stay for [the criminally charged defendant], but not for [the other defendant], as [that defendant] is not currently facing criminal prosecution"); *Smith v. FirstEnergy Corp.*, No. 2:20-CV-3755, 2021 WL 507881, at \*2 (S.D. Ohio Feb. 11, 2021) (denying stay where "[n]one of the Defendants in this case has been indicted"); *Doe v. Matthew 25, Inc.*, 322 F. Supp. 3d 843, 850 (M.D. Tenn. 2018) (denying stay where defendant "produced no evidence that charges against him are imminent"); *State Farm Mut. Auto. Ins. Co. v. Beckham-Easley*, No. CIV.A. 01-5530, 2002 WL 31111766, at \*3 (E.D. Pa. Sept. 18, 2002) ("Where civil

---

[1] The cases the City cites on this point (City Br. 9) do not support it. The City faults Plaintiff for adding "that" to a quotation from *Doe v. Matthew 25, Inc.*, 322 F. Supp. 3d 843 (M.D. Tenn. 2018), but the quibble is beside the point. The party seeking the stay in *Doe* was himself the prosecution's target, so his *own* Fifth Amendment interests were at stake, and even still, the court denied the stay because he had not been indicted and the burden was "speculative." *Id.* at 850. The discovery "difficulties" the City quotes in *Doe* flow from the civil defendant's *own* invocation of the privilege. *Id.* Nothing in *Doe* suggests a non-party's unavailable testimony would justify a stay where no civil party faces self-incrimination. The City's other authorities are the same. *See, e.g.*, *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 101 (2d Cir. 2012) (the civil defendants were indicted parties). Each involved a civil party whose own Fifth Amendment rights were at stake. None addresses the situation here.

5

defendants are not subject to criminal charges . . . the inappropriateness of a stay is manifest."
(quotations omitted)). The City's unsupported position is contrary to the uniform case law in this
Circuit.

Indeed at least three district courts in this Circuit have denied a stay in the same
circumstance presented here. In each, a civil defendant that was not a party to the parallel criminal
case sought to stay the civil case until the criminal proceedings ended, so that it could obtain
testimony from a criminal defendant on the Fifth. Each court refused. *See Smith v. FirstEnergy
Corp.*, 2021 WL 507881, at \*2-3 (S.D. Ohio Feb. 11, 2021); *Birge ex rel. Mickens v. Dollar Gen.
Corp.*, No. 04-2531 BP, 2005 WL 3448044 (W.D. Tenn. Dec. 14, 2005), *aff'd sub nom. Birge v.
Dollar Gen. Corp.*, No. 04-2531 B, 2006 WL 3858042 (W.D. Tenn. Dec. 28, 2006); *In re Scrap
Metal Antitrust Litig.*, No. 1:02-CV-0844, 2002 WL 31988168, at \*6 (N.D. Ohio Nov. 7, 2002)
(rejecting stay for corporate defendant who claimed that stay pending resolution of parallel
criminal proceedings was necessary because individuals not party to the civil case "with the
necessary information" would assert the Fifth, explaining: "The Defendant corporations cannot,
however, use an individual's Fifth Amendment privilege to create a *de facto* Fifth Amendment
privilege for the corporations.").

*Smith* and *Birge* bear with particular force on this case. In *Birge*, a wrongful-death plaintiff
sued the individuals who killed the decedent and brought premises-liability claims against Dollar
General, where the killing occurred. 2005 WL 3448044 at \*1-2. The individuals were prosecuted
criminally and Dollar General moved to stay the civil case until the criminal defendants'
prosecutions concluded, on the ground that it could not obtain their testimony about their "mental
states in the moments preceding their attack," while they invoked the Fifth. *Id.* at \*4. The court
accepted that the testimony "may be relevant to Dollar General's defense," but held that Dollar

6

General's inability "to compel the criminal defendants to explain their mental state" did not justify a stay. *Id.* That was so, the court held, because Dollar General, the party seeking the stay, had no "Fifth Amendment rights . . . at risk of being undermined," and staying the case until the criminal defendants "completely exhaust their available appeals" would force the plaintiff to endure an "indefinite" delay. *Id.* at *3-4.

*Smith v. FirstEnergy Corp.* is *equally* instructive. There, corporate defendants facing no criminal charges sought a stay because "key witnesses" who had "been indicted" would "invoke their right to remain silent in response to civil discovery," allegedly "prejudicing [the defendants] by hindering their ability to defend themselves." 2021 WL 507881, at *3. The court saw the argument for what it was: "At first glance, Defendants' prejudice argument appears to be one of constitutional significance. But upon closer examination, Defendants' concern is less about self-incrimination and more about what discovery they will be able to receive from others." *Id.* That discovery concern, the court concluded, did not satisfy the particular form of prejudice cognizable under *E.M.A. Nationwide* (burdening the Fifth Amendment right due to the Hobson's choice). *Id.* The court denied the stay, finding that an open-ended stay of that kind "is tantamount to denying Plaintiffs their day in court." *Id.*

Other courts agree. *See In re Mid-Atl. Toyota Antitrust Litig.*, 92 F.R.D. 358, 359-60 (D. Md. 1981) (denying a stay sought on the ground that non-party employees would invoke the Fifth, because "the civil defendants are not subject to any criminal charges"); *Fid. Funding of Cal. v. Reinhold*, 190 F.R.D. 45, 52 (E.D.N.Y. 1997) ("Any use these corporate defendants may have made of individual defendant's exercise of the Fifth Amendment privilege is merely a windfall. They cannot . . . collect yet another windfall through a stay of any pre-trial proceedings."). Plaintiff has gathered similar authorities elsewhere. *See* ECF 556 at 14-15; ECF 575 at 5. Defendants make the

7

very argument that each of these courts have rejected: not that they risk self-incrimination, but that they would like to obtain discovery "from others" who are presently unavailable on the Fifth. *Smith*, 2021 WL 507881, at *3.

Municipal defendants enjoy no special dispensation from these principles: like any civil litigant, they may not freeze the case until a desired witness's Fifth Amendment privilege expires. Courts routinely require cities to proceed to summary judgment or stand trial on *Monell* claims while the officers who committed the alleged constitutional violation remain on the Fifth. *See Harris v. City of Chicago*, 266 F.3d 750 (7th Cir. 2001) (lifting stay and allowing *Monell* case to go to trial while defendant officer continued to invoke Fifth Amendment privilege); *Curtin v. Cnty. of Orange*, No. 8:16-cv-00591, 2017 WL 5625726 (C.D. Cal. Aug. 1, 2017) (drawing negative inference from police officer's Fifth Amendment invocation in *Monell* trial); *Bassett v. City of Burbank*, No. 2:14-CV-01348-SVW-CW, 2014 WL 12573395 (C.D. Cal. Nov. 14, 2014) (same).[2]

Recognizing that the *E.M.A. Nationwide* factors do not support it, the City asks the Court to set them aside and invoke its "inherent power" to stay cases as equity requires. City Br. 10. That, however, amounts to a concession that *E.M.A. Nationwide* teaches that relief that the City seeks is improper. *E.M.A. Nationwide* does not displace the Court's inherent authority; it directs how that authority is to be exercised when a stay is sought because of a parallel criminal proceeding. The City asks this Court to countermand controlling Sixth Circuit precedent because it does not yield the outcome it wants. The Court should decline that invitation.

---

[2] *See also First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978 (7th Cir. 2021) (discussing case below); *Wrice v. Burge*, No. 14 C 5934, 2020 WL 419419 (N.D. Ill. Jan. 27, 2020); *Rivera v. Guevara*, 319 F. Supp. 3d 1004 (N.D. Ill. 2018); *Lindsey v. City of Pasadena*, No. CV168602, 2018 WL 11249917 (C.D. Cal. Feb. 5, 2018); *Curtin v. Cnty. of Orange*, No. 816CV00591, 2017 WL 5625726, (C.D. Cal. Aug. 1, 2017); *Flagg v. City of Detroit*, 827 F. Supp. 2d 765 (E.D. Mich. 2011); *Thompson v. City of Chicago*, 722 F.3d 963 (7th Cir. 2013); *Evans v. City of Chicago*, 513 F.3d 735 (7th Cir. 2008) (discussing case below); *Harris v. City of Chicago*, 266 F.3d 750 (7th Cir. 2001) (same).

Finally, the City contends that Plaintiff "engineered the very procedural posture she now invokes," dismissing the officers as a "deliberate litigation strategy designed to deprive the City" of their testimony. City Br. 6-7. That claim is simply belied by the record. Plaintiff did not maneuver to try this case without the officers; she tried to keep them in it, repeatedly. In July 2025 she moved—over the City's opposition—to extend the schedule so the officers could be deposed after sentencing. *See* ECF 447; ECF 455. When that effort failed because the officers' convictions were vacated, Plaintiff moved to bifurcate her claims so the officers could remain parties. ECF 556. The City opposed that too, and the Court denied it. *See* ECF 595. Only then, with no other route to trial, did Plaintiff voluntarily dismiss the officers. *See* ECF 607. She did so, not to deprive the City of evidence, but because her stayed claims against the officers would otherwise prevent the entire case from going to trial. *Id.* The premise of the City's account is also irreconcilable with the City's own position at the time: for most of this litigation the City represented it did not need the officers' testimony and was ready for trial without it. Plaintiff cannot have deliberately stripped the City of testimony that the City itself consistently disclaimed any need for.

**B.      The Status of the Criminal Proceedings Weighs Against a Stay Because No Party to this Case has been Indicted, or Will Ever Face Criminal Exposure.**

The second *E.M.A. Nationwide* factor (whether there has been an indictment) points against a stay. The City argues this factor favors a stay because the criminal proceedings "remain active." City Br. 10. But this factor, like the first, measures the risk that a civil party will be forced to incriminate himself. That is why the factor turns on whether "a party to the civil case has already been indicted for the same conduct," as the City acknowledges. City Br. at 7. Again, no party here has been indicted, and the indicted officers are not parties. The City's sole authority, *Abdallah*, proves the point: there the civil defendants *were* the criminal defendants, and the stay protected their Fifth Amendment rights against simultaneous civil discovery. City Br. 10 (citing *United States Sec. &*

*Exch. Comm'n v. Abdallah*, 313 F.R.D. 59, 64 (N.D. Ohio 2016)). No such interest exists here. This factor weighs against a stay.

**C.       The Prejudice to Plaintiff Weighs Heavily Against a Stay Because the Delay Will Erode Plaintiff's Ability to Prove her Claims.**

A stay always burdens the plaintiff's "right to a determination of [her] rights and liabilities without undue delay." *Ohio Envtl. Council v. U.S. Dist. Ct.*, 565 F.2d 393, 396 (6th Cir. 1977). The party seeking the stay bears the burden of showing it "will not be immoderate in duration." *NTCH-W. Tenn, Inc. v. ZTE USA, Inc.*, 2014 WL 4444037, at \*2 (W.D. Tenn. Sept. 9, 2014) (quotations omitted). Defendants insist their stay clears that bar. They say it is of "limited duration," "bounded by specific events," and even "approaching a conclusion." City Br. 12; Hemphill/Smith Br. 7-8. It is not. The stay Defendants seek runs until the officers come off the Fifth, which will not occur until their criminal exposure is finally extinguished. As Plaintiff has explained, that is likely years away: the Government's appeal of the order vacating the convictions is not even fully briefed, and depending on the outcome of that appeal, the road runs through either sentencing or a complete retrial, successive appeals, and only then the resumed civil proceedings in this case—making a trial against the City improbable before 2028 or 2029. *See* ECF 556 at 3-7. The officers will remain on the Fifth the entire way. A conviction is not final for Fifth Amendment purposes until appeals are complete, *Mitchell v. United States*, 526 U.S. 314, 326 (1999), and the officers' own counsel represented that they will invoke the privilege "until it gets appealed to the Supreme Court." *See* May 11, 2026 Hr'g Tr., ECF 643 at 36:22-24. As the City concedes, the officers can be expected to invoke their Fifth Amendment rights "to the fullest extent." City Br. at 5-6.

Put simply, the proposed stay is certainly bounded by specific events—but nobody can say when those events will occur. The stay would lift only when the officers' criminal appeals conclude, a date no one can predict. A stay such as this, whose endpoint is tied to the culmination

10

of future potential trials and appeals, is indefinite in the literal sense—its endpoint is not defined or known. *See Landis v. North American Co.*, 299 U.S. 248 (1936) (holding that a stay lasting until a trial and subsequent appeals were concluded constitutes a stay "of indefinite duration"). And "indefinite stays are disfavored." *Birge*, 2005 WL 3448044, at *3; *Smith*, 2021 WL 507881, at *3. The City itself once said as much. Opposing the officers' original stay request, the City described a delay of exactly this kind as "indeterminate," warning that "no trial dates ha[d] been scheduled in any of [the officers'] criminal cases." ECF 76 at 7. With the convictions now vacated and no trial dates set, nothing about that assessment has changed.

The two "endpoint[s]" the City now proposes—that the Government will decline to retry the officers, or that they will waive their appeals, City Br. 12—are illusory. The Government is actively prosecuting its appeal and has shown zero indication it would drop its case on remand. And nothing suggests the officers will give up any avenue of appellate review. Again, their counsel have told the Court the opposite. *See, e.g.*, ECF 427 at 3 ("Even once the federal sentencing has occurred, Haley intends to seek appellate relief and a retrial.").

A lengthy, open-ended delay of the trial in this case will prejudice Plaintiff's case because the passage of time will degrade the evidence she has available to prove her *Monell* claims to a jury. "Delay is particularly harmful to a plaintiff when the risk of spoliation of evidence, failed memories, or witness unavailability is high," *Johnson v. Hamilton Cnty.*, No. 1:19-cv-329, 2020 WL 6479558, at *3 (E.D. Tenn. Feb. 26, 2020), and the risk is high here. Plaintiff must prove a years-long pattern of MPD-wide practices and deliberate indifference by MPD officials (based on use-of-force incidents dating back to 2015), and she must do so largely through live witnesses. Many of these witnesses are retired MPD officials whose memories will fade and who may relocate or die before trial. The City argues that Plaintiff has not identified which witness will be lost or

11

which document will go missing. City Br. 12. But no litigant can make that showing in advance, and courts do not require it. The Supreme Court has recognized that "delaying trial would increase the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts, or the possible death of a party." *Clinton v. Jones*, 520 U.S. 681, 707-08 (1997); *see also Schroeder v. Hess Indus., Inc.*, 2013 WL 2389489, at *1-2 (W.D. Mich. May 30, 2013) (the "inherent difficulties" of delay—that "witnesses' memories may fade, witnesses may relocate or become unavailable"—suffice to show prejudice, weighing against stay). The City is also in no position to demand such specificity. When it opposed the officers' stay at the outset of this case, the City pressed the very same generalized concern, warning that "discovery could become difficult due to the passage of time and the fading memory of witnesses," without naming a single witness. ECF 76 at 7.

The risk here is not hypothetical. Don Crowe—the second-highest-ranking official at MPD at the time of Mr. Nichols's beating, and a central *Monell* witness—is advanced in age and retired after decades of service. Each additional year of delay materially increases the risk that his account will be lost. And Kyle Coudriet, a fellow member of the officers' SCORPION team at the time of the beating and another key *Monell* witness, has already left MPD and relocated to Wyoming, beyond this Court's subpoena power. The longer the trial is postponed, the more Plaintiff's proof degrades.

The "balance of the hardships," *E.M.A. Nationwide*, 767 F.3d at 628, is not close. On one side is an indeterminate, multi-year delay imposed on a plaintiff whose case, after three years, is ready for trial; on the other, Defendants' wish for privileged testimony they have never specified, never shown to be necessary to their defense, and whose relevance they support with no authority

at all. *See infra* Part D. The degradation of Plaintiff's proof, together with her interest in resolving her claims, tips that balance decidedly against a stay.

**D.      The Fourth Factor Weighs Against a Stay Because Defendants Face No Cognizable Prejudice from Proceeding.**

The prejudice the fourth factor weighs must be "one of constitutional significance," and courts have rejected the very argument Defendants press here: that having a party's "access to key testimony and documents" "restricted" by a non-party's invocation of the Fifth warrants a stay until the criminal proceedings end. *See Smith*, 2021 WL 507881, at *3-4; *see also Birge*, 2005 WL 3448044, at *3-4; *Johnson*, 2020 WL 6479558, at *3. Defendants concede they face no burden on any Fifth Amendment right of their own. Their only asserted prejudice is the ordinary problem that litigants confront for all manner of reasons: a witness who will not or cannot testify. Defendants have offered no case granting a stay until the close of related criminal proceedings because a non-party witness invoked the Fifth or indeed because a non-party was unavailable for any reason at all (whether because a witness has died, moved beyond the subpoena power, is evading service, or has invoked a privilege).

The hardship Defendants assert—their inability to obtain the officers' testimony—is not cognizable for a further reason: the testimony lies outside the scope of permissible discovery. Discovery reaches only "nonprivileged matter," Fed. R. Civ. P. 26(b)(1), and by the City's own account the officers' invocation of the privilege is a "certainty." City Br. 6. Defendants thus ask the Court to freeze this case indefinitely to preserve a future chance at evidence the Rules place beyond their reach today. A litigant is not prejudiced by the unavailability of evidence it has no right to obtain in discovery. Because the prejudice Defendants assert is neither constitutional nor even discoverable, they bear the full weight of the movant's burden—to show a "pressing need for delay." *E.M.A. Nationwide*, 767 F.3d at 627. They have not.

13

The City lists categories of subject matter it would like to explore with the officers, but identifies no specific testimony it expects from any officer. More to the point, it identifies no authority that any of this is relevant to a *Monell* defense. Taken one by one, the categories confirm that the officers' testimony is neither necessary nor, in many instances, even admissible.

***What force was used.*** The City says the case "turn[s] on what force was used." City Br. 8. But the force the officers used against Mr. Nichols is captured, blow by blow, on body-worn and pole-camera video. The officers' subjective recollection of the beating adds nothing the footage does not already show.

***Whether the force was excessive.*** "The reasonableness of the use of force is evaluated under an 'objective' inquiry." *Cnty. of Los Angeles, Calif. v. Mendez*, 581 U.S. 420, 428 (2017). An officer's "subjective state of mind is irrelevant to [a] federal excessive-force claim" and indeed, is not even admissible. *Helfrich v. Lakeside Park Police Dep't*, 497 F. App'x 500, 508 (6th Cir. 2012); *see also Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 405 (1997) ("Section 1983 itself contains no state-of-mind requirement independent of that necessary to state a violation of the underlying federal right." (quotations omitted)).

***Whether the conduct was consistent with training and policy.*** The City says it must ask the officers "what they were trained to do, what directives they received, and why they departed from them." City Br. 13; *see id.* at 19-20. But the City has already determined that the officers' conduct was not consistent with MPD policy or training. After the beating, the City investigated the incident, questioned each officer about his conduct, and terminated all five for using excessive force in violation of MPD policy and training. *See* ECF 556 at 12-13; ECF 556-2 (MPD press release stating: "After a thorough review of the circumstances surrounding this incident, we have determined that five (5) MPD officers violated multiple department policies, including excessive

14

use of force, duty to intervene, and duty to render aid."). The officers' own accounts are already in the City's hands, in the lengthy *Garrity* statements they gave in response to that questioning, which will be admissible at trial. *See* ECF 633 at 18; ECF 556 at 12-15. The City's attempt to discount those statements does not withstand scrutiny. It calls them of "little evidentiary value" because they were "taken in the immediate aftermath of the incident and were not subject to cross-examination." City Br. 15. But statements given before any opportunity for coordination or memory loss are, if anything, more reliable, not less—and the objection that they went untested by cross-examination is curious, since it was the City that conducted the questioning. In any event, Plaintiff does not contend the beating complied with official MPD policy, and, as explained below, an officer's subjective reasons for departing from training and policy do not bear on *Monell* liability.

**Whether the conduct reflected a pattern or practice.** This is the core of a *Monell* claim, and the core of the City's error. The City says it needs the officers to explain "why they departed from" their training, "whether supervisory failures contributed to the use of force," and "whether the City's customs enabled the conduct"—in short, "why they did what they did." City Br. 13, 15, 20. But that is an inquiry into the officers' subjective state of mind, and under *Monell,* that question is simply irrelevant. A *Monell* plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences," and that the municipality's deliberate indifference "was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 404, 407 (quotations omitted).

Both deliberate indifference and causation are objective inquiries. As the Supreme Court has explained, *Monell*'s "deliberate indifference" element is an "objective" inquiry, "permitting liability to be premised on obviousness or constructive notice." *Farmer v. Brennan*, 511 U.S. 825,

15

841 (1994). *Monell*'s "moving force" causation element is likewise an objective inquiry that focuses on the subjective mental state of the officers committing the underlying act, but rather on whether the City's deliberate indifference made the constitutional violation foreseeable. *See Brown*, 520 U.S. at 409-10 (noting that a "high degree of predictability" from a pattern of violations "support[s] an inference of causation"); *Ling v. Campbell Cnty., Tennessee*, No. 3:20-CV-233, 2024 WL 4004987, at *8 (E.D. Tenn. Jan. 5, 2024) (the constitutional violation "must have been a foreseeable result from the lack of training.").

In short, *Monell* causation looks to the foreseeable consequences of the knowledge and indifference municipal policymakers given a pattern of incidents, *not to* the subjective minds of its officers. As courts have recognized, where a department tolerates repeated excessive force, as Plaintiff alleges MPD did here, it is "reasonably foreseeable" that its officers will be "embolden[ed]" to use excessive force again, such that a jury may infer that the City's failure to investigate and discipline "led the [o]fficers to believe that they would not be sanctioned," as others had not been before. *Kalvitz v. City of Cleveland*, 2017 WL 6805678, at *11 (N.D. Ohio Oct. 16, 2017), *aff'd*, 763 F. App'x 490 (6th Cir. 2019). What particular officers might have been thinking during the event in question simply does not enter this causation picture. *Monell* turns on what the City's policymakers tolerated and failed to remedy. The officers' subjective explanations of "why they did what they did" does not illuminate that question—which is why the City, even as it calls their testimony "essential," City Br. 6, cites no *Monell* decision suggesting that it is.

\* \* \*

Across every category, the City cites not one decision holding such testimony relevant to a *Monell* claim or defense. Nor does the City give any reason to believe the officers' testimony, if it ever came, would help the City rather than harm it. As courts have recognized, this undermines

the showing of prejudice and cuts against a stay. *See Birge*, 2005 WL 3448044, at *4 ("[T]here is simply no indication whether the unavailable evidence . . . will be favorable or unfavorable."); *accord IO Products Co. v. Onyx Corp.*, 48 F. App'x 107 (5th Cir. 2002). The City thus asks the Court to freeze this case, with no end in sight, to await testimony it cannot specify, cannot show it needs, and cannot even how it will help its defense.

The City's theory of prejudice based on possible adverse inferences fares no better. It argues that if the officers invoke the Fifth, their silence could be imputed to the City as an adverse inference. City Br. 14. But that is the ordinary way *Monell* cases proceed with officers on the Fifth, and the City must bear it like any other litigant. *See supra* Part A.

Finally, the City says it must probe whether Martin and Mills testified truthfully at the criminal trial. City Br. 19-20. That is testimony the City will never obtain, as Plaintiff has previously explained. ECF 633, Pl.'s Opp. Br. 16-17. Both men remain exposed to perjury prosecution for any departure from their prior trial testimony, and so retain the Fifth Amendment privilege as to it indefinitely. *See United States v. Perkins*, 138 F.3d 421, 425 (D.C. Cir. 1998). The City does not address this point, and so concedes it. The concession is fatal. A party seeking a stay must show that it "will not be immoderate in duration," *NTCH-W. Tenn, Inc. v. ZTE USA, Inc.*, 2014 WL 4444037, at *2 (W.D. Tenn. Sept. 9, 2014), and a stay to await testimony that will never come is immoderate by definition.

The individual defendants' prejudice argument fails as well. Smith says he needs the officers' testimony to explain why he did not lie to Mr. Nichols's mother about her son's condition; Hemphill says he needs it to show that his own use of force was reasonable in light of what Martin and Haley told him at the scene. Hemphill/Smith Br. 6-7, 9. But each man knows what he was told and what he saw, and can testify to it himself. The statements the officers made to Smith and

Hemphill are not hearsay because they would not be offered for their truth, only to show what each knew. Smith's knowledge of Mr. Nichols's condition, moreover, did not depend on what others told him; he saw and interacted with Mr. Nichols himself. And their conduct is captured on body-worn camera, as they concede. Hemphill/Smith Br. 9. Hemphill's and Smith's "[p]ersonal knowledge and the . . . extensive discovery already produced . . . should enable them to testify accurately." *In re FirstEnergy Corp. Sec. Litig.*, 2023 WL 3728062, at *5 (S.D. Ohio May 19, 2023) (denying stay under *E.M.A. Nationwide*, and rejecting movants' argument that pending criminal proceedings made them "unable to obtain" certain "necessary" evidence). If anything, the officers' silence *helps* Hemphill and Smith: with no one to contradict their account of what they were told, they may testify to it unchallenged. They cannot be prejudiced by that.

### E.    The Interests of the Courts Weigh Against a Stay.

Where the party seeking a stay faces no criminal charges, as is the case here, the court's interests weigh against a stay. That is because there is no countervailing "interest in upholding the rights of one who is criminally accused" to set against the court's "interest in expeditiously resolving the cases on its docket." *Smith*, 2021 WL 507881, at *4. The court has an "obligation to move its docket, and not let cases languish." *Birge*, 2005 WL 3448044, at *5; *see also E.M.A. Nationwide*, 767 F.3d at 628 (court must weigh "the economical use of judicial time and resources"). The City responds that a stay serves the Court's interest in "a complete record." City Br. 18. But that merely begs the question: the officers' privileged testimony is not discoverable, *see supra* Part D, and the courts have no interest in an open-ended delay of a trial, likely for years, to await evidence the Rules of Civil Procedure place out of bounds.

### F.    The Public Interest Weighs Against a Stay.

"The public interest is furthered where individuals' injuries are remedied in a timely manner." *E.M.A. Nationwide*, 767 F.3d at 628. That interest is at its height here. "The public has

18

an interest in the expeditious resolution of claims concerning the government's abuse of power and violation of core rights." *Johnson*, 2020 WL 6479558, at *3. Here, the people of Memphis have a strong stake in the prompt resolution of claims that their city's police department engaged in a pattern of unconstitutional force to which City officials were deliberately indifferent. An indeterminate stay of a case imbued with such public significance "weighs strongly against staying the case." *Id.* (denying stay under *E.M.A. Nationwide* in case against municipality alleging police officers' constitutional violations). The City says the public is better served by a "brief delay." City Br. 18. But the delay it seeks is not brief. It is open-ended and likely measured in years. *See supra* Part C. The City said it best at the outset of this case: "the tax paying citizens of Memphis are best served by having the civil lawsuit resolved expeditiously." ECF 76 at 9.

## CONCLUSION

For the foregoing reasons and those set out in Plaintiff's prior opposition brief (ECF 633), Plaintiff respectfully requests that the Court deny Defendants' requested stay and enter a new scheduling order charting the path to trial.

Dated:  June 2, 2026                                    Respectfully submitted,

*/s/ Joshua M. Levin*
Antonio M. Romanucci* (Ill. Bar No. 6190290)
Sarah Raisch* (Ill. Bar No. 6305374)
Joshua M. Levin* (Ill. Bar No. 6320993)
Stephen H. Weil* (Ill. Bar No. 6291026)
Sam Harton* (Ill. Bar No. 6342112)
Colton Johnson Taylor* (Ill. Bar No. 6349356)
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark St., Ste. 900
Chicago, IL 60654
P: (312) 458-1000
aromanucci@rblaw.net
sraisch@rblaw.net
jlevin@rblaw.net
sweil@rblaw.net
sharton@rblaw.net

19

cjohnson@rblaw.net

David L. Mendelson (Tenn. Bar No. 016812)
Benjamin Wachtel (Tenn. Bar No. 037986)
**MENDELSON LAW FIRM**
799 Estate Place
Memphis, TN 38187
+1 (901) 763-2500 (ext. 103), Telephone
+1 (901) 763-2525, Facsimile
dm@mendelsonfirm.com
bw@mendelsonfirm.com

Benjamin Crump (Tenn. Bar No. 038054)
Brooke Cluse* (Tex. Bar No. 24123034)
**BEN CRUMP LAW, PLLC**
717 D Street N.W., Suite 310
Washington, D.C. 20004
+1 (337) 501-8356 (Cluse), Telephone
court@bencrump.com
brooke@bencrump.com

*Attorneys for Plaintiff*

* Admission *pro hac vice*

20