**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| ROWVAUGHN WELLS, Individually and as Administratrix of the Estate of Tyre Deandre Nichols, Deceased | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2:23-cv-02224-SHL-atc |
| THE CITY OF MEMPHIS, TENNESSEE, PRESTON HEMPHILL, and DEWAYNE SMITH, | ) ) ) ) | |
| Defendants. | ) | |

**ORDER DENYING MOTION TO STAY CASE**

This Order addresses a single question: are the remaining Defendants in this matter, that is the City of Memphis, Preston Hemphill, and DeWayne Smith, entitled to a stay while the Parties wait for the conclusion of the criminal proceedings against the previously named, and now dismissed, Defendants?

As explained below, the Court finds that matter should not be stayed, thus the City of Memphis's Motion to Amend Scheduling Order (ECF No. 611), is **DENIED**.

**RELEVANT BACKGROUND**

The facts of this case have been articulated in multiple previous orders. (See, e.g., ECF Nos. 110, 484.) Relevant here, this is a lawsuit brought by Plaintiff RowVaughn Wells, individually and as administatrix ad litem of the estate of Tyre Deandre Nichols, her son, who died on January 10, 2023, three days after he sustained injuries at the hands of several Memphis Police Department officers following a traffic stop by members of the Memphis Police

Department's Street Crimes Operation to Restore Peace in Our Neighborhoods unit.  (ECF No. 277 at PageID 3162–68.)

Wells's original and amended complaints include claims against the City of Memphis, Police Chief Cerelyn Davis, Emmitt Martin III, Demetrius Haley, Justin Smith, Desmond Mills, Jr., Tadarrius Bean, Preston Hemphill, Robert Long, JaMichael Sandridge, Michelle Whitaker, and DeWayne Smith.  (See ECF Nos. 1, 277.)  Martin, Haley, Justin Smith, Mills, and Bean (the "Indicted Officers") were criminally charged based on the role they played in Nichols's death. See United States of America v. Martin III, et al., Case No. 2:23-cr-20191-SHL (W.D Tenn.) ("Criminal Matter").  Early in these proceedings, the Court stayed discovery against the Indicted Officers based on their Fifth Amendment right against self-incrimination.  (ECF No. 110.)

Mills pleaded guilty in the Criminal Matter on November 2, 2023 (Criminal Matter, ECF No. 92), and Martin did so on August 23, 2024 (Criminal Matter, ECF No. 500).  Bean, Haley, and Justin Smith proceeded to a jury trial, which began on September 9, 2024.  (Criminal Matter, ECF No. 561.)  On October 3, 2024, the jury returned verdicts, finding Bean and Justin Smith guilty of one count of obstruction of justice, and Haley guilty on all four counts, including charges related to excessive force and failure to intervene, deliberate indifference, conspiracy, and obstruction of justice.  (Criminal Matter, ECF No. 627.)  On August 28, 2025, the Court entered an Order Granting Motions for New Trial.  (Criminal Matter, ECF No. 919.)  The United States of America appealed that Order to the Sixth Circuit Court of Appeals on September 23, 2025.  (Criminal Matter, ECF No. 946.)  That appeal remains pending before the Sixth Circuit.

In a September 30, 2025 Order, the Court denied Davis's motion to dismiss based on qualified immunity.  (ECF No. 484.)[1]  When Davis appealed that Order (ECF No. 507), the Court entered an Order staying the case against her, as required (ECF No. 510).

Plaintiff, confronted with the prospect of an indefinite stay and eager to proceed with her case, sought to dismiss her claims against the Indicted Officers, as well as Davis, whose appeal was pending before the Sixth Circuit.  (See ECF Nos. 607, 608.)  Plaintiff argued that "the criminal proceedings are likely to drag on for years, meaning that the Fifth Amendment stay in this case will too," so "keeping the criminally-stayed Defendant Officers in this case would prevent Plaintiff from trying her claims against the City this November, and likely for years after that."  (ECF No. 607 at PageID 9229.)

The Court granted the motion to dismiss the claims against the Indicted Officers (ECF No. 619), and entered an indicative ruling under Federal Rule of Civil Procedure 62.1 that explained that it would dismiss with prejudice Plaintiff's claims against Davis if the Sixth Circuit dismissed the police chief's qualified immunity-based appeal then pending before it (ECF No. 626).  On July 1, 2026, the Sixth Circuit dismissed Davis's appeal, and remanded the case to this Court to follow through on its indicative ruling.  (ECF No. 659.)  The same day, the Court entered an Order Dismissing Davis with Prejudice.  (ECF No. 661.)

Against the backdrop of Plaintiff seeking dismissal of all of the Defendants against whom discovery had been stayed, the City filed a motion seeking various forms of relief, including amending the schedule to include a stay.  (ECF No. 611.)  In the Motion, the City argues that "[t]he most fundamental obstacle confronting the City are the Fifth Amendment protections for

---

[1] That Order did, however, grant the motion to dismiss the claims against Long, Sandridge, and Whitaker.

Defendants Haley, J. Smith, Martin, Mills, and Bean . . .[,] which prevent the City from taking meaningful discovery from these individuals—whether they are parties and protected by the current stay or as non-parties protected by the Fifth Amendment during the pendency of their criminal case, should they be dismissed." (Id. at PageID 9365.)  According to the City, the testimony of those individuals is essential for it to fashion its defense against Plaintiff's Monell claim.[2]

Wells responds that "the City's request to stay this litigation until the officers finally come off the Fifth—at an unspecified time years in the future . . . is literally unprecedented." (ECF No. 633 at PageID 9744.)  She argues that such a request is not supported by the law, and is inconsistent with the positions that the City has previously advanced in this litigation.  (Id. at PageID 9745–46.)  Wells argues that a stay is not warranted when the Court considers the factors governing stays in the Sixth Circuit laid out in F.T.C. v. E.M.A. Nationwide, Inc., 767 F.3d 611 (6th Cir. 2014), which the City fails to address in its motion to amend the schedule.

The Court conducted a status conference on May 11, 2026.  (ECF No. 638.)  At that conference, the Court explained that determining whether the matter should be stayed pending the outcome of the criminal proceedings would necessitate additional briefing regarding the E.M.A. Nationwide factors, as well as details as to what specific discovery the City requires from the Indicted Officers.  On May 26, Defendants Hemphill and DeWayne Smith filed their

---

[2] Establishing a municipality's liability for a constitutional violation "implicates the familiar principles set forth in Monell v. Department of Social Services," which requires a plaintiff to demonstrate both that a constitutional violation occurred and the governmental entity is responsible for that violation.  Graham ex rel. Est. of Graham v. Cnty. of Washtenaw, 358 F.3d 377, 382 (6th Cir. 2004) (citing Monell, 436 U.S. 658, 694 (1978)); Doe v. Claiborne Cnty., 103 F.3d 495, 505–06 (6th Cir. 1996).

brief (ECF No. 646), as did the City of Memphis (ECF No. 647[3]).  Wells filed her brief on June

2, 2026.  (ECF No. 649.)  With leave of Court, the City filed a reply on June 9.  (ECF No. 654.)

## APPLICABLE LAW

"The power to stay proceedings is incidental to the power inherent in every court to

control the disposition of the causes in its docket with economy of time and effort for itself, for

counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion

of the District Court."  E.M.A. Nationwide, 67 F.3d at 626–27 (quoting Ohio Env't Council v.

U.S. Dist. Court, S. Dist. of Ohio, E. Div., 565 F.2d 393, 396 (6th Cir. 1977)).  "[A] stay of civil

proceedings due to a pending criminal investigation is an extraordinary remedy."  Id. at 627

(citation omitted).  At the same time, "simultaneous criminal and civil cases involving the same

or closely related facts may give rise to Fifth Amendment concerns sufficient to warrant a stay of

the civil proceedings."  Chao v. Fleming, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007).

When determining whether to stay the civil proceedings in such circumstances, courts in

the Sixth Circuit consider the following factors:

> 1) the extent to which the issues in the criminal case overlap with those presented
> in the civil case; 2) the status of the case, including whether the defendants have
> been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously
> weighed against the prejudice to plaintiffs caused by the delay; 4) the private
> interests of and burden on the defendants; 5) the interests of the courts; and 6) the
> public interest.

E.M.A. Nationwide, 767 F.3d at 627 (quoting Chao, 498 F. Supp. 2d at 1037).  "The third and

fourth factors require courts to 'balance the private interests of the parties against the potential

prejudice faced by each.'"  Almeyda v. Wooster Motor Ways, Inc., No. 3:25-CV-00085-RGJ-

---

[3] The City identified three broad categories of testimony that it needs from the officers:
the officers' training, knowledge of MPD policy, and directives received; the credibility and
circumstances of Martin's and Mills's criminal trial testimony; and testimony relevant to the
defenses of co-Defendants Hemphill and Smith.  (Id. at PageID 10054–56.)

LLK, 2025 WL 1679528, at *3 (W.D. Ky. June 13, 2025) (citation omitted).  Courts also "should

consider the extent to which the defendant's fifth amendment rights are implicated."  Id. (citing

E.M.A. Nationwide, 767 F.3d at 627).

"[T]he burden is on the party seeking the stay to show that there is pressing need for

delay, and that neither the other party nor the public will suffer harm from entry of the order."

E.M.A. Nationwide, 767 F.3d at 627–28 (quoting Ohio Env't Council, 565 F.2d at 396); see also

James v. Thomas, No. 1:24-CV-00061, 2025 WL 1392156, at *3 (W.D. Ky. May 14, 2025)

(defendants bear the burden of proving that "'the non-moving party will not be injured by the

stay'")  (quoting IBEW, Local 2020 v. AT&T Network Sys., 879 F.2d 864 (Table), 1989 WL

78212, at *8 (6th Cir. July 17, 1989).  Although the balance of the hardships is the most

important factor, courts "must also consider whether granting the stay will further the interest in

economical use of judicial time and resources."  E.M.A. Nationwide, 767 F.3d at 628 (quoting

Int'l Bhd. of Elec. Workers v. AT & T Network Sys., 879 F.2d 864, 1989 WL 78212, at *8 (6th

Cir. Jul. 17, 1989)).

## ANALYSIS

As the following analysis provides, all of the E.M.A. Nationwide factors cut in Plaintiff's

favor.  Each of the factors is addressed below.

A.  The Overlap of the Issues in the Criminal Case and the Civil Case

The first E.M.A. Nationwide factor turns on an analysis of what impact, if any,

Plaintiff's dismissal of the Indicted Officers has on Defendants' request for a stay.  Before the

Indicted Officers were dismissed from the case at Plaintiff's request, the City asserted that "the

Fifth Amendment protections for the Stayed Defendant Officers create an externally imposed

constitutional barrier that prevents it from obtaining the individualized discovery necessary to

6

rebut Plaintiff's expert causation opinions and defend against the <u>Monell</u> claims." (ECF No. 611

at PageID 9369.) Now that the Indicted Officers have been dismissed, the City contends that the

question that needs to be answered as to the first <u>E.M.A. Nationwide</u> factor is not whether there

is overlap among the parties in the criminal and civil suits, but rather whether there is overlap

among the issues. (ECF No. 647 at PageID 10038–45; <u>see also</u> ECF No. 646 at PageID 10029

(the individual Defendants explain that "[t]here can be no dispute that there is substantial overlap

of the issues presented in the civil and criminal cases, as both cases result from the same incident

and the same misconduct involving an encounter between Nichols and members of the MPD on

December 7, 2023," and that DeWayne Smith and Hemphill require the testimony of the Indicted

Officers to mount their defense).) Because the issues and the subject matter are the same in this

case and the criminal matter, the City asserts that the first factor favors them, even in the absence

of precise party overlap.

The City argues that the overlap factor favors it for an additional reason: the <u>E.M.A.

Nationwide</u> factors are an equitable framework, and Plaintiff should not be allowed to benefit

from "engineer[ing] the very procedural posture she now invokes." (ECF No. 647 at PageID

10041.) The City asserts that to allow Plaintiff to benefit from dismissing the Indicted Officers

from her complaint "would be to allow a party to use the Federal Rules to dictate the terms of her

opponent's defense," an outcome that is "fundamentally unfair." (<u>Id.</u> at PageID 10042.) The

City contends that, ultimately, the Court's inherent power to stay proceedings in these

circumstances "is not limited to cases involving overlapping parties," instead, "it extends to any

situation in which proceeding would be inequitable or inefficient." (<u>Id.</u> at PageID 10045.)

Wells counters that the first factor favors her because the termination of the Indicted

Officers means that there is no risk that they will be forced to incriminate themselves in civil

discovery, and because this factor "does not ask, in the abstract, whether the civil and criminal cases concern the same events.  It asks that question for a particular reason with specific constitutional implications: the degree of overlap measures the risk that a person who is a party to the civil case and a related criminal proceeding will be forced to incriminate himself in civil discovery."  (ECF No. 649 at PageID 10065.)  Ultimately, Wells argues that "[n]one of the remaining Defendants in this case face that dilemma, and so the overlap factor cuts decisively against a stay."  (Id.)

The cases that the Parties rely on to argue this factor reveal that it favors Plaintiff.  It is true, as the City points out, that party overlap is not a prerequisite to finding a stay is warranted when considering the first factor, as "[t]he text of the factor directs the court's attention to subject matter—not to the caption of the respective proceedings."  (ECF No. 647 at PageID 10039.)

Nevertheless, as the authorities Plaintiff cites reveal, the degree to which civil and criminal matters overlap is typically viewed through the lens of whether the parties to the civil case have been indicted in the criminal case, and therefore would have to face the choice of whether to invoke the Fifth Amendment in the civil proceedings to protect their liberty interests in the criminal proceedings, while running the risk of losing the civil case.  See In re Scrap Metal Antitrust Litig., No. 1:02-CV-0844, 2002 WL 31988168, at *6 (N.D. Ohio Nov. 7, 2002) (rejecting the defendants' argument against proceeding with discovery because it was asking the court "to create a Fifth Amendment right for the Defendant corporations.  The Defendant corporations cannot, however, use an individual's Fifth Amendment privilege to create a de facto Fifth Amendment privilege for the corporations.") (citing United States v. Kordel, 397 U.S. 1, 8 (1970)); Smith v. FirstEnergy Corp., No. 2:20-CV-3755, 2021 WL 507881, at *4 (S.D. Ohio

8

Feb. 11, 2021) (explaining that the common thread in cases where stays were granted was where an indicted defendant was confronted "with an untenable choice—waiving their Fifth Amendment rights to try to win the civil case or taking the Fifth and potentially losing the civil case"); Almeyda, 2025 WL 1679528, at *3 (finding that the claims in the civil action and the criminal action overlapped, but that fact supported a stay in the proceedings only for the defendant in the civil case who was also facing criminal prosecution).

Although counsel for some of the Indicted Officers have suggested that they will invoke the Fifth Amendment if called to testify in the civil case, courts in the Sixth Circuit have routinely denied the relief Defendants seek here, that is, "where a civil defendant that was not a party to the parallel criminal case sought to stay the civil case until the criminal proceedings ended, so that it could obtain testimony from a criminal defendant on the Fifth." (ECF No. 649 at PageID 10067.)

So, in Smith, the defendants who were not parties to the corresponding criminal case sought to defer discovery until after the related criminal case was resolved. The defendants explained that many key witnesses had been indicted and the defendants anticipated that their access to key testimony and documents would be restricted, and would prejudice them by "hindering their ability to defend themselves." 2021 WL 507881, at *3. The court explained that, "[a]t first glance, Defendants' prejudice argument appears to be one of constitutional significance. Indeed, they rely heavily on the Fifth Amendment, and courts often stay a civil case where the defendant 'may be compelled to answer questions in the civil case that he would have the right to refuse to answer in the criminal case.'" 2021 WL 507881, at *3 (quoting Coats v. Grand Blanc Cmty. Schs., No. 18-CV-12162, 2018 WL 6321916, at *2 (E.D. Mich. Dec. 3, 2018).) Yet, the court concluded that, "upon closer examination, [d]efendants' concern is less

9

about self-incrimination and more about what discovery they will be able to receive from others." Id. Ultimately, in that case, as here, there was not overlap of the defendants, and thus none faced the "untenable choice" of "waiving [his] Fifth Amendment rights to try to win the civil case or taking the Fifth and potentially losing the civil case." Id.

A case from this district took a similar approach. See Birge ex rel. Mickens v. Dollar Gen. Corp., No. 04-2531 BP, 2005 WL 3448044, at *1 (W.D. Tenn. Dec. 14, 2005), aff'd, 2006 WL 3858042 (W.D. Tenn. Dec. 28, 2006). There, the defendant, Dollar General, sought to stay all proceedings in the case, which involved a shooting death of a customer at one of its Memphis locations. A family member of the decedent sued Dollar General for failing to prevent the shooting. Dollar General sought to stay the civil proceedings during the pendency of the criminal cases against the three men who were arrested and charged in the shooting. The court found that, although there was overlap of issues between the criminal and civil proceedings, and that the testimony of the accused shooters may be relevant to Dollar General's defense, the inability of Dollar General to compel the criminal defendants to explain their mental states in the moments preceding the shooting did not warrant a stay.[4]

Ultimately, it bears repeating that, even if the Indicted Officers were still parties to the civil case, it would not automatically follow that the case would need to be stayed pending the resolution of the Criminal Matter. See E.M.A. Nationwide, 67 F.3d at 627 ("[A] stay of civil

---

[4] Wells cites to additional out-of-circuit cases that she suggests show that courts "routinely require cities to proceed to summary judgment or stand trial on Monell claims while the officers who committed the alleged constitutional violation remain on the Fifth." (ECF No. 649 at PageID 10069 (collecting cases).) Those cases are largely distinguishable for the reasons the City articulated in its reply (see ECF No. 654), including that the parties in at least one of the civil cases actually had discovery from the corresponding criminal case. See, e.g., First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago, 988 F.3d 978 (7th Cir. 2021). Although those cases do little to advance Plaintiff's arguments and, in any case, have no precedential value, it does not change the analysis of the first factor.

proceedings due to a pending criminal investigation is an extraordinary remedy."); In re Scrap

Metal Antitrust Litig., 2002 WL 31988168, at *6 ("Indeed, 'a defendant has no absolute right not

to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment

privilege.'") (quoting Keating v. Office of Thrift Supervision, 45 F.3d 322, 326 (9th Cir. 1995));

Birge, 2005 WL 3448044, at *4 (same).  Here, although the issues in the civil and criminal cases

overlap, that overlap, absent any Fifth Amendment concerns for the participants who remain in

the civil case, tends to counsel against a stay.

The analysis applies to the City as well as the individual Defendants.  Hemphill and

DeWayne Smith assert that deposition testimony from the Indicted Officers is essential to their

defense.  DeWayne Smith asserts that establishing what he knew and when he knew it is critical

to his defense, and, because much of Hemphill's conduct relied on the information Martin and

Haley provided to him, he asserts that the testimony of those officers is also essential to his

defense.  (ECF No. 646 at PageID 10029–30.)

However, to characterize the testimony as critical overstates its importance.  DeWayne

Smith and Hemphill can testify as to precisely those facts.  Although it makes sense that each

would welcome testimony from the Indicted Officers that corroborates their version of events, it

is not clear if that testimony would be forthcoming, even after a stay is exhausted.  And, in any

event, the absence of such potentially corroborating testimony does not represent the sort of

extraordinary circumstances that would warrant staying the proceedings.

In addressing the overlap of the issues, along with the remaining E.M.A. Nationwide

factors, the Court also cannot ignore the stance that the City has embraced throughout these

proceedings, which contradicts the relief it now seeks.  As Wells points out, when several of the

officers invoked the Fifth Amendment to argue to stay the case early in June 2023, the City

opposed the stay, and alternatively argued for a limited one if the Court determined a stay was necessary.  (See ECF No. 76.)  The City's arguments there echo many of the arguments Wells is making now.  The City argued then that because Hemphill and DeWayne Smith "were not indicted, and no charges were brought against them, they have no pending criminal case to overlap with this civil action."  (ECF No. 76 at PageID 701.)  The City explained that "[s]ome courts have expressed that, where a defendant filing a motion to stay has not been indicted, the motion may be denied on that ground alone."  (Id. (citing State Farm Mut. Auto. Ins. Co. v. Beckham–Easley, No. Civ. A. 01–5530, 2002 WL 31111766, at *2 (E.D. Pa. Sept. 18, 2002).)

Although the posture of the case was certainly different in 2023 than it is today—the criminal trial has been held, the order granting the motion for a new trial was granted and appealed, and vast discovery has been conducted—the City took a similar position as recently as December 2025.  (See ECF No. 649 at PageID 10064 (citing ECF No. 525 at PageID 8286–87).)  At that point, the City argued that if Wells wanted to depose the Indicted Officers, those depositions must count against the thirty that she was allotted and that she otherwise should not be allowed later to move for additional depositions.  According to the City, allowing Plaintiff to expand her deposition allotment to include the Indicted Officers "would significantly increase the burden of litigation, disrupt City operations, and impose unnecessary strain on public resources.  It would also unnecessarily prolong litigation that has already involved over two years of extensive discovery."  (ECF No. 525 at PageID 8286.)  In other words, at that point, the City was comfortable with discovery closing without any depositions of the stayed Defendants. The City does not deny that it has now changed its position, but asserts that even if its prior litigation posture were relevant, that "does not relieve the Court of its obligation to assess the actual burden the party faces at the time the stay is sought."  (ECF No. 647 at PageID 10050.)

12

Indeed, the fact that the City on multiple previous occasions sought to proceed without the discovery it now asserts it needs may not forestall it from articulating a different position now, but it undermines its arguments that the issue overlap factor weighs in its favor, and, for that matter, multiple additional factors as described below.  It is true, after all, as the City points out, that the E.M.A Nationwide factors are an equitable framework.[5]

The first factor weighs in Plaintiff's favor.

B.  Status of the Criminal Case

The City asserts that circumstances such as these, where criminal proceedings remain active, are "precisely the situation in which courts are most cautious about permitting parallel civil proceedings to advance." (ECF No. 647 (citing  S.E.C. v. Abdallah, 313 F.R.D. 59, 64 (N.D. Ohio 2016).)  DeWayne Smith and Hemphill similarly argue that, in spite of the dismissal of the Indicted Officers from this case, they remain necessary witnesses.  (ECF No. 646 at PageID 10031.)  So, they assert that, while the now-dismissed Defendants "will not be subjected to any negative inference from their pleading the Fifth," the remaining Defendants here "will suffer the negative inference as they are prevented from fully defending themselves."  (Id.)

Wells counters that the second factor is concerned with "the risk that a civil party will be forced to incriminate himself," which is "why the factor turns on whether a party to the civil case has already been indicted for the same conduct."  (ECF No. 649 at PageID 10070.)  She asserts

---

[5] The Court is also not persuaded by the City's argument that it would be unfair to make it proceed without a stay based on the fact that Wells should not be able to benefit by the current procedural posture of the case that she engineered through her dismissal of Davis and the Indicted Officers.  But Wells has asserted that the dismissal of those Parties was based on an interest in proceeding with the case as quickly as possible and, as the Court previously explained, it is "guided by the maxim that the plaintiff is the 'master of his complaint,' and . . .  the Court should not force Plaintiff to prosecute a suit against Defendants which Plaintiff does not wish to pursue."  (ECF No. 619 at PageID 9577 (quoting Yandell Constr. Servs., Inc. v. LMR Constr., LLC, No. 1:17-cv-01037-JDB-egb, 2018 WL 4375112, at *4 (W.D. Tenn. Sept. 13, 2018)).)

13

that this factor weighs in her favor because neither of the Defendants who remain in the civil case has been indicted and the Indicted Officers are no longer parties, therefore there is no risk that a party will be forced to incriminate himself in this case.

There is no suggestion that DeWayne Smith and Hemphill may someday be indicted in the criminal matter, and they do not argue as much. Although the criminal and civil cases obviously deal with the same facts, the complete absence of any indicted individual from the civil case renders the status of the criminal case of marginal relevance.[6]

Neither the City nor the individual Defendants identify any cases with similar fact patterns as here, that is, where the ongoing criminal proceedings are against parties who have been dismissed from the civil case. In fact, the individual Defendants do not cite any cases at all. And, as Plaintiff points out, S.E.C. v. Abdallah, the one case the City cites, is distinguishable. In that case there was almost perfect overlap between the civil defendants and the criminal defendants, as "all but one of individual defendants [had] been indicted." Abdallah, 313 F.R.D. at 64. In staying the case, the court noted that "the Sixth Circuit has observed, '[a] stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct . . . .'" Id. (quoting E.M.A. Nationwide, Inc., 767 F.3d at 628. The stay of the civil case in Abdallah, which no party opposed and which was initially limited as to certain discovery of Defendants for only ninety days, protected the civil defendants from submitting to discovery based on their Fifth Amendment rights. After Plaintiff dismissed all of the criminal defendants from this action, that risk has been eliminated.

---

[6] In addressing E.M.A. Nationwide's second factor in response to the motion to stay filed by several Defendants earlier in the case, the City asserted that "[s]taying this case would needlessly delay this matter for an indeterminate amount of time," and that it had "a significant [] interest in moving this case forward towards closure, which would be impeded by a complete stay of the case." (ECF No. 76 at PageID 702.)

Given the foregoing, this factor weighs in favor of Plaintiff.

C.  <u>Wells's Private Interest in Proceeding Expeditiously Weighed Against the Prejudice of a Delay and the Private Interests of and Burden on the Defendants</u>

The City argues that the third factor weighs in its favor because the prejudice Wells would suffer if the case is stayed is speculative, and, in any event, is insufficient to overcome the City's demonstrated hardship.  (ECF No. 647 at PageID 10046.)  According to the City, Wells's evidence is substantially preserved, the stay would not be indefinite, and, contrary to Wells's suggestion, the question "is not whether Plaintiff will suffer any conceivable prejudice from delay.  It is whether the City's demonstrated hardship—its inability to present a complete defense—outweighs whatever prejudice Plaintiff can show."  (Id.)  The individual Defendants offer similar arguments, asserting that a stay until the conclusion of the criminal cases is not indefinite, would not last years, and thus would not prejudice Wells, while simultaneously "ensur[ing] . . . the City of Memphis, Hemphill, and D. Smith a fair opportunity to fully defend themselves in this civil case."  (ECF No. 646 at PageID 10031.)

Wells confronts these arguments with one main point: the prejudice she would suffer from a stay will erode her ability to prove her claims.  (ECF No. 649 at PageID 10071.)  She asserts that the stay Defendants seek "runs until the officers come off the Fifth, which will not occur until their criminal exposure is finally extinguished," and "is likely years away[.]"  (Id.)  She argues that such a stay, with no defined or known endpoint, is by definition indefinite, and is disfavored.  Wells asserts that she will face obvious prejudice if a stay is granted, namely in "her ability to carry her burden of proof at trial by putting on live witnesses who are actually available and whose memories have not faded with time."  (ECF No. 633 at PageID 9756.)

In making the argument, Wells disputes the Court's previously articulated conclusion that, because she has already conducted depositions and gathered documents, evidence that is

fixed in time, the reliability of the trial would not be impacted.  (See ECF No. 595 at PageID 9066.)  Plaintiff argues that she will need to present live testimony and a stay of indeterminate length would likely result in witnesses moving, losing their memories, or dying, risks that "will compound as the years pass."  (ECF No. 633 at PageID 9756.)[7]  Wells also argues that, although it is not her burden to predict what evidence might be degraded or which witnesses might become unavailable, at least one critical witness as to her Monell claim is "advanced in age and retired after decades of service," and another key witness has relocated to Wyoming beyond the Court's subpoena power.  (ECF No. 649 at PageID 10073.)

The City argued against in indefinite stay earlier in this case because "[i]t could be literally years before the Indicted Defendants go to trial."  (ECF No. 76 at PageID 702.)  Although the City was referring then to the Indicted Officers facing trial in the backlogged state court system, its argument is no less true as to the federal charges those Defendants still face.  Now, the City downplays the impact of the nature of the stay it seeks, asserting that "the criminal proceedings here have been complicated by an appeal and potential retrial does not transform a bounded stay into an indefinite one; it merely reflects the reality that the criminal proceedings are actively being litigated rather than languishing on an inactive docket."  (ECF No. 647 at PageID 10048.)  The criminal proceedings are actively being litigated, to be sure.  But their ultimate resolution could be years down the road and, in any event, will occur at some indeterminate time in the future.

---

[7] In addressing E.M.A.'s third factor in response to the motion to stay filed by several Defendants earlier in the case, the City asserted that it had "an interest in concluding this litigation expeditiously," which "far outweighs the burden on the Indicted Defendants of a limited stay."  (ECF No. 76 at PageID 703.)  The City also argued in that filing that "discovery could become difficult due to the passage of time and the fading memory of witnesses."  (Id. at PageID 702.)

The City correctly suggests that "[c]ourts routinely grant stays tethered to defined criminal-case milestones," and cites to <u>Ha v. Weber</u>, No. 1:07CV1788, 2007 WL 3146246, at *3 (N.D. Ohio Oct. 25, 2007), where the court stayed proceedings in a civil case until after the plaintiff in that case was sentenced in his criminal case. But in <u>Ha</u>, the plaintiff had already been convicted in his criminal case, was awaiting sentencing, and agreed a stay was warranted, in part to ensure that he and his co-Plaintiff's civil claims did not end up barred by a statute of limitations. <u>Id.</u> at *2–3. Those facts do not resemble the facts in the instant case.

Although the Criminal Matter against the Indicted Officers was tried to conviction, the Government appealed the undersigned's order granting a new trial in September 2025, and that appeal is not fully briefed. <u>See</u> <u>U.S.A. v. Emmitt Martin, III, et al</u>, Case No. 25-5853 (6th Cir. 2025). The timing and nature of the appeal's resolution remains unclear. The Sixth Circuit may reverse and remand the matter for sentencing; it may affirm and remand the matter for a new trial. The latter approach would obviously extend the resolution of the criminal matter further into the future, but even if the Sixth Circuit takes the former approach, following sentencing the verdicts against the defendants would be subject to appeal, a process which could add months, if not years, to the ultimate resolution of the matter.

Although the Court still believes that much of the evidence here is fixed in time, it cannot ignore the fact that there is significant uncertainty as to when the criminal matter may be resolved. That uncertainty makes the relief the Defendants seek fall somewhere between "a bounded stay" and "an indefinite one." (ECF No. 647 at PageID 10048.)

The hardships Wells faces under the third factor therefore are significant, especially when weighed against the private interests and burden on Defendants that would accompany proceeding in this case without a stay. As to the Defendants' interests under the fourth factor,

the City argues that its hardship in proceeding without the officer-actors' testimony is real and demonstrated, asserting that it cannot present a complete defense without it. That argument hinges on the nature of Monell liability, where Wells must demonstrate that the use of force against Nichols was the product of a custom or policy of the police department. According to the City, rebutting that theory requires it to "establish that the Officer-Actors' conduct was aberrational—inconsistent with their training, MPD policy, and the directives they received," which it argues is impossible to show "without testimony from the Officer-Actors themselves about what they were trained to do, what directives they received, and why they departed from them." (ECF No. 647 at PageID 10048.)

The City also argues that the hardship it has demonstrated is not eliminated by the inconsistent positions it may have taken throughout the litigation, and, to the extent Plaintiff asserts that the officers' Garrity statements eliminate the need for additional discovery, that argument is misplaced because the City is "entitled to develop testimony tailored to its civil defense, not merely to rely on statements produced for other purposes and tested by different parties with different litigation objectives." (Id. at PageID 10049–52.) Hemphill and DeWayne Smith assert similar arguments, namely that they would be unable to defend themselves fully absent meaningful discovery from the Indicted Officers. (ECF No. 646 at PageID 10031–32.) Hemphill and DeWayne Smith assert that the testimony from the Indicted Officers "is essential in order to explain what these Defendants were told, what was omitted, what they knew, and when they knew it." (Id. at PageID 10032.)

Wells counters that Defendants would face no cognizable prejudice by proceeding without the testimony from the Indicted Officers for several reasons, including that the City has not "give[n] any reasons to believe the officers' testimony, if it ever came, would help the City

18

rather than harm it," and, as to the individual Defendants, "[i]f anything, the officers' silence helps" them, as "with no one to contradict their account of what they were told, they may testify to it unchallenged." (ECF No. 649 at PageID 10078–79.)

Wells also asserts that any such testimony the City could get from the Indicted Officers lies outside the scope of permissible discovery, as they are certain to invoke the privilege against self-incrimination. So, Wells asserts that "Defendants thus ask the Court to freeze this case indefinitely to preserve a future change at evidence the Rules place beyond their reach today." (Id. at PageID 10074.) And, Wells argues, when it comes to Martin and Mills, they remain exposed to perjury prosecution for any departure from the prior trial testimony in perpetuity. (Id. at PageID 10078.) Ultimately, Wells asserts that "[a] litigant is not prejudiced by the unavailability of evidence it has no right to obtain in discovery." (Id. at PageID 10074.) Moreover, Wells asserts that the City has failed to identify any specific testimony it expects to elicit from any officer, but, even if it had, none of the subjects the City seeks to plumb with the Indicted Officers would be relevant to a Monell defense.

On that point, Wells offers several reasons as to why such testimony is irrelevant under Monell. Wells asserts that the Indicted Officers' subjective recollection of the Nichols beating is irrelevant because the use of force against Nichols was captured via body-worn and pole-camera video. (ECF No. 649 at PageID 10075.) Wells similarly argues that whether the force used was reasonable is evaluated using an objective inquiry, and an officer's subjective state of mind is irrelevant and inadmissible in the evaluation of a use-of-force claim. (Id.)

As to whether the conduct of the Indicted Officers was consistent with the department's training and policy, Wells asserts that the City has already determined that the Indicted Officers' conduct was not consistent with MPD policy or training, and their own accounts of the Nichols

19

incident "are already in the City's hands, in the lengthy Garrity statements they gave in response to that questioning, which will be admissible at trial." (Id. at PageID 10075–76.)

Finally, Wells asserts that the core of a Monell claim—and the core of the City's error—lies in its argument that it needs to gather discovery from the officers "to explain 'why they departed from' their training, 'whether supervisory failures contributed to the use of force,' and 'whether the City's customs enabled the conduct'—in short, 'why they did what they did.'" (Id. at PageID 10076.) Once again, Wells contends that such an inquiry into the Indicted Officers' state of mind is irrelevant under Monell, as causation under "Monell turns on what the City's policymakers tolerated and failed to remedy. The officers' subjective explanations of 'why they did what they did' does not illuminate that question." (Id. at PageID 10077.) At bottom, Wells argues that she has alleged that the MPD "tolerates repeated excessive force," which makes it "'reasonably foreseeable' that its officers will be 'embolden[ed]' to use excessive force again, such that a jury may infer that the City's failure to investigate and discipline 'led the [o]fficers to believe that they would not be sanctioned,' as others had not been before." (ECF No. 649 at PageID 10077 (quoting Kalvitz v. City of Cleveland, 2017 WL 6805678, at *11 (N.D. Ohio, Oct. 16, 2017), aff'd, 763 F. App'x 490 (6th Cir. 2019)).)

Whether the Garrity statements are admissible at trial is a determination that the Court can make at the appropriate time and is not essential to resolving the motion to stay. Regardless, that determination does not change the fact that, although the testimony of the Indicted Officers, whenever it may come, might speak to their subjective mental state at the time of the Nichols incident (and may or may not assist Defendants), it will not aid in answering the objective inquiries at the core of Well's Monell claims, that is whether the City demonstrated deliberate

20

indifference and whether that deliberate indifference was the moving force behind the infringement on Nichols's constitutional rights.

Ultimately, in spite of the previous position the City has staked out in these proceedings, the City and the individual Defendants will likely face some burden by having to proceed in this case without the testimony of the Indicted Officers. But in spite of that burden, the Court is not convinced that the balance of hardships weighs in Defendants' favor. Because it does not, the third and fourth factors weigh in Wells's favor.

D. The Interest of the Courts

The City asserts that the Courts' interest favors a stay, as proceeding without the Indicted Officers' testimony "would risk an incomplete factual record, potential inconsistencies between the civil verdict and the ultimate criminal outcomes, and the possibility that newly available evidence after the criminal proceedings conclude would necessitate post-trial relief." (ECF No. 647 at PageID 10052–53.) The individual Defendants assert that, even with a stay in place, this case will not "grind to a halt," as the Parties can continue to proceed in all relevant respects other than those that touch on the discovery related to the Indicted Officers. (ECF No. 646 at PageID 10033.)

Wells counters that, "[w]here the party seeking a stay faces no criminal charges, as is the case here, the court's interests weigh against a stay. That is because there is no countervailing 'interest in upholding the rights of one who is criminally accused' to set against the court's 'interest in expeditiously resolving the cases on its docket.'" (ECF No. 649 at PageID 10079 (quoting Smith, 2021 WL 507881, at *4).)

The Court has an interest in handling its cases in the most efficient manner possible and, given the nature of this intensely litigated case, it has already been pending for more than three

21

years and will likely not be resolved until it has been pending for nearly four years. Although it is likely that the factual record would be more complete if the Court were to stay the proceedings, to what degree is unclear, and, in any event, there are few litigation circumstances where giving parties additional time would not result in a more robust factual record.[8]

When weighing the indeterminate delay that would accompany a stay against the Courts' interest in moving this case toward a conclusion, this factor weighs slightly in favor of Plaintiff.

E.  The Public Interest

The City asserts that, although prompt resolution of this case serves the public interest, the interest of the City's taxpayers and citizens "is most served by ensuring that civil litigation yields a just and durable result based on a complete evidentiary record." (ECF No. 647 at PageID 10053.) Ultimately, it contends that the "public interest in prompt resolution must be weighed against the public interest in a fair process, and a process that denies the City the ability to present a complete defense is not one the public should be asked to accept." (Id. at PageID 10053–54.) The individual Defendants assert that the public interest is in "no way . . . thwarted by allowing the criminal process to proceed to its just conclusion in order to allow meaningful discovery from the stayed Officers in the civil case." (ECF No. 646 at PageID 10034.)

On the contrary, Wells argues that "the people of Memphis have a strong stake in the prompt resolution of claims that their city's police department engaged in a pattern of

---

[8] The City does not elaborate on its argument that the Court's interest might be undermined if there are inconsistencies between the civil verdict and the ultimate criminal outcomes. The Court is not persuaded that such a scenario is likely. After all, as explained above, demonstrating that the City is liable under Monell requires that Wells establish that a constitutional violation occurred and the governmental entity is responsible for that violation. The civil trial is likely to focus on the City's responsibility for the constitutional violation, and, given that Mills and Martin pleaded guilty to violating Nichols's constitutional rights (see Criminal Matter, ECF Nos. 91, 91-1, 499, 499-1), that focus would not change even if the criminal matter is tried again and not guilty verdicts are returned as to the Indicted Officers.

22

unconstitutional force to which City officials were deliberately indifferent.  An indeterminate stay of a case imbued with such public significance 'weighs strongly against staying the case.'" (ECF No. 649 at PageID 10080 (quoting Johnson v. Hamilton Cnty. Gov't, No. 1:19-CV-329, 2020 WL 6479558, at *3 (E.D. Tenn. Feb. 26, 2020).)

Here, the public interest is best served by an expeditious resolution of the case.  As noted, this matter has, in many understandable respects, proceeded in fits and starts since the initial complaint was filed in April 2023.  And, although the City's current position that it should be stayed pending the resolution of the Criminal Matter is not without appeal, the Court finds that the public interest would be better served if this matter proceeded toward a resolution as promptly as possible.

This factor also weighs in Plaintiff's favor.

**CONCLUSION**

For all of the reasons stated above, the Court finds that Defendants have failed to carry their burden that neither Wells nor the public will suffer harm from entry of the order that stays the case.  Because all of the factors weigh in Plaintiff's favor and against staying this matter pending a resolution of the Criminal Matter, the City's Motion to Amend is **DENIED**.  The matter will not remain stayed as to the Indicted Officers.

The Court will hold a status conference to set the trial and related deadlines on Thursday, August 6, 2026, at 2:30 p.m. in Courtroom 1.  The Parties must confer and submit, by one week before the conference, a proposed schedule.  The Court hopes that the previously proposed

23

January 19, 2027 trial date is still available to the Parties.

**IT IS SO ORDERED,** this 22nd day of July, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE