**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

| | | |
|---|---|---|
| **ROWVAUGHN WELLS, individually and as Administratrix ad Litem of the Estate of TYRE DEANDRE NICHOLS, deceased,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 2:23-cv-02224-SHL-atc** |
| **THE CITY OF MEMPHIS, a municipality, *et al.*,** | ) | |
| **Defendants.** | ) | |

---

## ORDER ON MOTION TO UNSEAL AND PREVIOUS SEALING DISPUTES

---

Before the Court by Order of Reference is the Motion to Unseal of Defendant City of Memphis ("the City"), filed on December 23, 2025.[1] (ECF No. 532.) Plaintiff RowVaughn Wells filed a Response to the Motion on January 6, 2026. (ECF No. 537.) Prior to the filing of the Motion, issues concerning the sealing of documents in this case were addressed by the undersigned in the September 26, 2025 Order on Motion for Protective Order, Motion to Seal, and Motion to Vacate. (ECF No. 483.) In response to that Order, Wells filed her Notice Concerning Sealing Disputes on November 10, 2025 (ECF No. 515), followed by the City's Response to Wells's Notice on November 24, 2025 (ECF No. 551).[2]

---

[1] Chief District Judge Sheryl H. Lipman referred the Motion to the undersigned for determination on January 6, 2026. (ECF No. 535.)

[2] On August 4, 2026, the City filed a motion for hearing on various pending motions, including the sealing issues resolved in this Order. (ECF No. 666.) Because all pending motions addressed in the City's motion for a hearing have now been resolved (*see* ECF Nos. 676, 677), the City's motion (ECF No. 666) is denied as moot.

For the following reasons, the City's Motion to Unseal is granted in part and denied in part.

**BACKGROUND**

The sealing disputes in this case began on September 25, 2024, when Wells filed a Motion for Protective Order with respect to document subpoenas issued by the City to Marvin Volker, Lori Volker, Kris Volker, and Melissa Volker—family friends of Tyre Nichols and Wells—and subpoenas to T-Mobile and Verizon for the cell-phone records of Nichols and Wells. (ECF No. 211.) After the City filed an initial response to the Motion for Protective Order on October 29, 2024 (ECF No. 216), the City filed a Motion for Leave to File a Supplemental Response to Wells's Motion for Protective Order ("Motion for Leave")[3] on November 15, 2024,[4] to assert additional arguments in opposition to the Motion for Protective Order that arose from the depositions of Marvin Volker, Lori Volker, Kris Volker, and Morgan Jackson, the mother of Nichols's minor child. (ECF No. 230.) Wells then filed a Response to the Motion for Leave (ECF No. 233) and a Motion to Seal Portions of the Motion for Leave ("Motion to Seal") (ECF Nos. 234, 235) on November 17, 2024.

Wells and the City subsequently filed multiple submissions concerning the Motion for Protective Order and the Motion to Seal:

- The City's Response to the Motion to Seal, filed on November 18, 2024 (ECF No. 237);
- The City's Supplemental Response to the Motion for Protective Order, filed on November 22, 2024 (ECF No. 243);

[3] The City's Motion for Leave was placed under seal during the pendency of the parties' sealing disputes.

[4] The City's Motion for Leave, which was characterized as being unopposed at the time it was filed, was granted by text-only order on November 15, 2025. (ECF No. 231.)

- The City's Status Report (ECF No. 260) and Wells's Status Report (ECF No. 261) concerning the issues raised in the Motion to Seal, both filed on December 18, 2024;
- Wells's Supplemental Brief concerning the Motion to Seal, filed on December 18, 2024 (ECF No. 262); and
- Wells's Reply to the City's Supplemental Response to the Motion for Protective Order, filed on January 3, 2025 (ECF No. 278).

Then, on January 22, 2025, the City filed a Motion to Vacate Plaintiff's Improper Confidentiality Designations ("Motion to Vacate"). (ECF Nos. 286, 287.) Wells and the City subsequently filed multiple submissions concerning the Motion to Vacate:

- Wells's Response to the Motion to Vacate, filed on February 5, 2025 (ECF Nos. 294, 295);
- The City's Reply in Support of the Motion to Vacate, filed on February 18, 2025 (ECF No. 305);
- The City's Supplemental Reply in Support of the Motion to Vacate, filed on May 1, 2025 (ECF No. 407); and
- Wells's Surreply in Opposition to the Motion to Vacate, filed on May 5, 2025 (ECF No. 410).

In the September 26th Order, the Court addressed the parties' arguments related to whether Wells had properly designated a significant portion of the transcripts of the depositions of the four non-party witnesses—Marvin Volker, Lori Volker, Kris Volker, and Jackson—as confidential under the parties' Agreed Protective Order and whether Wells's confidentiality designations should remain in place now that those depositions have been filed in the case in the context of a discovery dispute—Wells's Motion for Protective Order—based on the Sixth Circuit's precedent in *Shane Group., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299 (6th Cir. 2016), and its more recent holding in *Grae v. Corrections Corp. of America*, 134 F.4th 927 (6th Cir. 2025). (ECF No. 483.) As the Court held, though the parties framed the issue as whether information contained in the deposition transcripts had been appropriately designated as

confidential under the terms of the Agreed Protective Order, the dispute had achieved elevated importance, as that information was germane to the resolution of Well's Motion for Protective Order—that is, the offered portions of the Volkers' and Jackson's deposition transcripts were relevant to the Court's resolution of that Motion. (*Id.* at 12.) The undersigned thus ordered the parties to each file notices concerning the sealing disputes and correctly frame their arguments under *Shane Group* and *Grae*.[5] (*Id.* at 18.) Both parties complied. (ECF Nos. 515, 520.)

In the Motion to Unseal, in addition to the parties' previous sealing disputes, the City seeks to unseal ECF Nos. 338, 340, 350, 352, 354–57, 359, 360–64, 383, 398, 408, 454, 466, 468, 482, 515, and 520. (ECF No. 532.) For some of these sealed docket entries, the analysis and issues involved overlap extensively with those already presented by the parties' existing sealing disputes. The other documents the City seeks to unseal relate to (1) Wells's previous possession of sealed documents from the criminal case, (2) the judicially conducted mediation, and (3) the City's now moot Motion for Summary Judgment. (*Id.*) In response, Wells does not oppose the unsealing of docket entries related to the mediation,[6] but she opposes the rest. (ECF No. 537.)

## <u>ANALYSIS</u>

### I. Sealing Generally

As discussed in the September 26th Order, "there is a stark difference" between protective orders that permit the designation of discovery materials as confidential and orders that maintain those designations by allowing materials to be filed on the docket under

[5] At that time, the sealed filings on the docket at issue before the undersigned were ECF Nos. 230, 233, 235, 240, 244, 260, 261, 262, 278, 287, and 295. (*Id.* at 18 n.12.)

[6] The City's Motion is thus granted as to those documents. The Clerk is directed to unseal ECF Nos. 338, 340, and 398.

seal. *Shane Grp.*, 825 F.3d at 305. "Secrecy is fine at the discovery stage, before the material enters the judicial record." *Id.* (quoting *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002)). In the discovery stage, the court may enter a protective order that limits the disclosure or use of discovery materials "upon a mere showing of 'good cause.'" *Id.* (quoting Fed. R. Civ. P. 26(c)(1)). "These orders are often blanket in nature, and allow the parties to determine in the first instance whether particular materials fall within the order's protection." *Id.*

Once those materials are filed on the docket, however, the inquiry changes. "[F]ederal courts do their business in public—which means that the public is presumptively entitled to review every document that a party files with the court for purposes of influencing a judicial decision." *Grae*, 134 F.4th at 930. Thus, "[o]nly the most compelling reasons can justify non-disclosure of judicial records." *Id*. (quoting *Shane Grp.*, 825 F.3d at 305). "Unlike information merely exchanged between the parties, 'the public has a strong interest in obtaining the information contained in the court record.'" *Shane Grp.*, 825 F.3d at 305 (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983)). Thus, there is a "'strong presumption in favor of openness' as to court records." *Id.* (quoting *Brown*, 710 F.2d at 1179). The burden on the party seeking to seal records "is a heavy one: 'Only the most compelling reasons can justify non-disclosure of judicial records.'" *Id.* (quoting *In re Knoxville News–Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983)). "Moreover, the greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access." *Id.* "The proponent of sealing therefore must 'analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations.'" *Id.* at 305–06 (quoting *Baxter*, 297 F.3d at 548). The party seeking to seal a judicial record must show "why the interests in support of nondisclosure are compelling, why the interests supporting

access are less so, and why the seal itself is no broader than necessary." *Id.* at 306 (citing *Brown & Williamson*, 710 F.2d at 1176).

"[A] document counts as a judicial record, for purposes of the presumption of access, when it is 'filed with the objective of obtaining judicial action or relief' or otherwise plays 'a role in the adjudicative process.'" *Grae*, 134 F.4th at 933 (quoting *United States ex rel. Oberg v. Nelnet, Inc.*, 105 F.4th 161, 171 (4th Cir. 2024)). "When filed for that purpose, the entire document, and not just the parts cited by the parties or the court, becomes a judicial record." *Id.* (citing *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 668 (D.C. Cir. 2017)). "For a determination that material is irrelevant can itself 'reveal something valuable about the judicial process.'" *Id.* (quoting *City of Greenville v. Syngenta Crop Prot., LLC*, 764 F.3d 695, 698 (7th Cir. 2014)).

That is not to say that all records filed in a case must be open to public view. For example, the "privacy interests of innocent third parties can be reason enough to seal," and other information such as "trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault) is typically enough to overcome the presumption of access." *Grae*, 134 F.4th at 932 (citations and quotations omitted). Furthermore, documents that have been designated as confidential that are filed solely "to circumvent the strictures of a protective order . . . are not subject to the presumption of access. Nor are documents that 'cannot conceivably aid the understanding of judicial decisionmaking.'" *Id.* at 933 (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34–35 (1984); quoting *City of Greenville v. Syngenta Crop Prot., LLC*, 764 F.3d 695, 698 (7th Cir. 2014)).

## II. Filings Addressed in the Parties' Notices (ECF Nos. 515, 520)

Wells seeks to keep sealed or make significant redactions to four categories of documents with respect to ECF Nos. 230, 233, 235, 240, 244, 260, 261, 262, 278, 287, and 295: (1) documents that identify Jackson, the mother of Nichols's minor child, by name, (2) information related to alleged domestic violence between Nichols and Jackson, (3) information related to payments Wells made from funds raised through a GoFundMe fund, and (4) miscellaneous personal information including "social security numbers, names of minor children, dates of birth, financial account numbers, state-issued identification numbers, and home addresses." (ECF No. 515, at 2.)

### A. <u>Jackson's Identity</u>

Wells has argued since the beginning of this case that the identity of Jackson should remain confidential and sealed in this matter. Wells's initial position, as stated in her Response to the City's Motion to Vacate, was that these measures are justified by: (1) Section 13.4.3 of the Court's ECF Policies and Procedures Manual, (2) the redaction and sealing of her name in the probate proceedings of Nichols's estate, and (3) the scope of the Agreed Protective Order. (ECF No. 295, at 7 n.4.) In the September 26th Order, those arguments were rejected as insufficient to justify non-disclosure of Jackson's identity in this case. (ECF No. 483, at 4 n.7.) That Order provided, however, that Wells "may brief this issue again for the Court's consideration under the proper standard"—i.e., *Shane Group* and *Grae*. (*Id.*)

Wells has only half-heartedly taken the Court up on its offer.[7] In her Notice following the September 26th Order, Wells merely (and briefly) repeats her first two contentions (regarding

[7] Wells's lack of conviction in maintaining the secrecy of Jackson's identity is also evidenced by her counsel's public reference to Jackson by name in a recent status conference with Chief Judge Lipman on August 6, 2026. (*See* ECF No. 671, at 35.)

Section 13.4.3 and the probate court documents). (ECF No. 515, at 4 n.6, 17–18.) As those grounds for sealing references to Jackson have already been rejected, Wells has failed to demonstrate she is entitled to the relief she requests.

Nor are those grounds sufficient to justify sealing under *Shane Group* and *Grae*. As the City correctly argues (ECF No. 520, at 4–5), Section 13.4.3 simply requires that attorneys "shall exercise caution and shall consider redaction or consider filing a sealed document" if a filing references "[i]nformation regarding the victim of any criminal activity." It does not mandate that such documents be placed under seal and is not determinative of whether a document should remain sealed.

The protection of information in the probate proceedings is likewise insufficient. Wells contends that, because references to Jackson have been redacted or sealed in the probate proceedings, they should be redacted or sealed here as well. (ECF No. 515, at 17–18.)[8] However, the legal standards and considerations applicable to the probate court's sealing determination are different from those applied here; as such, the probate court's determination is not dispositive of what information should be protected from disclosure in this case. This Court is bound by *Shane Group* and *Grae*, and that precedent requires Wells to meet a heavy burden.

[8] In support of this argument, Wells cites one case: *Finley v. Kelly*, No. 3:19-cv-00129, 2019 WL 13195859 (M.D. Tenn. Apr. 18, 2019). That case does address whether documents should be placed under seal, but it has nothing to do with how a probate-court sealing order impacts sealing decisions in a related federal case. Rather, the *Finley* court addressed the *Shane Group* considerations and concluded that "personal contact information (phone numbers and email addresses) and references to the [plaintiff's] minor children may be redacted." *Id.* at *2. As discussed below, this type of information will be redacted in this case.

Because she has failed to carry that burden,[9] her request to keep Jackson's identity secret and her proposed redactions of the probate documents (ECF No. 515-1, at 6–9) are rejected.

B. Allegations of Domestic Violence

Wells argues that the privacy interests of Nichol's minor child, Jackson, and Wells herself, as well as the interest in preventing prejudice to a future jury pool, overcome the strong presumption in favor of the openness of court records with respect to the domestic-violence allegations involving Nichols and Jackson. (ECF No. 515, at 4–12.) Concerning privacy interests, Wells cites to a number of authorities but relies primarily on Section 13.4.3 of the Court's ECF Polices and Procedures Manual and *In re Knoxville News-Sentinel Co.*, 723 F.2d 470 (6th Cir. 1983), for the proposition that these docket entries should remain sealed or significantly redacted because the information would potentially reveal the identity of victims of alleged criminal activity and because the minor child, Jackson, and Wells "d[id] nothing to give rise to the suit." (*Id.* at 4–6 (quoting *Shane Grp.*, 825 F.3d at 308).)

As discussed above, Wells's reliance on Section 13.4.3 is misplaced, as that provision merely requires caution before disclosure of victim information but does not supplant the analysis required under *Shane Group* and *Grae*. As for Wells's reliance on *Knoxville News-Sentinel*, that case does stand for the proposition that the privacy interests of "third parties who were not responsible for the initiation of the underlying litigation" may be protected from disclosure, 723 F.2d at 477, but Wells's application of the case goes too far. In *Knoxville News-Sentinel*, a case between a bank and a government regulator, the court found that third-party

[9] The same is true with respect to Wells's request to redact other limited information from the probate proceedings, such as the fact that the minor child is the sole heir to Nichols's estate. (*See* ECF No. 235 ¶¶ 1, 5; ECF No. 515-1, at 8.) Beyond arguing that the information is protected in the probate proceedings, Wells has offered nothing that would satisfy the *Shane Group*/*Grae* standard.

customer financial information should be protected from disclosure. *Id.* at 476–78. The information at issue was a list of questionable loans the bank had made that the regulator was investigating. In light of "a compelling government interests in preserving the secrecy of personal financial records" and no showing of a particularized "need of the public to know about the names and financial records of the bank's customers," the court found restriction of the information appropriate. *Id.* at 477–78.

Here, without question, allegations of domestic violence between Nichols and Jackson are sensitive matters that might be protected from public disclosure in some situations, as the financial information was in *Knoxville News-Sentinel*. This case, however, presents a much stronger public interest in disclosure than *Knoxville News-Sentinel*. Wells's damages claims have made Nichols's character relevant in this case, as was addressed in the September 26th Order. (ECF No. 216, at 4–8.)[10] And though Jackson herself is not a party to this case, she agreed to allow Wells to bring claims on the minor child's behalf (ECF No. 520-3, at 19), such that her relationship with Nichols and their co-parenting of the minor child may be relevant to damages, which counsels against a finding of secrecy—especially once her deposition entered the judicial record. (ECF No. 240.)

[10] Specifically, Wells intends to put on proof concerning numerous types of damages, such as "pecuniary loss, including medical and funeral expenses; loss of future wages and earnings; and loss of aid, counsel, guidance, advice, assistance, protection, and support" on behalf of Nichols's minor child and "emotional damages in the form of severe emotional distress, loss of normal life, suffering, anguish, and disability" on behalf of both the child and Wells. (ECF No. 277, at 61, 142.) And in her supplemental Rule 26(a)(1) Initial Disclosures, Wells states that she and other potential witnesses expect to testify about, among other things, Nichols's "life and aspirations," Wells's and Nichols's "loss of enjoyment of life," his "strength and capacity to work and for earning money," his "personal habits of sobriety and industry," and "[a]ll other topics relevant to damages allowed under the law." (ECF No. 216-1, at 2–3.)

On the issue of potential prejudice to the jury pool, Wells relies primarily on *United States v. Sittenfeld*, No. 1:20-cr-142, 2021 WL 1438300 (S.D. Ohio Apr. 15, 2021), for the proposition that "salacious" allegations concerning witnesses or victims should remain sealed if they risk a "substantial risk of jury-pool taint." (ECF No. 515, at 8.) But *Sittenfeld* involved a criminal matter and "sensitive allegations that [we]re currently being investigated" by non-party witnesses about alleged misconduct by the government, not deposition testimony about the case itself, and not alleged domestic violence by the very subject of the litigation. 2021 WL 1438300, at *3. Though this case receives significant public attention,[11] as was the case in *Sittenfeld*, and there is always a risk that publicly filed information could influence a jury pool, those concerns can be addressed by the parties through *voir dire* and motions in limine. Whether the domestic-violence allegations themselves will be relevant at the summary-judgment stage or admissible at trial are issues not currently before the undersigned, but, in any event, Wells has not carried her heavy burden of showing "[o]nly the most compelling reasons [that might] justify non-disclosure of judicial records." *Grae*, 134 F.4th at 930. Thus, Wells's proposed redactions with respect to the allegations of domestic violence (ECF No. 515-1, at 2–4) are rejected.

C. Payments Made by Wells from the GoFundMe Fund

Wells contends that information related to payments Wells made from a GoFundMe fund to the Volkers and to Jackson on the minor child's behalf should remain shielded from public

[11] As both parties acknowledge, the media has reported extensively on this case—based both on the filings on the docket and public statements from counsel—including the very domestic-violence allegations that Wells seeks to keep shielded from public view going forward. (ECF No. 515, at 5 n.5; ECF No. 520, at 8.) And it is undisputed that the underlying domestic-violence allegations are already a matter of public record in California. (ECF No. 520, at 11 (citing ECF No. 287-1, at 9 n.7).)

view, arguing that such information puts them at risk. (ECF No. 515, at 16–17.)[12] She again relies upon *Knoxville News-Sentinel*, as well as *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), *Liberty Mutual Insurance, Co. v. DeVere Construction Co.*, No. 16-cv-10423, 2016 WL 9211689 (E.D. Mich. July 28, 2016), and *The Portofino, LLC v. Cali*, No. CV 05-4042(JAP), 2007 WL 9782906 (D.N.J. Nov. 26, 2007).

Wells argues that she and the gift recipients have a strong interest in the privacy of the GoFundMe payments. (ECF No. 515, at 15.)[13] She describes the "serious" harm that will result if these gifts are revealed, as public disclosure of the receipt by Jackson (for the benefit of the minor child) and the Volkers of "large sums of money puts both their and their families' safety at risk, by exposing them to an increased risk of theft, harassment, and intimidation." (*Id.* at 16.) At first blush, these arguments are weighty, suggesting disclosure could jeopardize the safety of these non-parties. The logic of the argument falters, however, particularly as to the Volkers, when considering the relatively small size of the monetary gift ($10,000). (ECF No. 520-7, at 19.) Though the gift to Jackson/the minor child is more significant ($400,000) (ECF No. 520-3, at 16), and therefore the safety arguments are more compelling, those arguments are largely non-specific and hypothetical. And as to Wells, the arguments have no merit, as she admits that the

[12] Wells describes the payments as coming from "funds raised through the GoFundMe webpage that Ms. Wells created in the aftermath of her son's death" and contends that, "[w]hile the GoFundMe page was public, the gifts Plaintiff made to her grandson and the Volkers—and the amount of those gifts—were private and confidential." (*Id.*)

[13] In support of the proposition that these monetary gifts constitute the type of financial information entitled to privacy, Wells cites to *Seattle Times*, which involved the propriety of a protective order to prevent the discovery of donors' identities and donations to a religious organization. 467 U.S. at 36–37. Though *Seattle Times* did not involve issues relating to sealing documents that had already entered the judicial record, it did recognize some privacy interest in individual monetary gifts. *Id.* Wells's citations to *DeVere*, 2016 WL 9211689, at *2, and *Portofino*, 2007 WL 9782906, at *2, on the other hand, are unhelpful, as both concerned discovery into the defendants' overall financial information, not the sealing of documents that had already entered the record, or individual gifts or donations.

total amount of the fund is public knowledge, and so the fact that she has given some of it away decreases, rather than increases, the danger arising from the public's knowledge that she "ha[s] been in possession of large sums of money." (*See* ECF No. 515, at 16.)[14]

On the other side of the balance, Wells maintains that the public's interest is nonexistent, as the payments "have no relevance whatsoever to liability or damages in this case." (*Id.* at 17.) However, because Jackson and the Volkers have been and may again be witnesses in this case, the City correctly argues that "the exchange of large sums of money, generated from the Plaintiff's GoFundMe page, and the timing of those exchanges, are highly relevant to the testimony of the third-party witnesses in this case, specifically regarding bias, Plaintiff's influence, and witness credibility." (ECF No. 520, at 2.)[15] The public therefore has a strong interest in the disclosure of that information, as it was "'filed with the objective of obtaining judicial action or relief' or otherwise plays 'a role in the adjudicative process.'" *Grae*, 134 F.4th at 933 (quoting *Oberg*, 105 F.4th at 171).

That strong interest outweighs the negligible privacy interest Wells has identified for herself, the minimal privacy interest she identified for the Volkers, and the hypothetical and non-specific privacy interest she identified for Jackson/the minor child. Even in light of these individuals' status as non-parties to this case, Wells has not met her heavy burden of showing "only the most compelling reason" sufficient to overcome the "strong presumption" of openness

[14] Wells's additional argument, that she will be exposed to "harassment and annoyance" by people asking her for money, is similarly entitled to little weight in overcoming the strong presumption of disclosure. (*Id.*)

[15] The Court assumes the minor child will not be called as a witness in this case, and thus the public has no interest in the disclosure of this information as to the child. Because Wells paid the gift to Jackson on the child's behalf, however, and because Jackson has been and may again be called as a witness, the public's interest in, for example, the impact of the gift on Jackson's credibility necessarily impacts the minor child's privacy interest as well. The analyses are thus unavoidably collapsed.

under *Shane Group* and *Grae*. Her proposed redactions concerning the GoFundMe payments (ECF No. 515-1, at 4–6) are rejected.[16]

D. Miscellaneous Personal Information

The parties agree that certain narrow categories of personal information—social security numbers, names of minor children, dates of birth, financial account numbers, state-issued identification numbers, and home addresses—should remain shielded from public view. (ECF No. 515, at 18–21; ECF No. 520, at 16–20.) The Court agrees that such personal information should be redacted in this case. *See Fuchs v. SpecialtyCare, Inc.*, No. 3:23-cv-00892, 2025 WL 2607823, at *2 (M.D. Tenn. Sept. 9, 2025) ("Sixth Circuit precedent supports such a sealing so long as the redactions are narrowly tailored to seal only the personally identifying information." (quoting *In re Flint Water Cases*, No. 5:16-cv-10444-JEL-mkm, 2021 WL 1877018, at *2 (E.D. Mich. Apr. 21, 2021))).

The proposed redactions of Wells (ECF No. 515-1, at 9–10) and the City (ECF No. 515-1) are narrowly tailored to protect this sensitive personal information, and the interest in protecting that information outweighs the presumptive right of public access to it. However, the parties' proposed redactions differ slightly. The parties are therefore ORDERED to consult and agree on redacted replacements for these docket entries to the extent necessary to protect such personal information from public view. The parties shall submit their proposed replacements to ECF_Judge_Christoff@tnwd.uscourts.gov by September 4, 2026. Once the redacted replacements are docketed, ECF Nos. 230, 233, 235, 240, 244, 260, 261, 262, 278, 287, and 295 shall be unsealed.

---

[16] The City does not dispute that matters such as the minor child's identity and Jackson's and the Volkers' contact information and bank-account numbers should be inaccessible to the public. (*See* ECF No. 520, at 16–21.) Those proposed redactions are addressed below.

## III. The City's Motion to Unseal (ECF No. 532)

The City also argues for the unsealing of documents related to (1) subsequent discovery disputes, (2) Wells's previous possession of sealed documents from the criminal case and (3) the City's now moot Motion for Summary Judgment. (*Id.* at 4–6.)

### A. Filings Related to Subsequent Disputes

Since the parties filed their sealing notices, they have filed additional documents that present the same sealing questions addressed above. ECF No. 383 is the City's Motion to Compel related to subpoenas it issued to Rodney Wells, Keyana Dixon, and Lenge Dupree, and ECF No. 408 is Wells's Response to that Motion. ECF No. 454 is the City's Motion to Compel related to its Fourth, Fifth, and Ninth Requests for Production, and ECF No. 466 is Wells's Response to the Motion. ECF No. 468 is Wells's motion for leave to supplement her earlier motion (ECF No. 447) to amend the scheduling order. And, of course, ECF Nos. 515 and 520 are the parties' Notices on the sealing disputes discussed above. The sealing analysis as to these documents is the same as above, and they will be unsealed.

The parties have not yet submitted proposed redacted replacements for these docket entries to protect personal information.[17] As such, the parties are ORDERED to consult and agree on redacted replacements for these docket entries to the extent necessary to protect such personal information from public view. The parties shall submit their proposed replacements to ECF_Judge_Christoff@tnwd.uscourts.gov by September 4, 2026. Once the redacted replacements are docketed, ECF Nos. 383, 408, 454, 466, 468, 515, and 520 shall be unsealed.

[17] Some of these docket entries contain such information. For example, Wells's Notice identifies the minor child by name in three places. (ECF No. 515, at 3, 13.)

B. Wells's Previous Possession of Sealed Documents from the Criminal Case

ECF Nos. 350, 352, 354, 355, 356, 357, and 359–64 were sealed by or at the direction of the Court in March 2025. As discussed by Chief Judge Lipman, these docket entries relate to "counsel's acquisition of trial exhibits from the related criminal case by the attorneys in" this case. *Young v. City of Memphis*, No. 2:25-cv-2799-SHL-atc, ECF No. 41, at 6 (W.D. Tenn. Dec. 5, 2025).[18] After counsel for Wells submitted affidavits under seal explaining the situation, it became clear that the sealed criminal documents "were obtained from the Clerk's Office in error," and counsel for Wells was ordered to destroy the materials inadvertently provided by the Clerk's Office and confirm the documents' destruction. *Id.* at 7. "Then, the attorneys verified that they destroyed the documents consistent with the Court's directive." *Id.* The City's request that these docket entries be unsealed is not well taken, as unsealing the documents—after the issues concerning the inadvertent production of the documents have been fully resolved—would risk exposing the very documents and information that were sealed in the criminal case. Because the City has not shown good cause to effectively unseal documents placed under seal in the criminal case (and that were ordered destroyed by any party possessing them in this case), the Motion is denied on this point.

C. Summary-Judgment Exhibits

ECF No. 482 consists of Exhibits 6–9 to the City's Motion for Summary Judgment, filed on September 18, 2025, which sought dismissal of Wells's personal state-law claims for, *inter alia*, intentional and neglect infliction of emotional distress. On September 30, 2025, Chief Judge Lipman granted the City's Motion to Dismiss these claims (ECF No. 484, at 17–19), rendering the City's Motion for Summary Judgment moot (ECF No. 504; ECF No. 516, at 14).

[18] "That issue was addressed in March 2025 by Judge Norris, who, at the time, was presiding over both the criminal case and the *Wells* Matter." *Id.*

The exhibits at ECF No. 482 consist of Wells's "medical and psychotherapy records (ECF Nos. 482, 482-1, 482-2) that the City filed under seal [relating to] Plaintiff's emotional distress claim." (ECF No. 537, at 4.)

As a general proposition, "[a]s it relates to plaintiff's medical records, courts routinely recognize a compelling interest in the non-disclosure of private health information." *Turnbow-Avery v. DeJoy*, No. 1:23-cv-571, 2025 WL 296331, at *3 (S.D. Ohio Jan. 24, 2025) (collecting cases); *see also id.* ("[A]t this time, the Court has no reason to believe that the particulars of plaintiff's private health information are relevant to the public's understanding of the disposition of this matter."). Even in the context of exhibits to a summary-judgment motion, the compelling privacy interest in a party's medical records may overcome the public's interest in obtaining the information contained in the record. *See, e.g.*, *Hines v. Humana Ins. Co.*, No. 1:21-cv-409, 2023 WL 2562723, at *2 (S.D. Ohio Mar. 17, 2023) (collecting cases for the proposition that, under *Shane Group*, courts may seal medical records submitted as exhibits to summary-judgment motions when the party's compelling privacy interest outweighs the public's right to obtain information in the record); *Bodenhamer v. Metro. Life Ins. Co.*, No. 1:20-cv-00221-TRM-chs, 2021 WL 6275231, at *2 (E.D. Tenn. Feb. 2, 2021) (applying the *Shane Group* factors to determine that "Plaintiff's medical records contain personal identifiers and private health information which, standing alone, provide little meaning or benefit to the general public. Further, wholesale public access to Plaintiff's medical records is a significant invasion of privacy and personal dignity."); *id.* (granting the plaintiff's motion to seal medical records, which were exhibits to his summary-judgment response, but denying leave to file his response under seal, even though it referenced those medical records); *Webster v. Target Corp.*, No. 22-cv-11293, 2024 WL 4047108, at *2 (E.D. Mich. June 27, 2024) (granting the plaintiff's motion to seal

medical records as exhibits to her summary-judgment response but denying leave to file her deposition transcript under seal, as "those references are relevant to the issues on which the court will rule and are necessary for the public to understand the court's rationale for its decision").

Given the nature of the documents contained in ECF No. 482, the considerations under *Shane Group* and *Grae* require that the documents remain under seal, as the interests in support of nondisclosure are compelling, the interests in support of public disclosure are less so, and the seal itself is no broader than necessary. Indeed, the public's interest in Wells's medical and psychotherapy records is limited at best at this stage, as her personal state-law claims for inflection of emotional distress have been dismissed. As a result, the City's Motion to Unseal is denied as to ECF No. 482.

**CONCLUSION**

For the reasons discussed above, City's Motion to Unseal (ECF No. 532) is GRANTED IN PART AND DENIED IN PART. Wells's requests to keep documents sealed as addressed in the parties' Notices (ECF No. 515, 520) is largely DENIED, with the exception of protected personal information as discussed above. The parties are ORDERED to submit their agreed proposed redacted replacements for ECF Nos. 230, 233, 235, 240, 244, 260, 261, 262, 278, 287, 295, 383, 408, 454, 466, 468, 515, and 520 by September 4th, after which the documents will be replaced on the docket and all relevant filings will be unsealed.[19]

SO ORDERED this 21st day of August, 2026.

s/Annie T. Christoff
ANNIE T. CHRISTOFF
UNITED STATES MAGISTRATE JUDGE

[19] This Order is being placed temporarily under seal to allow the parties time to submit their agreed redacted replacements by September 4th. Upon review and approval of those replacements, this Order shall be unsealed.