**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| RowVaughn Wells, Individually and as Administratrix of the Estate of Tyre Deandre Nichols, Deceased, | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO. 2:23-CV-02224-SHL-atc<br>JURY DEMAND |
| The City of Memphis, Tennessee; Chief Cerelyn Davis; Preston Hemphill; and DeWayne Smith, | ) | |
| Defendants. | ) | |

**JOINT REPLY IN SUPPORT OF THE CITY'S MOTION TO REOPEN DISCOVERY FOR A LIMITED PURPOSE AND TO AMEND SCHEDULE**

Defendant City of Memphis (the "City"), together with Defendants DeWayne Smith and Preston Hemphill (collectively, "Defendants"), submit this Joint Reply in Support of the City's Motion to Reopen Discovery for a Limited Purpose and to Amend Schedule. (ECF No. 611.)

Plaintiff takes great issue with the fact that the City did not address the *E.M.A. Nationwide* factors. As a result, Plaintiff contends the City has not met its burden in justifying a stay of proceedings. Plaintiff's arguments miss the mark. "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626–27 (6th Cir. 2014) (quoting *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir.1977)).

Thus, the City bore no burden here. Instead, the Court acted within its discretion to stay proceedings. While the City does not concede that the *E.M.A. Nationwide* factors need to be considered, several facts warrant discussion if those factors are going to be considered at all.

## I. PLAINTIFF'S COUNSEL'S COORDINATION WITH GOVERNMENT ACTORS UNDERSCORES THE NEED TO REOPEN DISCOVERY AND OBTAIN DISCOVERY OF THE FORMER DEFENDANT OFFICERS.

Plaintiff devotes substantial portions of her Response to arguing that the City should not benefit from the parallel criminal proceedings. But the record reveals a far more troubling reality: Plaintiff's counsel has actively coordinated with both federal and state prosecutors to shape proffers and pleas to support the civil action against the Defendants. They now intend to prevent the Defendants from taking discovery related to the very evidence they intend to deploy against the Defendants at trial.

The documentary record demonstrates that Plaintiff's lead counsel, Antonio Romanucci, was in direct and regular communication with the Department of Justice's Civil Rights Division throughout the criminal prosecution. On October 5, 2023, Mr. Romanucci emailed DOJ Special Litigation Counsel Kathryn Gilbert summarizing a telephone conversation about Defendant Mills's plea and confirming that "we have received full consent from the family of Tyre Nichols, specifically, RowVaughn Wells, to proceed with the Department of Justice's planned plea of defendant Mills as outlined on our zoom call on Tuesday afternoon of this week." *See* Oct. 5, 2023 Email, attached as Exhibit 1. This email—sent almost a month before the plea was entered—establishes that Plaintiff's counsel received advance notice of and provided input on the plea arrangement. *Id.* While prosecutors may sometimes seek approval from family related to sentencing, it is unusual for civil counsel to have input on the wording of plea agreements.[1] On

[1] *See also infra* pp. 3–4, Exhibit 3.

November 2, 2023, upon receiving the filed plea papers from DOJ counsel, Mr. Romanucci forwarded them to co-counsel Ben Crump, describing the plea agreement as [redacted] *See* Nov. 2, 2023 Email, attached as Exhibit 2.[2]

This exchange reveals that Plaintiff's counsel actively participated in a DOJ Zoom conference where the plea was "outlined." Exhibit 1. Apparently, Plaintiff's counsel was so pleased with the resulting factual stipulations in Mills' plea agreement as litigation ammunition for the civil case, that he characterized those stipulations as [redacted] Exhibit 2. The factual basis accompanying Mills' plea contains detailed admissions about the officers' conduct, their motivations, and the alleged cover-up that followed. Plaintiff's counsel's involvement in shaping this plea raises serious questions about whether the content of the factual stipulations was influenced by Plaintiff's counsel to support the civil case rather than purely prosecutorial objectives. Defendants are concerned because something similar happened with the Shelby County District Attorney's office and was only discovered during Defendant Hemphill's deposition.

On March 24, 2023, Plaintiff's counsel Sarah Raisch emailed Assistant District Attorney Melanie Headley at the Shelby County DA's office a detailed list of questions and asked the DA's office to pose them to Officer Hemphill during his upcoming proffer interview. *See* Mar. 24, 2023 Email, attached as Exhibit 3.[3] The questions were not generic requests for information; they were tailored to the themes of Plaintiff's *Monell* theories. *See id.* In other words, Plaintiff's

[2] The communications depicted in Exhibits 1 and 2 were produced for the first time on April 30, 2026 pursuant to the City's Request No. 128 and the Court's Order on the City's Motions to Compel. (ECF No. 609.)

[3] These facts were only discovered when the City subpoenaed the District Attorney's office following discovery that Plaintiff's counsel had copies of the recording of Defendant Hemphill's proffer—an interview of which Defendant Hemphill's own civil counsel did not have copies of the recording.

counsel drafted the substantive questions for a criminal proffer of a co-defendant in this very case—questions designed to elicit testimony supporting Plaintiff's *Monell* and supervisory-liability theories against the City—and transmitted them to the state prosecutor for use in a law-enforcement interview to which the City had no access and no notice. And Plaintiff was successful; the District Attorney asked many of those questions while Defendant Hemphill was threatened with prosecution.[4] These questions had nothing to do with a potential criminal prosecution. This was only discovered during Defendant Hemphill's deposition testimony, and the Defendants had to stop the deposition and obtain the proffer and questions from the DA directly. The proffer (or any communications related to the proffer) was not produced in discovery prior to Defendant Hemphill's deposition.

Plaintiff now seeks to portray the criminal proceedings in the federal case as an impenetrable barrier to the City's discovery, arguing that deposing the officers is unnecessary because video evidence and *Garrity* statements suffice. Yet simultaneously, Plaintiff's own counsel expended extraordinary effort to extract testimony, evidence, and cooperation from those same officers through government channels. Plaintiff cannot use the government as a sword—eliciting favorable testimony under the threat of prosecution or a plea deal, actively shaping plea agreements, feeding questions into proffer interviews, and obtaining investigative materials to build her civil case—while wielding the officers' Fifth Amendment protections as a shield to prevent the Defendants from conducting their own discovery into these issues. This pattern of coordination is directly relevant to the City's Motion. Defendants concede there exists a unique relationship between prosecutors and a victim's family with respect to criminal cases. However,

---

[4] The Defendants can provide a copy of the audio recording of the proffer to the Court upon request. The Defendants will have a copy available at the May 11, 2026 hearing.

to the extent documents are created jointly by the prosecution and the civil attorneys, and those documents are used in the civil case, the Defendants have a right to seek discovery on these issues.

The Defendants are entitled to explore coordination between civil attorneys and the government, and the Defendants request that the Court permit discovery on these issues.

## II. THE NEED TO REOPEN DISCOVERY HAS NOT BEEN RESOLVED.

Plaintiff asserts that twenty-one of the twenty-two newly disclosed witnesses are "MPD employees whose names appear throughout the City's own documents." (ECF No. 633, PageID 9744.) But their relevance as trial witnesses—and the scope of Plaintiff's communications with them—was not disclosed until ten days after fact discovery closed. (ECF No. 611, PageID 9361.) The City is entitled to discover the nature and substance of those communications regardless of whether the individuals' names appeared in previously produced 560,000 pages of documents. Further, Plaintiff assumes that these twenty-one individuals are still employed by the City, and thus within the City's control. This is not the case, for several witnesses are no longer with MPD.

As to the second autopsy, Plaintiff's claim that the City "never requested" it is belied by Request for Production Nos. 38, 39, and 40, which sought "any" autopsy materials and all communications with the pathologists. (*Id.* at PageID 9362–65.) Plaintiff's responses failed to disclose the second autopsy or related communications, and a public press-conference "announcement" does not relieve Plaintiff of her obligation to supplement written discovery responses. This is so especially considering that many of the claims made in Plaintiff's counsel's press conferences and press releases have been false. Moreover, Plaintiff's explanation that the second autopsy was performed at a private funeral home raises even more questions, as it is likely that coordination involved other individuals who have never been identified as witnesses or persons with knowledge. (ECF No. 633, PageID 9751.)

## III. CONCLUSION

For these reasons, the Defendants respectfully request that the Court grant the City's Motion to Reopen Discovery for a Limited Purpose and to Amend the Scheduling Order. The evidence of Plaintiff's coordination with government actors further demonstrates why targeted discovery is necessary, and Plaintiff's cited authorities do not support the denial of the narrowly tailored relief the City seeks.

Dated: May 11, 2026

Respectfully submitted,

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**

*s/ Bruce McMullen*

Bruce McMullen (#18126)
Jennie Vee Silk (#35319)
Kelsey W. McKinney (#40434)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 526-2000
bmcmullen@bakerdonelson.com
jsilk@bakerdonelson.com
kmckinney@bakerdonelson.com

*Attorneys for Defendant City of Memphis and Chief Cerelyn Davis*

**GODWIN, MORRIS, LAURENZI & BLOOMFIELD, P.C.**

*/s/ Betsy Bartlett Walton*

Betsy Bartlett Walton (#21597)
Deborah E. Godwin (#9972)
80 Monroe, Suite 315
Memphis, Tennessee 38013
Telephone: 901-528-1702
bmckinney@gmlblaw.com
dgodwin@gmlblaw.com

*Attorneys for Defendants Preston Hemphill and Dewayne Smith*

**CERTIFICATE OF SERVICE**

I, Bruce McMullen, hereby certify that on May 11, 2026, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, and that upon filing, such system will serve a copy of the foregoing upon all counsel of record in this action.

*s/ Bruce McMullen*
Bruce McMullen